UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Master File No. 01-12257-PBS<br><br>Subcategory No. 06-11337-PBS<br>Civil Action No. 08-cv-10852 |
| THIS DOCUMENT RELATES TO:<br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., by and through its principal officers and directors, Zachary T. Bentley and T. Mark Jones  v. Actavis Mid Atlantic LLC, et al.* | Judge Patti B. Saris<br><br>Magistrate Judge Marianne B. Bowler |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL THE STATE OF NEW JERSEY DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES TO PRODUCE DOCUMENTS

Over the past year, the defendants in this action have made repeated good-faith attempts to obtain relevant documents from the State of New Jersey.  The State has resisted at nearly every turn, and to date, has produced only several dozen documents in this case.  In doing so, the State has asserted, in only the most general terms, that the defendants' requests are overly broad, overly burdensome and unreasonable, and intrude on the deliberative process and other privileges.  These objections have no merit.  The requested documents are highly probative of the issues in this case; the defendants' requests are reasonable, narrow, and not unduly burdensome; and the State has not met its burden to demonstrate that any valid privilege applies. Defendants Actavis MidAtlantic LLC, Alpharma USPD Inc. f/k/a Barre National Inc., and Barre Parent Corp. (collectively "Actavis MidAtlantic"); Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc. (collectively "Par"); Sandoz Inc. f/k/a Geneva Pharmaceuticals Inc. ("Sandoz"); and Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. f/k/a Schein

Pharmaceutical, Inc. (collectively, "Watson") (together, the "Defendants") respectfully submit this memorandum in support of their motion to compel the State of New Jersey (the "State" or "New Jersey") Department of Human Services Division of Medical Assistance and Health Services ("DMAHS") to produce documents.

## BACKGROUND

### I.    DEFENDANTS' EFFORTS TO OBTAIN DISCOVERY FROM DMAHS

On June 15, 2010, Defendants served a subpoena (the "Subpoena") on DMAHS requesting the production of documents.[1]  The State responded with written objections on July 2, 2010.[2]  On behalf of Defendants, counsel for Sandoz conferred with the State by telephone on September 22 and October 6, 2010 to discuss the documents requested in the Subpoena. Following those discussions, Sandoz wrote the State on December 9, 2010 narrowing the categories of documents being requested, and requesting production by January 31, 2011.[3]  In a follow-up conversation, the State represented that it intended to produce documents by January 31.[4]  The State, however, did not produce documents by that date, and on February 1, 2011, counsel for New Jersey wrote saying that the State would try to produce the documents in the next two weeks.[5]  No documents were produced by that time either, and Sandoz inquired again regarding the status of the production on February 16 and 23.[6]

---

[1] Exhibit ("Ex.") 1.

[2] July 2, 2010 Letter from Zoe McLaughlin to Stefan Mentzer (Ex. 2).

[3] Dec. 9, 2010 Letter from Paul Carberry to Dianna Rosenheim (Ex. 3).

[4] Jan. 24, 2011 E-mail from Danielle Audette to Dianna Rosenheim (Ex 4, at 2).

[5] Feb. 1, 2011 E-mail from Dianna Rosenheim to Danielle Audette (Ex. 4, at 2).

[6] Feb. 16, 2011 E-mail from Danielle Audette to Dianna Rosenheim (Ex. 4, at 1); Feb. 23, 2011 E-mail from Danielle Audette to Dianna Rosenheim (Ex. 4, at 1).

NEWYORK 8148068 (2K)

Having not yet received the State's production, Sandoz wrote the State on March 15 asking the State to make sure to include specific categories of documents in its production.[7] These requested documents had not been included in a production of several hundred documents that the State previously made to another drug manufacturer in *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc. et al.*, Civil Action No. 05-11084-PBS, which Sandoz reviewed.[8]

Sandoz finally received a document production from the State on March 21, as well as the State's written objections.[9]  Sandoz reviewed that production, which consisted of about 52 documents, and determined that it was not responsive to Sandoz' narrowed requests.[10]  On April 1, 2011, Sandoz asked the State to supplement its production, and Sandoz set forth, once more, the narrowed categories of documents to be produced.[11]  Sandoz also requested that, to the extent the State was withholding documents on grounds of deliberative process or any other privilege (which the state asserted in its March 21 production), the State provide a privilege log.[12]

---

[7] Mar. 15, 2011 Letter from Stefan Mentzer to Dianna Rosenheim (Ex. 5, at 2-3).  These documents were previously requested in the Subpoena.

[8] *Id.*

[9] *See* Letter from Valerie Harr to Paul Carberry (Ex. 6).  The cover letter that was enclosed with the production was dated March 11, 2011, but Sandoz received the letter, objections, and production on March 21.

[10] The production consisted of an incomplete set of State Plan Amendments, public newsletters to providers informing them of changes in the reimbursement formula for prescription drugs, a November 2009 white paper by the National Association of State Medicaid Directors, copies public comments and rulemakings published in the New Jersey Register, listings of rebate amounts received from the Defendants, and a summary of federal and state medical assistance payments for 1997-2009.  *See* Letter from Valerie Harr to Paul Carberry (Ex. 6) (attached responses and objections describing Enclosures A-G of the State's production).

[11] Apr. 1, 2011 Letter from Stefan Mentzer to Dianna Rosenheim (Ex. 7).

[12] *Id.* at 2.

NEWYORK 8148068 (2K)

The State wrote Sandoz on April 8 and demanded that, as a precondition for even responding to the requests, Sandoz agree to pay $175.00 per hour of the State's time spent responding.[13]  The State did not commit to supplementing its document production and declined to provide a privilege log for the documents it previously withheld on deliberative process privilege grounds.[14]

In a final effort to obtain substantive responses from the State, Sandoz wrote to the State on April 15, 2011 and enclosed a second subpoena (the "2011 Subpoena") that reflected the narrowed categories of documents previously requested in the December 9, 2010; March 15, 2011; and April 1, 2011 letters.[15]  The 2011 Subpoena included requests for:  (1) portions of the New Jersey Medicaid State Plan that were missing from the State's prior productions; (2) DMAHS communications with the federal government, third parties, and internally at DMAHS, regarding the State Plans for drug reimbursements and changes to the Medicaid drug reimbursement formula; and (3) any reports or analyses regarding drug acquisition costs under the State Medicaid program.[16]

On May 11, 2011, the State provided its objections and responses to the 2011 Subpoena, noting that it would not produce documents without being compensated.[17]  The State refused to produce its communications regarding State Plans or pharmaceutical reimbursements, asserting

---

[13] Apr. 8, 2011 Letter from Dianna Rosenheim to Stefan Mentzer (Ex. 8).

[14] *Id.*

[15] Apr. 15, 2011 Letter from Stefan Mentzer to Dianna Rosenheim (Ex. 9, at 1).  The subpoena was served on April 18, 2011.

[16] *See id.*, Document Requests 1-5.

[17] *See* May 11, 2011 Letter from Dianna Rosenheim to Stefan Mentzer (Ex. 10, at 2).

4

the deliberative process and work product privileges but declining to provide a privilege log.[18]

The State also noted, for the first time, that it did not possess two of the categories of documents

that Defendants previously requested.[19]

## II.    THE DOCUMENTS REQUESTED IN THIS MOTION

Defendants request an order compelling the DMAHS to produce the following:

1.      The missing portions of New Jersey's Medicaid State Plans that concern

pharmaceutical reimbursements, specifically all relevant pages of State Plan

Amendment # TN 02-20, TN 95-6, TN 96-11, TN 97-19, TN 05-08-MA (NJ), and

TN 08-15-MA (NJ).[20]

2.      Correspondence between DMAHS and the Centers for Medicare and Medicaid

Services (and its predecessor Health Care Financing Administration), and internal

DMAHS correspondence, regarding (a) the New Jersey Medicaid State Plans that

concern pharmaceutical reimbursements and (b) changes to the Medicaid drug

reimbursement formula.[21]

---

[18] *Id.*

[19] *Id.*, Objections 3, 5 (asserting that the State does not have communications with third parties
(other than CMS) regarding State Plans or changes to the drug reimbursement formula, or studies
or analyses regarding acquisition or dispensing costs, state MACs, or drug reimbursements).

[20] This request is encompassed by Document Request (1) in the 2010 Subpoena (Ex. 1) and
Document Request 1 in the 2011 Subpoena (Ex. 9).  The State has produced incomplete pages
for some of these State Plan Amendments.  (*See* Ex. 7).  On April 8, the State produced pages
from State Plan Amendment 08-15-MA, but that production was incomplete as pages from the
amendment appear to be missing.  (*See* Apr. 8, 2011 Letter from Dianna Rosenheim to Stefan
Mentzer (Ex. 8).

[21] This request is encompassed by Document Request (1) in the 2010 Subpoena (Ex. 1) and
Document Requests 2 and 4 in the 2011 Subpoena (Ex. 9).

NEWYORK 8148068 (2K)

3.      To the extent that the State is not deemed to have waived its claims of deliberative

process and work product privileges, Defendants request an order compelling it to

produce a privilege log.

## ARGUMENT

## I.      THE REQUESTED DOCUMENTS ARE HIGHLY PROBATIVE OF THE CLAIMS AND DEFENSES IN THIS CASE

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The documents at issue here are highly

probative of the claims and defenses in this action, and the State should produce them.

### A.      The Missing State Plan Documents

A State Medicaid agency reimburses for prescription drugs using a formula established in

the State Plan, which CMS must first review and approve.  *See* 42 U.S.C. § 1396a(a).  In this

action, the relator Ven-A-Care alleges that Defendants caused the federal government to

"overpay" for prescription drug reimbursements by reporting "false" AWPs and WACs that state

Medicaid programs relied upon in their reimbursement formulas.  Of critical importance is an

understanding of the methods, approved by the federal government, by which all states,

including the State of New Jersey, reimbursed for prescription drugs dispensed under Medicaid

and how those reimbursement formulas changed over time.  The most direct source of this

information is found in the State Plan documents themselves.

The State apparently does not dispute the relevance of these documents,[22] and it has

previously produced portions of its State Plans pertaining to drug reimbursements in the Dey

---

[22] *See* May 11, 2011 Letter from Dianna Rosenheim to Stefan Mentzer (Ex. 10, Objection 1 (objecting only to the relevance of State Plan documents not related to payment for pharmaceuticals).

6

litigation and here.  Its production, however, remains incomplete, and Sandoz asks that the State be compelled to supplement its production by providing the remaining missing pages of its State Plans, as identified above.

### B.    Communications with CMS and Internal DMAHS Communications

In order to prevail on its federal False Claims Act claims and recover damages, Ven-A-Care must show, *inter alia*, that Defendants' AWPs and WACs are "false"[23] and that Defendants' alleged misrepresentations were material and caused the federal government to overpay.[24]  In defending against these allegations, Defendants intend to show that their AWPs and WACs were not false and that their meaning – *i.e.*, that AWPs and WACs did not reflect actual transaction prices and in fact were often well in excess of those prices – was widely understood and accepted by CMS and state Medicaid agencies throughout the relevant time period.  Defendants also intend to show that CMS and state Medicaid agencies fully understood that the Medicaid program was reimbursing pharmacies in excess of their cost of acquiring drugs and, moreover, that the federal government deliberately approved State Plans that provided for the payment to pharmacies of a margin or profit on the ingredient cost.  Especially relevant to establishing these facts are the communications between CMS and a state, and within a state Medicaid agency internally, regarding the State Plans for Medicaid drug reimbursements and changes to the Medicaid drug reimbursement formula.

---

[23] *See* 31 U.S.C. § 3729(a).

[24] *See United States ex rel. Sanders v. N. Am. Bus Indus. Inc.*, 546 F.3d 288, 297-299 (4th Cir. 2008) (dismissing False Claims Act claims where alleged misrepresentations were not material and where the alleged misrepresentation did not cause the government to pay out money or forfeit money due).

Such communications frequently have been produced by the state and federal governments in pharmaceutical pricing litigations such as this.  The State does not appear to object to producing these particular documents on grounds of relevance,[25] and indeed would have no basis for doing so.

## II.    DEFENDANTS' REQUESTS ARE REASONABLE

The State claims that Defendants' requests for the documents at issue are "unreasonable, overly broad and burdensome."[26]  But other than offering general assertions, the State has not explained with any particularity how or why Defendants' requests are objectionable on these grounds.  There is no basis for such objections.  *See* Fed. R. Civ. P. 26(b)(2)(C); 45(c)(3)(A)(iv); *see also Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass 2008) ("When determining whether a subpoena *duces tecum* results in an undue burden on a party such factors as the relevance of the documents sought, the necessity of the documents sought, the breadth of the request . . . expense and inconvenience can be considered.") (citation omitted) (internal quotation marks omitted).

The State has no basis to assert that Defendants' requests are overly broad given the substantial efforts Defendants have undertaken to narrow their requests and obtain documents from other sources.  Since serving its initial Subpoena nearly a year ago, Defendants have cut down their requests to narrow, focused categories of documents.[27]  Defendants have reviewed the other productions in their possession – the New Jersey production to Dey and the CMS productions from prior pharmaceutical pricing litigations – in an effort to locate responsive

---

[25] *See* May 11, 2011 Letter from Dianna Rosenheim to Stefan Mentzer (Ex. 10, Objections 2, 4).

[26] *Id*., Objections 1, 2, 4.

[27] *Compare* Subpoena (Ex. 1), *with* 2011 Subpoena (Ex. 9).

NEWYORK 8148068 (2K)

documents relating to the New Jersey Medicaid program.  Defendants largely have been unable to obtain responsive documents from these productions, and the State is the only remaining source of these materials.

The State also has not met its burden to demonstrate how or why the requested documents would be unduly burdensome to produce.  Whatever burden may exist appears relatively small.  If, as the State claims, it need only produce six pages of missing State Plan documents,[28] then the burden on the state is *de minimis*.  (To the extent that more than six pages of additional pages are required, the State should search for and produce them.)  With regard to the requested DMAHS communications, it seems likely that each state Medicaid program – including New Jersey's – keeps files containing hard copies of all correspondence between the Medicaid agency and CMS regarding State Plans and State Plan Amendments, which are searchable for responsive documents.  Likewise, only a limited number of DMAHS officials are likely to have had substantive discussions and communications with CMS, or internally at the agency, regarding State Plan Amendments and changes to prescription drug reimbursements, and thus it would not be unduly burdensome to locate and produce relevant communications from their files.

Finally, as set forth above, the requested documents are highly probative of crucial issues in this case for which Defendants have a substantial need, and accordingly their relevance outweighs any claim of burden by the State.

---

[28] May 11, 2011 Letter from Dianna Rosenheim to Stefan Mentzer (Ex. 10 at 2).

NEWYORK 8148068 (2K)

### III.   THE STATE HAS WAIVED ITS DELIBERATIVE PROCESS AND WORK PRODUCT PRIVILEGE OBJECTIONS

The State asserts the deliberative process privilege and work product privileges with regard to the requested DMAHS correspondence with CMS and internal DMAHS correspondence.[29]  The State's objections are of a very general nature and appear to have no merit.  For example, in the State's most recent communication with Defendants, the State broadly asserts that "all communications involving the negotiation of a State Plan amendment with CMS are considered deliberative process privileged and will not be researched and turned over in response to your request."[30]  The State also asserts, without further explanation, that "any internal communications are deliberative or work product and are privileged."[31]  These documents should be produced.

Significantly, and as set forth above, the State repeatedly has declined to provide a privilege log to identify documents purportedly subject to the privilege.  Thus, the State has not satisfied its obligation under the Federal Rules to describe the nature of the withheld communications in a manner that would enable Defendants to assess the claim.  *See* Fed. R. Civ. P. 45(d)(2)(A).  Indeed, the State's position expressly violates the plain language of Rule 45, which "*requires* a party resisting disclosure to produce a document index or privilege log."  *In re Grand Jury Subpoena*, 274 F.3d 563, 575-77 (1st Cir. 2001) (affirming denial of motion to quash subpoena seeking corporate documents because movants failed to generate a list of documents alleged to be privileged) (emphasis added).

---

[29] *See* May 11, 2011 Letter from Dianna Rosenheim to Stefan Mentzer (Ex. 10, Objections 2, 4).

[30] *Id.*, Objection 2.

[31] *Id.*, Objection 4.

Here, the State has failed to meet its burden to prove the claimed privileges.  Despite repeated requests from Defendants, the State has offered only blanket assertions of the existence of a privilege and instead has insisted that producing a log "would be impossible" because the requests are voluminous and overbroad.[32]  Defendants, however, have narrowed the document requests to such a degree that the burden of collecting responsive documents does not exempt the State from its responsibility under Rule 45(d)(2).  The State's willful disregard of such reasonable requests is not a basis for refusing to produce a privilege log.  Accordingly, the State's refusal to produce a privilege log so that the Defendants can assess the claims of privilege waives the asserted privilege claims.  *See In re Grand Jury Subpoena*, 274 F.3d at 575-77.

This Court previously has deemed another state Medicaid agency to have waived its privilege objection in *United States ex rel. Ven-A-Care of the Florida Keys, Inc. et al. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS.[33]  There, the State of Georgia broadly asserted the attorney-client privilege and refused to produce documents requested by the defendant Dey.  Like Defendants here, Dey asked Georgia to provide a privilege log and the state refused to do so.  In its order granting Dey's motion to compel, the Court quoted *In re Grand Jury Subpoena*'s holding that a "party that fails to submit a privilege log is deemed to waive the underlying privilege claim."[34]  Similar relief is appropriate here.  In the alternative, Defendants request an order requiring the State to produce a log of purportedly privileged documents to permit Defendants to assess the claimed privilege.

---

[32] *See* Ex. 8.

[33] *See* Electronic Order, Sept. 29, 2009 (Ex. 11).

[34] *Id.* (quoting *In re Grand Subpoena*, 274 F.3d at 575-576).

NEWYORK 8148068 (2K)

IV.     **THIS COURT HAS AUTHORITY TO HEAR DEFENDANTS'
        MOTION TO COMPEL**

This Court has authority to enforce the subpoenas, which issued from the United States

District Court for the District of New Jersey.  The Court's authority derives from the statute

governing multidistrict litigations:

> Such coordinated or consolidated pretrial proceedings shall be
> conducted by a judge or judges to whom such actions are assigned
> by the judicial panel on multidistrict litigation. . . .  The judge or
> judges to whom such actions are assigned . . . *may exercise the
> powers of a district judge in any district* for the purpose of
> conducting pretrial depositions in such coordinated or consolidated
> pretrial proceedings.

28 U.S.C. § 1407(b) (emphasis added); *see also In re Neurontin Mktg., Sales Practices, & Prods.*

*Liab. Litig.*, 245 F.R.D. 55, 57 (D. Mass 2007) ("The relevant statutes and caselaw provide for an

MDL Court to resolve disputes arising from the service of Rule 45 subpoenas on non-parties

located in other districts . . . ."); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,*

*Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006) ("A judge presiding over an MDL case therefore can

compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed

to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt,

notwithstanding the nonparty's physical situs in a foreign district where discovery is being

conducted.").  The MDL court's authority extends to document-only subpoenas such as the one

at issue here.  *See In re Neurontin Mktg. Litig.*, 245 F.R.D. at 57; *Pogue,* 444 F.3d at 469 n.4

("the rationale underlying the MDL statute of 'just and efficient' resolution of pretrial

proceedings requires the conclusion that Section 1407(b)'s grant of authority applies to both

deposition subpoenas and documents-only subpoenas").

NEWYORK 8148068 (2K)

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should issue an order granting (1) Defendants'

motion and compelling DMAHS to produce the requested documents; and (2) such other and

further relief as may be proper and just.


Dated: May 20, 2011                     Respectfully submitted on behalf of all Defendants

                                        By:      /s/ Heather K. McDevitt
                                                 Heather K. McDevitt (*pro hac vice*)
                                                 Paul B. Carberry (*pro hac vice*)
                                                 WHITE & CASE LLP
                                                 1155 Avenue of the Americas
                                                 New York, New York 10036-2787
                                                 Telephone:  (212) 819-8200
                                                 Facsimile:   (212) 354-8113
                                                 hmcdevitt@whitecase.com
                                                 pcarberry@whitecase.com

                                                 *Attorneys for Defendant Sandoz Inc.*

13

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing (1) DEFENDANTS' MOTION TO COMPEL THE STATE OF NEW JERSEY DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES TO PRODUCE DOCUMENTS; (2) DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL THE STATE OF NEW JERSEY DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES TO PRODUCE DOCUMENTS; and (3) PROPOSED ORDER were delivered to all counsel of record and to counsel of the United States by electronic service in accordance with Paragraph 11 of the Case Management Order No. 2, by sending on May 20, 2011, a copy to Lexis-Nexis for posting and notification to all parties. I further certify that I have caused a caused a true copy of the same to be delivered to counsel for non-party New Jersey Division of Medical Assistance and Health Services via electronic mail and UPS.

/s/ Daniel Cohen
Daniel Cohen