# Exhibit 3

**WHITE & CASE**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax + 1 212 354 8113
www.whitecase.com

Direct Dial + 212 812 8507     pcarberry@whitecase.com

December 9, 2010

VIA E-MAIL

Dianna Rosenheim
Hughes Justice Complex
8th Fl., P.O. Box 112
Trenton, NJ 08625

Dear Ms. Rosenheim:

    Since our last meet and confer, we have reviewed the document production made by the New Jersey Department of Human Services (the "Department" or "DHS") in United States of America ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott, et al. (the "DOJ Case"). We conducted our review with an eye toward narrowing the categories of documents to be produced by the Department in response to the subpoena issued to it on June 14, 2010 (the "Subpoena").

    The Department's production in the DOJ case contained the following documents, which are, to varying degrees, responsive to the Subpoena:

- Limited communications between DSS and CMS
- Excerpts from State Plan Amendments
- NJMMIS Pharmacy Services Fiscal Agent Billing Supplement
- Rebate program list of checks received

The prior production contains no other responsive documents.

    Following our review, we have removed several document requests from the Subpoena. We enclose a revised Schedule A containing requests for documents, which the Defendants consider most important and which are unavailable elsewhere. Because we have received claims data for your state from other sources, there is no need to provide any data in response to Request 21 in Schedule A. We ask that the Department search for and produce all documents and data responsive to this narrowed group of requests.

ABU DHABI  ALMATY  ANKARA  BEIJING  BERLIN  BRATISLAVA  BRUSSELS  BUCHAREST  BUDAPEST  DOHA  DÜSSELDORF  FRANKFURT
GENEVA  HAMBURG  HELSINKI  HONG KONG  ISTANBUL  JOHANNESBURG  LONDON  LOS ANGELES  MEXICO CITY  MIAMI  MOSCOW  MUNICH
NEW YORK  PALO ALTO  PARIS  PRAGUE  RIYADH  SÃO PAULO  SHANGHAI  SINGAPORE  STOCKHOLM  TOKYO  WARSAW  WASHINGTON, DC

NEWYORK 7942601 v1 (2K)

Dianna Rosenheim

**WHITE & CASE**

December 9, 2010

      If you are looking to the Defendants to pay for expenses incurred by the DSS in collecting and producing documents and data, please provide us with a detailed cost estimate **no later than December 31st, 2010**. Your estimate should include an itemized summary of all anticipated production costs. To the extent possible, we are open to discussing options for reviewing documents onsite in Trenton. Any such conversation, however, must occur before December 31st. To avoid a motion with the Court, we ask that the Department produce all responsive documents and data **by or before January 31st, 2011**.

      This letter and the attached Schedule A are without prejudice to any rights or remedies that the Defendants may have with regard to the Subpoena, including without limitation the right to request production of additional documents. The Defendants expressly reserve all such rights and remedies.

      Please contact me with any questions. Thank you for your continued cooperation.

Best regards,

*[signature]*

Paul B. Carberry

2

NEWYORK 7942601 v1 (2K)

# SCHEDULE A

# DEFINITIONS

1. "AAC" or "Actual Acquisition Cost" means the net price (after discounts, rebates, and other price reductions) that a healthcare provider or pharmacist pays to purchase a prescription drug.

2. "AMP" or "Average Manufacturer Price" shall have the meaning set forth in 42 U.S.C. § 1396r-8(k)(1).

3. "AWP" or "Average Wholesale Price" means any figures so categorized and periodically published by a Publisher, including such figures published by First DataBank, Inc.

4. "CMS" means the United States Centers for Medicare and Medicaid Services and its constituent parts and predecessors, including the Health Care Finance Administration and the Department of Health and Human Services

5. "CMS Regional Offices" means any of the ten offices of CMS overseeing a designated region of the United Statesand any other person who currently or formerly acted or purported to act on their behalf.

6. "Communication" means any form of written or oral communication, both internal and external, including letters, memoranda, e-mail, telegrams, invoices, telephone conversations, face-to-face meetings, and other similar forms of communication or correspondence.

7. "Complaint" means the Amended Complaint Following Severance filed in this action by Ven-A-Care of the Florida Keys, Inc. on May 21, 2008.

8. "Defendants" refers to Actavis MidAtlantic LLC, Alpharma USPD Inc. f/k/a Barre National Inc., and Barre Parent Corp.; Par Pharmaceutical, Inc. and Par Pharmaceutical

Companies, Inc.; Sandoz Inc. f/k/a Geneva Pharmaceuticals Inc.; and Watson Pharmaceuticals, Inc. and Schein Pharmaceutical, Inc. (n/k/a Watson Pharma, Inc.).

9. "Direct Price" means any figures so categorized and periodically published by a Publisher.

10. "Document" means all materials as defined in Federal Rule of Civil Procedure 34.

11. "EAC" or "Estimated Acquisition Cost" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.502.

12. "FUL" or "Federal Upper Limit" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 447.332.

13. "Generic Drug" shall mean drugs to which pharmaceutically and therapeutically equivalent drugs containing the same active ingredient exist.

14. "MAC" or "Maximum Allowable Cost" shall have the meaning set forth in 42 C.F.R. § 447.332.

15. "Manufacturer" means a company that manufactures pharmaceutical products, including the Subject Drugs, and shall have the meaning set forth in 42 U.S.C. § 1396r-8.

16. "Medicaid" means the Medicaid Program, as administered by the various states their programs .

17. "Medicaid Intermediary" means and refers to any insurance company or other entity that has contracted with any state Medicaid Program to process claims for reimbursement of drugs, develop preferred drug lists, provide guidance on changes to reimbursement methodologies, or provide advice on cost savings.

18. "Multiple Source Drugs" shall mean a drug marketed or sold by two or more Manufacturers or labelers.

19. "NDC" means "National Drug Code," the code maintained by the Food and Drug Administration as the standard for reporting drugs and biologics.

20. "Participant" or "Beneficiary" means a Person for whom the Medicaid Program provides health insurance coverage.

21. "Person" means any natural person or any business, corporation, partnership, proprietorship, association, organization, governmental entity, group of Persons, or other entity of whatever nature.

22. "Plaintiff," "Relator," and "Ven-A-Care" refer to Ven-A-Care of the Florida Keys, Inc.

23. "Program" means any program under which You purchase pharmaceuticals or through which You pay reimbursement for pharmaceuticals and includes the State's Medicaid Program and any insurance program that provides pharmaceutical benefits to Your employees.

24. "Provider" means any entity or Person that provides health care to any Participant or Beneficiary to whom You provide health insurance coverage or benefits, or any entity or Person to whom You provide reimbursement for drugs.

25. "Publisher" means any pharmaceutical data publishing service, including the Medical Economics Company's Drug Topics Red Book ("Red Book"), American Druggist First DataBank Annual Directory of Pharmaceuticals ("First DataBank"), Essential Directory of Pharmaceuticals ("Blue Book"), and Medi-Span's Master Drug Database ("Medi-Span").

26. "Regarding," "relating to," or "referring to" means constituting, containing, concerning, referring to, embodying, reflecting, analyzing, evidencing, discussing, identifying, illustrating, stating, supporting, refuting, responding to, commenting on, evaluating, about, mentioning, dealing with, or in any way pertaining to the relevant subject matter or person(s).

27. "Reimbursement Methodology" means the formula used to calculate the amount of payment designated by the State's Medicaid Program to reimburse Providers for administering or dispensing pharmaceutical products to Beneficiaries.

28. "State" means the _____ Department or Division of Medicaid.

29. "State Maximum Allowable Cost" or "SMAC" shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 50.504 or any analogous state statute or regulation.

30. "State's Medicaid Program" means the State agency responsible for carrying out the Medicaid Program in the State.

31. "Subject Drugs" are set forth in **Exhibit A** attached hereto.

32. "URA" means the Unit Rebate Amount computed and sent to the states by CMS.

33. "Usual and Customary" or "U&C" means the amount charged by a provider for dispensing a pharmaceutical product to a cash paying customer or as defined by the State.

34. "WAC" or "Wholesale Acquisition Cost" means a Manufacturer's list price for a drug to wholesalers or direct purchasers (not including prompt pay or other discounts, rebates, or price reductions) or any price periodically published as WAC by a Publisher.

35. "You" and "Your" refer to the State Department or Division of Medicaid

## INSTRUCTIONS

1. If it is claimed that a Request calls for documents that are privileged, work product, or otherwise protected from disclosure and such privilege or work product is asserted, identify the nature of the privilege that is claimed, and provide the following information: (a) the type of document (e.g., letter, memorandum); (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author, addressee, and any other

recipient of the document, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other. Any part of a document to which the State does not claim privilege or work product should be produced.

2. Documents that contain confidential, sensitive, or proprietary information should be produced and appropriately labeled in accordance with the protective order in this case.

## DOCUMENT REQUESTS

1. Section 4.19B of all state Medicaid plans filed by the State under 42 U.S.C. § 1396(a) and all proposed or actual amendments to those state plans to the extent they relate to section 4.19B of the state plan.

2. All Provider manuals or handbooks applicable to prescription drugs dispensed or administered to Medicaid beneficiaries.

3. All letters, bulletins, or transmittals sent to providers of prescription drugs.

4. All pricing files applicable to any of the Subject Drugs, including AWP, WAC, FUL, SMAC, WHN, Baseline Price, AMP, Best Price, URA, FSS price, and MMCAP price.

5. Examples of each type of claim form used by Providers to seek payment for prescription drugs dispensed or administered to Medicaid beneficiaries.

6. All memoranda, studies, analyses, reports, communications, policy statements, and other documents concerning proposed and accepted changes to payment rates for prescription drugs dispensed under the State's Medicaid Program.

7. All studies, audits, or surveys concerning Providers' costs to acquire and/or dispense prescription drugs, wholesalers' costs to acquire prescription drugs, and the prices at which drug manufacturers' sell prescription drugs.

8.  All documents concerning the meaning or definition of AAC, AWP, WAC, EAC, AMP, list price, Direct Price, and Usual and Customary charge.

9.  All documents reflecting any comparison between the prices applicable to any Subject Drug, including comparisons of AAC, AWP, WAC, EAC, AMP, URA, FUL, MAC, SMAC, FSS price, MMCAP price, contract price, invoice price, wholesaler price, Provider's purchase price, other states' reimbursement amounts, acquisition prices of any state entity that is a direct purchaser of drugs, and Usual and Customary charge.

10. All communications between State and any member of the state legislature, the U.S. Government, any other State's Medicaid Program, any Medicaid Intermediary, any state entity that is a direct purchaser of drugs, any Medicare contractor, NAMFCU, any MFCU, the National Association of State Medicaid Directors, Pharmacy Technical Advisory Group, American Association of Medicaid Pharmacy Administrators, or the National Governors' Association concerning: (a) payment rates for prescription drugs; (b) the acquisition or dispensing costs of Providers for prescription drugs; or (c) AWP, WAC, or AMP.

11. All communications between the State's Medicaid Program and any third party concerning: (a) payment rates for prescription drugs; (b) the acquisition or dispensing costs of Providers for prescription drugs; (c) prices for any Subject Drug; or (d) AWP, WAC, or AMP.

12. All non-privileged documents concerning State or Congressional hearings or any other legal proceedings concerning AWP, WAC, or reimbursement rates for prescription drugs.

13. All documents concerning the AMP information provided by each Defendant to the State.

14. All documents or data containing or reflecting a URA for any Subject Drug.

15. All documents concerning the difference between the AMP and Providers' acquisition costs of any pharmaceutical product.

16. All documents concerning dispensing fees set by the State's Medicaid Program.

17. All documents concerning any requests, surveys, or other efforts conducted to determine whether the State is in compliance with 42 U.S.C. § 1396a(a)(30).

18. All documents concerning State's assurances, as required by 42 C.F.R. § 447.333, that the State's expenditures for drugs are in accordance with payment limits specified in 42 C.F.R. § 447.331(b).

19. All documents concerning State's assurances, as required by 42 C.F.R. § 447.333, that the State's expenditures for multiple source drugs are in accordance with upper limits specified in 42 C.F.R. § 447.332(b).

20. Documents sufficient to show the dollar amount and percentage of Federal Medicaid matching funds received by You.

21. All data concerning Provider claims for reimbursement for the Subject Drugs dispensed or administered under State's Medicaid Program, including the following fields of data to the extent they are maintained by the State or its agents:

    (a) *Identifier*: claim number and other identifying information;

    (b) *Provider Type*: pharmacy, outpatient hospital, physician crossover, etc.;

    (c) *Claim Type*: any available claim type information including any information that indicates whether Medicaid is the secondary payor;

    (d) *Transaction Type*: all available transaction type information, such as correction, cancellation, etc., identifiers, and source transaction information, and reference TCN numbers;

   (e) *Status*:  all status information, including the payment code indicating whether the claim has been accepted, processed, and/or paid and the type of program the claim will be processed under (<u>e.g.</u>, Medicaid, Managed Care);

   (f) *Dates*:  all available dates;

   (g) *Basis of Payment*:  coding within the claim payment transaction which identifies the reference point from which the claim payment amount is determined (<u>e.g.</u>, MAC, SMAC, FUL, EAC, AMP, AWP, DOJ, Medicaid AWP, WAC, DP, usual and customary charge, etc.);

   (h) *Provider*:  all information for all relevant Providers;

   (i) *Product*:  all product information.

   (j) *Units*:  all units information, including submitted units, allowed units, and unit of measure;

   (k) *Prices/Fees*:  all fields containing price and fee amounts

   (l) *Comments*:  all other memo or free-form fields.

   (m) *Cost:* the cost of shipping, pharmacy staff, supplies, storage, or inventory control for any Subject Drug.

   (n) *Acquisition Cost:*  any acquisition cost information submitted by the Provider.

   (o) Related file layouts, field definitions, data dictionaries, source tables, relationship tables, and business rules.

  22. All documents concerning communications between You and Defendants relating to drug purchasing, pricing, reporting, utilization, rebates, and/or reimbursement.

23. All documents concerning any inquiries You made, or considered making, for information concerning the prices, costs, or reimbursement of the Subject Drugs.

24. All documents concerning Your analysis, evaluation, review of, or reliance on any representation of drug pricing provided by Defendants in connection with the reimbursement of their pharmaceutical products.

25. All documents concerning or reflecting any complaint or inquiry You have ever received from anyone regarding the pricing of Defendants' pharmaceutical products.

26. All documents relating to the State's MAC program.

27. All documents reflecting communications among any of Your employees or agents concerning the pricing or reimbursement of prescription drugs.

28. All documents concerning how Your Medicaid Intermediary determined payment amounts for the Subject Drugs.

29. All documents concerning monetary sums that the State has recovered from any Providers as compensation, restitution, damages or penalties associated with its reimbursement for any of the Subject Drugs.