# Exhibit 5

**WHITE & CASE**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel  + 1 212 819 8200
Fax + 1 212 354 8113
www.whitecase.com

Direct Dial + 1 212 819 8705     smentzer@whitecase.com

March 15, 2011

VIA E-MAIL

Dianna Rosenheim, Esq.
Assistant Chief, Deputy Attorney General
Office of the Attorney General
Hughes Justice Complex
8th Floor, P.O. Box 112
Trenton, New Jersey 08625

Re:  *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Actavis Mid Atlantic LLC, et al.* - Civil Action No. 08-10852-PBS

Dear Dianna:

This letter is in reference to the subpoena served on June 15, 2010 on behalf of Sandoz and its co-defendants in the above-referenced litigation (the "Subpoena"). Since last June, Sandoz and the State of New Jersey (the "State") have conferred on numerous occasions in an effort to identify and narrow the universe of documents responsive to the Subpoena. To date, Sandoz has received no documents from New Jersey, other than documents that the State produced to another defendant in a prior litigation (the "Dey AWP Litigation") that Sandoz already had in its possession. It is our understanding that the State currently is collecting responsive documents to be produced to Sandoz consistent with our discussions.

As you may know, fact discovery in this litigation is scheduled to close in April 2011. In an effort to obtain responsive documents sufficiently before the close of discovery, Sandoz has reviewed the documents produced by New Jersey in the Dey AWP Litigation and has identified specific categories of documents responsive to Document Request No. 1 in the Subpoena[1] that the State did not produce in that litigation or that require supplementation. Accordingly, Sandoz requests expedited production of the documents listed below.

---

[1] This Request seeks "(a) All state Medicaid plans filed by the State under 42 U.S.C. § 1396(a); (b) all proposed or actual amendments to those state plans to the extent they relate to section 4.19B of the state plan; and (c) all supporting documents and communications concerning state plan amendments relating to section 4.19B."

ABU DHABI ALMATY ANKARA BEIJING BERLIN BRATISLAVA BRUSSELS BUCHAREST BUDAPEST DOHA DÜSSELDORF FRANKFURT
GENEVA HAMBURG HELSINKI HONG KONG ISTANBUL JOHANNESBURG LONDON LOS ANGELES MEXICO CITY MIAMI MOSCOW MUNICH NEW YORK
PARIS PRAGUE RIYADH SÃO PAULO SHANGHAI SILICON VALLEY SINGAPORE STOCKHOLM TOKYO WARSAW WASHINGTON, DC

NEWYORK 8062197 (2K)

Dianna Rosenheim, Esq.

WHITE & CASE

March 15, 2011

1. *For the time period prior to October 1, 1987*: The State has not produced (a) its Medicaid State Plans regarding pharmaceutical reimbursements; (b) any proposed or actual amendments to those State Plans; or (c) documents or communications (with CMS/HCFA, internally, or third parties) concerning the implementation of and any amendments to those State Plans. To the extent that any such documents exist, please produce them.

2. *For the time period October 1, 1987 – January 1, 1996*: Our review shows that, effective October 1, 1987, New Jersey implemented an ingredient cost reimbursement formula ranging from undiscounted AWP to AWP minus 6%. The State has not produced (a) its Medicaid State Plans relating to this reimbursement formula; (b) any proposed or actual amendments to those State Plans; or (c) documents or communications (with CMS/HCFA, internally, or third parties) concerning the implementation of and any amendments to this reimbursement formula. To the extent that any such documents exist, please produce them.

3. *For the time period January 2, 1996 – July 14, 1996*: Our review shows that, effective January 2, 1996, New Jersey implemented an ingredient cost reimbursement formula ranging from AWP minus 2% to AWP minus 8%. The State has not produced documents or communications (with CMS/HCFA, internally, or third parties) concerning the implementation of and any amendments to this reimbursement formula. To the extent that any such documents exist, please produce them.

4. *For the time period July 15, 1996 – July 7, 2003*: Our review shows that, effective July 15, 1996, New Jersey implemented an ingredient cost reimbursement formula of AWP minus 10%. The State has not produced documents or communications (with CMS/HCFA, internally, or third parties) concerning the implementation of and any amendments to this reimbursement formula. To the extent that any such documents exist, please produce them.

5. *For the time period July 8, 2003 – July 7, 2008*: Our review shows that, effective July 15, 1996, New Jersey implemented an ingredient cost reimbursement formula of AWP minus 12.5%. The State has not produced documents or communications (with CMS/HCFA, internally, or third parties) concerning the implementation of and any amendments to this reimbursement formula. Moreover, in a letter sent by Larry Reed, of CMS, to Ms. Ann C. Kohler, Director of the New Jersey Department of Human Services (which was produced by CMS and is attached hereto as **Exhibit A**), Mr. Reed refers to "communications with [Ms. Kohler's] staff" concerning the proposed change in estimated acquisition cost from AWP minus 10% to AWP minus 12.5%. We were not able to find these communications in our review of the documents in our possession. In the same letter, on the page Bates numbered HHD295-0283, Mr. Reed asks New Jersey to "provide the documentation used to determine that

2

Dianna Rosenheim, Esq.

WHITE & CASE

March 15, 2011

> the proposed EAC of AWP minus 12.5% is the best estimate of prices that pharmacists in the State are generally and currently paying for prescribed drugs." We were not able to find any such documentation. To the extent that any documents referenced in the preceding paragraph exist, please produce them.

6. *For the time period July 8, 2008 – Present*: The State has not produced (a) its Medicaid State Plans regarding pharmaceutical reimbursements; (b) any proposed or actual amendments to those State Plans; or (c) documents or communications (with CMS/HCFA, internally, or third parties) concerning the implementation of and any amendments to those State Plans. To the extent that any such documents exist, please produce them.

Please produce all the documents requested in this letter – or certify for which of the above requests no responsive documents exist – no later than **Wednesday, March 30, 2011**. Sandoz and its co-defendants may move to compel the production of these and any other documents if responsive documents are not produced by this time.

Please note that this letter in no way limits Sandoz' request for production of the documents that we understand the State is currently in the process of collecting, and the State should produce all such documents expeditiously. Please let us know when you expect the State to complete the production of those documents.

This letter is without prejudice to any rights or remedies that Sandoz and its co-defendants may have with regard to the Subpoena (including without limitation the right to request production of additional documents), and Sandoz and its co-defendants expressly reserve all such rights.

Please feel free to contact me with any questions or concerns.

Best regards,

Stefan Mentzer
SM: drc


Enclosure

# EXHIBIT A

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C2-21-15
Baltimore, Maryland 21244-1850



## Centers for Medicaid & State Operations

Ms. Ann C. Kohler
Director
New Jersey Department of Human Services
P.O. Box 712
Trenton, NJ 08625-0712

Dear Ms. Kohler:

This letter is being sent to your office twice in order to correct the addressee and to correct the reference to the amendment number. We have reviewed New Jersey Plan Amendment (SPA) 03-05, Prescribed Drugs, received in the Regional Office on September 22, 2003. This amendment requires the use of generic drugs for all multi-source drugs, allows for the negotiation of supplemental rebates for generic drugs, and changes the estimated acquistion cost for all drugs from AWP minus 10 percent to AWP minus 12.5 percent. In addition, it allows for the return of unit dose drugs for patients in long-term care facilities and a managed care organization pharmacy carve-out. You have requested an effective date of September 1, 2003 for this amendment. We have reviewed your proposal and are unable to approve it as submitted. Therefore, we requesting additional information pursuant to Section 1915(f) of the Social Security Act (the Act).

We have had communications with your staff concerning the proposed changes to your Medicaid state plan and your staff has been instrumental in responding to our concerns. Nevertheless, before we can continue processing this amendment, we need additional information as outlined below.

### Addenda to Attachment 3.1-A and 3.1-B, Page 12a:

A. The SPA provides that multi-source brand name drugs with a narrow therapeutic index (NTI) and other drugs may be excluded from prior authorization, as determined by the Commissioner. Based on information the Food and Drug Administration (FDA) maintains, NTI drugs offer the same therapeutically equivalence that other drugs have. Therefore, you may want to reconsider exempting NTI drugs from the prior authorization requirements. Also, for all drugs included or excluded for prior authorization, please indicate what clinical considerations are used in this determination.

B. Although the prior authorization requirements for multi-source drug allow a ten-day supply to be dispensed pending receipt of prior authorization, please specify in the plan that the prior authorization requirements for multi-source drugs, as well as other covered outpatient drugs provides a response by telephone or other telecommunication device within 24 hours of a request for prior authorization.

HHD295-0281    F

C. Paragraph 2: We suggest you replace this paragraph with the following language: "The state is in compliance with section 1927 of the Social Security Act. The state will cover drugs of federal rebate participating manufacturers. The state is in compliance with reporting

Page 2 – Ann C. Kohler

requirements for utilization and restrictions to coverage. Pharmaceutical manufacturers can audit utilization data. The unit rebate amount is confidential and cannot be disclosed for purposes other than rebate invoicing and verification.

The state will be negotiating supplemental rebates in addition to the federal rebates provided for in Title XIX. Rebate agreements between the state and a pharmaceutical manufacturer will be separate from the federal rebates.

A rebate agreement between the state and a drug manufacturer for drugs provided to the Medicaid population, submitted to CMS on September 22, 2003 and entitled, "State of New Jersey Medicaid Supplemental Rebate Agreement," has been authorized by CMS.

Supplemental rebates received by the State in excess of those required under the national drug rebate agreement will be shared with the Federal government on the same percentage basis as applied under the national rebate agreement.

All drugs covered by the program, irrespective of a prior authorization agreement, will comply with the provisions of the national drug rebate agreement."

D. Insulin and diabetic testing materials, insulin syringes and needles, and family planning devices should not be in the drug section of the SPA, but instead should be moved to the home health benefits section of the state plan.
E. Please specify which products are covered as protein replacement supplements and food oils. Please note that nutritional products should not be covered as drugs and should also be moved to the home health section of the state plan.
F. The SPA provides that lipase inhibitors are subject to prior approval and shall be limited to certain obese individuals on Body Mass Index with or without certain co-morbidities. Please assure that the State is providing Medicaid coverage and compliance with FDA labeling and off-label compendia indications.
G. Please specify in the plan that the prior authorization requirements provides a response by telephone or other telecommunication device within 24 hours of a request for prior authorization.
H. Attachment 3.1-B, Page 12(a)(1), Paragraph 7: Please specify whether in emergencies, a 72-hour supply, or up to a six (6) day supply, may be dispensed before obtaining prior approval should have been included in the last sentence.

### Addendum to Attachment 3.1-A and 3.1-B, Page 12(a)(1)

A. Paragraph 1: Please specify the monthly prescription limits.
B. Please specify which products are covered as protein nutritional supplements.
C. Please conform whether limits for impotence drugs to those over 18 comply with the FDA labeled and compendia indications.

D. Please explain the basis for deleting the provision that prescribed drugs are available only to pregnant women and dependent children. Additionally please clarify the coverage group(s) for which prescribed drugs will be covered under fee-for-service basis and managed care.

Page 3 – Ann C. Kohler

E. Please specify in the plan that the prior authorization requirements provides a response by telephone or other telecommunication device within 24 hours of a request for prior authorization.

**Attachment 4.19b, Page 10**

A. Please clarify the term "reimbursable devices".
B. Please provide the documentation used to determine that the proposed EAC of AWP – 12.5% is the best estimate of prices that pharmacists in the State are generally and currently paying for prescribed drugs.
C. Please provide a copy of the public notice as required in the regulations at 42 CFR 447.205.
D. The plan section pagination goes from Section 1.16 then to Section 1.21. Please provide the previously omitted sections 1.17, 1.18, 1.19, and 1.20 or confirm that these sections had been deleted from the state plan.
E. As previously noted, Coverage for insulin and diabetic testing materials, insulin syringes and needles, and family planning devices should not be in the drug section of the SPA, but instead moved to the home health section of the state plan. Additionally, please specify which non-legend family planning drugs are covered.

**Supplemental Rebate Agreement**

A. Recitals: Please replace "for the benefit of the New Jersey's Medicaid Recipients providing such agreements are authorized by the Centers for Medicare & Medicaid Services (CMS) with "in addition to the rebates received under the CMS Agreement, pursuant to Section 1927 of the Social Security Act (42 U.S.C. §1396r-8), for the Manufacturer's Covered Product(s) utilization in the New Jersey Medicaid Program in which there is Medicaid federal financial participation. The parties also intend for this agreement to meet the requirements of federal law at Section 1927 of the Social Security Act (42 U.S.C. §1396r-8)".
B. Section I (b)(1): In the first sentence, please change "pharmacies" to "class of trade".
C. Section III (d): The confidentiality provisions of Section 1927 prohibits the use of the CMS URA for the purpose of determining the New Jersey Supplemental Rebate URA, nor can a manufacturer waive this provision. Please change this section to specify that the manufacturer will calculate and provide the Division of Medical Assistance and Health Services a CMS Rebate for the covered product(s).
D. Section III (i): Please insert "as authorized by CMS" after "necessary".
E. Section V (p): In the first sentence, insert "as authorized by CMS" after parties.
F. Section V (q): Please insert "as authorized by CMS" after Agreement.
G. Enclosure B: Please explain the basis for no supplemental rebates will apply for single source and innovator multiple source drugs, nevertheless, these products will be considered Supplemental Rebate Drugs.

**Payment Questions Applicable to all Section 4.19B Noninstitutional Services**

The questions posed in this section are the standard questions we are asking on all reimbursement SPA's pending at CMS. We ask that you provide the following information for each of the non-institutional services reimbursed pursuant to a methodology described in Attachment 4.19B of the State Plan.

Page 4 – Ann C. Kohler

A. Section 1903(a)(1) of the Social Security Act provides that Federal financial participation is only available for expenditures made by states for services under the approved State Plan. To ensure that program dollars are used only to pay for Medicaid services, we are asking states to confirm to CMS that pharmacies retain 100 percent of the payments provided to them as indicated in attachment 4.19B. Specifically please answer the following questions regarding the proposed amendment and current reimbursement under this section of the plan for pharmacy providers:

- Do pharmacy providers retain all of the state and Federal Medicaid payments (including dispensing fees, ingredient costs, benefit management costs, etc.) or are providers obligated to return any portion of the Medicaid payment to the state or local government entity, or any other intermediary organization or entity?
- If pharmacy providers are obligated to return any portion of the payment, the state must provide a full description of the repayment methodology including: a complete list of pharmacy providers that return their payments; the amount or percentage of the payment; and the disposition and use of the funds once they are returned to the state (i.e. general revenue fund, medical services account, etc.)

B. Section 1902(a)(2) provides that the lack of adequate funds from local sources will not result in the lowering the amount, duration, scope, or qualify of care and services available under the plan. Please describe how the state share of each type of Medicaid payment in attachment 4.19B is funded, including the payments made under the proposed amendment. Specifically:

- Describe whether the state share is from appropriation from the legislature, through intergovernmental transfer agreements (IGT), certified public expenditures (CPE), provider taxes, or any other mechanism used by the state to provide the state share.
- Please provide the estimate of total expenditures and state share amounts for each type of Medicaid payment.
- If any of the state share is being funded by IGTs or CPEs, please fully describe the matching arrangement. If CPEs are used, please describe how the state verifies that the expenditures being certified are eligible for Federal matching funds in accordance with 42 CFR 433.51(b).

C. Section 1902(a)(30) of the Act requires that payments for services be consistent with efficiency, economy, and quality of care. Section 1903(a)(1) provides for FFP to states for expenditures for services under an approved state plan. If you are providing, or propose to provide under this amendment, an enhanced or supplemental payment to pharmacy providers under section 4.19B of the plan, please provide the following information:

- The total amount for each enhanced or supplemental payment provided to pharmacy providers and the precise service cost this payment is covering.
- Indicate whether there are public pharmacy providers and if they are receiving payments in accordance with attachment 4.19B that in the aggregate exceed its

Page 5 – Ann C. Kohler

reasonable costs of providing services. If the payment exceeds the reasonable costs of services (for pharmacy that would be a reasonable dispensing fee and ingredient cost) please indicate whether the state recoups the excess and returns the Federal share of the excess to CMS on the quarterly expenditure report.

**Supplemental Rebate Agreement Questions**

Section 1927(b)(1)(B) of the Act requires that amounts received by a state under an agreement authorized by the Secretary shall be considered to be a reduction in the amount expended under the state plan for medical assistance for purposes of section 1903(a)(1). Therefore, any pharmacy expenditures subject to a supplemental rebate resulting from an agreement authorized by CMS (or agreements that CMS has not yet authorized because the state has failed to submit them) must be reduced by the rebate prior to the state submitting a claim for federal financial participation (FFP). This being the case, please respond to the following questions:

- Under the current state plan or proposed amendment, does the state receive a supplemental rebate or any revenue back from manufacturers in addition to the national Medicaid rebate? If so, does the state reduce the Medicaid expenditures under the state plan by the amount of the rebates or revenue?
- Under the current state plan or proposed amendment, does the state receive any goods, services or other benefits for their Medicaid covered population from the pharmaceutical manufacturer? Does the manufacturer provide these goods, services or other benefits for including the manufacturer's drugs on a Medicaid preferred drug list? Does the state receive goods or services from a manufacturer if the manufacturer's drugs are not subject to prior authorization?
- If the state receives goods or services from the manufacturer, what kinds of goods or services are provided? What is the value of these goods and services?
- Does the state share the savings realized by these manufacturer goods, services, revenues and rebates with the federal government by offsetting total computable Medicaid expenditures by the costs of these services?
- Are the costs of services, rebates or other rebate revenue provided by the manufacturer remitted to CMS in the quarter in which it was received by the State?

This request for additional information is made pursuant to Section 1915(f) of the Social Security Act and will stop the 90-day period for CMS' review and approval of a SPA. Upon receipt of your additional information, a new 90-day period will begin. In accordance with our guidelines to all State Medicaid Directors, dated January 2, 2001, we request that you provide a formal response to this request for additional information no later than 90-days from the date of this letter. If you do not provide us with a formal response by that date, we will conclude that the State has not established that the proposed SPA is consistent with all statutory and regulatory requirements and will initiate disapproval action on the amendment.

HHD295-0285

Because this amendment was submitted after January 2, 2001 and is effective on or after January 1, 2001, please be advised that we will defer Federal Financial Participation (FFP) for State payments

Page 6 -- Ann C. Kohler

made in accordance with this amendment until it is approved. Upon approval, FFP will be available for the period beginning with the effective date through the date of actual approval. Under revised CMS procedures for processing pharmacy-related SPAs, we ask that you respond to this request for additional information via e-mail, fax, and hard copy. Please e-mail your response to me at Lreed2@cms.hhs.gov and to Kim Howell at Khowell@cms.hhs.gov. Please fax your response to me at 410-786-5882. Also, please send hard copies to Sue Kelly at the New York Regional Office and to me at the address above. We appreciate your cooperation as we implement our new procedures.

If you have any questions regarding this request, please contact Kim Howell at (410) 786-6762.

                                                  Sincerely,

                                                  Larry Reed
                                                  Co-Leader
                                                  Pharmacy Team

cc:      Sue Kelly, ARA New York Regional Office
          Mark Gilbert, ARA Coordinator
          Julie Alberino, New York Regional Office
          Chong Tieng, Boston Regional Office

HHD295-0286      L