# Exhibit 9

WHITE & CASE

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel + 1 212 819 8200
Fax + 1 212 354 8113
www.whitecase.com

Direct Dial + 1 212 819 8705 smentzer@whitecase.com

April 15, 2011

VIA E-MAIL

Dianna Rosenheim, Esq.
Assistant Chief, Deputy Attorney General
Office of the Attorney General
Hughes Justice Complex
8th Floor, P.O. Box 112
Trenton, New Jersey 08625

Re: United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Actavis Mid Atlantic LLC, et al. - Civil Action No. 08-10852-PBS

Dear Dianna:

I write in response to your letter of April 8, 2011.

Over the past several months, Sandoz has made a reasonable, good-faith attempt to obtain responsive documents pursuant to the subpoena served on the State of New Jersey (the "State") in the above-referenced action. Following service of the subpoena in June 2010, counsel for the State and Sandoz met and conferred by telephone on September 22 and October 6, 2010 to discuss the defendants' request for and the State's production of responsive documents. Following those discussions, Sandoz reviewed a production previously made by the State in a prior proceeding, with an eye toward narrowing the categories of documents being requested and reducing the burden on the State of producing documents. Sandoz then wrote to the State on December 9, 2010, narrowing the categories of documents being requested, and requesting production by January 31, 2011. In a follow-up conversation, you represented that the State intended to produce documents by January 31. The State, however, did not produce documents by that date, and on February 1, 2011, you wrote saying that you would try to produce the documents in the next two weeks. No documents were produced by that time either, and we inquired again regarding the status of the production on February 16 and 23.

Having not yet received the State's production, Sandoz sent a letter on March 15 describing specific categories of documents that Sandoz requested the State include in its production. The letter on its face makes clear that Sandoz was not making "new requests," but rather that its

ABU DHABI ALMATY ANKARA BEIJING BERLIN BRATISLAVA BRUSSELS BUCHAREST BUDAPEST DOHA DÜSSELDORF FRANKFURT GENEVA HAMBURG HELSINKI HONG KONG ISTANBUL JOHANNESBURG LONDON LOS ANGELES MEXICO CITY MIAMI MOSCOW MUNICH NEW YORK PALO ALTO PARIS PRAGUE RIYADH SÃO PAULO SHANGHAI SINGAPORE STOCKHOLM TOKYO WARSAW WASHINGTON, DC

NEWYORK 8113858 (2K)

requests were encompassed by the subpoena served months earlier. Sandoz finally received a limited document production from the State on March 21.[1] Along with its production, the State objected on grounds of deliberative process privilege, asserting that "these documents or data will not be provided to the extent protected by this privilege." Sandoz reviewed the production and determined that it was incomplete. Accordingly, I wrote to you again on April 1, 2011 requesting that the State supplement its production, and setting forth, once more, the specific categories of documents that required supplementation. I also requested that, to the extent the State was withholding documents on grounds of deliberative process or any other privilege, the State provide a privilege log.

In your April 8 letter, the State demands that, as a precondition for even responding to Sandoz' requests, Sandoz agree to pay $175.00 per hour for an unspecified number of hours that the State will expend in responding. Moreover, the State does not commit to supplementing its document production and refuses to provide a privilege log for the documents it previously withheld on deliberative process privilege grounds, stating that producing such a log "would be impossible since your requests were so objectionable and boundless," even though Sandoz' significantly narrowed requests are clearly enumerated in the letters already in your possession. The State's position, we believe, is unreasonable, untenable, and has no basis in the Federal Rules. Accordingly, Sandoz does not agree to pay $175.00 per hour for the State to respond to our requests.

In a final effort to obtain the State's responses with regard to Sandoz' narrowed requests for documents, Sandoz has prepared an amended subpoena, a copy of which is enclosed with this letter. Please respond and produce responsive documents. To be clear, Sandoz is not requesting "new" documents in this amended subpoena. The amended subpoena narrows the requests made in the June 2010 subpoena and reiterates our March 15 and April 1, 2011 requests. Moreover, the amended subpoena does not supersede or replace the June 2010 subpoena, which remains in effect.

This letter is without prejudice to any rights or remedies that Sandoz and its co-defendants may have with regard to their subpoenas of the State (including without limitation the right to request production of additional documents). Sandoz and its co-defendants expressly reserve all such rights, including their rights to move at any time to compel responsive documents.

Sincerely,

Stefan Mentzer

<u>Enclosure</u>

---

[1] The cover letter that was enclosed with the production was dated March 11, 2011.

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

United States ex rel. Ven-A-Care of the Florida Keys
*Plaintiff*
v.
Actavis Mid Atlantic LLC, et al.
*Defendant*

08-CV-10852-PBS
MDL No. 1456
Civil Action No. Master File No. 01-12257-PBS
Subcategory No. 06-1137-PBS
(If the action is pending in another district, state where:
District of Massachusetts )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: State of New Jersey Department of Human Services, Attn: Office of Legal and Regulatory Affairs, Division of Medical Assistance and Health Services, 6 Quakerbridge Plaza, Hamilton, New Jersey 08619

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

See the attached Schedule A.

| Place: Office of Legal and Regulatory Affairs<br>Division of Medical Assistance and Health Services<br>6 Quakerbridge Plaza, Hamilton, New Jersey 08619 | Date and Time:<br>05/16/2011 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 04/15/2011

*CLERK OF COURT*

_________________________ OR [signature]
*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Defendant Sandoz Inc. , who issues or requests this subpoena, are:

Stefan Mentzer, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, smentzer@whitecase.com, 212 819 8705

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 08-CV-10852-PBS

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

This subpoena for *(name of individual and title, if any)*

was received by me on *(date)* __________ .

❒ I served the subpoena by delivering a copy to the named person as follows: __________

__________ on *(date)* __________ ; or

❒ I returned the subpoena unexecuted because: __________

__________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ __________ .

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: __________

__________
*Server's signature*

__________
*Printed name and title*

__________
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**SCHEDULE A**

## DEFINITIONS

1. The definitions set forth in Federal Rule of Civil Procedure 34 are hereby incorporated by reference.

2. "CMS" means the United States Centers for Medicare and Medicaid Services; its current and former agents, employees, commissioners; and its constituent parts and predecessors, including the Health Care Finance Administration ("HCFA"), the Department of Health and Human Services ("HHS"), the Social Rehabilitative Service, and the Department of Health, Education & Welfare; and any other person who currently or formerly acted or purported to act on its behalf.

3. "Communication" means any form of written or oral communication, both internal and external, including letters, memoranda, e-mail, telegrams, invoices, telephone conversations, face-to-face meetings, and other similar forms of communication or correspondence.

4. "Concerning," "referring to," "reflecting," "regarding," or "relating to" means, in whole or in part and directly or indirectly, about, analyzing, comprising, commenting on, concerning, connected to, constituting, containing, dealing with, describing, discussing, embodying, evaluating, evidencing, identifying, illustrating, in respect thereof, mentioning, noting, rebutting, recording, referring to, reflecting, refuting, regarding, relating to, responding to, setting forth, showing, stating, studying, summarizing, supporting, or in any way pertaining to, either explicitly or implicitly.

5. "Document" means all materials as defined in Federal Rule of Civil Procedure 34, including handwritten, printed, typed, recorded, photographic, and computer-generated materials

of any kind or nature, however produced or reproduced, whether stored electrically, electronically, electromechanically, mechanically, magnetically, optically, or through other means, and includes any drafts, preliminary and preparatory materials, originals, copies, e-mails, attachments, exhibits, removable notes, and translations or summaries thereof.

6. "Including" means including without limitation.

7. "MAC" means the "Maximum Allowable Cost" and shall have the meaning ascribed to that term pursuant to 42 C.F.R. § 50.504 and in the New Jersey State Plan, or as defined by the State Medicaid Program, and shall include any MAC that preceded the Federal Upper Limit instituted by regulation in 1987.

8. "State" means the State of New Jersey, its legislative and executive branches and all their agencies (including any agencies that purchase or pay for prescription drugs), boards, commissions, departments, divisions, fiscal agents, instrumentalities, intermediaries, and any other administrative bodies; its current and former agents, employees, officers, officials, attorneys, accountants, administrators, and other Persons or entities involved in administering, overseeing, or monitoring any State Program; and any other person who currently or formerly acted or purported to act on its behalf.

9. "State Medicaid Program" means the State agency responsible for carrying out the Medicaid program in the State; all its branches, agencies, committees, or departments; all its current and former administrators, staff, employees, agents, consultants, accountants, or attorneys; and any other person who currently or formerly acted or purported to act on its behalf.

10. "You" and "Your" refer to the State.

## INSTRUCTIONS

1.      If it is claimed that a Request calls for documents that are privileged, work product, or otherwise protected from disclosure and such privilege or work product is asserted, identify the nature of the privilege that is claimed, and provide the following information:  (a) the type of document (*e.g.*, letter, memorandum); (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author, addressee, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.  Any part of a document to which the State does not claim privilege or work product should be produced.  For each document withheld under a claim of attorney work product, also state whether the document was prepared in anticipation of litigation or trial and, if so, identify the anticipated litigation or trial upon which the assertion is based.

2.      Do not withhold the production of documents on grounds that they contain confidential, sensitive, or proprietary information.  Any such documents should be produced and appropriately labeled in accordance with the protective order entered in this case, a copy of which is attached hereto as **Exhibit A**.

3.      If a document responsive to a Request was, but is no longer in the State's possession, or subject to its control or in existence, identify the document and state whether:  (a) it is missing or lost, (b) it has been destroyed, (c) it has been transferred to others (identifying those persons to whom the documents have been transferred), or (d) it has been disposed of in some other manner.  In each instance, explain the circumstances surrounding each disposition and identify the person directing or authorizing its destruction or transfer and the dates of such direction or authorization.

4. These Requests are continuing in character and require You to supplement Your responses and produce additional responsive documents if You locate or obtain possession, custody, or control of such documents at any time prior to trial.

5. Unless otherwise specified, these Requests call for documents created or in existence from January 1, 1991 to the present.

## DOCUMENT REQUESTS

1. The entire "Section 4.19(b)" and "Attachment 4.19-B" of each New Jersey Medicaid State Plan in effect from January 1, 1987 to the present, including without limitation the entire Section 4.19(b) and Attachment 4.19-B associated with State Plan Amendment # TN 92-20, TN 95-6, TN 96-11, TN 97-19, TN 05-08-MA (NJ), and TN 08-15-MA (NJ).

2. All Communications with CMS regarding (a) the implementation of or amendments to "Section 4.19(b)" or "Attachment 4.19-B" of the New Jersey Medicaid State Plans concerning pharmaceutical reimbursements, or (b) any proposed or actual changes to the Medicaid formula for reimbursement of prescription drugs (including without limitation both the ingredient cost and dispensing fee components). This Request includes without limitation any communications and documentation exchanged with CMS regarding the proposed change in reimbursement to AWP minus 12.5% referenced on HHD295-0281 and HHD295-0283 in the letter from Larry Reed to Ann C. Kohler, a copy of which is attached hereto as **Exhibit B.**

3. All Communications with other third parties (such as pharmacies, OIG, GAO, Myers & Stauffer, and employees of Medicaid agencies of other States) regarding (a) the implementation of or amendments to "Section 4.19(b)" or "Attachment 4.19-B" of the New Jersey Medicaid State Plans concerning pharmaceutical reimbursements, or (b) any proposed or

actual changes to the Medicaid formula for reimbursement of prescription drugs (including without limitation both the ingredient cost and dispensing fee components).

4.     All internal Communications regarding (a) the implementation of or amendments to "Section 4.19(b)" or "Attachment 4.19-B" of the New Jersey Medicaid State Plans concerning pharmaceutical reimbursements, or (b) any proposed or actual changes to the Medicaid formula for reimbursement of prescription drugs (including without limitation both the ingredient cost and dispensing fee components).

5.     All reports, studies, surveys, or analyses commissioned or conducted by the State regarding prescription drug ingredient acquisition costs, dispensing costs, state MACs, or reimbursement under the State Medicaid Program, including without limitation any final reports and studies provided by Myers and Stauffer in or about 1982 and 1986.

# Exhibit A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION** | ) | **MDL NO. 1456** |
| | ) | **CIVIL ACTION: 01-CV-12257-PBS** |
| **THIS DOCUMENT RELATES TO ALL ACTIONS** | ) | **Judge Patti B. Saris** |

**PROTECTIVE ORDER**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby stipulated and agreed, by and between the parties, through their respective counsel, as follows:

**IT IS HEREBY STIPULATED AND ORDERED AS FOLLOWS:**

1. This Protective Order shall apply to the actions that have been consolidated for pretrial proceedings as *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257-PBS and all future actions that are transferred to MDL No. 1456 for coordinated or consolidated pretrial proceedings (collectively referred to herein as "the AWP Litigation").

2. The terms and conditions of this Order shall govern initial disclosures, the production and handling of documents, answers to interrogatories, responses to requests for admissions, depositions, pleadings, exhibits, other discovery taken pursuant to the Federal Rules of Civil Procedure, and all other information exchanged by the parties or by any third party in response to discovery requests or subpoenas.

3. The designation "CONFIDENTIAL" shall be limited to information that any producing party, including any third party, in good faith, believes to contain (a) proprietary or commercially sensitive information; (b) personal financial information; or (c) information that should otherwise be subject to confidential treatment under Rule 26(c)(7) of the Federal Rules of Civil Procedure.

4. Information designated "CONFIDENTIAL" may be disclosed only to the following persons:

(a) a named "Individual Patient Plaintiff" (e.g., persons identified in Paragraphs 13 through 21 of the September 6, 2002, Master Consolidated Class Action Complaint in the AWP Litigation ("Complaint")) who have executed a Certification attached hereto as Exhibit A;

(b) in-house counsel of a named party or, for a "Third-Party Payor" or "Non-Profit Association," as those terms are used in the Complaint, that does not have in-house counsel, one officer or employee of that party who is responsible for the AWP Litigation for that party and who has executed a Certification attached hereto as Exhibit A;

(c) outside counsel representing a named party in the AWP Litigation, including all paralegal assistants, and stenographic and clerical employees working under the supervision of such counsel;

(d) court reporters, interpreters, translators, copy services, graphic support services, document imaging services, and database/coding services retained by counsel, provided these individuals or an appropriate company official with authority to do so on behalf of the company executes a Certification attached hereto as Exhibit A;

(e) an expert or consultant who (i) is retained by any attorney described in Paragraphs 4(b) and (c) to assist with the AWP Litigation, (ii) is not a current employee of a party or subsidiary or affiliate of a party, and (iii) such expert or consultant executes a Certification attached hereto as Exhibit A;

(f) a person who prepared, received, or reviewed the "CONFIDENTIAL" information prior to its production in the AWP Litigation;

(g) during depositions and preparation for depositions, a deposition witness who is a current employee of the party that produced the applicable document(s) or who appears, based upon the document itself or testimony in a deposition, to have knowledge of the contents of the document designated "CONFIDENTIAL" or the specific events, transactions, discussions, or date reflected in the document, provided such witness executes a Certification attached hereto as Exhibit A;

(h) any private mediators utilized in the AWP Litigation, provided such person executes a Certification attached hereto as Exhibit A; and

(i) the Court, and any Special Masters and/or Mediators appointed by the Court, under seal.

5. The designation "HIGHLY CONFIDENTIAL" or "ATTORNEY EYES ONLY" (collectively referred to herein as "HIGHLY CONFIDENTIAL") shall be limited to information that any producing party, including third parties, in good faith, believes to contain (a) current and past (to the extent they reflect on current) methods, procedures, and processes relating to the pricing of pharmaceuticals; (b) current and past (to the extent they reflect on current) marketing plans and methods; (c) current and past (to the extent they reflect on current) business planning and financial information; (d) trade secrets; (e) past or current company personnel or employee information; and (f) other "CONFIDENTIAL" information (as defined in Paragraph 3) the disclosure of which is likely to cause competitive or commercial injury to the producing party.

6. Information designated "HIGHLY CONFIDENTIAL" may be disclosed only to the following persons:

(a) (i) in-house counsel of a named party who have executed a Certification attached hereto as Exhibit B may have access to all "HIGHLY CONFIDENTIAL" information; or (ii) in-house counsel of a named party who cannot satisfy the requirements of Exhibit B may have access only to "HIGHLY CONFIDENTIAL" information that identifies the company, employees, or drugs of the named party of the in-house counsel;

(b) outside counsel representing a named party in the AWP Litigation, including all paralegal assistants, and stenographic and clerical employees working under the supervision of such counsel;

(c) court reporters, interpreters, translators, copy services, graphic support services, document imaging services, and database/coding services retained by counsel, provided these individuals or an appropriate company official with authority to do so on behalf of the company executes a Certification attached hereto as Exhibit A;

(d) an expert or consultant who (i) is retained by any attorney described in Paragraphs 6(a) and (b) to assist with of the AWP Litigation, (ii) is not a current employee of a party or subsidiary or affiliate of a party; and (iii) such expert or consultant executes a Certification attached hereto as Exhibit A;

(e) a person who prepared, received, or reviewed the "HIGHLY CONFIDENTIAL" information prior to its production in the AWP Litigation;

(f) during depositions and preparation for depositions, a deposition witness who is a current employee of the party that produced the applicable document(s) or who appears, based upon the document itself or testimony in a deposition, to have knowledge of the contents of the document designated "HIGHLY CONFIDENTIAL" or the specific events, transactions, discussions, or date reflected in the document, provided such witness executes a Certification attached hereto as Exhibit A;

(g) any private mediators utilized in the AWP Litigation, provided such person executes a Certification attached hereto as Exhibit A; and

(h) the Court, and any Special Masters and/or Mediators appointed by the Court, under seal.

7. This Order does not apply to any information or documents:

(a) already in the possession of a receiving party and not subject to any obligation of confidentiality; and

(b) acquired by a receiving party from a third party without being designated confidential or similar material unless the third party received the information or documents subject to any form of confidentiality protection.

8. All information designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in accordance with the terms of this Order and produced or exchanged in the course of the AWP Litigation shall be used or disclosed solely for the purpose of the AWP Litigation and in accordance with the provisions of this Order. Such "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information shall not be used for any business purpose, or in any other litigation or other proceeding ,or for any other purpose, except by Court Order or otherwise required by law.

9. Any person or party receiving "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information that receives a request or subpoena for production or disclosure of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information shall promptly give notice by facsimile to the producing party identifying the information sought and enclosing a copy of the subpoena or request. Provided that the producing party makes a timely motion or other application for relief from the subpoena or other request in the appropriate forum, the person or party subject to the subpoena or other request shall not produce or disclose the requested

information without consent of the producing party or until ordered by a court of competent jurisdiction.

10. Counsel shall inform each person to whom they disclose or give access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information the terms of this Order, as well as the obligation to comply with those terms. Persons receiving "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information are prohibited from disclosing it to any person except in conformance with this Order. The recipient of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information agrees to subject himself/herself to the jurisdiction of the Court for the purpose of any proceedings relating to the performance under, compliance with, or violation of this Order. The parties agree, and agree to inform each person to whom they disclose or give access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, that damages for violation of this Order are not an adequate remedy and that the appropriate remedy is injunctive relief. Counsel agrees to maintain a file of all Certifications (Exhibits A and B) required by this Order.

11. The recipient of any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information shall maintain such information in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to his or her own confidential or proprietary information.

12. "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information may include or be included in any document, physical object, tangible thing, transcript or oral testimony or recorded statement of counsel, such as by way of example and not limitation, transcripts, answers to interrogatories and other responses to discovery requests, pleadings, briefs, summaries, notes, abstracts, motions, drawings, illustrations, diagrams, blueprints, journal entries, logbooks, compositions, devices, test reports, programs, code, commands, electronic media, databases, and any other records and reports which comprise, embody or summarize information about the producing party's business, products, practices and procedures.

13. In designating information "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," the producing or testifying party or person, including third parties, will make such designation only as to that information that it in good faith believes is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." All or any part of a document, tangible item, discovery response or pleading disclosed, produced, or filed by any party or person in the AWP Litigation may be designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by the producing or disclosing party or person by marking the appropriate legend on the face of the document and each page so designated. With respect to tangible items, the appropriate legend shall be marked on the face of the tangible item, if practicable, or by delivering at the time of disclosure, production or filing to the party to which disclosure is made, written notice that such tangible item is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

14. The parties may designate the deposition testimony and exhibits (or portions thereof) of any witness in the AWP Litigation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" at the time of the deposition by advising the reporter and all parties of such fact during the deposition. If any portion of a videotaped deposition is designated pursuant to this Paragraph, the videocassette or other videotape or CD-ROM container shall be labeled with the appropriate legend. Unless a shortened time period is requested as set forth below, within thirty (30) days of receipt of a transcript, the deponent, his/her counsel, or any other party may redesignate all or portions of the transcript "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." The deponent, his/her counsel or any other party shall list on a separate piece of paper the numbers of the pages of the deposition transcript containing "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information and serve the same on opposing counsel. Pending such designation, the entire deposition transcript, including exhibits, shall be deemed "HIGHLY CONFIDENTIAL" information. If no designation is made within thirty (30) days after receipt of the transcript, the transcript shall be considered not to contain any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information.

(a) a party may reasonably request a shortening of the time period within which a confidentiality designation for a deposition transcript must be made for the purpose of conducting effective discovery, and consent to such a request shall not be unreasonably withheld.

In the event of a dispute as to a request for a shortened time period, the parties shall first try to dispose of such dispute in good faith on an informal basis. If the dispute cannot be resolved within five (5) business days, the party requesting the shortened time period may request appropriate relief from the Court. The parties agree, subject to Court approval, that such relief sought can be in the form of a telephone conference to be scheduled at the Court's earliest convenience with the objective of obtaining an immediate resolution of the dispute;

15. Any documents or pleadings to be filed with the Court that contain "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, shall be filed under seal in an envelope marked "CONFIDENTIAL -- Filed Under Seal Pursuant to Court Order" or "HIGHLY CONFIDENTIAL -- Filed Under Seal Pursuant to Court Order" and bear the caption of the AWP Litigation and pleading or document title and such other description as will allow the Court to readily identify the documents or information or portions thereof so designated.

16. At the request of a producing party, the Court may limit or restrict person(s) not permitted access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information from attending any hearing or deposition at which such information is revealed.

17. Nothing in this Order shall be construed in any way as a finding that information designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" actually is "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information. Any party may object, in writing, to the designation by another party by specifying the information in issue and its grounds for questioning the designation. A party shall not be obligated to challenge the propriety of a designation at the time made, and a failure to do so shall not preclude any subsequent challenge. In the event that any party to the AWP Litigation disagrees at any point in these proceedings with the designation by the producing party, the parties shall try first to dispose of such dispute in good faith on an informal basis. If the parties' cannot resolve the dispute within twenty-one (21) days of service of a written objection, the party challenging the designation may file a motion to compel within twenty-one (21) days after the parties' informal attempts at resolution have concluded. The information, documents or materials shall continue to receive the protection of their designation until the Court rules on the motion. The party that designated the information

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall have the burden of demonstrating the propriety of its designation.

18. Nothing herein shall be construed to be an admission of relevance or to affect, in any way, the admissibility of any documents, testimony or other evidence in the AWP Litigation. This Order is without prejudice to the right of any party to bring before the Court at any time the question of whether any particular information is or is not discoverable or admissible.

19. Nothing in this Order shall bar or otherwise restrict any attorney herein from rendering advice to clients with respect to the AWP Litigation and in the course thereof, referring to or relying upon the attorney's examination of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information so long as the attorney does not disclose "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information.

20. The inadvertent or mistaken disclosure by a producing party of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information shall not constitute a waiver of any claim of confidentiality except where: (a) the producing party notifies a receiving party in writing of such inadvertent or mistaken disclosure within ten (10) business days of becoming aware of such disclosure and, (b) within thirty (30) days of such notice, the producing party fails to provide properly redesignated documents to the receiving party. During the thirty (30) day period after notice, the materials shall be treated as designated in the producing party's notice. Upon receipt of properly redesignated documents, the receiving party shall return all unmarked or incorrectly designated documents and other materials to the producing party within five (5) business days. The receiving party shall not retain copies thereof and shall treat information contained in said documents and materials and any summaries or notes thereof as appropriately marked pursuant to the producing party's notice.

21. Should any "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information be disclosed, through inadvertence or otherwise, by a receiving party to any person or party not authorized under this Order, then the receiving party shall: (a) use its best efforts to obtain the return of any such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information and to

bind such person or party to the terms of this Order; (b) within seven (7) business days of the discovery of such disclosure, inform such person of all provisions of this Order and identify such person or party to the producing party; and (c) request such person or party to sign the Certification attached hereto as Exhibit A or B. The executed Certification shall be served upon counsel for the producing party within ten (10) business days of its execution by the party to whom the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information was inadvertently disclosed. Nothing in this Paragraph is intended to limit the remedies that the producing party may pursue for breach of this Order.

22. A producing person or entity who is not a party in the AWP Litigation shall be entitled to the protections afforded herein by signing a copy of this Order and serving same on all counsel of record. Thereafter, a producing person or entity may designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" only testimony, information, documents or things that such producing person or entity has produced or provided in the action.

23. This Order shall survive the termination of this litigation and the transferred actions and shall continue in full force and effect thereafter.

24. After final termination of this action, the outside counsel for a named party may each retain one copy of deposition transcripts and exhibits, Court transcripts and exhibits, and documents and other materials submitted to the Court. Nothing herein shall require the return or destruction of attorney work product. Such material shall continue to be treated as designated under this Order. Within sixty (60) days after final termination of the AWP Litigation, at the request of the producing party, counsel for the receiving party either shall (a) return all additional "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information in his/her possession, custody or control or in the custody of any authorized agents, outside experts and consultants retained or utilized by counsel for the receiving party to counsel for the party who has provided such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information in discovery or (b) certify destruction thereof to the producing party's counsel. As to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information reflected in computer databases or backup tapes or

any other electronic form, the receiving party shall erase all such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information.

25. Pursuant to Local Rule 7.2, within thirty (30) days after final termination of the AWP Litigation, outside counsel for a named party shall retrieve from the Court all "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information that it filed with the Court during the AWP Litigation and return or dispose of such information in accordance with Paragraph 24.

26. If information subject to a claim of attorney-client privilege or work product immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information. If a party has inadvertently or mistakenly produced information subject to a claim of immunity or privilege, upon written request made by the producing party within twenty-one (21) days of discovery of such inadvertent or mistaken production, the information for which a claim of inadvertent production is made, including all copies, shall be returned within seven (7) business days of such request unless the receiving party intends to challenge the producing party's assertion of privilege or immunity. All copies of inadvertently or mistakenly produced documents shall be destroyed, and any document or material information reflecting the contents of the inadvertently produced information shall be expunged. If a receiving party objects to the return of such information within the seven (7) business day period described above, the producing party may move the Court for an order compelling the return of such information. Pending the Court's ruling, a receiving party may retain the inadvertently or mistakenly produced documents in a sealed envelope and shall not make any use of such information.

27. Provided a party has followed the procedures set forth herein, the Court deems that the party has complied with the requirements of Local Rule 7.2, Impounded and Confidential Materials.

28. Nothing in this Order shall prevent any party from applying to the Court for relief therefrom, or from applying to the Court for further or additional protective orders or modification of this Order.

29. It is further ordered that all pleadings, memoranda or other documents filed in court shall be treated as public regardless of the terms of this order unless the counsel for the party seeking protection certifies and explains why the material is confidential. To the extent that a brief or other document contains some confidential information, it shall be redacted in a public version.

Dated: 12/13, 2002

Patti B. Saris
United States District Judge

## CERTIFICATION – EXHIBIT A

I hereby certify that I have read the attached Protective Order in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257-PBS, dated ____________________, 2002 (the "Order"), and I agree that I will not reveal "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information to, or discuss such with, any person who is not entitled to receive "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information in accordance with the Order, I will use "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information only for the purposes of facilitating the prosecution or defense of the action and not for any business or other purpose. I will otherwise keep all "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" information confidential in accordance with this Order. I agree that the United States District Court for the District of Massachusetts has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

Dated: ______________________________ ______________________________

______________________________
[Print Name]

______________________________
[Company]

[Address]

IN-HOUSE COUNSEL CERTIFICATION – EXHIBIT B

I hereby certify that I have read the attached Protective Order in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257-PBS, dated ____________________, 2002 (the "Order"), and I agree that I will not reveal "HIGHLY CONFIDENTIAL" information to, or discuss such with, any person who is not entitled to receive "HIGHLY CONFIDENTIAL" information in accordance with the Order. I will use "HIGHLY CONFIDENTIAL" information only for the purposes of facilitating the prosecution or defense of the action and not for any business or other purpose. I will otherwise keep all "HIGHLY CONFIDENTIAL" information confidential in accordance with this Order.

I agree that I will only review "HIGHLY CONFIDENTIAL" information in the offices of outside counsel or other location designated by outside counsel. I will not remove such information from outside counsel's office or other location designated by outside counsel, nor make copies of or maintain any "HIGHLY CONFIDENTIAL" information at the offices at which I work.

My professional relationship with the party I represent and its personnel is strictly one of legal counsel. Although I may attend meetings where others discuss competitive decision-making, I am not involved in competitive decision-making (as discussed in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) and *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577 (Fed. Cir. 1991)), for or on behalf of the party I represent or any other party that might gain a competitive advantage from access to the material disclosed under the Order. Other than legal advice, I do not provide advice or participate in any decisions of such parties in matters involving similar or corresponding information about a competitor. This means that I do not, other than providing legal advice, for example, provide advice concerning decisions about, pricing, marketing or advertising strategies, product research and development, product design or

competitive structuring and compositions of bids, offers, or proposals, with respect to which the use of "HIGHLY CONFIDENTIAL" information could provide a competitive advantage.

I have attached a detailed narrative providing the following information: (a) my position and responsibilities as in-house counsel; and (b) the person(s) to whom I report, and their position(s) and responsibilities.

I further agree that the United States District Court for the District of Massachusetts has jurisdiction to enforce the terms of the Order, and I consent to jurisdiction of that Court over my person for that purpose. I will otherwise be bound by the strictures of the Order.

Dated: ______________________ ______________________

______________________
[Print Name]

______________________
[Company]

______________________
[Address]

**CERTIFICATE OF SERVICE**

I certify that on December 13, 2002, I caused a true and correct copy of the foregoing JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER and proposed PROTECTIVE ORDER to be served on all counsel of record by electronic service in accordance with Case Management Order No. 2.

Juliet S. Sorensen

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that counsel for defendants conferred with counsel for plaintiff on this motion, and that counsel for plaintiff joined in the motion.

Juliet S. Sorensen

# Exhibit B

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C2-21-15
Baltimore, Maryland 21244-1850

**Centers for Medicaid & State Operations**

Ms. Ann C. Kohler
Director
New Jersey Department of Human Services
P.O. Box 712
Trenton, NJ 08625-0712

Dear Ms. Kohler:

This letter is being sent to your office twice in order to correct the addressee and to correct the reference to the amendment number. We have reviewed New Jersey Plan Amendment (SPA) 03-05, Prescribed Drugs, received in the Regional Office on September 22, 2003. This amendment requires the use of generic drugs for all multi-source drugs, allows for the negotiation of supplemental rebates for generic drugs, and changes the estimated acquistion cost for all drugs from AWP minus 10 percent to AWP minus 12.5 percent. In addition, it allows for the return of unit dose drugs for patients in long-term care facilities and a managed care organization pharmacy carve-out. You have requested an effective date of September 1, 2003 for this amendment. We have reviewed your proposal and are unable to approve it as submitted. Therefore, we requesting additional information pursuant to Section 1915(f) of the Social Security Act (the Act).

We have had communications with your staff concerning the proposed changes to your Medicaid state plan and your staff has been instrumental in responding to our concerns. Nevertheless, before we can continue processing this amendment, we need additional information as outlined below.

**Addenda to Attachment 3.1-A and 3.1-B, Page 12a:**

A. The SPA provides that multi-source brand name drugs with a narrow therapeutic index (NTI) and other drugs may be excluded from prior authorization, as determined by the Commissioner. Based on information the Food and Drug Administration (FDA) maintains, NTI drugs offer the same therapeutically equivalence that other drugs have. Therefore, you may want to reconsider exempting NTI drugs from the prior authorization requirements. Also, for all drugs included or excluded for prior authorization, please indicate what clinical considerations are used in this determination.

B. Although the prior authorization requirements for multi-source drug allow a ten-day supply to be dispensed pending receipt of prior authorization, please specify in the plan that the prior authorization requirements for multi-source drugs, as well as other covered outpatient drugs provides a response by telephone or other telecommunication device within 24 hours of a request for prior authorization.

C. Paragraph 2: We suggest you replace this paragraph with the following language: "The state is in compliance with section 1927 of the Social Security Act. The state will cover drugs of federal rebate participating manufacturers. The state is in compliance with reporting

requirements for utilization and restrictions to coverage. Pharmaceutical manufacturers can audit utilization data. The unit rebate amount is confidential and cannot be disclosed for purposes other than rebate invoicing and verification.

The state will be negotiating supplemental rebates in addition to the federal rebates provided for in Title XIX. Rebate agreements between the state and a pharmaceutical manufacturer will be separate from the federal rebates.

A rebate agreement between the state and a drug manufacturer for drugs provided to the Medicaid population, submitted to CMS on September 22, 2003 and entitled, "State of New Jersey Medicaid Supplemental Rebate Agreement," has been authorized by CMS.

Supplemental rebates received by the State in excess of those required under the national drug rebate agreement will be shared with the Federal government on the same percentage basis as applied under the national rebate agreement.

All drugs covered by the program, irrespective of a prior authorization agreement, will comply with the provisions of the national drug rebate agreement."

D. Insulin and diabetic testing materials, insulin syringes and needles, and family planning devices should not be in the drug section of the SPA, but instead should be moved to the home health benefits section of the state plan.

E. Please specify which products are covered as protein replacement supplements and food oils. Please note that nutritional products should not be covered as drugs and should also be moved to the home health section of the state plan.

F. The SPA provides that lipase inhibitors are subject to prior approval and shall be limited to certain obese individuals on Body Mass Index with or without certain co-morbidities. Please assure that the State is providing Medicaid coverage and compliance with FDA labeling and off-label compendia indications.

G. Please specify in the plan that the prior authorization requirements provides a response by telephone or other telecommunication device within 24 hours of a request for prior authorization.

H. Attachment 3.1-B, Page 12(a)(1), Paragraph 7: Please specify whether in emergencies, a 72-hour supply, or up to a six (6) day supply, may be dispensed before obtaining prior approval should have been included in the last sentence.

**<u>Addendum to Attachment 3.1-A and 3.1-B, Page 12(a)(1)</u>**

A. Paragraph 1: Please specify the monthly prescription limits.

B. Please specify which products are covered as protein nutritional supplements.

C. Please conform whether limits for impotence drugs to those over 18 comply with the FDA labeled and compendia indications.

D. Please explain the basis for deleting the provision that prescribed drugs are available only to pregnant women and dependent children. Additionally please clarify the coverage group(s) for which prescribed drugs will be covered under fee-for-service basis and managed care.

E. Please specify in the plan that the prior authorization requirements provides a response by telephone or other telecommunication device within 24 hours of a request for prior authorization.

**Attachment 4.19b, Page 10**

A. Please clarify the term "reimbursable devices".
B. Please provide the documentation used to determine that the proposed EAC of AWP – 12.5% is the best estimate of prices that pharmacists in the State are generally and currently paying for prescribed drugs.
C. Please provide a copy of the public notice as required in the regulations at 42 CFR 447.205.
D. The plan section pagination goes from Section 1.16 then to Section 1.21. Please provide the previously omitted sections 1.17, 1.18, 1.19, and 1.20 or confirm that these sections had been deleted from the state plan.
E. As previously noted, Coverage for insulin and diabetic testing materials, insulin syringes and needles, and family planning devices should not be in the drug section of the SPA, but instead moved to the home health section of the state plan. Additionally, please specify which non-legend family planning drugs are covered.

**Supplemental Rebate Agreement**

A. Recitals: Please replace "for the benefit of the New Jersey's Medicaid Recipients providing such agreements are authorized by the Centers for Medicare & Medicaid Services (CMS) with "in addition to the rebates received under the CMS Agreement, pursuant to Section 1927 of the Social Security Act (42 U.S.C. §1396r-8), for the Manufacturer's Covered Product(s) utilization in the New Jersey Medicaid Program in which there is Medicaid federal financial participation. The parties also intend for this agreement to meet the requirements of federal law at Section 1927 of the Social Security Act (42 U.S.C. §1396r-8)".
B. Section I (b)(1): In the first sentence, please change "pharmacies" to "class of trade".
C. Section III (d): The confidentiality provisions of Section 1927 prohibits the use of the CMS URA for the purpose of determining the New Jersey Supplemental Rebate URA, nor can a manufacturer waive this provision. Please change this section to specify that the manufacturer will calculate and provide the Division of Medical Assistance and Health Services a CMS Rebate for the covered product(s).
D. Section III (i): Please insert "as authorized by CMS" after "necessary".
E. Section V (p): In the first sentence, insert "as authorized by CMS" after parties.
F. Section V (q): Please insert "as authorized by CMS" after Agreement.
G. Enclosure B: Please explain the basis for no supplemental rebates will apply for single source and innovator multiple source drugs, nevertheless, these products will be considered Supplemental Rebate Drugs.

**Payment Questions Applicable to all Section 4.19B Noninstitutional Services**

The questions posed in this section are the standard questions we are asking on all reimbursement SPA's pending at CMS. We ask that you provide the following information for each of the non-institutional services reimbursed pursuant to a methodology described in Attachment 4.19B of the State Plan.

A. Section 1903(a)(1) of the Social Security Act provides that Federal financial participation is only available for expenditures made by states for services under the approved State Plan. To ensure that program dollars are used only to pay for Medicaid services, we are asking states to confirm to CMS that pharmacies retain 100 percent of the payments provided to them as indicated in attachment 4.19B. Specifically please answer the following questions regarding the proposed amendment and current reimbursement under this section of the plan for pharmacy providers:

- Do pharmacy providers retain all of the state and Federal Medicaid payments (including dispensing fees, ingredient costs, benefit management costs, etc.) or are providers obligated to return any portion of the Medicaid payment to the state or local government entity, or any other intermediary organization or entity?
- If pharmacy providers are obligated to return any portion of the payment, the state must provide a full description of the repayment methodology including: a complete list of pharmacy providers that return their payments; the amount or percentage of the payment; and the disposition and use of the funds once they are returned to the state (i.e. general revenue fund, medical services account, etc.)

B. Section 1902(a)(2) provides that the lack of adequate funds from local sources will not result in the lowering the amount, duration, scope, or qualify of care and services available under the plan. Please describe how the state share of each type of Medicaid payment in attachment 4.19B is funded, including the payments made under the proposed amendment. Specifically:

- Describe whether the state share is from appropriation from the legislature, through intergovernmental transfer agreements (IGT), certified public expenditures (CPE), provider taxes, or any other mechanism used by the state to provide the state share.
- Please provide the estimate of total expenditures and state share amounts for each type of Medicaid payment.
- If any of the state share is being funded by IGTs or CPEs, please fully describe the matching arrangement. If CPEs are used, please describe how the state verifies that the expenditures being certified are eligible for Federal matching funds in accordance with 42 CFR 433.51(b).

C. Section 1902(a)(30) of the Act requires that payments for services be consistent with efficiency, economy, and quality of care. Section 1903(a)(1) provides for FFP to states for expenditures for services under an approved state plan. If you are providing, or propose to provide under this amendment, an enhanced or supplemental payment to pharmacy providers under section 4.19B of the plan, please provide the following information:

- The total amount for each enhanced or supplemental payment provided to pharmacy providers and the precise service cost this payment is covering.
- Indicate whether there are public pharmacy providers and if they are receiving payments in accordance with attachment 4.19B that in the aggregate exceed its

reasonable costs of providing services. If the payment exceeds the reasonable costs of services (for pharmacy that would be a reasonable dispensing fee and ingredient cost) please indicate whether the state recoups the excess and returns the Federal share of the excess to CMS on the quarterly expenditure report.

**Supplemental Rebate Agreement Questions**

Section 1927(b)(1)(B) of the Act requires that amounts received by a state under an agreement authorized by the Secretary shall be considered to be a reduction in the amount expended under the state plan for medical assistance for purposes of section 1903(a)(1). Therefore, any pharmacy expenditures subject to a supplemental rebate resulting from an agreement authorized by CMS (or agreements that CMS has not yet authorized because the state has failed to submit them) must be reduced by the rebate prior to the state submitting a claim for federal financial participation (FFP). This being the case, please respond to the following questions:

- Under the current state plan or proposed amendment, does the state receive a supplemental rebate or any revenue back from manufacturers in addition to the national Medicaid rebate? If so, does the state reduce the Medicaid expenditures under the state plan by the amount of the rebates or revenue?
- Under the current state plan or proposed amendment, does the state receive any goods, services or other benefits for their Medicaid covered population from the pharmaceutical manufacturer? Does the manufacturer provide these goods, services or other benefits for including the manufacturer's drugs on a Medicaid preferred drug list? Does the state receive goods or services from a manufacturer if the manufacturer's drugs are not subject to prior authorization?
- If the state receives goods or services from the manufacturer, what kinds of goods or services are provided? What is the value of these goods and services?
- Does the state share the savings realized by these manufacturer goods, services, revenues and rebates with the federal government by offsetting total computable Medicaid expenditures by the costs of these services?
- Are the costs of services, rebates or other rebate revenue provided by the manufacturer remitted to CMS in the quarter in which it was received by the State?

This request for additional information is made pursuant to Section 1915(f) of the Social Security Act and will stop the 90-day period for CMS' review and approval of a SPA. Upon receipt of your additional information, a new 90-day period will begin. In accordance with our guidelines to all State Medicaid Directors, dated January 2, 2001, we request that you provide a formal response to this request for additional information no later than 90-days from the date of this letter. If you do not provide us with a formal response by that date, we will conclude that the State has not established that the proposed SPA is consistent with all statutory and regulatory requirements and will initiate disapproval action on the amendment.

Because this amendment was submitted after January 2, 2001 and is effective on or after January 1, 2001, please be advised that we will defer Federal Financial Participation (FFP) for State payments

made in accordance with this amendment until it is approved. Upon approval, FFP will be available for the period beginning with the effective date through the date of actual approval. Under revised CMS procedures for processing pharmacy-related SPAs, we ask that you respond to this request for additional information via e-mail, fax, and hard copy. Please e-mail your response to me at Lreed2@cms.hhs.gov and to Kim Howell at Khowell@cms.hhs.gov. Please fax your response to me at 410-786-5882. Also, please send hard copies to Sue Kelly at the New York Regional Office and to me at the address above. We appreciate your cooperation as we implement our new procedures.

If you have any questions regarding this request, please contact Kim Howell at (410) 786-6762.

Sincerely,

Larry Reed
Co-Leader
Pharmacy Team

cc: Sue Kelly, ARA New York Regional Office
Mark Gilbert, ARA Coordinator
Julie Alberino, New York Regional Office
Chong Tieng, Boston Regional Office