# EXHIBIT B

## tIN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,  :
               Plaintiff  :
                    :
v.  :  No. 212 M.D. 2004
                    :
Bristol-Myers Squibb Company, et al.  :
               Defendant

## DECISION AWARDING INJUNCTION and RESTORATION

**AND NOW**, this 10th day of September, 2010, after trial in the above-referenced matter, it is **ORDERED** and **DECREED** as follows:

1. Pursuant to Section 4 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §201-4, the Court finds that Defendant Bristol-Myers Squibb Company violated the statute by engaging in unfair or deceptive practices;[1] accordingly, a perpetual injunction is hereby issued restraining Defendant Bristol-Myers Squibb Company, its agents, attorneys, employees, and assigns, and each of them, from the following such acts:

---

[1] The Court acknowledges the jury verdicts finding neither negligent misrepresentation nor fraudulent misrepresentation. The Court concludes, however, that the standard to be applied in a UTPCPL enforcement action is different. See Weinberg v. Sun Company, Inc., 565 Pa. 612, 777 A.2d 442 (2001). Pursuant to this conclusion, the Court determines that a plaintiff's knowledge of the inaccuracy of a representation and a plaintiff's lack of reliance, while factors to be considered, are not necessarily complete defenses in an enforcement action brought in the public interest under Section 4 of the UTPCPL. See In re Pharm. Indus. Average Wholesale Price Litig., 491 F.Supp.2d 20, 93-95 (D. Mass. 2007); see also Com. v. Parisi, 873 A.2d 3 (Pa. Cmwlth. 2005)(UTPCPL to be liberally construed to effectuate legislative goal of consumer protection).

(a) Contributing in any manner, directly or indirectly, to the reporting to the Pennsylvania Department of Public Welfare or to the PACE program of inflated average wholesale prices for Bristol-Myers Squibb drugs; and,

(b) Contributing in any manner, directly or indirectly, to the creation, promotion or marketing of "spreads" (the difference between the price at which a drug is reimbursed to a provider and the acquisition price of the drug paid by the provider) for Bristol-Myers Squibb drugs which are reimbursed by the Pennsylvania Department of Public Welfare or by the PACE program; and

2. Pursuant to Section 4.1 of the UTPCPL, 73 P.S. §201-4.1, the Court directs that Defendant Bristol-Myers Squibb restore to the Commonwealth of Pennsylvania money in the amount of $27,617,952;[2] and

3. Pursuant to Section 8(b) of the UTPCPL, 73 P.S. §201-8(b), the Court finds that Defendant Bristol-Myers Squibb willfully used practices declared unlawful by the statute, including the acts described in Paragraph 1; however, the

---

[2] The Court accepts as credible the damage methodology excluding interest set forth in Exhibits 6A, 6B, and 6C of the Revised Expert Report of Frederick R. Warren-Boulton, Ph.D. (August 9, 2010), for the period 1991 through 2004, with one exception. The Court accepts as credible only that part of the testimony of Gregory K. Bell, Ph.D., that the damage estimates of Dr. Warren-Boulton are inflated by the inclusion of drugs not in this case. Therefore, the Court reduced Dr. Warren-Boulton's damage estimates by 40%.

Court has insufficient information to calculate civil penalties, and it therefore declines to award any;[3] and

    4. The Court awards no damages or reasonable attorneys' fees pursuant to Section 9.2 of the UTPCPL, 73 P.S. §901-9.2.

    5. This Decision is not immediately effective and shall not become effective until the completion of post-trial practice. See Pa. R.A.P. 311(a)(4). The period for filing post-trial motions regarding the jury verdict and this non-jury decision shall commence with the filing of this Decision.

_____
ROBERT SIMPSON, Judge

Certified from the Record

SEP 1 0 2010

And Order Exit

---

[3] The Court accepts as credible the civil penalty methodology set forth at page 11 and Exhibit 9 of the Revised Expert Report of Frederick R. Warren-Boulton, Ph.D. (August 9, 2010), assuming a violation occurred each time the reported AWP changed for a Bristol-Myers Squibb Company drug, and assessing each violation at $1000. The calculations, however, are not limited to the period 1991-2004 for which restoration is awarded and may be inflated by drugs not in the case. Accordingly, the calculations were not adopted by the Court.