# EXHIBIT C

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
      Plaintiff :
            :
   v.        :  No. 212 M.D. 2004
            :
Johnson & Johnson; Alza Corporation; :  Argued: October 18, 2010
Centocor, Inc.; Ethicon, Inc.; Janssen :
Pharmaceutical Products, L.P.;
McNeil-PPC, Inc.; Ortho Biotech, Inc.; :
Ortho Biotech Products; L.P.;
Ortho-McNeil Pharmaceutical, Inc., et :
al.           :
      Defendants :

BEFORE: HONORABLE ROBERT SIMPSON, Judge

OPINION NOT REPORTED   FILED: December 7, 2010
MEMORANDUM OPINION
BY JUDGE SIMPSON

## NON-JURY DECISION

   **AND NOW**, this 7th day of December, 2010, after non-jury trial in the above-captioned matter involving the Johnson & Johnson Defendants, it is **ORDERED** and **DECREED** as follows:

   1. On Count XXVIII of the Corrected Amended Complaint (Unjust Enrichment), the Court enters a verdict in favor of the Johnson & Johnson Defendants and against the Plaintiff; and

2. On Count XXIX of the Corrected Amended Complaint (Misrepresentation/Fraud), the Court enters a verdict in favor of the Johnson & Johnson Defendants and against the Plaintiff; and

3. On Count XXX of the Corrected Amended Complaint (Violation of the Pennsylvania Unfair Trade Practice and Consumer Protection Law), the Court takes the following actions:

a. Pursuant to Section 4 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §201-4, the Court finds that Johnson & Johnson Defendants violated the statute by engaging in unfair or deceptive practices;[1] accordingly, a perpetual injunction is hereby issued restraining Johnson & Johnson Defendants, their agents, attorneys, employees, and assigns, and each of them, from the following such acts:

---

[1] The standard in an enforcement action applying the catch-all provision of the UTPCPL is different than the standard applicable to common law fraud and misrepresentation claims. Commonwealth v. Manson, 903 A.2d 69 (Pa. Cmwlth. 2006); Commonwealth v. Percudani, 825 A.2d 743 (Pa. Cmwlth. 2003); see Weinberg v. Sun Company, Inc., 565 Pa. 612, 777 A.2d 442 (2001). Under this approach, a plaintiff's knowledge of the inaccuracy of a representation and a plaintiff's lack of reliance, while factors to be considered, are not necessarily complete defenses in an enforcement action brought in the public interest. See Manson; Percudani; see also In re Pharm. Indus. Average Wholesale Price Litig., 491 F.Supp.2d 20, 93-95 (D. Mass. 2007) (in AWP litigation under unfair trade practice statute, private payers' knowledge that AWPs were not actual averages of wholesale prices did not shield drug manufacturers from liability); cf. Helbros Watch Co. v. Federal Trade Comm'n, 310 F.2d 868 (D.C. Cir. 1962), cert. denied, 372 U.S. 976 (1963) (fictitious pricing or fictitious pre-ticketing is illegal even if sophisticated purchaser knows price is fictitious).

(i) Contributing in any manner, directly or indirectly, to the reporting to the Pennsylvania Department of Public Welfare or to the PACE program (Plaintiff Agencies) of inflated average wholesale prices (AWPs) for Johnson & Johnson Defendants' branded drugs, without also arranging for the transmission to the Plaintiff Agencies of current, accurate estimated acquisition costs, such as average manufacturers' prices (AMPs) or average sales prices (ASPs), for each of their branded drugs, in a format equivalent to that in which AWPs are reported to the Plaintiff Agencies, or in another format acceptable to the Plaintiff Agencies; and,

(ii) Contributing in any manner, directly or indirectly, to the promotion or marketing of "spreads" (the difference between the price at which a drug is reimbursed to a provider and the acquisition price of the drug paid by the provider) for Johnson & Johnson Defendants' branded drugs which are reimbursed by the Plaintiff Agencies; and

b. Pursuant to Section 4.1 of the UTPCPL, 73 P.S. §201-4.1, the Court directs that Johnson & Johnson Defendants restore to the Commonwealth of Pennsylvania money in the amount of $45,283,562.00;[2] and

---

[2] The Court accepts as credible the expert testimony in general, and the "PBM" damage methodology excluding interest in particular, as set forth in Revised Exhibit 12 (Department of Public Welfare) and Exhibit 13 (PACE), of Plaintiff's damage expert, Frederick R. Warren-Boulton, Ph.D. Damages are calculated using his suggested figures and preferred methodology for the period 1991 through 2004, with two exceptions.
**(Footnote continued on next page...)**

3

      c.    Pursuant to Section 8(b) of the UTPCPL, 73 P.S. §201-8(b), the Court finds that Johnson & Johnson Defendants willfully used practices declared unlawful by the statute, including the acts described in Paragraph 3(a); accordingly, in addition to amounts to be restored, the Court awards civil penalties against the Johnson & Johnson Defendants in the amount of $6,567,000.00;[3] and

---

**(continued...)**

    First, the Court subtracts $7,718.00, representing total "PBM" reimbursements for Viadur excluding interest (amounts set forth in Exhibits 7B and 7D attached to Warren-Boulton's Supplemental Report of September 30, 2010). See J&J Exhibit 5814.

    Second, although for the most part the Court rejects the testimony of Johnson & Johnson witness Ernest R. Berndt, Ph.D., the Court accepts his "PBM Damages Adjustment #3: Removal of FDB's 5% Increase in AWP (DPW)," as set forth in J&J's Demonstrative Exhibit 45, for the years 2002, 2003, and 2004. This results in an additional reduction of damages in the amount of $7,908,532.00. The Court specifically rejects other proffered adjustments to the Warren-Boulton PBM methodology, and the Court accepts Warren-Boulton's explanation during direct and rebuttal testimony.

    The only other portions of Berndt testimony accepted relate: 1) to the witness' concessions on cross-examination regarding confusion of Johnson & Johnson executives regarding AWP; 2) to the expert witness' inability to figure out a real average wholesale price for Johnson & Johnson drugs; and 3) to his agreement that the Medical Assistance Program, with its high payment rates, is subsidizing pharmacies for accepting the discounted rates offered by private payers and giving them the latitude to submit lower bids on prescription contracts. The Court specifically rejects as not credible testimony by Berndt and others suggesting that the Plaintiff Agencies had knowledge of the prices paid for Johnson & Johnson Defendants' branded drugs which was superior to that enjoyed by those Defendants.

[3] The Court accepts as credible the civil penalty methodology set forth in Exhibit 15 of Warren-Boulton's Supplemental Report of September 30, 2010, Plaintiff's Exhibit 10229, concluding that a violation occurred each time the reported AWP changed for a Johnson & Johnson Defendant branded drug in this case during the period 1991-2004, and assessing each violation at $1,000.00.

4

  d. The Court awards no damages or attorneys' fees pursuant to Section 9.2 of the UTPCPL, 73 P.S. §901-9.2; and

  e. The Court rejects the following affirmative defenses offered by the Johnson & Johnson Defendants: Plaintiff is judicially estopped, and the case presents a non-justiciable political question.

  4. On Count XLIII of the Corrected Amended Complaint (Civil Conspiracy), the Court enters a verdict in favor of the Johnson & Johnson Defendants and against the Plaintiff; and

  5. This Decision is not immediately effective and shall not become effective until the completion of post-trial practice. See Pa. R.A.P. 311(a)(4).

_____
ROBERT SIMPSON, Judge

Certified from the Record

DEC 07 2010

And Order Exit