UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK 2 SETTLEMENT | Judge Patti B. Saris |

**CLASS COUNSEL'S NOTICE OF MISREPRESENTATIONS
MADE BY DON HAVILAND AT MAY 23 HEARING**

The integrity of the judicial system depends on the honesty of the advocates participating

in it.  During the May 23 hearing before Magistrate Judge Bowler on Health Care for All's

("HCFA's") motion to withdraw as a class representative for the Track 2 settlement (Dkt. No.

7503) and Class Counsel's emergency motion to seal Exhibit B to Haviland's Reply in support

of his "Notice" regarding HCFA's involvement in the Track 2 settlement (Dkt. No. 7532),

attorney Don Haviland made numerous statements that misrepresented the record and omitted or

grossly distorted relevant facts and law.  In order to cure these misstatements so that this Court

has full knowledge of the facts and law before deciding these motions, and because Class

Counsel was not provided an on-the-record opportunity to rebut Mr. Haviland's incorrect

statements, Class Counsel respectfully submit the following Notice.[1]

1.      ***Misrepresentation about who Mr. Haviland represents.***  At the beginning of his

argument on HCFA's motion to withdraw, Mr. Haviland identified himself as counsel for a

---

[1] Because the transcript of the May 23 hearing is not yet available, citations thereto are not included
in this Notice.  Given that the Court could issue a ruling at any time, Class Counsel did not want to wait
until the transcript was available.

number of consumer plaintiffs.  Haviland failed to tell this Court that two of those

representatives – Plaintiffs Larry Young, on behalf of the Estate of Patricia Young, and Therese

Shepley, on behalf of the Estate of James Shepley – have **withdrawn** from this case.  *See*

Electronic Order dated June 21, 2010 ("However, plaintiffs may not serve as class

representatives in any proposed class action involving AWP. In addition, Mr. Haviland may not

serve as class counsel in any federal litigation involving challenges to AWP.").  In addition,

Haviland failed to tell the Court that most of the remaining consumers that he purports to

represent submitted declarations stating under oath that**:**

> Because I rely exclusively on Mr. Haviland to tell me about the
> litigation, and I trust Mr. Haviland to represent the best interests of
> consumers like me in the lawsuit, I respectfully submit that Mr.
> Haviland and his firm should be appointed Class Counsel to
> represent the Class of consumers in this case. *If Mr. Haviland and*
> *his firm cannot serve as Class Counsel, I would like to withdraw*
> *as a class representative.*

*See* Dkt. Nos. 4647-4650; 4652-4653 (emphasis added).  Judge Saris considered these statements

to be withdrawals from the litigation.  *See* Ex. A (Mar. 28, 2011 Tr. at 47:1-7) ("That's what I

remember.  Now, it may be that we didn't cross the T and dot the I.  I deemed that a

withdrawal.  Now, maybe I should have issued an order deeming them no longer class reps,

but, you know, no one asked me to and I didn't do it.  But I remember at the time distinctly

believing, because I remember there was then a problem with the class, and I said, 'Can you

find someone else?'").

    2.    *Misrepresentation about Judge Saris' prior holdings relating to class*

*representative discovery by objectors*.  Mr. Haviland told the Court that Judge Saris had not, in

fact, denied the discovery he sought from, among others, HCFA, and had instead only said "no

no no no" in one line of a transcript.  This is false.  Haviland was referring to the following

exchange from the April 27, 2009 hearing: "Now, Mr. Haviland has asked for lots of discovery. He's asked for deposition of PAL and every -- THE COURT: No, no, no, no, we're not doing that . . ." *See* Ex. B (Apr. 27, 2009 Hearing Tr. at 75:9-14). However, there was far more to Judge Saris' holding than that single remark. After patiently listening to Haviland for twenty-five pages of the transcript (*see id.* at 49-74), Judge Saris rejected Haviland's request for discovery for two reasons. First, the discovery was not necessary because Haviland was, in essence, making a legal argument about associations' ability to represent consumers in a settlement context. *See id.* at 72:2-7 ("THE COURT: So you're saying, so I get the legal argument, and I need to get to Mr. Berman, the legal argument is, regardless of what I say, the associations under that Second Circuit case do not have standing, and Tonacchio only does with respect to one defendant, and therefore that isn't enough at best?"). Second, during that exchange, Haviland admitted that his pursuit of discovery from PAL, HCFA and Community Catalyst was irrelevant to the Track 2 settlement, but stated it was somehow relevant to this case "in totality." *Id.* at 70:17-71:2 ("Well, one would hope so, but the problem we have with Prescription Action Litigation, it was a group that was in part founded by the lawyers in this room. The mission statement that we put before the Court demonstrates that one of their five missions in life is to get cy pres. ***Now, your Honor made the comment earlier there's not cy pres in this case,*** but think about this case in totality. In AstraZeneca, there was a set-aside for cy pres, a guarantee. One of the objections, frankly, the principal objection -- THE COURT: I think I rejected it.") (emphasis added). A full reading of the relevant portions of the transcript makes clear that Haviland's attempt to give short shrift to Judge Saris' complete consideration of this issue was misleading at best.

3.      *Misrepresentation relating to discovery into class representative adequacy*.  Mr. Haviland stated that discovery of HCFA was required under Fed. R. Civ. P. 23(c), in order to test the adequacy of HCFA as a class representative in the first instance.  But this is not true, and Haviland failed to disclose that Judge Saris has already found, in granting preliminary approval of the Track 2 settlement, that HCFA was an adequate class representative.  *See* Dkt. No. 5426 ¶ 4.  In the context of another settlement that Haviland appealed (and lost), the First Circuit has rejected the proposition that Rule 23(c) requires the Court to continue to make those findings. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 40 (1st Cir. 2009) ("In this case the district court satisfied Rule 23(c)(1)(B)'s text and purpose.  The court could incorporate its prior orders by reference when certifying the expanded class.").  Furthermore, federal courts around the country have rejected the proposition that an objector is entitled to discovery in order to "test" the adequacy of a class representative.  For instance, In *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D. Cal. 2004), the court rejected a similar request in litigation that had been pending for seven years and explained:

> Movants seek discovery of a wide variety of information, including depositions of Class Counsel, [class representative], and even a paralegal employed by 'Class Counsel' in order to 'test' the adequacy of Class Counsel and [the class representative].  The central premise underlying Movants' asserted need for this discovery is once again that Class Counsel acted collusively, in derogation of the interests of the class, during settlement negotiations . . . .
>
> As the Court has already found, Movants have not adduced evidence from other sources indicating that the settlement is collusive.  As a result, their central premise for this discovery fails. . . . Discovery of such information . . . is neither necessary for a determination of whether Class Counsel are adequate nor is it necessary to provide the District Judge with information sufficient to determine whether the settlement is fair, reasonable and adequate to the class.

225 F.R.D. at 622-23.  The Court further explained that seeking discovery to challenge a class

representative's adequacy was likewise inappropriate:

> Movants challenge [the class representative's] adequacy, the Court
> notes that there is nothing in the record demonstrating that he fails
> to satisfy the test for adequacy of representation by a class
> representative; namely, that he be part of the class he seeks to
> represent and suffer the same injury as the class members.  Indeed,
> the District Judge has previously found that [the class
> representative] has and will fully and adequately represent the
> absent members of the class.

*Id*. at 623 n.5 (internal citations omitted).  *See also Jaffe v. Morgan Stanley & Co.*, 2008 U.S.

Dist. LEXIS 12208, at *5-8 (N.D. Cal. Feb. 7, 2008) (rejecting objector's request to depose class

representative).

      4.    ***Misrepresentation relating to timing of class representative additions***.  In

misleadingly informing the Court that Class Counsel were somehow tardy in seeking to add

Class 1 representatives to the Track 2 settlement, Mr. Haviland failed to disclose that Judge Saris

has regularly and repeatedly acknowledged that Class Counsel should have generous latitude in

adding class representatives, even at the settlement stage, because this is an old and dying class,

the claims relate to conduct that occurred nearly 20 years ago, and class representatives are

extremely difficult to locate.  *See* Ex. C (July 12, 2010 Hearing Tr. at 4:15-16) ("THE COURT:

A lot of times you've thought you had a great class rep, and it hasn't sort of played out."); Ex. D

(Mar. 31, 2010 Status Conference Tr. at 7:2-18) ("THE COURT:  Well, let me ask you this:  Do

you have any -- you've had trouble with this over the years.  I've always allowed you to replace

because this is, I've always said, an aging and dying class.  A:  That's right.  THE COURT:  That

having been said, you've got to find someone.  A:  Yes.  THE COURT:  And it's always been a

problem for you.   It takes a long time.  A:  Yes, it does take a long time, and these in particular

are very difficult clients to find.  THE COURT:  My guess is -- A:  That we previously turned

over heaven and earth to look for them?  THE COURT:  To find people.").  Thus, there is

nothing nefarious or incompetent about Class Counsel seeking to add class representatives at this

stage.  Indeed, Judge Saris has repeatedly instructed Class Counsel to do so when needed for this

settlement.  *See* Ex. B (Apr. 27, 2009 Tr. at 57:19-25) ("THE COURT:  I think I've made it clear

throughout this litigation, because it's a dying class, by definition in Class 1, it's a dying class --

they're old and they tend to have illnesses, they are dying -- that I would be more liberal about

allowing addition of class representatives, so that as people got old or sick or senile or dead,

died, ''d allow the addition.").  And Haviland failed to advise the Court that the need to obtain

additional class representatives was often due to his clients' withdrawal after the Court

disqualified Haviland from serving as Class Counsel after taking actions disloyal to the Classes.

   5. ***Misrepresentation about consumer representation***.  Haviland claimed that

HCFA is the "lone consumer representative" for Class 3.  On the contrary, HCFA is not a

proposed representative for Class 3 at all.  *See* Dkt. No. 5426, ¶ 4.  In addition, as Haviland well

knows, Class Counsel have, since the October 17, 2005 filing of the Third Amended Class

Action Complaint (Dkt. No. 1781), represented numerous Class 3 consumers that were

administered and paid for Track 2 drugs.  *See id.* at ¶¶ 26-51.  Class Counsel will move to add

many of those consumers as representatives of the Track 2 settlement on June 1.

   6. ***Misrepresenting case law***.  Even though this authority was not cited in any of Mr.

Haviland's prior submissions, at the May 23 hearing Mr. Haviland cited certain decisions in

support of his claim that he should be entitled to discovery from HCFA.  In addition to ignoring

the fact that Judge Saris already denied the discovery Haviland claims to be "renewing,"

Haviland failed to inform the Court that all of the decisions Haviland cited involved the

withdrawal of a class representative when there were pending discovery requests ***from a***

**defendant.**  *See In re Vitamins Antitrust Litig.*, 198 F.R.D. 296 (D.D.C. 2000) (where defendant had requested "downstream data" from direct purchasers).[2]  Because one of the factors courts are instructed to consider when evaluating a request to voluntarily dismiss is prejudice **to a defendant,**[3] whether there are pending discovery requests is sometimes relevant to that determination.  Here, of course, the standard is not whether Haviland, an objector, will be unfairly prejudiced by the withdrawal of HCFA.  Instead, under Section 21.643 of the MANUAL FOR COMPLEX LITIGATION, discovery from objectors should be "minimal" and "conditioned upon a showing of need."  Haviland has never established such need and the discovery sought by his HCFA subpoena, a copy of which is attached as Ex. E, is not minimal.  Moreover, the discovery sought in the subpoena is for documents; thus, there is no pending request for a deposition of HCFA that this Court should consider.

  7.  ***Failure to disclose intervening trial result***.  Mr. Haviland further claimed that he is entitled to discovery of HCFA to probe the purported inadequacy of the consumer allocation in the Track 2 settlement, HCFA's agreement to which he claims is contrary to one of HCFA's stated missions.  In support of this claim of the settlement's inadequacy, Haviland cited to the GSK settlement, where consumers were allocated 30% of the settlement.  Haviland failed to inform the Court that the GSK settlement was negotiated *before* Judge Saris issued her findings of fact and conclusions of law after a 9-week bench trial.  After the issuance of those findings of

---

  [2] Haviland also cited *In re Cincinnati Policing*, 214 F.R.D. 221 (S.D. Ohio 2003) as a case where a court had determined a withdrawing plaintiff's (in this case, the ACLU's) adequacy before permitting them to withdraw as a class representative.  Again, Haviland's representation of the case was false.  In *Cincinnati Policing* the court was concerned with the ACLU's adequacy because **another** class representative was withdrawing and the court needed to be assured that the ACLU, as the sole **remaining** class representative, was adequate.

  [3] Indeed, this is precisely what *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109 (S.D.N.Y. 1993), one of the cases cited by Haviland during the May 23 hearing, says.  *See id.* at 115 ("On a motion to amend the class certification order, a district court must . . . consider . . . 'whether **the parties** or the class would be unfairly prejudiced by a change in proceedings at that point.'") (citing MANUAL FOR COMPLEX LITIG. (Second) § 30.1.8, at 30-15 (Draft Feb. 1985) (emphasis added)).

fact and conclusions of law, Class Counsel were able to more precisely evaluate liability and calculate damages, and the allocation in this settlement reflects the substantial benefit of knowing the outcome of the Massachusetts trial.

8.      ***Misrepresentation that New Jersey class was certified***.  Mr. Haviland claimed during the hearing that Exhibit B to the Reply in support of his "Notice" regarding HCFA's participation in the Track 2 settlement was not protected by the work product doctrine because the email concerned another case pending in state court in which there was a ***certified nationwide class action.***  First, the plain language of the e-mails make clear that their subject matter was not as Haviland represented, as Class Counsel was responding to the ECF filing of a motion in ***this*** litigation.   Second, there has been ***no*** certification decision in that state court action in New Jersey – at all.  As made clear from the governing Case Management Order in that litigation, the plaintiffs are not even filing their opening class certification papers until February 29, 2012.  *See* Ex. F (Case Management Order No. 4 (May 19, 2011)).  Third, one of the reasons that Haviland was disqualified as Class Counsel was because he lied to Judge Saris by saying that he was only seeking a statewide certification:

> Based on this record, I find that Mr. Haviland made statements in the New Jersey court which were inconsistent with the statements made by co-counsel to this Court.  Haviland argues that these inconsistencies were innocent or unintended.  It is possible that Haviland did not notice the ambiguity at the time of the remand hearing.  However, what is crystal clear is that Mr. Haviland is seeking a nationwide class in New Jersey at the same time he was seeking to represent a nationwide class here without disclosing the conflict of interest to this Court.
>
> Apparently, Hagens Berman and the other lead counsel did not know of Haviland's litigation position in New Jersey.  While Haviland has since modified his claims in New Jersey and dismissed certain overlapping defendants, this failure to disclose his activities in New Jersey to the Court or fellow counsel is a breach of trust as class counsel.

Dkt. No. 4972 at 8.  It is nothing short of amazing that Haviland would repeat *the same misrepresentation that got him disqualified as Class Counsel in the first instance* to a different Judge of this Court in order to justify his filing of obvious work product in the public domain.

9.       *Misrepresentation about Mr. Haviland's status during the time that protected communications were sent*.  Mr. Haviland claimed that Class Counsel and Haviland were adversaries at the time the emails contained in Exhibit B were written.  This likewise is false, as Haviland, at the time, was working as part of the Class Counsel team.  As such, those emails are entitled to protection under the work product doctrine because Class Counsel have not consented to their disclosure.  *See, e.g., John Morrell & Co. v. Local Union 304A of United Food & Commercial* Workers, 913 F.2d 544, 555-56 (8th Cir. 1990) ("The Aguinaga employees and Morrell shared a joint defense privilege by virtue of  being aligned on the same side following their settlement and the International Union's cross-claims. . . .When information is exchanged between various co-defendants and their attorneys[,] . . . this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in their common cause. . . . It is fundamental that 'the joint defense privilege cannot be waived without the consent of all parties to the defense.'") (citations omitted).   Any holding to the contrary would infringe upon a client's rights to select its own counsel because a client would always have the fear that, if it terminated its attorney, that attorney would be able to expose confidential communications.  Similarly here, surely Judge Saris did not mean her disqualification of Mr. Haviland to mean that all previous communications between Class Counsel and Mr. Haviland were suddenly fair game.  Indeed, in substantially identical circumstances, Judge Saris granted Class Counsel's emergency motion to seal similarly protected e-mail communications.  *See* Mar. 24, 2009 electronic order.  *See also*

Dkt No. 4972, at 9-10 ("In addition, Haviland filed his August 24, 2007 declaration, relating to the proposed AstraZeneca settlement, on CM/ECF not under seal. This document contained confidential information about the mediation proceedings, in direct violation of the confidentiality obligations under the mediation agreement. Mr. Haviland acknowledged to the Court that this public filing had been submitted by an employee in his office.  (Hr'g Tr. 22, Sept. 11, 2007.)  Co-lead counsel assert that Haviland filed the documents publicly on purpose. Haviland claims it was inadvertent.  Even if this document had been filed on the public record by accident, Mr. Haviland breached a duty of care by publicly placing on the docket sensitive negotiating positions of plaintiffs.").

DATED:  May 26, 2011

By:  /s/ Steve W. Berman
Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St. NW, Suite 300
Washington, D.C.  20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455

Jeffrey Kodroff
John A. Macoretta
Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

***Class Counsel***

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on May 26, 2011, I caused copies of **CLASS COUNSEL'S NOTICE OF MISREPRESENTATIONS MADE BY DON HAVILAND AT MAY 23 HEARING** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

/s/ Steve W. Berman
Steve W. Berman