**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**


CITIZENS FOR CONSUME, et al    . CIVIL ACTION NO. 01-12257-PBS
    Plaintiffs            .
        V.           . BOSTON, MASSACHUSETTS
                    . MAY 23, 2011
ABBOTT LABORATORIES, et al    .
    Defendants           .
. . . . . . . . . . . . . . . .

                 TRANSCRIPT OF MOTION HEARING
          BEFORE THE HONORABLE MARIANNE B. BOWLER
             UNITED STATES MAGISTRATE JUDGE


     APPEARANCES:


          Jennifer Fountain Connolly, Esq.
          HAGENS BERMAN SOBOL SHAPIRO LLP
          1629 K St. NW, Suite 300
          Washington, D.C. 20006
          (202) 355-6435


          Donald E. Haviland, Esq.
          Michael Donohue, Esq.
          Haviland Hughes LLC
          111 S. Independence Mall East
          The Bourse, Suite 1000
          Philadelphia, PA 19106
          215-609-4661
          haviland@havilandhughes.com




     Court Reporter:

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.

<u>**I N D E X**</u>

Proceedings                                                    3

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

1    <u>P R O C E E D I N G S</u>

2       CASE CALLED INTO SESSION

3         THE CLERK:  The Honorable Marianne B. Bowler

4    presiding.  Today is Monday May 23, 2011.  Citizens for

5    Consume, et al v. Abbott Laboratories, et al, Civil Action No.

6    01-12257 will now be heard.  Would counsel please identify

7    themselves for the record.

8         MS. CONNOLLY:  Good afternoon, Your Honor, Jennifer

9    Connolly, Hagens Berman Sobol Shapiro on behalf of class

10   counsel.

11        THE COURT:  Thank you.

12        MR. HAVILAND:  Good afternoon, Your Honor, Don

13   Haviland from Haviland Hughes.  With me is Michael Donahue and

14   we represent certain named consumer plaintiffs in this case;

15   Mrs. Howell, Mr. Young, the Estate of the Sheppleys', the

16   Estate of Hunter Walters, Harold Carter, Roger Clark, the

17   Estate of his father David Clark, The Reverend David Aaronson

18   on behalf of his wife, Mr. Monk, Mrs. Newell, Mr. Roots and the

19   estate of Harold Bean.

20        THE COURT:  All right, we are here for a hearing on

21   two motions and they are Docket Entries 7503.  So I will hear

22   you.  And 7532.  Starting, taking them in the order in which

23   they were filed.

24        MS. CONNOLLEY:  That's fine.  Your Honor, Health Care

25   for All has moved to withdraw as a representative of Class 1

4

1   from the Track II settlement.  There would be no prejudice to

2   the class at all if Health Care for All is permitted to

3   withdraw because there are five other Class 1 representatives

4   to the Track II settlement, four organizations and one consumer

5   plaintiff.  In addition, Your Honor, by June 1 plaintiffs

6   intend to add some additional consumer Class 1 representatives

7   that will provide further coverage for Class 1 in the Track II

8   settlement.  Don Haviland has opposed Health Care for All's

9   withdrawal.  His real reason for opposing the withdrawal is

10  because Judge Saris recently made a disclosure that her

11  daughter is working as a community organizer for Health Care

12  for All and Mr. Haviland has filed an objection to the Track II

13  settlement.  And since Judge Saris disqualified Mr. Haviland as

14  class counsel in January of 2008, Judge Saris has heard a

15  number of objections from Mr. Haviland including his

16  disqualification of course and Mr. Haviland does not want Judge

17  Saris to hear the final approval of the Track II settlement.

18  Indeed he filed a notice which is Docket No. 7501 stating in

19  fact that Judge Saris should recuse herself from hearing final

20  approval.

21          It would be a grave injustice for Judge Saris not to

22  hear final approval of Track II settlement.  First of all, she

23  has presided over that settlement since it was first announced

24  in 2008 including hearing preliminary approval and she actually

25  had a final approval hearing, although final approval was not

1   granted at that time, during which she heard from all the

2   objectors, the Track II settlement, including Mr. Haviland.

3   This is the final settlement that class counsel have proposed

4   and once it's finished, absent appeals to the First Circuit,

5   this will conclude this litigation.  So it is more than

6   appropriate for Judge Saris to hear the Track II settlement.

7           So while Mr. Haviland's motive for opposing the

8   withdrawal is transparent he's also offered a few additional

9   reasons why Your Honor should deny the motion to withdraw.  The

10  first, although unclear, seems to be that if Health Care for

11  All is permitted to withdraw that in some fashion Mr. Haviland

12  won't be able to challenge the allocation of the settlement.

13  And there was a member of Prescription Access litigation, which

14  again is not Health Care for All, who was a member of the

15  consumer allocation committee.

16          There are several reasons that this is sort of a non-

17  starter argument.  The first is that in March of 2009 Mr.

18  Haviland already attempted to obtain discovery from Health Care

19  for All, from Community Catalyst and from Prescription Access

20  litigation and Judge Saris denied his request to get that

21  discovery.  So even if there were new grounds to get discovery

22  from someone from Health Care for All, there's nothing that

23  would prohibit Mr. Haviland from seeking that additional

24  discovery, whatever it might be, if Health Care for All is

25  permitted to withdraw.  He'd simply have to serve a third party

6

1    subpoena instead of seeking party discovery.  So there's no

2    reason that he can't challenge the allocation of the settlement

3    if Health Care for All is permitted to withdraw.

4            The final thing that's rather ironic is that Mr.

5    Haviland's objection to the Track II settlement one of the

6    grounds for that is that Health Care for All and other

7    organizations are inadequate health representatives for the

8    settlement because they lack Article III standing.  So it's a

9    little strange for Mr. Haviland to have objected to the Track

10   II settlement in the first instance on the grounds that these

11   were inadequate, and now that one of them seeks to withdraw he

12   claims that there will be prejudice to the class.

13           So for those reasons, Your Honor, we ask that you

14   recognize his objection for what it is and that you grant

15   Health Care for All's motion to withdraw from the settlement.

16           THE COURT:  All right, I should point out and I

17   should have done this first thing and I have done this in the

18   other AWP cases that are filed in the `01 cases, that my

19   husband is a consultant for numerous pharmaceutical companies,

20   pharmaceutical companies that are named in this litigation.  He

21   is a professor of medicine at Harvard Medical School and senior

22   cardiologist at the Brigham.  I wish to have that on the record

23   and if anyone has an objection speak now.

24           MS. CONNOLLY:  We have no objection, Your Honor.

25           MR. HAVILAND:  No objection, Your Honor.

7

1          THE COURT:  All right, hearing no objection we'll

2     proceed.

3          So I'll hear you.

4          MR. HAVILAND:  Thank you, Your Honor.

5          Let's just be clear what we're here for today.  There

6     is a motion for a certified class representative to withdraw.

7     The burden is clearly upon the movant to do so to show that

8     there is adequacy for the existing class because the way I

9     believe the case has set this issue up for the movants is it's

10    a modification of the existing class certification order under

11    Rule 23(c).  To find that you can allow this one plaintiff to

12    remove themselves and to find that the existing representatives

13    are adequate to continue through the final stages of the

14    litigation, if counsel's correct, it will be the end of the

15    litigation.  So it's squarely their burden to demonstrate

16    adequacy of the existing representatives, the reasons for the

17    withdrawal and then also a lack of prejudice to the class by

18    the withdrawal.  And I want to go through a couple of those

19    cases, Your Honor, cause they're missing from the motion and we

20    just pointed out in our objection some of the concerns we have.

21         Let me just back up for a moment because counsel

22    talked about the notice which I think precipitated this chain

23    of events.  When we were before Judge Saris actually on a

24    separate issue relating to a settlement with Bristol Myers

25    Squibb my client objected to that settlement, Your Honor,

8

1   because the original settlement was for about $13 million, it

2   was recast to $19 million and consumers got four.  Obviously

3   he didn't like four versus 13, raised the objection, and I'm

4   happy to report that's been resolved.  The money's been

5   increased and we've settled that claim.

6           On Track II there haven't been consumer

7   representatives throughout the course of this case.  Back in

8   2001 the original lawsuit was brought by these consumer

9   organizations like Health Care for All, HCFA, and a number of

10  others from around the country.  We now have before the Court

11  one consumer representative.  Her name is Mrs. Tanacchio (ph)

12  and I want to speak to that issue for a moment.  She claims to

13  have purchased one product from one company, Aventis, of the 18

14  companies before the Court today seeking to have final

15  approval.  What's important to realize, Judge, is there's not

16  been a litigation class certification on Track II unlike in

17  Track I where we had consumer representatives, the Court

18  allowed those representatives to be deposed, to have a full

19  vetting as defense called for, examination of the records.

20  Recently in the Johnson & Johnson case a plaintiff had to

21  submit records and the defendants were able to demonstrate to

22  the Court that that plaintiff was inadequate.

23          That's why we're here is the Supreme Court says very

24  clearly in *Amcan* we have to have adequacy of representation to

25  allow this case to go to conclusion.  And there's two aspects,

1   only one of which is before this Court.  And that's the issue

2   of the representation.  The certification of the settlement

3   class, your piece of that if I may, Your Honor, is I think

4   23(a)(4) and whether or not that can continue to maintain

5   itself under the existing preliminary approval.  We're not here

6   on the issue of the underlying settlement.  It is $125 million

7   settlement.  It's a big settlement.  I think it's the largest

8   in the case and as counsel points out it's the end of the case

9   so it's an important time to pause and reflect on what's

10  happening before this case moves to the end.

11        My dozen or so clients were originally proffered to

12  be the individual representatives of Track II.  Class counsel

13  opted to go in a different direction, moved away from them and

14  chose to go forward with these association plaintiffs.  And I

15  want to go through the cases very quickly with you, Judge, so

16  that you have the record of the legal standard so that we can

17  understand what we're talking about.

18        First, I believe the *Key v. Gillette Company* case by

19  the Third Circuit 782 F. 2d No. 5.  Your Honor, I've got copies

20  for yourself and the clerk but I'll continue arguing and then

21  I'll hand those up, but that is the general standard by the

22  First Circuit in terms of adequacy.  I think the operative

23  language comes right in the beginning of the opinion where it

24  talks about the Court has an ongoing duty to make sure that the

25  requirement of adequacy is complied with at all stages of the

10

1   litigation.  Clearly at the end of the stage, Your Honor,

2   you're at settlement.  The Supreme Court in *Amcan* said now we

3   apply heightened attention, heightened scrutiny.  If the Court

4   remembers the *Amcan* decision it was a billion dollar

5   settlement, hundreds of billions I think it was, a large

6   settlement, much larger than what we have here.  And that case

7   was reversed because of adequacy, a lack of protection of the

8   interest of the class.  And that's what my clients are

9   concerned about and there are other objectors in the settlement

10  so you know, Your Honor.  The Pense objectors noted our

11  objection to this proceeding and pointed out in their papers

12  recently filed that if you allow HCFA to withdraw you will lose

13  the only consumer representative of Class III which is the

14  group of plaintiffs that they're not Medicare covered where the

15  Medicare regulations were changed from AWP to something else.

16  They're still paying the AWP base prices.  And I point that out

17  for an important reason.  If you go through the history of this

18  litigation starting in `01, and if you trace all of the

19  complaints and we thought we might have a representative of

20  HCFA to ask questions because they were originally in the first

21  complaint.  They were in the second complaint.  They were then

22  in the third complaint.  Motions to dismiss were filed and

23  Judge Saris found that the association plaintiffs have an

24  argument for standing, for declaratory and injunctive relief if

25  they can demonstrate that any of their members have actually

11

1   paid, paid based on AWP, paid for any of the drugs, the Track

2   II defendants, HCFA never made that showing.

3           And in the 2003 record and the Court's order which is

4   reported case in Wes Law that defendants deposed a

5   representative of HCFA, I think her name was Shannon, and she

6   testified under oath that the representations in the compliant

7   were not accurate, that they didn't know if any of their

8   members actually paid based on AWP or actually paid for any

9   drugs.  So the judge dismissed HCFA, the shorthand, different

10  HCFA from the one we're used to.  But then they came back, and

11  this is what's really curious for us in this record, they were

12  out of the case for a number of years and they didn't come back

13  until 2008 when this case was settling under Track II.  But

14  they came back with that same allegation.  If you look at the

15  Fifth Amended complaint it has the exact same allegation of the

16  membership, but we already have a corporate designee saying

17  they didn't know that that was an accurate statement.

18          So I raise that only because Article III standing is

19  a key to getting into the courthouse and opening the door.  Why

20  is that important today?  Because HCFA if you look at the

21  affidavits of the two individuals who were designated as

22  consumer representatives in the settlement context, Alex

23  Sugarman-Brozan who is the director of the prescription action

24  litigation project or PAL, that is a project of community

25  catalyst of which HCFA is a member.  Now each of those entities

12

1    all are housed at 30 Winter Street in Boston.  So we actually

2    issued subpoenas.  Counsel said we could simply ask for

3    discovery.  We have asked for that discovery.  That's not been

4    ruled upon.

5            So in the context of your ruling today I want to cite

6    you a case, it's the *Vitamins* (ph) case where the Court was

7    inclined to allow a party to dismiss and withdraw a class

8    representative.  It conditioned that on complying with

9    discovery.  In that case, which I'll give you the citation,

10   Your Honor, the *Vitamins* case is at 198 F.R.D. 296.  Now the

11   way that case came up the representative there wanted to

12   voluntarily dismiss their claim under Rule 41, but the Court

13   also looked at it from a class standpoint because there had

14   been propounded discovery by the defendants of the

15   representative to try to figure out whether there was actually

16   standing in the beginning to file the claim.  So in granting

17   the 41(a) dismissal, and it was an earlier case, earlier in the

18   proceedings than we have here, the Court conditioned that

19   dismissal on responding to the discovery.  And I certainly ask

20   that as a threshold matter Your Honor order that disclosure to

21   come forward pursuant to our subpoenas so we at least

22   understand the relationships between HCFA, PAL and community

23   catalyst because the affidavit of Mr. Sugarman-Brozan says he

24   was the point person put in charge of allocation.  At that

25   settlement allocation there was actually counsel from HCFA,

13

1   help law advocates and the individual whose names escape me

2   but it's in his affidavit, he represents that it was them who

3   negotiated the settlement allocation.

4           There are actually two problems we have with the

5   settlement, Judge, from the consumer standpoint.  It was $125

6   million settlement but only about 17% of that is going to

7   consumers and this has been the constant refrain of my clients

8   is there's just not enough going to pay for the class one

9   consumer cancer patients which I don't think anyone in these

10  AWP cases would doubt have the strongest claims.  The cancer

11  patient who is just paying that bill from Medicare every time

12  it comes in.  They have no knowledge of speed limits or

13  anything that this Court has had to deal with in the more

14  complicated TPP universe.  So we would expect then to be fully

15  compensated and Judge Saris has several times ordered going

16  back to the drawing board to make sure they're getting two

17  times and three times damages.

18          Now we're not discussing the settlement here cause we

19  haven't seen that final submission of what folks are actually

20  getting, but I can tell you that 17% is far lower than the

21  GlaxoSmithKline settlement which was about 30%.  So right off

22  the bat we've got a concern about it cause it's a huge case

23  involving 18 defendants, a number of Medicare beneficiaries.

24  But the allocation notwithstanding there's another part of it

25  that's very, very important when you think of Class 3 and the

14

1   fact that HCFA is the lone consumer representative of Class

2   III.  The mission if you go to the website for HCFA or PAL and

3   you read what they say about this case one of things they try

4   to accomplish as consumer advocacy organizations is to change

5   industry behavior.  And under the PAL website there's actually

6   a description of this case that says one thing that they were

7   trying to do in `01 was change the drug companies practices

8   with AWP.

9           Your Honor, I would like to hand up when I hand up

10  these cases two decisions out the Pennsylvania Commonwealth

11  court where we achieved on behalf of the Medicaid program

12  injunctions against Bristol Myers Squibb and Johnson & Johnson

13  preventing them from contributing to the inflation of AWP.

14  It's a very worthwhile thing in Pennsylvania to benefit those

15  programs down there.  That was what we would have expected the

16  consumer advocacy organizations to accomplish here, some type

17  of declaratory injunctive relief.

18          If you go back and you read Judge Saris' decision in

19  August of 2005, it's her class certification decision where she

20  talks about the associations not having standing unless they're

21  demonstrating and they gave class counsel the opportunity to

22  show this, members who have actually paid and that they're

23  trying to accomplish their mission, the changing of the

24  industry practices going forward.  Our concern with what HCFA

25  did here is they have released all injunctive claims for no

15

1  consideration.  So we step back and we look at the only class

2  representative for consumers in Class 3, the mission being

3  trying to change industry practices but then binding the

4  country to a release where there's no relief whatsoever.

5         So that's why, Your Honor, I encourage you to at

6  least give us the ability to take the discovery so we can

7  answer those questions because then we turn to the next

8  question for the Court.  And that's where you get to I believe

9  two cases that really go to an issue of withdrawal of a

10  plaintiff.  The first case is from the Southern District of New

11  York.  It's called the *Harcore Brace* case, 838 F.Supp. 109.  In

12  that case, Your Honor, there was a certified class, as here,

13  and a motion to withdraw but one of two class representatives.

14  So it's closer to our situation.  And they were both

15  organizations.  I think the ACLU was a plaintiff.  I think

16  that's the one who wanted to withdraw.  So the Court was

17  dealing – if the ACLU were to pull out and one of their

18  missions is to have legal aid and such and that was what the

19  case was generally about.  The Court looked at well will the

20  remaining plaintiff be able to do the job?  And the Court

21  looked at specifically that question and said that as to that

22  question on a motion to amend the class certification order,

23  again I think, Your Honor, the way it sets up is it's a Rule

24  23(c) order to amend the existing class certification order.

25  In that context whether or not the three named plaintiffs would

16

1   have sufficed to represent the class at the outset has no

2   bearing on whether the withdrawal of the remaining

3   representative will prejudice the defendants.  In that case the

4   defendants were opposing class.  On a motion to amend the class

5   certification order a district court must not only consider the

6   criteria of Rule 23(a) and (b) in light of the factual and

7   legal developments but also whether the parties or the class

8   will be unfairly prejudiced by the change in proceedings at

9   that point.  Your Honor, I was reading from page 115 of that

10  opinion.

11          So that's where we have to look at the 23(a)

12  standards for adequacy of the remaining parties and also

13  prejudice to the class.  And here I submit the prejudice is

14  embedded in the fact that it was HCFA at the table negotiating.

15  I don't know where Mr. Brozan's at.  He's left PAL so he's

16  unavailable to us.  The only plaintiff who is there making

17  those decisions on behalf of consumers now wants to leave.  And

18  I do think it's appropriate to sit them down and ask them why

19  did you make these choices so that we can understand whether

20  the class had adequate representation going forward and either

21  this Court, Judge Saris, whoever at that point in time will

22  decide the propriety of that.

23          To be clear, Your Honor, our notice did not say Judge

24  Saris should recuse herself.  She asked the question sua sponte

25  in the BMS hearing.  My daughter has gone to work for HCFA, I

17

1    don't think the parties were aware of it at the time, asked my

2    law firm to comment on whether or not HCFA had a role in the

3    case.  I believe Mr. Matt, Ms. Connolly's partner at the time,

4    said I'm not sure if they're involved.  I said I believe

5    they're a certified representative in which case there could be

6    a concern.  So in fairness we're not dictating to the Court--

7                THE COURT:  Well she is concerned and she expressed

8    that to me.

9                MR. HAVILAND:  Okay.

10               THE COURT:  And she expressed some concern about

11   should you be dissatisfied, one side or the other, with any

12   ruling that I make where that would be appealed.  So--

13               MR. HAVILAND:  Obviously, yeah, that's a concern for

14   anyone.

15               THE COURT:  --we were trying to think it through and

16   we thought if you could agree on the record that it would go to

17   the emergency judge.

18               MR. HAVILAND:  An appeal from this?

19               THE COURT:  Mmm-hmm.

20               MR. HAVILAND:  I notice--

21               THE COURT:  Rather than going back to her.

22               MR. HAVILAND:  I think Judge Saris suggested that an

23   appeal to Judge Young might be appropriate.  We consented to

24   that I believe in our papers.  She asked for a position on the

25   record and we're fine with that.

18

1          MS. CONNOLLY:  Yeah, Your Honor, Judge Saris has

2    suggested actually Judge Stearns or Judge Young could hear it.

3    We have papers on file where we said that we thought it would

4    be more appropriate to have Judge Stearns hear it but--

5          THE COURT:  So one side wants Judge Young and one

6    side wants Judge Stearns.

7          MS. CONNOLLY:  That's the story, Your Honor.

8          THE COURT:  Well, you know--

9          MR. HAVILAND:  Our concern with Judge Stearns is

10   this, Your Honor, we have, some of these very clients who are

11   involved in Judge Stearns' *Lupron* decision have cancer and have

12   now taken some of these other drugs.  They have a pending

13   appeal on an issue of cy pres involving $11 million leftover

14   and an award to Harvard Medical and so that's going up now

15   before the First Circuit and it's just because of the

16   procedural posture some of our clients are currently appealing

17   an issue we thought it more appropriate to go to Judge Young

18   who Judge Saris said could very quickly expedite the issue.  He

19   has familiarity with the case from way back in the original

20   prosecution of Taft Pharmaceuticals in the early 2000s.

21          THE COURT:  And you object?

22          MS. CONNOLLY:  We object, Your Honor, because the

23   actual reason that Mr. Haviland doesn't want Judge Stearns to

24   hear this is because Judge Stearns likewise has a published

25   opinion where he sanctioned Mr. Haviland in connection with

19

1   some conduct that he engaged in with the *Lupron* settlement.

2   So, you know, the problem is becoming that we're having trouble

3   finding a judge in this courthouse that hasn't heard, that

4   isn't aware of Mr. Haviland's conduct.

5          THE COURT:  Well then I think it should go to the

6   emergency judge which Judge Young and Judge Stearns being

7   excluded and should that judge be the judge at the time of

8   filing would probably look to the next month.

9          MS. CONNOLLY:  To be honest, to be clear, Your Honor,

10  we have not opposed sending it to Judge Young.  So we wouldn't

11  object to sending it to Judge Young.  We had a preference that

12  it go to Judge Stearns.  We do not object to having Judge Young

13  here this.

14         MR. HAVILAND:  I have no objection.  I do have to

15  comment on Judge Stearns, the comment about Judge Stearns.

16         THE COURT:  Well can you agree on Judge Young?

17         MR. HAVILAND:  Absolutely, Your Honor.  No question.

18         THE COURT:  All right, then it goes to – we always

19  like it when people agree.

20         MR. HAVILAND:  Then we're done.

21         The true record, Your Honor, is after the case

22  settled before Judge Stearns he awarded my law firm an

23  incentive for helping the consumers out of 1.5 million.  So I

24  think if you look at the full record in that case--

25         THE COURT:  No, I know the history so.

20

1      MR. HAVILAND:  We have no issue with being before

2  Judge Stearns.  I've been before him a number of times.  As I

3  said, that appeal is a particular issue that we're just

4  concerned about.

5      THE COURT:  Okay, but this is now a resolved issue in

6  that it will go to Judge Young.

7      MR. HAVILAND:  The last case, Judge, is a case

8  dealing with standing of the associations and I wanted to bring

9  that to the Court's attention in terms of the standard before

10  the Court.  It's out of the First Circuit.  It's *Seashore*

11  *Corporation v. Sullivan* 158 F. 3d 51.  It cites the typical

12  cases you'd expect from the Supreme Court, *Lujan* (ph) and

13  others speaking to the question of whether or not this

14  association is demonstrated injury in fact, fairly traceable

15  harm and likelihood that their harm will be redressed by the

16  decision in the case.

17      We raise the concern, it wasn't our call to have HCFA

18  come in, try to show a viable case, have it dismissed and then

19  bring them back.  We're only laying out the paper trail and,

20  Your Honor, it's all laid out in our papers.  I will cite to

21  the Court our revised objection.  It's at Docket 597.  The

22  facts are all in there in terms of what we think is the history

23  of this case from filing to the Track II settlement so I won't

24  repeat any of that.

25      THE COURT:  All right, the courtroom is filling in as

21

1   you can see.

2            MR. HAVILAND:  Sure, Your Honor.

3            THE COURT:  Why shouldn't I allow your brother

4   discovery on this?

5            MS. CONNOLLY:  Because Judge Saris has already denied

6   it, Your Honor.  My brother's representation that Judge Saris

7   did not rule on this is not accurate.  She held a hearing on

8   April 27th of 2009 which was actually a final approval hearing

9   of Track II and for, because we had not completed notice for

10  Class 1 at that time she was not able to rule on final

11  approval, however she did hear full argument from all of the

12  objectors who appeared at that hearing to the Track II

13  settlement.  And during that time she said that the discovery

14  was not appropriate for two reasons.

15           First of all, Mr. Haviland's objection to the

16  association standing was a legal one and she said therefore it

17  wasn't appropriate to conduct discovery in support of what was

18  in effect a legal argument that's set forth in his objection.

19  Second of all, his objection at the time to the associations

20  was that somehow class counsel are tainted by our involvement

21  with those organizations and that we had used that taint in

22  order to try to funnel cy pres funds to these organizations.

23  There is no cy pres fund provision in the Track II settlement.

24  So Judge Saris said because that wasn't an issue, this alleged

25  taint in the Track II settlement that it wasn't appropriate to

22

1  have discovery of PAL, Health Care for All or Community

2  Catalyst.  At the time Mr. Haviland had likewise sought to take

3  the deposition of the consumer representative for Class I, Ms.

4  Tanacchio, to whom Mr. Haviland has previously referred, and

5  Judge Saris likewise denied that discovery.  So she's already

6  ruled that that isn't appropriate.  Certainly not appropriate

7  in the context of this settlement.

8          THE COURT:  Well but change in circumstances.

9          MR. HAVILAND:  That, Your Honor, and the fact that I

10 think what counsel's citing to is one line in a very lengthy

11 transcript where the Judge said no, no, no, no, no and then

12 moved on to discuss the issue that I was discussing with the

13 Court and Mr. Berman discussed.  These plaintiffs, the adequacy

14 of the plaintiffs and there was a very protracted discussion of

15 the deposition of Ms. Tanacchio.  I think class counsel's

16 position at the time, well, my firm in the interest of our

17 clients, we're not the defense counsel.

18         We said, well respectfully we're the only ones

19 outside challenging all the defense counsel in the line and

20 class counsel who would like to see this class certified and

21 the settlement approved.  So we have questions of that

22 representative.  All they put forward was one hospital

23 statement, two of seven pages, which don't show a payment.  So

24 we need to satisfy ourselves with all due respect to have a

25 representative that's going to have traction.  No one, Your

23

1   Honor, would like to see this go to the First Circuit.  It

2   should be satisfied here that these plaintiffs have standing,

3   Article III standing, that they're adequate, that their

4   interests are aligned with the consumer plaintiffs.

5          I've already pointed out that the associations say

6   they wanted to change things and they didn't do that.

7   Ms. Tanacchio, the only consumer I wrote down and counsel says

8   they're going to come up with some folks in June, if the

9   defense counsel were arguing as I am today they'd say, when is

10  this going to end?  This case was filed in `01.  It's 10 years

11  later.  How long can you wait to find a plaintiff?  It's almost

12  like a case looking for a plaintiff.  So I would just suggest,

13  Your Honor, that we get the answers to the questions and if in

14  fact that they can demonstrate standing and show that their

15  interests are aligned then we can move forward to the next

16  stage with whatever juris is appropriate at that point in time.

17  It may be Judge Saris, it may be Judge Young, it may be Your

18  Honor.  I'm certain this much, that the district of

19  Massachusetts can resolve this case.  Thank you.

20         THE COURT:  All right, I'll hear you briefly on

21  Docket Entry 7532 which is the emergency motion to seal.

22         MS. CONNOLLY:  The emergency motion to seal relates

23  to Exhibit B of a reply to Mr. Haviland's notice that he filed.

24  Exhibit B are emails between co-counsel which at the time

25  included Mr. Haviland that clearly reflect the mental

24

1    impressions of co-lead counsel.  They are obviously on their

2    face work product and they were filed, Mr. Haviland represented

3    that they had previously been filed of record.  Of course when

4    we ask him to identify the place in the record where they had

5    been publicly filed they had not in fact been publicly filed

6    and indeed should not have been publicly filed.

7              It is well established that attorneys who are member

8    of a team that share a common interest have the protection of

9    the work product doctrine unless every single of that team

10   consents to disclosure and here obviously no member of co-lead

11   counsel consented to the disclosure of these emails.  Indeed

12   that is why regularly when Don Haviland has filed emails like

13   these in the public record that Judge Saris has immediately

14   sealed them.

15             In fact in March of 2009 Mr. Haviland did the same

16   thing.  He publicly filed some emails that were correspondence

17   among co-lead counsel and in an electronic order dated March

18   24th of 2009 she granted our emergency motion to seal those

19   documents.  Likewise in connection with disqualifying Mr.

20   Haviland as class counsel he filed confidential mediation

21   materials in the public record and it is currently part of her

22   disqualification order that one of the reasons she disqualified

23   him as class counsel was that he had filed confidential

24   settlement communications in the public record.

25             So these documents are on their face confidential

25

1   work product.  There is no basis to file them publicly.  Mr.

2   Haviland seems to believe that they reflect some aspect of our

3   knowledge of a decision or a case that he filed in New Jersey

4   state court and he believes he has an argument in that regard.

5   That's' fine but they can be filed under seal and Judge Saris

6   can review, if appropriate which we deem they're not, but if

7   she deems it appropriate she can review them under seal.

8   That's not an argument for having them publicly filed on this

9   docket.

10          THE COURT:  All right, why shouldn't I seal them?

11          MR. HAVILAND:  Well, Your Honor, the FDC case out of

12   the First Circuit which we've cited shows the very high

13   standard here is that this is a public case.  Now let me just

14   step back cause there's a couple things counsel pointed to here

15   that didn't come out in the papers.  One, they say a common

16   interest.  Well that's interesting considering they've never

17   conceded that my firm was co-lead counsel so there is no common

18   interest.  The communications you're looking at Judge relate to

19   communications about a state court case where my firm is

20   counsel to a class.  The issue before Judge Saris, it was never

21   raised in a hearing.  There was never a vetting of this issue

22   but it did lead to a finding of disqualification in January of

23   `03 for which class counsel keeps citing but there was never an

24   evidentiary record on that to be clear.

25          We filed a notice.  The judge asked us to file a

26

1   notice on HCFA.  For some reason that spurred a response from

2   class counsel arguing about why we did that.  And they said we

3   never made an effort to reach out to class counsel.  And then

4   they went on this diatribe about disqualification and bad

5   messenger I suppose.  So we responded with four things, Judge,

6   an email communication between us asking co-lead counsel to

7   talk about this whole issue.  We never heard a response back so

8   I don't suppose that that communication is claimed privileged

9   or confidential.  It's simply pointing out that, yes, we did

10  try to sit down and talk about this.  Ironically we were

11  negotiating the BMS settlement at the same time.

12          The other three emails go to this issue about whether

13  or not there was communications about this state court case.

14  Each of those emails, one of which if you look at and this is

15  all we're asking, Judge, is a document by document review, is

16  among the partners in my firm.  There's no class counsel in

17  that talking about a conversation that we had with them.  I

18  wasn't even on that call, but I received an email saying I

19  raised the issue of nationwide class certification in state

20  court.  And Mr. Codra (ph), one of the class counsel, said that

21  would be fine.  And then the other email Your Honor will look

22  at is the one about Mr. Berman talking about telling

23  AstraZeneca to go pound sand, that we'll move together in the

24  state court for class certification.  Those emails talk about

25  our plaintiff there at the time was Local 68 for whom the state

27

1    court judge had already certified a nationwide class.

2            So that issue of whether or not we're going to get a

3    hearing ultimately on what they knew, what they should have

4    known, what they've never told the Court that they knew about

5    the coordinated strategy, isn't what's before the Court.  They

6    wanted to strike that from the notice.  As I said, it's an odd

7    procedural situation.  We filed a notice but then got this

8    response.  It's in our reply that we made these

9    counterstatements.  And the whole issue of work product, Judge,

10   that's not work product in this case.  It's work product

11   relating to another case.  It's dealing with the strategy for

12   another case which wouldn't have been prompted had counsel

13   simply said I see your notice, we don't think you called us.

14   But to go further and then not allow my firm to rebut that,

15   that's the problem we have with this.  Those documents were

16   only filed with a request to seal by my firm because every time

17   a communication like this is put of record cause class counsel

18   takes a position but then the record shows otherwise, they

19   complain that it's confidence.  There's a very high standard

20   here for public case as this one.  We only ask the Court to

21   look at it in that context.  It's not certainly work product to

22   be used as a sword to allow class counsel to make a record

23   that's not complete.  But that's the limited issue before Your

24   Honor today.  Thank you.

25            THE COURT:  All right.  I'll take these two motions

28

1    under advisement.

2            MR. HAVILAND:  Thank you, Judge, very much.

3            THE COURT:  All right.

4            MS. CONNOLLY:  Thank you, Your Honor.

5            THE COURT:  We stand in recess.

6            MR. HAVILAND:  Your Honor, could I hand your clerk

7    those cases or--

8            THE COURT:  Certainly.

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

29

CERTIFICATION

1

2    I, Maryann V. Young, court approved transcriber, certify

3    that the foregoing is a correct transcript from the official

4    digital sound recording of the proceedings in the

5    above-entitled matter.

6

7    /s/ Maryann V. Young                May 29, 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25