UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK TWO SETTLEMENT | Judge Patti B. Saris |

**CLASS COUNSEL'S EMERGENCY MOTION TO QUASH DON HAVILAND'S UNAUTHORIZED NOTICES TO ATTEND JUNE 13, 2011 TRACK TWO FAIRNESS HEARING AND NOTICE OF JUNE 10, 2011 DEPOSITIONS OF CLASS 1 REPRESENTATIVES AND MOTION FOR SANCTIONS AGAINST HAVILAND**

Class Counsel respectfully move the Court for an order quashing the unauthorized Notices to Attend the June 13, 2011 Track Two Fairness Hearing and Notice of Depositions served by Don Haviland and sanctioning him for serving them.  Because the Notices were neither authorized by this Court nor the Federal Rules of Civil Procedure, they should be promptly quashed.  The grounds for this Motion follow.

## I.     BACKGROUND

**A.     Notices to Attend Track Two Fairness Hearing**

After the close of business on June 6, 2011, Don Haviland served **ten** Notices to Attend the June 13, 2011 Track Two Final Approval Hearing.  *See* Dkt. Nos. 7579-7588.  The Notices were directed to:

1.     <u>The four association Class 1 plaintiffs.</u>  (Citizen Action of New York, New York Statewide Senior Action Council, Wisconsin Citizen Action, and Vermont Public Interest Group).

2.      <u>Health Care for All</u> ("HCFA").  HCFA has sought to withdraw as a Class 1 representative of this Settlement.  *See* Dkt. No. 7503.[1]

3.      <u>Consumer allocation counsel for the Track 2 Settlement</u>.  Alex Sugarman-Brozan, former director of PAL.

4.      <u>The four consumer Class 1 representatives for the Track 2 Settlement</u>.  Muriel Tonacchio, Thomas Trutsky, Mariella Laday and Agnes Swayze.

All of the Notices contained the following language:

> If you fail to appear and/or produce the documents or things required by this notice to attend and produce, **you may be subject to the sanctions authorized by the Federal Rules of Civil Procedure.**

(Emphasis added.)  The Notices directed to the consumer class representatives stated that the sanctions available could include "having your testimony stricken and your application for appointment as a settlement class representative denied."  The Notices also (1) directed that the recipients appear at the Track Two Fairness Hearing and "remain until excused;" (2) directed that the recipients contact Haviland to arrange for testimony by telephone if they are unable to appear in person; and (3) commanded them to bring documents to the hearing.

Haviland demanded that the associational plaintiffs and HCFA bring the following documents:

> A.      All documents in your possession, custody or control relating to the Group's work in this case, and your interactions with any of the counsel for the Class or the Defendants in this matter respecting the same.
>
> B.      All documents relating to your claimed purchases of drugs on any Defendant during the relevant time period.

Dkt. Nos. 7579-83.

---

[1] Magistrate Judge Bowler has not yet issued a ruling on this Motion.  Argument was held on May 23.

He directed that Alex Sugarman-Brozan bring the following documents:

A.      Copy of the Declaration of Alex Sugerman-Brozan, Co-Consumer Allocation Counsel, in Support of Final Approval of the Track Two Settlement dated April 9, 2011.

B.      All documents in your possession, custody or control relating to the aforesaid Affidavit, your work in this case, and your interactions with any of the counsel for the Class or the Defendants in this matter respecting the same.

Dkt. No. 7584.

Haviland commanded that the Class 1 consumer plaintiffs bring the following

documents:

A.      Copy of the declarations proffered in support of their addition as class representatives to the Track 2 settlement.

B.      All documents regarding such declarations, "your work in this case, and your interactions with any of the counsel for the Class or the Defendants in this matter respecting the same."

C.      All documents relating to "claimed purchases" of drugs from any Track 2 Defendant.

*See* Dkt. Nos. 7585-7588.

**B.      Notices of Deposition**

In addition, Haviland served a Notice of Depositions of the four Track Two Class 1 consumer plaintiffs, three of which are sick and elderly.  Dkt No. 7589.  Haviland noticed these depositions for Friday, June 10 at the offices of Spector, Roseman, Kodroff & Willis, P.C. ("SRKW"), one of the members of the Co-Lead Counsel team who are located in Philadelphia, Pennsylvania, "or such other location as the parties may agree."[2]  SRKW did not give permission to Haviland to notice these depositions at their offices.

---

[2] Haviland, of course, is not a party to this litigation.  Neither are his clients, most of which this Court has deemed to have withdrawn.

The Notice of Depositions further commanded those noticed to produce the following

documents:

1.       Produce all documents demonstrating that you made co-insurance payments (at
         least in part) under Medicare Part B based on AWP for the Subject Drugs in the
         Track 2 proposed settlement.

2.       Have available to you all written communications involving this litigation
         between yourself and counsel for any party in this litigation, including, *inter alia,*
         Hagens Berman Sobol Shapiro, LLP; Spector, Roseman, Kodroff & Willis, P.C.;
         Wexler Wallace, LLP, Hoffman & Edelson.

## II.       THE NOTICES WERE NOT AUTHORIZED BY THIS COURT OR THE FEDERAL RULES OF CIVIL PROCEDURE

Contrary to their plain language, the Notices were not authorized by the Federal Rules of

Civil Procedure – nor did Haviland seek leave from the Court to issue them.  And leave was

required both because discovery closed years ago and because discovery by objectors like

Haviland is not permitted as a matter of course.  *See* MANUAL FOR COMPLEX LITIGATION

§ 21.643 (4th ed. 2009) ("Discovery [by objectors] should be minimal and conditioned upon a

showing of need, because it will delay settlement, introduce uncertainty, and might be

undertaken primarily to justify an award of attorney fees to the objector's counsel.").

Since Haviland served the Notices to Attend less than one week before the Track Two

Fairness Hearing and the Notice of Depositions less than four days before the depositions were

noticed to take place, the Notices were clearly meant as either a stunt to harass and annoy Class

Counsel or an empty gesture designed to attempt to preserve some sort of baseless appellate

argument.  Haviland's continued belief that the rules and procedures that apply to every other

party and attorney in this Court other than him should no longer be tolerated.

### III.   HAVILAND HAS SOUGHT TO HARASS CLASS REPRESENTATIVES BEFORE

This is not the first time that Haviland has sought to harass Class 1 representatives. Indeed, it's not even the first time that Haviland attempted to serve last-minute Notices to Attend a fairness hearing.  On March 17, 2011, Haviland served a Notice to Attend on Class 1 representative Agnes Swayze, purporting to require her to attend the March 28, 2011 BMS Fairness Hearing.  Dkt. No. 7461.  Haviland sent the Notice to Ms. Swayze, an elderly woman represented by counsel suffering from cancer, to her home address.  *See* Certificate of Service, Dkt. No. 7461-2.  This Court properly struck those Notices.  *See* Procedural Order, Dkt. No. 7472 ("The Court hereby notifies all persons who received a 'Notice to Attend' from Mr. Haviland (See Docket Nos. 7461-66) that they are not required to appear in Court on March 28, 2011. Similarly, the court declines to order the production of documents listed in the notices."). Other than serving them on ECF to the attention of Steve W. Berman and other than serving the class representatives individually, ***these Notices to Attend are identical to the ones this Court already refused to enforce.***

Similarly, two years ago, again as part of this Settlement, Haviland attempted to notice the deposition of consumer Class 1 representative Muriel Tonacchio in order to "test" her adequacy as a class representative.  Dkt. No. 5981-2.  He likewise sent subpoenas duces tecum to Health Care for All, Community Catalyst and Prescription Access Litigation.  This Court has ***already denied*** this discovery.  Although this Court did not enter a docket entry reflecting its decision, this Court made clear that it did not intend to sanction Haviland's fishing expedition. *See* Transcript of Apr. 27, 2009 hearing, Ex. A, at 75:9-15 ("Now, Mr. Haviland has asked for lots of discovery.  He's asked for deposition of PAL and every --  THE COURT:  No, no, no, no, we're not doing that . . .").

Specifically (*see id.* at 49-74), this Court rejected Haviland's request for discovery for two reasons.  First, the discovery was not necessary because Haviland was, in essence, making a legal argument about associations' ability to represent consumers in a settlement context and Ms. Tonacchio's ability to represent those who took and paid for drugs manufactured by Track 2 Defendants whose drugs she neither took nor paid for.  *See* Ex. A at 72:2-7 ("THE COURT:  So you're saying, so I get the legal argument, and I need to get to Mr. Berman, the legal argument is, regardless of what I say, the associations under that Second Circuit case do not have standing, and Tonacchio only does with respect to one defendant, and therefore that isn't enough at best?").  Second, during that exchange, ***Haviland admitted*** that his pursuit of discovery from PAL, HCFA and Community Catalyst was irrelevant to this Settlement, but stated it was somehow relevant to this case "in totality."  Ex. A at 70:17-71:2 ("Well, one would hope so, but the problem we have with Prescription Action Litigation, it was a group that was in part founded by the lawyers in this room.  The mission statement that we put before the Court demonstrates that one of their five missions in life is to get cy pres.  ***Now, your Honor made the comment earlier there's not cy pres in this case,*** but think about this case in totality.  In AstraZeneca, there was a set-aside for cy pres, a guarantee.  One of the objections, frankly, the principal objection -- THE COURT:  I think I rejected it.") (emphasis added).  This Court therefore properly saw Haviland's discovery as both improper and irrelevant to this Settlement.

It almost goes without saying at this point that this is not the first time that Haviland has sought to harass people and entities represented by Class Counsel here.  In *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 4039 (D. Mass. Mar. 16, 2005) (Stearns, J.), Haviland's clients, who had been granted leave to intervene in the MDL, served interrogatories and document requests on the MDL parties and various health plans.  They also noticed the

depositions of and/or served subpoenas for appearance at deposition on ten individuals and entities, including the MDL class representatives and counsel for the MDL parties. *Id.* at *4-5. Because the court found that Haviland's clients had offered no "evidence" of collusion (*id*. at *9) in the settlement negotiations, the court quashed those subpoenas and entered a protective order on the written discovery.  In so holding, the court found that "Intervenors have failed to seek leave of court or to specify why these depositions are necessary to the court's adjudication of the fairness of the settlement."  *Id*. at *11.

Likewise, in the *In re Bridgeport Fire Litigation*, pending before Judge Steven T. O'Neill in the Court of Common Pleas of Montgomery County, Pennsylvania, Haviland likewise attempted to serve subpoenas on parties to the litigation, as well as the personal counsel for one of the defendants in the case, in the middle of trial.  *See* Opinion, CCP Master File No. 05-20924 (Feb. 27, 2009), Dkt. No. 5984-5, at 19.  The court quashed those subpoenas for three reasons. First, the court held that it was improper to serve subpoenas on parties to the litigation.  Second, the court held that the subpoenas were improper because Haviland was not class counsel and represented Appellants "in a personal capacity only."  *Id.*  Third, the court held that the subpoenas were improper because they sought details regarding settlement negotiations and the drafting of the settlement agreement in the case.  *Id.*  The court found that:

> Mr. Haviland appears to have been trying to seek this information in support of a 'wild goose chase' to prove a self-created theory that the Settlement Agreement was a product of collusion, a theory that has absolutely no basis in fact.  Mr. Haviland had no independent basis to support such an outrageous and manufactured allegation.

*Id.* at 19-20.  The court therefore concluded that:

> In this instance, the subpoenas Mr. Haviland sought to issue represented yet another example of his improper interference in the class action proceedings.  He had no right or basis to demand documents from the various parties and non-parties.  Mr. Haviland

has continuously operated to delay and disrupt these proceedings and aggravate his former employer law firm.  This Court properly denied the subpoenas that were designed to achieve such improper purposes.

*Id.* at 20.

## IV.   HAVILAND'S RELENTLESS HARASSMENT OF CLASS REPRESENTATIVES OF THIS SETTLEMENT SHOULD BE STOPPED

Given that this Court recently denied a ***nearly-identical*** attempt by Haviland to serve last-minute notices to attend the BMS Fairness Hearing, Haviland surely did not expect these Notices to have any legal effect.  Yet there are now ten organizations and individuals who must await an order from this Court before knowing whether to travel to Boston in less than a week. And four consumers, three of which are sick and elderly, must wait to hear whether they must appear for a deposition.

If Haviland wanted to preserve his argument that he has somehow been improperly denied discovery in support of his ever-changing objection to this Settlement there were many procedurally appropriate mechanisms to do so.  Instead, Haviland chose the method that would most harass both the Notice recipients and Class Counsel.  And he has forced this Court to draw its attention away from other important matters in order to issue an order so that the Notice recipients don't have to travel to Philadelphia on Friday or Boston the following Monday – or both.  Respectfully, this is what sanctions are for.

Section 1927 permits sanctions to be awarded against attorneys who "multipl[y] the proceedings ... unreasonably and vexatiously."  28 U.S.C. § 1927.  The First Circuit uses an objective standard for determining when a lawyer's actions are unreasonable or vexatious. *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 64 (1st Cir. 2008) (citation omitted).[3]  Thus, behavior

---

[3] In *Jensen*, the First Circuit, while finding that the record below was not sufficiently developed to affirm the district court's award of sanctions, held that plaintiff's subsequent dismissal of a

is deemed vexatious when it is "harassing or annoying," "regardless of whether it is intended to be so." *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990). "[A]n attorney's actions must evidence a studied disregard of the need for an orderly judicial process...or add up to a reckless breach of the lawyer's obligations as an officer of the court." *Jensen*, 546 F.3d at 64 (internal and external citations omitted).  "Bad faith is not an essential element, but a finding of bad faith is usually a telltale indicium of sanctionable conduct." *Id*. (citation omitted).  Here, even though such a showing is not required, Haviland clearly engaged in bad faith by issuing Notices that he **knew** this Court would deem to be improper, but that would force Class Counsel and this Court to devote further resources to Haviland's games.  This Court should sanction Haviland.

WHEREFORE Class Counsel respectfully request that this Court enter an order quashing the June 6, 2011 Notices to Attend and Notice of Deposition, sanction Haviland appropriately, and all other relief that this Court deems just and appropriate.


DATED:  June 6, 2011

By:  /s/ Steve W. Berman
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

---

replacement class representative "under the circumstances could support an imposition of sanctions."  546 F 3d at 67.

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St. NW, Suite 300
Washington, D.C.  20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455


Jeffrey Kodroff
John A. Macoretta
Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022


Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735
Co-Lead Counsel

## <u>CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE</u>

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on June 6, 2011, I caused copies of **CLASS COUNSEL'S EMERGENCY MOTION TO QUASH DON HAVILAND'S UNAUTHORIZED NOTICES TO ATTEND JUNE 13, 2011 TRACK TWO FAIRNESS HEARING AND NOTICE OF JUNE 10, 2011 DEPOSITIONS OF CLASS 1 REPRESENTATIVES AND MOTION FOR SANCTIONS AGAINST HAVILAND** to be served on all counsel of record by causing same to be posted electronically via Lexis-Nexis File & Serve.

/s/ Steve W. Berman
Steve W. Berman
