IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE:                              )
                                    )  CA No. 01-12257-PBS
PHARMACEUTICAL INDUSTRY AVERAGE     )
WHOLESALE PRICE LITIGATION          )  Pages 1 - 16
                                    )


STATUS HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
June 16, 2011, 2:10 p.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
(617)345-6787

1    A P P E A R A N C E S:

2

          JAMES J. BREEN, ESQ., The Breen Law Firm, P.A.,
3    3562 Old Milton Parkway, Alpharetta, Georgia, 30005,
     for Ven-A-Care of the Florida Keys, Inc.

4
          ROBIN ADELSTEIN, ESQ., Novartis Corporation,
5    230 Park Avenue, 21st Floor, New York, New York, 10169,
     for Novartis Corporation.

6
          JAMES W. MATTHEWS, ESQ., Sherin and Lodgen, LLP,
7    101 Federal Street, Boston, Massachusetts, 02110,
     for Watson Pharmaceuticals, Inc.

8
          WILLIAM A. ESCOBAR, ESQ., Kelley Drye & Warren, LLP,
9    101 Park Avenue, New York, New York, 10178, for Mylan
     Pharmaceuticals.

10
          PAUL B. CARBERRY, ESQ., White & Case, LLP,
11   1155 Avenue of the Americas, New York, New York, 10036-2787,
     for Sandoz, Inc.

12
     ALSO PRESENT:
13
          MARK JONES, President, Ven-A-Care of the Florida Keys.
14
          JOHN R. ALPHIN, ESQ., South Carolina.
15
          WILLIAM E. HOPKINS, JR., ESQ., South Carolina.
16

17

18

19

20

21

22

23

24

25

1           P R O C E E D I N G S

2           THE CLERK:  Court calls Civil Action 01-12257, master

3    docket, In Re:  Ven-A-Care.  Could counsel please identify

4    themselves.

5           MR. BREEN:  Your Honor, Attorney Jim Breen for the

6    relator, Ven-A-Care of the Florida Keys, and with me is

7    Ven-A-Care's president, Mark Jones, today.

8           MR. JONES:  Good afternoon.

9           MR. MATTHEWS:  Good afternoon, your Honor.  James

10   Matthews for the Watson family of defendants.

11          MR. ESCOBAR:  Good afternoon, your Honor.  Bill

12   Escobar for Mylan.

13          MS. ADELSTEIN:  Robin Adelstein for Sandoz.

14          MR. CARBERRY:  Paul Carberry, White & Case, for

15   Sandoz.

16          THE COURT:  Who are these gentlemen who are sitting

17   back here?

18          MR. HOPKINS:  Your Honor, my name is Bill Hopkins from

19   the state of South Carolina.

20          MR. ALPHIN:  John Alphin from the state of South

21   Carolina.

22          THE COURT:  So just excuse me.  I get all these cases

23   confused.  Is that part -- do you have an interest in this

24   case?

25          MR. ALPHIN:  No, ma'am.  We're just observing today.

1          THE COURT:  You're just observing, okay.  All right,

2    thank you.

3          Mr. Breen?

4          MR. BREEN:  Your Honor, may I proceed?

5          THE COURT:  This is a status.

6          MR. BREEN:  Correct, status conference, as I

7    understand it, on all remaining Ven-A-Care cases in the MDL.

8    And, your Honor, I'm pleased to report that --

9          THE COURT:  Now, wait.  Before you say a word, is this

10   public, everything you're about to say?  I was told by the

11   mediator there was at least one --

12         MR. BREEN:  Yes, your Honor, and that would not be one

13   I would discuss details on, even with the other defendants.

14         THE COURT:  Fine.

15         MR. BREEN:  And that other one, the mediator has

16   reported directly to your Honor in accordance with our mediated

17   procedure, and he's informed your Honor of what's going on with

18   that.

19         THE COURT:  Okay, fine.

20         MR. BREEN:  So I won't talk about that one.

21         THE COURT:  Good.

22         MR. BREEN:  Aside from that, Judge, I'm pleased to

23   report that since the last status conference approximately two

24   weeks ago, we were able to continue with the settlement efforts

25   that we advised your Honor we were going to proceed with, and

1  we've reached settlements in principle regarding all remaining

2  Ven-A-Care cases in the MDL, and also all pending unsealed

3  litigation in any state court also, with the exception of the

4  Texas trial back in January against Actavis, and that appeal

5  continues.  But aside from that appeal, with the settlements

6  that I can announce to your Honor today, they will include

7  various bits and pieces of the state court cases also and

8  everything before your Honor that is a Ven-A-Care case.

9          THE COURT:  He's with the U.S. Attorney's office?

10         MR. BREEN:  Yes, your Honor.  So with that, number

11  one, we completed with Professor Green the mediation of the

12  Watson case and reached a mediated resolution of the remaining

13  issues in Watson that are at issue here in this court.

14         THE COURT:  Have you filed a stipulation of dismissal?

15         MR. BREEN:  No, your Honor, not yet because these

16  require U.S. DOJ approval, which is being recommended by staff.

17         THE COURT:  How long does that take, 90 days or so?

18         MR. BREEN:  Probably, your Honor.

19         THE COURT:  Why don't I do like a 120-day order.

20         MR. MATTHEWS:  That's acceptable to Watson, your

21  Honor.

22         THE COURT:  Okay, a 120-day order of dismissal.  So it

23  puts the burden on all of you to get it going and it won't go

24  indefinitely.  I'll do that for all of these that you mention.

25         MR. BREEN:  I would say, your Honor, that although

1   Main Justice isn't here, it would be their preference not to

2   have --

3           THE COURT:  I know it, but it's my preference the

4   other way.  This has been lingering for a decade.  I'm hot to

5   trot.  So as long as there's an agreement in principle, I think

6   it's appropriate.  It means either anybody can put it back on

7   the table if it doesn't work out or they reject it.  I

8   understand that.

9           MR. BREEN:  I understand, your Honor.  And you did

10   understate it a bit.  We filed our first case about 16 years

11   ago this week in these --

12          THE COURT:  So you've been at it even longer than --

13          MR. BREEN:  -- AWP line of cases, so it is definitely

14   time to resolve them.

15          Anything else, James, on Watson?

16          MR. MATTHEWS:  No.

17          MR. BREEN:  Mylan, U.S. ex rel Ven-A-Care v. Mylan and

18   California ex rel v. Ven-A-Care v. Mylan, also before your

19   Honor, as promised, Mr. Escobar and his colleagues and a

20   representative of the company met in the interim, and we've

21   reached a successful agreement in principle that would resolve

22   the declined U.S. case as well as the California case, which

23   the Attorney General has intervened on and is litigating with

24   us, and he's authorized me to advise the Court.

25          THE COURT:  So those two cases are what, the

1  California?

2         MR. BREEN:  The California ex rel Ven-A-Care v. Mylan

3  case and the U.S. ex rel Ven-A-Care v. Mylan case.

4         MR. ESCOBAR:  With respect to just California.  We

5  have previously settled the rest of the Ven-A-Care cases.

6         MR. BREEN:  Correct, Mr. Escobar is correct.  That's

7  already been signed, funded, dismissed.  This is just the last

8  piece of the U.S. case and the California case vis-à-vis Mylan.

9         THE COURT:  All right, but now I'm getting confused.

10  So when I do the 120-day order, should it be just California or

11  the U.S. ex rel as well?  If one's already been settled, I

12  don't want to --

13         MR. ESCOBAR:  Well, we had settled the U.S. v. Mylan

14  case as to everything except the U.S. part of the California

15  case, and there was also the state claim for California.  We've

16  now resolved the federal and state share of California in

17  principle, so the 120-day order should apply to both of those.

18         THE COURT:  All right.

19         MR. BREEN:  He's correct, Judge, they're both pending

20  before your Honor.

21         THE COURT:  Okay.

22         MR. BREEN:  Now, again, all these are subject to

23  approvals by the respective boards of directors and the

24  Attorney General of the United States and technically the state

25  Attorney Generals if they're signatories on the agreement.  I

1 don't anticipate issues with any of those.  DOJ is prepared to

2 give your Honor an interim report on or about July the 15th, if

3 your Honor would be so inclined to want one, as to their

4 progress.

5           THE COURT:  No.  These 120-day orders are beautiful.

6 So they're either going to have to come back in here and move

7 to reopen with an explanation or -- it may just be that they

8 need more time, it's vacation or something, or it could be that

9 there's a problem, but they could move back within the 120,

10 okay?

11           So Sandoz?

12           MR. BREEN:  U.S. ex rel Ven-A-Care v. Sandoz and

13 California ex rel Ven-A-Care v. Sandoz, those we continue to

14 meet and mediate with Professor Green and with trial counsel

15 and Ms. Adelstein, the corporate in-house counsel for Sandoz,

16 and we've reached a successful agreement in principle that

17 would resolve both of those cases, and it's basically in the

18 same status as the --

19           THE COURT:  California and U.S.?

20           MR. BREEN:  California and U.S., your Honor.

21           THE COURT:  You know what might make the most sense,

22 since this is public record, at least by e-mail send the exact

23 cases and what we should put in the order of dismissal to make

24 sure that Ms. Molloy, who is only recently my courtroom deputy,

25 gets exactly the right numbers and exactly how we do the

1    120-day order; you know, maybe tomorrow just exactly what we

2    should do in these orders so that someone doesn't -- and as far

3    as you're concerned, that ends this case except if -- what do I

4    do with attorneys' fees for you?  At some point the government

5    comes --

6              MR. BREEN:  All of these settlements, your Honor, have

7    resolved attorneys' fees and costs.

8              THE COURT:  And I don't need to approve them?

9              MR. BREEN:  Technically, any dismissal under the False

10   Claims Act, your Honor has to approve the --

11             THE COURT:  Right, so it's not a done deal at the end

12   of it.  So at some point you're going to have to file a motion

13   for approval.

14             MR. BREEN:  Just like we've done all the others,

15   Judge.  There's been several of them so far.  We've pretty much

16   got that procedure down where we'll file the motion for

17   approval with your Honor --

18             THE COURT:  Within the 120 days, so --

19             MR. BREEN:  -- and with the U.S. consent attached and

20   everything as we had before, and then it's pretty --

21             THE COURT:  Is that also true in California?  Do I --

22             MR. BREEN:  Technically, under the California False

23   Claims Act, it's the --

24             THE COURT:  Not technically.  It's the statute.  I

25   think I've got to do something, so --

1          MR. BREEN:  Yes, Judge.  And as with all the others

2     we've done, including the California settlements, we'll present

3     your Honor with the consents signed by the Attorneys General or

4     the designees and the agreed form of the orders that will be

5     part of the settlement agreement.

6          THE COURT:  So I suppose the order should say

7     something like "and the motion for approval shall come within a

8     certain period of time," and it reserves for me the right to

9     reject it and bring it up as well because I think I do have to

10    sign something, or at least under the whistleblower statute

11    federally I do.

12         MR. BREEN:  Correct, so we'll put that in.

13         THE COURT:  Do we know if the Attorney General of

14    California has been notified and approves?

15         MR. BREEN:  The Attorney General of California has

16    been notified.  The Deputy Attorney Generals have been working

17    on it and recommending it.  Of course, it's got to go through

18    their formal process also, so I --

19         THE COURT:  So it just may mean that I should, as soon

20    as I get notice that it's actually all been approved, actually

21    schedule a hearing.

22         MR. BREEN:  Yes, your Honor.  Remember, we've got Par

23    and Actavis also that your Honor indicated you would enter the

24    90-day orders on at the last status conference.  They have been

25    settled in principle.

1          THE COURT:  Yes.  So include all this in the footnote

2     and suggested language so that I'll just get it all correctly.

3          So with this, this case ends, unless either somebody's

4     board of directors rejects it, or the Attorney General rejects

5     it, or I do for some reason because of an objection from

6     California or the Attorney General, or for reasons sufficient

7     to myself.  I mean, I don't know what the --

8          MR. BREEN:  Absolutely.

9          THE COURT:  One of the issues in attorneys' fees that

10    I'd be interested in knowing when it comes in is, usually --

11    this hit me with another whistleblower case that I had on

12    attorneys' fees, so just to be clear -- I know you're looking

13    concerned now -- I granted a certain percentage which seemed

14    totally fair and appropriate, given how much work the person

15    had put into it; but then I found out there was a side

16    agreement that in addition to that, they got a ton more.  So is

17    there such a thing here?

18         MR. BREEN:  Your Honor, these are qui tam cases where

19    the statute provides for a fee-shifting provision, but also the

20    relator's arrangement with their attorneys, the relator gets a

21    percentage approved by the Attorney General, and then the

22    relator's relationship with the attorneys is based upon a fee

23    agreement, a contingency fee agreement.  So it's not a common

24    fund scenario.

25         THE COURT:  I'm just saying, be up front about it --

1        MR. BREEN:  Yes, your Honor.

2        THE COURT:  -- and explain that to the Attorney

3   Generals.  It came up in another case, the Neurontin case to be

4   specific, you know, where I awarded whatever I thought, a

5   fairly decent chunk actually, you know, the typical kinds of

6   percentages; and then I found out that if you added to that

7   what the relator had agreed to pay, it was actually a fortune.

8   So I just want to make sure that I'm totally understanding when

9   I approve, you know, what the whole package looks like.  But

10  that's irrelevant to the big settlement between all of you, so

11  that's not a -- and is it your practice to tell the AGs what

12  you're getting in its entirety?

13       MR. BREEN:  Absolutely.  I think our fee agreements

14  have been even discovered in these cases.

15       THE COURT:  Okay.  I'm not saying it will come up

16  here.  I'm just saying I recently had it come up.

17       MR. BREEN:  Sure, I understand, your Honor.

18       THE COURT:  And it became an issue, so, okay?  All

19  right, so that's it.

20       Now, I want to know why South Carolina is here, other

21  than you're enjoying our beautiful weather.  Do you have a case

22  here that I need to know about?

23       MR. HOPKINS:  We have one case that's before your

24  Honor, but we're speaking to local counsel.  The only case here

25  is Abbott, the South Carolina Medicaid v. Abbott, but we're

1   speaking with counsel about remanding it back because there is

2   a South Carolina case, you Honor, on behalf of the State

3   Employee Health Plan against Abbott which is in South Carolina,

4   and I believe we're going to reach an agreement to remand this

5   case back to South Carolina so they can proceed together in

6   state court.  It doesn't make much sense, your Honor --

7            THE COURT:  Is Abbott agreeing to that?

8            MR. HOPKINS:  We're waiting to hear back from them,

9   your Honor.

10           THE COURT:  I bet you are.

11           MR. HOPKINS:  But we'll let you know.  I don't think

12   they're any more interested in litigating in two venues than we

13   are.

14           THE COURT:  Well, I'm the happiest person in America

15   if they all agree to go back to South Carolina, so the issue

16   won't be me.  However, at least I've found in the past that

17   that's not always what the drug -- isn't that right?  People

18   prefer to be in a multidistrict jurisdiction.  But maybe that's

19   right.

20           MR. HOPKINS:  If there is a problem, your Honor, we'll

21   notify the Court immediately and come back before you.

22           THE COURT:  It's sort of like my Mylan, my state case,

23   Commonwealth of Massachusetts v. Mylan.  Is that the Medicaid

24   case?

25           MR. HOPKINS:  Yes, ma'am, I believe it is.  Yes,

1    ma'am.  And discovery has been ongoing, work is being done,

2    but --

3              THE COURT:  Is it in Federal Court or in state court?

4              MR. HOPKINS:  State court.  State court, yes, ma'am.

5              THE COURT:  And does Abbott have a -- is it diversity

6    of citizenship?  Are there federal causes of action as well,

7    have you asserted?

8              MR. HOPKINS:  No, ma'am.

9              THE COURT:  So it's a pure state law?

10             MR. HOPKINS:  Pure state law.

11             THE COURT:  Medicaid fraud?

12             MR. HOPKINS:  Yes.

13             THE COURT:  So it's a pure diversity situation.

14   Interesting.  I don't know if there are more of you out there.

15   I keep hearing, you know, Kentucky, Montana, Nevada.  So I

16   don't know what's going on.  That's why it's interesting to me.

17             Is there something I owe you at this point if you're

18   pending here, if Abbott doesn't agree?  Is there some next step

19   I should be doing?

20             MR. HOPKINS:  No, ma'am, not from our perspective at

21   all.  As I said, all of the other cases that South Carolina

22   brought are in state court, and they're all proceeding under a

23   state court scheduling order.  So the short answer is, no,

24   ma'am, I don't believe there's anything that we're --

25             THE COURT:  I don't owe you anything?

1          MR. HOPKINS:  No, ma'am.

2          THE COURT:  But if it's pending here, what's the

3    status here?  Do you know?  Is it just an open case in the --

4          MR. HOPKINS:  It's just an open case, your Honor.

5    We're conducting discovery as we speak.  Depositions are being

6    taken.  So as far as we know, no motions have been filed before

7    your Honor in that case.  All of the motions have been filed in

8    the state court action.

9          THE COURT:  And I appreciate that.  I am looking to

10   put to bed these cases.  As I say, it's been since 2001, ten

11   years of my life, ten years of all these lawyers' lives.  We've

12   grown old together.  Our kids have graduated college together.

13   I mean, so I am looking to end the case.  So the one thing

14   that's not likely to happen is, if Abbott doesn't agree, I just

15   may put it on a schedule.

16         MR. HOPKINS:  I understand, your Honor.

17         THE COURT:  Okay.  But you're welcome.  Have you ever

18   been to Boston before?

19         MR. HOPKINS:  No, ma'am.  This is my first trip, and

20   it's a beautiful city and beautiful weather.

21         THE COURT:  All right.  Not always.  You picked a good

22   day.  All right, thank you.  Welcome.

23         Is there anything else we all need to discuss here?

24   Okay, good luck.

25         MR. BREEN:  Thank you, your Honor.

1        MR. ESCOBAR:  Thank you, your Honor.

2        THE CLERK:  All rise.

3        (Adjourned, 2:27 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 17

1                C E R T I F I C A T E

2

3

    UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
    CITY OF BOSTON               )
5

6

7        I, Lee A. Marzilli, Official Federal Court Reporter,

8   do hereby certify that the foregoing transcript, Pages 1

9   through 16 inclusive, was recorded by me stenographically at

10  the time and place aforesaid in Civil Action No. 01-12257-PBS,

11  In Re:  Pharmaceutical Industry Average Wholesale Price

12  Litigation, and thereafter by me reduced to typewriting and is

13  a true and accurate record of the proceedings.

14      In witness whereof I have hereunto set my hand this 20th

15  day of June, 2011.

16

17

18

19

20            /s/ Lee A. Marzilli

21            _____
              LEE A. MARZILLI, CRR
              OFFICIAL FEDERAL COURT REPORTER
22

23

24

25