# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| TRACK 2 SETTLEMENT | Judge Patti B. Saris |

## CLASS PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO ADD INDIVIDUAL PLAINTIFFS AS CLASS <u>REPRESENTATIVES FOR THE TRACK TWO SETTLEMENT</u>

## TABLE OF CONTENTS

<u>PAGE</u>

I.      INTRODUCTION ........................................................................................................1

II.     THE PROPOSED CLASS REPRESENTATIVES HAVE ARTICLE III STANDING.....3

     A.     Each Proposed Representative was Administered a Track Two Drug and
          Made An Out-of-Pocket Payment for those Drugs....................................................4

     B.     The Proposed Class Representatives are Not Required to Have Purchased
          Every Track Two Drug from Each Track Two Defendant .......................................5

     C.     Consumers Who Paid for Multi-Source Drugs Are Members of the Class.............9

     D.     Consumers Who Paid for Track Two Drugs in 2004 are Members of the
          Settlement Class.....................................................................................................13

III.    HAVILAND'S ARGUMENTS AGAINST THE INDIVIDUAL CONSUMER
      REPRESENTATIVES FAIL ......................................................................................14

     A.     Muriel Tonacchio ................................................................................................15

     B.     Agnes Swayze .....................................................................................................16

     C.     Thomas Trusky On Behalf of the Estate of Theresa Trusky .................................18

     D.     Mariella Laday .....................................................................................................18

IV.     THE PROPOSED CLASS REPRESENTATIVES ARE TYPICAL AND
      ADEQUATE .............................................................................................................19

     A.     The Proposed Representatives Satisfy the Tests for Typicality and
          Adequacy .............................................................................................................19

     B.     The Court has Ample Discretion to Approve the Addition of Class
          Representatives at this Time .................................................................................21

     C.     The Proposed Class Representatives Are Not Releasing Drugs That Were
          Never Pursued in This Litigation ..........................................................................25

V.      THE ASSOCIATION PLAINTIFFS ARE APPROPRIATE CLASS 1
      REPRESENTATIVES ...............................................................................................26

     A.     The Association Plaintiffs Have Standing and are Adequate Class 1
          Representatives .....................................................................................................26

B.      The Association Plaintiffs May be *More* Adequate than Consumer
        Representatives ........................................................................................................28

C.      Haviland's "New" Associational Standing Cases do not Apply ...........................31

VI.     THE TRACK TWO DEFENDANTS ARE NOT JUDICIALLY ESTOPPED
        FROM SUPPORTING THIS SETTLEMENT ...................................................................32

VII.    THE COURT SHOULD CLOSELY SCRUTINIZE HAVILAND'S ALLEGATIONS
        OF A LAWYER-DRIVEN SETTLEMENT ......................................................................33

001534-16  455671 V1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
374 F.3d 23 (1st Cir. 2004).....................................................................................14, 33

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................................28

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004)......................................................................................26, 27

*Chase v. Roy*,
363 Mass. 402, 294 N.E.2d 336 (1973) ........................................................................12

*Colwell v. HHS*,
2009 U.S. App. LEXIS 5561 (9th Cir. Mar. 18, 2009)..................................................27

*Conley v. Boyle Drug Co.*,
570 So. 2d 275 (Fla. 1990)............................................................................................11

*Denney v. Jenkens & Gilchrist*,
230 F.R.D. 317 (S.D.N.Y. 2005), *aff'd in part and vacated in part on other grounds*,
443 F.3d 253 (2d Cir. 2006)...........................................................................................20

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
183 F.3d 1 (1st Cir. 1999).............................................................................................23

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).......................................................................................................16

*Epstein v. Wittig*,
2005 U.S. Dist. LEXIS 31078 (D. Kan. Dec. 2, 2005).................................................23

*Heit v. Van Ochten*,
126 F. Supp. 2d 487 (W.D. Mich. 2001) ......................................................................24

*Hemphill v. San Diego Ass'n of Realtors*,
225 F.R.D. 616(S.D. Cal. 2004) ...................................................................................22

*In re Airline Ticket Comm'n Antitrust Litig.*,
953 F. Supp. 280 (D. Minn. 1997)...............................................................................24

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003)......................................................................................20

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 24 (D.D.C. 2001)...................................................................................23

*In re Lupron® Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005)...............................................................................34

*In re Pharms. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005)..................................................................... *passim*

*In re Pharms. Indus. Average Wholesale Price Litig.*,
520 F. Supp. 2d 267 (D. Mass 2007). ........................................................................5

*In re Pharms. Indus. Average Wholesale Price Litig.*,
491 F. Supp. 2d 20 (D. Mass. 2007) .......................................................................12

*In re Polymedica Corp. Secs. Litig.*,
224 F.R.D. 27 (D. Mass. 2004).........................................................................19, 20

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)...............................................................................21

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
2006 U.S. Dist. LEXIS 58278 (D.N.H. Aug. 15, 2006) ........................................21

*International Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)
v. Brock*,
477 U.S. 274 (1986)................................................................................................29

*Jaffe v. Morgan Stanley & Co.*,
2008 U.S. Dist. LEXIS 12208 (N.D. Cal. Feb. 7, 2008) ........................................23

*Kincade v. General Tire & Rubber Co.*,
635 F.2d 501 (5th Cir. 1981) ..................................................................................23

*Lazy Oil, Co. v. Witco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) .............24

*Mahar v. Hanover House Indus.*,
1995 Mass. Super. LEXIS 1 (Super. Ct. 1995)................................................10, 11

*Martin v. Abbott Labs.*,
689 P.2d 368 (W.D. Wash. 1984) .....................................................................11, 12

*Maywalt v. Parker & Parsley Petroleum Co.*,
155 F.R.D. 494 (S.D.N.Y. 1994) ............................................................................23

*Maywalt v. Parker & Parsley Petroleum Co.*,
864 F. Supp. 1422 (S.D.N.Y. 1994), *aff'd*, 67 F.3d 1072 (2d Cir. 1995)...............24

*McCormack v. Abbott Labs.,*
617 F. Supp. 1521 (D. Mass. 1985) ..........................................................10, 11, 12

*Me. Peoples Alliance & Natural Res. Def. Counsel v. Mallinckrodt, Inc.,*
471 F.3d 277 (1st Cir. 2006) ...................................................................32

*Morris v. Parke, Davis & Co.,*
667 F. Supp. 1332 (C.D. Cal. 1987) .......................................................10

*O'Connor v. Raymark Indus., Inc.,*
401 Mass. 586, 518 N.E.2d 510 (1988) ..................................................12

*Parker v. Anderson,*
667 F.2d 1204 (5th Cir. 1982) ...............................................................24

*Payton v. Abbott Labs,*
386 Mass. 540, 437 N.E.2d 171 (1982) ..................................................10

*Rhode Island Brotherhood of Correctional Officers v. Rhode Island,*
357 F.3d 42 (1st Cir. 2004) ...............................................................29, 30

*Ruiz Rivera v. Pfizer Pharms., LLC,*
521 F.3d 76 (1st Cir. 2008) ...................................................................15

*Russo v. Material Handling Specialties Co.,*
1995 Mass. Super. LEXIS 436 (Super. Ct. 1995) .............................11, 12

*Sindell v. Abbott Labs.,*
607 P.2d 924 (Cal. 1980) .......................................................................12

*Smith v. Cutter Biological, Inc.,*
823 P.2d 717 (Haw. 1991) .....................................................................11

*Sosna v. Iowa,*
419 U.S. 393 (1975) ...............................................................................20

*Spencer v. Baxter Int'l, Inc.,*
163 F. Supp. 2d 74 (D. Mass. 2001) .................................................10, 12

*United Food & Commer. Workers Union Local 751 v. Brown Group,*
517 U.S. 544 (1996) ..........................................................................27, 28

*United Seniors Ass'n. Inc. v. Philip Morris USA,*
500 F.3d 19 (1st Cir. 2007) ...............................................................31, 32

*Waste Mgmt. Holdings, Inc. v. Mowbray,*
208 F.3d 288 (1st Cir. 2000) .................................................................28

001534-16  455671 V1

### OTHER AUTHORITIES

1 ALBERT CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS
   § 3:13 (4th ed. 2002)...................................................................................................19

1 ALBERT CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS
   § 3:34 (4th ed. 2002)......................................................................................26, 30, 31

RESTATEMENT (SECOND) OF TORTS, § 433(B)(3) cmt.f (1965) ....................................................12

## I.      INTRODUCTION

Don Haviland opposes Class Plaintiffs' motion to add individual plaintiffs Agnes Swayze, Thomas Trusky and Mariella Laday as Class 1 Representatives for the Track Two Settlement.  Though Haviland has for years described himself as an advocate for consumers in this case and, in fact, once sought appointment as Class Counsel on behalf of consumers *for this Settlement*, he now advocates positions that, if adopted, would prevent consumers from recovering ***anything*** from the Track Two Defendants – whether in settlement or in continuing litigation.  As the Court astutely recognized during the June 13, 2011 Fairness Hearing, Haviland's real motive is to defeat any payments whatsoever to the Class at any time.  Haviland admitted as much when he submitted his "bottom line" that ***no*** class can be certified and ***no*** class member can receive a penny in recovery in this proposed settlement.  Ex. 1 (June 13, 2011 Hearing Tr. at 45).[1]  Haviland would rather throw bombs and wreak havoc than speed the delivery of fair and reasonable compensation to an elderly and dying Class (including his own "clients").  Fortunately for the consumers who Class Counsel have vigorously represented for the past ten years, Haviland's Opposition fails.

The Court has required that Plaintiffs allege facts demonstrating the adequacy and typicality of proposed Class Representatives and disclose documents "demonstrating that the proposed class representatives made co-insurance (at least in part) under Medicare Part B based on AWP."  *In re Pharms. Indus. Average Wholesale Price Litig. ("AWP")*, 230 F.R.D. 61, 81 (D. Mass. 2005).  The proposed Class Representatives have done so.  They have each provided documentation demonstrating that they were administered at least one Class drug, made

---

[1] All "Ex. __" references cited herein are to exhibits attached to the Declaration of Steve W. Berman in Support of Class Plaintiffs' Reply Brief in Support of Their Motion to Add Individual Plaintiffs As Class Representatives for the Track Two Settlement ("Berman Decl."), unless otherwise indicated.

unreimbursed Medicare co-payments therefor, and are prepared to assume and fully and faithfully discharge their responsibilities as Class Representatives.

Nonetheless, and in attempt to avoid applying standing criteria Haviland once embraced, Haviland challenges a number of "defects" that purportedly apply to most or all of the proposed Class Representatives.  All of Haviland's challenges fail.

First, Haviland claims that many of the proposed Representatives lack standing because they paid for multi-source drugs and therefore cannot identify the manufacturer of the drug(s) they took.  However, the Court has long ago resolved this issue in favor of Plaintiffs, and this is a characteristic shared by the Class as a whole (including Haviland's own clients).

Second, Haviland claims that some proposed Plaintiffs who paid for drugs in 2004 cannot be adequate Class Representatives.  However, in defending his own clients, ***all of whom*** made payments in 2004 or later, Haviland argued just the opposite.  Even setting aside what Haviland previously argued, his present position is meritless.  The Class Period for the Class 1 portion of this Settlement is January 1, 1991 to January 1, 2005, and all of the payments made by the proposed Class Representatives fall within this period.

Third, Haviland argues that each consumer Plaintiff should have paid for every drug from each Track Two Defendant.  This argument is contrary to the Court's prior rulings as well as arguments that Haviland himself has made in this and other cases.  Moreover, Haviland provides no basis to abandon the Court's previous "one plaintiff-one defendant" rule.

Fourth, Haviland claims that the proposed Representatives have not established that they paid for Track Two drugs based on AWP and that the Track Two Settlement claim form is inadequate for this purpose.  However, the Court has long recognized that, by definition, Medicare Part B beneficiaries paid based on AWP during the Settlement Class Period.  And the

- 2 -

claim form, which details all of the relevant drug administrations directly from the CMS database, constitutes superior if not best evidence of those administrations.

Fifth, Haviland frivolously argues that the Track Two Defendants should be judicially estopped from arguing that this Court should certify a settlement Class because they once argued against the certification of a litigation class.  If this were the law, of course, then no defendant that had opposed a litigation class could ever settle a class action.  The Track Two Defendants have reserved all of their litigation positions in the event this Settlement does not receive final approval, and they have continuously indicated that, should this Settlement not be approved, they will vigorously oppose class certification and liability.  There is nothing inconsistent with advocating final approval of this Settlement now.

Finally, although Haviland characterizes this Settlement as a lawyer-driven one, it is Haviland's Opposition that merits this Court's careful scrutiny because he is once again using his *consumer* clients to accomplish his own ends – in this case, to destroy a fair and reasonable settlement reached *for the benefit of consumers*.  When Haviland thought he could be appointed as Class Counsel, he proffered the same individuals on whose behalf he filed his Opposition as proposed class representatives *supporting* the certification of the litigation Class.  Now that he has been disqualified as Class Counsel and has seen that his objections are unlikely to succeed, he is using those same consumers to oppose class certification outright and to attempt to obliterate this Settlement altogether.  Haviland's vengeance should not deprive Class members of real recovery from these Defendants.  The Motion to Add should be granted.

## II.    THE PROPOSED CLASS REPRESENTATIVES HAVE ARTICLE III STANDING

Haviland makes several standing challenges, Br. at 11-20, beginning his attack with the unsupported assertion that the Court "seemed to be willing to pass on the question of standing of

the proposed individual plaintiffs" at the June 13 fairness hearing.  Br. at 1.  While the Court

disagreed with Haviland's arguments about standing, it plainly did not refuse to address the

issue.[2]  To the contrary, the Court indicated that it would review the evidence and decide whether

the Class Representatives have proper standing by making a payment for a Track Two drug.  Ex.

1 (June 13, 2011 Hearing Tr. at 51).  Based on the evidence presented to the Court, Plaintiffs

easily satisfy this test.

## A.    Each Proposed Representative was Administered a Track Two Drug and Made An Out-of-Pocket Payment for those Drugs

In nearly every individual section attacking each proposed Class Representative,

Haviland's brief makes the unsupported statement that the proposed Representative did not pay

for Track Two drugs based on AWP.  *See, e.g.,* Br. at 16 ("Ms. Laday's proffer fails to

demonstrate that she made any payment based on the AWP of any Track 2 Defendants.  (The

settlement claim form is not evidence.)").  However, by providing their respective Settlement

claim forms and testifying to the same, all of the proposed Representatives have submitted

documentation supporting that they were Medicare Part B beneficiaries and were administered

the Track Two drugs identified therein.  ***And those claim forms are quite possibly the best***

***evidence that could be submitted of these irrefutable facts, given that the claim forms were***

***printed by the Claims Administrator*** ***<u>directly from data provided by CMS showing Track Two</u>***

***<u>drug administrations</u>***.  Haviland simply cannot challenge this.

---

[2] Similarly, Class Counsel do not dispute the authority cited by Haviland for the general propositions that (1) Article III standing must be satisfied; and (2) to establish Article III standing a plaintiff must show (a) an injury-in-fact; (b) that is 'fairly traceable' to the action of the defendant(s); and (c) is likely to be redressed by the action brought.  *See* Br. at 2-3 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and *Sea Shore Corp. v. Sullivan*, 158 F.3d 51 (1st Cir. 1998)).  However, for the reasons set forth below, we dispute the way in which Haviland applies those principles to this case.

In addition, each proposed Representative has testified to making out-of-pocket, unreimbursed co-payments for the drugs.  *See* Dkt. No. 7572-1 (Swayze Aff.), ¶ 8; Dkt. No. 7572-2 (Trusky Decl.), ¶¶ 3, 5 & Ex. 2; Dkt. No. 7572-3 (Laday Decl.), ¶ 4.

Furthermore, the Court has already found that, by definition, the proposed Class Representatives' payments were based on AWP.  *See, e.g., In re AWP*; 520 F. Supp. 2d 267, 272 (D. Mass. 2007) ("I conclude that defendants' conduct was both knowing and willful because they knew that Medicare beneficiaries, and thus their insurers, were locked by statute into paying twenty-percent of grossly inflated phony AWPs, which bore no relation to any average of wholesale prices in the marketplace."); *In re AWP*, 230 F.R.D. at 82 ("Defendants have spent little time challenging the predominance of factual issues with respect to consumers who co-pay for physician-administered drugs under Medicare Part B.  Here, common factual issues predominate since a typical consumer by statute simply pays a percentage of AWP as a co-pay. There is therefore no separate factual issue regarding the knowledge and reliance of each class member.").

**B.     The Proposed Class Representatives are Not Required to Have Purchased Every Track Two Drug from Each Track Two Defendant**

Haviland suggests that each proffered Representative should have paid for every Track Two drug, although – like so many of his other arguments – the suggestion is made in "drive by" fashion with little support.  *See* Br. at 3 (claiming the "standing" issue to be addressed is "whether these plaintiffs can pursue claims, to the extent claims may be stated, based upon drugs they did not purchase, which drugs were manufactured by Track 2 Defendants they could not sue directly for damages.").  The argument is contrary to the Court's prior rulings and to Haviland's previous positions in this and other AWP-related cases.

As Haviland acknowledges (*see* Br. at 11), this Court long ago held that "Plaintiffs must establish that there is an individual class representative with standing to sue each defendant." *In re AWP*, 230 F.R.D. at 80. This "one plaintiff-one defendant" rule has been the standard by which all proposed Class Representatives have been judged in this case, whether the context was a litigation certification or a settlement certification. As summarized in the following table, the proffered Representatives have the necessary Defendant coverage under the Court's "one plaintiff-one defendant" rule:

| Track 2 Defendant | Track 2 Drug | Class 1 Consumer Representatives |
|---|---|---|
| **Abbott** | Adenoisine | Thomas Trusky (obo Theresa Trusky), Mariella Laday |
| | Alcohol injection | Thomas Trusky (obo Theresa Trusky) |
| | Dextrose | Agnes Swayze |
| | Heparin Sodium | Agnes Swayze |
| | Ketorolac | Mariella Laday |
| | Mannitol | Thomas Trusky (obo Theresa Trusky) |
| | Methotrexate Sodium | Mariella Laday |
| | Sodium Chloride | Mariella Laday, Thomas Trusky (obo Theresa Trusky) |
| **Amgen (Immunex)** | Epoetin Alpha (Epogen) | Thomas Trusky (obo Theresa Trusky); Muriel Tonacchio (obo Wilma Mort) |
| | Neulasta | Thomas Trusky (obo Theresa Trusky) |
| | Neupogen | Agnes Swayze |
| **Aventis (ZLB Behring & Hoechst Marion Roussel)** | Dolasetron Mesylate (Anzemet) | Muriel Tonacchio (obo Wilma Mort); Agnes Swayze |
| **Baxter** | Cisplatin | Thomas Trusky (obo Theresa Trusky) |
| | Dextrose | Agnes Swayze |
| | Doxorubicin | Thomas Trusky (obo Theresa Trusky) |
| | Gammagard | Mariella Laday |
| | Heparin Sodium | Agnes Swayze |
| | Mannitol | Thomas Trusky (obo Theresa Trusky) |
| | Sodium Chloride | Mariella Laday; Thomas Trusky (obo Theresa Trusky) |
| **Bayer** | Gamimune | Mariella Laday |
| **Dey** | Accuneb | Mariella Laday; Muriel Tonacchio (obo Wilma Mort) |
| | Ipratropium Bromide | Muriel Tonacchio (obo Wilma Mort) |

- 6 -

| Track 2 Defendant | Track 2 Drug | Class 1 Consumer Representatives |
|---|---|---|
| Fujisawa | Adenoisine | Mariella Laday; Thomas Trusky (obo Theresa Trusky) |
| | Aristospan | Mariella Laday |
| | Dexamethosone Sodium Phosphate | Agnes Swayze; Thomas Trusky (obo Theresa Trusky) |
| | Lyphocin | Mariella Laday |
| | Mannitol | Thomas Trusky (obo Theresa Trusky) |
| Gensia Sicor | Doxorubicin | Thomas Trusky (obo Theresa Trusky) |
| | Etoposide | Thomas Trusky (obo Theresa Trusky) |
| Pharmacia | Etoposide | Thomas Trusky (obo Theresa Trusky) |
| Watson | Dexamethosone Sodium Phosphate | Agnes Swayze; Thomas Trusky (obo Theresa Trusky) |

Haviland has previously argued that such coverage suffices to establish proper standing in this and other AWP-related litigation. For example, none of Haviland's clients here were administered drugs from every one of the Track Two Defendants, yet Haviland at one time urged they be appointed to represent the Class.

Haviland's New Jersey state case, which served as one of the predicates for the Court order disqualifying Haviland from serving as Class Counsel here, provides another example. When his TPP client's individual claim was dismissed without prejudice for failure to comply with outstanding discovery, Haviland sought to add new TPP plaintiffs. In doing so, Haviland stated that "[b]oth entities paid AWP-based prices for drugs manufactured and sold by one or more Defendants during the time period alleged in the Complaint" and argued that "the **_collective_** drug purchases by these two entities establish standing to sue all of the Defendants in this case." *See* Ex. 2 at 4-5 (emphasis added). The attached TPP certifications demonstrate that neither of Haviland's proposed representatives in that case had coverage for every defendant. *See id*. at Ex. B. Thus, Haviland urged the New Jersey court to adopt **_this Court's standing test in the AWP MDL_**:

- 7 -

>           In their certifications, to show their membership in the putative
> class, representatives for Locals 690 and 322 listed one or more drugs that,
> according to their records, they had reimbursed during the applicable time
> period [footnote omitted].  Defendants seize upon the lack of identical
> overlap in drug reimbursements between Local 68 Fund on the one hand,
> and Locals 690 and 322 on the other hand, for the notion that "the
> potential claims of the two proposed plaintiffs are *vastly different* from those alleged
> against each defendant in IUOE's Complaint."  [Citation omitted.]  This is
> false, and Defendants know it.  Defendants do not tell this Court that in the
> related MDL proceedings in Boston, class representatives were certified to
> represent purchases of particular drugs manufactured by particular
> defendants, ***despite not having purchased those drugs themselves***.  *See In
> re Average Wholesale Price Litig.*, 230 F.R.D. 61, 80 (D. Mass. 2005)
> (requiring only that "Plaintiffs must allege that there is an individual class
> representative with standing to sue each defendant.").  The reason is that the
> claims of one category of class members (e.g consumers) against a
> particular defendant were the same as the claims of all other class members
> within that category, notwithstanding the fact that the class representative
> may have purchased different drugs from that defendant.  It is the conduct
> of the Defendants in implementing a scheme to inflate AWPs for their drugs
> that typifies this case, not the specific drugs within that scheme.

Ex. 3 at 8 (emphasis added); *see also* Ex. 4 at 7 ("These Defendants seek to refute plaintiff's

proper allegations by charging that he has failed to allege distinct injury caused by their pricing

conduct simply because the class representative plaintiff did not purchase any of these

Defendants [*sic*] drugs.  However, these Defendants cite no case requiring such an allegation

because there is none.  Instead, as the above-cited cases and authorities make clear, when the

plaintiff alleges, as here, that his harm was caused by a conspiracy among many actors engaged

in parallel conduct, the plaintiff has properly pled cognizable injury caused by all such actors.")).

        This Court has often observed that "what is good for the goose is good for the gander."

So be it here, where Haviland should be estopped from taking positions that he previously

pursued in judicial pleadings that he signified were consistent with Rule 11.  ***And it should not

go unnoticed that Haviland, the self-anointed consumer watchdog, would hold consumers

here to a <u>higher standard</u> than he would TPPs in other AWP litigation – and even though his***

*own* clients in this AWP MDL would not pass Haviland's newly-minted and unsupported standing test.

C.      **Consumers Who Paid for Multi-Source Drugs Are Members of the Class**

Haviland challenges the standing of each proffered Representative to bring claims for the Class B multi-source drugs because the multi-source drugs were assigned J-Codes that are not manufacturer-specific, and that, consequently, Plaintiffs cannot identify the manufacturer of the relevant Class B drug they were administered.  *See, e.g.,* Br. at 12 ("[f]or the multi-source drugs, … the proffer fails to identify the Track 2 Defendant manufacturer").  This argument is also contrary to the Court's prior rulings and to Haviland's previous positions in this case.

Specifically, when Haviland was Class Counsel and Plaintiffs originally sought to certify three Classes against the Track Two Defendants, Haviland signed onto a short memorandum in support of class certification arguing that this Court should certify Plaintiffs' claims against the Track Two Defendants for the same reasons it certified the claims against the Track One Defendants (Dkt. No. 2522).  Haviland then signed onto a lengthy Reply Brief in which Plaintiffs refuted the Track Two Defendants' arguments that consumers who paid for multi-source drugs lacked standing to pursue this action.  *See* Dkt. No. 2889, § III.  Thus, while an employee of former Class Counsel firm Kline & Specter, Haviland never advocated the stringent standard he proposes here.  And tellingly, Haviland's clients have never produced documents to this Court showing that they can trace their multi-source drug purchases to specific Defendants; rather, where they have identified the specific drugs they took at all, they have simply identified those drugs by name.[3]  Therefore, Haviland's clients do not even have standing to make this objection.

---

[3] *See, e.g.,* Declaration of Reverend David Aaronson, ¶ 3 (Dkt. No. 2395); Declaration of M. Joyce Howe, ¶ 3 (Dkt. No. 4647); Declaration of Harold Carter, ¶ 3 (Dkt. No. 4650); and Declaration of Roger Clark, ¶ 4 (Dkt. No. 4652).

Regardless of Haviland's prior adoption of contrary positions, consumers who purchased multi-source drugs do, in fact, have standing against the Track Two Defendants.  All generic manufacturers affected the median AWP at which multi-source drugs are reimbursed because they had the incentive to maintain the median AWP as high as possible in order to increase the spreads of all manufacturers relative to potential alternative therapeutic competitors; all generics launched with an AWP fairly close to the AWP of the related branded drug and stay relatively constant; and the generic manufacturers competed amongst themselves on spread through a reduction in their ASPs.

This approach comports with long-recognized theories of alternate and market-share liability, where the Massachusetts Supreme Court has acknowledged the relaxation of "traditional identification requirement in appropriate circumstances so as to allow recovery against a negligent defendant" the portion of a plaintiff's damages represented by that defendant's market share.  *Payton v. Abbott Labs*, 386 Mass. 540, 574, 437 N.E.2d 171 (1982) (rejecting any relaxation of requirement under the particular facts of the case); *see also Mahar v. Hanover House Indus.*, 1995 Mass. Super. LEXIS 1, at *3 (Super. Ct. 1995).  Because "[c]onsumers may be harmed by a product not traceable to a specific producer," various federal and state courts around the country reason that the "traditional tests of liability are insufficient to govern the obligations of manufacturer to consumer in such situations, and some adaptation of the rules of causation and liability seems appropriate."  *McCormack v. Abbott Labs.*, 617 F. Supp. 1521, 1525 (D. Mass. 1985); *see also Spencer v. Baxter Int'l, Inc.*, 163 F. Supp. 2d 74 (D. Mass. 2001).  Several jurisdictions thus find that a market-share-liability theory is appropriate in certain products-liability cases where identifying the specific wrongdoer is impossible.  *See, e.g., Morris v. Parke, Davis & Co.*, 667 F. Supp. 1332, 1342 (C.D. Cal. 1987) (applying market-share

liability where harm caused by DPT vaccine); *Conley v. Boyle Drug Co.*, 570 So. 2d 275, 283 (Fla. 1990) (applying market-share liability where cancer caused by DES); *Smith v. Cutter Biological, Inc.*, 823 P.2d 717, 727 (Haw. 1991) (applying theory where blood product contained HIV virus).

Under this authority, a plaintiff unable to meet the traditional identification requirement can nonetheless establish standing by demonstrating:  (i) that the plaintiff used the product; (ii) that the product caused the plaintiff's subsequent injuries; (iii) that the defendant produced or marketed the type of product used by the plaintiff; and (iv) the defendant acted negligently in producing or marketing the product.  *Russo v. Material Handling Specialties Co.*, 1995 Mass. Super. LEXIS 436, at *16 (Super. Ct. 1995); *McCormack*, 617 F. Supp. at 1526; *Martin v. Abbott Labs.*, 689 P.2d 368, 382 (W.D. Wash. 1984); *Mahar v. Hanover House Indus.*, 1995 Mass. Super. LEXIS 1, at *3-4.  Analogous factors apply here, as each proposed Class Representative reimbursed for a specific J-Code encounter marketed by the Track Two Defendants in question, and Defendants caused the injury complained of given each Defendant's participation in the AWP inflation and spread marketing scheme.

Moreover, the policy factors cited by the *McCormack* court also apply here.  In that DES case, the court emphasized that the plaintiff was not at fault for the lack of identification evidence because the drug was produced in a generic form, drug companies and pharmacies did not keep or were unable to locate pertinent records, and the delay in the drug's effect "played a significant role in the unavailability of proof."  617 F. Supp. at 1525.  Furthermore, the court recognized that all the defendants shared a degree of culpability in producing and marketing an allegedly defective drug that posed a risk of injury to the public.  *Id.*  The court additionally found that drug companies are in a better position to absorb the cost of injury than the plaintiff,

- 11 -

who would otherwise bear the burden alone.  *Id*. at 1526; *see also Sindell v. Abbott Labs.*, 607 P.2d 924, 936 (Cal. 1980); *Martin v. Abbott Labs.*, 689 P.2d at 381-82.[4]

It should also be emphasized that, throughout this litigation, the Court has struggled with the challenge that J-Codes do not identify the particular manufacturer of a particular multi-source drug administered to a Medicare beneficiary.  *See, e.g., In re AWP*, 491 F. Supp. 2d 20, 97 (D. Mass. 2007) ("Certain BMS, Schering-Plough, and Warrick products were multi-source for at least part of the class period.  The interchangeability of these drugs, coupled with the 'J-Code' reimbursement system, makes it practically impossible for the plaintiffs to know which drug company's product was dispensed to any party at any point.  Plaintiffs must demonstrate that the unfair conduct caused them harm.  The method for reimbursing multi-source drugs and the difficulty in product identification create extremely difficult legal issues for the branded and generic multi-source drugs in Class 2.").  This difficulty, however, serves as yet ***another*** reason why this proposed Settlement is fair, adequate and reasonable:  despite the Class B drug identification challenge, Class Counsel were able to achieve a significant monetary recovery for these Class members.

The proffered Representatives have each submitted evidence demonstrating that he or she was administered a Class B drug with the proper Class B J-Code.  They are, therefore, unequivocally members of the Class that they seek to represent.  Furthermore, the inability to pinpoint the specific generic manufacturer is a characteristic shared by all members of the Class

---

[4] The policy rationales underpinning alternative liability also apply.  Under this theory, courts prevent "the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm."  *Russo*, 1995 Mass. Super. LEXIS 436, at *21; *Spencer*, 163 F. Supp. 2d at 78; RESTATEMENT (SECOND) OF TORTS, § 433(B)(3) cmt. f (1965).  Massachusetts courts have demonstrated a willingness to shift the burden of proof to multiple defendants where an innocent plaintiff would otherwise be left remediless.  *See, e.g., O'Connor v. Raymark Indus., Inc.*, 401 Mass. 586, 518 N.E.2d 510, 513 (1988) (applying joint-and-several-liability doctrine to shift burden of proof of causation to multiple defendants whose several acts concurrently caused plaintiff's indivisible injuries); *Chase v. Roy*, 363 Mass. 402, 408, 294 N.E.2d 336, 340 (1973).

who were administered the relevant multi-source drugs, and it makes the claims of the proffered Representatives typical of the claims of the absent Class members who were administered the Class B drugs.

If Haviland's objection to the proffered Representatives' standing is sustained on these grounds, **no** Class member could ever be compensated for damages associated with Class B drugs because no Class member – Haviland's clients included – could demonstrate they took Defendants' version.  Thus, Haviland advocates in favor of summary judgment for Defendants and against any compensation – whether in settlement or otherwise – to the Class.  This leads one to question whether his clients truly understand the positions that Haviland ostensibly articulates on their behalf.  If Haviland's objections succeed in derailing this proposed Settlement, it may very well be "game over" for the Class B drugs – that is the price of Haviland's vengeance against the Class.[5]

### D.  Consumers Who Paid for Track Two Drugs in 2004 are Members of the Settlement Class

Haviland claims that proposed Class Representatives who paid for drugs in 2004 are not adequate.  Haviland's hypocrisy is rampant:  in defending his own clients, **all of whom** made payments in 2004 or later, Haviland previously argued **just the opposite**.  *See, e.g.,* Dkt. No. 4641 at 3 ("Even if this Court were to determine that all of the proposed Class 1 representatives (including Mr. Carter) received Amgen products in 2004 or later, those consumers should still be permitted to represent Class 1 consumers in this proceeding and to litigate their claims along with all the other Class 1 consumers."); *id.* at 10-11 (arguing that consumers who purchased drugs in 2004 and later "are typical and common of other consumers"); *see also* Dkt. No. 4261, ¶

---

[5] To be clear, Class Counsel are not advocating dismissal of the Class B drugs in the event this Settlement is not approved.  We are just highlighting the practical litigation effect of Haviland's disloyal arguments against the Class, should those arguments prevail.

9 ("Moreover, even if the Court had ruled that there was no actionable AWP inflation after 2003 as a matter of law for all Class 1 class members nationwide, Class 1 class members can still recover for the financial harm caused by defendants' unfair and deceptive practice of inducing sales of their Subject Drugs by manipulating the profit medical provided made on the Subject Drugs.").  Thus, Haviland should be judicially estopped from advocating a contrary position. *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (stating doctrine should be applied to keep a litigant from "playing fast and loose with the courts").

Regardless, Haviland's new-found argument has no merit.  The Class Period for the Class 1 portion of this Settlement is January 1, 1991 to January 1, 2005.  Since all of the payments made by the Representatives Class Counsel propose to add fall within this period, they are adequate.[6]

## III.     HAVILAND'S ARGUMENTS AGAINST THE INDIVIDUAL CONSUMER REPRESENTATIVES FAIL

Class Counsel previously produced declarations and attached documentation sufficient to show that each proposed Class Representative was (i) a Medicare Part B beneficiary during the settlement class period (January 1, 1991 to January 1, 2005); (ii) administered and paid for a drug manufactured by a Track 2 Defendant; and (iii) knowledgeable about this litigation and this Settlement and is willing to serve as a Class Representative for this Settlement.  In addition, pursuant to Magistrate Judge Bowler's June 9, 2011 Order, Class Counsel produced to Haviland additional records that they were able to locate during what Judge Bowler recognized as an extremely short period of time given to produce them.  *See* June 9, 2011 Electronic Order (ordering "to the extent possible, due to the late hour, the billing and payment records sought by

---

[6] Haviland repeatedly cites to this Court's dismissal of Jimmie Oustad, the former proposed representative for Class 1 against J&J, as support for his claims in his Opposition.  However, Ms. Oustad was dismissed because she lacked standing for a ***litigation*** Class, not a settlement Class.

Mr. Haviland be produced, in a format and manner to be agreed to by counsel, two hours prior to the commencement of the Fairness Hearing.").  In providing those records to Haviland, we likewise prepared a letter explaining why the basis for the order – Haviland's representation to Judge Bowler that Class Counsel had done nothing other than produce the Track Two Settlement claim forms for these proposed Representatives – was false.  *See* Dkt. No. 7599.

Despite going over-and-above what this Court has required, Haviland still claims that, apart from the general issues addressed in other Sections of this brief, there are additional individual problems with the proffer by each proposed Class Representative.  We respond to those in turn below.

## A.    Muriel Tonacchio

The Court has already added Ms. Tonacchio as a Class Representative for this Settlement.  *See* Dkt. No. 5409 (granted by electronic order on July 21, 2008).  Because Haviland has provided no basis for the Court to reconsider its order,[7] he has waived any objection to Ms. Tonacchio by failing to oppose Class Counsel's motion to add her in the first instance.  In any event, Haviland's objections substantively fail.

Haviland claims that Class Counsel have never responded to his attacks on Ms. Tonacchio's adequacy.  This is false.  In Class Plaintiffs' omnibus response to the objections to final approval of this Settlement (Dkt. No. 6003), Class Counsel defeated all of the arguments Haviland made.  *See id.* at 13-19.  Haviland questions the drugs administered to Mrs. Mort (Ms. Tonacchio's deceased mother), but he outright ignores the claim form produced to him on June

---

[7] *See Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008) ("A court appropriately may grant a motion for reconsideration 'where the movant shows a manifest error of law or newly discovered evidence.'. . . Likewise, a motion for reconsideration should be granted if the court 'has patently misunderstood a party . . . or has made an error not of reasoning but apprehension.'") (internal citations omitted).

13, which makes clear that Ms. Mort took, in addition to Anzemet, the Track Two drugs Accuneb, Ipratropium Bromide and Epogen.[8]

## B.    Agnes *Swayze*

Haviland has four complaints specific to Ms. Swayze.  First, Haviland claims that Class Counsel have not produced all of Ms. Swayze's records.  But Ms. Swayze's records related to her Track Two drug administrations were produced.  Given Haviland's history of publicly disclosing confidential documents, Class Counsel did not provide Haviland with Ms. Swayze's records relevant to drugs *not* included in this Settlement; nor will we.[9]  But Judge Bowler did not require the production of records for every pharmaceutical product Ms. Swayze ever took in her life, rather, Judge Bowler wanted Class Counsel to produce records sufficient to assess Ms. Swayze's adequacy *for this Settlement*.

Second, Haviland claims, with no support whatsoever, that Ms. Swayze did not make any payment based on AWP.  Ms. Swayze has established that she was a Medicare Part B beneficiary and that she paid for a drug manufactured by a Track 2 Defendant covered under that program. As this Court has repeatedly acknowledged,[10] by definition Ms. Swayze paid for her drugs based on AWP.

Third, Haviland claims that Ms. Swayze has not produced any billing records.  While Ms. Swayze has produced some, she has been unable to locate all of them.  Ms. Swayze paid for

---

[8] Haviland also claims that Ms. Tonacchio's evidence from the Weirton Medical Center is inadmissible hearsay.  However, hearsay is admissible for class certification purposes.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (The class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials.").  Moreover, the evidence is reliable.

[9] Haviland claims that he requested these records and Class Counsel "refused" (Br. at 15), but in reality Class Counsel asked Haviland why he needed records related to non-Track Two drugs and he refused to respond.  *See id.* at Ex. B.

[10] *See In re AWP*, 230 F.R.D. at 82 ("a typical consumer by statute simply pays a percentage of AWP as a co-pay").

these drugs in 2002 and 2003, and she simply no longer has payment records from 8 or 9 years ago.  However, she has sworn under penalty of perjury that she made all her Medicare co-payments out-of-pocket and had no supplemental insurance to cover her twenty-percent co-payment obligation under Medicare.  Dkt. No. 7572-1, ¶ 8.[11]  In addition, since the filing of Haviland's Brief, Ms. Swayze has located a check register that includes checks written to the Lancaster Community Hospital, one of which corresponds to the date that independent records show she was administered one Track Two drug.  *See* Supp. Swayze Decl., ¶¶ 3, 4 & Ex. 1 thereto.  Nothing further is required.[12]

Finally, Haviland makes the wholly unsubstantiated claim that Class Counsel failed to "advise" Ms. Swayze, which constitutes "the most serious breach of trust."  Br. at 11.  Contrary to what appear to be Haviland's claims, although Ms. Swayze was not a class representative at the time the Track Two Settlement was negotiated, she has had several discussions with Class Counsel regarding the Track Two Settlement, and was kept apprised of the status of the case and settlement negotiations.[13]  Dkt. No. 7572-1, ¶¶ 9, 10.

---

[11] Haviland claims that Ms. Swayze's billing records from Lancaster Community Hospital show a column for two supplemental insurers.  However, Ms. Swayze has already sworn that she did not have supplemental insurance. *Id.*

[12] Haviland also claims there is something suspicious about the "Patient Amount" on Ms. Swayze's records being zero.  However, the document to which Haviland refers is a billing record and thus shows how much was originally billed by the providers to Medicare.  It is not a ***payment*** record and, therefore, does not show Ms. Swayze's own payments for those drugs.

[13] Haviland also claims that Class Counsel should have to clarify whether Ms. Swayze took Procrit or Amgen's drug Epogen.  Because Ms. Swayze also took Neupogen, another Amgen drug, whether she took Procrit or Epogen is irrelevant.  Regardless, it does indeed appear that Ms. Swayze was not administered Amgen's Epogen as was initially believed (Procrit and Amgen share the same J-Code), as demonstrated by Ms. Swayze's subsequently-produced records.

- 17 -

C.      **Thomas Trusky On Behalf of the Estate of Theresa Trusky**

Haviland first claims that Mr. Trusky has not established that he has standing to sue on behalf of his wife.  On the contrary, his Declaration states that he is the executor of his wife's estate.  Dkt. No. 7572-2 (Trusky Decl., ¶ 1).  That suffices.

Second, Haviland claims that a handwritten note stating "paid by Empire" with regard to Mr. Trusky's wife's Neulasta payment means that Ms. Trusky did not pay for Track Two drugs.  On the contrary, Mr. Trusky has explained in his Declaration that Theresa Trusky had supplemental insurance, but each year was required to pay the first $4000 in co-payment obligations under Medicare Part B before supplemental insurance would pay.  *Id*. at ¶ 3.  Theresa Trusky paid out-of-pocket for all percentage co-payment under Medicare Part B up to the $4000 yearly deductible amount and was not reimbursed by any insurer.  *Id*.

Haviland further claims that Mr. Trusky's payment records were incomplete.  Mr. Trusky has produced his Track Two Claim Form, some information indicating payment via credit card, for some of the Track Two drugs, and Medicare summary sheets and credit card receipts.  *See* Exs. 1 and 2 to Dkt. No. 7572-2.   As indicated in his Supplemental Declaration, despite an exhaustive search, because Mr. Trusky's wife paid for these drugs on a credit card and checking account that were closed when she passed away, Mr. Trusky has only been able to locate a limited number of additional records, which are attached to his Supplemental Declaration.  Supp. Trusky Decl., ¶¶ 6-8.

D.      **Mariella Laday**

Haviland claims that Class Counsel have not produced billing records for Ms. Laday.  As Class Counsel informed Haviland on June 13, Ms. Laday located some cancelled checks, but was unable to produce them in time for the Fairness Hearing.  They are now attached as Ex. 5.

- 18 -

Finally, Haviland claims that Ms. Laday, who lives in Georgia, lacks "statutory" standing because the Georgia consumer protection statute does not permit class actions. This ignores that this Settlement likewise resolves Plaintiffs' RICO claims (which although dismissed were preserved for appeal on final judgment) and that Ms. Laday has "statutory standing" under that statute.

## IV.   THE PROPOSED CLASS REPRESENTATIVES ARE TYPICAL AND ADEQUATE

Although Haviland has admitted that the goal of his objection is to ensure a settlement class is never certified and to destroy this Settlement, he ironically, at the same time, claims the role of ensuring that the proposed Class Representatives are "knowledgeable, involved, zealous advocates of the rights of Class 1 consumers." Br. at 2. Haviland's characterizations of the proposed Class Representatives should be rejected. They are all typical and adequate of the Class they seek to represent.

## A.   The Proposed Representatives Satisfy the Tests for Typicality and Adequacy

"The central inquiry in determining whether a proposed class has typicality is 'whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class.'" *In re Polymedica Corp. Secs. Litig.*, 224 F.R.D. 27, 36 (D. Mass. 2004) (quoting *In re Amerifirst Secs. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991)), *vacated on other grounds*, 432 F.3d 1 (1st Cir. 2005); *see also* 1 ALBERT CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3:13 (4th ed. 2002) (the typicality requirement is usually met "when it is alleged that the same unlawful conduct was directed at or affected both the named Plaintiffs and the class sought to be represented"). The plaintiff does not need to show "substantial identity between [his] claims and those of absent class members," but only that "[his] claims arise from the same course of conduct that gave rise to the claims of the absent

- 19 -

members." *In re Polymedica*, 224 F.R.D. at 36 (quoting *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) (internal quotation marks omitted)).

Here, the proposed Representatives easily satisfy that standard because they share the same characteristics (having paid for Track Two drugs based on AWP that were unreimbursed by Medicare or secondary insurance) and their claims all arise from the same course of conduct – namely, the Track Two Defendants' inflation of AWP.  Indeed, Haviland does not argue that the proposed Class Representatives lack the same essential characteristics or are pursuing separate legal theories.  Ironically, he claims that they all suffer from the ***same*** purported defects, defects shared by some if not all members of the Class, including Haviland's own clients.

With respect to adequacy, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This inquiry is satisfied if:  (i) the plaintiff's counsel is qualified, experienced, and able to prosecute the action on behalf of the class vigorously, and (ii) the interests of the representative parties do not conflict with the interests of any class members.  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003).  It is well-established that "in complex litigations … a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance upon the expertise of counsel is to be expected."  *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 327 (S.D.N.Y. 2005) (quoting *In re AM Int'l Inc. Secs. Litig.*, 108 F.R.D. 190, 196-97 (S.D.N.Y. 1985)), *aff'd in part and vacated in part on other grounds*, 443 F.3d 253 (2d Cir. 2006).

Here, Haviland argues that the proposed Representatives' reliance on Class Counsel to negotiate this Settlement renders them inadequate.  This ignores the proposed Representatives' sworn declarations and relevant law.  Ms. Swayze, Mr. Trusky and Ms. Laday have all averred

under oath that they understand the duties as class representatives and have reviewed and support the terms of the Settlement, including the allocation.  *See* Swazye Aff., ¶ 9 (Dkt No. 7572-1); Trusky Decl., ¶¶ 4-5 (Dkt. No. 7572-2); Supp. Trusky Decl., ¶¶ 4-5; and Laday Decl., ¶¶ 5-6 (Dkt. No. 7572-3).  Where class representatives are sufficiently involved in the case – as these proposed representatives are – there is nothing inappropriate about a class representatives' reliance on advice of counsel.  *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 2006 U.S. Dist. LEXIS 58278, at *11 (D.N.H. Aug. 15, 2006) ("Class representatives are not required to possess 'expert knowledge' about the case, and may rely heavily on class counsel for guidance."); *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 69 (D. Mass. 2005) (quoting *City of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1407, 1416 (E.D.N.Y. 1989)) (same).

**B.     The Court has Ample Discretion to Approve the Addition of Class Representatives at this Time**

Haviland claims that "[a]llowing substitution at this late stage of the proceedings would establish an unseemly policy favoring lawyer-driven lawsuits in which the named class representatives are relegated to 'puppet' roles in which they simply endorse the decisions of class counsel, after the fact with little or no input."  Br. at 9-10.  There is nothing inappropriate about adding representatives at this stage of the litigation.

As a threshold matter, no one is being "substituted" so Haviland's use of this term in the first instance is inapt.  Class Counsel are merely seeking the addition of three new Representatives in order to bolster Representation, even though it is clear that the present Representatives are excellent representatives for the Class.[14]  As the Court has repeatedly

---

[14] The Association Plaintiffs (Vermont Public Interest Research Group, Wisconsin Citizen Action, New York Statewide Senior Action Council, and Citizen Action of New York), all of which have goals to enhance consumer recovery in pharmaceutical litigation (*see, e.g.,* Dkt. No. 6007, ¶ 4; Dkt. No. 6008, ¶¶ 5-7), have been a part of this case since its inception.  Muriel Tonacchio was added after Haviland's former representatives abandoned this litigation by withdrawing when Haviland was disqualified as Class Counsel.

acknowledged, even with regard to this Settlement:  "I think I've made it clear throughout this litigation, because it's a dying class, by definition in Class 1, it's a dying class – they're old and they tend to have illnesses, they are dying – that I would be more liberal about allowing addition of class representatives, so that as people got old or sick or senile or dead, died, I'd allow the addition."  Dkt. No. 7572 (Motion to Add Plaintiffs, Ex. B at 57:19-25).  And, as this Court has previously found, this is consistent with authorities permitting the addition of representatives even after a class has been certified.  *See In re AWP*, 230 F.R.D. at 80 (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.26 (2004)).

Contrary to what Haviland suggests, the proposed Class Representatives are adequate even if they did not participate in the original Settlement negotiations.  Stripped of its baseless attacks on Class Counsel, Haviland is not arguing that Class Counsel colluded with the Track Two Defendants to reach a sellout settlement.  Rather, his objection is a garden variety objection to the adequacy of the consumer allocation.  This Court can rule on that adequacy without examining those who sat at the negotiating table.  Indeed, this is one of the reasons that courts only permit objectors discovery into actual settlement negotiations where there is an allegation of collusion between the settling parties – because otherwise the Court can determine the adequacy and fairness of the settlement by analyzing the terms of the proposed settlement itself.[15]  *See Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 622-23 (S.D. Cal. 2004) ("As this Court has already found, Movants have not adduced evidence from other sources indicating that the settlement is collusive.  As a result, their central premise for this discovery fails . . . . Discovery of such information . . . is neither necessary for a determination of whether Class Counsel are adequate nor is it necessary to provide the District Judge with information sufficient

---

[15] In his Objection (Dkt. No. 5971) Haviland has argued that there was some prior agreement between Class Counsel and certain associational plaintiffs to funnel *cy pres* funds to those organizations under this Settlement but, no such agreement even existed and, moreover there is no *cy pres* distribution in this case.

to determine whether the settlement is fair, reasonable and adequate to the class.") (denying objector's request for "wide-ranging discovery" from class counsel and defendants).[16]

Furthermore, even if Haviland's clients had remained representatives and had been the ones at the negotiating table, the views of class representatives on the adequacy of a settlement are not dispositive. While their views are considered, they do not trump those of class counsel, who owe a duty to the class as a whole. As one court has explained, "the compelling obligation of class counsel in class action litigation is to the group which makes up the class. . . . To that end, Class Counsel must act in a way which best represents the interests of the 'entire class and is not dependent on the special desires of the named plaintiffs.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494, 496 (S.D.N.Y. 1994) (quoting *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982)); *see also Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981) ("the 'client' in a class action consists of numerous unnamed class members as well as the class representatives"). These views are echoed in the Comments to the 2003 Rule 23 Amendments:

> [T]he primary responsibility of class counsel, resulting from appointment as class counsel, is to represent the best interests of the class. The rule [Rule 23(g)] establishes the obligation of class counsel, an obligation that may be different from the customary obligations of counsel to individual clients. Appointment as class counsel means that the primary obligation of counsel is to the class rather than to any individual members of it. The class representatives do not have an unfettered right to "fire" class counsel. In the same vein, the class representatives cannot command class counsel to accept or reject a settlement proposal. To the contrary, class counsel must

---

[16] *See also e.g.*, *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999) (denying objector right to seek discovery from fellow objector who entered into settlement with class counsel after final approval and while appeal of final approval was pending); *Jaffe v. Morgan Stanley & Co.*, 2008 U.S. Dist. LEXIS 12208, at *5-8 (N.D. Cal. Feb. 7, 2008) (denying objector's request for documents and request to depose class representative); *Epstein v. Wittig*, 2005 U.S. Dist. LEXIS 31078 (D. Kan. Dec. 2, 2005) (denying objector's request to conduct deposition of plaintiff's lead counsel, board members of the class representative, and denying objector's request for production of documents supporting plaintiffs' decision to grant settlement release); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24 (D.D.C. 2001) (largely rejecting objectors' request for discovery relating to damage analyses and settlement negotiations by class counsel, but allowing objectors limited discovery seeking the identity of persons who participated in settlement negotiations).

determine whether seeking the court's approval of a settlement would be in
the best interests of the class as a whole.

Numerous courts have approved class settlements notwithstanding objections from the
named class representatives. *See, e.g.*, *Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 333
(W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999); *In re Airline Ticket Comm'n Antitrust Litig.*,
953 F. Supp. 280, 282 n.3 (D. Minn. 1997). Thus, "agreement of the named plaintiffs is not
essential to approval of a settlement which the trial court finds to be fair and reasonable." *Parker
v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) (affirming approval of a class settlement
opposed by all but one of the eleven named plaintiffs in the suit). In approving a class settlement
over the objections of four of five class representatives, the *Maywalt* court warned that granting a
class representative veto power "would merely encourage strategic behavior 'designed to
maximize the value of the veto rather than the settlement value of their claims.'" *Maywalt v.
Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994) (quoting *In re Ivan
F. Boesky Sec. Litig.*, 948 F.2d 1358, 1366 (2d Cir. 1991)), *aff'd*, 67 F.3d 1072 (2d Cir. 1995);
*See also Heit v. Van Ochten*, 126 F. Supp. 2d 487, 494-95 (W.D. Mich. 2001) and the cases cited
therein (because the named representative's objection to the settlement made it impossible for
class counsel to fulfill their fiduciary duties to the class as a whole, counsel were permitted to
withdraw as attorneys for the objecting named plaintiff and add a new named plaintiff for
approval of the class settlement).

The cases Haviland cites do not apply. *See* Br. at 10-11.[17] Those opinions involved
situations in which a class representative was inappropriately connected to class counsel, or

---

[17] Citing *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90-92 (7th Cir. 1977); *Davidson v. Citizens Gas & Coke
Util.*, 238 F.R.D. 225, 229 (S.D. Ind. 2006); *In re California Micro Devices Secs. Litig.*, 168 F.R.D. 257, 260 (N.D.
Cal. 1996); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987).

where class counsel negotiated a pre-certification settlement very early in the case.  Neither

circumstance is present here.

That the proposed Representatives were added late is neither troubling nor inappropriate,

and the Court should exercise its discretion to add them.

## C.  The Proposed Class Representatives Are Not Releasing Drugs That Were Never Pursued in This Litigation

Haviland continues to complain that the proposed consumer release includes drugs that

were either dismissed from or never pursued in this litigation (*see* Br. at 13 (dexamethasone

sodium phosphate); *id.* at 16 (Accuneb and Ketorolac); *id.* at 17 (Cisplatin)), but Haviland is as

wrong now as he was when he initially objected on these grounds in 2009.  Although the TPPs

and ISHPs are releasing the Track Two Defendants from liability for conduct related to any drug

sold by a released company, the consumer release only applies to the drugs listed on Ex. B to the

Settlement Agreement, which, in turn, lists only those drugs appearing in the complaints,

including the Fifth Amended Master Consolidated Class Action Complaint.  *See* Track Two

Settlement Agreement and Release, Sections II.JJ (limiting "Released Consumer Claims" to

conduct, events, or transactions related to any drug "as limited on Exhibit B") and Ex. B

thereto.[18]  As Defendants explained in their June 21 filing (Dkt. No. 7614), the scope of such a

release is entirely appropriate and fully supported by law.[19]

---

[18] If, for whatever reason, this Court deems those ineligible for part of the Settlement and that they cannot be considered as part of Class 1 representative coverage for all the Track 2 Defendants, Plaintiffs will still have full coverage of all the Track Two Defendants except Watson (dexamethasone sodium).  In the event that happens, Plaintiffs respectfully request leave to find an additional Watson representative.

[19] And if any drugs were to be removed from this Settlement, Defendants will likely deem it to be a material change and abrogate the deal.  If not, a new notice would have to be provided to those Class members who took the removed drugs, advising of the change.

## V.   THE ASSOCIATION PLAINTIFFS ARE APPROPRIATE CLASS 1 REPRESENTATIVES

**A.   The Association Plaintiffs Have Standing and are Adequate Class 1 Representatives**

There is no question as to the general ability of associations to act as class representatives under Rule 23.  1 NEWBERG, *supra*, § 3:34 at 484.  In a prior opinion, the Court held the Association Plaintiffs could not serve as a class representative at trial ***to recover damages*** against defendants.  *In re AWP*, 230 F.R.D. at 80.  The Court relied on *Bano v. Union Carbide Corp.*, 361 F.3d 696 (2d Cir. 2004), which declined to certify as a class representative in a damages action a grass-roots organization formed to help the victims of an explosion at a chemical manufacturing facility in India that killed thousands and injured hundreds-of-thousands of others. The Court's earlier litigation class certification decision and *Bano* are distinguishable because they both involved certification for trial, not for settlement purposes only.

It is well-established that an association may have standing to bring claims on behalf of its members if the following requirements are met:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*In re AWP*, 230 F.R.D. at 79 (quoting *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 553 (1996)).  The first element is met if the association has members who purchased the drugs at issue at a price inflated by the defendant's fraudulent price increase, which is the case here.  *See, e.g.,* Dkt. No. 1028, ¶¶ 4, 6; Dkt. No. 1031, ¶¶ 4, 6; Dkt. No. 1035, ¶¶ 3, 5; Dkt. No. 1036, ¶¶ 5, 7.  The second requirement is satisfied because the purposes of the associations include furthering the rights of consumers, especially with respect to the access-to-health care issues invoked in this lawsuit.  *See*, *e.g*., *Colwell v. HHS*, 2009 U.S.

- 26 -

App. LEXIS 5561, at *21-22 (9th Cir. Mar. 18, 2009) (applying the three factors).  This is likewise true here.

The third prong represents a prudential rather than a constitutional requirement for standing.  *Bano*, 361 F.3d at 715.  It presented an obstacle to adequate representation in *Bano* because the complaint there claimed that "individuals have suffered bodily harm and damage to real property they own.  Necessarily, each of those individuals would have to be involved in the proof of his or her claims."  *Id*. at 714-15.  At the time of litigation certification, this Court, too, faced similar concerns with respect to Class 1.  *In re AWP*, 230 F.R.D. at 79-80.  But the Court implicitly recognized that an association could be an appropriate representative of a class, where individualized proof was not necessary to establish the fact and extent of injury.  *Id*. at 79 (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 650 n.5 (2d Cir. 1998)).  This is precisely the case here, where the Court certified the class for settlement purposes only.

It is important to recognize that, although the shorthand characterization of this issue is commonly one of "standing," the Supreme Court has made clear that it is in fact a matter of "administrative convenience and efficiency," ***not*** constitutional standing.  *United Food & Commercial Workers Union Local 751 v. Brown Group,* 517 U.S. 544, 557 (1996).  Once an association has satisfied the first two prongs of the three-pronged associational standing test articulated above – as the named Associations plainly do here – the Court is "assur[ed] [of] adversarial vigor in pursuing a claim for which member Article III standing exists," and the question reduces itself to whether it makes sense in the particular case, as a matter of administrative convenience and necessity, for the association to represent individual members.  *Id*. at 557.  The *UFCW* analysis is thus also similar to the Rule 23(a)(4) analysis of whether a representative party will fairly and adequately protect the interests of the class.

As a matter of administrative convenience and necessity, it is entirely proper for the Association Plaintiffs to serve as representative Plaintiffs here, as they so vigorously have for the entirety of this case.  Importantly, the Supreme Court has recognized that "trial manageability" problems need not stand in the way of certifying a settlement class, even though they might prevent certification of a litigation class.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).  Thus, individualized proof of damages, which may have presented trial management issues for a litigation class, *see In re AWP*, 230 F.R.D. at 81, become moot when the class is certified for settlement purposes only.  *See, e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. at 620; *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).  This is particularly true in this case, where damages – which have been established on an aggregate basis in the first instance – are now a matter of formulaic processing through the claims administration process. The Associations are, therefore, adequate and appropriate Representatives because they meet the other requirements of adequacy and typicality and because individual members' participation is not necessary to establish the fact and extent of the damages to the Class for the purposes of settlement.

## B.  The Association Plaintiffs May be *More* Adequate than Consumer Representatives

The Court has repeatedly suggested that the Association Plaintiffs, which are more knowledgeable about drug pricing issues than any individual Medicare beneficiary is likely to be, may indeed do a better job at representing the Class's interests.  *See, e.g.*, Ex. 6 (April 27, 2009 Hearing Tr. at 70:10-16) (acknowledging the argument that, "as a practical matter, these associations are actually more proactive than an individual whose mother took an injection would be."); Ex. 1 (June 13, 2011 Hearing Tr. at 38) (recognizing that the Association Plaintiffs "understand it better than these older people").

Appellate courts would agree.  For example, in *International Union, United Auto., Aerospace & Agr. Implement Workers of America (UAW) v. Brock*, 477 U.S. 274 (1986), the UAW brought suit on behalf of individual UAW members to challenge the Secretary of Labor's interpretation of eligibility provisions of the Trade Act of 1974, which provided benefits to workers laid off because of competition from imports.  The district court held that the UAW did not have standing because the controversy would have required individual members, ultimately, to present individual claims for damages in varying amounts.  477 U.S. at 280, 287.  The Supreme Court reversed, holding that the fact that each UAW member's damages claim would have to be litigated individually in a subsequent (state) administrative process did not undercut the UAW's ability to be an adequate representative to press the individuals' overarching legal claim at the federal level.  *Id*. at 288-90.  The Supreme Court went out of its way to note the special advantages that organizations have over individual class representatives in this regard: "[A]n organization suing to vindicate its members' interests can draw upon a pre-existing reservoir of expertise and capital."  *Id*. at 289.  "The very forces that cause individuals to band together in an association will . . . provide some guarantee that the association will work to promote their interests."  *Id*. at 290.

Similarly, in *Rhode Island Brotherhood of Correctional Officers v. Rhode Island*, 357 F.3d 42 (1st Cir. 2004), the First Circuit reversed a lower court's dismissal of a union's suit against Rhode Island seeking declaratory and injunctive relief to maintain an incentive pay formula ***and also back payments*** for its members.  The district court had reasoned that any determination as to amounts owed to individual employees as back pay would require individual calculations and the participation of those members in the lawsuit.  357 F.3d at 48.  The First Circuit, citing *UAW v. Brock*, reversed and held that the union did not lose its status as an

- 29 -

adequate representative simply because a litigation victory on the core issue would lead to a subsequent administrative process of determining individual back pay amounts. *Id*. The same conclusion should apply here, where the Settlement Administrator is determining settlement payout amounts.

Because the test of an organization's adequacy to negotiate a class settlement is a practical one, it is important to note the practical advantages organizational plaintiffs bring to the bargaining table on behalf of a class in complex litigation such as this. To begin with, an organization may provide "enhanced psychological and bargaining power advantages" in negotiating a class settlement. 1 NEWBERG, *supra*, at 487. This advantage is heightened here, for many individual class members are "elderly cancer patients, whose declining health may impair their ability to participate actively." August 16, 2005 Memorandum and Order at 40 (Dkt. No. 1648). An advocacy organization also can offer greater continuity than a typical individual consumer can provide, a point of particular poignancy here where Haviland's clients withdrew as representatives of an aging and dying Class. In addition, an association plaintiff's sophistication can be valuable in sorting through the complexities of multidistrict litigation such as this, which involves changing regulatory schemes and multiple regulations, companies and time periods.

Haviland's behavior also underscores the importance of the Associations' role here. The Court has often decried Haviland's manipulations of his clients in pursuit of his own self-interest, particularly in engineering his client's declarations threatening to withdraw from the case if Haviland was not appointed Class Counsel.[20] These actions, and more, led the Court to

---

[20] As the Court wrote: "[J]ust four days before the hearing on August 27, 2007, Mr. Haviland filed declarations from his clients, proposed consumer class representatives, threatening to withdraw if Haviland were not appointed as class counsel. As I explained at the August 27 . . . and the September 11 . . . hearings, I interpreted these declarations as threats to take his toys and go home if the Court declined his request. Mr. Haviland intended to coerce the Court into appointing him as Co-Lead Class Counsel or risk losing class representatives in a class action involving the sick and elderly. . . . Both the nature and timing of these declarations raised concerns about Haviland's loyalty to the class." Disqualification Order at 9-10 (Dkt. No. 4972) (footnote omitted).

remark to Haviland that "you were more concerned about you than you were about the class reps." Ex. 7 (Sept. 11, 2007 Hearing Tr. at 18:24-25).  As demonstrated by Haviland's recent arguments against his own client's interests (*e.g.*, plaintiffs must have been administered every Track Two drug at issue, and they must identify the specific multi-source manufacturer), Haviland is still manipulating them.  It is debatable whether Haviland's clients are at all participating in crafting Haviland's arguments against their interests or would even understand what he has been doing in their name.

In sum, the Association Plaintiffs named in this case are adequate Class 1 Representatives for settlement purposes.  Indeed, they are arguably ideal Class Representatives to negotiate a comprehensive class resolution with major pharmaceutical defendants in this complex pricing litigation, especially when the Associations are represented in those negotiations by experienced, Court-appointed counsel under the auspices of an experienced, Court-appointed mediator.  This conclusion would hold even if no individual named Plaintiffs had sought to join the lawsuit to also represent Class 1 consumers.  Because individual Class members have done so, however, and since the joinder of an organization with individual plaintiffs commonly occurs in class litigation, 1 NEWBERG, *supra*, at 487, there should be no doubt as the adequacy of the representation of Class 1 consumers in connection with this proposed Settlement.

C.      **Haviland's "New" Associational Standing Cases do not Apply**

Haviland claims that two relatively recent First Circuit cases hold that an association lacks standing where it cannot demonstrate that any one of its members possess standing to sue in his or her own right.  *See* Br. at 19-20 (citing *United Seniors Ass'n. Inc. v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007) and *Me. Peoples Alliance & Natural Res. Def. Counsel v. Mallinckrodt, Inc.*, 471 F.3d 277 (1st Cir. 2006)).  However, neither *United Seniors* nor

*Mallinckrodt* articulates a new test for associational standing.  They cite the same law relied on by this Court in citing to *Bano*, and distinguished by Plaintiffs above.

*United Seniors*, furthermore, is clearly distinguishable on its facts.  In that case, a nonprofit taxpayer advocacy group sought to force five tobacco companies to reimburse the federal Medicare program for monies expended in the treatment of individuals suffering from smoking-related illnesses.  500 F.3d at 22.  The association plaintiff in that case did not allege that any of its members were Medicare beneficiaries who received such treatments, but instead sought to vindicate the fiscal integrity of the federal Medicare program as a taxpayer association.  Layered on top of the normal requirements for association standing, therefore, were the standard barriers to taxpayer standing, which the First Circuit found had not been overcome.  *Id.* at 23.

*Mallinckrodt*, furthermore, actually supports Class Counsel's arguments, as it represents a case where associational standing was found to exist based on far more subjective proof of injury.  There, the court found environmental associations had standing to sue on behalf of their members even where they were required to prove probabilistic harm to their subjective aesthetic and recreational interests caused by the defendants' release of mercury in the environment.  471 F.3d at 281.

## VI.     THE TRACK TWO DEFENDANTS ARE NOT JUDICIALLY ESTOPPED FROM SUPPORTING THIS SETTLEMENT

Haviland argues that the Track Two Defendants should be judicially estopped from arguing that this Court should certify a settlement class because they once argued against certification of a litigation Class.[21]  Br. at 4 n.4.  Of course, if this were the law, no defendant

---

[21] Haviland also appears to argue that the Track Two Defendants should be estopped from arguing differently than they have in other cases such as Haviland's New Jersey state court case. *See, e.g.,* Br. at 8.  Unlike Haviland's positions, the Track Two Defendants' positions in those cases have not been inconsistent.  For example, no one in this litigation, including the Track Two Defendants, is arguing that a class representative need not have Article III standing.

that had opposed a litigation class could ever settle a class action.  Thankfully, Haviland's

position – like all of his other positions – is unsupported by any persuasive authority.

Haviland's citation to *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d at 32-33,

does not help him.  As the First Circuit provided there, two conditions must be met for the

doctrine of judicial estoppel to apply.  First, the estopping position and the estopped position

must be "directly inconsistent."  *Id.*  Second, the responsible party "must have succeeded in

persuading a court to accept its prior position."  Neither criterion exists here, because it is not

directly inconsistent to consent to class certification for settlement purposes when it was opposed

during the litigation phase of the case.  Moreover, neither the Track One nor the Track Two

Defendants ever succeeded in getting this Court to adopt aggressive criteria for the standing of

Class 1 plaintiffs.  Therefore, the doctrine cannot be applied here.

Furthermore, the Track Two Defendants have reserved all of their litigation positions in

the event this Settlement does not receive final approval, which is standard fare.  *See* Settlement

Agreement §§ VI(B)(2); VIII(B).  And they have continuously indicated that, should this

Settlement not be approved, they will vigorously oppose class certification.  *See* Dkt. No. 5935 at

2.

Haviland is the only one "playing fast and loose with the courts" here, as the *Synopsys*

court characterized the issue (374 F.3d at 33 (citation omitted)).  If any estoppel is due, it is that

Haviland should be estopped from reversing course and making arguments contrary to prior

positions that he has taken in this very litigation and in his New Jersey case.

## VII.   THE COURT SHOULD CLOSELY SCRUTINIZE HAVILAND'S ALLEGATIONS OF A LAWYER-DRIVEN SETTLEMENT

Haviland characterizes this Settlement as a lawyer-driven one and asks this Court not to

empower Class Counsel "to employ the *in terrorem* threat of a costly class action determination

to bludgeon the defendants into settling."[22]  Br. at 7.  Of course, the Track Two Defendants, each

of which possesses substantial resources and has retained very experienced and well-heeled

lawyers, do not claim that they have been terrorized by Class Counsel into resolving this case.

The Court should ignore Haviland's crocodile tears.

It is Haviland's lawyer-driven opposition to this motion that merits scrutiny because he is

once again using his **consumer** clients to accomplish his own ends.  For years Haviland has

championed himself as representative of consumers in this litigation.  *See* Dkt. No. 4224, ¶ 7 ("In

light of its direct representation of the named representative plaintiffs for the certified Subclasses

of Class 1 and its demonstrated record of protecting the rights of consumer plaintiffs in the

Court, the Haviland Law Firm LLC should be substituted as Co-Chair of Lead Counsel . . . in

order to allow the firm to continue to protect the rights of its consumer clients and the certified

Classes of Class 1.").  And in connection with this Settlement he filed a motion under Fed. R.

Civ. P. 23(g) seeking to be appointed as Class Counsel "for the consumer Sub-Classes in the

Track 2 cases."  *See* Dkt. No. 4658.

When Haviland thought he could be appointed as Class Counsel, he proposed as

representatives supporting the certification of the litigation Class **the same** individuals on whose

behalf he now files his Opposition.  Now that he has been disqualified as Class Counsel and has

seen that his objection is unlikely to succeed, he is using those same consumers to oppose class

certification and to attempt to destroy this Settlement and any hope that his clients and the Class

---

[22] Haviland's accusation that there's something inappropriate about Class Counsel, with this Court's blessing, contacting individuals who submitted claims under previous settlement is rather ironic coming from someone who has been sanctioned in a published opinion for sending misleading "Dear Client" letters to people who had registered on an unauthorized website he established.  *See In re Lupron® Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 83 (D. Mass. 2005).  Indeed, the Supreme Court of Pennsylvania recently referred Haviland to the Disciplinary Board of the Supreme Court for similar conduct in the *In re Bridgeport Fire Litigation*, in which Haviland attempted to contact members of the Class when he was not class counsel in the case.  *See* Ex. 8 (Order (*Per Curiam*)).

- 34 -

will ever receive any recovery in their lifetimes.[23]  Regardless of the noble language it invokes –

appealing to Article III standing principles and the Supreme Court's decision in *Amchem* –

Haviland's Opposition is nothing more than an act of vengeance – pure and simple.  The Court

should reject its arguments and allow the proposed Class Representatives to join this Settlement.


DATED:  June 24, 2011                    By    /s/ Steve W. Berman
                                             Thomas M. Sobol (BBO#471770)
                                             Edward Notargiacomo (BBO#567636)
                                         Hagens Berman Sobol Shapiro LLP
                                         55 Cambridge Pkwy, Suite 301
                                         Cambridge, MA  02142
                                         Telephone: (617) 482-3700
                                         Facsimile: (617) 482-3003

                                         **LIAISON COUNSEL**

                                         Steve W. Berman
                                         Sean R. Matt
                                         Hagens Berman Sobol Shapiro LLP
                                         1918 8th Avenue, Suite 3300
                                         Seattle, WA  98101
                                         Telephone: (206) 623-7292
                                         Facsimile: (206) 623-0594

                                         Jennifer Fountain Connolly
                                         Hagens Berman Sobol Shapiro LLP
                                         1629 K Street, NW
                                         Suite 300
                                         Washington, D.C.  20006
                                         Telephone:  (202) 355-6435
                                         Facsimile:  (202) 355-6455

---

[23] Not only is Haviland advancing objections on behalf of consumers who the Court deemed to have withdrawn after submitting their declarations threatening to do so if Haviland was not appointed Class Counsel, two of his clients – Young and Shepley – more recently stated that they did not want to be involved in the case anymore.

Jeffrey Kodroff
Spector, Roseman & Kodroff, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

001534-16  455671 V1

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE
Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on June 24, 2011, I caused copies of **CLASS PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO ADD INDIVIDUAL PLAINTIFFS AS CLASS REPRESENTATIVES FOR THE TRACK TWO SETTLEMENT** to be served on all counsel of record by causing same to be posted electronically via LEXIS-Nexis File & Serve.


 **/s/ Steve W. Berman**
Steve W. Berman

001534-16  455671 V1