# Exhibit 6

1              IN THE UNITED STATES DISTRICT COURT

            FOR THE DISTRICT OF MASSACHUSETTS

2

3   IN RE:                          )

                                    )  CA No. 01-12257-PBS

4   PHARMACEUTICAL INDUSTRY AVERAGE    )

    WHOLESALE PRICE LITIGATION        )  Pages 1-88

5                                   )

6

7

8

                    SETTLEMENT HEARING

9

            BEFORE THE HONORABLE PATTI B. SARIS

10                UNITED STATES DISTRICT JUDGE

11

12

13

14

                        United States District Court

15                      1 Courthouse Way, Courtroom 19

                        Boston, Massachusetts

16                      April 27, 2009, 2:15 p.m.

17

18

19

20

21

22              LEE A. MARZILLI

            OFFICIAL COURT REPORTER

23          United States District Court

            1 Courthouse Way, Room 3205

24              Boston, MA  02210

                (617)345-6787

25

Page 70

1    THE COURT:  We've always allowed that.  You just
2  needed to have some.  But you're right that we've said, at
3  least in a litigation context, I needed a class rep per
4  defendant.  But the question is, this is settlement, and so
5  their argument is whether it should be different.
6    MR. HAVILAND:  I don't know if Amchem allows us to
7  do a shortcut like that because you know the problem, Judge?
8  Now is the last time we look at it, whereas in litigation
9  you have the chance to fix it.
10    THE COURT:  What about the argument that, you
11  know, as a practical matter, these associations are actually
12  more proactive than an individual whose mother took an
13  injection would be.  So assuming they only have standing for
14  a limited purpose, not for damages but for injunction or
15  declaratory relief when I originally put them in, won't they
16  be proactive for consumers?
17    MR. HAVILAND:  Well, one would hope so, but the
18  problem we have with Prescription Action Litigation, it was
19  a group that was in part founded by the lawyers in this
20  room.  The mission statement that we put before the Court
21  demonstrates that one of their five missions in life is to
22  get cy pres.  Now, your Honor made the comment earlier
23  there's not cy pres in this case, but think about this case
24  in totality.  In AstraZeneca, there was a set-aside for
25  cy pres, a guarantee.  One of the objections, frankly, the

Page 71

1  principal objection --
2    THE COURT:  I think I rejected it.
3    MR. HAVILAND:  Well, no, you didn't, your Honor.
4  You scaled it back, and we appreciated that.
5    THE COURT:  Dramatically, dramatically.
6    MR. HAVILAND:  We appreciated that.  Mrs. Howe saw
7  that, my client, as an impediment to her getting her full
8  due under the settlement.  But there's still that built-in
9  set-aside which is buttressing that settlement from getting
10  what we're getting here.  Today, your Honor, I hear, if
11  there's money left over, we'll give it back to the
12  consumers.  Let's do that in AstraZeneca.  Let's not have a
13  set-aside for cy pres.
14    THE COURT:  I'm not talking about AstraZeneca.
15    MR. HAVILAND:  I understand, but that's the
16  problem I have with PAL.  You asked the question, why
17  shouldn't PAL be a good proxy?  Well, in that case, your
18  Honor, the record that you have before you shows the
19  set-aside was for PAL.  That's what it says in the e-mails
20  that were filed of record with you.  So that's a conflict,
21  your Honor.  The problem is, when lawyers --
22    THE COURT:  Aren't there like six other consumer
23  associations?
24    MR. HAVILAND:  They're all PAL members.  Our
25  papers demonstrate they're all PAL.  I mean, in essence

Page 72

1  it's --
2    THE COURT:  So you're saying, so I get the legal
3  argument, and I need to get to Mr. Berman, the legal
4  argument is, regardless of what I say, the associations
5  under that Second Circuit case do not have standing, and
6  Tonacchio only does with respect to one defendant, and
7  therefore that isn't enough at best?
8    MR. HAVILAND:  If you find that she in fact made a
9  payment or had an amount due and owing.
10    THE COURT:  And, in any event, you would say it's
11  not a fair and reasonable amount?
12    MR. HAVILAND:  Because if you look at the reality
13  of what's been happening in these cases --
14    THE COURT:  With the Attorney Generals as a
15  comparison.
16    MR. HAVILAND:  Correct, your Honor.
17    THE COURT:  Okay, thank you, I understand.
18    MR. HAVILAND:  The last point, if I may, because
19  Mr. Berman made the point that we were somehow saying
20  something false about what's in this case.  Mr. Monk and
21  Mr. Thomson, my clients, were added to the complaint in
22  2005.  Mr. Monk bought Eligard, and Mr. Thomson bought
23  Trelstar.  Now, your Honor ruled in response to defendants'
24  motions that they were out; those drugs were not in the
25  case, they were new drugs newly added, and they were

Page 73

1  dismissed.  My clients were then sent packing.  Now they're
2  back in.  So if you look at the record, you're going to see
3  those drugs in there under the second B.
4    THE COURT:  But not for consumers, just for TPPs.
5    MR. HAVILAND:  No, they're in there for consumers,
6  your Honor, and there's a full release happening.  And our
7  problem is, Aventis doesn't like that it paid any money
8  for Eligard because it's in Class B.  Aventis, according to
9  the record that I see, says they paid it in Class A.  They
10  paid nothing on Eligard.  Why is that important?  If you
11  look under the tab, your Honor, you're going to see that's
12  Lupron.  Eligard and Trelstar are Lupron.
13    THE COURT:  Okay, now you're losing me again.  I
14  missed this point in all the filings, so --
15    MR. HAVILAND:  Well, they're brand drugs, number
16  one, so they don't belong below that line in the Class B
17  drugs.  Aventis makes Eligard, and they're above the line in
18  Class A.  But they haven't paid any money for that drug.
19  It's just kind of lumped in there.  And Mr. Monk says to
20  himself, "Why is that?  I was told years ago by the Court
21  that there's no drug that I can represent a class for."  So
22  he's kicked out.  Then it comes back in the settlement.  The
23  same thing with Trelstar.
24    THE COURT:  Does he want to come back as a class
25  rep?