# Exhibit 7

```
                                                                    Page 1
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
     In Re:                              )
 4   PHARMACEUTICAL INDUSTRY             ) CA No. 01-12257-PBS
     AVERAGE WHOLESALE PRICE             ) MDL No. 1456
 5   LITIGATION                          ) Pages 1 - 30
 6
 7
 8              CLASS COUNSEL STATUS CONFERENCE
 9           BEFORE THE HONORABLE PATTI B. SARIS
                  UNITED STATES DISTRICT JUDGE
10
11
12
13
                                  United States District Court
14                                1 Courthouse Way, Courtroom 19
                                  Boston, Massachusetts
15                                September 11, 2007, 10:10 a.m.
16
17
18
19
20
21
22
                           LEE A. MARZILLI
23                       OFFICIAL COURT REPORTER
                       United States District Court
24                     1 Courthouse Way, Room 3205
                           Boston, MA  02210
25                           (617)345-6787
```

Electronically signed by Lee Marzilli (501-148-248-2705)                    2c968e92-ae31-43e5-8fc8-89d4add9dd2a

Page 18
1  Mrs. Howe, for instance, in AstraZeneca -- I see Mr. Wise is
2  in the courtroom -- she paid 50 percent out of pocket, and
3  the settlement doesn't accomplish her issue.  So it's still a
4  problem, but we're working together cooperatively.  We've had
5  a call about that to try to resolve that.
6       THE COURT:  It's just she's not part of the class.
7  It doesn't mean that you can't represent her separately on a
8  separate cause of action.  She's just not part of this class
9  because of the common question issue.  But putting that
10  aside, I need to trust you.  Let's get past all the legal --
11       MR. HAVILAND:  Sure, absolutely.
12       THE COURT:  I need to trust you, and I keep trying
13  to make sure that if there's a consensus among the
14  plaintiffs' team, well, I'll trust you.  But truthfully, at
15  this point, I don't trust you.  I mean, that sounds like a
16  very mean thing to say, but, you know, at some point I tell
17  people, "You make your bed, you lie in it."  You know, I put
18  aside the Stearns things -- well, okay you started a new
19  chapter -- and then there were all the problems with the
20  mediation in front of Eric Green, and there was, like, just
21  this huge human cry about what happened, and I said, "All
22  right, well, that's contested."  And then I got the
23  affidavits from these class reps saying, "I'm going to pull
24  out unless it's me," ==that makes me worried that you were more==
25  ==concerned about you than you were about the class reps.==  And

Page 19
1  then I sealed it, and then I see this, and I feel like you
2  weren't --
3       MR. HAVILAND:  I'm concerned about those clients,
4  your Honor.  That's the number one thing.
5       THE COURT:  The what?
6       MR. HAVILAND:  I'm concerned about those clients.
7  I've always been concerned about those clients.  They're the
8  folks represented since 2001 in Lupron and this case.  This
9  case is a case that we cocounseled with the Local 68
10  counsel.  We encouraged this coordination for the
11  Keefe Bartels firm so that your Honor would know fully about
12  this, as soon as Judge Bassler got appointed with his
13  experience as a federal judge, that he would speak with you
14  and that there wouldn't be a problem.  We're trying to avoid
15  that.
16       I think Mr. Jackson will agree, we've worked
17  cooperatively to make sure that we don't have a problem.
18  Nobody wants another Lupron.  I certainly don't want another
19  Lupron, your Honor, on my card.  I want to see this thing
20  worked out where everyone is brought to the table.
21       One thing we're disagreeing with defendants on is a
22  mediation.  Judge Bassler spoke at that conference a long
23  time about mediation.  We want the mediation to be here as
24  part of the mediation your Honor has ordered.  The defendants
25  didn't agree to that.  Their cover letter said, "No, we want

Page 20
1  something else."  So I don't know how that's going to play
2  out.  I suspect Judge Bassler is going to go with his
3  instincts and order that it happen here.  That's certainly
4  something we encourage.
5       MR. BERMAN:  Your Honor, this is Steve Berman.
6       THE COURT:  I need some thought from the
7  plaintiffs' team about what makes sense here, and then I need
8  to know from the defense team.  Although you don't have a
9  direct role in this, what happens in New Jersey will affect
10  you.  The last thing I want to do is to disqualify him if it
11  means that every class rep pulls out, and yet I'm worried
12  here.
13       MR. BERMAN:  Let me mention two things on that.  If
14  the class reps pull out, which I think he's -- I don't know
15  how he can do that consistent with his obligation to the
16  class, we've done an examination of this; and, unfortunately,
17  because we didn't want it to be this way, we think 99 percent
18  of the class reps that he currently has only bought drugs in
19  2004 or later.  And therefore, under your prior rulings, we
20  actually don't have consumer class reps for most of the
21  defendants at this point.
22       The second thing -- and I apologize I didn't point
23  this out earlier -- on the trustworthy issue, when I talked
24  to Professor Green about this, I think I should disclose to
25  the Court that he was very upset.  I mean, he said he

Page 21
1  couldn't call me for two days, he was so angry that
2  Mr. Haviland would file the internal workings, E-mails back
3  and forth of the settlement negotiations with the Court in
4  open court, because one thing you do with Professor Green is,
5  you sign a confidentiality statement that he thinks is like
6  the bible of how you have to conduct settlement
7  negotiations.  So he was very upset and concerned that that
8  happened and is trying to figure out, you know, going
9  forward, if Mr. Haviland is one of the co-lead counsel, you
10  know, how could this work.
11       MR. HAVILAND:  Your Honor, we sought leave to put
12  that under seal, and we're still asking you.  The request for
13  that is still before your Honor.
14       THE COURT:  When you filed it, did you file it with
15  a motion to seal?
16       MR. HAVILAND:  We sent it to your Honor first as
17  your Honor had asked for with a request that it be put under
18  seal, so that if there was --
19       MR. BERMAN:  It was filed on the ECF.
20       THE COURT:  Was that a mistake in court chambers,
21  or was that a mistake of counsel?
22       MR. HAVILAND:  Well, we don't know, your Honor.  We
23  first sent it to you when your Honor asked for the
24  declaration, and we asked that it be treated under seal.
25  The ECF picked it up on the Friday before that hearing.  We