# Exhibit 3



27377278

Oct 5 2009
2:23PM

Donald E. Haviland, Jr., Esquire
Adam S. Levy, Of Counsel
Michael J. Lorusso, Esquire
THE HAVILAND LAW FIRM
112 Haddontowne Court
Suite 202
Cherry Hill, NJ 08034
Telephone: (856) 354-0030

CO-LEAD COUNSEL FOR PLAINTIFF AND THE CLASS

---

| | |
|---|---|
| International Union of Operating Engineers, Local No. 68 Welfare Fund (an unincorporated trust)<br><br>                    Plaintiff,<br><br>  v.<br><br>AstraZeneca PLC; et al.<br><br>                    Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br><br>CIVIL ACTION NO. MON-L-3136-06 |

---

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ADD CLASS REPRESENTATIVES

For the last year and a half, Defendants have insisted that Locals 690 and 322 (the "Funds") must file a new complaint if they wish to prosecute their claims. Three courts—the trial court, Appellate Division, and Supreme Court--have rejected any such notion and affirmed that "exceptional circumstances" in this case warrant substitution of one or more class representatives in place of the existing class representative, International Union of Electrical Engineers Local 68 Pension Fund ("Local 68"). Indeed, the Appellate Division expressly held that ". . . the [trial] court did not abuse its discretion in deciding that plaintiff's failure to produce Giblin for deposition was cured by plaintiff's proffer of two substitute class representatives who would provide the class certification discovery demanded by defendants," App. Div. Op. at 14 [at Levy Certification Ex. "F"], and that "it was not abuse of the court's discretion to find exceptional circumstances where dismissing the complaint with prejudice would require the

parties to begin anew a class action that had already been brought through six years of litigation." App. Div. Op. at 18. And, in rejecting Defendants' challenge to these rulings by the Appellate Division, the Supreme Court declared that "a new plaintiff *shall be substituted as class representative* within ninety days" of the Supreme Court's Order. Sup. Ct. Order at 1 (emphasis added)(at Levy Certification Ex. "B").

Although these rulings are law of the case, Defendants all but ignore them.[1]   Instead, Defendants would have this Court believe that this case is just like any other, insisting that "Locals 690 and 322's status as putative absent class members does not entitle them to become named plaintiffs or to prosecute the case without satisfying the same procedural hurdles required of all new parties to any case." Def. Brief at 13-14. Defendants essentially reiterate the same arguments they made to Judge Locascio, the Appellate Division, and the Supreme Court: that Plaintiffs must restate their allegations more to Defendants' liking, remove Local 68 from this case entirely, and file a new complaint.

Defendants' motivation is the same as it has always been: to force Plaintiff to file a new complaint with as many changes as possible, which Defendants can then seize upon as a basis for removing this six-year old action to federal court and starting over there. Defendants made this intention manifestly clear to the trial court and Appellate Division, if not the Supreme Court. In light of the fact that Defendants have already held this case up for years with frivolous removals to federal court, fruitless interlocutory appeals, and other delay tactics, Defendants' exclamation that "it's time to get this case moving" rings hollow. *See* Def. Opp. Brf. at 4.

Accordingly, this Court should reject this latest in a series of attempts by Defendants to deprive Plaintiff of its choice of forum and further delay this case. Contrary to Defendants'

---

[1]Significantly, the words "exceptional circumstances" do not appear anywhere in Defendants' opposition brief.

assertions, the substitution of two union Funds as class representatives does not require any changes to the complaint. The claims of the substituted Funds arise from the same conduct, are based on the same statutes and common law principles, and are brought against the same Defendants as in the existing complaint. The substituted Funds allege the same conspiratorial time period as set forth in the complaint. They allege the same class definition. And, the drugs they purchased were the subject of the same conspiracy alleged in the complaint—i.e., a conspiracy to artificially inflate prices for prescription drugs reimbursed by Medicare, Medicaid, and other government programs.

For these reasons, the Court should grant Plaintiff's motion and allow the two Funds to be substituted as proposed class representatives in place of Local 68, in accordance with the opinions of the three Courts of this State that have already considered the substitution issue.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants have managed to twist a relatively straightforward administrative matter into a procedural morass. A year and a half ago, as a discovery sanction, Judge Locascio ordered that Local 68 Fund's complaint be dismissed for Local 68 Fund's failure to produce its President, Dennis Giblin, for deposition. In so doing, Judge Locascio anticipated that one or more new class representatives would step forward to keep this case going. But three months later, when Locals 690 and 322 did exactly that and filed certifications with the Court asking to be added as class representatives, Defendants insisted that the exclusive procedure was to dismiss the existing action with prejudice and have the new class representatives file a new complaint. Defendants made no secret of their motivation for this position: they hoped to delay resolution of this case by removing this dispute to federal court, despite having been rebuffed and sanctioned in their first attempt.

3

Judge Locascio rejected Defendants' argument, finding that the prejudice to the putative class if it were forced to "start over" constituted "exceptional circumstances." He vacated the dismissal order, paving the way for a motion to add the two new Funds to this case as class representatives. Defendants, however, filed a motion for leave to appeal with the Appellate Division, contending (among other things) that they would be "prejudiced" if Locals 690 and 322 were not required to file a new complaint because "the Class Action Fairness Act and other federal law affords [Defendants] the right to have a new case heard in federal court as part of an ongoing, organized MDL proceeding." Def. Brief in Support of Motion for Leave to Appeal [to App. Div.] at 20 n.13, attached as Exhibit A to certification of Stephen Sullivan ("Sullivan Cert.").

After briefing and argument by the parties, the Appellate Division issued an opinion affirming the trial court's finding of "exceptional circumstances" in this case, "where dismissing the complaint with prejudice would require the parties to begin anew a class action that had already been brought through six years of litigation." App. Div. Op. at 18. Defendants' interlocutory appeal having thus been denied, Plaintiff moved to add Locals 690 and 322 Funds to the case as putative class representatives. The motion was accompanied by a certification of counsel, which attached certifications by Locals 690 and 322 representatives attesting to their membership in the putative class; their standing to pursue claims alleged in the Complaint based on the fact that they had purchased prescription drugs manufactured by one or more Defendants; and their willingness to serve as class representatives in the case. *See* Certifications of Thomas J. McNulty and John P. Shaloo, attached as Exhibit B to Sullivan Cert. The motion also was accompanied by a brief explaining that the existing plaintiff, Local 68 Fund, was unable to continue as class representative, that the two additional Funds were willing and able to serve as

class representatives, and requesting that Locals 690 and 322 be added to the case for that purpose. *See generally* Brief in Support of Motion to Add Putative Class Representatives.

Defendants had not given up on their hope of derailing this case, however. Soon after the motion to add putative class representatives had been filed, Defendants moved for a stay while they appealed to the New Jersey Supreme Court. In their motion to appeal, Defendants accused the Appellate Division of "pick[ing] and choos[ing]" which rules to follow and declaring that Defendants' constitutional rights had been violated in the process. *See* Def. Brief in Supp. of Motion to Appeal [to Supreme Court] at 1-2 (at Levy Cert. Ex. "W"). Defendants decried the Appellate Division's ruling as "mandat[ing] the disparate treatment of named plaintiffs in uncertified class actions and plaintiffs in individual actions." *Id.* at 14. Defendants also challenged the holding of "exceptional circumstances" as "plac[ing] [Plaintiff] above other litigants who sue on their own behalf." *Id.* at 20.[2] In so doing, Defendants conceded that the Appellate Division had determined that the substitution of new class representatives would not materially change this case:

> The Appellate Division failed to reject IUOE's misguided effort to shoehorn "substitute class representatives[]" . . . into the case under the false pretext . . . that their proposed substitution would cure IUOE's discovery deficiencies and by pretending that none of the parties, factual allegations, or claims would be altered or that defendants will not be unduly prejudiced.

*Id.*, Ex. W at 22 n.13. In other words, in "failing to reject" the Plaintiff's justification for substitution, the Appellate Division agreed with Plaintiffs that mere substitution of class representatives does not work a material change to the case.

---

[2] Defendants also accused the Appellate Division of "completely ignor[ing] basic class action law," and of being "fundamentally mistaken because it disregards the critical distinction between a named plaintiff seeking to represent a class and a class that has been certified." *Id.* at 21.

Defendants also had a few choice words for Plaintiff's counsel. In recounting the history of the controversy regarding Local 68 Fund's presence in the case, Defendants accused Plaintiff's counsel of breaching an earlier "unequivocal representation" that Local 68 Fund would "withdraw" from this matter. *Id.* at 4-5. Plaintiff, however, pointed out that the quotes attributed to Plaintiff's counsel stated only that Local 68 Fund intended to withdraw *as class representative*, and that beyond that, Local 68 Fund had not yet decided in what capacity to remain as a plaintiff in the case. *See* Pltf. Opp. Brf. to Mot. for App. to S. Ct. at 5-6, attached as Exhibit C to Sullivan Cert. In denying Defendants' motion, the Supreme Court evidently appreciated that distinction, ordering "that a new plaintiff must be substituted *as class representative* within ninety days of this Order." Supreme Court Order at 1 (emphasis added).

## ARGUMENT

Defendants' insistence on a new complaint has already been rejected in this case. Defendants make no new justifications that compel a different outcome here. Despite Defendants' attempts to cast the claims by Local 690 and 322 Funds as completely mysterious and new, neither of the changes they attribute to Locals 690 or 322 warrant changing the complaint. Locals 690 and 322 are the same types of Taft-Hartley Funds, making the same claims, about the same conduct, covering the same time period, about the same types of drugs, based upon the same New Jersey law, against the same defendants, as Local 68. Although the examples of drug purchases described in the Funds' certifications do not overlap completely with Local 68's purchases, this is no more significant than if they had purchased drugs in different colored bottles or in different dosages. The fact is, all of the prescription drugs listed by the Funds had inflated AWPs, were reimbursed by Medicare, Medicaid, or other government entity, and were subject to the same conspiracy as alleged in the Complaint. The other "vast

differences" alleged by Defendants—namely, the reduction of defendants and the geographic and other limitations on the alleged class—are not attributable to the presence or absence of Locals 690 or 322 as class representatives, and thus are irrelevant for purposes of Plaintiff's motion. Thus, given the "exceptional circumstances" that have been found in this case, and to avoid any further prejudice to the class caused by the absence of a putative class representative, Plaintiff's motion should be granted.

If, however, the Court decides that, notwithstanding the Supreme Court's Order, the substitution issue is governed solely by either Rule 4:9 or 4:33, then the motion to add should be considered a motion by Locals 690 and 322 to intervene in this case. It is undisputed that Local 68 Fund is unable to adequately represent the interests of putative class members. The certifications by Fund representatives referencing the existing Complaint and evidencing their own membership in the class are sufficient to give Defendants fair notice of the claims against them. The delay in intervening is excusable due to the fact that Local 68 Fund's inadequacy as a plaintiff first became apparent to Plaintiff's counsel in the spring of last year, when it appeared that Mr. Giblin would not attend his deposition. Locals 690 and 322 appeared within ninety days of Judge Locascio's decision dismissing the case for Local 68 Fund's failure to provide class discovery. And, any prejudice to Defendants in allowing intervention must be considered in light of the fact that Locals 690 and 322 asked to be added as class representatives over a year ago, and that all of the delay since then has been caused by Defendants' fruitless appeals. Thus, in the alternative, Locals 690 and 322 should be allowed to intervene in this case.

A.    Plaintiff's Motion To Add Putative Class Representatives Should Be Granted.

Defendants make much of the fact that the Local 68 Fund, Local 690, and Local 322 have not filed an amended complaint. Defendants assert that an amended complaint is necessary

to account for the "vastly different" claims presented by Locals 690 and 322, and the purported need for Local 68 Fund to withdraw from this case completely. These claims are without merit.

> 1. The claims alleged by Locals 690 and 322 are the same as those alleged by Local 68 Fund.

In their certifications, to show their membership in the putative class, representatives for Locals 690 and 322 listed one or more drugs that, according to their records, they had reimbursed during the applicable time period.[3] Defendants seize upon the lack of identical overlap in drug reimbursements between Local 68 Fund on the one hand, and Locals 690 and 322 on the other hand, for the notion that "the potential claims of the two proposed plaintiffs are *vastly different* from those alleged against each defendant in IUOE's Complaint." Def. Opp. at 3 (emphasis added). This is false, and Defendants know it. Defendants do not tell this Court that in the related MDL proceedings in Boston, class representatives were certified to represent purchasers of particular drugs manufactured by particular defendants, despite not having purchased those drugs themselves. *See In re Average Wholesale Price Litig.*, 230 F.R.D. 61, 80 (D. Mass. 2005) (requiring only that "Plaintiffs must allege that there is an individual class representative with standing to sue each defendant."). The reason is that the claims of one category of class members (e.g. consumers) against a particular defendant were the same as the claims of all other class members within that category, notwithstanding the fact that the class representative may have purchased different drugs from that defendant. It is the conduct of the Defendants in implementing a scheme to inflate AWPs for their drugs that typifies this case, not the specific drugs within that scheme.

---

[3] As is indicated by the "including but not limited to" language used in the certifications, the lists were not intended to be exhaustive, but were subject to further investigation and discovery.

The other "differences" supposedly requiring an amended complaint have nothing to do with whether the Local 690 and 322 Funds are class representatives in this case or not.   While it is correct that Judge Locascio entered a stipulation among the parties dismissing many of the defendants from this case without prejudice, this dismissal occurred in November of 2007— long before Local 690 and 322 came forward to serve as class representatives in August of 2008.  The limitation of the geographic scope of the class to New Jersey only should come as no surprise to Defendants, since it is they who first insisted to Special Master Bassler, Judge Saris, and others that Plaintiffs should be held to the word "county" set forth in the class definition in the Complaint, rather than "country."  In any event, the geographic change in the class definition in Plaintiff's motion came out of Judge Saris's comments to Mr. Haviland at a hearing on July 24, 2009, rather than the substitution of Locals 690 and 322 as class representatives.  As such, these "changes" cited by Defendants as requiring an amended complaint are irrelevant to the motion to add class representatives.

Defendants urge this Court to follow the decision of a trial court judge in an Arizona AWP case and require Plaintiff to file an amended complaint.  Opp. Br. at 17-18.  Defendants neglect to mention that, after the Appellate Division issued its ruling in this case, they argued vehemently to the Arizona Court that the existence of "exceptional circumstances" distinguished this case from the Arizona action.  *See* 5/7/09 *Swanston* Hrg. Tr. at 122:3-4, 122:15-123:6, 166:17-167:1.  The Arizona court agreed with Defendants that this case **"bore no resemblance"** to the procedural posture of the Arizona action due to the "exceptional circumstances" in this case.  Bruce Levy Cert. in Opp. to Mot. to Add, Ex. P at 7 n.1.  Nothing the Defendants say in their about–face to this Court compels a different conclusion.

2.     Local 68 Fund should be allowed to remain in this case to pursue its individual claims.

Defendants also assert that Local 68 Fund should be forced to withdraw from this case completely, even in its own individual capacity.  Taking their penchant for hypertechnicality to new and dizzying heights, Defendants quote the dictionary definitions of "substitute" and "add," and argue that the use of the word "add" in Plaintiff's motion is contrary to the Supreme Court's order, which says "substitute."  In making this argument, Defendants ignore the "*as class representative*" portion of the Supreme Court's Order, as well as the fact that "adding" Local 690 and 322 Funds as class representatives while Local 68 "withdraws" as a class representative is functionally the same thing as a "substitution."  Defendants also ignore the fact (and hope this Court does too) that they have insisted upon Local 68's dismissal from this case to three different courts, and have been rejected every time.  The fact is, whatever its troubles with serving as a class representative, Local 68 has never agreed to withdraw from this case completely, and will remain in this case to pursue its own interests absent an order from the Court requiring otherwise.

In sum, in a case such as this one, where exceptional circumstances have been found that militate against requiring replacement class representatives to start over with a new complaint, the Court should allow the motion to add without requiring the filing of an amended complaint. Defendants know full well the claims alleged by Local 690 and 322 Funds, which are the  same claims alleged by Local 68.  While Defendants may have questions about which specific drugs were purchased by Local 690 and 322 Funds, they had similar questions with respect to Local 68 before it decided to withdraw as class representative.  Moreover, Local 68 Fund will remain as a plaintiff in this case in its own individual capacity.  Because the addition of Locals 690 and 322

10

Funds will work no changes to this case that require any changes to the complaint, Plaintiff's motion should be granted.

      B.      <u>In the Alternative, the Motion to Add Should Be Construed as a Motion by Local 690 and 322 Funds to Intervene.</u>

If, notwithstanding the above, the Court decides that Plaintiffs' motion is governed by the dictates of either Rule 4:9 (amending the complaint) or 4:33 (formal intervention), then Plaintiffs respectfully request that the motion be construed as a motion for intervention. *See* Manual for Complex Litigation (Fourth) § 21.26 (2004) (noting that when replacement of a class representative becomes necessary, "the court may permit intervention by a new representative or simply designate that person as a representative in the order granting class certification").

R. 4:33-1 establishes the four criteria applicable to a motion for intervention as of right. The applicant must (1) claim "an interest relating to the property or transaction which is the subject of the action," (2) show he is "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest," (3) demonstrate that the "applicant's interest" is not "adequately represented by existing parties," and (4) make a "timely" application to intervene. Intervention as of right under R. 4:33-1 is "not discretionary." If all of these criteria are met, the application for intervention as of right must be approved by the court. *Chesterbrooke Ltd. Partnership v. Planning Bd. of Chester Tp.*, 237 N.J. Super. 118, 124, 567 A.2d 221 (App. Div.), *cert. denied* 118 N.J. 234, 570 A.2d 984 (1989) (citations omitted).

Local 690 and 322 Funds satisfy these criteria. Numerous courts have held that if an existing class representative is inadequate, absent class members have the requisite interest in the subject matter of the litigation to intervene to protect their own interests and those of other absent class members. *See, e.g., Johnson v. San Francisco Unified School Dist.*, 500 F.2d 349, 352-54 (9th Cir. 1974); *Bohne v. Closings of Tulsa*, 2006 WL 965382 at **1-2 (D. Okla. 2006), *In re*

*Cigna Corp. Sec. Litig.*, 2005 WL 3952802 at **1-2 (E.D. Pa. 2005). The class need not be certified for an absent class representative to have sufficient interest in the outcome to intervene. *See Bohne*, 2006 WL 965382 at *1 (intervention allowed prior to class certification hearing); *Cigna*, 2005 WL 3952802 at *1 (intervention allowed prior to class certification because "the interests of the putative class will clearly be at risk [if] . . . due to a failure to prove loss causation and/or economic loss, SERS is dismissed as a party or is deemed to be an unworthy class representative").

By demonstrating their membership in the putative class, the Funds have established at least two distinct interests in the subject matter of this litigation: (1) obtaining and maintaining an appropriate class certification order, and (2) obtaining adequate monetary compensation, injunctive relief, and all other relief to which they are entitled. These interests are sufficient for purposes of intervention.

With regard to the requirement that the applicant's ability to protect his interests be impaired or impeded, the burden to make this showing is "minimal." *Bohne*, 2006 WL 965382 at *2. Courts have held that "even a small threat that the intervention applicants' [interests] could be jeopardized would be ample reason for finding that their ability to protect their interest 'may' be adversely affected." *Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 35, 35 n.1 (1st Cir. 2000) (citing *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999). In class action cases, the possibility that a putative class representative's claims may be summarily dismissed is sufficient to constitute "impairment" for purposes of Rule 24(a)(2). *See Bohne*, 2006 WL 965382 at *2, *Cigna*, 2005 WL 3952802 at *1.

In this case, Local 68 was already summarily dismissed once, and Local 68 has conceded that it is inadequate to continue representing absent class members. It is unlikely that this Court

will certify a class without an adequate class representative; indeed, any such action would be ill-advised. If no class is certified, absent class members like Local 690 and 322 Funds will be forced to sue on their own, at significant individual expense. Under these circumstances, Local 690 and 322 Funds satisfy the minimal showing of "impairment" of their interest required by the Rule.

As for the requirement that the applicant's interest will not be adequately represented by existing parties, the applicant similarly "need only make a minimal showing that the representation afforded by existing parties likely will prove inadequate." *Patch*, 136 F.3d at 207 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). *See also Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1001 (8th Cir. 1993) (ruling that even a "potential conflict" is sufficient to satisfy a showing of inadequate representation); *Bohne*, 2006 WL 965382 at *2, *Cigna*, 2005 WL 3952802 at *1. Again, the Funds have made this showing, where the sole existing putative class representative has conceded that it is unable to continue representing absent class members.

Defendants may also contend that intervention is untimely. An application for intervention is considered timely "if intervention will neither prejudice the rights of existing parties to the litigation nor substantially interfere with the orderly process of the court." *Mobil Admin. Serv. Co. v. Mansfield Twp.*, 15 N.J. Tax 583, 595 (N.J. Tax. Ct. 1996) (citing cases). The Court should also consider the purpose for which intervention is sought. *Id.*

In *Bohne*, the Court considered whether the defendants would be prejudiced by allowing intervention after class discovery had been completed, but prior to a class certification determination. The Court reasoned:

> Granting intervention would not cause defendants to suffer undue prejudice. Defendants argue that permitting intervention would

require discovery to be re-opened to determine the proposed intervenors' factual ability to meet the requirements of Fed.R.Civ.P. 23. Yet, if the Court were to deny class certification at this relatively early stage of the litigation on adequacy of representation grounds, *see* Fed.R.Civ.P. 23(a), intervention thereafter would be permissible and, indeed, should be encouraged for the purpose of finding a proper class representative. *See 5 Newberg on Class Actions,* ¶ 16.9 at 171-72. Discovery would have to be re-opened in any event. By contrast, denying intervention would cause the prospective intervenors to suffer undue prejudice because, although the statute of limitations is tolled by the filing of a class action complaint as to subsequent individual actions that may be brought after denial of class certification, the proposed intervenors could not "take advantage of the tolling period to commence a separate class suit after the expiration of the normal statute of limitations period."*Id.,* § 16.11 at 182-86.

2006 WL 965382 at *2. *See also Cigna,* 2005 WL 3952802 at *2 ("Defendant has not offered any substantive reason, other than the fact that they do not want the burden of dealing with the claims of new parties to delay what they hope will be a successful termination of SERS as Lead Plaintiff. However, Defendant has no right to expect that any ruling against SERS on loss causation and/or economic loss grounds will necessarily terminate Defendant's liability to the other members of the putative class.").

No undue prejudice would result to Defendants by allowing intervention. Defendants have known of the interests of Local Funds 690 and 322 as proposed class representatives since at least August of 2008. The only "prejudice" to Defendants would be that the Court would determine the class certification motion on its substantive merits, instead of deeming the motion "moot" based on Local 68's inability to serve as a class representative. Absent a replacement class representative, this ruling with respect to Local 68 would effectively dispose of the claims of all putative class members in favor of Defendants. Defendants' interest in having a ruling with respect to one person dispose of the claims of all persons is not legitimate, and is

insufficient to outweigh the prejudice to intervenors and class members if they are left with only economically unfeasible individual claims.   This Court should allow Local 690 and 322 Funds to intervene because their claims (and those of other class members) have common issues of fact and law with the claims asserted herein, these claims will continue to be affected by decisions in this case, and intervention will cause no undue prejudice to Defendants.

Defendants will undoubtedly argue that, even if the motion is treated as a motion to intervene, the Funds must still file an amended complaint, as required by the portion of the Rule stating that a motion to intervene must be "accompanied by a pleading setting forth the claim or defense for which intervention is sought." R. 4:33-3.  Of course, the language of the Rule itself does not require that the pleading be an amended complaint.  Moreover, courts in the Third Circuit applying the federal rule have not required strict adherence to the "pleading" requirement in cases such as this one, where the "intervenor," an absent class member seeking to be substituted as a class representative, adopts the existing the complaint.  *See Ardrey v. Federal Kemper Ins. Co.*, 142 F.R.D. 105, 116 n.19 (E.D.Pa. 1992).  Here, the Funds' certifications refer to the existing complaint, and Plaintiffs' counsel has stated that the Funds adopt the present complaint.  As such, there is no mystery as to "the claim or defense for which intervention is sought," and intervention should be allowed without the filing of an amended complaint.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Motion to Add Class Representatives be granted in its entirety.


Dated: October 2, 2009

Donald E. Haviland, Jr., Esquire
Adam S. Levy, Of Counsel
Michael J. Lorusso, Esquire
THE HAVILAND LAW FIRM
112 Haddontowne Court
Suite 202
Cherry Hill, NJ 08034
Telephone: (856) 354-0030

John E. Keefe, Jr., Esquire
Stephen T. Sullivan, Jr., Esquire
KEEFE BARTELS & CLARK LLC
170 Monmouth Street
Red Bank, NJ 07701
Telephone:  (732) 224-9400
Facsimile:  (732) 224-9494

Kent M. Williams, Esquire
THE WILLIAMS LAW FIRM
1632 Homestead Trail
Long Lake, MN 55356
Telephone: (763) 473-0314

COUNSEL FOR PLAINTIFF AND THE CLASS

16

LEXISNEXIS® FILE & SERVE
27377278
E-SERVICE
Oct 5 2009
2:23PM

Donald E. Haviland, Jr., Esquire
Adam S. Levy, Of Counsel
Michael J. Lorusso, Esquire
The Haviland Law Firm
112 Haddontowne Court, Suite 202
Cherry Hill, NJ 08034
Telephone: (856) 354-0030

John E. Keefe, Jr., Esquire
Stephen Sullivan, Esquire
Keefe Bartels & Clark
170 Monmouth Street
Red Bank, NJ 07701
Telephone: (732) 224-9400
Facsimile: (732) 224-9494

CO-LEAD COUNSEL FOR PLAINTIFF AND THE CLASS

| | |
|---|---|
| International Union of Operating Engineers, Local No. 68 Welfare Fund (an unincorporated trust)<br><br>                                    Plaintiff,<br><br>          v.<br><br>AstraZeneca PLC; et al.<br><br>                                    Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MONMOUTH COUNTY<br><br>CIVIL ACTION NO. MON-L-3136-06<br><br>**CERTIFICATIN OF STEPHEN T. SULLIVAN, JR.** |

I, Stephen T. Sullivan, Jr., being of full age, certify as follows:

1.      I am an attorney at law admitted to practice in the State of New Jersey and am an associate at the law firm Keefe Bartles & Clark, LLC, counsel for Plaintiffs and the Class. I am familiar with all of the facts and circumstances herein and make this certification in support of Plaintiff's Reply in Support of Motion to Add Class Representatives.

2.      Attached hereto as "Exhibit A" is a true and correct copy of Defendants' Brief in Support of Motion for Leave to Appeal to Appellate Division.

3.      Attached hereto as "Exhibit B" is a true and correct copy of the May 5, 2009 Certification of Thomas J. McNulty and the May 8, 2009 Certification of John P. Shaloo.

4.      Attached hereto as "Exhibit C" is a true and correct copy of the June 3, 2009 Brief of Plaintiff-Respondent's in Opposition to Motion for Leave to Appeal to Supreme Court.

I certify that the statements made by me are true and accurate to the best of my knowledge and belief.  I understand that, if any of these statements are willfully false, I am subject to punishment.

Dated:  October 2, 2009                    _____
                                           Stephen T. Sullivan, Jr.

# Exhibit A

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND,<br><br>                Plaintiff,<br><br>        v.<br><br>ASTRAZENECA PLC, et al.,<br><br>                Defendants. | SUPERIOR COURT OF NEW JERSEY APPELLATE DIVISION<br>Docket No:<br><br>ON APPEAL FROM AUGUST 1, 2008 ORDERS OF THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, Docket No. MON-L-3136-06<br><br>SAT BELOW:<br><br>HONORABLE LOUIS F. LOCASCIO, J.S.C. |

---

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO APPEAL

---

Of Counsel
    Andrew T. Berry
    David J. Cooner

On the Brief
    Katie A. Gummer

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . 3

    I.   PLAINTIFF WILLFULLY REFUSED TO PRODUCE ITS
        PRESIDENT FOR DEPOSITION. . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.  PLAINTIFF REPEATEDLY INDICATED ITS INTENTION
        TO WITHDRAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    III. THE TRIAL COURT DISMISSED THE CASE WITHOUT
        PREJUDICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    IV.  PLAINTIFF REFUSED TO CURE ITS DISCOVERY DEFICIENCY. . . 9

    V.   THE TRIAL COURT ERRONEOUSLY VACATED THE DISMISSAL
        ORDER, REINSTATED PLAINTIFF'S COMPLAINT, AND
        DENIED DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE. 10

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.   INTERLOCUTORY APPELLATE REVIEW IS NECESSARY IN
        THE INTEREST OF JUSTICE. . . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.  THE TRIAL COURT ERRED IN DENYING DEFENDANTS'
        MOTION TO DISMISS WITH PREJUDICE, VACATING THE
        PRIOR DISMISSAL ORDER, AND REINSTATING PLAINTIFF'S
        COMPLAINT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.  THE TRIAL COURT ERRED IN REINSTATING A MOOT
            CASE WITH NO PLAINTIFF. . . . . . . . . . . . . . . . . . . . . . . 14

        B.  THE TRIAL COURT HAD NO AUTHORITY TO VACATE THE
            DISMISSAL ORDER AND REINSTATE THE CASE BECAUSE
            RULE 4:23-5 DOES NOT APPLY TO THE DEFICIENCY
            AT ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        C.  EVEN IF IT WERE APPROPRIATE TO APPLY
            RULE 4:23-5, THE TRIAL COURT ERRED IN
            FINDING "EXCEPTIONAL CIRCUMSTANCES." . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Barnes v. First America Title Inc., 473 F. Supp. 2d
    798 (N.D. Ohio 2007)................................18, 20

Bass v. Butler, 116 F. Appx. 376, 2004 WL. 2712942 (3d
    Cir. 2004)..........................................17

Bertrand v. Maram, 495 F.3d 452 (7th Cir. 2007) .........18

Board of School Commissioners of Indianapolis v.
    Jacobs, 420 U.S. 128 (1975).......................16, 23

Brown v. Phila. Housing Authority, 350 F.3d 338 (3d
    Cir. 2003)..........................................17

Davis v. Thornburgh, 903 F.2d 212 (3d Cir. 1990),
    aff'd, Davis v. Cohen, 498 U.S. 970 (1990)............17

E. Texas Motor Freight System Inc. v. Rodriguez, 431
    U.S. 395 (1977).......................................17

Inmates of Lincoln Intake & Detention Facility v.
    Boosalis, 705 F.2d 1021 (8th Cir. 1983)...............18

Lusardi v. Xerox Corp., 975 F.2d 964 (3d Cir. 1992) ..17, 21

Parameswaran v. Mysorekar, No. 05-C 2006 U.S. Dist.
    LEXIS 68307 (E.D.N.Y. Sept. 22, 2006)..................18

Remus Joint Venture v. McAnally, 116 F.3d 180 (6th
    Cir. 1997)............................................16

Rocky v. King, 900 F.2d 864 (5th Cir. 1990) .............19

Rolo v. City Investing Co. Liquidating Trust, 155 F.3d
    644 (3d Cir. 1998)....................................19

Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.,
    958 F. Supp. 947 (D. Del. 1997).......................19

Shelton v. Pargo, Inc., 582 F.2d 1298 (4th Cir. 1978) ....19

Tucker v. Phyfer, 819 F.2d 1030 (11th Cir. 1987) .........18

West v. Health Net, 217 F.R.D. 163, 177-87 (D.N.J.
    2003).................................................18

STATE CASES

Alk Associates v. Mulitmodal Applied System, 276 N.J.
    Super. 310 (App. Div. 1994)............................ 12

Caput v. Mortuum, L.L.C. v. S & S Crown Services,
    Ltd., 366 N.J. Super. 323 (App. Div. 2004)......... 2, 16

Cherry Hill Tp. v. U.S. Life Insurance Co. of N.Y.,
    176 N.J. Super. 254 (N.J. Tax. 1980).................. 16

Cinque v. N.J. Department of Correctional, 261 N.J.
    Super. 242 (App. Div. 1993).......................... 15

Comeford v. Flagship Furniture Clearance Ctr., 198
    N.J. Super. 514 (App. Div. 1983)..................... 12

Cooper v. Consolidated Rail Corp., 391 N.J. Super. 17
    (App. Div. 2007)..................................... 12

Crescent Park Tenants Association v. Realty Equities
    Corp. of N.Y., 58 N.J. 98 (1971)..................... 15

Delgozzo v. Kenny, 266 N.J. Super. 169 (App. Div.
    1993)................................................ 17

Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88 (2007) ..... 17

Kavanaugh v. Quigley, 63 N.J. Super. 153 (App. Div.
    1960)................................................. 2

Klajman v. Fair Lawn Estates, 292 N.J. Super. 54 (App.
    Div. 1996)........................................... 24

Levchuk v. Jovich, 372 N.J. Super. 149 (Law Div.
    2004)................................................ 15

In re N.J. Board of Public Utilities, 200 N.J. Super.
    544 (App. Div. 1985)................................. 15

O'Shea v. N.J. Sch. Construction Corp., 388 N.J.
    Super. 312 (App. Div. 2006).......................... 15

Patterson v. ExxonMobil Corp., 2008 WL. 425824 (App.
    Div. Feb. 19, 2008).................................. 24

Payton v. New Jersey Turnpike Authority, 148 N.J. 524
    (1997)............................................... 12

Rodriguez v. Luciano, 277 N.J. Super. 109 (App Div. 1994)................................................ 24

Romano v. Maglio, 41 N.J. Super. 561 (App. Div. 1956) .... 11

Smith v. Berg, 1999 WL. 1081065 (E.D. Pa. Dec. 1, 1999) (Da340-44)....................................... 20

State by Commissioner of Transport v. Tenenbaum, 151 N.J. Super. 273 (App. Div. 1977)...................... 15

State v. Steele, 92 N.J. Super. 498 (App. Div. 1966) ..... 12

Staub v. Eastman Kodak Co., 320 N.J. Super. 34 (App. Div. 1999)................................................ 20

Stewart v. Stewart, 59 N.J. 301 (1971) ................... 15

Suarez v Sumitomo Chemical Co., 256 N.J. Super. 683 (Law Div. 1991)........................................ 24

Velez v. Williams, 2006 WL. 1410023 (App. Div. Mar. 23, 2006)............................................. 21

Vogelbacker v. Director, Division of Taxation, 15 N.J. Tax 106 (N.J. Tax 1995)............................. 23

W. Morris Pediatrics, P.A. v. Henry Schein, Inc., 385 N.J. Super. 581 (Law Div. 2004)..................... 17

Whritenour v. Vernon, 2008 WL. 2663696 (App. Div. July 9, 2008)............................................. 22

**DOCKETED CASES**

In re Neurontin Marketing and Sales Practices Litigation, U.S.D.J. Mass. No. 04-10981................ 5

**FEDERAL STATUTES**

Fed. R. Civ. P. 23 ....................................... 17

**MISCELLANEOUS**

R. 4:32 .................................................. 17

R. 4:23-2         ................................... 9, 11, 22

R. 4:23-4 ................................... 9, 11, 22

R. 4:23-5 ........................ 9, 11, 22, 23, 24, 25

R. 2:2-4 ........................................... 11

R. 4:34-1 ........................................ 17

## PRELIMINARY STATEMENT

This appeal is from trial court orders requiring defendants to litigate a previously dismissed, moot case that is in search of a replacement plaintiff. A single plaintiff, International Union of Operating Engineers, Local No. 68 Welfare Fund ("IUOE" or "plaintiff"), commenced this putative class action against over fifty pharmaceutical companies. The trial court properly dismissed the action when IUOE's president refused to appear and -- through IUOE's counsel -- informed the court that he had no intention of ever doing so. Although IUOE is now in the exact same position it was in when the trial court dismissed the case -- it is the only plaintiff and it will never produce its president or prosecute the merits of its claims -- it persuaded the trial court to vacate the dismissal order. The court restored the Complaint solely to afford IUOE the opportunity to act as a placeholder -- a position that does not exist in our legal system -- just long enough for the trial court to decide whether two alleged putative class members newly identified by IUOE can be substituted as plaintiffs (if they file a motion to do so) and prosecute IUOE's lawsuit in lieu of IUOE.

The trial court's decision is erroneous and unprecedented. It exceeds the court's jurisdiction and is contrary to numerous authorities and the fundamental tenet of our legal system that courts will adjudicate disputes only in cases with actual

parties who have "concrete adversity of interest" between them.
Caput v. Mortuum, L.L.C. v. S & S Crown Servs., Ltd., 366 N.J.
Super. 323, 330 (App. Div. 2004).  The erroneous orders
contravened the Court Rules governing a plaintiff's willful
refusal to provide discovery.  And in practical terms, if the
orders are not reviewed now, they never will be.

The trial court's rulings were based on its misconception
and misapplication of the Rules of Court and the procedural and
substantive law of putative class actions, rendering those
decisions impermissible "arbitrary acts," "however conscientious
may have been the judge . . . ."  Kavanaugh v. Quigley, 63 N.J.
Super. 153, 158 (App. Div. 1960).  This Court has a "duty" to
hear this motion and to apply the actual "applicable law" to
prevent a "manifest denial of justice."  Id.

If this Court does not permit defendants to bring an
immediate appeal, they will suffer significant harm that can
never be remedied, and it will have far reaching implications
for this case and beyond.  Defendants will be forced to litigate
an expired lawsuit over which the court lacks jurisdiction, and
if a substitution is sought and permitted, defendants will be
required to expend significant resources and spend years
defending an enormous, complex case that properly should have
been brought as a new lawsuit.  Moreover, the putative class
members cannot provide the discovery that defendants sought and

2

were entitled to from IUOE.  Allowing the decisions of the trial

court to stand would send a message that the laws and rules that

apply to every other litigant in the state of New Jersey will

not apply when plaintiffs simply allege in their complaints that

their claims are brought on behalf of a proposed class.  In the

interests of justice, this Court should grant defendants' motion

for leave to appeal and reverse the trial court's orders

vacating its dismissal order, reinstating the Complaint, and

denying defendants' motion to dismiss with prejudice.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

I.   **PLAINTIFF WILLFULLY REFUSED TO PRODUCE ITS PRESIDENT FOR DEPOSITION.**

IUOE filed this purported class action as the sole named

plaintiff, alleging that defendants[2] engaged in a fraudulent

scheme and conspiracy that caused plaintiff, and others

similarly situated, to overpay for certain specific prescription

drugs named in the Complaint.  Da7-9 at ¶¶ 14-17, 24.

---

[1]  These sections have been combined because the subject matter
of this appeal and the procedural posture of the underlying case
are inextricably linked and therefore presented together.
[2] The following defendants currently remain in this case and
bring the present motion:  TAP Pharmaceutical Products, Inc.,
AstraZeneca LP, AstraZeneca PLC, Sanofi-Synthelabo, Inc.,
Boehringer Ingelheim Corp., Ben Venue Labs, Inc. (and Bedford
Labs, a Division of Ben Venue Labs, Inc.), Roxane Labs, Inc.
(n/k/a Boehringer Ingelheim Roxane, Inc.), Hoffmann-La Roche
Inc., ALZA Corp., Novartis Pharmaceuticals Corp., G.D. Searle
LLC, Sandoz Pharmaceuticals Corp., Takeda Pharmaceutical Co.
Ltd. (f/k/a Takeda Chemical Industries, Ltd., Wyeth, and Wyeth
Pharmaceuticals.  Alpha Therapeutic Corp. is also a current
defendant in this action.

3

In accordance with the Scheduling Order issued by the court-appointed Special Master, the Honorable William G. Bassler, the parties had to complete class certification fact discovery on February 29, 2008. Da38 at ¶ 2. To comply with that Order, defendants sought to depose plaintiff and three of its current or former executives, Dennis, Vincent, and Thomas Giblin. Defendants noticed plaintiff's corporate deposition for February 5, 2008. Defendants served a subpoena and Notice of Deposition on plaintiff's president Dennis Giblin on February 11, 2008, noticing his deposition for February 25, 2008.[3] Da303-08. On February 1, 2008, defendants were forced to adjourn plaintiff's deposition and reschedule it for February 13, 2008, because plaintiff had failed to produce documents to defendants. Da169. During the first two weeks of February, defendants repeatedly sought confirmation as to when plaintiff would produce its documents and identify its corporate designees, but plaintiff failed to respond. Nevertheless, given the impending class certification fact discovery deadline, defendants informed plaintiff that they intended to go forward with plaintiff's

---

[3] On February 11, 2008, defendants also served a deposition notice and subpoena for the testimony of Thomas Giblin, plaintiff's business manager. Defendants delivered a deposition notice and subpoena for Vincent Giblin, national president of the union, to plaintiff's counsel, who requested that defendants hold service of the subpoena while plaintiff conferred with the national union's counsel. See Da289 at ¶3. These individuals have similarly not appeared for deposition.

4

deposition on February 13, 2008.  Da171-177.  On February 12, 2008, plaintiff's counsel unilaterally announced that plaintiff would not appear.  Da179-181.

## II.   PLAINTIFF REPEATEDLY INDICATED ITS INTENTION TO WITHDRAW.

On February 13, 2008, plaintiff's counsel advised Judge Bassler that they had "good reason to believe that Local 68 will be withdrawing from this case as lead plaintiff," referencing discussions they had had with plaintiff's criminal defense counsel Da187 at 14:19-22.[4]  Plaintiff's counsel also advised Judge Bassler that plaintiff would be meeting with criminal counsel to determine its "*final* decision" as to whether it would be withdrawing.  Id. (emphasis added).  Plaintiff's counsel further represented that he would notify Judge Bassler of plaintiff's decision by close of business on February 18, 2008.

---

[4]  Although plaintiff's attorneys have implied that a criminal investigation into IUOE and its principals was a surprising recent development, in fact, quite the opposite is true.  News reports from over a year ago reported on the execution of search warrants at plaintiff's offices and the home of its president.  Da224-38.  In addition, this is not the first time since the criminal investigation began that plaintiff has withdrawn as putative class representative rather than comply with its discovery obligations.  Da187 at 14:7 to 16:8, 17:3-21, 19:1 to 20:8; Da247, n.1.  Just after the criminal investigation began, and also on the eve of its corporate designee deposition, plaintiff withdrew as plaintiff and named class representative for the putative class in another pharmaceutical class action.  See In re Neurontin Mktg. and Sales Practices Litig., U.S.D.J. Mass. No. 04-10981.  See id.  Thus, plaintiff's decision not to participate in discovery is not a new course of action.

Da187 at 14:7 to 16:8, 17:3-21; Da188 at 19:1 to 20:8; Da190 at
29:8-15.

On February 14, 2008, Judge Bassler ordered a moratorium on
all production of documents until February 19, 2008, when the
parties and Judge Bassler would learn plaintiff's final decision
as to withdrawal. Da196 at 51:7-8. Because the parties were
facing a February 29, 2008, deadline for the close of class
certification discovery, the purpose of allowing plaintiff from
February 14th to February 19th to consult with its attorneys was
to permit plaintiff, faced with its discovery obligations, to
determine with finality whether it would comply with its
discovery obligations or would withdraw from the case. Da203 at
20:19-21.

On February 19, 2008, months after the Scheduling Order's
deadline for joining additional parties, plaintiff's counsel
unequivocally informed Judge Bassler and defendants that
plaintiff would withdraw: "the Fund who reported based on their
conversations with the client, they are *going to seek to be
substituted out* as the named representative and have told Mr.
Keefe [plaintiff's counsel in this action], that, who then
referred that to me. *So I'm reporting today that that is the
desire of the client*." Da201 at 12:1 - 7 (emphasis added).
Plaintiff's counsel then reported that plaintiff would file a
motion seeking a stay pending an application to withdraw and

substitute a new named plaintiff, as well as extension of the
current schedule to reflect the grant of any stay.  Da202 at
15:5 to 16:9, Da203 at 21:14-19, 22:21 to 23:5.  Judge Bassler
ordered a continued moratorium on discovery until the March 19,
2008 argument of plaintiff's motion to stay.  Da210 at 46:8-11,
Da209 at 43:8 to 46:4.

On February 26, 2008, apparently having achieved its
immediate objective, *i.e.*, to convince the trial court to excuse
plaintiff from its obligation to comply with defendants'
discovery requests, plaintiff filed a Motion to Stay Discovery
for 90 Days and recast its position to be that there was a
"strong likelihood that Plaintiff will seek to withdraw from
this litigation as the named class representative" and that it
needed additional time to "evaluate whether and in what capacity
Plaintiff can or should remain involved in this litigation."
Da219.[5]  Plaintiff's attempt at revisionism, however, did not
alter the only facts of consequence:  that plaintiff had refused
to produce for deposition its president, a crucial witness, and
had stated repeatedly on the record that it was withdrawing.

---

[5] See also Da217 (plaintiff's intention was described as
"Plaintiff's desire to be substituted as the named
representative plaintiff for the Class at the appropriate
time").

7

On March 2, 2008, defendants opposed plaintiff's motion to stay and moved to dismiss the Complaint. On March 28, 2008, the trial court issued a stay of discovery. Da359 -60.

## III. THE TRIAL COURT DISMISSED THE CASE WITHOUT PREJUDICE.

On April 11, 2008, the trial court held a lengthy oral argument during which it repeatedly gave plaintiff's counsel the opportunity both to state that plaintiff's president would appear for deposition and to consult by telephone with plaintiff's criminal defense counsel. Da409 at 56:5-23; Da411 at 61:6-19. When plaintiff's counsel made clear that plaintiff's president would never appear, the trial court entered an Order granting defendants' motion to dismiss the Complaint without prejudice for the reasons stated on the record, namely, plaintiff's failure to produce it's president for deposition. Da361, Da431-32 at 100:5 to 102:25. In so ordering, the trial court criticized plaintiff's admitted failure to abide by its discovery obligations and produce its pivotal witness:

> They have refused to produce this guy. Never been produced. . . . He's the plaintiff, President of the company, [defendants] have a right to take his deposition. They've noticed it properly. And he's thumbing his nose not only at defendants, but at the Court. I can't countenance that. And I will not.

Da432 at 102:13-20.

8

Pursuant to Rule 4:23-4, the court rule that addresses the "Failure of Party to Attend at Own Deposition" and which authorizes a court to "take any action authorized under paragraphs 1, 2, and 3 of Rule 4:23-2(b)," the trial court dismissed plaintiff's Complaint without prejudice, citing Rule 4:23-2(b)(3) as the appropriate sanction for plaintiff's failure to comply with Rule 4:23-4. Da290 at ¶7, Da318 at 100:25 to 101:1. Apparently borrowing procedure from Rule 4:23-5,[6] the court rule that addresses the failure to produce documents, respond to interrogatories, or appear for a physical or mental examination, the trial court provided plaintiff with a ninety-day grace period in which to cure by producing its president for deposition. Da290, ¶7; Da311-19.

## IV. PLAINTIFF REFUSED TO CURE ITS DISCOVERY DEFICIENCY.

Continuing to "thumb[] his nose" at defendants and the court, plaintiff chose not to cure the deficiency that led to dismissal of its Complaint.[7] Instead, on July 9, 2008, it filed a Motion to Vacate the Court's Order and to Reinstate the Complaint against Defendants. Da291, ¶11. In its brief, plaintiff acknowledged that the trial court had dismissed the

---

[6] Notably, defendants did not assert R. 4:23-5 in their motion, and neither party raised this rule in their briefs or during oral argument. Da362 and Da381-474.
[7] As the trial court stated, "this really was an easy thing to take care of. All he had to do was appear and take the Fifth. I mean, this is ridiculous." Da472 at 78:8-10.

case because plaintiff would not produce its president for deposition. Nevertheless, it flatly stated that it had no intention of producing him. See id. Rather, plaintiff sought to reopen this dismissed case by proposing that two other unions, Plumbers Union Local 690 Health Care Plan ("Local 690") and United Association Local Union 322 Health and Welfare Fund ("Local 322"), might be substituted as proposed class representatives and provide the discovery defendants demanded from IUOE. See id. and Da292, ¶14. On July 24, 2008, defendants opposed plaintiff's motion and moved for dismissal with prejudice.

**V.   THE TRIAL COURT ERRONEOUSLY VACATED THE DISMISSAL ORDER, REINSTATED PLAINTIFF'S COMPLAINT AND DENIED DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE.**

On August 1, 2008, in written orders, Da369-73, and in a decision read by the trial court, Da470-73, 74:24 to 81:20, the trial court erroneously vacated the dismissal order, reinstated plaintiff's Complaint, and denied defendants' motion to dismiss with prejudice. The trial court made those rulings even though (i) nothing had changed since its April 11, 2008 dismissal order; (ii) the court held that plaintiff had failed to provide the required discovery, Da471 at 76:3-5; (see p. 23) and (iii) the court found that the newly proposed potential interveners could not cure the discovery deficiency, Da460 at 55:10-11.

The trial court expressly based its ruling on a facially inapplicable rule, Rule 4:23-5, which by its plain language applies only to discovery deficiencies concerning document requests, interrogatories, and physical or mental examinations, none of which were the deficiencies at issue.  Misapplying that rule to plaintiff's failure to produce its president for deposition, the trial court found "exceptional circumstances," -- a provision that appears only in Rule 4:23-5 and not in Rules 4:23-4 or 4:23-2, which actually apply to a failure to appear for deposition.  With no basis, the court misconstrued that phrase to find that exceptional circumstances existed in this uncertified class action case because of the very nature of the case as an uncertified class action.  On August 21, 2008, defendants filed this motion for leave to appeal.

**LEGAL ARGUMENT**

I.   **INTERLOCUTORY APPELLATE REVIEW IS NECESSARY IN THE INTEREST OF JUSTICE.**

This Court grants leave to appeal "in the interest of justice." R. 2:2-4; Romano v. Maglio, 41 N.J. Super. 561, 568 (App. Div. 1956)(interlocutory review should be granted when "there is some showing of merit and justice calls for . . interference in the cause"), certif. denied, 22 N.J. 574 (1956). The interests of justice mandate immediate appellate review of the trial court's August 1, 2008 Orders.

11

An appellate court "will 'decline[] to interfere with [such] matters of discretion *unless it appears that an injustice has been done*.'" Cooper v. Consolidated Rail Corp., 391 N.J. Super. 17, 23 (App. Div. 2007) (quoting Comeford v. Flagship Furniture Clearance Ctr., 198 N.J. Super. 514, 517 (App. Div. 1983), certif. denied, 97 N.J. 581 (1984)) (emphasis added).

> It is well settled that discretion means *legal* discretion, in the exercise of which the trial judge must take account of the law applicable to the particular circumstances of the case and be governed accordingly. If the judge misconceives the applicable law or misapplies it to the factual complex, in total effect the exercise of legal discretion lacks a foundation and becomes an arbitrary act. When this occurs it is the duty of the reviewing court to adjudicate the controversy in light of the applicable law in order that a manifest denial of justice be avoided.

State v. Steele, 92 N.J. Super. 498, 507 (App. Div. 1966) (emphasis added).

Deference to a trial court's disposition of discovery matters is "inappropriate if the court's determination in drafting its order is based on a mistaken understanding of the applicable law." Payton v. New Jersey Turnpike Auth., 148 N.J. 524, 559 (1997). See also Alk Assocs. v. Mulitmodal Applied Sys., 276 N.J. Super. 310, 315 (App. Div. 1994) ("No deference need be accorded the actions of the trial court . . . where the exercise of discretion is mistaken or arbitrary"). Moreover, this case involves more than a discovery dispute: the court

wrongfully assumed jurisdiction over a moot case that has no real plaintiff.

In vacating the prior order of dismissal and in denying the motion for dismissal with prejudice, the trial court misconstrued and misapplied New Jersey procedural rules and substantive putative class action law and attempted to exercise discretion that it simply did not have. Forcing defendants to litigate a moot case in which the only named plaintiff has effectively withdrawn and refuses to participate in discovery is an unjust result. Excusing the only named plaintiff's willful refusal to participate in discovery in an uncertified class action simply *because* the case is an uncertified class action is manifestly unjust and, with no basis in law, wrongfully mandates the disparate treatment of named plaintiffs in uncertified class actions and plaintiffs in individual actions.

Although the trial court's erroneous rulings technically are interlocutory, they are effectively final. If they are not reviewed now they likely never will be. Here, a conventional "final judgment" would exist only after extensive discovery, a class certification hearing and ruling, summary judgment practice, and a trial sometime years hence. With so much judicial water over the dam, the possibility of a reversal on the grounds that the case never should have been litigated because the trial court improperly failed to dismiss the case

now is slim.   To require defendants to proceed when the very act
of proceeding will both result in the harm sought to be avoided
and diminish substantially the likelihood of a favorable outcome
on a final judgment appeal is fundamentally unjust.   This Court
should grant this motion and reverse the trial court's August 1,
2008 Orders.

II.   **THE TRIAL COURT ERRED IN DENYING DEFENDANTS' MOTION TO
DISMISS WITH PREJUDICE, VACATING THE PRIOR DISMISSAL ORDER,
AND REINSTATING PLAINTIFF'S COMPLAINT.**

   A.   **THE TRIAL COURT ERRED IN REINSTATING A MOOT CASE WITH
NO PLAINTIFF.**

   IUOE's claims became moot on February 19, 2008, when it
communicated its "final decision" to the court and defendants
that it would file a motion seeking a stay pending its
application to withdraw and be substituted out as the named
class representative, rather than abide by its discovery
obligations to produce its president for deposition.   See supra
at 6.   IUOE has never retreated from its final decision, and the
court recognized when it dismissed IUOE's complaint that IUOE's
decision meant it could not proceed as a plaintiff in the case
to prosecute a claim on the merits.[8]

_____

[8] Although IUOE's counsel disputed that IUOE had withdrawn by
representing that it intended to pursue a claim for injunctive
relief after it found a member of the putative class to
prosecute the class allegations, the trial court saw through
counsel's disingenuous and untenable assertion:  "Because the
way I view this, you say, we're not going to proceed . . . with

14

Under well-established New Jersey precedent, if, for any reason, at any time a case becomes moot it must be dismissed. See Stewart v. Stewart, 59 N.J. 301, 304 (1971) (dismissing "the proceedings below and the appeal" as moot because the parties were no longer adversarial). A plaintiff no longer has a "sufficient stake and real adverseness" once its claims have become moot, and, consequently, the court lacks jurisdiction to continue with the suit. See Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107-08 (1971) ("we have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness"); In re N.J. Bd. of Pub. Utils., 200 N.J. Super. 544, 556 (App. Div. 1985); O'Shea v. N.J. Sch. Constr. Corp., 388 N.J. Super. 312, 318 (App. Div. 2006); Levchuk v. Jovich, 372 N.J. Super. 149, 159 (Law Div. 2004); Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242 (App. Div. 1993). Thus, New Jersey courts have recognized that an action must be dismissed when a party withdraws and leaves its opposing side with no adversary at all. State by Comm'r of

---

this plaintiff [as class representative] . . . . But if we are going to proceed [as a litigant], we're not going to produce the deps. Talk about having it both ways, Mr. Haviland . . . . The problem is, you can't say, we're in the case and we ain't going to continue with discovery. You can't do that . . . . If you'[re] not producing him, you're out." Da409 -11 at 57:25 to 59:25, 60:11-12.

Transp. v. Tenenbaum, 151 N.J. Super. 273, 279-80 (App. Div.
1977) (where only party appealing a decision subsequently moved
to withdraw its appeal, case was properly dismissed); see also
Cherry Hill Tp. v. U.S. Life Ins. Co. of N.Y., 176 N.J. Super.
254, 261 (N.J. Tax. 1980).[9]  Where, as here, the plaintiff has
effectively withdrawn because it cannot prosecute the claims of
its lawsuit, there is no adversity of interest, the case between
the plaintiff and defendants is moot, and dismissal is required.
New Jersey courts will not allow a case to continue when the
issues have become "hypothetical" or "there is no concrete
adversity of interest between the parties."  Caput, 366 N.J.
Super. at 330.

   Although no New Jersey decision has addressed when putative
class action lawsuits are subject to dismissal for mootness, the
United States Supreme Court held in Board of School
Commissioners of Indianapolis v. Jacobs, 420 U.S. 128, 129
(1975), that unless the case or controversy is one that is
"capable of repetition yet evading review," it is moot and must
immediately be dismissed.  Id. ("a case or controversy no longer
exists between the named plaintiffs and the petitioners . . .

---

[9] This rule of law is widely recognized.  See, e.g., Remus Joint
Venture v. McAnally, 116 F.3d 180, 185 (6th Cir. 1997) ("There
can be no doubt that an action is mooted if the plaintiff
voluntarily withdraws.  The conclusion is so clear that only
rare circumstances will create a need to express it").

The case is therefore moot unless it was duly certified as a class action pursuant to Fed. R. Civ. P. 23"). Cf. E. Texas Motor Freight Sys. Inc. v. Rodriquez, 431 U.S. 395, 406 n.12 (1977) ("Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives").[10]

Thus, the Third Circuit and every other circuit to address whether a court can assert jurisdiction over a moot putative class action by permitting a new plaintiff from the proposed class to be substituted into the case has held that the expiration of the named plaintiff's claim required dismissal for mootness, thereby barring any proposed substitution.[11] See Lusardi v. Xerox Corp., 975 F.2d 964, 973-75 (3d Cir. 1992); Bass v. Butler, 116 F. Appx. 376, 385, 2004 WL 2712942, at *8 (3d Cir. 2004); Da345, 353 Brown v. Phila. Hous. Auth., 350 F.3d 338, 343 (3d Cir. 2003); Davis v. Thornburgh, 903 F.2d 212, 222

---

[10] Because R. 4:32 is modeled after Fed. R. Civ. P. 23, New Jersey courts have consistently looked to the federal counterpart for guidance. Delgozzo v. Kenny, 266 N.J. Super. 169, 188 (App. Div. 1993); see also Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 103 (2007); W. Morris Pediatrics, P.A. v. Henry Schein, Inc., 385 N.J. Super. 581, 594 (Law Div. 2004).
[11] The notion of "substitution" itself is inapplicable on these facts under the governing Rule of Court. See R. 4:34-1 to -4 (identifying limited permissible grounds for substitution, specifically death, mental incapacity, transfer of interest, and change in public officers).

(3d Cir. 1990), aff'd, Davis v. Cohen, 498 U.S. 970 (1990); see
also West v. Health Net, 217 F.R.D. 163, 177-78 (D.N.J. 2003)
("if the claims of the named plaintiffs become moot when the
class certification motion has not yet been filed in a putative
class action, the Court must dismiss the entire action,
including its class claims, because there is no plaintiff
(either named or unnamed) who can assert a justiciable claim
against any defendant") (internal quotation marks omitted);
Parameswaran v. Mysorekar, No. 05-CV-3162, 2006 U.S. Dist. LEXIS
68307, at *8-9 (E.D.N.Y. Sept. 22, 2006) Da355, 356-57
(dismissing a putative class action where no class motion was
filed and denying plaintiff's request for time to permit a
substitution).[12]

---

[12] See also Bertrand v. Maram, 495 F.3d 452, 455 (7th Cir. 2007)
(when named plaintiffs' claims became moot prior to class
certification, court dismissed putative class action); Barnes v.
First Am. Title Inc., 473 F. Supp. 2d 798, 801-02 (N.D. Ohio
2007) (refusing to permit putative class representatives to
amend complaint to withdraw their claims and substitute new
class representatives because "proposed new plaintiffs [we]re
not current parties to the action prior to a ruling on class
certification"); Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th
Cir. 1987) (dismissing, before class motion filed, claims of
putative class due to mootness of named plaintiff's individual
claims and denying motion of putative class member to
intervene); Inmates of Lincoln Intake & Det. Facility v.
Boosalis, 705 F.2d 1021, 1023 (8th Cir. 1983) (dismissing case
while class motion was pending and denying substitution, holding
that, "[a] named plaintiff must have a personal stake in the
outcome of the case at the time the district court rules on
class certification in order to prevent mootness of the
action"); Rocky v. King, 900 F.2d 864, 868-69 (5th Cir. 1990)

The immediate termination of the pending suit is the just and correct outcome.  For merits purposes, courts treat putative class actions as individual lawsuits between the named plaintiff and defendant because the court has not yet determined -- and may never determine -- that class treatment is appropriate. See, e.g., Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998) (holding that prior to certification, the claims of putative class members who are not named plaintiffs are not actually before the court), abrogated on other grounds, Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000); Shelton v. Pargo, Inc., 582 F.2d 1298, 1304 (4th Cir. 1978) ("[C]lass actions are not created by mere allegations in a complaint. It is the actual certification of the action as a class action under 23(c) and (a) which alone gives birth to the class as a jurisprudential entity, changes the action from an individual suit with class allegations . . . and provides a sharp line of demarcation between an individual action seeking to become a class action and an actual class action."); Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc., 958 F.

---

(dismissing case while class motion was pending and denying substitution, concurring with the "number of other courts of appeals [which] have held a complaint filed in the form of a class action to be moot where the named plaintiff's individual claim became moot before denial of class certification").

Supp. 947, 961 (D. Del. 1997); see also Smith v. Berg, 1999 WL
1081065, at *3 (E.D. Pa. Dec. 1, 1999) (Da340-44).

For the same reasons, putative class members are not
considered "parties for purposes of substitution." Barnes v.
First Am. Title Ins. Co., 473 F. Supp. 2d 798, 801 (N.D. Ohio
2007). See also Smith v. Berg, 1999 WL 1081065 Da340(holding in
RICO putative class action that court can consider only the
predicate acts related to the named plaintiff because the
putative class members are not parties) (Da340-44).

Thus, the dismissal of this putative class action cannot
prejudice a proposed class member such as Local 690 or 322.
They are strangers to the case;  indeed, they have never
litigated anything in it.  Their claims were not adjudicated in
this case and as non-parties they are not bound by the court's
rulings.  They are free to pursue their own suits individually
or even to attempt to bring another suit on behalf of a class.[13]
Rule 4:32-2(e) reflects these policies, which like the federal

---

[13] The putative class members cannot be prejudiced by the statutes
of limitations because they were tolled.  Da445-46 at 25:8-20,
27:18-25.  See Staub v. Eastman Kodak Co., 320 N.J. Super. 34,
58 (App. Div. 1999).  If anyone is prejudiced here, it is
defendants who would be compelled in a continuation of this
action to participate in duplicative discovery in state court,
when the Class Action Fairness Act and other federal law affords
them the right to have a new case heard in federal court as part
of an ongoing, organized MDL proceeding.  Defendants' right to
defend a lawsuit in an appropriate forum is not cognizable
prejudice to plaintiff.

rule, requires court oversight only for settlement or voluntary dismissal "of a *certified* class . . . ."  (emphasis added).

IUOE cannot shoehorn Local 690 and Local 322 into this dismissed case under the false pretext[14] that their proposed substitution would cure IUOE's discovery deficiencies and by pretending that none of the parties, factual allegations, or claims would be altered or that defendants will not be unduly prejudiced.  A plaintiff's attempted "[i]njection of absent 'class' members with live individual claims into an otherwise dead case" cannot justify the court's retention of jurisdiction. <u>Lusardi</u>, 975 F.2d at 984.  As a result of the trial court's erroneous and extraordinary orders, defendants are now defending themselves in a case with no live claims, in direct contravention of the basic tenets of our legal system.  This Court should reverse those Orders.

**B.   THE TRIAL COURT HAD NO AUTHORITY TO VACATE THE DISMISSAL ORDER AND REINSTATE THE CASE BECAUSE <u>RULE</u> 4:23-5 DOES NOT APPLY TO THE DEFICIENCY AT ISSUE.**

"Failure of a party to attend his or her deposition is governed by R. 4:23-4."  <u>Velez v. Williams</u>, 2006 WL 1410023, *4 (App. Div. Mar. 23, 2006) Da337 - 39.  Rule 4:23-4 "permits a judge to impose any of the sanctions authorized by R. 4:23-

---

[14] <u>See</u> Da460 at 55:10-14 (trial court rejects IUOE's counsel's assertion that Locals 690 and 322 can cure IUOE's discovery deficiency of failing to produce its president for deposition).

21

2(b)."  Id.  New Jersey courts have recognized that dismissal of
a complaint with prejudice under Rule 4:23-2(b) for failure to
attend a party's own deposition pursuant to Rule 4:23-4 is an
appropriate sanction.  See, e.g., Whritenour v. Vernon, 2008 WL
2663696, *3 (App. Div. July 9, 2008) Da321, 323 - 24.  Rules
4:23-2(b) and 4:23-4 do not give the court discretion to
reinstate a complaint on the grounds of "exceptional
circumstances."  In fact, that language does not appear,
explicitly or implicitly, in those rules.

In its decision, the trial court did not cite to either of
the applicable rules, 4:23-4 or 4:23-2(b).  Instead, the trial
court relied exclusively on Rule 4:23-5, a rule that on its face
does not apply to the specific deficiency at issue:  plaintiff's
willful failure to appear for deposition.  Da470-71 at 75:9 to
76:8.  The trial court expressly based its decision on the
"exceptional circumstances" provision of Rule 4:23-5.  Da471 at
76:7-8 ("I find these are exceptional circumstances.  That's the
whole basis for my decision.") (emphasis added).

Having based its decision wholly on the provisions of a
rule that does not apply to the circumstances of this case, the
trial court, "based on a misunderstanding of the applicable
law," erroneously exercised discretion it did not have.  Payton,
148 N.J. at 559.  Fulfilling its "duty" to "adjudicate the
controversy in light of the applicable law" to avoid "a manifest

denial of justice," Steele, 92 N.J. Super. at 507, this Court
should grant defendants' motion and should reverse the trial
court's August 1, 2008 Orders.

    **C.    EVEN IF IT WERE APPROPRIATE TO APPLY RULE 4:23-5, THE TRIAL COURT ERRED IN FINDING "EXCEPTIONAL CIRCUMSTANCES."**

Rule 4:23-5(a)(2) provides that a motion to dismiss with
prejudice "shall be" granted unless "either the demanded and
fully responsive discovery has been provided or exceptional
circumstances are demonstrated."  A "court's discretion not to
grant a 'with prejudice' motion under [Rule 4:23-5(a)(2)] is
severely circumscribed."  Vogelbacker v. Director, Div. of
Taxation, 15 N.J. Tax 106, 117 (N.J. Tax 1995).

    The trial court found that plaintiff had failed to provide
the requested discovery. Da471 at 76:3-5.  The trial court
nevertheless denied defendants' motion to dismiss with
prejudice, misapplying Rule 4:23-5 and erroneously holding that
there were "exceptional circumstances":

>     This is why I find it to be exceptional.  Look at Bass
> versus Butler, Third Circuit 1992 . . . .
>
>     Because no class has been certified here, and
> none has been certified in my case, if [plaintiff's]
> claim fails the entire action must be dismissed.  See
> Board of Commissioners v. Jacobs, 420 U.S. 120, 129 to
> 130 (1975), a Supreme Court of the United States case
> holding that when the named plaintiffs are dismissed
> from the class action and the class itself has not
> been properly certified, the complaint of the class
> must be simultaneously dismissed.

> Now, that's an exceptional circumstance, as far
> as this Court is concerned. This case has been going
> on for years, it's been in Boston, it's been in
> federal courts, it's been up and down.  And now, on a
> technical procedural ground, should this Court dismiss
> the entire case and make them start all over again?
>
>               *          *          *
>
> . . . But the bottom line is a lot of years and
> a lot of efforts, motions, time, expense would indeed
> be lost . . . .  And that's an exceptional
> circumstance.

Da471 at 76:11 to 77:17.

Even assuming that the trial court correctly applied Rule

4:23-5 to the circumstances of this case -- and it did not --,

case law does not support its extrapolation of "exceptional

circumstances."  In fact, "the category of circumstances

qualifying as 'exceptional' for these purposes is narrow."

Patterson v. ExxonMobil Corp., 2008 WL 425824, *7 (App. Div.

Feb. 19, 2008) Da374, 378-79.  To meet the "exceptional

circumstances" standard, "'there would have to be proved the

existence of external factors such as poor health or emergency

which substantially interfered with the party's ability to meet

the discovery obligations.'"  Rodriguez v. Luciano, 277 N.J.

Super. 109, 112 (App Div. 1994)(quoting Suarez v Sumitomo Chem.

Co., 256 N.J. Super 683, 689 (Law Div. 1991)).  See, e.g.,

Klajman v. Fair Lawn Estates, 292 N.J. Super. 54, 61 (App. Div.

1996)("age and disabilities could afford the necessary

justification for denying the motion to dismissal with

prejudice").

There is no support for the trial court's finding that if it followed the decisions of the United States Supreme Court and the Third Circuit that require dismissal, "exceptional circumstances" would exist under Rule 4:23-5 because the putative class members would have to "start all over again."  To the contrary, the dismissal of putative class actions due to the failure of the claim of the named plaintiff prior to certification is not only unexceptional, it is *commonplace*.  See *supra* at 17, 18.  Moreover, the court's premise that the putative class members would be harmed by having to start over is faulty.  They never began or participated in this case that was merely captioned as a class action and were not parties to it.  See *supra* at 19-20.

Rule 4:23-5 does not create jurisdiction or grant the trial court the broad discretion that it assumed.  Because the trial court misconstrued the language of the inapplicable Rule 4:23-5, its August 1, 2008 Orders should be reversed and defendants' motion to dismiss with prejudice should be granted.

### CONCLUSION

For all of the foregoing reasons, this Court should grant defendants' motion for leave to appeal and reverse the trial court's August 1, 2008 Orders.

25

Respectfully submitted,


*Counsel for Defendant*
*TAP Pharmaceutical Products,*
*Inc.*

**JONES DAY**


_____ /s/  Lee Ann Russo _____
Lee Ann Russo
Adam Wiers
77 West Wacker
Chicago, IL 60601-1692
Tel.:  (312) 782-3939
Fax:  (312) 782-8585

*Counsel for Defendant*
*AstraZeneca LP and*
*AstraZeneca PLC*

**MCCARTER & ENGLISH, LLP**


_____ /s/  Andrew T. Berry _____
Andrew T. Berry
David J. Cooner
Katie A. Gummer
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Tel.:  (212) 450-4000
Fax:  (212) 450-3800


**RIKER, DANZIG, SCHERER,**
**HYLAND & PERRETTI, LLP**


_____ /s/ Anne Patterson _____
Kelly Crawford
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Tel.:  (973) 538-0800
Fax:  (973) 538-1984

**DAVIS POLK & WARDWELL**


_____ /s/ D. Scott Wise _____
D. Scott Wise
Kimberley D. Harris
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
Fax: (212) 450-3800

*Counsel for Defendant*
*Sanofi-Synthelabo, Inc.*

*Counsel for Defendants*
*Boehringer Ingelheim Corp.,*
*Ben Venue Labs, Inc. (and*
*Bedford Labs, a Division of*
*Ben Venue Labs, Inc.) and*
*Roxane Labs, Inc.*

**SHOOK HARDY & BACON, LLP**

**KIRKLAND & ELLIS, LLP**

_____ /s/ James P. Muehlberger
James P. Muehlberger
Blake Pryor
2555 Grand Boulevard
Kansas City, MO 64108
Tel.:  (816) 474-6550
Fax:  (816) 421-5547

_____ /s/  Helen Witt
Helen Witt
Maria Pellegrino Rivera
200 East Randolph Drive, Suite 600
Chicago, IL 60601
Tel.:  (312) 861-2000
Fax:  (312) 861-2200

**CONNELL FOLEY, LLP**

**SILLS CUMMIS & GROSS, P.C.**

_____ /s/  Liza Walsh
Liza M. Walsh
Marc D. Haefner
Christine I. Gannon
85 Livingston Avenue
Roseland, NJ 07068
Tel.:  (973) 535-0500
Fax:  (973) 535-9217

_____ /s/  Andrew W. Schwartz
Andrew W. Schwartz
The Legal Center
One Riverfront Plaza
Newark, NJ 07102
Tel.:  (973) 643-7000
Fax:  (973) 643-6500

*Counsel for Defendant*
*Hoffmann-La Roche, Inc.*

*Counsel for Defendant*
*ALZA Corporation*

**KING & SPALDING LLP**

**PATTERSON BELKNAP**

_____/s/   Ann Malekzadeh_____
Grace Rodriguez
Ann Malekzadeh
Simeon Schopf
1700 Pennsylvania Avenue, N.W.,
Suite 200
Washington, DC 20006-4706
Tel.:  (202) 737-0500
Fax:  (202) 626-3737

_____/s/   Andrew D. Schau_____
William F. Cavanaugh, Jr.
Andrew D. Schau
Avenue of the Americas
NewYork, NY 10036-6710
Tel.:  (212) 336-2000
Fax:  (212) 336-2222

**GIBBONS, P.C.**

**McELROY, DEUTSCH**
**MULVANEY & CARPENTER, LLP**

_____/s/   Bruce Levy_____
Bruce Levy
Janet Costello
One Gateway Center
Newark, NJ 07102-5310
Tel.:  (973) 596-4500
Fax:  (973) 596-0545

_____/s/   Robert C. Scrivo_____
Robert C. Scrivo
Walter Timpone
1300 Mt. Kemble Avenue
P.O. box 2075
Morristown, NJ 07962-2075
Tel.:  (973) 993-8100
Fax:  (973) 425-0161

*Counsel for Defendant*
*Novartis Pharmaceuticals Corp.*

*Counsel for Defendant*
*G.D. Searle LLC*

**KAYE SCHOLER LLP**

**MORGAN LEWIS & BOCKIUS, LLP**

_____/s/  Jane Parver_____
Jane Parver
Richard DeSevo
425 Park Avenue
New York, NY 10022-3598
Tel.:  (212) 836-8000
Fax:  (212) 836-8689

_____/s/  Jamie L. Ghen_____
Jamie L. Ghen
Jack Dodds
1701 Market Street
Philadelphia, PA 19103
Tel.:  (215) 963-5000
Fax:  (215) 963-5001

**GRAHAM CURTIN P.A.**

**MORGAN LEWIS & BOKIUS, LLP**

_____/s/  Thomas Curtin_____
Thomas Curtin
Kathleen Fennelly
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991
Tel.:  (973) 292-1700
Fax:  (973) 292-1767

_____/s/  Frank Testa_____
Frank Testa
502 Carnegie Center
Princeton, NJ 08540-6241
Tel.:  (609) 919-6600
Fax:  (609) 919-6701

*Counsel for Defendants*
*Takeda Pharmaceutical Company*
*Limited (f/k/a Industries,*
*Ltd.)*

**JENNER & BLOCK, LLP**


        /s/   Robert Stauffer
Robert R. Stauffer
Nada Djordjevic
330 North Wabash Avenue
Chicago, IL 60611-7603
Tel.:  (312) 222-9350
Fax:  (312) 527-0484


**BALARD SPAHR ANDREWS
& INGERSOLL, LLP**


        /s/   Joe Kenney
Joe Kenney
John Kearney
Plaza 1000, Suite 500
Main Street
Voorhees, NJ 08043-4636
Tel.:  (856) 761-3400
Fax:  (856) 761-1020


*Counsel for Defendants*
*Wyeth and Wyeth Pharmaceuticals*


**OBER, KALER, GRIMES & SHRIVER**


        /s/   Kelly Davidson
Kelly Davidson
Elissa F. Borges
120 East Baltimore Street,
Suite 800
Baltimore, MD 21202-1643
Tel.:  (410) 685-1120
Fax:  (410) 547-0699


**HERTEN, BURSTEIN, SHERIDAN,
CEVASCO, BOTTINELLI,
LITT & HARZ, LLC**


        /s/   Thomas J. Herten
Thomas J. Herten
Thomas S McGuire
21 Main Street
Court Plaza South
Hackensack, NJ 07601-7095
Tel.:  (201) 342-6000
Fax:  (201) 342-6611

# Exhibit B

Donald E. Haviland, Jr., Esquire
Adam S. Levy, Of Counsel
Michael J. Lorusso, Esquire
The Haviland Law Firm
112 Haddontowne Court, Suite 202
Cherry Hill, NJ 08034
Telephone: (856) 354-0030

John E. Keefe, Jr., Esquire
Stephen Sullivan, Esquire
Keefe Bartels
830 Broad Street
Shrewsbury, NJ 07702
Telephone: (732) 224-9400
Facsimile: (732) 224-9494

CO-LEAD COUNSEL FOR PLAINTIFF AND THE CLASS

| | |
|---|---|
| International Union of Operating Engineers, Local No. 68 Welfare Fund (an unincorporated trust)<br><br>Plaintiff,<br><br>v.<br><br>AstraZeneca PLC; et al.<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MONMOUTH COUNTY<br><br>CIVIL ACTION NO. MON-L-3136-06<br><br>**CERTIFICATIN OF THOMAS J. MCNULTY** |

I, Thomas J. McNulty, being of full age, certify as follows:

1.      I am the Fund Administrator for Plumbers Local Union No. 690 Health Plan (Health Plan), and in such capacity, I am in charge of the administration of health benefits for the participants and beneficiaries of the Health Plan. As such, I am familiar with the facts set forth in this Certification.

2.      On July 7, 2008, I certified that the Health Plan has agreed to serve as a class representative in this matter and would undertake the duties and responsibilities set forth in my July 7, 2008, Certification, which I incorporate by reference as if fully stated herein.

3.      During the time period alleged in the Complaint in this matter, the Health Plan has reimbursed participants and beneficiaries for drugs they purchase based on the published Average Wholesale Prices ("AWPs") for said drugs. For instance, the brands

of these drugs include, but are not limited to, the following: Venoglobulin-S (manufactured and sold by Defendant Alpha Therapeutic), Cytovene (Hoffman-LaRoche), Nexium (AstraZeneca LP and AstraZeneca PLC), Plavix (Sanofi-Synthelabo Inc.), Diovan (Novartis Pharmaceuticals Corp), Actos (Takeda Pharmaceutical Co. Ltd.), Protonix (Wyeth), and Prevacid (TAP Pharmaceutical Products). A review of the Health Plan's reimbursement records is continuing; however, I am aware that over the same time period alleged in the Complaint, the Health Plan has reimbursed for numerous additional drugs, which I believe to have also been based on those drugs' published AWPs, including both generic and brand name drugs, that are not specifically named herein, many of which were manufactured and sold by one or more Defendants and/or their predecessors, subsidiaries, or affiliates, and/or alleged co-conspirators of one or more Defendants.

I certify that the foregoing statements made by me are true and accurate to the best of my knowledge and belief. I understand that if any statements are willfully false, I am subject to punishment.

Dated: May 5, 2009

Thomas J. McNulty

Donald E. Haviland, Jr., Esquire
Adam S. Levy, Of Counsel
Michael J. Lorusso, Esquire
The Haviland Law Firm
112 Haddontowne Court, Suite 202
Cherry Hill, NJ 08034
Telephone: (856) 354-0030

CO-COUNSEL FOR PLAINTIFF AND THE CLASS

| | |
|---|---|
| International Union of Operating Engineers, Local No. 68 Welfare Fund (an unincorporated trust)<br><br>                                        Plaintiff,<br><br>       v.<br><br>AstraZeneca PLC; et al.<br><br>                                        Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION:  MONMOUTH COUNTY<br><br>CIVIL ACTION NO. MON-L-3136-06<br><br>**CERTIFICATION OF STEPHEN T. SULLIVAN, JR.** |

I, Stephen T. Sullivan, Jr., of full age, hereby certify:

1.      I am an attorney-at-law of the State of New Jersey and am an associate in the law firm of Keefe Bartels Clark.  This law firm represents the plaintiff in the above-captioned litigation.  As such, I am fully familiar with the facts contained in this Certification.

2.      Pursuant to *R.* 1:4-4( c), I certify that the signature of Thomas J. McNulty is true and accurate.  Upon the request of the Court or any party, I will file the Stipulation with Mr. McNulty's original signature with the Court.

       I certify that the statements made by me are true and accurate to the best of my knowledge and belief.  I understand that, if any of these statements are wilfully false, I am subject to punishment.

Date: 5-12-2009                                    Stephen T. Sullivan, Jr.

Donald E. Haviland, Jr., Esquire
Adam S. Levy, Of Counsel
Michael J. Lorusso, Esquire
The Haviland Law Firm
112 Haddontowne Court, Suite 202
Cherry Hill, NJ 08034
Telephone: (856) 354-0030

John E. Keefe, Jr., Esquire
Stephen Sullivan, Esquire
Keefe Bartels
830 Broad Street
Shrewsbury, NJ 07702
Telephone: (732) 224-9400
Facsimile: (732) 224-9494

CO-LEAD COUNSEL FOR PLAINTIFF AND THE CLASS

| | |
|---|---|
| International Union of Operating Engineers, Local No. 68 Welfare Fund (an unincorporated trust) <br><br> Plaintiff, <br><br> v. <br><br> AstraZeneca PLC; et al. <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MONMOUTH COUNTY <br><br> CIVIL ACTION NO. MON-L-3136-06 <br><br> CERTIFICATIN OF JOHN P. SHALOO |

I, John P. Shaloo, being of full age, certify as follows:

1.      I am the Fund Administrator for UA Local Union No. 322 Health and Welfare Fund ("Health Fund"), and in such capacity, I am in charge of the administration of health benefits for the participants and beneficiaries of the Health Fund.  As such, I am familiar with the facts set forth in this Certification.

2.      On July 7, 2008, I certified that the Health Fund has agreed to serve as a class representative in this matter and would undertake the duties and responsibilities set forth in my July 7, 2008, Certification, which I incorporate by reference as if fully stated herein.

3.      During the time period alleged in the Complaint in this matter, the Health Fund has paid for participants' and beneficiaries' drugs based on the published Average Wholesale Prices ("AWPs") for said drugs.  For instance, the brand name drugs include,

but are not limited to, the following: Alupent, Atrovent and Combivent (manufactured and sold by Defendant Boehringer Ingelheim, Corp.), Viadur (Alza Corp.), and Synarel (G.D. Searle).   A review of the Health Fund's reimbursement records is continuing; however, I am aware that over the same time period alleged in the Complaint, the Health Fund has paid for numerous additional drugs, which I believe to have also been based on those drugs' published AWPs,  including both generic and brand name drugs, that are not specifically named herein, many of which were manufactured and sold by one or more Defendants and/or their predecessors, subsidiaries, or affiliates, and/or alleged co-conspirators of one or more Defendants.

I certify that the foregoing statements made by me are true and accurate to the best of my knowledge and belief.  I understand that if any statements are willfully false, I am subject to punishment.

Dated:  May 8, 2009

John P. Shaloo

Donald E. Haviland, Jr., Esquire
Adam S. Levy, Of Counsel
Michael J. Lorusso, Esquire
The Haviland Law Firm
112 Haddontowne Court, Suite 202
Cherry Hill, NJ 08034
Telephone: (856) 354-0030

CO-COUNSEL FOR PLAINTIFF AND THE CLASS

| | |
|---|---|
| International Union of Operating Engineers, Local No. 68 Welfare Fund (an unincorporated trust) | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MONMOUTH COUNTY |
| Plaintiff, | CIVIL ACTION NO. MON-L-3136-06 |
| v. | **CERTIFICATION OF STEPHEN T. SULLIVAN, JR.** |
| AstraZeneca PLC; et al. | |
| Defendants. | |

I, Stephen T. Sullivan, Jr., of full age, hereby certify:

1.      I am an attorney-at-law of the State of New Jersey and am an associate in the law firm of Keefe Bartels Clark. This law firm represents the plaintiff in the above-captioned litigation. As such, I am fully familiar with the facts contained in this Certification.

2.      Pursuant to R. 1:4-4( c), I certify that the signature of John P. Shaloo is true and accurate. Upon the request of the Court or any party, I will file the Stipulation with Mr. Shaloo's original signature with the Court.

I certify that the statements made by me are true and accurate to the best of my knowledge and belief. I understand that, if any of these statements are wilfully false, I am subject to punishment.

Date: _5-12-2009_                                   _Stephen T. Sullivan_
                                                            Stephen T. Sullivan, Jr.

# Exhibit C

THE HAVILAND LAW FIRM
112 Haddontowne Court, Suite 202
Cherry Hill, NJ 08034
Telephone: (856)354-0030
Haviland@havilandlaw.com

KEEFE BARTELS CLARK
170 Monmouth Street
Red Bank, NJ 07701
Telephone: (732)224-9400
jkeefe@keefebartels.com

Counsel for the Plaintiff-Respondent and the Class

SUPREME COURT OF NEW JERSEY

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 68 WELFARE FUND,<br><br>Plaintiff,<br>v.<br><br>ASTRAZENECA PLC; ASTRAZENCE PHARMACEUTICALS LP; ASTRAZENECA LP; ZENECA, INC.; TAP PHARMACEUTICAL PRODUCTS, INC.; ABBOTT LABORATORIES; (Additional Defendants continued on following page)<br><br>Defendants. | SUPREME COURT OF NEW JERSEY<br>Docket Number: 64,300<br><br>ON APPEAL FROM MAY 1, 2009 ORDER OF THE SUPERIOR COURT OF NEW JERSEY, APPELLATE DIVISION, Docket No. A-0605-08T2<br><br>SAT BELOW:<br><br>HON. MICHAEL WINKELSTEIN<br>HON. JOSE L. FUENTES<br>HON. WILLIAM P. GILROY |

PLAINTIFF-RESPONDENT'S BRIEF IN OPPOSITION TO
MOTION FOR LEAVE TO APPEAL

Of Counsel and on the Brief:

Donald E. Haviland, Jr., Esq.
John E. Keefe, Jr., Esq.

On the Brief:

Adam S. Levy, Esq.
Michael J. Lorusso, Esq.
Stephen T. Sullivan, Jr., Esq.
Kent M. Williams, Esq.

GLAXOSMITHKLINE, PLC;
SMITHKLINE BEECHAM
CORPORATION; GLAXO
WELLCOME,INC.; PHARMACIA
CORPORATION; PHARMACIA &
UPJOHN, INC.; MONSANTO COPANY;
G.D. SEARLE COMPANY; SANOFI-
SYNTHLABO INC.; JOHNSON &
JOHNSON; ALZA CORPORATION;
CENTOCOR, INC; ORTHO BIOTECH,
INC.; ALPHA THERAPEUTIC
CORPORATION; HOFFMAN LA-ROCHE
INC.; AMGEN, INC.; AVENTIS BEHRING
LLC; HOECHST MARION ROUSSEL,
INC.; CENTEON, LLC; ARMOUR
PHARMACEUTICALS; BAXTER
INTERNATIONAL INC.; BAZTER
HEALTHCARE CORPORATION;
IMMUNO-US., INC.; BOEHRINGER
INGELHEIM CORPORATION; BEN
VENUE LABORATORIES, INC;
BEDFORD LABORATORIES; ROXANE
LABORATORIES, INC; BRISTOL-
MYERS SQUIBB COMPANY;
ONCOLOGY THERAPEUTICS
NETWORK CORPORATION;
APOTHECON, INC.; DEY, INC.;
FUJISAWA PHARMACEUTICAL CO.,
LTD; FUJISAWA HEALTHCARE, INC.;
FUJISAWA USA, INC; NOVARTIS
INTERNATIONAL AG; NOVARTIS
PHARMACEUTICAL CORPORATION;
SANDOZ PHARMACEUTICAL
CORPORATION; SCHERING-PLOUGH
CORPORATION; WARRICK
PHARMACEUTICALS CORPORATION;
SICOR, INC; GENSIA SICOR
PHARMACEUTICALS, INC; WYETH;
WYETH PHARMACEUTICALS; SAAD
ANTOUN, MD; STANLEY C. HOPKINS,
MD; ROBERT A BERKMAN, MD; DOES
1-50; ABC CORPORATIONS 1-50; AND
XYZ PARTNERSHPS; AND
ASSOCIATIONS 1-50.
                        **Defendants.**

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
Docket Number: A-605-08T2

ON APPEAL FROM AUGUST 1, 2008
ORDERS OF THE SUPERIOR COURT
OF NEW JERSEY, LAW DIVISION,
Docket No.: MON-L-3136-06

SAT BELOW:

HONORABLE LOUIS F. LOCASCIO,
J.S.C.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . .   1

COUNTERSTATEMENT OF FACTS AND PROCEDURAL HISTORY . . . . . .   3

    I.   PLAINTIFF DID NOT WILLFULLY REFUSE TO PRODUCE ITS
         PRESIDENT FOR DEPOSITION. . . . . . . . . . . . .   3

   II.  PLAINTIFF DID NOT INDICATE ITS INTENT TO WITHDRAW
         FROM THE CASE. . . . . . . . . . . . . . . . . .   5

  III. THE TRIAL COURT ADOPTED THE PROCEDURE SET FORTH
         IN R. 4:23-5, TO DISMISS THE CASE WITHOUT PREJUDICE
         AND TO ALLOW PLAINTIFF THE OPPORTUNITY TO REINSTATE
         THE COMPLAINT, BASED UPON DEFENDANTS' INVOCATION OF
         THE RULE TO REDRESS CLAIMED WRITTEN DISCOVERY
         DEFICIENCIES AND DEFENDANTS' CONSENT TO
         THE PROCEDURE. . . . . . . . . . . . . . . . . .   6

   IV.  PLAINTIFF CURED THE OUTSTANDING CLASS DISCOVERY
         DEFICIENCIES BY PROFFERING TWO REQUISITE SUBSTITUTE
         CLASS REPRESENTATIVES WHO STAND READY, WILLING
         AND ABLE TO PROVIDE COMPLETE WRITTEN DISCOVERY
         RESPONSES AND DEPOSITIONS. . . . . . . . . . . .   8

    V.  THE TRIAL COURT ACTED WITHIN ITS DISCRETION, AND IN
         ACCORDANCE WITH ITS OVERALL CASE MANAGEMENT OF THIS
         NEARLY SEVEN-YEAR OLD CLASS ACTION MATTER, BY
         REINSTATING THE COMPLAINT UPON THE PROFFER OF
         ADDITIONAL CLASS REPRESENTATIVES. . . . . . . . .  10

   VI.  THE APPELLATE DIVISION CORRECTLY ACCEPTED THE
         TRIAL COURT'S APPLICATION OF THIS COURT'S RULES. .  11

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . .  14

    I.   THIS COURT SHOULD NOT GRANT LEAVE TO APPEAL BECAUSE
         THE APPELLATE DIVISION CORRECTLY FOUND THAT THE
         TRIAL COURT DID NOT ABUSE ITS DISCRETION BY
         ADOPTING THE PROCEDURE SET FORTH IN RULE 4:23-5
         TO THE INSTANT SITUATION . . . . . . . . . . . .  14

        A.   THE APPELLATE DIVISION PROPERLY AFFIRMED
            THE TRIAL COURT'S DECISION ISSUING A "JUST"
            ORDER AND FINDING "EXCEPTIONAL
            CIRCUMSTANCES" . . . . . . . . . . . . . . .  16

B.    THE APPELLATE DIVISION CORRECTLY DETERMINED
      THAT THE TRIAL COURT ACTED WITHIN ITS
      DISCRETION IN FINDING THAT EXCEPTIONAL
      CIRCUMSTANCES WARRANTED THE REINSTATEMENT
      OF THE COMPLAINT . . . . . . . . . . . . . . . 21

III. EVEN WERE THIS COURT TO GRANT LEAVE TO APPEAL,
     DEFENDANTS' "MOOTNESS" ARGUMENT WOULD NOT
     PROPERLY BE BEFORE THIS COURT . . . . . . . . . . 24

**CONCLUSION**   . . . . . . . . . . . . . . . . . . . . . . . 25

<u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

<u>In re Hydrogen Peroxide,</u>
    552 F.3d 305 (3d.Cir. 2008) . . . . . . . . . . . . . . . 3

### STATE CASES

<u>Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc.,</u>
    139 N.J. 499(N.J. 1995) . . . . . . . . . . . . . 14,16

<u>Do-Wop Corp. v. Rahway,</u>
    168 N.J. 191 (2001) . . . . . . . . . . . . . . . . .24

<u>Georgis v. Scarpa, 226 N.J.Super.</u>
    226 N.J.Super. 244 (App. Div., 1988) . . . . . . . . 17

<u>Hartsfield v. Fantini,</u>
    149 N.J. 611 (1997) . . . . . . . . . . . . . . . . .21

<u>Heffner v. Jacobson,</u>
    100 N.J. 550 (1985) . . . . . . . . . . . . . . . . .24

<u>II Grande v. DiBenedetto,</u>
    366 N.J. Super. 597 (App. Div. 2004) . . . . . . . . .15

<u>Martin Glennon, Inc. v. First Fidelity Bank, N.A.,</u>
    279 N.J. Super. 48 (App. Div. 1995) . . . . . . . . 21, 22

<u>Moon v. Warren Haven Nursing Home,</u>
    182 N.J. 507 (2005) . . . . . . . . . . . . . . . . .24

<u>Patterson v. ExxonMobil Corp.,</u>
    2008 WL 425824 (App. Div. Feb. 19, 2008) . . . . . . . .21

<u>Rodriquez v. Luciano,</u>
    277 N.J. Super. 109 (App. Div. 1994) . . . . . . . . .21

<u>S.N. Golden Estates, Inc. v. Continental Cas. Co.,</u>
    317 N.J. Super. 82 (App. Div. 1998) . . . . . . . . . 24

<u>Sullivan v. Coverings & Installation</u>
    403 N.J.Super. 86 (App. Div. 2008) . . . . . . 18, 19, 20

<u>Vogelbacher v. Director, Div. of Taxation,</u>
     15 N.J. Tax 106 (1995) . . . . . . . . . . . . . . . . . .20

<u>Zadigan v. Cole,</u>
     369 N.J. Super. 123 (Law Div. 2004)  . . . . . . . . . . 20

### STATE COURT RULES

Rule 4:23-4 . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

Rule 4:23-5 . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

## PRELIMINARY STATEMENT

Defendants demand an evaluation of whether the Appellate Division properly determined that the trial court was within its discretion in refusing to dismiss this nearly seven-year old class action case with prejudice, over a discovery dispute. In the alternative, Defendants assert that the trial court must be reversed outright, and the case remanded with instructions to dismiss with prejudice.

This case has been pending since June 2003. As part of class discovery, Defendants requested documents concerning, and noticed the deposition of, the Plaintiff's president, whom Defendants knew to be under criminal investigation for a matter unrelated to the case at bar. The president was represented in the criminal investigation by a lawyer in the same law firm that represents one of the Defendants in this case. The criminal defense lawyer refused to advise the president as to whether to attend the deposition, and refused to discuss the matter with Plaintiff's counsel in this case. Plaintiff's counsel understood through the Plaintiff that the president would not attend the deposition.

Although written discovery about the criminal investigation of the president was never produced and the president's deposition was never actually convened, the Defendants moved to dismiss the *Plaintiff's case* for failure to comply with *its* class discovery obligations. The trial court enforced compliance under R. 4:23-2 by following the procedures set forth in R. 4:23-5, and dismissed the Plaintiff's case without prejudice unless the Plaintiff cured

the discovery deficiency. The trial court later reinstated the Complaint when the Plaintiff proferred two alternate class representatives who agreed to comply with outstanding class discovery requests. The Appellate Division affirmed the trial court's order as "just" within the meaning of R. 4:23-4, because the only alternative was to impose the "ultimate litigation disaster" of dismissal with prejudice.

Although Defendants did not object to the trial court's procedure at the time and in fact invoked the procedure of R. 4:23-5 by claiming written discovery violations, they now accuse the Appellate Division of "usurp[ing]" the Supreme Court's authority to promulgate rules governing the practice and procedure of courts in this State, by finding that the trial court acted within its discretion in relying on R. 4:23-5 to reinstate the Complaint. Despite the broad discretion afforded trial courts in resolving discovery disputes, Defendants assert that trial courts do not have the discretion to use the full panoply of rules available to them. Instead, Defendants would have the Supreme Court micromanage "the day-to-day workings of courts across the state" by embroiling itself in discovery disputes and forcing trial courts to dismiss cases even where a less drastic solution is available.

If granted, Defendants' request would essentially write the "abuse of discretion" standard out of the law. This Court would be overwhelmed with the task of second-guessing thousands of trial court decisions made every day about petty discovery matters.

2

Defendants identify no prejudice or policy reason to justify such an unprecedented act. Accordingly, Defendant's motion for leave to appeal should be denied.

## COUNTERSTATEMENT OF FACTS AND PROCEDURAL HISTORY

I.   **PLAINTIFF DID NOT WILLFULLY REFUSE TO PRODUCE ITS PRESIDENT FOR DEPOSITION.**

Defendants assert that Plaintiff Local 68 Health and Welfare Fund, (the "Welfare Fund") "refused" to produce its president, Dennis Giblin, for a deposition in connection with class discovery. This is not true.

At Defendants' request, and contrary to the normal Rules of court[1], the trial court deferred briefing on class certification issues until *after* class discovery was completed. Da38-39. Defendants noticed the corporate designee deposition of the plaintiff Welfare Fund pursuant to R. 4:14-2(c), and Plaintiff's counsel began working with the Special Master and Defendants to coordinate the timing of the deposition in conjunction with providing supplemental written discovery.  The corporate designee deposition was noticed explicitly in connection with class certification and it was intended to be taken before the close of

---

[1]   Normally, a motion for class certification would be filed by the plaintiff pursuant to R. 4:32-1, *et. seq.*, with discovery relating to the prerequisites following.  Indeed, the Court of Appeals for the Third Circuit recently reversed class certification in a case in which the factual proffer on the class prerequisites was lacking, underscoring the need for merits and class certification to proceed at the same time the class certification motion is pending.  See In re Hydrogen Peroxide, 552 F.3d 305 (3d.Cir. 2008).

the class certification fact discovery deadline. At all times, the
Welfare Fund was fully prepared to comply with the deposition
notice and had conveyed the same to counsel for Defendants.

While the parties were working out the timing of the corporate
designee deposition, Defendants noticed the depositions of three
current or former executives of both the Welfare Fund and the
International Union of Operating Engineers in Washington, D.C., of
which the local union, Local 68, and the Welfare Fund are merely a
part. See Da295-Da308. On or about February 12, 2008, counsel for
the Welfare Fund learned that the president of Local 68, Mr.
Giblin, refused to attend his deposition because he was subject to
a pending criminal investigation.  Pa308 at ¶¶ 5-6.  Plaintiff's
counsel for the Welfare Fund was unable to even discuss the issue
with Mr. Giblin, because Mr. Giblin was represented separately in
connection with the criminal investigation by Nixon Peabody,
counsel for Defendant Alpha Therapeutic in this case.[2]

---

[2]    Defendants' briefing before the Appellate Division indicates
that they knew for some time that Mr. Giblin was subject to a
criminal investigation. See Appellant-Defendants' Brief In Support
of Appeal at 5 n.4. This suggests that Defendants' true purpose was
not to obtain discovery, but to manufacture a discovery dispute by
serving Mr. Giblin with a subpoena with which they knew he would
not comply. Nixon Peabody (who simultaneously represented both Mr.
Giblin and Defendant Alpha Therapeutic) refused to assist in
advising him as to his options, including the consequences of his
refusal to comply.  Incredibly, Defendants assert that the trial
court "did not make any negative inference" from Nixon Peabody's
obvious conflict. See Db5 n.3.  In fact, the trial court called
Nixon Peabody's simultaneous representation a "blatant" conflict.
Da425 at T88:8-10, 88:13-14. And, the Court's statement that
"you've had two months" was made in reference to the Welfare Fund
obtaining a replacement class representative, not in reference to
Mr. Giblin obtaining replacement counsel, as Defendants suggest in
footnote 3 of their brief.

4

Thus, the Welfare Fund did not "refuse" to produce Mr. Giblin for deposition. It was apparently set up by Defendants that they would seek Mr. Giblin's deposition, knowing he was personally beyond the control of the Welfare Fund due to the pendency of the criminal investigation about which defense counsel was fully aware due to their separate representation of Mr. Giblin in criminal case. Counsel for the Welfare Fund were unable to speak with Mr. Giblin to advise him of his rights and obligations, and the potential consequences for the Welfare fund of his refusal to appear.

## II.   PLAINTIFF DID NOT INDICATE ITS INTENT TO WITHDRAW FROM THE CASE.

With a class discovery deadline fast approaching and defense counsel pressing to take the noticed depositions of Mr. Giblin and others, Plaintiff's counsel hastened to evaluate the implications of the Giblin criminal investigation, his noticed deposition, Nixon Peabody's conflict of interest in its dual representation, and the overall impact of these issues on the class action case. Plaintiff's counsel conferred with defense counsel and the Special Master in an effort to resolve the issues, and sought a stay of proceedings to allow time for the issues to be addressed.

There is no question these efforts were pursued in good faith. Defendants, however, sought to take advantage by seizing upon an early comment by Plaintiff's counsel and suggesting that Plaintiff's counsel committed that the Welfare Fund "would be

5

withdrawing from this case." <u>See</u> Db5.  Even at this early stage,
when Plaintiff's counsel knew precious little about the situation,
Plaintiff counsel's actual words belie the meaning Defendants
repeatedly have sought to ascribe to them: Plaintiff's counsel
stated that they had "good *reason to believe* that Local 68 will be
withdrawing from this case *as lead plaintiff*," and that it was
"going to seek *to be substituted out as the named representative*".
Db4 (emphasis added).  The Welfare Fund has brought no motion
seeking to withdraw from the case as a plaintiff; it has sought
only to be "substituted out as the named representative" in light
of its inability to procure discovery from its president.

**III. THE TRIAL COURT ADOPTED THE PROCEDURE SET FORTH IN R. 4:23-5, TO DISMISS THE CASE WITHOUT PREJUDICE AND TO ALLOW PLAINTIFF THE OPPORTUNITY TO REINSTATE THE COMPLAINT, BASED UPON DEFENDANTS' INVOCATION OF THE RULE TO REDRESS CLAIMED WRITTEN DISCOVERY DEFICIENCIES AND DEFENDANTS' CONSENT TO THE PROCEDURE.**

The Welfare Fund sought a stay while it considered its options
in light of the pending criminal investigation of Mr. Giblin,
including seeking to be substituted out as class representative.
In response, Defendants brought a Motion to Dismiss, which the
trial court granted at a hearing on April 11, 2008. Applying R.
4:23-4 (failure of party to attend at own deposition) and R. 4-23-2
(failure to comply with discovery order), the trial court adopted
the procedure set forth in R. 4:23-5 (failure to make discovery) by
dismissing the Complaint without prejudice and reserving for the
Class an opportunity to have the Complaint reinstated.

None of the Defendants objected to the trial court's procedure in adopting the mechanisms for dismissal and reinstatement under R. 4:23-5.   In fact, all Defendants later agreed in a joint pleading filed in the trial court that the order fashioned by the trial court was "proper[ly]" within the trial court's discretion to make "such orders in regard to the [discovery] failure as are just":

> The Court explained that Rule 4:23-4 permits the Court 'to make such order[s] in regards to the failure [to appear for deposition] as are just and among others it may take any action authorized under paragraph 1, 2, and 3 of Rule 4:23-2(b).' **Exercising its discretion under Rules 4:23-2(b)(3) and 4:23-4 to craft a just Order, the Court dismissed Plaintiff's action without prejudice and, borrowing Rule 4:23-5's procedure provided Plaintiff with a 90-day grace period in which to cure.**   In particular, the Court stated that it was granting Defendants' motion to dismiss pursuant to subsection 3 of Rule 4:23-2(b), which allows the Court the discretion to fashion 'an Order... Dismissing the action or proceeding or any part thereof with or without prejudice...."  **Because Rule 4:23-4 permits the Court to fashion an Order that is 'just' and to take any action authorized under Rule 4:23-2(b), the Court properly dismissed the action without prejudice and granted Plaintiff a more than reasonable time period, 90 days, within which to cure by producing Dennis Giblin for deposition.**

Pa358a-Pa358c (emphasis added).

Accordingly, pursuant to R. 4:23-5, the trial court allowed Plaintiff 90 days to file a motion to vacate the dismissal order and reinstate the Complaint, by curing the identified discovery deficiencies and paying a reinstatement fee.  Da423 at 85:3-7.  The

trial court, however, did not limit Plaintiff's ability to cure the class discovery deficiencies solely by producing Mr. Giblin for deposition. Instead, the court informed the parties that, if it dismissed the Welfare Fund's claims without prejudice, it wanted the case to continue with a new class representative if one could be found.  Da420 at 79:18-23 ("I don't want this to start all over again if there's been stuff done for six years that applies to this case, I want it to be able to continue with some new plaintiff if they find one.").

The trial court expressly inquired of defense counsel as to whether any Defendant would object to a motion to restore the Complaint if a new class representative was found to submit to fulsome class discovery.  Da419 at 77:18 – Da420 at 78:12.  Defense counsel replied that "there would be no reason to have to redo [discovery]" if the substitute representative alleged the same claims against the same defendants; the Court would simply have to determine "whether that substitute can come into this lawsuit." Da421 at 81:10 -Da422 at 82:01.

## IV. PLAINTIFF CURED THE OUTSTANDING CLASS DISCOVERY DEFICIENCIES BY PROFFERING TWO REQUISITE SUBSTITUTE CLASS REPRESENTATIVES WHO STAND READY, WILLING AND ABLE TO PROVIDE COMPLETE WRITTEN DISCOVERY RESPONSES AND DEPOSITIONS.

Pursuant to the trial court's Order granting Plaintiff the opportunity to reinstate the Complaint and its desire to have the case "continue with some new plaintiff" if one were identified, and prior to the expiration of the 90-day deadline for reinstatement,

8

two absent Class members stepped forward to serve as class representatives: the Local 690 Fund and the Local 322 Fund. In conjunction with Plaintiff's Motion to Vacate the dismissal and reinstate the complaint, both of the new Funds stated, by affidavit, that they were willing and able to serve as class representatives and to fully comply with all discovery obligations, including the outstanding written discovery requests and corporate designee deposition notices. Pa348 - Pa353. They even produced the written discovery responses at the hearing on reinstatement. DA 444 at Tr.23:3-9. Because the claims of these two additional Funds were substantively the same as those of the Welfare Fund, the anticipated substitution would not affect any of the underlying claims against the Defendants. In other words, the Local 690 and Local 322 Funds would continue to pursue the exact same claims against the exact same Defendants that the Plaintiff Class had previously been pursuing over six years through the representation of the Welfare Fund.

Since the parties were engaged in class discovery at the time the discovery dispute arose, the willingness of Local 690 and Local 322 to submit to fulsome class discovery was sufficient to cure the class discovery deficiencies without material prejudice to the Defendants. Further, because Local 690 and Local 322 offered to provide complete responses to Defendants' outstanding discovery requests, Plaintiff and the Class cured the class discovery deficiencies.

9

V.   THE TRIAL COURT ACTED WITHIN ITS DISCRETION, AND IN ACCORDANCE
WITH ITS OVERALL CASE MANAGEMENT OF THIS NEARLY SEVEN-YEAR OLD
CLASS ACTION MATTER, BY REINSTATING THE COMPLAINT UPON THE
PROFFER OF ADDITIONAL CLASS REPRESENTATIVES.

The trial court properly acted within its discretion under the
Rules of Court regarding discovery deficiencies, as well as the
class action Rules, and consistent with this case's designation
under Track IV, in reinstating the Complaint upon the proffer of
Local 690 and Local 322 as class representatives.

Rule 4:23-4, which addresses the failure of a party to attend
its own deposition (one of the Rules by which Defendants sought
discovery relief), allows a trial court to "make such orders in
regard to the failure as are just."  In that vein, and because of
the overriding desire not to lose years of litigation effort based
on a non-party individual's refusal to attend his deposition, the
trial court adopted a procedure based upon the mechanism set forth
in R. 4:23-5 for dismissal without prejudice for failure to comply
with written discovery.  The court granted a 90-day grace period
within which the Plaintiff would be permitted to move for
reinstatement of the Complaint upon payment of the requisite fee.
Da423 at 85:3-7.

Following the dismissal without prejudice and within the 90
day grace period for reinstatement specifically granted by the
trial court, Plaintiff moved for reinstatement based upon the
proffer of Local 690 and Local 322 as putative Class
representatives who were willing and able to comply with all

10

outstanding discovery obligations, including providing written discovery responses and depositions. Plaintiff's counsel did so under the explicit direction of the trial court.

On August 1, 2008, the trial court entered an Order vacating the dismissal and reinstating the Complaint. In doing so, the trial court acknowledged that because this case is a class action, R. 4-32-2(f) (titled "Orders in the Conduct of Actions") gives the trial court the discretion to "make appropriate orders dealing with [ ] procedural matters." Da472 at 79:5-7. The trial court ultimately held that, although it was prepared to rely on "the relaxation rule", id., R. 4:23-5, which the trial court adopted to dismiss without prejudice followed by a 90 day grace period to file for reinstatement, gave it "the right to [reinstate the Complaint] where there's exceptional circumstances." Accordingly, pursuant to the trial court's overall case management of this Track IV, class action case, and the discretion afforded the trial court by the applicable Rules regarding discovery deficiencies in such cases, the trial court acted properly within its discretion in reinstating the Complaint and assuring that years of litigation effort would not be lost for the Class.

## VI. THE APPELLATE DIVISION CORRECTLY ACCEPTED THE TRIAL COURT'S APPLICATION OF THIS COURT'S RULES.

Defendants sought leave to appeal, which was granted by the Appellate Division. Among other things, Defendants contended that dismissing a six-year old case would not prejudice absent class

members, such as the Local 690 or Local 322 Funds, because "they are free to pursue their own suits individually or even attempt to bring another suit on behalf of a class." Appellant-Defendants' Brief In Support of Appeal (filed in the Appellate Division) at 23-24. Defendants also claimed that they were prejudiced by the trial court's refusal to dismiss the case, because under the Class Action Fairness Act, Defendants now can remove a newly-filed suit to federal court and have it adjudicated there, rather than in New Jersey state court. Id. at 24 n.11.

Applying an abuse of discretion standard to the trial court's decision, the Appellate Division affirmed the trial court's orders. First, the Appellate Division found that the trial court had not abused its discretion in dismissing the Complaint without prejudice pursuant to R. 4:23-2, because R. 4:23-4 provides that the court may make such orders "as are just . . . which includes an order dismissing the action" under R. 4:23-2(b). SCa13. With respect to the order reinstating the Complaint, the Appellate Division found "that order too was just, given that class certification was still pending, and that plaintiff preferred that other unions were willing to become class representatives, and those unions would comply with defendants' discovery requests." SCa13-14. The Appellate Division acknowledged that the trial court did not want to waste six years of litigation effort by forcing the putative class to file a new lawsuit. SCa14. It also recognized defense counsel's representation to the trial court that "'if the claim [by

the new class representative] were the same . . . there would be no reason to have to redo [discovery].'" Id. Because the purpose of Rule 4:23-5 was not to dismiss cases but to compel discovery responses, and because the requested discovery related not to the merits of the class action, but to class certification, which corporate designees of the proferred class representatives could provide, the trial court's decision to reinstate the Complaint was not an abuse of discretion. SCa14-16.

Second, the Appellate Division found that the trial court had not erred in finding "exceptional circumstances" pursuant to Rule 4:23-5(a)(2). The Appellate Division recognized that Mr. Giblin was subject to potential criminal indictment, and as such, the Welfare Fund could not function as the class representative. SCa17. The Appellate Division further acknowledged that, since no class had certified, "the plaintiff's dismissal from the case would result in dismissal of the entire potential class." Id. The Appellate Division found that it was not an abuse of discretion "to avoid this result and prevent the loss of years of litigation by all the parties involved," only "to begin anew a class action that had already been through six years of litigation." SCa18. For these and other reasons, the trial court was affirmed.

<u>LEGAL ARGUMENT</u>

I.   THIS COURT SHOULD NOT GRANT LEAVE TO APPEAL BECAUSE THE
     APPELLATE DIVISION CORRECTLY FOUND THAT THE TRIAL COURT DID
     NOT ABUSE ITS DISCRETION BY ADOPTING THE PROCEDURE SET FORTH
     IN RULE 4:23-5 TO THE INSTANT SITUATION

In their argument that the "Appellate Division Improperly Applied <u>Rule</u> 4:23-5 to Depositions", Defendants ignore the bases for the Appellate Division's ruling:  (1) the discretion afforded the trial court pursuant to <u>R.</u> 4:23-4 to fashion such orders "as are just"; (2), the underlying purpose of <u>R.</u> 4:23-5 to "compel the [discovery] answers rather than to dismiss the case"; (3) Defendants' own representation to the trial court about written discovery deficiencies by the Plaintiff and assent to the court's adoption of the <u>R.</u> 4:23-5 two-step process for dismissal and reinstatement of the case; and (4) established jurisprudence seeking to prevent the "drastic" result of dismissal with prejudice.

The Appellate Division did not apply <u>R.</u> 4:23-5 to depositions, as charged.  Nor did the Appellate Division "leapfrog" over <u>R.</u> 4:23-4.  Rather, the Appellate Division found that the trial court's adoption of the procedure set forth in <u>R.</u> 4:23-5, to a situation otherwise governed by <u>R.</u> 4:23-4, was not precluded by the Rule and was a "just" order pursuant to <u>R.</u> 4:23-4, and therefore, was not an abuse of discretion.

As the Appellate Division pointed out, "[w]hen a party fails to attend a deposition, Rule 4:23-4 provides that the court may

14

make such orders "<u>as are just</u>," including, but not limited to, those authorized pursuant to <u>R.</u> 4:23-2(b), which includes an order "dismissing the action or proceeding or any part thereof <u>with or without prejudice.</u>"   SCa13  (<u>citing</u> <u>R.</u>  4:23-2(b)(3))(emphasis added).   In this case, rather than independently fashion an order based on the trial court's own sense of justice – which the trial court was entitled to do pursuant to both <u>R.</u> 4:23-4 and <u>R.</u> 4:23-2[3] – the trial court, referencing both <u>R.</u> 4:23-4 and <u>R.</u> 4:23-5 in its oral opinion, adopted the two-step procedure set forth in <u>R.</u> 4:23-5.  The procedure under Rule 4:23-5, dealing with written discovery violations, could remedy the discovery issue.[4] Consistent with the example of <u>R.</u> 4:23-2(b)(3), the trial court chose to dismiss the Complaint without prejudice.  However, cognizant of the fact that this class action had been pending for over 6 years, the trial court fashioned a procedure that could avoid losing years of litigation effort while, at the same time, remedying the discovery deficIencies at issue.   Rather than fashion its own order, the

---

[3]     <u>See also Abtrax Pharmaceuticals, Inc.</u> v. <u>Elkins-Sinn, Inc.</u>, 139 N.J. 499, 514 (N.J. 1995).

[4]     Aside from the overarching principle granting trial courts discretion to make such orders as are "just", to further guide the court, <u>R.</u> 4:23-4 states that "among others [a court] may take any action authorized under paragraphs (1), (2),and (3) of <u>R.</u> 4:23-2(b)."  <u>R.</u> 4:23-2(b) outlines several procedures that a court may use when a party or an officer fails to provide or permit discovery.  Specifically, <u>R.</u> 4:23-2(b)(3) provides that a court may make an Order "striking out pleadings or parts, thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof with or without prejudice, or rendering a judgment by default against the disobedient party."

trial court adopted the procedure set forth in R. 4:23-5, which Defendants agreed to.

Noting the discretion inherent in R. 4:23-4 to fashion such orders "as are just", the "main objective" of R. 4:23-5 to compel discovery, and the fact that dismissal with prejudice is the "last and least favorable option"[5], the Appellate Division held that the trial court did not abuse its discretion in adopting the R. 4:23-5 procedure in this case since "nothing in [R. 4:23-5] precludes that analysis from being applied in a situation like the one we face here." SCa15. The Appellate Division thus affirmed the trial court's attempt to prevent wasting years of litigation effort - a result that all parties desired and agreed to.

A.   **THE APPELLATE DIVISION PROPERLY AFFIRMED THE TRIAL COURT'S DECISION ISSUING A "JUST" ORDER AND FINDING "EXCEPTIONAL CIRCUMSTANCES".**

The Rules and case law of this State recognize that a trial court has wide latitude and an array of options at its disposal in fashioning appropriate discovery orders. For instance, a trial court may deem certain matters established for purpose of the action, prohibit evidence, strike pleadings (or parts thereof), strike witnesses, stay the proceedings to allow the discovery to take place, or enter other appropriate orders to remedy the specific discovery violation. R. 4:23-2; 4:23-4. Such alternatives allow a trial court to craft a remedy to specifically

---

5.    See II Grande v. DiBenedetto, 366 N.J. Super. 597, 624 (App. Div.2004).

address the particular discovery deficiency at issue.  As discussed above, the "drastic" sanction of dismissal with prejudice is a sanction of last resort.   Furthermore, in view of the broad discretion afforded trial courts in the management of class action cases, the trial court acted within its sound discretion in reinstating the Plaintiff's complaint pursuant to the procedure adopted from R. 4:23-5, following Plaintiffs' motion to reinstate and corresponding proffer of representative plaintiffs Local 690 and Local 322, as discussed above.  The Appellate Division properly affirmed the trial court's decision, denying Defendants' motion to dismiss with prejudice pursuant to R. 4:23-5(a)(2) because "exceptional circumstances" were shown.

The Appellate Division properly observed that "[t]he dismissal of a party's cause of action, with prejudice, is drastic and is generally not to be invoked except in those cases in which the order for discovery goes to the very foundation of the cause of action, or where the refusal to comply is deliberate and contumacious." SCa12. (citing Abtrax Pharms. V. Elkins-Sinn, 139 N.J. 499, 514 (1995)).  "The varying levels of culpability of delinquent parties justify a wide range of available sanctions against the party violating a court rule… If a lesser sanction than dismissal suffices to erase the prejudice to the non-delinquent party, dismissal of the complaint is not appropriate and constitutes an abuse of discretion." Id. (citing Georgis v. Scarpa, 226 N.J.Super. 244, 251 (App.Div. 1988)).

17

Despite this well-established principle, as noted by both the Appellate Division and the trial court, Defendants seek to close the door on the trial court's discretion to properly manage a class action case by construing Rules in a mechanistic way and employing their sharp construction as a weapon to dismiss meritorious cases with prejudice. Such a result goes well beyond the intention of the Rules, which plainly require fashioning a "lesser sanction" where appropriate. In so acting, Defendants ignore the very Rule they seek to enforce, R. 4:23-4, which explicitly gave the trial court discretion to "make such orders in regard to the failure [to make discovery] as are just."

In reinstating the Complaint, the trial court did not "apply the straight-forward requirements" set forth in R.4:23-5(a)(1), as Defendants suggest, because the initial dismissal without prejudice with leave to reinstate in 90 days was done pursuant to a procedure explicitly authorized by R. 4:23-4, permitting the trial court to fashion a "just" order to fit the particular circumstances. Here, with Defendants complaining about both written and deposition discovery deficiencies due to Mr. Giblin's criminal investigation, the trial court adopted the two-step procedure for dismissal and reinstatement set forth in R. 4:23-5. It did so only after specifically informing the parties that, if it dismissed the Welfare Fund's claims without prejudice, it wanted the case to continue with a new class representative if one could be found.

18

Da420 at 79:18-23. It did so only upon Defendants' assent to the procedure. Da421 at 81:10 -Da422 at 82:01.

Further evidencing the trial court's intention to borrow from the procedure set forth in R. 4:23-5 to deal with the class discovery deficiencies in this case, and recognizing that under R. 4:23-4 the court was required to order "the party failing to obey the order to pay the reasonable expenses   [ ]   caused by the failure," the trial court held that the reinstatement fee that was to be paid to the Clerk upon filing a motion for reinstatement under R. 4:23-5 would suffice as the reasonable fee required under R. 4:23-4. Consistent with the trial court's adoption of the two-step R. 4:23-5 procedure, on at least three occasions, the trial court stated that the Complaint could be reinstated upon payment of a $300 reinstatement fee within 90 days of the entry of the dismissal without prejudice. See Da419 at 77:22; Da423 at 85:6; Da424 at 87:17.

Defendants cite Sullivan v. Coverings & Installation - a case cited by the Appellate Division for the well-established principle that "whether to grant or deny a motion to reinstate a complaint lies within the sound discretion of the trial court [and] an appellate court will decline to interfere with such matters of discretion unless it appears that an injustice has been done." - for the proposition that "technical compliance" with 4:23-5 is mandatory for the moving party" SCa13. SCa13 (). However, the technical compliance that the Appellate Division was referring to

was with respect to Defendants formally moving for dismissal with prejudice, and since they had not done so in the <u>Sullivan</u> case, the Appellate Division refused to order the drastic remedy of dismissal with prejudice.

The Appellate Division's ruling in <u>Sullivan</u> was consistent with its reasoning here: "Rule 4:23-5 continues to reflect the ultimate objective to encourage resolution of disputes on the merits. At the same time, the rule affords a party aggrieved by dilatory discovery tactics a remedy to compel the outstanding discovery and the right to seek final resolution through the two-step dismissal process." 403 N.J.Super. 86, 96 (App. Div. 2008). Here, no one has argued that the Plaintiff Welfare Fund engaged in dilatory discovery tactics. Indeed, immediately upon learning about the criminal investigation of Mr. Giblin and the impediment it caused to the Plaintiff in responding to Defendants' discovery requests, Plaintiff's counsel notified the Special Master and Defendants in a good faith effort to address the matter. In view of the objective of <u>R.</u> 4:23-5 ultimately to compel discovery, the two-step process adopted by the trial court in this case served its purpose by resulting in the class certification discovery being produced by two putative class representatives.

Nothing about the Appellate Division's decision in this case is inconsistent with its holdings in <u>Sullivan</u>: (1) "whether to grant or deny a motion to reinstate a complaint lies within the sound discretion of the trial court"; (2) "An appellate court will

decline to interfere with such matters of discretion unless it appears that an injustice has been done," and (3) "Rule 4:23-5 continues to reflect the ultimate objective to encourage resolution of disputes on the merits." Id. at 93-96. In this case, the trial court properly fashioned a "just" Order under R. 4:23-4, adopting the R. 4:23-5 two-step procedure. Then, the trial court properly followed its own Order, assented to by Defendants, in looking to R. 4:23-5 in light of the proffer of two absent class members who were able to satisfy the outstanding discovery. In affirming the trial court's decision in this regard, the Appellate Division recognized that dismissal with prejudice is the "last and least favorable option" and abided by their charge to not interfere with discretion any matters unless a manifest injustice has been done.

**B.   THE APPELLATE DIVISION CORRECTLY DETERMINED THAT THE TRIAL COURT ACTED WITHIN ITS DISCRETION IN FINDING THAT EXCEPTIONAL CIRCUMSTANCES WARRANTED THE REINSTATEMENT OF THE COMPLAINT.**

New Jersey courts consistently have defined the term "exceptional circumstances" to encompass those factors "beyond the control of the attorney and litigant" or "beyond the delinquent party's control." See Zadigan v. Cole, 369 N.J. Super. 123, 132 n.8 (Law Div. 2004); Vogelbacher v. Director, Div. of Taxation, 15 N.J. Tax 106, 117-118 (1995). The determination of what constitutes exceptional circumstances is a "fact sensitive analysis in each case." Hartsfield v. Fantini, 149 N.J. 611, 618 (1997). Although an appellate court may have reached a different result in

performing this fact-sensitive analysis, this difference does not
amount to an abuse of discretion or require a reversal of the trial
court's decision. See Martin Glennon, Inc. v. First Fidelity Bank,
N.A., 279 N.J. Super. 48, 54 (App. Div.), appeal dismissed, 142
N.J. 510 (1995); see also Local 68, supra, at *17, SCa17; see also
Patterson v. ExxonMobil Corp., 2008 WL 425824 (App. Div. Feb. 19,
2008)*6 (stating that appellate court should overturn trial court
"only upon a showing of abuse of discretion. This court should not
intervene, 'unless it appears that an injustice has been done.'")
(Da378) (internal citations omitted).

For example, in Martin Glennon, supra, which was cited by the
Appellate Division with approval, plaintiff claimed that
defendant's answer should have been stricken for failure to provide
answers to interrogatories.  The failure was caused by defense
counsel's reliance on another law firm retained by defendant's
insurance carrier.  279 N.J. Super. at 54.  Although the court
noted that "it was the responsibility of defendant's attorneys of
record to supervise discovery, even by outside counsel retained by
it or its client,"  it found that those circumstances were "more
than the ordinary 'administrative problems in [defendant's]
attorney's office' discussed in Rodriquez v. Luciano, 277 N.J.
Super. 109 (App. Div. 112 (App. Div. 1994)], where the trial judge
reached the opposite decision." Id.

As recognized by the Appellate Division in this matter, the
reasoning behind Martin Glennon, supra, applies with equal force to

22

this case.   See SCa17.   Before the trial court, the Appellate Division and now this Court, Defendants have continuously but erroneously argued that the Welfare Fund willfully refused to appear for deposition.   The Welfare Fund was always ready to produce its representative to respond to defendants' class certification discovery.   Defendants do not argue otherwise.

Mr. Giblin, who was the focus of the controversy between the parties in the trial court, is not and has never been a party to this action.   His decision to not appear for deposition resulted from an ongoing federal criminal investigation against him.   His refusal to submit to a deposition was beyond the control of counsel for the Welfare Fund and the Class.   Indeed, at the April 11, 2008 hearing, a partner at Nixon Peabody, who represents Defendant Alpha, indicated to the trial court that the Nixon Peabody attorney representing Mr. Giblin in the criminal investigation would not even speak with the Welfare Fund's counsel about the issue of Mr. Giblin's deposition and non-appearance.   Da428 at T95:3-8.

Both the trial court and the Appellate Division appropriately recognized that exceptional circumstances resulted from the unique case-specific problems caused by the criminal investigation.   See SCa17. Additionally, in light of the exceptional and unanticipated criminal investigation of Mr. Giblin, the trial court and Appellate Division rightfully held that it was inappropriate to dismiss the action and lose "years of litigation and expense by all of the parties involved."   SCa18.   The trial court did not abuse its

discretion in refusing to "require the parties to begin anew a class action that had already been through six years of litigation." Id. Based upon the above, the Appellate Division's decision does not amount to a deletion of "exceptional" from R. 4:23-5. Consequently, the Appellate Division correctly determined that the trial court acted within its discretion in finding that exceptional circumstances warranted the reinstatement of the Complaint, and Plaintiff respectfully requests that the Defendants' motion for leave to appeal be denied.

## III. EVEN WERE THIS COURT TO GRANT LEAVE TO APPEAL, DEFENDANTS' "MOOTNESS" ARGUMENT WOULD NOT PROPERLY BE BEFORE THIS COURT.

By arguing "mootness," Defendants attempt to divert this Court's attention from the *discovery* issues.[6] It was undisputed in the trial court that the purported "mootness" issue (as well as any related issue about substitution of class representatives) was not decided.[7] Moreover, the Appellate Division observed that the

---

[6]    While the trial court was confronted with various arguments concerning alleged "mootness" of the Plaintiff's class action claim, both prior to and during the April 11, 2008 hearing involving discovery deficiencies, to defense counsel conceded at the August 1, 2008 hearing that such issues were irrelevant. Da449 at T33:20-21 ("This ["mootness"] argument was made on April 11, of 2008. We came to you ... on April 11 because the plaintiffs had not complied with the [discovery] rules."); Da464 at T63:20-23 ("Local 68 will not produce its president for a deposition. That's what April 11 was all about, and that was why Your Honor ruled what Your Honor ruled.").

[7]    At the August 1, 2008 hearing, the parties agreed that the only issue before the trial court was the discovery issue. Da452 at T39:4-7. The trial court echoed such agreement by advising the parties to "stay tuned" for some future ruling on the matter after a proper Motion was filed. The trial court expressly held at the August 1, 2008 hearing that it was not ruling on mootness or substitution, as evidenced by the trial court crossing out language

"mootness" argument was one of "Defendants' remaining arguments []
without sufficient merit to warrant discussion in a written
opinion."  SCa18 (citing R. 2:11-3(e)(1)(E)).  As a result, the
issues of mootness and substitution are not properly before this
Court for review.  Do-Wop Corp. v. Rahway, 168 N.J. 191, 199
(2001); Heffner v. Jacobson, 100 N.J. 550, 553 (1985).  In the
absence of any judgment or order on these issues, they are
premature and should not be reviewed.  See Moon v. Warren Haven
Nursing Home, 182 N.J. 507, 513 (2005) (observing that appellate
courts avoid premature review of matters); S.N. Golden Estates,
Inc. v. Continental Case. Co., 317 N.J. Super. 82, 89-90 (App. Div.
1998) (declining to review premature issue of apportionment for
attorney's fees).

## CONCLUSION

For the foregoing reasons, Plaintiff-Respondent respectfully
requests that Defendants' Motion for Leave to Appeal be denied.


Dated: 6/3/09                    By: Donald E. Haviland Jr.
                                 Donald E. Haviland, Jr., Esquire
                                 THE HAVILAND LAW FIRM
                                 112 Haddontowne Court, Suite 202
                                 Cherry Hill, NJ 08034
                                 Telephone: (856) 354-0030

---

in the proposed Orders that would have addressed the matter.
Da472-473 at T79:24-T81:13; Da370-371.  At the conclusion of the
hearing, the court observed, "we really haven't dealt with that
today.  So I'll just cross that off.... I'll put stay tuned. Stay
tuned, I'll put next to that in the margin.  Stay tuned."  Da473
at T81:5-11.

John E. Keefe, Jr., Esquire
KEEFE BARTELS CLARK
170 Monmouth Street
Red Bank, NJ 07701
Telephone:  (732) 224-9400
Facsimile:  (732) 224-9494

Kent M. Williams, Esquire
THE WILLIAMS LAW FIRM
1632 Homestead Trail
Long Lake, MN 55356
Telephone: (763) 473-0314

CO-LEAD COUNSEL FOR PLAINTIFF AND THE
CLASS



# KEEFEBARTELSCLARK
### ATTORNEYS AT LAW • *A Limited Liability Company*

27377278

Oct 5 2009
2:23PM

170 Monmouth Street
Red Bank, NJ 07701
732-224-9400
732-224-9494 (Fax)

John E. Keefe, Jr.[1][△]
Patrick J. Bartels*
Gerald H. Clark [1][□]

Sarah K. Delahant [□]
John E. Gregory, Jr.[□]
Joshua S. Kincannon [○]
Robert A. Storino[□]
Stephen T. Sullivan, Jr.*

Of Counsel
John E. Keefe, Sr.
Julius J. Feinson

CERTIFIED CIVIL TRIAL ATTORNEY[1]

NJ & PA Bar*
NJ & NY Bar[□]
NJ & FL Northern Dist. & DC Bar[△]
NJ, PA, & FL Northern Dist.[○]

October 2, 2009

**VIA HAND DELIVERY**
Honorable David F. Bauman, P.J.S.C.
Superior Court of New Jersey
Monmouth County Courthouse
71 Monument Park
P.O. Box 1266
Freehold, NJ 07728

      Re:   **International Union of Operating Engineer, Local No.
68 v. AstaZenca, et. al.**
MON-L-3136-06

Dear Judge Bauman:

     This law firm is co-counsel to the plaintiff in the above-mentioned matter. Enclosed please find plaintiff's Reply Brief and Certification of Counsel in support of the pending Motion to Add Class Representatives, presently returnable for October 9, 2009.

     Thank you for your attention to this matter.

          Very truly yours,

          *Stephen T. Sullivan Jr.*
          STEPHEN T. SULLIVAN, JR.
          For the Firm

Enclosures
cc: Counsel of Record **(Via Lexis-Nexis)**

