# Exhibit 6

Page 1

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS
2
3    IN RE:                              )
                                         )  CA No. 01-12257-PBS
4    PHARMACEUTICAL INDUSTRY AVERAGE     )
     WHOLESALE PRICE LITIGATION          )  Pages 1-88
5                                        )
6
7
8
                        SETTLEMENT HEARING
9
             BEFORE THE HONORABLE PATTI B. SARIS
10                UNITED STATES DISTRICT JUDGE
11
12
13
14
                                 United States District Court
15                               1 Courthouse Way, Courtroom 19
                                 Boston, Massachusetts
16                               April 27, 2009, 2:15 p.m.
17
18
19
20
21
22                       LEE A. MARZILLI
                      OFFICIAL COURT REPORTER
23                  United States District Court
                    1 Courthouse Way, Room 3205
24                       Boston, MA  02210
                          (617)345-6787
25

Page 70

1    THE COURT:  We've always allowed that.  You just
2 needed to have some.  But you're right that we've said, at
3 least in a litigation context, I needed a class rep per
4 defendant.  But the question is, this is settlement, and so
5 their argument is whether it should be different.
6    MR. HAVILAND:  I don't know if Amchem allows us to
7 do a shortcut like that because you know the problem, Judge?
8 Now is the last time we look at it, whereas in litigation
9 you have the chance to fix it.
10    THE COURT:  What about the argument that, you
11 know, as a practical matter, these associations are actually
12 more proactive than an individual whose mother took an
13 injection would be.  So assuming they only have standing for
14 a limited purpose, not for damages but for injunction or
15 declaratory relief when I originally put them in, won't they
16 be proactive for consumers?
17    MR. HAVILAND:  Well, one would hope so, but the
18 problem we have with Prescription Action Litigation, it was
19 a group that was in part founded by the lawyers in this
20 room.  The mission statement that we put before the Court
21 demonstrates that one of their five missions in life is to
22 get cy pres.  Now, your Honor made the comment earlier
23 there's not cy pres in this case, but think about this case
24 in totality.  In AstraZeneca, there was a set-aside for
25 cy pres, a guarantee.  One of the objections, frankly, the

Page 71

1 principal objection --
2    THE COURT:  I think I rejected it.
3    MR. HAVILAND:  Well, no, you didn't, your Honor.
4 You scaled it back, and we appreciated that.
5    THE COURT:  Dramatically, dramatically.
6    MR. HAVILAND:  We appreciated that.  Mrs. Howe saw
7 that, my client, as an impediment to her getting her full
8 due under the settlement.  But there's still that built-in
9 set-aside which is buttressing that settlement from getting
10 what we're getting here.  Today, your Honor, I hear, if
11 there's money left over, we'll give it back to the
12 consumers.  Let's do that in AstraZeneca.  Let's not have a
13 set-aside for cy pres.
14    THE COURT:  I'm not talking about AstraZeneca.
15    MR. HAVILAND:  I understand, but that's the
16 problem I have with PAL.  You asked the question, why
17 shouldn't PAL be a good proxy?  Well, in that case, your
18 Honor, the record that you have before you shows the
19 set-aside was for PAL.  That's what it says in the e-mails
20 that were filed of record with you.  So that's a conflict,
21 your Honor.  The problem is, when lawyers --
22    THE COURT:  Aren't there like six other consumer
23 associations?
24    MR. HAVILAND:  They're all PAL members.  Our
25 papers demonstrate they're all PAL.  I mean, in essence

Page 72

1 it's --
2    THE COURT:  So you're saying, so I get the legal
3 argument, and I need to get to Mr. Berman, the legal
4 argument is, regardless of what I say, the associations
5 under that Second Circuit case do not have standing, and
6 Tonacchio only does with respect to one defendant, and
7 therefore that isn't enough at best?
8    MR. HAVILAND:  If you find that she in fact made a
9 payment or had an amount due and owing.
10    THE COURT:  And, in any event, you would say it's
11 not a fair and reasonable amount?
12    MR. HAVILAND:  Because if you look at the reality
13 of what's been happening in these cases --
14    THE COURT:  With the Attorney Generals as a
15 comparison.
16    MR. HAVILAND:  Correct, your Honor.
17    THE COURT:  Okay, thank you, I understand.
18    MR. HAVILAND:  The last point, if I may, because
19 Mr. Berman made the point that we were somehow saying
20 something false about what's in this case.  Mr. Monk and
21 Mr. Thomson, my clients, were added to the complaint in
22 2005.  Mr. Monk bought Eligard, and Mr. Thomson bought
23 Trelstar.  Now, your Honor ruled in response to defendants'
24 motions that they were out; those drugs were not in the
25 case, they were new drugs newly added, and they were

Page 73

1 dismissed.  My clients were then sent packing.  Now they're
2 back in.  So if you look at the record, you're going to see
3 those drugs in there under the second B.
4    THE COURT:  But not for consumers, just for TPPs.
5    MR. HAVILAND:  No, they're in there for consumers,
6 your Honor, and there's a full release happening.  And our
7 problem is, Aventis doesn't look like that it paid any money
8 for Eligard because it's in Class B.  Aventis, according to
9 the record that I see, says they paid it in Class A.  They
10 paid nothing on Eligard.  Why is that important?  If you
11 look under the tab, your Honor, you're going to see that's
12 Lupron.  Eligard and Trelstar are Lupron.
13    THE COURT:  Okay, now you're losing me again.  I
14 missed this point in all the filings, so --
15    MR. HAVILAND:  Well, they're brand drugs, number
16 one, so they don't belong below that line in the Class B
17 drugs.  Aventis makes Eligard, and they're above the line in
18 Class A.  But they haven't paid any money for that drug.
19 It's just kind of lumped in there.  And Mr. Monk says to
20 himself, "Why is that?  I was told years ago by the Court
21 that there's no drug that I can represent a class for."  So
22 he's kicked out.  Then it comes back in the settlement.  The
23 same thing with Trelstar.
24    THE COURT:  Does he want to come back as a class
25 rep?