# Exhibit 7

Page 1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
     In Re:                              )
 4   PHARMACEUTICAL INDUSTRY             ) CA No. 01-12257-PBS
     AVERAGE WHOLESALE PRICE             ) MDL No. 1456
 5   LITIGATION                          ) Pages 1 - 30
 6
 7
 8              CLASS COUNSEL STATUS CONFERENCE
 9           BEFORE THE HONORABLE PATTI B. SARIS
                   UNITED STATES DISTRICT JUDGE
10
11
12
13
                                  United States District Court
14                                1 Courthouse Way, Courtroom 19
                                  Boston, Massachusetts
15                                September 11, 2007, 10:10 a.m.
16
17
18
19
20
21
22
                         LEE A. MARZILLI
23                    OFFICIAL COURT REPORTER
                    United States District Court
24                 1 Courthouse Way, Room 3205
                       Boston, MA  02210
25                       (617)345-6787
```

Page 18
1  Mrs. Howe, for instance, in AstraZeneca -- I see Mr. Wise is
2  in the courtroom -- she paid 50 percent out of pocket, and
3  the settlement doesn't accomplish her issue.  So it's still a
4  problem, but we're working together cooperatively.  We've had
5  a call about that to try to resolve that.
6       THE COURT:  It's just she's not part of the class.
7  It doesn't mean that you can't represent her separately on a
8  separate cause of action.  She's just not part of this class
9  because of the common question issue.  But putting that
10 aside, I need to trust you.  Let's get past all the legal --
11      MR. HAVILAND:  Sure, absolutely.
12      THE COURT:  I need to trust you, and I keep trying
13 to make sure that if there's a consensus among the
14 plaintiffs' team, well, I'll trust you.  But truthfully, at
15 this point, I don't trust you.  I mean, that sounds like a
16 very mean thing to say, but, you know, at some point I tell
17 people, "You make your bed, you lie in it."  You know, I put
18 aside the Stearns things -- well, okay you started a new
19 chapter -- and then there were all the problems with the
20 mediation in front of Eric Green, and there was, like, just
21 this huge human cry about what happened, and I said, "All
22 right, well, that's contested."  And then I got the
23 affidavits from these class reps saying, "I'm going to pull
24 out unless it's me," ==that makes me worried that you were more==
25 ==concerned about you than you were about the class reps.==  And

Page 19
1  then I sealed it, and then I see this, and I feel like you
2  weren't --
3       MR. HAVILAND:  I'm concerned about those clients,
4  your Honor.  That's the number one thing.
5       THE COURT:  The what?
6       MR. HAVILAND:  I'm concerned about those clients.
7  I've always been concerned about those clients.  They're the
8  folks represented since 2001 in Lupron and this case.  This
9  case is a case that we cocounseled with the Local 68
10 counsel.  We encouraged this coordination for the
11 Keefe Bartels firm so that your Honor would know fully about
12 this, as soon as Judge Bassler got appointed with his
13 experience as a federal judge, that he would speak with you
14 and that there wouldn't be a problem.  We're trying to avoid
15 that.
16      I think Mr. Jackson will agree, we've worked
17 cooperatively to make sure that we don't have a problem.
18 Nobody wants another Lupron.  I certainly don't want another
19 Lupron, your Honor, on my card.  I want to see this thing
20 worked out where everyone is brought to the table.
21      One thing we're disagreeing with defendants on is a
22 mediation.  Judge Bassler spoke at that conference a long
23 time about mediation.  We want the mediation to be here as
24 part of the mediation your Honor has ordered.  The defendants
25 didn't agree to that.  Their cover letter said, "No, we want

Page 20
1  something else."  So I don't know how that's going to play
2  out.  I suspect Judge Bassler is going to go with his
3  instincts and order that it happen here.  That's certainly
4  something we encourage.
5       MR. BERMAN:  Your Honor, this is Steve Berman.
6       THE COURT:  I need some thought from the
7  plaintiffs' team about what makes sense here, and then I need
8  to know from the defense team.  Although you don't have a
9  direct role in this, what happens in New Jersey will affect
10 you.  The last thing I want to do is to disqualify him if it
11 means that every class rep pulls out, and yet I'm worried
12 here.
13      MR. BERMAN:  Let me mention two things on that.  If
14 the class reps pull out, which I think he's -- I don't know
15 how he can do that consistent with his obligation to the
16 class, we've done an examination of this; and, unfortunately,
17 because we didn't want it to be this way, we think 99 percent
18 of the class reps that he currently has only bought drugs in
19 2004 or later.  And therefore, under your prior rulings, we
20 actually don't have consumer class reps for most of the
21 defendants at this point.
22      The second thing -- and I apologize I didn't point
23 this out earlier -- on the trustworthy issue, when I talked
24 to Professor Green about this, I think I should disclose to
25 the Court that he was very upset.  I mean, he said he

Page 21
1  couldn't call me for two days, he was so angry that
2  Mr. Haviland would file the internal workings, E-mails back
3  and forth of the settlement negotiations with the Court in
4  open court, because one thing you do with Professor Green is,
5  you sign a confidentiality statement that he thinks is like
6  the bible of how you have to conduct settlement
7  negotiations.  So he was very upset and concerned that that
8  happened and is trying to figure out, you know, going
9  forward, if Mr. Haviland is one of the co-lead counsel, you
10 know, how could this work.
11      MR. HAVILAND:  Your Honor, we sought leave to put
12 that under seal, and we're still asking you.  The request for
13 that is still before your Honor.
14      THE COURT:  When you filed it, did you file it with
15 a motion to seal?
16      MR. HAVILAND:  We sent it to your Honor first as
17 your Honor had asked for with a request that it be put under
18 seal, so that if there was --
19      MR. BERMAN:  It was filed on the ECF.
20      THE COURT:  Was that a mistake in court chambers,
21 or was that a mistake of counsel?
22      MR. HAVILAND:  Well, we don't know, your Honor.  We
23 first sent it to you when your Honor asked for the
24 declaration, and we asked that it be treated under seal.
25 The ECF picked it up on the Friday before that hearing.  We