```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS


                                     )
                                     )
IN RE:                               )  Civil Action
                                     )  No. 1:01-cv-12257-PBS
PHARMACEUTICAL INDUSTRY AVERAGE      )  June 22, 2011
WHOLESALE PRICE LITIGATION           )  Status Conference
                                     )  @2:25 p.m.
                                     )
                                     )




              BEFORE:   THE HONORABLE PATTI B. SARIS
                        UNITED STATES DISTRICT JUDGE








          John Joseph Moakley United States Courthouse
             1 Courthouse Way, Courtroom No. 19
                      Boston, MA  02210






                   Helana E. Kline, RMR, CRR
                      Official Court Reporter
           John Joseph Moakley United States Courthouse
                1 Courthouse Way, Room 5209
                      Boston, MA  02210
```

```
APPEARANCES:


For the Plaintiffs:


Kirby McInerney, LLP
 (By:  Joanne M. Cicala, Attorney at Law
       James P. Carroll, Jr. Attorney at Law &
       Daniel Hume, Attorney at Law)
825 Third Avenue
New York, New York  10022

For Sandoz, Inc.:

White & Case, LLP
 (By:  Paul B. Carberry, Attorney at Law)
1155 Avenue of the Americas
New York, New York  10036-2787

For Watson Pharmaceuticals, Inc.:

Sherin & Lodgen, LLP
 (By:  Katy E. Koski, Attorney at Law)
101 Federal Street
Boston, Massachusetts  02110

For Purepac Pharmaceutical, Co.:

Hyman, Phelps & McNamara, P.C.
 (By:  J.P. Ellison, Attorney at Law)
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C.  20005

For Endo Pharmaceuticals, Inc.:

Arnold & Porter, LLP
 (By:  Joseph W. Swanson, Attorney at Law)
555 Twelfth Street, N.W.
Washington, D.C.  20004-1206

For Schering-Plough Pharmaceuticals &
Warrick Pharmaceuticals Corporation:

Ropes & Gray, LLP
 (By:  John P. Bueker, Attorney at Law)
Prudential Tower
800 Boylston Street
Boston, Massachusetts  02199-3600
```

```
     APPEARANCES CONTINUED:

For Par Pharmaceutical, Inc.:

Williams & Connolly, LLP
(By:  Paul K. Dueffert, Attorney at Law)
725 Twelfth Street, N.W.
Washington, D.C.  20005

For Mylan, Inc., Mylan Pharmaceuticals, Inc. & UDL
Laboratories, Inc.:

Kelley, Drye & Warren, LLP
(By:  Christopher C. Palermo, Attorney at Law)
101 Park Avenue
New York, New York  10178

For TAP Pharmaceutical Products, Inc.:

Jones Day
(By:  Christopher M. Morrison, Attorney at Law)
100 High Street
Boston, Massachusetts  02110-1781
```

```
 1                     P R O C E E D I N G S
 2           THE CLERK:  All rise.  The United States District
 3   Court is now in session.  The Court calls Civil Action
 4   01-12257, In Re:  Pharmaceutical Industry.
 5       Will counsel please identify themselves?
 6           MR. CARBERRY:  Paul Carberry, White & Case, for
 7   Sandoz.
 8           MR. ELLISON:  J.P. Ellison, Hyman, Phelps & McNamara,
 9   for Purepac Pharmaceutical Company.
10           THE COURT:  For who?
11           MR. ELLISON:  Purepac Pharmaceutical Company.
12           THE COURT:  All right.
13           MR. WATSON:  Joe Swanson, Arnold & Porter, for Endo
14   Pharmaceuticals, Inc.
15           MS. CICALA:  Joanne Cicala, Kirby McInerney, for the
16   City of New York, New York County, and the State of Iowa.
17           MR. HUME:  Dan Hume also from McInerney.
18           MR. CARROLL:  James Carroll also with McInerney.
19           THE COURT:  All right.  For New York and Iowa?
20           MS. CICALA:  Yes.  Thank you.
21           THE COURT:  It's nice to see you all again, and let
22   me begin by just giving my deepest apologies.  I usually
23   don't run this late.  I usually pride myself on being early
24   and relatively on time, but I'm now Chairman of the United
25   States Sentencing Commission, and there was one of these
```

1  emergency conference calls, and it went on and on and on.
2      So I am sorry; but that having been said, let's figure
3  out where we are.  I did get a phone call from Mr. Green
4  this morning about some of the mediation activities that
5  have occurred in the past.  He doesn't tell me anybody's
6  confidential anything of those who have been involved but
7  just gives me an update.
8      So from your point of view, how many defendants are left?
9          MS. CICALA:  One.
10         THE COURT:  For both cases?
11         MS. CICALA:  Yes, your Honor.
12         THE COURT:  For New York and Iowa?
13         MS. CICALA:  For New York and Iowa.  We have
14 finalized settlements or agreements in principle with every
15 defendant except for Sandoz.
16         THE COURT:  Okay.
17         THE CLERK:  You can be seated.
18         THE COURT:  You may be seated, yes.  Although,
19 sometimes it's good to be standing; there are times it
20 keeps you in shape not so much sitting.  So let me just ask
21 you this, are you in a position or who have you finished,
22 recently finished, settlements with for whom you need
23 settlement dismissals?
24         MS. CICALA:  Every settlement that has been
25 finalized -- for every settlement that has been finalized

```
 1    we have already submitted dismissal papers, and those have
 2    been executed by the Court.
 3         We have a group of defendants where, as I say, we have
 4    agreements in principle with.
 5              THE COURT:  Who are they?
 6              MS. CICALA:  Those defendants are, the active
 7    defendants:  Alpharma and Purepac, who are part of the
 8    Ven-A-Care resolution in the federal case; Eli Lilly, these
 9    are all the defendants with whom we have agreements in
10    principle:  Endo, the Roche defendants, King/Monarch, which
11    we count as one, Merck, Mylan, Novartis, Par, Shire, TAP,
12    and Watson; and Watson, your Honor, were also part of the
13    larger federal Ven-A-Care case.
14              THE COURT:  What I want you to do is do what we
15    call a 90-day order.  It can be 120 days; it can be 60 days,
16    some order that basically dismisses all of those cases
17    unless the paperwork falls apart in which case two things
18    can happen:  motion to reopen/settlement fell apart or we
19    need extra time because we still need to cross the T's and
20    dot the I's, okay?  So you're going to do that -- when can
21    you do that by?
22              MS. CICALA:  By the end of this week, your Honor.
23              THE COURT:  Perfect.  Just give us, I don't know
24    what makes sense, 60 days, to keep everybody going, 120
25    days?
```

```
1              MS. CICALA:  That feels too long.
2              THE COURT:  Whatever it is, some period of time
3    which is a triggering mechanism, to just keep everybody
4    focused on it.
5       I'd love a two-week period of time, but that may be a
6    little bit much over July 4th, but you get the point.  So
7    you will do that by Friday and then a stipulation -- who is
8    the dismissal unless you reopen, so then that leaves us
9    with, at the end of the day, just with Sandoz?
10             MS. CICALA:  And for Sandoz --
11             THE COURT:  The states' share, that's what I heard
12   about.
13             MS. CICALA:  Assuming that the federal deal is
14   blessed, of course.
15             THE COURT:  No, I do understand that, and I do
16   understand.  By the way, Mr. Green was quick to point out
17   that everybody was working real hard.  In other words, this
18   wasn't -- there are some limitations for the company and
19   that this was not -- I was concerned last time with Sandoz,
20   I have to say, because it just fell too far apart, and I
21   didn't feel like people were working together.  I get the
22   sense that is not the case now.
23             MR. CARROLL:  I understand, your Honor, and I think
24   that is true.  Let me say that even in the past several
25   days we have had some discussions with counsel for New York
```

```
1    and Iowa, and we are certainly interested in hearing what
2    they have to say along the lines of resolving these two
3    cases in addition to the broader federal Ven-A-Care case
4    that was also before your Honor.
5         THE COURT:  Now, my law clerk leaves at the end of
6    August, and I have an impossible docket; and as far as we
7    can tell, there was a motion to extend discovery limits.
8       You're still alive until July 15th, we think.  Did
9    Judge Bowler act on that or is that something that's alive?
10        MS. CICALA:  Our second motion, that motion only
11   concerned the expert discovery, your Honor, and I believe
12   it is still subjudice.
13      I will tell you we have expert depositions planned,
14   plaintiffs' taking defendants' expert depositions; at this
15   point it looks like that would run through the end of
16   August, given everyone's respective schedules.
17        THE COURT:  And then with that, discovery will be
18   over?
19        MS. CICALA:  It is indeed, your Honor.
20        THE COURT:  Now, here's my problem, which is not
21   your problem, is that I've been lucky enough for the last
22   six years to have two-year law clerks who have been
23   following the case, and it's wonderful.
24      Now, the last one is leaving and they're not giving me
25   another extra law clerk because of budget problems with the
```

1  courts, and so I will be down to two law clerks; neither
2  of whom will have ever heard of the term AWP until
3  September 1st.
4      So you've got me; but as you saw from today's events,
5  you've got half of me because I'm spending so much time in
6  Washington, and so what I'm trying to do is not have this
7  play out forever, but I do think that until I have a
8  settlement we need to keep this on track.
9           MS. CICALA:  We agree very much, your Honor, and we
10 have some thoughts on the litigation calendar with regard
11 to Sandoz if the Court would like to hear it?
12          THE COURT:  Yes.
13          MS. CICALA:  Your Honor, the question that seems to
14 come to mind at the close of discovery and at the close of
15 expert discovery is, is the New York case ready to go back
16 to New York for trial, given the case was originally filed
17 in federal court in New York, and the answer to that
18 question is:  not yet.
19     And the reason for that is, in the first instance, that
20 related to your Honor's ruling on the FUL summary judgment
21 motion.
22          THE COURT:  By "FUL," you mean F-U-L?
23          MS. CICALA:  F-U-L.
24          THE COURT:  Whenever I hear "full," I'm thinking,
25 yes, I wrote in full.

```
 1          MS. CICALA:  I'm sorry, but in the context of that
 2   ruling, your Honor, you may recall that you determined that
 3   the plaintiffs had established liability for violation of
 4   the New York Statute 145(b), but the issue of damages was
 5   put off to another day, and your Honor had written that the
 6   Court will address issues relating to the calculation of
 7   damages and penalties following further briefing.
 8      So from the plaintiffs' perspective, your Honor, that's
 9   the next task once we get through expert discovery and then
10   we would like to propose establishment of a briefing
11   schedule.
12          THE COURT:  It would be somewhat of a Daubert-type
13   hearing?
14          MS. CICALA:  Certainly there would be elements of
15   that to the extent that the plaintiffs' presentation on
16   damages methodology will involve among other things the
17   Plaintiffs' expert reports.
18          THE COURT:  But if it's unique, let me just be clear
19   here:  if it's unique to this case somehow, I don't see why
20   that isn't something that just isn't handled in New York?
21          MR. CARBERRY:  Your Honor, that would be our
22   position.
23          MS. CICALA:  If my brother would please permit me
24   to finish.  The reason, your Honor, I think as best
25   articulated by the Court itself in the context of that
```

```
 1    summary judgment ruling and during your comments, for
 2    example, the California summary judgment hearing where you
 3    note the complexity of the issue related to the FUL, and
 4    that was something that this Court had already handled in
 5    part and would continue to handle so to introduce --
 6              THE COURT:  But I'm trying to figure out what you
 7    want me to do; in other words, you want me to grant summary
 8    judgment on damages?
 9              MS. CICALA:  No.  You've already granted summary
10    judgment on liability.  The question of the correct damage
11    methodology now to be applied is our next step so --
12              THE COURT:  But that's why I'm saying, Daubert.
13              MS. CICALA:  Okay.
14              THE COURT:  I mean, I'm assuming you're going to
15    have an expert on damages?
16              MR. CARBERRY:  Yes, we do, your Honor.
17              THE COURT:  And you'll have an expert on damages?
18              MS. CICALA:  Absolutely, your Honor.
19              THE COURT:  And if it goes to the methodology and
20    it's something that's uniquely understandable by me, but
21    something going to the experts' qualifications or something
22    going to be a disputed issue of fact as to how you
23    calculate it, it will go back to the state court; but
24    maybe that's too fine a line to draw, but at least I'm
25    thinking about it.
```

1    The only thing I'm going to keep is something that
2    somebody else is going to look at and hate me forever by
3    not resolving because it's something I've been dealing with
4    for a decade as opposed to something that's unique, you
5    know, that a trial judge does every day of the week on
6    qualifications where there's a fact dispute about were
7    these records authentic, upon which the damages are
8    predicated; are they reliable; is this a good summary of
9    factual information, that kind of thing.  That doesn't
10   necessarily happen before me.
11        MS. CICALA:  So your Honor's position will be that
12   this Court having ruled on liability, now it's for the
13   District Court in New York to take that liability ruling
14   and determine the correct damages that would --
15        THE COURT:  I don't want to pin myself down because
16   I don't remember what other issues there were.  Were there
17   other causes of action?
18        MS. CICALA:  Yes.
19        THE COURT:  So, I mean, they're all starting to
20   blend in my mind.  I've had so many of these multidistrict
21   litigations in Massachusetts; I've had, you know, so many
22   states.  I don't remember you specifically in terms of what
23   I did do and what was left.
24        MS. CICALA:  Right.  I understand, your Honor.
25        THE COURT:  So I'd have to look at it so I'm not

1   pinning myself down, but I do think that if there's
2   something that uniquely draws on my expertise over the
3   last decade, I feel as if it's part of my MDL jurisdiction
4   to try and help the transfer judge.  If it is something
5   unique to the case or unique to New York law where I don't
6   provide much value added --
7           MS. CICALA:  Right.
8           THE COURT:  -- it's just as appropriate for them to
9   handle it.
10          MS. CICALA:  Well, what this Court has itself said
11  on numerous occasions concerns the complexity of the FULs,
12  and this Court would handle the issues relating to FUL
13  reimbursements.
14          THE COURT:  You know what ... I'm just not willing
15  to commit myself.  Let's commit ourselves to a briefing
16  schedule however.
17          MS. CICALA:  Okay.
18          THE COURT:  Because this new law clerk is not going
19  to know anything about it, and I don't want it to take
20  another full year for me to just sort of have to worry
21  about it; I'd like to move it forward.
22          MS. CICALA:  We appreciate that, your Honor, and
23  I've studied very carefully your recent conferences, and
24  I understand your Honor's objectives here, I think, in
25  terms of getting the cases back to the state courts; and

```
 1    with regard to the state -- or, rather, the New York case
 2    in federal court, it's my reading of your Honor's comments
 3    over time was that the FUL fell into this category of
 4    something --
 5           THE COURT:  Maybe, but just let's just get a
 6    briefing schedule and I'll make a decision when I see it.
 7    If not, I'll heave it back with all the briefing already
 8    done, that's fine.  So you're going to finish your experts --
 9           MS. CICALA:  By the end of August.
10           THE COURT:  -- by the end of August; and if there's
11    a Daubert motion or motion for summary judgment or some such
12    thing.
13           MS. CICALA:  We could do additional briefing on
14    damages and penalties by the end of September, your Honor.
15           THE COURT:  By September 30th; by October 30th any
16    opposition.  Similarly, if you want a motion, you would do
17    it by September 30th, but I don't want thousands of pages;
18    20 pages each side, that's it.
19           MS. CICALA:  That's fine, your Honor.
20           THE COURT:  All right, and I just have one company;
21    I don't need -- so you'll file your dispositive motions.
22    You'll file an opposition and/or Daubert motion, and then
23    the usual reply, sur-reply, and then we'll have a hearing
24    in January.
25        Does that make sense?
```

```
 1              MS. CICALA:  Yes, your Honor.
 2              MR. CARBERRY:  Your Honor, putting aside for a
 3    second our disagreement with plaintiffs' counsel as to what
 4    issues should be sent back to the New York courts and what
 5    issues might benefit from your Honor's further guidance on
 6    those issues, those dates sound fine to us.
 7              THE COURT:  All right.  I mean, one thing I had in
 8    mind as well is don't forget that I've written ad nauseam
 9    about this so it may just be that if you gave a list of the
10    opinions to another judge that they'd learn whatever I have
11    stored up here and maybe more because I don't remember it
12    all, so, you know, that would be another option.  My key is
13    to finish it within the next year because I think you may be
14    one of the last standing cases.
15              MS. CICALA:  I think that the Sandoz state pieces of
16    New York and Iowa are the last state Medicaid cases that you
17    have, your Honor.
18              THE COURT:  All right, and I'm wrapping up the class
19    action --
20              MS. CICALA:  Right, understood.
21              THE COURT:  -- the class actions, and I think the
22    federal whistleblower cases are gone.  So I'm just saying
23    this is the tail or the end, and I'm eager to finish it,
24    and I'm thrilled you're still working with Professor Green,
25    that you're continuing to work with him, and, obviously,
```

```
 1   this will continue to put some pressure on people because
 2   it will mean people have to spend money to litigate it, and
 3   I don't know that -- as far as I'm concerned, we have one
 4   other case; we have Mississippi.  Is anyone here
 5   representing Mississippi?
 6           MR. BUEKER:  I'm a defendant in Mississippi.  I'll
 7   be here Friday.
 8           THE COURT:  I didn't even know there was a
 9   Mississippi.
10           MR. BUEKER:  Yeah, and I've been with the case for a
11   year-and-a-half.
12           THE COURT:  Right.  So there's a Mississippi case
13   out there too, but there really isn't much, right?
14           MR. BUEKER:  There's not, and we have a plan to move
15   it forward quickly, your Honor.
16           THE COURT:  Okay.  I know those plans involve lots
17   of pages of briefs and appendices.
18           MR. BUEKER:  I don't think so.
19           THE COURT:  Oh, okay. All right.  And once again,
20   I'm very sorry to have delayed you all, but I'm wondering
21   whether we should set a hearing date in January right now
22   so that everyone can get it on their calendar?
23           MS. CICALA:  Certainly, your Honor.
24           THE COURT:  Oh, she already did it.  She's wonderful.
25   January 25th at 2:30.
```

```
 1          MR. CARBERRY:  Your Honor, if I may, just to make
 2   sure the record is clear:  when I say that, when I say that
 3   the dates are okay with Sandoz, I don't mean to imply
 4   that we acquiesce with your Honor's keeping the summary
 5   judgments --
 6          THE COURT:  I understand that loud and clear.  In
 7   fact, I may be right in your camp.  I just don't remember
 8   it well enough; and even if I don't keep it, it will be
 9   fully briefed for whoever the judge is when it's sent back
10   there.  In other words, they won't have to start all over
11   again from scratch.
12          MR. CARBERRY:  Understood, your Honor.  Thank you.
13          THE COURT:  Okay.  Yes?
14          MR. MORRISON:  At the risk of losing the opportunity,
15   your Honor typically requires all parties -- I assume for
16   January you just want the parties remaining active?
17          THE COURT:  Absolutely.
18          MR. MORRISON:  Thank you.
19          THE COURT:  I am hoping the rest of you are earning
20   your kids' college education through some other case by
21   then; I am, all right?  And I'm really eager to wrap this
22   up next year.  I mean, I think, my other MDL will wrap up
23   at the end of this year, and I think this one should wrap up.
24      It will be a decade growing old together that's behind
25   us; but if I have to, I will resolve this one, but this
```

```
 1    will at least give me half a year with the law clerk and
 2    not have to start yet again with another one.  So I think
 3    the schedule makes sense to me and I'm unlikely to change
 4    the dates short of someone, and I hope this doesn't happen,
 5    someone getting sick or something like that.  I'm likely to
 6    stick with these dates.
 7         Okay.  Thank you very much.
 8              THE CLERK:  All rise.
 9              (Whereupon, the proceedings concluded at 2:56 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

   I, Helana E. Kline, a Registered Merit Reporter, Certified Realtime Reporter, and Federal Official Court Reporter of the United States District Court, do hereby certify that the foregoing transcript, from Page 1 to Page 19, constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of in re:  Pharmaceutical Industry Average Wholesale Price Litigation.

   /s/ Helana E. Kline                           June 26, 2011
   Helana E. Kline, RMR, CRR
   Federal Official Court Reporter