UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION ) ) ) ) ) | MDL No.1456<br>Master File No. 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO:<br>*Mississippi v. Boehringer Ingelheim Corporation*, *et al.*, Civil Action No. 09-12063-PBS ) ) ) ) ) ) ) |  |

**DEFENDANT BOEHRINGER INGELHEIM ROXANE, INC.,
F/K/A ROXANE LABORATORIES, INC.'S
<u>INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. RULE 26</u>**

Boehringer Ingelheim Roxane, Inc., f/k/a Roxane Laboratories, Inc., ("Roxane") makes the following initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure and Local Rule 26.2(a):

(A)  **The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

<u>**RESPONSE:**</u>

This action is in its initial stages, and Roxane's investigation into the facts and circumstances surrounding this action is not yet complete. Roxane accordingly bases these Disclosures on the information presently within its possession and reserves the right to supplement or amend these Disclosures as appropriate and to the extent required by the Federal Rules of Civil Procedure. Subject to the foregoing, Roxane discloses the following current and

former Roxane employees, who may have knowledge of relevant facts and circumstances relating to this case:

| Name | Specific Subject(s) of Information |
|---|---|
| Mike Doan | Marketing and/or sale of Roxane products to wholesalers and pharmacies; contracting between Roxane and wholesalers; contracting between Roxane and pharmacies. |
| Richard Feldman | Marketing and/or sale of Roxane products to wholesalers and pharmacies; contracting between Roxane and wholesalers; contracting between Roxane and pharmacies; pricing of Roxane products; communications with pricing compendia. |
| Dawn Gordon | Marketing and/or sale of Roxane products to wholesalers and pharmacies; contracting between Roxane and wholesalers; contracting between Roxane and pharmacies. |
| Christine Marsh | Contract administration for Roxane products. |
| Lesli Paoletti | Pricing and marketing of Roxane products. |
| John Powers | Contract administration for Roxane products. |
| James Rowenhorst | Eligibility of Roxane products for third-party reimbursement. |
| Steve Snyder | Marketing and/or sale of Roxane products to wholesalers and pharmacies; contracting between Roxane and wholesalers; contracting between Roxane and pharmacies. |
| Robert Sykora | Marketing and/or sale of Roxane products to wholesalers and pharmacies; contracting between Roxane and wholesalers; contracting between Roxane and pharmacies. |
| Anthony Tavolaro | Marketing and/or sale of Roxane products to wholesalers and pharmacies; contracting between Roxane and wholesalers; contracting between Roxane and pharmacies. |
| Edward J. Tupa | Pricing, marketing, and/or sale of Roxane products. |
| Tom Via | Marketing and/or sale of Roxane products to wholesalers and pharmacies; contracting between Roxane and wholesalers; contracting between Roxane and pharmacies. |
| Judy Waterer | Pricing and marketing of Roxane products. |

Current and former Roxane employees, including those listed above, should be contacted exclusively through counsel for Roxane:

>Helen E. Witt, P.C.
>Jordan M. Heinz
>Kristopher R. Ritter
>Kirkland & Ellis LLP
>300 N. LaSalle
>Chicago, IL 60654
>(312) 862-2000 (Telephone)
>(312) 862-2200 (Facsimile)

Roxane further states that current and former employees, representatives, and/or officials of the following entities are likely to have discoverable information in this case: branches, agencies, and departments of the Mississippi state government, including, but not limited to the Mississippi State and School Employees' Life and Health Insurance Plan ("MSHP"), the Mississippi State and School Employees' Health Insurance Management Board, the Mississippi Department of Finance and Administration, and the Mississippi State Department of Health, Division of Health Planning and Resource Development; pharmacy benefit managers ("PBMs"), including, but not limited to, Caremark/Advance PCS and Catalyst Rx; independent pricing compendia publishers, including, but not limited to First Data Bank; and wholesalers for pharmaceutical products, including, but not limited to AmerisourceBergen and McKesson. Current and former Mississippi pharmacists may also have discoverable information in this case. The identities of many of the individuals referenced above are best known to Plaintiff. Notwithstanding, Roxane herein discloses the following current and former employees, representatives, and/or officials of the entities referenced above, who are likely to have discoverable information that will support some or all of Roxane's defenses:

### Mississippi State Department of Health

**Brian W. Amy, M.D., M.H.A, M.S.P.H.**
State Health Officer
(Current address unknown)

**Harold B. Armstrong**
Chief, Mississippi State Department of Health
Division of Health Planning and Resource Development
(Current address unknown)

**Mary Currier, M.D. M.P.H.**
State Health Officer
Mississippi Department of Health
P.O. Box 1700
Jackson, MS 39215

**Rachel E. Pittman**
Chief, Mississippi State Department of Health
Division of Health Planning and Resource Development
(Current address unknown)

**F.E. Thompson, Jr., MD, MPH**
State Health Officer
(Current address unknown)

<u>**First DataBank**</u>

**Ed Edelstein**
(Current address unknown)

**Joseph L. Hirschmann**
(Current address unknown)

**Patricia Kay Morgan**
c/o Gold Standard
302 Knights Run Avenue, Suite 800
Tampa, Florida  33602
(813) 258-4747

Roxane further incorporates by reference all persons identified in the Rule 26 disclosures of the other parties to this action.  Roxane's identification of individuals in these Disclosures shall not be construed as an admission by Roxane that any information possessed by such individuals is relevant to or admissible in this litigation.

**(B)** **A copy of—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has**

4

> in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

**RESPONSE:**

This action is in its initial stages, and Roxane's investigation into the facts and circumstances surrounding this action is not yet complete. Roxane reserves the right to supplement or amend these Disclosures as appropriate and to the extent required by the Federal Rules of Civil Procedure. Subject to the foregoing, Roxane herein sets forth a description by category of documents, data compilations, and tangible things that it has or controls, and of which it is aware at this time, that it may use to support its claims or defenses in this matter:

### Documents in Roxane's Possession or Control

1. Roxane's communications with independent pricing compendia publishers regarding their practices and procedures and Roxane products at issue in this case.

2. Roxane's communications with the MSHP, agents of the MSHP, and/or other Mississippi state agencies, if any, regarding the pricing, pricing benchmarks, rebates, supplemental rebates, and/or reimbursement for Roxane products at issue in this case.

3. Roxane's communications with Mississippi state purchasers, if any, regarding the pricing and/or reimbursement for Roxane products at issue in this case.

4. Publicly available reports and publications that did or should have alerted the State of Mississippi and/or Mississippi state agencies, including MSHP, that figures reported by First DataBank and other third party pricing compendia were only benchmark prices and did not reflect the acquisition costs of drugs for health care providers. *See, e.g.*, Medicare Action Transmittal No. 84-12, reprinted in Medicare and Medicaid Guide (CCH) § 34,157 at 2 (1984); Biil Alpert, *Hooked on Drugs*, Barron's, Vol. LXXVI, June 10, 1996, at 15; Spencer Rich, *Battling the High Prices Medicare Pays for Drugs*, The Washington Post, Jan. 2, 1997.

5. Exhibits referenced during the depositions of individuals, including current and former Roxane employees that have been taken in other AWP related cases in other jurisdictions.

### Documents in the Possession or Control of Plaintiff and/or Third Parties

1. Documents reflecting communications between MSHP or the State of Mississippi and the following entities or individuals, if any, regarding pharmaceutical pricing,

5

rebates, and reimbursement, including with respect to Roxane products at issue in this case; calculations of prescription drug reimbursement rates and dispensing fees under MSHP; AWP, WAC, MAC, Direct Price, FUL, acquisition cost or other drug pricing designations; and methods of calculating reimbursement for pharmaceutical drug pricing:

    a. independent pricing compendia;

    b. Private payors/buyers;

    c. Providers (including, but not limited to, physicians and pharmacies, or any provider group);

    d. any other Mississippi state government institution, body, entity, agency, department, or office;

    e. any other state governments (including any related body, entity, agency, department, or offices of that state government);

    f. third party administrators;

    g. Ven-A-Care of the Florida Keys, Inc.;

    h. defendant manufacturers;

    i. Health Management Organizations or Managed Care Organizations;

    j. the State of Mississippi's fiscal agent or any other agent or consultant retained by the State;

    k. the MSHP's PBMs, Caremark/Advance PCS and Catalyst Rx;

2. Publicly available reports and publications that did or should have alerted the State of Mississippi and/or Mississippi state agencies, including MSHP, that figures reported by First DataBank and other third party pricing compendia were only benchmark prices and did not reflect the acquisition costs of drugs for health care providers.

3. Documents concerning any Federal or Mississippi State Medicaid Fraud Control Unit investigation regarding AWP, WAC, or acquisition costs for prescription drugs.

4. Documents concerning MSHP's or the State of Mississippi's knowledge of any differences between the average of actual acquisition costs and published AWPs or WACs for prescription drugs, and any actions taken or considered by the State in relation to such knowledge, including the knowledge of the PBMs.

5. Organizational charts or similar documents for the relevant period, that name or describe MSHP's or the State of Mississippi's employees involved, or in any way responsible for, the administration or oversight of the MSHP for the relevant time period.

6. Documents relating to MSHP's budget.

7. Documents prepared, reviewed, or received by MSHP, its PBMs, or the State of Mississippi concerning the interpretation of AWP, WAC, Direct Price, and/or EAC.

8. Documents concerning any AWP, WAC, or Direct Price purported to be attributable to a Targeted Drug, and how MSHP or the State of Mississippi obtained such pricing information.

9. Documents relating to any requests, surveys (actual or proposed), or efforts undertaken by MSHP or the State of Mississippi or any of its agents or PBMs to determine the actual acquisition cost of prescription drugs to providers.

10. Documents relating to the cost to Mississippi pharmacies or to any other providers of dispensing prescription drugs.

11. Documents concerning First DataBank or any other pricing compendia, including, but not limited to, documents produced by and communications with pricing compendia concerning AWP or WAC, the process by which First Data Bank calculated AWP or WAC, all pricing compendia manuals, instructions, and directions, and any contracts or agreements with pricing compendia.

12. Documents reflecting the actual or estimated amount MSHP paid in reimbursement for Roxane products at issue in this case.

13. Documents reflecting the amount of MSHP's alleged losses, damages, or overpayments as a result of defendants' alleged conduct, or any estimate or computation of such alleged losses, damages, or overpayments.

14. Documents reflecting efforts and actions, whether through administrative proceedings or otherwise, by MSHP or on MSHP's behalf, to recover the overpayments allegedly made by MSHP to providers in reimbursement for prescription drugs.

15. Documents identifying the name and address of each provider eligible to submit claims to MSHP regarding Roxane products at issue in this case during the relevant time period.

16. Documents sufficient to show the definition of a provider under MSHP, any requirement to qualify as a provider under MSHP, and rules or regulations governing providers in Mississippi, including, but not limited to, any contracts or agreements with providers.

17. Documents sufficient to show the information a provider must submit in order to obtain reimbursement under MSHP, including, but not limited to, all audits of any pharmacy or provider.

18. Documents related to the calculation, monitoring, processing, or payment of claims for reimbursement for Roxane products at issue in this case, including communications with providers concerning reimbursement and examples of provider claims forms used during any period for which MSHP claims damages.

19. Documents concerning any dispensing or sale of any prescription drugs by MSHP or the State of Mississippi, including claims data and any reimbursement for drugs so dispensed or sold that were based on AWP or WAC.

20. Documents, including copies of all statutes, regulations, rules or other authority, on which MSHP relies to support its claim that defendants had a duty or obligation to price their prescription drugs in a particular way, to refrain from discounting the prices of prescription drugs, or to publicly disclose the results of confidential negotiations relating to prescription drug pricing.

21. All documents supporting, refuting, or otherwise concerning any of the specific allegations or claims in MSHP's Complaint.

22. Documents concerning the advantages and benefits, including, but not limited to, relative cost savings, of requiring pharmacists to dispense a multiple source drug when one is available or of reimbursing pharmacists for multiple source drugs rather than for other drugs.

23. Documents provided to or by and communications with First Health Services Corporation, Electronic Data Systems Corporation ("EDS"), Health Information Design ("HID"), or any other third party claims administrator or pharmacy administrative service contractor concerning pharmaceutical pricing or reimbursement, AWP, WAC, or acquisition cost.

24. Documents concerning any organization or group in which MSHP or the State of Mississippi participates, or from which MSHP or the State of Mississippi has received information, whose purpose, in whole or in part, concerns prescription drugs or reimbursement for such drugs, including the MSHP's or the State of Mississippi's participation in MMCAP or other group purchasing organizations or use of managed care organizations.

25. Documents relating to MSHP's or the State of Mississippi's actual or potential contractual relationships with PSMs, third party administrators, benefit consultants, auditors, wholesalers, manufacturers, insurers, independent practice associations, retailers, mail-order pharmacies, providers, trade associations, or lobbyists, where such relationships relate to reimbursement for, purchases of, or expenditures for products at issue in this case.

26. Contracts that MSHP alleges defendants tortuously interfered with.

27. Contracts between MSHP, agents of MSHP, or any other Mississippi state agencies and a PBM.

28. Documents concerning any reimbursement provided to a PBM by MSHP, agents of MSHP, or any other Mississippi state agencies.

29. Reports provided by any PBM to MSHP.

In making these disclosures, Roxane has not completed its search for, and in any event specifically excludes, any documents protected from disclosure by the attorney-client privilege or the work product doctrine, including, but not limited to, the following types of documents:

1. Documents seeking or reflecting legal advice given to Roxane by Roxane's counsel. These communications have not been voluntarily disclosed to any persons other than employees of Roxane, counsel representing Roxane, or their agents.

2. Documents reflecting the mental impressions of attorneys representing Roxane, or containing or reflecting work undertaken at the direction of attorneys representing Roxane. These communications have not been voluntarily disclosed to any persons other than employees of Roxane, counsel representing Roxane, or their agents.

3. Documents seeking or reflecting work product by Roxane's counsel, in connection with pending or anticipated litigation involving allegations similar to those in this case. These communications have not been voluntarily disclosed to any persons other than employees or Roxane, counsel representing Roxane, or their agents.

4. Statements taken by or at the direction of counsel for Roxane, which relate to the facts and circumstances surrounding other litigation or anticipated litigation involving allegations similar to those in this case, and which have not been voluntarily disclosed to persons other than employees of Roxane, counsel representing Roxane, or their agents.

5. Documents seeking or reflecting information covered by the joint defense privilege.

**(C)** **A computation of any category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

**RESPONSE:**

Roxane is not asserting a claim for damages at this time. Plaintiff has the burden of proving damages. Roxane disputes liability and, to the extent it is necessary and appropriate, will also contest Plaintiff's damages claim. Without limitation, Roxane denies that Plaintiff has suffered any injury whatsoever.

**(D)   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

**RESPONSE:**

Roxane does not have such an insurance agreement under which an insurance carrier will be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Dated: July 1, 2011

                Respectfully submitted,

                     /s/ Kristopher S. Ritter
                Helen E. Witt, P.C.
                Jordan Heinz
                Kristopher S. Ritter
                KIRKLAND & ELLIS LLP
                300 N. LaSalle
                Chicago, IL 60654
                Telephone: (312) 862-2000
                Facsimile: (312) 862-2200

                *On behalf of Defendant Boehringer Ingelheim Roxane, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was delivered to all counsel of record by electronic service pursuant to Paragraph 11 of Case Management Order No. 2, by sending on July 1, 2011, a copy to LexisNexis File and Serve for posting and notification to all parties.

    /s/ Kristopher S. Ritter
Kristopher S. Ritter