IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Judge Patti B. Saris<br><br>(Leave to File Granted on<br>July 7, 2011) |

**SUR-REPLY TO CLASS COUNSEL'S REPLY BRIEF IN SUPPORT OF
THEIR MOTION TO ADD INDIVIDUAL PLAINTIFFS AS CLASS
REPRESENTATIVES FOR THE TRACK TWO SETTLEMENT**

Certain Named Plaintiffs hereby submit the following Sur-Reply to Class Counsel's Reply Brief in Support of Their Motion to Add Individual Plaintiffs as Class Representatives for the Track Two Settlement. Once again, when this Court parses through Class Counsel's belabored attacks on the undersigned and Certain Named Plaintiffs, and their responses to their self created issues,[1] it will be clear that nothing has changed - Class Counsel has not demonstrated that the proposed class representatives "(a) made some payment, (b) for a [Track 2 Defendant's] product at issue, (c) during the relevant time period, that was (d) based upon a published AWP for [the Track 2 Defendant's] product." Dkt. No. 2797 at 1.

**I.      Class Counsel Still Has Not Established that the Proposed Representatives Have Standing**

---

[1] For example, Class Counsel claim that the undersigned "suggests that each proffered Representative should have paid for every Track Two drug." While Class Counsel dedicate five (5) pages discussing this claim, it is simply not true that Certain Named Plaintiffs have made this argument. The actual argument, which should be quite fundamental for Class Counsel to understand, is that Class Counsel have not established that the proposed Plaintiffs purchased a single drug that would establish standing against the Track 2 Defendants, even given this Court's "one plaintiff-one defendant" rule.

1

Class Counsel reiterate a number of the same arguments and conclusory statements regarding the standing of the individual additional putative class representatives, yet they once again fail to establish their standing.

### A. The Claim Forms, if Accurate, Do Not Demonstrate Payment

Class Counsel continue to rely on the Track 2 claim forms to demonstrate that the proposed representatives paid for a Subject Drug. However, as Class Counsel conceded, the claim forms do not evidence payment for any of the drugs. Rather, as Class Counsel previously recognized in their Post-Hearing Supplemental Memorandum in Support of Motion for Final Approval of Class Action Settlement with AstraZeneca, "most [beneficiaries identified by CMS] are not Class Members because they had full supplemental insurance coverage."[2] *See* Dkt. No. 5446 at 10 of 30.

Perhaps more importantly, the accuracy of the claim forms is questionable. For example, Class Counsel rely on the Track 2 claim form to show that Ms. Swayze took certain Track 2 drugs. At pages 10-11 of her Affidavit, Dkt. No. 7572-1, the claim form indicates that she took Epogen on eight (8) separate occasions between January 7, 2003 and March 18, 2003. However, despite Class Counsel's efforts to redact the Swayze documents produced to the undersigned the day of the Fairness Hearing as discussed in Named Plaintiffs' Opposition, we now know that Ms. Swayze <u>never treated with Epogen</u>; rather she received Procrit during that time period.[3] Making

---

[2] Undoubtedly, Class Counsel will ignore the substantive issue that the CMS data does not establish payment and will not address their own concession of the same, but will instead attack the undersigned by pointing out that their concession was made in opposition to the undersigned's view that settlement checks should be sent to the beneficiaries established by CMS for the AstraZeneca settlement. However, the difference between relying on the CMS data for efficient and economic allocation of settlement funds and relying on the same to establish Article III standing should be quite obvious, at least to the Court.

[3] As Amgen pointed out to this Court in its Opposition to Class Certification (Dkt. No. 2801), "Epogen and Ortho Biotech's Procrit are the same biologic (Epoetin alfa), but are marketed for different indications. The codes assigned to Epoetin alfa distinguish different uses but do not distinguish between the two brands. Thus, an individualized inquiry is required of every payment for Epoetin alfa to determine if the payment was for Epogen or

light of their multiple direct misrepresentations to the Court, and failing to explain the same, Class Counsel concede at footnote 13 "it does indeed appear that Ms. Swayze was not administered Amgen's Epogen as was initially believed (Procrit and Amgen [sic] share the same J-Code), as demonstrated by Ms. Swayze's subsequently-produced records."[4]

In case there is any doubt as to the shortcomings of Class Counsel's proffer regarding the putative class representatives, given the many different arguments and angles taken by Class Counsel in their Reply Brief that simply do not address the fundamental issue that they have not met their burden,[5] Certain Named Plaintiffs direct the Court to an earlier filing by Class Counsel wherein they set forth in a clear and cogent manner direct proof that one of their association plaintiffs, Local 537, had in fact "(a) made some payment, (b) for a [Track 2 Defendant's] product at issue, (c) during the relevant time period, that was (d) based upon a published AWP for [the Track 2 Defendant's] product."[6]  In Class Plaintiffs' Submission Regarding Reimbursement for Anzemet by Pipefitters Local 537 Trust Fund, Class Counsel set forth a number of documents that proved that Local 537 paid based on AWP, including citing to the

---

for Procrit.  Neither drug is commonly referred to in provider statements by brand name, but instead, is typically referred to simply as Epoetin alfa or by one of the J codes."

[4] To be clear, the records which were only recently subsequently produced to the undersigned, were produced to Class Counsel on June 22, 2007.  Class Counsel cannot claim to have only now come to this "revelation" that Ms. Swayze never took Epogen in order to shield themselves from their apparent misrepresentations when they have had the unredacted documents for over four (4) years.

[5] Parties seeking class certification – including certification of a settlement class - have the burden of establishing the elements necessary for class certification.  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14 (1997); *In re Relafen Antitrust Litigation*, 225 F.R.D. 14 *3 (D. Mass. 9/2/04) (Young, J.).  The lone exception is that because plaintiffs move to certify a settlement class, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem,* 521 U.S. at 620.  The other requirements of Rule 23, however - "those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context...for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

[6] Of course, Certain Named Plaintiffs maintain their objection that the association plaintiffs do not legally have standing, the foregoing citations is simply meant to demonstrate that Class Counsel are fully aware of the necessary proofs to establish standing - if it can legally be conferred - they simply have not done so respecting the putative consumer representatives.

3

Court the relevant AWP of Anzemet at the time ($155.88) and demonstrating the math that proved that the Fund had in fact paid for Anzemet based on AWP.[7] Dkt. No. 4677.

Thus, Class Counsel is well aware of the necessary showing to establish the standing of the putative consumer representatives. In this instance, Class Counsel simply have not satisfied the standard.

### B.  Product Identification

Class Counsel claim that the Court "long ago" resolved the issue that the proposed representatives lack standing because they paid for multi-source drugs and therefore cannot identify the manufacturer of the drug(s).  However, though they make the statement twice, Motion at 2 and 9, they do not provide a citation to any ruling by the Court to this effect.  In fact, the Court has not "resolved" the issue.

Class Counsel's citations to product liability cases regarding theories of alternate and market-share liability are unavailing.  Aside from the obvious differences between the subject matter and the instant case, there is simply no "relaxation" of the Article III standing requirement and Class Counsel have not provided any cases that allow such relaxation.

---

[7] The filing states in relevant part:

> This conclusion is drawn from the following observations. The BCBSMA data related to the Fund shows two reimbursements in 2001 by the Fund for the drug Anzamet. See Declaration of Edward Notargiacomo ("*Notargiacomo Decl.*") Exh. A. The data shows that the co-payment amount paid by the consumer for both of these transactions ("COINS_Amt") was $14.81. The data also shows that the amount paid by the Fund ("Paid_Amt") to be $133.29 per transaction. Adding the co-payment and the amount paid by the Fund confirms the allowed amount indicated in the data ("Allowed_Amt") of $148.10 ($14.81 + $133.29 = $148.10). The 1999 AWP for Anzamet was $155.88. *Notargiacomo Decl.* Exh B. An allowed amount of $148.10 is 95% of the 1999 AWP for Anzamet of $155.88 (.95 X $155.88 = $148.086).

Dkt. No. 4677 at 1-2.

### C. The individual proffers

Class Counsel have not pointed to a single document for each individual proposed class representative that proves that they (a) made some payment, (b) for a Track 2 Defendant's product at issue, (c) during the relevant time period, that was (d) based upon a published AWP for the Track 2 Defendant's product. Instead, they try to muddy the already murky waters by, *inter alia,* baldly asserting to the Court by stating that the basis of Magistrate Bowler's Order, that "Haviland's representation to Judge Bowler that Class Counsel had done nothing other than produce the Track Two Settlement claim forms for these proposed Representatives," was false. In fact, prior to Magistrate Bowler's Order, the claim form was the only document produced for Ms. Laday. They then attempt to attack the undersigned point-by-point with conclusory statements regarding what Class Counsel has done, instead of simply establishing the standing of the proposed individuals. There is no reason why the same minimal showing of standing that has applied to every class representative in this case,[8] should not apply to the instant settlement.

Among the many arguments that Class Counsel make to avoid addressing the fundamental issue of standing is their belief that because the undersigned allegedly did not object at preliminary approval to Ms. Tonacchio in 2008, Certain Named Plaintiffs objection at final approval is waived. They are wrong. It remains their burden to show standing, whether there is an objection or not. *See e.g.,* Order dated March 29, 2011 at Dkt. No. 7483 (dismissing, without prejudice, the *certified* litigation J&J subclass of Class 1 on finding that "plaintiffs have not

---

[8] The showing applied to the J&J subclass, which was dismissed for Class Counsel's failure to establish standing because they did not proffer written records demonstrating that their proposed class representative took Remicade during the relevant time period.

5

demonstrated that Mrs. Oustad is an adequate class representative under Fed.R.Civ.P. 23(a)", despite the Court's prior preliminary approval of Mrs. Oustad).[9]

With respect to Ms. Swayze, even though they concede that she was a not a class representative at the time Class Counsel entered into the subject settlement without a consumer class representative, Class Counsel state that she "was kept apprised of the status of the case and settlement negotiations."  This argument fails on its face as, by Class Counsel's concession, the "settlement negotiations" were concluded prior to Ms. Swayze's involvement.  Even still, we will never know when and to what extent Ms. Swayze and the other individuals became involved in the litigation because the undersigned has been denied the opportunity to conduct discovery or inquire at the Fairness Hearing. Class Counsel has told the Court that they did not even bother telling any of the individuals about their proposed "rebalancing".  June 13, 2011 Tr. at 27:14-16. Accordingly, the record shows only that these proposed representatives were cherry-picked from claims data *after* the settlement was entered into by Class Counsel. Thus, they have served no meaningful purpose for *fait accomplis*.

While Class Counsel press their claims of standing for Mr. Trusky as to Amgen, as discussed at the June 13 Fairness Hearing, at most that is one of the Track 2 Defendants.  At the April 27, 2009 hearing, Class Counsel represented to the Court that the Court had said "[g]oing forward, this is a dying class, I may consider one Part B representative being good enough for a group of defendants, so go make sure you find at least one" April 27, 2009 Tr. at 76:8-10. Apparently not recalling making such statement, the Court asked Attorney Berman for the transcript section where the Court had made this comment and Attorney Berman said he "will go

---

[9] Demonstrating that they do not understand the Supreme Court's *Amchem* decision, Class Counsel attempt to differentiate the Court's Oustad Opinion from the current situation where they have not demonstrated that the proposed settling plaintiffs have standing  arguing that Oustad was dismissed "because she was lacked standing for a *litigation* Class, not a settlement Class." FN 6.

6

get it." *Id.* at 76:13-15.  The Court never did make the ascribed comment, and instead, the Court has insisted on Class Counsel proffering a putative class representative for each defendant in the litigation, consistent with the long-standing "one plaintiff-one defendant" rule.  It appears that Class Counsel wisely chose to abandon this argument; nevertheless, the one plaintiff-one defendant rule is intact and Class Counsel have failed to demonstrate standing to meet this standard.

## II.  Adequacy & Typicality

Class Counsel claim that Certain Named Plaintiffs' objection to the **fact** that the proposed class representatives had **absolutely no role** in the settlement and that therefore they are inadequate to represent the Class ignores the "relevant law."[10]  Reply Brief at 20.  Once again, Class Counsel simply make this conclusory statement without identifying any relevant law to support their position.  That is because there is no case which stands for the proposition that the lawyers in a putative, uncertified class action may troll through the settlement claims administrator's database of proposed settlement class claimants to find prospective plaintiffs to sponsor their lawyer-driven settlement.

Class Counsel make yet another unsubstantiated claim regarding the putative class representatives stating: "[w]here class representatives are sufficiently involved in the case - *as these proposed representatives are* - there is nothing inappropriate about a class representatives' reliance on advice of counsel."  Reply Brief at 21 (emphasis added).  Although the proposed putative class representatives attest to having varying degrees of awareness about the litigation,[11]

---

[10] "[A]dequacy of representation is the key to the integrity of class litigation, not only in pragmatic terms of the efficiency and thoroughness of the proceedings but far more importantly in relation to the fair and just resolution of the dispute." *Folding Cartons, Inc. v. American Can Co.*, 79 F.R.D. 698, 701 (N.D.Ill.1978).

[11] Consumers Laday and Trusky claim to have reviewed the terms of the proposed settlement, Tonacchio was "provided with information regarding [Class Counsel's] settlement", and Swayze claims to have been "kept apprised of the status of the case and of *settlement negotiations*" (emphasis added), however, again, as of the June 13, 2011

7

this *ex post facto* awareness of a settlement is not the "involvement" envisioned by the court's cited by Class Counsel. In fact, Class Counsel conveniently isolate a favorable line from the *In re Tyco* case stating that class representatives do not need to possess "expert knowledge" to be adequate and ignore the qualifying language that follows.  The *In re Tyco* court proceeds to state:

> However, individuals should not serve as class representatives if they possess 'so little knowledge of and involvement in the class action that they [are] unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'  The adequacy requirement is satisfied 'unless [the class representatives'] participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case.'

2006 WL 2349338, *2 (D.N.H.,2006) (citations omitted)

As mentioned in *Kirkpatrick v. J.C. Bradford & Co.,* a complex securities case that predated the PSLRA, which is cited by the *In re Tyco* court:

> As the district court aptly noted, a potential class is entitled to "more than blind reliance upon even competent counsel by uninterested and inexperienced representatives." *In re Goldchip Funding Co.,* 61 F.R.D. at 594. For where the named plaintiffs "have abdicated their role in the case beyond that of furnishing their names as plaintiffs," the attorneys, in essence, are the class representative. *Helfand v. Cenco,* 80 F.R.D. 1, 7-8 (N.D.Ill.1977).  Several district courts thus have properly denied class certification where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys. *See, e.g., Efros v. Nationwide Corp.,* 98 F.R.D. 703, 707 (S.D.Ohio 1983); *Helfand v. Cenco, supra; see also* 7A Wright, Miller & Kane at §1766 pp. 310-11 (the "inquiry into the knowledge of the representative is to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney.")

827 F.2d 718 (11th Cir. 1987).  *See also Darvin v. International Harvester Co.,* 610 F.Supp. 255, 257 (S.D.N.Y. 1985); *Massengill v. Board of Educ.,* 88 F.R.D. 181 (N.D.Ill.1980) (finding that

---

Fairness Hearing, none of the individuals were even consulted regarding the rebalancing of the settlement fund Class Counsel unilaterally endorse.

8

that Rule 23(a)(4) was not satisfied where the named plaintiffs demonstrated insufficient participation in and awareness of the litigation.).[12]

Here, as in the above-cited cases, there should be no question that the attorneys have conducted this case. In fact, there was nothing for the proposed individuals to abdicate - the attorneys have been the only people conducting the case for the past several years. The individuals have simply been brought in after the case has been settled - at least to Class Counsel's satisfaction - to simply lend their name as a "plaintiff".

Contrary to yet another conclusory statement by Class Counsel, it is far from "clear that the present Representatives are excellent representatives for the Class." The Court has already refused to certify a litigation class with the association plaintiffs and any argument by Class Counsel that attempts to differentiate that ruling from the current posture ignores the Supreme Court's instruction in *Amchem. See* 521 U.S. at 620. (holding that the requirements for Rule 23 certification, other than the 23(b)(3)(D) manageability requirement, "those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.").

At the end of the day, Class Counsel can continue to claim that "the proposed Class Representatives are adequate even if they did not participate in the original [and only] Settlement negotiations", and continue to make bald conclusory statements, but it is the Court who is

---

[12] It should be noted that the adequacy analysis in the above-cited cases all centered around discovery from the putative class representatives in those cases. In this case, despite the Court's acknowledgement that "the deposition of the class rep is a pretty standard thing", April 27, 2009 Hrg. Tr. at 75:13-14, Certain Named Plaintiffs' attempts to get discovery have been quashed. Accordingly, the Court is left with nothing more than affidavits created by Class Counsel that were signed, in most cases over three years after the subject settlement was negotiated by Class Counsel.

actually charged with a fiduciary duty to analyze the settlement and the certification requirements with "undiluted, even heightened, attention." The one thing that all parties agree on, including Class Counsel, the Defendants, Certain Named Plaintiffs, the other objectors, and the Court, is that there is simply no precedent, in this Circuit or in any court throughout the country, that sponsors what Class Counsel is attempting to do in this case by folding in putative class representatives, identified as part of the claims process in this case years after Class Counsel unilaterally entered into a settlement, to serve as adequate and typical class representatives.

Dated: July 6, 2011                             _/s/ Donald E. Haviland, Jr._____
                                                          Donald E. Haviland, Jr., Esquire
                                                          Michael J. Lorusso, Esquire
                                                          **Haviland Hughes, LLC**
                                                          111 S. Independence Mall East, Suite 1000
                                                          Philadelphia, PA 19106
                                                          (215) 609-4661

                                                          Attorneys for Certain Named Plaintiffs

**CERTIFICATE OF SERVICE**

I, Donald E. Haviland, Jr., hereby certify that on July 7, 2011 the foregoing Sur-Reply to Class Counsel's Reply Brief in Support of Their Motion to Add Individual Plaintiffs as Class Representatives for the Track Two Settlement, for which leave to file was granted by electronic order dated July 7, 2011, was filed via CM/ECF and all counsel of record were served via ECF notification.

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr.