1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3    _____

4    THE STATE OF MISSISSIPPI,

5                    Plaintiff,        Civil Action
                                       No. 09-12056-PBS
6    V.                                No. 01-12257-PBS

7                                      June 24, 2011
     ABBOTT LABORATORIES, INC., et al.,
8                                      3:06 p.m.
                     Defendants.
9    _____

10

11

12              TRANSCRIPT OF STATUS CONFERENCE

13         BEFORE THE HONORABLE PATTI B. SARIS

14             UNITED STATES DISTRICT COURT

15         JOHN J. MOAKLEY U.S. COURTHOUSE

16                 1 COURTHOUSE WAY

17               BOSTON, MA  02210

18

19

20

21
                    DEBRA M. JOYCE, RMR, CRR
22                  Official Court Reporter
                 John J. Moakley U.S. Courthouse
23              1 Courthouse Way, Room 5204
                    Boston, MA  02210
24                    617-737-4410

25

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFF:

 3    JAMES L. WARD, JR., ESQ.
      Richardson, Patrick, Westbrook & Brickman, L.L.C.
 4    1037 Chuck Dowley Blvd.
      P.O. Box 1007
 5    Mt. Pleasant, SC 29465
      843-727-6500
 6
      STUART H. McCLUER, ESQ.
 7    McCulley McCluer PLLC
      1223 Jackson Ave E, Suite 200
 8    PO Box 2294
      Oxford, MS 38655
 9    662-236-1401

10    FOR THE DEFENDANTS:

11    HELEN WITT, ESQ.
      Kirkland & Ellis LLP
12    300 N. LaSalle
      Chicago, IL 60654
13    312-862-2000

14    JOHN P. BUEKER, ESQ.
      Ropes & Gray - MA
15    Prudential Tower
      800 Boylston Street
16    Boston, MA 02199-3600
      617-951-7000
17
      W. PATRICK DOWNES, ESQ.
18    Dornbush, Schaeffer, Strongin & Venaglia, LLP
      747 Third Avenue
19    New York, NY 10017
      212-759-3300
20
      MICHAEL L. KOON, ESQ.
21    Shook, Hardy, & Bacon
      2555 Grand Blvd
22    Kansas City, MO 64108
      816-474-6550
23

24

25
```

1    TINA M. TABACCHI, ESQ.
     Jones Day
2    Suite 3500
     77 West Wacker Drive
3    Chicago, IL 60601-1692
     312-782-3939
4
     SHAMIR PATEL, ESQ.
5    Dickstein Shapiro LLP
     1825 Eye Street NW
6    Washington, DC 20006-5403
     202-420-2200
7
     JASON R. PARISH, ESQ.
8    Kirkland & Ellis LLP
     655 Fifteenth Street, N.W.
9    Washington, DC 20005
     202-879-5000

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2              (The following proceedings were held in open

 3    court before the Honorable Patti B. Saris, United States

 4    District Judge, United States District Court, District of

 5    Massachusetts, at the John J. Moakley United States Courthouse,

 6    1 Courthouse Way, Boston, Massachusetts, on June 24, 2011.)

 7              THE CLERK:  Court calls civil action 01-12257 In Re

 8    Pharmaceutical Industry.

 9              Would counsel please identify themselves for the

10    record.

11              MR. WARD:  Good afternoon, your Honor.  James Ward

12    from Richardson, Patrick, Westbrook & Brickman on behalf of the

13    State of Mississippi.

14              MR. McCLUER:  Stuart McCluer from McCulley McCluer,

15    also on behalf of the State of Mississippi.

16              MS. WITT:  Good afternoon, your Honor.  Helen Witt on

17    behalf of the Boehringer defendants, Roxane, and Ben Venue.

18              MR. BUEKER:  Good afternoon, your Honor.  John Bueker

19    from Ropes & Gray on behalf of Schering-Plough.

20              MR. KOON:  Good afternoon, your Honor.  Michael Koon

21    from Shook, Hardy & Bacon for defendant Aventis

22    Pharmaceuticals.

23              MS. TABACCHI:  Good afternoon, your Honor.  Tina

24    Tabacchi from Jones Day.  I'm here today on behalf of Abbott,

25    TAP, and Takeda.
```

1          MR. PATEL:  Good afternoon, your Honor.  Shamir Patel,

2  Dickstein Shapiro on behalf of Baxter Healthcare.

3          MR. DOWNES:  Your Honor, Patrick Downes from Dornbush,

4  Schaeffer, Strongin & Venaglia on behalf of Forest defendants.

5          MR. PARISH:  Good afternoon, your Honor.  Jason Parish

6  from Kirkland & Ellis for the Teva defendants.

7          THE COURT:  Thank you.

8          Welcome to Massachusetts.  Is this your first time

9  here?  You were here --

03:08 10          MR. McCLUER:  No, your Honor, we've been here --

11          THE COURT:  You've been here once or twice.

12          MR. McCLUER:  Believe it or not, I actually used to

13  live here, a long time ago, in Newton.

14          THE COURT:  Newton?

15          MR. McCLUER:  When I was a little boy.

16          THE COURT:  You grew up in Newton?  You sure lost that

17  accent.

18          MR. McCLUER:  I spent like a year here.  My mother was

19  up here; she was a law librarian.

03:08 20          THE COURT:  Which law school?

21          MR. McCLUER:  Simmons, getting her law degree.  We

22  were here very briefly.

23          THE COURT:  Welcome.  You've hit this courthouse on an

24  unusual day.  You may not get out.  We were just watching the

25  motorcade come in, did not schedule this knowing about that.

1    And I would like to find out what is going on with your case

2    because, as I want to say these days, I've been doing the case

3    for more than a decade, and I'm ready to be done.

4            MR. McCLUER:  We understand, your Honor, and we

5    appreciate this opportunity to explain to the Court the delay

6    that has been incurred in this case.

7            The main reason -- the good news and the bad news is

8    that we've been engaging and getting together all of the data

9    that we need, all of the contracts that we need to provide

03:09 10    during the discovery period.  So we've --

11           THE COURT:  So start from the very beginning.  When

12    was your case filed?

13           MR. McCLUER:  The case was filed in late 2009.

14           THE COURT:  2009.  And just -- I have so many of these

15    so I apologize.

16           When did discovery -- when is discovery due to end?

17           MR. McCLUER:  We don't have a proposed schedule in

18    this case.

19           THE COURT:  We will get one today.

03:09 20           MR. McCLUER:  We have a proposed schedule --

21           THE COURT:  I don't know why this hasn't happened.

22    Were you a tag-along and were you on some else's coattails?

23           MR. McCLUER:  We initially filed in the state court in

24    Mississippi, it was removed to the Northern District of

25    Mississippi and then it was removed to the MDL and we have been

1    in the MDL ever since and we've been --

2         THE COURT:  Have you been conducting discovery?

3         MR. McCLUER:  No, your Honor.  The first discovery was

4    served just the other day.

5         MR. BUEKER:  Which we served, your Honor.

6         THE COURT:  So we need a discovery schedule today.

7    That's going to put this on a fast track because I'm ready to

8    be done.  We have a standing procedural order that you file

9    status reports, that has not happened, right?

03:10 10        MR. McCLUER:  We have filed them, I believe, the last

11   two months, your Honor.

12        THE COURT:  Right, right, that's how I sort of finally

13   realized you were there because unless I receive these status

14   reports, I don't know.

15        MR. McCLUER:  Right.

16        THE COURT:  Have you been filing them?

17        MR. BUEKER:  I think they may been rolled into --

18   there's an omnibus report filed on behalf of the defendants, so

19   probably lost in there.

03:10 20        THE COURT:  Anyway, you are a very important state to

21   me now because you may be the last state, possibly South

22   Carolina, is that --

23        MR. BUEKER:  I think that's back in South Carolina,

24   your Honor.

25        THE COURT:  All right.  So you are going to go very

 1   quickly if you're going to be litigating this.

 2           MR. BUEKER:  Your Honor, we -- not to interrupt -- we

 3   actually have a proposal to make along those lines.  In part

 4   because this case I think hasn't moved for the very basic

 5   reason that I don't think they're going to be able to prove

 6   damages.

 7           This is not a state Medicaid case brought by the State

 8   of Mississippi.  This is a case brought by a health plan, the

 9   State of Mississippi health plan, a regular third-party payor

03:11 10   that has its own PBM that administered the pharmacy benefit

11   throughout.

12           So what we actually would propose, your Honor, is a

13   short -- we've talked about mediation, and I think we have a

14   date that's August 12th to go see Professor Green.  So that's a

15   first step.  But what we think we ought to do here is not a

16   full-blown discovery schedule, but rather set up a targeted --

17   and that was the purpose for serving discovery earlier in this

18   week -- set up a targeted schedule on the issue of damages,

19   given the role that the PBM played here, and see if we can't

03:12 20   move sometime in October for the -- the defendants for summary

21   judgment.

22           THE COURT:  No, I'm not doing that.  Right now we've

23   all dropped the ball.  Let me just -- I won't even assess

24   blame.  This is going to move fast, fast.  You should have been

25   doing this all along, it hasn't happened.  For some reason we

1    didn't pick up on it, no status reports were filed, no one's

2    ever appeared from Mississippi.  I think just out of -- we're

3    cleaning up, literally, in anticipation of finishing this case

4    and then we saw you and then we thought maybe it had settled,

5    because I could even dismiss for want of prosecution.

6            MR. BUEKER:  That would be fine, your Honor.

7            THE COURT:  I thought you'd like that.

8            So I think this is what needs to happen -- have you

9    even done automatic disclosures with one another?

03:13 10         MR. BUEKER:  No, your Honor.

11           MR. McCLUER:  Your Honor, I've got a proposed schedule

12   that we've discussed with defendants, which is fairly

13   accelerated, and I'd be happy --

14           THE COURT:  What's fairly accelerated in the context

15   of a decade?

16           MR. McCLUER:  Right.  Given where we are today.

17           MR. BUEKER:  Complete discovery after sitting on a

18   case for two years in the next six months, that's accelerated.

19           THE COURT:  That sounds good.

03:13 20         Do you have the manpower to handle -- womanpower,

21   peoplepower, man and womanpower to handle -- this is a huge

22   case.  I just want you to understand how huge this is.

23           MR. McCLUER:  Yes, your Honor, we understand, and

24   we -- we're prepared to move forward.  We've made -- just to

25   provide full context, we have made demand on every defendant in

```
 1    the case.  Some of them have not responded.  Anyone who has

 2    responded we have --

 3           THE COURT:  When did you make the demand?

 4           MR. McCLUER:  A couple months ago.

 5           THE COURT:  When do you propose fact discovery be

 6    over?

 7           MR. McCLUER:  We propose to close fact discovery

 8    December 21st.

 9           THE COURT:  Okay.  And don't -- look at all of them,

03:14 10    okay.  All defendants by December 21st.

11           MR. McCLUER:  Yes.  I mean, we're hoping -- we think

12    that's doable.  We think there will be a 30(b)(6) of the health

13    plan, we think -- we collected -- that's part and parcel --

14           THE COURT:  Have you given all your data on damages

15    and liability?

16           MR. McCLUER:  We provided data --

17           MR. BUEKER:  No, no, that's what we asked for earlier

18    this week.

19           THE COURT:  Earlier this week.  You're all at fault.

03:14 20    I'm at fault for not remembering the great State of

21    Mississippi.

22           MR. BUEKER:  Or its health plan.

23           THE COURT:  It doesn't matter if it's its health plan

24    if it was damaged.  PBMs were damaged.  I don't know how far

25    back this goes.  How far back are you asserting damages from?
```

```
 1            MR. McCLUER:  We've looked at the private payor case

 2   where the damages period was 1997 through 2005.

 3            THE COURT:  Which case?  Which case?

 4            MR. McCLUER:  The third-party payor case.

 5            THE COURT:  I'm sorry, I didn't --

 6            MR. McCLUER:  We have data for that entire period.  We

 7   have data from two separate PBMs running from 1997 to the

 8   present.  We've retained Dr. Hartman, Greylock McKinnon has the

 9   data, they've integrated --
```

03:15
```
10            THE COURT:  Have you given it to them?

11            MR. McCLUER:  Yes.

12            THE COURT:  When did that come in?

13            MR. McCLUER:  Independent data sets.

14            MR. BUEKER:  We haven't gotten that data.  We've got

15   utilization data.  We know how much money you spent.  We have

16   no claims data, none of that.

17            THE COURT:  Have you provided the claims data?

18            MR. McCLUER:  There's a column that -- we don't have

19   it broken down by transaction at this point.  With the
```

03:15
```
20   settlement demand we provided complete utilization data broken

21   down by year.

22            THE COURT:  Utilization of what?

23            MR. WARD:  By year and by NDC.

24            THE COURT:  And by drug company?

25            MR. WARD:  Yes, your Honor, separately broken out by
```

1    each defendant group.

2           MR. McCLUER:  It's not broken down by individual

3    claims data.  So if somebody filled a single script, that

4    wouldn't be reflected but the year it was purchased would be

5    reflected and the dollar amount.

6           MR. BUEKER:  You can't tell how much the plan paid for

7    the drug based on what they've given us, that's the problem.

8           THE COURT:  Why don't you confer, your experts speak

9    to their experts.

03:16 10           MR. McCLUER:  Yes, ma'am.

11           THE COURT:  I'm going to say that your fact discovery

12    is done on -- by December 21st.

13           MR. McCLUER:  Yes, your Honor.

14           THE COURT:  Now, so any document requests should go

15    out by July 15th, because otherwise it takes forever for them

16    to come up with their own data.  So now that I know IMS is

17    safe -- you know, it's interesting, I almost felt I should file

18    an amicus brief in the Supreme Court on the IMS because it was

19    such useful data to everybody in this case.  I was following

03:17 20    that.  Do you know what I'm talking about?

21           In any event, July 15th, both sides are going to put

22    out their document requests, because that's what usually takes

23    a while.  Everything should be produced on a rolling basis, so

24    don't hold it up if you don't have anything, just start

25    producing it when you've got it.

1              Notice -- and everyone should notice their depositions

2      by July 15th, so none of this we can't get them in the front

3      door.

4              You don't know what tsunami is about to hit you is the

5      concern I have.

6              How many people in your law firm?

7              MR. McCLUER:  We have two partners, but we're working

8      with Richardson Patrick very closely and they've got over 40.

9              THE COURT:  Okay.

03:17 10         MR. McCLUER:  Together we will ride it out.

11             THE COURT:  So all notices of deposition from everyone

12     should go out, then we'll have the Hartman report.  When is

13     that going to be ready on both damages and liability?

14             MR. McCLUER:  We propose that the merits expert report

15     be due January 6, 2012.

16             THE COURT:  Just to get this thing settled, why can't

17     we do merits and damages?

18             MR. WARD:  I think we can move that up, your Honor.

19     We've got --

03:18 20         THE COURT:  I want it all at once, all your expert

21     reports, by when, what date is that?

22             MR. McCLUER:  We had proposed January 6th, we may need

23     to push it out just given Dr. Hartman's availability.

24             THE COURT:  He must be doing well off of this.

25             MR. McCLUER:  He's been reluctant to commit to a time

```
 1   frame.
 2            THE COURT:  I'm going to put January 6th just to keep
 3   him on track.  That gives him plenty of time.  He's done many
 4   of these, he knows what he's doing.
 5            Your response should come in 2/6 at this point.
 6            Too late for motions to dismiss, too late.
 7            MR. BUEKER:  We've answered.  We answered over a
 8   year-and-a-half ago.
 9            THE COURT:  Okay.
10            MR. BUEKER:  Can we have a date for initial
11   disclosures?  If we're going to notice depositions by July
12   15th, it would be helpful to have initial disclosures by July
13   1st.
14            THE COURT:  What do you want in that?  Because as a
15   practical matter --
16            MR. BUEKER:  A list of people and information about
17   the case, we know who to notice for depositions.
18            THE COURT:  And that can be supplemented.  Why don't
19   you at least give them the key people and the PBMs to be
20   noticing, and key people in state government -- is it --
21            MR. BUEKER:  And the people who helped select the
22   PBMs, because oftentimes the state has --
23            THE COURT:  Why don't you just tell them who you want
24   by that time.  Typically it's 30 days, which would pull us past
25   the 15th, but since this case has been pending for multiple
```

1    years, that should be at the top of your -- you give -- both

2    sides give all their key players, why don't we say by the end

3    of the month, like next week, your key players, just the people

4    who --

5         MR. McCLUER:  Sure.

6         THE COURT:  And of course you'll supplement all of

7    that with the full disclosures.  Anything that you have now you

8    should ship over on both sides and then just make it rolling.

9    But at the very least, if you're going to notice by the 15th, I

03:20 10   think that's a very good point.  We're going to jump-start

11   this.  If we don't do this, what's going to happen -- I've been

12   there before -- there's motions for continuance, people aren't

13   available.  So if we just book people and --

14        MR. BUEKER:  I assume to the extent somebody is

15   disclosed after July 15th, we have the opportunity to notice

16   that person if it turns out --

17        THE COURT:  Sure, of course.

18        MR. McCLUER:  It's a small state, your Honor.  There

19   are a lot of people who will be disclosed.

03:20 20        One thing I wanted to raise is, if it would be helpful

21   to the Court to have a consolidated amended complaint so we

22   could get them all under one docket number --

23        THE COURT:  How many cases are there?

24        MR. McCLUER:  I believe there's nine total.

25        THE COURT:  Nine Mississippi cases?

         1          MR. McCLUER:  Technically on the docket, because in

         2    Mississippi we filed them separately.

         3          THE COURT:  They should have been consolidated -- I

         4    think they've already been consolidated, check with my clerk.

         5          So then motions for summary judgment and then motions

         6    for Daubert-type motions, how about March 15th?  Let's see,

         7    March 15th, and then oppositions April 15th, and then we'll

         8    have a hearing in early May.  Let's say by May 15th.  And that

         9    way my next year's law clerks, who will have enough time to at

03:21 10    least finish it hopefully by the end of the clerkship year.

        11          THE CLERK:  May 15, 2012 at 2:30 p.m., summary

        12    judgment or Daubert?

        13          THE COURT:  And/or Daubert.  In this case they've

        14    often been intertwined.

        15          I'm assuming if you survive summary judgment, this is

        16    going back to Mississippi for trial.

        17          MR. McCLUER:  Yes, your Honor.

        18          THE COURT:  Let me just say the position I've been

        19    taking with the California cases and the New York cases and on

03:22 20    and on if it's -- on summary judgment, if it's a uniquely

        21    California or Mississippi issue, let's say, a statute of

        22    limitations, that has nothing to do with AWP, I think I should

        23    just leave it for the trial court down there.  It's only where

        24    I have some value added because of the decade I've spent

        25    understanding these pricing schemes that I'll keep it, like

1    full.  I don't know what's involved here, AWP, WAC, if it's a

2    pricing issue, but if it's -- even at this point I've written

3    so extensively on government knowledge, I don't know why

4    someone can't just take the case law and extend it.

5            Is this under state law or federal law?

6            MR. McCLUER:  Primarily under state law.

7            THE COURT:  Are there any federal causes of action?

8            MR. McCLUER:  No, there are no federal causes of

9    action.

03:23 10          THE COURT:  What's the claims, unfair -- consumer

11   unfair trade practices?

12           MR. McCLUER:  We've added and dropped it so many

13   times.  There's a common law tort claim, I would have to

14   double-check and see whether the Consumer Protection Act claim

15   is currently in there.

16           THE COURT:  Does Mississippi have a Consumer

17   Protection Act?

18           MR. McCLUER:  Yes, your Honor.

19           THE COURT:  Is it one which carries a jury trial?

03:23 20          MR. McCLUER:  Yes.

21           THE COURT:  And does it -- is it unfair and deceptive?

22   Is it classic legal --

23           MR. McCLUER:  Yes, it's modeled on the model act.

24           THE COURT:  It is modeled on the model act.  Just like

25   our 93A.  Most of them are.  So you don't know if there's a

1    cause of action under that?

2              MR. McCLUER:  There is, your Honor.

3              THE COURT:  And it's brought by a, essentially,

4    correct, third-party payor?

5              MR. McCLUER:  Correct.

6              THE COURT:  It's not the state.

7              MR. McCLUER:  No, it was -- well, it's the state by

8    and through its third-party payor, the self-insured health

9    plan.  Does that make sense?  Medicaid has about six --

03:24 10             THE COURT:  Can I just -- I'm sorry.  We had a big

11   third-party payor class action.  What happened to that?  Was

12   there some settlement?

13             MR. McCLUER:  Yes, your Honor.  This was technically

14   an opt-out of the track two --

15             THE COURT:  You opted out.

16             MR. McCLUER:  By virtue of the scale.  We have about a

17   third of the number of insureds that are covered under the

18   Medicaid program.  So the state was aware of them by virtue of

19   the other cases that they were litigating and aware of that

03:24 20   value.

21             THE COURT:  But you opted out?

22             MR. McCLUER:  Yes.

23             THE COURT:  Because why?  I'm just --

24             MR. McCLUER:  In order to maximize the recovery.  The

25   defendants expressed reluctance to discuss resolution of those

1    claims in connection with the medication claims that were

2    pending in state court.

3              THE COURT:  So there's a separate case pending in

4    Mississippi state court involving Medicaid, is that it?

5              MR. McCLUER:  Yes.

6              THE COURT:  Why can't you settle the third-party payor

7    case and not keep the state claims going?

8              MR. McCLUER:  We have tried.

9              THE COURT:  Okay.  So is that -- I'm just trying to

03:25 10   understand the dynamics because settlement was going to be my

11   next issue.

12             MR. BUEKER:  This case is all about the third-party

13   payor claims.  This is -- the Medicaid case is proceeding

14   separately.

15             THE COURT:  Are you willing to try to settle this

16   apart from the Medicaid without a global resolution?

17             MR. BUEKER:  Some of us -- my client, for example,

18   your Honor, has settled with the State of Mississippi.  This

19   case is in this court on diversity jurisdiction because --

03:25 20   we're not sitting here with the State of Mississippi, we're

21   sitting here with a third-party payor, a health plan --

22             THE COURT:  Let me just say this, is there anyone here

23   who has refused to settle on the ground that they will only

24   settle if the Medicaid claims are also settled?

25             All right.  See, this is why I have these hearings.

1    So you're all willing to just settle this case; is that right?

2            MR. KOON:  Yes, your Honor.

3            MR. BUEKER:  Yes, your Honor.

4            THE COURT:  Does that help you?

5            MR. McCLUER:  Yes.

6            THE COURT:  There was -- track two itself is

7    proceeding pretty quickly along to settlement, and it's

8    probably too late for you to jump on that.  It's got enough

9    complications.  So I think what we need to do is have -- I feel

03:26 10   like I'm sending everyone to the specialist, like you need to

11   see my back surgeon.  But anyway, have you tried to set up time

12   with Mr. Green?

13           MR. BUEKER:  We have an agreed date with Mr. Green.

14           THE COURT:  What date is that?

15           MR. BUEKER:  August 12th.

16           MR. McCLUER:  We've also got two dates in September,

17   your Honor, the 6th and 7th, just in case Dr. Hartman is so

18   bound up that he's not able to give us a meaningful feedback on

19   the damages issues that the defendants have expressed concern

03:27 20   about.

21           THE COURT:  Understand this, I am not staying

22   discovery, I am not staying the schedule.  What Mr. Green does

23   is he calls me up when he thinks it's the point where there's

24   an agreement in principal, but not before then.  And I'm not

25   willing to stay, it's too old.  Eventually -- he's been able --

1    he has such a firm grasp on this right now that if anyone can

2    settle it, he can, but you may decide not to, in which case --

3    I won't give up on settlement, but one thing that's clear, it's

4    so old I'm going to keep it going.

5         Now, this doesn't stop you at some point, once you've

6    got all the data and you can -- whenever you want.  I'm just

7    simply saying the last date possible for a summary judgment

8    motion is on this date.

9         I don't know how -- why you feel so strongly if the

03:27 10    damages go back that far simply because it's a third-party

11    payor and a PBM that you're going to get summary judgment.

12    That hasn't worked before.  It may just be on certain years you

13    get summary judgment.

14         MR. BUEKER:  This is like a self-administered -- this

15    case involves self-administered drugs where the PBM -- the PBM

16    had unique knowledge.  The PBM knew what the drugs were being

17    acquired for, it knew what the plan was paying, it helped

18    structure what the plan was paying.  I mean, there is just --

19    there's knowledge here that's just kind of on all sides of it.

03:28 20    I just don't see how they can establish --

21         THE COURT:  Let me put it this way, that may be at

22    some point.  I'd be surprised if without discovery and without

23    a record I could decide that that was true in every year that

24    he's looking for damages without discovery.  I just don't see

25    it happening.  The PBMs are more knowledgeable than most of the

1    third-party payors, that's definitely true.  Who are your PBMs?

2         MR. McCLUER:  Caremark from 1997 to 2005, and then

3    Catalyst from 2006 to the present.

4         THE COURT:  The present is going to be hopeless for

5    you.  I think I've said on the record anyone who continued to

6    pay based on AWP is an idiot after a certain period of time.

7    But from 1997 to, let's say, 2003 or -- '02 or '03 when the

8    government acted it was very confusing and I don't know what

9    these people knew or didn't know and I don't know when they

03:29 10   knew it.  It's sort of that old question, what did they know

11   and when did they know it?  I don't know that.  I don't see how

12   you do that without having a discovery record.

13        MR. BUEKER:  Well, we served targeted discovery

14   earlier this week.  I thought we could take care of the

15   issues -- I think what you're going to see, too, Caremark

16   negotiated some of the best rates out there, and so if we knew

17   what rates the plan actually paid to pharmacists, I think we're

18   going to see they're pretty darn low and there was really no

19   damages.

03:29 20        THE COURT:  I just don't see it -- maybe, I just don't

21   see how you do it without discovery.

22        MR. BUEKER:  I agree we need some discovery, I just

23   think the discovery we need is limited.  Our pitch was for a

24   limited bit of discovery --

25        THE COURT:  Well, I can never do that in advance.

1    This is a pretty fast track.

2              MR. BUEKER:  Indeed.

3              THE COURT:  And I think you're going to find it's

4    harder than you think.

5              MR. McCLUER:  I agree, your Honor.

6              THE COURT:  Staff up.

7              MR. McCLUER:  We agree it's going to be very

8    difficult.  We hope defendants will respond to some of the

9    settlement demands we've made, those who haven't yet responded,

03:30 10   or ask us for any additional information they need to evaluate

11   the demand we've made.  We hope we'll be able to settle with

12   some of the defendants, at least since we've narrowed the scope

13   of the work to be undertaken both for ourselves and the Court

14   ultimately.

15             THE COURT:  Good.  So you've got a date with Professor

16   Green, we've got a schedule.

17             Let me ask you this, you all have been following

18   this -- I'm going to ask defendants to do this -- would you

19   scour -- we are trying to clean this up.  Do you know if there

03:30 20   are any other outstanding actions out there?

21             MR. BUEKER:  I personally do not.

22             THE COURT:  Anybody?

23             MR. WITT:  This is the last one that Boehringer

24   companies have before it.

25             THE COURT:  I thought with the track two, until we

1  found this one, we were pretty much cleaning up everything.  I

2  do know we have New York and Iowa, I'm cleaning up.  A number

3  of the other ones are sort of in the settlement mode, but this

4  is the last one I know of where nothing has happened, and maybe

5  I could ask you all to have your -- let me know in a week or

6  two, just go through and see if you see anybody else out there,

7  it would be very useful to me.

8            In the meantime, welcome home.

9            MR. McCLUER:  Good to be back.

03:31 10            THE COURT:  I hope you can get out of here today.

11  Thank you and have a nice weekend.

12            (Court adjourned at 3:31 p.m.)

13            - - - - - - - - - - - -

14                    CERTIFICATION

15        I certify that the foregoing is a correct transcript

16  of the record of proceedings in the above-entitled matter to

17  the best of my skill and ability.

18

19

20

21  /s/Debra M. Joyce_____          August 1, 2011_____
    Debra M. Joyce, RMR, CRR           Date
22  Official Court Reporter

23

24

25