UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Pharmaceutical Industry ) <br> Average Wholesale Price Litig. ) <br> ) | MDL No. 1456 <br> C.A. No. 01-CV-12257-PBS |
| ) <br> THIS DOCUMENT RELATES TO: ) <br> TRACK TWO SETTLEMENT ) <br> ) | Judge Patti B. Saris |

### RESPONE OF JOHN PENTZ, CONNIE PENTZ AND CORINNA CONNICK TO PLAINTIFFS' SUPPLEMENTAL SUBMISSIONS IN SUPPORT OF A REBALANCED TRACK TWO SETTLEMENT

For two years, this settlement sat dormant while Class Counsel patiently waited for CMS data in order to complete notice. During this time, Class Counsel never suggested the possibility of reallocation or redistribution of the settlement fund, despite the fact that they already had some claims data, as well as the damages analysis from Dr. Hartman on which the proposed reallocation is based. Nor did they propose any adequate consumer lead plaintiffs until just before the June 2011 fairness hearing. Now, just five days before the presumably final fairness hearing in this case, Class Counsel has filed hundreds of pages of additional briefing, affidavits and expert reports. The objectors have been given a mere 48 hours to review this voluminous data and to respond to it.[1] In a case of this magnitude, this is improper and amounts to a denial of due process.

The Pentz objectors cannot possibly review, digest and adequately respond to all of the documents that were filed on August 3, 2011 in the scant 48 hours that were

---

[1] Although the Court indicated at the conclusion of the July 7, 2011 hearing that it wanted all interested parties to engage in mediation in good faith, no one from Class Counsel bothered to contact counsel for the Pentz objectors until August 3, 2011, the day on which the voluminous filings were filed. Pentz counsel had no advance warning of the changes to the allocation, and no input on them.

afforded to them.  In particular, the critical Declaration of Raymond S. Hartman in Support of Settlement Allocation is highly technical and would require at least ten days to adequately digest, verify and respond to.  This settlement appears to be on a rush to judgment after being on the slow track for the last 3 years.  Trying to compress the settlement approval process in this incredibly complex case into five days is a mistake that will only cause further delay.

Class Counsel bear the blame for both the delay and the last-minute flurry of activity.  Class Counsel have moved for final approval of this settlement numerous times, before adequate notice had been sent to the class, and before they had done their homework and arrived at a final allocation plan.  This has resulted in the presumably final plan being unveiled five days before the August 8 hearing, as well as the need for additional notice to those class members whose interests will be harmed by the revised allocation.

**I.      There Is Still Not Enough Money Going To Consumers.**

The addition of $3.125 million to the consumer class fund is a good start, but well short of what is necessary to adequately compensate all consumer claimants.  Instead of robbing from the Epogen claimants, Class Counsel should have sought more money from the TPPs and the ISHPs.  The need for the modified allocation plan is a direct result of the lack of any adequate consumer lead plaintiffs at the time the allocation was originally negotiated.  Consumers were shortchanged by the original allocation, and the claims data bears this out.  Faced with a glaring shortfall of cash to pay consumer claims, Class Counsel has proposed essentially cutting Epogen out of the settlement.

Instead of robbing the Epogen claimants, who were told that they would receive a full refund of all amounts paid for the drug, and in some cases twice that amount, Class Counsel should have sought to renegotiate the allocation to provide sufficient funds to pay all of the consumer claims as originally noticed.  The fact that Class Counsel has been able to secure $3.125 million more from the TPPs proves that this is possible.  The Court should order further negotiations, to be conducted by the Pentz objectors with the TPPs, ISHPs, *and the Defendants*,[2] in order to secure a fair allocation to the consumers of more than 20% of the total fund, and enough to pay their claims in the originally noticed amounts.[3]

## II.     Epogen Should Not Be The Fall Guy In This Settlement.

As the memos from Class Counsel and Amgen make clear, Epogen's pricing was not based on AWP only when it was used for renal failure.  When it was used to treat anemia and in the treatment of cancer patients, "Epogen was prescribed, administered and reimbursed ... pursuant to an AWP-based reimbursement formula."   Amgen Memo at p. 2.  Therefore, it is not true, as Class Counsel has argued, that Epogen has no damages because it was reimbursed by Medicare at a non-AWP rate.

Moreover, Epogen is very expensive, as demonstrated by the Claim Form of John J. Pentz, Jr., attached hereto as *Exhibit A*.  Mr. Pentz paid $1142, out of pocket, for just

---

[2] As this Court observed at the July 7, 2011 hearing, the Defendants will almost certainly have to contribute additional funds toward the settlement, in light of the consumer claims and projected payouts, for this Settlement to be deemed fair, reasonable and adequate.

[3] Other courts have found that TPPs have no claims at all related to the payment of AWP price spreads, since they were at all times fully aware that the AWP was not the actual price paid for the drugs by the providers.  See *Astrazeneca LP v. State of Alabama*, 41 So. 3d 15, 27  (Ala. 2009) ("Novartis, AstraZeneca, and GSK concede that WAC and AWP prices published by DataBank were *not net* prices.  They contend, however, that the industry ... was at all relevant times *fully cognizant* of the fact that the manufacturer's published drug prices were list prices ... and that, as a matter of law, the State could not have reasonably relied on the published prices... We agree.") (A copy of this case is attached hereto as *Exhibit B*).  TPPs, in other words, do not have any claims in this litigation because they could not state a claim for fraud and reasonable reliance.  Consumers, in contrast, had absolutely no clue that they were paying prices far in excess of their physicians' actual costs.

3

four doses of Epogen.  Class Counsel knows this, since they took Mr. Pentz's deposition in March 2009, at the time he had moved to intervene to represent the consumer subclass. Yet, knowing that they did not have any named consumer plaintiff who had paid for Epogen, Class Counsel not only opposed that motion, they did not invite Mr. Pentz to serve as the representative of the Epogen subclass, and eventually proposed a named plaintiff who took Procrit, not Epogen![4]  Little wonder that this person, who never even purchased the drug Epogen, would agree to reduce the Epogen claims to $5 or $50.

Mr. Pentz will not accept $50 instead of the $1142 he was entitled to under the original distribution plan, and which his notice informed him he would receive.  Mr. Pentz expects that many more Epogen class members will file objections to the $5/$50 cap in response to the supplemental notice informing them that their claims have been drastically discounted.

As this Court stated at the July 7 hearing, the Court needs to be able to explain this settlement to her mother.  Right now, it would be difficult to explain it to Justice Scalia.  As this Court also remarked, it would look horrible to tell 38,000 people who filed claims and waited over two years for their money that they are now going to get less than the notice told them they would.  Not only is this bad "optics," it's bad Rule 23 practice and violates the due process rights of everyone who is being harmed by Class Counsel's failure to ensure that the consumer portion of the settlement fund is adequate to satisfy consumer claims.

---

[4] According to Donald Haviland, who is the only person to have viewed an original copy of Thomas Trusky's wife's medical records, Mrs. Trusky received Procrit, not Epogen.  Her husband is not even an adequate named plaintiff for the Epogen subclass that is getting cheated by the reallocation.

### III. In Light of Class Counsel's Position That All Drugs Administered by Physicians and Priced Based on AWP Were Included in Release, the Omission of Climara Is Incomprehensible and Indefensible.

In 2009, Class Counsel claimed that Corinna Connick is not a class member because she paid the full price of the drug Climara, which is not specifically named in the list of Class A and B Drugs.  Climara is a brand name for a form of Estradiol, which *is* listed as a Class B Drug.

Now that Class Counsel has provided their explanation of why some drugs were included in the settlement although they were never part of the litigation, the omission of Climara from the Exhibit B list of settlement drugs is indefensible.  Climara's price was set based on AWP, it was marketed to doctors based on the spread, and it was a multi-source drug that competed with other versions of Estradiol.  Therefore, based upon Plaintiffs' Supplemental Submission, Climara should be a Class Drug, the same as all other forms of Estradiol.

There is no principled reason for the omission of Climara from this case, and Class Counsel has never provided one.  It is almost certain that hundreds of class members have submitted claims for Climara and will be paid for those claims.

### CONCLUSION

For the foregoing reasons, Class 3 Consumer Plaintiffs and Objectors Connie and John Pentz and Corinna Connick request that this Court reject the proposed Track Two Settlement until and unless the allocation is further amended to provide sufficient funds to consumers to pay all consumer claims at the amounts that were provided in the original notice sent to class members.  The Pentz objectors strenuously object to the proposal to

cap Epogen claimants to $5 or $50 when they demonstrably paid far more than this amount for that drug, and when the TPPs are not being similarly limited.

Dated:   August 5, 2011

Respectfully submitted,
Connie and John Pentz,
and Corinna Connick,
by their attorneys,

*/s/ John J. Pentz*
John J. Pentz, Esq.
MA Bar # 561907
2 Clock Tower Place, Suite 440
Maynard, MA  01754
Phone: (978) 461-1548
Fax: (978) 405-5161
Clasaxn@earthlink.net

EDWARD COCHRAN
20030 Marchmont Road
Shaker Hts., OH   44122
(216) 751-5546
fax (216) 751-6630
edwardcochran@wowway.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 5, 2011 he efiled a true copy of the foregoing document via the ECF filing system of the District of Massachusetts, and as a result a copy of this document was served on every counsel of record.

*/s/ John J. Pentz*
John J. Pentz