# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

## DECLARATION OF MICHAEL J. LORUSSO, ESQ., IN SUPPORT OF OPPOSITION TO TRACK TWO SETTLEMENT

1.      I am an attorney at Haviland Hughes, LLC., counsel for Certain Named Plaintiffs in this matter.   I am an attorney in good standing and duly licensed and admitted to the Bars of Pennsylvania and New Jersey.  I have been admitted *pro hac vice* to practice in this Court for purposes of this case.

2.      I have reviewed the Declaration of Raymond S. Hartman In Support of Track 2 Settlement Allocation, ("Hartman Declaration"), Dkt. No. 7699.  I have also reviewed the Supplemental Declaration of Daniel Coggeshall Regarding Estimated Net Consumer Settlement Fund And Estimated Class 1 and Class 3 Consumer Payments for the Track Two Settlement ("Coggeshall Declaration").

3.      Attached to this Declaration as Exhibit "A" is a chart I prepared that reflects the differences between what class members would receive if they were paid based on their actual damages utilizing the Hartman-calculated Overcharge Ratio for thirty-one (31) of the sample forty-three (43) individual drugs listed in Table 2 to the Hartman Declaration as compared to the actual amount to be paid given Class Counsel's most recent reallocation and pro rata payment of 14.087% of a given claim.   The thirty-one (31) drugs listed in Exhibit "A" represent those drugs

1

analyzed by Dr. Hartman that Certain Class Plaintiffs understand are multi-source drugs. Because Dr. Hartman has calculated an overcharge ratio for most of the drugs and therefore actual damages can be calculated, yielding a damage based payment model for those drugs, I have provided the calculation for the same, as discussed below.  For drugs where Dr. Hartman did not provide a specific overcharge ratio and/or where an overcharge ratio cannot be applied to a specific drug because of issues with the claims data, I have made the following assumptions.

(a)     For those drugs that Dr. Hartman could not calculate a specific overcharge ratio (indicated by N/A on table 2), but where Dr. Hartman provided a total weighed ratio for the manufacturer, I applied the manufacturer total ratio to the individual drugs. *See* ¶ 6.

(b)     For those drugs that Dr. Hartman did calculate a specific ratio but the claims data does not differentiate between various versions of the drug (for example, all Gentamicin claims are included as one and not broken down by manufacturer) I applied the average of Dr. Hartman's ratio for each version of the drug to the aggregate claims data. *See* ¶ 7.

(c)     Finally, for the Aventis drugs, because Dr. Hartman did not provide a total Overcharge Ratio for all of the Aventis drugs and only provided said ratio for Anzemet Tablets (19.8%) and Anzemet Injectable (55.7%) individually, I used the average of the two Overcharge Ratios (37.5%) for each of the Aventis drugs.  *See* ¶ 20

4.     For example, according to the Coggeshall Declaration, the Total Estimated Recognized Loss for Adriamycin, which is manufactured by Pfizer/Pharmacia, is $1,271,640.26. *See* Coggeshall Declaration at 8 of 11.  To calculate the total pro rata distribution of settlement funds to those class members who filed a claim for Adriamycin, I multiplied the Total Estimated Recognized Loss for Adriamycin, $1,271,640.26, by the pro rata distribution amount provided by Class Counsel's latest reallocation, 14.087%, which equals $179,135.96.   Therefore, the

settlement, as currently proposed, provides that $179,135.96 will be paid to those class members who filed a claim with an estimated recognized loss of $1,271,640.26.

I then looked to the total weighted Overcharge Ratio provided by Dr. Hartman at Table 2 to his Declaration to determine the payment amount based on his damage calculations.  Dr. Hartman provided a total weighted Overcharge Ratio for all NDCs of Adriamycin of 77.4%.  *See* Hartman Declaration at 28 of 49.[1]  To calculate the damage based payment, I multiplied the Hartman Overcharge Ratio by the Total Estimated Recognized Loss for Adriamycin.  Based on Dr. Hartman's Overcharge Ratio, the damage based payment for the Adriamycin claims would be $984,249.56.  The as proposed settlement is paying those class members who filed claims for Adriamycin $805,113.60 *less* than a comparable amount if the payments were based on the Hartman calculated damages.

5.     With the exception of the drugs referenced below, I followed the same procedure for Adrucil, Albuterol Sulfate, A-Methapred, Aristopan, Cytosar-U, Dexamethasone Sodium, Diazepam, Doxorubicin, Fentanyl, Ipratropium, Methotrexate, and Vancomycin.  The results are reflected in Exhibit "A" attached hereto.

6.     Dr. Hartman indicates that he was unable to calculate Overcharge Ratios for (1)Dexamethasone Sodium, and (2) Fluorouracil, because "no data were received for th[ese] drug[s]."  In these instances Dr. Hartman listed the Overcharge Ratios as "N/A".  *See* Hartman Declaration at 26 and 27 of 49. Both drugs are manufactured by Fujisawa. Because Dr. Hartman did not provide a specific Overcharge Ratio for Dexamethasone Sodium and Fluorouracil, I used

---

[1] Dr. Hartman states that "overcharge ratio can be thought of as the percentage of the dollars that were actually paid that would not have been paid but for the challenged conduct.  For example, if a Class member paid $100 for a drug, and if the overcharge ratio for that drug is 45%, then the Class member has suffered $45 in overcharges." *Id.* at 6 of 49.

3

the total Overcharge Ratio calculated by Dr. Hartman for Fujisawa (12.00%) as the basis to calculate an estimated damage-based payment for both drugs.

7.     For other drugs listed in Exhibit "A the Coggeshall claims data did not differentiate between manufacturers therefore I was unable to calculate specific damages per manufacturer.  For example, Gentamicin is manufactured by Abbott and Baxter, and Gentamicin Sulfate is manufactured by Fujisawa.  However, the Coggeshall Declaration lists only those claims submitted for "Gentamicin Sulfate", presumably lumping all Gentamicin claims into one. In those instances, [2]  I used an average of each manufacturer's Overcharge Ratios for their version of the drug, as provided by Hartman.  As an example, for Gentamicin, I applied the average of the Overcharge Ratios for Abbott's Gentamicin (60.9%), Baxter's Gentamicin (57.8%), and Fujisawa's Gentamicin Sulfate (12.00%)[3] which averages to 43.56%, to the Estimated Recognized Loss[4] for "Gentamicin Sulfate", as provided by the Coggeshall Declaration.[5]

8.     Consistent with the above, class members who filed a claim for those drugs listed in Table 2 to Dr. Hartman's Declaration that are properly part of "Group B" would receive an additional **$3,168,865.37** if payments were made on a damaged-based approach as opposed to the current 14.087% pro rata payment Class Counsel now espouse.  *See* Exhibit "A".  As a percentage of the claims made, damage-based payment would be 66.97% -  almost five (5) times the 14.087% currently being paid.

---

[2] The same is true of Aristocort, Dextrose, Leucovorin and Sodium Chloride
[3] As noted earlier, because Dr. Hartman did not provide a specific overcharge ratio for Fujisawa's Gentamicin Sulfate, I used the total Overcharge Ratio calculated by Hartman for Fujisawa products, 12.00%
[4] The Total Estimated Recognized Loss is equal to the "Recognized Loss of Eligible Claims" plus 25% of the Recognized Loss of Deficient Claims (assuming a 25% cure rate).  It represents the actual estimated claim volume for a given drug.
[5] As discussed above, because Dr. Hartman could not calculate a specific Overcharge Ratio for Fujisawa's Gentamicin Sulfate, I used the total Ratio calculated for Fujisawa, 12%.

9.      Attached to this Declaration as Exhibit "B" is a chart I prepared to reflect the difference between what class members would receive if the drugs that Class Counsel concede are "single-source branded drugs" were included as "Group A" drugs.  Class members from Group A are to be paid double their actual damages, not a pro rata payment of 14.087% for a given claim.

10.      Though Class Counsel acknowledge that there are twenty (20) Group B drugs (as well as Eligard and Trelstar which are addressed below regarding Exhibit "C") that are single-source branded drugs, *see* Brief at 11, Dr. Hartman did not calculate an overcharge ratio for these drugs.[6]  Accordingly, for purposes of analyzing the damage-based approach to the payment of claims for these drugs, I used the total overcharge ratio for their respective manufacturers for each of the above drugs.

11.      For example, Accuneb is a single source branded drug manufactured by Dey. Because Dr. Hartman did not provide an Overcharge Ratio for Accuneb, I used the total Overcharge Ratio calculated for Dey products, 78.1%, *see* Hartman Declaration at 27 of 49, to calculate the damages for Accuneb.  Therefore, I multiplied the Total Estimated Recognized Loss for Accuneb, $965,221.12, by the Hartman Dey Overcharge Ratio, 78.1%, to calculate single damages for Accuneb of $753,837.69.  As a single source branded drug, subject to double damages, I then doubled the single damage number (to get double damage).  I then  calculated the difference between the double damages that should be paid to the Class versus the actual pro rata distribution that Class Counsel propose, which yields $1,371,704.69.

12.      Because Dr. Hartman did provide an Overcharge Ratio for Novantrone I was able to directly apply that ratio (3%) to Novantrone to calculate the damage based payment.  Because the Overcharge Ratio is less than the current proposed pro rata distribution (14.087%), under the

---

[6] The lone exception is Novantrone as discussed at ¶12.

proposed allocation, class members would receive more money than they otherwise would if the payments were based on damages.[7]

13.     Per the above calculations, as reflected in Exhibit "B" attached hereto, class members who filed a claim for those single source branded drugs that are currently included as "Group B" drugs (not including Eligard and Trelstar which are discussed below) would receive an additional **$42,077,505.28** if payments were made on a damaged-based approach and then doubled (because those drugs should be included in "Group A"), as compared to the proposed 14.087% pro rata payment.

14.     Attached to this Declaration as Exhibit "C" is a chart I prepared to reflect the difference between what Class members would receive if Eligard and Trelstar, which Class Counsel concede are "single-source 'branded' drugs", were included as "Group A" drugs, and Class members were paid double their actual damages.  Dr. Hartman did not calculate an overcharge ratio for either Eligard or Trelstar.  Consistent with the damage based payments in the related *In re Lupron Marketing and Sales Practices Litigation,* MDL 1430, I used a 50% overcharge ratio for Eligard and Trelstar.[8]

15.     Per the above calculations, as reflected in Exhibit "C" attached hereto, class members who filed a claim for Eligard or Trelstar would receive an additional **$2,551,127.44** if payments were made on a damaged-based approach and then doubled (because those drugs should be included in "Group A"), as opposed to the current 14.087% pro rata payment Class Counsel now espouse.

16.     There are twenty-three (23) additional drugs that Certain Named Plaintiffs maintain should be included as "Group A" drugs, but that are currently listed as "Group B"

---

[7] The same is true for Aristocort, Aristopan, and Dexamethasone Sodium, as reflected in Exhibit "A".

[8] As this Court knows, Eligard and Trelstar are the same drug as Lupron (Luprolide Acetate).

drugs. Attached to this Declaration as Exhibit "E" is supporting documents for each of the twenty-three (23) additional drugs establishing the basis for Certain Named Plaintiffs' position as to each such drug.

17.     Attached to this Declaration as Exhibit "D" is a chart I prepared to reflect the differences between what class members would receive if they were paid based on their actual damages utilizing the Hartman-calculated Overcharge Ratio for these twenty-three (23) additional drugs that Certain Named Plaintiffs maintain should be "Group A" drugs versus the actual amount to be paid based on the proposed pro rata payment of 14.087%.

18.     Of the additional drugs listed in Exhibit "D", Dr. Hartman provided specific Overcharge Ratios for Cytosar-U (Pfizer/Pharmacia); Depo-Testosterone (Pfizer/Pharmacia); Gamimune (Bayer); Kogenate (Bayer); Neosar (Pfizer/Pharmacia); Prograf IV (Fujisawa; Solu-Cortef (Pfizer/Pharmacia); Solu-Medrol (Pfizer/Pharmacia); and Travasol (Baxter). Accordingly, I was able to apply those specific Overcharge Ratios to those drugs to calculate the damage based payout.

19.     For those drugs listed in Exhibit "D" that Dr. Hartman did not provide specific Overcharge Ratios, I used the total Overcharge Ratio calculated by Dr. Hartman for each drug's respective manufacturer.  So, for example, I used 60.10% as the Overcharge Ratio for Amphocin, which is manufactured by Pfizer/Pharmacia.

20.     Lastly, for those drugs listed in Exhibit "D" that are manufactured by Aventis (Bioclate, Helixate, Humate, Lasix, Monoclate, and Mononine) because Dr. Hartman did not provide an Overcharge Ratio those specific drugs, nor did he provide a total Overcharge Ratio for all Aventis drugs and only provided said ratio for Anzemet Tablets (19.8%) and Anzemet

Injectable (55.7%) individually, I used the average of the two Overcharge Ratios (37.5%) for each of the Aventis drugs.

21.     Per the above calculations, as reflected in Exhibit "D" attached hereto, class members who filed a claim for those twenty-four (24) additional drugs that Certain Named Plaintiffs maintain should be "Group A" would receive an additional **$8,433,084.79** if payments were made on a damaged-based approach and then doubled (because those drugs should be included in "Group A"), as opposed to the proposed 14.087% pro rata payment.

22.     In the aggregate, if payments were made based on estimated damages, as opposed to the pro rata distribution of 14.087%, and the same was doubled for those drugs that should properly be part of "Group A", as reflected in Exhibits "B" through "D", the consumer class would receive **$56,230,582.88** in additional payments.

I declare under penalty of perjury that this information is true and correct.

Dated: August 5, 2011                              By:

Michael J. Lorusso, Esq.