# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No.  1456<br><br>Civil Action No.  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | Judge Patti B.  Saris |

## COMPLAINT IN INTERVENTION

Intervening Plaintiffs, by and through their undersigned counsel, upon personal knowledge as to their own acts and beliefs, and upon information and belief as to all other matters based upon the investigations of their counsel, complain and allege as follows:

1(a).    This case is brought by the Intervening Plaintiffs as a Class Action on behalf of consumers of prescription drugs, Track II, Consumer Class 1, Class B Newly Added Drugs Sub-Class ("the Class") against certain pharmaceutical companies ("the Defendant Drug Manufacturers" or "defendants").  The list of Newly Added Drugs is attached hereto as Exhibit "A".  This Complaint in Intervention incorporates by reference, as if fully stated herein, all of the allegations of the Revised Fifth Amended Master Consolidated Class Action Complaint in MDL No. 1456, Civil Action No. 01-CV-12257-PBS (Saris, J.), with all exhibits and appendices ("RFAMCC") (see Dkt. No. 5902).  Because this Complaint in Intervention is intended to be read together with the RFAMCC, each paragraph is numbered in reference to the corresponding paragraph of the RFAMCC that is to be supplemented.  For example, this paragraph, "1(a)" is meant to immediately follow paragraph 1 in the RFAMCC, but paragraph "15" herein is meant to supplant paragraph 15 in the RFAMCC.

1(b).    The Intervening Plaintiffs allege that intervention is necessary to protect their interests in the above-captioned action.  The Original Plaintiffs, which consist of those Plaintiffs listed in paragraphs 14-61 of the RFAMCC but excluding Intervening Plaintiffs (listed at paragraphs 15-24, 60-61) ("Original Plaintiffs"), have alleged that, *inter alia*, a class of consumers was overcharged for certain prescription drugs manufactured and sold by defendants.  The Court has indicated that certification of a nationwide class of consumers in the above-captioned action may be appropriate, but that adequate consumer class representatives have not come forward to represent such a class.

1(c).    As detailed more fully below, the Intervening Plaintiffs are adequate representatives of the class of consumers.  Each of the Intervening Plaintiffs has been prescribed, and been charged for, one or more physician-administered drugs (as well as numerous self-administered drugs not detailed herein) manufactured by one or more of the Defendant Drug Manufacturers.  The prices the Intervening Plaintiffs were charged for these drugs were based in whole or in part on the published Average Wholesale Prices ("AWPs") for the drugs, which both Original and Intervening Plaintiffs allege were artificially and wrongfully inflated by the Defendant Drug Manufacturers.  Intervening Plaintiffs therefore submit this Complaint in Intervention to establish their status as parties in this litigation; to protect and advance their rights under the law; to supplement the RFAMCC with additional allegations of fact and law that relate directly to their claims and their respective situations which are representative of those similarly situated; to add related claims against an additional pharmaceutical company defendant, the Wyeth Group (as described below); to advance claims regarding certain physician-administered and Medicare Part B drugs that were some how omitted from the RFAMCC, but which are subject to the same unlawful marketing and sales practices detailed herein; to propose a class definition that includes all consumers with cognizable

2

claims against the Defendant Drug Manufacturers for their conduct in overcharging for physician-administered and Medicare Part B drugs; and to otherwise ensure that the Intervening Plaintiffs and other affected consumers nationwide recover the full measure of relief to which they are entitled, including declaratory and injunctive relief and damages.

### III.    PARTIES

**A(1).   Intervening Plaintiffs.**

15.    Rev. David Aaronson represents the estate of his wife, Susan Aaronson.  Rev. Aaronson resides in Matthews, North Carolina.  Ms. Aaronson, was a Medicare beneficiary with supplemental insurance coverage through her church.  Ms. Aaronson lived with breast cancer and was treated for ovarian cancer.  During the applicable time period, Ms. Aaronson was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP:

**Track 1 drugs:** odansetron (the GSK Group) and paclitaxel (the BMS Group).

**Track 2 subject drugs:** albuterol sulfate (Dey, the GSK Group, and the Schering-Plough Group), cisplatin (Baxter, the BMS Group, and the Sicor Group), darbepoetin alfa (Amgen), dextrose injectible (Abbott, AstraZeneca, and Baxter), epoetin alfa (the Johnson & Johnson Group and Amgen), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), furosemide (Abbott, the Aventis Group and Baxter), ipratopium bromide (Dey), pegfilgrastim (Amgen), plicamycin (Bayer), and sodium chloride (Abbott, the Aventis Group, Baxter, the Schering-Plough Group, and the Sicor Group).

**Track 2 Newly Added drugs:** bupivacaine (Abbott), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), dextrose sodium chloride (Abbott), diltiazem hydrochloride injectible (Abbott, Baxter, and the Sicor Group), enoxaparin sodium (the Aventis Group), epinephrine (Abbott, Dey and the Sicor Group), famotidine (Abbott and Baxter),

glycopyrrolate injectible (Abbott, Baxter, the Sicor Group, and the Wyeth Group), heparin sodium (Abbott, Baxter, Pfizer, and the Pharmacia Group), lidocaine hydrochloride injectible (Abbott, AstraZeneca, and Baxter), magnesium sulfate injectible (Abbott and the Sicor Group), midazolam hydrochloride (Abbott, Baxter, and Hoffman-La Roche), morphine sulfate injectible (Abbott, AstraZeneca, and the BMS Group), neostigmine methylsulfate (Abbott, Baxter, and the Sicor Group), phenylephrine (Baxter and the Sicor Group), potassium chloride (Abbott and Baxter), promethazine injectible (Abbott, Baxter, the Sicor Group and Watson), ringers lactated with dextrose injectible (Abbott and Baxter), propofol injectible (Abbott, AstraZeneca, Baxter, Pfizer, and the Sicor Group), and succinylcholine chloride injectible (Abbott).  To date, Reverend Aaronson has paid several thousands of dollars for these and other prescription drug medications as reflected in the records included with the Declaration of Donald E. Haviland, Jr. Esquire in Support of Plaintiff's Proposed Consolidated Class Certification Order with Respect to Track II Defendants ("Haviland Decl.") filed in May 2006 in this case.[1]

16.    Jimmie May Carter represents the estate of her husband, Harold Carter.  Mrs. Carter resides in Austin, Texas.  Mr. Carter was a Medicare beneficiary who received partial assistance from Sterling to help defray a portion of his co-insurance obligations under Medicare Part B for his medical care and treatment.  Mr. Carter took prescription drugs for coronary artery disease and other medical conditions, including prostate cancer.  During the applicable time period, Mr. Carter was prescribed, and was charged for, the following physician-administered prescription drugs, based in whole or in part on AWP:

---

[1]    The medical and financial records of the Intervening Plaintiffs were previously filed under seal in order to preserve and protect the confidentiality and privacy interests of the Intervening Plaintiffs, while their Motion to Intervene is pending.

**Track 2 Subject drugs**: darbepoetin alfa (Amgen) and epoetin alfa (Amgen and the Johnson & Johnson Group).

**Newly Added drugs**: adenosine (Abbott and Fujisawa).

It was difficult for Mr. Carter to pay for the high cost of these and other medications.  On at least one occasion, Mr. Carter's doctor did not prescribe an indicated medication because Mr. Carter could not pay for it.  Mr. Carter made payments for the foregoing drugs as reflected in the records included with the Haviland Declaration.

17.      Roger Clark represents the estate of his father, David E. Clark. David Clark resided in Tonto Basin, Arizona, and was a Medicare beneficiary with secondary insurance through the Operating Engineers American Benefit Plan.  Mr. Clark was treated for prostate cancer and an inoperative brain cancer.  During the applicable time period, Mr. Clark was prescribed, and was charged for, the following physician-administered prescription drugs, based in whole or in part on AWP:

**Track 1 drugs:** granisetron (the GSK Group and Hoffman-LaRoche).

**Track 2 subject drugs**: cisplatin (Baxter, the BMS Group, and the Sicor Group), dexamethasone acetate (Watson), dexamethasone sodium phosphate (Baxter, Fujisawa, the Sicor Group, and Watson), dextrose injectible (Abbott, AstraZeneca, and Baxter), epoetin alfa (Amgen and the Johnson & Johnson Group), etoposide (Bedford, Genesia), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), and sodium chloride (Abbott, the Aventis Group, Baxter, the Schering-Plough Group, and the Sicor Group).

**Newly added drugs**: ciprofloxacin hydrochloride (Abbott, Baxter, Bayer, and the Schering-Plough Group), enalaprilat injectible (Abbott, Baxter, and the Sicor Group), famotidine (Abbott and Baxter), lidocaine hydrochloride injectible (Abbott, AstraZeneca and Baxter), midazolam hydrochloride

(Abbott, Baxter and Hoffman-La Roche), morphine sulfate injectible (Abbott, AstraZeneca and the BMS Group), potassium chloride (Abbott, Baxter and Pfizer), and ranitidine (the GSK Group). Mr. Clark made payments for the foregoing drugs-totaling nearly $10,000.00 to date – as reflected in the records included in the Haviland Declaration.

18.     M. Joyce Howe represents the estate of her husband, Robert Howe. Mr. Howe resided in Mapleton, Oregon, and was a Medicare beneficiary, with supplemental insurance coverage through United Health Care of Utah.  Mr. Howe was treated for prostate cancer.  During the applicable time period, Mr. Howe was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP:

**Track 1 drugs:** goserelin acetate (AstraZeneca) and granisetron (the GSK Group and Hoffman-LaRoche).

**Track 2 subject drugs**: dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), docetaxel (the Aventis Group), gentamicin sulfate (Abbott, Baxter, the Fujisawa Group, and Watson), novantrone (Immunex), and pegfilgrastim (Amgen).

Mr. Howe made payments for the foregoing drugs as reflected in the records included in the Haviland Declaration.

19.     Mrs. Pat Drewett represents the estate of her father, James Monk. Mr. Monk resided in Lake Village, Arkansas and was a Medicare recipient with supplemental insurance. During the applicable time period, Mr. Monk was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP:

**Track 1 drugs**: Casodex (AstraZeneca).

**Newly added drugs**: Eligard (Aventis).

Mr. Monk made payments for the foregoing drugs, as his supplemental insurance requires him to make percentage payments.  These payments are detailed below and based upon records previously produced to the parties in discovery.

19(a)   Mr. Monk was prescribed leuprolide acetate for treatment of prostate cancer. Leuprolide acetate is an injectable medicine (*i.e.* a "PAD") that is sold by several drug companies under the brand names Lupron ® (TAP/Takeda), Eligard® (Sanofi-Aventis) and Viadur® (Bayer/Johnson & Johnson).[2]

19(b)   The evidence previously produced in this case shows that, during the class period, Mr. Monk paid a portion of an AWP-based price for Sanofi's Eligard, after being switched to Eligard from Lupron at some time during 2003. *See* MONK 0009.  Based on Mr Monk's urologist's notes, Mr. Monk received at least two Eligard injections on September 10, 2003 and January 14, 2004. *See* MONK 0007-0008.

19(c)   Mr. Monk's records show both of his Eligard injections were billed to Medicare. *See* MONK 0011. This document is a CMS Medicare Summary Notice detailing Medicare-approved amount of $1,503.96 and the 80% Medicare payment to the provider of $1,123.17, after payment by Mr. Monk of his $100 Medicare deductible. The amount remaining to be paid by Mr. Monk was $380.79, consisting of $100 (his Medicare deductible) and $280.79 (his 20% co-payment obligation). This same amount – $380.79 – was then billed to Mr. Monk by his doctor, after the payment of $5.39 by his supplemental carrier, AETNA.  *See* MONK 0010. Even after payment from

---

[2]      TAP settled the MDL case involving Lupron AWP and spread in 2005 for $150 million. As a result of the opt-outs by Certain Named Plaintiffs, including Mr. Monk, consumers were paid 50% of their out of pocket payments. Aventis, a Track 2 Defendant here, seeks to garner a full release for its parent company, Sanofi, and its subsidiary, Atrix Laboratories, Inc., for 5% of consumers' out of pocket payments. Bayer has not included Viadur in the release.

Medicare and AETNA, Mr. Monk was still responsible for $375.40 for the treatment received on 1/14/04.

19(d)   Mr. Monk made all required payments to his physician. *See* MONK 0001-0008.  Mr. Monk paid the balance after Medicare and AETNA had made payments to his physician.

20.   Mary and Ken Wright represent the estate of James Shepley. Mr. Shepley resided in Reno, Nevada, and was a Medicare beneficiary, with secondary insurance coverage through United American.  Mr. Shepley was treated for prostate cancer.  During the applicable time period, Mr. Shepley was prescribed, and was charged for, the following physician-administered prescription drugs, based in whole or in part on AWP:

**Track 1 drugs**: goserelin acetate (AstraZeneca).

**Track 2 subject drugs**: epoetin alfa (Amgen and the Johnson & Johnson Group).

Mr. Shepley made payments for the foregoing drugs as reflected in the records included in the Haviland Declaration.

20(a)   The evidence previously produced in this case shows that Mr. Shepley paid a portion of an AWP-based price for Epogen, a product sold by Track 2 Defendant, Amgen.  For example, Mr. Shepley's records show that he was given an injection of Epogen on 9/10/04. *See* SHEPLEY 0040.  The Medicare Part B Claim Summary shows the charge for the injection ($780.00).  In addition to a Lupron injection received during the same visit, Mr. Shepley's total for the September 10, 2004 visit was $2,547.00. *See* SHEPLEY 0011-0013.  Medicare paid $2,088.92 towards the balance with a $47.28 write-off; Mr. Shepley's supplemental insurance paid $358.20, leaving Mr. Shepley to pay the remaining balance of $52.60. Mr. Shepley paid this balance, in combination with another treatment, with check number 5570 on July 18, 2005. *See* SHEPLEY 0001.

21.     Larry Young represents the estate of his wife, Patricia K. Young.  Before she died, Mrs. Young resided in Enid, Oklahoma where her husband still resides.  She was a Medicare beneficiary as a result of a longstanding disability, with supplemental insurance through United Healthcare that covered only a portion of her co-insurance obligation for prescription drugs under Medicare Part B.  She received medication for rheumatoid arthritis, Hepatitis C, and lymphoma, the disease that ultimately caused her death.  During the applicable time period, Mrs. Young was prescribed, and was charged for, the following physician-administered prescription drugs manufactured and sold by the defendant companies, based in whole or in part on AWP:

**Track 1 drugs:** cytoxan (the BMS Group, Pfizer, and the Pharmacia Group), infliximab (the Johnson & Johnson Group), levofloxacin (Abbott and the Johnson & Johnson Group), triamcinolone acetonide (the BMS Group), and warfarin sodium injectible (the BMS Group).

**Track 2 subject drugs**: anzemet (Aventis), aristicort (Fujisawa), dexamethasone acetate (Abbott, Bayer, and Watson), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), dolasetron mesylate (the Aventis Group), epoetin alfa (Amgen), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), filgrastim (Amgen), lorazepam injectible (Abbott, Baxter and Watson), solucortef (Pharmacia), and vancomycin sulfate (Abbott, Baxter, and Watson).

**Newly added drugs**: dopamine hydrochloride (Abbott, Baxter, and the BMS Group), epirubicin (Pfizer and the Pharmacia Group), heparin sodium (Abbott, Baxter, Pfizer, and the Pharmacia Group), hydrocortisone sodium succinate (Pfizer and the Pharmacia Group), lidocaine hydrochloride injectible (Abbott, AstraZeneca and Baxter), methotrexate sodium injectible (Baxter, Immunex, and the Wyeth Group), midazolam (Abbott, Baxter and Hoffman-LaRoche), promethazine (Abbott,

Baxter, the Sicor Group and Watson), and vincristine sulfate (the Pharmacia Group and the Sicor Group).

21(a)   At various times throughout the course of Mrs. Young's treatment, the Youngs made payments via credit card to meet their payment obligations to their various medical providers.  The Youngs made payments for the foregoing drugs as reflected in the record included in the Haviland Declaration.

23.   Oral Ray Roots resided in Wichita, Kansas and was an 82 year old Medicare recipient with supplemental insurance through AETNA. During the applicable time period, Mr. Roots was prescribed, and was charged for, among others, the following physician-administered drugs, based in whole or in part on AWP:

**Track 2 subject drugs**: albuterol sulfate (Dey, the GSK Group, and the Schering-Plough Group).

**Newly added drugs**: depo-provera (Pfizer).

Mr. Roots made payments for the foregoing drugs because his supplemental coverage required him to make payments for them as reflected in the records included with the Haviland Declaration.

23(a)   The evidence previously produced in this case shows that Mr. Roots paid a portion of an AWP-based price for Depo-Provera, a product sold by Track 2 Defendant, Pharmacia. For example, Mr. Roots' records show that Mr. Roots was given injections of Depo-Provera from 1998 through at least 2002. A HCFA Medicare Summary Notice shows that Mr. Roots was given an injection of Depo-Provera on February 15, 1999. *See* ROOTS 0159. The Medicare approved amount for this injection was $10.49 and Medicare paid the provider 80%: $8.39. This left a remaining balance of $2.10 which was submitted to AETNA, Mr. Roots' supplemental insurance. *See* ROOTS 0161. AETNA paid 80% of the remaining balance to the provider ($1.68). After Medicare and

AETNA's payments, Mr. Roots was responsible for $0.42. Mr. Roots made all required payments to his physician. *See* ROOTS 0160; *see also* ROOTS 0158.

23(b)   As the Medicare allowable went up, so did Mr. Roots' contribution. A Medicare Summary Notice shows that Mr. Roots was given an injection of Depo-Provera on July 25, 2002. *See* ROOTS 0183.  The Medicare approved amount for Depo-Provera in 2002 was $33.91 and Medicare paid the provider 80%: $27.13. This left a remaining balance of $6.78 which was submitted to AETNA. *See* ROOTS 0185. AETNA paid 80% of the remaining balance to the provider ($5.42). *See* ROOTS 0184. Mr. Roots continued to make all required payments to his physician. *See* ROOTS 0003. Because the Medicare allowable cost was higher in 2002, Mr. Roots was responsible for a larger portion of his Depo Provera injection, $1.36; his contribution more than tripled in three years.

24.   Ethel Walters represents the estate of her husband, Hunter Walters. Mr. Walters resided in Bandalia, Michigan and was a Medicare recipient with no supplemental insurance. Mr. Walter was treated for emphysema and prostate cancer. During the applicable time period, Mr. Walters was prescribed, and was charged for, among others, the following physician-administered drugs, based in whole or in part on AWP:

**Track 2 subject drugs**: albuterol sulfate (Dey, the GSK Group, and the Schering-Plough Group) and ipratopium bromide (Dey).

Mr. Walters made payments for the foregoing drugs as reflected in the records included with the Haviland Declaration.

24(b).   Mrs. Kathryn Bean represents the estate of her husband, Mr. Harold Bean. Mr Bean was a Medicare recipient with supplemental coverage through Aetna. Mr. Bean was treated for

prostate cancer and a respiratory condition. Mr. Bean was prescribed, and was charged for, among others, the following physician-administered drugs, based in whole or in part on AWP:

**Track 1 drugs:** goserelin acetate (AstraZeneca).

**Track 2 subject drugs**: albuterol sulfate (Dey, the GSK Group, and the Schering-Plough Group), epoetin alfa (Amgen and the Johnson & Johnson Group), and ipratopium bromide (Dey).

**Newly added drugs**: ringers lactated with dextrose injectible (Abbott and Baxter).

Mr. Bean made payments for the foregoing drugs because his supplemental coverage required him to make payments for them.

60.     Rebecca Hopkins resides in North East, Pennsylvania, and is a 49 year-old who has been privately insured through Blue Cross/Blue Shield of Pennsylvania for most of the applicable time period.  However, for a portion of her medical care and treatment, Mrs. Hopkins had no insurance coverage and had to pay 100% of the cost of her care, amounting to thousands of dollars, which care included physician-administered drugs for which she paid out of pocket.  Mrs. Hopkins received medication for ovarian cancer.  During the applicable time period, Mrs. Hopkins was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP:

**Track 1 drugs:** paclitaxel (the BMS Group) and tamoxifen (AstraZeneca).

**Track 2 subject drugs**: bleomycin sulfate (the BMS Group and the Pharmacia Group), cisplatin (Baxter, the BMS Group, and the Sicor Group), etoposide phosphate (the BMS Group, the Pharmacia Group, the Sicor Group), and vancomycin sulfate (Abbott, Baxter, and Watson).

Mrs. Hopkins has made payments for the foregoing drugs as reflected in the records included in the Haviland Declaration.

61.     Beverly Thomson Shaw is an attorney and represents the estate of her father, George Baker Thomson.  Mr. Thomson resided in Gulfport, Florida, and was privately insured through Wellcare.  Mr. Thomson was treated for prostate cancer.  During the applicable time period, Mr. Thomson was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP:

**Track 1 drugs**: goserelin acetate (AstraZeneca).

**Newly added drugs**: Trelstar, triptorelin pamoate (Pfizer and the Pharmacia Group).

Mr. Thomson has made payments for the foregoing drugs as reflected in the records included in the Haviland Declaration.

61(a).   The evidence shows that Mr. Thomson paid a portion of an AWP-based price for Trelstar, a product sold by Track 2 Defendant, Watson.  For example, Mr. Thomson's records show that Mr. Thompson was given injections of Trelstar LA 11.25mg (3 month) multiple times throughout 2003 and 2004.  *See* THOMSON 0014-0017.  Mr. Thomson's insurance (Florida Wellcare) was billed $680.00 for the injection dated 7/30/2004.  *See* THOMSON 0017.  Wellcare paid $542.40 leaving a balance of $135.60 for Mr. Thomson.  An invoice sent to Mr. Thomson confirms his 20% responsibility in the same amount – $135.60.  *See* THOMSON 0005.  Mr. Thomson's handwritten notes confirm that he mailed a check on 9/17/04 for the amount due.

61(b).   There are many more consumer-patients throughout the country who, like Intervening Plaintiffs, have been harmed by the unlawful conduct of the Defendant Drug Manufacturers and who seek the same relief as that sought by this Complaint in Intervention.  In the interest of maintaining all the benefits and protections of this representative action, these individuals have not been named herein to assure their status as passive parties to the lawsuit.  However, should the Court deem it necessary for one or more individuals to join with the Intervening Plaintiffs to

assure that any class(es) certified, now or in the future, are represented adequately, either because of the failing health condition of one or more of the Intervening Plaintiffs or otherwise, it is affirmatively alleged and respectfully requested hereby that leave of Court be granted to amend this Complaint in Intervention to allow the addition of such individuals to the action.

### IV.   GENERAL ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

**B.      The Defendant Drug Manufacturers Commit AWP Fraud To Increase Market Share For Their Drugs Covered By Medicare Part B.**

**1(a).   Certain of the Defendants Drug Manufacturers' Fraudulent Conduct Within the Medicare Part B Program**

**a.      Other Hidden and Improper Inducements and Price Reductions**

167(a).   The sales and marketing practices of the Defendant Drug Manufacturers were directed at medical providers to influence their treatment decisions as to the medical care of their patients, including Intervening Plaintiffs.  In particular, the Defendant Drug Manufacturers have aggressively marketed the enormous profits providers could make on these drugs by charging patients based on AWP, in excess of their net acquisition cost, in promoted a particular drug, or a particular brand of drug, over other treatment options.  Such marketing and sales tactics focused on the economic self-interest of the provider rather than health and welfare of their patients.  Rather than direct providers to disclose the discounts they received on drugs consistent with the providers' obligations under governing law, codes and medical ethics, the Defendant Drug Manufacturers either expressly or impliedly directed providers to withhold from patients (like Intervening Plaintiffs), the discounts they received for physician-administered drugs.  As a result, providers have been able to pocket enormous profits due to the difference between the undisclosed discounted

prices the Defendant Drug Manufacturers have charged providers for drugs covered by Medicare Part B, and the higher prices providers charged to patients.

167(b).  With their illegal sales and marketing tactics, the defendants have caused the unseemly influence of profits and economic self-interest to invade the physician-patient relationship, and thereby to affect adversely the care and treatment of patients.  Many patients, including some of the Intervening Plaintiffs herein, have been prescribed particular drugs over other drugs and treatment options because of the undue influence the profit their physicians could enjoy from the prescribed drug can have and has had.  Some patients, including some Intervening Plaintiffs, have even been switched from one drug to another not solely because of medical reasons, but because their doctors were influenced by the fact that one drug had more profit-making potential than another.  Consistent with defendants' instructions, Intervening Plaintiffs and other consumers were never told, and thus had no knowledge, that such marketing and sales tactics were being used to affect the decisions about which drugs or treatment options were prescribed or recommended.

### C(a).   The Defendant Drug Manufacturers Conspired With Each Other To Compete Based On Spreads And To Commit AWP Fraud With Respect To Their Competing Drugs.

190(a).  As alleged herein, Medicare Part B does not, as a general matter, cover the cost of prescription drugs.  Medicare Part B does, however, cover the cost of drugs administered by or under the supervision of a medical physician ("physician-administered drugs").  Medications administered by or under the supervision of a physician and covered by Medicare Part B cover a broad spectrum of classes and indications.  Medicare Part B drugs include many intravenously-administered drugs, a large number of which are infused in a doctor's office, as well as drugs administered by implanted delivery systems, and drugs for inhalation administered by nebulizer equipment.  The "physician-administered drugs" covered by Medicare Part B include, for example,

both oral and injectable versions of drugs to fight cancer, as well as drugs to treat blood cell deficiencies, nausea, and immune deficiencies. These drugs can be further subclassed depending on the indication for that drug: for example, drugs to fight prostate cancer, drugs to fight breast cancer, and so on.

190(b). Each Defendant Drug Manufacturer sells a drug that competes either directly or indirectly with a drug manufactured and sold by one or more of the other defendants. For example, paclitaxel is indicated for the treatment of various forms of lung cancer, breast cancer, ovarian cancer, and Kaposi's sarcoma. Paclitaxel is manufactured by the BMS Group. Moreover, more than one drug may be indicated for the treatment of the same type of cancer. For example, drugs indicated for breast cancer include both paclitaxel (which, again, is manufactured by the BMS Group) and etoposide phosphate (which is manufactured by the BMS Group, Pharmacia, and the Sicor Group). Every physician-administered drug at issue in this action competes with at least one or more drugs sold by defendants, and/or alternative therapies, for the treatment of the same medical conditions.

190(c). Drug company defendants who manufacture and sell drugs used to treat the same medical conditions each have a significant interest in ensuring that their drugs are used by healthcare providers to treat the specific illnesses for which they are indicated. Rather than rely solely upon the medical benefits of their drugs in promoting their sale, however, the Defendant Drug Manufacturers marketed their drugs by emphasizing the profit to be made from the spreads on their particular drugs. Specifically, the defendants who manufacture and sell Medicare Part B-covered drugs used to treat the same or similar medical conditions have conspired and agreed, either implicitly or explicitly, among themselves and with others, to compete unlawfully marketing the "spreads" for their drugs to healthcare providers, to adopt similar pricing mechanisms that

artificially inflate the AWPs for their drugs, to conceal their unlawful conduct, and to resist efforts by government officials and others to investigate, uncover and/or reform this scheme.

190(d).  The effect of the drug company defendants' conspiracy was to inflate the prices of Medicare Part B covered drugs, and to cause consumers to be charged for healthcare far in excess that which they would have been in the absence of such conspiracy.  Extolling the financial benefits that would inure to healthcare providers from relatively expensive drugs with large "spreads" has caused consumers to be prescribed and charged for these higher priced drugs, rather than less expensive drugs or alternative therapies that could have been used to treat the same condition.

## V.    EXAMPLES OF SPECIFIC UNLAWFUL CONDUCT

### A.    Abbott.

216(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by Abbott or a co-conspirator, and were charged a price based all or in part on AWP: Aaronson (bupivacaine, dextrose injectible, dextrose sodium chloride, diltiazem hydrochloride injectible, epinephrine, famotidine, fentanyl citrate, furosemide, glycopyrrolate injectible, heparin sodium, hydromorphone, lidocaine hydrochloride injectible, magnesium sulfate injectible, midazolam hydrochloride, morphine sulfate injectible, neostigmine methylsulfate, potassium chloride, promethazine injectible, ringers lactated with dextrose injectible, propofol injectible, sodium chloride, succinylcholine chloride injectible, and vercuronium bromide injectible), Carter (adenosine and furosemide), Clark (ciprofloxacin hydrochloride, dextrose injectible, enalaprilat injectible, famotidine, fentanyl citrate, hydromorphone injectible, labetalol injectible, lidocaine hydrochloride injectible, midazolam hydrochloride, morphine sulfate injectible, potassium chloride, and sodium chloride), Howe (gentamicicin sulfate), and Estate of Young (dexamethasone

acetate, dopamine hydrochloride, fentanyl citrate,  heparin sodium, levofloxacin, lidocaine hydrochloride injectible, lorazepam injectible, midazolam, promethazine, and vancomycin sulfate).

**B.     Amgen.**

230(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by Amgen or a co-conspirator, and were charged a price based all or in part on AWP:  Aaronson (darbepoetin alfa, Epogen, pegfilgrastim), Carter (darbepoetin alfa and epoetin alfa), Clark (Epogen), Howe (pegfilgrastim), Shepley (Epogen), and Estate of Young (Epogen and filgrastim)..

**D.     The Aventis Group (Aventis, Pharma, Hoechst, and Behring).**

263(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by the Aventis Group or a co-conspirator, and were charged a price based all or in part on AWP: Aaronson (albumin, enoxaparin sodium, furosemide, sodium chloride), Bloom (triamcinoclone acetonide), Carter (furosemide), Clark (sodium chloride), Howe (docetaxel), and Estate of Young (dolasetron mesylate).

**E.     Baxter.**

285(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by Baxter or a co-conspirator, and were charged a price based all or in part on AWP: Aaronson (albumin, carboplatin injectible, cefazolin sodium, cisplatin, dexamethasone sodium phosphate, dextrose injectible, diltiazem hydrochloride injectible, diphenhydramine injectible, famotidine, fentanyl citrate, furosemide, glycopyrrolate injectible, heparin sodium, hetastarch sodium chloride injectible, hydromorphone, lidocaine hydrochloride injectible, midazolam hydrochloride, neostigmine methylsulfate, phenylephrine, potassium chloride, promethazine injectible, ringers lactated with dextrose injectible, propofol injectible, sodium

18

chloride, and vercuronium bromide injectible), Carter (furosemide), Clark (cefazolin, ciprofloxacin hydrochloride, cisplatin, dexamethasone sodium phosphate, dextrose injectible, enalaprilat injectible, famotidine, fentanyl citrate, hetastarch sodium chloride injectible, hydromorphone injectible, labetalol injectible, lidocaine hydrochloride injectible,  midazolam hydrochloride, potassium chloride, and sodium chloride), Howe (dexamethasone sodium phosphate, and gentamicicin sulfate), and Estate of Young (dexamethasone sodium phosphate, dopamine hydrochloride, fentanyl citrate, heparin sodium, lidocaine hydrochloride injectible, lorazepam injectible, methotrexate sodium injectible, midazolam, promethazine, and vancomycin sulfate).

**F.    Bayer.**

301(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by Bayer or a co-conspirator, and were charged a price based all or in part on AWP: Aaronson (plicamycin), Clark (ciprofloxacin hydrochloride), and Estate of Young (dexamethasone acetate  and moxifloxacin injectible).

**H.    Dey.**

337(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by Dey or a co-conspirator, and were charged a price based all or in part on AWP: Aaronson (epinephrine and ipratopium bromide), and Walters (albuterol sulfate).

**I.    The Fujisawa Group (Fujisawa Pharmaceutical, Fujisawa Healthcare, and Fujisawa USA).**

353(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by the Fujisawa Group or a co-conspirator, and were charged a price based all or in part on AWP: Aaronson (dexamethasone sodium phosphate), Carter (adenosine),

Clark (dexamethasone sodium phosphate, methylsulfate), Howe (dexamethasone sodium phosphate and gentamicicin sulfate), and Estate of Young (dexamethasone sodium phosphate).

**K.      Immunex.**

406(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by Immunex or a co-conspirator, and were charged a price based all or in part on AWP:  Estate of Young (methotrexate sodium injectible).

**N.      The Pharmacia Group (Pharmacia and P&U).**

439(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by the Pharmacia Group or a co-conspirator, and were charged a price based all or in part on AWP: Aaronson (diphenhydramine injectible and heparin sodium),Thomson (triptorelin pamoate) and Estate of Young (cytoxan, epirubicin, heparin sodium, hydrocortisone sodium succinate, and vincristine sulfate).

**P.      The Sicor Group (Sicor, Gensia and Gensia Sicor).**

473(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by the Sicor Group or a co-conspirator, and were charged a price based all or in part on AWP:  Aaronson (cisplatin, dexamethasone sodium phosphate, diltiazem hydrochloride injectible, epinephrine, glycopyrrolate injectible, magnesium sulfate injectible, neostigmine methylsulfate, phenylephrine, promethazine injectible, propofol injectible, sodium chloride, and vercuronium bromide injectible), Clark (cisplatin, dexamethasone sodium phosphate, enalaprilat injectible, and sodium chloride),, Howe (dexamethasone sodium phosphate),  and Estate of Young (dexamethasone sodium phosphate, promethazine, and vincristine sulfate).

**R.     Watson.**

488(a).  The following Medicare Intervenor Plaintiffs were prescribed one or more Medicare Part B covered drugs sold by Watson or a co-conspirator, and were charged a price based all or in part on AWP: Aaronson (dexamethasone sodium phosphate and promethazine injectible), Clark (dexamethasone sodium phosphate), Howe (dexamethasone sodium phosphate and gentamicicin sulfate), and Estate of Young (dexamethasone acetate, dexamethasone sodium phosphate, lorazepam injectible, promethazine, and vancomycin sulfate).

## VIII.     CLASS ACTION ALLEGATIONS FOR THE AWP PAYOR SCHEME

504(a).   Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and propose the same consumer classes the Court certified in its January 2006 Order, certifying some but not all Intervenor Plaintiffs as representatives on the Track 1 consumer classes.

Dated: August 5, 2011                     Respectfully submitted,

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr., Esquire
Robert G. Hughes, Esquire
Michael J. Lorusso, Esquire
**HAVILAND HUGHES, L.L.C.**
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106
Telephone: (215) 609-4661
Facsimile:  (215) 392-4400

*Counsel for Intervenor-Plaintiffs, David Aaronson (for Sue Ruth Aaronson), Katie Bean (for Harold Bean), Jimmie May Carter (for Harold Carter), Roger Clark, Rebecca Hopkins, M. Joyce Howe (for Robert Howe), Pat Drewett (for James Monk), Oral Roots, Mary Wright (for James Shepley), Beverly Thomson Shaw (for George Baker Thomson), Ethel Walters (for Hunter Walters),and Larry Young (for Patricia Young)*