IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: PHARMACEUTICAL INDUSTRY AVERAGE       :
WHOLESALE PRICE LITIGATION                   :          MDL No.  1456
                                             :          C.A. No. 01-12257-PBS
THIS DOCUMENT RELATES TO                     :
ALL ACTIONS                                  :
                                             :
                                             :          Judge Patti B. Saris

_____

**MEMORANDUM OF LAW IN SUPPORT MOTION FOR LEAVE TO INTERVENE**

Movants, by and through their undersigned counsel, hereby submit this Memorandum of

Law in Support of the Motion for Leave to Intervene.

**I.      PRELIMINARY STATEMENT**

Movants' intervention is supported by this Court's very rulings in *City Partnership*

*Company v. Atlantic Acquisition Limited Partnership.  See*, 100 F.3d 1041 (1st Cir. 1996).  In

*City Partnership*, this Court readily permitted nearly 20 persons to intervene for the purpose of

allowing intervenors the opportunity to object to a settlement, a settlement in which intervenors

fully participated and had access to all discovery, on the grounds that the settlement contained

little or no consideration for the release of certain claims.  *Id* at 1043.  Indeed, intervention was

granted by this Court despite intervenors full participation in the settlement negotiations, access

to all discovery, and the concomitant ability to protect their interests during settlement

negotiations.  *See id*.

Here, movants/putative intervenors ("Intervenors") have had no such access or ability to

protect their interests.  Intervenors did not, *inter alia*, participate in any way in settlement

negotiations that led to the original Settlement Agreement currently before this Court, did not

participate in the original allocation between consumers and TPPs, and were not able to reach

agreement with Class Counsel as to their participation in the mediation as to the reallocation

concerning settlement of the 85 Newly Added Drugs, the release of which little or no

consideration was given.  Unlike the intervenors in *City Partnership*, movants herein have not

had an opportunity to protect their interests.  The settlement, and allocation, have been thrust

upon them.  As the Court is aware, there are no class representatives before the Court respecting

purchases of any Newly Added Drugs.   This state of affairs remains despite Class Counsel's

long held knowledge of the existence of movants, their availability to participate as class

representatives, and their interest to act in such capacity.

Given that this Court has permitted intervention under circumstances in which

intervenors had far more opportunity to participate and protect their interests prior to

intervention, this Court should readily acknowledge movants' substantial interests and their need

to protect those interests, and thereafter grant leave to intervene as of right, or in the alternative,

grant permission to intervene.

## II.    INTRODUCTION

Intervenors[1], each of whom is an individual consumer, were prescribed one or more of

the Track 2 Defendants' drugs[2], as identified in the attached Complaint in Intervention, and were

charged for those drugs based, in whole or in part, upon the Average Wholesale Price ("AWP")

---

[1] Intervenors are Rev. David Aaronson, Katie Bean (for Harold Bean), Jimmie May
Carter (for Harold Carter), Roger Clark (for David Clark), Rebecca Hopkins, Joyce Howe
(for Robert Howe), Oral Roots, Mary Wright (for James Shepley), Beverly Thomson
Shaw (for George Baker Thomson), Ethel Walters (for Hunter Walters), Pat Drewitt (for
James Monk) and Larry Young.

[2] Intervenor's also were prescribed and paid for many of the Track 1 Defendants' drugs, and this
Court ruled that several of them had standing and were adequate to serve as named class
representatives to the Track 1 Class 1 and 3 consumer sub-classes. *See* 233 F.R.D. 229 (D.Mass.
2006).

for the drug. As such, each of these proposed Intervenors is a class member in the instant case as

defined by the class definition. [3]

In 2005, this Honorable Court recognized that the interests of individual consumer absent

class members were not being protected by the plaintiffs in this case and ruled as follows in its

Memorandum and Order Re: Motion for Class Certification, dated August 16, 2005:

> I rule as follows: (1) the association plaintiffs do not have standing
> to assert claims of consumer-beneficiaries who make co-payments
> under Medicare Part B or who make private co-insurance payments
> for physician administered drugs under private health insurance
> plans; (2) TPPs are not adequate or typical class representatives for
> Medicare Part B consumers; (3) a nationwide class of Medicare Part
> B beneficiaries meets the remainder of the requirements of
> Fed. R. Civ. P. 23(a) and 23(b)(3); (4) plaintiffs may amend the
> RFAMCC to propose individual class plaintiffs who are Medicare
> Part B beneficiaries . . . .

230 F.R.D. at 66.

Certain Intervenors (or the decedent on whose behalf the Intervenor's claims are being

made), namely, Susan Aaronson, Harold Carter, David E. Clark, Robert Howe, James Shepley,

Harold Bean, Oral Roots, Hunter Walters, James Monk and Patricia K. Young, are Medicare

beneficiaries (or was a Medicare beneficiary at the time of his/her death) who were prescribed

and charged for drugs covered by Medicare Part B.  (Medicare Part B includes not only

physician-administered drugs, but also certain inhalants and oral cancer medications.)  These

---

[3] The AWP Payor Class is defined as "[a]ll persons or entities who, for purposes other than
resale and during the Class Period, paid any portion of the purchase for a prescription drug
manufactured by a Defendant Drug manufacturer (as identified in Appendix A) at a price
calculated by reference to the published AWP during the class period."  See Revised Fifth
Amended Master consolidated Class Action complaint ("RFAMCC").  The RFAMCC is
incorporated by reference in Intervenors' Complaint in Intervention. *See* Complaint in
Intervention at ¶ 1(a).

consumers are precisely the types of individuals which this Court specifically determined should

be named plaintiffs in this action.  *See Id.* at (3),(4).

Certain other Intervenors (or the decedent on whose behalf the Intervenors' claims are

being made), are under 65 years old (or were under 65 at the time of their death) and therefore,

are non-Medicare beneficiaries, but, nevertheless, were prescribed and charged for drugs covered

by Medicare Part B.  Rebecca Hopkins was uninsured for a time and paid the entire amount for

some of her drugs.  Rebecca Hopkins and George Baker Thomson were also privately insured

consumers,[4] each of whom also was charged for his/her drugs.

For the reasons set forth herein, including by reference the reasons set forth in this

Court's 2006 Memorandum and Order, Intervenors submit that the current class representatives,

which are various health and welfare fund third party payors and other organizational entities,[5]

cannot adequately represent the interests of these consumers.  Likewise, Intervenors submit that

the proposed additional putative consumer class representatives cannot adequately represent the

---

[4] It should be noted that certain Medicare beneficiaries are also privately insured by a Medigap insurer.

[5] The putative class representatives in the instant Track 2 settlement class are as follows: Vermont Public Interest Research Group, Wisconsin Citizen Action, New York State Wide Senior Action Council,  and Citizen Action of New York for Class 1; United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust, Sheet Metal Workers National Health Fund for Class 2; and Teamsters Health & Welfare Fund of Philadelphia and Vicinity, Philadelphia Federation of Teachers Health and Welfare Fund, Man-U Service Contract Trust Fund, Pipefitter's Local Union 537 Trust Funds, Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund, United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund for Class 3.  *See* Proposed Settlement Agreement at 7. Health Care for All was also listed as a putative class representative but was withdrawn by Class Counsel after this Court raised a conflict of interest regarding the organization.

interests of the consumer class with respect to the 85 Newly-Added  Drugs.[6]   Indeed, no other

persons, throughout the pendency of this action, have come forward who are adequate to

represent the interests of the Intervenor Plaintiffs.  Therefore, Intervenors respectfully request

that they be given leave to intervene to protect their interests.

### III.    ARGUMENT

This Court has the authority and should grant movants' intervention as of right or, in the

alternative, permit intervention.  Intervention in class actions is specifically contemplated under

Federal Rule of Civil Procedure 23.   Specifically, Rule 23 provides in pertinent part that "[i]

conducting an action under this rule, the court may issue orders that require- to protect class

members and fairly conduct the action-giving appropriate notice to some or all the class

members of: any step in the action, the proposed extent of the judgment, or the members'

opportunity to signify whether they consider the representation fair and adequate, to intervene

and present claims or defenses, or to otherwise come into the action.  *See* Fed. R. Civ. P.

23(d)(1)(B)(i)-(iii).

Rule 23(d)(2) "empowers the court in any type of class action to encourage members of

the class 'to intervene and present claims or defenses, or otherwise to come into the action.'" *In*

*re Enron Corp. Securities, Derivative & Erisa Litigation,* 2004 WL 405886 at *1 n.2 (S.D.Tex.

Feb. 25, 2004) (quoting *Vuyanich v. Republic Nat'l Bank of Dallas,* 82 F.R.D. 420, 436

(N.D.Tex.1979).  Pursuant to this Rule, the court has great discretion to allow intervention for

two purposes:  the protection of the members of the class or otherwise for the fair conduct of the

action...." *Id.*  These two purposes mirror the two types of intervention which Rule 24 allows

---

[6] The proposed additional putative consumer class representatives are as follows: Agnes Swayze, Mariella Laday, Muriel Tonacchio, and Thomas Trusky.

intervention as of right and permissive intervention. *Id.* Intervention under Federal Rule of Civil

Procedure 24 provides for interventions as of right and permissive interventions. *See* Fed. R.

Civ. P. 24(a) and (b). Here, Intervenors satisfy the requirements for intervention.

### A. Intervenors Satisfy The Requirements Of Rule 24(a) And Should Be Permitted To Intervene As Of Right.

Rule 24(a) provides a mandatory intervention of right. *See* Fed. R. Civ. P. 24(a). The

Rule provides in pertinent part that "[o]n timely motion the court must permit anyone to

intervene who . . . claims an interest relating to the property or transaction that is the subject of

the action, and is so situated that disposing of the action may as a practical matter impair or

impede the movants ability to protect its interest, unless existing parties adequately represent that

interest. Fed. R. Civ. P. 24(a)(2). Indeed, Rule 24(a) considerably restricts the court's discretion

whether to allow intervention of right by providing that a party meeting the requirements of Rule

24(a) (2)  must be permitted to intervene. *Stringfellow v. Concerned Neighbors in Action,* 480

U.S. 370, 382 n. 1 (1987) (Brennan, J., concurring in part and concurring in the judgment).

A party seeking to intervene pursuant to Rule 24(a)(2) must satisfy four requirements: 1)

timeliness; 2) sufficiency of interest; 3) likelihood of interest impairment or impediment; and 4)

inadequacy of representation by existing parties. *Dagget v. Commission on Governmental Ethisc*

*and Election Practices,* 172 F.3d 104, 109 (1st Cir. 1999); *Pub. Serv. Co. Of New Hampshire v.*

*Patch,* 136 F.3d 197, 204 (1st Cir. 1998). However, the inherent imprecision of Rule 24(a)(2)'s

individual elements dictates that they "be read not discretely, but together", and always in

keeping with a commonsense view of the overall litigation. *Id* (quoting *United States v. Hooker*

*Chems. & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir.1984)). And, that application of the factual

circumstances requires a "holistic rather than reductionist approach."[7] *Id.* Accordingly, the First

Circuit has held that "application of the Rule involves the pragmatic balancing of a range of

factors that arise in varying factual situations.*" International Paper Co. v. Inhabitants of Town*

*of Jay, Me.,* 887 F.2d 338, 343 (1st Cir.1989). Here, Intervenors satisfy the requirements of Rule

24(a) and should be permitted to intervene as of right.

### 1.      Intervenors Motion is Timely

Under the totality of the instant circumstances, Intervenors' Motion is timely. "There is

no bright-line rule delineating when a motion to intervene is or is not timeous. Instead, courts

must decide the question on a case by case basis, examining the totality of the relevant

circumstances." *Langone v. Flint Ink North America Corp.* 231 F.R.D. 114, 117 (D.Mass.2005)

(quoting *Blanco Popular de Puerto Rico v. Greenblatt,* 964 F.2d 1227, 1230 (1st Cir.1992).

While timeliness is an important requirement, the standards for timeliness are relaxed for

intervention as of right "because greater interests are at stake . . ." *Blanco Popular de Pureto*

*Rico v. Greenblatt,* 964 F.2d 1227, 1230 n. 2 (1st Cir. 1992)(*quoting Fiandaca v. Cunningham,*

---

[7] In *Patch*, the First Circuit affirmed the district court's denial of intervention to a group of
ratepayers and advocates in an action by electric utilities against state public utilities
commissioners, challenging the commission's plan to inject retail competition into New
Hampshire's electric utility market, because the applicants for intervention already were
represented adequately by the commissioners due to a symmetry of interest in keeping rates
lower through competition. However, in *Daggett, supra*, a case wherein prospective candidates
moved to intervene to defend the Maine Clean Election Act from constitutional challenges
brought by other candidates and political contributors, the First Circuit distinguished *Patch* by
noting that in *Patch* the consumers seeking intervention had interests identical to those of all
other consumers of electricity in New Hampshire, while in the case before it, those seeking
intervention were prospective candidates who would be directly affected by the underlying
action respecting the Maine Clean Election Act, such that their interests were not adequately
represented by existing parties. 172 F.3d at 110. As in *Daggett*, there is no adequate consumer
class representative in this case with respect to the Newly Added Drugs, thus the named
plaintiffs herein do not have symmetry of interest with Intervenors such that allowing
intervention is appropriate.

827 F.2d 825, 833 (1st Cir. 1987)).  Timeliness is based on four factors: "(i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." *R & G Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 584 F.3d 1, 7, (1st Cir. 2009).  The timeliness analysis is fact-based and must take into consideration the totality of the circumstances. *Id.*

Intervenors' application is timely as it comes on the heels of yet another Fairness Hearing for the proposed Track 2 Settlement wherein Class Counsel failed to establish an adequate record from which this Court could make the "quintessential fairness finding."  July 7, 2011 Tr. at 28:12-29:4.  Despite having a room full of skilled counsel for both Plaintiffs and Defendants, each trying to convince the Court to approve a $125 million settlement that would extinguish the rights of Class members all over the country, not one person was able to point the Court to any evidence proving that the 85 Newly Added Drugs had been contemplated by Class Counsel prior to Defendant's attempt to include them in the release.  Though the issue of the addition of the 85 Newly Added Drugs (nearly doubling the scope of the settlement), and the objection to the same, has been raised on several occasions by Intervenors' counsel, it has only recently become clear that Class Counsel intend to simply forge ahead and ignore the obvious deficiencies.

Intervenors move this Court at an appropriate time in that they have filed their papers at a period in time in which they knew that their interests were at risk.  Notwithstanding the above, putative intervenors have consistently advocated for adequate representation, particularly with respect to the 85 Newly Added Drugs.  Indeed, counsel for Intervenors has been actively and intensely working on an agreement, both through Eric Green (the Court-appointed mediator) and

directly with Class Counsel, to have Intervenors named as class representatives to provide the

much needed representation.  These negotiations culminated in a verbal agreement to proffer

Intervenors as adequate class representatives, particularly with respect to the Newly Added

Drugs. However, and at the last minute, Class Counsel withdrew from the agreement.

Intervenors have immediately moved this Court, in less than one week following notification by

Class Counsel that the agreement to have Intervenors act as class representatives had fallen

through and that their interests were now at risk.

In addition to the above, prejudice to the existing parties is non-existent or at worst

minimal.  If the Track 2 Settlement is unfair, then it does not matter how much work has been

put into the process or how much time it has taken.  An unfair settlement cannot be approved

under any circumstances.  Without adequate representation, the interests of the Class, as well as

Intervenors interests, particularly with respect to the Newly Added Drugs, is compromised and in

conflict.  Thus, if intervention is allowed, it can only assist in the process of obtaining a fair

result in that all interests would then be represented and a fair settlement might be achieved.

Thus, there is little to no prejudice to the existing parties.

Conversely, there is great prejudice to the Intervenors in that, without adequate

representation of their interests, which does not exist at this point, Intervenors will be subject to

the terms of a settlement agreement that obligates them to give up valuable rights and claims

without ever having their interests adequately represented.  Indeed, there is significant danger

that Intervenors interests will be, *inter alia*, compromised and/or in conflict with the interests of

the current class representatives, representatives who may be adequate for Subject Drugs other

than the Newly Added Drugs but do not have a vested interest in receiving remuneration or

consideration respecting the Newly Added Drugs.

Finally, throughout the pendency of this litigation, there have been considerable issues regarding adequate representation of the consumer class.   Notably, for the majority of the time, and until just recently, there were no named consumer representatives participating in this case, adequate or otherwise.   Further, none of the currently proposed named representatives participated in the settlement negotiations.   With respect to the Newly Added Drugs and the proposed settlement agreement, there has been no representation by anyone with standing. These special circumstances, as well as the sordid history of class representatives in this action, militates in favor of Intervenors' intervention.   Thus, putative Intervenors Motion is timely.

## 2.      Intervenors Have Sufficient Interests

Intervenors have direct and sufficiently protectable interests warranting intervention.  The First Circuit has emphasized that "[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene," while reiterating "that the intervenor's claims must bear a 'sufficiently close relationship' to the dispute between the original litigants" and that "[t]he interest must be direct, not contingent." *Conservation Law Foundation of New England, Inc. v. Mosbacher,*  966 F.2d 39, 42 (1st Cir. 1992)(*quoting Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 638 (1st Cir.1989))*; Langone v. Flint Ink North America Corp*.  231 F.R.D. 114, 118 (D.Mass.2005).  Further, that the determination of whether an interest is sufficient for Rule 24(a)(2) purposes is colored to some extent by the third factor-whether disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest. *Langone v. Flint Ink North America Corp*., 231 F.R.D. 114, 118 (D. Mass. 2005)(citing *Conservation Law Foundation of New England, Inc. v. Mosbacher,*  966 F.2d 39, 42 (1st Cir. 1992)).

Intervenors have numerous, direct, substantial, and legally protectable interests relating to the subject matter of this litigation including, *inter alia*, Intervenors' significant interests in the following: (1) establishing their status as parties to this litigation in order to protect and advance their rights under the law; (2) providing adequate representation as to the settlement of claims regarding the additional 85 Newly Added Drugs that have never been a part of this litigation - some of which this Court struck from the litigation on at least two (2) occasions - but which Class Counsel unilaterally allowed Defendants to add into the subject release; and (3) to otherwise ensure that the Intervening Plaintiffs and other affected consumers nationwide recover the full measure of relief to which they are entitled.

Further, it is evident that because the claims of the Intervenors are subject to the proposed release contained in the settlement agreement, they have significant rights and interests, particularly with respect to the Newly Added Drugs, that will be impaired or impeded as a result of the settlement.  The proposed settlement will completely extinguish their rights and claims, yet Class Counsel has not proffered adequate representation for the same. These above interests, each alone, and certainly cumulatively, qualify as a direct and "sufficient stake in the outcome" to allow for intervention.  *Daggett*,  172 F.3d at 109.  Thus, Intervenors have sufficient interests.

### 3.     Determination Without Intervention Will Impair or Impede Intervenors' Ability To Protect Their Interests

With regard to the third requirement that the applicant's ability to protect his interests be impaired or impeded, the First Circuit held that "even a small threat that the intervention applicants' [interests] could be jeopardized would be ample reason for finding that their ability to protect their interest 'may' be adversely affected." *Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 35, 35 n.1 (1st Cir.  2000) (*citing Grutter v. Bollinger*,

188 F.3d 394 (6th Cir. 1999)).  "[T]he Rule refers to impairment 'as a practical matter.'  Thus, the court is not limited to consequences of a strictly legal nature.  'To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.'"  *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246 (10th Cir. 2001) (citations omitted).

Intervenors have met the minimal burden of this requirement in that Intervenors, as argued *supra*, have significant and direct interests in this litigation, particularly respecting the 85 Newly Added Drugs that have not been adequately represented and protected during the pendency of this litigation.  Indeed, it is clear that the Settlement Agreement currently before the Court did not take Intervenors' interests into consideration.  Rather, the Settlement Agreement releases these claims for little consideration based upon the subjective determination of Class Counsel that non should be treated as Group B drugs.  This further demonstrates that without intervention Intervenors will be impeded in their ability to protect their interests.  There is more than a small threat that these interests will be compromised and/or in conflict with the current class representative's interests, considering that none of the current representatives are adequate for any of the Newly Added Drugs.

Thus, reading the elements of Rule 24(a)(2) together, as the First Circuit suggested in *Patch, supra*, the actions taken and decisions made herein by Class Counsel and the Court, respecting the proposed certification of a settlement class and the proposed settlement itself, may impair or impede Intervenors' ability to protect their numerous, direct, substantial, and legally protectable interests.  Such interests are not being adequately represented by existing parties.

**4.      Proposed Named Class Representatives Are Inadequate To Protect Putative Intervenors' Interests**

Respecting the fourth requirement, namely, that the applicant's interest will not be adequately represented by existing parties, the applicant "need only make a minimal showing that the representation afforded by existing parties likely will prove inadequate." *Patch*, 136 F.3d at 207 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)).[8]

Three factors govern whether an applicant's interests are adequately represented by existing parties: "(1) whether the interest of a present party is such that it will undoubtedly make all of the Intervenors' arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be Intervenors' would offer any necessary elements to the proceedings that other parties would neglect." *Southwest Cir. for Biol. Diversity v. Berg,* 268 F.3d 810, 823 (9th Cir. 2001). *See also,* Dkt. No. 5941 (Motion to Intervene filed by Class Counsel).

As argued above, Intervenors submit that the existing plaintiffs cannot adequately represent the interests of consumers who paid for the 85 Newly Added Drugs that have never been subject to this litigation, but which Class Counsel unilaterally allowed Defendants to add into the subject release. Intervenors were prescribed and overcharged for these drugs, such that their interests in this regard also have not been adequately advanced by the existing plaintiffs.[9] *See* Complaint in Intervention, attached as Exhibit "A".

---

[8] The First Circuit in the *Daggett* and *Cotter* cases only analyzed this requirement in the context wherein a governmental entity was the party that ostensibly could adequately represent the applicant's interests.

[9] The Advisory Committee Notes to Rule 24(a) respecting the 1966 Amendment to the rule provide: "A class member who claims that his 'representative' does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather,

Here, the present "parties", as well as Class Counsel, have not litigated the claims

relating to the 85 Newly Added Drugs but have nonetheless attempted to settle the claims

knowing full well the complete absence of any adequate class representatives respecting these

drugs.  Intervenors would provide Class Counsel with the necessary adequate representation to

potentially settle those claims, but only if this Court believes it appropriate to allow the addition

of the new drugs.

Defendants already have been successful in this case in using the documents and

deposition testimony of one consumer, Robert A. Swanston, who was the putative class

representative in a state court case in Arizona, *Swanston, et al. v. TAP Pharmaceutical Products,*

*Inc., et al.*, No. CV 2002-004988 (Super. Ct., Maricopa Co., AZ)("*Swanston* Action),[10] to

persuade this Court that Mr. Swanston paid no payments based upon AWP, that he was not a

member of the class he sought to represent and that consumers "who were fully reimbursed

[arguably] suffered no injury."  *See In re AWP,* 230 F.R.D. 61,81 (D.Mass. 2005).

However, now that Defendants are in the same posture as Class Counsel, attempting to

have this Court certify a settlement class and approve the proposed settlement, they have turned a

blind eye to the inadequate representation of the settlement Class.  The Supreme Court does not

---

he should, as a general rule, be entitled to intervene in the action."   FED. R. CIV. P. 24(a)
(Advisory Committee Note).

[10] On January 10, 2003, Defendants removed the *Swanston* Action, which was thereafter
transferred by the Judicial Panel on Multidistrict Litigation to this Honorable Court.  This Court
remanded the *Swanston* Action back to Maricopa County Superior Court on January 9, 2004.
*See In re Pharmaceutical Industry Average Wholesale Price Litig.*, 307 F. Supp.2d 190 (2004).
On June 8, 2009, the Maricopa County court granted Defendants' Motion to Dismiss the
*Swanston* Action based on their challenge of Mr. Swanston's standing and their argument that he
had not established that he made an AWP based purchase.

give this Court that luxury; rather the Court bears a fiduciary duty to the Class and must analyze

the prongs of the certification with the "undiluted, even heightened, attention in the settlement

context" that *Amchem* dictates.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Intervenor's counsel have learned from their experience respecting the settlement of

MDL 1430 vis- a-vis the state court class actions in which Intervenor's counsel represented the

class representatives and the plaintiff classes, namely, *Walker, et al. v. TAP Pharmaceutical*

*Products, Inc., et al.*, C.A. No. CPM-L-682-01 (Super. Ct., Law Div., Cape May Co., NJ),

*Stetser, et al. v. TAP Pharmaceutical Products, Inc., et al.*, No. 1-CV-5268 (Ct. Gen'l Justice,

Super. Ct. Div., New Hanover Co., NC) and the *Swanston* Action, that the settlement of a related

federal case as a result of judgments about the value of a case made by other counsel can have

significant effects upon the interests of all litigants.

Specifically, regarding Intervenor's counsel's experience in the context of the MDL 1430

settlement,  Intervenor's counsel had determined with their clients that the initial terms of the

settlement of MDL 1430 were unsatisfactory for the clients, being only 30% of consumers out of

pocket payments for Lupron®.  And, when the *Walker* class case was on the eve of trial, the class

trial was enjoined by the terms of the MDL 1430 settlement, which was preliminarily approved

by the Boston Court.  Absent class member consumers of both the *Walker* and the MDL 1430

actions were forced to opt-out of the MDL settlement in order to achieve a better result.  "The

threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the

requisite interest."  *Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1115

(10th Cir. 2002).

Eventually, the MDL 1430 settlement was improved for consumers to 50% of their out of

pocket payments, through the efforts of Intervenors' counsel.  However, that involved

intervention by the undersigned after the settlement in MDL 1430 was approved, and an appeal

from preliminary approval of the settlement was taken.  The goal here is to avoid such a course

of action.

Because the named class representatives are inadequate to protect the interests of

Intervenors, this Court should grant Intervenors leave to intervene as of right.

**B.      Intervenors Satisfy The Requirements Of Rule 24(b) And Should Be Permitted To Intervene.**

If this Court determines that all of the interests of consumers relating to the instant case

and the 85 Newly Added Drugs, as set forth *supra*, are insufficient or that those interests are

being adequately protected by existing parties such that intervention as of right under Rule 24(a)

is not appropriate, then Intervenor submits, in the alternative, that permissive intervention under

Rule 24(b)(2) should be granted.

Rule 24(b) provides for permissive intervention.  *See* Fed. R. Civ. P. 24(b).  The rule

provides in pertinent part that "[o]n timely motion the court may permit anyone to intervene who

. . . has a claim or defense that shares with the main action a common question of law or fact."

Fed R. Civ. P. 24(b)(1(B).   "Once this threshold matter [of demonstrating that there is a

common question of law or fact] has been established, it is for the Court to exercise its

discretion, taking as a principal consideration whether allowance would prejudice the rights of

the original parties.  Afterwards, the 'district court can consider almost any factor rationally

relevant but enjoys broad discretion in granting or denying the motion.'" *United States v. Puerto

Rico*, 227 F.R.D. 28, 30 (D.P.R. 2005) (quoting *Daggett*, 172 F.3d at 113); *See also* Fed. R. Civ.

P. 24(b)(3).  The fact that there are differences between the claims of consumers and the named

plaintiffs herein should not preclude permissive intervention.  "Varying facts and circumstances

may actually add to the court's understanding of the scope and breadth of the claims and therefore support an intervention motion." *Rivera v. New York City Housing Auth.*, No. 94 Civ. 4366, 1995 WL 375912, at \*3 (S.D.N.Y. June 23, 1995).

In the instant case Intervenors' claims have common questions of fact and law with the claims being resolved in the proposed settlement. Here, the named plaintiffs in the instant case are insurers and third party payors who paid for the various pharmaceuticals which were prescribed to and taken by consumers, like Intervenors, such that their claims flow from and are derivative of the claims of the consumers. *See* Complaint in Intervention, attached to the Putative Intervenors Motion as Exhibit "A". Further, Intervenors have similar if not identical questions of fact regarding, *inter alia*, price manipulation with respect to their drug purchases, and settlement regarding those purchases, as well as common legal issues, including, *inter alia*, the illegality of those manipulations, the adequacy of the representation (particularly with respect to the 85 Newly Added Drugs), and the fairness of the settlement. *See id*.

This Court recently allowed intervention pursuant to Rule 24(b)(2) in a situation in which renters moved to intervene in a subrogation action brought by renters' insurer and owners' insurer to recover for fire and to assert tort and contract claims against dryer manufacturer and company that serviced dryer. *One Beacon Ins. Co. v. Electrolux*, 223 F.R.D. 21 (D. Mass 2004).

No prejudice would result to any of the original parties. This Court has called for the inclusion of consumers in this case and has repeatedly allowed additional representatives to join to bolster the representation of consumers. Despite such open leave of Court, Class Counsel have failed to provide the requisite adequate representation concerning the 85 Newly Added Drugs.

This Court, in its discretion should allow these consumers to intervene because their claims have common issues of fact and law with the claims asserted herein, because no prejudice will result to the original parties if intervention is permitted, because decisions made in this case will affect their claims and the claims of other consumers that they seek to represent, and because they will arguably provide the necessary adequate representation concerning the 85 Newly Added Drugs that this Court must ensure exists prior to certifying a settlement class and approving any settlement involving these drugs.

With regard to the discretion of the courts to allow permissive intervention pursuant to Rule 24(b)(2), commentators have noted:

> Although this portion of Rule 24(b)(2) has never been amended, Rule 24(a)(2) was significantly changed in 1966 and those changes have an impact on Rule 24(b)(2). Some of the cases in which the court, prior to 1966, exercised its discretion and granted or denied intervention under subdivision (b)(2) would now meet the requirements for intervention of right under Rule 24(a)(2) and the court would not have the discretion it once had. Nor are cases interpreting amended Rule 24(a)(2) wholly irrelevant in passing on applications for permissive intervention. Thus it has been seen that cases under the amended rule have held that, in proper circumstances, **the effect of a decision as stare decisis would put the absentee at a practical disadvantage if he is not allowed to intervene, and, on the basis of this, have allowed intervention of right. Even when this situation exists, intervention of right must be denied if the party is adequately represented. But the stare decisis effect on the absentee may tip the scales in favor of allowing permissive intervention even by one who is adequately represented.** The earlier cases had thought intervention not appropriate when the applicant merely wished to avoid the creation of a precedent that might someday come back to haunt him, and had suggested that he could protect himself sufficiently by appearing as amicus curiae. **The post-1966 decisions taking stare decisis into account for intervention of right under Rule 24(a)(2) add weight to the argument that this is a relevant consideration when permissive intervention is sought under Rule 24(b)(2).**

18

7C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1911 (2d ed. 1986 & Supp. 2005) (emphasis added).

For all of the above reasons, Intervenors submit that they should be permitted to intervene under Rule 24(b)(2) for purposes of providing adequate representation regarding the Newly Added Drugs.

## V.    CONCLUSION

For all of the above reasons, this Honorable Court should grant movants' Motion for Leave to Intervene.

Respectfully submitted,

Date:   August 5, 2011

By:_/s/ Donald E. Haviland, Jr.____
Donald E. Haviland, Jr., Esquire
Robert G. Hughes, Esquire
Michael J. Lorusso, Esquire
**HAVILAND HUGHES, LLC**
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106
Telephone: (215) 609-4661
Facsimile:  (215) 392-4400

*Counsel for Intervener-Plaintiffs,
David Aaronson (for Sue Ruth Aaronson), Katie Bean (for Harold Bean), Jimmie May Carter (for Harold Carter), Roger Clark (for David Clark), Rebecca Hopkins, M. Joyce Howe (for Robert Howe), Pat Drewett (for James Monk), Oral Roots, Mary Wright (for James Shepley), Beverly Thomson Shaw (for George Baker Thomson), Ethel Walters (for Hunter Walters), and Larry Young (for Patricia Young)*