UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK TWO SETTLEMENT | Judge Patti B. Saris |

**CLASS COUNSEL'S EMERGENCY MOTION TO QUASH DON HAVILAND'S
UNAUTHORIZED NOTICES TO ATTEND AUGUST 8, 2011 CONTINUED TRACK
TWO FAIRNESS HEARING AND MOTION FOR SANCTIONS AGAINST HAVILAND**

001534-16  466693 V1

In his most recent attack on this Settlement, Haviland has failed to advance any additional arguments about the alleged inadequacies of the associational plaintiffs or the current or proposed Class 1 consumer plaintiffs.  Indeed, even though this Court has permitted Haviland to file hundreds of pages of pleadings objecting to this Settlement, and has considered those pleadings even when they were untimely, Haviland claims that he has been denied Due Process of law because he was given "only" twenty pages to file his latest brief.  Instead of advancing any additional arguments about these plaintiffs, Haviland has filed and served thirteen Notices to Attend the continued Fairness Hearing on August 8, 2011.

Haviland cannot seriously expect his Notices to be honored.  This Court has twice struck nearly-identical Notices he issued – in connection with the BMS Settlement and in connection with the June 13, 2011 hearing *on this very Settlement*.  Yet even knowing this to be true, Haviland has thumbed his nose at this Court once again, daring it to deny him the discovery he continues to contend he must receive, at the expense of Class Counsel and this Court who must continually respond to his unsupported demands.  Furthermore, demanding on a summer Friday afternoon that a whole host of people located throughout the country attend a hearing in Boston at 9:00 a.m. on Monday morning is the pinnacle of gamesmanship and bad faith.

Class Counsel respectfully move the Court for an order quashing these Notices.  Because they were neither authorized by this Court nor the Federal Rules of Civil Procedure, they, like the previously-quashed notices Haviland served for the BMS fairness hearing and the notices he served for the June 13, 2011 hearing *on this same Settlement,* should be promptly quashed.  In addition, this Court should sanction Haviland for serving Notices that are plainly frivolous and imposed solely for the purpose of harassing Class Counsel and the witnesses to which the Notices are directed.  The grounds for this Motion follow.

001534-16  466693 V1

## I.    BACKGROUND

**A.    Notices to Attend Continued Track Two Fairness Hearing**

On August 5, 2011, on the Friday before the 9:00 a.m. continued fairness hearing on the

Track Two settlement, Don Haviland served thirteen Notices to Attend.  *See* Dkt Nos. 7713-

7725.  The Notices were directed to:

1.    <u>The four association Class 1 plaintiffs</u>.  (Citizen Action of New York, New York

Statewide Senior Action Council, Wisconsin Citizen Action, and Vermont Public

Interest Group.)

2.    <u>Health Care for All</u> ("HCFA").  In a Report and Recommendation Judge Bowler

recommended that HCFA be granted leave to withdraw as a Class 1 representative

for this Settlement.  *See* Electronic Order dated June 9, 2001.  Haviland did not

appeal this ruling.

3.    <u>Consumer and TPP allocation counsel for the Track 2 settlement</u>.  Alex

Sugarman-Brozan, former director of PAL and consumer allocation counsel for

this Settlement, and Richard Cohen and Jon Karmel, TPP allocation counsel for

this Settlement.

4.    <u>The four consumer Class 1 representatives for the Track 2 settlement</u>.  Muriel

Tonacchio, Thomas Trusky, Mariella Laday and Agnes Swayze.

5.    <u>Plaintiffs' expert economist</u>.  Dr. Raymond S. Hartman, who recently submitted a

Declaration with regard to this Settlement (Dkt No. 7699).

All of the Notices contained the following language:

> If you fail to appear and/or produce the documents or things
> required by this notice to attend and produce, *you may be subject
> to the sanctions authorized by the Federal Rules of Civil
> Procedure.*

001534-16  466693 V1

(Emphasis added.)  The Notices directed to the consumer class representatives stated that the

sanctions available could include "having your testimony stricken and your application for

appointment as a settlement class representative denied."[1]  The Notices also (1) directed that the

recipients appear at the Track Two Fairness Hearing and "remain until excused;" (2) directed

that the recipients arrange for testimony by telephone if they are unable to appear in person; and

(3) commanded them to bring documents to the hearing.

Haviland demanded that the associational plaintiffs and HCFA bring the following

documents:

> A. All documents in your possession, custody or control relating to the
> Group's work in this case, and your interactions with any of the counsel
> for the Class or the Defendants in this matter respecting the same.
>
> B. All documents relating to your claimed purchases of drugs on any
> Defendant during the relevant time period.

Dkt Nos. 7719-23.

He directed that Alex Sugarman-Brozan bring the following documents:

> A. Copy of the Declaration of Alex Sugerman-Brozan, Co-Consumer
> Allocation Counsel, in Support of Final Approval of the Track Two
> Settlement dated April 9, 2011.
>
> B. All documents in your possession, custody or control relating to the
> aforesaid Affidavit, your work in this case, and your interactions with any
> of the counsel for the Class or the Defendants in this matter respecting the
> same.

Dkt No. 7718.

He directed that TPP allocation counsel, Richard Cohen and Jon Karmel, bring the

following documents:

> A. All documents in your possession, custody or control relating to the

---

[1] The Notice to Dr. Hartman [Dkt No. 7717] stated the same thing, showing the careless and perfunctory manner in which Haviland issued these notices.

001534-16  466693 V1

Group's work on the Track 2 settlement in this case, and your interactions with any of the counsel for the Class or the Defendants in this matter respecting the same.

B.      All documents relating to your claimed purchases of Track 2 drugs on any Defendant during the relevant time period.

Dkt Nos. 7724 and 7725.  Haviland failed to explain why TPP allocation counsel should have to

produce documents related to their individual purchases of Track 2 drugs.[2]

Haviland commanded that the Class 1 consumer plaintiffs bring the following

documents:

A.      Copy of the declarations proffered in support of their addition as class representatives to the Track 2 settlement.

B.      All documents regarding such declarations, "your work in this case, and your interactions with any of the counsel for the Class or the Defendants in this matter respecting the same."

C.      All documents relating to "claimed purchases" of drugs from any Track 2 Defendant.

*See* Dkt Nos. 7713-16.

He commanded that Dr. Hartman bring "all documents pertaining to your work on your

Declaration in Support of the Track 2 Settlement Allocation (See Dkt. Nos. 7699)."  Dkt No.

7717.

## II.      THE NOTICES WERE NOT AUTHORIZED BY THIS COURT OR THE FEDERAL RULES OF CIVIL PROCEDURE

Contrary to their plain language, the Notices were not authorized by the Federal Rules of

Civil Procedure – nor did Haviland seek leave from the Court to issue them.  Since Haviland has

issued nearly identical notices for the BMS Fairness Hearing and for the last Fairness Hearing on

---

[2] If Haviland included this requirement by mistake, it again goes to the perfunctory and careless manner with which these Notices were issued.

this same Settlement, all of which were quashed, Haviland surely knows by now that these

Notices are *not* authorized by the Rules and require leave from the Court.  And leave was

required both because discovery closed years ago and because discovery by objectors like

Haviland is not permitted as a matter of course.  *See* MANUAL FOR COMPLEX LITIGATION

§ 21.643 (4th ed. 2009) ("Discovery [by objectors] should be minimal and conditioned upon a

showing of need, because it will delay settlement, introduce uncertainty, and might be

undertaken primarily to justify an award of attorney fees to the objector's counsel.").

Since Haviland served the Notices to Attend less than one business day before the

continued Track Two Fairness Hearing, the Notices were clearly meant as either a stunt to harass

and annoy Class Counsel or an empty gesture designed to attempt to preserve some sort of

baseless appellate argument regarding the current and proposed class representatives for this

Settlement.   Haviland's continued belief that the rules and procedures that apply to every other

party and attorney in this Court other than him should no longer be tolerated.

### III.   HAVILAND HAS SOUGHT TO HARASS CLASS REPRESENTATIVES BEFORE

This is not the first time that Haviland has sought to harass Class 1 representatives.

Indeed, it's not even the first time that Haviland attempted to serve last-minute Notices to Attend

a fairness hearing related *to this Settlement*.

A mere two months ago, after the close of business on June 6, 2011, Haviland served *ten*

Notices to Attend the June 13, 2011 Track Two Final Approval Hearing.  *See* Dkt Nos. 7579-

7588.  Those Notices were issued to the four associational Class 1 plaintiffs (Citizen Action of

New York, New York Statewide Senior Action Council, Wisconsin Citizen Action, and Vermont

Public Interest Group); Health Care for All (which at the time had sought to withdraw as a class

representative for this Settlement); consumer allocation counsel for this Settlement (Alex

Sugarman-Brozan); and the four consumer Class 1 representatives for this Settlement (Muriel Tonacchio, Thomas Trusky, Mariella Laday and Agnes Swayze).  This Court referred Class Counsel's motion to quash those Notices (Dkt No. 7590) to Magistrate Judge Bowler who, after convening a telephonic hearing on an emergency basis, quashed all of the Notices served.  *See* June 9, 2011 electronic order.

Haviland did the same thing with regard to the BMS Settlement.  On March 17, 2011, Haviland served a Notice to Attend on Class 1 representative Agnes Swayze, purporting to require her to attend the March 28, 2011 BMS Fairness Hearing.  Dkt No. 7461.  Haviland sent the Notice to Ms. Swayze, an elderly woman suffering from cancer and represented by counsel, to her home address.  *See* Certificate of Service, Dkt No. 7461-2.  This Court properly struck those Notices.  *See* Procedural Order, Dkt No. 7472 ("The Court hereby notifies all persons who received a 'Notice to Attend' from Mr. Haviland (See Docket Nos. 7461-66) that they are not required to appear in Court on March 28, 2011.  Similarly, the court declines to order the production of documents listed in the notices.").

***These Notices to Attend are identical to the ones this Court already <u>twice</u> refused to enforce.***

Similarly, two years ago, again as part of this settlement, Haviland attempted to notice the deposition of consumer Class 1 representative Muriel Tonacchio in order to "test" her adequacy as a class representative.  Dkt No. 5981-2.  He likewise sent subpoenas duces tecum to Health Care for All, Community Catalyst and Prescription Access Litigation.  This Court has ***already denied*** this discovery.  Although the Court did not enter a docket entry reflecting its decision, the Court made clear that it did not intend to sanction Haviland's fishing expedition.  *See* Transcript of Apr. 27, 2009 hearing, Ex. A, at 75:9-15 ("Now, Mr. Haviland has asked for

- 6 -

lots of discovery.  He's asked for deposition of PAL and every -- THE COURT:  No, no, no, no, we're not doing that . . .").

Specifically (*see id.* at 49-74), the Court rejected Haviland's request for discovery for two reasons.  First, the discovery was not necessary because Haviland was, in essence, making a legal argument about associations' ability to represent consumers in a settlement context and Ms. Tonacchio's ability to represent those who took and paid for drugs manufactured by Track 2 Defendants whose drugs she neither took nor paid for.  *See* Ex. A at 72:2-7 ("THE COURT:  So you're saying, so I get the legal argument, and I need to get to Mr. Berman, the legal argument is, regardless of what I say, the associations under that Second Circuit case do not have standing, and Tonacchio only does with respect to one defendant, and therefore that isn't enough at best?").  Second, during that exchange, ***Haviland admitted*** that his pursuit of discovery from PAL, HCFA and Community Catalyst was irrelevant to this settlement, but stated it was somehow relevant to this case "in totality."  Ex. A at 70:17-71:2 ("Well, one would hope so, but the problem we have with Prescription Action Litigation, it was a group that was in part founded by the lawyers in this room.  The mission statement that we put before the Court demonstrates that one of their five missions in life is to get cy pres.  ***Now, your Honor made the comment earlier there's not cy pres in this case,*** but think about this case in totality.  In AstraZeneca, there was a set-aside for cy pres, a guarantee.  One of the objections, frankly, the principal objection --  THE COURT:  I think I rejected it.") (emphasis added).  This Court therefore properly saw Haviland's discovery as both improper and irrelevant to this Settlement.

***And with regard to the Class Representatives, the Court has already found that they are adequate to serve***.  As the Court stated at the July 7, 2011 hearing:  "We have gone through the

- 7 -

documents that we have, and I believe that there's not only standing but that they can serve as class representatives." July 7, 2011 Hearing Tr. at 44.

It almost goes without saying at this point that this is not the first time that Haviland has sought to harass people and entities represented by Class Counsel here. In *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 4039 (D. Mass. Mar. 16, 2005) (Stearns, J.), Haviland's clients, who had been granted leave to intervene in the MDL, served interrogatories and document requests on the MDL parties and various health plans. They also noticed the depositions of and/or served subpoenas for appearance at deposition on ten individuals and entities, including the MDL class representatives and counsel for the MDL parties. *Id.* at *4-5. Because the court found that Haviland's clients had offered no "evidence" of collusion (*id*. at *9) in the settlement negotiations, the court quashed those subpoenas and entered a protective order on the written discovery. In so holding, the court found that "Intervenors have failed to seek leave of court or to specify why these depositions are necessary to the court's adjudication of the fairness of the settlement." *Id*. at *11.

Likewise, in the *In re Bridgeport Fire Litigation*, pending before Judge Steven T. O'Neill in the Court of Common Pleas of Montgomery County, Pennsylvania, Haviland attempted to serve subpoenas on parties to the litigation, as well as the personal counsel for one of the defendants in the case, in the middle of trial. *See* Opinion, CCP Master File No. 05-20924 (Feb. 27, 2009), Dkt No. 5984-5, at 19. The court quashed those subpoenas for three reasons. First, the court held that it was improper to serve subpoenas on parties to the litigation. Second, the court held that the subpoenas were improper because Haviland was not class counsel and represented Appellants "in a personal capacity only." *Id.* Third, the court held that the

- 8 -

subpoenas were improper because they sought details regarding settlement negotiations and the

drafting of the settlement agreement in the case.  *Id.*  The court found that:

> Mr. Haviland appears to have been trying to seek this information
> in support of a "wild goose chase" to prove a self-created theory
> that the Settlement Agreement was a product of collusion, a theory
> that has absolutely no basis in fact.  Mr. Haviland had no
> independent basis to support such an outrageous and manufactured
> allegation.

*Id.* at 19-20.  The court therefore concluded that:

> In this instance, the subpoenas Mr. Haviland sought to issue
> represented yet another example of his improper interference in the
> class action proceedings.  He had no right or basis to demand
> documents from the various parties and non-parties.  Mr. Haviland
> has continuously operated to delay and disrupt these proceedings
> and aggravate his former employer law firm.  This Court properly
> denied the subpoenas that were designed to achieve such improper
> purposes.

*Id.* at 20.[3]

## IV.   HAVILAND'S RELENTLESS HARASSMENT OF CLASS REPRESENTATIVES OF THIS SETTLEMENT SHOULD BE STOPPED

Given that this Court recently denied an ***identical*** attempt by Haviland to serve last-

minute notices to attend an earlier Fairness Hearing for this very Settlement, Haviland surely did

not expect these Notices to have any legal effect.  Yet, once again Class Counsel and this Court

must devote resources to seeking an order quashing these Notices.

If Haviland wanted to preserve his argument that he has somehow been improperly

denied discovery in support of his objection to this Settlement there were many procedurally

appropriate mechanisms to do so.  Indeed, Haviland has already claimed in his most recent filing

(Dkt No. 7728) that he has been denied due process by not being permitted discovery of these

---

[3] In the *Bridgeport Fire Litigation*, the Supreme Court of Pennsylvania has, *sua sponte*, referred Haviland to the Disciplinary Board of the Supreme Court of Pennsylvania for review of his conduct in that case.

001534-16  466693 V1

representatives and being denied more than twenty pages to further articulate his objections to this Settlement.  Instead, Haviland chose the method that would most harass both the Notice recipients and Class Counsel.  Respectfully, this is what sanctions are for.

Section 1927 permits sanctions to be awarded against attorneys who "multipl[y] the proceedings . . . unreasonably and vexatiously."  28 U.S.C. § 1927.  The First Circuit uses an objective standard for determining when a lawyer's actions are unreasonable or vexatious. *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 64 (1st Cir. 2008) (citation omitted).[4]  Thus, behavior is deemed vexatious when it is "harassing or annoying," "regardless of whether it is intended to be so."  *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990).  "[A]n attorney's actions must evince a studied disregard of the need for an orderly judicial process . . . or add up to a reckless breach of the lawyer's obligations as an officer of the court."  *Jensen*, 546 F.3d at 64 (internal and external citations omitted).  "Bad faith is not an essential element, but a finding of bad faith is usually a telltale indicium of sanctionable conduct."  *Id*. (citation omitted).  Here, even though such a showing is not required, Haviland clearly engaged in bad faith by issuing Notices that he *knew* this Court would deem to be improper, but that would force Class Counsel and this Court to devote further resources to Haviland's games.  This Court should sanction Haviland.

WHEREFORE Class Counsel respectfully request that this Court enter an order quashing the August 5, 2011 Notices to Attend, sanction Haviland appropriately, and all other relief that this Court deems just and appropriate.

---

[4] In *Jensen*, the First Circuit, while finding that the record below was not sufficiently developed to affirm the district court's award of sanctions, held that plaintiff's subsequent dismissal of a replacement class representative "under the circumstances could support an imposition of sanctions."  546 F 3d at 67.

- 10 -

DATED:  August 5, 2011

By:  /s/ Steve W. Berman
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St. NW, Suite 300
Washington, D.C.  20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455


Jeffrey Kodroff
John A. Macoretta
Spector, Roseman, Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe Street, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735
Co-Lead Counsel

001534-16  466693 V1

- 12 -

## CERTIFICATE OF SERVICE BY LEXISNEXIS FILE & SERVE

Docket No. MDL 1456

I, Steve W. Berman, hereby certify that I am one of plaintiffs' attorneys and that, on August 5, 2011, I caused copies of **CLASS COUNSEL'S EMERGENCY MOTION TO QUASH DON HAVILAND'S UNAUTHORIZED NOTICES TO ATTEND AUGUST 8, 2011 CONTINUED TRACK TWO FAIRNESS HEARING AND MOTION FOR SANCTIONS AGAINST HAVILAND** to be served on all counsel of record.

/s/ Steve W. Berman
Steve W. Berman

001534-16  466693 V1