# EXHIBIT "A"

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL ) | |
| INDUSTRY AVERAGE WHOLESALE ) | |
| PRICE LITIGATION ) | MDL No. 1456 |
| _____ ) | |
| ) | Master File No. |
| THIS DOCUMENT RELATES TO: ) | 1:01-CV-12257-PBS |
| ) | |
| United States ex rel. ) | Sub-Category Case |
| Linnette Sun and Greg ) | No. 1:08-CV-11200 |
| Hamilton, Relators ) | |
| ) | |
|     v. ) | |
| ) | |
| Baxter Hemoglobin ) | |
| Therapeutics and Baxter ) | |
| International Inc. ) | |

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

   Deposition of GREG HAMILTON, taken before MARGARET A. BACHNER, CSR, RMR, CRR, and Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions for the purpose of discovery, at Suite 600, 300 North LaSalle Street, Chicago, Illinois, on the 21st day of January, A.D. 2010, at 10:32 a.m.

1    38 of the Complaint?
2         A.   No.
3         Q.   Let me refer you to paragraph 39 of the
4    Complaint, which is Deposition Exhibit 7.
5              Paragraph 39 begins with the following:
6    "According to knowledge obtained by relator Greg
7    Hamilton, FDB refused to accept Baxter's 'list sales
8    price,' and instead submitted a letter stating that
9    their list price was $1.31 and that they wanted their
10   AWP to be described as $1.31."
11             Do you see that?
12        A.   Yes, I do.
13        Q.   Did you provide that information to --
14        A.   Yes, I did.
15        Q.   And was that information provided to you by
16   Kay Morgan?
17        A.   Yes, it was.
18        Q.   How is it that you had a conversation with
19   Kay Morgan about Baxter?
20        A.   Kay called me and asked if I had any idea
21   why Baxter would be submitting information that they
22   knew was in a format that was unacceptable.
23        Q.   When did this communication take place?
24        A.   I don't remember exactly.  I think it
25   was -- I'd have to go back and look at the dates.  I

Page 44

1    just don't remember.  But it was -- it was, I believe,
2    within days of her having received the letter from
3    Baxter.
4         Q.   Do you know why Kay Morgan called you?
5         A.   I can only speculate.
6         Q.   What do you think?
7         A.   I mean, I don't know.
8         Q.   She didn't tell you why she was calling
9    you?
10        MR. KLEIMAN:  Calls for speculation.
11             Go ahead.
12   BY THE WITNESS:
13        A.   I'm just saying I can -- I can only guess.
14   BY MR. JACKSON:
15        Q.   What's your guess?
16        A.   My guess is that Kay believed I was a
17   knowledgeable person particularly about the plasma
18   industry and about the factor industry.  Kay and I had
19   had several conversations about AWPs, about the
20   industry.  I was introduced to her by her superiors.
21             There was some issue -- Express Scripts is
22   a large customer of First DataBank.  And I was at a
23   meeting with the Chief Operating Officer, Chief
24   Financial Officer, some folks like that from First
25   DataBank at Express Scripts, and I brought up some

1   issue, I don't know what it was, but I know that three
2   or four of us scurried off into a separate conference
3   room because they were concerned about it, and they
4   picked up the phone and called Kay Morgan.
5           And we got on a conference call, and we
6   discussed whatever that particular issue was, and they
7   asked her to work with me to resolve it.
8           From that time forward every so often we
9   would talk. I'd call her or she'd call me just about,
10  you know, things that were going on in the industry
11  and whatever else.
12          So, I think that when she received a letter
13  as she described from Baxter, that as she described
14  it, it said, "We'd like our AWP to be $1.31 and our
15  list price is $1.31," she was, like, "They know that I
16  can't accept AWPs anymore. They know that. I deal
17  with Baxter all the time."
18      Q.   She said that?
19      A.   Yes. And she said, "I know that they know
20  that, and they know I need a WAC, not this list price
21  thing. I need a WAC. So, why are they doing this?"
22          And she was calling me up, trying to get --
23  you know, trying to get an opinion as to why she was
24  receiving this type of communication from Baxter.
25      Q.   So, is all of the factual information

HIGHLY CONFIDENTIAL DEPOSITION OF GREG HAMILTON
CONDUCTED ON THURSDAY, JANUARY 21, 2010

Page 46

1   specified in or included in paragraph 39 information
2   that you gained from Kay Morgan?
3        A.    Yes.
4                    (Deposition Exhibit Number 8 was
5                    marked for identification.)
6                    (Document tendered to the
7                    witness.)
8   BY MR. JACKSON:
9        Q.    I show you what's been marked as Deposition
10  Exhibit 8.  Deposition Exhibit 8 is a document
11  produced to Baxter by you.
12             Have you ever seen this document before?
13       A.    Yes.
14       Q.    What is this document?
15       A.    It's financial information about and
16  provided by a company called Hemophilia Resources of
17  America.
18       Q.    How did you come to acquire this document?
19       A.    While I was working at Express Scripts I
20  worked on a project that involved Hemophilia Resources
21  of America.
22       Q.    Who is or what is Hemophilia Resources of
23  America, Inc.?
24       A.    Hemophilia Resources of America, Inc. is
25  a -- no longer exists as such.  It's been purchased by