## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

## RESPONSE TO CLASS COUNSEL'S MOTION TO STRIKE PAGE 1 OF EXHIBIT 4 OFFERED BY DON HAVILAND DURING AUGUST 8, 2011 HEARING

Class Counsel seek to have stricken one page of a demonstrative exhibit used at the August 8, 2011 Track 2 Fairness Hearing pursuant to Fed.R.Evid. 702.  They now claim the mere calculation of a spread rises to the level of complexity that it can only be done through a witness qualified by "knowledge, skill, experience or training."  However, the Track 2 Defendants who for years have argued the "knowledge defense" have not offered any position regarding Class Counsel's assertion that such calculation requires "scientific, technical or other specialized knowledge."  In fact, at no time during the Fairness Hearing and the discussion of Exhibit 4 did any Track 2 Defendant dispute the spreads used in Exhibit 4 or any other exhibit that was proffered during the hearing.  Similarly, Class Counsel failed to object to the admissibility of the document at the Fairness Hearing and therefore waived any such objection. [1]
*See Bryant v. Astrue*, 2009 WL 6093969, 11 (E.D.Va., July 15, 2009).

---

[1] Class Counsel's claim that the exhibit was proffered "after the conclusion of the hearing" is wrong.  Rather, after the hearing the undersigned approached the court reporter and offered copies of the 4 exhibits used that had exhibit stickers affixed to them, because the actual copies used during the hearing did not have any identifying stickers. With respect to Exhibit 4, the undersigned discussed with the court reporter the need to possibly substitute a clean version of Exhibit 4 because the version that the Court reporter was given had been highlighted by the undersigned. All of the exhibits that were used by the undersigned at the Fairness Hearing were proffered during the hearing and both Class Counsel and the Defendants failed to object to any of them in a timely fashion.

Notwithstanding Class Counsel's waiver, their argument that the calculation of spreads requires a qualified expert fails on the merits. The subject chart did not purport to calculate "a spread calculation for all sales for each year in the class period for which the drugs were offered", as Class Counsel claims. Motion at 1. Rather, as the title of the chart states, the chart analyzes "**Known Examples of Spreads > 30%.**" With the exception of Trelstar and Eligard, as discussed below, the chart references a specific source as the known example for each and every drug. Other than the attachment to the letter from Congressman Stark (which the Court stated she was familiar with), each source document was produced by the Track 2 Defendants and has not been refuted.

Class Counsel's expert states that "spreads are calculated by taking the difference between AWP and ASP and dividing by ASP, while overcharge ratios take the same difference and instead divide by AWP." Hartman Declaration at FN13. Put another way, spreads and overcharge ratios are calculated by *subtracting* a drug's ASP from its AWP and then *dividing* that number by the drug's ASP or AWP. Hartman also states that an "[i]n general terms, an overcharge ratio can be thought of as the percentage of the dollars that were actually paid that would not have been paid but for the challenged conduct. For example, if a Class member paid $100 for a drug, and if the overcharge ratio for that drug is 45%, then the Class member has suffered $45 in overcharges. Hence, such overcharge ratios can be applied to actual paid amounts in the CMS data to estimate overcharges for relevant Class members." *Id.* at 6.

The intent of the demonstrative chart, as discussed at the hearing without objection, was to show that the pro-rata settlement distribution of 14.087% is less than what the distribution would be if the distribution was based on actual overcharges, as reflected in documentary evidence (the calculations were all well above 14.087%). As such, Page 1 of the subject exhibit

was produced for the Court's benefit pursuant to Rule 1006 of the Federal Rules of Evidence and provide assistance to the Court concerning basic, but extensive, calculations. *See* Fed.R. Evid.1006; *see also U.S. v. McElroy*, 587 F.3d 73 (1st Cir., 2009).

However, Certain Named Plaintiffs would like to correct a mistake in the labeling of the columns on Page 1 of the subject exhibit. Defendants correctly point out that column 6 of the chart indicates it is an "avg calculated spread." In actuality column 6 lists the overcharge ratios for those drugs based on the specific evidence attached to Page 1. That is, the overcharge ratio for Depo-Provera (a newly added drug) is 49.22%, as opposed to that number being the "spread". Per Dr. Hartman's mathematical formula, the overcharge ratio is calculated by dividing the average of the two spreads given for the drug by the drugs AWP, as listed in Exhibit W-6[2]. In fact, the calculated "spreads", defined by Dr. Hartman as "the difference between AWP and ASP and dividing by ASP"[3] are *far greater* than those represented on Page 1 of the subject document.[4]

The numbers for each of the subject drugs, except Eligard and Trelstar, were calculated using elementary math and are directly reflective of the known examples attached to the Page 1 of the subject document. Given Dr. Hartman's formula, such math does not require "scientific, technical or other specialized knowledge."

The 50% Eligard and Trelstar spreads used in the demonstrative were the subject of much discussion at the Track 2 Fairness Hearing. The undersigned explained to the Court that the

---

[2] Overcharge ratio = Average of ((AWP-Suggested Contract Price)/AWP). Plugging in the actual numbers, it is the average of (($96.45-$50.36)/$96.45), which is 47.79% and (($366.18-180.68)/$366.18), which is 50.66%, netting an average overcharge ratio of 49.22%.
[3] In the absence of ASPs, WACs and/or contract prices were used.
[4] The following are the correct calculated spreads:  Gamimune 156.77% (originally listed as 60.38%); Gammagard 211.22% (originally listed as 67.28%); Albuterol Sulfate 89.74% (originally listed as 40.84); Adriamycin 472.53(originally listed as 82.53%); Adrucil 88.36% (originally listed as 45.93%); Bleomycin 56.38(originally listed as 36.05%); Neosar 216.49% (originally listed as 66.96%); Toposar 591.19%(originally listed as 85.53%); Vincasar 9,150.74% (originally listed as 98.92%); Amphocin 1,717.79%(originally listed as 94.5%); and Depo-Provera 97.09% (originally listed as 49.22%).

drugs were the same chemical compound as Lupron (leuprolide acetate) and presented documents for Objectors James Monk and George Baker Thomson, respectively, establishing their standing and demonstrating that both drugs were launched and marketed with similar spreads as Lupron.  The undersigned explained further that in Lupron MDL-1430 consumers received 50% of their out-of-pocket loss for the settlement of their Lupron related claims.  The undersigned also explained to the Court that the 50% recovery was a marked improvement over the original 30% that the same Class Counsel litigating this case had originally agreed to for the consumer class, and that the improvement was brought about by the same objectors that now object to this inadequate proposed settlement.  The 50% Lupron recovery, as discussed at length during the Fairness Hearing, is the bases for using 50% in Page 1 of the subject demonstrative. In light of the evidence as presented at the Fairness Hearing, the Court ordered Class Counsel to re-evaluate the evidence regarding Trelstar and Eligard.

As with Class Counsel's other Motion to Strike regarding the Declaration of Michael J. Lorusso, Esq., Class Counsel do not provide sufficient cause to strike the effort by Objectors' counsel to assist the Court in understanding Dr. Hartman's report, which Class Counsel admit does not include relevant information.  Had Dr. Hartman appeared and testified at the Fairness hearing on August 8, perhaps Page 1 of the Exhibit 4 would have been unnecessary because Dr. Hartman could have been examined as to whether he was aware of these known examples of spreads in excess of 30%, and Dr. Hartman could have been shown the documentary evidence attached to Page 1 and been asked to apply his formula in court to arrive at the numbers reflected at Page 1.  In the absence of such appearance, and assistance to the Court, it is respectfully submitted that the Lorusso Declaration should be accepted by the Court as a summary of voluminous evidence, and accorded the weight the Court deems appropriate in its discretion.

4

For the foregoing reasons, we respectfully request that this Court deny Class Counsel's Motion to Strike Page 1 of Exhibit 4 Offered by Don Haviland During August 8, 2011 Hearing pursuant to Fed.R.Evid. 702.


Dated: August 15, 2011                       Respectfully submitted,

                                             /s/ Donald E. Haviland, Jr.
                                             Donald E. Haviland, Jr., Esquire
                                             Robert G. Hughes, Esquire
                                             Michael J. Lorusso, Esquire
                                             **HAVILAND HUGHES, L.L.C.**
                                             111 S. Independence Mall East
                                             The Bourse, Suite 1000
                                             Philadelphia, PA 19106
                                             Telephone: (215) 609-4661
                                             Facsimile:  (215) 392-4400

                                             *Counsel for Certain Named Plaintiffs,*
                                             *Rev. David Aaronson, Katie Bean (for*
                                             *Harold Bean), Jimmie May Carter (for*
                                             *Harold Carter), Roger Clark, Rebecca*
                                             *Hopkins, Joyce Howe, Pat Drewett (for*
                                             *James Monk), Virginia Newell, Oral Roots,*
                                             *Mary Wright (for James Shepley), Beverly*
                                             *Thomson Shaw, Esq. (for George Baker*
                                             *Thomson), Ethel Walters, and Larry Young*

## **CERTIFICATE OF SERVICE**

I, Donald E. Haviland, Jr., hereby certify that on August 15, 2011 the foregoing

Response to Class Counsel's Motion to Strike Page 1 of Exhibit 4 Offered by Don Haviland

During August 8, 2011 Hearing was filed via CM/ECF and all counsel of record were served via

ECF notification.

/s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr.