**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY | ) | |
| AVERAGE WHOLESALE PRICE | ) | |
| LITIGATION | ) | MDL No. 1456 |
| | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | CIVIL ACTION: 01-CV-12257-PBS |
| | ) | |
| ALL CLASS ACTIONS RELATING TO | ) | |
| TRACK TWO DEFENDANTS | ) | Hon. Patti B. Saris |
| | ) | |

**CLASS MEMBER PATRICIA WEATHERLY'S RESPONSE TO**
**PLAINTIFFS' SECOND SUPPLEMENTAL SUBMISSION IN SUPPORT OF A**
**REBALANCED TRACK TWO SETTLEMENT**

Class 3 Percentage Co-pay Consumer class member Patricia Weatherly ("Weatherly") of San Antonio, Texas hereby submits a Response to Plaintiffs' Second Supplemental Submission in Support of a Rebalanced Track Two Settlement.[1] In this Response Weatherly incorporates her previous several Objections filed in this matter. This Response further incorporates Weatherly's previous opposition to the allocation of funds between classes in this settlement, including the Class 1 allocation, and to Class Counsel's petition for attorneys' fees.

I.    **Argumentum Ad Hominem Logica Falsa Facit**

In its latest submission, Class Counsel has reclassified the Weatherly Objection as the "Landrigan objection" and labeled it as *frivolous*. Ms. Weatherly is appreciative of being personally spared the barbs directed at the messenger while her position as objector remains

---

[1] See, Plaintiffs' Second Supplemental Submission in Support of a Rebalanced Track Two Settlement, (Doc. No. 7750, August 19, 2011).

unsullied. Parenthetically, the messenger (Landrigan) has successfully parried bullies before, including notably as a Sixie.

Class Counsel cleverly focused on one facet of Weatherly's objection to denigrate the entirety of her objection. At the time that Weatherly called the website notice error to the Court's attention there had been no detailed explanation provided as to why, in Class Counsel's words, it was an error without consequence. Class Counsel has now provided a full explanation of the genesis of the error in the form of a declaration from the Senior Administrator of Rust Consulting.[2] An oral explanation of the error was acknowledged by Landrigan at the hearing before the Court on August 8, 2011. Until the detailed explanation was offered Weatherly's point regarding the error was valid and it was never frivolous. Obscured by Class Counsel's exercise of logical fallacy, the substance of Weatherly's objection once again remains unaddressed.

## II.     Weatherly's Objections have consistently pointed out that the Quantification of, Notice to,  and Award to Consumer Co-Pay Class Remains Inadequate

In a prior iteration of her objection Weatherly cited the website notice error as being symptomatic of the inadequacy of notice given to the consumer sub-class of Class 3 co-payment consumers. The inadequate notices sent to Class 3 Percentage Co-pay Consumers have failed to solicit claims from anywhere close to the number of potential claimants in the Class 3 Percentage Co-pay Consumer subclass. Class Counsel has never quantified the potential size of the Co-pay Consumer subclass and has never provided the Court with sufficient information to determine the adequacy of the compensation for potential Percentage Co-pay Consumer class members'

---

[2] See, Declaration of Daniel Coggeshall Regarding the Class 3 Claims Deadline on the Website for the Track Two Settlement (Doc. No. 7753, August 19, 2011).

claims. At the Fairness Hearing on December 16, 2008 Plaintiff counsel stated to the Court that

he did not know the potential size of Class 3. Plaintiff counsel's November 21, 2008 Report

Regarding Notice stated that that due to the complexity of the Track Two Settlement as

compared to previous settlements, the prior estimates of time needed to assemble the consumer

class information in this Track Two Settlement were inaccurate.[3] Now almost three years after

that report there is still no clear quantification of the consumer classes, including that represented

by Weatherly. As Weatherly pointed out in a prior version of her objection, without some sense

of the size of the class and the average class member's out-of-pocket expense, this Court cannot

determine how much the settlement agreement will be worth to the class. Duhaime v. John

Hancock Mutual Life Ins., 989 F. Supp. 375, 378 (D. Mass. 1997); Bowling v. Pfizer, Inc., 922

F. Supp. 1261, 1284 (S.D. Ohio 1996). Without knowing how valuable the settlement agreement

is to Class 3, there is no way to determine whether the proposed distribution of the settlement is

fair, reasonable, and adequate, or in the class's best interests.[4]

        In her (first) Revised Objection Weatherly presented statistics estimating the potential

pool of Percentage Co-pay Consumer class members. Weatherly indicated that if a significant

number of the Percentage Co-pay Consumer class members are eventually identified, the

proposed settlement amount allocated in the Consumer Settlement Pool will be inadequate to

fairly compensate Class 3 Percentage Co-pay Consumer class members.[5]

---

[3] See, Class Plaintiffs' Report to the Court Regarding Notice in the Track two Settlement and Motion to Reset Certain Dates Related to Consumer Claims, (Doc. No. 5703, November 21, 2008), at pages 2 through 4.
[4] See, Revised Objection to Class Action Settlement and Notice of Intent to Appear of Class Member Patricia Weatherly, (Doc. No. 5291, February 23, 2009), at pages 7, 8.
[5] Id, at pages 13, 14.

According to Class Counsel's submissions, as of July 2011 only 21,000 Class 3 co-payment consumers have responded to notices.[6] Class Counsel reported in January 2010 that there had been 370,000 visits to the AWP Track 2 Settlement Website, that there were 82,000 requests for Class 3 claims notices, and that 20,000 claims were filed. Class Counsel characterized that response as "excellent".[7] Class Counsel has indicated that Class 3 claim forms were mailed to 897,489 individual Class 3 members identified through data provided by ISHPs.[8] (ISHP's, who according to Class Counsel represent more than 60% of covered lives in the United States,[9] provided names and addresses but no billing information.) Class Counsel stated that as of May 31, 2011 Rust Consulting had mailed 959,362 Class 3 claim forms 'in response to requests'.[10]  The 21,000 Class 3 claims filed is a return of a meager two (2%) percent return on the 959,362 claim forms mailed. And, if the 897,489 claim forms mailed based on ISHP data are added to the 959,362 Class 3 claim forms mailed 'in response to requests', the 21,000 claims filed is only one (1%) percent of the 1,856,851 Class 3 claim forms mailed.

Similarly, the web and TV and newspaper advertising touted by Class Counsel have proven wholly inadequate. There has been no critical review by Class Counsel of this very poor take up record. Weatherly has repeatedly pointed out that the difficulty of assembling records to qualify for a partial refund was a significant and expensive hurdle for many potential claimants.[11]

---

[6] See, Class Counsel's Proposal to redistribute the Track Two Consumer Allocation, (Doc. No. 7647, July 5, 2011), at page 9.
[7] See, Class Plaintiffs' Notice of Status Related to Final Approval of the Track Two Settlement (Doc. No. 6867, January 28, 2010), at pages 1, 2.
[8] See, Plaintiffs' Response to Certain Named Plaintiff's Objections to Plaintiff's Supplemental Submission in Support of a Rebalanced Track Two Settlement, (Doc. No. 7737, August 5, 2011), at page 10.
[9] Id., at page 9.
[10] Id.
[11] See, Revised Objection to Class Action Settlement and Notice of Intent to Appear of Class Member Patricia Weatherly, (Doc. No. 5291, February 23, 2009), at pages 7 through 9.

It turns out that only about 8,000 partial refund claims were filed.[12] The less than precise "up to $35.00" Easy Pay award likely was not sufficiently attractive incentive to download and file cumbersome claim forms; ultimately it looks as though only 12,929 did.[13]  Indeed, until the recent proposed reallocation, the Easy Pay filers would have received a whopping $2.04 for their trouble.[14]

Weatherly previously postulated that, given the low allocation to the consumer class as compared to other recent settlements such as McKesson,[15] it may well be that Class Counsel intended that only a very small percentage of this settlement be claimed by consumers such as Weatherly.[16] In April 2009 Class Counsel filed a response to Weatherly's (and others') Objections.[17] Attached to its response was the Declaration of Jeffery S. Goldenberg who had been '*asked by Class Counsel to represent the interests of consumers*' in the allocation process. According to Mr. Goldenberg only 3.5% of the total damage amounts in this case assigned to Class 3 was allocated to consumers.[18]

Weatherly has consistently objected to the failure to adequately identify the Class 3 Co-Pay consumer class in this case by way of proven methods of notifying the consumer class members through subpoenaing billing records from ISHP's and other sources such as pharmacies

---

[12] See, Plaintiffs' Second Supplemental Submission in Support of a Rebalanced Track Two Settlement, supra, at page 18.

[13] Id.

[14] Id., at page 17.

[15] *New England Carpenters Health benefits Fund, et al. v. First Data Bank, Inc. and McKesson Corporation*, 1:05cv1148-PBS.

[16] See, Revised Third Objection to Class Action Settlement and Notice of Intent to Appear of Class Member Patricia Weatherly, (Doc. No. 7545, May 17, 2011), at  page 6.

[17] Class Plaintiff's Response to Objections to Final Approval of the Track Two Settlement (Doc. No. 6003).

[18] See, Declaration of Jeffery S. Goldenberg (Doc. No. 6006).  See also, Declaration of Alex Sugerman-Brozan (Doc. No. 6007).

so that **direct payment** of an award could be made.[19] A **direct payment** mechanism should be adopted patterned on <u>Relafen,</u>[20] and the settlement should be reallocated accordingly. Weatherly has acknowledged that the present case differs in some respects from <u>Relafen</u>.  In this case many billing records are not retrievable from pharmacies given that here many drugs were dispensed or administered by physicians. But it seems notably more efficient and effective that a significant percentage of the Class 3 potential members, <u>along with their billing/records,</u> can be identified and obtained directly from the files of the ISHPs.  If the ISHPs and pharmacies are reluctant to provide the billing records then the method used in <u>Relafen</u> to identify members and assemble records, namely subpoenas, is a viable option with a proven record of effectiveness. If fairness, reasonableness and adequacy are the mandate of FRCP 23(e)(2), any methodology with a demonstrable impact of increasing from the number of Class 3 members who can participate in this settlement should be given serious consideration. It is particularly striking that in <u>Relafen</u> the consumer class was increased 92% through the subpoena process over the number who submitted claims in response to traditional notices.

In sum, the recent $3,125,000 allocation improvement for the consumer class now proposed by Class Counsel is inadequate and fails to address the fact that the consumer classes in this case have been inadequately represented, have received less than sufficient notice, have been allocated a less than adequate award of damages, and should have received an award through **direct payment** based on ISHP billing records and pharmacy records.

---

[19] <u>See</u>, Revised Objection to Class Action Settlement and Notice of Intent to Appear of Class Member Patricia Weatherly, <u>supra</u>, at pages 11, 12.
[20] *In Re Relafen Antitrust Litigation,* 01-CV-12239-WGY (D. Mass.), Memorandum of Judge Young, (Doc. No 457, September 28, 2005), page 19.

### III. Appeal Bond

At the August 8, 2011 fairness hearing the Court suggested to Class Counsel that it brief the Court on whether it would be appropriate to impose an appeal bond on any objectors who might have the temerity to file an appeal after final approval of this settlement. Class Counsel was of course eager to provide the solicited advice. They also gratuitously added a lurid description of the financial risks to an objector pursuing an appeal. Weatherly has not decided how to respond, if at all. There may, however, be public policy considerations involving prior restraint on an objector's right to be heard regarding alternative outcomes in this and other proposed settlements.

### IV. Attorneys' Fees

Class Counsel has requested the Court approve attorneys' fees of 30% of the Track Two settlement, plus expenses.[21] The Court recently reduced the fee award to Class Counsel to 28%. The Court should consider further reducing the award of attorney fees for the portion of the settlement received by the Class 3 Percentage Co-pay Consumer class based on the failure of adequate representation provided to that sub class.

The Court should additionally entertain a motion for an award of attorneys' fees to the several objectors who have over a number of years consistently pushed for a significant reallocation of funds in favor of the consumer classes coupled with effective methods of identifying and distributing the funds to consumers. Credit should, at a minimum, be afforded to

---

[21] Lead Class Counsel's Motion for Attorneys' Fees and Costs and Compensation of the Class Representatives in Association with the Track Two Settlement (Doc. No. 7515, April 28, 2011).

the objectors for the *de minimus* reallocation of $3,125,000 to the consumer classes proposed by

Class Counsel. [22]


## V.    Conclusion

For each of the reasons stated above, the Court should reject the proposed class action

settlement in its entirety as not being fair, reasonable, and adequate.  As it presently stands the

proposed settlement is a travesty to the consumer class members. The consumer class should be

properly identified through methods proven in other similar cases in this District, including

McKesson and Relafen, a direct payment mechanism should be adopted, and the settlement

should be reallocated accordingly.


Weatherly reserves the rights to withdraw, revise, add to, and expand upon her objections

and call witnesses and experts in support thereof.


Dated:  August 24, 2011                          Respectfully submitted
                                                 Patricia Weatherly,


                                                 By: **/s/ Richard F. Landrigan**
                                                 Richard F. Landrigan (BBO# 284960)
                                                 COSTELLO & LANDRIGAN
                                                 421 Highland Avenue
                                                 Somerville, MA  02144
                                                 Telephone: 617-625-4322
                                                 Facsimile:  617-625-5911
                                                 rlandrigan@costellolandrigan.com


---

[22] See, Green v. Transitron Electronic Corporation, 326 F. 2d 492 (1st Cir. 1964).

## CERTIFICATE OF SERVICE

Docket No. MDL 1456

I, Richard F. Landrigan, herby certify that on August 24, 2011, I caused a true copy of Class Member Patricia Weatherly's Response to Plaintiffs' Second Supplemental Submission in Support of a Rebalanced Track Two Settlement to be served on all counsel of record by causing same to be posted electronically through the Court's electronic filing service.

**/s/ Richard F. Landrigan**
Richard F. Landrigan