UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
IN RE PHARMACEUTICAL INDUSTRY       )
AVERAGE WHOLESALE PRICE             )
LITIGATION                          )  MDL NO. 1456
_____ )
                                    )
THIS DOCUMENT RELATES TO:           )  MASTER CASE NO. 01-cv-12257-PBS
                                    )
TRACK TWO SETTLEMENT                )
                                    )
_____ )
```

**MEMORANDUM AND ORDER**

August 30, 2011

Saris, U.S.D.J.

This massive, decade-long, nationwide, multi-district class action against thirteen pharmaceutical companies (and related entities) involves the pricing of pharmaceutical drugs reimbursed by Medicare, private insurers, and patients making coinsurance payments based on average wholesale price ("AWP") between 1991 and 2005. For the most part, the drugs at issue are administered by doctors for the treatment of cancer and other serious ailments. Some are branded single source drugs; others are multi-source drugs which are branded and generic. This is an old, sick, and dying class.

Class Counsel now seek final approval from the Court of the modified Track Two Settlement (Docket No. 5133) with the Track

Two defendants.[1]  As part of that process, Class Counsel has
moved to add several new consumer class representatives.  (Docket
No. 7572.)

After a review of the record, the Court **ALLOWS** the Motion to
Add Individual Plaintiffs as Class Representatives for Subclass 1
of the Track Two Settlement.

## DISCUSSION

The "Medicare Part B Co-Payment Class" (Subclass 1) proposed
here is defined as:

> All natural persons in the United States who, from
> January 1, 1991 through January 1, 2005, made, or
> incurred an obligation to make, any portion of a
> Medicare Part B co-payment for a Class Drug
> manufactured, marketed, sold or distributed by a
> Released Company.

(Proposed Settlement Agreement at 5.)  The current class
representatives for Class 1 are four nonprofit organizations:
Vermont Public Interest Research Group, Wisconsin Citizen Action,
New York Statewide Senior Action Council, and Citizen Action of
New York.[2]  In addition, Muriel Tonacchio, as executor of her

---

[1] The Track Two defendants are Abbott Laboratories, Amgen
Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel,
Baxter Healthcare Corp., Baxter International Inc., Bayer
Corporation, Dey, Inc., Fujisawa Healthcare, Inc., Fujisawa USA,
Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia &
Upjohn LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc., Gensia,
Inc., Gensia Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals,
Inc., and ZLB Behring, L.L.C.  (Proposed Settlement Agreement,
Docket No. 5133.)

[2] Health Care for All was also a class representative, but
has moved to withdraw.  (Docket No. 7503.)  Magistrate Judge

mother's estate, was added as a Class 1 representative on July 21, 2008.[3]  (See also Docket No. 5409.)

Class counsel now seek to add three additional individual class representatives for Class 1: Agnes Swayze, Thomas Trusky and Mariella Laday.  Class representatives must have Article III standing and they must satisfy the adequacy and typicality requirements of Rule 23.

## A.  Standing

Article III standing requirements "are expressed in a familiar three-part algorithm: a would-be plaintiff must demonstrate a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury."  Me. People's Alliance & Natural Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  In order to show that they have standing in this case, subclass 1 consumers must show that they paid for a Track Two drug based on AWP.  See In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 81

---

Bowler issued a Report and Recommendation on the motion (Docket No. 7591) recommending that the motion be allowed.  No objections have been filed.

   [3] Ms. Tonacchio's mother, Wilma Mort, took the following drugs: Epogen (Amgen), Anzemet (Aventis), Accuneb (Dey), and Ipratropium Bromide (Dey).

(D. Mass. 2005).

In addition, this Court has previously held, in the context of certification of a class for purposes of litigation, that there must be at least one "individual class representative with standing to sue each defendant" - or as class counsel have said, a one plaintiff-one defendant rule.  In re Average Wholesale Price Litig., 230 F.R.D. 61, 80 (D. Mass. 2005).

The Court addresses the Article III standing of each newly proposed class representative individually.  Among the claims pursued by Ms. Swayze, Ms. Laday, Mr. Trusky and Ms. Tonacchio, the one plaintiff-one defendant requirement is satisfied.

1.  Agnes Swayze

The Court finds that Agnes Swayze received injections of the drugs Anzemet Dextrose, Dexamethasone Sodium Phosphate, Heparin sodium, and Neupogen as part of chemotherapy treatments in 2002 and 2003, and that she made out-of-pocket copayments for administrations of those drugs.  See Swayze Aff. ¶ 5, May 30, 2011.  Ms. Swayze has provided billing records from the Valley Tumor Medical Group and the Lancaster Community Hospital as evidence that she received injections of these medications in 2002 and 2003.  Swayze Aff., Ex. 1.  In addition, Ms. Swayze's claim form for this Track Two settlement shows that she received injections of the drugs listed above, and lists her Medicare copay obligation for each administration.  Id., Ex. 2.  Finally, Ms. Swayze has provided a check register that shows payments made

-4-

to Lancaster Community Hospital for a visit on April 28, 2000. Ms. Swayze's Track Two claim form, populated by information received by the Centers for Medicaid and Medicare Services, indicates that she received an injection of sodium chloride on April 28, 2000.  See Swayze Supp. Aff., Exs. 1-2, June 23, 2011.

Ms. Swayze's billing records from the Valley Tumor Group and Lancaster Community Hospital list a patient amount as zero, which might suggest that she did not make co-payments for Track Two drugs.  Ms. Swayze said under oath that she made out-of-pocket payments.  Because Ms. Swayze was a Medicare beneficiary during the relevant time period, we know that she was responsible for 20% of all drug costs, with Medicare covering 80%.  Ms. Swayze has stated under oath that at no time did she carry supplemental insurance.  See Swayze Aff. ¶ 8.  The billing records support this statement: In the column for charges to a secondary insurance, there is no amount listed.  Id., Ex. 1.  Moreover, in a report from Ms. Swayze's physician, Dr. Shamasunder, he notes that the "patient does have only Medicare and one of our nurses talked to her about the cost of medication."  Hr'g Ex. 3, June 13, 2011.  As such, Ms. Swayze's statement that she made payments is likely true.

Class counsel originally stated that Ms. Swayze had been administered Epogen, an Amgen drug.  However, records appear to show that she was in fact administered Procrit, which is the medical-equivalent of Epogen manufactured by Johnson and Johnson,

which is not a Track Two defendant.  Class counsel have
acknowledged this error.  Nonetheless, Ms. Swayze is still an
appropriate Amgen class representative because there is evidence
that she received injections of Neupogen, another Amgen drug.

Accordingly, the Court finds that Agnes Swayze has standing
to be a Track Two consumer class 1 representative for the
following defendants: Abbott Laboratories, Amgen, Aventis,
Baxter, and Watson.

2. Mariella Laday

The Court finds that Mariella Laday received injections of
the drugs Ketorolac, Methotrexate Sodium, Sodium Chloride,
Gammagard, Gamimune, Accuneb, Adenoisine, Aristospan, and
Lyphocin from 2000 to 2004, and that she made out-of-pocket
copayments for administrations of those drugs.  See Laday Aff. ¶¶
2, 4, May 24, 2011.  Ms. Laday's claim form for this Track Two
settlement shows that she received injections of the drugs listed
above, and lists her Medicare copay obligation for each
administration.  Id., Ex. 1.  In addition, Ms. Laday provided
more than 200 canceled checks that show payments made to various
doctors, pharmacies, hospitals, and recovery centers during the
relevant time period.  See Berman Decl., Ex. 5, June 24, 2011.
While it is not possible to match the canceled checks exactly to
corresponding administrations of Track Two drugs, Ms. Laday's
payment records make it clear that she was paying a substantial
amount of money out-of-pocket for medical care during the

-6-

relevant time period.  This supports Ms. Laday's statement that she did make percentage co-payments for Track Two drug administrations that were not reimbursed by any insurer.  Laday Aff. ¶ 4.

Ms. Laday was administered Track Two drugs at Piedmont Hospital in Atlanta, Georgia, but does not have standing under the Georgia Consumer Protection Statute because it does not permit class actions.  See In re Pharm. Indus. Average Wholesale Price Litig., 233 F.R.D. 229, 230 (D. Mass. 2006).  Ms. Laday does, however, have statutory standing under the RICO statute. The Track Two settlement also resolves plaintiffs' RICO claims, and so there are no standing impediments to Ms. Laday's participation as a class representative.

Accordingly, Ms. Laday has standing to be a Track Two consumer class 1 representative for the following defendants: Abbott Laboratories, Baxter, Bayer, Dey, and Fujisawa.

3.   Thomas Trusky

Thomas Trusky has been proposed as a new class representative as the executor of Theresa Trusky's estate. Trusky Aff. ¶ 1, June 1, 2011.  The Court finds that Theresa Trusky received injections of the drugs Adenoisine, Alcohol injection, Mannitol, Sodium chloride, Epogen, Neulasta, Cisplatin, Doxorubicin, Dexamethosone sodium phosphate, and Etoposide in 2003 and 2004, and that she made out-of-pocket copayments for administrations of those drugs.  See Id. ¶¶ 3-4;

-7-

id., Ex. 1.  Mr. Trusky's claim form (issued for his wife) for this Track Two settlement shows that Theresa Trusky received injections of the drugs listed above, and lists her Medicare copay obligation for each administration.  Id., Ex. 1.  Mr. Trusky also provided several Medicare records for "Outpatient facility claims," which shows that Theresa Trusky made out-of-pocket credit card payments in 2004 for Neulasta and Doxorubicin. Id., Ex. 2.  There are also credit card receipts showing payments made to Marian Community Hospital in Carbondale, PA that correspond with the out-of-pocket payments shown on the Medicare record.  Id.   Finally, Mr. Trusky provided a credit card bill from 2003 showing payments made to Marian Community Hospital. One of these payments corresponds to a co-payment for an Epogen administration listed on the Track Two settlement claim form. See Trusky Supp. Aff., Ex. 1, June 23, 2011.

During the relevant time period, Theresa Trusky did carry supplemental insurance.  However, each year she had to reach a $4,000 out-of-pocket deductible before the supplemental insurance provided coverage.  Trusky Aff. ¶ 3.  Mr. Trusky states that due to the high $4,000 deductible, he is certain that he and his wife paid for Track Two drugs out of pocket during 2003.  Trusky Supp. Aff. ¶ 9.  This statement is supported by the credit card statement from 2003.

Accordingly, Mr. Trusky has standing to be a Track Two consumer class 1 representative for the following defendants:

Abbott Laboratories, Amgen, Baxter, Fujisawa, Gensia Sicor, Pharmacia, and Watson.

    4.   <u>Muriel Tonacchio</u>

The Court already added Ms. Tonacchio as a class representative for this settlement in 2008.  However, for purposes of Rule 23(e) the Court must nonetheless examine whether she is a typical and adequate class representative.  Such an analysis also requires an examination of Article III standing.

Muriel Tonacchio is the executor of her mother, Wilma Mort's, estate.  The Court finds that Wilma Mort received injections of the drugs Epogen, Anzemet, Accuneb, and Iprotropium bromide in 2003 and 2004, and that she made out-of-pocket copayments for administrations of those drugs in 2003.  <u>See</u> Tonacchio Aff. ¶¶ 2-3.  Ms. Mort did carry supplemental insurance during the relevant time period, provided by National Steel Workers insurance.  <u>Id.</u>  However, the supplemental insurance did not cover all charges for drugs administered in Ms. Mort's chemotherapy treatment.  <u>Id.</u>

Ms. Tonacchio has provided medical records showing charges for an administration of Anzemet in 2003.  <u>Id.</u>, Ex. A.  Ms. Tonacchio stated under oath that she spoke to a representative of the Weirton Medical Center, where her mother received treatments, who informed her that Ms. Mort was required to pay for Anzemet in 2003 because her supplemental insurance declined coverage for Ms. Mort's 20% copay obligation.  <u>Id.</u> ¶ 4.

Accordingly, Ms. Tonacchio has standing to be a Track Two consumer class 1 representative for the following defendants: Amgen, Aventis, and Dey.

**B.    <u>Typicality</u>**

Pursuant to Federal Rule of Civil Procedure 23(a), the Court must also determine whether the proposed individual class representatives meet the Rule 23(a) requirements of typicality and adequacy.  Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

<u>In re Am. Medical Sys., Inc.</u>, 75 F.3d 1069, 1082 (6th Cir. 1996) (internal citations omitted); <u>see also</u> 1 Albert Conte & Herbert B. Newberg, <u>Newberg on Class Actions</u> § 3.13 (4th ed. 2002) (the typicality requirement is usually met "when it is alleged that the same unlawful conduct was directed at or affected both the named Plaintiffs and the class sought to be represented").

Based on the findings regarding standing, the Court is able to conclude that the proposed class representatives' claims are

typical of the class.  Agnes Swayze, Mariella Laday, Thomas Trusky, and Muriel Tonacchio (or their decedents) paid out-of-pocket to cover a Medicare 20% co-payment for multiple Class Drugs that were reimbursed based on AWP.  There is no potential conflict between the proposed representatives' claims and those of the class.

The Court also finds that the proposed class representatives are typical of the class to the extent that they paid for multi-source Track Two drugs. Each of the proposed class representatives, with the exception of Thomas Trusky, paid for at least one single source, Group A drug included in the Track Two settlement.  It is exceedingly difficult for class members who paid for multi-source drugs to identify the manufacturer of the specific drug they took, because multi-source, or generic, drugs manufactured by multiple companies share the same "J-code" used for reimbursement purposes.  Instead, potential class members are identified and contacted about the settlement using Medicare records from the Centers for Medicare and Medicaid Services that indicate those Medicare beneficiaries who were prescribed drugs with J-Codes matching those of the Class Drugs during the class period.  The proposed class representatives are unable to offer evidence that the multi-source drugs they paid for were manufactured by a Track Two defendant, as opposed to a manufacturer that is not a party to this action.  However, few if

any class members submitting claims as part of this settlement
will be able to identify the manufacturer of their multi-source
drugs.  Indeed, in structuring the settlement itself, the parties
decided to allow class members making claims for multi-source
drugs to submit claim forms based on the J-code evidence alone,
as opposed to any further documentation that they took a drug
manufactured by a defendant.  Accordingly, the proposed class
representatives who are unable to identify a multi-source
manufacturer are in the same shoes as the typical class member.

## C.   Adequacy

Rule 23(a)(4) requires that the representatives "fairly and
adequately assert and protect the interests of the class."  "The
adequacy inquiry . . . serves to uncover conflicts of interest
between named parties and the class they seek to represent."
Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 (1997) (citing
Gen. Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157-58
n.13 (1982)).  The adequacy requirement "has two parts.  The
moving party must show first that the interests of the
representative party will not conflict with the interests of any
of the class members, and second, that counsel chosen by the
representative party is qualified, experienced and able to
vigorously conduct the proposed litigation."  Andrews v. Bechtel
Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

The Court must determine whether the proposed class

representative can be deemed adequate given that they were proposed after the initial settlement was reached.  The late timing of plaintiffs' motion to add is troubling.  In general, the Court has wide discretion in allowing a motion to add new class representatives, so long as the proposed representatives have no conflict with the class and are represented by capable counsel.  Where replacement of a class representative is necessary, "courts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative." See Manual for Complex Litigation 4th, § 21.26.  Such discretion protects the interests of the class as a whole, and this Court, in considering settlement of a class action, has an obligation to protect the absent members of the class.  See Grant v. Bethlehem Steel Corp., 823 F.2d 20, 23 (2d Cir. 1987).

When a class representative is added on the eve of a settlement fairness hearing, courts are concerned that the settlement is lawyer-driven, and not based on the class representatives' personal experience and knowledge.  The Court has only found one unpublished case involving the addition and/or substitution of class representatives on the eve of a settlement fairness hearing.  See, e.g., Curtis-Bauer v. Morgan Stanley & Co., Inc., No. 06-cv-3903-TEH, 2008 WL 7748874 (N.D. Cal. July 7, 2008) (ordering an evidentiary hearing in a case where a new representative was proposed after the settlement was reached and

where no class representative participated in settlement
negotiations, because the participation of a class representative
during settlement negotiations was important to ensure adequate
representation and due process for the class).[4]

However, there is no bright line bar to a late addition of a
class representative.  In a related context, where a class
representative objects to a proposed settlement, district courts
have permitted class counsel to withdraw from representing the
objector and simultaneously propose a new class representative in
order to preserve a settlement the court found to be fair.  Heit
v. Van Ochten, 126  F. Supp. 2d 487, 494-95 (W.D. Mich. 2001)
(citing Laskey v. Int'l Union, United Auto., Aerospace & Agr.
Implement Workers of America (UAW), 638 F.2d 954, 957 (6th Cir.
1981); Parker v. Anderson, 667 F.2d 1204, 1211 (5th Cir. 1982)).
In addition, some courts have approved class settlements
notwithstanding objections from the class representatives.  See,
e.g., Lazy Oil, Co. v. Witco Corp., 95 F. Supp. 2d 290, 333 (W.D.
Pa. 1997), aff'd, 166 F.3d 581 (3d Cir. 1999); In re Airline
Ticket Comm'n Antitrust Litig., 953 F. Supp. 280, 282 n.3 (D.

---

[4] The Curtis-Bauer court subsequently allowed a motion to
reconsider its opinion requiring an evidentiary hearing after the
court reviewed documents in camera that revealed a class
representative had, in fact, participated in settlement
negotiations.  The court ultimately allowed the addition of a new
class representative and granted final approval of the
settlement.  Curtis-Bauer v. Morgan Stanley & Co., Inc., No. 06-
cv-3903-TEH, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008).

Minn. 1997).  "Agreement of the named plaintiffs is not essential
to approval of a settlement which the trial court finds to be
fair and reasonable."  <u>Parker</u>, 667 F.2d at 1211 (affirming
approval of a class settlement opposed by all but one of the
eleven named plaintiffs).

The late timing here does not defeat adequacy because of the
unique history of this litigation.  Despite the settlement, this
Court has held three fairness hearings in which the settlement
was substantially re-balanced.  Agnes Swayze and Thomas Trusky
have each submitted three affidavits over the past several months
detailing the understanding of and support for the settlement.
Mariella Laday and Muriel Tonacchio have each submitted two
affidavits.  Each of the proposed representatives has spent
significant time with class counsel attempting to find decades-
old medical and payment records to prove that they have standing
as class representatives.  Perhaps most significantly, the Court
has recently worked diligently with class counsel, along with
counsel for objectors and Track Two defendants, in "rebalancing"
the Track Two settlement.  There have been three fairness
hearings to date.  Each of the proposed class representatives has
been active in voicing his or her understanding and agreement in
each iteration of the process.  Their affidavits show that they
have spent time and effort in understanding a very complex
settlement that required the evaluation and valuation of very
complex litigation strategies and claims.  Moreover, the consumer

class was represented during settlement negotiations by several
organizational representatives whose stated purpose is to protect
consumers from drug pricing abuses in the pharmaceutical
industry.

Moreover, in a complex case such as this, "a plaintiff need
not have expert knowledge of all aspects of the case to qualify
as a class representative, and a great deal of reliance upon the
expertise of counsel is to be expected." Denney v. Jenkens &
Gilchrist, 230 F.R.D. 317, 327 (S.D.N.Y. 2005), aff'd in part and
vacated in part on other grounds, 443 F.3d 253 (2d Cir. 2006);
see also In re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D.
Mass. 2005) (same).  The Third Circuit has described why it is
appropriate for class representatives to rely on knowledgeable
counsel:

> We begin by acknowledging the realities of class suits,
> a sometimes neglected approach in this field. In a
> massive class action such as the one at hand, it is
> counsel for the class who has the laboring oar. The
> class representatives furnish the factual basis to
> invoke the jurisdiction of the court and provide the
> outline of the controversy, but the lawyers shape the
> claims for adjudication by the compilation of factual
> and expert testimony and the presentation of
> statistical and documentary evidence.

Goodman v. Lukens Steel Co., 777 F.2d 113, 124 (3d Cir. 1985),
aff'd, 482 U.S. 656 (1987); see also Surowitz v. Hilton Hotels
Corp., 383 U.S. 363, 370-74 (1966) (indicating that, in the
context of a complex securities litigation, attacks on the
adequacy of the class representative based on the

representative's ignorance or credibility are rarely
appropriate).  In <u>Goodman</u>, the court noted that, where class
counsel is "thoroughly competent," there is a "distinct
possibility that the evidence presented would not have varied one
iota had a qualified representative for each claim been present
from the inception of the suit."  777 F.2d at 124.

The Court finds that Agnes Swayze, Mariella Laday, Thomas
Trusky, and Muriel Tonacchio have been and will be adequate
representatives for the consumer Track Two class.

**D.    <u>Associational Standing</u>**

While the Court will allow the addition of the four
individual consumer plaintiffs, class counsel has expressed the
desire to add the organizational representatives as well.  The
question currently before the Court is whether the associations
may still serve as class representatives for the purpose of
settlement.

In the order granting preliminary approval of the Track Two
settlement, the Court found that an agent or member of each of
the associations listed above made a purchase or was reimbursed
for one or more of the Class Drugs.  (Docket No. 5426 at 5.)  In
a previous opinion on plaintiffs' initial motion to certify a
class, the Court found that an association could not serve as a
class representative <u>for litigation purposes</u> where the class
seeks damages under Rule 23(b)(3).  <u>In re Pharm. Indus. Average</u>

-17-

Wholesale Price Litig., 230 F.R.D. 61, 80 (D. Mass. 2005).  In

reaching that conclusion, the Court relied on the Second

Circuit's opinion in Bano v. Union Carbine Corp., 361 F.3d 696

(2d Cir. 2004), in which the court declined to certify as a class

representative in a damages action a grass-roots organization

formed to help the victims of an explosion at a chemical

manufacturing facility in India.  Id. at 715.  In Bano, the

Second Circuit wrote:

> If the involvement of individual members of an
> association is necessary, either because the
> substantive nature of the claim or the form of the
> relief sought requires their participation, we see no
> sound reason to allow the organization standing to
> press their claims, even where it seeks to do so as a
> putative class representative.

Id. at 715.  Class counsel now argues that, for settlement

purposes, the reasoning relied upon in Bano does not bar an

association from serving as a class representative.

As a preliminary matter, to establish standing on behalf of

its members, an association must show:

> (a) its members would otherwise have standing to sue in
> their own right; (b) the interests it seeks to protect
> are germane to the organization's purpose; and (c)
> neither the claim asserted nor the relief requested
> requires the participation of individual members in the
> lawsuit.

United Food & Commercial Workers Union Local 751 v. Brown Group,

Inc., 517 U.S. 544, 553 (1996) (quoting Hunt v. Washinton State

Apple Advertising Comm'n, 432 U.S. 333, 343 (1977)).  While the

associations in this case easily meet the first two requirements,

the third poses a much more difficult question.

As the court in Bano recognized, the third requirement is a prudential consideration rather than a constitutional requirement for standing.  361 F.3d at 715 (citing Brown Group, 517 U.S. at 557 ("[T]he third prong of the associational standing test is best seen as focusing on . . . matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution.")).  Federal courts have adopted prudential limits on standing in order "to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim."  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985).  Accordingly, once an association has satisfied the first two prongs of the associational standing test, a court can be assured of "adversarial vigor in pursuing a claim for which member Article III standing exists," and the third question focuses on the "administrative convenience" of pursuing a case prosecuted by an associational representative.  Brown Group, 517 U.S. at 556-57.  The question for this Court, then, is whether the "individual participation" prong, which pertains to the administrative convenience of the Court, is applicable in a settlement context.  The Court could find no case law on this particular point, and the parties have cited none.

In Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997),

the Supreme Court explained:

> Confronted with a request for settlement-only class
> certification, a district court need not inquire
> whether the case, if tried, would present intractable
> management problems, see Fed. R. Civ. P. 23(b)(3)(D),
> for the proposal is that there be no trial.  But other
> specifications of the Rule - those designed to protect
> absentees by blocking unwarranted or overbroad class
> definitions - demand undiluted, even heightened,
> attention in the settlement context.   Such attention is
> of vital importance, for a court asked to certify a
> settlement class will lack the opportunity, present
> when a case is litigated, to adjust the class, informed
> by the proceedings as they unfold.

Id. at 620; see also In re Prudential Ins. Co. America Sales

Practice Litigation Agent Actions, 148 F.3d 283, 308 (3d Cir.

1998) (recognizing that district courts need not address

manageability concerns in certifying a class for settlement

purposes).  This Court's previous holding that organizations

could not serve as class representatives in a 23(b)(3) action

seeking damages was based on the fact that such a proceeding

would require individualized proof of damages.  Under Brown

Group, this prohibition was required for prudential reasons of

administrative convenience and efficiency, which are

manageability concerns.  However, as Amchem holds, "management

problems" are less paramount in some classes certified for

settlement purposes.

Here, because there is a formulaic basis for calculating

individual class claims, proving individualized damages in a

settlement context does not raise prudential management concerns.

Therefore, the settlement status of this case satisfies the third

prong of the associational standing test.

The Court finds that the organizational class representatives in the Track Two case (Vermont Public Interest Research Group, Wisconsin Citizen Action, New York Statewide Senior Action Council, and Citizen Action of New York) have met the requirements for associational standing for the purposes of negotiating a settlement.

The proposed organizational representatives are typical and adequate representatives of the class. Indeed, organizational representatives with experience will provide more vigilant and consistent representation than individual representatives in a class action of old, sick, and dying class members. See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. Brock, 477 U.S. 274, 289-90 (1986) ("[A]n organization suing to vindicate its members' interests can draw upon a pre-existing reservoir of expertise and capital. . . . The very forces that cause individuals to band together in an association will . . . provide some guarantee that the association will work to promote their interests."); 1 Albert Conte & Herbert B. Newberg, Newberg on Class Actions § 3:34 (4th ed. 2002) (noting that organizations may provide "enhanced psychological and bargaining power advantages" in negotiating settlements).

### ORDER

For the foregoing reasons, the Court **ALLOWS** the Motion to

Add Individual and Associational Plaintiffs as Class

Representatives for the Track Two Settlement (Docket No. 7572).


                                          /s/ PATTI B. SARIS

                                          PATTI B. SARIS
                                          United States District Judge