

T 206.623.7292   F 206.623.0594

Sean R. Matt
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA  98101
www.hbsslaw.com
**sean@hbsslaw.com**

October 20, 2011

William S. Fairey, Jr.
5629 Boulder Boulevard
Sarasota, FL 34233

    Re:    <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>

Dear Mr. Fairey:

We write in response to your letters of October 12 and 17, 2011, that you submitted to the Court with regard to the Notice of Revision that you recently received describing changes to the proposed Track Two Class Action Settlement.  I am one of the attorneys representing the Class in this case.

You have expressed frustration with the changes to the settlement and with the challenges that you have encountered in obtaining supporting documentation, in particular with respect to the drug Epogen, which was moved to the Class B drug group.  We will respond by each topic number identified in your letter.

    1.  *Settlement does not reimburse your out-of-pocket expenditures*

You express displeasure that the proposed settlement does not reimburse you for the substantial out-of-pocket expenditures for the covered drugs.  But that is not the goal of the settlement; nor is it the goal of the lawsuit.  It is important to distinguish *damages* from your out-of-pocket payments.  Expert calculations of the alleged overcharges reveal that damages are lower than your payments.  In other words, the alleged damages are but a percentage of the amount of the payment.  If the lawsuit were to proceed to trial, and if a jury were to find defendants liable for the payment of damages, the damages recovered would not equal out-of-pocket payments but some percentage of those payments.

Thus, the settlement is not intended to compensate you for all of your out-of-pocket payments.  Instead, it is intended to compensate Class members a substantial portion of the alleged damages.  In the case of Class A Drugs, the settlement will provide two times the actual damages incurred.  In the case of Class B Drugs, the settlement will provide a

SEATTLE   BOSTON   CHICAGO   COLORADO SPRINGS   LOS ANGELES   MINNEAPOLIS   NEW YORK   PHOENIX   SAN FRANCISCO   WASHINGTON, D.C.

001534-16  481198 V1

William S. Fairey, Jr.
October 20, 2011
Page 2

substantial portion of the actual damages incurred.

### 2. Record profits

You state that the pharmaceutical industry and insurers enjoyed record profits during the time encompassed by the litigation. While that may be true with respect to the pharmaceutical industry, it is unclear what relevance you believe this has to the settlement. But we infer that you believe that the settlement amount is insufficient in comparison to defendants' profits and that, consequently, defendants should pay more.

Defendants have agreed to pay $120 million to settle the Track Two claims. Plaintiffs' expert has demonstrated that this is a substantial portion of the damages likely to be obtained at trial, *if* a liability verdict is entered against defendants. This is a substantial recovery for the Classes and one that we believe is fair and reasonable given the very real risk that Plaintiffs could lose some or all of their claims at trial. For example, although the trial against Track One defendants AstraZeneca and BMS was largely successful, rulings in largely in favor of the Johnson & Johnson and Schering-Plough defendants resulted, and no damages were recovered against these defendants.

We should also be mindful that the proposed settlement is providing double damages to eligible Class A Drug claimants. And the recovery for the Class B Drugs, although proportionately lower, is nonetheless quite substantial and could exceed a likely trial recovery given the special challenges of proving damages associated with the Class B Drugs. We believe that the Class B drugs are eligible for a lower level of compensation because (i) most of the drugs, as multi-source or generic drugs, are subject to J-Code identification problems which make it difficult to identify them and assign a specific amount of damage to them; (ii) many of the drugs are primarily administered in the inpatient hospital setting, making the level of Medicare Part B reimbursement low; (iii) many of the Class B drugs are inexpensive, resulting in a low level of alleged Class damage; and (iv) there was a dearth of improper marketing evidence for these drugs and defendants.

In sum, the settlement should be evaluated in light of the risks of trial and the damages that are likely to be recovered. Under the law, the profits of the defendants are not particularly relevant to whether they have caused the Class damage and how those damages

William S. Fairey, Jr.
October 20, 2011
Page 3

are quantified.[1]

    3. *Class A recovery formula and Epogen*

You write that the Class A drugs have been relegated to Class B status. That is not the case, with the exception of Epogen, which we discuss further below.

The recovery formula for the Class A drugs has changed. The initial Notice of Settlement explained that, at the time, recovery would be based on adding three amounts:

- Co-payment obligations for Class A Drugs from December 1, 1997, through December 31, 2003, multiplied by three (3x);

- Co-payment obligations for Class A Drugs during the Class Period but outside of December 31, 2003 (no multiplication factor); and

- Co-payment obligations for the other covered drugs called Class B Drugs during the entire Class Period (no multiplication factor).

The notice also explained that if there was not enough money to pay the sum of these three figures based on the number of claims received, the payment would be reduced proportionately.

The Court subsequently indicated its desire to tie the recovery formula for Class A drugs to *alleged damages* instead of on co-payment obligations. As we discussed above, expert calculations demonstrate that the alleged damages are but a percentage of the amount of the co-payment. Thus, the Notice of Revision advises:

> Your Total Recognized Claim will now be calculated differently. Payment for Class A drugs (with one exception described below) will be based on Plaintiffs' expert's calculation of estimated overcharges or damages associated with the alleged price inflation for these drugs, rather than on

---

[1] With respect to your belief that insurers simply passed the increased AWP along to their insureds in the form of increased premiums, the evidence presented a trial in this matter involving certain drugs distributed by defendants AstraZeneca and BMS demonstrated that the increased costs were not simply passed through to premium payors and that, in fact, the insurers were damaged by inflated AWPs. As a result, both consumers and insurers were able to garner partial verdicts in their favor in that trial.

William S. Fairey, Jr.
October 20, 2011
Page 4

>the amount of cash payment or co-payment made.  This change was made in order to base the distribution on damages actually incurred.  Calculation of payments for Class B drugs will continue to be based on the amount of cash payment or co-payment made.

The Notice of Revision then explains that the Total Recognized Claim for the Class A Drugs will now be based on *double damages*:

> 1. For members of Classes 1 and 3 and for drugs identified as Class A Drugs, the Claims Administrator will apply the expert's estimated overcharge percentage for all administrations from January 1, 1997 through December 31, 2003 to determine your out of pocket damages and multiply those out of pocket damages from December 1, 1997 through December 31, 2003 by a factor of two (2x).  Members of Class 3 will also receive out of pocket damages without a multiplier for eligible administrations during the Class Period but outside of the time period January 1, 1997 through December 31, 2003.

Thus, while the recovery base for Class A drugs is changed from triple co-payments to double damages, eligible Class A claimants are still recovering more than their actual damages.

With respect to Epogen, it has been moved to Class B.  The reason is that Epogen was rarely reimbursed by Medicare based on its AWP.  Epogen, known chemically as "epotein alfa," is identical to Johnson & Johnson's Procrit.  A license agreement entered into in 1985 between Amgen and Johnson & Johnson, licensed to Johnson & Johnson the exclusive right to promote and sell Procrit for non-dialysis use in the United States.  As a result of this agreement, Epogen is promoted and marketed for dialysis use only in the United States, and Medicare did not reimburse on the basis of AWP for that use (meaning that no Medicare beneficiary administered Epogen for dialysis could have suffered any legal damage).

William S. Fairey, Jr.
October 20, 2011
Page 5

It is possible that, notwithstanding the license agreement, some physicians administered Epogen instead of Procrit for non-dialysis use, even though both drugs are chemically equivalent. However, this was not likely a frequent occurrence.

This is why Epogen was moved into Class B. This was succinctly explained in the Notice of Revision that you received as follows:

> Epogen is now a Class B Drug and cash payments or co-payment obligations for Epogen will be treated as described above. The Court has found that payment for most administrations of Epogen under Medicare Part B were not based on AWP or these payments may relate to the drug Procrit, which is identical to Epogen but sold by a non-Defendant and not subject to this settlement. And for administrations of Epogen to cash payors or payors with private insurance, there are minimal damages associated with the drug.

For these reasons, the Court has required any class member claiming to have been administered Epogen to provide at least one piece of documentary evidence showing at least one administration of Epogen for non-dialysis treatment. That proof can be in the form of the prescribing physician's notes in the medical file, a letter from a prescribing physician, or some other documentary evidence from the prescribing physician, hospital or medical provider.

Thus, the Court has tried to ease the burden of proving eligible Epogen administrations, and the Court is not trying to make it difficult for eligible Class members to recover. However, if this additional information was not required, thousands of Medicare beneficiaries who did not take Epogen for non-dialysis use – and not many did – would receive payments from the settlement at the expense of the Class members who have valid claims.

We hope that, in light of this additional explanation, you will conclude that it is only fair and equitable that Class members provide the additional information requested.

### 4. *Obtaining the required documentation*

With respect to the challenges you have encountered in obtaining the documentation,

William S. Fairey, Jr.
October 20, 2011
Page 6

we are happy to try and help (and have been successful in helping other Class members who have faced similar challenges).  At your convenience, please call Carrie Flexer in my office.  She can be reached at 206-623-7292.  And let us know if you any more questions.

                Sincerely,

                Sean R. Matt

cc:  Honorable Patti B. Saris
     Counsel for Track Two Defendants

001534-16 481198 V1