

Sean R. Matt
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA  98101
www.hbsslaw.com
**sean@hbsslaw.com**

T 206.623.7292   F 206.623.0594

October 20, 2011

Cynthia L. Schubert
P.O. Box 1602
Midland, MI  48641

     Re:    <u>In re Pharmaceutical Industry Average Wholesale Price Litigation</u>

Dear Mrs. Schubert:

     We write in response to your letter of October 10, 2011, that you submitted to the Court with regard to the Notice of Revision that you recently received describing changes to the proposed Track Two Class Action Settlement.  I am one of the attorneys representing the Class in this case.

     You have asked more information about certain topics that you do not believe were fully addressed in the Notice of Revision.  We will respond by each topic number identified in your letter.

     *1.   Classification of Class A and Class B Drugs and Epogen*

     You ask how drugs were classified into Class A and Class B and why Epogen was moved from Class A to Class B.

     The drugs that are part of this settlement were sorted into Class A and Class B based on a number of factors developed by the Court and assessed by Class Counsel to evaluate the likelihood of success at trial on each drug.  Those factors included whether the defendant allegedly reported inflated average wholesale prices ("AWP") and engaged in improper marketing practices with respect to the drug; whether the particular drug had a substantial volume of Medicare Part B reimbursements; and whether the drug was a single source, brand name drug or a multiple source or generic drug.

     Class A contains 6 brand-name drugs with unique drug identifier codes called "J-Codes."  Three of the drugs are manufactured by Amgen (Aranesp, Neulasta and Neupogen); one by Aventis (Anzemet, in both tablet and injectable form); and two by

SEATTLE   BOSTON   CHICAGO   COLORADO SPRINGS   LOS ANGELES   MINNEAPOLIS   NEW YORK   PHOENIX   SAN FRANCISCO   WASHINGTON, D.C.

001534-16  481161 V1

Cynthia L. Schubert
October 20, 2011
Page 2

Watson (Ferrlecit and Infed).

The remaining drugs were assigned to the Class B pool and are eligible for a lower level of compensation because (i) most of the drugs, as multi-source or generic drugs, are subject to J-Code identification problems which make it difficult to identify them and assign a specific amount of damage to them; (ii) many of the drugs are primarily administered in the inpatient hospital setting, making the level of Medicare Part B reimbursement low; (iii) many of the Class B drugs are inexpensive, resulting in a low level of alleged Class damage; and (iv) there was a dearth of improper marketing evidence for these drugs and defendants.

For these reasons, and more, the Class B drugs account for a relatively lesser share of damages than do the Class A drugs, supporting a higher allocation of settlement dollars on a per drug basis to Class A.  In addition, Class Counsel believe that the liability case involving drugs in Class A is much stronger than the case involving drugs in Class B.

Epogen was initially grouped in Class A.  However, the Court has moved it to Class B.  The reason is that Epogen was rarely reimbursed by Medicare based on its AWP.

Epogen, known chemically as "epotein alfa," is identical to Johnson & Johnson's Procrit.  A license agreement entered into in 1985 between Amgen and Johnson & Johnson, licensed to Johnson & Johnson the exclusive right to promote and sell Procrit for non-dialysis use in the United States.  As a result of this agreement, Epogen is promoted and marketed for dialysis use only in the United States, and Medicare did not reimburse on the basis of AWP for that use (meaning that no Medicare beneficiary administered Epogen for dialysis could have suffered any legal damage).

It is possible that, notwithstanding the license agreement, some physicians administered Epogen instead of Procrit for non-dialysis use, even though both drugs are chemically equivalent.  However, this was not likely a frequent occurrence.

This is why Epogen was moved into Class B.  This was succinctly explained in the Notice of Revision that you received as follows:

> Epogen is now a Class B Drug and cash payments or co-payment obligations for Epogen will be treated as described above.  The Court has found that payment for most administrations of Epogen under Medicare Part B were not

Cynthia L. Schubert
October 20, 2011
Page 3

> based on AWP or these payments may relate to the drug
> Procrit, which is identical to Epogen but sold by a non-
> Defendant and not subject to this settlement.  And for
> administrations of Epogen to cash payors or payors with private
> insurance, there are minimal damages associated with the drug.

### 2.  *Paragraph 2, Page 2's Reference to "Exception"*

The reference in paragraph 2 of page 2 of the Notice of Revision to "with one exception described below" is to Epogen, which, as explained in number 3 on that same page of the notice, has been moved from the Class A drug pool to the Class B drug pool for the reasons just discussed.

### 3.  *Track and Class Definitions*

You ask about how the Tracks and Classes are defined.  The Court divided the case into two "Tracks" for purposes of organizing the litigation.  The Notice of Revision that you received pertains to the so-called "Track Two" defendants.  Those defendants are identified in the initial Notice of Settlement as Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel, Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Dey, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia & Upjohn LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc., Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and ZLB Behring, L.L.C.  "Track One" involved a portion of the case against different defendants, and it is no longer pending.  There is no "Track Three."

As to the Classes, the initial Notice of Settlement advised that you are a member of Class 1 if you made, or are obligated to make, a percentage co-payment under Medicare Part B for any of the covered drugs listed in Attachment A to the notice from January 1, 1991 through January 1, 2005 (or were a spouse of a deceased Class Member who made such a co-payment or a legal representative of a deceased Class Member's estate).  If you received the Notice of Revision (as you did), you are a member of Class 1.

Class 2 is comprised of Medi-Gap insurers, and Class 3 is comprised of consumers and insurers who made, or are obligated to make, a cash payment for covered drugs from January 1, 1991 through March 1, 2008 outside of the Medicare context.

Cynthia L. Schubert
October 20, 2011
Page 4


*4.  Recovery Formula*

Your letter states that the initial Notice of Settlement referenced treble damages, but it did not.  You may be confusing the original settlement allocation formula with treble damages.  The initial Notice of Settlement explained that, at the time, recovery would be based on adding three amounts:

- Co-payment obligations for Class A Drugs from December 1, 1997, through December 31, 2003, multiplied by three (3x);

- Co-payment obligations for Class A Drugs during the Class Period but outside of December 31, 2003 (no multiplication factor); and

- Co-payment obligations for the other covered drugs called Class B Drugs during the entire Class Period (no multiplication factor).

The notice also explained that if there was not enough money to pay the sum of these three figures based on the number of claims received, the payment would be reduced proportionately.

The Court indicated its desire to tie the recovery formula for Class A drugs to *alleged damages* instead of on co-payment obligations.  Expert calculations reveal that damages are lower than the co-payments.  In other words, the alleged damages are but a percentage of the amount of the co-payment.  Thus, the Notice of Revision advises:

> Your Total Recognized Claim will now be calculated differently.  Payment for Class A drugs (with one exception described below) will be based on Plaintiffs' expert's calculation of estimated overcharges or damages associated with the alleged price inflation for these drugs, rather than on the amount of cash payment or co-payment made.  This change was made in order to base the distribution on damages actually incurred.  Calculation of payments for Class B drugs will continue to be based on the amount of cash payment or co-payment made.

> Your Total Recognized Claim will now be determined

Cynthia L. Schubert
October 20, 2011
Page 5

according to a different three step process:

1.  For members of Classes 1 and 3 and for drugs identified as Class A Drugs, the Claims Administrator will apply the expert's estimated overcharge percentage for all administrations from January 1, 1997 through December 31, 2003 to determine your out of pocket damages and multiply those out of pocket damages from December 1, 1997 through December 31, 2003 by a factor of two (2x). Members of Class 3 will also receive out of pocket damages without a multiplier for eligible administrations during the Class Period but outside of the time period January 1, 1997 through December 31, 2003.

2.  The Claims Administrator will determine the total cash payments or co-payment obligations for the other covered drugs called Class B Drugs during the entire Class Period (with no multiplication factor), reduced proportionately based on all Class B drug claims filed.  This calculation is the same as under the original method, but more money is now available to pay claims for Class B Drugs.

3.  Epogen is now a Class B Drug and cash payments or co-payment obligations for Epogen will be treated as described above.  The Court has found that payment for most administrations of Epogen under Medicare Part B were not based on AWP or these payments may relate to the drug Procrit, which is identical to Epogen but sold by a non-Defendant and not subject to this settlement.  And for administrations of Epogen to cash payors or payors with private insurance, there are minimal damages associated with the drug.

001534-16  481161 V1

Cynthia L. Schubert
October 20, 2011
Page 6

The sum of these figures will be your Total Recognized Claim.

If you are eligible to receive a payment, the net result of these changes to the Proposed Settlement is that your payment **may** be lower than under the initial distribution formula.

We hope that this expanded explanation clarifies the recovery formula issue for you.

_____

All of the information discussed above is contained in pleadings already on file with the Court.  Some of these details were not included in the notices because settlement notices must necessarily be in summary form.  Including too much information makes it unreadable and difficult to understand.  Communications experts with deep experience in crafting class notice assisted in the development of the notices that you received.  Both us and the Court believe that the notices meet all legal requirements, including describing the essential terms of the settlement.

We hope that we have answered your questions.  Please call or write if you have any further questions.

Sincerely,

Sean R. Matt

cc:  Honorable Patti B. Saris
     Counsel for Track Two Defendants