# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*United States ex rel. Linnette Sun and Greg Hamilton, Relators*<br> *v.*<br>*Baxter Healthcare Corporation* | MDL No. 1456<br><br>Master File No. 1:01-CV-12257-PBS<br><br>Sub-Category Case No. 1:08-CV-11200<br><br>Judge Patti B. Saris |

## MEMORANDUM IN SUPPORT OF BAXTER HEALTHCARE CORPORATION'S MOTION TO COMPEL RESPONSE TO INTERROGATORY AND THE PRODUCTION OF DOCUMENTS

For the reasons set forth below, and pursuant to Fed. R. Civ. P. 37(a)(3)(B), Baxter Healthcare Corporation ("Baxter") asks this Court to compel Relator Linnette Sun to (1) produce all attachments to the emails produced by Ms. Sun on October 13, 2011, and (2) respond to an interrogatory and produce documents, including pay stubs, tax documents, invoices, and other proof of payment, relating to all consulting and employment work for which Ms. Sun has been compensated since her termination from Baxter in July 2003[1]. Because Ms. Sun's deposition is currently slated for November 16, 2011, and because the current close of fact discovery is December 1, 2011, Baxter requests that Relator be ordered to produce the documents and respond to the interrogatory no later than November 11, 2011 so that they might be used in her

---

[1] Interrogatory No. 4 as well as Document Requests Nos. 20 and 22 relate to this disputed issue. As required by Local Rule 37.1 These are set forth in full *infra* at 6, 10.

deposition. In the alternative, or in the event this Motion is heard too late for this date to be feasible, Baxter requests that a date certain for production of the documents be set and that, if necessary, the December 1 discovery deadline be extended for the limited purpose of Ms. Sun's deposition, to take place within a reasonable time from the date of production of the documents.

Should Ms. Sun not timely produce the pay stubs, tax documents, invoices, and other information demonstrating the amount of compensation Ms. Sun has been paid during the time period for which she seeks lost wages pursuant to her retaliation claims, Baxter requests an order precluding Ms. Sun from seeking damages for lost wages in connection with summary judgment or at trial.

## I.  SUMMARY OF RELEVANT FACTS

### A.  Discovery and Attempts to Resolve the Dispute

On June 29, 2011, this Court issued a docket entry setting various deadlines in the case, including a December 1, 2011 fact discovery cutoff.

On August 9, 2011, Baxter served its First Set of Interrogatories (Ex. A)[2] and its First Set of Requests for Production of Documents (Ex. B) on Relator Sun.

On September 8, 2011, Ms. Sun provided her responses to Baxter's First Set of Interrogatories. Ex. C.

On October 13, 2011, Ms. Sun produced documents in response to Baxter's First Set of Requests for Production of Documents. Ex. D. This production was five days late as it was due October 8, 2011.

On October 20, 2011, counsel for Baxter notified counsel for Relator that it had found two overwhelming deficiencies in the Sun production and interrogatory responses: (1) the

---

[2] All Exhibits ("Ex.") referenced herein are exhibits to the October 26, 2011 Declaration of Tina D. Reynolds accompanying this Motion and Memorandum in Support.

absence of any email attachments, and (2) the absence of documents concerning Ms. Sun's consulting work and her income since termination from Baxter, and the corresponding incompleteness of Sun's response to Interrogatory No. 4. Ex. E. In its letter, Baxter stated that it intended to file a motion to compel should a response not be forthcoming by October 25, 2011. *Id*.

On October 25, 2011, counsel for Baxter contacted counsel for Relator by email, requesting a telephonic discussion to address the matters raised in the October 20 letter.

On October 31, 2011, one of the counsel for Relators, Mark Kleiman, responded to the October 25 email, apologized for his delay, and requested another copy of the October 20 letter.

On November 1, 2011, counsel for Baxter Merle DeLancey and Tina Reynolds held a telephonic Rule 37.1 conference with Mr. Kleiman. On the call, Mr. Kleiman indicated that he was unfamiliar with the documents produced by Ms. Sun and therefore could not address the two issues raised in the October 20 letter. This was the case notwithstanding that the cover document that transferred Ms. Sun's documents from Mr. Kleiman to Baxter's counsel was signed by Mr. Kleiman as "Counsel for Relators Linnette Sun and Greg Hamilton." Ex. D. Mr. Kleiman explained that the documents were sent from his office only because he had paralegal assistance and his co-counsel, Mr. Udden did not have such assistance. Mr. Kleiman indicated that Mr. Udden was out of town but would return later that day.

On the morning of November 2, 2011, counsel for Baxter Tina Reynolds sent an email to Relator's counsel, Lauren Udden, requesting a meet and confer. Ex. K. Shortly thereafter, Mr. Udden contacted Ms. Reynolds by telephone. He indicated that he had been

3

unable to discuss this matter with Mr. Kleiman, but that he understood what documents Baxter was requesting, and that he would contact Ms. Sun to ascertain if they existed.

Later that day, Mr. Udden again contacted Ms. Reynolds. He said that he had spoken with Ms. Sun and that she did have attachments to her emails. He could not explain why they were not produced in the first instance, but agreed that they should have been and promised that he would do so. He could not provide a date certain by which this production would take place.

With respect to the requested tax information, Mr. Udden represented that Ms. Sun had no W2s from the timeframe between her employment with Baxter in 2003 and with Shire in 2009. He said that Ms. Sun believes she may have some 1099s but that she is not sure to which consulting job they pertain. He said it is possible that some are in California with Ms. Sun's husband. (Ms. Sun lives in Pennsylvania). Ms. Reynolds explained that what Baxter is after is any information that might establish Ms. Sun's income from consulting during the timeframe for which she seeks lost wages damages. She offered that redacted 1040 or other tax forms might be produced in the event that the 1099s could not be located. Mr. Udden indicated that he understood what it was Baxter was looking for and why and that he would produce whatever responsive information he and Ms. Sun could find. Again, he could not provide a date by which this production would occur.

Finally, Mr. Udden indicated that he had misunderstood Interrogatory No. 4 to pertain only to situations in which Ms. Sun was an employee, but upon re-reading the definitions now understood that Baxter had also requested information concerning work Ms. Sun had engaged in as a consultant and/or independent contractor. He agreed this information was relevant and stated that he would provide a supplemental interrogatory response.

In these November 1 and November 2 conversations counsel for Baxter has emphasized the need for expediency given that Ms. Sun's deposition is scheduled for November 16, and discovery closes December 1.  *See, e.g.,* Ex. K.  Nonetheless, Relators' counsel have not been able to indicate when the revised response to Interrogatory No. 4 and the requested documents will be produced.

B.   **Email Attachments**

The majority of Ms. Sun's October 13, 2011 document production (604 of 695 pages) consists of hard copy printouts of emails from Ms. Sun's personal email account.  Although the text of many of these emails indicates that the email had an attachment, no attachments were produced.  The Bates numbers for the emails that reference an attachment, but for which an attachment is missing, include the following:  LS-DFP1-000114, 116, 117, 120, 121, 122, 126, 128, 129, 133-34, 136, 137, 145, 146, 148-49, 150, 151, 152, 156, 158, 159, 160, 162, 164, 166, 168, 172-73, 182, 217, 218-19, 240-42, 243, 347-48, 349-50, 375, 384, 392, 393, 449, 451, 459-60, 462, 465-66, 470, 475, 489, 491-92, 505, 536, 538, 555, 557, 563, 566, 567, 573-74, 577, 583-84, 585-87, 593, 606, 611, 634, 694, 695-96.  Representative examples of these emails are attached as Ex. F.

By way of specific example, in a June 16, 2004 email from Linnette Sun to Keith McCormick at Biogen Idec, she writes "I have attached an invoice I sent some time ago. . . " *Id.* at LS-DFP1-000133 .  An April 30, 2004 email to other addressees at Biogen Idec says: "Enclosed please find an attachment of detailed hours we have worked on the project." *Id.* at LS-DFP1-000136.  On November 2, 2006, Ms. Sun sent an email to Lora Pada at Connetics stating:  "Please review the attached invoice for the Primolux economics project." *Id.* at LS-DFP1-000148.  A series of email exchanges with Dan Maravei of Incyte in May 2004 includes the statements "Dear Linnette, Attached is a consulting agreement with the letter outlining the

5

study. . ." and "Dear Dan, Enclosed please find a copy of the reimbursement study as discussed." *Id.* at LS-DFP1-000573.  And, in a December 19, 2005 email to Marta Schroeder at Abbott, Ms. Sun writes:  "Dear Marta, Please review the attached reimbursement model and a presentation of one application."  *Id.* at LS-DFP1-000694.

As indicated above, counsel for Relators do not dispute that Baxter is entitled to these attachments, but cannot provide a date certain by which the documents will be produced.

C. **Interrogatory and Document Requests Related to Sun's Employment Since Her Termination from Baxter**

Baxter Interrogatory No. 4 asked Ms. Sun to describe any "other Employment" since her firing by Baxter, which occurred in July 2003.[3]  Ex. A at 5.  "Employment" was defined as "a relationship in which an employee provides services requested by or on behalf of an employer, *and specifically includes consulting, independent contractor, or other similar arrangements*."  *Id.* at 3.  (emphasis added).

In her September 8, 2011 response to Interrogatory No. 4, Ms. Sun listed only her position with Shire Pharmaceuticals, which she obtained March 23, 2009.  Ex. C at 19.  Ms. Sun's other interrogatory responses, however, as well as the documents that she has produced,

---

[3] Specifically, the interrogatory read:

4. Have you obtained other Employment since any Adverse Employment Action? If so, for each new employment:

    a.    state the name of the employer;

    b.    state when the new Employment commenced and terminated (if applicable);

    c.    state the hourly rate or monthly salary for the new Employment; and

    d.    state the benefits available from the new Employment.

indicate that she engaged in additional work as a consultant during the 2004-2009 timeframe. In response to Interrogatory No. 3, for example, which asked about loss of income damages, Ms. Sun stated that she "engaged in as much consulting work as she could, but that only resulted in earning of approximately $100,000.00 over the five years following her termination from Baxter." *Id.* at 5, 18. A representative sample of the documents that reference Ms. Sun's consulting work (to the extent not included in prior exhibits) has been compiled as Ex. G. Ms. Sun's documents demonstrate that her consulting work included efforts for Biogen Idec (Ex. F at LS-DFP1-000133, 136-37, 151-52, 449, 451, 462), Connetics (Ex. F at LS-DFP1-000128, 148, 240-42, 577, 593, 634), and Incyte (Ex. F at LS-DFP1-000573-74; Ex. G. at LS-DFP1-000486), and possibly work for Genzyme (Ex. G at LS-DFP1-000525), Abbott (Ex. F at LS-DFP-000375, 465-66, 694), and Amgen (Ex. G at LS-DFP1-000291).

Notwithstanding Ms. Sun's claim that her consulting "only resulted in earning of approximately $100,000.00 over the five years following her termination from Baxter," the documents indicate that, for one consulting job alone, the cost of the work totaled approximately $95,000. *See* Ex. H. Finally, as mentioned above, a number of the Sun emails reference attached invoices, but none of these invoices have been produced. *See supra* at 3.

With respect to her current position at Shire, Ms. Sun has provided only a single pay stub, dated July 29, 2011, with a handwritten notation on the document indicating what she claims is her total annual salary and bonus. Ex. I.[4]

---

[4] The alleged base salary of $204,000 does not comport with the math of multiplying the bi-weekly salary indicated in the pay stub by 26, *see id.*, nor does it match the salary stated in the offer letter from Shire (Ex. J at LS-DFP-000111).

## II.     ARGUMENT

### A.     Relator Sun Must Produce Attachments to the Emails She Produced In Response To Baxter's Discovery Requests

Many of the emails produced by Ms. Sun in response to Baxter's discovery requests make clear that they had attachments. *See, e.g.*, Ex. F (excerpts from the Sun document production). Ms. Sun and her counsel have provided no explanation for why these attachments have not been produced. Invoices and other documents related to the consulting work performed by Ms. Sun subsequent to her termination from Baxter are obviously relevant to Ms. Sun's alleged lost wages and responsive to Baxter's discovery requests. Their omission is prejudicial to Baxter as Baxter cannot ascertain the appropriate reductions that should be made to Ms. Sun's claimed lost profit damages for the years following her termination from Baxter.

Moreover, it is accepted practice that email attachments are to be produced along with responsive emails in the course of discovery. Courts have ordered production when this protocol is not followed. For example, in *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667 (M.D. Fla. 2008), the court found plaintiff's failure to produce email attachments (where a stipulation on emails and attachments existed) to be sanctionable misconduct. In so holding, the court stated: "The dubious practice of producing e-mails without attachments in federal discovery has not gone unnoticed by other courts." *Id.* at 675. In *PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, No. 1:05-cv-657 (DNH/RFT), 2007 U.S. Dist. LEXIS 66767 (N.D.N.Y Sept. 7, 2007), the plaintiff produced emails in hard copy that were divorced from their attachments. In ordering the plaintiff to re-produce the emails and attachments, the court stated: "Normally, one would expect that an email and its attachment would have been kept together in the regular course of business, and the production of said documents would have followed suit." *Id.* at \*18. The court continued: "Attachments to emails are important and

8

useful and may assist [the defendant] in presenting admissible evidence as to its Counterclaims." *Id.* at *33. *See also*, *CP Solutions PTE, Ltd. v. GE*, No. 3:04-cv-2150 (JBA) (WIG), 2006 U.S. Dist. LEXIS 27053, at *14 (D. Conn. Feb. 6, 2006) (because Defendants chose to provide the documents in the manner in which they were kept in the ordinary course of business, "[a]ttachments should have been produced with their corresponding e-mails").

Given the current fact discovery cutoff of December 1, and the fact that Ms. Sun's deposition in this case is presently scheduled for November 16, it is imperative that Baxter receive these pertinent attachments as soon as possible. Baxter therefore requests that Relators be compelled to produce all attachments for the emails on the pages with the Bates ranges listed above, *supra* at 5, and that these attachments be produced together with the original email so that defense counsel will know which attachment is associated with which email. Baxter requests that this production take place, at the latest, by November 11, 2011.

    **B.**    **Relator Sun Should Be Compelled to Respond to the Interrogatories and Document Production Requests Concerning Her Income Following Her Termination From Baxter.**

In response to Interrogatory No. 4, which sought a description of all of Ms. Sun's employment since the time she was fired by Baxter in July 2003, she responded only that she obtained a position with Shire Pharmaceuticals in March 2009. Sun's document production (and her response to Interrogatory No. 3) demonstrate that this response is incomplete, and counsel for Relators had agreed. In fact, Ms. Sun performed consulting work (in her own name and that of LSY Health Research) with the companies Connetics, Incyte, and Biogen Idec, and possibly with Amgen, Abbott, and Genzyme, during the 2004 thorough 2009 timeframe. *See supra* at 7. Baxter presently has no way of knowing how much Ms. Sun was compensated for this consulting work, save for her vague response to Interrogatory No. 3 that she "engaged in as much consulting work as she could, but that only resulted in earning of approximately $100,000.00

9

over the five years following her termination from Baxter." Ex. C at 5, 18. This statement is suspect, given that the documents Ms. Sun has produced indicate that just one of the Connetics projects was worth approximately $95,000. Ex. H.

Information concerning Ms. Sun's consulting work, and income therefrom, has obvious implications for her lost wages damages claims. Baxter therefore requests that the Court compel the following:

- A complete response to Interrogatory No. 4, which asks for information concerning all of Ms. Sun's employment since her termination from Baxter. The definition of "employment" specifically includes any work performed as a consultant or independent contractor.

- The production of documents in response to Document Request No. 20, which seeks: "All Documents and Communications, including but not limited to W-2s and 1099s, that reflect any wages or other work-related income you received from the last day of your employment with Baxter to the present."

- The production of documents in response Document Request No. 22, which seeks: "All Documents and Communications that refer or relate to any compensation you received from any employer (other than Baxter) or for any consulting work or self-employment since the commencement of your employment at Baxter to the present."

Despite these document production requests, W-2s and 1099s were not produced, nor were any other documents reflecting Ms. Sun's compensation or her consulting work. With respect to her current employer, Shire, Ms. Sun has produced only a July 2011 pay stub, with a handwritten notation that alleges her base salary and bonus. Ex. I. This is insufficient proof of

her income since March 2009, when Ms. Sun started with Shire.  Indeed, the offer letter Sun received from Shire indicates a base salary of $172,000 in 2009, Ex. J, something very different than the $204,000 she alleges now, Ex. I.

In connection with her retaliation claims (Counts IV, V, and VI of the Complaint), Ms. Sun seeks damages for "losses in earnings and other employment benefits."  Baxter's discovery requests were tailored to ascertain the amount of income Ms. Sun has received since her termination from Baxter in July 2003, which should be offset against any claimed lost wages.  Ms. Sun has not responded to these discovery requests.  Post-termination earnings are routinely offset against lost wages in FCA retaliation cases, *see, e.g., Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 934 (8th Cir. 2002); *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 891-892 (8th Cir. 2000), and in the context of other claims for lost wages damages, such as under the Fair Labor Standards Act and Age Discrimination in Employment Act, *see  Johnson v. Martin*, 473 F.3d 220, 221 (5th Cir. 2006); *Stephens v. C.I.T. Group/Equipment Financing, Inc.*, 955 F.2d 1023, 1028-1029 (5th Cir. 1992); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1013 (11th Cir. 1989).  Ms. Sun's earnings since the time of her discharge from Baxter are thus clearly relevant, and this Court should therefore order Ms. Sun to produce evidence of her income – from consulting work and from her employment at Shire – including, but not limited to, pay stubs, invoices, and tax documents, from the time of her termination to the present (or for the timeframe for which Ms. Sun seeks lost wages damages, if shorter).  Given Ms. Sun's upcoming deposition and the discovery cutoff in this case, Baxter requests production of these documents and a revised response to Interrogatory No. 4 by November 4, 2011.

### C. If Ms. Sun Does Not Comply With This Court's Order, She Should Be Precluded From Offering Evidence Of Lost Wages Damages At Trial

Rule 37(d)(1)(A) provides for the imposition of sanctions if a party fails to respond to interrogatories under Rule 33 or document requests under Rule 34. Among the sanctions that may be imposed for failure to adequately respond to discovery requests is "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters as evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii).[5]

Relators cannot show that their omission of proof of compensation is harmless. The absence of information concerning lost wages damages hamstrings Baxter's ability to determine appropriate offsets to claimed damages, to conduct discovery, to prepare expert reports, and to consider its liability and the potential viability of settlement. With only one month remaining during which to conduct fact discovery and prepare expert reports,[6] Baxter's ability to prepare its case is significantly impeded by Relators' inadequate disclosures.

For these reasons, in the event that Relators do not timely produce the lost wages information and documents sought above, the imposition of a sanction barring the introduction of such damages evidence in support of any motion or at trial is warranted as prescribed under Rule 37(d).

### III. CONCLUSION

For the reasons described above, Baxter requests that the Court enter the proposed order attached to its motion, which, (1) compels Relators to produce all email attachments by November 11, 2011; (2) compels Relator Sun to supplement her response to Interrogatory No. 4

---

[5] Rule 37(d)(3) indicates that the sanctions available under Rule 37(d) include any of the sanctions described in Rule 37(b)(2)(A)(i)-(vi).

[6] Given this Court's expert discovery cutoff of March 1, 2012, the parties have agreed to exchange initial expert disclosures by December 1, 2011.

and her document production to include information relating to the amount of money she was paid while working as a consultant, and by Shire, subsequent to her firing by Baxter by November 11, 2011; and (3) precludes Relators from seeking damages for lost wages in support of future motions or at trial in the event the production of income-related information is not made.

Respectfully submitted,

| | |
|---|---|
| Dated: November 4, 2011 | /s/ **Tina D. Reynolds**<br>J. Andrew Jackson<br>Merle M. DeLancey<br>Tina D. Reynolds<br>*Admitted pro hac*<br>**DICKSTEIN SHAPIRO LLP**<br>1825 Eye Street NW<br>Washington, DC 20006<br>Telephone:  (202) 420-2200<br>Facsimile:   (202) 420-2201<br><br> /s/ **Peter E. Gelhaar**<br>Peter E. Gelhaar (BBO #188310)<br>**DONNELLY, CONROY & GELHAAR, LLP**<br>One Beacon Street, 33rd Floor<br>Boston, MA 02108<br>Telephone: (617) 720-2880<br>Facsimile:  (617) 720-3554<br><br>Counsel for Defendant Baxter Healthcare Corporation |

## CERTIFICATE OF SERVICE

I hereby certify that I, Tina D. Reynolds, an attorney, caused a true and correct copy of the foregoing **BAXTER HEALTHCARE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND THE PRODUCTION OF DOCUMENTS** to be delivered to all counsel of record by electronic service via LexisNexis File & Serve, on November 4, 2011, for posting and notification to all parties.

                                            **/s/ Tina D. Reynolds**
                                            Tina D. Reynolds
                                            **DICKSTEIN SHAPIRO LLP**
                                            1825 Eye Street NW
                                            Washington, DC 20006
                                            Telephone:  (202) 420-2200

DSMDB-2992531v1