UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION <br><br> THIS DOCUMENT RELATES TO ALL CLASS ACTIONS RELATING TO TRACK TWO DEFENDANTS: | MDL No. 1456 <br><br> CIVIL ACTION: 01-CV-12257-PBS <br><br> Judge Patti B. Saris |

**DECLARATION OF DANIEL COGGESHALL
REGARDING ADDITIONAL ADMINISTRATION COSTS
RELATED TO APPEAL OF THE TRACK TWO SETTLEMENT**

**DANIEL COGGESHALL**, hereby states under pains and penalties of perjury as follows:

1.   Complete Claim Solutions, LLC ("CCS") was appointed as the Claims Administrator pursuant to ¶ IV.10 of the Order Granting Preliminary Approval of the Track Two Class Settlements, Directing Notice to the Classes and Scheduling Fairness Hearing ("Preliminary Approval Order") dated July 2, 2008.  In February 2009, CCS began doing business as Rust Consulting, Inc. ("Rust").  This change was in name only.

2.   I am a Senior Project Administrator of Rust.  I am over 21 years of age and am not a party to the Action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

3.   I submit this Declaration to provide the Court with an estimate of unanticipated settlement administration costs which will likely be incurred due to the appeal.

**UNANTICIPATED SETTLEMENT ADMINISTRATION COSTS**

4. Class Counsel requested Rust to describe unanticipated settlement administration costs that may be incurred in the event the administration process is disrupted and delayed due to the Connick appeal. By way of explanation, in a similar case, *In re Warfarin Sodium Antitrust Litigation,* 391 F. 3d 516 (3rd Cir. 2004) ("Warfarin Settlement"), an appeal was filed delaying the claims administration activities and, therefore, final distribution to the consumers.

5. Based on Rust's experience in the Warfarin Settlement, unanticipated costs (fees and out-of-pocket expenses) were incurred from the time between the Final Settlement Approval Order and the date the Order became final. Such costs included maintaining a Post Office Box, maintaining a toll-free number for claimants to call with questions, answering additional telephone calls, processing additional, unanticipated correspondence (such as change-of-address forms and status requests from Class Members), responding to e-mails, keeping the Settlement website (www.awptrack2settlement.com) up and running, revising the website and telephone Frequently Asked Questions (FAQ's), and pre-recorded toll-free telephone hotline script as necessary, warehousing documents, data storage, and performing various administrative tasks.

6. The single most significant cost component listed in ¶5, above, relates to telephone charges. Even though claims-processing operations could cease, Rust would continue its call-center operations. Indeed, the pendency of the appeal would make the continuation of this service all the more necessary as many claimants, particularly those who are elderly, naturally would have questions concerning the status of the Settlement during the period it might be on hold.

7. As a result of the delay in the Warfarin Settlement, additional unanticipated costs (fees and out-of-pocket expenses) ran approximately $7,500 to $10,500 per month.

8.      In addition, should Rust be instructed to stop all activities relating to the processing of claims while the appeal is pending, there would also be additional unanticipated costs associated both with winding down operations when the stop-work instruction comes in and with ramping up operations once a Final Approval Order is affirmed.

9.      As a result of stopping claims administration activities and ramping up operations, as referred to in ¶5 above, there will be additional unanticipated costs (fees and out-of-pocket expenses) incurred for activities and items such as: answering additional telephone calls from Consumer Class Members; processing an increased number of undeliverable deficiency letters and award checks returned by the United States Postal Service; researching updated addresses for Consumer Class Members; incurring additional postage fees to re-mail deficiency letters and checks to updated addresses; reissuing a greater number of checks due to Consumer Class Members having moved or reissuing checks to next of kin for Consumer Class Members who will have died; performing additional audit and quality assurance activities; and, in general, performing additional claim administration tasks.

10.     Assuming a 12-month time period between when the stop-work instruction comes in and when Rust is instructed to ramp up operations, I estimate that the unanticipated costs for all additional work as described in ¶¶5-9, above, to be approximately $196,500, including time spent by Rust staff in preparing this declaration.

11.     I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of November, 2011 in Palm Beach Gardens, Florida.

                                        /s/ Daniel Coggeshall
                                        Daniel Coggeshall

**CERTIFICATE OF SERVICE**

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF DANIEL COGGESHALL REGARDING ADDITIONAL ADMINISTRATION COSTS RELATED TO APPEAL OF THE TRACK TWO SETTLEMENT**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 4, 2011 a copy to LexisNexis File & Serve for posting and notification to all parties.

                                      **/s/ Steve W. Berman**
                                      Steve W. Berman