IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


IN RE:                          )
                                )  CA No. 01-12257-PBS
PHARMACEUTICAL INDUSTRY AVERAGE )  CA No. 08-11200-PBS
WHOLESALE PRICE LITIGATION      )  Pages 1 - 33
                                )




                       MOTION HEARING

           BEFORE THE HONORABLE PATTI B. SARIS
                UNITED STATES DISTRICT JUDGE






                   United States District Court
                   1 Courthouse Way, Courtroom 19
                   Boston, Massachusetts
                   November 8, 2011, 3:00 p.m.






                      LEE A. MARZILLI
                   OFFICIAL COURT REPORTER
                 United States District Court
                 1 Courthouse Way, Room 3205
                    Boston, MA  02210
                     (617)345-6787

1    A P P E A R A N C E S:

2

3         MARK ALLEN KLEIMAN, ESQ., Attorney-At-Large,
     2907 Stanford Avenue, Venice, California, 90292, for the
     Relators.

4

5         TINA D. REYNOLDS, ESQ. and J. ANDREW JACKSON, ESQ.,
     Dickstein Shapiro, LLP, 1825 Eye Street, NW, Washington, DC,
     20006-5403, for Baxter Healthcare.

6

7         PETER E. GELHAAR, ESQ., Donnelly, Conroy & Gelhaar, LLP,
     One Beacon Street, 33rd Floor, Boston, Massachusetts, 02108,
     for Baxter Healthcare.

8

9    ALSO PRESENT:   Jennifer Vankamp, Esq.
                     David J. Chizewer, Esq.
                     George B. Henderson, II, Esq.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2          THE CLERK:  Court calls Civil Action 01-CV-12257,

3    In Re:  Average Wholesale Price Litigation.  Could counsel

4    please identify themselves for the record.

5          MR. KLEIMAN:  Good afternoon, your Honor.  Mark

6    Kleiman here for the relators.  And with me in court today is

7    Jennifer Verkamp from Morgan Verkamp and David Chizewer from

8    Goldberg Cohen, two firms that are prepared, depending on the

9    outcome of this hearing, to associate in.

10         THE COURT:  Thank you.

11         MR. JACKSON:  Good afternoon, your Honor.  Andy

12   Jackson, Dickstein Shapiro, for Baxter.

13         MS. REYNOLDS:  And Tina Reynolds from Dickstein

14   Shapiro as well.

15         MR. GELHAAR:  And Peter Gelhaar --

16         THE COURT:  Peter Gelhaar I know from around here.

17         MR. GELHAAR:  From around here.

18         THE COURT:  You're a local counsel?

19         MR. GELHAAR:  Yes, I am.  It will be a learning

20   experience.

21         THE COURT:  So I was informed before I came down here

22   that you are seeking to address multiple motions rather than

23   just the ones that are joined.  Is that correct?

24         MR. JACKSON:  Well, your Honor, I'm prepared to give

25   you the lay of the land, if you'd like.

1        THE COURT:  All right.

2        MR. JACKSON:  There is one motion that's set for

3   today, but I thought maybe review the bidding a little bit

4   because, frankly, I think a motion that is going to be joined

5   relatively soon we think is dispositive, and it might actually

6   moot today's argument.  So if you'd like me to run through

7   that --

8        THE COURT:  Aren't you all here from all over the

9   country?  I mean, I'm going to do today's argument and then --

10  I have read the other motion, but it wasn't joined, so I don't

11  know if I'm prepared.  Did you want to argue the second one

12  today having to do with the settlement agreement?

13       MR. KLEIMAN:  No, we're not prepared to argue it

14  today, and it would be the subject of an opposition and

15  probably a 56(f) declaration as well.

16       THE COURT:  Well, let's do this:  I am not likely to

17  have a second oral argument, so maybe what you can do is at

18  least give me your positions.  Then I'll take the written brief

19  when it comes in.  All right, go ahead.

20       MR. JACKSON:  All right, your Honor, we'll start then

21  with today's argument which relates to a first-to-file

22  argument.  There are only two drugs left in this case for the

23  AWP False Claims Act claims.  There are several employment/

24  wrongful discharge claims that we've not moved to dismiss.  The

25  focus of the motions practice today and the opposition that

1    you're going to receive tomorrow relate to the AWP FCA.  Our

2    argument today is regarding one of the two remaining drugs,

3    Recombinate, an antihemophilia drug.  One of the two relators,

4    Mr. Hamilton, was deemed by you to be an original source for

5    that single drug in our prior motion to dismiss.

6            Since the time we filed those motions -- and the basis

7    of this motion is the Ven-A-Care case that came unsealed, I

8    guess about a year ago.  The Ven-A-Care case specifically calls

9    out Recombinate as a drug that's the subject of that

10   litigation.  That complaint identifies four separate same kind

11   of pricing theories that you've been listening to for ten

12   years.  It identifies list price, wholesale net, direct price,

13   and wholesaler acquisition cost.  It's the same theory:  That

14   Baxter allegedly gave these prices to the compendia.  They were

15   different than average wholesale price.  That created a spread.

16   The spread caused impact, adverse impact to Medicare and

17   Medicaid.  You know, it's the same marketing-the-spread theory.

18   In that set of briefing, the relators argue that their new case

19   was a new species of AWP case.  I believe you rejected that

20   previously in argument, and I direct your attention to Pages 16

21   and 17 of that hearing transcript and what you said about this

22   alleged new species, and I'm happy to read it for you.

23           THE COURT:  Sure.  I'm getting older.  I don't

24   remember what I've said, you know?  You know, you can be seated

25   if you want and then --

1            MR. KLEIMAN:  Thank you, thank you.

2            THE COURT:  Thank you.

3            MR. JACKSON:  So Mr. Kleiman argues that this is a new

4     species of AWP fraud.  Your response is:  "I know you're trying

5     to claim there's a new kind of AWP fraud, but, as I read it --

6     I've been dealing with these kinds of claims for ten years --

7     What is WAC?  How does it differ from direct price?  How does

8     it differ from list price?  What are you marking up by

9     1.25 percent? -- it's not so new."

10           So, your Honor, we believe that this qui tam case, the

11    Ven-A-Care case that came out from under seal after fifteen

12    years of being under seal, directly deals with Recombinate.  It

13    lists the same kind of AWP fraud about which you've been

14    dealing forever, and we believe, under the first-to-file bar,

15    the Court lacks jurisdiction over that.

16           THE COURT:  And the first-to-file bar applies even

17    when something is under seal and they couldn't possibly have

18    known about it, they're just out of luck kind of thing.  Even

19    if they've done everything that they can do to disclose, in

20    their view, a fraud, if somebody caught it first, it's tough

21    luck.

22           MR. JACKSON:  Tough luck.  The case law is, there are

23    no exceptions to this jurisdictional issue.  And it's based

24    upon the notion that that first-to-file complaint, while

25    Mr. Kleiman may not have seen it, the Justice Department

1   certainly did, and it's designed to give the Justice Department

2   notice so they can decide whether to investigate.  And the

3   Ven-A-Care, as you may remember, is a non-intervened case.

4   This case is a non-intervened case.  So we think under the

5   first-to-file and this Circuit's Ortho decision, that the

6   Recombinate claims should be dismissed, and if the Recombinate

7   claims are dismissed, so should Mr. Hamilton.  You previously

8   ruled that he was an original source, but to quote this Court,

9   it was a "close call."  If his drug disappears, we think he

10  should disappear as well.

11          THE COURT:  All right, thank you.  And just to move us

12  one step further, are you going to be addressing the other drug

13  as well?

14          MR. JACKSON:  I'm happy to do that, your Honor.  The

15  summary judgment motion that we have filed addresses both

16  drugs.

17          THE COURT:  And that's what you say hasn't been

18  opposed yet?

19          MR. JACKSON:  They're filing their brief tomorrow, and

20  I think our reply brief is due the 23rd.  Just to give you a

21  little flavor of what that pleading is, we have a settlement

22  agreement with Ven-A-Care.  The Ven-A-Care plaintiffs signed

23  that settlement agreement in late September.  The Justice

24  Department consented to that settlement agreement on October 3.

25  We signed it on the 5th and filed it on the 7th.

1          THE COURT:  And that specifically lists Recombinate,

2    right?

3          MR. CHEFFO:  That specifically lists -- and look for

4    it in Paragraph 2(e) of the settlement agreement -- it lists

5    all Baxter drugs, and then also specifically includes two

6    labeler codes, those two labeler codes, one of which covers

7    both Recombinate and Advate.  So it's very broad release.  It's

8    all Baxter drugs and then separately also calls out labeler

9    codes, and that's the same kind of structure that's been used

10   in a variety of the other non-intervened cases, that this is

11   kind of the form of the settlement agreement that's been

12   entered into.

13          So we argue in our papers that we have a full and

14   final settlement with the relators in Ven-A-Care, and with the

15   Justice Department, and we've paid.  That takes care of the

16   drugs in this case.

17          THE COURT:  Is it the exact same time period?

18          MR. JACKSON:  The exact same time period.

19          THE COURT:  So in a sense, this would take care of

20   everything, this agreement, right?  So that's probably why I

21   should probably wait to even rule on the motion to dismiss till

22   I see a response.  And then I understand you have another

23   argument with respect to the second drug.

24          MR. JACKSON:  Well, but I also believe, in our papers,

25   in addition to the settlement agreement, we also address very

1    specifically this Court's rulings about the history and

2    knowledge of the government and how that would preclude a False

3    Claims Act case on these two drugs, the remaining drugs, the

4    hemophilia drugs.  You will see in our papers that -- and I've

5    told you this before, your Honor, but it's just now teed up --

6    those two therapies, maybe different than any other AWP case

7    you've had, presents a very clear public record that talks

8    about cross-subsidization.  It talks, the public record, it

9    talks about how the DOJ AWPs were released, and then HHS told

10   the governments not to use the DOJ AWPs for these two therapies

11   because there was inadequate reimbursement.  So it's the best

12   cross-subsidization case that you've had.

13         More importantly, you will see our discussion of the

14   MMA.  So we've got perfect storm.  We've got MMA where you drew

15   many, many lines.  The legislative history to the MMA

16   specifically talks about hemophilia drugs and how reimbursement

17   would not be reduced to 85 percent of AWP but remain at

18   95 percent, so that these other things that are required when

19   the hemophilia drugs are administered, it pays for that.

20         So we think, in addition to the settlement agreement,

21   we think the state today of the public record regarding these

22   therapies, both in terms of the investigations that took place

23   before 2001, in 2001 the AWPs, the perfect storm, and then in

24   2003 with the passage of the MMA, that we think, without more,

25   there is adequate evidence and an adequate record for you to

1    rule in favor of us on those defenses as well.

2             THE COURT:  Well, let me ask you.  On the release,

3    doesn't the complaint that's being released specifically list

4    Recombinate, or not?

5             MR. JACKSON:  The complaint, the Ven-A-Care complaint

6    specifically identifies Recombinate.  It was filed in 1995,

7    that complaint.  Advate was not sold until late 2003, but the

8    release nonetheless covers all Baxter drugs.  And again I

9    direct your attention to 2(e).  It's a very, very broad

10   discussion of the drugs.  It's a broad discussion of the

11   conduct.

12            THE COURT:  How much money was exchanged?

13            MR. JACKSON:  $30 million.

14            THE COURT:  And was there a specific consideration of

15   Advate?

16            MR. JACKSON:  It was an all-in discussion, your Honor.

17   You know, I can't go into the specifics --

18            THE COURT:  I understand that, but it's clear that

19   Recombinate must have been on the table because it was

20   mentioned in the complaint, but the rest of it seems like a

21   catch-all.

22            MR. JACKSON:  Well, your Honor, again, it's very clear

23   about all drugs, and there's a reason for that, right?  We've

24   been litigating this case or dealing with it since 1995, and

25   like any other defendant, we want peace.  If we're going to pay

1   that kind of money to resolve a matter, we want peace across

2   the board.

3            THE COURT:  For all drugs is your --

4            MR. JACKSON:  All drugs, yes, your Honor.

5            THE COURT:  All right, thank you.

6            Let me ask you this.  You know, I was sort of working

7   with my law clerk diligently on the jurisdictional

8   first-to-file rule, and then I found out about this settlement.

9   I'm sure you found out about this settlement.  Doesn't it just

10  resolve the whole thing?  Put aside for a minute the

11  cross-subsidization issue and even the first-to-file issue.  If

12  there's a complete global release, isn't that the end of it?

13           MR. KLEIMAN:  Well, first of all, there's a great

14  question about whether this is in fact a complete global

15  release because the same -- first of all, the government never

16  signed onto a release of anything beyond what was alleged in

17  the Ven-A-Care complaint.

18           THE COURT:  So at the very least, though, it resolves

19  Recombinate?

20           MR. KLEIMAN:  Although I'm loathe to cite her as legal

21  authority, this is reminiscent of Sinead O'Connor's "I Cannot

22  Release What I Don't Have."  There is a serious question --

23           THE COURT:  I'm embarrassed to tell you I have no idea

24  who that is.

25           (Laughter.)

1          MR. KLEIMAN:  She is an Irish pop rock singer popular

2     about fifteen or twenty years ago.  I'm embarrassed to have

3     brought her up.

4          THE COURT:  Oh, that's okay.  I learned something.

5          MR. KLEIMAN:  And she wrote a song called "I Cannot

6     Miss What I Don't Have."  The reason I raise it is that your

7     Honor in another context had written very specifically about

8     how the history of this MDL makes it perfectly clear that each

9     drug has to be evaluated on its own.  You can't have --

10          THE COURT:  Okay.

11          MR. KLEIMAN:  You can't have catchall claims or

12     omnibus claims or conclusory allegations.  What the Ven-A-Care

13     complaint -- and I have the utmost respect for Mr. Brigg --

14     what the Ven-A-Care complaint does is say, "Well, it could

15     be --" and it lists the four factors my colleague mentioned.

16     "It could be any one of these.  It could be a couple of these.

17     We don't know," and it gives a couple of examples, none of

18     which are biologics.  It says nothing at all about the fact

19     that there's this whole different class of trade; specifically,

20     the non-charge-back wholesalers.

21          Yes, Ven-A-Care's complaint listed Recombinate.  Yes,

22     the settlement agreement incorporates what is in the Ven-A-Care

23     complaint.  We've got serious questions about whether or not

24     Ven-A-Care adequately pled a case about Recombinate, and that's

25     the case we intend to make to this Court.

1          THE COURT:  I think that's a tough argument for you.

2    The government settled it, and they approved it, and it

3    included that drug.  Is there any case law in the world that

4    says the government can't settle it?

5          MR. KLEIMAN:  Oh --

6          THE COURT:  In fact, you can settle claims beyond

7    what's in the complaint.  You don't even have to limit yourself

8    to what's in the complaint.

9          MR. KLEIMAN:  Well, the government's position is that

10   what it settled was what was in the Ven-A-Care complaint.

11   There's a --

12         THE COURT:  Where does it say that?

13         MR. KLEIMAN:  We had communications with DOJ after we

14   saw the settlement come through.

15         THE COURT:  I bet you did.

16         MR. KLEIMAN:  Yes, and they'll be attached.  What they

17   said is, "Look, we settled.  What we released," the government

18   says, "is what's in the Ven-A-Care complaint," period.

19         Now, that leaves open the question, what is properly

20   pled in the Ven-A-Care complaint and what is not properly pled?

21   When you look at the standard that this Court has used of

22   conclusory allegations of one broad scheme being inadequate as

23   a basis for pleading, what Ven-A-Care has to say about

24   Recombinate doesn't meet that test.

25         THE COURT:  I'd like to see your case law.  I believe

1  that the government can, even if it was inadequately pled, that

2  the government can settle it.

3       MR. KLEIMAN:  Well, if the government wants to say,

4  "We're settling --"  What the government said is, "We're

5  settling based on the covered conduct," and the covered conduct

6  is what's in the complaint.  We will be happy to furnish the

7  Court will full briefing on this.  I would ask the Court, and I

8  will explain why in a second, for really just two or three

9  extra days.  We only heard back from the government about this

10 on Friday of last week.

11      THE COURT:  Two or three extra days is fine.  It's

12 just, before I write anything up, I mean, on the first-to-file

13 issue, in fact we --

14      MR. KLEIMAN:  Well, we'll get there.

15      THE COURT:  I think we should argue that because that

16 is fully briefed.  But I sort of told everyone to go on hold

17 when I saw this settlement.  Now, I don't know whether all

18 drugs includes -- whether there's an argument about Advate, I

19 don't know that, but on Recombinate you've got an uphill

20 battle.

21      MR. KLEIMAN:  I recognize that, your Honor, and I'm

22 happy to fight uphill on it.

23      THE COURT:  Okay.

24      MR. KLEIMAN:  Let me address the motion we have in

25 front of us.

1          THE COURT:  Why don't we deal with the first-to-file,

2     and then I'm not sure we need to deal with the cross-

3     subsidization because that's more in the weeds, and I'll wait

4     till I see the brief.  And if I don't understand, I'll bring

5     you back in here.  But my concern right now is having you spend

6     all this money on briefing if -- in other words, does it make

7     more sense to deal with the release issue first and then have

8     you brief the rest of it later?

9          MR. KLEIMAN:  Well, it might make more sense to deal

10    with the release issue first.  And we're not opposed to

11    sequencing this.  The problem is that if there is a mistake as

12    to fact as to what was and was not encompassed in the release,

13    this means that we're going to have to have discussions with

14    people who were involved in those negotiations on all sides to

15    hash out exactly what was encompassed because there's nothing

16    in that release that suggests that Advate was included.  I

17    agree with your Honor that the question about Recombinate is a

18    legal question, but as far as Advate goes, there is nothing

19    other than this very, very slender thread of a labeler code,

20    and the "all drugs" language, which contradicts other language

21    in the release that talks about the covered conduct as in --

22    and specifies the drugs that are listed.  So in order to --

23          THE COURT:  That may be.  That's why I said, I don't

24    know enough about Advate to take the position, but the

25    Recombinate seems -- and I'm happy to have argued the motion,

1   the first-to-file --

2            MR. KLEIMAN:  I -- I --

3            THE COURT:  We're all up to speed.  We're even in

4   draft before we did this.  But why don't we do this:  Why don't

5   you argue that.  I'll wait to see on the first-to-file.  And a

6   couple of extra days, will that get you through the

7   cross-subsidization issue as well so that we don't -- I think

8   if you're pretty much done --

9            MR. KLEIMAN:  Well, your Honor, to be --

10           THE COURT:  I don't want to waste people's money is

11   what I don't want to do.

12           MR. KLEIMAN:  To be fully candid, I mean, what we're

13   going to have is a 56(f) declaration saying, here is the

14   discovery we need to unpack this.

15           THE COURT:  On Advate, because I'm unlikely to give it

16   on Recombinate.

17           MR. KLEIMAN:  Yes, on Advate.

18           MR. JACKSON:  Your Honor, if I may and approach, I'd

19   like to hand you the settlement agreement and show you the

20   language.  I realize that you're going to wait and see his

21   papers, but the United States' consent is much broader than

22   represented, and I've got them here if you'd like one.

23           THE COURT:  I'd love it, and you can hand it up to the

24   Clerk.  But in the meantime, let me let your brother here just

25   make his argument, since he's up here prepared, ready to go.

1    Where did you fly in from?

2            MR. KLEIMAN:  Los Angeles.

3            THE COURT:  You know, beautiful fall New England, but

4    why don't you make your argument on the first-to-file.  But I

5    do think I'm trending towards sequencing on the release issue

6    because why go -- I mean, that's a hard issue on this

7    cross-subsidization and what's the record and what isn't the

8    record, and there's a lot of stuff there for you to write up,

9    and for the reply and the surreply and for me to write up, if

10   in fact the release is going to be dispositive one way or

11   another.  Anyway, but we'll talk about that later.  Go for it

12   on first-to-file.

13           MR. KLEIMAN:  Okay.  In prior litigation within this

14   MDL, there is a case in which Abbott moved to dismiss a

15   Ven-A-Care complaint and then asked for certification of the

16   issue to the First Circuit.  Abbott was taking the position

17   that this Court had used a test saying that the same identical

18   facts had to be in both complaints, and this Court clarified

19   that you need to have the same underlying facts, but they don't

20   have to be exactly the same.  What this Court did go on to

21   observe, though, is that what you cannot have are shotgun

22   allegations that basically describe a -- and this is the

23   Court's own words -- a broad scheme and then a bucket list of

24   drugs that fall into that broad scheme.

25           As to Recombinate --

7899ee7c-392e-4b1b-a049-817c08935026

1      THE COURT:  Do you have the cite?  I've done so many

2  AWP opinions.

3      MR. KLEIMAN:  I can get it.  It was a June, 2008

4  decision.  I've got the Westlaw cite on my computer.  I could

5  pull it, or I could furnish it to the Court.

6      THE COURT:  You can just provide it to the Clerk later

7  on.  I just want to make sure which AWP case you're referring

8  to.  There may be forty?

9      MR. KLEIMAN:  I know.  Yes, this is just a Westlaw

10  cite.  There is no official Reporter cite on this.  It was from

11  June of 2008, but I'll furnish it to the Court before the end

12  of the day.

13      The Court said specifically -- this is a direct

14  quote -- "The conclusory allegation of one broad scheme is

15  inadequate, particularly in light of the evidence in this MDL

16  demonstrating that each drug must be analyzed differently."

17  The Court then goes on to say that because of that, the

18  plaintiffs have to plead with specificity as to each drug.

19      THE COURT:  Is that one of the ones -- that was one

20  where I said that the drug hadn't been listed, so you could

21  bring a separate case involving a brand-new drug.

22      MR. KLEIMAN:  Your Honor is correct.  That was the

23  erythromycin issue.  When you line up the two complaints, what

24  the fourth amended Ven-A-Care complaint says is that there

25  could have been misstatements about list price.  We don't know.

7899ee7c-392e-4b1b-a049-817c08935026

1    There could have been misstatements about direct price.  We

2    don't know.  There could have been misstatements about

3    wholesale net.  We don't know.  There could have been

4    misstatements about wholesalers' acquisition cost.  We don't

5    know.  One of these four things happened.  Maybe all of the

6    four things happened.  Maybe a couple of them happened and a

7    couple didn't.  We don't know.  That's all we have in the

8    record as to Ven-A-Care's fourth amended complaint.

9             In contrast to that, what we've got in the

10   Sun/Hamilton complaint is something very specific that deals

11   with the non-charge-back wholesalers.  Because this is a

12   biologic drug, it has this whole different path of

13   distribution.  This is outlined at Paragraphs 27 through 31 or

14   32.  In brief, the primary point is that unlike dextrose,

15   unlike lactated ringers, which are the specific items from

16   Baxter that are mentioned in Ven-A-Care's complaint, what we've

17   got is this drug that has this whole other path of distribution

18   where the vast majority of the drug is sold at a price much

19   less than the drug that is sold through the charge-back

20   wholesalers, the McKessons of the world; yet the McKessons of

21   the world form the basis for the reported prices.

22            We have the very specificity this Court said that it

23   wants to see in order to evaluate whether or not something has

24   been properly pled.  We have the specificity that allows an

25   actual analysis as to these drugs because of the unique posture

1    of the biologicals.  Ven-A-Care does not.

2         We agree that there is a first-to-file question.  We

3    think that as to Recombinate, in terms of what is properly

4    pled, which is the only question that's before the Court for

5    the purposes of the motion to dismiss, we have properly pled a

6    false claim as to the misreporting prices for Recombinate; and

7    that it is Ven-A-Care that has indulged in conclusory

8    allegations of a broad scheme; and that if anybody's

9    allegations about Recombinate stand, it is Sun's and Hamilton's

10   and not Ven-A-Care's.  That is where we are coming from about

11   this.

12        THE COURT:  All right.  And so as I understand your

13   basic claim, you would say, "Yes, they've listed the drug, yes,

14   they've listed the broad scheme, but we've provided critical

15   details to understand how it works."

16        MR. KLEIMAN:  Very close, your Honor.  They have

17   listed four different broad schemes and have never specified

18   which of them, if any, pertain to this drug.  They say it could

19   have been this, it could have been that, it could have been

20   something else.  They list four broad schemes and say, "Oh,

21   it's one of the four."  They never identify which.

22        So if the nature of the scheme matters, there's

23   nothing in Ven-A-Care's complaint that allows us to identify

24   whether they're alleging the same scheme we are.  So with that

25   modification, which I think is a crucial one, that comprises my

Page 21

1   argument.

2        THE COURT:  All right, thank you.  But before you sit

3   down, how do you want to proceed?  It sounds as if you're going

4   to be regardless, be out on Recombinate.  So I'm less certain

5   about Advate because it's in the catchall "all drugs."  And I

6   don't know.  You say there's inconsistent language.  I want to

7   see your briefing on it.  Would you prefer to brief this all at

8   once, or would you prefer to have me do this sequentially?

9        MR. KLEIMAN:  We would rather brief it all at once,

10  but we're going to need -- I mean, the first thing that's going

11  to show up is a 56(f) declaration explaining what it is we need

12  to get at.

13       THE COURT:  You only get that if there's an ambiguity.

14       MR. KLEIMAN:  I appreciate that, your Honor.

15       THE COURT:  So since I have it now in front of me --

16       MR. JACKSON:  Your Honor, I marked a couple pages for

17  you.  First is the consent of the Justice Department, and

18  that's the second sticker, if you will, and the dismissal with

19  prejudice pursuant to the settlement agreement and release.  So

20  it is very broad that the Justice Department has consented.

21       The first tab is Paragraph 2(e) that I mentioned

22  earlier, and I'll direct your attention first to the reporting

23  section.  It's the top of Page 3.  And this is precisely what

24  the complaint alleges here and precisely what the complaint

25  alleged in Ven-A-Care.  It was this providing some kind of

1   price that was inaccurate to the compendia.  That created the

2   spread.  Spread marketing then occurred.  So we think this

3   release is very clear, and I can't imagine that it would be

4   appropriate to undertake discovery of settlement negotiations,

5   so I anticipate that we'll fight that.

6          Then if you look at the drugs, the covered drugs,

7   middle of the page, it's any and all drugs manufactured,

8   marketed, or sold on behalf of any Baxter party; then includes

9   two labeler codes, one of which --

10         THE COURT:  Yes, but it says Baxter covered drugs with

11  Labeler Codes 00338.  Is that a defined term?

12         MR. JACKSON:  It is, your Honor.

13         THE COURT:  I wonder what --

14         MR. JACKSON:  And, again, if you look at that

15  paragraph, it's all drugs.

16         THE COURT:  Yes, I understand your argument from the

17  parenthetical, but I'm just saying, if covered drugs is defined

18  as what's in the complaint --

19         MR. JACKSON:  I don't believe it is, your Honor.  I

20  believe it's broader than that.

21         THE COURT:  It's what?

22         MR. JACKSON:  I believe it's broader than that.  It's

23  all the Baxter drugs.

24         THE COURT:  Where does it say what the definition of

25  "covered drugs" is?

1          MR. JACKSON:  If you look at Page 3, your Honor, you

2     have, and I'll read this for the record:  "For drugs

3     manufactured, marketed, and/or sold by or on behalf of one or

4     more Baxter parties (any and all drugs manufactured, marketed,

5     and/or sold by or on behalf of any Baxter party, including

6     without limitation --" those in the labeler codes, plus --

7          THE COURT:  No, no, that's what you keep reading right

8     over.

9          MR. JACKSON:  Well, Your Honor --

10         THE COURT:  Excuse me.  It says "including, without

11    limitation, Baxter covered drugs with Labeler Codes 00338 and

12    00944."  So I'm asking actually a simple question:  What is

13    "covered drugs" defined to mean?

14         MR. JACKSON:  Keep going.  It's the continuation of

15    that sentence.  "Covered drugs" is defined as everything I just

16    read.

17         THE COURT:  Where?

18         MR. JACKSON:  You see the Baxter covered drugs after

19    Labeler Code 00039?

20         THE COURT:  I understand, but is there a definition of

21    Baxter covered drugs?

22         MR. JACKSON:  Yes, your Honor, right there.  That's --

23         THE COURT:  That's what you've got?

24         MR. CHEFFO:  Yes.  That's the definition.

25         THE COURT:  There's no definition section or --

Page 24

1          MR. JACKSON:  Your Honor, that's how the parties chose

2    to define covered drugs, to be all of those drugs listed in

3    that clause beforehand.

4          THE COURT:  All right, so that's how you're

5    interpreting it.

6          MR. JACKSON:  Yes, your Honor.

7          THE COURT:  Because typically these complaints that

8    I've been dealing with for a decade refer to covered drugs, and

9    then there's an appendix.  You know, there's like a list of a

10   gazillion drugs afterwards.  So, in any event, this settlement

11   doesn't go that route?

12         MR. JACKSON:  Those settlement agreements I believe,

13   your Honor, were almost entirely in the class cases, and I

14   think that's a different animal because you've got different

15   obligations associated with, you know, non-present --

16         THE COURT:  Well, you've probably answered my

17   question.  Your answer is, there's no separate definition --

18         MR. JACKSON:  Correct.

19         THE COURT:  -- or appendix that refers to covered

20   drugs.  What I see is what I get right here on Page 3?

21         MR. JACKSON:  Yes, your Honor.

22         THE COURT:  Okay, perfect.  So that's probably going

23   to be the -- but it does say "all drugs."  I mean, regardless

24   of what I do with covered drugs and the labeler codes, you've

25   got a problem here.

7899ee7c-392e-4b1b-a049-817c08935026

1        MR. KLEIMAN:  We do, your Honor, and at risk of

2   another popular analogy, this is a bit like the --

3        THE COURT:  Oh-oh.  What if I don't get this one too?

4        MR. KLEIMAN:  I'm out on a limb.  This is very much

5   like the drunk who's searching for his wallet under the

6   lamppost because that's where the light is rather than in the

7   alley where he lost it.  What is missing from my --

8        THE COURT:  You're very scenic.

9        MR. KLEIMAN:  -- colleague's explanation is that what

10  your Honor will not see anywhere in the settlement agreement

11  and release is the signature of any official from the United

12  States on the settlement and release.  They did not sign the

13  settlement agreement.  What they have done is say, "We are

14  releasing the claims that Ven-A-Care made in their complaint."

15       THE COURT:  Ah-ha, the plot thickens.  So you're

16  saying the release --

17       MR. KLEIMAN:  The settlement agreement is not signed

18  by the United States.  The settlement agreement is signed by

19  Ven-A-Care.  The settlement agreement is signed by Baxter.  The

20  United States is not a signatory to this agreement and --

21       THE COURT:  Does that matter --

22       MR. KLEIMAN:  It does matter.

23       THE COURT:  -- once they consent to it?

24       MR. KLEIMAN:  Well, the question then becomes, to what

25  did they consent?  Because the position Baxter is taking here

1    is that Ven-A-Care is able to settle a claim over which this

2    Court had no jurisdiction in the Ven-A-Care case because

3    Ven-A-Care never filed or alleged anything whatsoever about

4    Advate, which would make this a -- this would certainly be a

5    matter of first impression where a relator settles a case for

6    drugs that it never alleged a thing about.  The government is

7    held to that release sub silentio, which is basically the

8    position that Baxter is taking here.

9           THE COURT:  All right, so that's an interesting

10   preview of the argument, which is -- so let's assume for a

11   minute the release releases everything, but the consent is more

12   limited than that.  Is that the legal question?

13          MR. KLEIMAN:  Yes, precisely, your Honor.  The legal

14   question is, what did the United States intend to consent to

15   the release of?  And our understanding is that the United

16   States intended to consent to the release of the claims that

17   Ven-A-Care made in its complaint.  What my colleague's

18   recitation --

19          THE COURT:  All right, so it's a legal question, so

20   that's what you're going to be briefing.

21          MR. KLEIMAN:  Yes.

22          THE COURT:  All right.  And I do think it makes sense

23   for you to brief everything, and then we'll have the reply and

24   the surreply.  But I have to tell you that unless I see

25   something miraculous, Recombinate is not going to survive.  And

1  I just hate to waste people's money on it, so I would urge you

2  to have a sort of heart-to-heart internally about whether it's

3  worth preserving the record on it.

4        MR. KLEIMAN:  I appreciate that, your Honor.  I'm

5  wondering if in light of that, in light of the Court's

6  disposition, it might make sense to address these sequentially

7  rather than doing it in a --

8        THE COURT:  You know, you're only three days away from

9  filing it.  Just do it.

10        MR. KLEIMAN:  Okay.

11        THE COURT:  But I have to say, between the

12  first-to-file, which is a strong argument for Baxter, and the

13  release, which is an overwhelming argument for Baxter, I don't

14  want you to waste your money and your time.  You may need to do

15  it to preserve the record if you decide you want to appeal, and

16  I'm wondering whether we should just focus on the more

17  complicated issue.  But I leave that up to you.  You may be

18  finished, so it may not be extra money for you at this point,

19  and I leave that up to you.

20        MR. KLEIMAN:  Thank you, your Honor.

21        THE COURT:  All right.  Yes?

22        MR. JACKSON:  Briefly, your Honor, this is a

23  non-intervened case.  Ven-A-Care was a non-intervened case.

24  The Justice Department never signs a settlement agreement when

25  they don't intervene.  They consent, and that's precisely what

1    happened here.  That's what the statute anticipates.  So this

2    is the same process that happens on every settlement of every

3    non-intervened case.  And I would just direct your attention to

4    the consent because that's how we bind the government is that

5    consent, and it's broader than discussed today.

6         THE COURT:  Well, I've reached this issue in other

7    AWPs.  You can settle claims beyond the claims in the complaint

8    itself, but when I'm an approving judge in a class action, I

9    want to understand it, and I frequently get objections based on

10   it.  And so I don't know if there's case law on it when there's

11   a release of claims that are far broader than are in the

12   complaint and the government signs sort of a broad consent.  I

13   just don't know the answer to that.  In other words, is that

14   the same as a judge approving it?  I just don't know.

15        MR. JACKSON:  There is a provision, your Honor, under

16   the statute.  When the Justice Department settles a case over

17   the objection of a relator, then there is a situation where the

18   Court decides whether to approve a settlement or not.  But the

19   standard for that approval is tiny compared to the normal

20   standard that you're applying to a settlement in the context of

21   a class case.

22        THE COURT:  I just don't know.  I now understand what

23   the legal question is.  You happen to be lucky because you

24   haven't had the -- Uncle Sam, Mr. Bunker Henderson, is sitting

25   back in the courtroom representing the government, so can I ask

1   you, Mr. Henderson -- I've done this to you before, which is

2   horrible to do, but would you want to be heard on this?

3           MR. HENDERSON:  Your Honor, I'm not knowledgeable

4   enough to comment on the merits of this.  I do have one

5   observation that I bring to the Court's attention, and that is

6   that Baxter has served subpoenas on eleven government carriers

7   for documents, and responding to those would be burdensome.  So

8   if there is going to be sequencing of decision-making that may

9   dispose of some of these issues, these carriers should not be

10  required to spend extensive resources responding to the

11  subpoenas.

12          THE COURT:  Well, why don't you file an appropriate

13  motion to do that, unless you can get agreement of the parties.

14  There may be some discovery deadline that I'd certainly be

15  willing to hold in abeyance when we work through these.  And I

16  understand that you probably don't know, you're not in the

17  weeds of this particular settlement agreement and the consent,

18  but I meant it more broadly.  Do you think that the people who

19  are involved in this from the Department of Justice would like

20  to be heard on this issue of what the consent means?

21          MR. HENDERSON:  I doubt it, but I can ask.

22          THE COURT:  Do we know who it is even?

23          MR. HENDERSON:  I believe Mr. Justin Draycott has

24  responsibility for the Baxter litigation.

25          THE COURT:  Well, if he should, please have him file

1  a -- I guess it would be either a motion to intervene or simply

2  an amicus brief.

3         MR. HENDERSON:  Or a statement of interest.

4         THE COURT:  Or a statement of interest, or however it

5  goes, because otherwise I'll do it without the Department of

6  Justice unless I grant the, you know, the 56(f) affidavit.

7         MR. HENDERSON:  Very well.  And if your Honor does not

8  receive anything, you can assume we will not be filing.

9         THE COURT:  All right.  Can I ask you this so he

10  doesn't have to waste the taxpayer dollar:  Will we agree to

11  stay the subpoenas to the carriers, and I will give you

12  additional time in discovery if such is necessary?

13         MR. JACKSON:  Your Honor, we're happy to stay

14  discovery.  The one problem that I have is if -- discovery is

15  over theoretically at the end of this month?  December 1.  To

16  the extent that the relators want to serve discovery, they've

17  waited until it's too late.  We served discovery consistent

18  with your prior rulings that if we got it out in a timely

19  fashion, and you stay for a while and then you release and let

20  discovery take place.  We're in a position where we should be

21  permitted to continue that discovery if the case continues.

22         THE COURT:  Well, you've already got a placeholder.

23         MR. JACKSON:  Yes, your Honor.  Relators don't, and

24  so --

25         THE COURT:  Well, I don't know if they do if it's over

1    December 1.  I mean --

2            MR. JACKSON:  They filed -- other than some written

3    discovery that we're responding to timely, they have not served

4    discovery on the government, for example, or any of the states,

5    and I don't think it's fair --

6            THE COURT:  Well, can I say, I'm not going to jump

7    into the discovery dispute right now.  I sort of understand

8    where they're coming from, in that at least -- to spend this

9    kind of money on discovery when I could throw them out, I get

10   it.  You're just going to have to do what you're going to have

11   to do.  December 1 is the cutoff, and you have to take care of

12   yourself.  I don't know when I'm going to rule, if in fact it's

13   continuing.  But, you know, I'm not going to start a brand-new

14   discovery period, that's for sure.  So you've got a

15   placeholder.  I'm not going to cut you off from doing it.  I

16   didn't think I was going to back into a whole discovery battle,

17   but I at least want to -- is any of that discovery on

18   Recombinate?

19           MR. JACKSON:  I think it's fair to say all the

20   state -- yes, your Honor, and we're okay with that.

21           THE COURT:  On the other one, I'm just less certain

22   because of that catchall, and there is some concern I have

23   about these cases, you know.  But it may be that they prevail

24   on the, or you prevail, on the merits of the thing if it's in

25   fact as clear as you say it is.  But, in any event, I will wait

1  with anticipation the legal briefs, whatever you want to do.

2  And if you decide you don't want to press the Recombinate, let

3  me know.  Otherwise, we'll rule on that too.  We're pretty far

4  along on the first-to-file issue.  It was the settlement that

5  took me by surprise.

6          MR. KLEIMAN:  It took us by surprise as well, your

7  Honor.  You know, my colleague points out that there is a

8  process by which relators can object to a settlement.  That

9  provision of the law assumes that the relators are notified of

10 the settlement.  The fact that we never heard a word about it

11 until it was finalized I think is at least --

12         THE COURT:  You're not a relator in that case.

13         MR. KLEIMAN:  I beg your pardon?

14         THE COURT:  You're not a relator in the Ven-A-Care

15 case.

16         MR. KLEIMAN:  Yeah, well, that's right, nor is one of

17 our drugs, Advate, part of that case, which is the point we're

18 trying to make.

19         THE COURT:  No, I understand, Advate is a different

20 animal.  Advate is a different animal.  I understand that.  So

21 I'm not putting my stake in the ground on Advate, but I am

22 strongly hinting that Recombinate is in trouble.

23         MR. KLEIMAN:  The only other thing I would add, your

24 Honor, my colleague is correct about the discovery the relators

25 have and have not gotten out.  I am loathe to drag personal

1  matters in here.

2          (Discussion off the record.)

3          MR. KLEIMAN:  Thank you, your Honor.

4          THE COURT:  He's got a personal problem that's

5  interfered with discovery.  You need to, though, take care of

6  it.  You can't I go ignore it by filing a motion of some sort

7  or try and work with counsel on the other side to work on

8  what's going on, rather than just let it lapse, okay?  All

9  right, I'm sorry about your personal situation which must be

10  very difficult.  So why don't I take this under advisement.

11  I'll wait till I get your briefs, and then we'll go from there.

12          Okay, thank you very much.

13          MR. KLEIMAN:  Thank you, your Honor.

14          THE CLERK:  All rise.

15          (Adjourned, 3:46 p.m.)

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

    UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
    CITY OF BOSTON               )
5

6

7           I, Lee A. Marzilli, Official Federal Court Reporter,

8   do hereby certify that the foregoing transcript, Pages 1

9   through 33 inclusive, was recorded by me stenographically at

10  the time and place aforesaid in Civil Action No. 01-12257-PBS

11  and 08-11200-PBS, In Re:  Pharmaceutical Industry Average

12  Wholesale Price Litigation, and thereafter by me reduced to

13  typewriting and is a true and accurate record of the

14  proceedings.

15       In witness whereof I have hereunto set my hand this 12th

16  day of November, 2011.

17

18

19

20

21              /s/ Lee A. Marzilli
                _____
22              LEE A. MARZILLI, CRR
                OFFICIAL FEDERAL COURT REPORTER
23

24

25