# Exhibit H

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: ASTRAZENECA CLASS 1 SETTLEMENT | CIVIL ACTION: 01-CV-12257-PBS<br>Judge Patti B. Saris |

**CLASS PLAINTIFFS' OPPOSITION TO DON HAVILAND'S MOTION TO STAY DISTRIBUTION OF ASTRAZENECA FEE AWARD AND FOR COURT REVIEW OF LEAD COUNSEL'S ALLOCATION OF FEES AND REIMBURSEMENT OF COSTS**

## I.   INTRODUCTION

Having suffered an ignominious defeat in the First Circuit on his errant appeal of this Court's approval of the AstraZeneca Class 1 settlement, Don Haviland now moves the Court for an Order Staying Distribution of the AstraZeneca Fee Award and for Court Review of Lead Counsel's Allocation of Fees and Reimbursement of Costs (Dkt. No. 6809). Contrary to Haviland's contentions, no firms, including Lead Class Counsel, have been paid any fees approved by the Court in association with the AstraZeneca Class 1 Settlement. The reason: Haviland's frivolous appeal of that settlement effectively stayed the distribution of the fee award, just as Haviland's frivolous appeal has precluded distribution of settlement monies to sick and dying class members and to his own clients. If, at the time the fee distribution is made, Haviland is unhappy, he can object then. But Haviland's unsupported motion is premature, the relief that he seeks is unnecessary, and the Court should deny the motion.

has any objection to the amount that he is ultimately allocated, then he can object after the allocation is made, as contemplated by the Court. *See* December 12, 2008, Order (providing that any objections to fee allocations "shall be reviewed on an abuse of discretion standard").

### D. Haviland's Clients Have Not Been Paid Any Incentive Fees Because They Have Not Been Eligible to Receive Any Incentive Fees.

Haviland next complains that his clients have not been paid the incentive fees that have been awarded. This is true, but it is Haviland's own fault that this has not been done. As with all other distributions pertaining to the AstraZeneca Class 1 Settlement, Class Counsel have not distributed incentive fees to any class representatives because of Haviland's appeal. Mrs. Howe will be entitled to receive the compensation award that the Court approved for her at the time the distribution is made, as will the other class representative, Mr. Townsend. Of course, both representatives would have long ago received their awards had Haviland not pursued his frivolous appeal.

### E. No Other Firms Have Been Paid Any Fees From the AstraZeneca Class 1 Settlement.

Haviland contends that other firms have been paid while he has not. Br. at 4. Again, no firms have been paid any part of the fee award approved by the Court for the AstraZeneca Class 1 Settlement. The only *AWP*-related fee distribution made to date was in association with the GSK Settlement, and Haviland's new firm, HLF, was not eligible to participate in that fee distribution, which occurred in October 2008.

### F. The Court Should Disregard Haviland's Continuing Crusade Against Kline & Specter.

Lastly, Haviland contends that his former firm, Kline & Specter, "appears to be inflating its lodestar. . . ." Br. at 4-5. Tellingly, Haviland offers no specific evidence, only speculation. Class Counsel have no reason to believe that Kline & Specter, a former member of the Co-Lead

Class Counsel team, has inflated its lodestar. Indeed, it is difficult to view Haviland's unsupported assertion as credible given the fact that Haviland has litigation pending against Kline & Specter relating to fee splits in several cases.

The facts, ignored by Haviland, are as follows. On June 22, 2007, Marc Edelson submitted a declaration to the Court in support of class counsel's petition for attorneys' fees and reimbursement of expenses in relation to the settlement with GSK. Dkt. No. 4399. In Exhibit 1 attached to his declaration, Mr. Edelson indicated that Kline & Specter had a total of 6,681.75 hours, $2,093,136.25 in lodestar, and $404,180.02 in expenses as of August 10, 2006. These numbers were inaccurate, as they failed to reflect all of the relevant work performed and expenses paid by Kline & Specter that benefitted the certified class in this case. More specifically, Kline & Specter worked on several other, related cases, all of which were eventually consolidated with MDL 1456, and all of which benefitted the class in this case.

On April 16, 2008, Mr. Edelson submitted a second declaration to the Court, this time in relation to the settlement with AstraZeneca. *See* Dkt. No. 5222. In this declaration, Mr. Edelson correctly indicated that Kline & Specter had $3,486,937.32 in lodestar and $602,739.90 in expenses that benefitted the class. These numbers accurately reflected all of the work performed and expenses paid by Kline & Specter in all of the case that benefitted the class and were consolidated in the MDL. Shanin Specter, Esquire, a principal of Kline & Specter, reported the specific breakdown of Kline & Specter's hours, lodestar and expenses in each of the cases handled by Kline & Specter that benefitted the class to Mr. Edelson on December 19, 2006, and again by affidavit on June 13, 2007. *See* Ex. 3 attached hereto.

Tellingly, Mr. Haviland was aware that Kline & Specter had a lodestar of around $3,500,000.00, and was the individual at Kline & Specter who reported that number of

Mr. Specter and was responsible for preparing the time report prior to his discharge from Kline & Specter in September 2006. *See* email correspondence attached hereto as Ex. 4. Quite obviously, Mr. Haviland is attempting to discredit his former employer, with whom he continues to litigate, with no grounds for doing so. He should not be allowed to open a new litigation was with his old firm via the AWP MDL.

## IV.   CONCLUSION

Haviland closes his brief with the statement that "court intervention is required to avoid having the fee dispute become a separate, parallel litigation." Br. at 6. There simply is no fee dispute at this time, as Class Counsel have not allocated or distributed any portion of the AstraZeneca Class 1 fee award. Thus, court intervention is not necessary and frankly as demonstrated above each of his contentions in support of his motion are flat out frivolous.

Further, Haviland's statement is ironic: his motion, filed without any consultation or meet and confer with Class Counsel, seeks "separate, parallel litigation" relating to fees, which courts uniformly frown upon. Having been handed a crushing defeat of his appeal of the Court's final approval of the AstraZeneca Class 1 Settlement, it now appears that Haviland intends to perpetuate his misguided and disruptive objection efforts to the realm of fee awards. That is unfortunate, but Haviland so frequently chooses the unfortunate path of action, and one that unnecessarily taxes the Court's resources.

For the foregoing reasons, Haviland's motion should be denied.

001534-16 345844 V2

# Exhibit 3

**KLINE & SPECTER**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
THE NINETEENTH FLOOR
1525 LOCUST STREET
PHILADELPHIA, PENNSYLVANIA 19102

215-772-1000
FAX: 215-772-1359

Direct Fax: 215-735-0957                                                shanin.specter@klinespecter.com

December 19, 2006

VIA EMAIL & U.S. FIRST CLASS MAIL

Marc H. Edelson, Esquire
HOFFMAN & EDELSON, LLC.
45 W. Court Street
Doylestown, PA 18901

Re:   *In re: Pharmaceutical Industry Average Wholesale Price Litigation*; MDL No. 1456

Dear Marc:

Enclosed please find our firms's time and expense submission from inception through November 30, 2006. Below is a breakdown by case:

| CASE | LODESTAR | EXPENSES |
|---|---|---|
| AWP MDL | $2,129,496.25 | $437,857.67 |
| AWP NJ | $449,198.75 | $47,564.00 |
| AZ AWP | $21,678.75 | $3,366.94 |
| AZ Lupron[1] | $886,563.57 | $113,951.29 |
| TOTALS: | $3,486,937.32 | $602,739.90 |

Very truly yours,

Shanin Specter

SS:ks
Enclosure

---

[1]   Note these figures do not include the amount apportioned to *Swanston in* the Lupron litigation.

P_08769

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATED TO:<br>ALL ACTIONS | Judge Patti B. Saris |

### DECLARATION OF KATHLEEN M. SPURKA

I, Kathleen Spurka, have personally compiled and summarized the attached time and expense records based on my entries and the entries of others at Kline & Specter. This compilation and summarization is correct to the best of my knowledge. In certain instances, I have deleted entries that I felt to be inadequately substantiated.

Date: <u>December 18, 2006</u>

_____
Kathleen M. Spurka

P_08770

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br>Judge Patti B. Saris |

**AFFIDAVIT OF SHANIN SPECTER IN SUPPORT OF
CLASS PLAINTIFFS' JOINT PETITION FOR ATTORNEYS' FEES
AND REIMBURSEMENT OF EXPENSES IN RELATION TO
SETTLEMENT WITH GSK FILED ON BEHALF OF KLINE & SPECTER, P.C.**

I, Shanin Specter, being duly sworn, depose and say:

1. I am a partner of the law firm of Kline & Specter, P.C., one of the counsel for plaintiffs in this matter. I am submitting this Affidavit in support of all plaintiffs' counsel's (including my firm's) application for an award of attorneys' fees and reimbursement of expenses provided in connection with the services rendered to plaintiffs and the class by my firm in the course of this litigation.

2. I am an attorney in good standing and duly licensed and admitted to the Bars of Commonwealth of Pennsylvania; United States District Court for the Eastern, Middle and Western Districts of Pennsylvania; and the United States Courts of Appeals for the Third and Ninth Circuit. The statements set in this Declaration are based on first-hand knowledge, about which I could and would testify competently in open Court if called upon to do so as well as information gathered within my firm by others.

3. This firm was counsel of record for various individual plaintiffs and the class in this litigation and the companion state court litigation. As one of the counsel for the plaintiffs

P_08084

1

and class, my firm performed services on this matter as follows: correspondence, telephone conferences and meetings with the class representatives and many individual consumer class members regarding the status of their claims; preparation for and defense of all depositions of the class representatives; factual discovery including extensive collection of all relevant medical and billing records for the class representatives and hundreds of individual consumer class members; factual and legal research regarding claims of the consumer class; drafting of pleadings relating to the consumer class; and email, telephone and live conferences with co-counsel regarding the claims of the consumer class. Additionally, my firm was involved in document reviews related to claims of the TPP class, and drafted pleadings and attended strategy discussions with co-counsel regarding the same.

4.  Attached, as Exhibit 1, is a detailed summary indicating the amount of time spent by each attorney and paralegal of my firm who worked on this litigation and the lodestar calculation based on my firm's historical billing rates (the rates for each timekeeper that were in effect during this litigation, and when the work was performed). The schedule was prepared from computerized records that were contemporaneously generated and kept by my firm in the ordinary course of its business. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this lodestar.

5.  From the inception of the case through August 10, 2006, my firm expended a total of 11,404 hours on behalf of the various plaintiffs and the class. The total lodestar amount for these hours based on my firm's historical hourly billing rates is $3,449,772.32. The hourly rates set out in Exhibit 1 are the same or similar rates that my firm charged, and collected based upon, and which have been the basis for our fee requests from other courts.

P_08085

2

6. In addition, as detailed in Exhibit 2, my firm expended a total of $568,977.50 in expenses in connection with the prosecution of this litigation. None of these expenses have been reimbursed to date.

7. My firm recorded these expenses as they were incurred, and they are reflected in its computerized bookkeeping records which were created from invoices, receipts and other proofs of the charges and payments.

8. Thus, for this litigation, the total historical lodestar of my firm is $3,449,772.32 and we incurred expenses of $568,977.50.

| CASE | HOURS | LODESTAR | EXPENSES |
| --- | --- | --- | --- |
| AWP MDL | 6,681.75 | $2,093,136.25 | $404,180.02 |
| AWP NJ | 1,284.00 | $448,393.75 | $47,491.77 |
| AZ AWP | 77.00 | $21,678.75 | $3,354.42 |
| AZ Lupron[1] | 3,361.25 | $886,563.57 | $113,951.29 |
| TOTALS: | 11,404.00 | $3,449,772.32 | $568,977.50 |

I declare under penalty of perjury under the laws of the Commonwealth of Massachusetts that the foregoing is true and correct.

Executed this 13th day of June, 2007.

Shanin Specter, Esquire
KLINE & SPECTER, P.C.
1525 Locust Street
The Nineteenth Floor
Philadelphia, PA 19102
215-772-1000 telephone
215-735-0957 facsimile

---

[1] Note these figures do not include the amount apportioned to *Swanston in* the Lupron litigation.

P_08086

3

**KLINE & SPECTER, P.C.**
1525 Locust Street
The Nineteenth Floor
Philadelphia, PA 19102
215-772-1000 telephone
215-735-0957 facsimile

## HOURS/LODESTAR

| CASE | HOURS | LODESTAR |
|---|---|---|
| AWP MDL | 6,681.75 | $2,093,136.25 |
| AWP NJ | 1,284.00 | $448,393.75 |
| AZ AWP | 77.00 | $21,678.75 |
| AZ Lupron* | 3,361.25 | $886,563.57 |
| TOTALS: | 11,404.00 | $3,449,772.32 |

\* Note these figures do not include the amount apportioned to *Swanston in* the Lupron litigation.

# EXHIBIT 1
(Hours/Lodestar)

P_08087