```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS


     IN RE:                         )
                                    )  CA No. 01-12257-PBS
     PHARMACEUTICAL INDUSTRY AVERAGE )
     WHOLESALE PRICE LITIGATION     )  Pages 1 - 35
                                    )




                    TRACK TWO FAIRNESS HEARING

              BEFORE THE HONORABLE PATTI B. SARIS
                   UNITED STATES DISTRICT JUDGE




                        United States District Court
                        1 Courthouse Way, Courtroom 19
                        Boston, Massachusetts  02210
                        November 22, 2011, 2:57 p.m.




                        LEE A. MARZILLI
                    OFFICIAL COURT REPORTER
                 United States District Court
                 1 Courthouse Way, Room 3205
                      Boston, MA  02210
                       (617)345-6787
```

6a8f0717-dff5-4f30-927f-dfb819c488ad

1    A P P E A R A N C E S:

2

3        SEAN R. MATT, ESQ., Hagens Berman Sobol Shapiro, LLP,
     1918 Eighth Avenue, Suite 3300, Seattle, Washington, 98101,
     for the Class Plaintiffs.

4

5        EDWARD NOTARGIACOMO, ESQ., Hagens Berman Sobol Shapiro, LLP,
     55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts,
     02142, for the Class Plaintiffs.

6

7        JOHN A. MACORETTA, ESQ., Spector, Roseman, Kodroff &
     Willis, P.C., 1818 Market Street, Philadelphia, Pennsylvania,
     19103, for the Class Plaintiffs.

8

9        KENNETH A. WEXLER, ESQ., Wexler Wallace, LLP,
     55. W. Monroe Street, Suite 3300, Chicago, Illinois, 60603,
     for the Class Plaintiffs.

10

11       MARC H. EDELSON, ESQ., Edelson & Associates,
     45 West Court Street, Doylestown, Pennsylvania, 18901,
     for the Class Plaintiffs.

12

13       STEVEN F. BARLEY, ESQ., Hogan Lovells, LLP,
     100 International Drive, Suite 2000, Baltimore, Maryland,
     21202, for Amgen Corporation.

14

15       PETER W. MORGAN, ESQ., Dickstein Shapiro, LLP,
     1825 Eye Street, N.W., Washington, D.C., 20006-5403,
     for Baxter International, Inc.

16

17       JAMES W. MATTHEWS, ESQ., K & L Gates, LLP,
     One Lincoln Street, State Street Financial Center, Boston,
     Massachusetts, 02111, for Watson Pharmaceuticals, Inc.

18

19       JAMES P. MUEHLBERGER, ESQ., Shook, Hardy & Bacon, LLP,
     2555 Grand Boulevard, Kansas City, Missouri, 64108-2613,
     for Aventis Pharmaceuticals, Inc.

20

21       J. CLAYTON EVERETT, JR., ESQ., Morgan, Lewis & Bockius,
     LLP, 1111 Pennsylvania Avenue, N.W., Washington, D.C., 20004,
     for Pharmacia Corporation.

22

23       TINA M. TABACCHI, ESQ., Jones Day,
     77 West Wacker, Chicago, Illinois, 60601-1692,
     for Abbott Laboratories.

24

25       SARA JANE SHANAHAN, ESQ., Sherin and Lodgen, LLP,
     101 Federal Street, Boston, Massachusetts, 02110,
     for Sicor, Inc.

1    A P P E A R A N C E S:   (Continued)

2        MICHAEL DOSS, ESQ., Sidley Austin, LLP,
     One South Dearborn, Chicago, Illinois, 60603,
3    for Bayer Corporation.

4        CHRISTOPHER C. PALERMO, ESQ., Kelley Drye & Warren, LLP,
     101 Park Avenue, New York, New York, 10178,
5    for Dey, Inc.

6        ANDREW L. HURST, ESQ., Reed Smith, LLP,
     1301 K Street, N.W., Suite 1100, East Tower, Washington, D.C.,
7    20005, for Fujisawa USA, Inc. and Fujisaw Healthcare.

8    ALSO PRESENT:

9        KILA B. BALDWIN, ESQ., Kline & Specter, PC,
     1525 Locust Street, 19th Floor, Philadelphia, Pennsylvania,
10   19102.

11       ADAM S. LEVY, ESQ., Law Office of Adam S. Levy, LLC,
     P.O. Box 88, Oreland, Pennsylvania, 19075.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  P R O C E E D I N G S

2           THE CLERK:  Court calls Civil Action MDL 01-12257,

3    In Re:  Average Wholesale Litigation.  Could counsel please

4    identify themselves for the record.

5           MR. MATT:  Your Honor, good afternoon.  Sean Matt for

6    class plaintiffs.

7           MR. NOTARGIACOMO:  Ed Notargiacomo for class

8    plaintiffs, your Honor.

9           THE COURT:  Thank you.

10          MR. MACORETTA:  John Macoretta for the class

11   plaintiffs.  Good afternoon, your Honor.

12          MR. WEXLER:  Ken Wexler, your Honor, for the class

13   plaintiffs.

14          MR. EDELSON:  Marc Edelson for the class plaintiffs.

15          MR. BARLEY:  Steven Barley for Amgen.

16          MR. MORGAN:  Peter Morgan for Baxter.

17          MR. MATTHEWS:  Good afternoon, your Honor.  James

18   Matthews for Watson.

19          MR. EVERETT:  Clay Everett for Pharmacia.

20          MR. PALERMO:  Good afternoon, your Honor.  Chris

21   Palermo for Dey.

22          MR. DOSS:  Mike Doss on behalf of the Bayer

23   defendants.

24          MR. MUEHLBERGER:  James Muehlberger on behalf of

25   Aventis.

1          MS. TABACCHI:  Tina Tabacchi for Abbott Laboratories.

2          MR. HURST:  Andrew Hurst for Fugisawa USA and Fugisawa

3     Healthcare.

4          MS. SHANAHAN:  Sara Shanahan for Sicor.

5          THE COURT:  Is that it?  Please be seated.  Is there

6     anyone here who has filed an objection?

7          MS. BALDWIN:  Kila Baldwin from the law firm of Kline

8     & Specter.  I was here on the motion for modification of lead

9     counsels' allocation of fees, which it's my understanding that

10    it's not ripe at this time; they haven't had the opportunity to

11    respond.  And it wasn't styled as an objection, it was styled

12    as a motion, but I am here.  I wanted to enter my appearance.

13         THE COURT:  So I'm not understanding because I'm

14    actually just seeing it for the first time.  So it's about

15    attorneys' fees but not about the substance of the settlement,

16    is that correct?

17         MS. BALDWIN:  Correct.  It's about the allocation of

18    attorneys' fees among counsel.

19         THE COURT:  Okay, all right, that is something I do,

20    but that's not really -- let me, if I can, hold on that for a

21    second.

22         MS. BALDWIN:  Absolutely, your Honor.

23         THE COURT:  And is there anyone here who has filed an

24    objection to the class settlement?  I note for the record that

25    certain objections have been withdrawn.  For the record, which

1    ones are those?

2          MR. MATT:  Your Honor, Sean Matt again for the

3    plaintiffs.  The ones that have been officially withdrawn are

4    Docket No. 7852, Mr. Iglesias.

5          THE COURT:  So let me just get this.  Say it again.

6          MR. MATT:  Docket No. 7852, Mr. Iglesias, the

7    objection has been resolved and withdrawn.

8          Docket No. 7917, that's Nancy Wildes on behalf of her

9    father, Robert Wildes.  That has been resolved and withdrawn.

10          Mr. William Fairey, Docket No. 7842, that objection

11    has been resolved.  He's not submitted anything to the court

12    withdrawing it, but we don't think he's going to.  He's pleased

13    with the resolution, I can report, your Honor.

14          Carol Geiselhart, Docket No. 7854, that objection is

15    also resolved, and we believe that she is pleased with the

16    resolution.

17          Phyllis Granat, Docket No. 7840, that one is resolved.

18          Cynthia Schubert, Docket Nos. 7883 and 7841, we

19    assisted this class member with obtaining the documentation

20    necessary to determine that she was a member of Class 1 and

21    also to substantiate the drug administrations.  Mr. Schubert,

22    who I talked to, they're still considering whether they want to

23    submit a late request for exclusion, so I can't tell you that

24    it's a resolved issue, but we just haven't heard back.

25          That leaves, your Honor, objection from Juanita

1    Bethune, who had objected to the attorneys' fees.  We don't

2    believe that's a valid objection.  The objection is that we're

3    permitted during the rebalancing notice, were objections to be

4    limited solely to revisions to the settlement, and the

5    attorneys' fees was not part of the revision.  That is an

6    objection that should have been made months ago, and we believe

7    that that's not a valid objection because it's tardy.

8           And then we have two more objections --

9           THE COURT:  Say that again.  So Bethune didn't file

10   something with this court.

11          MR. MATT:  Correct.  The objection is also invalid

12   because he didn't follow the proper procedures.  He sent the

13   objection to the claims administrator, and it filtered its way

14   to us.

15          THE COURT:  Have I seen it?  Did you submit it?

16          MR. MATT:  I don't know if we have submitted it to the

17   Court.  I don't think we have, other than just putting it on

18   the chart that we submitted with Document No. 7918.  I'm sorry,

19   I didn't hear your question, your Honor.

20          THE COURT:  And you think it's only to the amount of

21   the attorneys' fees?

22          MR. MATT:  Correct.

23          THE COURT:  Because what did we do?  We put in the

24   percentage, is that what we did?

25          MR. MATT:  We asked for 30 percent, and your Honor has

1    indicated that your preference would be 28 percent on the

2    consumer portion and then 30 percent on the --

3              THE COURT:  All right.

4              MR. MATT:  We put in the notice we would apply for up

5    to 33 1/3.

6              THE COURT:  And so that's what he was objecting to?

7              MR. MATT:  Correct.

8              THE COURT:  Up to the 33 percent?

9              MR. MATT:  Correct.  Again, it should have been made

10   months ago when the original notice --

11             THE COURT:  But, in any event, it's not 33 percent.

12   Was he objecting to any?

13             MR. MATT:  He just said the fees are too high in

14   relationship to the amount of the award, of the settlement

15   itself.  It was a very short one-paragraph objection.

16             Another objection from Margaret Wild, Docket No. 7830.

17   She was objecting to providing documentation supporting

18   administration of drugs assigned the unclassified J-Code.  We

19   sent her a letter explaining why the documentation was needed.

20   We left a voicemail for her as well to try and help out, and we

21   haven't heard back from her at all.  So either she is satisfied

22   with the explanation or she's not, and she's just not --

23             THE COURT:  So Ms. Wild?

24             MR. MATT:  Ms. Wild, yes, W-i-l-d.

25             And then, lastly, there was an objection submitted by

1    a man named Todd Ivey, who was asking why the original

2    co-pay-based method for calculating the Group A drug recovery

3    was replaced with the damage-based method.  We've provided a

4    letter explaining why this change was made, basically to tie

5    the Class A drug recovery to actual damages as we've done in

6    prior settlements.  We've not heard back from Mr. Ivey, so we

7    don't know if the explanation satisfies his question.

8         THE COURT:  So we potentially have -- were these three

9    people operating pro se?

10        MR. MATT:  They were.  There's no indication that

11   they're represented by counsel.

12        THE COURT:  All right.  Now, there were various

13   objections that -- I'm assuming no one here is one of those

14   three people, is that right?  That's Bethune, Wild, or Ivey.

15   All right, some of those came to the court, and we forwarded

16   them on.

17        All right, so there were other objections that were

18   withdrawn; for example, by Mr. Haviland and various others

19   represented by counsel.

20        MR. MATT:  That's correct, so the withdrawn objections

21   from the original notice of settlement that went out are:  Don

22   Haviland's clients have withdrawn.  You've granted that motion

23   to withdraw their objections.

24        THE COURT:  Right.

25        MR. MATT:  John Pentz, his client, who is his father,

6a8f0717-dff5-4f30-927f-dfb819c488ad

1    has withdrawn his objection.  Patricia Weatherly, who is

2    represented by Richard Landrigan, has recently withdrawn her

3    objection.  And Mr. Wilson, I can't remember who is

4    representing Mr. Wilson, but his objection has been withdrawn

5    as well.  So that leaves one objection.

6             THE COURT:  From the initial settlement?

7             MR. MATT:  From the initial set represented by a

8    counsel.  That's Corinna Connick, and we're embroiled in a

9    substantial dispute with her as you --

10            THE COURT:  Because she thinks she should have been in

11   the class, right?

12            MR. MATT:  She did.  She didn't take a class drug.

13   It's clear, your Honor has found that she didn't take a class

14   drug.  And she has filed a pro se appeal, purportedly pro se --

15   I'll come back to why it's purportedly --

16            THE COURT:  But how could she appeal?  I haven't done

17   anything yet.

18            MR. MATT:  She filed an appeal from your order denying

19   her motion to intervene.

20            THE COURT:  I see.  How long ago was that filed?

21            MR. MATT:  That was filed five or six weeks ago.

22   She's already missed her docketing deadline in the First

23   Circuit.  We have noted her deposition because we want to know

24   whether she has the ability to post a bond, and we also want to

25   know whether she's truly proceeding pro se.  We have since

1    learned that she's really not, and that the lawyer that

2    represented her here, a guy named Ed Cochran, by all

3    appearances has ghost written, in a derogation of First Circuit

4    rules, the opposition to the bond motion that we filed.

5         We tried to take her deposition.  She failed to

6    appear.  And in fact the deposition was going to be taken by my

7    co-counsel, Ken Wexler; and Corinna Connick's husband has now

8    sued Ken Wexler in the Northern District of Ohio to quash the

9    deposition notice.  So the appeal itself is frivolous in the

10   extreme.  Here we have a person who's not a class member who

11   wants to be part of the settlement that she feels is deficient.

12   Your Honor, for lack of a better expression, it's a shakedown.

13        THE COURT:  It's on appeal, so there's nothing I can

14   do with it, right?

15        MR. MATT:  Well, we have filed a motion to impose a

16   bond, an appellate bond, similar to what you did when you

17   approved the GSK settlement.

18        THE COURT:  What's the timing usually of that?

19        MR. MATT:  I believe the briefing is complete on that,

20   your Honor.  We filed a motion.  They filed their opposition on

21   Friday, and then we filed leave to file a supplemental brief

22   yesterday, which your Honor granted yesterday, and we filed

23   that brief.  So the briefing itself is closed.

24        The timing of the appeal is that if that appeal goes

25   forward, defendants will take the position that we don't have

1    the effective date and finality under the settlement.  So it

2    will hold up distribution of the settlement for at least twelve

3    months, and for that reason, we filed a motion for imposition

4    of a bond because we've documented quite clearly that there is

5    going to be at least $196,500 in additional administration

6    costs caused by that appeal.

7            THE COURT:  I'm concerned that they view the amount as

8    being punitive to an extreme that no person could afford it,

9    especially the kind of -- who's Ms. Connick?  Is she an old

10   person?

11           MR. MATT:  No.  She's married to an attorney, a

12   practicing attorney in Cleveland, who just appeared on her

13   behalf Friday.

14           THE COURT:  Is anyone here for Ms. Connick, any of the

15   attorneys?  No.

16           So she's putting all her eggs in the motion to

17   intervene because she's not part of the class right now.

18           MR. MATT:  Correct, which again underscores frivolity.

19           THE COURT:  Since I don't have her -- well, I don't

20   have her -- she hasn't filed an appeals brief yet?  It's hard

21   to figure out what the -- what's the challenge, that I abused

22   my discretion in not allowing her to intervene?  Is that it?

23           MR. MATT:  Correct.

24           THE COURT:  And have you explained in your briefs,

25   since I haven't really gotten to it, why it is that she just

6a8f0717-dff5-4f30-927f-dfb819c488ad

1  clearly doesn't have a class drug?

2       MR. MATT:  We did, and you agreed and said as much in

3  your order denying the intervention.  But in a nutshell --

4  actually, not a nutshell.  I can explain the whole thing.  That

5  is, it's Climara.  It's not listed in any complaint.  The drug

6  that she took is Climara.  It's not listed in any complaint.

7  It's not on the class drug list.  It was never a part of the

8  litigation.  It's not part of the settlement release.

9       THE COURT:  Is it an equivalent generic drug?

10      MR. MATT:  A generic version of Climara is estradiol,

11  and it is part of the case.

12      THE COURT:  So that's what she's upset about, the

13  brand name?

14      MR. MATT:  The brand name is not; the generic was.

15  It's just not part of the case.  We never did any discovery on

16  it.  It's clear, the record is clear, crystal clear it's not

17  part of the case.

18      THE COURT:  So what are they arguing on appeal, that I

19  erred in not expanding it to include that drug?

20      MR. MATT:  Her argument is that, against all the

21  evidence, of course, that it is a class drug.

22      THE COURT:  Do I have evidence of that other than it's

23  not listed?

24      MR. MATT:  There's no evidence whatsoever that it is a

25  drug that's covered by the settlement or was ever in the

1   litigation.

2          THE COURT:  All right, so I'm hoping that that's all

3   in there because if I have to write an opinion, you can't just

4   say, "I impose a bond."  And so explain to me what the amount

5   would be again?

6          MR. MATT:  So the amount would be -- and this is, just

7   for your understanding, the amount is high, but it's not set to

8   be punitive.  It's set to be recoverable costs that are

9   authorized by the Rules of Appellate Procedure and by case law.

10  It's $196,500 for extra administration costs.  We have

11  submitted an evidentiary foundation for that in the form of --

12         THE COURT:  Well, why would it be extra?

13         MR. MATT:  Here's why.  Dan Coggeshall submitted a

14  declaration explaining this, so it's in the record.  The

15  settlement administrator, if this thing gets put on hold for

16  twelve months, still has to work it.  And what they have to do

17  is, they have to respond to a large volume of calls from class

18  members, calls that will increase as time goes on, people

19  wondering where their money is.  They get calls all the time.

20  They're going to have to continue to field those calls over the

21  next year, and the problem is, the volume of those calls will

22  increase substantially as time goes on.

23         THE COURT:  That just seems like too high because you

24  have to have them in place anyway as you're distributing the

25  money.  So I'm just trying to figure out what a fair amount is.

1          MR. MATT:  Well, if they don't have to respond --

2     well, they still have to maintain the website, they still have

3     to maintain the P.O. box number, but the bulk of the expenses

4     are associated with answering the telephone for those calls,

5     and --

6          THE COURT:  But they still have to do that in the next

7     year, don't they?

8          MR. MATT:  No, because the settlement will be -- if we

9     achieve finality, okay, that will happen, if you sign an order

10    in the next week, that will happen the end of December.

11         THE COURT:  I am going to sign an order, and as far as

12    I'm concerned, I don't see why you can't distribute it.

13         MR. MATT:  We can hear from defendants on that, but I

14    think there's an effective date that they may take the position

15    is not met unless all appeals have been resolved.

16         THE COURT:  Have you looked it up?

17         MR. BARLEY:  I've looked at the settlement agreement,

18    and the definition of what is final is when the litigation is

19    over, including all appeals.  I can read it if I can find it.

20         THE COURT:  So this isn't really an appeal of the

21    settlement.  It's an appeal of the denial of the motion to

22    intervene.

23         MR. MATT:  Let me clarify that.  That's correct, but

24    she also objected to the settlement.  That's what's coming next

25    if she was allowed to intervene, okay.  She still has an

6a8f0717-dff5-4f30-927f-dfb819c488ad

1   objection out there to the settlement.

2          THE COURT:  I see.

3          MR. MATT:  And so, you know, presumably she's going to

4   appeal that once you sign the final approval order.

5          MR. BARLEY:  And we obviously don't want the money

6   distributed until we're sure that that's the end of it.

7   "Final" is defined in the settlement agreement:  "Final or

8   final approval of this agreement means that the time has run

9   for any appeals from a final approval order of the MDL court or

10  any such appeals have been resolved in favor of this

11  agreement."

12         THE COURT:  That's a little vague on this

13  circumstance.

14         MR. MATT:  We're all in favor of distributing --

15         MR. BARLEY:  -- I think was not to distribute the

16  funds until it was clear that it wouldn't be attacked in any

17  way collaterally or on appeal or whatever, you know, that we

18  had a bulletproof final judgment.  I think that's in

19  everybody's best interests.  I mean, we're as anxious as

20  anybody to get this over with and everything.  We just want to

21  make sure that there's not anything hanging out there, your

22  Honor.

23         THE COURT:  Thank you.  But how long do you think you

24  have to keep this place open, even if she didn't appeal?

25         MR. MATT:  Well, if she didn't appeal, then I think

1    you're looking at time to distribution from final finality.  If

2    that's the end of December, it would be April to May that they

3    actually have to -- it will take them that long to process

4    everything and make sure that all the deficient claims are

5    cured that are going to be cured, et cetera.  So I think it's

6    probably three to four months to get the checks out.

7            THE COURT:  So you'd have to keep it open anyway.

8            MR. MATT:  That's correct.

9            THE COURT:  And so you're saying they can be doing

10   that anyway because the odds of this succeeding are pretty low.

11   So the extra amount of time would be what if it's --

12           MR. MATT:  Let's call it eight months.  That's if the

13   First Circuit rules within twelve months, and, of course,

14   there's no guarantee of that.  It could be longer than twelve

15   months.  We just had the claims administrator do a declaration

16   based on a twelve-month delay.  It could be longer.

17           THE COURT:  I will be imposing an appeal bond, but I

18   don't know how much.

19           MR. MATT:  Okay.

20           THE COURT:  And I don't know how long it will take me

21   to write it up, and so -- I actually shouldn't even say that

22   because I haven't read her opposition yet, but I do think it's

23   a frivolous appeal.  So unless she persuades me that there's

24   something that I didn't catch last time around, that's where

25   I'm likely to go.

1        Anyway, why don't you file your motion, assert your

2    motion.  I pretty much know this case.  I was hoping for sort

3    of a summary for the record all in one place of what the final

4    settlement is.

5        MR. MATT:  And we have filed already a proposed final

6    approval order.  That was filed a couple of years ago, and some

7    things have changed since then, so we're filing --

8        THE COURT:  Right, I was hoping I was going to get

9    that actually.

10       MR. MATT:  Yes, we actually should have by now at

11   3:15, hopefully my legal assistant has sent a red-lined version

12   of that to defendants for them to review.  Our goal was to file

13   that with your Honor tomorrow with the opt-outs.  We have to

14   attach all the opt-outs to it so that they're not bound by the

15   order.

16       THE COURT:  Tomorrow is the day before Thanksgiving.

17   I'm just trying to figure out, what's taken so long here?

18       MR. MATT:  We had to gather all the opt-outs, and they

19   keep coming in.  Even though the opt-out deadline was the end

20   of October, if they come in a little bit late, we tend to honor

21   them.

22       THE COURT:  All right, so in this memo -- I would

23   rather have it after Thanksgiving if it's more complete -- what

24   I would like is a complete summary because we kept changing

25   this because I wasn't happy with it.  And I took very

1   detailed -- paid very close attention, as did everyone in this

2   room, to how we allocated among the groups and among the drugs.

3   And how many times did we change it?  Was it twice or once?

4          MR. MATT:  Well, there were three different proposals,

5   but it's only changed once, and that was what was contained in

6   the notice that went out to the --

7          THE COURT:  That's the notice that finally went out,

8   that's right, because before it was all in the preliminary

9   approval phase.  And so just I think in one place, especially

10  if it goes up on appeal, a complete explanation of how much

11  money there is, and why we allocated it to one pot rather than

12  another pot, and what the principled basis was for doing that

13  because we did go through this in extensive detail.  And I

14  think you probably should also put forward, procedurally

15  speaking, to the extent that it's similar or dissimilar to the

16  way we did other settlements and why.  And perhaps you could

17  also put in a paragraph so that they understand it about which

18  drugs were included, where you find that, and list them so that

19  they can see in an attachment, because this docket is

20  impossible for an appellate court to follow, as we all know by

21  now, so we'll have in one place where everything is.  Is that

22  essentially what you were planning on giving me?

23         MR. MATT:  It is, your Honor.  Actually, most of what

24  you just said is already in the draft we sent the defendants,

25  but we will add a few more things.

1    THE COURT:  I have my law clerk, who's brand-new and

2    has to navigate that horrible docket, it's so complicated, I

3    said, "Are you sure it's not there?  Are you sure it's not

4    there?"  And he gave me all these old memos that were, you

5    know, submitted that are partly correct and partly not and that

6    sort of thing.  It would be useful as well, if somebody were

7    going to challenge the attorneys' fees, to explain the other

8    litigation and what we've been paying and that sort of thing.

9    MR. MATT:  Sure.

10   THE COURT:  So did defense want to file something as

11   well?

12   MR. BARLEY:  It sounds like what Mr. Matt planned on

13   doing was to send us a draft.  To the extent we can agree on

14   something jointly, I think it's in everybody's interest to do

15   that.  We'll take a look.  If we have an issue, we'll try to

16   work it out or submit something separately.

17   THE COURT:  All right, can you file this all within a

18   week?

19   MR. MATT:  Absolutely, your Honor.

20   THE COURT:  All right, that's fine.

21   MR. MATT:  We still may be able to file tomorrow, but

22   if not, we'll do it next Monday.

23   THE COURT:  Tomorrow is the day before Thanksgiving.

24   I am not reading it over the weekend.  Let me make it crystal

25   career.  I've waited -- how many years has it taken to get this

1    done?

2         MR. MATT:  Ten.

3         THE COURT:  It's not going to be on Thanksgiving Day

4    for me.  So I appreciate it, it's a great gift if you get it

5    tomorrow, but I don't want anyone spending the night.  Most

6    people are probably going home tomorrow, right?

7         MR. BARLEY:  We'll file it next week then.

8         THE COURT:  They're doing, like, family good things.

9    So I don't want some associate up till 3:00 in the morning

10   trying to -- or a partner.  Just it's not worth it.  A week

11   from now is fine, all right?

12        THE CLERK:  12/2?

13        MR. BARLEY:  Your Honor, could we have until the end

14   of next week, only because we've got a number of parties, and

15   we have to consult with our clients and make sure they're on

16   board with everything.

17        THE CLERK:  12/2.

18        MR. BARLEY:  12/2?  Thank you, your Honor.

19        THE COURT:  The only thing, you're going to get it to

20   them by tomorrow.

21        MR. MATT:  Yes.

22        THE COURT:  No one there, though, will be required to

23   spend Thanksgiving looking at it.  I will get it by Friday.

24   After ten years, we can handle the week over Thanksgiving.

25        Okay, in the meantime, there is apparently -- unless I

1    hear something that I don't otherwise expect, no one's been

2    objecting here.  As far as I'm concerned, anything is untimely

3    at this point except for this issue of attorneys' fees and

4    allocation.  And why don't you, could you please -- I forget

5    your name already.

6           MS. BALDWIN:  Sure.  Kila Baldwin, Kline & Specter.

7           THE COURT:  And what's the problem?  Why don't you

8    come up.

9           MS. BALDWIN:  Sure.

10          THE COURT:  Come on up.  You're from Philly?

11          MS. BALDWIN:  Yes, I am.

12          THE COURT:  Well, welcome.  What's the problem here?

13          MS. BALDWIN:  We filed a motion, and it was just filed

14   last week.  I believe it was the 17th or the 18th, so they, in

15   all fairness, haven't had a chance to respond, but it deals

16   with, we're seeking a modification of the way they, I believe,

17   intend to allocate the attorneys' fees in this case.  Kline &

18   Specter along with the other signatories to our motion, which

19   would be Kent Williams of the Williams Law Firm and Jennings,

20   Haug & Cunningham, did a significant amount of work in the

21   state AWP actions before those claims were dismissed, and we

22   would like an allocation that includes compensation for the

23   time and expenses in those state court actions.

24          THE COURT:  I have to admit I am so confused because I

25   have so many AWP cases.  Were these cases that I had remanded?

1   Why are the state cases relevant to this?  Did they get

2   dismissed in light of the federal case?

3          MS. BALDWIN:  They were dismissed in light of the

4   federal case.  It was actually your order saying that the

5   coordinated state court actions be dismissed.  And we did that

6   with the understanding that we had in place with lead counsel

7   at the time that our state court work would be compensated in

8   this federal MDL, and it appears as though lead counsel --

9          THE COURT:  Was that ever put in writing?

10          MS. BALDWIN:  There are e-mails evidencing that, and

11   they're attached to the affidavit of Kent Williams which was

12   filed in support of our motion.

13          THE COURT:  And so I don't know how much 38 percent

14   comes up to, but have you talked through, tried to negotiate

15   this?

16          MR. MATT:  Your Honor --

17          THE COURT:  I didn't mean 38 percent, although your

18   heart may have just leapt for joy.

19          MS. BALDWIN:  We're not seeking 38 percent.

20          THE COURT:  28 and 30 percent.

21          MR. MATT:  The motion was just filed last week.  They

22   certified that they met the local rule requirement by having a

23   meet-and-confer with us.  That is false.  They did not.  We

24   were completely blindsided by the motion.  We're, quite

25   frankly, very upset by it.  We have a response deadline of I

1    believe Thursday or Friday of next week.  We'll be putting in a

2    substantial opposition.

3              In summary, your Honor, without arguing the motion --

4    I don't want the bell to go unrung -- there was never an

5    agreement signed by class counsel with Mr. Shannon's (Sic) firm

6    to pay any of the costs or time in these other cases.  And to

7    be clear, they're trying to claim time here not just in AWP

8    cases, for work done in other cases that weren't part of this

9    case, but also for a Lupron case that certainly was never part

10   of this case.

11             THE COURT:  No, that wouldn't be successful here, but

12   the other cases --

13             MR. MATT:  And one of them is for time spent on their

14   New Jersey case, which served as the predicate for your Honor's

15   disqualification of Don Haviland.  Just so that you know, the

16   Specter --

17             THE COURT:  I understand, but they're claiming that

18   they dismissed in reliance on a promise to pay.

19             MR. MATT:  They did not dismiss those cases.  They

20   were continuing to prosecute them.  I think they're probably

21   still prosecuting them.  I don't know what the status is of

22   them.  We're not involved in them.

23             THE COURT:  So I think these are things that you all

24   need to talk about.

25             MS. BALDWIN:  Your Honor, just for the record and so I

1    can be clear, I made several phone calls to Mr. Edelson who's

2    here today about this subject, and Mr. Specter of my office

3    sent several letters along these lines, and they have been

4    ignored by lead counsel, which is why our filing was necessary.

5             THE COURT:  Well, let me say just this:  I am not

6    going to hold up the settlement based on it, but I will hold up

7    the payment of attorneys' fees.

8             MR. MATT:  That's correct, your Honor, this has

9    nothing to do with actually enacting the Track Two settlement.

10            MS. BALDWIN:  I agree with that, your Honor.

11            THE COURT:  And so how much money do you think you're

12   owed collectively, this group of firms?

13            MS. BALDWIN:  Collectively?  One second.  I actually

14   gave your clerk, I believe it is, my copy of the motion, but I

15   believe I did the math, and --

16            THE COURT:  Well, why don't I give it back because I'm

17   sure we can download our own.

18            MS. BALDWIN:  I think we have it here as the total

19   lodestar we're seeking among all the signatories to our motion

20   to be $2,335,575.89 and the total expenses to be $195,210.79.

21            THE COURT:  And is that just for AWP litigation

22   involving these drugs?

23            MS. BALDWIN:  It's for the AWP case that was in

24   New Jersey, the Local 68 Operating Engineers.

25            THE COURT:  Is that still ongoing?

1      MS. BALDWIN:  The majority of the claims have been

2   dismissed.

3      THE COURT:  In light of this case?

4      MS. BALDWIN:  In light of this case.  Your Honor

5   entered orders -- I believe I can give you approximate dates.

6   Well, around November of 2007 and March of 2009, the majority

7   of the claims in those cases were dismissed because of orders

8   entered here.

9      MR. MATT:  Those may have been as part of settlements.

10  I'm just not familiar with it, your Honor.

11     MS. BALDWIN:  And, your Honor, as part of the

12  settle- --

13     THE COURT:  Did you get money from those?

14     MS. BALDWIN:  No, your Honor.  We didn't seek any fees

15  in any of those cases, with the understanding that we had with

16  lead counsel that we would be compensated here.

17     THE COURT:  Who's lead counsel?

18     MS. BALDWIN:  I believe the majority of our dealings

19  were with Mr. Edelson, but it was members of the Fee Committee.

20     THE COURT:  Well, this may turn seemingly unfortunate

21  if in fact it turns into depositions and fact disputes over

22  whether or not there was a binding oral agreement.

23     MS. BALDWIN:  There was an e-mail exchange between

24  Shanin Specter of my office and Steve Berman and Tom Sobol

25  dated October 15 of 2005.  That's attached as Exhibit A to

1    Mr. Williams' memorandum and --

2              THE COURT:  What did Mr. Berman say or Mr. Sobol?

3              MR. MATT:  Those e-mails, your Honor -- I've reviewed

4    them briefly -- they are negotiations.

5              THE COURT:  Well, I don't know.

6              MR. MATT:  And there is no agreement.

7              THE COURT:  I say, at the end of this day, won't we be

8    sorry campers if it takes me another two years to figure out

9    the attorneys' fees issue by sitting here and either doing a

10   master's hearing or a magistrate judge's hearing or me myself

11   holding a little trial?  I think it's worth trying to figure

12   out.  Why do you think you get lodestar?  I don't even give

13   them lodestar.

14             MS. BALDWIN:  Well, your Honor, the point is, we want

15   some allocation for the state time, and I'm just giving you

16   what our total lodestars are; but right now it appears as

17   though lead counsel wants to subtract out all of our work for

18   the state time, so I'm telling you what our lodestar and

19   expenses were in those cases.

20             THE COURT:  And just on these drugs, or is it on the

21   whole litigation?

22             MS. BALDWIN:  It would be in each of those state court

23   actions.

24             THE COURT:  I wouldn't do that either because it's

25   only the drugs that we're talking about here.

1      MS. BALDWIN:  Well, the drugs that we were -- we

2  adopted a strategy with the lead counsel to conduct discovery

3  in those cases for the benefit of the class here, and lead

4  counsel has put in pleadings with this court --

5      THE COURT:  But I wouldn't pay you a penny, let me

6  just say this, out of this class money unless it involves the

7  drugs involved in this case and there was some value added.

8      MS. BALDWIN:  I understand, your Honor, and --

9      THE COURT:  So it can't be some drug that's not part

10  of my class approval.

11      MS. BALDWIN:  I understand, your Honor, and lead

12  counsel has submitted in filings with this Court that our state

13  court work was of value to members of the class, it was

14  authorized by them, and that it actually did benefit the

15  members of the class.

16      THE COURT:  Did it benefit the members of the other

17  classes you're pursuing as well?

18      MS. BALDWIN:  No, your Honor.  Those claims have

19  virtually all been dismissed for the sake of the class members

20  here.

21      THE COURT:  Well, this is a mess, as you can imagine,

22  and it will end up holding up these attorneys' fees; but I am

23  not holding up this class settlement, and I will be imposing an

24  appeal bond.  This case has taken way too long, way too long,

25  and these people need this money.  As you pointed out, some

1    class reps have died already; and some people are not very

2    sick, but there are a lot of people who are very sick, and I

3    want the money out.  And I'm trying to figure out what to do in

4    terms of alerting the -- have you had success, any of the

5    parties here, in alerting the First Circuit to how important it

6    is not to take a year?  Is there a way of expediting the

7    appellate process through a motion?

8              MR. MATT:  My recollection is, we did try that in GSK,

9    and it was denied.

10             THE COURT:  A motion to expedite?

11             MR. MATT:  Yes.

12             THE COURT:  I think you have a lot of judges on the

13   First Circuit who, unfortunately for them, are now very

14   familiar with this litigation.

15             MR. MATT:  We can try again.

16             THE COURT:  It may be worth the effort if everybody

17   here signed onto it.  That's not the attorneys' fees piece.  So

18   let me just ask you this.  I've got these motions.  I've heard

19   enough to know that it's going to take a while.  Does it make

20   some sense to do depositions?  Do you want me to refer it to a

21   magistrate judge for fact finding?

22             MR. MATT:  Let's keep it here for now, your Honor.  We

23   haven't started writing our opposition brief yet.

24             THE COURT:  It's in everyone's interest to move this

25   along quickly.  And I don't know if you know, but, as you know,

1    I now have a job in Washington as well.  I'm now carrying two

2    jobs, and it's just not going to be quick.  I don't have time

3    to even slot you in.

4         MR. MATT:  Understood, your Honor.  Another thing we

5    can do is, we can set aside the amount that's in dispute and

6    perhaps do another attorneys' fee distribution.  So there's

7    ways to --

8         THE COURT:  If you do my percentages and this number,

9    how much money are you entitled to?

10        MR. MATT:  For Track Two settlement?

11        THE COURT:  Yes.

12        MR. MATT:  I can tell you exactly actually.  If you

13   sign onto the order, there will be $37 million for Track Two.

14        THE COURT:  Well, so why don't we just, you get paid,

15   I don't know, assuming -- we still have the appeal issue.  Once

16   the appeal is finalized, you'd get all but whatever they're

17   asking for in attorneys' fees and expenses, and I hold that in

18   escrow in the court, because you're getting a lot of money.

19        MR. EDELSON:  Your Honor, as Mr. Matt pointed out, the

20   majority of money they're seeking is for an Arizona state

21   Lupron case, which has nothing to do with this at all.

22        MR. MATT:  Lupron was never at issue in this case.

23        THE COURT:  Right, so that would go away.

24        So are you pressing Lupron money?

25        MR. EDELSON:  Yes.

1          MS. BALDWIN:  Well, your Honor, if you're going to say

2     that's going away, that's fine, but what's really important to

3     us would be the coordinated AWP actions, which would be the

4     ones filed -- in Arizona there was an AWP action, and in New

5     Jersey there was an AWP action, and we have a plethora of

6     e-mails between the signatories and lead counsel on the

7     strategy.

8          THE COURT:  That may be, but on this class that I

9     fought so hard to get just right, I am not going to be

10    providing attorneys' fees for drugs that were not involved in

11    this litigation.

12         MS. BALDWIN:  Understood, your Honor.

13         THE COURT:  If there's a way of allocating drugs

14    involved in this litigation, and if there was some sort of oral

15    understanding, or misunderstanding, whichever way it goes, and

16    you dismiss, which is they're relying to their detriment -- I

17    know these firms.  I know your firms.  You don't just dismiss

18    without some quid pro quo.  You just don't.  They must have

19    understood something was about to happen.  And so if you carve

20    off Lupron, if you carve off other drugs that aren't involved

21    with this, and any money, you know, for drugs that are still

22    poking along in New Jersey, there may be a basis for a

23    settlement.  Otherwise, I'll take your -- why don't you -- it's

24    3:30.  Do you want this courtroom?  Sit and schmooz and try and

25    figure it out.

1    MS. BALDWIN:  Your Honor, I think that they should be

2  entitled to the right to respond, and I think that perhaps the

3  attorneys talking might be the first step.

4    THE COURT:  Well, both, but I'm simply saying, you are

5  both going to spend a long time waiting for this.  But I am

6  telling you, at least unless I see it differently -- I haven't

7  read your motion yet -- it's only going to be for drugs

8  involved in this litigation.

9    MS. BALDWIN:  I understand, your Honor, and many of

10  these drugs were in this litigation, and lead counsel

11  understood that our work was to benefit the class members of

12  this litigation.

13    MR. MATT:  We dispute that, your Honor, but we'll

14  brief it.

15    THE COURT:  Yes, you will, and then it's going to take

16  a lifetime.  But, then again, you may be waiting for the appeal

17  anyway, so, so be it.

18    MR. MATT:  We've heard you loud and clear.  Thank you.

19    THE COURT:  Okay.  Did you want to say something?

20  You're sitting there poking up every once in a while.

21    MS. BALDWIN:  Your Honor, there was a joinder to our

22  motion filed by Mr. Levy.

23    MR. LEVY:  I just wanted to get that on the record,

24  your Honor, because my name wasn't mentioned.  My name is Adam

25  Levy.  I had filed a --

1       THE COURT:  Where are you from?

2       MR. LEVY:  Where am I from?  I'm from outside of

3  Philadelphia, your Honor.

4       THE COURT:  I recognize that accent.  Okay.

5       MR. LEVY:  I've actually been here, and one of the

6  witnesses that I helped prepare testified here in the BMS

7  trial.  But that was a long time ago, and yet I'm back, Adam

8  Levy, and I joined in the motion for the fees and expenses from

9  the state court cases.  So I just wanted you --

10       THE COURT:  Was that in addition to the $2 million she

11  mentioned, or the $2 million is an aggregate --

12       MR. LEVY:  I don't know if that was --

13       MS. BALDWIN:  His numbers were not included because he

14  wasn't a signatory to our motion, so his would be in addition

15  to our numbers.

16       THE COURT:  And how much are you talking about?

17       MR. LEVY:  About $400,000 of time.  That's lodestar,

18  your Honor.

19       THE COURT:  And did you rely on any promises?

20       MR. LEVY:  I was actually named in the agreement

21  that -- between the e-mails that went back and forth between

22  Mr. Specter and Mr. Berman, my name is actually in the

23  agreement along with the other gentlemen whose firms are --

24       THE COURT:  So answer is "yes," you believe that you

25  were an intended beneficiary?

1          MR. LEVY:  I do, your Honor.

2          MR. MATT:  And just so the record is clear, Mr. Levy

3     spent three years, if not more, in this case as part of Don

4     Haviland's law firm, and that's going to be something that we

5     talk about in our filing next week.  And just so you know also

6     for context, these are the folks that brought us Don Haviland,

7     okay?  This claim for these fees at this point are being

8     brought by Shannon Specter's firm --

9          MS. BALDWIN:  It's Shanin Specter.

10         MR. MATT:  -- Shanin Specter, who brought us Don

11    Haviland, and then withdrew as class counsel, saddling us in

12    this court with Don Haviland for years, and we know where that

13    led.  So I would be remiss if I didn't put into context who

14    they are.

15         THE COURT:  Yes, but can I just say, $37 million is a

16    lot of money on top of everything else that you guys have

17    gotten.  So at this point you've been compensated for your

18    attorney time and your expenses, and it would be useful to try

19    and compromise.  That having been said, I'm not paying a penny

20    for any drug that wasn't involved in this litigation.  So think

21    of some proportionality in how to do this, all right?  Okay,

22    good.  Happy Thanksgiving to everyone.  I look forward to the

23    briefs.  No one is supposed to work on this over Thanksgiving,

24    a direct judicial order.

25         MR. MATT:  Thank you, your Honor.

Page 35

1          MR. BARLEY:  Thank you, your Honor.  Happy

2   Thanksgiving.

3          THE CLERK:  All rise.

4          (Adjourned, 3:34 p.m.)

5             C E R T I F I C A T E

6


7

UNITED STATES DISTRICT COURT )
8   DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON                )
9


10


11          I, Lee A. Marzilli, Official Federal Court Reporter,

12   do hereby certify that the foregoing transcript, Pages 1

13   through 35 inclusive, was recorded by me stenographically at

14   the time and place aforesaid in Civil Action No. 01-12257-PBS,

15   In Re:  Pharmaceutical Industry Average Wholesale Price

16   Litigation, and thereafter by me reduced to typewriting and is

17   a true and accurate record of the proceedings.

18       In witness whereof I have hereunto set my hand this 26th

19   day of November, 2011.

20


21


22


23


24          /s/ Lee A. Marzilli
         _____
25          LEE A. MARZILLI, CRR
         OFFICIAL FEDERAL COURT REPORTER