# EXHIBIT A

**EXHIBIT A**
**TO**
**STIPULATION OF DISMISSAL WITH PREJUDICE OF TEVA PARTIES AND**
**MOTION FOR ORDER OF DISMISSAL WITH PREJUDICE**

# SETTLEMENT AGREEMENT AND RELEASE

## I. PARTIES

This Settlement Agreement and Release (this "Agreement") is entered into as of the Effective Date, as defined in ¶ III(21) below, by and among Ven-A-Care of the Florida Keys, Inc., for its own behalf and, with respect to such *qui tam* claims as the Relator has pled on behalf of the United States of America, the State of Florida, the State of Texas, and the State of California (in any of the foregoing capacities, the "Relator"); Zachary T. Bentley, T. Mark Jones, Luis Cobo and John Lockwood, M.D., each of the foregoing individuals, for his own behalf and in all other capacities (the preceding four parties, the "Relator's Current and Former Officers and Directors" or "Individual Plaintiffs"); the State of Texas ("Texas") and the State of Florida ("Florida"); (Texas and Florida collectively referred to as the "Settling States") (all of the foregoing seven parties collectively, the "Plaintiffs"); Teva Pharmaceutical Industries, Ltd., Teva Pharmaceuticals USA, Inc., Copley Pharmaceuticals, Inc., Ivax, L.L.C. (f/k/a Ivax Corporation), Ivax Pharmaceuticals, Inc. (f/k/a Zenith-Goldline Pharmaceuticals, Inc.), Goldline Laboratories, Inc., Sicor Inc., Gensia Sicor Pharmaceuticals, Inc., Duramed Research, Inc., Teva Parenteral Medicines, Inc. (f/k/a Sicor Pharmaceuticals, Inc.), Novopharm USA, Inc., Barr Pharmaceuticals, Inc., Barr Laboratories, Inc., Teva Women's Health, Inc. (f/k/a Duramed Pharmaceuticals, Inc.), Pliva, Inc., and Odyssey Pharmaceuticals, Inc. (the preceding sixteen parties collectively, the "Teva Parties"). Collectively all of the above will be referred to as the "Parties." The United States and California are not parties to this Agreement; however, this Agreement is conditioned upon the United States' and California's written consent in the forms attached as Exhibits 6 and 7 respectively.

## II. <u>PREAMBLE</u>

As a preamble to this Agreement, the Parties agree to the following:

A.   WHEREAS, on or about June 23, 1995, the Relator and one or more of the Individual Plaintiffs filed a *qui tam* action in the United States District Court for the Southern District of Florida captioned *United States ex rel. Ven-A-Care of the Florida Keys, Inc.* v. *Bristol-Myers Squibb Co., et al.*, Civil Action No. 95-1354 (S.D. Fla.). In 1997, that complaint, which remained sealed at the time, was amended to add claims against one or more of the Teva Parties based on the information that the Relator allegedly supplied to the United States about certain of the Teva Parties' products. This complaint, as it related to the Teva Parties, was dismissed without prejudice on October 1, 2009, while still sealed as to the Teva Party or Parties; and

B.   WHEREAS, Florida and the Relator are jointly pursuing relief in five state-court actions in the Circuit Court of the Second Judicial District in and for Leon County, Florida, against one or more of the Teva Parties styled *State of Florida, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Barr Laboratories, Inc., Barr Pharmaceuticals, Inc., and Duramed Research, Inc., et.al.*, Civil Action No. 03-CA-1165, and *State of Florida ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Ivax Corporation, Ivax Pharmaceuticals, Inc., and Zenith Goldline Pharmaceuticals, Inc., et.al.* Civil Action No. 03-CA-1165A, and *State of Florida ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Gensia Sicor Pharmaceuticals, Inc. and Sicor Inc., et. al.*, Civil Action No. 98-3032 E, and *State of Florida ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Alpharma, Inc., et.al.*, Civil Action No. 98-3032 F, and *State of Florida, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Mylan Inc., et al.*,

Civil Action No. 98-3032 G, (these claims and proceedings collectively, the "Florida Proceedings"); and

C. WHEREAS, on or about April 10, 2000, the Relator and one or more of the Individual Plaintiffs filed a *qui tam* action in the United States District Court for the District of Massachusetts captioned *United States ex rel Ven-A-Care of the Florida Keys, Inc.* v. *Dey et al.*, Civil Action No. 00-10698 (D. Mass.), eventually asserting claims against one or more of the Teva Parties as to one or more of the Teva Parties' products. That complaint was amended under seal on February 1, 2002 and again February 15, 2005 to add claims against one or more Teva Parties based on the information that the Relator allegedly supplied to the United States about one or more of the Teva Parties' products, and which included one or more pendent claims, including on behalf of California; however, the Relator never served the states and instead dismissed its pendent state claims, without prejudice, and elected to not pursue them. That complaint was further amended and unsealed on May 21, 2008. These claims and proceedings are referred to collectively as the "Federal *Qui Tam* Proceedings"); and

D. WHEREAS, Texas and the Relator are jointly pursuing relief in two additional state-court actions against one or more of the Teva Parties styled *State of Texas ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Sandoz Inc., et al.*, Cause No. D-1-GV-07-001259, in the District Court of Travis County, Texas, 201st Judicial District, and *State of Texas ex. rel. Ven-A-Care of the Florida Keys, Inc. v. Alpharma, Inc., et al.*, Cause No. D-1-GV-08-001566, in the District Court of Travis County, Texas, 419th Judicial District (these claims and proceedings collectively, the "Texas Proceedings"); and

E.  WHEREAS, California and the Relator are jointly pursuing an action, originally
commenced by the Relator in California State Court in 1998 and later removed to United
States Court in 2003, *State of California ex. rel. Ven-A-Care of the Florida Keys, Inc. v.
Abbott Laboratories, et al.*, Cause No. 03-CV-2238, in the Central District of California.
That action was transferred to MDL No. 1456 (D. Mass.) and voluntarily dismissed on
November 5, 2005 as to all Teva Parties that had been joined in that action (these claims
and proceedings, the "California Proceedings" and together with the Texas Proceedings
and the Florida Proceedings, the "State Proceedings"; and the claims and proceedings
referenced in clauses (A) through (E) of these recitals, including the State Proceedings,
are collectively referred to as the "Civil Actions"); and

F.  WHEREAS, in one or more of the Civil Actions, the Plaintiffs contend that between
January 1, 1991 and the date of execution of this Agreement by all parties, one or more of
the Teva Parties submitted, or caused to be submitted, false claims to the Medicaid
Program and/or, among other things, (i) one or more Teva Parties knowingly set, reported
and/or maintained, or caused to be set, reported and/or maintained, false, fraudulent
and/or inflated prices, including, without limitation, Average of Suggested Wholesale
Price to Pharmacy, Average Wholesale Prices, AWP, Suggested Wholesale Price, SWP,
Price to Wholesaler and/or Distributor, Direct Price to Pharmacy, Central Purchase Price
to Chain (Such as Warehouse Price), Institutional or Other Contract Price (Nursing
Home, Home Health Care), Other Price, Suggested List Prices, Wholesale Acquisition
Costs, Wholesale Net Prices, Direct Prices, Wholesale Direct Prices and/or Net Direct
Prices, and/or other prices reported by one or more of the Teva Parties or published by
compendia (any of the foregoing, collectively "Reported Prices"), for drugs

manufactured, marketed and/or sold by or on behalf of one or more Teva Parties (any and all drugs manufactured, marketed and/or sold by or on behalf of any Teva Party, a "Teva Covered Drug"), including, without limitation, Teva Covered Drugs with Labeler Codes 00093, 00172, 00182, 00703, 38245, 55953, 00555, 51285, 65473, 00575, 50732 59310, 000332, 57844, 68546 and 50111; (ii) with respect to the Texas Proceedings, one or more of the Teva Parties failed to report, or improperly reported, pricing information to the Texas Vendor Drug Program or otherwise failed to comply with the program requirements as to the reporting of pricing information to be used for reimbursement purposes; (iii) with an action or omission by, or with the knowledge of, one or more of the Teva Parties, the Reported Prices of certain Teva Covered Drugs of one or more of the Teva Parties were higher, and sometimes substantially higher, than the prices paid by customers of one or more of the Teva Parties for certain of the Teva Covered Drugs; (iv) one or more of the Teva Parties used an artificially inflated spread between the Reported Prices and the actual selling prices for drugs in marketing, promoting and/or selling Teva Covered Drugs to existing and potential customers; and (v) one or more of the Teva Parties allegedly knew that the reporting of false, fraudulent and/or inflated Reported Prices in connection with certain Teva Covered Drugs and/or marketing those Teva Covered Drugs based on the artificially inflated spread between the Reported Prices and the actual selling prices would cause the customers and others to submit false, fraudulent and/or inflated claims for reimbursement to the Medicaid Program (any action, omission or conduct, whether actual or alleged, contemplated by any provision of any of this clause (F) of these recitals or referred to or alleged in any of the Civil Actions is referred to as the "Covered Conduct"); however, as to the State of California only, Covered Conduct

shall encompass only Labeler Codes 00093, 00172, 00182, 00703, 38245, 55953, 00555, 51285, 65473, 00575, 50732, 000332 and 57844, except as expressly set forth below; and

G.  WHEREAS, the Plaintiffs contend that, as a result of the Covered Conduct, the Medicaid Program, the United States, the State of California, and the Settling States were damaged; and

H.  WHEREAS, each of the Teva Parties denies any and all wrongdoing, and each of the Teva Parties denies that it has any liability, relating to the Covered Conduct; and

I.  WHEREAS, to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these disputed claims, and as a result of a mutual desire to settle their disputes, the Parties wish to resolve their differences arising from the Civil Actions and the Covered Conduct and have reached a full, fair, and final settlement as set forth in this Agreement, which settlement the Parties acknowledge and agree is not punitive in purpose or effect; and

J.  WHEREAS, this Agreement is intended to fully, finally, and forever resolve any and all claims against, and liability of, any of the Teva Released Parties (as defined below) to any of the Plaintiffs, including *qui tam* claims brought on behalf of the United States or California to the extent encompassed by the Relator's pleadings in the Federal *Qui Tam* Proceedings, for or arising from the Covered Conduct, including, without limitation, all of the claims that were brought, could have been brought, or could be brought in the future by or on behalf of any of the Plaintiffs related to the "Federal-Share" (defined to mean the United States' portion of any Medicaid reimbursement) of any Medicaid reimbursement arising from any of the Covered Conduct for any Teva Covered Drug, or the "State-Share" (defined to mean a state's portion of any Medicaid reimbursement) of

any Medicaid reimbursement for any of the Settling States arising from any of the
Covered Conduct for any Teva Covered Drug; and

K. WHEREAS, this Agreement is the result of a compromise of disputed issues of law and
fact, and the execution and delivery of this Agreement shall not constitute or be construed
as an admission of fault, liability, or wrongdoing by any of the Parties, nor does it
constitute evidence of any liability or unlawful conduct on the part of the Parties, and this
Agreement shall not be admissible as evidence of any fault or liability of the Parties in
any investigation, administrative claim, action, suit, or proceeding, or federal or state
court or arbitration proceeding; and

## III. <u>TERMS AND CONDITIONS</u>

NOW, THEREFORE, in reliance on the representations contained herein and in
consideration of the mutual promises, covenants, and obligations set forth below in this
Agreement, and for other good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged, the Parties agree as follows:

1.      The foregoing Preamble is incorporated herein.

2.      In full and final settlement of all of the Released Claims, Teva Pharmaceuticals
USA, Inc. (the "Teva Payor") shall pay, or shall cause to be paid on its behalf, the sum of one
hundred and sixty-nine million United States dollars ($169,000,000) (the "Settlement Amount")
for the benefit of the Plaintiffs on the terms and subject to the conditions set forth herein.  The
Parties agree that the Settlement Amount shall resolve, fully and finally, all of the Released
Claims.  The Parties further agree that all amounts payable to any of the Relator's (or any other
Plaintiff's) attorneys or other representatives or advisors shall be paid out of the Settlement
Amount without further liability of any Teva Party.

3.     Within fifteen (15) business days following the Effective Date (as defined below), the Teva Payor shall pay the Settlement Amount by wire transfer into an "Escrow Account" at **PNC Bank, National Association** (the "Escrow Agent") to be administered in accordance with the terms of the separate Escrow Agreement in the form attached as Exhibit 1 hereto to be executed by and among the Parties within (5) business days following the Effective Date (the "Escrow Agreement").   The allocation of the Settlement Amount among the Plaintiffs, the United States, the State of California, and their respective counsel is a matter that shall be and has been handled separately by and among the Plaintiffs, the United States, the State of California, and their advisors, without any involvement by or input from any of the Teva Parties. None of the Teva Parties were consulted about the allocation of the Settlement Amount among the Plaintiffs, the United States and the State of California nor has any Teva Party had any input into the allocation.   For this reason, none of the Teva Parties are in a position to agree to the allocation and, as a part of the settlement, will not contest such allocation or be deemed to have endorsed or been responsible for any such allocation.   The Plaintiffs, the United States and the State of California have agreed among themselves to share in the Settlement Amount as set forth in the "Settlement Amount Allocation Schedule" attached hereto as Exhibit 2.   Teva has been informed by the Plaintiffs that the United States shall receive the amount of $100,000,000 from the Settlement Amount from which it shall pay such relator awards pursuant to the United States False Claims Act (31 U.S.C. § 3730) as may be agreed to between the United States and the Relator or as ordered by the Court.

4.     Within three (3) business days following the latter of the Teva Payor's wire transfer of the Settlement Amount into the Escrow Account or Teva counsel's receipt of the consents of the United States and the State of California executed by the authorized government

officials, the Parties shall file the following with the courts for each of the Florida Proceedings, the Texas Proceedings and the Federal *Qui Tam* Proceedings: (1) the Joint Stipulation of Dismissal with Prejudice and the proposed Order of Dismissal with Prejudice in each case in the forms attached hereto as Exhibits 3, 4 and 5 respectively; (2) the Consent of the United States in the form attached hereto as Exhibit 6; (3) the Consent of the State of California in the form attached hereto as Exhibit 7; and (4) motions seeking entry of the proposed Orders of Dismissal with Prejudice.  Each Party shall seek a prompt hearing on such motions and shall use its reasonable best efforts to obtain entry of such proposed Orders of Dismissal with Prejudice and to seek to cause each such Order of Dismissal with Prejudice to become a final and non-appealable order without amendment or modification thereto or limitations thereof (a "Final Order") as soon as possible.

5.     The Escrow Agent shall hold the Settlement Amount and any interest earned thereon in escrow pursuant to the terms of the Escrow Agreement.  The Escrow Agent shall not distribute any portion of the Settlement Amount or any interest earned thereon until a Final Order Confirmation Notice (as defined below) has been delivered for each of the Florida Proceedings, the Texas Proceedings and the Federal *Qui Tam* Proceedings or as provided in paragraph 6 below.  If the Teva Payor becomes aware that any of the proposed Orders of Dismissal with Prejudice shall have become a Final Order in a form reasonably acceptable to effect the agreements and releases contemplated by this Agreement, it shall execute and deliver to the Escrow Agent and each other Party a notice stating that a Final Order has been issued for such Civil Action (a "Final Order Confirmation Notice").  Upon receiving a Final Order Confirmation Notice from Teva for each of the Florida Proceedings, the Texas Proceedings and the Federal *Qui Tam* Proceedings and written distribution instructions from the Plaintiffs, the

United States and the State of California as to the manner in which their respective distributions pursuant to the Settlement Amount Allocation Schedule and any interest earned thereon should be delivered, within three (3) business days following such date, the Escrow Agent shall distribute the Settlement Amount, as set forth in the Settlement Amount Allocation Schedule, and any interest earned thereon, pursuant to such written instructions from the Plaintiffs, the United States and the State of California.  No Teva Released Party shall have any liability or obligation as a result of any failure by the Escrow Agent to make proper or timely payment following delivery of all of the Final Order Confirmation Notices except to the extent expressly provided for under the Escrow Agreement.

6.      On any date that is six (6) months following the Effective Date if, as of such date, a Final Order Confirmation Notice for each of the Florida Proceedings, the Texas Proceedings and the Federal *Qui Tam* Proceedings has not been delivered to the Escrow Agent, within two (2) business days following written request by the Teva Payor, the Escrow Agent shall return the Settlement Amount and any interest earned thereon to the Teva Payor or any of its designees, and this Agreement shall be automatically terminated and null and void, other than for any claims for breach of this Agreement prior to such termination, which shall survive any such termination. The Plaintiffs shall have no liability or obligation as a result of any failure by the Escrow Agent to return the full amount of the Settlement Amount and any interest thereon to the Teva Payor or any of its designees.  In the event that this Agreement is so terminated, any action dismissed pursuant to this Agreement may be reinstated and any statute of limitation shall be deemed tolled during such reinstatement. The parties shall take such actions as are reasonably necessary to cause Final Orders to be entered, including jointly moving for severance.

7.     In consideration of the obligations of the Teva Parties in this Agreement, and conditioned on the Teva Payor's payment in full of the Settlement Amount in accordance with Paragraphs III.2 through III.6 above and receipt of the Orders of Dismissal with Prejudice, each Plaintiff, on behalf of itself (including, with respect to the Relator, to the extent it is capable under the law, all *qui tam* claims brought on behalf of the Settling States, California, and the United States), and each of its and their predecessors, successors, heirs, trustees, subsidiaries, parents, assigns, divisions and affiliates and any current or former shareholders, directors, officers, agents, agencies, departments, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing, fully and finally release, acquit, and forever discharge each of the Teva Parties and each of their respective present and former predecessors, successors, heirs, trustees, subsidiaries, parents, assigns, divisions and affiliates and each of the current and former shareholders, officers, directors, employees, managers, partners, agents, agencies, departments, servants, attorneys, advisors and other representatives of any of the foregoing (collectively, the "Teva Released Parties") from any civil, regulatory and/or administrative claim, action, suit, demand, right, cause of action, liability, judgment, damage or proceeding, whether sealed or unsealed (including attorneys' fees, penalties, punitive damages, costs, and expenses of every kind and however denominated), which has been asserted, could have been asserted or could be asserted in the future under any source of law, contract, in equity or other right, for or arising from any of the Covered Conduct (collectively, the "Released Claims"), including but not limited to the State-Share for any of the Settling States and the Federal-Share of any claim brought by or on behalf of any of the fifty (50) states, the District of Columbia or any United States territory for or arising out of the Covered Conduct or the price reporting for reimbursement purposes for Teva Covered Drugs. Without limiting the generality

- 11 -

of the foregoing, and to the fullest extent that the Relator and the Settling States are capable under applicable law, this release fully discharges and releases each Teva Released Party from (i) any obligation to pay Medicaid-related damages, restitution, fines and/or penalties arising from the Covered Conduct; (ii) any civil obligation to the Relator or its attorneys, including any Relator's share, expenses, attorneys' fees, and costs associated with the Civil Actions to which Relator or its attorneys may be entitled; and (iii) any obligation to pay the State-Share of any Settling State or California of any claim asserted in the Civil Actions or for any Covered Conduct.  In addition, the Relator, with the knowledge and the consent of the State of California, hereby covenants and represents that it shall not attempt to revive or reinstate any action previously dismissed by it against any of the Teva Parties for the Covered Conduct and, for purposes of this sentence, "Covered Conduct" shall encompass all Teva Covered drugs including, but not limited to, those under Labeler Codes 59310, 68546 and 50111 as to the State of California.

8.      In consideration of the obligations of the Plaintiffs set forth in this Agreement, each Teva Party, on behalf of itself and its predecessors, successors, subsidiaries, parents, assigns, divisions and affiliates and any current or former shareholders, directors, officers, agents, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing fully and finally release the Settling States, any of their agencies, agents, employees, servants, attorneys and departments, the Individual Plaintiffs and the Relator, in its own capacity and in its capacity as *qui tam* representative of the United States of America, the Settling States and the State of California, and Relator's present and former predecessors, successors, heirs, trustees, parents, subsidiaries, assigns, divisions and affiliates and each of the current and former officers, directors, employees, managers, partners, agents, servants, attorneys,

advisors and other representatives of any of the foregoing from any claims or liabilities arising from the Covered Conduct, or the investigation or litigation of claims arising from the Covered Conduct which any of Teva Parties has or could have asserted.

9.      Nothing in this Agreement shall be construed to create a waiver of the Sovereign Immunity of the United States of America, the State of Texas, the State of Florida, or the State of California.

10.     Notwithstanding any other term of this Agreement, including the release provisions in Paragraphs III.7 and III.8 above, any and all of the following are specifically reserved and excluded from the scope and terms of this Agreement, and from the scope and terms of the releases, as to any entity or person (including the Parties):

  (a)   Any claims based upon such obligations as are created by this Agreement;

  (b)   The subrogation rights to claims for personal injury or injury to real or personal property arising from usage by a participant in the Medicaid Program of any of the Teva Covered Drugs covered thereunder;

  (c)   Any claims based on a failure to deliver products or services due;

  (d)   Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code) or any state tax or revenue law;

  (e)   Any criminal liability not specifically released by this Agreement; and

  (f)   Any express or implied warranty claims or other claims for defective or deficient products and services provided by any Teva Party.

  (g)   Any claims based on or arising out of conduct occurring after the Effective Date of this Agreement.

  (h)   Any liability to the United States, and the States of Florida, Texas or California for any conduct other than the Covered Conduct;

  (i)   Any civil or administrative liability that Settling Defendants have or may have under any state statute, regulation, or rule not covered by the release provisions in Paragraph 7 above;

(j)     Any claims arising from the Settling Defendants' obligations to report prices and/or pay rebates to the State under any law or contract, including, but not limited to, under the provisions of the Omnibus Budget Reconciliation Act of 1990 and all amendments thereto.

11.     The Parties each represent that this Agreement is freely and voluntarily entered into without any degree of duress whatsoever.

12.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

13.     This Agreement shall be governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement relating to the Federal *Qui Tam* Proceedings shall be the United States District Court for the District of Massachusetts and that the United States District Court for the District of Massachusetts shall retain continuing jurisdiction over the enforcement of this Agreement and all releases relating to the Federal *Qui Tam* Proceedings provided for herein, including for purposes of issuing an injunction in protection of any court's jurisdiction to enforce the terms, conditions, and releases provided for in this Agreement.  In as much as any provision of this Agreement relates to the parties' rights in the Florida Proceedings, including contractual rights, releases or enforcement remedies, the exclusive jurisdiction and venue shall be the Second Circuit in and for Leon County, Florida.   In as much as any provision of this Agreement relates to the parties' rights in the Texas Proceedings, including contractual rights, releases or enforcement remedies, the exclusive jurisdiction and venue shall be the 201st Judicial District Court of Travis County, Texas.

14.     This Agreement, together with the Escrow Agreement and all Exhibits constitute the complete agreement between the Parties with regard to the subject matter hereof.  This Agreement may not be amended except by written consent of all of the Parties.  The failure by any of the Parties to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement, or a course of dealings between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

15.     The individuals signing this Agreement on behalf of a Party represent and warrant that they are authorized to execute this Agreement on behalf of such Party.

16.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

17.     This Agreement is binding on each of the Teva Parties and its respective successors, transferees, and assigns.

18.     This Agreement is binding on each of the Plaintiffs, their attorneys, successors, transferees, heirs, and assigns.

19.     This Agreement has been negotiated at arm's length and between and among persons sophisticated and knowledgeable in the matters dealt with in this Agreement.  In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties.  Accordingly, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.  The provisions of this Agreement shall be interpreted in a reasonable manner to affect the purposes of the Parties and this Agreement.

20.     If any provision of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provision to other circumstances, shall remain in effect and be interpreted so as best reasonably to effect the intent of the Parties. Notwithstanding the foregoing, if either the payment or any of the release provisions hereof are found to be unenforceable or invalid by a court of competent jurisdiction, then such invalidity or unenforceability shall be cause for voiding the entirety of this Agreement at the election of the Party the interests of which are injured by the finding of invalidity or unenforceability; however, the Plaintiffs shall be entitled to re-file, reinstate and continue to litigate their claims against the Defendants without regard to any statute of limitations or other time barred defense which may be asserted by the Defendants for the time period related to this Settlement and any such time period shall be deemed tolled from the time of dismissal.

21.     This Agreement is effective on the date of signature of the last signatory to this Agreement upon execution and delivery hereof by all of the Parties (the "Effective Date"). Facsimiles or PDFs of signatures shall constitute acceptable binding signatures for purposes of this Agreement.

[Remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, the Parties have executed this Agreement:

**TEVA PARTIES**

TEVA PHARMACEUTICAL INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., COPLEY PHARMACEUTICALS, INC., IVAX, L.L.C. (F/K/A IVAX CORPORATION), IVAX PHARMACEUTICALS, INC., (F/K/A ZENITH-GOLDLINE PHARMACEUTICALS, INC.), GOLDLINE LABORATORIES, INC., SICOR, INC., GENSIA SICOR PHARMACEUTICALS, INC., DURAMED RESEARCH, INC., TEVA PARENTERAL MEDICINES, INC. (F/K/A SICOR PHARMACEUTICALS, INC.), NOVOPHARM USA, INC., BARR PHARMACEUTICALS, INC., BARR LABORATORIES, INC., TEVA WOMEN'S HEALTH. INC. (F/K/A DURAMED PHARMACEUTICALS, INC.,), PLIVA, INC. AND ODYSSEY PHARMACEUTICALS, INC.

BY

_____ Date: 7-19-10

Title: William Marth, CEO Teva NA

AND

_____ Date: 7-19-10

Title: David Stark, GC Teva NA

- 17 -

**RELATOR AND ITS ATTORNEY**

THE BREEN LAW FIRM, P.A.

By: _____ Date: 7/16/10

James J. Breen
The Breen Law Firm, P.A.
~~Suite 200~~
P.O. Box 297470
Pembroke Pines, FL 33029
*Counsel to Ven-A-Care of the Florida Keys, Inc.*


VEN-A-CARE OF THE FLORIDA KEYS, INC.

By: _____ Date: 7/15/10

T. Mark Jones, President


**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

ZACHARY T. BENTLEY

_____ Date: 7/16/10

Zachary T. Bentley


T. MARK JONES

_____ Date: 7/15/10

T. Mark Jones


JOHN M. LOCKWOOD

_____ Date: 7/15/10

John M. Lockwood


LUIS COBO

_____ Date: 7/15/10

Luis Cobo


- 18 -

**TEXAS**

**State of Texas**
**Office of the Attorney General**

By: _____
Raymond C. Winter
Title:   Chief, Civil Medicaid Fraud Division
Office of the Attorney General of Texas
P. O. Box 12548
Austin, Texas 78711-2548
Date:   _16 JULY 2010_____


**FLORIDA**

**State of Florida**
**Office of the Attorney General**


By: _____
Patricia A. Conners
Title:   Associate Deputy Attorney General,
State of Florida Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL  32399
Date:   _____

**TEXAS**

**State of Texas**
**Office of the Attorney General**


By: _____

Raymond C. Winter
Title:   Chief, Civil Medicaid Fraud Division
         Office of the Attorney General of Texas
         P. O. Box 12548
         Austin, Texas  78711-2548
Date: _____


**FLORIDA**

**State of Florida**
**Office of the Attorney General**


By: _____

Patricia A. Conners
Title:   Associate Deputy Attorney General,
         State of Florida Office of the Attorney General
         PL-01, The Capitol
         Tallahassee, FL  32399
Date:   July 16, 2010