# EXHIBIT B

**EXHIBIT A TO**
**THE STIPULATION OF DISMISSAL WITH PREJUDICE OF CERTAIN**
**CLAIMS AGAINST MYLAN PARTIES AND MOTION FOR ORDER OF**
**DISMISSAL WITH PREJUDICE**

# SETTLEMENT AGREEMENT AND RELEASE

## I. PARTIES

This Settlement Agreement and Release (this "Agreement") is entered into as of the Effective Date, as defined in ¶III(21) below, by and among Ven-A-Care of the Florida Keys, Inc., for its own behalf and, with respect to such *qui tam* claims as the Relator has pled on behalf of the United States of America and the State of Texas (in any of the foregoing capacities, the "Relator"); Zachary T. Bentley, T. Mark Jones, Luis E. Cobo and John Lockwood, M.D., each of the foregoing individuals, for his own behalf and in all other capacities (the preceding four parties, the "Relator's Current and Former Officers and Directors" or "Individual Plaintiffs"); the State of Texas ("Texas"); (Texas referred to as the "Settling State") (all of the foregoing six parties collectively, the "Plaintiffs"); Mylan Inc. (f/k/a Mylan Laboratories Inc.), Mylan Pharmaceuticals Inc. and UDL Laboratories, Inc. (the preceding three parties collectively, the "Mylan Parties"). Collectively all of the above will be referred to as the "Parties". The United States is not a signatory to this Agreement; however, this Agreement is conditioned upon the United States' written consent in the form attached as Exhibit 5.

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. WHEREAS, on or about April 10, 2000, the Relator and one or more of the Individual Plaintiffs filed a *qui tam* action in the United States District Court for the District of Massachusetts captioned *United States ex rel. Ven-A-Care of the Florida Keys, Inc.* v. *Actavis Mid Atlantic LLC, et al.*, Civil Action No. 01-12257-PBS (D. Mass.) asserting claims against one or more of the Mylan Parties as to one or more of the Mylan Parties' products. That complaint was amended under seal on February 1, 2002 and again on

February 15, 2005 to add claims against one or more Mylan Parties based on the information that the Relator allegedly supplied to the United States about one or more of the Mylan Parties' products. That complaint was further amended and unsealed on May 21, 2008. These claims and proceedings are referred to collectively as the "Federal *Qui Tam* Proceedings"); and

B. WHEREAS, Texas and the Relator are jointly pursuing relief in an additional state-court action styled *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Sandoz Inc., f/k/a Geneva Pharmaceuticals, Inc., Novartis Pharmaceuticals, Inc., Novartis Ag, Eon Labs, Apothecon, Inc. Mylan Pharmaceuticals, Inc., Mylan Laboratories, Inc., UDL Laboratories, Inc., Teva Pharmaceuticals USA, Inc., f/k/a Lemmon Pharmaceuticals, Inc., Copley Pharmaceuticals, Inc., Ivax Pharmaceuticals, Inc., Sicor Pharmaceuticals, Inc., and Novopharm USA, Inc.*, Cause No. D-1-GV-07-001259, in the District Court of Travis County, Texas, 201st Judicial District (these claims and proceedings collectively, the "Texas Proceedings"); and the claims and proceedings referenced in clauses (A) and (B) of these recitals, including the Texas Proceedings, are collectively referred to as the "Civil Actions"); and

C. WHEREAS, in one or both of the Civil Actions, the Plaintiffs contend that between January 1, 1991 and the date of execution of this Agreement by all parties, one or more of the Mylan Parties submitted, or caused to be submitted, false claims to the Medicaid Program and/or, among other things, (i) one or more Mylan Parties knowingly set, reported and/or maintained, or caused to be set, reported and/or maintained, false, fraudulent and/or inflated prices, including, without limitation, Average of Suggested Wholesale Price to Pharmacy, Average Wholesale Prices, AWP, Suggested Wholesale

Price, SWP, Price to Wholesaler and/or Distributor, Direct Price to Pharmacy, Central

Purchase Price to Chain (Such as Warehouse Price), Institutional or Other Contract Price

(Nursing Home, Home Health Care), Other Price, Suggested List Prices, Wholesale

Acquisition Costs, Wholesale Net Prices, Direct Prices, Wholesale Direct Prices and/or

Net Direct Prices, and/or other prices reported by one or more of the Mylan Parties or

published by compendia (any of the foregoing, collectively "Reported Prices"), for drugs

manufactured, marketed and/or sold by or on behalf of one or more Mylan Parties or

Mylan Released Parties as defined below (any and all drugs manufactured, marketed

and/or sold by or on behalf of any Mylan Party or any Mylan Released Party under an

FDA Labeler Code issued or assigned to a Mylan Party or a Mylan Released Party, a

"Mylan Covered Drug"), including, without limitation, Mylan Covered Drugs with

Labeler Codes 00378,51079, 62794, 59490, 25074, 55160, 55567, 15330, 57315, 39506

and 65015; (ii) with respect to the Texas Proceedings, one or more of the Mylan Parties

failed to report, or improperly reported, pricing information to the Texas Vendor Drug

Program or otherwise failed to comply with the program requirements as to the reporting

of pricing information to be used for reimbursement purposes; (iii) with an action or

omission by, or with the knowledge of, one or more of the Mylan Parties, the Reported

Prices of certain Mylan Covered Drugs of one or more of the Mylan Parties were higher,

and sometimes substantially higher, than the prices paid by purchasers of one or more of

the Mylan Covered Drugs; (iv) one or more of the Mylan Parties used an artificially

inflated spread between the Reported Prices and the actual selling prices for drugs in

marketing, promoting and/or selling Mylan Covered Drugs to existing and potential

customers or purchasers; and (v) one or more of the Mylan Parties allegedly knew that

the reporting of false, fraudulent and/or inflated Reported Prices in connection with certain Mylan Covered Drugs and/or marketing those Mylan Covered Drugs based on the artificially inflated spread between the Reported Prices and the actual selling prices would cause the customers and others to submit false, fraudulent and/or inflated claims for reimbursement to the Medicaid Program. Any action, omission or conduct, whether actual or alleged, contemplated by any provision of any of this clause (C) of these recitals or referred to or alleged in any of the Civil Actions is referred to as the "Covered Conduct"); and

D.      WHEREAS, the Plaintiffs contend that, as a result of the Covered Conduct, the Medicaid Program, the United States and Texas, were damaged; and

E.      WHEREAS, each of the Mylan Parties denies any and all wrongdoing, and each of the Mylan Parties denies that it has any liability, relating to the Covered Conduct; and

F.      WHEREAS, to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these disputed claims, and as a result of a mutual desire to settle their disputes, the Parties wish to resolve their differences relating to the Civil Actions and the Covered Conduct and have reached a full, fair, and final settlement as set forth in this Agreement, which settlement the Parties acknowledge and agree is not punitive in purpose or effect; and

G.      WHEREAS, this Agreement is intended to fully, finally, and forever resolve any and all claims encompassed by the Relator's pleadings in the Federal *Qui Tam* Proceedings against, and liability of, any of the Mylan Released Parties (as defined at Paragraph 7 below) to any of the Plaintiffs, including *qui tam* claims brought on behalf of the United States except as they relate to California Medicaid, for or arising from the

Covered Conduct. Such claims brought on behalf of the United States include, without limitation, all of the claims that were brought, could have been brought, or could be brought in the future related to the "Federal-Share" (defined to mean the United States' portion of any Medicaid reimbursement) arising from any of the Covered Conduct. This Agreement is not intended to and expressly does not resolve, prejudice or release any claims related to the "State-Share" (defined to mean any state's portion of any Medicaid reimbursement) for any state other than the State of Texas.   Without limiting the forgoing, this Agreement is not intended to and expressly does not resolve claims related to the California or Florida State Shares or the California Federal Share; and

H.      WHEREAS, this Agreement is the result of a compromise of disputed issues of law and fact, and the execution and delivery of this Agreement shall not constitute or be construed as an admission of fault, liability, or wrongdoing by any of the Parties, nor does it constitute evidence of any liability or unlawful conduct on the part of the Parties, and this Agreement shall not be admissible as evidence of any fault or liability of the Parties in any investigation, administrative claim, action, suit, or proceeding, or federal or state court or arbitration proceeding.

## III. TERMS AND CONDITIONS

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations set forth below in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      The foregoing Preamble is incorporated herein.

2.      In full and final settlement of all of the Released Claims (as defined at Paragraph

7 below), Mylan Inc. (the "Mylan Payor") shall pay, or shall cause to be paid on its behalf, the sum of sixty-five million United States dollars ($65,000,000) (the "Settlement Amount") for the benefit of the Plaintiffs on the terms and subject to the conditions set forth herein. The Parties agree that the Settlement Amount shall resolve, fully and finally, all of the Released Claims. The Parties further agree that all amounts payable to any of the Relator's (or any other Plaintiff's) attorneys or other representatives or advisors shall be paid out of the Settlement Amount without further liability of any Mylan Released Party.

3. Within fifteen (15) business days following the Effective Date (as defined below), the Mylan Payor shall pay the Settlement Amount by wire transfer into an "Escrow Account" at PNC Bank, National Association (the "Escrow Agent") to be administered in accordance with the terms of the separate Escrow Agreement in the form attached as Exhibit 1 hereto to be executed by and among the Parties within (5) business days following the Effective Date (the "Escrow Agreement"). The Parties agree that the Mylan Parties' obligation to pay the Settlement Amount will be satisfied in full upon the transfer and payment of the Settlement Amount to the Escrow Account regardless of any loss in the principal amount thereof or otherwise and upon the Mylan Payor's transfer and payment of the Settlement Amount to the Escrow Account, the Mylan Parties shall have no further obligation to make any further payments pursuant to this Agreement. The allocation of the Settlement Amount among the Plaintiffs, the United States, and their respective counsel is a matter that shall be and has been handled separately by and among the Plaintiffs and the United States and their advisors, without any involvement by or input from any of the Mylan Parties. None of the Mylan Parties were consulted about the allocation of the Settlement Amount among the Plaintiffs and the United States, nor has any Mylan Party had any input into the allocation. For this reason, none of the Mylan Parties are in a

position to agree to the allocation and, as a part of the settlement, will not contest such allocation or be deemed to have endorsed or been responsible for any such allocation. The Plaintiffs and the United States have agreed among themselves to share in the Settlement Amount as set forth in the "Settlement Amount Allocation Schedule" attached hereto as Exhibit 2. Mylan has been informed by the Plaintiffs that the United States shall receive the amount of $42,000,000 from the Settlement Amount from which it shall pay such relator awards pursuant to the United States False Claims Act (31 U.S.C. §3730) as may be agreed to between the United States and the Relator as ordered by the Court.

4.      Within three (3) business days following the Mylan Payor's wire transfer of the Settlement Amount into the Escrow Account, the Parties shall file with the courts for the Texas Proceedings and the Federal *Qui Tam* Proceedings (1) the Joint Stipulation of Dismissal with Prejudice and the proposed Order of Dismissal with Prejudice in each case in the forms attached hereto as Exhibits 3 and 4 respectively, (2) the Consent of the United States in the form attached hereto as Exhibit 5, (3) motions seeking entry of the proposed Orders of Dismissal with Prejudice. Each Party shall seek a prompt hearing on such motions and shall use its reasonable best efforts to obtain entry of such proposed Orders of Dismissal with Prejudice and to seek to cause each such Order of Dismissal with Prejudice to become a final and non-appealable order without amendment or modification thereto or limitations thereof (a "Final Order") as soon as possible.

5.      The Escrow Agent shall hold the Settlement Amount and any interest earned thereon in escrow pursuant to the terms of the Escrow Agreement. The Escrow Agent shall not distribute any portion of the Settlement Amount or any interest earned thereon until a Final Order Confirmation Notice (as defined below) has been delivered for the Texas Proceedings and

the Federal *Qui Tam* Proceedings or as provided in paragraph 6 below.  If the Mylan Payor

becomes aware that any of the proposed Orders of Dismissal with Prejudice shall have become a

Final Order in a form reasonably acceptable to effect the agreements and releases contemplated

by this Agreement, it shall execute and deliver to the Escrow Agent and each other Party a notice

stating that a Final Order has been issued for such Civil Action (a "Final Order Confirmation

Notice").   Upon receiving a Final Order Confirmation Notice from Mylan for the Texas

Proceedings and the Federal *Qui Tam* Proceedings and written distribution instructions from the

Plaintiffs and the United States as to the manner in which their respective distributions pursuant

to the Settlement Amount Allocation Schedule and any interest earned thereon should be

delivered, within three (3) business days following such date, the Escrow Agent shall distribute

the Settlement Amount, as set forth in the Settlement Amount Allocation Schedule, and any

interest earned thereon, pursuant to such written instructions from the Plaintiffs and the United

States.  No Mylan Released Party shall have any liability or obligation as a result of any failure

by the Escrow Agent to make proper or timely payment following delivery of all of the Final

Order Confirmation Notices except to the extent expressly provided for under the Escrow

Agreement.

      6.      On any date that is six (6) months following the Effective Date if, as of such date,

a Final Order Confirmation Notice for the Texas Proceedings and the Federal *Qui Tam*

Proceedings has not been delivered to the Escrow Agent, within two (2) business days following

written request by the Mylan Payor, the Escrow Agent shall return the Settlement Amount and

any interest earned thereon to the Mylan Payor or any of its designees, and this Agreement shall

be automatically terminated and null and void, other than for any claims for breach of this

Agreement prior to such termination, which shall survive any such termination. The Plaintiffs

shall have no liability or obligation as a result of any failure by the Escrow Agent to return the full amount of the Settlement Amount and any interest thereon to the Mylan Payor or any of its designees. In the event that this Agreement is so terminated, any action dismissed pursuant to this Agreement may be reinstated and any statute of limitation shall be deemed tolled during such reinstatement. The parties shall take such actions as are reasonably necessary to cause Final Orders to be entered, including jointly moving for severance.

      7.     In consideration of the obligations of the Mylan Parties in this Agreement, and conditioned on the Mylan Payor's payment in full of the Settlement Amount in accordance with Paragraphs III.2 through III.6 above and receipt of the Orders of Dismissal with Prejudice, each Plaintiff, on behalf of itself (including, with respect to the Relator, to the fullest extent it is permitted under the law, all *qui tam* claims brought on behalf of the Settling State and the United States), and each of its and their respective present and former predecessors, successors, heirs, trustees, subsidiaries, parents, assigns, divisions and affiliates and any current and former shareholders, directors, officers, agents, agencies, departments, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing, fully and finally release, acquit, and forever discharge each of the Mylan Parties and each of their respective present and former predecessors, successors, heirs, trustees, subsidiaries, parents, assigns, divisions and affiliates and any current and former shareholders, directors, officers, agents, agencies, departments, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing (individually, "Mylan Released Party" and collectively, the "Mylan Released Parties") from any civil, regulatory and/or administrative claim, action, suit, demand, right, cause of action, liability, judgment, damage or proceeding, whether sealed or unsealed (including attorneys' fees, penalties, punitive damages, costs, and expenses of every

kind and however denominated), which has been asserted, could have been asserted or could be asserted in the future under any source of law, contract, in equity or other right, for or arising from any of the Covered Conduct (collectively, the "Released Claims"), including but not limited to the State-Share for the Settling State and the Federal-Share of any claim brought by or on behalf of any of the states, the District of Columbia or any United States territory, with the exception of California, for or arising from the Covered Conduct or the price reporting for reimbursement purposes for Mylan Covered Drugs.  Without limiting the generality of the foregoing, and to the fullest extent that the Relator and the Settling State are capable under applicable law, this release fully discharges and releases each Mylan Released Party from (i) any obligation to pay Medicaid-related damages, restitution, fines and/or penalties arising from the Covered Conduct; (ii) any civil obligation to the Relator or its attorneys, including any Relator's share, expenses, attorneys' fees, and costs associated with the Civil Actions to which Relator or its attorneys may be entitled; and (iii) any obligation to pay the State-Share of the Settling State of any claim asserted in the Civil Actions or for or arising from any Covered Conduct.

8.      In consideration of the obligations of the Plaintiffs set forth in this Agreement, each Mylan Party, on behalf of itself and its present and former predecessors, successors, subsidiaries, parents, assigns, divisions and affiliates and any current or former shareholders, directors, officers, agents, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing fully and finally release, acquit and forever discharge the State of Texas, any of its agencies, agents, employees, servants, attorneys and departments, the Individual Plaintiffs and the Relator, in its own capacity, and in its capacity as *qui tam* representative of the United States of America, and the State of Texas and Relator's present and former predecessors, successors, heirs, trustees, parents, subsidiaries, assigns, divisions and

affiliates and any current and former directors, officers, employees, managers, partners, agents, agencies, departments, servants, attorneys, advisors and other representatives of any of the foregoing from any of the Released Claims for or arising from the Covered Conduct, or the investigation or litigation of claims for or arising from the Covered Conduct.

9.     Nothing in this Agreement shall be construed to create a waiver of the Sovereign Immunity of the United States of America or the State of Texas.

10.     Notwithstanding any other term of this Agreement, including the release provisions in Paragraphs III.7 and III.8 above, any and all of the following are specifically reserved and excluded from the scope and terms of this Agreement, and from the scope and terms of the releases, as to any entity or person (including the Parties):

(a)     Any claims based upon such obligations as are created by this Agreement;

(b)     The subrogation rights to claims for personal injury or injury to real or personal property arising from usage by a participant in the Medicaid Program of any of the Mylan Covered Drugs covered thereunder;

(c)     Any claims based on a failure to deliver products or services due;

(d)     Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code) or any state tax or revenue law;

(e)     Any criminal liability not specifically released by this Agreement;

(f)     Any express or implied warranty claims or other claims for defective or deficient products and services provided by any Mylan Party.

(g)     Any liability to the United States, and the State of Texas for any conduct other than the Covered Conduct;

(h)     Any civil or administrative liability that Settling Defendants have or may have under any state statute, regulation, or rule not covered by the release provisions in Paragraph 7 above;

(i)     Any claim for the State Share in the matter *State of Florida ex rel. Ven-A-Care of the Florida Keys, Inc. v. Mylan Laboratories, Inc., et al.*, Case No. 98-3032G, including but not limited to all remedies under the Florida False Claims Act;

(j)  Any claim for the State Share or Federal Share in the matter *State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Labs., Inc., et al.*, Case No. 03-cv-11226-PBS, Subcategory Case No. 06-11337; Master File No. 01-12257-PBS; MDL No. 1456, including but not limited to all remedies under the California False Claims Act;

(k)  Any claim of the United States or the Relator in the matter *United States of America ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, Inc., et al.*, Civil Action No. 05-11084-PBS, Subcategory Case No. 06-11337-PBS, Master Case No. 01-12257-PBS, MDL No. 1456;

(l)  Any claims arising from the Settling Defendants' obligations to report prices to the Centers for Medicare and Medicaid Services for Medicaid Rebate program purposes and/or pay rebates to the State or United States under any law or contract, including, but not limited to, under the provisions of the Omnibus Budget Reconciliation Act of 1990 and all amendments thereto.

11.  The Parties each represent that this Agreement is freely and voluntarily entered into without any degree of duress whatsoever.

12.  Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

13.  This Agreement shall be governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement relating to the Federal *Qui Tam* Proceedings shall be the United States District Court for the District of Massachusetts and that the United States District Court for the District of Massachusetts shall retain continuing jurisdiction over the enforcement of this Agreement and all releases relating to the Federal *Qui Tam* Proceedings provided for herein, including for purposes of issuing an injunction in protection of any court's jurisdiction to enforce the terms, conditions, and releases provided for in this Agreement. In as much as any provision of this Agreement relates to the parties' rights in the Texas Proceedings, including contractual rights, releases or enforcement remedies, the exclusive jurisdiction and venue shall be the 201st Judicial District Court of Travis, County, Texas.

14.     This Agreement, together with the Escrow Agreement and all Exhibits constitute the complete agreement between the Parties with regard to the subject matter thereof. This Agreement may not be amended except by written consent of all of the Parties. The failure by any of the Parties to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement, or a course of dealings between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

15.     The individuals signing this Agreement on behalf of a Party represent and warrant that they are authorized to execute this Agreement on behalf of such Party.

16.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

17.     This Agreement is binding on each of the Mylan Parties and its respective successors, transferees, and assigns.

18.     This Agreement is binding on each of the Plaintiffs, their attorneys, successors, transferees, heirs, and assigns.

19.     This Agreement has been negotiated at arm's length and between and among persons sophisticated and knowledgeable in the matters dealt with in this Agreement. In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties. Accordingly, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the purposes of the Parties and this Agreement.

20.     If any provision of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provision to other circumstances, shall remain in effect and be interpreted so as best reasonably to effect the intent of the Parties. Notwithstanding the foregoing, if either the payment or any of the release provisions hereof are found to be unenforceable or invalid by a court of competent jurisdiction, then such invalidity or unenforceability shall be cause for voiding the entirety of this Agreement at the election of the Party the interests of which are injured by the finding of invalidity or unenforceability; however, the Plaintiffs shall be entitled to re-file, reinstate and continue to litigate their claims against the Defendants without regard to any statute of limitations or other time barred defense which may be asserted by the Defendants for the time period related to this Settlement and any such time period shall be deemed tolled from the time of dismissal.

21.     This Agreement is effective on the date of signature of the last signatory to this Agreement upon execution and delivery hereof by all of the Parties (the "Effective Date"). Facsimiles or PDFs of signatures shall constitute acceptable binding signatures for purposes of this Agreement.

[Remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, the Parties have executed this Agreement:

**MYLAN PARTIES**

Mylan Inc. (f/k/a Mylan Laboratories Inc.), Mylan Pharmaceuticals Inc., and UDL Laboratories, Inc.

BY *Kristin R Kolesar/atg*

Date: *12/21/10*

Title: *SVP & Global CoC Operations for Mylan Inc.*
*Secretary for Mylan Pharmaceuticals Inc.*

BY

*David Kennedy, Vice President - TAV, UDL Laboratories, Inc*

## RELATOR AND ITS ATTORNEY

The Breen Law Firm, P.A.

By: _____    Date: _12 / 20 / 10_
     James J. Breen
     The Breen Law Firm, P.A.
     Suite 260
     5755 North Point Parkway
     Alpharetta, Georgia 30022

*Counsel to Ven-A-Care of the Florida Keys, Inc.*

Ven-A-Care of the Florida Keys, Inc.

By: _____    Date: _____
     T. Mark Jones, President

## RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS

ZACHARY T. BENTLEY

_____    Date: _____
Zachary T. Bentley

T. MARK JONES

_____    Date: _____
T. Mark Jones

JOHN M. LOCKWOOD

_____    Date: _____
John M. Lockwood

LUIS E. COBO

_____    Date: _____

**RELATOR AND ITS ATTORNEY**

The Breen Law Firm, P.A.

By: _____ Date: _____

James J. Breen
The Breen Law Firm, P.A.
Suite 260
5755 North Point Parkway
Alpharetta, Georgia 30022

*Counsel to Ven-A-Care of the Florida Keys, Inc.*

Ven-A-Care of the Florida Keys, Inc.

By: _____ Date: 12/20/10

T. Mark Jones, President

**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

ZACHARY T. BENTLEY

_____ Date: _____

Zachary T. Bentley

T. MARK JONES

_____ Date: 12/20/10

T. Mark Jones

JOHN M. LOCKWOOD

_____ Date: _____

John M. Lockwood

LUIS E. COBO

_____ Date: _____

**RELATOR AND ITS ATTORNEY**

The Breen Law Firm, P.A.

By: _____    Date: _____
       James J. Breen
       The Breen Law Firm, P.A.
       Suite 260
       5755 North Point Parkway
       Alpharetta, Georgia 30022

       *Counsel to Ven-A-Care of the Florida Keys, Inc.*

Ven-A-Care of the Florida Keys,  Inc.

By: _____    Date: _____
       T. Mark Jones, President

**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

ZACHARY T. BENTLEY

_____    Date: 12/21/2010
Zachary T. Bentley

T. MARK JONES

_____    Date: _____
T. Mark Jones

JOHN M. LOCKWOOD

_____    Date: _____
John M. Lockwood

LUIS E. COBO

_____    Date: _____
Luis E. Cobo

**RELATOR AND ITS ATTORNEY**

The Breen Law Firm, P.A.

By: _____ Date: _____

James J. Breen
The Breen Law Firm, P.A.
Suite 260
5755 North Point Parkway
Alpharetta, Georgia 30022

*Counsel to Ven-A-Care of the Florida Keys, Inc.*

Ven-A-Care of the Florida Keys, Inc.

By: _____ Date: _____

T. Mark Jones, President

**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

ZACHARY T. BENTLEY

_____ Date: _____

Zachary T. Bentley

T. MARK JONES

_____ Date: _____

T. Mark Jones

JOHN M. LOCKWOOD

_____ Date: _12/20/10_

John M. Lockwood

LUIS E. COBO

_____ Date: _____

**RELATOR AND ITS ATTORNEY**

The Breen Law Firm, P.A.

By: _____     Date: _____
      James J. Breen
      The Breen Law Firm, P.A.
      Suite 260
      5755 North Point Parkway
      Alpharetta, Georgia 30022

      *Counsel to Ven-A-Care of the Florida Keys, Inc.*


Ven-A-Care of the Florida Keys,  Inc.


By: _____     Date: _____
      T. Mark Jones, President

**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

ZACHARY T. BENTLEY

_____     Date: _____
Zachary T. Bentley


T. MARK JONES

_____     Date: _____
T. Mark Jones


JOHN M. LOCKWOOD

_____     Date: _____
John M. Lockwood


LUIS E. COBO

_____     Date: 12-20-10

Case 1:01-cv-12257-PBS   Document 7365-12   Filed 12/23/10   Page 22 of 112

Luis E. Cobo

**TEXAS**

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**State of Texas**
**Office of the Attorney General**

By: _____

Raymond C. Winter

Title: Chief, Civil Medicaid Fraud Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548

Date: 12/21/10