# EXHIBIT C

**Exhibit A**
**To**
**CONSENT OF THE UNITED STATES OF AMERICA TO THE RELATOR'S DISMISSAL WITH PREJUDICE OF CERTAIN CLAIMS PURSUANT TO 31 U.S.C. § 3730 (b) (1)**

(Settlement Agreement and Release)

## SETTLEMENT AGREEMENT AND RELEASE

I. PARTIES

This Settlement Agreement and Release (this "Agreement") is entered into as of the Effective Date, as defined in ¶ III(20) below, by and among: Ven-A-Care of the Florida Keys, Inc., for its own behalf and, with respect to such qui tam claims as the Relator has pled on their behalf, on behalf of the United States of America (in any of the foregoing capacities, the "Relator"); Zachary T. Bentley, T. Mark Jones, Luis E. Cobo and John Lockwood, M.D., each of the foregoing individuals, for his own behalf and in all other capacities (the preceding four parties, the "Relator's Current and Former Officers and Directors" or "Individual Plaintiffs"); the State of Texas ("Texas"), the State of Florida ("Florida"), the State of Iowa ("Iowa"), and the City of New York and all New York counties who are plaintiffs in MDL-1456 ("the New York Plaintiffs") and the State of New York (collectively the New York plaintiffs and the State of New York are referred to herein as "New York") (Texas, Florida, Iowa, and New York are collectively referred to as the "Settling States") (all of the foregoing parties are collectively, "Plaintiffs"); Watson Pharmaceuticals, Inc., ("WPI"), Watson Pharma, Inc. f/k/a Schein Pharmaceuticals, Inc. ("Schein"), Watson Laboratories, Inc. ("Watson Labs"), Rugby Laboratories, Inc. ("Rugby"), Oclassen Pharmaceuticals, Inc. ("Oclassen,"), Marsam Pharmaceuticals, Inc. ("Marsam"), and Watson Laboratories-Florida, Inc., f/k/a  Andrx Pharmaceuticals, Inc. ("Watson Labs Florida," and collectively with WPI, Schein, Watson Labs, Rugby, Oclassen, Marsam, and any parent, and/or subsidiary of WPI,

Schein, Watson Labs, Rugby, Oclassen, Marsam and/or Watson Labs Florida, the "Watson Parties"). Collectively all of the above will be referred to as the "Parties." The United States is not a party to this Agreement; however, this Agreement is conditioned upon the United States' written consent in the form attached as **Exhibit 1**.

II. <u>PREAMBLE</u>

As a preamble to this Agreement, the Parties state as follows:

A. On or about June 23, 1995, the Relator and one or more of the Individual Plaintiffs filed a qui tam action in the United States District Court for the Southern District of Florida captioned *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Bristol-Myers Squibb Co., et al.*, Civil Action No. 95-1354 (S.D. Fla.). In 1997, that complaint, which remained sealed at the time, was amended to add claims against one or more of the Watson Parties based on the information that the Relator allegedly supplied to the United States about certain of the Watson Parties' products. Those claims against certain Watson parties were dismissed without prejudice on June 13, 2003 while still sealed.

B. Florida and the Relator are jointly pursuing relief in a state-court action in the Circuit Court of the Second Judicial District in and for Leon County, Florida, against one or more of the Watson Parties captioned *State of Florida, ex rel. Ven-A-Care of the Florida Keys, Inc. v. Mylan Pharmaceuticals, Inc., et al.*, Civil Action No. 98-3032, 98-3032E, 98-3032G (these claims and proceedings are referred to as the "Florida Proceedings")**.**

C. On or about April 10, 2000, the Relator and one or more of the Individual Plaintiffs filed a qui tam action in the United States District Court for the District of

Massachusetts captioned *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Dey, et al.,* Civil Action No. 00-10698 (D. Mass.), eventually asserting claims against one or more of the Watson Parties as to one or more of the Watson Parties' products. That complaint was amended under seal on February 15, 2001, February 1, 2002, and again on February 15, 2005 to add claims against one or more Watson Parties based on the information that the Relator allegedly supplied to the United States about one or more of the Watson Parties' products. The Relator's claims in the federal action included one or more pendent claims; however, the Relator never served the states and instead dismissed its pendent state claims, without prejudice, and elected to not pursue them. That complaint was further amended and unsealed on May 21, 2008. These claims and proceedings are referred to collectively as the "Federal Qui Tam Proceedings".

D.     Texas and the Relator are jointly pursuing relief in an additional state-court action against one or more of the Watson Parties styled *State of Texas ex rel. Ven-A-Care of the Florida Keys, Inc. v. Alpharma, USPD Inc., et al.,* Cause No. D-1-GV-08-001566, in the District Court of Travis County, Texas, 419th Judicial District (the "Texas Proceedings").

E.     The New York Plaintiffs have alleged various violations of law with respect to Medicaid drug reimbursement and price reporting for the years 1991 to the present, as more particularly described in the Revised First Amended Consolidated Complaint dated October 4, 2007 and other complaints filed by the New York Plaintiffs against the Watson Parties in the cases listed at **Exhibit 2** hereto, consolidated in the United States District Court for the District of Massachusetts under Multi-District Litigation number 1456, Civil Action No. 01-12257 (PBS) (the "New York Proceedings").

F.     The State of Iowa has alleged various violations of law with respect to Medicaid drug reimbursement and price reporting for the years 1991 to the present, as more particularly described in *State of Iowa v. Abbott Laboratories, Inc., et al.,* consolidated in the United States District Court for the District of Massachusetts under Multi-District Litigation number 1456, Civil Action No. 01-12257 (PBS) (the "Iowa Proceedings").

G.     The Texas Proceedings, the Florida Proceedings, the New York Proceedings and the Iowa Proceedings are collectively referred to in this Agreement as the "State Proceedings"; and the claims and proceedings referenced in clauses (A) through (F) of these recitals, including the State Proceedings and the Federal Qui Tam Proceedings, are collectively referred to as the "Civil Actions".

H.     In one or more of the Civil Actions, the Plaintiffs contend that between January 1, 1991 and the date of execution of this Agreement by all parties, one or more of the Watson Parties submitted, or caused to be submitted, false claims to the Medicaid Program and/or, among other things, (i) one or more Watson Parties knowingly set, reported and/or maintained, or caused to be set, reported and/or maintained, false, fraudulent and/or inflated prices, including, without limitation, Average of Suggested Wholesale Price to Pharmacy, Average Wholesale Price, AWP, Suggested Wholesale Price, SWP, Price to Wholesaler and/or Distributor, Direct Price to Pharmacy, Central Purchase Price to Chain (Such as Warehouse Price), Institutional or Other Contract Price (Nursing Home, Home Health Care), Other Price, Suggested List Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, Wholesale Direct Price and/or Net Direct Price, and/or other prices reported by one or more of the Watson Parties or published by compendia (any of the foregoing, collectively "Reported Prices"), for drugs

manufactured, marketed and/or sold by or on behalf of one or more Watson Parties (any and all drugs manufactured, marketed and/or sold by or on behalf of any Watson Party, a "Watson Covered Drug"), including, without limitation, Watson Covered Drugs with Labeler Codes: 00209, 00364, 00402,  00536, 00591, 16252, 24196, 46193,  51875, 52544, 54391, 55515, 58840, 62022, 62037, 62109, 68691, and 71114; for illustrative purposes only and without in any respect limiting the foregoing definition of Watson Covered Drug, attached hereto as **Exhibit 3** is a schedule of NDCs for drug products manufactured, marketed and/or sold under the labeler codes identified in this subparagraph II.H.(i); (ii) with respect to the Texas Proceedings, one or more of the Watson Parties failed to report, or improperly reported, pricing information to the Texas Vendor Drug Program or otherwise failed to comply with the program requirements as to the reporting of pricing information to be used for reimbursement purposes; (iii) with an action or omission by, or with the knowledge of, one or more of the Watson Parties, the Reported Prices of certain Watson Covered Drugs of one or more of the Watson Parties were higher, and sometimes substantially higher, than the prices paid by customers of one or more of the Watson Parties for certain of the Watson Covered Drugs; (iv) one or more of the Watson Parties used an artificially inflated spread between the Reported Prices and the actual selling prices for drugs in marketing, promoting and/or selling Watson Covered Drugs to existing and potential customers; and (v) one or more of the Watson Parties allegedly knew that the reporting of false, fraudulent and/or inflated Reported Prices in connection with certain Watson Covered Drugs and/or marketing those Watson Covered Drugs based on the artificially inflated spread between the Reported Prices and the actual

selling prices would cause the customers and others to submit false, fraudulent and/or inflated claims for reimbursement to the Medicaid Program.

I.      For purposes of this Agreement, the conduct described in Subparagraph II.H of this Agreement, and any action, omission or other conduct, whether actual or alleged, contemplated by any provision of any of Subparagraph II.H of this Agreement or referred to or alleged in any pleading, motion, affidavit, document, or other method of communication whatsoever in any of the Civil Actions, is hereafter referred to as the "Covered Conduct".

J.      The Plaintiffs contend that, as a result of the Covered Conduct, the Medicaid Program, the United States and the Settling States were damaged.

K.      Each of the Watson Parties denies any and all wrongdoing, and denies that it has any liability, relating to the Covered Conduct.

L.      To avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these disputed claims, and as a result of a mutual desire to settle their disputes, the Parties wish to resolve their differences arising from the Federal Qui Tam Actions, the Civil Actions and the Covered Conduct and have reached a full, fair, and final settlement as set forth in this Agreement, which settlement the Parties acknowledge and agree is not punitive in purpose or effect.

M.      This Agreement is intended to fully, finally, and forever resolve any and all claims against, and liability of, any of the Watson Released Parties (as defined below) arising under the State Proceedings, for or arising from the Covered Conduct, including, without limitation, all of the claims that were brought, could have been brought, or could be brought in the future by or on behalf of any of the Plaintiffs related to the "Federal-

Share" (defined to mean the United States' portion of any Medicaid reimbursement in any of the Settling States) of any Medicaid reimbursement arising from any of the Covered Conduct for any Watson Covered Drug, or the "State-Share" (defined to mean a state's portion of any Medicaid reimbursement in any of the Settling States) of any Medicaid reimbursement for any of the Settling States arising from any of the Covered Conduct for any Watson Covered Drug.

N.      This Agreement is the result of a compromise of disputed issues of law and fact, and the execution and delivery of this Agreement shall not constitute or be construed as an admission of fault, liability, or wrongdoing by any of the Parties, nor does it constitute evidence of any liability or unlawful conduct on the part of the Parties, and this Agreement shall not be admissible as evidence of any fault or liability of the Parties in any investigation, administrative claim, action, suit, or proceeding, or federal or state court or arbitration proceeding.

III.    <u>TERMS AND CONDITIONS</u>

        NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations set forth below in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

        1.      The foregoing Preamble is incorporated herein.

        2.      In full and final settlement of all of the Released Claims (as defined below), Watson Pharmaceuticals, Inc. (the "Watson Payor") shall pay, or shall cause to be paid on its behalf, the sum of seventy nine million United States dollars ($79,000,000) (the "Settlement Amount") for the benefit of the Plaintiffs on the terms and subject to the

conditions set forth herein.  The Parties agree that the Settlement Amount shall resolve, fully and finally, all of the Released Claims.  The Parties further agree that all amounts payable to any of the Relator's (or any other Plaintiff's) attorneys or other representatives or advisors shall be paid out of the Settlement Amount without further liability of any Watson Party.

3. Within fifteen (15) business days following the Effective Date (as defined below), the Watson Payor shall pay the Settlement Amount by wire transfer into an "Escrow Account" at Wells Fargo Bank, National Association, (the "Escrow Agent") to be administered in accordance with the terms of the separate Escrow Agreement in the form attached as **Exhibit 4** hereto to be executed by and among the Parties within (5) business days following the Effective Date (the "Escrow Agreement").  The allocation of the Settlement Amount among the Plaintiffs, the United States, and their respective counsel is a matter that shall be and has been handled separately by and among the Plaintiffs and the United States and their advisors, without any involvement by or input from any of the Watson Parties.  None of the Watson Parties were consulted about the allocation of the Settlement Amount among the Plaintiffs and the United States, nor has any Watson Party had any input into the allocation. For this reason, none of the Watson Parties are in a position to agree to the allocation and, as a part of the settlement, will not contest such allocation or be deemed to have endorsed or been responsible for any such allocation.  The Plaintiffs and the United States have agreed among themselves to share in the Settlement Amount as set forth in the "Settlement Amount Allocation Schedule" attached hereto as **Exhibit 5**.  Watson has been informed by the Plaintiffs that the United States shall receive the amount of $34,156,715.28   from the Settlement Amount from

which it shall pay such relator awards pursuant to the United States False Claims Act (31 U.S.C. §3730) as may be agreed to between the United States and the Relator as ordered by the Court.

4.    Within three (3) business days following the date of the deposit by Watson of the Settlement Amount into the Escrow Account, the Parties shall file the following in the appropriate court or courts: (1) a Joint Stipulation of Dismissal with Prejudice and proposed Order of Dismissal with Prejudice in the Florida Proceedings, the Texas Proceedings, the New York Proceedings and the Iowa Proceedings in the form attached hereto as **Exhibits 6, 7, 8, and 9** respectively; (2) any necessary motions seeking entry of the proposed Orders of Dismissal with Prejudice in the Florida Proceedings, the Texas Proceedings, the New York Proceedings and the Iowa Proceedings; and (3) the Stipulation of Dismissal with Prejudice, in the form attached hereto as **Exhibit 10** in the Federal Qui Tam Proceedings.   Further, within three (3) business days following the date of the deposit by Watson of the Settlement Amount into the Escrow Account, the Relator shall file the signed Consent of the United States, in the form attached hereto as **Exhibit 1**, in the Federal Qui Tam Proceedings and the Parties shall use their reasonable best efforts to cause the Court in the Federal Qui Tam Proceedings to enter the Order of Dismissal with Prejudice, in the form attached hereto as **Exhibit 11**.

5.    The Escrow Agent shall hold the Settlement Amount and any income earned thereon in escrow pursuant to the terms of the Escrow Agreement.  The Escrow Agent shall not distribute any portion of the Settlement Amount or any income earned thereon until a Final Order Confirmation Notice (as defined below) has been delivered for each of the State Proceedings and the Federal *Qui Tam* Proceedings except as

otherwise provided in the Escrow Agreement. If the Watson Payor becomes aware that the proposed Orders of Dismissal with Prejudice shall have become Final Orders in a form reasonably acceptable to effect the agreements and releases contemplated by this Agreement, it shall forthwith execute and deliver to the Escrow Agent and each other Party a notice, for each Final Order, stating that a Final Order has been issued for each Civil Action (a "<u>Final Order Confirmation Notice</u>").  Upon receiving the  Final Order Confirmation Notices from Watson, and written distribution instructions from the Plaintiffs and the United States as to the manner in which their respective distributions pursuant to the Settlement Amount Allocation Schedule and any income earned thereon should be delivered, within three (3) business days following such date, the Escrow Agent shall distribute the Settlement Amount, as set forth in the Settlement Amount Allocation Schedule, and any income earned thereon, pursuant to such written instructions from the Plaintiffs and the United States.  Watson may, in its sole and absolute discretion, elect to deliver to the Escrow Agent a Final Order Confirmation Notice for a State Proceeding before it delivers the remaining Final Order Conformation Notices for the other Civil Actions, in which event the Escrow Agent shall distribute any amounts payable to the state or local government plaintiff or plaintiffs in the Civil Action for which Watson elects to deliver the Final Order Conformation Notice.

6.    In consideration of the obligations of the Watson Parties in this Agreement, and conditioned on the Watson Payor's payment in full of the Settlement Amount in accordance with Paragraphs III.2 through III.4 above and receipt of the Orders of Dismissal with Prejudice, each Plaintiff, on behalf of itself  (including, with respect to

the Relator, to the extent it is capable under the law all qui tam claims brought on behalf of the United States in the Federal Qui Tam proceedings), and each of its and their predecessors, successors, heirs, trustees, subsidiaries, parents, assigns, and divisions and any current or former shareholders, directors, officers, agents, agencies, departments, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing, fully and finally releases, acquits, and forever discharges each of the Watson Parties and each of their respective present and former predecessors, successors, heirs, trustees, subsidiaries, parents, assigns and divisions and each of the current and former shareholders, officers, directors, employees, managers, partners, agents, agencies, departments, servants, attorneys, advisors and other representatives of any of the foregoing (collectively, the "Watson Released Parties") from any and all civil, regulatory and/or administrative claim, action, suit, demand, right, cause of action, liability, judgment, damage or proceeding, whether sealed or unsealed (including attorneys' fees, penalties, punitive damages, costs, and expenses of every kind and however denominated), which has been asserted, could have been asserted or could be asserted in the future under any source of law, contract, in equity or other right for or arising from any of the Covered Conduct (collectively, the "Released Claims"), including but not limited to the State-Share and the Federal-Share for any of the Settling States for or arising out of the Covered Conduct or the price reporting for Watson Covered Drugs. Without limiting the generality of the foregoing, and to the fullest extent that the Relator and the Settling States are capable under applicable law, this release fully discharges and releases each Watson Released Party from (i) any obligation to pay Medicaid-related damages, restitution, fines and/or penalties arising from the Covered Conduct; (ii) any

civil obligation to the Relator or its attorneys, including any Relator's share, expenses, attorneys' fees, and costs associated with the Civil Actions to which Relator or its attorneys may be entitled; (iii) any obligation to pay the State-Share of any Settling State of any claim asserted in the Civil Actions or for any Covered Conduct; and (iv) any obligation to pay the Federal-Share of any Settling State of any claim asserted in the Civil Actions or for any Covered Conduct.

7.      In consideration of the obligations of the Plaintiffs set forth in this Agreement, each Watson Party, on behalf of itself and its predecessors, successors, subsidiaries, parents, assigns and divisions and any current or former shareholders, directors, officers, agents, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing fully and finally release the United States of America, the State of Texas, the State of Florida, the State of Iowa, the City of New York and all New York counties in MDL-1456, any of their agencies, agents, employees, servants, attorneys and departments, the Individual Plaintiffs and the Relator, in its own capacity and in its capacity as qui tam representative of the United States of America, and Relator's present and former predecessors, successors, heirs, trustees, parents, subsidiaries, assigns, divisions and each of the current and former officers, directors, employees, managers, partners, agents, servants, attorneys, advisors and other representatives of any of the foregoing from any claims or liabilities arising from the Covered Conduct, or the investigation or litigation of claims arising from the Covered Conduct which any of Watson Parties has or could have asserted.

8.      Nothing in this Agreement shall be construed to create a waiver of the Sovereign Immunity of the United States of America, the State of Texas, the State of

Florida, the State of Iowa, the State of New York or the City of New York or the New York counties in MDL-1456.

9.     Notwithstanding any other term of this Agreement, including the release provisions in Paragraphs III.6 and III.7 above, any and all of the following are specifically reserved and excluded from the scope and terms of this Agreement, and from the scope and terms of the releases, as to any entity or person (including the Parties):

(a)     Any claims based upon such obligations as are created by this Agreement;

(b)     The federal share of damages for the alleged liability of the Watson Parties arising under the Federal Qui Tam Proceedings for any state other than the Settling States;

(c)     The subrogation rights to claims for personal injury or injury to real or personal property arising from usage by a participant in the Medicaid Program of any of the Watson Covered Drugs covered thereunder;

(d)     Any claims based on a failure to deliver products or services due;

(e)     Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code) or any state tax or revenue law;

(f)     Any express or implied warranty claims or other claims for defective or deficient products and services provided by any Watson Party;

(g)     Any claims based on or arising out of conduct occurring after the Effective Date of this Agreement;

(h)      Any liability to the United States, or the States of Florida, Texas, New York, or the New York Counties in MDL 1456 for any conduct other than the Covered Conduct;

(i)      Any civil or administrative liability that the Watson Parties have or may have under any state statute, regulation, or rule not covered by the release provisions in Paragraph 5 above; and/or

(j)      Any claims arising from the Watson Parties' obligations to report Average Manufacturer Prices ("AMPs") and/or Best Prices, and/or pay rebates to any Settling State under any Rebate Agreement, under the provisions of the Omnibus Budget Reconciliation Act of 1990 and all amendments thereto.

10.      The Parties each represent that this Agreement is freely and voluntarily entered into without any degree of duress whatsoever.

11.      Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

12.      This Agreement shall be governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement relating to the Federal Qui Tam Proceedings, the New York Proceedings, and/or the Iowa Proceedings shall be the United States District Court for the District of Massachusetts and that the United States District Court for the District of Massachusetts shall retain continuing jurisdiction over the enforcement of this Agreement and all releases relating to the Federal Qui Tam Proceedings provided for herein, including for purposes of issuing an injunction in protection of any court's jurisdiction to enforce the terms, conditions, and releases

provided for in this Agreement.  In as much as any provision of this Agreement relates to the Parties' rights in the Florida Proceedings, including contractual rights, releases or enforcement remedies, the exclusive jurisdiction and venue shall be the Second Circuit in and for Leon County, Florida.  In as much as any provision of this Agreement relates to the Parties' rights in the Texas Proceedings, including contractual rights, releases or enforcement remedies, the exclusive jurisdiction and venue shall be the 419th Judicial District Court of Travis County, Texas.

13.     This Agreement, together with all Exhibits and attachments constitute the complete agreement between the Parties with regard to the subject matter hereof.  This Agreement may not be amended except by written consent of all of the Parties.  The failure by any of the Parties to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement, or a course of dealings between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

14.     The individuals signing this Agreement on behalf of a Party represent and warrant that they are authorized to execute this Agreement on behalf of such Party.

15     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

16.     This Agreement is binding on each of the Watson Parties and its respective successors, transferees, and assigns.

17.     This Agreement is binding on each of the Plaintiffs, their attorneys, successors, transferees, heirs, and assigns.

18.     This Agreement has been negotiated at arm's length and between and among persons sophisticated and knowledgeable in the matters dealt with in this Agreement.  In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties.  Accordingly, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purposes of the Parties and this Agreement.

19.     If any provision of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provision to other circumstances, shall remain in effect and be interpreted so as best reasonably to effect the intent of the Parties.  Notwithstanding the foregoing, if either the payment or any of the release provisions hereof are found to be unenforceable or invalid by a court of competent jurisdiction, then such invalidity or unenforceability shall be cause for voiding the entirety of this Agreement at the election of the Party the interests of which are injured by the finding of invalidity or unenforceability; however, the Plaintiffs shall be entitled to re-file, reinstate and continue to litigate their claims against the Defendants without regard to any statute of limitations or other time barred defense which may be asserted by the Defendants for the time period commencing upon the Effective Date of this Settlement Agreement and ending 30 days after the date that the Settlement Agreement is voided pursuant to the terms of this Paragraph and any applicable statute of limitations shall be deemed tolled for the time period described herein.

20.     This Agreement is effective (the "Effective Date") on the latter of: a.) the date of signature of the last signatory to this Agreement upon execution and delivery hereof by all of the Parties or b.) the delivery to Watson, of the written representation  of Counsel for the Relator, James J. Breen, that he has in his possession the signed Consent of the United States in the form attached hereto as **Exhibit 1** and is prepared to file the Stipulation to Dismissal with Prejudice and Consent of the United States in accordance with Paragraph III. 4. of this Agreement upon payment of the Settlement Amount to the Escrow Agent. Facsimiles or PDFs of signatures shall constitute acceptable binding signatures for purposes of this Agreement.


[Remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, the Parties have executed this Agreement:

**WATSON PARTIES**

Watson Pharmaceuticals, Inc., Watson Pharma, Inc. f/k/a Schein Pharmaceuticals, Inc., Watson Laboratories, Inc., Rugby Laboratories, Inc., Oclassen Pharmaceuticals, Inc., Marsam Pharmaceuticals, Inc., and Watson Laboratories-Florida, Inc., f/k/a Andrx Pharmaceuticals, Inc.


BY: _____   Date: _____
      David A. Buchen, Esq.
      Executive Vice President, General Counsel and Secretary




**RELATOR AND ITS ATTORNEY,**
**THE BREEN LAW FIRM, P.A.**

BY: _____   Date: _____
      James J. Breen
      The Breen Law Firm, P.A.
      Suite 260
      5755 North Point Parkway
      Alpharetta, Georgia 30022
      Counsel to Ven-A-Care of the Florida Keys, Inc.

      VEN-A-CARE OF THE FLORIDA KEYS, INC.

BY: _____   Date: _____
      T. Mark Jones, President


**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

      ZACHARY T. BENTLEY

      _____   Date: _____
      Zachary T. Bentley

IN WITNESS WHEREOF, the Parties have executed this Agreement:

**WATSON PARTIES**

Watson Pharmaceuticals, Inc., Watson Pharma, Inc. f/k/a Schein Pharmaceuticals, Inc., Watson Laboratories, Inc., Rugby Laboratories, Inc., Oclassen Pharmaceuticals, Inc., Marsam Pharmaceuticals, Inc., and Watson Laboratories-Florida, Inc., f/k/a Andrx Pharmaceuticals, Inc.

BY: _____   Date: ___August 22, 2011___
     David A. Buchen, Esq.
     Executive Vice President, General Counsel and Secretary

**RELATOR AND ITS ATTORNEY,**
**THE BREEN LAW FIRM, P.A.**

BY: _____   Date: _____
     James J. Breen
     The Breen Law Firm, P.A.
     Suite 260
     5755 North Point Parkway
     Alpharetta, Georgia 30022
     Counsel to Ven-A-Care of the Florida Keys, Inc.

     VEN-A-CARE OF THE FLORIDA KEYS, INC.

BY: _____   Date: _____
     T. Mark Jones, President

**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

     ZACHARY T. BENTLEY

     _____   Date: _____
     Zachary T. Bentley

IN WITNESS WHEREOF, the Parties have executed this Agreement:

**WATSON PARTIES**

Watson Pharmaceuticals, Inc., Watson Pharma, Inc. f/k/a Schein Pharmaceuticals, Inc., Watson Laboratories, Inc., Rugby Laboratories, Inc., Oclassen Pharmaceuticals, Inc., Marsam Pharmaceuticals, Inc., and Watson Laboratories-Florida, Inc., f/k/a Andrx Pharmaceuticals, Inc.


BY: _____   Date: _____
      David A. Buchen, Esq.
      Executive Vice President, General Counsel and Secretary




**RELATOR AND ITS ATTORNEY,**
**THE BREEN LAW FIRM, P.A.**

BY: _____   Date: _2( 9 / 11_
      James J. Breen
      The Breen Law Firm, P.A.
      Suite 260
      5755 North Point Parkway
      Alpharetta, Georgia 30022
      Counsel to Ven-A-Care of the Florida Keys, Inc.


      VEN-A-CARE OF THE FLORIDA KEYS, INC.

BY: _____   Date: _____
      T. Mark Jones, President


**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

      ZACHARY T. BENTLEY

      _____   Date: _____
      Zachary T. Bentley

IN WITNESS WHEREOF, the Parties have executed this Agreement:

**WATSON PARTIES**

Watson Pharmaceuticals, Inc., Watson Pharma, Inc. f/k/a Schein Pharmaceuticals, Inc., Watson Laboratories, Inc., Rugby Laboratories, Inc., Oclassen Pharmaceuticals, Inc., Marsam Pharmaceuticals, Inc., and Watson Laboratories-Florida, Inc., f/k/a Andrx Pharmaceuticals, Inc.

BY: _____   Date: _____
    David A. Buchen, Esq.
    Executive Vice President, General Counsel and Secretary

**RELATOR AND ITS ATTORNEY,
THE BREEN LAW FIRM, P.A.**

BY: _____   Date: _____
    James J. Breen
    The Breen Law Firm, P.A.
    Suite 260
    5755 North Point Parkway
    Alpharetta, Georgia 30022
    Counsel to Ven-A-Care of the Florida Keys, Inc.

    VEN-A-CARE OF THE FLORIDA KEYS, INC.
BY: _____   Date: _8/19/2011_
    T. Mark Jones, President

**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

    ZACHARY T. BENTLEY
_____   Date: _8\19\2011_
    Zachary T. Bentley

T. MARK JONES

_____   Date: 8/19/2011
T. Mark Jones


JOHN M. LOCKWOOD

_____   Date: _____
John M. Lockwood


LUIS E. COBO

_____   Date: 8/19/2 011
Luis E. Cobo

**TEXAS**

State of Texas
Office of the Attorney General

BY: _____   Date: _____

Raymond C. Winter
Chief, Civil Medicaid Fraud Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548



State of Texas
Health and Human Services Commission

BY: _____   Date: _____
Title: Executive Commissioner, HHSC

T. MARK JONES

_____   Date: _____
T. Mark Jones


JOHN M. LOCKWOOD

_____   Date: _8/19/11_
John M. Lockwood


LUIS E. COBO

_____   Date: _____
Luis E. Cobo

**TEXAS**

State of Texas
Office of the Attorney General

BY:   _____   Date: _____

Raymond C. Winter
Chief, Civil Medicaid Fraud Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548


State of Texas
Health and Human Services Commission

BY:   _____   Date: _____
Title:   Executive Commissioner, HHSC

T. MARK JONES

_____  Date: _____
T. Mark Jones


JOHN M. LOCKWOOD

_____  Date: _____
John M. Lockwood


LUIS E. COBO

_____  Date: _____
Luis E. Cobo

**TEXAS**

State of Texas
Office of the Attorney General

BY: _____  Date: _____

Raymond C. Winter
Chief, Civil Medicaid Fraud Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548



State of Texas
Health and Human Services Commission

BY: _____  Date: _____
Title:  Executive Commissioner, HHSC

**T. MARK JONES**

_____   Date: _____
T. Mark Jones

**JOHN M. LOCKWOOD** .

_____   Date: _____
John M. Lockwood

**LUIS E. COBO**

_____   Date: _____
Luis E. Cobo

**TEXAS**

State of Texas
Office of the Attorney General

BY: _____   Date: _____   8/19/11

Raymond C. Winter
Chief, Civil Medicaid Fraud Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548

State of Texas
Health and Human Services Commission

BY: _____   Date: 8/19/11
Title:   Executive Commissioner, HHSC

**FLORIDA**

State of Florida
Office of the Attorney General

BY: _____   Date: _____


Deputy Attorney General and Chief of Staff,
State of Florida Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399

**FLORIDA**

State of Florida
Office of the Attorney General

BY: _____     Date: _____8/18/11_____

Deputy Attorney General and Chief of Staff,
State of Florida Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399

**CITY of NEW YORK and NEW YORK COUNTIES as plaintiffs in  MDL-1456, and the STATE OF NEW YORK**

BY:  _____   Date: _____

On behalf of The State of New York
Eric T. Schneiderman, Attorney General
Of the State of New York
By:   Carolyn T. Ellis
Special Assistant Attorney General
OFFICE OF THE NEW YORK
ATTORNEY GENERAL
Medicaid Fraud Control Unit
120 Broadway
New York, NY  10271

BY:  _____   Date: _____

Stanley J. Levy
Theresa A. Vitello
LEVY PHILLIPS & KONIGSBERG, LLP
800 Third Avenue, 13th Floor
New York, NY 10007
Counsel for the County of Orange

BY:  _____   Date: _____

Ross Brooks
MILLBERG  LLP
One Pennsylvania Plaza
New York, NY  10119-0165

Counsel for the County of Nassau

BY:  _____   Date: _____

_____
On behalf of Michael A. Cardozo
CORPORATION COUNSEL
OF THE CITY OF NEW YORK

**CITY of NEW YORK and NEW YORK COUNTIES as plaintiffs in MDL-1456, and the STATE OF NEW YORK**

BY: _Carolyn T. Ellis_      Date: _8/19/11_

On behalf of The State of New York
Eric T. Schneiderman, Attorney General
Of the State of New York
By:   Carolyn T. Ellis
Special Assistant Attorney General
OFFICE OF THE NEW YORK
ATTORNEY GENERAL
Medicaid Fraud Control Unit
120 Broadway
New York, NY  10271

BY: _____      Date: _____

Stanley J. Levy
Theresa A. Vitello
LEVY PHILLIPS & KONIGSBERG, LLP
800 Third Avenue, 13th Floor
New York, NY 10007
Counsel for the County of Orange

BY: _____      Date: _____

Ross Brooks
MILLBERG  LLP
One Pennsylvania Plaza
New York, NY  10119-0165

Counsel for the County of Nassau

BY: _____      Date: _____

_____
On behalf of Michael A. Cardozo
CORPORATION COUNSEL
OF THE CITY OF NEW YORK

**CITY of NEW YORK and NEW YORK COUNTIES as plaintiffs in  MDL-1456, and the STATE OF NEW YORK**

BY: _____   Date: _____

On behalf of The State of New York
Eric T. Schneiderman, Attorney General
Of the State of New York
By:   Carolyn T. Ellis
Special Assistant Attorney General
OFFICE OF THE NEW YORK
ATTORNEY GENERAL
Medicaid Fraud Control Unit
120 Broadway
New York, NY  10271

BY: _Theresa A. Vitello/ag_   Date: _8/23/11_

Stanley J. Levy
Theresa A. Vitello
LEVY PHILLIPS & KONIGSBERG, LLP
800 Third Avenue, 13th Floor
New York, NY 10007
Counsel for the County of Orange

BY: _____   Date: _____

Ross Brooks
MILLBERG  LLP
One Pennsylvania Plaza
New York, NY  10119-0165

Counsel for the County of Nassau

BY: _____   Date: _____

_____
On behalf of Michael A. Cardozo
CORPORATION COUNSEL
OF THE CITY OF NEW YORK

**CITY of NEW YORK and NEW YORK COUNTIES as plaintiffs in MDL-1456, and the STATE OF NEW YORK**

BY: _____  Date: _____

On behalf of The State of New York
Eric T. Schneiderman, Attorney General
Of the State of New York
By:  Carolyn T. Ellis
Special Assistant Attorney General
OFFICE OF THE NEW YORK
ATTORNEY GENERAL
Medicaid Fraud Control Unit
120 Broadway
New York, NY  10271

BY: _____  Date: _____

Stanley J. Levy
Theresa A. Vitello
LEVY PHILLIPS & KONIGSBERG, LLP
800 Third Avenue, 13th Floor
New York, NY 10007
Counsel for the County of Orange

BY: _____  Date: 8/22/11

Ross Brooks
MILLBERG  LLP
One Pennsylvania Plaza
New York, NY  10119-0165

Counsel for the County of Nassau

BY: _____  Date: _____

_____
On behalf of Michael A. Cardozo
CORPORATION COUNSEL
OF THE CITY OF NEW YORK

**CITY of NEW YORK and NEW YORK COUNTIES as plaintiffs in MDL-1456, and the STATE OF NEW YORK**

BY: _____  Date: _____

On behalf of The State of New York
Eric T. Schneiderman, Attorney General
Of the State of New York
By:  Carolyn T. Ellis
Special Assistant Attorney General
OFFICE OF THE NEW YORK
ATTORNEY GENERAL
Medicaid Fraud Control Unit
120 Broadway
New York, NY 10271

BY: _____  Date: _____

Stanley J. Levy
Theresa A. Vitello
LEVY PHILLIPS & KONIGSBERG, LLP
800 Third Avenue, 13th Floor
New York, NY 10007
Counsel for the County of Orange

BY: _____  Date: _____

Ross Brooks
MILLBERG LLP
One Pennsylvania Plaza
New York, NY 10119-0165

Counsel for the County of Nassau

BY: _____  Date: Aug. 19, 2011

_____
On behalf of Michael A. Cardozo
CORPORATION COUNSEL
OF THE CITY OF NEW YORK

Attorney for Plaintiff the City of New York
100 Church Street
New York, New York 10007
By:  John R. Low-Beer
Senior Counsel
Affirmative Litigation Division


BY:  _____   Date: _____

Joanne M. Cicala
Daniel Hume
KIRBY McINERNEY  LLP
825 Third Avenue
New York, NY  10022

Counsel for the Plaintiff Counties, except for the County of Nassau and the County of Orange

Attorney for Plaintiff the City of New York
100 Church Street
New York, New York 10007
By: John R. Low-Beer
Senior Counsel
Affirmative Litigation Division


BY: _____   Date: 8/19/11

Joanne M. Cicala
Daniel Hume
KIRBY McINERNEY  LLP
825 Third Avenue
New York, NY  10022

Counsel for the Plaintiff Counties, except for the County of Nassau and the County of
Orange

**IOWA**

BY: _____   Date: _____

Tom Miller, Attorney General
for the State of Iowa Office


BY: _____   Date: _____
Eric Tabor
Iowa Department of Justice
1305 E. Walnut St.
Hoover Bldg., 2nd Floor
Des Moines, IA 50319
Tel: (515) 281-4055



BY: _____   Date: _____

Joanne M. Cicala
Daniel Hume
Kirby McInerney  LLP
825 Third Avenue
New York, NY  10022

Special Counsel for the State of Iowa

IOWA

BY: _____ Date: 8/19/11

Tom Miller, Attorney General
for the State of Iowa Office

BY: _____ Date: 8/19/11

Eric Tabor,  Iowa Department of Justice
1305 E. Walnut St.
Hoover Bldg., 2nd Floor
Des Moines, IA 50319
Tel: (515) 281-4055


BY: _____ Date: _____

Joanne M. Cicala
Daniel Flume
Kirby McInerney LLP
825 Third Avenue
New York, NY 10022

 Special Counsel for the State of Iowa

23

**IOWA**

BY: _____   Date: _____

Tom Miller, Attorney General
for the State of Iowa Office


BY: _____   Date: _____
Eric Tabor
Iowa Department of Justice
1305 E. Walnut St.
Hoover Bldg., 2nd Floor
Des Moines, IA 50319
Tel: (515) 281-4055


BY: _____   Date: 8/19/11

Joanne M. Cicala
Daniel Hume
Kirby McInerney  LLP
825 Third Avenue
New York, NY  10022

Special Counsel for the State of Iowa