**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION:  01-CV-12257-PBS |
| ALL CLASS ACTIONS | Judge Patti B. Saris |

**MEMORANDUM IN SUPPORT OF MOTION FOR MODIFICATION
OF LEAD COUNSEL'S ALLOCATION OF FEES AND
REIMBURSEMENT OF EXPENSES TO INCLUDE UNCOUNTED
TIME AND EXPENSE INCURRED DIRECTLY IN THIS MDL**

**I.      INTRODUCTION**

On December 10, 2008, in response to another counsel's motion disputing the fairness of Lead Counsel's allocation with respect to the GSK settlement, this Court issued an electronic Order commanding that "allocation of fees and expenses must be fair and transparent" and permitting for review of counsel's objections to Lead Counsel's allocation.  Adam S. Levy and his firm Law Office of Adam S. Levy, LLC[1] (collectively "Levy"), who have performed work on behalf of plaintiffs and the Classes, or that otherwise benefitted the Classes, since July of 2005 bring this Motion because Lead Counsel is acting arbitrarily, unfairly and non-transparently in refusing to include in their allocation time and expense relating to Levy's work performed directly in this MDL after August 2006.  As a result, Lead Counsel is allocating less to Levy than to companion plaintiffs' counsel for Levy's work performed directly in this action.  Court

---

[1] Formerly Law Office of Adam S. Levy.

intervention is necessary to address Lead Counsel's abuse of discretion in misallocating settlement funds.[2]

## II.   <u>FACTUAL BACKGROUND</u>

Levy joined the MDL at the invitation of Lead Counsel in October of 2005.  At that time, Lead Counsel needed to locate representatives for Class 1 (Medicare beneficiaries who had paid for all or part of the cost of one or more drugs sold by Defendants).  Prior to joining the MDL, Levy and certain others were co-counsel with Kline & Specter, P.C., in other AWP litigation around the country.  Because Kline & Specter and its co-counsel had spent significant time representing Medicare beneficiaries in other litigation, they had contacts with potential class members.  Although there was a history of conflict and hard feelings between the Kline & Specter group and some of the current Lead Counsel in this case who had also served as lead counsel in the *Lupron* litigation in this District before Judge Stearns, Kline & Specter and Lead Counsel agreed that in exchange for Kline & Specter's help securing suitable class representatives for this MDL, Kline & Specter would serve in a co-leadership position and certain of Kline & Specter's co-counsel, including "Adam Levy" as named expressly in the agreement, would be invited to participate as non-co-leads in this MDL.  Thereafter, Kline & Specter provided a number of its consumer plaintiff clients who were included in the Third Amended Complaint (as well as subsequent iterations) and, later, Kline and Specter was appointed Co-Lead Counsel.  *See* Declaration of Adam S. Levy in Support of Motion for

---

[2] Separately, Levy has joined in the pending Motion for Modification of Lead Counsel's Allocation of Fees to Include Time and Expense Incurred in Related State Court Actions filed by three other firms to address Lead Counsel's refusal to count in their allocation time and expense incurred in litigating parallel, coordinated state court claims that were rolled up in favor of this MDL proceeding.  *See* Dkt. Nos. 7908 - 7910 (Motion regarding state court time and expense and supporting Memorandum and Declaration of Kent Williams attaching exhibits) and Dkt. No. 7939 (Amended Notice of Joinder by Levy in said Motion).  Therefore, the instant Memorandum, Motion and supporting Declaration address only Lead Counsel's misallocation regarding time and expense for Levy's work performed directly in this MDL.

Modification of Lead Counsel's Allocation of Fees and Reimbursement of Expenses to Include Uncounted Time and Expense Incurred Directly in this MDL, at ¶¶ 5-8.

Levy has performed substantial, valuable and important work in this MDL on behalf of plaintiffs and the Classes, or that otherwise benefitted the Classes, at all times throughout Levy's involvement in this litigation.  Lead Counsel recognizes the Levy firm as one of the 19 "Tier III" reporting plaintiffs' firms in the case.  And Lead Counsel's Declarations supporting prior fee petitions have, up to a point, expressly included the Levy firm's time, lodestar and expense relating to its work performed directly in this MDL.  *Id.* at ¶ 9.  To date, Lead Counsel has counted in its allocation and made certain distributions to Levy (on par with the other Tier III counsel) in connection with the fees and/or expenses awarded in the GSK, Astra Zeneca and BMS settlements for Levy's work performed directly in this MDL from inception (July of 2005) through August of 2006.  With respect only to that pre-September 2006 period of Levy's work, Lead Counsel have represented to Levy that they intend to make a full allocation and distribution to Levy in the same manner as the other plaintiff firms in the case.  Thus, there is no dispute with respect to, and therefore the instant Motion is not directed to, the pre-September 2006 period.  *Id.* at ¶ 10.

However, Lead Counsel refuses to make an allocation for Levy's time and expense relating to Levy's work performed directly in this MDL after August 2006 (*i.e.* from September 11, 2006 through November 23, 2009, hereafter the "post-August 2006" period).  Over this post-August 2006 period, Levy's lodestar (using the Levy firm's historical rates) is $238, 251.25 and Levy's expenses are $2,765.29.  *Id.* at ¶ 3.[3]

Kline & Specter withdrew as Co-Lead Counsel in September of 2006.  Shortly before that, The Haviland Law Firm, owned by Donald Haviland who had previously been an attorney

_____
[3] Levy's time and expense information has been provided to Lead Counsel.

3

with Kline and Specter, began operations and stepped in for Kline & Specter in terms of its role in representing the consumer plaintiffs in this action. On September 11, 2006, the Hagans Berman firm filed a "Notice of Change of Entry of Appearance of Co-Lead Counsel for Plaintiffs and the Class and Change of Address" (Dkt. No. 3088) on behalf of the Haviland firm. *Id.* at ¶ 11.

Over the post-August 2006 period, Mr. Levy served as Of Counsel to the Haviland firm in this case. During that time, he performed substantial, valuable and important work directly in this MDL on behalf of plaintiffs and the Classes or that otherwise benefitted the Classes. Mr. Levy is no longer Of Counsel to the Haviland firm. When he was Of Counsel, he functioned on a contingent fee basis. Levy bore the full risk of not being paid if the case were not successful, and was fully responsible for and not reimbursed for any expenses. No salary or any up-front compensation was paid for the work that was performed. Levy has not received any payment, compensation or reimbursement for the time, expense and work performed in this MDL after August 2006. *Id.* at ¶ 12.

On August 25, 2011, Levy learned of the existence of Lead Counsel's side agreement with the Haviland firm to resolve its clients' objections to the Track 2 settlement. Like any other recipient of electronic notifications of filings in this case, Levy learned of this after receiving the CM/ECF notification of filing of Certain Consumer Plaintiffs' Motion to Withdraw All Pending Motions, Submissions and Objections Concerning the Proposed Track 2 Settlement ("Motion to Withdraw Objections"), Dkt. No. 7766, and then reading in that Motion a one-clause reference to their "private settlement." *Id.* at p.2. The Motion to Withdraw Objections said nothing more about it. *Id.* at ¶ 13.

Apparently, it is this "private settlement" and side agreement upon which Lead Counsel bases its refusal to make an allocation for Levy's post-August 2006 MDL time and expense. *Id.* at ¶ 14. Neither Lead Counsel nor Mr. Haviland has produced the side agreement to Mr. Levy. To this day, Mr. Levy has not seen it. And despite Lead Counsel's apparent position that the "private settlement" and side agreement somehow extinguishes Levy's right to seek from Lead Counsel the requested allocation – something that Lead Counsel has not proven –Lead Counsel attorney Sean Matt told Mr. Levy that the agreement itself is "silent" (Mr. Matt's word) as to Levy. *Id.* at ¶ 15.

In addition to having never seen this "private settlement" agreement, not being consulted about its terms and knowing next to nothing about it, Mr. Levy also was excluded from the negotiations between Lead Counsel and Mr. Haviland leading up their settlement and knows very little about the negotiations. Though Lead Counsel knew about Levy's post-August 2006 time and expense before and during their negotiations with Mr. Haviland, Lead Counsel did not approach or ask Levy for a release with respect to Levy's claims or right to be paid for it by Lead Counsel, and Levy did not provide a release to anyone or sign/acknowledge (or even see) any settlement agreement purporting to resolve Levy's right or claims to be paid by Lead Counsel for it (or, for that matter, any of Levy's time and expense in the parallel, coordinated state court cases of which it also knew). Rather, assuming for the sake of argument that their side agreement could ever have the effect of resolving Levy's rights and claims, it is Levy's understanding that Lead Counsel understood, intended, and assented to the condition that Levy's time and expense was not being included in the resolution and settlement between Lead Counsel and the Haviland firm, and that Levy's post-August 2006 time and expense was being preserved

for inclusion in Lead Counsel's allocation via the Levy firm's Tier III participation in the case. *Id.* at ¶ 16.

Prior to reading that Lead Counsel and Mr. Haviland reached a "private settlement," Mr. Levy learned from Mr. Haviland of the fact that he was seeking to resolve with Lead Counsel his and his clients' objections and disputes.  Except for receiving only the slightest bit of information from Mr. Haviland, Mr. Levy was not privy to the details of the negotiations or the process that was taking place.  During whatever course of events that were taking place between Lead Counsel and Mr. Haviland, Mr. Haviland informed Mr. Levy that Lead Counsel offered to pay a percentage of the Haviland firm's lodestar, and that he was going to tell Lead Counsel that Levy's time and expense would stay separate to be counted and handled as part of the allocation to the Levy firm as a Tier III firm in the case.  According to Mr. Haviland, he discussed this with Lead Counsel and his agreement with them did not include, resolve or settle Levy's time and expense.  *Id.* at ¶ 17.

Levy, on more than one occasion, requested that Lead Counsel provide not only their side agreement (and all drafts of the agreement) with the Haviland firm, but also Lead Counsel's communications concerning the negotiations leading to or resulting in their side agreement.  In a recent phone conversation with Lead Counsel attorneys Sean Matt and Marc Edelson, Mr. Levy again asked for information regarding their negotiations, and particularly discussions concerning Levy's time and expense.  But Lead Counsel have not provided the agreement (or drafts thereof) and, during the phone call, they expressly refused to discuss with Mr. Levy or provide to him any information concerning those negotiations.  Mr. Levy's efforts to obtain the agreement and communications regarding their negotiations from Mr. Haviland have also failed.  *Id.* at ¶ 18.

Further, Mr. Levy, on more than one occasion, has expressed to Lead Counsel his understanding that Lead Counsel understood and intended that Levy's post-August 2006 time and expense was not being resolved by way of their agreement with Mr. Haviland, but rather that it was being carved out of their resolution and preserved, and that it was to be handled and included within the context of the Levy firm's Tier III participation in the MDL as part of the future allocation and distribution of fees and expenses from the remaining court awards. Lead Counsel have never directly denied this and have never responded directly about this. *Id.* at ¶ 19.

Lead Counsel have failed to demonstrate why they should be permitted to exclude Levy's post-August 2006 MDL time and expense in their allocation. Accordingly, Levy requests that this Court order Lead Counsel to count Levy's post-August 2006 MDL time and expense in any allocation they undertake. Alternatively, in the event that this Court does not directly order Lead Counsel to make such an allocation, Levy requests that this Court order Lead Counsel to produce to Levy the final and all drafts of the agreement between Lead Counsel and the Haviland firm and the communications and documents comprising or reflecting the negotiations between Lead Counsel and the Haviland firm that led to that agreement, and to permit Levy to take depositions of Lead Counsel and Mr. Haviland to discover the facts surrounding their "private settlement," side agreement and related negotiations.

### III.   ARGUMENT

On December 10, 2008, in response to another class counsel's motion disputing the fairness of Lead Counsel's allocation with respect to the GSK settlement, this Court issued an electronic Order which states, in pertinent part:

> The Court orders lead counsel to consult with all firms regarding its plan for allocating fees in this MDL in the future and submit a proposal to the Court within 30 days. I have no problems with the settlement, but allocation of fees and

expenses must be fair and transparent.  Any objections shall be reviewed on an
abuse of discretion standard.

Electronic Order (Saris, J., Dec. 10, 2008 entered at 4:06 PM).

"In a class action settlement, the district court has an independent duty under the Federal

Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are

reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline*

*Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008); *see also Zucker v. Occidental Petroleum,*

*Corp*., 192 F.3d 1323, 1328-29 (9th Cir. 1999) (independently of any objection, district court has

duty to scrutinize attorney fees to assure that they are fair and proper).  Although the court may

delegate the task of allocating a fee award among attorneys, it should not simply defer to

attorneys who have a direct interest in how the funds are to be distributed.  *In re High Sulphur*,

517 F.3d at 234-35.  "Such a direct conflict of interest strongly suggests that affording

substantial deference is inappropriate." *Id.* at 235.  Because of the conflict that arises from

attorneys making decisions or recommendations on their own fees, it is proper to ask the

question: "'How much deference is due the fox who recommends how to divvy up the

chickens?'"  *Id.* (quoting *In re Diet Drugs Prods. Liab. Litig*., 401 F.3d 143, 173 (3d Cir. 2005)

(Ambro J., concurring)).

A district court is required to "dispense[] with traditional judicial standards of

transparency, impartiality, procedural fairness and ultimate judicial oversight" over an allocation

of fees, *id.* at 234, and must pay "'careful attention … to the procedures by which the allocation

is set.'"  *Id.* at 235 (quoting *In re Diet Drugs*, 401 F.3d at 173-74) (Ambro J., concurring)).

Indeed, an attorney with an interest in a common fund has a due process right to be heard

regarding the distribution of that fund.  *In re Nineteen Appeals Arising Out of San Juan Dupont*

*Plaza Hotel Fire Litig*. 982 F.2d 603, 611 (1st Cir. 1992).  When a district court "'chooses to rely

8

on the recommendations of a committee of interested attorneys, it then becomes necessary to scrutinize more closely those recommendations.'" *In re High Sulfur* at 235 (quoting *Diet Drugs* at 174).

Lead Counsel are acting unfairly and non-transparently, and have abused their discretion, in refusing to count in their allocation Levy's time and expense for Levy's MDL work performed after August of 2006. It would appear that Lead Counsel are trying to punish Levy for the prior affiliation with Mr. Haviland and that they hope to succeed by employing a strategy of "guilt by association." Indeed, Lead Counsel employed that very tactic at the recent Track 2 fairness hearing when Lead Counsel addressed the matter of the pending motion for modification regarding state court time and expense and broadly attacked all of the movants for their prior associations with Mr. Haviland. *See, e.g.,* November 22, 2011, Track Two Fairness Hearing Transcript (hereafter ("11/22/11 Tr.") at 34:2-14.

But beyond Lead Counsel's improper attempt to evoke a visceral response, there is no basis in the record to support Lead Counsel's refusal to count Levy's post-August 2006 time and expense in their allocation. Lead Counsel have not demonstrated that they were released from their obligation to pay Levy for the post-August 2006 time and expense and that Levy's claim for payment from Lead Counsel has been settled. Certainly Levy did not provide Lead Counsel with a settlement release. The side agreement upon which Lead Counsel is apparently relying has not been produced and, significantly, the negotiations relating to such agreement have been kept a secret. It is insufficient and untrue simply to say that Levy was Of Counsel to the Haviland firm and, therefore, Lead Counsel is not obligated to make an allocation that includes Levy's post-August 2006 time and expense. Accordingly, this Court should directly order Lead Counsel to

include all of Levy's MDL time and expense, including Levy's post-August 2006 time and expense, in their allocation.

In the alternative, if this Court does not directly order Lead Counsel to make this allocation, this Court should order Lead Counsel to produce to Levy the final and all drafts of the agreement between Lead Counsel and the Haviland firm and the communications and documents comprising or reflecting the negotiations between Lead Counsel and the Haviland firm that led to the agreement.  The Court should also permit Levy to take depositions of Lead Counsel and Mr. Haviland to discover the facts and resolve factual disputes surrounding their "private settlement," side agreement and related negotiations.  At the Track 2 fairness hearing, this Court envisioned that depositions might be necessary in connection with the separate pending motion for modification concerning state court time and expense.  *See* 11/22/11 Tr. at 26:20-22; 29:16-21. The same principle would exist here.

Assuming for the sake of argument that their "private settlement" agreement could ever have the effect of resolving Levy's rights and claims, Lead Counsel's decision not to make an allocation for Levy's post-August 2006 time and expense is, at best, shrouded in the secrecy of their side agreement and negotiations, which is counter to this Court's recognition in its December 10, 2008 Order that allocation decisions must be fair and transparent.  Lead Counsel have thus far not only refused to produce their side agreement with Mr. Haviland but, equally as important, have refused to produce their communications concerning the negotiations that led to the agreement upon which ***Lead Counsel alone*** claim that Levy's post-August 2006 time and expense has been resolved and need not be counted in Lead Counsel's fee allocation.  "'There is nothing makes a man suspect much, more than to know little.'" *In re San Juan Dupont Plaza Hotel Fire Litig*., 111 F.3d 220, 232 (1st Cir. 1997) (quoting Francis Bacon, *Of Suspicion*).  Here,

discovery of and depositions regarding their agreement and negotiations would be necessary to resolve factual disputes concerning their "private settlement," side agreement and the participants' understandings and intentions.  Such is necessary to avoid a violation of Levy's due process rights and to permit this Court to provide a fair disposition of the matter.  *See In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig*. 982 F.2d 603, 611 (1st Cir. 1992).

### III.    CONCLUSION

For all of the reasons set forth herein, Adam S. Levy and Law Office of Adam S. Levy, LLC, respectfully request that this Court grant their Motion and enter an Order directing Lead Counsel to include all of Levy's time and expense for all of their work performed directly in this MDL from inception of their work through November 23, 2009.  In the alternative, Levy requests that the Court order production of the documents and information and permit the depositions as requested.


Dated:  December 1, 2011                          /s/ Adam S. Levy
                                                 Adam S. Levy
                                                        AND
                                                 Law Office of Adam S. Levy, LLC

                                                 P.O. Box 88
                                                 Oreland, PA 19075
                                                 (267) 994-6952

                                                 CERTAIN OF THE REPORTING
                                                 COUNSEL FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2011, I caused an electronic copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR MODIFICATION OF LEAD COUNSEL'S ALLOCATION OF FEES AND REIMBURSEMENT OF EXPENSES TO INCLUDE UNCOUNTED TIME AND EXPENSE INCURRED DIRECTLY IN THIS MDL** to be filed of record and served on all interested counsel via the Court's CM/ECF system.

/s/ Adam S. Levy