UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL CLASS ACTIONS | Judge Patti B. Saris |

**DECLARATION OF ADAM S. LEVY IN SUPPORT OF MOTION
FOR MODIFICATION OF LEAD COUNSEL'S ALLOCATION OF FEES
AND REIMBURSEMENT OF EXPENSES TO INCLUDE UNCOUNTED
TIME AND EXPENSE INCURRED DIRECTLY IN THIS MDL**

I, Adam S. Levy, declare and state as follows:

1. I am the sole owner of the Law Office of Adam S. Levy, LLC.[1] My firm and I have performed work on behalf of plaintiffs and the Classes, and that otherwise benefitted the Classes, in this action. I submit this Declaration in support of my and my firm's Motion for Modification of Lead Counsel's Allocation of Fees and Reimbursement of Expenses to Include Uncounted Time and Expense Incurred Directly in this MDL.

2. I am an attorney in good standing and duly licensed and admitted to the Bars of the Commonwealth of Pennsylvania and the State of New Jersey, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, and the District of New Jersey, and the United States Courts of Appeals for the Third and Sixth Circuits. The information set forth in this Declaration is based on first-hand knowledge about which I could and would testify competently in open court of called upon to do so.

---

[1] Formerly Law Office of Adam S. Levy.

3.      This Motion is brought because Lead Counsel refuses to make an allocation that includes my or my firm's time, lodestar (totaling $238,251.25 using my firm's historical rates) and expense (totaling $2,765.29) relating to work I performed directly in this action on behalf of plaintiffs and the Classes, or that otherwise benefited the Classes, from September 11, 2006 through November 23, 2009 (hereafter the "post-August 2006" period).[2]

4.      I have conferred with Lead Counsel in an attempt to resolve this dispute, but my efforts have been unsuccessful.

5.      My work in this case began in July of 2005.  Initially, my firm and I belonged to a group of law firms led by Kline & Specter, P.C. ("the K & S Group").  The K & S Group had been pursing AWP litigation in state courts in New Jersey and Arizona and had been in a struggle with lead counsel in the *Lupron* litigation (before Judge Stearns of this District), many of whom are Lead Counsel in this MDL.  Although the *Lupron* litigation was mostly resolved in the summer of 2005, hard feelings remained between Kline & Specter and Lead Counsel and neither group planned to collaborate with one another at that time.

6.      On August 16, 2005, this Court issued its Memorandum and Order re: Motion for Class Certification (*In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 261 (D.Mass. 2005)), which suggested that one or more of the proposed nationwide classes would be certified if suitable consumer class representatives were proposed within 60 days of the Court's ruling.  This changed the dynamic between the two groups.  Because Lead Counsel had difficulty finding suitable Class 1 representatives within the 60-day deadline, Kline & Specter offered to submit as potential class representatives some of its clients who Kline & Specter had already retained and who had largely been vetted for purposes of the AWP litigation.

---

[2] The backup for this time, lodestar and expense has not been included with the filing of this Motion and supporting papers, but will be provided to the Court upon the Court's request.  This information has already been provided to Lead Counsel.

7. In October of 2005, the two groups agreed that Kline & Specter would provide representative consumer plaintiffs in exchange for a co-leadership role in MDL 1456. *See* Exhibit A, at ¶¶ 1-3, attached to the Declaration of Kent M. Williams in Support of the Motion for Modification of Lead Counsel's Allocation of Fees to Include Time and Expense Incurred in Related State Court Actions, Dkt. No. 7910. Thereafter, Kline & Specter provided a number of its clients who were included in the Third Amended Complaint (and who continued to be named in subsequent iterations of the Complaint) and, later, was appointed Co-Lead Counsel.

8. Because I had provided valuable assistance with client retentions and was a core member of the K & S Group, I (along with certain other co-counsel) was expressly invited, by name, to participate in MDL 1456 pursuant to an agreement between Lead Counsel and Kline & Specter. *See id.*, Exhibit A thereto, at ¶ 10 ("Kent Williams, Adam Levy and the firm of Jennings Haug will be invited to participate in MDL 1456 as a non-co-lead.")

9. My firm and I have performed substantial, valuable and important work directly in this MDL on behalf of plaintiffs and the Classes, or that otherwise benefitted the Classes, throughout our involvement in this litigation – before, through and after September 2006. Lead Counsel have recognized my firm as a "Tier III" plaintiff firm in Class Counsel's Proposed Future Fee Allocation Guidelines, Dkt. No. 5836 at p.4, and have, through August 2006, included my firm's time, lodestar and expense in their prior fee petitions filed with this Court on behalf of all reporting plaintiffs' counsel. *See, e.g.,* Declaration of Marc H. Edelson in Support of Class Plaintiffs' Joint Petition for Attorneys' Fees and Reimbursement of Expenses in Relation to Settlement with AstraZeneca, Dkt. No. 5222 at 4; Declaration of Marc H. Edelson in Support of Lead Class Counsel's Motion for Award of Attorney Fees and Costs in Association with the Track Two Settlement, Dkt. No. 7515-3 at Exh. 1 thereto.

10. To date, Lead Counsel have counted in their allocation my time and expense and have made certain distributions to my firm (on par with the other Tier III counsel) in connection with the fees and/or expenses awarded in the GSK, Astra Zeneca and BMS settlements for my work performed directly in this MDL from July of 2005 through August of 2006.[3] With respect only that pre-September 2006 period of my work, Lead Counsel has told me that they intend to make a full allocation and distribution to me in the same manner as the other plaintiff firms in the case. Thus, there is no dispute with respect to that period and this Declaration and the Motion that it supports is not directed to that period.

11. Kline & Specter withdrew as Co-Lead Counsel in September of 2006. Shortly before that, The Haviland Law Firm, owned by former Kline and Specter attorney Donald Haviland, began operations and stepped in for Kline & Specter in terms of its role in representing the consumer plaintiffs in this action. On September 11, 2006, the Hagans Berman firm filed a "Notice of Change of Entry of Appearance of Co-Lead Counsel for Plaintiffs and the Class and Change of Address" (Dkt. No. 3088) on behalf of the Haviland firm.

12. Over the post-August 2006 period, during which I served as Of Counsel to the Haviland firm in this case, I performed substantial, valuable and important work directly in this MDL on behalf of plaintiffs and the Classes or that otherwise benefitted the Classes. I am no longer Of Counsel to the Haviland firm. When I was Of Counsel, I functioned on a contingent fee basis. My firm and I bore the full risk of not being paid if the case were not successful, and were fully responsible for and not reimbursed for expenses. No salary or any up-front compensation was paid for the work that was performed. My firm and I have not received any

---

[3] This is not true with respect to my work in the parallel, coordinated state court cases. None of that state court time and expense has been included in Lead Counsel's allocation.

payment, compensation or reimbursement for the time, expense and work performed in this MDL after August 2006.

13. Like any other recipient of electronic notifications of filings in this case, on August 25, 2011, I learned of the existence of Lead Counsel's side agreement with the Haviland firm to resolve its clients' objections to the Track 2 settlement after receiving the CM/ECF notification of filing of Certain Consumer Plaintiffs' Motion to Withdraw All Pending Motions, Submissions and Objections Concerning the Proposed Track 2 Settlement ("Motion to Withdraw Objections"), Dkt. No. 7766, and then reading in that Motion a one-clause reference to their "private settlement." *Id.* at p.2. The Motion said nothing more about it.

14. It is my understanding that Lead Counsel's refusal to make an allocation for my MDL time and expense incurred after August 2006 is based on their "private settlement" and related side agreement with the Haviland firm.

15. Neither Lead Counsel nor Mr. Haviland has produced the side agreement to me and, to this day, I have not seen it. Lead Counsel attorney Sean Matt has merely told me that the agreement itself is "silent" (Mr. Matt's word) as to me and my firm.

16. In addition to having never seen this "private settlement" agreement, not being consulted about its terms and knowing next to nothing about it, I also was not included in the negotiations between Lead Counsel and Mr. Haviland leading up their settlement and I know very little about the negotiations. Though Lead Counsel knew about my post-August 2006 time and expense before and during their negotiations with Mr. Haviland, Lead Counsel did not approach or ask me to release them with respect to my or my firm's claims or right to be paid by Lead Counsel for my work performed in this matter, and neither my firm nor I provided a release to anyone or signed/acknowledged (much less ever saw) any settlement agreement purporting to

resolve our right or claims to be paid by Lead Counsel in this MDL for the post-August 2006 MDL time and expense (or, for that matter, any time and expense in the parallel, coordinated state court cases of which it also knew).  Rather, upon information and belief, it is my understanding that Lead Counsel understood, intended, and assented to the condition that my time and expense was being carved out of the resolution and settlement between Lead Counsel and the Haviland firm, and that my post-August 2006 time and expense was being preserved for inclusion in Lead Counsel's allocation via the Levy firm's Tier III participation in the case.

17. Prior to reading that they reached a private settlement, I had learned from Mr. Haviland of the fact that he was seeking to resolve with Lead Counsel his and his clients' objections and disputes.  Except for receiving only the slightest bit of information from Mr. Haviland, I was not privy to the details of the negotiations or the process that was taking place. During whatever course of events that were taking place between Lead Counsel and Mr. Haviland, Mr. Haviland informed me that Lead Counsel offered to pay a percentage of his firm's lodestar, and that he was going to tell Lead Counsel that my time and expense would stay separate to be counted and handled as part of the allocation to my firm as a Tier III firm in the case.  According to Mr. Haviland, he discussed this with Lead Counsel and his agreement with them did not include, resolve or settle my time and expense.

18. On more than one occasion, I have requested from Lead Counsel not only their side agreement (and all drafts of the agreement) with the Haviland firm, but also Lead Counsel's communications concerning the negotiations leading to or resulting in their side agreement.  In a phone conversation with Lead Counsel attorneys Sean Matt and Marc Edelson on November 17, 2011, I again asked for information regarding their negotiations, and particularly discussions concerning me and my firm's time and expense.  Lead Counsel have not provided me with the

agreement (or drafts thereof) and, during our phone call, they expressly refused to discuss with me or provide to me any information concerning those negotiations.  My efforts to obtain the agreement and communications regarding their negotiations from Mr. Haviland have also failed.

19. I have also written to and spoken with Lead Counsel expressing my understanding that Lead Counsel understood and intended that my post-August 2006 time and expense was not being resolved by way of their agreement with Mr. Haviland, but rather that it was being excluded from their resolution and preserved, and that it was to be handled within the context of my firm's Tier III participation in the MDL as part of the future allocation and distribution of fees and expenses from the remaining court awards.  Lead Counsel have never directly denied this and have never responded directly about this.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st Day of December, 2011

　　　　　　　　　　　　　　　　　　　　/s/ Adam S. Levy

## CERTIFICATE OF SERVICE

      I hereby certify that on December 1, 2011, I caused an electronic copy of the foregoing **DECLARATION OF ADAM S. LEVY IN SUPPORT OF MOTION FOR MODIFICATION OF LEAD COUNSEL'S ALLOCATION OF FEES AND REIMBURSEMENT OF EXPENSES TO INCLUDE UNCOUNTED TIME AND EXPENSE INCURRED DIRECTLY IN THIS MDL** to be filed of record and served on all interested counsel via the Court's CM/ECF system.

                                            /s/ Adam S. Levy