**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK TWO SETTLEMENT | Judge Patti B. Saris |

**LEAD CLASS COUNSEL'S OPPOSITION TO THE WILLIAMS MOTION TO
MODIFY LEAD COUNSEL'S ALLOCATION OF FEES TO INCLUDE TIME AND
EXPENSE INCURRED IN STATE COURT ACTIONS**

-1-

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................4

III.    ARGUMENT .......................................................................................................5

        A.      There Was No Agreement To Compensate Kline & Specter For Non-MDL
                Lodestar And Expenses................................................................................5

        B.      Even If An Agreement Existed, It Should Be Modified Under Principles Of
                Equity And Fairness....................................................................................6

                1.      Kline & Specter did not perform as promised. ...........................................7

                2.      It is not equitable and fair to pay Kline & Specter for time and
                        expenses in competing cases that did not benefit the MDL and that
                        did not generate evidence actually utilized by Lead Class Counsel
                        in this AWP MDL. ......................................................................................9

                3.      For similar reasons, K&S's time and expenses from its Arizona
                        *Lupron* case cannot be compensated here....................................................12

                4.      It is not equitable and fair to pay a windfall to Kline & Specter out
                        of Lead Class Counsel's pockets when Lead Class Counsel will
                        receive a minimal multiplier in this litigation..............................................13

                5.      Lead Class Counsel's inclusion of non-MDL lodestar for Kline &
                        Specter was reversed long ago without objection by Kline & Specter......14

                6.      In the wake of Kline & Specter's withdrawal, Don Haviland turned
                        into an objector. ......................................................................................14

                7.      Kline & Specter will be paid generously even if the Court denies its
                        Motion.....................................................................................................15

                8.      If an agreement existed based on the "DRAFT" terms, then Kline &
                        Specter should be compelled to disgorge to Lead Class Counsel a
                        portion of Kline & Specter's attorneys' fee award in the
                        Commonwealth of Pennsylvania AWP litigation. ......................................15

        C.      There Was No Agreement To Compensate Kent Williams, Jennings
                or Levy for Non-MDL Lodestar And Expenses .............................................16

IV.     CONCLUSION..................................................................................................18

## I.     INTRODUCTION

As the decade-long AWP MDL litigation finally draws to a conclusion, and before this Court has even approved the total compensation to be paid to all Class Counsel in association with the Track Two proposed Settlement, a group of attorneys who have done little to no useful work in the AWP MDL for years now come forward, stick their hands out and demand to be paid an undeserved windfall.  The record demonstrates that Kline & Specter ("K&S"), Kent Williams, Jennings Haug and Adam Levy (the "Movants") are not entitled to be paid for the more than $2.5 million that they seek for work purportedly done in ***non***-MDL cases.

Although Lead Class Counsel agreed to bring K&S into the case and request that the Court appoint that firm as a Co-Lead, there was no final, written agreement on all of the specific terms of K&S's participation.  While compensating K&S for non-MDL time (excluding time devoted to its Lupron case) was discussed during negotiations and appeared in a "DRAFT" term sheet offered by Mr. Specter, that term never appeared in a final written agreement.

But even if it had, fairness and equity preclude its enforcement here, for if that term is part of an agreement, so too is a term providing that "[a]ll current co-leads' and Kline & Specter's compensation may be modified from parity to the extent appropriate under principles of equity and fairness."  Applying principles of equity and fairness, the Court should deny K&S its requested payment because K&S did not perform as promised and is otherwise not worthy of its demand.

K&S's risk was minimal.  It entered the scene five years into the litigation and after dispositive motions had been decided largely in favor of the plaintiffs.  K&S then exited suddenly on the eve of trial and after having served as a Co-Lead for only nine months.  Further, K&S broke its promises to Lead Class Counsel and the Classes by failing to provide Shanin Specter as trial counsel and by failing to share in the enormous costs of financing this litigation for the long-haul. Because K&S withdrew from the case at a critical juncture, never to participate again, it would be

inconsistent with principles of equity and fairness to reward K&S by compensating it for non-MDL time and expenses.

Principles of equity and fairness also command that K&S not be paid for non-MDL work because that work did not add value to the MDL and did not benefit the Classes here. No discovery from K&S's non-MDL cases in New Jersey and Arizona was ever used in this case; indeed, no discovery was even taken in the New Jersey case before K&S withdrew. Nor was there any meaningful coordination between the cases. Lead Class Counsel did not appear in the New Jersey or Arizona actions or otherwise direct or supervise any of the work done in those cases. As the Court has already held, it will not compensate for non-MDL case time that added no value to the MDL. That is certainly the case here.

The Court has also held that no work done in K&S's Lupron cases is compensable here, nor is any work related to drugs and defendants not at issue in the MDL. Yet, that is precisely what K&S seeks. More than 39 percent of the drugs targeted in K&S's New Jersey action were never at issue in the AWP MDL. Further, approximately $1 million of the more than $1.5 million that K&S demands is associated with K&S's *Lupron* case. As the Court is aware, Lupron was not at issue in the AWP MDL. Moreover, K&S has already been compensated for its Lupron work in the Lupron MDL and, pursuant to written agreements filed with Judge Stearns, has released any further attorneys' fee claims for that work.

Even excluding the unwarranted windfall K&S now demands, it will be generously compensated in this case. K&S will most likely be paid more than $2.5 million for time and costs accrued directly to the AWP MDL – not a bad payday for a firm that spent only nine months as a Co-Lead in the case, broke its promises to Lead Class Counsel and the Classes and withdrew on the eve of trial.

-2-

Turning to Williams, Jennings and Levy, there is not a scintilla of evidence demonstrating any agreement to pay these three Movants for non-MDL time.  No "DRAFT" terms suggest such a payment, and Lead Class Counsel never even discussed compensating Williams, Jennings and Levy for non-MDL work.  Indeed, a letter that Kent Williams wrote to Lead Class Counsel in February 2010 confirmed that he was "unaware" that any non-MDL lodestar and expense was compensable in the MDL.  And, for the same reasons applicable to K&S, it would not be fair and equitable to compensate these opportunistic raiders out of Lead Class Counsels' pockets for non-MDL time.

If – against the weight of the evidence – the Court finds that all of the "DRAFT" terms comprise a final agreement, and also finds that Lead Class Counsel must pay some compensation for K&S's non-MDL efforts, then the Court should also apply equity and order K&S to pay Lead Class Counsel a substantial share of K&S's $5.5 million payment recently received in the AWP litigation involving the Commonwealth of Pennsylvania.  The payment is warranted by "DRAFT" term No. 6, and, as the Court has frequently announced in this case, "What is good for the goose, is good for the gander."  And consistent with fair play, if K&S is entitled to any payment for non-MDL time and expenses, then it should also be required to pay a portion of the $1.8 million that Lead Class Counsel agreed to pay Mr. Haviland, K&S's former associate.

Lead Class Counsel have fought tirelessly for ten years on behalf of the Classes, investing over $50 million in time and advancing over $8 million in expenses in the process.  Their risk taking and diligent efforts, along with this Court's steady stewardship, have resulted in the payment of hundreds-of-millions of dollars to insurers and consumers.  Lead Class Counsel should not have to pay the interloping Movants for non-MDL efforts that had no benefit to the

Classes here.  For these reasons and more, Lead Class Counsel respectfully request that the Court deny these unjustified demands for undeserved fee payments.

## II.   FACTUAL BACKGROUND

Five years into the case in October 2005, Kline & Specter ("K&S"), where Don Haviland was an associate, threatened to file a motion to intervene and asked to join the case and become an additional Co-Lead Counsel.  Shanin Specter, an experienced trial lawyer, offered to help try the case, and K&S offered to contribute financially on a going-forward basis equal to the other Co-Lead Counsel.  K&S also represented that it had several consumer plaintiffs willing to serve as named class representatives.[1]

After a series of negotiations, Lead Class Counsel agreed to ask the Court to appoint K&S as a Co-Lead.[2]  In its January 30, 2006 class certification order (Dkt. No. 2097-1), the Court appointed K&S as Co-Lead Counsel, along with Hagens Berman Sobol Shapiro LLP; Spector Roseman & Kodroff, P.C.; Hoffman & Edelson; and the Wexler Firm.

K&S's tenure in this case was brief and its contributions minimal.  On September 7, 2006, K&S terminated Mr. Haviland's employ with K&S.  Shortly thereafter, and just six weeks prior to the start of the Massachusetts Class trial against the Track One Defendants, K&S withdrew from the case on September 19, 2006.  Thereafter, K&S contributed nothing to the further prosecution of this AWP MDL.[3]

---

[1] *See* Declaration of Steve W. Berman in Support of Lead Class Counsel's Opposition to the Williams Motion to Modify Lead Counsel's Allocation of Fees to Include Time and Expense Incurred in State Court Actions (the "Berman Decl."), ¶¶ 2-3.

[2] *Id.*, ¶ 4.

[3] *Id.*, ¶ 5 & Ex. 1.

K&S, Kent Williams, Jennings Haug and Adam Levy now seek compensation for work that they did not do in this AWP MDL.  As discussed below, no agreement existed to pay them for non-MDL time and expense and, in any event, it would not be fair and equitable to do so.

## III.   ARGUMENT

### A.   There Was No Agreement To Compensate Kline & Specter For Non-MDL Lodestar And Expenses

K&S cites to a series of emails in support of its argument that Lead Class Counsel agreed to compensate it for non-MDL time and expense.[4]  But the emails attached to the Williams Declaration evidence ongoing negotiations and reveal that no definitive agreement was ever reached.[5]

The most salient email upon which K&S relies is time stamped October 15, 2005 at 8:11 a.m., and included as Exhibit A to the Williams Declaration.  The subject line is "DRAFT co-counsel agreement," which is followed by the greeting "Steve/Tom – here is the draft agreement . . ."  This greeting, in turn, is followed by the word "DRAFT" in all caps.  And that is precisely what it is:  a draft agreement being proffered by Mr. Specter for Lead Class Counsel's consideration.

That email's status as nothing more than a draft set of terms being sought by Mr. Specter is buttressed by Mr. Berman's response thereto, in which he states:  "I agree this reflects what we discussed."  Tellingly, Mr. Berman did not say "we agree" or words to that effect.  Moreover, in another email that Williams chose not to attach to his declaration, Mr. Berman states "I have forwarded this to the co lead c[o]unsel as an accurate reflection of our discussions.  We will

---

[4] Br. at 2-3.

[5] Curiously, the salient emails are attached to the Williams Declaration and not a declaration from Shanin Specter, even though Williams was not copied on the emails and never negotiated with Mr. Berman.

ca[u]cus at 7 am pst on Monday and will call you all thereafter."[6]  Thus, it is clear that there was

no acceptance of Specter's terms, only that those terms reflected what Mr. Berman and Mr.

Specter had been discussing and that Lead Class Counsel would have to consider those terms.  A

final, definitive agreement was never reached and signed, at least one that can be located after a

diligent search.[7]

The final email in the string, dated October 17, 2005 at 10:40 a.m. and made part of

Exhibit A to the Williams Declaration, also demonstrates that no final agreement on terms was

reached, only that Lead Class Counsel agreed to bring K&S into the case and seek its

appointment as a Co-Lead:

> we agree to join.  the group would prefer to redraft the agreement
> so that the fee stuff is in one place not several. . . .
>
> we are due to submit a proposed class cert order today and we will
> list ks as proposed lead counsel

While Mr. Berman wrote "we agree to join," that agreement was subject to "redraft[ing] the

agreement."  ***This apparently was never done***, meaning that no final agreement on terms was

reached.

## B.      Even If An Agreement Existed, It Should Be Modified Under Principles Of Equity And Fairness

Even if an agreement existed to fully credit K&S's then-accrued time and costs in non-MDL

matters (and no such agreement has been found), the "DRAFT" stipulated that "[a]ll current co-

leads' and Kline & Specter's compensation may be modified from parity to the extent appropriate

under principles of equity and fairness."  Under principles of equity and fairness, K&S's

compensation should be modified because K&S did not perform as promised and because it is not

---

[6] Oct 15 14:28:41 2005 email from Steve Berman to Shanin Specter, attached as Ex. 3 to the Berman Declaration.

[7] Berman Decl., ¶¶ 9-10.

otherwise fair and equitable to pay K&S a windfall for work that did not benefit the MDL.

**1.      Kline & Specter did not perform as promised.**

K&S's compensation should be modified to exclude non-MDL lodestar and expenses due to K&S's non-performance.  Because K&S withdrew from the case in September 2006 after only nine months as a Co-Lead, its tenure amounted to less than one-tenth of the case's history.  And K&S's sudden withdrawal also meant that K&S did not contribute resources during the critical trial phase of the litigation – in either personnel or cost-funding.  Indeed, as we have previously explained in prior filings with this Court,[8] one of the prime motivators for bringing K&S into the Co-Lead counsel structure was to obtain the benefit of Shanin Specter's trial experience and assistance at trial and to help pay the rapidly mounting expenses that the Co-Leads were facing.[9]

Shanin Specter's surprising withdrawal on the very eve of trial thus undermined the pivotal factors influencing Lead Class Counsel's decision to bring K&S into the case.  While Mr. Berman has substantial trial experience, the trial experience of the rest of the team was not as substantial as Mr. Specter's trial experience.  The prospect of having the benefit of an experienced trial attorney like Shanin Specter was very enticing.  Moreover, Mr. Specter had already been assigned a defendant to handle at trial, and remaining members of the Lead Class Counsel team had to take over that trial responsibility on just seven weeks' notice.[10]

Unfortunately, not only did Mr. Specter withdraw before trial, Mr. Specter's overall contribution of time to the case was **_minimal_**.  Time reporting that K&S made to Lead Class Counsel reveals that Mr. Specter only worked 195.5 hours on the AWP MDL, and only 99.75 hours in 2006.  Thus, Mr. Specter recorded less than five weeks of time to the totality of the AWP MDL,

---

[8] _See_ Dkt. No. 4511, ¶ 6.

[9] Berman Decl., ¶ 3.

[10] _Id._, ¶ 6.

and less than two-and-a-half weeks in 2006 when he was supposed to be preparing for trial.  Review of his detailed time records reveals that Mr. Specter did little of any substance in the case and had devoted a modicum of time to prepare for trial in the months leading up to September 2006, despite his promise to help us try the case.  In contrast, not only was Mr. Berman the lead trial attorney, he has personally devoted a substantial portion of his law practice to this litigation.[11]

K&S's withdrawal also deprived Lead Class Counsel of important funds to cover costs, as even Mr. Specter's "DRAFT" agreement acknowledged that "Kline & Specter will make contributions to the Litigation Fund on par with the other co-leads for expenses going forward."  Of course, after its withdrawal, K&S did not share in the very substantial costs associated with continuing to prosecute this litigation to a successful conclusion for many more years.  The four Lead Class Counsel firms have advanced almost $8 million in out-of-pocket expenses in this litigation, representing more than 82 percent of all expenses advanced by all Class Counsel firms.  In contrast, K&S contributed only $437,857.67 to the expense fund in this AWP MDL.[12]

When a plaintiff's law firm makes a commitment to lead a class action, either with or without co-counsel, it makes a promise to the class and its co-counsel that it will do its best to see the case through to its ultimate resolution.  K&S breached this commitment not only to the other Co-Leads, but to the Classes themselves, by withdrawing from the case on the basis of a unilateral conclusion and decision that pursuing class litigation was not as profitable as the firm's tort practice.[13]  Because K&S withdrew from the case at a critical juncture, never to participate again, it would be inconsistent with principles of equity and fairness to reward K&S by compensating it for non-MDL time and expenses.

---

[11] *Id.*

[12] *Id.*, ¶ 7.

[13] *Id.*, ¶ 8.

**2.      It is not equitable and fair to pay Kline & Specter for time and expenses in competing cases that did not benefit the MDL and that did not generate evidence actually utilized by Lead Class Counsel in this AWP MDL.**

Of the $1,356,636.07 in lodestar and $164,390.90 that K&S seeks here for non-MDL time, K&S reports $448,393.75 in lodestar and $47,491.77 in expenses as associated with its New Jersey case and $21,678.75 in lodestar and $3,354.42 in expenses associated with its Arizona case.[14]   It is not equitable and fair for Kline & Specter (or any other firm) to claim compensation for non-MDL time and expenses when those cases never benefitted the MDL.

First, no Lead Class Counsel firm is being compensated here for non-MDL time (even though certain members of the Lead Class Counsel team were involved in other AWP-related litigation by, for example, representing State Attorneys General); nor is any other member of the Class Counsel team, based on the review of lodestar and expense information submitted.[15]   Movants should be treated no differently.

Second, no discovery from K&S's non-MDL cases in New Jersey and Arizona was ever used in this case, even though the emails discuss the prospect of doing so.[16]   ***Indeed, little to no discovery was even done into overlapping defendants or drugs in those two cases prior to K&S's withdrawal here***.   As K&S's own time records reflect, K&S had made little progress in the New Jersey case prior to K&S's withdrawal from this MDL.   As of June 2007, K&S had only accumulated $448,393.75 in lodestar in the New Jersey case.[17]   Review of K&S time records reveals that this small lodestar reflects work primarily limited to legal research; briefing removal, remand, stay and restraining order issues; review of publicly available documents; and drafting the complaint.   The time records do not reflect any substantive discovery being done into defendants or

---

[14] *See* Williams Decl., Ex. 3, at page bates stamped "P_08086."

[15] Berman Decl., ¶ 18.

[16] Berman Decl., ¶ 13.

[17] *See* Williams Decl., Ex. 3, at page bates stamped "P_08086."

drugs.[18]

The story is similar for the *Swanston* Arizona case.  As of June 2007, K&S had only allocated $21,678.75 in lodestar in the *Swanston* Arizona case.[19]  That case, which primarily involved the drug Lupron, was ultimately dismissed because the plaintiff there never made any payments for Lupron based on AWP.[20]

Third, there was no meaningful coordination between the cases, and Lead Class Counsel did not in any way appear in the New Jersey and Arizona actions or direct or supervise any of the work done there.[21]  Although Movants cite to an email from Jeffrey Kodroff where he declares that more cases put more pressure on the defendants (Br. at 6), and there was talk about potential coordination, this does not change the facts that no active coordination by Lead Class Counsel was ever conducted and that no discovery done in the New Jersey and Arizona was ever utilized here.  And even though Movants cite to the protocol of cross-noticing depositions in the non-MDL cases, this does not reflect coordination by Lead Class Counsel but, rather, the Court's entry of a CMO requiring cross-noticing after defendants insisted on deposition coordination so that their witnesses were not deposed multiple times.[22]

Again, no discovery from those two cases was ever utilized here, and those cases did not benefit the AWP MDL.  As the Court held during the November 22, 2011 hearing, the Court would

---

[18] Berman Decl., ¶ 14.

[19] *See* Williams Decl., Ex. 3, at page bates stamped "P_08086."

[20] Berman Decl., Ex. 4.

[21] *Id.*, ¶ 15.

[22] In purported support of their coordination argument, Movants also cite to a string of emails reflecting attempts to settle with Dey.  *See* Williams Decl., Ex. F.  But these emails do not support Movants.  Although early emails in the string discuss Don Haviland's Arizona case, Mr. Berman made clear that he "cant comment on havilands suit . . . ."  The remaining emails in the string refer to the State of Arizona's *parens patriae* claims being folded into the settlement and not bringing K&S's Arizona class case into the deal.  Berman Decl., ¶ 17.

not consider compensating for non-MDL case time that added no value to the MDL.[23]  The New Jersey and Arizona actions simply added no value to this MDL effort.

To be sure, defendants and claims in the New Jersey action that overlapped with claims here in the AWP MDL were dismissed, but the Plaintiff in New Jersey did not dismiss those claims based on any reliance that its counsel would be compensated here.  To the contrary, those claims were dismissed because this Court on September 11, 2007 ordered them dismissed given that the claims were competing with the instant litigation.  Moreover, those claims were not dismissed by K&S.  Rather, Don Haviland in October 2007 requested their dismissal *after K&S had withdrawn from this AWP MDL and after K&S had withdrawn from the New Jersey case*.[24]  Thus, K&S did not seek dismissal of those claims in reliance on potential compensation here, as was suggested at the November 22 hearing.

A fourth reason why K&S should not be compensated here for non-MDL time is that the New Jersey case involved a multitude of drugs that were not at issue in the AWP MDL, in addition to some defendants that were not sued in the AWP MDL.  Indeed, 72 of 183 drugs targeted in the Class Action Complaint in the New Jersey action – or more than 39 percent – were never at issue in the AWP MDL.[25]  And the *Swanston* case in New Jersey primarily focused on Lupron, which was not at issue here.[26]  The Court has already concluded that no time or expenses relating to drugs involved in other non-MDL cases but not at issue in the AWP MDL should be claimed here.[27]  Ultimately, the New Jersey case unraveled when the TPP Plaintiff was criminally indicted and

---

[23] Nov. 22, 2011 Hearing Tr. at 28 ("But I wouldn't pay you a penny, let me just say this, out of this class money unless it involves the drugs involved in this case and there was some value added.").

[24] Berman Decl., ¶ 22 & Ex. 8.

[25] *Id.*, ¶ 21.

[26] *Id.*, ¶16 & Ex. 5 (*Swanston* summary judgment order).

[27] Nov. 22, 2011 Hearing Tr. at 31 ("I am not going to be providing attorneys' fees for drugs that were not involved in this litigation.").

withdrew, so nothing that K&S could possibly have relied on here impacted any payment it could look forward to in the New Jersey case since there will likely be no payment.[28]

3.    **For similar reasons, K&S's time and expenses from its Arizona *Lupron* case cannot be compensated here.**

Of the $1,356,636.07 in lodestar and $164,390.90 that K&S seeks here for non-MDL time, K&S seeks more than $1,000,000 in association with its Lupron case in Arizona ($886,563.57 in Lupron lodestar and in Lupron $113,951.29 expenses).[29]  As the Court is aware, Lupron was not a drug subject to the AWP MDL.  Accordingly, the Court has already held that work associated with the Lupron case is not eligible for any compensation here.[30]

There are other very good reasons to deny K&S compensation in the AWP MDL for time and expenses related to Lupron.  First, K&S was paid in full out of the Lupron MDL Settlement approved by Judge Stearns and released any fee claims against Lead Class Counsel relating to Lupron litigation.  In exchange for agreeing not to hold up approval of the $150 million Lupron MDL Settlement, the "K&S Group" (a group that included K&S, Don Haviland, Kent Williams, Adam Levy and others), were paid millions.  More specifically, the K&S Group was paid $3 million from the fees awarded to class counsel in the Lupron MDL for their work on three state Lupron cases, ***including their Arizona case***.  In addition, Judge Stearns awarded the K&S group an additional $1.5 million from the Lupron MDL settlement funds.  Finally, as noted by Judge Stearns, "a substantial portion of the Kline & Spector Group's fees have been reimbursed under the terms of a confidential agreement reached with the Lupron Defendants."  A material term of the agreement resulting in the payments to the K&S Group in the Lupron MDL released the K&S Group's claims for attorney's fees and costs arising out of or relating to all "Lupron Pricing

---

[28] Berman Decl., ¶ 23.

[29] *See* Williams Decl., Ex. 3, at page bates stamped "P_08086."

[30] Nov. 22, 2011 Hearing Tr. at 31.

-12-

Litigation," which is defined as "the Lupron MDL Actions and all other pending litigation in any federal or state court asserting claims against the Defendants or any of them in any way similar to the Released Claims."[31]

Second, the "DRAFT" agreement on which Movants rely does not mention the Lupron case; nor do any of the emails leading up to the "DRAFT" agreement.  Third, not only was Lupron not a drug covered by the AWP MDL, nothing that K&S did in its Arizona Lupron case could add anything new to Lead Class Counsel's knowledge base about Lupron and competing drugs given that Lead Class Counsel here were members of the lead counsel team that successfully prosecuted before Judge Stearns the national Lupron class settlement.

### 4.   It is not equitable and fair to pay a windfall to Kline & Specter out of Lead Class Counsel's pockets when Lead Class Counsel will receive a minimal multiplier in this litigation.

It is also not equitable and fair to compensate K&S (or any other firm) for non-MDL time in this litigation given that, when this decade-long litigation is finally concluded, the lodestar and expense multiplier for the four Lead Class Counsel firms will be negligible.  The multiplier over total lodestar and expenses is currently estimated at approximately 1.26, a very modest return given the risks and the tremendous work done, and investment made, by Lead Class Counsel in this case over the past 10 years.  More particularly, Lead Class Counsel have a collective lodestar of over $50 million and out-of-pocket expenses of almost $8 million.[32]

Twenty-one other firms not part of the Lead Class Counsel structure participated in the AWP MDL and have reported more than $22 million in lodestar and more than $1.6 million in expenses.  As the Court may recall, Lead Class Counsel have announced their intention to pay from the MDL fee awards these firms' eligible lodestar and expenses, if total fees awarded by the Court

---

[31] Berman Decl., ¶ 19.

[32] Berman Decl., ¶¶ 24-25.

exceed total lodestar and expenses reported by all firms.  Thus, any additional monies paid to K&S

and other Movants as a result of this Motion will come straight out of the pockets of Lead Class

Counsel, thereby further diminishing their already modest multiplier.[33]

### 5.    Lead Class Counsel's inclusion of non-MDL lodestar for Kline & Specter was reversed long ago without objection by Kline & Specter.

In early fee petitions to the Court, Lead Class Counsel included K&S's non-MDL lodestar

and expenses in the reporting.  Years later, Haviland, Williams, Levy and Jennings *for the first time*

decided that they, too, should be compensated for non-MDL time in AWP-related litigation and

demanded that their non-MDL lodestar and expenses should be included and be compensated in the

MDL.  We disagreed, and, with our lodestar and expense reporting filed on February 14, 2011 (*see*

Dkt. No. 7418), we declined to include their non-MDL time and expenses.  ***In that same filing, we***

***also removed from the reporting K&S's non-MDL lodestar and expenses***.[34]   K&S, Williams, Levy

and Jennings never objected to this filing.

### 6.    In the wake of Kline & Specter's withdrawal, Don Haviland turned into an objector.

Yet another reason why it is not equitable and fair to pay K&S for non-MDL time and

expenses is the legacy of Don Haviland, who turned into an objector soon after K&S withdrew.

The Court is well-acquainted with Mr. Haviland's disqualification and objections, and there is no

need to recount all of the particulars.  Lead Class Counsel recently settled Mr. Haviland's Track

Two objections by, among other things, paying him $1.8 million in fees, a payment that benefited

all plaintiffs' counsel, including K&S.  Indeed, it would be only equitable and fair for K&S to share

in this expense if the Court were to order Lead Class Counsel to pay K&S for any of its non-MDL

---

[33] Berman Decl., ¶¶ 25-26.

[34] The current reporting to the Court for Kline & Specter is a lodestar of $2,129,496.25 and expenses of $437,857.67, for a total of $2,567,353.92.  It thus excludes $1,357,441.07 in non-MDL lodestar and $164,882.23 in non-MDL expenses that Kline & Specter now claims.

time and expenses.

**7.     Kline & Specter will be paid generously even if the Court denies its Motion.**

Even though it is only fair and equitable to modify K&S's compensation from what it seeks, we believe that K&S deserves some compensation for contributing consumer plaintiffs to the litigation effort and for serving as a Co-Lead for a short time.  Consequently, Lead Class Counsel have credited K&S with a total lodestar of $2,129,496.25 and expenses of $437,857.67 for time and costs accrued directly to the AWP MDL.  K&S will thus receive these amounts if the Court approves the Track Two fee request and, as expected, total fees awarded in the AWP MDL exceed total Class Counsel's lodestar.[35]

K&S did not join this litigation until five years in and only after Plaintiffs had largely prevailed on dispositive motions and taken substantial discovery.  K&S's tenure was brief, and it bailed out before the Track One trial.  K&S thus took on minimal risk.  We respectfully submit that compensation *exceeding $2.5 million* is a lavish payday for a firm that spent only nine months as a Co-Lead in the case, broke its promises to Lead Class Counsel and the Classes and withdrew on the eve of trial.

**8.     If an agreement existed based on the "DRAFT" terms, then Kline & Specter should be compelled to disgorge to Lead Class Counsel a portion of Kline & Specter's attorneys' fee award in the Commonwealth of Pennsylvania AWP litigation.**

Even though, as set forth above, Lead Class Counsel believe that the Court should not find that an agreement was reached encompassing all of the "DRAFT" terms set forth in Mr. Specter's email, if the Court were to find an agreement existed and was comprised of those terms, then K&S owes Lead Class Counsel a material portion of the attorneys' fees it was

---

[35] Berman Decl., ¶ 27.

awarded in the Commonwealth of Pennsylvania AWP litigation.  Exercising its equitable

powers, the Court should award such fees to Lead Class Counsel.

"DRAFT" term No. 6 provides that "Kline & Specter and Hagens Berman will make best

efforts to cause the states they represent in the AWP litigation to associate the current MDL co-

leads and Kline & Specter as co-leads in each state's case.  If this cannot be accomplished, Kline

& Specter and Hagens Berman will make best efforts to have the current co-leads and Kline &

Specter associate formally or informally in each state's AWP case.  Fees and costs attributed to

the state cases will be divided according to principles of equity and fairness."  On information

and belief, K&S made no effort to associate Lead Class Counsel in the case that K&S prosecuted

on behalf of the Commonwealth of Pennsylvania; in that case, K&S benefitted from discovery

and rulings from this AWP MDL; and K&S recently received a $5.5 million payment for its

work in that case.[36]  If the Court finds that the "DRAFT" terms to be an enforceable contract,

then the Court should award Lead Class Counsel half of the $5.5 million payment that K&S

recently received for its representation of the Commonwealth of Pennsylvania.

**C.     There Was No Agreement To Compensate Kent Williams, Jennings or Levy for Non-MDL Lodestar And Expenses**

Kent Williams seeks compensation for $709,846.25 in lodestar and $20,092.96 in

expenses for his purported work in non-MDL cases.[37]  The firm of Jennings Haug &

Cunningham seeks compensation for $269,093.57 in lodestar and $10,726.93 in expenses for its

---

[36] Berman Decl., ¶ 32.

[37] Br. at 4.

purported work in non-MDL cases.[38]  And Adam Levy seeks compensation for $398,455.00 in lodestar and $13,354.83 in expenses for his purported work in non-MDL cases.[39]

Even though Lead Class Counsel discussed with Shanin Specter the subject of compensating K&S for non-MDL lodestar and expenses accrued by October 2005, there were **no** discussions about including non-MDL lodestar and expenses for Williams, Jennings and Levy.[40] This is also evident by reference to the October 15, 2005 8:11 email relied upon by Williams. Paragraph 4 of the "DRAFT" terms referenced paying K&S's "time and costs to date."  This is the only place in the "DRAFT" terms that compensation for any non-MDL time and expense is discussed, and the discussion is clearly limited to K&S.

The "DRAFT" terms in that email mention Williams, Levy and Jennings only at the end, in paragraph 10, which simply says:  "Kent Williams, Adam Levy and the firm of Jennings Haug will be invited to participate in the MDL 1456 as a non co-lead."  This paragraph, like the rest of the email and other related emails, says **nothing** about compensating these other firms for any non-MDL time and expenses.  It was never discussed, let alone agreed, that Williams, Levy and Jennings would be paid for any of their efforts in non-MDL cases.[41]

And Kent Williams acknowledged this long before filing this Motion.  In a letter dated February 3, 2010 that Williams sent to Co-Lead Class Counsel Marc Edelson, Williams acknowledged that he had never before agreed with Lead Class Counsel to include his non-MDL time and expenses:

---

[38] *Id.*  From the time records submitted by Jennings, it is impossible to determine if **any** of the claimed lodestar and expenses are properly assignable to the AWP MDL.  Berman Decl., ¶ 31.

[39] *See* Dkt. No. 7939.  Incredibly, Levy also seeks payment for time spent while an employee of the Haviland Law Firm.  Lead Class Counsel will be filing a separate brief on this issue.  Berman Decl., ¶ 30.

[40] Berman Decl., ¶ 11.

[41] *Id.*

-17-

> I saw from recent pleadings that all of Kline & Specter's time and expense from the Arizona and New Jersey AWP cases was counted as part of the AWP MDL. ***I was unaware that all of this time could be counted***. Accordingly, I have added all of my firm's time and expense from these cases to be counted as well.[42]

***If Kent Williams was unaware in February 2010 that "all of this time could be counted," then even he has to admit he had no agreement with Lead Class Counsel to include it***!!  Indeed, this admission by Williams highlights the frivolity of his participation in this Motion, as well as the participation of Levy and Jennings, all of whom are simply being greedy and opportunistic.[43]

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

DATED:  December 1, 2011

By    /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

---

[42] Berman Decl., Ex. 9 (emphasis added).  Lead Class Counsel declined to include Williams' non-MDL time and expenses in our lodestar and expense reporting to the Court.

[43] Moreover, Williams' reported lodestar for MDL time is inflated, as he claims an hourly rate of $650 for some of that time.  Williams is a sole practitioner who practices law out of his house at 1632 Homestead Trail in rural Long Lake, Minnesota.  He has neither a sufficient level of trial experience nor the office overhead to justify claiming an hourly rate of $650 in this case.  Berman Decl., ¶ 29.

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St. NW, Suite 300
Washington, DC  20006
Telephone: (202) 355-6435
Facsimile: (202) 355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **LEAD CLASS COUNSEL'S OPPOSITION TO THE WILLIAMS MOTION TO MODIFY LEAD COUNSEL'S ALLOCATION OF FEES TO INCLUDE TIME AND EXPENSE INCURRED IN STATE COURT ACTIONS**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on December 1, 2011, a copy to LEXISNexis File & Serve for posting and notification to all parties.

　　　　　　　　　　　　　　　 **/s/ Steve W. Berman**　　　　　　　
　　　　　　　　　　　　　　　Steve W. Berman

001534-16  488816 V1