UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) ) |
|  | MDL No. 1456 |
|  | CIVIL ACTION: 01-CV-12257-PBS |
|  | Judge Patti B. Saris |
| THIS DOCUMENT RELATES TO: TRACK TWO SETTLEMENT | ) ) ) ) |

# DECLARATION OF STEVE W. BERMAN IN SUPPORT OF LEAD CLASS COUNSEL'S OPPOSITION TO THE WILLIAMS MOTION TO MODIFY LEAD COUNSEL'S ALLOCATION OF FEES TO INCLUDE TIME AND EXPENSE INCURRED IN STATE COURT ACTIONS

I, Steve W. Berman, duly declare as follows:

1.  I am a partner of Hagens Berman Sobol Shapiro LLP, resident in its Seattle, Washington, office, and I am Co-Lead Class Counsel for the plaintiffs in the above-captioned matter. I submit this declaration in support of Class Counsel's Opposition to the Williams Motion to Modify Lead Counsel's Allocation of Fees to Include Time and Expense Incurred in State Court Actions.

**Involvement of Kline & Specter in this AWP MDL**

2.  In October 2005, and after we had been litigating this case for over five years, Kline & Specter ("K&S"), where Don Haviland was an associate, contacted us and advised of the firm's intent to file a motion to intervene. After detailed negotiations, we agreed to ask the Court to appoint K&S as a Co-Lead.

3.  Significantly to us, Shanin Specter, an experienced trial lawyer, offered to help try the case, and K&S offered to contribute financially on a going-forward basis equal to the other

- 1 -

Co-Lead Counsel. K&S also represented that it had several consumer plaintiffs willing to serve as named class representatives.

4. For these reasons, as well as to avoid the morass created in the *Lupron* proceeding before Judge Stearns, where K&S intervened and objected to the settlement, Class Counsel agreed to K&S's participation as a Co-Lead. In its January 30, 2006 class certification order (Dkt. No. 2097-1), the Court appointed K&S as Co-Lead Counsel, along with Hagens Berman Sobol Shapiro LLP; Spector Roseman & Kodroff, P.C.; Hoffman & Edelson; and the Wexler Firm.

5. K&S's tenure in this case was brief and its contributions minimal. On September 7, 2006, K&S terminated Mr. Haviland's employ with K&S. Shortly thereafter, and just about six weeks prior to the start of the Massachusetts Class trial against the Track One Defendants, K&S withdrew from the case on September 19, 2006. A true and correct copy of this withdrawal, previously filed with this Court at Dkt. No. 3118, is attached hereto as Exhibit 1. Thereafter, K&S contributed nothing to the further prosecution of this AWP MDL.

6. As a result of K&S's sudden and surprising withdrawal, it did not contribute resources during the critical trial phase of the litigation – in either personnel or cost-funding. The withdrawal thus undermined the pivotal factors influencing our decision to bring K&S into the case. While I have substantial trial experience, the trial experience of the rest of the team was not as substantial as Mr. Specter's trial experience. Consequently, I found the prospect of having the benefit of an experienced trial attorney like Shanin Specter very enticing. Moreover, Specter had already been assigned a defendant to handle at trial, and remaining members of the Lead Class Counsel team had to take over that trial responsibility on just six weeks' notice. Unfortunately, not only did Mr. Specter withdraw before trial, depriving us of his trial skills, Mr.

Specter's overall contribution of time to the case was minimal.  Time reporting that K&S made to Lead Class Counsel reveals that Mr. Specter only worked 195.5 hours on the AWP MDL, and only 99.75 hours in 2006.  Thus, Mr. Specter recorded less than five weeks of time to the totality of the AWP MDL, and less than two-and-a-half weeks in 2006 when he was supposed to be preparing for trial.  Review of his detailed time records reveals that Mr. Specter did little of any substance in the case and had devoted a modicum of time to prepare for trial in the months leading up to September 2006, despite his promise to help us try the case.  In contrast, I personally devoted a substantial portion of my personal practice to this litigation before the settlements were reached.  Attached as Exhibit 2 is a true and correct copy of a time summary that K&S provided us, followed by true and correct copies of time sheets provided to us by K&S that show Mr. Specter's time entries for the AWP MDL.  These time sheets, which contain all entries for Mr. Specter, have been excerpted from K&S's more complete time entry submission.

7. K&S's withdrawal also deprived Lead Class Counsel of important funds to cover costs.  After its withdrawal, K&S did not share in the very substantial costs associated with continuing to prosecute this litigation to a successful conclusion.  The four Lead Class Counsel firms have advanced almost $8 million in out-of-pocket expenses in this litigation, representing more than 82 percent of all expenses advanced by all Class Counsel firms.  In contrast, K&S contributed only $437,857.67 to the expense fund in this AWP MDL.

8. We were surprised and disappointed by K&S's withdrawal.  When Mr. Specter called to inform me of the news, he explained that the firm had terminated Don Haviland and would not be soldiering on and carrying out its commitments to us and the Classes.  Mr. Specter said that the decision was part of a larger strategic decision to wind down the firm's class action practice and focus on the firm's more profitable tort practices.  Because K&S withdrew from the

- 3 -
001534-16 489229 V1

case at a critical juncture, never to participate again, I believe that it would be inconsistent with principles of equity and fairness to reward K&S by compensating it for non-MDL time and expenses.

**Negotiations with Shanin Specter**

9. To my best recollection, the negotiations that I had with Shanin Specter did not result in a definitive, final written agreement signed by all parties, and I have not been able to locate one.

10. The email time-stamped October 15, 2005 at 8:11 a.m. and included as Exhibit A to the Williams Declaration did reflect our ongoing discussions, but I do not believe that the "DRAFT" agreement proffered by Mr. Specter in that email ever became final. The conclusion that it was a "DRAFT" agreement is further reinforced by my email in response, attached as Exhibit 3, indicating that Co-Lead Counsel would have to discuss the terms. Another email, dated October 17, 2005 at 10:40 a.m. and made part of Exhibit A to the Williams Declaration, indicates Lead Class Counsel's agreement to have K&S join the case, but also states that more work needed to be done on the final terms of the agreement.

11. Even though we discussed with Shanin Specter the subject of compensating K&S for non-MDL lodestar and expenses accrued by October 2005, there were no discussions about including non-MDL lodestar and expenses for Kent Williams, Jennings Haug and Adam Levy.

**The Work Kline & Specter Did in its New Jersey and Arizona Actions Did Not Benefit the MDL and Did Not Generate Evidence Actually Utilized by Lead Class Counsel in the AWP MDL**

12. Movants would like the Court to believe that Lead Class Counsel actively coordinated with K&S's New Jersey and Arizona actions and used evidence obtained in those cases here in the AWP MDL, but this did not happen.

- 4 -

13. I am reasonably certain that no discovery from K&S's non-MDL cases in New Jersey and Arizona was ever used in this case, even though the emails discuss the prospect of doing so.

14. Certainly, K&S's total lodestar as of June 2007 in the New Jersey action reflects little progress in those cases prior to K&S's withdrawal from this MDL. K&S time records from the New Jersey action, as provided to us by K&S, are attached hereto at Exhibit 4. Review of these time records reveals work primarily limited to legal research; briefing removal, remand, stay and restraining order issues; review of publicly available documents; and drafting the complaint. The time records do not reflect any substantive discovery being done into defendants or drugs in the New Jersey action.

15. There was no meaningful coordination between the New Jersey action, the Arizona action and the AWP MDL. Lead Class Counsel did not in any way appear in the New Jersey and Arizona actions or direct or supervise any of the work done there. Although there was discussion about potential coordination, no active coordination by Lead Class Counsel was ever conducted and no discovery done in the New Jersey and Arizona was ever utilized here.

16. The *Swanston* case was ultimately dismissed. Attached as Exhibit 5 are true and correct copies of the orders effecting that dismissal.

17. In purported support of their coordination argument, Movants cite to a string of emails reflecting attempts to settle with Dey. *See* Williams Decl. Ex. F. But these emails do not support the story that Movants want to tell. Although early emails in the string discuss Don Haviland's Arizona case, I made clear in a subsequent email that I could not speak for Don Haviland. *See* April 2, 2007 9:43 email. Further, the remaining emails in the string refer to the

State of Arizona's *parens patriae* claims being folded into the settlement and not bringing K&S's Arizona class case into the deal.

18. I should also add that no Lead Class Counsel firm is being compensated in this AWP MDL for non-MDL time. Nor is any other member of the Class Counsel team, based on our review of lodestar and expense information submitted to us by the other firms.

19. With regard to K&S's Lupron case, it also cannot be the basis for compensation here. As the Court is aware, Lupron was never at issue in this AWP MDL. Furthermore, K&S was paid in full out of the Lupron MDL Settlement approved by Judge Stearns and released any fee claims against Lead Class Counsel relating to Lupron litigation. In exchange for agreeing not to hold up approval of the $150 million Lupron MDL Settlement, the "K&S Group" (a Group that included K&S, Don Haviland, Kent Williams, Adam Levy and others), were paid millions. More specifically, the K&S Group was paid $3 million from the fees awarded to class counsel in the Lupron MDL for their work on three state Lupron cases, ***including their Arizona case***. (Implementation Agreement, ¶¶ 12(1), 12(2).) In addition, Judge Stearns awarded the K&S group an additional $1.5 million from the Lupron MDL settlement funds. (Supplemental Memorandum and Order on Kline & Specter's Motions for Attorney's Fees and Costs at 4.) Finally, as noted by Judge Stearns, "a substantial portion of the Kline & Specter Group's fees have been reimbursed under the terms of a confidential agreement reached with the Lupron Defendants." (*Id*. at 1. Note: While Class Counsel is privy to the amount of the fee paid to the K&S Group as a result of the confidential agreement with the Lupron Defendants, they cannot recall whether they are permitted to report the amount of those fees.) A material term of the agreement resulting in the payments to the K&S Group in the Lupron MDL released the K&S Group's claims for attorney's fees and costs arising out of or relating to all "Lupron Pricing

- 6 -

Litigation." (Implementation Agreement at 5.) Pursuant to the Settlement Agreement in the Lupron MDL, the term "Lupron Pricing Litigation" is defined as "the Lupron MDL Actions and all other pending litigation in any federal or state court asserting claims against the Defendants or any of them in any way similar to the Released Claims." (Lupron MDL Settlement Agreement and Release at 9.) Attached as Exhibit 6 are true and correct copies of the relevant materials from the Lupron MDL evidencing the foregoing: (i) November 15, 2004 Settlement Agreement and Release; (ii) June 10, 2005 Implementation Agreement Between and Among MDL Plaintiffs, MDL Class Counsel, Defendants and K&S Group; and (iii) Judge Stearns's March 2, 2006 Supplemental Memorandum and Order on Kline & Specter's Motions for Attorneys' Fees and Costs.

**Drugs and Defendants in the New Jersey Action**

20. Attached as Exhibit 7 is a true and correct copy of the initial Class Action Complaint in K&S's New Jersey action titled *International Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca PLC et al.*, Superior Court of New Jersey, Equity Division, Monmouth County, Civil Action No. C-193-03. I do not know whether this is the most recent complaint in that case, but it is the only version that we have. It is possible that a more recent version targets even more defendants and drugs.

21. I have compared the drugs targeted in the New Jersey complaint with those at issue in this AWP MDL. Of the 183 drugs targeted in the complaint, 72 were never at issue in the AWP MDL. These drugs are, by defendant:

    a. Astrazeneca: Cefotan, Elavil Injection, Faslodex, Foscavir, Merrem, Tenormin Injection and Xylocaine Injection.

    b. TAP: Lupron and Prevacid.

  c.  Abbott:  evelosporine, lansoprazole and leuprolide acetate.

  d.  J&J:  Viadur, ReoPro, Retavase, Leustatin, Orthoclone and Doxil.

  e.  Pharmacia:  Glynase and Micronase.

  f.  Baxter:  Endoxan, Hemofil M, Proplex T and Uromitexan.

  g.  Bayer:  Viadur.

  h.  GSK:  Hycamtin.

  i.  Wyeth (not a defendant in the AWP MDL):  Benefix, Mylotarg, Newmega, Pipracil, Refacto, Zocyn and Protonix.

  j.  Fujisawa:  Minibag and Ganite.

  k.  Sicor:  cyclosporine, daunorubicin hydrochloride, dexrazoxane, epirubicin hydrochloride, mitomycon, l-cysteine hydrochloride, ondansetron, carboplatin, flutaminde, paclitaxel and leuprolide acetate.

  l.  Novartis (dismissed from the AWP MDL):  Aredia, Femara, Gleevec/Glivec, Lentaron, Leucomas, Navoban, Neoral, Orimeten, Sandimmun Neoral, Simulect and Zometa.

  m.  Alpha (not a defendant in the AWP MDL):  Venoglobulin-S, Alphanate, AlphaNine SD, Profilnine SD, Alubtein 5%, Albutein 10% and Albutein 25%.

  n.  Hoffman:  Roferon, Vesanoid, Xeloda, Rocaltrol and CellCept.

  o.  Sanofi:  Ambien, Primacor and Hyalgan.

22. Attached as Exhibit 8 is a true and correct copy of the New Jersey court order dismissing overlapping claims.  This order was previously filed in this case at Dkt. No. 4966-9.

23. I have been advised that the New Jersey action has made little progress and that the original plaintiff, the International Union of Operating Engineers, Local No. 68 Welfare Fund, withdrew from the case after receiving a criminal indictment.

**The Fee and Expense Multiplier in this Case is Modest**

24. Through August 2011, all Class Counsel have reported more than $72 million in lodestar and more than $9.5 million in expenses, excluding the lodestar that Movants seek to add via this Motion. If the Court grants the Track Two fee award requested by Lead Class Counsel, that award, coupled with prior awards in this case, will result in a multiplier over total lodestar and expenses of approximately 1.26. We respectfully submit that this is a very modest return given the risks and the tremendous work done, and investment made, by Lead Class Counsel in this case over the past decade.

25. Of the total case lodestar and expenses reported in the paragraph above, Lead Class Counsel have a collective lodestar of over $50 million and out-of-pocket expenses of almost $8 million. The 21 other firms that participated in the AWP MDL have reported more than $22 million in lodestar and more than $1.6 million in expenses.

26. As the Court may recall, Lead Class Counsel have announced their intention to pay from the MDL fee awards these firms' eligible lodestar and expenses, if total fees exceed total lodestar and expenses reported by all firms. Thus, any additional monies paid to K&S and other Movants as a result of this Motion will come straight out of the pockets of Lead Class Counsel, thereby further diminishing our already modest multiplier.

**Kline & Specter Will Be Generously Compensated**

27. K&S deserves some compensation for the very short time it served as a Co-Lead. Consequently, Lead Class Counsel have credited K&S with a total lodestar of $2,129,496.25 and

expenses of $437,857.67. These are the lodestar and expense figures that K&S has reported for work specific to the AWP MDL. K&S will ultimately receive these amounts as its total AWP MDL compensation if the Court approves the Track Two fee request and, as expected, total fees awarded in the AWP MDL exceed total Class Counsel's lodestar.

**Kent Williams**

28. As set forth above, there was never any agreement to pay Kent Williams for non-MDL time and expenses, and it was not even discussed with K&S. Attached as Exhibit 9 is a true and correct copy of the February 3, 2010 letter that Williams sent to Co-Lead Class Counsel Marc Edelson in which Williams acknowledges that he was not aware that his non-MDL time could be counted.

29. Kent Williams claims AWP MDL lodestar of $2,207,075.25 and expenses of $66,504.08. The lodestar is partially inflated, as Williams is claiming an hourly rate of $650 for some of his work. Williams's biography indicates that he has been a lawyer since January 1992. My understanding is that Williams works out of his house at 1632 Homestead Trail in rural Long Lake, Minnesota, which is the address he lists on his pleadings. Furthermore, a substantial portion of his lodestar was built through Williams's retention of contract lawyers, on which he makes a multiplier by billing them out at rates well in excess of what Williams paid these contract lawyers.

**Adam Levy**

30. Adam Levy, who does not represent a specific client in this case, has accrued time in two phases: first, as a sole practitioner, and second, beginning in September 2006, as an employee of the Haviland Law Firm. While at the Haviland Law Firm, Levy's time and expenses were included in the Haviland Law Firm reporting. Nonetheless, and incredibly, Levy

claims that Lead Class Counsel should compensate him out of our own pockets for that time. In the instant Motion that he has joined, Levy demands that we pay all of his non-AWP MDL lodestar and expense, even for work he did as part of the Haviland Law Firm. Levy has also filed a separate motion (Dkt. No. 7941) asking the Court to order that Lead Class Counsel pay him for AWP MDL-specific work done while part of the Haviland Law Firm. We will oppose the latter motion in a separate filing.

**Jennings, Haug**

31. We know little about the Jennings, Haug firm. It has reported over $120,000 in lodestar to us. However, after examining that firm's time records, we are unable to determine whether any the work reflected therein is properly allocable to the AWP MDL.

**The Commonwealth of Pennsylvania AWP Litigation**

32. If, against the weight of the evidence, the Court finds that an agreement was reached encompassing all of the "DRAFT" terms set forth in Mr. Specter's email and compensates K&S for non-MDL time, then we respectfully ask the Court to exercise its equitable powers and order K&S to pay half of the attorneys' fees it was awarded in the Commonwealth of Pennsylvania AWP litigation. "DRAFT" term No. 6 provides that "Kline & Specter and Hagens Berman will make best efforts to cause the states they represent in the AWP litigation to associate the current MDL co-leads and Kline & Specter as co-leads in each state's case. If this cannot be accomplished, Kline & Specter and Hagens Berman will make best efforts to have the current co-leads and Kline & Specter associate formally or informally in each state's AWP case. Fees and costs attributed to the state cases will be divided according to principles of equity and fairness." On information and belief, K&S made no effort to associate Lead Class Counsel in the case that K&S prosecuted on behalf of the Commonwealth of Pennsylvania. We

also believe that, in Pennsylvania case, K&S benefitted from discovery and rulings from this AWP MDL, and that K&S recently received a $5.5 million payment for its work in that case. If the Court finds that the "DRAFT" terms to be an enforceable contract, then the Court should award Lead Class Counsel half of the $5.5 million payment that K&S recently received for its representation of the Commonwealth of Pennsylvania.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of December, 2011.

                                                                **/s/ Steve W. Berman**
                                                                   STEVE W. BERMAN

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **DECLARATION OF STEVE W. BERMAN IN SUPPORT OF LEAD CLASS COUNSEL'S OPPOSITION TO THE WILLIAMS MOTION TO MODIFY LEAD COUNSEL'S ALLOCATION OF FEES TO INCLUDE TIME AND EXPENSE INCURRED IN STATE COURT ACTIONS,** to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on April 7, 2006, a copy to LexisNexis File & Serve for posting and notification to all parties.

      By      **/s/ Steve W. Berman**
           Steve W. Berman
           **HAGENS BERMAN SOBOL SHAPIRO LLP**
           1301 Fifth Avenue, Suite 2900
           Seattle, WA  98101
           (206) 623-7292