# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CORINNA CONNICK<br>12545 Ashton Trail<br>Chardon, Ohio 44024<br><br>       Plaintiff,<br><br> v.<br><br>KENNETH A. WEXLER<br>55 West Monroe, Suite 3300<br>Chicago, Illinois 60603<br><br>       And<br><br>WEXLER WALLACE LLP,<br>55 West Monroe, Suite 3300<br>Chicago, Illinois 60603<br><br>       Defendants. | Case No. 1:11-cv-2499<br><br>Honorable James S. Gwin |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1),(2), AND (3)

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (3), Defendants Kenneth A. Wexler and Wexler Wallace LLP (collectively "Wexler Wallace"), by their undersigned counsel, seek dismissal of this action for lack of personal jurisdiction, lack of subject matter jurisdiction, and because it was brought in the wrong venue.

The action arises out of a notice of deposition issued from a case pending in the United States District Court for the District of Massachusetts, in which Wexler Wallace is one of four co-lead counsel ("Class Counsel") for a settlement class. *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 ("*AWP* MDL"). The *AWP* MDL, presided over for more than *10 years* by the Honorable Patti B. Saris, involves allegations that various

pharmaceutical manufacturers wrongfully inflated the average wholesale price for over 100 drugs (the "Class Drugs"). Over time, plaintiffs in the *AWP* MDL have settled with various defendants. The last settlement was reached with what are known as the Track 2 defendants. That settlement (the "Track 2 Settlement") is in the amount of $125 million.

The Plaintiff in this case, Corinna Connick ("Ms. Connick") filed a frivolous objection to the Track 2 settlement. At the time she filed her objection in March 2009, Ms. Connick was represented by John Pentz, who appeared in the *AWP* MDL on her behalf, and Edward Cochran, who did not appear, but put his and his firm's name on the objection. Messrs. Pentz and Cochran have been characterized as being "professional objectors" who file objections for no purpose other than to extract attorneys' fees in exchange for withdrawing objections or appeals.[1]

In addition to filing her objection to the Track 2 settlement, Ms. Connick simultaneously filed a Motion to Intervene, claiming to have standing to do so because she purportedly had purchased one of the Class Drugs. Discovery revealed, however, that the drug Ms. Connick alleged she purchased was not -- and never has been --a Class Drug.[2] As such, it was not a part

---

[1] *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, MDL 1735, 2010 U.S. Dist. LEXIS 21466, at **17-18 (D. Nev. Mar. 8, 2010) (ordering Pentz and Cochran's clients to pay an appellate bond of $1 million because "[i]n sum, this Court finds that the Appeals taken by Objectors [represented by Cochran and Pentz] …are frivolous and are tantamount to a stay of the Judgment entered by this Court … approving the comprehensive class settlement in this case which provides fair compensation to millions of class members, as well as injunctive relief ensuring against further loss to persons similarly situated."); *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010) (requiring objector represented by Pentz and others to provide appeal bond and finding that the objectors were "represented by serial objectors and that all four Objector groups have engaged in bad faith and vexatious conduct…."); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 575 (D.N.J. 2010) (noting plaintiff's counsel's characterization of Edward Cochran as a "professional objector" and compiling cases re: same); *In re UnitedHealth Group Incorporated PSLRA Litigation*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009)(In reference to Ed Cochran and other counsel for objectors to a class action settlement, The Honorable Rosenbaum famously began his opinion: "The remoras are loose again," and aptly pointed out that the objectors' attorneys, including Mr. Cochran, had as their goal "to hijack as many dollars for themselves as they can wrest from a negotiated settlement.").

[2] In connection with that motion, Class Counsel took Ms. Connick's deposition on March 24, 2009 to assess her standing and other issues. Putting aside the baseless legal arguments she presented in support of intervention, her testimony and documents she produced made it abundantly clear that she had not

of the lawsuit or settlement, and Ms. Connick never had standing to file an objection. With no interest in the subject matter of the lawsuit, and because the settlement did not affect Ms. Connick in any way, Judge Saris denied her motion to intervene because "Ms. Connick is not a class member and her claims are not being released."[3]

Mr. Pentz, the only attorney who had filed an appearance on Ms. Connick's behalf, withdrew from the litigation. Apparently executing a scheme to keep pressure on counsel for the *AWP* plaintiffs to settle the matter by paying unearned attorneys' fees, on September 27, 2011, Ms. Connick filed a *pro se* appeal of the ruling denying her motion to intervene.[4] On November 22, 2011, Judge Saris commented during the final approval hearing on the settlement that "I do think [Ms. Connick has filed] a frivolous appeal."[5]

Because the effect of Ms. Connick's appeal of the Track 2 settlement will be to delay payment to what Judge Saris has characterized as an elderly, sick and dying class, Class Counsel moved Judge Saris to order Ms. Connick to post an appeal bond. Thereafter, Class Counsel served on Ms. Connick a notice for her deposition[6] the purpose of which was to determine her willingness and ability to post a bond, as well as determine what she understood the basis of her appeal to be. As the date for her deposition was approaching, Mr. Wexler, one of four Class Counsel, and whose firm is in Chicago, Illinois and Sacramento, California, sent Ms. Connick a

---

taken and paid for any of the Class Drugs at issue in the *AWP* MDL, and thus was not a member of the Class and did not have standing to intervene or represent the Class. Because this deposition was taken in 2009, years before Ms. Connick filed her notice of appeal, she clearly wasn't (and could not have been) questioned on the basis for her appeal and ability to pay an appeal bond.

[3] Aug. 29, 2011 Order denying intervention, attached hereto as Ex. A; *see also* August 8, 2011 Hearing Transcript at 81-82, attached as Ex. B.

[4] *See* Notice of Appeal, attached hereto as Ex. C Mr. Pentz withdrew as Ms. Connick's counsel on September 23, 2011.

[5] *See* Ex. D, November 22, 2011 Transcript at 17 (also granting final approval of the settlement).

[6] *See* Ex. A to Connick Complaint, Dkt. No. 1

3

fax inquiring whether she would be appearing.[7] Her husband, attorney Tom Connick, responded that she would refuse to attend.[8]

Rather than seek relief from the *AWP* MDL Court presiding over the litigation from which the notice of deposition issued, and apparently hoping to ratchet up the pressure on Class Counsel to settle her frivolous claim, Ms. Connick filed this action, *suing* Mr. Wexler's firm and him personally, claiming that the notice of deposition was improper. In addition to declaratory and injunctive relief, Ms. Connick seeks from Wexler Wallace attorneys' fees, costs and interest. As this Court lacks personal jurisdiction over Wexler Wallace, as well as subject matter jurisdiction over the action, this case should be dismissed. Moreover, venue is improper here. The appropriate venue, if there is one, is the District of Massachusetts, where the *AW*P MDL is pending.

It is difficult to imagine that a cause of action exists for serving a notice of deposition of a person who has availed herself of the jurisdiction of an MDL Court in which litigation is proceeding, litigation with which Ms. Connick is interfering by filing an objection and notice of appeal without standing to do so. But even if it does, this Court has no jurisdiction to hear it. By filing an entirely new action to assert her non-existent claim, Ms. Connick is attempting to evade the jurisdiction of an MDL Court that has been overseeing the *AWP* MDL for the past ten years. In fact, this *exact* issue is already before Judge Saris on Class Counsel's motion to compel Ms. Connick's deposition; Ms. Connick will be responding to that motion on December 6, 2011.[9] As a practical matter, Ms. Connick's Motion for Protective Order will be decided by Judge Saris in

---

[7] *See* fax from Kenneth Wexler to Thomas Connick dated November 14, 2011, attached hereto as Ex. E.
[8] *See* Ex. B to Connick Complaint, Docket No. 1.
[9] *See* Motion to Compel filed in the *AWP* MDL, attached as Ex. F, and Ms. Connick's Motion for Leave to File a Short Response to the motion for an appeal bond, Nov. 28, 2011, Exhibit G (informing Judge Saris that she would be filing her opposition to the Motion to Compel her Deposition on December 6, 2011).

4

any event when she addresses Plaintiffs' Motion to Compel in the *AWP* MDL litigation. There is no cogent reason for this Court to expend time, effort and judicial resources resolving a matter that belongs in another court.

**ARGUMENT**

**I. THIS CASE SHOULD BE DISMSSED FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2)**

As an initial matter, this Court does not have personal jurisdiction over Wexler Wallace. "Specific [personal] jurisdiction may be exercised when the claims in the case are related to or arise from the defendant's contacts with the forum state." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). The Sixth Circuit employs a three-prong test for determining whether specific jurisdiction may be exercised: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection to the forum to make the exercise of jurisdiction over the defendant reasonable." *McMunigal v. Bloch*, No. 1:09CV01674, 2010 U.S. Dist. LEXIS 51322, at **17-18 (N.D. Ohio May 24, 2010).

All of Wexler Wallace's actions leading to this lawsuit have emanated from its role as Class Counsel in the *AWP* MDL. The notice of deposition supposedly giving rise to a suit in this Court was issued out of the *AWP* MDL. Wexler Wallace's only contacts with Ohio related to attempting to schedule the deposition, which was directed to issues in the *AWP* MDL. No law states that, by serving a notice of deposition from a pending federal action on a resident of another state, an attorney avails him or herself to the personal jurisdiction of the courts in the state in which the deponent resides. The serving of a notice of deposition, a notice which Wexler

5

Wallace did not even sign, is simply insufficient to confer personal jurisdiction over Mr. Wexler and his firm.

## II. THIS CASE SHOULD BE DISMSSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1)

Ms. Connick has already been told by Judge Saris that she cannot intervene in the *AWP* MDL because she is simply not a class member affected by the settlement, that she believes Ms. Connick's appeal is frivolous, and that an appeal bond will be imposed (the amount is still uncertain). It is not surprising that Ms. Connick is trying her luck here, hoping to convince this Court, unfamiliar with her antics and the context in which they arise, that she shouldn't have to appear for a deposition or cooperate with discovery related to her actions taken in the District of Massachusetts. However, this Court does not have subject matter jurisdiction over this dispute.

As the judge of the *AWP* MDL in which Ms. Connick seeks to intervene and from which she has filed a Notice of Appeal, Judge Saris has exclusive control over the dispute between the *AWP* MDL Plaintiffs and Ms. Connick. 28 U.S.C. § 1407(b) makes clear that "coordinated or consolidated pretrial proceedings *shall* be conducted by a judge or judges to whom such actions are assigned by the judicial panel on multidistrict litigation." (emphasis added) "The meaning of 'pretrial proceedings' has been interpreted liberally to give the transferee court control over *any and all* proceedings prior to trial." *In re Neurontin Marketing, Sales Practices, and Products Liab. Litig.*, 245 F.R.D. 55, 57 (D. Mass. 2007) (Magistrate J. Sorokin) (emphasis added).

The power that Section 1407 grants to Judge Saris includes authority to govern discovery disputes among parties and non-parties alike, even when the non-party would typically seek relief in a court of his or her state of residence. Indeed, Section 1407 gives an MDL court the power to "exercise the powers of a district judge in any district." Both the District of

6

Massachusetts and the Sixth Circuit have recognized that the plain meaning of the statute controls:

> … the MDL statute empowers an MDL judge to act as a judge of the deposition or discovery district. *See* 28 U.S.C. § 1407(b) ('The judge or judges to whom such [MDL] actions are assigned … may exercise the powers of the district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings'). A judge presiding over an MDL case therefore may compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted.

*In re Neurontin*, 245 F.R.D. at 58 (*quoting U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006)) (emphasis added). Accordingly, Judge Saris has jurisdiction of Ms. Connick's requested intervention, the notice of appeal of that order, and all discovery related to that appeal. Moreover, this exact same dispute has already been submitted to Judge Saris for resolution.[10]

Furthermore, this Court also lacks jurisdiction because Ms. Connick is impermissibly requesting an advisory opinion be issued. While her Complaint is noticeably devoid of a jurisdictional statement (grounds for dismissal on its own), Wexler Wallace presumes she seeks a declaration and injunction under the Declaratory Judgment Act, which provides that in "a case of actual controversy within its jurisdiction," a federal court "may" give a declaratory judgment, a power permissive, not mandatory. *Sankyo Corp. v. Nakamura Trading Corp.*, No. No. 04-1337,

---

[10] In the alternative, and for many of the same reasons Ms. Connick's complaint should be dismissed in its entirety, this court can also *sua sponte* transfer this action pursuant to 28 U.S.C. §1404(a) to Judge Saris. *See Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. Ohio 2006) (citing 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE §§ 3844, 3847-48 (2d ed. 2005) (noting that court considering *sua sponte* transfer of case "should make that possibility known to the parties so that they may present their views about the transfer…")). In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Id.*, 647, n. 1 (citations omitted).

7

2005 U.S. App. LEXIS 4339, **8-10, n. 6 (6th Cir. Mich. 2005) (not for publication), attached as Ex. H, (citing *Grand Trunk Western R. Co. v. Consolidated Rail Corp*., 746 F.2d 323, 325 (6th Cir. 1984)).[11]  It is well-settled that federal courts may only adjudicate actual cases or controversies (U.S. Const., Art. III, Section 2), a principle reiterated in the Declaratory Judgment Act, which states: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.
>
> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273… (1941).

*Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co.,* No. 5:08CV1789, 2009 U.S. Dist. LEXIS 99233, at ** 7-10 (N.D. Ohio Oct. 23, 2009).

There is no actual, substantive dispute between Ms. Connick and Wexler Wallace sufficient to warrant the filing of a complaint, the issuance of a protective order, declaratory judgment, or injunction in Ms. Connick's favor.  As for Count I, if the Court grants her request for a declaration that the Notice of Deposition is null and void *ab initio*, this will not prevent Class Counsel from issuing a subpoena or asking Judge Saris for leave to issue additional or

---

[11] Because Ms. Connick seeks injunctive relief in addition to declaratory relief, the requirement of an "actual controversy" in the Declaratory Judgment Act is identical to the "case or controversy" requirement of Article III. *Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)). Accordingly, the requisite "case or controversy" analysis is the same with respect to separate requests for injunctive and declaratory relief.  *Id.*

8

different discovery requests from Ms. Connick. In other words, the declaration Ms. Connick seeks will not resolve the controversy between the parties.

As for Count II, Ms. Connick seeks a temporary restraining order and preliminary injunction against Kenneth Wexler and Wexler Wallace preventing them from taking or attempting to take Ms. Connick's deposition. But if this Court grants Ms. Connick's request, this will do nothing to resolve the controversy between Ms. Connick and any other of the three other Class Counsel, who can continue pursuing her deposition (Wexler Wallace did not even sign the notice of deposition). Accordingly, Wexler Wallace respectfully submits that this matter should be dismissed for lack of subject matter jurisdiction.

### III. THIS MATTER SHOULD BE DISMISSED FOR IMPROPER VENUE PURSUANT TO RULE 12(b)(3)

For many of the same reasons Ms. Connick's complaint should be dismissed for lack of personal and subject matter jurisdiction, in the alternative, this matter should be dismissed for improper venue pursuant to Rule 12(b)(3). 28 U.S.C. §1391 provides that a lawsuit not founded solely on diversity (noting again that Ms. Connick did not provide the jurisdictional basis in her complaint) can only be brought in the district in which defendant resides, where a substantial part of the events giving rise to the claim occurred, or in any district in which a defendant may be found. Neither defendant resides in this district (*see* Connick Complaint ¶¶2, 3), and the events giving rise to Ms. Connick's unfounded claim occurred primarily in Massachusetts, Chicago, and Seattle, not Ohio. Moreover, Judge Saris has presided over the *AWP* MDL for over ten years, heard and denied Ms. Connick's Motion to Intervene, granted final approval to and has continuing jurisdiction over the settlement at issue (a settlement for a Class which Ms. Connick does not belong to because she didn't purchase any of the Class Drugs), has deemed Ms. Connick's appeal to be frivolous, and will hear Class Counsel's Motion to Compel the

9

Deposition of Ms. Connick, which is already pending before her. In fact, Ms. Connick has already acknowledged to Judge Saris that the deposition MDL Co-Lead Counsel seek and her appeal and requested appeal bond "are related to each other."[12] Therefore, this matter should also be dismissed for lack of venue pursuant to Rule 12(b)(3).[13]

### IV. THIS PROCEEDING SHOULD BE STAYED PENDING RESOLUTION OF WEXLER WALLACE'S MOTION TO DISMISS

Without waiving its objections to jurisdiction and venue, Wexler Wallace respectfully requests that this matter be stayed until the Court determines whether to grant dismissal or transfer to avoid expending unnecessary and duplicative time responding to and the Court ruling on Ms. Connick's Motion for Protective Order. If the Court does not dismiss the case and is not inclined to stay the matter, Wexler Wallace requests sufficient time after responding to the Complaint to respond to Ms. Connick's Motion for Protective Order.

---

[12] *See* Connick's Motion for Leave to File a Short Response, Nov. 28, 2011, Exhibit G (asking for an opportunity to respond to the reply brief regarding the appeal bond, and requesting that "she be allowed to respond to Plaintiffs' Motion [to Compel her Deposition] and Reply Brief jointly on or before Tuesday, December 6, 2011, as both are related to each other….").

[13] In the alternative, this court can also *sua sponte* transfer this action pursuant to 28 U.S.C. §1404(a) to Judge Saris. *See Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. Ohio 2006) (citing 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE §§ 3844, 3847-48 (2d ed. 2005) (noting that court considering *sua sponte* transfer of case "should make that possibility known to the parties so that they may present their views about the transfer….")). In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Id.*, 647, n. 1 (citations omitted).

Dated: December 5, 2011            Respectfully submitted,

           /s/ Janet G. Abaray
           Janet G. Abaray (0002943 )
           Burg Simpson Eldredge Hersh & Jardine
           312 Walnut Street, Suite 2090
           Cincinnati, Ohio 45202
           Telephone (513) 852-5600
           Facsimile: (513) 852-5611
           Email: jabaray@burgsimpson.com

           ***Counsel for Defendants Kenneth A. Wexler and Wexler Wallace LLP***

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. In addition, the foregoing will be served U.S. Ordinary Mail upon Corinna Connick, 12545 Ashton Trail, Chardon, Ohio 44024.

           */s/ Janet G. Abaray*
           Janet G. Abaray (0002943)