# EXHIBIT A

# IN THE U.S. DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

IN RE:                                    )      MDL NO. 1456
                                          )
PHARMACEUTICAL INDUSTRY                   )      CIVIL ACTION: 01-CV-12257-PBS
AVERAGE WHOLESALE PRICE                   )
LITIGATION                                )      JUDGE PATTI B. SARIS
                                          )

## MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT

Pursuant to Fed. R. Civ. P. 24, Corinna Connick, on behalf of herself and all those

similarly situated, seeks leave of this Court to intervene by way of her Complaint in Intervention

and Motion to Disqualify Class Counsel and for Appointment of Consumer Class

Representatives and Counsel in the above-captioned case. *See* Complaint in Intervention and

Motion to Disqualify Class Counsel and for Appointment of Consumer Class Representatives

and Counsel, attached hereto as *Exhibit A.* As detailed below, the Intervenors' rights and

interests are being finally compromised via the Track Two Settlement Agreement in the above-

referenced case, yet those interests are not being adequately protected. Specifically, Intervenors'

claims against the settling Defendants *are being completely released for no consideration*

*whatsoever*, and, therefore, Intervenors are entitled to intervention as a matter of law.

Corinna Connick and her counsel seek to be appointed as representatives of the consumer

Plaintiffs in this action, and to replace the inadequate and ineffectual organizations[1] and

designated counsel,[2] none of which possess any of the claims of consumer Plaintiffs, which have

done such a poor job representing consumer Plaintiffs' interests thus far in the litigation.

_____

[1] These are listed in ¶ II. F. of the Track Two Settlement Agreement.
[2] These are listed in ¶ II. J. of the Track Two Settlement Agreement.

*[handwritten marginal note: 8/29/2011 Denied as a class member and not just their claims and lawsuits released. Denied as a class member but not being released.]*

# EXHIBIT B

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

IN RE:                              )
                                    )  CA No. 01-12257-PBS
PHARMACEUTICAL INDUSTRY AVERAGE     )
WHOLESALE PRICE LITIGATION          )  Pages 1 - 138
                                    )


TRACK TWO SETTLEMENT HEARING

BEFORE THE HONORABLE PATTI B. SARIS

UNITED STATES DISTRICT JUDGE


United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
August 8, 2011, 9:20 a.m.


LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
(617)345-6787

Page 81

1          THE COURT:  And just on the website, not on the claim

2  forms?

3          MR. MATT:  Correct.

4          THE COURT:  Okay.

5          MR. MATT:  And can I give a quick rebuttal to

6  Mr. Pentz, or do you want me to wait?

7          THE COURT:  No.  Go right ahead.

8          MR. MATT:  Again, his quote/unquote "client" is his

9  father.  His administration was in 2007, so very late.

10          THE COURT:  My father used to call on my legal

11  services.  He said he paid the legal bill back in the day.  All

12  right.

13          MR. MATT:  He's used his father to object in a lot of

14  other cases, your Honor.  That's the significance of why I

15  raise that.  He has no expert at all.  That's the only points I

16  have to Mr. Pentz.

17          MR. PENTZ:  Your Honor, I said I was finished, but I

18  had one more issue that I would like to raise just because I'd

19  like to get an answer for it today.  It's the issue of the

20  inclusion of Climara, or the actual exclusion --

21          THE COURT:  It's not in there.

22          MR. PENTZ:  But why not?  We've now --

23          THE COURT:  Excuse me.  I'm done, I'm done.  You can

24  bring whatever lawsuit you want on Climara.  Who even

25  manufacturers it?

Page 82

```
1              MR. PENTZ:  It's Bayer.

2              THE COURT:  Good, have fun.

3              MR. PENTZ:  But it's chemically equivalent to

4  Estradiol.

5              THE COURT:  Actually don't, please, because it will

6  come here.

7              (Laughter.)

8              THE COURT:  No, you can do what -- I can't force them

9  to add drugs.  I'm just -- thank you.

10             All right, Mr. Haviland.

11             MR. HAVILAND:  May it please the Court, Don Haviland

12 for what we call the "certain named plaintiffs" for simplicity

13 sake, your Honor.

14             We have essentially five objections, and I want to

15 work through those with your Honor because they obviously are

16 impacted by the things that have happened, but let me get them

17 out so we have a road map.  We lodged an objection a while ago

18 to the overall settlement amount.  I think the record is clear

19 now, though, that counsel did not have the wherewithal to

20 assess the value of the claims that they're settling, which has

21 put us in this difficult position of trying to take moneys that

22 are not enough and allocate them, which takes me to my next

23 objection, which is to the allocation between the consumers and

24 the TPPs.  In a moment I'm going to call upon allocation

25 counsel and see if they're in the courtroom to answer for what
```

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re Pharmaceutical Industry | ) | **MDL No. 1456** |
| Average Wholesale Price Litig. | ) | **C.A. No. 01-CV-12257-PBS** |
|  | ) |  |
|  | ) |  |
| THIS DOCUMENT RELATES TO: | ) | Judge Patti B. Saris |
| TRACK TWO SETTLEMENT | ) |  |
|  | ) |  |

## NOTICE OF APPEAL

Corinna Connick hereby appeals to the United States Court of Appeals for the First

Circuit from the Order of the Court denying her motion to intervene on the grounds that she is

not a class member (Document 7770).

Dated:

*Corinna Connick*

Corinna Connick, *pro se*
12545 Ashton Trail,
Chardon, OH 44024

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 26, 2011 she served a true copy of
the foregoing document on the following counsel of record via electronic mail and Ordinary U.S.
Mail:

Sean Matt
Hagens Berman
1918 Eighth Ave.
Suite 3300
Seattle, WA 98101

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA 02142

Steve Berman

Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Jeffrey Kodroff
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL 60603

Corinna Connick

# EXHIBIT D

                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS


      IN RE:                          )
                                      )  CA No. 01-12257-PBS
      PHARMACEUTICAL INDUSTRY AVERAGE )
      WHOLESALE PRICE LITIGATION      )  Pages 1 - 35
                                      )




                       TRACK TWO FAIRNESS HEARING

                  BEFORE THE HONORABLE PATTI B. SARIS
                     UNITED STATES DISTRICT JUDGE




                       United States District Court
                       1 Courthouse Way, Courtroom 19
                       Boston, Massachusetts  02210
                       November 22, 2011, 2:57 p.m.






                          LEE A. MARZILLI
                       OFFICIAL COURT REPORTER
                    United States District Court
                    1 Courthouse Way, Room 3205
                        Boston, MA  02210
                          (617)345-6787

1   has withdrawn his objection.  Patricia Weatherly, who is

2   represented by Richard Landrigan, has recently withdrawn her

3   objection.  And Mr. Wilson, I can't remember who is

4   representing Mr. Wilson, but his objection has been withdrawn

5   as well.  So that leaves one objection.

6           THE COURT:  From the initial settlement?

7           MR. MATT:  From the initial set represented by a

8   counsel.  That's Corinna Connick, and we're embroiled in a

9   substantial dispute with her as you --

10          THE COURT:  Because she thinks she should have been in

11  the class, right?

12          MR. MATT:  She did.  She didn't take a class drug.

13  It's clear, your Honor has found that she didn't take a class

14  drug.  And she has filed a pro se appeal, purportedly pro se --

15  I'll come back to why it's purportedly --

16          THE COURT:  But how could she appeal?  I haven't done

17  anything yet.

18          MR. MATT:  She filed an appeal from your order denying

19  her motion to intervene.

20          THE COURT:  I see.  How long ago was that filed?

21          MR. MATT:  That was filed five or six weeks ago.

22  She's already missed her docketing deadline in the First

23  Circuit.  We have noted her deposition because we want to know

24  whether she has the ability to post a bond, and we also want to

25  know whether she's truly proceeding pro se.  We have since

1    learned that she's really not, and that the lawyer that

2    represented her here, a guy named Ed Cochran, by all

3    appearances has ghost written, in a derogation of First Circuit

4    rules, the opposition to the bond motion that we filed.

5           We tried to take her deposition.  She failed to

6    appear.  And in fact the deposition was going to be taken by my

7    co-counsel, Ken Wexler; and Corinna Connick's husband has now

8    sued Ken Wexler in the Northern District of Ohio to quash the

9    deposition notice.  So the appeal itself is frivolous in the

10   extreme.  Here we have a person who's not a class member who

11   wants to be part of the settlement that she feels is deficient.

12   Your Honor, for lack of a better expression, it's a shakedown.

13          THE COURT:  It's on appeal, so there's nothing I can

14   do with it, right?

15          MR. MATT:  Well, we have filed a motion to impose a

16   bond, an appellate bond, similar to what you did when you

17   approved the GSK settlement.

18          THE COURT:  What's the timing usually of that?

19          MR. MATT:  I believe the briefing is complete on that,

20   your Honor.  We filed a motion.  They filed their opposition on

21   Friday, and then we filed leave to file a supplemental brief

22   yesterday, which your Honor granted yesterday, and we filed

23   that brief.  So the briefing itself is closed.

24          The timing of the appeal is that if that appeal goes

25   forward, defendants will take the position that we don't have

Case 1:01-cv-12257-PBS Document 7871-3 Filed 12/06/11 Page 14 of 46
Case 1:11-cv-02459-JS Doc #: 3-5 Filed: 12/05/11 5 of 11. PageID #: 72

Page 12

1    the effective date and finality under the settlement.  So it

2    will hold up distribution of the settlement for at least twelve

3    months, and for that reason, we filed a motion for imposition

4    of a bond because we've documented quite clearly that there is

5    going to be at least $196,500 in additional administration

6    costs caused by that appeal.

7            THE COURT:  I'm concerned that they view the amount as

8    being punitive to an extreme that no person could afford it,

9    especially the kind of -- who's Ms. Connick?  Is she an old

10   person?

11           MR. MATT:  No.  She's married to an attorney, a

12   practicing attorney in Cleveland, who just appeared on her

13   behalf Friday.

14           THE COURT:  Is anyone here for Ms. Connick, any of the

15   attorneys?  No.

16           So she's putting all her eggs in the motion to

17   intervene because she's not part of the class right now.

18           MR. MATT:  Correct, which again underscores frivolity.

19           THE COURT:  Since I don't have her -- well, I don't

20   have her -- she hasn't filed an appeals brief yet?  It's hard

21   to figure out what the -- what's the challenge, that I abused

22   my discretion in not allowing her to intervene?  Is that it?

23           MR. MATT:  Correct.

24           THE COURT:  And have you explained in your briefs,

25   since I haven't really gotten to it, why it is that she just

Case 1:11-cv-02439-JS Doc #: 5-5 Filed: 12/05/11 6 of 46. PageID #: 76

Page 13

1   clearly doesn't have a class drug?

2           MR. MATT:  We did, and you agreed and said as much in

3   your order denying the intervention.  But in a nutshell --

4   actually, not a nutshell.  I can explain the whole thing.  That

5   is, it's Climara.  It's not listed in any complaint.  The drug

6   that she took is Climara.  It's not listed in any complaint.

7   It's not on the class drug list.  It was never a part of the

8   litigation.  It's not part of the settlement release.

9           THE COURT:  Is it an equivalent generic drug?

10          MR. MATT:  A generic version of Climara is estradiol,

11  and it is part of the case.

12          THE COURT:  So that's what she's upset about, the

13  brand name?

14          MR. MATT:  The brand name is not; the generic was.

15  It's just not part of the case.  We never did any discovery on

16  it.  It's clear, the record is clear, crystal clear it's not

17  part of the case.

18          THE COURT:  So what are they arguing on appeal, that I

19  erred in not expanding it to include that drug?

20          MR. MATT:  Her argument is that, against all the

21  evidence, of course, that it is a class drug.

22          THE COURT:  Do I have evidence of that other than it's

23  not listed?

24          MR. MATT:  There's no evidence whatsoever that it is a

25  drug that's covered by the settlement or was ever in the

1  litigation.

2          THE COURT:  All right, so I'm hoping that that's all

3  in there because if I have to write an opinion, you can't just

4  say, "I impose a bond."  And so explain to me what the amount

5  would be again?

6          MR. MATT:  So the amount would be -- and this is, just

7  for your understanding, the amount is high, but it's not set to

8  be punitive.  It's set to be recoverable costs that are

9  authorized by the Rules of Appellate Procedure and by case law.

10  It's $196,500 for extra administration costs.  We have

11  submitted an evidentiary foundation for that in the form of --

12          THE COURT:  Well, why would it be extra?

13          MR. MATT:  Here's why.  Dan Coggeshall submitted a

14  declaration explaining this, so it's in the record.  The

15  settlement administrator, if this thing gets put on hold for

16  twelve months, still has to work it.  And what they have to do

17  is, they have to respond to a large volume of calls from class

18  members, calls that will increase as time goes on, people

19  wondering where their money is.  They get calls all the time.

20  They're going to have to continue to field those calls over the

21  next year, and the problem is, the volume of those calls will

22  increase substantially as time goes on.

23          THE COURT:  That just seems like too high because you

24  have to have them in place anyway as you're distributing the

25  money.  So I'm just trying to figure out what a fair amount is.

1    MR. MATT:  Well, if they don't have to respond --

2    well, they still have to maintain the website, they still have

3    to maintain the P.O. box number, but the bulk of the expenses

4    are associated with answering the telephone for those calls,

5    and --

6    THE COURT:  But they still have to do that in the next

7    year, don't they?

8    MR. MATT:  No, because the settlement will be -- if we

9    achieve finality, okay, that will happen, if you sign an order

10    in the next week, that will happen the end of December.

11    THE COURT:  I am going to sign an order, and as far as

12    I'm concerned, I don't see why you can't distribute it.

13    MR. MATT:  We can hear from defendants on that, but I

14    think there's an effective date that they may take the position

15    is not met unless all appeals have been resolved.

16    THE COURT:  Have you looked it up?

17    MR. BARLEY:  I've looked at the settlement agreement,

18    and the definition of what is final is when the litigation is

19    over, including all appeals.  I can read it if I can find it.

20    THE COURT:  So this isn't really an appeal of the

21    settlement.  It's an appeal of the denial of the motion to

22    intervene.

23    MR. MATT:  Let me clarify that.  That's correct, but

24    she also objected to the settlement.  That's what's coming next

25    if she was allowed to intervene, okay.  She still has an

6a8f0717-dff5-4f30-927f-dfb819c488ac

Case 1:01-cv-12257-PBS Document 7871-3 Filed 12/06/11 Page 18 of 46
Case 1:11-cv-02439-JG Doc #: 3-5 Filed: 12/05/11 9 of 76. PageID #: 75

Page 16

1   objection out there to the settlement.

2          THE COURT:  I see.

3          MR. MATT:  And so, you know, presumably she's going to

4   appeal that once you sign the final approval order.

5          MR. BARLEY:  And we obviously don't want the money

6   distributed until we're sure that that's the end of it.

7   "Final" is defined in the settlement agreement:  "Final or

8   final approval of this agreement means that the time has run

9   for any appeals from a final approval order of the MDL court or

10  any such appeals have been resolved in favor of this

11  agreement."

12         THE COURT:  That's a little vague on this

13  circumstance.

14         MR. MATT:  We're all in favor of distributing --

15         MR. BARLEY:  -- I think was not to distribute the

16  funds until it was clear that it wouldn't be attacked in any

17  way collaterally or on appeal or whatever, you know, that we

18  had a bulletproof final judgment.  I think that's in

19  everybody's best interests.  I mean, we're as anxious as

20  anybody to get this over with and everything.  We just want to

21  make sure that there's not anything hanging out there, your

22  Honor.

23         THE COURT:  Thank you.  But how long do you think you

24  have to keep this place open, even if she didn't appeal?

25         MR. MATT:  Well, if she didn't appeal, then I think

1   you're looking at time to distribution from final finality.  If

2   that's the end of December, it would be April to May that they

3   actually have to -- it will take them that long to process

4   everything and make sure that all the deficient claims are

5   cured that are going to be cured, et cetera.  So I think it's

6   probably three to four months to get the checks out.

7          THE COURT:  So you'd have to keep it open anyway.

8          MR. MATT:  That's correct.

9          THE COURT:  And so you're saying they can be doing

10  that anyway because the odds of this succeeding are pretty low.

11  So the extra amount of time would be what if it's --

12         MR. MATT:  Let's call it eight months.  That's if the

13  First Circuit rules within twelve months, and, of course,

14  there's no guarantee of that.  It could be longer than twelve

15  months.  We just had the claims administrator do a declaration

16  based on a twelve-month delay.  It could be longer.

17         THE COURT:  I will be imposing an appeal bond, but I

18  don't know how much.

19         MR. MATT:  Okay.

20         THE COURT:  And I don't know how long it will take me

21  to write it up, and so -- I actually shouldn't even say that

22  because I haven't read her opposition yet, but I do think it's

23  a frivolous appeal.  So unless she persuades me that there's

24  something that I didn't catch last time around, that's where

25  I'm likely to go.

Case 1:01-cv-02257-PGS Document 7071-3 Filed 12/06/11 Page 20 of 46
Case 1:11-cv-02499-JCS Doc # 5-9 Filed 12/05/11 Page 20 of 46

Page 18

1    Anyway, why don't you file your motion, assert your

2    motion.  I pretty much know this case.  I was hoping for sort

3    of a summary for the record all in one place of what the final

4    settlement is.

5    MR. MATT:  And we have filed already a proposed final

6    approval order.  That was filed a couple of years ago, and some

7    things have changed since then, so we're filing --

8    THE COURT:  Right, I was hoping I was going to get

9    that actually.

10    MR. MATT:  Yes, we actually should have by now at

11    3:15, hopefully my legal assistant has sent a red-lined version

12    of that to defendants for them to review.  Our goal was to file

13    that with your Honor tomorrow with the opt-outs.  We have to

14    attach all the opt-outs to it so that they're not bound by the

15    order.

16    THE COURT:  Tomorrow is the day before Thanksgiving.

17    I'm just trying to figure out, what's taken so long here?

18    MR. MATT:  We had to gather all the opt-outs, and they

19    keep coming in.  Even though the opt-out deadline was the end

20    of October, if they come in a little bit late, we tend to honor

21    them.

22    THE COURT:  All right, so in this memo -- I would

23    rather have it after Thanksgiving if it's more complete -- what

24    I would like is a complete summary because we kept changing

25    this because I wasn't happy with it.  And I took very

6a8f0717-dff5-4f30-927f-dfb819c488ac

# EXHIBIT E

**WEXLER WALLACE** LLP

Chicago · Sacramento

Kenneth A. Wexler    312.589.6270 Direct
                     312.589.6271 Fax
                     kaw@wexlerwallace.com

November 14, 2011

**_Via Facsimile_**

Corinna Connick
12545 Ashton Trail
Chardon, OH 44024
Fax: (440) 285-2491

       Re:     *In Re Pharmaceutical Industry Average Wholesale Price Litigation*

Dear Ms. Connick:

I want to confirm that you will be appearing for your deposition on Friday pursuant to the notice of deposition filed with the Court, another copy of which accompanies this fax. If I do not hear from you to the contrary, I will be traveling to Cleveland for the proceeding. If you wish to reach me in advance, please contact my Assistant, Julianne Yun, who will locate me, as I am out of town on business all week.

Regards,

/s/ Kenneth A. Wexler
Kenneth A. Wexler

KAW:jy

Enclosure

Case 1:01-cv-12257-PBS Document 7971-3 Filed 12/06/11 Page 23 of 46
Case 1:11-cv-02495-JC Doc #: 5-6 Filed: 11/09/11 3 of 5. PageID #: 84
Case 1:01-cv-12257-PBS Document 7893 Filed 11/07/11 Page 1 of 3

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) |
| | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| | Judge Patti B. Saris |
| TRACK TWO SETTLEMENT | ) |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30, the undersigned counsel will take the deposition of Corinna Connick on November 18, 2011 at 9:30 a.m. The deposition will be recorded by stenographic and/or sound and visual means and will take place at the offices of Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114-1304.

You are invited to attend and participate.

DATED: November 4, 2011

By    /s/ Steve W. Berman
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

- 1 -

001534-16 484045 V1

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 8th Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K Street, NW
Suite 300
Washington, D.C. 20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

001534-16  484045 V1

Case 1:01-cv-12257-PBS   Document 7971-3   Filed 12/06/11   Page 25 of 46
Case 1:11-cv-02495-GC   Doc #: 5-6   Filed: 12/09/11   5 of 5.   PageID #: 83
Case 1:01-cv-12257-PBS   Document 7893   Filed 11/07/11   Page 3 of 3

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **NOTICE OF DEPOSITION**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 4, 2011 a copy to LexisNexis File & Serve for posting and notification to all parties.

_/s/ Steve W. Berman_
Steve W. Berman

001534-16  484045 V1

# EXHIBIT F

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | Master Civil No. 01-cv-12257 |
| | MDL No. 1456 |
| THIS DOCUMENT RELATES TO TRACK 2 SETTLEMENT | Judge Patti B. Saris |

## PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF CORINNA CONNICK

Pursuant to Fed. R. Civ. P. 37 and Local R. Civ. P. 37.1, Class Counsel seek an order compelling Corinna Connick to appear for a deposition and answer questions regarding her pending appeal of this Court's August 29, 2011 ruling and Plaintiffs' Motion for Imposition of Appeal Bond Under Federal Rule of Appellate Procedure 7 [Docket Nos. 7887 and 7888]. As grounds for the foregoing, Class Counsel state as follows:

1. On March 4, 2009, Ms. Connick sought to intervene in the Track 2 Settlement pursuant to Fed. R. Civ. P. 24 on behalf of other similarly-situated consumers. *See* Dkt. No. 5941. On March 24, 2009, Class Counsel Jennifer Fountain Connolly took Ms. Connick's deposition on issues related to her standing as an objector and the grounds for her filings.

2. On August 29, 2011, after considering the facts, briefs and oral argument, this Court determined that the drug Ms. Connick allegedly took was not a part of the Track 2 settlement and, therefore, she was and is not part of the Class, as she is not being required to give a release as a result of the settlement. *See* August 8, 2011 Hearing Tr. at p. 81-82; Dkt. No. 7770 (denying motion to intervene). On September 27, 2011, Ms. Connick filed a *pro se* notice of appeal of the Court's order denying her Motion to Intervene. *See* Dkt. No. 7822.

3. Recognizing the likelihood of Ms. Connick's appeal delaying distribution of the Track 2 settlement funds, on November 4, 2011, Class Counsel moved pursuant to Fed. Rule of App. Proc. 7 that Ms. Connick be ordered to post a bond pending her appeal. Dkt. Nos. 7887, 7888. Subsequently, Plaintiffs served Ms. Connick through the LexisNexis File & Serve System with a notice of deposition, scheduled for November 18, 2011 at 9:30 a.m. at the office of Squire, Sanders & Dempsey LLP in Cleveland, Ohio. *See* Notice of Deposition, attached hereto as Ex. 1. The purpose of the deposition was to determine Ms. Connick's willingness and ability to post the bond requested, as well as to explore the basis of the *pro se* notice of appeal which would hold up distribution of settlement proceeds to a Class of which Ms. Connick is not a member. Plaintiffs believe that both these issues are important and highly relevant to the pending Motion for Imposition of Appeal Bond.

4. After numerous phone conversations and email communications, Class Counsel was informed by Thomas J. Connick, Ms. Connick's husband and an attorney in Cleveland who has since filed an appearance on her behalf, that Ms. Connick would refuse to appear for her deposition under any circumstances. *See* Ex. A to Plaintiffs' Motion for Leave to File Supplemental Memorandum In Support of Motion for Imposition of Appeal Bond Against Corinna Connick Under Federal Rule of Appellate Procedure 7, filed simultaneously herewith for a full factual recitation, declaration from Kenneth A. Wexler, details concerning each communication between counsel on this issue, and supporting exhibits.

5. In lieu of appearing, and without attempting to seek relief from this Court, Ms. Connick *sued* Class Counsel Kenneth A. Wexler and his firm, Wexler Wallace LLP, in federal district court in Ohio, seeking declaratory and injunctive relief, as well as attorneys' fees, costs and interest, in connection with the deposition notice.

2

6.      Plaintiffs' Motion to Compel should be granted.  By filing a motion to intervene and a notice of appeal, Ms. Connick has submitted herself to this Court's jurisdiction.  Her deposition was appropriately noticed, and its purpose is directed to the issue now squarely before the Court, i.e., whether to order Ms. Connick to post a bond pending her appeal.   Whether *pro se* or represented by counsel, Ms. Connick has no right to simply ignore a deposition notice, particularly where, as here, the deposition concerns delay of payment to an elderly, sick and dying Class, of which *Ms. Connick is not even a member*.   Plaintiffs have offered to take Ms. Connick's deposition at a time that accommodates her, but she has outright refused to appear.

7.      Plaintiffs incorporate the remaining factual allegations and exhibits provided in their [Proposed] Supplemental Memorandum In Support of Motion for Imposition of Appeal Bond Against Corinna Connick Under Federal Rule of Appellate Procedure 7, attached as Exhibit A to their Motion for Leave to File the Supplemental Memorandum, also filed November 21, 2011, as if fully set forth herein.

### *COMPLIANCE WITH LOCAL RULE OF CIVIL PROCEDURE 37.1*

The undersigned counsel affirms that he has complied with Local Rule 37.1.

WHEREFORE, Class Counsel respectfully request that this Court grant their Motion to Compel the Deposition of Corinna Connick, and all other relief that this Court deems just and proper.

Respectfully submitted,

DATED:  November 21, 2011              _____/s/ Kenneth A. Wexler_____

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

*LIAISON COUNSEL*

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K Street, NW
Suite 300
Washington, D.C. 20006
Telephone: (202) 355-6435
Facsimile: (202) 355-6455


Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Marc H. Edelson
Hoffman & Edelson LLC
45 W. Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735
*CLASS COUNSEL*

4

# CERTIFICATE OF SERVICE

I hereby certify that I, Kenneth A. Wexler, caused a true and correct copy of the

foregoing *PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF CORINNA CONNICK*

be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case

Management Order No. 2, by sending on November 21, 2011 a copy to LexisNexis File and

Serve for Posting and notification to all parties.

By: **/s/ Kenneth A. Wexler**
      Kenneth A. Wexler
      Wexler Wallace LLP
      55 W. Monroe, Suite 3300
      Chicago, IL  60603
      Telephone:  (312) 346-2222
      Facsimile:  (312) 346-0022

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) | MDL No. 1456 |
| | ) | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | ) ) | Judge Patti B. Saris |
| TRACK TWO SETTLEMENT | ) ) | |

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30, the undersigned counsel will take the deposition of Corinna Connick on November 18, 2011 at 9:30 a.m.  The deposition will be recorded by stenographic and/or sound and visual means and will take place at the offices of Squire, Sanders & Dempsey L.L.P., 4900 Key Tower, 127 Public Square, Cleveland, Ohio 44114-1304.

You are invited to attend and participate.

DATED:  November 4, 2011

By   /s/ Steve W. Berman
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K Street, NW
Suite 300
Washington, D.C. 20006
Telephone: (202) 355-6435
Facsimile: (202) 355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

- 2 -

001534-16  484045 V1

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **NOTICE OF DEPOSITION**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on November 4, 2011 a copy to LexisNexis File & Serve for posting and notification to all parties.

 /s/ Steve W. Berman
Steve W. Berman

001534-16  484045 V1

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY ) | |
| AVERAGE WHOLESALE ) | MDL No. 1456 |
| ) | |
| ) | CIVIL ACTION: 01-CV-12257-PBS |
| THIS LITIGATION RELATES TO: ) | |
| ) | Judge Patti B. Saris |
| TRACK TWO SETTLEMENT ) | |

---

**APPELLANT CORINNA CONNICK'S MOTION FOR LEAVE**
**TO FILE A SHORT RESPONSE TO PLAINTIFFS' REPLY BRIEF**
**IN SUPPORT OF THEIR MOTION FOR IMPSOTION OF AN APPEAL**
**BOND AGAINST CORINNA CONNICK**

---

Thomas J. Connick (1149757)
Dubyak Connick Thompson & Bloom LLC
3401 Enterprise Parkway, Suite 205
Cleveland, OH 44122
PH: 216-364-0500 l FX: 216-346-0505
Email: tconnick@dctblaw.com
*Attorney for Corinna Connick*

Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge MA 02142
PH: 617-482-3700 l FX: 617-482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
PH: 206-623-7292 l FX: 206-623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K Street, NW, Suite 300
Washington, DC 20006
PH: 202-355-6435 l 202-355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2055
Philadelphia, PA 19103
PH: 215-496-0300 l FX: 216-496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL 60603

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA 18901
PH: 215-230-8043 I FX: 215-230-8735

**CLASS COUNSEL**

Appellant, Corinna Connick, by and through undersigned counsel Thomas J. Connick, respectfully requests leave of this Honorable Court to file a short response brief to Plaintiffs' Reply Brief In Support Of Their Motion For Imposition Of An Appeal Bond Against Corinna Connick. As grounds for the foregoing, Appellant, Connick states as follows:

1.      As noted by Plaintiffs in their reply brief, Local Rule 7.1 B(2) requires that additional papers, "whether in the form of a reply or otherwise, may be submitted only with leave of Court." Plaintiffs' allegations of "new evidence of conduct" by Ms. Connick warranting the imposition of a bond is both misleading and relies upon untrue allegations. In particular, Plaintiffs allege that Attorney Edward Cochran "is ghost writing" Ms. Connick's submissions which is patently untrue.[1] Moreover, Plaintiffs' rendition of how and/or why Ms. Connick has refused to appear for her deposition is extremely skewed and misleading.

---

[1] The tagline on Appellant Connick's briefings and motions (F:\Clients - Connick\Cochran, Ed (6008)\AWP Litigation\Pleadings\AWP Litigation) generated on the pleadings in this matter since undersigned counsel has taken over as counsel, is generated specifically and solely from the computer generated file controlled by undersigned counsel of the Law Offices at Dubyak Connick Thompson & Bloom, LLC. Notably, the pleadings for Ms. Connick generated prior to undersigned counsel taking over as counsel for Ms. Connick do not have such a tagline because those pleadings were, in fact, authored by Appellant Connick's former counsel, John Pentz and/or Edward Cochran. The tagline appearing on undersigned counsel's pleadings was placed on this file in 2009, to reflect the name of the file, and has been kept in the electronic file as such in the ordinary course and scope of business. The first time that this tagline has actually appeared on any pleadings, which were generated out of the office of Dubyak Connick Thompson & Bloom, LLC, is when undersigned counsel took over this case, and is, indeed, proof that these pleadings were prepared by undersigned counsel at the offices of Dubyak Connick Thompson & Bloom, LLC, and not by Attorney Edward Cochran. In fact, the only way the tagline referenced by Plaintiffs appears on these pleadings is by way of Attorney Connick's computer system located and generated at the Law Offices of Dubyak Connick Thompson & Bloom, LLC.

2.      As a result and because of the intervening holidays and the press of other business, undersigned counsel requires additional time to fully respond to Plaintiffs spurious allegations set forth in their Supplemental Memorandum In Support of Plaintiffs Motion For Imposition For An Appeal Bond. In addition, Plaintiffs filed a Motion To Compel The Deposition of Ms. Connick contemporaneous with the filing of their Reply Brief In Support of their Motion For Imposition Of An Appeal Bond. The response to Plaintiffs Motion to Compel is due on or about Tuesday, December 6, 2011. For purposes of completeness, judicial economy, and judicial efficiency, Appellant, Corinna Connick, by and through undersigned counsel, respectfully requests she be allowed to respond to Plaintiffs' Motion and Reply Brief jointly on or before Tuesday, December 6, 2011, as both are related to each other, even as referenced by Plaintiffs themselves.

3.      Appellant, Corinna Connick, therefore, respectfully requests leave of this Court to file her response to Plaintiffs Reply Brief In Support Of Their Motion for Imposition of an Appeal Bond contemporaneously with her Brief In Opposition to Plaintiffs Motion to Compel her deposition on or before December 6, 2011.

WHEREFORE, Appellant, Corinna Connick respectfully requests that this Honorable Court grant her leave to file her Response to Plaintiffs Reply Brief In Support of their Motion For Imposition Of An Appeal Bond contemporaneously with her Brief In Opposition to Plaintiffs' Motion to Compel.

Respectfully submitted,

_/s/Thomas J. Connick_

Thomas J. Connick, Esq. (0070527)
**DUBYAK CONNICK THOMPSON & BLOOM LLC**
3401 Enterprise Pkwy. Ste. 205
Cleveland OH 44122
PH: 216-364-0500 l FX: 216-364-0505
_Attorney for Corinna Connick_

3

# CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2011, a copy of foregoing *APPELLANT CORINNA CONNICK'S MOTION FOR LEAVE TO FILE A SHORT RESPONSE TO PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR IMPSOTION OF AN APPEAL BOND AGAINST CORINNA CONNICK* was filed electronically. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Undersigned counsel further certifies that, on this date, the above filing was sent by regular U.S. Mail, postage prepaid, to all counsel not registered with the Court to receive electronic filings.

                                                    */s/Thomas J. Connick*
                                             Thomas J. Connick, Esq. (0070527)
                                             *Attorney for Corinna Connick*

F:\Clients - Connick\Cochran, Ed (6008)\AWP Litigation\Pleadings\AWP Litigation\Motion for Leave to File Short Response to Pltf Reply Brf 11-28-2011.doc

# EXHIBIT H

Case 1:01-cv-12257-PBS Document 7971-3 Filed 12/06/11 Page 41 of 46
Case 2:11-cv-02495-JG Doc #: 3-5 Filed: 12/09/11 2 of 7 PageID #: 99
Page 1



SANKYO CORPORATION, et al., Plaintiffs-Appellants, -vs- NAKAMURA TRADING CORPORATION, Defendant-Appellee.

No. 04-1337

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*139 Fed. Appx. 648; 2005 U.S. App. LEXIS 4339*

**March 15, 2005, Filed**

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

**DISPOSITION:** Affirmed.

**COUNSEL:** For SANKYO CORPORATION, a Japanese corporation, SANKYO NORTH AMERICA CORP., a Michigan corporation, SATORU KAGITANI, a citizen of Japan, Plaintiffs -- Appellants: Stefan B. Herpel, Ann Arbor, MI.

**JUDGES:** Before: NELSON and SUTTON, Circuit Judges; WELLS, District Judge.*

* The Honorable Lesley Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

**OPINION BY:** Wells

**OPINION**

[*648] WELLS, District Judge. Appellants Sankyo Corporation, Sankyo North America Corporation, and Satoru Kagitani appeal the district court's dismissal of their complaint for lack of subject matter jurisdiction. Appellants' complaint sought a determination on whether certain claims, if filed by the appellee, would be subject to arbitration. Because we conclude [**2] that such a question presents an ephemeral dispute which fails the case or controversy requirement of Article III of the United States Constitution, we affirm the judgment of the district court.

I.

In 1997, Masahiro Nakamura and Satoru Kagitani, Chairman and CEO of Sankyo Corporation, a Japanese manufacturer, entered into discussions about the creation of a joint enterprise which would market and sell Sankyo Corporation products in the United States. These discussions culminated in the formation of appellee Nakamura Trading Corporation ("NTC"), an Illinois corporation jointly owned by Mr. Nakamura and Sankyo Corporation. [1]

1 NTC was 60% owned by Mr. Nakamura and 40% owned by Sankyo Corporation.

After carrying on their business relationship for several years without a signed contract, NTC and Sankyo

139 Fed. Appx. 648, *648; 2005 U.S. App. LEXIS 4339, **2

Corporation entered into a written Basic Distributorship [*649] Agreement ("Agreement") on April 1, 2002. The Agreement provided that NTC would market and sell Sankyo Corporation's products in overseas markets while functioning [**3] as its commission agent. In addition to outlining the rights and responsibilities of both parties, the Agreement, in Article 17, provides that when international disputes arise:

> Arbitration proceedings shall take place in the State of Illinois if [Sankyo Corporation] sues [NTC], and arbitration proceedings shall take place in Hyogo Prefecture if [NTC] sues [Sankyo]. [2]

(JA 93). The Agreement specified that it was effective until April 1, 2004 and "shall be extended for another year if neither [party] objects." (JA 93). If either party wished to terminate the Agreement, it was required to provide three months advance notice in writing.

> [2]   For the purpose of analysis, we assume, without deciding, that this provision constitutes a valid, mandatory arbitration provision.

For several reasons, including NTC's lack of profitability, Sankyo Corporation sent a letter purporting to terminate the Agreement with NTC, effective May 1.8, 2003. During a July 12, 2003 meeting, in which the wind-up of [**4] their business relationship was discussed, Mr. Nakamura told Mr. Kagitani that Sankyo Corporation still owed NTC $ 3,000,000. When Sankyo denied any such obligation, Mr. Nakamura sent several letters reiterating his $ 3 million demand and advising Mr. Kagitani that NTC was prepared to litigate this case in a United States District Court. Included with his August 10, 2003 letter, Mr. Nakamura sent Mr. Kagitani a draft complaint raising several common law claims and a statutory claim based on Illinois law. In his correspondence, Mr. Nakamura imposed several deadlines -- September 10, 2003, September 28, 2003, and the end of October -- by which litigation would be initiated if no response or counterproposal was forthcoming. Despite Sankyo's refusal to agree to Mr. Nakamura's demands, the first two deadlines passed without incident.

On October 28, 2003, plaintiffs Sankyo Corporation, Sankyo North American Corporation, and Mr. Kagitani (collectively referred to as "Sankyo") elected to file their own lawsuit in United States District Court for the Eastern District of Michigan against NTC, seeking declaratory and injunctive relief. Specifically, Sankyo sought a declaratory judgment that [**5] any claims brought by NTC against Sankyo relating to the Agreement, including those set forth in the draft complaint, were subject to mandatory arbitration in Hyogo Prefecture, Japan, and an injunction preventing NTC from bringing such claims in any tribunal other than an arbitration tribunal in Hyogo Prefecture, Japan. [3] Although Sankyo's complaint sought to determine the proper jurisdiction of NTC's possible claims, Sankyo contended that it had no intention of seeking any affirmative recovery against NTC because it had concluded that NTC was uncollectable. Sankyo asserted that the district court had jurisdiction over its complaint pursuant to 9 U.S.C. § 203. [4]

> [3]   Sankyo's complaint could be interpreted as seeking an order to force NTC to litigate any claims it has, including those set forth in the draft complaint, in an arbitration proceeding. However, during oral arguments, Sankyo conceded that a court could not force NTC to litigate claims it elects not to pursue.
>
> [4]  Section 203 provides:
>
> > An action or proceeding falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards] shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.
>
> The Convention allows federal courts, under some circumstances, to compel arbitration either in this country or abroad in international commercial disputes. 9 U.S.C. §§ 202 and 206.

[**6] [*650] On October 30, 2003, the district court judge ordered Sankyo to show cause why its lawsuit should not be dismissed because of the absence of an actual case or controversy. After briefing by both parties, the district court dismissed the action, concluding

139 Fed. Appx. 648, *650; 2005 U.S. App. LEXIS 4339, **6

that Sankyo's complaint sought a "hypothetical ruling" which did not involve an actual case or controversy.

II.

The central issue on appeal is whether the district court had jurisdiction over the claims asserted by Sankyo in its complaint. 5 Federal jurisdiction is limited to actual cases or controversies. See *North Am. Natural Resources, Inc. v. Strand, 252 F.3d 808, 812 (6th Cir. 2001)* (explaining that "one of the fundamental axioms of American jurisprudence is that a federal court may consider only actual cases or controversies.") This jurisdictional prerequisite is firmly rooted in the United States Constitution which provides, in pertinent part, that "the judicial power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties . . . [and] to Controversies. . . ." *U.S. Const., Art. III, sec. 2, cl. 1*. This case or controversy requirement prevents [**7] federal courts from rendering advisory opinions or considering hypothetical or abstract questions. *Hall v. Beals, 396 U.S. 45, 48, 24 L. Ed. 2d 214, 90 S. Ct. 200 (1969)*; see also *U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 446, 124 L. Ed 2d 402, 113 S. Ct. 2173 (1993)*; *McCurry ex rel. Turner v. Adventist Health System/Sunbelt, Inc., 298 F.3d 586, 597 (6th Cir. 2002)*; *Strand, 252 F.3d at 812-13*.

5 In addition to challenging the district court's conclusion, Sankyo takes issue with the district court's refusal to hold an evidentiary hearing and its factual finding that there was no lawsuit "looming on the horizon." Since no case or controversy is presented by Sankyo's complaint regardless of the likelihood of a NTC lawsuit, factual findings about the likelihood of such a lawsuit were unnecessary. Accordingly, Sankyo's objections, to the district court's factual finding or the procedures used to reach it, lack merit.

While the difference between an abstract question and a [**8] case or controversy is one of degree, not discernible by any precise test, the basic inquiry is whether:

the conflicting contentions of the parties . . . present a real, substantial controversy between the parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.

*Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 297-98, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979)*; see also *Golden v. Zwickler, 394 U.S. 103, 108, 22 L. Ed. 2d 113, 89 S. Ct. 956 (1969)* (applying the same test in the declaratory judgment context). 6 This threshold issue is one that the Court of [*651] Appeals reviews *de novo. Strand, 252 F.3d at 812*. To the extent that the district court's jurisdictional ruling rests on factual findings, the Court of Appeals must accept those findings unless they are clearly erroneous. *RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1135 (6th Cir. 1996)*.

6 Although Sankyo did not specifically invoke the Declaratory Judgment Act, *28 U.S.C § 2201*, in its complaint, it clearly seeks declaratory relief governed by that statute. The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction" a federal court "may" give a declaratory judgment, a power permissive, not mandatory. *Grand Trunk Western R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 325 (6th Cir. 1984)*. When defendant seeks injunctive relief in addition to declaratory relief, the requirement of an "actual controversy" in the Declaratory Judgment Act is identical to the "case or controversy" requirement of Article III. *Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 81 L. Ed. 617, 57 S. Ct. 461 (1937)*. Accordingly, the requisite "case or controversy" analysis is the same with respect to Sankyo's separate requests for injunctive and declaratory relief.

[**9] Declaratory judgment actions, like the present one, often require courts to face the difficult task of distinguishing "between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies." *Kardules v. City of Columbus, 95 F.3d 1335, 1343-44 (6th Cir. 1996)*. To satisfy the case or controversy requirement, the dispute "must be definite and concrete" and must allow for "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Haworth, 300 U.S. at 240-41*.

Sankyo contends that the district court failed to apply the proper test for determining the existence of an actual case or controversy, given the facts of this case. It suggests that the appropriate test for determining the existence of a case or controversy in the context of

Case 1:01-cv-12257-PBS Document 7031-3 Filed 12/06/11 Page 44 of 46
Case 1:11-cv-02389-JS Document 3-9 Filed 12/05/11 Page 44 of 46 PageID #: 102

Page 4

139 Fed. Appx. 648, *651; 2005 U.S. App. LEXIS 4339, **9

potential litigation is whether defendant's actions have created a reasonable apprehension on the plaintiff's part that the defendant will initiate litigation. Based on that "test" and Sankyo's assertion that the evidence in the record supported a conclusion that it faces a "reasonable [**10] apprehension" of litigation, Sankyo argues that the district court incorrectly dismissed its case. We disagree with Sankyo's articulation of the "test" to be applied in the context of this case and with its resulting conclusion.

Beginning with a faulty premise, Sankyo overstates the test for the existence of a case or controversy in the context of threats of future litigation and the applicability of this so-called rule to the present case. Although a few circuits have employed the "reasonable apprehension" language in cases involving the possibility of future litigation, *Spokane Indian Tribe v. United States, 972 F.2d 1090, 1092 (9th Cir. 1992)* (concluding that a justiciable case or controversy exists if the "defendant's actions cause the plaintiff to have a real and reasonable apprehension that he will be subject to liability.'"); *Collin County, Texas v. Homeowners Association for Values Essential to Neighborhoods, 915 F.2d 167, 172 (5th 1990)* (dismissing a declaratory judgment action because plaintiffs' had "no apprehension" of a lawsuit); *Atlas Air, Inc. v. Air Line Pilots Assoc., Intl., 344 U.S. App. D.C. 1, 232 F.3d 218, 227 (D.C. Cir. 2000)* (concluding [**11] that union posturing in labor negotiations or threats to respond to future changes to a collective bargaining agreement "is insufficient to create the reasonable apprehension of litigation necessary for the claim to be justiciable"), none of these cases stand for the categorical rule suggested by Sankyo.

To the contrary, to meet the jurisdictional requirements of Article Ill's "case" or "controversy" requirement, "a plaintiff must, generally speaking, demonstrate that he has suffered injury in fact,' that is fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear, 520 U.S. 154, 162, 137 L. Ed. 2d 281, 117 S. Ct. 1154 (1997).* The Supreme Court has clearly identified what qualifies as injury in fact: "We have said may times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending' to constitute injury in fact." *Whitmore v. Arkansas, 495 U.S. 149, 158, 109 L. Ed. 2d 135, 110 S. Ct. 1717* (some quotations marks omitted);

*Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville and Davidson County, Tennessee,* [*652] *274 F.3d 377, 399 (6th Cir. 2001)* [**12] ("Ripeness requires that the injury in fact be certainly impending.'").

In our view, the cases relied on by Sankyo are unhelpful because each involves a very specific factual situation and none reach the particular fact pattern at issue in this case. The critical facts of this case are:

. Sankyo has no plan to pursue any affirmative claims against NTC;

. NTC has threatened litigation against Sankyo; and,

. NTC's claims are arguably subject to arbitration.

While the underlying facts are not uncommon, Sankyo's response is somewhat atypical. More commonly, NTC would decide whether or not to sue Sankyo, and, if it elected to do so, Sankyo, at that time, would file a motion to compel arbitration. In this case, Sankyo is attempting to take preemptive action by filing a lawsuit to settle the arbitration question in advance. Such a novel approach is precluded by the Case and Controversy requirement of the United States Constitution.

Absent one unreported case from the Northern District of Alabama which did not explicitly address case or controversy issues, [7] all of the cases cited by Sankyo are inapposite. Sankyo's case law essentially consists of actions filed [**13] by plaintiffs for one of two purposes: 1) to compel arbitration of their affirmative claims when defendants have resisted arbitration; [8] or 2) to obtain a declaratory judgment to resolve the substantive rights of the parties. [9] The present case is of a wholly different nature because Sankyo does not seek arbitration of its claims against NTC or a declaration regarding the substantive rights of the parties. Rather, Sankyo's declaratory judgment action is merely directed at resolving the forum for NTC's potential claims, which NTC may or may not pursue. This would be a very different case if Sankyo brought an action seeking a declaration about its legal rights and responsibilities -- for example, seeking a declaration that it did not breach the agreement. Such an action, unlike the present one, might resolve an actual dispute.

[7]     *See ITT Consumer Financial Corp. v.*

Case 1:01-cv-12257-PBS Document 7071-3 Filed 12/06/11 Page 45 of 46
Case 1:11-cv-02039-JS Document 30-1 Filed 12/05/11 Page 47 of 105

Page 5

139 Fed. Appx. 648, *652; 2005 U.S. App. LEXIS 4339, **13

*McNaughton*, 1991 WL 519584 (N.D. Ala., April 12, 1991).

8    *See Prudential Lines, Inc. v. Exxon Corporation, 704 F.2d 59, 61 (2nd Cir. 1983); Schieffsbetriebs GMBH & Co. KG v. Pan American Grain, 1994 U.S. Dist. LEXIS 15205, 1994 WL 584657 (S.D. N.Y., October 24, 1994); Galveston Maritime Association, Inc. v. South Atlantic & Gulf Coast District, Int's Longshoremen's Assoc., 234 F. Supp. 250, 251-52 (S.D. Tex. 1994); Greenwich Marine, Inc. v. S.S. Alexandra, 225 F. Supp. 671, 673 (S.D.N.Y. 1964); Atlanta Shipping Corp. v. Cheswick-Flanders & Co., 463 F. Supp. 614 (S.D. N.Y. 1978).* In this case, on the other hand, plaintiffs do not seek to arbitrate their claims but rather seek to force arbitration of defendant's potential claims.

[**14]

9    *See Spokane Indian Tribe, 972 F.2d at 1094-95 (9th Cir. 1992)* (declaratory judgment determining whether plaintiffs lotto machines were exempt from state regulations); *National Basketball Association v. SDC Basketball Club, Inc., 815 F.2d 562, 566 (9th Cir. 1987)* (declaratory judgment determining plaintiffs potential anti-trust liability); *Morris v. Dearborne, 69 F. Supp. 2d 868, 880 (E.D. Tex. 1999)* (declaratory judgment seeking determination of whether certain government actions against plaintiff were permissible). Plaintiffs are not asking the district court to resolve any of the substantive rights of the parties; rather, plaintiffs are seeking an order that no district court could resolve the parties' underlying substantive rights.

Sankyo has misplaced its reliance on *Robin Products Co. v. Tomecek, 465 F.2d 1193 (6th Cir. 1972)*. *Robin Products* set out the test for determining whether a justiciable controversy exists in a declaratory judgment action involving patent infringement. *465 F.2d at 1195-96*. Although [**15] Sankyo attempts to analogize the [*653] facts of this case to *Robin Products* and to patent infringement cases more generally, its attempts fail. The issuance of declaratory judgments in patent infringement cases may resolve uncertainty faced by the alleged infringer by conclusively resolving the infringement question. In this case, on the other hand, Sankyo's allegations of uncertainty -- possible claims that may or may not be brought by NTC -- will not be

relieved by the declaration it seeks. Even if the district court could resolve the jurisdictional question presented by Sankyo's complaint, uncertainty would remain in the form of NTC's potential claims.

Notwithstanding Sankyo's extensive citations, there is a dearth of case law supporting its contention that a federal court could provide the relief it seeks, consistent with the case or controversy requirement of the United States Constitution. Under traditional procedures for adjudicating questions of arbitrability, a plaintiff seeking arbitration of its own claims may, if the defendant refuses to arbitrate, resort to the courts to compel it; or, conversely, a defendant can move to compel arbitration of claims which a plaintiff seeks [**16] to litigate in the courts. These two approaches to determining the propriety of a particular forum for resolving disputes make good sense -- once an actual claim is asserted, courts decide whether the parties must arbitrate. Sankyo's approach, on the other hand, places a district court in the untenable position of deciding a question not yet presented, on the basis of uncertain and potentially shifting facts. Under Sankyo's approach, a potential defendant could obtain a declaration of arbitration (or even non-arbitration) of claims that it "reasonably apprehends" plaintiff asserting. Such a "test" requires a district court to decide the difficult question of the proper forum for resolving disputes before those disputes are clearly articulated and actually asserted.

Sankyo sought to terminate its relationship with NTC almost two years ago. Since that time, NTC has made various demands and threats regarding litigation but has filed no action against Sankyo. During oral argument, Sankyo took the position that NTC was just "waiting for a decision from this Court" to file its complaint. Even if that were true, Sankyo could seek to compel arbitration at that time, when NTC's claims are [**17] clearly evident. Under those circumstances, the court would be resolving an actual case or controversy, not merely engaging in a hypothetical exercise.

Accordingly, we hold that Sankyo's lawsuit seeking a determination whether or not NTC's potential, but as yet unfiled, claims are subject to mandatory arbitration does not present an actual case or controversy as required for the constitutional exercise of a district court's jurisdiction. Sankyo's "reasonable apprehension" test does not translate to actions which merely seek to resolve the forum for possible or even likely disputes. Regardless of

Case 1:01-cv-12257-PBS  Document 7871-3  Filed 12/06/11  Page 46 of 46
Case 1:11-cv-02439-JG  Doc #: 3-91 Filed: 12/05/11  7 of 7.  PageID #: 104

Page 6

139 Fed. Appx. 648, *653; 2005 U.S. App. LEXIS 4339, **17

the likelihood of possible litigation, Sankyo may not obtain the advisory opinion it seeks -- whether NTC claims, if filed, would be subject to arbitration. Such a request does not amount to an actual case or controversy as it does not allow for "a decree of conclusive character."

III.

For the reasons set forth above, we AFFIRM the district court's decision to dismiss appellant's lawsuit for lack of jurisdiction.