# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| | THIS DOCUMENT RELATES TO: ALL ACTIONS |
| This Document Relates to: ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS |
| | Judge Patti B. Saris |

## DECLARATION OF MARC H. EDELSON IN SUPPORT OF HOFFMAN & EDELSON, LLC'S MOTION FOR A STAY OF CO-LEAD COUNSEL'S DISTRIBUTION OF FEES

1.    I am the co-founder and managing partner of the firm Hoffman & Edelson, LLC.

2.    I submit this Declaration in support of this firm's Motion Pursuant to Fed. R. Civ. Proc. 23(h) for Allocation of Fees with regard to the Class Settlements and Recoveries entered into with the AWP Defendants.

3.    The facts set forth in this Declaration are based upon my personal knowledge and my contemporaneous review of this firm's time records and documents prepared during the AWP litigations.

4.    In this litigation, class counsels' combined efforts have resulted in significant recoveries for plaintiffs.

5.    The distribution plan filed with this Court on January 9, 2009, identifies the parameters to which co-lead counsel hope to adhere with regard to future fee allocations. *See Class Counsel's Proposed Future Fee Allocation Guidelines,* (attached hereto as Exhibit "A.") "Each firm should receive at least 80% of lodestar and expenses, assuming that the total fees awarded through the course of this litigation are less than total lodestar." *Id. at ¶D.*

"If total fees awarded exceed lodestar, then each firm can expect to receive full reimbursement." *Id.* The distribution plan also identifies the parameters Co-lead counsel utilized to determine each firm's share of the GSK fee award. The primary three factors utilized are the risks each firm assumed, the quality of representation and the time and labor expended. *Id. at ¶B.*

6.      In order to allocate the fee awards among all counsel, Hagens Berman grouped plaintiffs' counsel into tiers. Tier I represents co-lead counsel who participated in the case from inception, through MDL consolidation and pre-trial stages, up to trial and post-trial appeals. Tier I firms assumed most of the risk of this litigation, prepared most of the briefs and other documents filed, comprised the trial team, negotiated directly with defendants on case management issues, and conducted defendant and third-party discovery. *Id. at ¶C.* Hoffman & Edelson is one of the Tier I firms.

7.      As of November 2011, the most recent reporting period for which we have Co-Lead Counsel lodestar information, the accumulated lodestar for Co-Lead Counsel is $50,369,642.80.

8.      Among Tier I, each firm's share of lodestar was:

|    |                   | Lodestar     | Percentage |
|----|-------------------|--------------|------------|
| a. | Hagens Berman     | $20,436,007  | 40.57%     |
| b. | Hoffman & Edelson | $10,184,014  | 20.22%     |
| c. | Spector Roseman   | $ 8,609,775  | 17.09%     |
| d. | Wexler Wallace    | $11,139,846  | 22.12%     |

9.      As is explained further below, Hoffman & Edelson, LLC fully participated in every phase of the AWP litigation, and contributed its time, talent, and financial resources in order to bring this litigation to a successful conclusion. However, as reflected in the proposed allocation of fees associated with the BMS and AZ settlements, Hoffman &

Edleson, LLC is not being treated as a Tier 1 firm, and in fact is being compensated less than non Lead firms. (The proposed plan of allocation is attached as Exhibit B hereto). For example, Heins Mills & Olson, a former Co-Lead who withdrew from the case has a lodestar $3,282,887.75 less than Hoffman & Edelson, LLC and has incurred $1,051,619.69 less in expenses yet is receiving MORE than $92,414.86 than Hoffman & Edelson, LLC. Heins Mills deserves to be paid, but so does Hoffman & Edelson, LLC. The disparity is a result of Hagens Berman allocating to itself a significant portion of the Hoffman & Edelson, LLC lodestar. Hagens Berman has 40.47% of the Co-Lead lodestar but is receiving 47.30% of the fee whereas Hoffman & Edelson, LLC has 20.22% of the Co-Lead lodestar but is receiving a reimbursement equal to 13.40%. That is a reduction of 33.73%. That is egregious.

10.     Hoffman & Edelson, LLC at the time this litigation was instituted, was composed of two partners, three full-time associates and three part-time associates.

11.     In order to provide adequate representation to its clients and the class plaintiffs, Hoffman & Edelson, LLC assigned one full-time associate and its three part-time associates exclusively to the AWP litigation. Other firm members participated on an as-needed basis.

12.     During 2001, Hoffman & Edelson, LLC devoted considerable time researching the issues highlighted by the DOJ's multiple investigations into the major pharmaceutical manufacturers' AWP pricing practices. Hoffman & Edelson, LLC was among the first firms to institute an action on behalf of its clients against those manufactures. These actions were filed in both federal and state jurisdictions, alleging Sherman Act, RICO and consumer fraud statute violations.

13.    On November 16, 2001, Hoffman & Edelson, LLC filed two actions on behalf of the Action Alliance of Senior Citizens of Greater Philadelphia, one in the Northern District of Illinois, 01-cv-8828, and the other in the Eastern District of Pennsylvania, 01-cv-5790. By January 2002, Hoffman & Edelson, LLC filed eleven complaints against twelve manufacturers. These actions were filed in federal and state jurisdictions, alleging Sherman Act, RICO, and consumer fraud statute violations. From January to May 2002, Hoffman & Edelson, LLC prosecuted these actions through the early stages. This required defending several motions to dismiss, and participating in discovery and case management conferences. In additions, the firm represents the Philadelphia Federation of Teachers Health and Welfare Fund and two Track 2 plaintiffs, Thomas Trusky and Mariella Laday..

14.    After commencement of the case, Hoffman & Edelson, LLC assigned two experienced associates to develop various aspects of the AWP claims. One associate, Alan V. Klein, was assigned to maintain contact and assist various plaintiffs that engaged this firm. During early 2003 and through 2004, Mr. Klein met repeatedly with the Action Alliance of Senior Citizens of Greater Philadelphia and the Philadelphia Federation of Teachers Health and Welfare Fund, kept them informed of developments in the litigation, reviewed various document and discovery requests received by the clients, prepared multiple clients' witnesses for deposition, reviewed and redacted massive document productions and prepared drug utilization analyses. Mr. Klein attended the clients' depositions, as well as those of other plaintiffs, including that of New York Life, Three Rivers Health Plan and ULLICO.

15.     Mr. Klein was also responsible for completing an extensive analysis of the terms of every contract defendants provided through discovery, how each contract defined or referenced AWP, and in what ways defendants' pricing was dependant on AWP.

16.     Another associate, Alan Hoffman working along with a small committee assembled from several of the lead counsel's firms, was instrumental in researching and drafting memoranda and briefs addressing issues common to all defendants during the early stages of the litigation.  During 2002, he was responsible for developing a discovery plan and preparing Rule 26(a) disclosures, researching and drafting brief sections in response to various defendants' motions to dismiss.  These motions involved issues including preemption, standing, filed-rate doctrine, deceptive practices, and statutes of limitations.

17.     Thereafter, from early 2004 through to the Track 1 trial, Mr. Hoffman was responsible for managing litigation activities pertaining to defendant Ortho-Biotech.

18.     As Managing partner, Marc Edelson, has been intimately involved with the AWP litigation since 2001.  The initial actions this firm filed were in jurisdictions including the Eastern District of Pennsylvania, Northern District of California, and the Northern District of Illinois.  Mr. Edelson attended to all court appearances including case management and ADR conferences.  Mr. Edelson conducted meet and confer conferences with the defendants in the 12 cases this firm initiated, responded to various motions, and attended the MDL conferences.  Post consolidation, Mr. Edelson has attended almost every hearing, participated in every mediation, and numerous settlement conferences.  Mr. Edelson also assisted in preparing experts' examination questions for use at trial, and cross-examination of defendants' experts.

19.     In May 2002, after consolidation, the Court appointed Hagens Berman,

Spector Roseman, Wexler Wallace LLP and Hoffman & Edelson, LLC to act as plaintiffs'

co-lead counsel in the AWP litigation, MDL NO. 1456.  See 01-CV-12257-PBS Docket No.

100.

20.     During the period from 2002 to 2006, this firm was responsible for

completing the following major tasks relating to the AWP litigation:

     a.   Motions, Briefs, and Court filings:

Drafting brief sections addressing common issues in response to

defendants' motions to dismiss, of state-law preemption and filed-

rate doctrine, the class certification brief, responses to defendants'

motions to strike the complaint, the amended class complaint,

motion to strike the declaration of defendants' expert witness, Steven

Young, and responding to various motions to quash third party

subpoenas.  Additionally, the firm had significant responsibility for

preparing responses to the motions to dismiss of individual

defendants, including BMS, Dey, Pharmacia, Schering, and Warrick.

     b.   Discovery and document production work included assisting in:

Drafting the discovery plan, Class plaintiffs' Rule 26(a) disclosures,

preparing plaintiffs' document production, contention

interrogatories, filing and serving third-party subpoenas of national

oncology and hematology centers, preparing additional subpoenas to

third-parties, drafting interrogatories and requests for admissions to

the J&J defendants, and responding to discovery requests on behalf

of plaintiffs, arranging for delivery and imaging of defendants'

document productions, determining plaintiffs' witnesses for

deposition testimony, determining class representatives for Classes 2

and 3.

c.   Experts and Evaluations:

Drafting memos analyzing the J&J defendants' liability and

damages, Watson's liability and damages, preparing a presentation

on the J&J defendants' liability, interviewing proposed experts,

selecting proposed neutral expert for the Court's utilization.

d.   Settlement negotiations and mediation:

i.   Preparing the mediation statement with respect to the J&J

defendants, participating is mediation sessions for all defendants.

ii.   Reviewing and evaluating various defendants' settlement offers.

21.   Hoffman & Edelson, LLC conducted the depositions of thirty-eight witnesses,

encompassing over forty-five days of testimony.  These include depositions of 11 plaintiffs

and third parties, 17 J&J witnesses, 3 Watson, 1 Novartis and 1 GSK witness.  Hoffman &

Edelson, LLC also participated in the expert witness depositions of Young, Navarro, Gaier,

and Hartman.

22.   In preparation for trial prior to November 2006, Hoffman & Edelson, LLC

was responsible for:

a.   Preparing motions for summary judgment against the J&J defendants,

responding to the J&J defendants' motion for summary judgment, drafting

brief sections to be inserted in the class plaintiffs' general motion for

summary judgment, preparing a motion *in limine* on the issue of associational standing, drafting proposed finding of fact,

b. Trial preparation, including deposition designations for J&J witnesses at trial, exhibit designations, and reviewing defendants' designations. This work continued through to November 1, 2006 and resulted in designation of over 50 exhibits, comprising over one thousand pages, and preparation for direct and cross-examination of 9 witnesses.

c. Hoffman & Edelson, LLC also assigned one full-time associate who worked for two weeks at Hagens Berman's Seattle office assisting with trial preparations.

d. Several associates attended trial in Boston, conducted meet and confer sessions with the J&J defendants' counsel, prepared cross-examinations for multiple J&J fact witnesses, and assisted with preparation for "document day."

e. Reviewing trial testimony of defendants' expert witnesses, McFadden, Gaier, Gould, Dukes, preparing cross-examination of expert witnesses, Bell, Haegle, and McFadden, preparing presentations for experts' use, drafting rebuttal testimony of plaintiffs' expert witness, Hartman.

23.    Post-trial, Hoffman & Edelson, LLC has continued to participate in the Track 1 appeals and the Track 2 pre-trial process. This firm has prepared pleadings including the motion to expedite the appeals before the First Circuit and to address various issues concerning the objector to the settlement. This firm prepared an extensive analysis of defendant Watson's liability that was instrumental in effectuating that portion of the Track 2

settlement, and has addressed issues concerning class representatives' standing requirements for class certification and settlement purposes.

24.     Aside from the foregoing, Hoffman & Edelson, LLC was extensively involved in the document review and discovery process.  Hoffman & Edelson, LLC employed contract attorneys, as did all Co-Lead Counsel, as part of teams to review all of the Track 1 defendants' document production.  These massive document reviews commenced in approximately March 2004 and terminated in approximately November 2005.  As has been previously stated, these reviews involved millions of pages of defendants' documents.  The J&J Defendants document production alone consists of approximately 436,000 pages.

25.     Thereafter, from November 2005, to approximately June 2007, Hoffman & Edelson employed three attorneys to review Track 2 defendants' document productions document production; Watson produced 83,700 pages, and Bayer produced over 660,000 pages.  Third parties also produced an additional 55,000 pages that were reviewed exclusively by the firm's staff.

26.     Additionally, Hoffman & Edelson, LLC was responsible for collecting, consolidating, and reporting the lodestar and expenses of all plaintiffs' firms participating in the AWP litigation.

27.     No firm involved in this litigation has ever expressed dissatisfaction with this firm's prosecution of the case, either in terms of the quality of representation, or the time and effort this firm expended.  In fact, upon inquiring whether Alan Hoffman was available, Mr. Berman stated in an email dated November 22, 2006, "he was very useful to me in doing the Procrit witnesses.."  *See* Email dated November 22, 2006, attached as Exhibit "C."

28.    Given the foregoing, and in consideration of the factors that Co-Lead counsel have identified for the Court that it utilized to determine fee allocations, it is clear that no basis exists for Hoffman & Edelson, LLC to receive a lower share of the fee allocated among Tier I firms.

29.    I declare under penalty of perjury un the laws of the United States of America that the foregoing to true and correct to the best of my knowledge.


Executed this 29th day of December, 2011

/s/ Marc H. Edelson<br>Marc H. Edelson

**Exhibit "A"**
*Class Counsel's Proposed Future Fee Allocation Guidelines*



LEXISNEXIS' FILE & SERVE
23250817
E-SERVICE
Jan 9 2009
6:16PM

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |

## CLASS COUNSEL'S PROPOSED FUTURE FEE ALLOCATION GUIDELINES

## I.   INTRODUCTION

In an electronic Order issued on December 10, 2008, the Court directed "lead counsel to consult with all firms regarding its plan for allocating fees in this MDL in the future and submit a proposal to the Court within 30 days." In that same Order, the Court held that any objections to Lead Class Counsel's future fee allocations will "be reviewed on an abuse of discretion standard."

Thus far, the Court has granted final approval to the GSK Settlement and the AstraZeneca Class 1 Settlement. Lead Class Counsel have distributed the fees and expenses awarded in the GSK Settlement. The AstraZeneca Class 1 Settlement is not yet final, as the appeal period has not expired. Consequently, there has not yet been a fee and expense distribution from that settlement. In addition to the foregoing settlements, settlements are pending in favor of all Classes with respect to the Track 2 Defendants, and Lead Class Counsel hope to present the BMS Class 1 Settlement to the Court for preliminary approval shortly.

Claims on behalf of multi-state Classes 2 and 3 are still pending against both AstraZeneca and BMS, and the Court has not yet entered a final order certifying those classes or set those claims for trial. We may spend millions in costs and fees preparing for and prosecuting those claims at trial, and Plaintiffs may yet lose the trials. In addition, the First Circuit Court of Appeals has yet to issue a decision on the appeals arising from the trial of the claims of Massachusetts Classes 2 and 3. It is possible that a partial retrial of claims may follow the First Circuit decision.

Given that (i) substantial claims remain to be litigated in this case, (ii) two proposed settlements still await final approval, and (iii) the inability to predict with any certainty the magnitude of expense reimbursements and fees that may be approved by the Court in the future, Lead Class Counsel are unable to submit to the Court a detailed fee allocation plan at this time.

- 1 -

However, we outline below the guidelines that we intend to apply to all future fee allocations. As was done in allocating the GSK award, Lead Class Counsel will be guided by factors that courts consider in awarding fees in class litigation. *See, e.g., Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Lead Class Counsel will apply a multi-factor analysis in an objective manner in allocating expenses and fees in a process similar to that used in allocating the GSK fee, which resulted in only a single objection from the 25 firms involved. As the Court requested, Lead Class Counsel have communicated the below guidelines to all Plaintiffs' counsel in this case.

## II.    THE GUIDELINES

### A.    Reimbursing Advanced Expenses.

As a first step in allocating any future fee awards, Lead Class Counsel will reimburse a specific portion of total expenses advanced. Expenses are paid first because they are substantial out-of-pocket outlays that magnify risk. In addition, it is important to partially recharge expense budgets on an ongoing basis as out-of-pocket costs, and particularly expert costs, continue to accrue in the case. The aggregate amount allocated to expenses will be reduced from the total fee award to determine the net amount remaining to be allocated as "fees."

### B.    The Primary Fee Allocation Factors.

Courts delegate substantial discretion to lead counsel to allocate a fee award across participating counsel and will not disturb that allocation provided that is fair and reasonable. The Court has recognized this by stating in its December 10 Order that any objections to Lead Class Counsel's future fee allocations will "be reviewed on an abuse of discretion standard."

Lead Class Counsel's fee allocation decisions will be guided by the factors that courts consider in awarding fees in class litigation, including the following three factors as the "primary" drivers of discerning each firm's contribution to the litigation:  (i) the risks borne by

counsel in litigating a complex case on a contingency fee basis, (ii) the quality of the representation provided, and (iii) the time and labor expended by counsel. *See, e.g., Goldberger,* 209 F.3d at 50; *Gunter,* 223 F.3d at 195 n.1.

We consider risk to be the most important factor. *Goldberger,* 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."). This Court has already recognized the magnitude of risk faced by class counsel in this case. *See* May 1, 2008 Hearing Tr. at 24. This litigation has entailed, and continues to entail, an extraordinarily high level of risk. It has involved novel and complex legal and factual issues, and the limited resources of Lead Class Counsel have been pitted against the seemingly infinite resources of defendants and their well-heeled counsel, who pursue appeals at every opportunity. In assessing risk profiles, Lead Class Counsel will consider the magnitude of advanced expenses and each firm's commitment of full-time firm personnel to the exclusion of other case opportunities.

With respect to the quality of representation factor, we will primarily consider each firm's leadership position; its quality and volume of substantive work; whether the firm was an integral component of the trial team; the number, experience and quality of the partners and senior associates assigned to the case and whether and to what extent lower value contract lawyers were utilized; and the consistency of the firm's commitment throughout the duration of the litigation, including work on appellate issues.

With respect to the time and labor expended by counsel factor, we will consider each firm's productive lodestar. Lodestar will not be the sole or even determinative factor in Lead Class Counsel's analysis. Lead Class Counsel have collected and reviewed, and will continue to collect and review, unaudited lodestar and expense information. In determining reasonableness,

we have reviewed, and will continue to review, hourly rates, the time asserted to have been
spent, and the work performed.

**C.     The Tiers.**

Lead Class Counsel have employed the foregoing factors and will group the 25 Plaintiffs'
firms reporting time and expenses in the AWP litigation into three tiers based on their
contributions to the litigation as follows:[1]

| Tier | Firm |
|------|------|
| I | Hagens Berman Sobol Shapiro LLP<br>Wexler Toriseva Wallace LLP<br>Spector, Roseman, Kodroff & Willis, P.C.<br>Hoffman & Edelson, LLC |
| II | Heins, Mills & Olson, P.L.C.<br>Kline & Specter, P.C. |
| III | Audet & Partners, LLP<br>Bolognese & Associates, LLC<br>Carey & Danis, LLC<br>Cuneo Gilbert & Laduca, LLP<br>Freeman & Lorry, P.C.<br>Hanzman, Criden & Love, P.A.<br>Hulett Harper Stewart, LLP<br>Karmel Law Firm<br>Law Office of Adam S. Levy<br>Piper & Associates<br>RodaNast, P.C.<br>Rossbacher Firm<br>Sheller, P.C.<br>Shepherd, Finkleman, Miller & Shah, LLC<br>Squitieri & Fearon, LLP<br>Trujillo Rodriguez & Richards, LLC<br>Weller, Green, Toups & Terrell, L.L.P.<br>Williams Law Firm<br>Young, Pickett & Lee |

We will allocate a specific percentage of each fee award to each tier, similar to the
approach taken in the GSK fee allocation. In light of the contributions highlighted below, the
Tier I firms will receive a higher percentage of future fee allocations than the other tiers.

---

[1] These are the same tiers that were utilized in allocating the GSK fee, except that the three sub-tiers previously
employed for Tier III have been removed.

**1.      The Tier I contributions.**

The Tier I firms have led the case from inception to the present, done most of the work, advanced the most expenses (approximately 84% to date), shouldered most of the risk of nonpayment and were the primary drivers of the results achieved thus far.  Among other work, certain members of the Lead Class Counsel team have made the following contributions:  headed the litigation; comprised the trial team; spearheaded all substantive oral arguments and served as the primary "face" of the team in court; prepared most, if not all, of the substantive briefing; conducted the expert work; were liaison counsel to the Court; handled almost all of the case filings for the Plaintiffs; led on all case management order and pre-trial order negotiations and drafting; coordinated and conducted third-party TPP discovery; covered the so-called "government knowledge" depositions; coordinated with the DOJ on federal issues; conducted wholesaler discovery; conducted publisher discovery, with some help from a Tier III firm; and were responsible for discovery of all of the defendants.

**2.      The Tier II contributions.**

The Tier II firms once participated in leadership roles and, for a time, shared some of the Tier I responsibilities.  The Tier II firms' former participation in leadership roles differentiates them from the Tier III firms, although the Tier II firms dropped out of the case and thereby minimized their risks.

**3.      The Tier III contributions.**

The roles of the Tier III firms were primarily but not exclusively limited to participating in document review projects early in the litigation.  This work was important and necessary to filter the literally millions of documents produced by the defendants in this case.  And the fact that many Plaintiffs' counsel participated in document review projects does not mean that time spent reviewing documents was duplicative.  To the contrary, all of the documents produced

needed to be read, coded, and analyzed whether the case was litigated by few firms or many. Lead Class Counsel instituted procedures designed to avoid duplication and inefficiency and divided document review responsibilities in a cogent manner. The Tier III firms did not play a leadership role and generally have either no or minimal additional time and expenses in the case after 2006.

## D.   Lead Class Counsel's Aspirational Goals.

As we have explained to the Court in prior submissions, the total lodestar of Plaintiffs' counsel in this case dwarf the fees awarded thus far and will likely do so for some time. In addition, expenses and lodestar continue to grow as the case progresses. Both the timing and magnitude of any future fee awards are difficult if not impossible to predict, especially since a significant part of the case is still being litigated. Under these circumstances, it should come as no surprise that we cannot guarantee that any firm – including each firm on the Lead Class Counsel team – will recover its total lodestar.

We have, however, set certain fee allocation goals that pertain to the ultimate resolution of the case, that is, after all litigation is over. In the event that all awarded fees from all AWP MDL cases at the conclusion of all matters total less than the collective lodestar and expenses of all Plaintiffs' counsel (the "Total Lodestar Over Total Fees Percentage"), Lead Class Counsel will endeavor in good faith to provide each firm up to a total of 80 percent of its lodestar and expense reimbursement. If the Court awards the percentage fees requested in all settlements and/or judgments, and if the Total Lodestar Over Fees Percentage exceeds 100 percent, then Lead Class Counsel will endeavor in good faith to provide each firm 100 percent of its lodestar and expense reimbursement. Given the uncertainty associated with future fee recoveries, the foregoing are aspirational goals and not guarantees. There are several scenarios under which we

would be unable to meet these goals, including an aggregate result where the Total Lodestar

Over Fees Percentage is close to or less than 80 percent.

### III.   CONCLUSION

Lead Class Counsel intend to objectively deploy the three primary *Goldberger* factors

outlined above in allocating future fee awards across the proposed tiers.  The process has been

and will remain fair and transparent, as the Court has directed.


DATED:  January 9, 2009.

By___/s/ Steve W. Berman_____
    Thomas M. Sobol (BBO#471770)
    Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing submission to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 9, 2009, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Steve W. Berman
Steve W. Berman

001534-16 279757 V1



LEXISNEXIS' FILE & SERVE
23250817
E-SERVICE
Jan 9 2009
6:16PM

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | CIVIL ACTION: 01-CV-12257-PBS Judge Patti B. Saris |

## CLASS COUNSEL'S PROPOSED FUTURE FEE ALLOCATION GUIDELINES

001534-16 279757 V1

## I.   INTRODUCTION

In an electronic Order issued on December 10, 2008, the Court directed "lead counsel to consult with all firms regarding its plan for allocating fees in this MDL in the future and submit a proposal to the Court within 30 days." In that same Order, the Court held that any objections to Lead Class Counsel's future fee allocations will "be reviewed on an abuse of discretion standard."

Thus far, the Court has granted final approval to the GSK Settlement and the AstraZeneca Class 1 Settlement. Lead Class Counsel have distributed the fees and expenses awarded in the GSK Settlement. The AstraZeneca Class 1 Settlement is not yet final, as the appeal period has not expired. Consequently, there has not yet been a fee and expense distribution from that settlement. In addition to the foregoing settlements, settlements are pending in favor of all Classes with respect to the Track 2 Defendants, and Lead Class Counsel hope to present the BMS Class 1 Settlement to the Court for preliminary approval shortly.

Claims on behalf of multi-state Classes 2 and 3 are still pending against both AstraZeneca and BMS, and the Court has not yet entered a final order certifying those classes or set those claims for trial. We may spend millions in costs and fees preparing for and prosecuting those claims at trial, and Plaintiffs may yet lose the trials. In addition, the First Circuit Court of Appeals has yet to issue a decision on the appeals arising from the trial of the claims of Massachusetts Classes 2 and 3. It is possible that a partial retrial of claims may follow the First Circuit decision.

Given that (i) substantial claims remain to be litigated in this case, (ii) two proposed settlements still await final approval, and (iii) the inability to predict with any certainty the magnitude of expense reimbursements and fees that may be approved by the Court in the future, Lead Class Counsel are unable to submit to the Court a detailed fee allocation plan at this time.

- 1 -

However, we outline below the guidelines that we intend to apply to all future fee allocations. As was done in allocating the GSK award, Lead Class Counsel will be guided by factors that courts consider in awarding fees in class litigation. *See, e.g., Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000); *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000). Lead Class Counsel will apply a multi-factor analysis in an objective manner in allocating expenses and fees in a process similar to that used in allocating the GSK fee, which resulted in only a single objection from the 25 firms involved. As the Court requested, Lead Class Counsel have communicated the below guidelines to all Plaintiffs' counsel in this case.

## II.    THE GUIDELINES

**A.    Reimbursing Advanced Expenses.**

As a first step in allocating any future fee awards, Lead Class Counsel will reimburse a specific portion of total expenses advanced. Expenses are paid first because they are substantial out-of-pocket outlays that magnify risk. In addition, it is important to partially recharge expense budgets on an ongoing basis as out-of-pocket costs, and particularly expert costs, continue to accrue in the case. The aggregate amount allocated to expenses will be reduced from the total fee award to determine the net amount remaining to be allocated as "fees."

**B.    The Primary Fee Allocation Factors.**

Courts delegate substantial discretion to lead counsel to allocate a fee award across participating counsel and will not disturb that allocation provided that is fair and reasonable. The Court has recognized this by stating in its December 10 Order that any objections to Lead Class Counsel's future fee allocations will "be reviewed on an abuse of discretion standard."

Lead Class Counsel's fee allocation decisions will be guided by the factors that courts consider in awarding fees in class litigation, including the following three factors as the "primary" drivers of discerning each firm's contribution to the litigation:  (i) the risks borne by

- 2 -

counsel in litigating a complex case on a contingency fee basis, (ii) the quality of the representation provided, and (iii) the time and labor expended by counsel.  *See, e.g., Goldberger*, 209 F.3d at 50; *Gunter*, 223 F.3d at 195 n.1.

We consider risk to be the most important factor. *Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement.").  This Court has already recognized the magnitude of risk faced by class counsel in this case.  *See* May 1, 2008 Hearing Tr. at 24.  This litigation has entailed, and continues to entail, an extraordinarily high level of risk.  It has involved novel and complex legal and factual issues, and the limited resources of Lead Class Counsel have been pitted against the seemingly infinite resources of defendants and their well-heeled counsel, who pursue appeals at every opportunity.  In assessing risk profiles, Lead Class Counsel will consider the magnitude of advanced expenses and each firm's commitment of full-time firm personnel to the exclusion of other case opportunities.

With respect to the quality of representation factor, we will primarily consider each firm's leadership position; its quality and volume of substantive work; whether the firm was an integral component of the trial team; the number, experience and quality of the partners and senior associates assigned to the case and whether and to what extent lower value contract lawyers were utilized; and the consistency of the firm's commitment throughout the duration of the litigation, including work on appellate issues.

With respect to the time and labor expended by counsel factor, we will consider each firm's productive lodestar.  Lodestar will not be the sole or even determinative factor in Lead Class Counsel's analysis.  Lead Class Counsel have collected and reviewed, and will continue to collect and review, unaudited lodestar and expense information.  In determining reasonableness,

- 3 -

we have reviewed, and will continue to review, hourly rates, the time asserted to have been spent, and the work performed.

**C.     The Tiers.**

Lead Class Counsel have employed the foregoing factors and will group the 25 Plaintiffs' firms reporting time and expenses in the AWP litigation into three tiers based on their contributions to the litigation as follows:[1]

| Tier | Firm |
|------|------|
| I | Hagens Berman Sobol Shapiro LLP<br>Wexler Toriseva Wallace LLP<br>Spector, Roseman, Kodroff & Willis, P.C.<br>Hoffman & Edelson, LLC |
| II | Heins, Mills & Olson, P.L.C.<br>Kline & Specter, P.C. |
| III | Audet & Partners, LLP<br>Bolognese & Associates, LLC<br>Carey & Danis, LLC<br>Cuneo Gilbert & Laduca, LLP<br>Freeman & Lorry, P.C.<br>Hanzman, Criden & Love, P.A.<br>Hulett Harper Stewart, LLP<br>Karmel Law Firm<br>Law Office of Adam S. Levy<br>Piper & Associates<br>RodaNast, P.C.<br>Rossbacher Firm<br>Sheller, P.C.<br>Shepherd, Finkleman, Miller & Shah, LLC<br>Squitieri & Fearon, LLP<br>Trujillo Rodriguez & Richards, LLC<br>Weller, Green, Toups & Terrell, L.L.P.<br>Williams Law Firm<br>Young, Pickett & Lee |

We will allocate a specific percentage of each fee award to each tier, similar to the approach taken in the GSK fee allocation. In light of the contributions highlighted below, the Tier I firms will receive a higher percentage of future fee allocations than the other tiers.

---

[1] These are the same tiers that were utilized in allocating the GSK fee, except that the three sub-tiers previously employed for Tier III have been removed.

### 1.     The Tier I contributions.

The Tier I firms have led the case from inception to the present, done most of the work, advanced the most expenses (approximately 84% to date), shouldered most of the risk of nonpayment and were the primary drivers of the results achieved thus far.  Among other work, certain members of the Lead Class Counsel team have made the following contributions:  headed the litigation; comprised the trial team; spearheaded all substantive oral arguments and served as the primary "face" of the team in court; prepared most, if not all, of the substantive briefing; conducted the expert work; were liaison counsel to the Court; handled almost all of the case filings for the Plaintiffs; led on all case management order and pre-trial order negotiations and drafting; coordinated and conducted third-party TPP discovery; covered the so-called "government knowledge" depositions; coordinated with the DOJ on federal issues; conducted wholesaler discovery; conducted publisher discovery, with some help from a Tier III firm; and were responsible for discovery of all of the defendants.

### 2.     The Tier II contributions.

The Tier II firms once participated in leadership roles and, for a time, shared some of the Tier I responsibilities.  The Tier II firms' former participation in leadership roles differentiates them from the Tier III firms, although the Tier II firms dropped out of the case and thereby minimized their risks.

### 3.     The Tier III contributions.

The roles of the Tier III firms were primarily but not exclusively limited to participating in document review projects early in the litigation.  This work was important and necessary to filter the literally millions of documents produced by the defendants in this case.  And the fact that many Plaintiffs' counsel participated in document review projects does not mean that time spent reviewing documents was duplicative.  To the contrary, all of the documents produced

needed to be read, coded, and analyzed whether the case was litigated by few firms or many. Lead Class Counsel instituted procedures designed to avoid duplication and inefficiency and divided document review responsibilities in a cogent manner. The Tier III firms did not play a leadership role and generally have either no or minimal additional time and expenses in the case after 2006.

**D.      Lead Class Counsel's Aspirational Goals.**

As we have explained to the Court in prior submissions, the total lodestar of Plaintiffs' counsel in this case dwarf the fees awarded thus far and will likely do so for some time. In addition, expenses and lodestar continue to grow as the case progresses. Both the timing and magnitude of any future fee awards are difficult if not impossible to predict, especially since a significant part of the case is still being litigated. Under these circumstances, it should come as no surprise that we cannot guarantee that any firm – including each firm on the Lead Class Counsel team – will recover its total lodestar.

We have, however, set certain fee allocation goals that pertain to the ultimate resolution of the case, that is, after all litigation is over. In the event that all awarded fees from all AWP MDL cases at the conclusion of all matters total less than the collective lodestar and expenses of all Plaintiffs' counsel (the "Total Lodestar Over Total Fees Percentage"), Lead Class Counsel will endeavor in good faith to provide each firm up to a total of 80 percent of its lodestar and expense reimbursement. If the Court awards the percentage fees requested in all settlements and/or judgments, and if the Total Lodestar Over Fees Percentage exceeds 100 percent, then Lead Class Counsel will endeavor in good faith to provide each firm 100 percent of its lodestar and expense reimbursement. Given the uncertainty associated with future fee recoveries, the foregoing are aspirational goals and not guarantees. There are several scenarios under which we

- 6 -

would be unable to meet these goals, including an aggregate result where the Total Lodestar

Over Fees Percentage is close to or less than 80 percent.

### III.   CONCLUSION

Lead Class Counsel intend to objectively deploy the three primary *Goldberger* factors

outlined above in allocating future fee awards across the proposed tiers.   The process has been

and will remain fair and transparent, as the Court has directed.


DATED:  January 9, 2009.                         By____/s/ Steve W. Berman_____
                                                 Thomas M. Sobol (BBO#471770)
                                                 Edward Notargiacomo (BBO#567636)
                                                 Hagens Berman Sobol Shapiro LLP
                                                 One Main Street, 4th Floor
                                                 Cambridge, MA  02142
                                                 Telephone: (617) 482-3700
                                                 Facsimile: (617) 482-3003

                                                 **LIAISON COUNSEL**

                                                 Steve W. Berman
                                                 Sean R. Matt
                                                 Hagens Berman Sobol Shapiro LLP
                                                 1301 Fifth Avenue, Suite 2900
                                                 Seattle, WA  98101
                                                 Telephone: (206) 623-7292
                                                 Facsimile: (206) 623-0594

                                                 Jeffrey Kodroff
                                                 John Macoretta
                                                 Spector, Roseman Kodroff & Willis, P.C.
                                                 1818 Market Street, Suite 2500
                                                 Philadelphia, PA  19103
                                                 Telephone: (215) 496-0300
                                                 Facsimile: (215) 496-6611

Kenneth A. Wexler
Jennifer Fountain Connolly
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing submission to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 9, 2009, a copy to LexisNexis File & Serve for posting and notification to all parties.

/s/ Steve W. Berman
Steve W. Berman

001534-16 279757 V1

**Exhibit "B"**
*Proposed December 29, 2011 Fee Allocation*

| Firm | Lodestar 11/11 | Expense 11/11 | Total 11/11 | GSK Payment | % | Total Less GSK | 10/21/11 Exp. Pymt | Total Less All Pymts | AZ/BMS Payment | % |
|---|---|---|---|---|---|---|---|---|---|---|
| Hagens Berman Sobol Shapiro | $20,564,804.00 | 2,512,399.30 | 23,077,203.30 | 6,782,273.51 | 47.3% | 16,294,929.79 | 1,850,510.10 | 14,444,419.69 | 10,053,982.41 | 47.30% |
| Wexler Wallace LLP | 11,139,846.05 | 1,877,800.43 | 13,017,646.48 | 3,167,273.36 | 22.1% | 9,850,373.12 | 1,600,964.91 | 8,249,408.21 | 4,676,270.89 | 22.00% |
| Spector, Roseman Kodroff | 8,609,775.25 | 1,804,501.98 | 10,414,277.23 | 2,459,808.44 | 17.2% | 7,954,468.79 | 1,491,263.10 | 6,463,205.69 | 3,677,249.38 | 17.30% |
| Hoffman & Edelson, LLC | 10,184,014.00 | 1,685,460.19 | 11,869,474.19 | 1,916,598.49 | 13.4% | 9,952,875.70 | 1,391,448.34 | 8,561,427.36 | 2,848,274.09 | 13.40% |
| **Subtotal** | 50,498,439.30 | 7,880,161.90 | 58,378,601.20 | 14,325,953.80 | 100.0% | 44,052,647.40 | 6,334,186.45 | 37,718,460.95 | 21,255,776.76 | 100.00% |
| Heins, Mills & Olson, P.L.C. | 6,901,126.25 | 633,840.50 | 7,534,966.75 | 1,104,100.83 | | 6,430,865.92 | 549,488.02 | 5,881,377.90 | 2,940,688.95 | |
| Kline & Specter, P.C. | 2,129,496.25 | 437,857.67 | 2,567,353.92 | 626,576.97 | | 1,940,776.95 | 335,405.95 | 1,605,371.00 | 802,685.50 | |
| Audet & Partners, LLP | 353,250.00 | 18,550.17 | 371,800.17 | 29,590.91 | | 342,209.26 | 14,840.14 | 327,369.12 | 163,684.56 | |
| Bolognese & Associates, LLC | 485,487.50 | 25,665.10 | 511,152.60 | 49,543.65 | | 461,608.95 | 21,302.69 | 440,306.26 | 220,153.13 | |
| Carey & Danis, LLC | 120,837.50 | 20,867.82 | 141,705.32 | 13,026.77 | | 128,678.55 | 16,694.26 | 111,984.29 | 55,992.15 | |
| Criden & Love, P.A. | 35,531.25 | 885.65 | 36,416.90 | 3,393.15 | | 33,023.75 | 758.29 | 32,265.46 | 16,132.73 | |
| Cuneo Gilbert & Laduca, LLP | 1,160,626.25 | 122,584.53 | 1,283,210.78 | 138,667.75 | | 1,144,543.03 | 101,748.02 | 1,042,795.01 | 521,397.51 | |
| Hulett Harper Stewart LLP | 10,098.00 | 1,682.69 | 11,780.69 | 1,076.37 | | 10,704.32 | 1,346.15 | 9,358.17 | 4,679.09 | |
| Jennings, Haug & Cunningham | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 11,251.27 | -11,251.27 | 0.00 | |
| Karmel Law Firm | 31,300.00 | 423.37 | 31,723.37 | 2,377.87 | | 29,345.50 | 338.70 | 29,006.80 | 14,503.40 | |
| Keller Rohrback | 113,118.75 | 7,857.74 | 120,976.49 | 0.00 | | 120,976.49 | 13,353.92 | 107,622.57 | 53,811.29 | |
| Law Office of Adam S. Levy | 297,412.50 | 9,229.62 | 306,642.12 | 23,358.80 | | 283,283.32 | 7,660.80 | 275,622.52 | 137,811.26 | |
| Goldenberg Schneider, LPA | 439,541.50 | 3,861.85 | 443,403.35 | 0.00 | | 443,403.35 | 3,861.85 | 439,541.50 | 219,770.75 | |
| Piper & Associates | 786,425.00 | 109,883.58 | 896,308.58 | 76,474.15 | | 819,834.43 | 99,066.68 | 720,767.75 | 360,383.88 | |
| RodaNast, P.C. | 1,028,276.25 | 17,008.23 | 1,045,284.48 | 102,786.23 | | 942,498.25 | 40,784.60 | 901,713.65 | 450,856.83 | |
| Rossbacher Firm | 146,534.25 | 42,620.95 | 189,155.20 | 22,161.16 | | 166,994.04 | 34,096.76 | 132,897.28 | 66,448.64 | |
| Sheller, P.C. | 2,066,208.25 | 103,647.94 | 2,169,856.19 | 211,313.39 | | 1,958,542.80 | 84,623.19 | 1,873,919.61 | 936,959.81 | |
| Shepherd, Finkleman | 1,430,930.00 | 42,302.87 | 1,473,232.87 | 138,549.66 | | 1,334,683.21 | 24,737.66 | 1,309,945.55 | 654,972.78 | |
| Trujillo Rodriguez & Richards | 405,465.00 | 4,589.55 | 410,054.55 | 30,143.21 | | 379,911.34 | 3,823.13 | 376,088.21 | 188,044.11 | |
| Weller, Green, Toups & Terrell | 1,392,332.50 | 10,453.18 | 1,402,785.68 | 125,654.75 | | 1,277,130.93 | 41,386.58 | 1,235,744.35 | 617,872.18 | |
| Wermskirchen Law Office | 10,916.15 | 0.00 | 10,916.15 | 0.00 | | 10,916.15 | 0.00 | 10,916.15 | 0.00 | |
| Williams Law Office | 2,207,075.00 | 66,504.08 | 2,273,579.08 | 154,490.78 | | 2,119,088.30 | 60,024.86 | 2,059,063.44 | 1,029,531.72 | |
| Young, Pickett & Lee | 19,417.50 | 55.87 | 19,473.37 | 20,477.98 | | -1,004.61 | 44.70 | -1,049.31 | 0.00 | |
| **Subtotal** | 21,571,405.65 | 1,680,372.96 | 23,251,778.61 | 2,873,764.38 | | 20,378,014.23 | 1,466,638.22 | 18,911,376.01 | 9,456,380.22 | |
| **Grand Total** | $72,069,844.95 | $9,560,534.86 | 81,630,379.81 | 17,199,718.18 | | 64,430,661.63 | 7,800,824.67 | 56,629,836.96 | 30,712,156.98 | |

**Exhibit "C"**
Email dated November 22, 2006

## Marc Edelson

**From:**      "Marc H. Edelson" <medelson@hofedlaw.com>
**To:**        "Marc Edelson" <medelson@hofedlaw.com>
**Sent:**      Wednesday, November 22, 2006 10:48 AM
**Subject:**   Fw: is Hoffman

Marc H. Edelson, Esq.
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA 18901
215-230-8043


-----Original Message-----
From: "Steve Berman" <Steve@hbsslaw.com>
Date: Wed, 22 Nov 2006 07:46:37
To:"Marc Edelson" <medelson@hofedlaw.com>
Subject: RE: is Hoffman

not sure ei follow

he was very useful to me in doing the procrit witness has huge learning curve is he out of pic?


----------------
 From: Marc Edelson [mailto:medelson@hofedlaw.com]
Sent: Wednesday, November 22, 2006 7:35 AM
To: Steve Berman
Subject: Re: is Hoffman



correct. we have everything covered.


Marc H. Edelson, Esq.
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA 18901
215-230-8043
215-230-8735 (fax)
----- Original Message -----
From: Steve Berman: <mailto:Steve@hbsslaw.com>
To: Marc Edelson: <mailto:medelson@hofedlaw.com>
Sent: Wednesday, November 22, 2006 10:31 AM
Subject: is Hoffman


no longer available