- 1 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK TWO SETTLEMENT | Judge Patti B. Saris |

**LEAD CLASS COUNSEL'S OPPOSITION TO ADAM LEVY'S MOTION FOR MODIFICATION OF LEAD COUNSEL'S ALLOCATION OF FEES AND REIMBURSEMENT OF EXPENSES LEVY ACCRUED <u>WHILE WORKING AT THE HAVILAND LAW FIRM</u>**

- 1 -

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND..................................................................................2

III.    ARGUMENT............................................................................................................4

      A.    Lead Class Counsel Should Not Have To Pay Levy For Time And Expenses Reported By Haviland Hughes ..................................................................................4

      B.    Levy's Time Is Inflated................................................................................................7

            1.    Levy should not be compensated for time spent "receiving and reviewing" pleadings. ...................................................................................7

            2.    Levy should not be compensated for other time entries that are "padded" and that did not benefit the Classes. ...........................................9

IV.    CONCLUSION........................................................................................................10

001534-16  493068 V1

I.       INTRODUCTION

Adam Levy demands that the Court compel Lead Class Counsel to pay him over $240,000 in fees and expenses incurred in the AWP MDL from September 2006 and November 2009, while Levy was employed by Don Haviland's firm.[1]  Lead Class Counsel, to which this Court has delegated the authority to allocate fees among the participating law firms, considered Levy's claim and rejected it, for reasons that are clear and simple:  Levy was a Haviland Hughes employee during the relevant period, Lead Class Counsel never authorized any of Levy's work, Levy's time and expenses were included in a prior Haviland Hughes submission, and Haviland Hughes has already been paid.  Levy's dispute is not with Lead Class Counsel or this Court; indeed, his dispute should never have been filed with the Court.  Lead Class Counsel properly exercised its discretion and judgment in denying Levy's demand – he cannot claim a right to compensation separate from that of his employer any more than any other partner, of counsel attorney, associate, contract attorney or paralegal from any other firm can.

Moreover, the number of hours and fees that Levy claims are, in Lead Class Counsel's judgment, grossly inflated.  For example, Levy billed nearly $40,000 for entries in which Levy claims to have "received and reviewed" routine court filings not relating to any specific task on behalf of or benefitting the Classes.  He billed approximately $22,000 working on the unsuccessful appeal of Joyce Howe's objection to the settlement.  Most egregiously, Levy claims to have spent 143.75 hours, at a cost of over $71,000, working on two overlapping briefs opposing Lead Class Counsel's simple motions to quash the Haviland Hughes notices of deposition to class representatives.  These matters alone, which in Lead Class Counsel's

---

[1] Donald Haviland's firm began as The Haviland Law Firm, LLC and later changed its name to Haviland Hughes, LLC.  "Haviland Hughes" is used herein to refer to both firms collectively.

judgment demonstrate serious overbilling, account for $153,000 of Levy's claim. This overbilling serves as another reason to deny Levy's motion.

## II.  FACTUAL BACKGROUND

The key facts are not in dispute. Although a substantial portion of Levy's brief discusses his work on the MDL prior to September 2006 through his own law firm, Levy admits, "there is no dispute with respect to, and therefore the instant Motion is not directed to, the pre-September 2006 period."[2] Thereafter, which comprises the relevant period for purposes of his motion, Levy admits that he was an employee of Haviland Hughes: "Over the post-August 2006 period, Mr. Levy served as Of Counsel to the Haviland firm . . . ."[3]

Consistent with Levy's admission, Mr. Haviland included Levy's time in a prior fee affidavit submitted to Lead Class Counsel. In April 2010, Mr. Haviland provided an Affidavit supporting his firm's fee claim. It included 507.5 hours of work and $2,765.29 in expenses attributed to Levy.[4] Not coincidentally, these amounts match precisely the amounts Levy now claims on his own behalf (though Levy now claims a slightly lower rate for his services than Mr. Haviland did).[5] And the time summary included with Mr. Haviland's Affidavit explains that "Adam S. Levy has been Of Counsel to Haviland Hughes since September 2006."[6]

---

[2] Dkt. No. 7942 at 4. Lead Class Counsel have credited Adam Levy with a total lodestar of $297,412.50 and expenses of $9,229.62 for Levy's reported work specific to the AWP MDL *prior* to joining the Haviland Law Firm.

[3] *See* Dkt. No. 7942 at 4.

[4] *See* Declaration of Steve W. Berman in in Support of Lead Class Counsel's Opposition to Adam Levy's Motion for Modification of Lead Counsel's Allocation of Fees and Reimbursement of Expenses to Include Uncounted Time and Expense ("Berman Decl."), Ex. 1 (attaching Affidavit of Donald E. Haviland, Jr. in Support of Award of Attorney's Fees and Reimbursement of Expenses & Exhibits thereto). The AWP Time and Expense Report that accompanied Mr. Haviland's Affidavit lists Levy's hours and expenses and includes them in the total amount claimed by Mr. Haviland in the Affidavit.

[5] Levy provided detailed hourly time records to Lead Class Counsel in support of his claim. Those records appear identical to the records submitted with Mr. Haviland's fee affidavit referred to in footnote 3, above, except that Levy applies a slightly lower rate than that claimed by Mr. Haviland. Berman Decl., ¶ 3.

[6] Berman Decl., Ex. 1.

- 2 -

After that, Levy appeared on some pleadings in the signature block for the Haviland Law Firm and was identified as part of the firm under Don Haviland's name as follows:[7]

>  /s/ Donald E. Haviland, Esquire
> Donald E. Haviland, Esquire
> Adam S. Levy, Esquire, Of Counsel
> Michael J. Lorusso, Esquire
> THE HAVILAND LAW FIRM, LLC
> 740 South Third Street, Third Floor
> Philadelphia, PA 19147
> Telephone: (215) 609-4661
> Facsimile: (215) 392-4400
> haviland@havilandlaw.com

Lead Class Counsel recently paid Haviland Hughes $1.8 million to completely satisfy Haviland Hughes's fee and expense claim.[8] The $1.8 million payment was a compromised amount representing materially less than Haviland Hughes's total MDL lodestar and expenses.[9] Importantly, the agreement "resolves **all** of Don Haviland's, the Haviland Law Firm's and Haviland Hughes LLC's attorneys' fee and expense claims against all AWP MDL settlement funds, plaintiffs, the Classes and Class Counsel."[10] Contrary to how Levy portrays the Agreement, it is not a "private settlement," and the terms were previously disclosed to him.

The Agreement is silent as to Haviland Hughes employee Adam Levy. This is because neither Lead Class Counsel nor Haviland Hughes expressly agreed to compensate Levy or to indemnify each other from any claims that Levy may make, even though the amount being negotiated did not include Levy's time.[11] The Agreement stipulates that Mr. Haviland and his firm may not "advocate for any fees to be paid to anyone else seeking fees, separate and apart

---

[7] For an example, see Berman Decl., Ex. 2.

[8] See Berman Decl., Ex. 3.

[9] Berman Decl., ¶ 5.

[10] Berman Decl., Ex. 3 at ¶ 3.

[11] Berman Decl., ¶ 6.

- 3 -

from the $1,800,000 awardable to Haviland Hughes, LLC under this agreement."[12] We included this provision in the Agreement so that Haviland Hughes would not later argue that it was Lead Class Counsel's responsibility to compensate Levy out of fees awarded by the Court in the AWP MDL.[13]

### III.   ARGUMENT

It has been this Court's consistent practice and frequently stated determination to delegate to Lead Class Counsel the discretion and responsibility to allocate attorneys' fees among participating plaintiffs' counsel. This delegated authority is subject to the Court's review for abuse of discretion.[14] Lead Class Counsel's decision not to pay Levy for time and expenses while he was an employee of Haviland Hughes was a valid exercise of this discretion.

### A.   Lead Class Counsel Should Not Have To Pay Levy For Time And Expenses Reported By Haviland Hughes

Levy's Motion does not raise any factual issues or legal arguments that can meet *his burden* of showing that Lead Class Counsel's denial of his fee claim was an abuse of discretion.[15] Levy admits that he was an employee of Haviland Hughes in the capacity of "Of

---

[12] Berman Decl., Ex. 3 at ¶ 4.

[13] Berman Decl., ¶ 6.

[14] *See* Dkt. No. 7979 (Track 2 Settlement ) ("The attorneys' fees and expenses awarded by the court shall be allocated among Class Counsel by Lead Class Counsel at their discretion subject to review by the Court."); Dkt. No. 7674 at 9 (BMS Settlement) ("The attorneys' fees and expenses awarded by the Court shall be allocated among present and former Class Counsel by Lead Class Counsel at their discretion."); Dkt No. 7432 at 9 and Dkt No. 7433 at 9-10 (AstraZeneca National Settlements) ("The attorneys' fees and expenses awarded by the Court shall be allocated among Class Counsel by Lead Class Counsel pursuant to the Agreement and shall, upon petition, be reviewed on an abuse of discretion standard."); Dkt. No. 5802 at 7 (AstraZeneca Class 1 Settlement) ("The attorneys' fees and expenses awarded by the Court shall be allocated among Class Counsel by Lead Class Counsel at their discretion subject to review by the Court if there is an objection."); Dkt. No. 4619 at 9 (GSK Settlement) ("Co-Lead Settlement Class Counsel shall allocate fees to themselves and other Plaintiffs Class Counsel in their sole discretion as appropriate."); *see also* Dec. 10, 2008 Electronic Order (Court will review any objections to Lead Class Counsel Fee allocations on an abuse of discretion standard.).

[15] While Levy acknowledges that this determination is subject to an abuse of discretion standard, he nevertheless suggests that the burden is on Lead Class Counsel to prove the validity of its allocation determination. Dkt. No. 7942 at 7 ("Lead Counsel have failed to demonstrate why they should be permitted to exclude Levy's . . . time and expense"), *id.* at 9 ("Lead Counsel have not demonstrated that they were released from their obligation to pay Levy for the . . . time and expense and that Levy's claim has been settled."). While Lead Class Counsel are

- 4 -

Counsel," and that he knew his time was being reported as part of the Haviland Hughes claim. Yet Levy offers nothing to suggest that he is entitled to a separate fee and expense award for his time at Haviland Hughes or that his hours and expenses should be treated differently than those of any other Haviland Hughes attorney or paralegal.

Instead, Levy asserts simply that he "functioned on a contingent fee basis" with Haviland Hughes and that he "has not received any payment . . . for the time, expense and work performed in this MDL after August 2006."[16] Although that may well be true, the existence and/or terms of such an agreement were never disclosed to Lead Class Counsel except through the claims Levy is now making. Mr. Haviland's fee Affidavit and the time records included in support thereof did not mention a separate fee claim by Levy. Indeed, until Levy asserted this claim, Levy knew that his time had previously been reported as part of Haviland's fee claim.[17] Yet Levy never asserted that his hours should be separate from the Haviland Hughes claim until the Haviland Hughes claim was already settled.

If Levy was working on a contingent fee basis with Haviland Hughes, this suggests that Levy and Haviland Hughes actually had an agreement to that effect. This is entirely consistent with Haviland Hughes's practice (with Levy's knowledge) of reporting and claiming Levy's time after August 2006. Regardless of whether such an agreement exists, that Haviland Hughes has not paid Levy for his work while he was Of Counsel to that firm does not entitle Levy to a separate fee award by the Court.

---

confident that the arguments presented herein demonstrate that their denial of Levy's claim was reasonable and not an abuse of discretion, Levy's arguments wrongfully attempt to shrug a burden that rests squarely on his shoulders.

[16] Dkt. No. 7942 at 4.

[17] In an email to Sean Matt, a member of Lead Class Counsel Hagens Berman Sobol Shapiro, Levy confirmed that his "Of Counsel time and expense was included in Mr. Haviland's reports to Lead Counsel" and that he was aware of Haviland Hughes's fee reporting (which included Levy's time) in 2008 and 2010. Berman Decl., ¶ 7.

Levy suggests that the Agreement settling the Haviland Hughes fee claim was not intended to cover Levy's post-August 2006 time. But this is contradicted by the plain words of the Agreement, which do not mention Levy. Again, this is deliberate, because neither Lead Class Counsel nor Haviland Hughes agreed to compensate Levy or to indemnify each other from any claims that Levy may make. To be sure, the $1.8 million was negotiated off a number that did not include Levy's time, but Lead Class Counsel never agreed to compensate Levy, especially for work that Lead Class Counsel never authorized.[18]

The overriding and guiding concept behind the Haviland Hughes fee settlement was to ensure that Haviland Hughes's claims would be conclusively resolved and to allow the Track Two settlement to go forward.[19] There were no specific stipulations or conditions in the Agreement regarding Levy. Lead Class Counsel did not agree to indemnify Haviland Hughes against any claims that Levy might make against Haviland Hughes's fee award, which would be inconsistent with the overriding notion of finally and completely determining Haviland Hughes's claim.[20]

Levy's argument that Lead Class Counsel should have to pay for Levy's stint with Haviland Hughes is preposterous. Levy was certainly capable of negotiating an Of Counsel agreement with Haviland Hughes that would have ensured he was paid for his time. Perhaps he did not do so. He was also presumably capable of working through his own law firm and asserting his own fee claim, as he did for time prior to September 2006, but he chose to join

---

[18] Berman Decl., ¶ 6.

[19] Berman Decl., ¶ 5.

[20] During the time that Lead Class Counsel was negotiating the settlement of the Haviland Hughes fee claim, Lead Class Counsel never consulted with, sought a release from, or otherwise kept Levy informed about the negotiations. Nor did Lead Class Counsel consult with, seek releases from or otherwise update any other associates, Of Counsel, contract attorneys or paralegals regarding the negotiations. Levy was an employee of Haviland Hughes, and his time and expenses were part of the Haviland Hughes claim. As such, there was simply no reason for Lead Class Counsel to consult with Levy about his employer's claim.

Haviland Hughes. It is simply not Lead Class Counsel's obligation to guarantee the payment for Levy's time working for Haviland Hughes, especially since that obligation was not specified in Lead Class Counsel's Agreement with Haviland Hughes.[21] If this were Lead Class Counsel's obligation, there is no telling how many associates, Of Counsel, and contract attorneys working for other Class Counsel firms would line up at the Courthouse steps with their hands out.

Class Counsel's decision to deny Levy's claim was not only a valid exercise of its discretion – it was manifestly correct. Levy cannot claim a right to compensation separate from that of his employer any more than any other associate, contract attorney or paralegal from any other firm can. The fact that Levy perceives Lead Class Counsel as an easier target than Haviland Hughes does not change this result. The Court should deny Levy's Motion.

### B.     Levy's Time Is Inflated

Even if Levy were entitled to an award of fees and expenses separate from the award to Haviland Hughes (and he is not), he should not be awarded anything near the approximately $240,000 he has demanded. Levy's time records are clearly inflated, with many entries demonstrating no perceptible connection to specific work on behalf of or benefitting the Classes, with none of it authorized by Lead Class Counsel.

#### 1.     Levy should not be compensated for time spent "receiving and reviewing" pleadings.

Approximately $40,000 of Levy's billed time is attributable to entries in which Levy claims to have "received and reviewed" routine court filings. First, we do not believe that

---

[21] Levy tries to make much of the Agreement's silence as to him, but the Agreement is also silent as to every other associate, Of Counsel, contract attorney and paralegal that worked for Haviland Hughes. Members of the Lead Class Counsel team have served as lead counsel in numerous MDLs throughout the country, and have participated in a non-lead capacity in countless others. Never has Lead Class Counsel seen or heard of a practice of negotiating fee claims separately with each reporting attorney working at a law firm. To the contrary, fee claims are uniformly and regularly dealt with on a firm-wide basis. How those firms distribute the fees among their members and employees (including Of Counsel) is strictly between them.

"received and reviewed" time should be compensated unless specifically authorized by Lead Class Counsel, and Levy's time in this respect was not authorized. Nor have we authorized any non-Lead firm to be compensated for time spent reviewing pleadings.[22]

Second, there are substantial accounting problems with Levy's "received and reviewed" time. Each entry is, at a minimum, a quarter of an hour (which appears to be the minimum increment of time in Levy's bills), and Levy's entries make it clear that he was dividing tasks in order to increase billing instead of a recording single review entry. For example, on October 24, 2006, Levy posted four entries of a quarter hour each for "received and reviewed" time. He received and reviewed (i) Plaintiff's Objections/Counter-Designations to AstraZeneca Deposition Designations (.25 hours); (ii) Plaintiff's Objections/Counter-Designations to BMS Defendants' Deposition Designations (another .25 hours); (iii) Plaintiffs' Objections to Track 1 Defendants' Joint Exhibit List (another .25 hours); and (iv) another set of Plaintiff's Objections to Deposition Designations (yet another .25 hours).[23] As another example, on November 1, 2006, Levy billed a total of 4.25 hours in 8 different time entries to review 8 different pleadings.[24] And during the month of December 2006, 8.75 out of the 11.5 hours Levy billed to the MDL were for "received and reviewed" on routine filings.[25]

These entries are rampant throughout Levy's records, and they result in over-billing with no benefit to the Classes. The quarter hour minimum billing increment used by Levy is particularly troubling in the context of these "received and reviewed" entries. Many "received and reviewed" entries are for pleadings which were quite voluminous; thus, it is clear that Levy

---

[22] Berman Decl., ¶ 8.

[23] *See* Berman Decl., Ex. 1 (Levy time detail at p. 5).

[24] *Id.*, Ex. 1 at p. 7.

[25] *Id.*, Ex. 1 at pp. 14-16.

could have done little more than glance at them in the quarter hour billed (and with no benefit to the Classes). Others were quite short, yet Levy billed a separate quarter hour for each pleading, rather than reviewing them all at once and charging just one quarter hour fee. But even it properly accounted for, these activities still would have no value unless related to a specific task (and they were not, especially not a task authorized by Lead Class Counsel).

### 2. Levy should not be compensated for other time entries that are "padded" and that did not benefit the Classes.

Apart from billing for general "receiving and reviewing" pleadings, communicating with Class Counsel and the like, Levy's work on the MDL while employed by Haviland Hughes appears to be primarily comprised of three identifiable projects.[26] But even those distinct tasks demonstrate significant wasted efforts yielding no perceivable benefit to the Classes.

For instance, Levy billed approximately $22,000 working on the Howe objection to the AstraZeneca Class 1 settlement and the subsequent appeal of the Court's rejection of the objection.[27] The First Circuit emphatically denied the appeal. The baseless objection and appeal did not benefit the Classes and instead only served to delay the distribution of money to sick and dying Class members.

But even the waste and overbilling represented by Levy's "received and reviewed" time and fruitless work on the Howe appeal are overshadowed by Levy's most egregious overbilling relating to the preparation of simple discovery briefs. Levy billed 143.75 hours, at a cost of over $71,000, opposing Lead Class Counsel's motion to quash notices of deposition that Haviland

---

[26] Levy billed a significant amount, nearly $20,000, to draft a declaration for class member Rebecca Hopkins and assist in preparing her trial testimony. *See* Berman Decl., Ex. 1 (Levy time record portion), pp. 1-10. Levy's work helping prepare Ms. Hopkins' trial testimony was minor, consisting largely of a number of short telephone calls and emails. Ms. Hopkins trial testimony lasted less than 30 minutes, and her direct examination was conducted by Mr. Haviland and not Levy. *See* Berman Decl., ¶ 9. Under the circumstances, Lead Class Counsel view this billing as excessive, but not to the degree shown in the other featured examples.

[27] *See* Berman Decl., Ex. 1 (Levy Time Records), pp. 32-33, 45-46.

- 9 -

Hughes served on the class representatives.[28] As the Court may recall, Haviland Hughes noticed the depositions of the class representatives in association with the Track Two proposed settlement. After Plaintiffs moved to quash the notices as improper, Levy's time records indicate that he spent nearly a month's worth of time – or approximately 143 hours – preparing two largely overlapping oppositions to the motions to quash.[29] As even a cursory review of these oppositions reveals, they were not lengthy filings, contain overlapping material and could not have been difficult to prepare. That an attorney of any experience level would expend almost a month working on two simple and overlapping briefs is astounding. Levy's so-called "work" on these briefs while at Haviland Hughes represent nothing more than an egregious "padding" of hours and should not be compensated. This "work" was not authorized or monitored by Lead Class Counsel. Further, Levy's "work" did not at all benefit the Classes, and the Court granted the Motions to Quash.

These matters alone, which in Lead Class Counsel's judgment demonstrate serious overbilling and a marked lack of benefit to the Classes, account for $153,000 of Levy's claim $240,000 claim. The featured examples above, are not, however, the only such instances; they are only the most egregious. Even if this Court were to find that Levy is somehow entitled to an award of fees and costs separate from the fees awarded to Haviland Hughes, Lead Class Counsel urge the Court to permit them to determine the precise amount of post-September 2006 fees Levy should be paid, as it is clear that amount will be significantly less than Levy has demanded.

## IV.  CONCLUSION

Levy begs the Court to award him over $240,000 in fees and expenses incurred while he was employed by Haviland Hughes, which has already been paid $1.8 million in full satisfaction

---

[28] *See* Berman Decl., Ex. 1 (Levy Time Records), pp. 43-45.

[29] Berman Decl., Exs. 4 (Dkt. No. 6019) and 5 (Dkt. No. 6020).

of its fee claims. In that Agreement, Lead Class Counsel assumed no obligation to pay Levy. Under these circumstances, Lead Class Counsel were well within their discretion to deny Levy's claim. Indeed, Lead Class Counsel would have been remiss had it permitted the sort of double-dipping that Levy advocates here. Moreover, Levy has engaged in fraudulent over-billing for tasks that were not authorized or monitored by Lead Class Counsel. For these and the many other reasons set forth above, the Court should deny Levy's Motion.

DATED:  January 4, 2012

By  /s/ Steve W. Berman
Thomas M. Sobol (BBO#471770)
Edward Notargiacomo (BBO#567636)
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St. NW, Suite 300
Washington, DC  20006
Telephone: (202) 355-6435
Facsimile: (202) 355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

- 12 -

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **LEAD CLASS COUNSEL'S OPPOSITION TO ADAM LEVY'S MOTION FOR MODIFICATION OF LEAD COUNSEL'S ALLOCATION OF FEES AND REIMBURSEMENT OF EXPENSES LEVY ACCRUED WHILE WORKING AT THE HAVILAND LAW FIRM**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 4, 2012, a copy to LexisNexis File & Serve for posting and notification to all parties.

    /s/ Steve W. Berman
Steve W. Berman