# Exhibit 5

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Judge Patti B. Saris |

## NAMED CONSUMER PLAINTIFFS' RESPONSE TO MOTION BY PRESCRIPTION ACCESS LITIGATION, COMMUNITY CATALYST AND HEALTH CARE FOR ALL TO QUASH SUBPOENAS DUCES TECUM

Named Consumer Plaintiffs[1], by and through their undersigned counsel, hereby respond to the Motion by Prescription Access Litigation, Community Catalyst and Health Care for All to Quash Subpoenas Duces Tecum, and state as follows:

1. Denied as stated. It is admitted that on March 9, 2009, Named Consumer Plaintiffs, by and through their undersigned counsel, served the subject subpoenas.

2. The first sentence of this paragraph is admitted. The second sentence of this paragraph is denied as stated. The discovery is sought to further demonstrate that Co-Lead Counsel's consumer association clients, who seek to be appointed as the Class 1 Consumer representative plaintiffs for the Track Two settlement class, are inadequate and

---

[1] "Named Consumer Plaintiffs" consist of Rev. David Aaronson, individually and on behalf of the Estate of Susan Ruth Aaronson, M. Joyce Howe, individually and on behalf of the Estate of Robert Howe, Larry Young, individually and on behalf of the Estate of Patricia Young, Therese Shepley, individually and on behalf of the Estate of James Shepley, Harold Carter, Roger Clark, on behalf of the Estate of David Clark, Ethel Walters, individually and on behalf of the Estate of Hunter Walters, Katie Bean, individually and on behalf of the Estate of Harold Bean, James Monk, Virginia Newell, individually and on behalf of the Estate of William Newell, Oral Roots, Rebecca Hopkins and George Baker Thomson.

1

atypical under Rule 23(a). The discovery also seeks to discover potential conflicts with the Classes. The Track Two Defendants (who now have reversed course and acquiesced in the adequacy consumer associations' representation of Class 1 consumers) already have demonstrated through their discovery, and this Court has held, that the proposed association representatives lack Article III standing to sue on behalf of Class 1 consumers. This Court also has ruled that they cannot serve as adequate or typical representatives of Class 1, and that Class 1 could not be certified with them as the representatives. The Court's Preliminary Approval Order in connection with the Track Two settlement appears to reverse these prior factual determinations and legal rulings. In support thereof, this Court preliminarily found that the named representative "[p]laintiffs' interests do not conflict with, and are co-extensive with, these of absent Class Members." Docket No. 5426 at 4. The Court further found that PAL member organizations "made a purchase or reimbursement for one or more of the Class Drugs", contrary to its prior finding that these organizations made no such purchases or reimbursements. *Id.* at 5.

The evidence of record demonstrates that the proffered association representatives have interests that conflict with and are antagonistic to the members of consumer Class 1. The conflict lies in the mission of PAL and its member associations to achieve *cy pres* awards in class action settlements. Therefore, they are competing for the same settlement dollars as consumers. The subpoenas seek discovery of these issues.

It is specifically denied that there is a conspiracy theory driving the discovery. To the contrary, there is an unrebutted fiduciary obligation on the part of Co-Lead Counsel to association plaintiffs who have interests that conflict with those of the consumer class. It is further specifically denied that "[t]he Subpoenas are yet another act done in

2

furtherance of Haviland's vendetta against Co-Lead Counsel." There is no vendetta. Named Consumer Plaintiffs' objections to the adequacy of the association plaintiffs have merit, and the subpoenas, served in furtherance of the objections, are entirely proper. It is curious that the subpoenaed parties would (1) hire Co-Lead counsel to defend the subpoenas, and (2) would interject an *ad hominen* attack on counsel in defense thereof. Discovery into this relationship is warranted.

      3.      Denied. By way of further response, Named Consumer Plaintiffs adopt the legal recitation, analyses and factual bases contained in the accompanying Memorandum in Opposition to Motion to Quash and in the Opposition to Track Two Final Approval.

      4.      The averments contained in this paragraph are conclusions of law to which no response is required. There has been no discovery of the relationship between the subpoenaed parties and Co-Lead Counsel. There has been no discovery of the presumed changed facts pertaining to Health Care for All and the other PAL members to support this Court's preliminary finding that these associations paid for Class Drugs. Discovery is needed into these facts to aid this Court in making the requisite findings to determine whether to grant or deny the class certification(s) sought and whether or not to finally approve the proposed Track Two settlement. Named Consumer Plaintiffs adopt the legal recitation, analyses and factual bases contained in the accompanying Memorandum in Opposition to Motion to Quash and in the Opposition to Track Two Final Approval.

      5.      The averments contained in this paragraph are conclusions of law to which no response is required. By way of further response, Named Consumer Plaintiffs deny that the requisite "good cause" has been shown by the subpoenaed parties for the

subpoenas to be quashed. It is further denied that PAL or Health Care for All are "third parties" to this litigation.

6. Denied. The *ipse dixit* assertions of "irrelevancy" and "overbreadth" are unsupported by any record support.

WHEREFORE, for all the reasons set forth in this Response, in the Memorandum in Opposition to Motion to Quash and in the Opposition to Track Two Final Approval, Named Consumer Plaintiffs respectfully request that this Court deny the Motion by Prescription Access Litigation, Community Catalyst and Health Care for All to Quash Subpoenas Duces Tecum, order the depositions to go forward and the movants to fully and completely respond to the request for production of documents, and permit Named Consumer Plaintiffs to make a presentation, to present evidence and to conduct examinations at the final approval hearing.

Dated: April 23, 2009                          Respectfully submitted,

                                               /s/ Donald E. Haviland, Jr.
                                               Donald E. Haviland, Jr., Esquire
                                               Michael J. Lorusso, Esquire
                                               THE HAVILAND LAW FIRM, LLC
                                               111 S. Independence Mall East,
                                               Suite 1000
                                               Philadelphia, PA 19106
                                               Telephone: (215) 609-4661
                                               Facsimile: (215) 392-4400

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 C.A. No. 01-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge Patti B. Saris |

NAMED CONSUMER PLAINTIFFS'
MEMORANDUM IN OPPOSITION TO MOTION BY
PRESCRIPTION ACCESS LITIGATION, COMMUNITY CATALYST
AND HEALTH CARE FOR ALL TO QUASH SUBOPENAS DUCES TECUM

I.    INTRODUCTION & BACKGROUND

This Court, the parties and the absent class members now find themselves at what may be the final stage of the case against the Track Two Defendants. Co-Lead Counsel and the Track Two Defendants ask this Court for its final approval as to the proposed nationwide class certification and settlement of all class members' claims against the Track Two Defendants. They seek to have consumer association members of PAL certified as adequate and typical representatives of consumer Class 1. However, this request flies in the face of the Defendants' hard-fought victories which yielded definitive rulings against the same consumer associations that now seek to be appointed as settlement class representatives. This request also is contrary to this Court's prior rulings that these same associations are atypical and inadequate under Rule 23, and lack Article III standing to sue on behalf of onsumers in Class 1.

Early in the case, at the behest of Defendants, this Court dismissed the association plaintiffs' claims for lack of standing because they failed to plead specific members that purchased a specific drug from a specific company and, therefore, they could not show injury-in-

fact. *In re Pharm. Indus. Average Wholesale Price Litig.* ("*In re AWP*"), 263 F.Supp. 2d 172, 194 (D.Mass 2003). Later, in response to the Defendants' arguments, this Court held the associations lacked standing to serve as class representatives for the consumers. *In re AWP*, 230 F.R.D. 61 (D.Mass. 2005). In addressing the absence of any Medicare Part B individual consumer-patient as a proposed class representative, this Court framed the "key question as whether an association with members who are patients meets the typicality requirement," *id.* at 78, and answered that question by ruling that "[t]he associations lack standing to serve as class representatives under Rule 23 (b)(3)." *Id.* at 80.

As the Defendants repeatedly argued to this Court, and as detailed in the Revised Memorandum of Named Consumer Plaintiffs in Opposition to Approval of the Proposed Track Two Nationwide Class Certification and Settlement ("Opposition to Track Two Final Approval") (filed March 24, 2009; Docket No. 5971),[1] the consumer associations themselves demonstrated that they lacked standing by such affirmative representations as disclaiming any claim for damages -- a point that Co-Lead Counsel never disputed. In fact, as the Defendants aptly pointly out to this Court, the corporate designee for Health Care for All ("HCFA") – one of the five associations proffered by Co-Lead Counsel and Defendants as Class 1 consumer settlement class representatives, and one of the three recipients of the subpoenas *duces tecum* at issue here – testified that:

> **the allegations of the FAMCC** regarding its members' making payments for subject drugs based upon AWP **are 'inaccurate.'** HFCA conceded that it has no knowledge whether any of its members have been injured as a result of any alleged AWP scheme. HCFA also admitted that it – separate from its members – has not been injured by Plaintiffs' alleged AWP scheme. Accordingly HCFA lacks standing to sue.

---

[1]    The Opposition to Track Two Final Approval details relevant procedural, factual and legal bases for the subpoenas *duces tecum* that are the subject of Co-Lead Counsel's pending Motion to Quash. Named Consumer Plaintiffs incorporate by reference thereto their Opposition to Track Two Final Approval.

Track Two Defts.' Mem. in Opp. to Class Certification at pp. 37-38 (case and record citations omitted)(emphasis added), Docket No. 2892.[2]

Therefore, the law of this case is settled: the consumer associations have no legal claims for damages, they lack standing to sue on behalf of Class 1 members, and they cannot properly serve as the consumer representatives of Class 1 for which they have been proffered. Indeed, this Court may not relax the rigorous analysis that is required of the Rule 23 requirements in the litigation context simply because a settlement has been proposed. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (district courts must apply "undiluted, even heightened attention" to Rule 23 requirements "in the settlement context.") Thus, this Court cannot certify the settlement class and grant final approval to the settlement with the current records as to the association plaintiffs – a record upon which the proponents of the settlement are prepared to rest.

Although there is no record to support the Court's reversal of its prior rulings regarding these consumer associations, discovery is warranted as to this Court's preliminary finding that the associations paid for drugs. *See supra*. n. 2.

On March 9, 2009, by and through the undersigned as their personal counsel, and in anticipation of filing their objections to the Track Two class certification and settlement, Named Consumer Plaintiffs served Prescription Access Litigation ("PAL"), Community Catalyst, and

---

[2]     While HCFA was removed from the Second Amended Master Consolidated Class Action Complaint ("SAMCC"), *compare* Master Consolidated Complaint ("MCC") ¶34 *with* SAMCC ¶¶32-36, it re-inserted in the current Revised Fifth Amended Master Consolidated Class Action Complaint ("RFAMCC"). *See* Docket No. 5902 at ¶39a. This same admittedly "inaccurate" allegation also has been re-alleged, and has been relied upon by the Court in its Order Granting Preliminary Approval of the Track Two Class Settlements, Directing Notice to the Classes, and Scheduling Fairness Hearing ("Preliminary Approval Order re Track Two"), in which HCFA is designated as a representative for Class 1. *See* Docket No. 5426 at p.5, ¶4 ("The Court finds that each of these representatives, or an agent or member thereof, made a purchase or reimbursement for one or more of the Class Drugs manufactured, marketed, sold, or distributed by the Released Companies.") and ¶4a ("Designated representatives for each Class are as follows: ... Health Care for All[.]"). Either the RFAMCC does not comport with Rule 11 of the Federal Rules, or the facts pertaining to HCFA members' purchases have change, such that additional discovery is warranted. *See* Fed. R.Civ. P. 11(b)("By presenting to the court a pleading...an attorney...certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,...the factual contentions have evidentiary support.")

HCFA with the Subpoenas now at issue. As the Opposition to Track Two Final Approval and its supporting material discuss, the five consumer associations that are proposed as Class 1 representatives for the Track Two settlement are member organizations/coalition partners of PAL, which itself is a "project" and subsidiary of Community Catalyst; HCFA, a named *Class 3* plaintiff in the RFAMCC, *see* ¶39a, is one of the five PAL consumer associations proposed as a *Class 1 representative*.

As far as Named Consumer Plaintiffs are aware, Co-Lead Counsel never brought to anyone's attention, or to the Court's attention, their or their consumer association clients' conflict of interest. Certainly, Co-Lead Counsel did not bring their conflicting representation of PAL to the attention of or approval by the Named Consumer Plaintiffs who now seek the subject discovery. Named Consumer Plaintiffs are unaware of any discovery in this action that revealed the existence or nature of this conflict and the underlying relationship between Co-Lead Counsel and the PAL associations, or that would have informed this Court as to same.[3] The requested depositions of representatives of PAL, Community Catalyst and HCFA, and the accompanying document requests, are narrowly tailored to bring this information to light, which would assist this Court in ensuring that the proposed consumer association Class 1 representatives and their attorneys are free from conflicts with the Class are truly adequate representatives of the consumer classes. Accordingly, to assist this Court in discharging its fiduciary duty to the class to ensure adequacy of representation, and to ensure that its decision whether to grant class certification and finally approve the settlement is based on an adequate record, named consumer plaintiffs respectfully ask this Court to deny the Motion to Quash the subpoenas *duces tecum* and require the entities to appear for their depositions and produce the requested documents. This

---

[3] To the extent that such discovery has been performed, or such information has been provided to the Court, Named Consumer Plaintiffs request that Co-Lead Counsel provide it to them and this Court before the fairness hearing.

4

request is no different from the requests Co-Lead Counsel have made of the other objectors to

the Track II Settlement.

## II.   ARGUMENT

### A.   The Paramount Concern of Adequacy of Representation and the Need for an Adequate Record for Settlement Approval.

"[O]f paramount concern" under Rule 23(a) is the requirement (under Rule 23(a)(4)) that

the representative party fairly and adequately represent the interests of the class. *Tilley v. TJX*

*Cos., Inc.*, 212 F.R.D. 43, 46 (D.Mass. 2003), *vacated on other grounds*, 345 F.3d 34 (1st Cir.

2003); *see also Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) (adequacy requirement is "[o]ne

of the most important of [the Rule 23] requirements"). The adequacy analysis has two steps: (1)

the moving party must show first that the interests of the representative party will not conflict

with the interests of any of the class members, and (2) that counsel chosen by the representative

party is qualified, experienced, and able to vigorously conduct the proposed litigation. *Andrews*

*v. Bechtel Power Corp.*, 780 F.2d 121, 130 (1st Cir. 1985)); *Guckenberger v. Boston Univ.*, 957

F.Supp. 306, 326 (D.Mass.1997). "This requirement is particularly important because the due

process rights of absentee class members may be implicated if they are bound by a final

judgment in a suit where they were inadequately represented by the named plaintiff." *Key*, 782

F.2d at 7 (citations omitted). Thus, it is no surprise that "'[b]asic consideration of fairness

require that a court undertake a stringent and continuing examination of the adequacy of

representation by the named class representatives *at all stages of the litigation where absent*

*members will be bound by the court's judgment.*'" *Susman v. Lincoln Am. Corp.*, 561 F.2d 86,

89-90 (7th Cir. 1977) (quoting *National Assoc. of Regional Med. Programs v. Matthews*, 551

F.2d 340, 344-45 (D.C. Cir. 1976) (emphasis added), which of course includes the point of

settlement when final judgment is sought. In all cases, the court must be assured that the

5

procedures designed to assure adequate representation have been carefully followed. *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 310 (D. Mass. 1987).[4]

"Under Rule 23(e), the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002). The fiduciary responsibility of the district court includes the obligation of ensuring that "the class members' interests were represented adequately." *Int'l Union of Electronic, Electrical, Salaried, Machine & Furn Workers, AFL-CIO v. Unisys Corp.*, 858 F. Supp. 1243,1264 (E.D.N.Y. 1994). This duty does not allow the district court to acquiesce in the class representative's inadequate representation of class members. *Watson v. Ray*, 90 F.R.D. 143, 146 (S.D. Iowa 1981).

The Court's fiduciary duty extends to its review of the terms of a proposed settlement and the conduct of counsel in achieving the settlement. *See generally Reynolds, supra.* A district court is a guardian of the rights of absent class members, and when it approves a settlement on an inadequate record, it fails to live up to its fiduciary responsibility. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see Duhaime v. John Hancock life Ins. Co.*, 177 F.R.D. 54, 67 (D. Mass. 1997) (in approving a settlement, "a district court is not an umpire as in a typical adversary litigation but rather 'a guardian for class members who have not received notice or who lack intellectual or financial resources to press objections.'" ) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 69 (2d Cir.1982), *cert. denied,* 464 U.S. 818).[5]

---

[4] Additionally, to decide whether class counsel will "fairly and adequately represent the interests of the class," the court must consider, *inter alia*, "the work counsel has done in identifying or investigating potential claims in the action". Fed. R.Civ. P. 23(g)(1)(A). The court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R.Civ. P. 23(g)(1)(B).

[5] As the fiduciary for the consumer class and final arbiter of who is best suited to represent their interests, the Court must review the record of these proceedings and make specific findings of fact and conclusions of law about Co-Lead Counsel's fitness to have served as consumer settlement counsel without any consumer client and with a separate fiduciary obligation to PAL and its member organizations to achieve a "separate *cy pres* fund." 4/4/06

This fiduciary duty extends to both the Court and class counsel in the case. Indeed, the fiduciary duty lawyers owe their clients applies in all cases, not just class action cases. *See, e.g, Huber v. Taylor*, 469 F.3d 67, 81 (3d Cir. 2006); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*55 F.3d 768, 801 (3d Cir., 1995); *Soskel v. Texaco, Inc.* 94 F.R.D. 201, 203 (D.C.N.Y., 1982); *Deadwyler v. Volkswagen of Am., Inc,*134 F.R.D. 128, 140 (W.D.N.C. 1991). In class action cases, a heightened duty is imposed upon the lawyers to ensure that the named representative plaintiffs are informed at each stage of the process. *See Greenfield v. Villager Indus., Inc.,* 483 F.2d 824, 831-32 (3d Cir. 1973).

Thus, if the lawyer, through breach of his fiduciary obligations to the class, *see Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1327-28 (9th Cir.1999); *Sondel v. Northwest Airlines, Inc.,* 56 F.3d 934, 938 (8th Cir.1995); *Piambino v. Bailey,* 757 F.2d 1112, 1139 (11th Cir.1985); *Greenfield,* 483 F.2d at 832, or otherwise, demonstrates that he is not an adequate representative of the interests of the class as a whole, certification must be denied. *Dubin v. Miller,* 132 F.R.D. 269, 273 (D.Colo.1990); *Wagner v. Lehman Bros. Kuhn Loeb Inc.,* 646 F.Supp. 643, 661 (N.D.Ill.1986); *Culver v. City of Milwaukee,* 277 F.3d 908, 913 (7th Cir. 2002).

**B.    Named Consumer Plaintiffs Should be Permitted to Conduct the Depositions and Obtain the Documents Requested of PAL, Community Catalyst and HCFA to Create an Adequate Record Regarding Adequacy of Representation.**

A district court is vested with discretion in determining whether, and to what degree, to permit objector discovery; thus, certain criteria have been developed to guide such a determination. Generally speaking, the criteria are (1) nature and amount of previous discovery, (2) reasonable basis for the evidentiary requests, and (3) number and interests of objectors. 4

---

Hodin Memo at p.3, attached as Exhibit "1" to the Subpoenas directed to PAL and Community Catalyst, attached as Exhibits A and B, respectively, to Declaration of Jennifer Fountain Connolly filed in support of Motion to Quash ("Connolly Decl.") (Docket No. 5984).

*Newberg on Class Actions* §11:57 (4th ed., updated Dec. 2008); *In re Community Bank of N. Virginia*, 418 F.3d 277, 316 (3d Cir. 2005) (quoting 2 *Newberg on Class Actions* §11:56 (2d ed. 1985)). Co-Lead Counsel agree that these are the criteria. *See* Mot. to Quash at ¶4. An objector may be permitted to take discovery where discovery in the case was inadequate. *In re Community Bank*, 418 F.3d at 316.

Such principles have been extended to objector requests seeking discovery concerning adequacy issues under Rule 23(a)(4). *See, e.g., Malchman v. Davis*, 761 F.2d 893, 898 (2d Cir. 1985) (on second appeal following remand to district court, ruling that although district court's denial of objector discovery of named plaintiffs regarding adequacy of representation as part of district court's approval of settlement appeared in conflict with the spirit of prior remand – given district judge's obligation to consider whether interests of the class are adequately represented – such discovery was not required in that instance because prior to any settlement negotiations, defendants conducted depositions of named plaintiffs covering issues pertaining to the adequacy objections raised).

Similarly, though not involving objector discovery, but relevant nevertheless, in *Stavrides v. Mellon Nat. Bank & Trust Co.*, 60 F.R.D.634 (W.D.Pa. 1973), the issue was whether a defendant may seek discovery in a class action case to determine whether counsel for named plaintiffs engaged in unethical activity in initiating and conducting the suit when ethical misconduct was alleged and whether, if found, it is relevant to the issue of plaintiffs' motion for class certification. *Id.* at 635. There, the questions asked at the depositions of the named plaintiffs were intended to discover facts concerning the circumstances under which they decided to commence the litigation, and the methods by which the action was being financed, particularly the financial arrangements with their counsel. *Id.* The court held that as part of the courts' broad

8

powers as "'guardian of the rights of absentees,'" it is proper for courts to consider the ethical conduct of plaintiffs' counsel in deciding whether to certify and in assessing whether counsel have carried out their fiduciary duties to absent class members. *Id.* at 637 (quoting *Greenfield v. Villager Indus., Inc.*, 483 F.2d at 832). *Stavrides* is directly relevant to the issue of the discovery that Named Consumer Plaintiffs seek here, considering that, pursuant to the criteria enunciated, a court should examine whether prior discovery conducted in the case provides an answer to the issues raised by an objector.

Here, Named Consumer Plaintiffs seek discovery of the consumer associations who claim to have "hand-picked" Co-Lead Counsel to represent them in achieving their goal of obtaining separate *cy pres* awards from consumer class action settlements. The independently-obtained evidence set forth in Named Consumer Plaintiffs' Opposition to Track Two Final Approval provides a reasonable basis to conclude that the associations and their Co-Lead Counsel have interests that may conflict with and may be antagonistic to the interests of the members of Class 1. This potential conflict between the associations and the consumer class is fundamental, *see Natchitoches Parish Hosp. Servs. Dist. v. Tyco Intern., Ltd.* 247 F.R.D. at 253, 265 (D.Mass. 2008), and the "paramount" issue of adequacy, *see Tilley* and *Key, supra.*, strikes at the heart of whether to grant class certification and finally approve the Track Two settlement.

As detailed in the Opposition to Track Two Final Approval, HCFA and the other proposed Class 1 representatives make up five of the approximately 130 member consumer associations comprising PAL. Community Catalyst is a project and subsidiary of PAL. PAL's described mission is to obtain *cy pres* from allocations of settlement funds. The putative association representatives appear to be in conflict with members of the consumer class by reason of their intimate and inextricable association and partnership with PAL, the client of

9

certain Co-Lead Counsel and the self-described director of the lawsuit. It matters not what use PAL seeks to make of its *cy pres* awards. An inherent conflict exists because PAL and its member associations not only seek to piggyback on the consumers to divert consumer settlement funds for their own use, but also because the same attorneys who represent them have a fiduciary and ethical duty to make sure that consumer class plaintiffs receive the fullest benefits from the settlement. Therefore, they are competing for settlement dollars despite the fact that they suffered no damages compensable in this case.

Thus, the issue is not, as Co-Lead Counsel puts it, that "there is nothing inherently improper about seeking *cy pres* funds in the first instance." Mem. in Support of Mot. to Quash at p.11. Named Consumer Plaintiffs agree that under ***ordinary*** circumstances, *cy pres* may have a place in class action litigation. The issue here, however, transcends Co-Lead Counsel's simplistic contention and conveniently ignores the gravamen of the issue: the conflict created by the consumer associations and by their Co-Lead Counsel's conflicting representations and duties, and by the consumer associations' representation of a consumer class of which the associations are not members because they have no standing to sue. This is not mere happenstance; rather, the conflict has been known by Co-Lead Counsel and the consumer associations from the inception of the litigation. The conflict was enhanced when Co-Lead Counsel chose to appoint the Director of PAL (Alex Sugerman-Brozan) to the critically important position of consumer allocation counsel for the Track Two settlement fund, which appointment – whether by design, neglect, or otherwise – has yielded a much worse split of settlement funds between consumers and TPPs than was the case with other settlements in this action.[6] The conflict continues with Co-Lead Counsel's representation of these associations in seeking to quash the subpoenas.

---

[6]     *Compare* Track Two Settlement Agreement at Docket No. 5133 (evidencing a split between consumer and TPP settlement funds of 17.5% and 82.5%, respectively) *with* GlaxoSmithKline Settlement Agreement at Docket

Named Consumer Plaintiffs seek depositions of and documents from PAL, Community Catalyst and HCFA. The document requests are targeted directly at the adequacy/conflict issue surrounding PAL and its affiliated/associated/member organizations, covering, for example, such issues as their formation and interrelatedness; involvement in litigation in which they proposed, sought or achieved to obtain *cy pres*; receipt of *cy pres*; involvement in certain specifically identified litigations; policies and other documents regarding *cy pre* recovery; involvement in and the decision to participate as plaintiffs in this lawsuit and HCFA's prior withdrawal from and re-emergence in the suit; affiliations with Co-Lead Counsel and payments made to or received from same; drafts of the Hodin Memo (identified *supra*); and negotiations of settlements, allocation of settlement proceeds or creation of *cy pres*. Even were the Court inclined to not permit full document production as to every one of these topics, at least some of these topics should be deemed relevant and necessary to assist the Court in determining the nature and scope adequacy/conflict issues. Some document production should be permitted. Documents pertaining to affiliations with and payments to or from Co-Lead Counsel (including affiliations/relationships codified by and payments made pursuant to agreements, including retainer agreements) are discoverable, as the cases show.

Moreover, pursuant to the criteria set forth above, the depositions and some (if not all) of the associations should be allowed. First, as far as Named Consumer Plaintiffs are aware, the information sought to be discovered here was not discovered during the litigation. Although the case itself has seen its share of discovery, it appears that the issues raised by Named Consumer Plaintiffs escaped discovery. Thus, it is appropriate to permit Named Consumer Plaintiffs to

No. 2972 (involving a consumer/TPP split of 30%/70%, respectively). The Track Two settlement represents a decrease of nearly 42% in the split for consumers. With the GSK settlement, consumer counsel were experienced attorneys who, in fact, represented individual consumers, not a director of PAL whose focus and interests lie with its member associations.

11

obtain this discovery now.  *See In re Community Bank,* 418 F.3d at 316, *supra.*  As no proponent

of the settlement has tested or sought to test whether such a conflict exists, this issue of adequacy

remains open.  Minimally, the record on this issue has not been sufficiently developed to ensure

protection of absent class members' due process rights.  Based on this first factor alone, the

discovery should be permitted.

Second, there are reasonable bases for the discovery requested.  The Opposition to Track

Two Final Approval sets forth "cogent factual objections to the settlement," *Malchman,* 761 F.2d

at 897, which fulfill this second criterion.  Indeed, Named Consumer Plaintiffs have presented

evidence of conflicts notwithstanding the inability to obtain the vast majority of such evidence,

since most of it is not publicly available and cannot be obtained from other sources.  Indeed, the

nature of some requested information is of a type that is likely to be restricted from public

purview due to the fact that it concerns the relationship between the associations and their

counsel, including financial relationships.

Finally, the interests of objectors, here the Named Consumer Plaintiffs who not only are

named parties and class members, but also who long and faithfully served as Class 1

representatives until Co-Lead Counsel discarded them, [7] are genuine and aligned with the absent

---

[7]       This factor also addresses the "number" of objectors.  As a threshold matter, even though the number of objectors may be relatively small here, the fact that objectors here are named plaintiffs in the action is significant. *See Mandujano v. Basic Vegetable Prods., Inc.* 541 F.2d 832, 837 (C.A.Cal. 1976) ("Of even greater significance is the fact that of the nine representative plaintiffs, five oppose the settlement.").  Moreover, one would not expect a large number of objectors with respect to the issue of a concealed conflict of interest.  Indeed, ordinary consumers would have no reason to suspect, and every reason to be surprised by, impermissible conflicts of interest and breaches of fiduciary and ethical duties by their *court-appointed* Co-Lead Counsel.  Also, as discussed in Named Consumer Plaintiffs' Opposition to Track Two Final Approval, the fact that no consumer had opted out, and only two objections had been filed by March 2, 2009 – the date of filing of their motion for final approval of the Track 2 settlement – is a function of the fact that the consumer notice plan had not been fully accomplished, by the admission of Co-Lead Counsel's own experts.  Indeed, that all of the named class representatives for Track 2 in the Third Amended Master Consolidated Complaint and subsequent amended versions of the complaint have objected to the proposed settlement should be an important consideration by this Court.  In short, given these peculiar circumstances as well as fulfillment of the other criteria and the other element of this specific criterion, the relatively small number of objectors should carry no weight in the decision whether to grant the requested discovery.

class.[8]  In fact, Named Consumer Plaintiffs have steadfastly taken on the issue of *cy pres* awards

for PAL, Community Catalyst and their member associations both in this litigation and

elsewhere.  As the Opposition to Track Two Final Approval discusses, Co-Lead Counsel here are

also Co-Lead Counsel in the *Lupron* litigation, wherein they have proposed giving nearly half of

the residual consumer settlement fund to Community Catalyst.  *See In re Lupron Mktg. & Sales

Pracs. Litig*, MDL 1430, Docket No. 519.  The undersigned objected on behalf of his *Lupron*

clients, including Named Consumer Plaintiffs here, and proposed that all of the money be paid to

the consumer plaintiffs, ***not*** Community Catalyst or PAL.  *See* MDL 1430, Docket No. 533.

---

[8]  Co-Lead Counsel state that this Court "has already found that Haviland's clients' claims arose after the cut-off date for the litigation certification," relying on a one-sentence footnote in an Order otherwise having nothing to do with a determination regarding the viability of Named Consumer Plaintiffs' claims. Mem in support of Motion to Quash at p.7 (citing 1/3/08 Order at 10 n.5, Docket No. 4972, in which the Court wrote: "Actually, in light of certain of my rulings, many (if not all) of these claims arose after the cut-off for class membership under the class definition.")  But this Court has never *expressly ruled* on the viability of all or any of their claims and a such a one-sentence footnote would be an extremely odd way to render such an important ruling affecting, specifically, consumer Class 1 members given the importance of the issue and the way the Court addressed the issue in the past. Indeed, as to Class 1 consumers specifically, this Court *expressly refused* to address or rule on the applicability of prior rulings regarding a claim cut-off date at a hearing conducted on June 6, 2007 regarding BMS's allegation that Class 1 lacked a plaintiff for what at the time was a scheduled BMS trial.  Rather, this Court stated that both sides (BMS on the one side and the undersigned in conjunction with Co-Lead Counsel who were representing Named Consumers Plaintiffs' interests at the time and on whose behalf filed a motion for class certification seeking the appointment of Rev. David Aaronson, one of the Named Consumer Plaintiffs, as BMS Class 1 representative) had a "good point," that it was a "really good debate," and that the Court had to "think about it."  6/6/2007 Hrg Tr. 6:10-7:3.  At various points of the hearing, the parties raised the issue and related issues concerning the viability of Rev. Aaronson's claim specifically and the fact that he was appointed as class representative for the GSK class settlement, but each time, the Court refused to entertain the issues pertaining to her claim, choosing instead to take those issues, including the Class 1 claim cut-off date, under "advisement." *Id.* at 6:10-7:19; 41:16-44:19.

More importantly, there can be no debate that Named Consumer Plaintiffs' claims fall within the class period for the proposed settlement class. "Consistent with the Court's January 30, 2006 *Order Re: Motion for Class Certification* [certifying litigation classes] regarding Track One defendants" (reported at 233 F.R.D. 229), the July 2, 2008 preliminary approval order for the Track 2 class settlement defined the classes, and set forth the periods of January 1, 1991 through January 1, 2005 for Classes 1 and 2 and January 1, 1991 through March 1, 2008 for Class 3. *See* Track Two preliminary approval Order, Docket No. 5426, at p. 2. The Track One January 30, 2006 Order to which the Track Two preliminary approval order refers covers the same class periods for Classes 1 and 2, and covers "January 1, 1991 to the present" for Class 3. 233 F.R.D. at 232. The January 30, 2006 Order pertaining to the Track One Defendants certified Named Consumer Plaintiffs Aronson, Howe, Shepley and Young as representatives of Class 1 for the Track One Defendants. Further, the Court granted final approval for the GSK settlement on August 7, 2007, incorporating into its Order the findings of its January 30, 2006 Order (and its August 16, 2005 Order (reported at 230 F.R.D. to which the January 30, 2006 Order relates). *See* Docket No. 4619 at p.2. The settlement class periods for Classes 1 and 2 (without being so titled) again were January 1, 1991 through January 1, 2005, and for Class 3 (without being so titled) was January 1, 1991 through August 10, 2005. *See id.* at 3. Named Consumer Plaintiff Aronson was certified as the GSK settlement Class 1 representative.

This was recently the subject of a hearing, and is awaiting decision from Judge Stearns (though Judge Stearns' concluding remarks at the hearing indicated he was unlikely to award the $4.5 million requested by Co-Lead Counsel for Community Catalyst/PAL). Moreover, Named Consumer Plaintiff Joyce Howe has taken an appeal of a guaranteed *cy pres* award achieved for PAL in connection with the AstraZeneca consumer Class 1 settlement in the instant litigation. *See* Docket No. 5854.

**B.     The Cases upon which Co-Lead Counsel Rely do not Support Prohibiting the Requested Discovery.**

Co-Lead Counsel rely on several cases in support of their contention that "the vast majority of courts have prohibited class action objectors from seeking broad and expansive discovery such as the discovery Haviland seeks here." Mem. in support of Mot. to Quash at p.5. However, each of these cases is easily distinguished. *See Duhaime,* 183 F.3d at 3-4 (involving post-judgment discovery into appellate side settlement, not discovery regarding the prior class action settlement, which was not at issue; and explaining there is "no unconditional right to have court review and approve as fair terms of such a side settlement."); *Jaffe,* 2008 WL 346417 at *4-*6 (addressing discovery issues at ***preliminary*** rather than final approval stage and using language showing preliminary nature of determination; regarding adequacy, court invited and received "additional briefing and submissions of evidence" on adequacy issues, which provided sufficient information for court to judge adequacy; further noting Supreme Court's guidance that a court cannot simply look at the settlement itself to determine whether Rule 23 requirements have been met); *Epstein,* 2005 WL 3276390 at *6-*7 (involving broad request for depositions, including lead counsel's, and documents addressing settlement negotiations to show collusion ***between defendants and plaintiffs' counsel***, for which the burden is higher and requires laying foundation via evidence from other sources; refusing discovery request because (1) it was

untimely (after settlement was already approved), (2) objector had opportunity to review, and to request, additional discovery obtained by plaintiffs' counsel, and (3) objection concerned legal issue (subject matter jurisdiction) for which discovery was unnecessary); *Hemphill*, 225 F.R.D. at 621-24 (involving primarily discovery of settlement negotiations and collusion ***between class counsel and defendants***, for which burden is higher, including broad and irrelevant discovery ostensibly to "test" adequacy of class counsel and named plaintiff, but which actually concerned same issue for which settlement negotiation discovery was sought; ruling that such discovery was not necessary for determining adequacy or whether settlement was fair, reasonable or adequate, but allowing discovery of defendants' financial information); *Lorazepam,* 205 F.R.D. at 27-28 (denying request for counsel's damages analyses because same would be provided via expert report, and ***granting*** requests for discovery of settlement negotiations); *In re Lupron*, MDL 1430, 2005 WL 613492 (D.Mass. Mar. 16, 2005) (denying discovery of settlement negotiations ***between Co-Lead Counsel and defendants***).[9]

 *Duhame* is simply inapposite. *Jaffe* is inapplicable procedurally given the stage of the case and, in any event, the court received from the parties themselves the information it needed to determine adequacy. *Epstein* was ultimately decided on factors that do not exist here. *Hempill*, *Lorazepam* and *Lupron* (and *Epstein* as well) involved primarily or exclusively discovery of settlement negotiations (which the court ***granted*** in *Lorezapam*) amid allegations of collusion between ***class counsel and the defendants***. This case presents fundamentally different circumstances. Named Consumer Plaintiffs, to whom Co-Lead Counsel owe fiduciary and ethical duties and who are identified as proposed class representatives in the RFAMCC and were serving that role until Co-Lead Counsel abandoned them, should have every right to obtain such

---

[9] Co-Lead Counsel also point to a decision in *In re Bridgeport Fire*, which is currently on appeal and is irrelevant to the issues raised in this case.

information in this case where at issue is their own attorneys' conflicted relationships and dealings with **other clients** who are currently serving as their proposed representatives (or who are associates/affiliates of those representatives) for the Track Two certification and settlement. Indeed, any member of the class should be entitled to know this critically important information.

In any event, even were this Court to apply the higher burden regarding discovery of settlement negotiations sought here, Named Consumer Plaintiffs have come forward with evidence adduced from other sources (*e.g.,* the Hodin Memo) making the request proper. Moreover, as a practical matter, the request for information regarding settlement negotiations appears in just one part of one discrete document request within each of the three subpoenas[10]; therefore, any ruling prohibiting such discovery certainly should not affect the other requests (or even other parts of the same request).

**C.  The Discovery is Not Prohibited Under Rules 26 and 45.**

As shown above, legal authority permits discovery to test adequacy of representation – both of the proposed representatives and of class counsel – under Rule 23.  Moreover, the authority offered by Co-Lead Counsel, as discussed above, does not support prohibiting requested discovery.  Federal Rules 26 and 45 likewise do not bar this discovery.

Non-parties may seek court protection from discovery by the overlapping and interrelated provisions of Rules 26 (governing discovery) and 45 (governing subpoenas).  *Dorel Juvenile Group, Inc. v. Summer Infant*, Inc., 2006 WL 2927321 at *2 (D.R.I. Oct. 11, 2006) (citing *Insulate Am. V. Masco Corp.*, 227 F.R.D. 427, 431 (W.D.N.C.2005) (explaining that a non-party moving to quash a subpoena is in the same position as a party moving for a protective order)). Here, Co-Lead Counsel specifically seek protection under Rules 26(c), 26(b)(2)(c)(i) and (iii),

---

[10]  *See* Document Request No. 11 of the PAL subpoena (Exhibit A of Connolly Decl.), and Document Request No. 10 of the Community Catalyst and HCFA subpoenas (Exhibits B and C, respectively, of Connolly Decl.).

and 45(c)(3)(A)(iv). Under Rule 45, "[t]he burden is on the movant to establish that the subpoena duces tecum should be quashed," *id.,* and must show "good cause" to obtain such protection. *London-Sire Records, Inc. v. Doe 1,* 542 F.Supp. 2d 153, 162 (D.Mass. 2008). Likewise, Rule 26 requires the movant to show "good cause" to obtain the court's protection from "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R.Civ. P. 26(c).

The specific information sought here, to Named Consumer Plaintiffs' knowledge, has not been provided in this litigation, was not the subject of discovery during the course of the litigation, and cannot be obtained from any other source. *See* Fed. R.Civ. P. 26(b)(2)(c)(i). Named Consumer Plaintiffs have not had an opportunity to obtain this information via discovery in the case. *See* Fed. R.Civ. P. 26(b)(2)(c)(ii). Therefore, prohibiting the discovery is inappropriate under either of those provisions.

Furthermore, at the very least, there is little burden and expense involved in taking a deposition of each of the three entities or having them produce documents. *See* Fed. R.Civ. P. 26(b)(2)(c)(iii); *see also* Fed. R.Civ. P. 45(c)(3)(A)(iv) (requiring "undue burden"). Any "burden or expense" that may be incurred in conjunction with a deposition or document production outweighed by the likely benefit to the millions of absent class members and to this Court in ensuring that its determination affecting the due process rights of those members is based on a sufficient factual record. The benefits considering the needs of the case, the large amount in controversy, Co-Lead Counsel's and the parties' considerable resources, the great importance of the adequacy issues of the discovery in resolving those issues all weigh decidedly in favor of permitting the requested discovery and against a finding of "good cause" to prohibit the discovery. *See id;* Fed. R.Civ. P. 26(c).

Co-Lead Counsel have failed to fulfill their burden of demonstrating that the subpoenas should be quashed or modified. They have not even bothered to provide an Affidavit from the subpoenaed entities showing the burden to them in appearing for a deposition or responding to the document requests. Rather, they have provided unsupported, conclusory factual assertions for why the discovery should not be permitted. However, it is clear that both the depositions and the document requests seek information relevant to the issue of adequacy, which this Court must finally determine on April 27.

Co-Lead Counsel have failed to show "good cause" to support their motion and, therefore, the Motion should be denied.[11]

### D. This Court Should Allow Named Consumer Plaintiffs to Examine a Representative of HCFA, PAL and Community Catalyst at the Final Fairness Hearing, in Addition to Allowing Them to Submit Evidence and to Make a Presentation at the Final Fairness Hearing.

Although Named Consumer Plaintiffs continue to maintain that they are entitled to take the depositions and documents requested of HCFA, PAL and Community Catalyst, this Court should permit Named Consumer Plaintiffs to examine the entities at the fairness hearing, in addition to permitting submission of evidence and/or making a presentation at the hearing.[12] *In re Community Bank,* 418 F.3d at 316 ("objectors are 'entitled to an opportunity to develop a record in support of [their] contentions by means of cross examination and argument to the court'") (quoting *Greenfield v. Villager Indus., Inc.,* 483 F.2d 824, 833 (3d Cir. 1973)); *Scardelletti v. DeBarr,* 265 F.3d 195, 204 n.10 (4th Cir. 2001) (court "should extend to any objector leave to be heard, to examine witnesses and to submit evidence," though it may "limit

---

[11]     Should this Court find "undue burden" under Rule 45, the subpoenas should be modified rather than quashed. *See* Fed. R.Civ. P. 45(c)(3)(A)(iv).

[12]     Minimally, they should be permitted to examine HCFA which is named in the current complaint as a Class 3 plaintiff and proposed in the preliminary approval Order as a settlement Class 1 representative.

its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision") (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975), *rev'd on other grounds*, 536 U.S. 122 (2002)); *Glicken v. Bradford*, 35 F.R.D. 144, 148 (S.D.N.Y. 1964) (to same effect as *Scardelletti)* (citing *Cohen v. Young*, 127 F.2d 721 (6th Cir. 1942)); *see also In re Lupron Mrktg. & Sales Pracs. Litig.*, Civ. Action No. 01-10896-RGS, MDL No. 1440 (D.Mass. Mar. 17, 2005) (permitting examination of witnesses at fairness hearing).

## III.   CONCLUSION

For all the foregoing reasons, and those expressed in their Opposition to Track Two Final Approval, Named Consumer Plaintiffs respectfully request that this Court deny the Motion to Quash Subpoenas *duces tecum*.


Dated: April 23, 2009                                      Respectfully submitted,

                                                          /s/ Donald E. Haviland, Jr.
                                                          Donald E. Haviland, Jr., Esquire
                                                          Michael J. Lorusso, Esquire
                                                          THE HAVILAND LAW FIRM, LLC
                                                          111 S. Independence Mall East, Suite 1000
                                                          Philadelphia, PA 19106
                                                          Telephone: (215) 609-4661
                                                          Facsimile:  (215) 392-4400

## CERTIFICATE OF SERVICE

I, Donald E. Haviland, Jr., Esquire, hereby certify that on April 23, 2009, I filed the

foregoing Named Consumer Plaintiffs' Response to Motion by Prescription Access Litigation,

Community Catalyst and Health Care for All to Quash Subpoenas Duces Tecum and Named

Consumer Plaintiffs' Memorandum in Opposition to Motion by Prescription Access Litigation,

Community Catalyst and Health Care for All to Quash Subpoenas Duces Tecum, with the Clerk

of this Court and used the CM/ECF system to send notification of such filing to all registered

person(s).


/s/ Donald E. Haviland, Jr.