UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | Civil Action: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge Patti B. Saris |

**KLINE & SPECTER, P.C.'S REPLY TO LEAD COUNSEL'S OPPOSITION TO THE WILLIAMS MOTION TO MODIFY LEAD COUNSEL'S ALLOCATION OF FEES TO INCLUDE TIME AND EXPENSE INCURRED IN STATE COURT ACTIONS**

I.  INTRODUCTION

As set forth in our moving papers, lead counsel agreed with Kline & Specter ("the firm") to compensate the firm for its time and expenses in state court actions ("state time") related to the subject matter of MDL 1456. After entering into this agreement, lead counsel made a judicial admission to this Court that Kline & Specter's state time was of value to the class. Lead counsel also submitted that state time to this Court for consideration in determining all plaintiffs' counsels' fee. Lead counsel did a fine job in litigating this case to a final resolution, but are now attempting to avoid their duty to compensate Kline & Specter for its state time.

II. FACTUAL BACKGROUND

   A.  When Kline & Specter Agreed to Join the MDL, There Was an Agreement That the State Time Would be Compensated.

Beginning in 2001, Kline & Specter litigated cases in Arizona and New Jersey related to the average wholesale price of numerous prescription drugs. This work ran parallel to the work of this MDL. By the summer of 2005, talks began between Kline & Specter and lead counsel in MDL 1456 about working together.

On October 5, 2005, Shanin Specter of Kline & Specter sent an email to Steve Berman and Thomas Sobol of Hagens Berman setting forth a draft agreement between lead counsel and Kline & Specter. *See* emails attached hereto as Exhibit "A" at email sent by Mr. Specter on October 15, 2005 at 8:11 AM ("Steve/Tom -- here is the draft agreement..."). The proposed agreement was:

> It is hereby agreed between the MDL co-lead counsel and Kline & Specter as follows:
>
> 1. MDL co-lead counsel have invited Kline & Specter to join the litigation of plaintiffs' claims in MDL1456.
>
> 2. Kline & Specter and MDL co-lead counsel will file claims for Kline & Specter's consumer clients in MDL 1456 to comply with the opinion and order of Judge Saris of August 2005 respecting consumer claims.
>
> 3. <u>MDL co-lead counsel will fully support and endorse Kline & Specter as an additional co-lead in MDL 1456.</u>
>
> 4. <u>Kline & Specter will be compensated for their time and costs on a par with the co-leads. All current co-leads' and Kline & Specter's compensation may be modified from parity to the extent appropriate under principles of equity and fairness. Kline & Specter's time and costs to date, which total approximately 2-3 million dollars will be added to the already existing time and costs of the current MDL co-lead counsel and be compensated along with other current MDL co-lead counsel upon recovery of attorneys' fees and costs in MDL 1456.</u>
>
> 5. Kline & Specter will make contributions to the Litigation Fund on par with the other co-leads for expenses going forward. MDL counsel and Kline & Specter will promptly exchange time records and costs records and will share such information going forward. All counsel will keep records distinctly allocating time and costs among the various AWP cases.
>
> 6. <u>Kline & Specter and Hagens Berman will make best efforts to cause the status they represent in the AWP litigation to associate the current MDL co-leads and Kline & Specter as co-leads in each state's case. If this cannot be accomplished, Kline & Specter and Hagens Berman will make best efforts to have the current co-leads and Kline & Specter associate formally or informally in each</u>

> state's AWP case. Fees and costs attributed to the state cases will be divided according to principles of equity and fairness.

7. The compensation of the current co-leads and Kline & Specter for time and costs will be by mutual consent. If agreement cannot be achieved, compensation will be set by binding arbitration. The arbitrator will be selected by agreement. If agreement cannot be achieved on the identity of the arbitrator, the arbitrator will be selected by the presiding judge of the case in which there is no agreement. All aspects of the arbitration will be confidential.

8. This agreement is not dependent on the Court in MDL 1456 appointing Kline & Specter as an additional co-lead. If Kline & Specter is not appointed as an additional co-lead, the agreements outlined herein will not be affected.

9. All co-leads and Kline & Specter may use the work product, experts and fruits of any and all AWP cases in any and all other AWP cases, subject to the provisions above.

10. Kent Williams, Adam Levy and the firm of Jennings Haug will be invited to participate in MDL 1456 as a non co-lead.

11. No party shall be considered to be the drafter of this agreement.

See *id.* (emphasis added).

On October 17, 2005 lead counsel accepted Kline & Specter's offer. Mr. Berman stated in an email to Mr. Specter: "we agree to join."[A] *See* email attached hereto as Exhibit "C" at email sent by Mr. Berman on October 17, 2005 at 10:40:17.

Pursuant to the agreement, Kline & Specter brought to MDL 1456 class representatives needed by the lead counsel in MDL 1456. The case was facing dismissals because there were no class representatives for many of the defendant pharmaceutical companies. Kline & Specter exchanged numerous emails with lead counsel giving them information on these class representatives so lead counsel were able to file the third amended complaint, with named class representatives for all defendants, by this Court's deadline. *See* emails attached hereto as Exhibit

---

[A] Lead counsel argue: "Tellingly, Mr. Berman did not say 'we agree' or words to that effect." Opposition at p. 5. To the contrary, Mr. Berman said exactly that: "we agree."

3

"B." Lead counsel concede that these clients were an important part of the consideration for that agreement. *See* Lead Counsel's Opposition to the Williams Motion to Modify Lead Counsel's Allocation of Fees to Include Time and Expense Incurred in State Court Actions at p. 4 ("K&S also represented that it had several consumer plaintiffs willing to serve as named class representatives.").

In particular, the following Kline & Specter clients were named as class representatives in the third amended complaint, against the defendants as follows:

| *Class Representative* | *Drug Companies* |
| --- | --- |
| Susan Aaronson (Class 1) | Aventis, Baxter, BMS, Dey, Fujisawa, GSK, J&J, Sicor, Watson |
| Roger Clark (Class 1) | Abbott, Aventis, Baxter, GSK, J&J, Sicor |
| Robert Howe (Class 1) | Amgen, AZ, Aventis, GSK, Sicor, Watson |
| James Shepley (Class 1) | AZ, J&J |
| Larry Young (Class 1) | Abbott, Amgen, Aventis, Baxter, BMS, Fujisawa, J&J, Pfizer, Sicor, Watson |
| Virginia Newell (Class 1) | Amgen, AZ, BMS, J&J, Aventis |
| Rebecca Hopkins (Class 3) | BMS |
| George Baker Thomson (Class 3) | AZ |

*See* Third Amended Complaint at ¶¶ 15-53, excerpt attached hereto as Exhibit "D." These same named plaintiffs remained through the fifth amended complaint, filed on February 17, 2009. *See* fifth amended complaint at ¶¶ 5-25, excerpt attached hereto as Exhibit "E."

The Final Order dated July 19, 2011 approving the settlement with the BMS group awarded class representative fees to representatives Aaronson and Hopkins, who were brought to the litigation by Kline & Specter. *See* order at ¶ 15, attached hereto as Exhibit "F." The Final Order on Track 2, dated December 8, 2011 awarded class representative fees to representatives Newell, Clark, Aaronson, Hopkins, Young, and Howe, all of whom were brought to MDL 1456 by Kline & Specter. *See* Final Order at ¶ 19, attached hereto as Exhibit "G."

Crucially, as noted above, in the agreement between lead counsel and Kline & Specter, lead counsel agreed to compensate Kline & Specter's state time that had accumulated before the agreement.

> Kline & Specter's time and costs to date, which total approximately 2-3 million dollars will be added to the already existing time and costs of the current MDL co-lead counsel and be compensated along with other current MDL co-lead counsel upon recovery of attorneys' fees and costs in MDL 1456.

See Exhibit "A" at ¶ 4.

**B.   Kline & Specter has Upheld its End of the Bargain. The Current Co-Lead Initially Recognized Kline & Specter for State Time But Now Seek to Avoid Their Obligation.**

At the request of lead counsel, Mr. Specter executed an affidavit on June 13, 2007, setting forth the hours, lodestar, and expenses in the federal and related state court actions as follows:

| Case | Hours | Lodestar | Expenses |
|---|---|---|---|
| AWP MDL | 6,681.75 | $2,093,136.25 | $404,180.02 |
| AWP NJ | 1,284.00 | $448,393.75 | $47,491.77 |
| AZ AWP | 77.00 | $21,678.75 | $3,354.42 |
| AZ Lupron* | 3,361.25 | $886,563.57 | $113,951.29 |
| **Totals:** | 11,404.00 | $3,449,772.32 | $568,977.50 |

[1] Note these figures do not include the amount apportioned to *Swanston* in the Lupron litigation.

See Affidavit at p. 3, attached hereto as Exhibit "H" (footnote 1 appears as in the original).

Kline & Specter does not seek compensation for work regarding Lupron. Kline & Specter was paid for this work in other litigations. The "AWP NJ" case is captioned *International Union of Operating Engineers, Local No 68 Welfare Fund v. AstraZeneca, PLC, et al.*, C.A. No.: 03-3230 (FRC) (Monmouth County, NJ) (transferred to MDL No. 1456 (D. Mass.). This case included a myriad of drugs other than Lupron, as set forth in paragraphs 26 through 93 of the complaint. *See* excerpt of complaint, dated June 30, 2003, attached hereto as

5

Exhibit "I." Likewise, the case called "AZ Lupron," captioned *Robert J. Swanston, Individually and on behalf of himself and all other similarly situated v. TAP Pharmaceutical Products, Inc., et al*, CV2002-004988 (Super. Ct. of AZ), included numerous drugs besides Lupron. *See* excerpt of complaint at ¶¶ 3 - 18, attached hereto as Exhibit "J." Kline & Specter was very careful to separate its Lupron time from time spent on other drugs in these cases. The firm's time submissions do not overlap as was set forth in Mr. Specter's affidavit of June 13, 2007. *See* Exhibit "H."

Kline & Specter's work was primarily spent investigating the defendant drug companies, finding class representatives, and determining which drugs could remain as part of the case. Lead counsel suggest that Kline & Specter's time be culled down to only three drugs that were part of the final settlement in MDL 1456, yet lead counsel have not culled down their time in this fashion. Lead counsel are not punishing themselves for unsuccessful portions of the claims in this case, nor should they. All counsel investigated many drugs, only to have that list culled down for the final settlements. Clearly, this investigative work was of value to the class and helped enable the claims to eventually settle.

Lead counsel not only entered into this agreement in October of 2005, but then argued to this Court that Kline & Specter's state time benefitted the class, and submitted Kline & Specter's state time to this Court for consideration of the proper overall fee for all plaintiffs' counsel. In Class Plaintiffs' Opposition to Don Haviland's Motion to Stay Distribution of AstraZeneca Fee Award and for Court Review of Lead Counsel's Allocation of Fees and Reimbursement of Costs, filed on January 5, 2010, lead counsel reported to this Court:

> The facts ignored by Haviland, are as follows. On June 22, 2007, Mark Edelson submitted a declaration to the Court in support of class counsel's petition for attorneys' fees and reimbursement of expenses in relation to the settlement with GSK. Dkt. No. 4399. In Exhibit 1 attached to his declaration, Mr. Edelson indicated that Kline & Specter had a total of 6,681.75 hours, $2,093,136.25 in

6

>lodestar, and $404,180.02 in expenses as of August 10, 2006. <u>These numbers were inaccurate, as they failed to reflect all of the relevant work performed and expenses paid by Kline & Specter that benefitted the certified class in this case. More specifically, Kline & Specter worked on several other, related cases, all of which were eventually consolidated with MDL 1456, and all of which benefitted the class in this case.</u>
>
>On April 16, 2008, Mr. Edelson submitted a second declaration to the Court, this time in relation to the settlement with AstraZeneca. See Dkt. No. 5222. In this declaration, Mr. Edelson correctly indicated that <u>Kline & Specter had $3,486,937.32 in lodestar and $602,739.90 in expenses that benefitted the class. These numbers accurately reflected all of the work performed and expenses paid by Kline & Specter in all of the case that benefitted the class and were consolidated in the MDL.</u> Shanin Specter, Esquire, a principal of Kline & Specter, reported the specific breakdown of Kline & Specter's hours, lodestar and expenses in each of the cases handled by Kline & Specter that <u>benefitted the class</u> to Mr. Edelson on December 13, 2006, and again by affidavit on June 13, 2007.

*See* opposition at p. 6 attached hereto as Exhibit "K" (emphasis added). This is an unequivocal judicial admission by lead counsel.

Kline & Specter upheld its end of the bargain. The firm assisted in the litigation of MDL 1456, performing 6,681.75 hours of work and over $400,000.00 in expenses in MDL 1456. The firm made a large contribution to the litigation fund as requested, which was a specific term of the October 2005 agreement. Also pursuant to the agreement, Kline & Specter approached the Attorney General of Pennsylvania about Hagens Berman entering its appearance in the Pennsylvania AWP case, captioned *Commonwealth of Pennsylvania, by Thomas W. Corbett, Jr., in his capacity as Attorney General of the Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc.*, et al, No. 212 MD 2004 (Commw. PA), as per paragraph 6 of the agreement. *See* Exhibit "A." Unfortunately, the Office of the Attorney General would not consent to Hagens Berman entering its appearance in the case, which was immediately made known to Hagens Berman. Also pursuant to the October 2005 agreement, Kline & Specter kept

7

careful time records separating the state work and provided their time to lead counsel. This time and its value has never been questioned by lead counsel, at least until now, after lead counsel had requested and received a fee award bolstered by this very same time.[B]

In sum, there was an agreement between lead counsel and Kline & Specter that the firm would be compensated for its state time. Kline & Specter upheld its end of the bargain. Thereafter, lead counsel represented to the Court that Kline & Specter's state time was of value to the class and that Kline & Specter should be compensated for that time and associated costs, but has failed to do so.

## III. LEGAL ARGUMENT

Kline & Specter is entitled to be compensated for its state time for three independent reasons:

### A. Lead Counsel Has a Binding Agreement with Kline & Specter.

On October 17, 2005, lead counsel accepted Kline & Specter's offer that included, *inter alia*, Kline & Specter entering MDL 1456 as co-lead counsel, Kline & Specter bringing class representatives to MDL 1456, and lead counsel compensating Kline & Specter for its state time and costs.[C] The emails represent an offer by Mr. Specter, and an acceptance by Mr. Berman

---

[B] Contrary to lead counsel's representations, Kline & Specter has been attempting to discuss and resolve this issue with lead counsel for a long time, to no avail, necessitating this issue be brought to this Court's attention. Specifically, on October 3, 2007, Mr. Specter corresponded with Mr. Berman, thanking him for the recent payment of $90,481.29 for expenses, and stating that per the agreement of 2005, Kline & Specter expected to be paid on all its costs, including the state costs. *See* letter attached hereto as Exhibit "L." No reply was received. In the summer of 2011, Kline & Specter received a further check for its federal costs. On August 31, 2011, Mr. Specter corresponded with lead counsel, congratulating them on their work, and asking that he be advised of what Kline & Specter could expect to receive in connection with the upcoming fee distributions, including for their state time and costs. *See* letter attached hereto as Exhibit "M." This letter was ignored. Thereafter, in October of 2011, several emails were exchanged between Kline & Specter and Mr. Edelson seeking such information, and no substantive information was provided. *See* emails attached hereto as Exhibit "N." More recently, lead counsel have ignored the dispute resolution procedure of the agreement with Kline & Specter and have sought discretion to pay Kline & Specter as they see fit, which is also contrary to their agreement with the firm.

[C] As it worked out, Kline & Specter's state time and costs total $1,521,027. This is less than the $2-3 million estimated state time and costs agreed to be paid in October 2005.

("we agree to join"). *See* Exhibits "A," "B," and "C." This offer and acceptance demonstrate the existence of a contract under axiomatic principles of contract formation. *Trifiro v. New York Life Ins. Co.*, 845 F.2d 30, 31 (1st Cir. 1988).

While lead counsel wish to argue that the offer was not accepted, that simply is not true based on the plain meaning of the words exchanged in the subject emails. *See* Exhibits "A" and "C." Mr. Berman's email dated October 5, 2005 clearly accepted the offer, noting also that "the group would prefer to redraft the agreement so that the fee stuff is on one place." *See* Exhibit "C" (emphasis added). The use of the term "the agreement" conclusively shows an agreement was in place. The preference to redraft the agreement to keep the fee information in one place is not a material term. Lead counsel's failure to follow through with the redraft is a form matter only, as Messrs. Specter and Berman confirmed. *See* email dated October 17, 2005 at 7:58 AM from Mr. Specter at Exhibit "C" ("And we're happy to have someone else redraft – this is only a form matter, I trust..."); *id.* at email dated October 17, 2005 at 10:58:56 from Mr. Berman ("Agree with all of the below:)").[D] *Cf. TLT Construction Corp. v. RI, Inc.*, 484 F.3d 130, 135 (1st Cir. 2007):

> If, however, the parties orally agree to the essential terms of the transaction, it may be inferred that they intended to bind themselves at that time and that the "writing to be drafted and delivered" is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms.

(internal citations omitted).

---

[D]   Lead counsel argue that Mr. Specter did not try an MDL AWP case. As the plain language of the agreement demonstrates, this was not a term of the agreement.

### B.  Lead Counsel Made a Judicial Admission That Kline & Specter's State Time Was of Value to the Class and that Kline & Specter Should be Compensated for that Time.

"Ordinarily, a pleading admitting a fact alleged in an antecedent pleading is treated as a binding judicial admission, removing the fact from contention for the duration of the litigation." *Harrington v. City of Nashua*, 610 F.3d 24, 30 (1st Cir. 2010). In order for something to qualify as a judicial admission, it must be a clear and unambiguous statement of fact. *Butynski v. Springfield Terminal R. Co.*, 592 F.3d 272, 276 (1st Cir. 2010).

The filings and statements of lead counsel could not be any clearer. Lead counsel admitted that the work done by Kline & Specter in these state court actions benefitted the class in this litigation, and submitted this time and expense for consideration to this Court of the overall fee for all plaintiffs' counsel. Thus, co-lead counsel made a judicial admission that Kline & Specter's work was a benefit to this class, argued that it should be counted in this litigation, and added it to the total lodestar. They cannot retract these admissions.[E]

### C.  Kline & Specter is Entitled to Be Compensated for Work that Benefitted the Class.

As lead counsel told this court, Kline & Specter's work was of benefit to the class. It is well settled that work of counsel that directly benefits the class must be compensated in that class action. *See In re Linerboard Antitrust Litigation*, 333 F.Supp.2d 343 (E.D. Pa. 2004). In the *Linerboard Antitrust Litigation*, a group of plaintiffs elected to opt out of a settlement, and their attorneys sought fees for work done that benefited the entire class from the common benefit fund of the class. The Eastern District of Pennsylvania found that because the work performed was for the common benefit of the class, the designated counsel who had opted out clients could receive compensation for that work from the common benefit fund of the class.

---

[E]   If, as co-lead counsel admit, Kline & Specter's state time work was a benefit to the class, then so was the state court work of Mr. Williams, Mr. Levy, and Jennings Haug & Cunningham.

Similarly, Kline & Specter did work that was of direct benefit to the class, and should be compensated for that work. Lead counsel will be unjustly enriched if they are permitted to benefit from Kline & Specter's state time, yet don't pay them for it.[F]

### D. Lead Counsel's Claims for a Portion of Kline & Specter's Fee in PA AWP is Meritless.

Lead counsel make a fleeting argument that they are somehow entitled to be compensated from payments made to Kline & Specter in the PA AWP litigation. No basis is stated; nor could there be. Kline & Specter and later Mr. Haviland and other lawyers litigated that case. Lead counsel weren't involved. Lead counsel have made no fee request or petition in that litigation or arbitration. Kline & Specter's efforts to involve lead counsel in the PA AWP case were declined by the Pennsylvania Attorney General, lead counsel were so informed, and nothing more has been said about this for over six years.

## IV. CONCLUSION

Kline & Specter should be paid here for its lodestar for state court time of totaling $1,356,636.07 and expenses for state court time of $164,390.90.[G]

Respectfully,

*/s/ Kila B.* 

Shanin Specter, Esquire
Kila Baldwin, Esquire
Kline & Specter, P.C.
1525 Locust Street, 19th Floor
Philadelphia, PA 19102-3712

---

[F] The logic of this argument also extends to the claims of Mr. Williams, Mr. Levy, and Jennings Haug & Cunningham.

[G] Lead counsel have already agreed to pay Kline & Specter for the firm's federal lodestar of $2,093,136. This is less than what was agreed to in October 2005 ("Kline & Specter will be compensated for their time and costs on par with the co-leads"). Kline & Specter is not pressing this point.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, January 5, 2012, Kline & Specter, P.C.'s Reply To Lead Counsel's Opposition To The Williams Motion To Modify Lead Counsel's Allocation Of Fees To Include Time And Expense Incurred In State Court Actions was duly filed with the Court through ECF and served on all counsel of record, via Lexis/Nexis File & Serve.

/s/ Barbara Carberry