# EXHIBIT A

**Spurka, Kathleen**

| | |
|---|---|
| **From:** | Specter, Shanin |
| **Sent:** | Saturday, October 15, 2005 3:01 PM |
| **To:** | 'Steve@hbsslaw.com'; 'Tom@hbsslaw.com' |
| **Cc:** | Haviland, Donald E. |
| **Subject:** | Re: DRAFT co-counsel agreement |

Ok.


-----Original Message-----
From: Steve Berman <Steve@hbsslaw.com>
To: Specter, Shanin <Shanin.Specter@KlineSpecter.com>; Thomas Sobol
<Tom@hbsslaw.com>
CC: Haviland, Donald E. <Donald.Haviland@KlineSpecter.com>
Sent: Sat Oct 15 14:59:17 2005
Subject: RE: DRAFT co-counsel agreement

I don't think we ca do it before moonday

If we don't agree we will take them out of the complaint

You don't have a Monday deadline

-----Original Message-----
From: Specter, Shanin [mailto:Shanin.Specter@KlineSpecter.com]
Sent: Saturday, October 15, 2005 10:38 AM
To: Steve Berman; Thomas Sobol
Cc: Haviland, Donald E.
Subject: Re: DRAFT co-counsel agreement

I think it's important we try to put this to bed before then, if possible.
If we don't have an agreement, then our clients can't go in your complaint and we
have to file our own...


-----Original Message-----
From: Steve Berman <Steve@hbsslaw.com>
To: Specter, Shanin <Shanin.Specter@KlineSpecter.com>; Thomas Sobol
<Tom@hbsslaw.com>
CC: Haviland, Donald E. <Donald.Haviland@KlineSpecter.com>
Sent: Sat Oct 15 14:28:41 2005
Subject: RE: DRAFT co-counsel agreement

I have forwarded this to co lead cunsel as an accurate reflecton of our
discussions. We will cacus at 7am pst on Monday and will call you all thereafter

steve

-----Original Message-----
From: Specter, Shanin [mailto:Shanin.Specter@KlineSpecter.com]
Sent: Saturday, October 15, 2005 8:11 AM
To: Steve Berman; Thomas Sobol
Cc: Haviland, Donald E.
Subject: DRAFT co-counsel agreement

Steve/Tom -- here is the draft agreement...

DRAFT
It is hereby agreed between the MDL co-lead counsel and Kline & Specter as
follows:

1.  MDL co-lead counsel have invited Kline & Specter to join the litigation of
plaintiffs' claims in MDL 1456.

2.  Kline & Specter and MDL co-lead counsel will file claims for Kline &
Specter's consumer clients in MDL 1456 to comply with the opinion and order of
Judge Saris of August 2005 respecting consumer claims.

3.  MDL co-lead counsel will fully support and endorse Kline & Specter as an
additional co-lead in MDL 1456.

4.  Kline & Specter will be compensated for their time and costs on a par with
the co-leads.  All current co-leads' and Kline & Specter's compensation may be
modified from parity to the extent appropriate under principles of equity and
fairness.  Kline & Specter's time and costs to date, which total approximately 2-
3 million dollars will be added to the already existing time and costs of current
MDL co-lead counsel and be compensated along with other current MDL co-lead
counsel upon recovery of attorneys' fees and costs in MDL 1456.

5.  Kline & Specter will make contributions to the Litigation Fund on par with
the other co-leads for expenses going forward.  MDL counsel and Kline & Specter
will promptly exchange time records and costs records and will share such
information going forward.  All counsel will keep records distinctly allocating
time and costs among the various AWP cases.

6.  Kline & Specter and Hagens Berman will make best efforts to cause the states
they represent in the AWP litigation to associate the current MDL
co-leads and Kline & Specter as co-leads in each state's case.   If this
cannot be accomplished, Kline & Specter and Hagens Berman will make best efforts
to have the current co-leads and Kline & Specter associate formally or informally
in each state's AWP case.  Fees and costs attributed to the state cases will be
divided according to principles of equity and fairness.

7.  The compensation of the current co-leads and Kline & Specter for time and
costs will be by mutual agreement.  If agreement cannot be achieved, compensation
will be set by binding arbitration.  The arbitrator will be selected by

agreement.  If agreement cannot be achieved on the identity of the arbitrator, the arbitrator will be selected by the presiding judge of the case in which there is no agreement.  All aspects of the arbitration will be confidential.

8. This agreement is not dependent on the Court in MDL 1456 appointing Kline & Specter as an additional co-lead.  If Kline & Specter is not appointed as an additional co-lead, the agreements outlined herein will not be affected.

9.  All co-leads and Kline & Specter may use the work product, experts and fruits of  any and all AWP cases in any and all other AWP cases, subject to the provisions above.

10.  Kent Williams, Adam Levy and the firm of Jennings Haug will be invited to participate in MDL 1456 as a non co-lead.

11.  No party shall be considered to be the drafter of this agreement.

# EXHIBIT B

**Spurka, Kathleen**

| | |
|---|---|
| From: | Baldwin, Kila |
| Sent: | Monday, October 17, 2005 4:35 AM |
| To: | Haviland, Donald E. |
| Subject: | Re: Response |

Just remember ████████████████ specifically said they don't want to be
deposed.
--------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Haviland, Donald E. <Donald.Haviland@KlineSpecter.com>
To: 'Steve@hbsslaw.com' <Steve@hbsslaw.com>; 'tom@hbsslaw.com' <tom@hbsslaw.com>;
'Sean@hbsslaw.com' <Sean@hbsslaw.com>
CC: Specter, Shanin <Shanin.Specter@KlineSpecter.com>; Baldwin, Kila
<Kila.Baldwin@KlineSpecter.com>
Sent: Sun Oct 16 23:14:32 2005
Subject: Re: Response

Steve,
For the most part, our "tier folks" are willing to be deposed. We just dropped
certain of them back to cut down on the volume, with one exception, ██████████.
████████ is a terrific, salt of the earth guy who has been very enthusiastic
about the case and his involvement. But he has inoperable brain cancer and is
terminal. His family is obviously concerned, as are we, about the strain of a
depo. His case is worth presenting for the amount of money he has had to spend,
and he wants it presented.

Since we might want him videotaped for any eventual trial, we might want to make
a proposal to the defendants for a one-time depo at a later date.

I believe Saris would support our efforts to want to protect this guy's health.

We can talk about him and others in the morning.

Donald E. Haviland, Jr., Esquire
Kline & Specter
A Professional Corporation
1525 Locust Street, 19th Floor
Philadelphia, PA 19102-3712
215•772•1000 telephone
215•735•0957 facsimile

This message is intended only for the use of the individual or entity to which it
is addressed and contains information that is privileged (protected by the
attorney-client privilege and the work-product privilege), confidential and

1

exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this message in error, please notify us immediately via return e-mail and delete the original message from your files.(bb)

-----Original Message-----
From: Steve Berman <Steve@hbsslaw.com>
To: Haviland, Donald E. <Donald.Haviland@KlineSpecter.com>; Thomas Sobol <Tom@hbsslaw.com>; Sean Matt <Sean@hbsslaw.com>
CC: Specter, Shanin <Shanin.Specter@KlineSpecter.com>; Baldwin, Kila <Kila.Baldwin@KlineSpecter.com>
Sent: Sun Oct 16 23:05:00 2005
Subject: RE: Response

I don't tink we can put forward folks who wont be deposed. Though the court might be sympathetic how can they be adeqyate if they are to sick to engage in the litigation  lets chat about this tomorrow

-----Original Message-----
From: Haviland, Donald E. [mailto:Donald.Haviland@KlineSpecter.com]
Sent: Sunday, October 16, 2005 7:03 PM
To: Steve Berman; Thomas Sobol; Sean Matt
Cc: Specter, Shanin; Baldwin, Kila
Subject: Re: Response

Agreed. We will await the call from the west coast and be ready to track thru per the order in the complaint. Anything you don't have already, you will by the call. We at KnS will be ready to explain all we know about each person so we can finally determine with you who should be in and out.

---

Donald E. Haviland, Jr., Esquire
Kline & Specter
A Professional Corporation
1525 Locust Street, 19th Floor
Philadelphia, PA 19102-3712
215*772*1000 telephone
215*735*0957 facsimile

This message is intended only for the use of the individual or entity to which it is addressed and contains information that is privileged (protected by the attorney-client privilege and the work-product privilege), confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly

prohibited.  If you receive this message in error, please notify us immediately
via return e-mail and delete the original message from your files.(bb)

-----Original Message-----
From: Steve Berman <Steve@hbsslaw.com>
To: Haviland, Donald E. <Donald.Haviland@KlineSpecter.com>; Thomas Sobol
<Tom@hbsslaw.com>; Sean Matt <Sean@hbsslaw.com>
CC: Specter, Shanin <Shanin.Specter@KlineSpecter.com>; Baldwin, Kila
<Kila.Baldwin@KlineSpecter.com>
Sent: Sun Oct 16 22:15:44 2005
Subject: RE: Response

I think the best way to do this is call monda at 8am pst/ and for all of us to go
thru this plantiff by plantiff

-----Original Message-----
From: Haviland, Donald E. [mailto:Donald.Haviland@KlineSpecter.com]
Sent: Sunday, October 16, 2005 4:22 PM
To: Steve Berman; Thomas Sobol; Sean Matt
Cc: Specter, Shanin; Baldwin, Kila
Subject: Response

Gentleman,
My associate who is closest to these issues has the following responses to Dave's
memo


1)        ▆▆▆▆▆  I spoke with ▆▆▆▆▆▆▆▆ on Friday, and on Friday he
sent us proof of payments and copies of insurance card...should be delivered to
the office tomorrow morning.



2)        ▆▆▆▆  Evidence of cytoxan appears in the lengthy medical
records
we did not scan...both WJM & I read through them to make sure we got all the
drugs.  I will have them scanned first thing tomorrow (I don't have them here at
home), and will call the hospital to have billing records for cytoxan faxed over
to us tomorrow.



3)        ▆▆▆▆▆ Have no medical records showing albuterol use; we
thought
he took it based on our telephone conversations with him.



4)        ▆▆▆▆▆ - ▆▆▆▆▆▆▆ is in his late 90's and it may take him
a

3

few days to put together his proof of payment information and return it to us.

5)      ■ I spoke with her on Friday; she said she would send us her
proof of payment information early this week. She works for the bank she wrote
checks from for her medications, so she thought she could get us copies of
everything very quickly.

---

Donald E. Haviland, Jr., Esquire
Kline & Specter
A Professional Corporation
1525 Locust Street, 19th Floor
Philadelphia, PA 19102-3712
215*772*1000 telephone
215*735*0957 facsimile

This message is intended only for the use of the individual or entity to which it
is addressed and contains information that is privileged (protected by the
attorney-client privilege and the work-product privilege), confidential and
exempt from disclosure under applicable law.  If the reader of this message is
not the intended recipient or the employee or agent responsible for delivering
the message to the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is strictly
prohibited.  If you receive this message in error, please notify us immediately
via return e-mail and delete the original message from your files.(bb)

## Spurka, Kathleen

| | |
|---|---|
| **From:** | Classcert@aol.com |
| **Sent:** | Monday, October 17, 2005 12:27 AM |
| **To:** | Donald.Haviland@KlineSpecter.com |
| **Subject:** | Re: Fw: AWP Plaintiff Status |

OK, I've read everything, and I gather that:

--we are not filing a complaint in intervention

--Nalven thinks we offer virtually nothing, but Sobol thinks Nalven is taking an overly narrow view of what is an acceptable plaintiff

--at least as recently as Saturday, our good buddy Sean Matt was questioning whether we should be included at all

--they did find some clients, but virtually all of them are in the non-Medicare beneficiary context, and

--as it turns out, with the exception of Remicade and Zoladex, we deliver the Medicare beneficiary part of the case to them (which was the only thing Saris certified on a nationwide basis, and without which they would be totally fucked).

I'll call you tomorrow and get the rundown on what was apparently an eventful weekend.

---------------------------

In a message dated 10/16/2005 10:33:22 P.M. Central Standard Time, Donald.Haviland@KlineSpecter.com writes:

> Take a look at the email thread. It goes on and on and really let's you see
> inside their camp.

---------------------------

Donald E. Haviland, Jr., Esquire
Kline & Specter
A Professional Corporation
1525 Locust Street, 19th Floor
Philadelphia, PA 19102-3712
215*772*1000 telephone
215*735*0957 facsimile

This message is intended only for the use of the individual or entity to which it is addressed and contains information that is privileged (protected by the attorney-client privilege and the work-product privilege), confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this message in error, please notify us immediately via return e-mail and delete the original message from your files.(bb)

-----Original Message-----
From: Steve Berman <Steve@hbsslaw.com>
To: Haviland, Donald E. <Donald.Haviland@KlineSpecter.com>
Sent: Sun Oct 16 23:05:59 2005
Subject: FW: AWP Plaintiff Status

<<1534.16 0301 BSC Third Amended Complaint.doc>>

1

From: Sean Matt
Sent: Sunday, October 16, 2005 9:10 AM
To: Steve Berman
Subject: RE: AWP Plaintiff Status


Attached is the draft TAMCC.  I moved into this document the plaintiff
allegations and groupings from the stand-alone document that I sent you last
night.  So, it is ready for you to work on.  One note:  some changes appear
in redline, others in blue underline.  I did not do this intentionally,
i.e., there is no special significance between the two.  I just used blue
font and underlining to highlight changes instead of working in the redline
mode, which is sometimes awkward.

On the Schering/BMS Class 1 issue, we could also go with Class 3 individual
reps -- we have many BMS people and at least one Schering person ▨▨▨▨
▨▨▨▨ in there.

If there is anything that I can do to help you today, just let me know.
I'll check e-mail periodically.



——————

From: Steve Berman
Sent: Sun 10/16/2005 9:40 AM
To: Sean Matt
Cc: Thomas Sobol; David Nalven
Subject: RE: AWP Plaintiff Status


Sean: I am going to take the ball again the only ting I need help on is
making sure we now which plaintiff is going to do what i.e. are they class 1
or class 2

if we are missing bms and Schering I am going to put ufcw in as class rep
and we argue judge should not let class be defeated and that there ca be
protection for this class by appointing sub class counsel to make sure there
is no conflict

I got a plan in my head that the only way to work it is to be hands on
we should plan on filing tomorrow and having a production of plaintiff
documents

if you have questions re ks plaintiffs I would go direct to them

I do recall tom saying we had a taxol and Schering p from ks so please tom
weigh in

Sean if you have the complaint pls e mail to me if not I will go into office
tonight


——————

From: Sean Matt
Sent: Sunday, October 16, 2005 8:12 AM
To: Steve Berman
Cc: Thomas Sobol; David Nalven
Subject: RE: AWP Plaintiff Status

So, where do we go from here?  I think we need to do the following:

1.  Review the remaining information that we have, if any, on the K&S plaintiffs so we know where they stand.  David and Tom, do we have any more documents in Boston beyond what David has already reviewed?

2.  Decide what law we are going to ask the court to apply to Classes 2 and 3 in the test case.  We do not have any MA plaintiffs to represent these classes.  Do we go with IL?  Ronnie's chart lists as "unclear" the answer to the question of whether a TPP can bring a claim under the Illinois Consumer Fraud Act, but it looks like the cases she cites support it.

3.  Make the proposed order conform to our decision in question 2.

4.  What do we do about the prospect of adding a MA TPP later?  The 30-day notice period under the MA CPA makes it difficult to ask for more time to do this.  Perhaps we just let it ride and then later move to add whoever we get at a later date.

5.  Do we move for more time for any other reason?  I think we can file tomorrow with what we have, and hopefully we can get some more confirmation re: K&S plaintiffs today or tomorrow.  If we file and move for more time, I am not sure what purpose it would serve.

6.  Do we file any sort of motion asking the court to substitute IL for MA law?

Please let me know your thoughts so that I can plan for what, if anything, I need to do today.

Thanks.

SRM

_____

From: Steve Berman
Sent: Sun 10/16/2005 8:44 AM
To: Sean Matt
Cc: Thomas Sobol; David Nalven
Subject: RE: AWP Plaintiff Status


i thought tom sated they did have a taxol and albuterolplaintiff  when tom and i spoke he said they did

we need tom to confirm because he and nalven dont see eye to eye

i dont know what you mean by goupings  the only grouping she invited was for tpps ie she raised the isssue of what states allow business'to  sue  so i envision no oher groups


_____

From: Sean Matt
Sent: Saturday, October 15, 2005 7:54 PM
To: Steve Berman
Cc: Thomas Sobol; David Nalven
Subject: AWP Plaintiff Status

Attached are two documents:  (i) TAMCC Plaintiff Summary chart; and (ii) Plaintiff charging allegations for the TAMCC.  The chart is a convenient reference tool to quickly see what defendants, drugs and states we have covered for each of the three classes, except that the drugs for the Kline & Specter plaintiffs are, for the most part, not provided (more on this below). The column titled "UFCW Cap" is intended to communicate whether the particular UFCW beneficiary listed met their out-of-pocket co-pay maximum, beyond which UFCW will pay 100% of the co-pay (expect defense argument that plaintiffs who met their cap are not "damaged" b/c they would have met the cap with our without AWP inflation).  An "N" in this column means that they did not meet the cap; "P" means probably; "Y" means we know they did.

With regard to the charing allegations, I've grouped the plaintiffs by class but not by state.  I kept the Kline & Specter plaintiffs separate.  The allegations for the K&S plaintiffs were taken nearly verbatim from what K&S sent us.  I asked Don Haviland to advise whether each of his plaintiffs made out-of-pocket payments that were not not reimbursed.  His response:  "All the plaintiffs listed have made non co-pay, out of pocket payments.  If supplemental is listed, the clients typically had percentage arrangements: ie, the unied healthcare folks paid 10% of the 20% medicare co-pay."

A few observations:

1.  As you can see from reading the allegations for the Kline & Specter plaintiffs, you generally cannot match each plaintiff's drug purchases with a specific defendant.  This is because K&S have set forth, for each drug, all of the manufacturers of that drug.  Any idea why they pled this way?  I assume, based on the work that David did for several of the Medicare Part B plaintiffs proffered by K&S, matchings can be made for at least some drugs by examining the underlying documents.   David did this for Class 1 plaintiffs ████████████████████████████████████.  In doing so, however, he found that the documents were incomplete.

2.  Because of the oblique nature of K&S's drug pleading, it is difficult to assess the value that they are now adding to the case, which troubles me a bit.  I am also concerned that many of these folks could have paid only for generics.  Again, you cannot obtain the complete picture by merely reviewing the allegations.  But based on David's review, K&S is, at a minimum, delivering more than one GSK Med Part B plaintiff, which we do not have (apart from K&S, we have a J&J and an Astra Med Part B plaintiff).

3.  We do NOT have any confirmed BMS or Schering Class 1 Med Part B plaintiffs, even with the K&S plaintiffs.

4.  We have more Class 3 plaintiffs than we need from Illinois.  Query whether we trim some here for simplification.  One advantage to listing many reps is that it is difficult to predict with certainty who will survive defendants' vetting.  Also, we cover all defendants and a lot of drugs with keeping the whole group in.  The disadvantage:  more work for us in depos, etc., and it may provide defendants with an opportunity to highlight differences that purportedly demonstrate atypicality.

5.  I have made no effort yet to nominate specific plaintiffs to head state-law subclasses.

Steve, please let me know what would be a good time to reach you on Sunday to chat about this and where we go next.

Thanks.

# EXHIBIT C

**Spurka, Kathleen**

| | |
|---|---|
| **From:** | Specter, Shanin |
| **Sent:** | Monday, October 17, 2005 11:01 AM |
| **To:** | 'Steve@hbsslaw.com'; 'Tom@hbsslaw.com'; Haviland, Donald E. |
| **Cc:** | Kline, Thomas R. |
| **Subject:** | Re: our agreement |

:-)


-----Original Message-----
From: Steve Berman <Steve@hbsslaw.com>
To: Specter, Shanin <Shanin.Specter@KlineSpecter.com>
Sent: Mon Oct 17 10:58:56 2005
Subject: RE: our agreement

Agree with all of the below:)

-----Original Message-----
From: Specter, Shanin [mailto:Shanin.Specter@KlineSpecter.com]
Sent: Monday, October 17, 2005 7:58 AM
To: Steve Berman; Haviland, Donald E.
Cc: Sean Matt; Thomas Sobol
Subject: Re: our agreement

I'm glad to be working with you and your litigation partners.  I gather that all
co-leads are paying the 150k -- if so, count us in.  As expressed on our call and
in the Draft Agreement, I need to see the ledger information to date...

And we're happy to have someone else redraft -- this is a form only matter, I
trust...


-----Original Message-----
From: Steve Berman <Steve@hbsslaw.com>
To: Haviland, Donald E. <Donald.Haviland@KlineSpecter.com>; Specter, Shanin
<Shanin.Specter@KlineSpecter.com>
CC: Sean Matt <Sean@hbsslaw.com>; Thomas Sobol <Tom@hbsslaw.com>
Sent: Mon Oct 17 10:40:17 2005
Subject: our agreement

we agree to join . the group would prefer to redraft the agreement so that the
fee stuff is in one place not several. also they want to clarify that you will
pay the current assessment of 150k

3

we are due to submit a proposed class cert order today and we will list ks as
proposed lead counsel

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | ) ) ) ) | MDL No. 1456 |
| | | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | ) ) ) ) | Judge Patti B. Saris |

## THIRD AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT

## AMENDED TO COMPLY WITH COURT'S CLASS CERTIFICATION ORDER

## REDACTED VERSION

## III.   PARTIES

### A.   Plaintiffs

13.     With the exception of the Public Interest Group Plaintiffs, each of the Plaintiffs identified below have, upon information and belief, were charged for the drugs noted based on a formula incorporating AWP.

### 1.   Proposed Class 1 Representatives (Medicare Part B Beneficiaries)

14.     Plaintiff Leroy Townsend is a resident of Naples, Florida.  During the time period relevant to this Complaint, he was a Medicare recipient who took Zoladex and paid a 20% co-payment.

15.     Plaintiff Susan Aaronson resides in Matthews, North Carolina.  Mrs. Aaronson, the wife of a local minister, is a Medicare beneficiary with supplemental insurance coverage through her church.  Mrs. Aaronson lives with breast cancer and is currently being treated for ovarian cancer.  During the applicable time period, Ms. Aaronson was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP: albumin (manufactured by co-conspirators Aventis Group and Baxter), albuterol sulfate (the Boehringer Group, Dey, the GSK Group, and the Schering-Plough Group), baciracin (Pfizer), bupivacaine (Abbott), carboplatin injectible (Baxter, the BMS Group), cefazolin sodium (Baxter, B. Braun, and the GSK Group), cisplatin (Baxter, the Boehringer Group, the BMS Group, and the Sicor Group), darbepoetin alfa (Amgen), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), dextrose injectible (Abbott, AstraZeneca, Baxter, and B. Braun), dextrose sodium chloride (Abbott), diltiazem hydrochloride injectible (Abbott, Baxter, the Boehringer Group, and the Sicor Group), diphenhydramine injectible (Baxter, Pfizer, and the Pharmacia Group), enoxaparin sodium (the Aventis Group), epinephrine (Abbott, Dey and the Sicor Group), epoetin alfa (the Johnson & Johnson Group and Amgen), famotidine (Abbott, Baxter, and the Boehringer Group), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), furosemide (Abbott, the Aventis Group, and Baxter),

glycopyrrolate injectible (Abbott, Baxter, the Sicor Group, and the Wyeth Group), heparin sodium (Abbott, Baxter, B. Braun, Pfizer, and the Pharmacia Group), hetastarch sodium chloride injectible (Baxter, the BMS Group, and B. Braun), hydromorphone injectible (Abbott, AstraZeneca and Baxter), ipratopium bromide (the Boehringer Group and Dey), lidocaine hydrochloride injectible (Abbott, AstraZeneca, Baxter, and B. Braun), magnesium sulfate injectible (Abbott and the Sicor Group), midazolam hydrochloride (Abbott, Baxter, the Boehringer Group, and Hoffman-La Roche), morphine sulfate injectible (Abbott, AstraZeneca, the BMS Group, and the Boehringer Group), neostigmine methylsulfate (Abbott, Baxter, and the Sicor Group), odansetron (the GSK Group), paclitaxel, (the BMS Group and the Boehringer Group), pegfilgrastim (Amgen), phenylphrine (Baxter and the Sicor Group), plicamycin (Bayer and the Boehringer Group), potassium chloride (Abbott, Baxter, and B. Braun), promethazine injectible (Abbott, Baxter, the Sicor Group, and Watson), ringers lactated with dextrose injectible (Abbott, Baxter, and B. Braun), propofol injectible (Abbott, AstraZeneca, Baxter, Pfizer, and the Sicor Group), sodium chloride (Abbott, the Aventis Group, Baxter, the Boehringer Group, B. Braun, the Schering-Plough Group, and the Sicor Group), succinylcholine chloride injectible (Abbott and Novartis), and vercuronium bromide injectible (Abbott, Baxter, the Boehringer Group, and the Sicor Group).  To date, Mrs. Aaronson has paid several thousands of dollars for these and other prescription drug medications.  Although Mrs. Aaronson had supplemental insurance coverage, the coverage required her to make percentage co-payments.  Mrs. Aaronson is a proposed class representative for, among other defendants, BMS, GSK and J&J.

16.      Plaintiff David E. Clark resides in Tonto Basin, Arizona, and is a 69 year-old Medicare beneficiary with secondary insurance through the Operating Engineers American Benefit Plan.  Mr. Clark has been treated for prostate cancer and now suffers from inoperative brain cancer.  During the applicable time period, Mr. Clark was prescribed, and was charged for, the following physician-administered prescription drugs, based in whole or in part on AWP:

cefazolin (Baxter, B. Braun, the BMS Group, and GSK), cafotetan disodium (the BMS Group),

ciprofloxacin hydrochloride (Abbott, Baxter, Bayer, and the Schering-Plough Group), cisplatin

(Baxter, the Boehringer Group, the BMS Group, and the Sicor Group), dexamethasone sodium

phosphate (Baxter, Fujisawa, the Sicor Group, and Watson), dextrose injectible (Abbott,

AstraZeneca, Baxter, and B. Braun), enalaprilat injectible (Abbott, Baxter, the Boehringer

Group, and the Sicor Group), epoetin alfa (Amgen and the Johnson & Johnson Group),

famotidine (Abbott, Baxter, and the Boehringer Group), fentanyl citrate (Abbott, AstraZeneca,

Baxter, and the Johnson & Johnson Group), granisetron (the GSK Group and Hoffman-

LaRoche), hetastarch sodium chloride injectible (Baxter, the BMS Group, and B. Braun),

hydromorphone injectible (Abbott, AstraZeneca and Baxter), labetalol injectible (Abbott, Baxter,

and the Boehringer Group), lidocaine hydrochloride injectible (Abbott, AstraZeneca, Baxter, and

B. Braun), methylsulfate (the Fujisawa Group), midazolam hydrochloride (Abbott, Baxter, the

Boehringer Group, and Hoffman-La Roche), morphine sulfate injectible (Abbott, AstraZeneca,

the Boehringer Group, and the BMS Group), potassium chloride (Abbott, Baxter, B. Braun, and

Pfizer), ranitidine (the GSK Group), and sodium chloride (Abbott, the Aventis Group, Baxter,

the Boehringer Group, B. Braun, the Schering-Plough Group, and the Sicor Group).  Mr. Clark

has made payments for the foregoing drugs totaling nearly $10,000.00 to date.  Although Mr.

Clark had supplemental insurance coverage, the coverage required him to make percentage co-

payments.  Mr. Clark is a proposed class representative for, among other defendants, GSK and

J&J.

17.     Plaintiff Robert Howe resides in Mapleton, Oregon, and is a 79 year-old Medicare

beneficiary, with supplemental insurance coverage through United Health Care of Utah.  Mr.

Howe is living with prostate cancer.  During the applicable time period, Mr. Howe was

prescribed, and was charged for, the following physician-administered drugs, based in whole or

in part on AWP:  dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor

THIRD AMENDED MASTER CONSOLIDATED          - 7 -
CLASS ACTION COMPLAINT
1534.16 0J01 BSC.DOC

Group, and Watson), docetaxel (the Aventis Group), gentamicicin sulfate (Abbott, Baxter, B.

Braun, the Fujisawa Group, and Watson), goserelin acetate (AstraZeneca), granisetron (the GSK

Group and Hoffman-LaRoche), and pegfilgrastim (Amgen).  Mr. Howe has made payments for

the foregoing drugs.  Although Mr. Howe had supplemental insurance coverage, the coverage

required him to make percentage co-payments.  Mr. Howe is a proposed class representative for,

among other defendants, AstraZeneca and GSK.

18.    Plaintiff James Shepley resides in Reno, Nevada, and is an 85 year-old Medicare

beneficiary, with secondary insurance coverage through United American.  Mr. Shepley is living

with prostate cancer.  During the applicable time period, Mr. Shepley was prescribed, and was

charged for, the following physician-administered prescription drugs, based in whole or in part

on AWP:  epoetin alfa (Amgen and the Johnson & Johnson Group), goserelin acetate

(AstraZeneca), and prednisone (the Boehringer Group).  Mr. Shepley has made payments for the

foregoing drugs.  Although Mr. Shepley had supplemental insurance coverage, the coverage

required him to make percentage co-payments.  Mr. Shepley is a proposed class representative

for, among other defendants, AstraZeneca and J&J.

19.    Plaintiff the Estate of Patricia K. Young is represented by Larry Young, Mrs.

Young's husband.  Before she died, Mrs. Young resided in Enid, Oklahoma where her husband

still resides.  She was a Medicare beneficiary as a result of a longstanding disability, with

supplemental insurance through United Healthcare that covered only a portion of her co-

insurance obligation for prescription drugs under Medicare Part B.  She received medication for

rheumatoid arthritis, Hepatitis C, and lymphoma, the disease that ultimately caused her death.

During the applicable time period, Mrs. Young was prescribed, and was charged for, the

following physician-administered prescription drugs manufactured and sold by the defendant

companies, based in whole or in part on AWP:  azathioprine sodium (the Boehringer Group),

cytoxan (the BMS Group, Pfizer, and the Pharmacia Group), dexamethasone acetate (Abbott,

Bayer, the Wyeth Group, and Watson), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), dolasetron mesylate (the Aventis Group), dopamine hydrochloride (Abbott, B. Braun, Baxter, and the BMS Group), epirubicin (Pfizer and the Pharmacia Group), epoetin alfa (Amgen and the Johnson & Johnson Group), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), filgrastim (Amgen), folic acid injectible (the Boehringer Group), heparin sodium (Abbott, Baxter, B. Braun, Pfizer, and the Pharmacia Group), hydrocortisone sodium succinate (Pfizer and the Pharmacia Group), infliximab (the Johnson & Johnson Group), levofloxacin (Abbott and the Johnson & Johnson Group), lidocaine hydrochloride injectible (Abbott, AstraZeneca, Baxter, and B. Braun), lorazepam injectible (Abbott, Baxter, and Watson), methotrexate sodium injectible (Baxter, the Boehringer Group, Immunex, and the Wyeth Group), midazolam (Abbott, Baxter, Boehringer, and Hoffman-LaRoche), moxifloxacin injectible (Bayer and the Schering-Plough Group), oprelvekin (the Wyeth Group), prednisone (the Boehringer Group), promethazine (Abbott, Baxter, the Sicor Group, and Watson), protonix injectible (the Wyeth Group), triamcinolone acetonide (the BMS Group), vancomycin sulfate (Abbott, Baxter, and Watson), vincristine sulfate (the Pharmacia Group and the Sicor Group), and warfarin sodium injectible (the BMS Group). At various times throughout the course of Mrs. Young's treatment, the Youngs' made payments via credit card to meet their payment obligations to their various medical providers. The Youngs made payments for the foregoing drugs. Although Mrs. Young had supplemental insurance coverage, the coverage required her to make percentage co-payments. The Estate of Patricia Young is a proposed class representative for, among other defendants, BMS and J&J.

20.     Plaintiff the Estate of William Newell is represented by Mr. Newell's wife, Virginia Newell. Mr. Newell was a resident of Mooresville, North Carolina, where his wife still resides, and was a Medicare beneficiary with supplemental insurance coverage through AARP. Mr. Newell took prescription drug medications for diabetes, osteoparothis and cancer. During

the applicable time period, Mr. Newell was prescribed, and was charged for, the following

physician-administered drugs, based in whole or in part on AWP: azithromycin (Pfizer),

clindamycin phosphate (Abbott, Pfizer, and the Pharmacia Group), dexamethasone sodium

phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), diltiazem hydrochloride

injectible (Abbott, Baxter, the Boehringer Group, and the Sicor Group), docetaxel (Novartis),

epoetin alfa (Amgen and the Johnson & Johnson Group), fentanyl citrate (Abbott, AstraZeneca,

and Baxter), furosemide (Abbott, the Aventis Group, and Baxter), goserelin acetate

(AstraZeneca), heparin sodium (Abbott, Baxter, B. Braun, Pfizer, and the Pharmacia Group),

granisetron (the GSK Group and Hoffman-LaRoche), hydromorphone hydrochloride injectible

(Abbott, AstraZeneca, and Baxter), levofloxacin (Abbott and the Johnson & Johnson Group),

methylprednisolone (Abbott, Pfizer, and the Pharmacia Group), metoclopramide (Baxter and

Wyeth), moxifloxacin injectible (Bayer and the Schering-Plough Group), promethazine (Abbott,

Baxter, the Sicor Group, and Watson), sodium chloride (Abbott, the Aventis Group, Baxter, the

Boehringer Group, B. Braun, the Schering-Plough Group, and the Sicor Group), triamcinolone

acetonide (the Aventis Group), vinorelbine tartrate (the GSK Group), and warfarin sodium

injectible (the BMS Group). The Newells have made payments for the foregoing drugs.

Although Mr. Newell had supplemental insurance coverage, the coverage required him to make

deductible payments for his treatment before his insurance coverage paid for his care. The Estate

of William Newell is a proposed class representative for, among other defendants, AstraZeneca,

BMS, J&J and Aventis.

### 2. Proposed Class 2 Representatives (MediGap Payors)

21. Plaintiff United Food and Commercial Workers Unions and Employers Midwest

Health Benefits Fund ("UFCW") is an employee welfare benefit plan and employee benefit plan

maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan

established and maintained pursuant to ERISA, for the purpose of providing health benefits to

THIRD AMENDED MASTER CONSOLIDATED            - 10 -
CLASS ACTION COMPLAINT
1534.16 0301 BSC.DOC

eligible participants and beneficiaries.  UFCW maintains its principal place of business in Cook County, Illinois.  During the Class Period, UFCW has been billed for and paid charges for AWPIDs, including:  Abbott's sodium chloride, gentamicin sulfate, furosemide, heparin lock flush and dextrose; Baxter's sodium chloride and dextrose; Bedford's leucovorin calcium; Sicor's leucovorin calcium; Pharmacia's methylprednisolone sodium; Braun's sodium chloride; Aventis' Furosemide; Immunex' leucovorin calcium and Johnson & Johnson's Remicade. UFCW also made payments for drugs outside of the Medicare Part B context based on published AWPs.  All of UFCW drugs that are at issue in the Complaint are identified in Appendix B. From December 2000 to the present, UFCW has contracted with a PBM to administer its prescription drug benefit for its beneficiaries.  For brand name drugs its contract expressly provides that reimbursement is at "AWP less 13%."  For generic drugs its reimbursement is also based on AWP.  Prior to December 2000, UFCW contracted with pharmacies for the payment of purchases of pharmaceutical drugs by its members and beneficiaries at an estimated acquisition cost based on the AWPs (less a specified percentage) published by the manufacturers in Medispan.

22.     UFCW's beneficiaries began to and have continued to be reimbursed for their purchases of physician-administered drugs pursuant to UFCW's comprehensive medical expense benefit, its major medical plan.  *See* United Food and Commercial Workers Unions and Employers Midwest Health Benefits Plan, P001294-1417.  UFCW made payments for physician-administered drugs based on published AWPs.  Since November 1, 1994, UFCW's comprehensive medical expense benefit has been administered by Blue Cross Blue Shield of Illinois ("BCBS").  Until January 1, 2005, when BCBS' payments for physician-administered drugs began to be established considering ASP, BCBS' payments were based on a negotiated allowance which was established considering a percentage above AWP.  For physician-administered drugs not covered by Medicare Part B, UFCW paid 80% or 85% of BCBS'

THIRD AMENDED MASTER CONSOLIDATED        - 11 -
CLASS ACTION COMPLAINT
1524.16 0301 BSC.DOC

payments, and the UFCW member paid the remainder.  Further, UFCW has made co-payments under Medicare Part B throughout the Class Period.  A member's 20 percent co-payment under Medicare Part B is, and has been, an eligible expense under UFCW's plans during the Class Period.  If Medicare pays a portion of a Fund member's claim under Medicare Part B, UFCW reimburses the remainder of the claim.

23.     For transactions that occurred after October 31, 2004, Plaintiff UFCW is able to determine for which drugs it reimbursed and by how much it reimbursed by performing a computer search of its claims files.  Such files also show which of its covered members had an amount due and owing after UFCW made its reimbursement of the claim.

24.     Plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("PMBT") is a voluntary employee benefits association maintained pursuant to the federal Employee Retirement Security Act, 29 U.S.C. § 1132, *et seq.*, and to the settlement of a federal court action (Case No. 3:94-0573) brought in the United States District Court for the Middle District of Tennessee against Pirelli Armstrong Tire Corp. ("Pirelli") in the early 1990's by many Pirelli retirees, for the purpose of providing health and medical bnefits to eligible participants and beneficiaries.  PMBT maintains its principal place of business in Goodlettsville, Sumner County, Tennessee.

25.     During the Class Period, PMBT also reimbursed its members for portions of pharmaceutical bills (including physician-administered drugs) that were covered in the first instance by Medicare Part B.  The plan expressly states that it pays 20 percent of all covered Medicare Part B claims.  The fund notified that Medicare Part B has covered a given drug or procedure and has paid 80 percent of the cost.  The fund then pays the identified "coinsurance" amount, or 20 percent of the total cost Medicare has paid.  Numerous drugs fall into this category.  Based on a recent review of a small number of our files, PMBT has determined that, with respect to drugs manufactured by the Track 1 Defendants (Astra-Zeneca, Bristol-Myers-

Squibb, Glaxo-Smith-Kline and Johnson & Johnson), PMBT made Medicare co-payments with

respect to at least the following drugs:  Zovirax (Glaxo Smith Kiline), Zoladex (Astra-Zeneca),

Cytoxan (Bristol-Myers-Squibb), and Procrit (Johnson & Johnson).  Because the fund is

composed of retirees, about two-thirds of whom are eligible for Medicare, and because the

search was only of a relatively small number of files, plaintiffs are confident that further

investigation will show that other drugs were paid for in the Medicare Part B context with

respect to the various companies known in this case as "Track 1" and "Track 2" Defendants.

Our investigation is continuing.

      25a.    Plaintiff Sheet Metal Workers National Health Fund ("SMW Health Fund") is a

Taft-Hartley trust administered pursuant to the requirements of 29 U.S.C. § 186 by an equal

number of trustees appointed by labor representatives and union representatives.  Its Fund Office

is in Goodlettsville, Tennessee.  The SMW Health Fund is also a multiemployer welfare fund

subject to ERISA.  The SMW Heath Fund provides a Supplemental Medicare Wraparound Plus

("SMW+") program that covers the Medicare Part B co-payments of its beneficiaries. . There are

over 15,000 retirees and covered beneficiaries who receive benefits under the SMW+ program.

During the Class Period, the SMW Health Fund has paid for portions of pharmaceutical bills that

were covered in the first instance by Medicare Part B.  The drugs for which payments were made

include Cytoxan (BMS), Etopophos (BMS), Kytril (GSK), Levaquin (J&J), Nevelbine (GSK),

Paraplatin (BMS), Procrit (J&J), Remicade (J&J), Rubex (BMS), Taxol (BMS), Vepesid (BMS)

and Zoladex (AstraZeneca).

      **3.**      **Proposed Class 3 Representatives (TPPs and Consumers for AWP-Based Charges on Physician Administered Drugs Outside of Medicare)**

      26.    UFCW is also a proposed representative for this Class.

      27.    Plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity

Welfare Trust Fund ("CMHV") is an employee welfare benefit plan and employee benefit plan

established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations

THIRD AMENDED MASTER CONSOLIDATED     - 13 -
CLASS ACTION COMPLAINT
1534.16 0301 BSC.DOC

Act ("LMRA"), 29 U.S.C. § 186(c)(5), and as defined by §§ 1002(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for the purpose of providing health benefits to eligible participants and beneficiaries. As such, CMHV is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d). CMHV maintains its principal place of business at 9555 West Sam Houston Parkway South, Suite 400, Houston, Texas. During the Class Period, Carpenters Welfare Trust Fund has been billed for and paid charges for Covered Drugs and otherwise made payments for drugs outside of the Medicare Part B context based on published AWPs. These drugs are identified in Appendix B. During the period relevant to the complaint, CMHV used an administrator to provide medical and drug benefits to its members. CMHV's administrator contracted directly with a PBM to provide pharmacy services to CMHV participants. By contract, all of CMHV's drug purchases were directly and expressly tied to AWP. CMHV paid for brand named drugs in both the retail and mail order context based on AWP minus a fixed percentage. For generic drugs in the retail context CMHV paid based upon MAC, which itself was tied to AWP and in the mail order context CMHV's generic purchases were made at either MAC or AWP minus a fixed percentage. By contract, the AWP used to determine prices was based on that published by "First Databank Blue Book."

28.     Plaintiff Teamsters Health & Welfare Fund of Philadelphia and Vicinity ("THWF") is an employee welfare benefit plan and employee benefit plan established and maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to §§ 1002(1) and (3) of ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries. As such, THWF is a legal entity entitled to bring suit in its own name pursuant to 29 U.S.C. 1132(d). THWF maintains its principal place of business at Fourth & Cherry Streets, Philadelphia, Pennsylvania 19106. It provides comprehensive health coverage for over 28,000 participants and beneficiaries in parts

of Pennsylvania, New Jersey and Delaware.  During the Class Period, THWF has been billed for
and paid charges for AWPIDs.  THWF also made payments for drugs outside of the Medicare
Part B context based on published AWPs.  All drugs covered by this Complaint purchased by
this plaintiff are identified in Appendix B.  THWF uses the services of a PBM to administer its
prescription drug program.  Based upon its contracts it pays for brand name drugs at AWP minus
a fixed percentage, and pays for generics based on MAC, which is itself based on AWP.  It also
pays for certain drugs outside the PBM context and does so based on AWP.

   29. Plaintiff Twin Cities Bakery Workers Health and Welfare Fund ("TCBW") is a
jointly administered Taft-Hartley Fund established and maintained pursuant to Section 302(c)(5)
of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to
ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries.
TCBW maintains its principal place of business in Eagan, Minnesota.  As such, TCBW is a legal
entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d).  TCBW provides
health benefits, including prescription drug benefits, to approximately 2000 active participants,
and their spouses and dependants.  During the Class Period, TCBW has been billed for and paid
charges for AWPIDs.  TCBW also made payments for drugs outside of the Medicare Part B
context based on published AWPs.  The drugs purchased by TCBW at issue in this litigation are
identified in Appendix B.  TCBW contracts with a third-party administrator for administration of
its pharmacy and medical benefits programs.  This administrator in turn contracts with
pharmacies and reimburses the pharmacies based upon published AWPs.  For example, a typical
agreement with a pharmacy providing services to TCBW members provides that reimbursement
is at "AWP minus 10%."  It further provides that the AWP is determined by Medispan.  As for
generics, reimbursement is based on MAC, which in turn is derived from AWP.

   30. Plaintiff Philadelphia Federation of Teachers Health and Welfare Fund
("PFTHW") is a voluntary employee benefits plan organized pursuant to § 501(c) of the Internal

Revenue Code for the purpose of providing health benefits to eligible participants and beneficiaries. PFTHW maintains its principal place of business in Philadelphia, Pennsylvania. PFTHW provides health benefits, including prescription drug benefits, to approximately 20,000 active participants, and their spouses and dependents. During the class period, PFTHW has been billed for and paid charges for covered drugs and otherwise made payments for drugs outside of the Medicare Part B context based on published AWPs. These drugs are identified in Appendix B. During the period relevant to this Complaint PFTHW used a PBM to provide prescription services for its members. At all times its payment formula for both brand name and generic drugs was expressly tied to AWP.

31.     Plaintiff Man-U Service Contract Trust Fund ("Man-U Service Fund") is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and is an employee benefit plan established and maintained pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, for the purpose of providing health benefits, including prescription drug coverage, to eligible participants and beneficiaries. The Man-U Service Fund maintains its principal place of business at 4600 Powder Mill Road, Suite 100, Beltsville, Maryland 20705. The Manu-U Service Fund provides comprehensive health coverage, including prescription drug coverage, for approximately 1,200 participants and beneficiaries located in Maryland, Delaware, Virginia, North Carolina, Pennsylvania and Washington, D.C. All of Man-U Service Fund's drugs at issue in the Complaint are identified in Appendix B. Plaintiff Man-U Service Fund utilizes the services of a PBM and all of its contracts provide that its drug purchases are directly based on AWP. For example, for drugs purchased through the pharmacy, its contract provides for payment at "AWP – 16%," and for mail-order drugs, "AWP – 23%."

32.     In addition, from 2002 through 2003, plaintiff William Barnewolt paid out-of-pocket amounts for Procrit (J&J), Arenesp (Amgen), Furosemide (Abbott), and Infed (Watson).

Plaintiff William Barnewolt is represented in this action by plaintiff Bonnie Barnewolt, as a successor in interest to William Barnewolt. The amounts Mr. Barnewolt paid were based on AWP. Mr. Barnewolt was a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

33.    Plaintiff Cheryl Barreca is a resident of Schaumburg, Illinois. In 1997, 1998, and 2001, Ms. Barreca paid out-of-pocket amounts for Procrit (J&J), Rubex (BMS), Cytoxan (BMS), Kytril (GSK), and Dexamethasone Sodium. Kytril (granisetron HCL) is a physician administered injectable drug marketed by GSK, which is used to relieve suffering from nausea and vomiting as a result of chemotherapy and radiation therapy. The amounts she paid were based on AWP. Ms. Barreca is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

34.    Plaintiff Cynthia Byrski is a resident of Chicago Heights, Illinois. In 2002, Ms. Byrski paid out-of-pocket amounts for Rubex (BMS), Kytril (GSK), Cytoxan (BMS), and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Byrski is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

35.    Plaintiff Mary Cauble is a resident of Granite City, Illinois. In 2004, Ms. Cauble paid out-of-pocket amounts for Rubex (BMS), Dextrose, Dexamethasone Sodium, and Heparin Sodium. The amounts she paid were based on AWP. Ms. Cauble is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

36.     Plaintiff Anna Choice is a resident of Chicago, Illinois.  From 2000 through 2005, Ms. Choice paid out-of-pocket amounts for Rubex (BMS), Zofran (GSK), Cytoxan (BMS), Heparin, Dexamethasone Sodium, and Taxotere (Aventis).  Taxotere (docetaxel) is a physician administered injectable drug marketed by Aventis, which is used to treat locally advanced cancers following the failure of chemotherapy.  The amounts she paid were based on AWP.  Ms. Choice is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting co-insurance amounts paid by plan participants, are based on AWP.

37.     Plaintiff Joyce Dison is a resident of Toulon, Illinois.  In 2000 and 2001, Ms. Dison paid out-of-pocket amounts for Rubex (BMS), Cytoxan (BMS), Dexamethasone Sodium, and Anzemet (Aventis).  The amounts she paid were based on AWP.  Ms. Dison is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

38.     Plaintiff Tracy Garcia is a resident of Oak Lawn, Illinois.  In 2004 and 2005, Ms. Garcia paid out-of-pocket amounts for Rubex (BMS), Cytoxan (BMS), Albuterol (Schering-Plough), Neulasta (Amgen), Heparin, Sodium Chloride, Anzemet (Aventis), and Dexamethasone Sodium.  The amounts she paid were based on AWP.  Ms. Garcia is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

39.     Plaintiff Donna Kendall is a resident of Decatur, Illinois.  From 2002 to 2004, Ms. Kendall paid out-of-pocket amounts for Cytoxan (BMS), Kytril (GSK), Rubex (BMS), Procrit (J&J), Lidocaine (B. Braun), Dexamethasone Sodium, Sodium Chloride, Lorazepam (Abbott), and Taxotere (Aventis).  The amounts she paid were based on AWP.  Ms. Kendall is a

beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

40.      Plaintiff Sandra Leef is a resident of Chicago, Illinois.  In 2001, Ms. Leef paid out-of-pocket amounts for Cytoxan (BMS), Dexamethasone Sodium, Anzemet (Aventis), Lorazepam (Abbott), and Fluorouracil (Fujisawa).  The amounts she paid were based on AWP. Ms. Leef is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

41.      Plaintiff Gerald Miller is a resident of Peoria, Illinois.  In 2004 and 2005, Mr. Miller paid out-of-pocket amounts for Paraplatin and Dexamethasone Sodium manufactured by BMS.  The amounts he paid were based on AWP.  Mr. Miller is a beneficiary of the UFCW Fund, which is administered by Blue Cross/Blue Shield of Illinois, which charges for physician-administered drugs based on AWP, and any co-payments are based upon AWP.

42.      Plaintiff Joseph Miller is a resident of Merrillville, Indiana.  In 1997 and 1998, Mr. Miller paid out-of-pocket amounts for Zofran (GSK), Heparin Sodium, Cisplatin (Baxter), Furosemide (Abbott), and Dexamethasone Sodium.  The amounts he paid were based on AWP. Mr. Miller is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

43.      Plaintiff Constance Nelson is a resident of McHenry, Illinois.  In 2000 and 2002, Ms. Nelson paid out-of-pocket amounts for Rubex (BMS), Zofran (GSK), Cytoxan (GSK), Heparin, Procrit and Dexamethasone Sodium.  The amounts she paid were based on AWP.  Ms. Nelson is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue

Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

44.     Plaintiff Andrea Palenica is a resident of Oak Lawn, Illinois.  In 2000 and 2005, Ms. Palenica paid out-of-pocket amounts for Cytoxan (BMS), Kytril (GSK), Sodium Chloride (B. Braun McGaw), Dexamethasone Sodium (Watson), Leucovorin Calcium (Sicor), Heparin Sodium (B. Braun McGaw), and Dextrose (Baxter).  Upon information and belief, the amounts Ms. Palenica paid were based on AWP.  Ms. Palenica is a beneficiary of the UCFW Fund, which is administered by Blue Cross/Blue Shield of Illinois, which has previously testified that its charges for physician-administered drugs, and the resulting co-insurance amounts paid by plan participants, are based on AWP.

45.     Plaintiff Regina Shoemaker is a resident of Crown Point, Indiana.  In 1996 and 1997, Ms. Shoemaker paid out-of-pocket amounts for Cytoxan (BMS) and Dextrose.  The amounts she paid were based on AWP.  Ms. Shoemaker is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

46.     Plaintiff Scott Tell is a resident of Freeport, Illinois.  In 1999, 2000 and 2004, Mr. Tell paid out-of-pocket amounts for his wife Rhonda's medications, including Kytril (GSK), Paraplatin (BMS), Heparin and Dexamethasone Sodium.  The amounts he paid were based on AWP.  Mr. Tell is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

47.     Plaintiff Kenneth Vanderwal is a resident of Dyer, Indiana.  In 2003 and 2004, Mr. Vanderwal paid out-of-pocket amounts for Remicade (J&J).  The amounts he paid were based on AWP.  Mr. Vanderwal is a beneficiary of the UFCW Fund.  The UFCW Fund is

administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

48.    Plaintiff Pauline Vernick is a resident of Buffalo Grove, Illinois. In 2002, Ms. Vernick paid out-of-pocket amounts for Cytoxan (BMS), Rubex (BMS), Sodium Chloride, Heparin, Anzemet (Aventis), and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Vernick is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

49.    Plaintiff Mardolyn Vescovi is a resident of Shorewood, Illinois. In 2002, Ms. Vescovi paid out-of-pocket amounts for Cytoxan (BMS), Rubex (BMS), Procrit (J&J), Heparin, Dexamethasone Sodium and Anzemet (Aventis). The amounts she paid were based on AWP. Ms. Vescovi is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

50.    Plaintiff Susan Wessels is a resident of Rock Falls, Illinois. In 2004 and 2005, Ms. Wessels paid out-of-pocket amounts for Zoladex (AstraZeneca). The amounts she paid were based on AWP. Ms. Wessels is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

51.    Plaintiff Kathleen Weaver-Zech is a resident of Chicago, Illinois. In 2003, Mrs. Weaver-Zech paid out-of-pocket amounts for Remicade. The amounts she paid were based on AWP. Mrs. Weaver-Zech was a beneficiary of the UFCW Fund, which is administered by Blue Cross Blue Shield of Illinois, whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

52.     Rebecca Hopkins resides in North East, Pennsylvania, and is a 49 year-old who
has been privately insured through Blue Cross/Blue Shield of Pennsylvania for most of the
applicable time period. However, for a portion of her medical care and treatment, Mrs. Hopkins
had no insurance coverage and had to pay 100% of the cost of her care, amounting to thousands
of dollars, which care included physician-administered drugs for which she paid out of pocket.
Mrs. Hopkins received medication for ovarian cancer. During the applicable time period, Mrs.
Hopkins was prescribed, and was charged for, the following physician-administered drugs, based
in whole or in part on AWP: azithromycin (Pfizer), bleomycin sulfate (the BMS Group and the
Pharmacia Group), carboplatin injectible (the BMS Group and Baxter), cefuroxime (Baxter and
B. Braun), cisplatin (Baxter, the Boehringer Group, the BMS Group, and the Sicor Group),
doxycycline (the Boehringer Group and Pfizer), etoposide phosphate (the Boehringer Group, the
BMS Group, the Pharmacia Group, and the Sicor Group), minocycline (the Wyeth Group),
paclitaxel (the Boehringer Group and the BMS Group), tamoxifen (AstraZeneca), and
vancomycin sulfate (Abbott, Baxter, and Watson). Mrs. Hopkins has made payments for the
foregoing drugs. Mrs. Hopkins is a proposed class representative for, among other defendants,
BMS.

53.     George Baker Thomson resides in Gulfport, Florida, and is a 78 year-old who is
privately insured through Wellcare. Mr. Thomson is living with prostate cancer. During the
applicable time period, Mr. Thomson was prescribed, and was charged for, the following
physician-administered drugs, based in whole or in part on AWP: goserelin acetate
(AstraZeneca) and triptorelin pamoate (Pfizer and the Pharmacia Group). Mr. Thomson has
made payments for the foregoing drugs. Although Mr. Thomson had insurance coverage, the
coverage required him to make percentage co-payments. Mr. Thomson is a proposed class
representative for, among other defendants, AstraZeneca.

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | )<br>)<br>)<br>) |
| | MDL No. 1456 |
| | CIVIL ACTION:  01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO ALL CLASS ACTIONS | )<br>)<br>)<br>) |
| | Judge Patti B. Saris |

## <u>REVISED FIFTH AMENDED MASTER CONSOLIDATED</u>
## <u>CLASS ACTION COMPLAINT</u>

## III.   PARTIES

### A.   Plaintiffs

13.   With the exception of the Public Interest Group Plaintiffs, each of the Plaintiffs identified below have, upon information and belief, were charged for the drugs noted based on a formula incorporating AWP.

#### 1.   Proposed Class 1 Representatives (Medicare Part B Beneficiaries)

14.   Plaintiff Leroy Townsend is a resident of Naples, Florida.  During the time period relevant to this Complaint, he was a Medicare recipient who took Zoladex and paid a 20% co-payment.

15.   Plaintiff Susan Aaronson resides in Matthews, North Carolina.  Mrs. Aaronson, the wife of a local minister, is a Medicare beneficiary with supplemental insurance coverage through her church.  Mrs. Aaronson lives with breast cancer and is currently being treated for ovarian cancer.  During the applicable time period, Ms. Aaronson was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP: albumin (manufactured by co-conspirators Aventis Group and Baxter), albuterol sulfate (Dey, the GSK Group, and the Schering-Plough Group), bacitracin (Pfizer), bupivacaine (Abbott), carboplatin injectable (Baxter, the BMS Group), cefazolin sodium (Baxter, and the GSK Group), cisplatin (Baxter, the BMS Group, and the Sicor Group), darbepoetin alfa (Amgen), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), dextrose injectable (Abbott, AstraZeneca, and Baxter), dextrose sodium chloride (Abbott), diltiazem hydrochloride injectable (Abbott, Baxter and the Sicor Group), diphenhydramine injectable (Baxter, Pfizer, and the Pharmacia Group), enoxaparin sodium (the Aventis Group), epinephrine (Abbott, Dey and the Sicor Group), epoetin alfa (the Johnson & Johnson Group and Amgen), famotidine (Abbott and Baxter), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), furosemide (Abbott, the Aventis Group, and Baxter), glycopyrrolate injectable (Abbott, Baxter, the Sicor Group, and the Wyeth Group), heparin sodium (Abbott,

- 5 -

Baxter, Pfizer, and the Pharmacia Group), hetastarch sodium chloride injectable (Baxter and the

BMS Group), hydromorphone injectable (Abbott, AstraZeneca and Baxter), ipratopium bromide

(Dey), lidocaine hydrochloride injectable (Abbott, AstraZeneca and Baxter), magnesium sulfate

injectable (Abbott and the Sicor Group), midazolam hydrochloride (Abbott, Baxter and

Hoffman-La Roche), morphine sulfate injectable (Abbott, AstraZeneca and the BMS Group),

neostigmine methylsulfate (Abbott, Baxter, and the Sicor Group), odansetron (the GSK Group),

paclitaxel, (the BMS Group), pegfilgrastim (Amgen), phenylephrine (Baxter and the Sicor

Group), plicamycin (Bayer), potassium chloride (Abbott and Baxter), promethazine injectable

(Abbott, Baxter, the Sicor Group, and Watson), ringers lactated with dextrose injectable (Abbott

and Baxter), propofol injectable (Abbott, AstraZeneca, Baxter, Pfizer, and the Sicor Group),

sodium chloride (Abbott, the Aventis Group, Baxter, the Schering-Plough Group, and the Sicor

Group), succinylcholine chloride injectable (Abbott), and vercuronium bromide injectable

(Abbott, Baxter and the Sicor Group).  To date, Mrs. Aaronson has paid several thousands of

dollars for these and other prescription drug medications.  Although Mrs. Aaronson had

supplemental insurance coverage, the coverage required her to make percentage co-payments.

Mrs. Aaronson is a proposed class representative for, among other defendants, Aventis, Baxter,

BMS, Dey, Fujisawa, GSK, Johnson & Johnson, Sicor and Watson.

    16.    Plaintiff Harold Carter resides in Austin, Texas, and is a 74 year-old, retired

wholesale florist.  He is a Medicare beneficiary who currently receives partial assistance from

Sterling to help defray a portion of his co-insurance obligations under Medicare Part B for his

medical care and treatment.  Mr. Carter takes prescription drugs for coronary artery disease and

other medical conditions, including prostate cancer.  During the applicable time period, Mr.

Carter was prescribed, and was charged for, the following physician-administered prescription

drugs, based in whole or in part on AWP:  adenosine (Abbott and Fujisawa), darbepoetin alfa

(Amgen), and epoetin alfa (Amgen and the Johnson & Johnson Group).  It has been difficult for

Mr. Carter to pay for the high cost of these and other medications, as his supplemental insurance required him to make percentage payments. On a least one occasion Mr. Carter's doctor did not prescribe a medication because Mr. Carter could not pay for it. Mr. Carter is a proposed class representative for Abbott, Amgen and Fujisawa.

17.     Plaintiff Roger Clark is representing the estate of his father, **David** E. Clark. Mr. Clark resided in Tonto Basin, Arizona, and was a Medicare beneficiary with secondary insurance through the Operating Engineers American Benefit Plan. Before he died, Mr. Clark was treated for prostate cancer and inoperable brain cancer. During the applicable time period, Mr. Clark was prescribed, and was charged for, among others, the following physician-administered prescription drugs, based in whole or in part on AWP: cefazolin (Baxter, the BMS Group, and GSK), cefotetan disodium (the BMS Group), ciprofloxacin hydrochloride (Abbott, Baxter, Bayer, and the Schering-Plough Group), cisplatin (Baxter, the BMS Group, and the Sicor Group), dexamethasone acetate (Watson), dexamethasone sodium phosphate (Baxter, Fujisawa, the Sicor Group, and Watson), dextrose injectable (Abbott, AstraZeneca and Baxter), enalaprilat injectable (Abbott, Baxter and the Sicor Group), epoetin alfa (Amgen and the Johnson & Johnson Group), etoposide (Bedford, Genesia), famotidine (Abbott and Baxter), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), granisetron (the GSK Group and Hoffman-LaRoche), hetastarch sodium chloride injectable (Baxter and the BMS Group), hydromorphone injectable (Abbott, AstraZeneca and Baxter), labetalol injectable (Abbott and Baxter), lidocaine hydrochloride injectable (Abbott, AstraZeneca and Baxter), methylsulfate (the Fujisawa Group), midazolam hydrochloride (Abbott, Baxter and Hoffman-La Roche), morphine sulfate injectable (Abbott, AstraZeneca and the BMS Group), potassium chloride (Abbott, Baxter and Pfizer), ranitidine (the GSK Group), and sodium chloride (Abbott, the Aventis Group, Baxter, the Schering-Plough Group, and the Sicor Group). Mr. Clark has made payments for the foregoing drugs totaling nearly $10,000.00 to date, as his supplemental insurance required him to

- 7 -

make percentage payments for his drugs. Mr. Clark is a proposed class representative for, among other defendants, Abbott, Aventis, Baxter, GSK, J&J and Sicor.

18.     Plaintiff Robert Howe resides in Mapleton, Oregon, and is a 79 year-old Medicare beneficiary, with supplemental insurance coverage through United Health Care of Utah. Before he died, Mr. Howe was treated for prostate cancer. During the applicable time period, Mr. Howe was prescribed, and was charged for, among others, the following physician-administered drugs, based in whole or in part on AWP: dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), docetaxel (the Aventis Group), gentamicin sulfate (Abbott, Baxter, the Fujisawa Group, and Watson), goserelin acetate (AstraZeneca), granisetron (the GSK Group and Hoffman-LaRoche), novatrone (Immunex) and pegfilgrastim (Amgen). Mr. Howe has made payments for the foregoing drugs, as his supplemental insurance required him to make percentage payments for his drugs. Mr. Howe is a proposed class representative for, among other defendants, Amgen, AstraZeneca, Aventis, GSK, Sircor and Watson.

19.     Plaintiff James Monk resides in Lake Village, Arkansas and is a 81 year old Medicare recipient with supplemental insurance. During the applicable time period, Mr. Monk was prescribed, and was charged for, among others, the following physician-administered drugs, based in whole or in part on AWP: casodex (AstraZeneca), eligard (Aventis). Mr. Monk has made payments for the foregoing drugs, as his supplemental insurance requires him to make percentage payments. Mr. Monk is a proposed class representative for, among other defendants, Aventis.

20.     Plaintiff James Shepley resides in Reno, Nevada, and is an 85-year-old Medicare beneficiary, with secondary insurance coverage through United American. Mr. Shepley is living with prostate cancer. During the applicable time period, Mr. Shepley was prescribed, and was charged for, the following physician-administered prescription drugs, based in whole or in part on AWP: epoetin alfa (Amgen and the Johnson & Johnson Group), goserelin acetate

- 8 -

(AstraZeneca).  Mr. Shepley has made payments for the foregoing drugs.  Although Mr. Shepley had supplemental insurance coverage, the coverage required him to make percentage co-payments.  Mr. Shepley is a proposed class representative for, among other defendants, AstraZeneca and J&J.

21.     Plaintiff Larry Young is representing the Estate of Patricia K. Young, his late wife.  Before she died, Mrs. Young resided in Enid, Oklahoma where her husband still resides.  She was a Medicare beneficiary as a result of a longstanding disability, with supplemental insurance through United Healthcare that covered only a portion of her co-insurance obligation for prescription drugs under Medicare Part B.  She received medication for rheumatoid arthritis, Hepatitis C, and lymphoma, the disease that ultimately caused her death.  During the applicable time period, Mrs. Young was prescribed, and was charged for, among others, the following physician-administered prescription drugs manufactured and sold by the defendant companies, based in whole or in part on AWP:  anzemet (Aventis), aristocort (Fujisawa), cytoxan (the BMS Group, Pfizer, and the Pharmacia Group), dexamethasone acetate (Abbott, Bayer and Watson), dexamethasone sodium phosphate (Baxter, the Fujisawa Group, the Sicor Group, and Watson), dolasetron mesylate (the Aventis Group), dopamine hydrochloride (Abbott, Baxter, and the BMS Group), epirubicin (Pfizer and the Pharmacia Group), epoetin alfa (Amgen), fentanyl citrate (Abbott, AstraZeneca, Baxter, and the Johnson & Johnson Group), filgrastim (Amgen), heparin sodium (Abbott, Baxter, Pfizer, and the Pharmacia Group), hydrocortisone sodium succinate (Pfizer and the Pharmacia Group), infliximab (the Johnson & Johnson Group), ketorolac tromethamine (Abbott and Baxter), levofloxacin (Abbott and the Johnson & Johnson Group), lidocaine hydrochloride injectable (Abbott, AstraZeneca and Baxter), lorazepam injectable (Abbott, Baxter, and Watson), methotrexate sodium injectable (Baxter, Immunex, and the Wyeth Group), midazolam (Abbott, Baxter and Hoffman-LaRoche), moxifloxacin injectable (Bayer and the Schering-Plough Group), oprelvekin (the Wyeth Group), promethazine (Abbott, Baxter, the

- 9 -

Sicor Group, and Watson), protonix injectable (the Wyeth Group), solucortef (Pharmacia), triamcinolone acetonide (the BMS Group), vancomycin sulfate (Abbott, Baxter, and Watson), vincristine sulfate (the Pharmacia Group and the Sicor Group),  and warfarin sodium injectable (the BMS Group).  At various times throughout the course of Mrs. Young's treatment, the Youngs' made payments via credit card to meet their payment obligations to their various medical providers.  To date, the Youngs made many payments for the foregoing drugs, as their supplemental insurance requires them to make percentage payments.  The Estate of Patricia Young is a proposed class representative for, among other defendants, Abbott, Amgen, Aventis, Baxter, BMS, Fujisawa, J&J, Pfizer, Sicor and Watson.

22.     Plaintiff Virginia Newell is representing the Estate of William Newell. .Mr. Newell was a resident of Mooresville, North Carolina.  Mr. Newell took prescription drug medications for diabetes and osteoparothis.  He was a Medicare recipient with supplemental insurance through the American Association of Retired Persons.  During the applicable time period, Mr. Newell was prescribed, and was charged for, among others, the following physician-administered drugs, based in whole or in part on AWP:  epoetin alfa (Amgen and the Johnson & Johnson Group), viadur (the Johnson & Johnson Group), taxotere (Aventis) and levaquin (the Johnson & Johnson Group).  The Newells made payments for the foregoing drugs, as their supplemental insurance did not cover the full cost of their drugs.  The Estate of William Newell is a proposed class representative for, among other defendants, Amgen, AstraZeneca, BMS, J&J and Aventis.

23.     Plaintiff Oral Ray Roots resides in Wichita, Kansas and is an 82 year old Medicare recipient with supplemental insurance through AETNA.  During the applicable time period, Mr. Roots was prescribed, and was charged for, among others, the following physician-administered drugs, based in whole or in part on AWP:  albuterol sulfate (Dey, the GSK Group, and the Schering-Plough Group) and depo-provera (Pfizer).  Mr. Roots has made payments for

- 10 -

the foregoing drugs because his supplemental coverage required him to make payments for them.
Mr. Roots is a proposed class representative for, among other defendants, Dey, Pfizer and
Schering-Plough.

24.    Plaintiff Hunter G. Walters resides in Bandalia, Michigan and is a Medicare
recipient with no supplemental insurance. Mr. Walters receives medication for emphysema and
prostate cancer. During the applicable time period, Mr. Walters was prescribed, and was charged
for, among others, the following physician-administered drugs, based in whole or in part on
AWP: albuterol sulfate (Dey, the GSK Group, and the Schering-Plough Group) and ipratropium
bromide (Dey). Mr. Walters has made payments for the foregoing drugs. Mr. Walters is a
proposed class representative for, among other defendants, Dey and Schering Plough.

24A.   Plaintiff Muriel Tonacchio is the representative of the Estate of Wilma Mort. Ms.
Mort was a resident of Weirton, West Virginia. Ms. Mort took prescription drug medications for
the treatment of cancer and was a Medicare recipient at the time of her cancer treatments.
During the applicable time period, Ms. Mort was prescribed and was charged for the physician-
administered drug Anzamet based in whole or in part on AWP. Ms. Mort made one or more
payments for this drug. Ms. Tonacchio, as the representative of the Estate of Wilma Mort, is a
proposed class representative, for among other Track Two Defendants, Aventis.

2.    **Proposed Class 2 Representatives (MediGap Payors)**

25.    Plaintiff United Food and Commercial Workers Unions and Employers Midwest
Health Benefits Fund ("UFCW") is an employee welfare benefit plan and employee benefit plan
maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan
established and maintained pursuant to ERISA, for the purpose of providing health benefits to
eligible participants and beneficiaries. UFCW maintains its principal place of business in Cook
County, Illinois. During the Class Period, UFCW has been billed for and paid charges for
AWPIDs, including: Abbott's sodium chloride, gentamicin sulfate, furosemide, heparin lock

- 11 -

flush and dextrose; Baxter's sodium chloride and dextrose; Bedford's leucovorin calcium;

Sicor's leucovorin calcium; Pharmacia's methylprednisolone sodium; Aventis' Furosemide;

Immunex' leucovorin calcium and Johnson & Johnson's Remicade. UFCW also made payments

for drugs outside of the Medicare Part B context based on published AWPs. All of UFCW drugs

that are at issue in the Complaint are identified in Appendix B. From December 2000 to the

present, UFCW has contracted with a PBM to administer its prescription drug benefit for its

beneficiaries. For brand name drugs its contract expressly provides that reimbursement is at

"AWP less 13%." For generic drugs its reimbursement is also based on AWP. Prior to

December 2000, UFCW contracted with pharmacies for the payment of purchases of

pharmaceutical drugs by its members and beneficiaries at an estimated acquisition cost based on

the AWPs (less a specified percentage) published by the manufacturers in Medispan.

26.     UFCW's beneficiaries began to and have continued to be reimbursed for their

purchases of physician-administered drugs pursuant to UFCW's comprehensive medical expense

benefit, its major medical plan. *See* United Food and Commercial Workers Unions and

Employers Midwest Health Benefits Plan, P001294-1417. UFCW made payments for physician-

administered drugs based on published AWPs. Since November 1, 1994, UFCW's

comprehensive medical expense benefit has been administered by Blue Cross Blue Shield of

Illinois ("BCBS"). Until January 1, 2005, when BCBS' payments for physician-administered

drugs began to be established considering ASP, BCBS' payments were based on a negotiated

allowance which was established considering a percentage above AWP. For physician-

administered drugs not covered by Medicare Part B, UFCW paid 80% or 85% of BCBS'

payments, and the UFCW member paid the remainder. Further, UFCW has made co-payments

under Medicare Part B throughout the Class Period. A member's 20 percent co-payment under

Medicare Part B is, and has been, an eligible expense under UFCW's plans during the Class

- 12 -

Period. If Medicare pays a portion of a Fund member's claim under Medicare Part B, UFCW reimburses the remainder of the claim.

27.     For transactions that occurred after October 31, 2004, Plaintiff UFCW is able to determine for which drugs it reimbursed and by how much it reimbursed by performing a computer search of its claims files. Such files also show which of its covered members had an amount due and owing after UFCW made its reimbursement of the claim.

28.     Plaintiff Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust ("PMBT") is a voluntary employee benefits association maintained pursuant to the federal Employee Retirement Security Act, 29 U.S.C. § 1132, *et seq.*, and to the settlement of a federal court action (Case No. 3:94-0573) brought in the United States District Court for the Middle District of Tennessee against Pirelli Armstrong Tire Corp. ("Pirelli") in the early 1990's by many Pirelli retirees, for the purpose of providing health and medical benefits to eligible participants and beneficiaries. PMBT maintains its principal place of business in Goodlettsville, Sumner County, Tennessee.

29.     During the Class Period, PMBT also reimbursed its members for portions of pharmaceutical bills (including physician-administered drugs) that were covered in the first instance by Medicare Part B. The plan expressly states that it pays 20 percent of all covered Medicare Part B claims. The fund notified that Medicare Part B has covered a given drug or procedure and has paid 80 percent of the cost. The fund then pays the identified "coinsurance" amount, or 20 percent of the total cost Medicare has paid. Numerous drugs fall into this category. Based on a recent review of a small number of our files, PMBT has determined that, with respect to drugs manufactured by the Track 1 Defendants (Astra-Zeneca, Bristol-Myers-Squibb, Glaxo-Smith-Kline and Johnson & Johnson), PMBT made Medicare co-payments with respect to at least the following drugs: Zovirax (Glaxo Smith Kline), Zoladex (Astra-Zeneca), Cytoxan (Bristol-Myers-Squibb), and Procrit (Johnson & Johnson). Because the fund is

- 13 -

composed of retirees, about two-thirds of whom are eligible for Medicare, and because the search was only of a relatively small number of files, plaintiffs are confident that further investigation will show that other drugs were paid for in the Medicare Part B context with respect to the various companies known in this case as "Track 1" and "Track 2" Defendants. Our investigation is continuing.

30.      Plaintiff Sheet Metal Workers National Health Fund ("SMW Health Fund") is a Taft-Hartley trust administered pursuant to the requirements of 29 U.S.C. § 186 by an equal number of trustees appointed by labor representatives and union representatives. Its Fund Office is in Goodlettsville, Tennessee. The SMW Health Fund is also a multiemployer welfare fund subject to ERISA. The SMW Heath Fund provides a Supplemental Medicare Wraparound Plus ("SMW+") program that covers the Medicare Part B co-payments of its beneficiaries. There are over 15,000 retirees and covered beneficiaries who receive benefits under the SMW+ program. During the Class Period, the SMW Health Fund has paid for portions of pharmaceutical bills that were covered in the first instance by Medicare Part B. The drugs for which payments were made include Cytoxan (BMS), Etopophos (BMS), Kytril (GSK), Levaquin (J&J), Nevelbine (GSK), Paraplatin (BMS), Procrit (J&J), Remicade (J&J), Rubex (BMS), Taxol (BMS), Vepesid (BMS) and Zoladex (AstraZeneca), and drugs manufactured by Abbott, Amgen, Aventis, Baxter, Bayer, Dey, Fujisawa, Genesia, Immunex, Pfizer, Pharmacia, Sicor and Watson.

31.      Plaintiff Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA") is a not-for-profit hospital and medical services corporation organized under the laws of Massachusetts, and has its principal place of business in Boston, Massachusetts and is a proposed class representative for Class 2 as against Track 1 defendants. At all times relevant to this action, BCBSMA has been, and is, licensed to do, and is doing, business in the state of Massachusetts. During the Class Period BCBSMA has made co-payments under Medicare Part B for AWPIDs for Track 1 Defendants, including:  BMS's Cytoxan, Etopophos, Rubex,

- 14 -

Belnoxane, Paraplantin, Vepesid, and Taxol; GSK's Kytril, Zofran, Zantac, Alkeran, Nalvelbine;

Shearing's Procrit and Intron-A; AstraZeneca's Zoladex and Pulmicort; and Johnson &

Johnson's Remicade, as part of its medigap insurance product known as Medex.

> **3.   Proposed Class 3 Representatives (TPPs and Consumers for AWP-Based Charges on Physician Administered Drugs Outside of Medicare)**

32.   UFCW is also a proposed representative for this Class.

33.   Plaintiff Board of Trustees of Carpenters and Millwrights of Houston and Vicinity

Welfare Trust Fund ("CMHV") is an employee welfare benefit plan and employee benefit plan

established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations

Act ("LMRA"), 29 U.S.C. § 186(c)(5), and as defined by §§ 1002(1) and (3) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for the purpose of

providing health benefits to eligible participants and beneficiaries. As such, CMHV is a legal

entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d). CMHV maintains

its principal place of business at 9555 West Sam Houston Parkway South, Suite 400, Houston,

Texas. During the Class Period, Carpenters Welfare Trust Fund has been billed for and paid

charges for Covered Drugs and otherwise made payments for drugs outside of the Medicare Part

B context based on published AWPs. These drugs are identified in Appendix B. During the

period relevant to the complaint, CMHV used an administrator to provide medical and drug

benefits to its members. CMHV's administrator contracted directly with a PBM to provide

pharmacy services to CMHV participants. By contract, all of CMHV's drug purchases were

directly and expressly tied to AWP. CMHV paid for brand named drugs in both the retail and

mail order context based on AWP minus a fixed percentage. For generic drugs in the retail

context CMHV paid based upon MAC, which itself was tied to AWP and in the mail order

context CMHV's generic purchases were made at either MAC or AWP minus a fixed

percentage. By contract, the AWP used to determine prices was based on that published by

"First Databank Blue Book."

- 15 -

34.     Plaintiff Teamsters Health & Welfare Fund of Philadelphia and Vicinity
("THWF") is an employee welfare benefit plan and employee benefit plan established and
maintained pursuant to Section 302(c)(5) of the LMRA, and is an employee welfare benefit plan
established and maintained pursuant to §§ 1002(1) and (3) of ERISA, for the purpose of
providing health benefits to eligible participants and beneficiaries. As such, THWF is a legal
entity entitled to bring suit in its own name pursuant to 29 U.S.C. 1132(d). THWF maintains its
principal place of business at Fourth & Cherry Streets, Philadelphia, Pennsylvania 19106. It
provides comprehensive health coverage for over 28,000 participants and beneficiaries in parts
of Pennsylvania, New Jersey and Delaware. During the Class Period, THWF has been billed for
and paid charges for AWPIDs. THWF also made payments for drugs outside of the Medicare
Part B context based on published AWPs. All drugs covered by this Complaint purchased by
this plaintiff are identified in Appendix B. THWF uses the services of a PBM to administer its
prescription drug program. Based upon its contracts it pays for brand name drugs at AWP minus
a fixed percentage, and pays for generics based on MAC, which is itself based on AWP. It also
pays for certain drugs outside the PBM context and does so based on AWP.

35.     Plaintiff Twin Cities Bakery Workers Health and Welfare Fund ("TCBW") is a
jointly administered Taft-Hartley Fund established and maintained pursuant to Section 302(c)(5)
of the LMRA, and is an employee welfare benefit plan established and maintained pursuant to
ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries.
TCBW maintains its principal place of business in Eagan, Minnesota. As such, TCBW is a legal
entity entitled to bring suit in its own name pursuant to 29 U.S.C. § 1132(d). TCBW provides
health benefits, including prescription drug benefits, to approximately 2000 active participants,
and their spouses and dependants. During the Class Period, TCBW has been billed for and paid
charges for AWPIDs. TCBW also made payments for drugs outside of the Medicare Part B
context based on published AWPs. The drugs purchased by TCBW at issue in this litigation are

- 16 -

identified in Appendix B.  TCBW contracts with a third-party administrator for administration of

its pharmacy and medical benefits programs.  This administrator in turn contracts with

pharmacies and reimburses the pharmacies based upon published AWPs.  For example, a typical

agreement with a pharmacy providing services to TCBW members provides that reimbursement

is at "AWP minus 10%."  It further provides that the AWP is determined by Medispan.  As for

generics, reimbursement is based on MAC, which in turn is derived from AWP.

36.     Plaintiff Philadelphia Federation of Teachers Health and Welfare Fund

("PFTHW") is a voluntary employee benefits plan organized pursuant to § 501(c) of the Internal

Revenue Code for the purpose of providing health benefits to eligible participants and

beneficiaries.  PFTHW maintains its principal place of business in Philadelphia, Pennsylvania.

PFTHW provides health benefits, including prescription drug benefits, to approximately 20,000

active participants, and their spouses and dependents.  During the class period, PFTHW has been

billed for and paid charges for covered drugs and otherwise made payments for drugs outside of

the Medicare Part B context based on published AWPs.  These drugs are identified in

Appendix B.  During the period relevant to this Complaint PFTHW used a PBM to provide

prescription services for its members.  At all times its payment formula for both brand name and

generic drugs was expressly tied to AWP.

37.     Plaintiff Man-U Service Contract Trust Fund ("Man-U Service Fund") is a trust

fund established and maintained pursuant to Section 302(c)(5) of the Labor Management

Relations Act, 29 U.S.C. § 186(c)(5), and is an employee benefit plan established and maintained

pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, for the

purpose of providing health benefits, including prescription drug coverage, to eligible

participants and beneficiaries.  The Man-U Service Fund maintains its principal place of business

at 4600 Powder Mill Road, Suite 100, Beltsville, Maryland 20705.  The Manu-U Service Fund

provides comprehensive health coverage, including prescription drug coverage, for

- 17 -

approximately 1,200 participants and beneficiaries located in Maryland, Delaware, Virginia, North Carolina, Pennsylvania and Washington, D.C. All of Man-U Service Fund's drugs at issue in the Complaint are identified in Appendix B. Plaintiff Man-U Service Fund utilizes the services of a PBM and all of its contracts provide that its drug purchases are directly based on AWP. For example, for drugs purchased through the pharmacy, its contract provides for payment at "AWP – 16%," and for mail-order drugs, "AWP – 23%."

38.     BCBSMA is also a proposed representative for Class 3 as against Track 1 defendants. During the Class Period, BCBSMA made payments for drugs outside of the Medicare Part B context based on published AWPs from Track 1 Defendants. All of BCBSMA drugs that are at issue in the Complaint are identified in Appendix A. BCBSMA contracts to reimburse providers based on fee schedules generated by BCBSMA which fee schedules relating to physician administered drugs are based on the AWP for those drugs.

39.     Pipefitter's Local Union 357 ("Pipefitters") is an employee welfare benefit plan and employee benefit plan maintained pursuant to Section 302(c)(5) of the LMRA and is an employee welfare benefit plan established and maintained pursuant to ERISA, for the purpose of providing health benefits to eligible participants and beneficiaries. Pipefitters maintains its principal place of business in Allston, Massachusetts. During the Class Period, Pipefitters has been billed for and paid charges for AWPIDs outside of the Medicare Part B context based on published AWPs. All of Pipefitters drugs that are at issue in the Complaint are identified in Appendix A. During the Class Period Pipefitters contracted with a third-party administrator, BCBSMA, to administer its prescription drug benefit for its beneficiaries. Pipefitter's Reimbursement for AWPIDs is based on fee schedules generated by BCBSMA which fee schedules relating to physician administered drugs are based on the AWP for those drugs.

39a     Plaintiff Health Care For All ("HCFA") is a consumer health advocacy organization that has led the fight in Massachusetts to expand access to affordable, quality health

- 18 -

care since 1985. HCFA maintains its principal place of business in Boston, Massachusetts. During the Class Period, HCFA's members have been billed for and paid charges for AWPIDs outside of the Medicare Part B context based on published AWPs.

40.      In addition, from 2002 through 2003, plaintiff William Barnewolt paid out-of-pocket amounts for Procrit (J&J), Arenesp (Amgen), Furosemide (Abbott), and Infed (Watson). Plaintiff William Barnewolt is represented in this action by plaintiff Bonnie Barnewolt, as a successor in interest to William Barnewolt. The amounts Mr. Barnewolt paid were based on AWP. Mr. Barnewolt was a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

41.      Plaintiff Cheryl Barreca is a resident of Schaumburg, Illinois. In 1997, 1998, and 2001, Ms. Barreca paid out-of-pocket amounts for Procrit (J&J), Rubex (BMS), Cytoxan (BMS), Kytril (GSK), and Dexamethasone Sodium. Kytril (granisetron HCL) is a physician administered injectable drug marketed by GSK, which is used to relieve suffering from nausea and vomiting as a result of chemotherapy and radiation therapy. The amounts she paid were based on AWP. Ms. Barreca is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

42.      Plaintiff Cynthia Byrski is a resident of Chicago Heights, Illinois. In 2002, Ms. Byrski paid out-of-pocket amounts for Rubex (BMS), Kytril (GSK), Cytoxan (BMS), and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Byrski is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

- 19 -

43.     Plaintiff Mary Cauble is a resident of Granite City, Illinois. In 2004, Ms. Cauble paid out-of-pocket amounts for Rubex (BMS), Dextrose, Dexamethasone Sodium, and Heparin Sodium. The amounts she paid were based on AWP. Ms. Cauble is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

44.     Plaintiff Anna Choice is a resident of Chicago, Illinois. From 2000 through 2005, Ms. Choice paid out-of-pocket amounts for Rubex (BMS), Zofran (GSK), Cytoxan (BMS), Heparin, Dexamethasone Sodium, and Taxotere (Aventis). Taxotere (docetaxel) is a physician administered injectable drug marketed by Aventis, which is used to treat locally advanced cancers following the failure of chemotherapy. The amounts she paid were based on AWP. Ms. Choice is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting co-insurance amounts paid by plan participants, are based on AWP.

45.     Plaintiff Joyce Dison is a resident of Toulon, Illinois. In 2000 and 2001, Ms. Dison paid out-of-pocket amounts for Rubex (BMS), Cytoxan (BMS), Dexamethasone Sodium, and Anzemet (Aventis). The amounts she paid were based on AWP. Ms. Dison is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

46.     Plaintiff Tracy Garcia is a resident of Oak Lawn, Illinois. In 2004 and 2005, Ms. Garcia paid out-of-pocket amounts for Rubex (BMS), Cytoxan (BMS), Albuterol (Schering-Plough), Neulasta (Amgen), Heparin, Sodium Chloride, Anzemet (Aventis), and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Garcia is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for

- 20 -

physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

47.     Plaintiff Donna Kendall is a resident of Decatur, Illinois.  From 2002 to 2004, Ms. Kendall paid out-of-pocket amounts for Cytoxan (BMS), Kytril (GSK), Rubex (BMS), Procrit (J&J), Dexamethasone Sodium, Sodium Chloride, Lorazepam (Abbott), and Taxotere (Aventis). The amounts she paid were based on AWP.  Ms. Kendall is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

48.     Plaintiff Sandra Leef is a resident of Chicago, Illinois.  In 2001, Ms. Leef paid out-of-pocket amounts for Cytoxan (BMS), Dexamethasone Sodium, Anzemet (Aventis), Lorazepam (Abbott), and Fluorouracil (Fujisawa).  The amounts she paid were based on AWP. Ms. Leef is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

49.     Plaintiff Gerald Miller is a resident of Peoria, Illinois.  In 2004 and 2005, Mr. Miller paid out-of-pocket amounts for Paraplatin and Dexamethasone Sodium manufactured by BMS.  The amounts he paid were based on AWP.  Mr. Miller is a beneficiary of the UFCW Fund, which is administered by Blue Cross/Blue Shield of Illinois, which charges for physician-administered drugs based on AWP, and any co-payments are based upon AWP.

50.     Plaintiff Joseph Miller is a resident of Merrillville, Indiana.  In 1997 and 1998, Mr. Miller paid out-of-pocket amounts for Zofran (GSK), Heparin Sodium, Cisplatin (Baxter), Furosemide (Abbott), and Dexamethasone Sodium.  The amounts he paid were based on AWP. Mr. Miller is a beneficiary of the UFCW Fund.  The UFCW Fund is administered by Blue

- 21 -

Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

51.    Plaintiff Constance Nelson is a resident of McHenry, Illinois. In 2000 and 2002, Ms. Nelson paid out-of-pocket amounts for Rubex (BMS), Zofran (GSK), Cytoxan (GSK), Heparin, Procrit and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Nelson is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

52.    Plaintiff Andrea Palenica is a resident of Oak Lawn, Illinois. In 2000 and 2005, Ms. Palenica paid out-of-pocket amounts for Cytoxan (BMS), Kytril (GSK), Dexamethasone Sodium (Watson), Leucovorin Calcium (Sicor), and Dextrose (Baxter). Upon information and belief, the amounts Ms. Palenica paid were based on AWP. Ms. Palenica is a beneficiary of the UFCW Fund, which is administered by Blue Cross/Blue Shield of Illinois, which has previously testified that its charges for physician-administered drugs, and the resulting co-insurance amounts paid by plan participants, are based on AWP.

53.    Plaintiff Regina Shoemaker is a resident of Crown Point, Indiana. In 1996 and 1997, Ms. Shoemaker paid out-of-pocket amounts for Cytoxan (BMS) and Dextrose. The amounts she paid were based on AWP. Ms. Shoemaker is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

54.    Plaintiff Scott Tell is a resident of Freeport, Illinois. In 1999, 2000 and 2004, Mr. Tell paid out-of-pocket amounts for his wife Rhonda's medications, including Kytril (GSK), Paraplatin (BMS), Heparin and Dexamethasone Sodium. The amounts he paid were based on AWP. Mr. Tell is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue

Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

55.     Plaintiff Kenneth Vanderwal is a resident of Dyer, Indiana. In 2003 and 2004, Mr. Vanderwal paid out-of-pocket amounts for Remicade (J&J). The amounts he paid were based on AWP. Mr. Vanderwal is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

56.     Plaintiff Pauline Vernick is a resident of Buffalo Grove, Illinois. In 2002, Ms. Vernick paid out-of-pocket amounts for Cytoxan (BMS), Rubex (BMS), Sodium Chloride, Heparin, Anzemet (Aventis), and Dexamethasone Sodium. The amounts she paid were based on AWP. Ms. Vernick is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

57.     Plaintiff Mardolyn Vescovi is a resident of Shorewood, Illinois. In 2002, Ms. Vescovi paid out-of-pocket amounts for Cytoxan (BMS), Rubex (BMS), Procrit (J&J), Heparin, Dexamethasone Sodium and Anzemet (Aventis). The amounts she paid were based on AWP. Ms. Vescovi is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

58.     Plaintiff Susan Wessels is a resident of Rock Falls, Illinois. In 2004 and 2005, Ms. Wessels paid out-of-pocket amounts for Zoladex (AstraZeneca). The amounts she paid were based on AWP. Ms. Wessels is a beneficiary of the UFCW Fund. The UFCW Fund is administered by Blue Cross/Blue Shield of Illinois whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

001534-16 281345 V1

59.     Plaintiff Kathleen Weaver-Zech is a resident of Chicago, Illinois.  In 2003, Mrs. Weaver-Zech paid out-of-pocket amounts for Remicade.  The amounts she paid were based on AWP.  Mrs. Weaver-Zech was a beneficiary of the UFCW Fund, which is administered by Blue Cross Blue Shield of Illinois, whose charges for physician-administered drugs, and the resulting amounts paid by plan participants, are based on AWP.

60.     Rebecca Hopkins resides in North East, Pennsylvania, and is a 49 year-old who has been privately insured through Blue Cross/Blue Shield of Pennsylvania for most of the applicable time period.  However, for a portion of her medical care and treatment, Mrs. Hopkins had no insurance coverage and had to pay 100% of the cost of her care, amounting to thousands of dollars, which care included physician-administered drugs for which she paid out of pocket. Mrs. Hopkins received medication for ovarian cancer.  During the applicable time period, Mrs. Hopkins was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP: azithromycin (Pfizer), bleomycin sulfate (the BMS Group and the Pharmacia Group), carboplatin injectable (the BMS Group and Baxter), cefuroxime (Baxter), cisplatin (Baxter, the BMS Group, and the Sicor Group), doxycycline (Pfizer), etoposide phosphate (the BMS Group, the Pharmacia Group, and the Sicor Group), minocycline (the Wyeth Group), paclitaxel (the BMS Group), tamoxifen (AstraZeneca), and vancomycin sulfate (Abbott, Baxter, and Watson).  Mrs. Hopkins has made payments for the foregoing drugs.  Mrs. Hopkins is a proposed class representative for, among other defendants, BMS.

61.     George Baker Thomson resides in Gulfport, Florida, and is a 78 year-old who is privately insured through Wellcare.  Mr. Thomson is living with prostate cancer.  During the applicable time period, Mr. Thomson was prescribed, and was charged for, the following physician-administered drugs, based in whole or in part on AWP: goserelin acetate (AstraZeneca) and triptorelin pamoate (Pfizer and the Pharmacia Group).  Mr. Thomson has made payments for the foregoing drugs.  Although Mr. Thomson had insurance coverage, the

- 24 -

coverage required him to make percentage co-payments. Mr. Thomson is a **proposed** class representative for, among other defendants, AstraZeneca.

62.     Each of the plaintiffs is either producing complete documentation or is in the process of obtaining medical records.

### 4.      Public Interest Group Plaintiffs

63.     Plaintiff Vermont Public Interest Research Group ("VPIRG") has been Vermont's leading watchdog and advocacy group since 1972. It is located at 141 Main Street, Ste. 6, Montpelier, Vermont. During the Class Period, VPIRG's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers and made inflated payments or co-payments based in whole or in part on published AWPs, and were injured by the illegal conduct alleged herein. For example, Ms. Elizebeth Ryan Cole of Thetford, Vermont, an active VPIRG member, purchased the Johnson & Johnson Group's drug Retin-A based in whole or in part upon the published AWP and Ms. Dawn Taylor of Hinesburg, Vermont, an active VPIRG member, purchased BMS's drug Plavix in whole or in part based upon Defendants' published AWP. As an unincorporated association, VPIRG has standing to pursue this action under Fed. R. Civ. P. 17(b)(1). VPIRG appears in this action for purposes of seeking declaratory, injunctive and other non-monetary relief pursuant to 28 U.S.C. §§ 2201, 2202, § 16 of the Clayton Act and any other applicable statute.

64.     Plaintiff Wisconsin Citizen Action ("WCA") is the state's premiere public interest organization with 53,000 individual members and 250 affiliate organizations. It is located at 1202 Williamson St., Suite B, Madison, Wisconsin. During the Class Period, Plaintiff's members purchased prescription pharmaceuticals manufactured and/or distributed by the Defendant Drug Manufacturers and made inflated payments or co-payments based in whole or in part upon the published AWP, and were injured by the illegal conduct alleged herein. For example, Ms. Ida Johnson of Oconomowoc, Wisconsin, and active WCA member, purchased

- 25 -

EXHIBIT F

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| BMS | |

## [PROPOSED] FINAL ORDER AND JUDGMENT GRANTING FINAL APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT WITH THE BMS GROUP, APPROVING PROPOSED ALLOCATION OF SETTLEMENT FUNDS, AND APPROVING CLASS COUNSELS' APPLICATION FOR ATTORNEYS FEES, REIMBURSEMENT OF LITIGATION EXPENSES AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES

This Court having considered:  (a) the Settlement Agreement and Release of the BMS Group dated August 4, 2009 (the "Agreement") between the Plaintiffs and Defendants Bristol-Myers Squibb Company ("BMS"), Oncology Therapeutics Network Corporation and Apothecon, Inc. (herein referred to collectively as the "BMS Group"); (b) the Distribution Plan, Claims Process and Notice Plan for the Settlement as contained in the Court's August 31, 2009 Order preliminarily approving the Settlement (electronic order endorsing Docket No. 6407) (the "Preliminary Approval Order"); (c) Class Counsel's Proposal to Rebalance the BMS Settlement Allocation (Docket No. 7530, the "Rebalancing Proposal"), which the Court preliminarily approved in its May 5, 2011 electronic order (Docket No. 7541); and (d) Class Counsels' application for attorneys' fees, reimbursement of litigation expenses and incentive awards for present and former Class Representatives; and having held hearings on March 28, 2011 and July 7, 2011, and having considered all of the submissions and arguments with respect thereto, and

462206v1

otherwise being fully informed, and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1.    This Final Order and Judgment incorporates herein and makes a part hereof, the Agreement, the Preliminary Approval Order, the Order preliminarily approving the Rebalancing Proposal and all exhibits to such documents and Orders.  Unless otherwise provided herein, the terms defined in the Agreement, Preliminary Approval Order and Rebalancing Proposal shall have the same meanings for purposes of this Final Order and Judgment.

2.    The Court has personal jurisdiction over all present and former Class Representatives, Class Members and Defendant BMS for purposes of this Settlement only, and has subject matter jurisdiction to approve the Agreement.

3.    Based on the record before the Court, including all submissions in support of the Settlement set forth in the Agreement, objections and responses thereto, as well as the Agreement itself and its Exhibits, the Court hereby incorporates the findings of its August 16, 2005 and January 30, 2006 *Orders Re: Motion for Class Certification* and further certifies the following nationwide Classes (the "Classes") for settlement purposes only:

> Medicare Part B Co-Payment Class ("Class 1"):  All natural persons nationwide who made, or were liable for all or any portion of, a Medicare Part B co-payment based on AWP for any BMS Subject Drug during the period from January 1, 1991 through December 31, 2004. Excluded from Class 1 are those persons who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, as well as officers, directors, management, and employees of the BMS Group or of any of their subsidiaries and affiliates. Previously excluded from the litigation class certified on January 30, 2006 were residents of the states of Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia; these residents are now included in Class 1 for purposes of the Settlement.

462206v1                                         2

Third-Party Payor MediGap Supplemental Insurance Class ("Class 2"):  All TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, reimbursements for any portion of a Medicare Part B co-payment based on AWP for a BMS Subject Drug.  Excluded from Class 2 are the officers, directors, management, and employees of the BMS Group or of any of their subsidiaries and affiliates.

Consumer and Third-Party Payor Class for Payments Made Outside the Medicare Context ("Class 3"):  All natural persons nationwide who made, or were liable for all or any portion of, a non-Medicare Part B payment based on AWP for any BMS Subject Drug during the period from January 1, 1991 through December 31, 2004, and all TPPs nationwide that, from January 1, 1991 through December 31, 2004, made, or incurred an obligation to make, non-Medicare Part B reimbursements based on AWP for any BMS Subject Drug.  Excluded from Class 3 are those consumers who made flat co-payments, who were reimbursed fully for their payments, or who have the right to be fully reimbursed, as well as the officers, directors, management, and employees of the BMS Group or of any of their subsidiaries and affiliates.

Also excluded from all Classes are all federal, state, and local government entities in the United States, except any such governmental agencies or programs that made or incurred an obligation to make a reimbursement for a Class Drug as part of a health benefit plan for their employees, but only with respect to such payment.

The BMS Subject Drugs are Blenoxane, Cytoxan, Etopophos, Paraplatin, Rubex, Taxol and Vepesid.

The Court finds that the prerequisites of FED. R. CIV. P. 23(a) and (b)(3) have been

satisfied for certification of the Classes for settlement purposes:  members of the Classes,

numbering in at least the tens-of-thousands, are so numerous that joinder of all members is

impracticable; there are questions of law and fact common to each Class, such as whether Class

Members were overcharged for BMS Subject Drugs; the claims and defenses of the Class

Representatives are typical of the claims and defenses of the members of the Classes; the Class

Representatives have fairly and adequately protected the interests of the Classes with regard to

the consolidated claims of the Classes; common questions of law and fact predominate over

questions affecting only individual Class Members, rendering the Classes sufficiently cohesive to

warrant a nationwide class settlement; and the certification of the Classes is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of the MDL Class Actions.  The Court also finds that Lead Class Counsel are adequate according to the prerequisites set forth in FED. R. CIV. P. 23(g).

In making all of the foregoing findings, the Court has exercised its discretion in certifying the settlement Classes.

4.    The record shows that Notice has been given to the Classes in the manner approved by the Court in its Preliminary Approval Order and in its electronic order of May 24, 2011 (approving the supplemental notice of the Rebalancing Proposal submitted in Docket No. 7546).  The Court finds that such Notice:  (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise members of the Classes of the terms of the Settlement, and Class Members' right to object to and appear at the settlement fairness hearings held on March 28, 2011 and July 7, 2011 (the "Fairness Hearings") or to exclude themselves from the Classes; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) meets the requirements of due process and FED. R. CIV. P. 23.

5.    No individuals or entities other than those listed on Exhibit A hereto, have excluded themselves from the Classes.  This Order shall have no force or effect on the persons or entities listed on Exhibit A hereto.[1]

6.    The Court finds that extensive arms'-length negotiations have taken place in good faith between Lead Class Counsel and Defendant BMS's Counsel resulting in the Agreement.

---

[1] Certain individuals and entities named on Exhibit A excluded themselves not simply from the Classes and/or the Settlement with BMS but from the entire MDL Class Actions, which involved other defendants as well as BMS. Accordingly, the fact that a name of an individual or entity appears on Exhibit A does not necessarily mean that that individual or entity paid for one of the BMS Subject Drugs.

462206v1                                    4

7.     Pursuant to FED. R. CIV. P. 23(e), the Court hereby finally approves in all respects the Settlement set forth in the Agreement ("the Settlement") and finds that the Settlement Fund, the Agreement, and the Distribution Plan and Claims Process as set forth in the Preliminary Approval Order and the Rebalancing Proposal, are, in all respects, fair, reasonable and adequate, and in the best interest of the Classes.

8.     The Court further approves the establishment of the Settlement Fund as set forth in the Agreement and the Escrow Agreement, as amended, submitted by the Parties.  The parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Agreement.  In addition, the parties are authorized to agree to and adopt such amendments and modifications to the Agreement as (i) shall be consistent in all material respects with this Final Order and Judgment, and (ii) do not limit the rights of the Classes.

9.     The claims against the BMS Group on behalf of the Classes in the MDL Class Actions are hereby dismissed with prejudice and without costs to any party, except as otherwise provided herein.

10.     Upon the Effective Date of the Agreement, the Class Releasors (as defined in Paragraph 2(g) of the Agreement) shall release and forever discharge the BMS Group Releasees (as defined in Paragraph 2(n) of the Agreement) from the Released Class Claims (as defined in Paragraph 2(v) of the Agreement).   Within 10 days after the Effective Date, the parties shall take all steps necessary under the Federal Rules of Appellate Procedure and the rules of the United States Court of Appeals for the First Circuit to dismiss with prejudice and without costs to any party BMS's pending appeal relating to the Massachusetts Classes.

11.     The Court finds that the Escrow Account is a "Qualified Settlement Fund" as defined in section 1.468B-1(a) of the Treasury Regulations in that it satisfies each of the

following requirements:

    (a)    The Escrow Account is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

    (b)    The Escrow Account is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liability arising out of an alleged violation of law; and

    (c)    The assets of the Escrow Account are segregated from other assets of BMS, the transferor of payments to the Settlement Fund, and from the assets of persons related to BMS.

12.    Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

    (a)    The Escrow Account met the requirements of paragraph 11 of this Order prior to the date of this Order approving the establishment of the Settlement Fund subject to the continued jurisdiction of this Court; and

    (b)    BMS and the "administrator" under section 1.468B-2(k)(3) of the Treasury Regulations may jointly elect to treat the Escrow Account as coming into existence as a "Qualified Settlement Fund" on the later of the date the Escrow Account met the requirements of paragraphs 11(b) and 12(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph 11 of this Order are met.  If such relation-back election is made, the assets held by the Escrow Account on such date shall be treated as having been transferred to the Escrow Account on that date.

13.    Nothing in this Final Order and Judgment, the Preliminary Approval Order, the

462206v1

6

Order preliminarily approving the Rebalancing Proposal, the Settlement, or the Agreement is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any of the BMS Group Releasees.

14.     Class Counsel have moved pursuant to FED. R. CIV. P. 23(h), 54(d) and 52(a) for an award of attorneys' fees and reimbursement of expenses. Pursuant to Rule 23(h)(3) and 52(a) this Court makes the following findings of fact and conclusions of law:

(a)     that the Settlement confers a substantial benefit on the Classes;

(b)     that the value conferred on the Classes is immediate and readily quantifiable. Upon this Judgment becoming final, each Class Member who has submitted a valid Claim will receive a cash payment that represents a significant portion of the alleged financial harm alleged to have been incurred as a result of the BMS Group's alleged conduct;

(c)     that Class Counsel vigorously and effectively pursued the Class Members' claims before this Court in this highly complex case;

(d)     that the Settlement was obtained as a direct result of Lead Class Counsels' skillful advocacy;

(e)     that the Settlement was reached following extensive negotiation between Lead Class Counsel and the BMS Group's Counsel, and was negotiated in good-faith and in the absence of collusion;

(f)     that Class Counsel simultaneously prosecuted similar cases against other pharmaceutical companies on behalf of other plaintiff classes;

(g)     that Class Members were advised in the Notice approved by the Court that Class Counsel intended to apply for an award of attorneys' fees in an amount not to

exceed thirty-three and a third percent (33.33%) plus reimbursement of expenses, to be paid out of the Settlement;

(h)     that no member of the Classes has submitted a written objection to the award of attorneys' fees and expenses;

(i)     that counsel who recover a common benefit for persons other than himself or his client is entitled to a reasonable attorneys' fee. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1984);

(j)     that use of the percentage of the fund method in common fund cases is the prevailing practice in this Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefit on a class resulted from the lawyers' efforts. *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); and

(k)     that the requested fee award is within the applicable range of percentage awards in this Circuit; *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass. April 9, 2004) [Doc. No. 297]; *Mowbray v. Waste Management Holdings*, No. 98-11534-WGY (D. Mass. Aug. 2, 2001); *In re Copley Pharmaceutical, Inc. Sec. Litig.*, No. 94-11897-WGY (D. Mass. Feb. 8, 1996); *Wilensky v. Digital Equipment Corp.*, No. 94-10752-JLT (D. Mass. July 11, 2001).

Accordingly, Class Counsel are hereby awarded (i) $1,503,600 from the $5,370,000 Gross Settlement Fund allocated to consumers in Classes 1 and 3 under the Rebalancing Proposal, and (ii) $ 4,089,000 from the $13,630,000 Gross Settlement Fund allocated to third-party payors in Classes 2 and 3 under the Rebalancing Proposal, as Class Counsel's fee and expense award which the Court finds to be fair and reasonable, and which amount shall be paid

to Class Counsel from the Settlement Fund in accordance with the terms of the Agreement. The attorneys' fees and expenses awarded by the Court shall be allocated among present and former Class Counsel by Lead Class Counsel at their discretion.

15.     The present and former Class Representatives are hereby granted awards in the following amounts for their time reasonable time spent on tasks related to their representation of the Classes, which shall be paid from the Settlement Fund:  $14,800 to David Aaronson; $19,600 to Rebecca Anne Hopkins; $2,800 to Agnes B. Swayze; $2,310 to United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund; $1,010 to Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust; $1,470 to Sheet Metal Workers National Health Fund; $2,540 to Teamsters Health & Welfare Fund of Philadelphia and Vicinity; $1,300 to Board of Trustees of Carpenters and Millwrights of Houston and Vicinity Welfare Trust Fund; $3,850 to Cheryl Barreca; $5,533 to Anna Choice; $1,800 to Joyce Dison; $1,150 to Donna Kendall; $1,800 to Sandra Leef; $1,333.33 to Constance Nelson; $350 to Scott Tell; $1,700 to Pauline Vernick; $4,000 to Tracy Garcia; and $600 to Mardolyn Vescovi.

16.     Without affecting the finality of this Final Order and Judgment, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement and interpretation of the Agreement and of this Final Order and Judgment, to protect and effectuate this Final Order and Judgment, and for any other necessary purpose. The BMS Group Defendants, present and former Class Representatives and each member of the Class are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding or dispute arising out of or relating to the Agreement or the applicability of the Agreement and the Distribution Plan and Claim Process in the Preliminary Approval Order and the Order preliminarily approving the Rebalancing

462206v1                                        9

Proposal, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Final Order and Judgment, the Court retains exclusive jurisdiction over any such suit, action or proceeding. Solely for purposes of such suit, action or proceeding, to the fullest extent they may effectively do so under applicable law, the parties hereto are deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

17.    In the event that the Settlement does not become effective according to the terms of the Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Agreement, shall be vacated and, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

18.    No Class Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elected to be excluded from the Classes), shall commence, continue or prosecute against any or all BMS Group Releasees any action or proceeding in any court or tribunal asserting any of the Released Claims defined in the Agreement, and such Class Members are hereby permanently enjoined from so proceeding.

DATED:    7/19/2011        _____
                                         Hon. Patti B. Saris

## EXHIBIT A

INDIVIDUALS AND ENTITIES THAT HAVE PROPERLY EXCLUDED THEMSELVES

## Exclusions from Settlement Notice

**[FILED UNDER SEAL]**

# Exclusions from Litigation Certification Notice

## [FILED UNDER SEAL]