UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| | Civil Action: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge Patti B. Saris |

### DECLARATION OF SHANIN SPECTER IN SUPPORT OF KLINE & SPECTER, P.C.'S REPLY TO LEAD COUNSEL'S OPPOSITION TO THE WILLIAMS MOTION TO MODIFY LEAD COUNSEL'S ALLOCATION OF FEES TO INCLUDE TIME AND EXPENSE INCURRED IN STATE COURT ACTIONS

I, Shanin Specter, declare as follows:

1. Beginning in 2001, Kline & Specter litigated cases in Arizona and New Jersey related to the average wholesale price of numerous prescription drugs.

2. This work ran parallel to the work of this MDL.

3. By the summer of 2005, talks began between Kline & Specter and lead counsel in MDL 1456 about working together.

4. On October 5, 2005, Shanin Specter of Kline & Specter sent an email to Steve Berman and Thomas Sobol of Hagens Berman setting forth a draft agreement between lead counsel and Kline & Specter. *See* emails attached hereto as Exhibit "A" at email sent by Mr. Specter on October 15, 2005 at 8:11 a.m.

5. On October 17, 2005 lead counsel accepted Kline & Specter's offer. Mr. Berman stated in an email to Mr. Specter: "we agree to join." *See* Exhibit "C" at email sent by Mr. Berman on October 17, 2005 at 10:40:17.

6. While lead counsel wish to argue that the offer was not accepted, that simply is not true based on the plain meaning of the words exchanged in the subject emails. *See* Exhibits

"A" and "C." Mr. Berman's email dated October 5, 2005 clearly accepted the offer, noting also that "the group would prefer to redraft the agreement so that the fee stuff is on one place." *See* Exhibit "C" (emphasis added).

7. Pursuant to the agreement, Kline & Specter brought to MDL 1456 class representatives needed by the lead counsel in MDL 1456. The case was facing dismissals because there were no class representatives for many of the defendant pharmaceutical companies.

8. Kline & Specter exchanged numerous emails with lead counsel giving them information on these class representatives so lead counsel were able to file the third amended complaint, with named class representatives for all defendants, by this Court's deadline.

9. These class representatives were a value to the class. The Final Order dated July 19, 2011 approving the settlement with the BMS group awarded class representative fees to representatives Aaronson and Hopkins, who were brought to the litigation by Kline & Specter. *See* order at ¶ 15, attached hereto as Exhibit "F." The Final Order on Track 2 dated December 8, 2011 awarded class representative fees to representatives Newell, Clark, Aaronson, Hopkins, Young, and Howe, all of whom were brought to MDL 1456 by Kline & Specter. *See* Final Order at ¶ 19, attached hereto as Exhibit "G."

10. Lead counsel has continuously performed as though the agreement was in place, despite the fact that they now argue otherwise.

11. For instance, at the request of lead counsel, Mr. Specter executed an affidavit on June 13, 2007, setting forth the hours, lodestar, and expenses in the federal and related state court actions as follows:

| Case | Hours | Lodestar | Expenses |
|---|---|---|---|
| AWP MDL | 6,681.75 | $2,093,136.25 | $404,180.02 |
| AWP NJ | 1,284.00 | $448,393.75 | $47,491.77 |
| AZ AWP | 77.00 | $21,678.75 | $3,354.42 |
| AZ Lupron[1] | 3,361.25 | $886,563.57 | $113,951.29 |
| **Totals:** | 11,404.00 | $3,449,772.32 | $568,977.50 |

[1] Note these figures do not include the amount apportioned to *Swanston* in the Lupron litigation.

See Affidavit at p. 3, attached hereto as Exhibit "H" (footnote 1 appears as in the original).

12. Lead counsel argued to this Court that Kline & Specter's state time benefitted the class, <u>and</u> submitted Kline & Specter's state time to this Court for consideration of the proper overall fee for all plaintiffs' counsel.

13. In Class Plaintiffs' Opposition to Don Haviland's Motion to Stay Distribution of AstraZeneca Fee Award and for Court Review of Lead Counsel's Allocation of Fees and Reimbursement of Costs, filed on January 5, 2010, lead counsel reported to this Court:

> The facts ignored by Haviland, are as follows. On June 22, 2007, Mark Edelson submitted a declaration to the Court in support of class counsel's petition for attorneys' fees and reimbursement of expenses in relation to the settlement with GSK. Dkt. No. 4399. In Exhibit 1 attached to his declaration, Mr. Edelson indicated that Kline & Specter had a total of 6,681.75 hours, $2,093,136.25 in lodestar, and $404,180.02 in expenses as of August 10, 2006. <u>These numbers were inaccurate, as they failed to reflect all of the relevant work performed and expenses paid by Kline & Specter that benefitted the certified class in this case. More specifically, Kline & Specter worked on several other, related cases, all of which were eventually consolidated with MDL 1456, and all of which benefitted the class in this case.</u>
>
> On April 16, 2008, Mr. Edelson submitted a second declaration to the Court, this time in relation to the settlement with AstraZeneca. See Dkt. No. 5222. In this declaration, Mr. Edelson correctly indicated that <u>Kline & Specter had $3,486,937.32 in lodestar and $602,739.90 in expenses that benefitted the class. These numbers accurately reflected all of the work performed and expenses paid by Kline & Specter in all of the case that benefitted the class and were consolidated in the MDL.</u> Shanin Specter, Esquire, a principal of Kline & Specter, reported the specific breakdown of

3

> Kline & Specter's hours, lodestar and expenses in each of the cases handled by Kline & Specter that <u>benefitted the class</u> to Mr. Edelson on December 13, 2006, and again by affidavit on June 13, 2007.

*See* opposition at p. 6 attached hereto as Exhibit "K" (emphasis added).

14. Kline & Specter does not seek compensation for work regarding Lupron, as Kline & Specter was paid for this work in other litigations.

15. The "AWP NJ" case is captioned *International Union of Operating Engineers, Local No 68 Welfare Fund v. AstraZeneca, PLC, et al.*, C.A. No.: 03-3230 (FRC) (Monmouth County, NJ) (transferred to MDL No. 1456 (D. Mass.). This case included a myriad of drugs other than Lupron, as set forth in paragraphs 26 through 93 of the complaint. *See* excerpt of complaint, dated June 30, 2003, attached hereto as Exhibit "I."

16. Likewise, the case called "AZ Lupron," captioned *Robert J. Swanston, Individually and on behalf of himself and all other similarly situated v. TAP Pharmaceutical Products, Inc., et al*, CV2002-004988 (Super. Ct. of AZ), included numerous drugs besides Lupron. *See* excerpt of complaint at ¶¶ 3 - 18, attached hereto as Exhibit "J."

17. Kline & Specter was very careful to separate its Lupron time from time spent on other drugs in these cases. The firm's time submissions do not overlap as was set forth in Mr. Specter's affidavit of June 13, 2007. *See* Exhibit "H."

18. Kline & Specter's work was primarily spent investigating the defendant drug companies, finding class representatives, and determining which drugs could remain as part of the case.

19. Lead counsel suggest that Kline & Specter's time be culled down to only three drugs that were part of the final settlement in MDL 1456, yet lead counsel have not culled down their time in this fashion.

20. Kline & Specter upheld its end of the bargain at all times.

21. The firm assisted in the litigation of MDL 1456, performing 6,681.75 hours of work and over $400,000.00 in expenses in MDL 1456.

22. Moreover, the firm made a large contribution to the litigation fund as requested, which was a specific term of the October 2005 agreement.

23. Also pursuant to the agreement, Kline & Specter approached the Attorney General of Pennsylvania about Hagens Berman entering its appearance in the Pennsylvania AWP case, captioned *Commonwealth of Pennsylvania, by Thomas W. Corbett, Jr., in his capacity as Attorney General of the Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc.*, et al, No. 212 MD 2004 (Commw. PA), as per paragraph 6 of the agreement. *See* Exhibit "A."

24. Unfortunately, the Office of the Attorney General would not consent to Hagens Berman entering its appearance in the case, which was immediately made known to Hagens Berman.

25. Also pursuant to the October 2005 agreement, Kline & Specter kept careful time records separating the state work and provided their time to lead counsel.

26. This time and its value has never been questioned by lead counsel, at least until now, after lead counsel had requested and received a fee award bolstered by this very same time.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 2rd day of January, 2012.

_____
Shanin Specter, Esquire
**KLINE & SPECTER, P.C.**