# Exhibit "A"

HOFFMAN & EDELSON, LLC'S REPLY TO LEAD CLASS COUNSEL'S
OPPOSITION MOTION TO STAY CO-LEAD COUNSEL'S DISTRIBUTION OF
FEES

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS<br><br>Judge Patti B. Saris |
| This Document Relates to:<br>ALL ACTIONS | |

# HOFFMAN & EDELSON, LLC'S REPLY TO LEAD CLASS COUNSEL'S OPPOSITION MOTION TO STAY CO-LEAD COUNSEL'S DISTRIBUTION OF FEES

It is now clear that the Court must intervene in the fee allocation process to ensure that Hoffman & Edelson, LLC (hereinafter "H&E") can receive a proportionate share of the attorney's fees allocated to the various settlements in the AWP Litigation. The fee allocation process here has not been fair and equitable, nor has it been transparent. Co-Lead Class Counsel's statement to the contrary does not make it so. In September 2008, Hagens Berman Sobol Shapiro (hereinafter "HBSS") proposed an allocation of fees from the GSK settlement, awarding itself a disproportionate fifty-percent (50%) share of all Tier I fees.[1] The allocation was not based on lodestar, but rather subjective factors determined and evaluated by HBSS itself. H&E never agreed that this preliminary distribution would be determinative of all fees in this case since such the allocation unfairly discounted H&E's contributions to the litigation. *See Supplemental Declaration of Marc H. Edelson in Support of Hoffman & Edelson, LLC's Motion for a Stay of Co-Lead Counsel's Distribution of Fees*, ¶¶7 – 11. The fact is that the fee allocation process

---

[1] Tier I is composed of the four Co-Lead Firms.

1

has been structured to disproportionately benefit the other Co-Lead Class Counsel firms, most particularly HBSS, at H&E's expense.

As stated previously, H&E was not notified, nor was it consulted with regard to the current fee allocation. Despite Co-Lead Class Counsel's statement to the contrary, the fee allocation was made on December 29, not December 28. *See Berman Email, dated December 29, 2011*, Exhibit 1 to the Supplemental Declaration (stating "we decided to make an allocation of the Astra and BMS fee awards **today** . . .. (emphasis added)).

The fee allocation proceeded despite the fact that H&E objected to being shortchanged by the proposed distribution. Further, H&E's Co-Lead Counsel proceeded with the distribution despite being informed that H&E intended to file this Motion to either delay or claw back any distribution.[2] In fact, H&E was presented with the proposed distribution as a take-it-or-leave-it proposition and told to take it since the Court's likely response to any motion H&E would file was likely to be "who's Marc Edelson?" *See* Exhibit 2 to the Supplemental Declaration. The fact that one of the Co-Lead firms charged with the responsibility of determining fee distributions was neither notified nor consulted makes it patently clear that the process has neither been fair, equitable, nor transparent.

None of H&E's Co-Lead Counsel has contacted H&E to reconcile this dispute. Co-Lead Class Counsel's dismissive attitude towards H&E's legitimate complaints merely serves as further evidence that the Court must intervene.

---

[2] Since Co-Lead Counsel have in fact completed the distribution, with the exception of the funds allocated to H&E, this Motion must be amended to request that the Court assume control over the funds distributed on December 29, 2011, and any future allocations, and to modify Co-Lead Counsel's allocation of fees and expenses by allocating all funds on a *pro rata* basis to all Co-Lead Counsel firms.

With three of the four planned fee allocations completed, H&E has received only 52% of its lodestar. In contrast, H&E's Co-Lead firms have received at least 72% of theirs. In fact, Hagens Berman has received 81% of its lodestar. *See Lodestar 11/11*, Exhibit 3 to Supplemental Declaration.

Not only has H&E not been compensated commensurately with its peer Tier I firms, H&E has received the lowest proportionate share of its lodestar of any firm involved in this litigation, including Tier II firms, who terminated their participation in the case prior to the Track I trial, Heins Mills and Kline & Specter, each having received 61% and 68.7% of their lodestar respectively, Tier III firms[3] who were not charged with responsibility of funding and leading the litigation against the defendants, and even lower than that of certain other firms who consistently filed challenges to the settlements. *Id.*

In September 2008, HBSS, on its own, drafted a self-serving memorandum awarding itself a fifty-percent (50%) share of the fees allocated to Co-Lead Counsel and in doing so, reducing H&E's proportionate lodestar share from 20.3% to 11%.[4] *See GSK Fee and Expense Award Memo, September 5, 2004*, at 6, Exhibit 4 to the Supplemental Declaration. Though this amount was modified slightly afterwards, it was accepted with full knowledge by the other Co-Lead Counsel that it was not acceptable for future distributions. *See* Exhibit 5 to the Supplemental Declaration.

The discounting of H&E's share of lodestar in the most recent allocation is equivalent to a reduction of over 9,800 hours of attorney's time, or 34% of the firm's total time of 28,845 hours. *See Supplemental Declaration*, ¶9. Most significantly, the

---

[3] Tier III firms have received at least 54% of their Lodestar.
[4] This Memorandum was drafted after 7 years of litigation; thousands of hours of attorney's time expended, and millions of dollars in expenses incurred. At the time, virtually all of the risks of litigation had also been resolved. *See Supplemental Declaration*, at ¶ 7.

3

fee allocation was not based on any objective criteria, but more to compensate the other Co-Lead firms at H&E's expense.

H&E was then informed that subsequent distributions would not be based on the criteria set forth in the September 5, 2008 Memo but upon the criteria described by *Class Counsel's Proposed Future Fee Allocation Guidelines*, Docket No. 5836, filed with this Court on January 9, 2009, in response to Kent Williams' initial objection to the fee allocations.

However, this current distribution merely reverts to the original distribution, a scheme that this Court has already disapproved. Once again, this fee distribution allocates slightly less than 50% of all Tier I fees to HBSS. Further, payments to Wexler Wallace and Spector Roseman[5] are reflective of each firm's lodestar. Only H&E has received less than its proportionate share of lodestar, which is 20.3%.

Co-Lead Counsel have represented to the Court that the Tier I firms will receive a modest 1.26 multiplier. *See Lead Class Counsel's Opposition To The Williams Motion To Modify Lead Counsel's Allocation Of Fees To Include Time And Expense Incurred In State Court Actions*, Docket No. 7957 at 13. Given the current disposition, H&E cannot project that it will receive any multiplier here, despite the fact that it has undertaken the same risks and dedication of resources, both in terms of lodestar and monies advanced, as have the other Co-Lead firms. Given the fact that the prior fee distributions have resulted in H&E being allocated a disproportionately lower share of the Tier I funds, H&E cannot even be assured of receiving its lodestar. *See also, Supplemental Declaration*, ¶12.

---

[5] The four Co-Lead Counsel firms' proportionate share of Lodestar is 39.5% for Hagens Berman, 23.3% for Wexler Wallace, 17.8% for Spector Roseman and 20.3% for Hoffman & Edelson.

4

This Court considers three factors in allocating attorney's fees, the risk, the quality of representation and the time and labor expended. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 ( 3d. Cir. 2000). H&E's Co-Lead Counsel has represented that it considers the risk as the most important factor. *Fee Allocation Guidelines*, Docket No. 5836 at 3. H&E, as one of the Co-Lead Counsel has borne the same risk as has the other firms. H&E contributed to the litigation fund every time there was a request. H&E contributed approximately $1.7 million to facilitate this litigation. Despite this, and without justification, H&E's compensation is the lowest proportionately of any firm.

In terms of total compensation, H&E also lags behind its peers. H&E has received only $6.15 million compared to Spector Roseman which has received $7.63 million, despite the fact that H&E's total lodestar exceeds that of Spector Roseman. The resulting inequity is blatant.

H&E's Co-Lead Counsel have repeatedly represented to this Court that the Co-Lead firms' effort and work-product have been exemplary and have resulted in excellent outcomes for the plaintiffs in this case. For example, Co-Lead Counsel stated:

> Lead Class Counsel have fought tirelessly for ten years on behalf of the Classes, investing over $50 million in time and advancing over $8 million in expenses in the process. Their risk taking and diligent efforts, along with this Court's steady stewardship, have resulted in the payment of hundreds-of-millions of dollars to insurers and consumers.

*Id.* at Docket No. 7957 at 3 – 4.

H&E has been actively involved in this case since inception. H&E has contributed its time, money and staff, and has been a participant in every event that defined the case. The firm produced several clients who acted as class representatives. The firm's work-product became part of the foundation upon which the AWP litigation was built. Its work produced a benefit to all class members. It has not ceased

5

participating as have the Tier II firms, nor has it taken any action to obstruct any of the settlements.

While a district court has discretion to appoint plaintiffs' counsel to recommend how to allocate an aggregate fee award, the court is not relieved of its responsibility to closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards. *See In re High Sulfur Content Gasoline Products Liability Litig.*, 517 F.3d 220, 227 – 28 (5th Cir. 2008).

The fees allocated to H&E here constitute an abuse of discretion by Co-Lead Counsel. As a result, H&E has unnecessarily been put on the defensive. There is no justification for why H&E should be appointed as lead counsel and fulfill each of its responsibilities from commencement of the MDL to its conclusion, only then to be awarded the lowest proportionate share of its lodestar of any firm involved in the litigation.

Accordingly, the Court must intervene and reallocate the attorney's fees in an equitable manner.

By: /s/ Marc H. Edelson
Marc H. Edelson
HOFFMAN & EDELSON, LLC
45 West Court Street
Doylestown, PA 18901
215-230-8043
215-230-8735 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of January, 2012 a true and correct copy of the foregoing HOFFMAN & EDELSON, LLC'S REPLY TO LEAD CLASS COUNSEL'S OPPOSITION MOTION TO STAY CO-LEAD COUNSEL'S DISTRIBUTION OF FEES was served on all counsel of record by causing same to be posted electronically via CM/ECF.

By: /s/ Marc H. Edelson
Marc H. Edelson
HOFFMAN & EDELSON, LLC
45 West Court Street
Doylestown, PA 18901
215-230-8043
215-230-8735 (fax)
