UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Master File: 01-cv-12257-PBS<br>Sub-Category: 06-cv-11883-PBS |
| _____ | Hon. Patti B. Saris |
| THIS DOCUMENT RELATES TO: | **ORAL ARGUMENT REQUESTED** |
| *State of South Carolina v. Abbott Laboratories, Inc.*,<br>Civil Action No. 06-cv-11883-PBS | |

---

**ABBOTT LABORATORIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR A SUGGESTION OF REMAND TO THE DISTRICT COURT OF SOUTH CAROLINA**

---

**I.      INTRODUCTION**

The Judicial Panel on Multidistrict Litigation ("JPML") transferred the above-captioned case to this Court because the action shares common issues of fact and law with other cases previously transferred to this Court as part of *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 (the "AWP MDL"). Having presided over the AWP MDL since 2001, this Court has managed dozens of AWP cases, including some, like this case, that involve both state Medicaid programs and Medicare. Nonetheless, in the middle of fact discovery – and before plaintiff has produced a single witness for deposition – plaintiff seeks to remand this case to a federal district court with no knowledge of this case and no experience with AWP litigation.

Remand at this time is contrary to the goals of efficiency and judicial economy that are the cornerstones of the MDL system. A remand now would deprive the parties of both the efficiencies inherent in coordinated proceedings and this Court's considerable expertise with AWP litigation. It would also waste valuable time and scarce judicial resources as the South Carolina district court would have to work its way up the steep AWP learning curve and address discovery and other pretrial issues this Court has resolved many times. The very purpose of an MDL is to prevent precisely that sort of waste and duplication. As the Court indicated at the last status conference, this case should remain in the AWP MDL through summary judgment. For these and other reasons, described more fully below, plaintiff's motion should be denied.

## II.   PROCEDURAL BACKGROUND

### A.   Plaintiff's Complaint and Its Transfer to the MDL

Plaintiff filed this action in South Carolina state court in August 2006, long after many other states had filed similar AWP suits. The complaint alleges that Abbott Laboratories, Inc. ("Abbott") published false "average wholesale prices" and that the allegedly false prices damaged South Carolina's Medicaid program and certain South Carolina citizens covered by Medicare. The complaint seeks relief under the South Carolina Unfair Trade Practices Act ("SCUTPA"), and also asserts equitable claims for unjust enrichment and injunctive relief. During the relevant time period, virtually all of the Abbott drugs for which significant damages are sought were patent-protected, brand drugs, which Abbott sold at or very close to the Wholesale Acquisition Cost that Abbott reported to the pricing compendia. Abbott timely removed the case, and the JPML transferred it to the AWP MDL shortly thereafter. The parties never appeared before or filed any substantive motions with the federal court in South Carolina.[1]

---

[1] Plaintiff also filed a separate AWP Complaint against Abbott in South Carolina state court seeking recovery on behalf of South Carolina's State Health Plan. This action remains in South

### B. Status of Discovery

Discovery in this case is far from over. No depositions of any State employees have occurred to date. Abbott (along with other defendants in the State Court Cases) spent over two years seeking documents from plaintiff and various third parties. While there has been progress in the document gathering process, it is not complete. For instance, Abbott and the other defendants in the State Court Cases moved to compel the production of certain documents that plaintiff claims were privileged or protected by the work product or other doctrines. The state court judge (Judge Cordell Maddox, Jr.) has held multiple hearings on the motion and has issued several rulings (the most recent on December 14, 2011), though the motion is not yet fully resolved. Judge Maddox has ordered plaintiff to produce a substantial number of the withheld documents and is considering whether plaintiff must produce additional documents. *See State of South Carolina v. Abbott Labs., Inc.*, 2006-CR-40-4394, Order Granting, In Part, Motion to Compel (S.C. Ct. Cm. Pl. June 23, 2011) (attached as Exhibit A (Exhibits to Order omitted)). Although resolution of the motion to compel has delayed fact discovery, Abbott (with defendants in the State Court Cases) intends to notice the depositions of the relevant South Carolina Medicaid witnesses as soon as the motion to compel is resolved.

### C. Current Scheduling Order and The Anticipated Extension of Discovery in State Court

On August 1, 2011, this Court held a status conference after which the Court issued a scheduling order that governed discovery and summary judgment motions. *See* Dkt. 7796, at 19:16-20:5 (attached as Exhibit B). The Court stated at the August 1 conference that it expected

---

(continued…)

Carolina state court along with other AWP actions that plaintiff filed against other defendants (collectively, the "State Court Cases").

to address any motions for summary judgment and then, if any portion of the case remains, remand it to the district court in South Carolina for trial. *Id*. at 19:22-23, 20:12-20.

The Court also expressed a desire to coordinate with the State Court Cases to prevent duplication of efforts, and agreed to dovetail its scheduling order with any amended scheduling order entered by Judge Maddox. *Id*. at 22:9-12 ("I am happy, if you jointly move for another scheduling order, to overlap with the state courts."). On August 24, 2011, Judge Maddox entered an amended scheduling order in the State Court Cases. On September 22, 2011, this Court granted the parties' agreed motion to amend the scheduling order in this case to match the amended scheduling order set by Judge Maddox. *See* Dkt. 7803 (attached as Exhibit C). This Court's current scheduling order sets forth the following schedule:

- Fact discovery ends on March 16, 2012;
- Motions for summary judgment based on the statute of limitations are due April 2, 2012[2];
- If the statute of limitations issue does not resolve the case, the parties have eight months to complete expert discovery; and
- Any other dispositive motions are due two months after expert discovery ends.

Because resolution of the defendants' motion to compel has taken longer than anticipated, the parties intend to ask Judge Maddox to extend fact discovery. Judge Maddox indicated in December that he was willing to extend fact discovery and directed the parties to

---

[2] Under South Carolina law, plaintiff's SCUTPA claim is subject to a three-year statute of limitations, and defendants (including Abbott) contend the three-year statute bars plaintiff's claims entirely. *See* S.C. CODE ANN. § 39-5-150. This Court and the South Carolina state court have established schedules that address the statute of limitations issue as soon as fact discovery is completed (and before any additional resources are expended on expert discovery and other dispositive motions). Referring to the statute of limitations issue at a recent hearing in state court, plaintiff's counsel conceded that: "[defendants] already have a lot that go to the statute of limitations issue. . . . They have plenty. In fact, we don't know how it could get any better." *State of South Carolina v. Abbott Labs., Inc.*, 2006-CP-40-4394, Hearing on Motion to Compel, at 40:8-13 (S.C. Ct. Cm. Pl. Dec. 14, 2011) (attached as Exhibit D).

confer about the length of the extension. *See* Exhibit D, at 7:1-2 (Court: "And whatever you need to do [regarding an extension of discovery], y'all agree on it and let me know."). The parties in the State Court Cases are scheduled to appear before Judge Maddox tomorrow (January 18) and will ask him to enter a revised scheduling order. If Judge Maddox extends the fact discovery cut-off, Abbott will ask this Court to do the same so that the depositions of South Carolina witnesses can be coordinated. Accordingly, plaintiff's suggestion that discovery in this case is virtually over is flat wrong.

## III.   LEGAL STANDARD

When civil actions involving one or more questions of fact are pending in different district courts, the actions may be transferred to any district court for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Where, as here, pretrial proceedings have not yet concluded, the JPML has the sole authority to remand the case to the transferor court. *Id*. The transferee district court may, however, issue a suggestion for remand to the JPML. *See* JPML Rule 10.3. The JPML will be "reluctant to order a remand absent the suggestion of the transferee judge." *Id*.; *see In re Managed Care Litig.*, 416 F. Supp. 2d 1347, 1348 (JPML 2006) (the JPML gives "great weight" to the transferee judge's suggestion).

In determining whether to suggest remand, courts look to whether "remand will best serve the expeditious disposition of the litigation." Manual for Complex Litigation, Fourth § 20.133. The court's "discretion to suggest remand 'generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL.'" *In re Merrill Lynch Auction Rate Securities Litig.*, 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010) (quoting *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001)). Whether remand is appropriate is based on the totality of circumstances. *In re Brand–Name Prescription Drugs Antitrust Litig.*, 170 F. Supp. 2d 1350, 1376 (JPML 2001).

## IV.   ARGUMENT

Plaintiff inexplicably seeks to remand this case – to another federal court with no understanding of this case or the many issues unique to AWP litigation – in the middle of fact discovery.  Remand at this time will not foster the expeditious resolution of this litigation and plaintiff offers no legitimate reason to remand the case now.  Plaintiff's motion should be denied.

### A.   Remand Would Not Serve the Expeditious Disposition of This Litigation

"The primary purpose behind assigning multidistrict litigation to a transferee court is to promote efficiency through the coordination of discovery."  *In re Nuvaring Products Liability Litig.*, 2009 WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009); *see In re Merrill Lynch*, 2010 WL 2541227, at *2 (coordinating fact and expert discovery is "among the primary purpose[s] of multidistrict litigation.").  Coordinating discovery allows one court to gain the expertise necessary to more efficiently resolve complex pretrial issues.  *See In re Integrated Resources, Inc.*, 1995 WL 234975, at *4 (S.D.N.Y. 1995) ("It is a fundamental assumption of the multidistrict system that having only one court sort out the facts of complex and multi-faceted transactions and occurrences which have given rise to many competing legal claims well serves the goal of judicial economy.") (citing *In re Holiday Magic Secs. and Antitrust Litig.*, 433 F.Supp. 1125, 1126 (JPML 1977)).

Here, discovery is far from complete.  As explained above, Abbott and the defendants in the State Court Cases have been trying to complete their document discovery of the State before they depose plaintiff's fact witnesses.  Fact discovery is scheduled to close in March, but the parties agree an extension is warranted.  Expert discovery will not commence until fact discovery ends and the statute of limitations issue is resolved.

Sending this case to the federal court in South Carolina now – in the middle of fact discovery – will not serve the expeditious disposition of the litigation.  The transferor court will

have no familiarity with this case specifically or AWP litigation generally, and will need considerable time to get up to speed on issues unique to AWP litigation.  Remand would waste the time and resources of both the judiciary and the parties.  *In re Integrated Resources*, 1995 WL 234975, at *4 (remand improper where it "would require another court to make its own way up this same learning curve, resulting in just that duplication of efforts that the multidistrict system is designed to avoid.").

By contrast, this Court has ten years of AWP experience and has resolved complicated, AWP-related, factual and legal issues that are likely to be raised in this case.  This Court has presided over multiple AWP cases involving state Medicaid programs and is familiar with the pharmaceutical industry, the state and federal governments' historical knowledge regarding AWP, the market for prescription drugs, and, significantly, the differences between the markets for brand name drugs and generics.[3]  Under 28 U.S.C. § 1407, the very purpose of coordinating pretrial proceedings is so parties can utilize the expertise gained by a particular judge during pretrial phases of the litigation.  *See In re Integrated Resources*, 1995 WL 234975, at *4 ("[A] key principle of the multi-district scheme involves the accrual of judicial expertise."); *U.S. ex rel. Hockett*, 498 F. Supp. 2d at 39 ("[T]his Court is best situated to analyze certain legal and factual issues in this case because it has already dealt with them in others").

---

[3]  For example, this Court ruled in the Track 1 trial that a defendant was not liable under a state consumer protection statute because the drugs at issue had "spreads" of less than 30% and met certain other factors.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20 (D. Mass. 2007).  It appears that the Court's expertise and prior rulings in this MDL may be the very reason why plaintiff seeks a strategic remand now.  Unlike the DOJ suit against Abbott over which this Court presided and which involved only generic products, almost all of the damages sought by plaintiff here relate to Abbott brand drugs that meet the 30% "yardstick" test. Plaintiff should not be allowed to distance itself from this Court's prior rulings by fleeing to a court with no experience with these issues.  *See U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 39 (D.D.C. 2007) ("[I]t has never been the case that dissatisfaction with the transferee court's rulings could support remand.").

This Court echoed these principles at the August 1, 2011 statues conference: "I think my obligation as an MDL judge, I don't think I can just send it back unless you both agreed. I think there's certain overlap things that go with the multidistrict litigation jurisdiction that I sort of probably need to do." Dkt. 7796, at 22:21-24 (Exhibit B); *see also id*. at 18:23-19:24 (stating that, while "[i[t would be tried in South Carolina . . . at the very least, I would expect motions for summary judgment . . . [because] I would have to handle what I would call any of the core overlapping common – [] crosscutting issues."). The Court noted that if the case did not result in summary judgment, then the Court would "ship it back to South Carolina." *Id*. at 20:19-20. Indeed, MDL courts routinely resolve summary judgment motions before remanding a case to the transferor court. *See, e.g., Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998) ("pretrial proceedings" under 28 U.S.C. § 1407 includes summary judgment).

As the Court observed at the August 1 conference, it should retain this case through the end of its scheduling order, which includes fact discovery, expert discovery, and summary judgment motions. Plaintiff cites no support for the extraordinary result it seeks here, namely, a remand to the transferor court in the middle of fact discovery. The reason is simple: remanding here would flout the very purpose of transferring this case to the MDL in the first place – to efficiently resolve issues arising during pretrial proceedings that are common to other MDL cases and to reap the benefit of this Court's expertise that it has acquired over the last ten years. Because the parties will benefit from the Court's expertise, remand now will not serve the expeditious disposition of this litigation.

### B. Plaintiff's Arguments for Remand Have No Merit

Plaintiff contends remand is appropriate for several reasons, none of which have merit. First, plaintiff asserts that remand is proper because only one defendant remains in this case. Not so. "[A] proceeding that relates only to a single individual's case or claim can nonetheless be

coordinated, as coordination can be found even if common issues are present only in relation to cases that have already terminated." *See In re Patenaude*, 210 F.3d 135, 143 (3d Cir. 2000) (citing *Lexecon*, 523 U.S. at 28).  "The test . . . is whether the issues overlap, either *with MDL cases that have already concluded* or are currently pending." *In re Wilson*,  451 F.3d 161, 169 (3d Cir. 2006) (emphasis added).  Thus, "[t]he mere fact that all other cases in a consolidated litigation have been terminated does not [require remand]. . . . To remand them at this point would require another court to make its own way up this same learning curve, resulting in just that duplication of efforts that the multidistrict system is designed to avoid." *In re Integrated Resources*, 1995 WL 234975, at *4.  As noted above, this action shares common issues of fact and law with the other cases transferred to the AWP MDL and plaintiff does not (and could not) contend otherwise.  The parties should not be deprived of this Court's expertise simply because this case was filed later than the other AWP MDL cases, and as a result, is one of the few remaining.  *See id.*; *In re Wilson*,  451 F.3d at 169; *In re Patenaude*, 210 F.3d at 143.

Second, plaintiff argues that this case should be remanded to South Carolina *federal court* because "[t]his lone case should not be excluded from [] mediation [before Judge Maddox] due to its current placement in the MDL."  Dkt. 8010, at 5.  This argument makes no sense.  Transferring this case to the South Carolina federal court will not subject this case to any mediation order from Judge Maddox.  Furthermore, the parties need not go to federal court in South Carolina to mediate.  They can mediate in the MDL if they so choose, or agree to mediate with the parties in the State Court Cases.  In fact, at the August 1, 2011 hearing, this Court specifically discussed the possibility of mediation in this case if discussions outside of mediation were unsuccessful.  *See* Dkt. 7796, at 23:2-24:3.

Third, plaintiff asks the Court to suggest remand because the Court "previously remanded the Montana and Nevada cases at the same stage." Dkt. 8010, at 3. Plaintiff misstates the record. When the Montana and Nevada were remanded, *all discovery was closed* (both fact and expert). *See* Dkt. 4708, at 2 n.1. That is obviously not the case here.

Fourth, the fact that no motions are pending before this Court *right now* is irrelevant. Consistent with this Court's directive, Abbott has tried to coordinate its discovery efforts here with the discovery efforts in the State Court Cases to conserve judicial resources and to spare South Carolina Medicaid witnesses from being deposed multiple times.[4] However, as discovery progresses, and the parties head toward expert discovery and summary judgment, issues requiring this Court's expertise are certain to arise.

Finally, plaintiff argues that remand is appropriate because "substantial discovery has been completed" and the only remaining issues are summary judgment and trial-specific motion practice. Dkt. 8010 at 3. But, again, plaintiff is wrong – discovery is far from complete. And this Court's experience in other AWP MDL cases will help this case proceed more efficiently. *U.S. ex rel. Hockett*, 498 F. Supp. 2d at 39 ("This Court's familiarity with the issues in this case . . . as well as the many related issues in the other cases in this MDL, indicates that it would be much more efficient to proceed to summary judgment motions in this Court rather than to ask the transferor court to play catch-up.").

## V.   CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court deny plaintiff's motion for a suggestion of remand to the District Court of South Carolina.

---

[4] Notably, this Court has embraced the parties' attempt to coordinate discovery with the state court judge in order to cut cost and prevent waste. *See* Dkt. 7796, at 21:12-25 (Court: "I'm happy to coordinate with the state court judge. . . . I'm happy to do whatever it takes to be cheap and efficient for the two of you.") (Exhibit B).

## REQUEST FOR ORAL ARGUMENT

Because Abbott believes oral argument will assist the Court in resolving plaintiff's motion for remand, it respectfully requests a hearing on this issue at the Court's earliest convenience.

Dated: January 17, 2012                    ABBOTT LABORATORIES, INC.

/s/ James R. Daly

James R. Daly
Lee Ann Russo
Jeremy P. Cole
Tara A. Fumerton
JONES DAY
77 West Wacker Drive
Chicago, IL 60601
Phone: (312) 782-3939
Fax: (312) 782-8585
Email:  jrdaly@JonesDay.com
Email:  larusso@JonesDay.com
Email:  jpcole@JonesDay.com
Email:  tfumerton@jonesday.com

Robert Y. Knowlton, D.S.C. #2380
Sarah P. Spruill, D.S.C. #8054
HAYNSWORTH SINKLER BOYD, PA
Capitol Center, Suite 2200
1201 Main Street
Columbia, SC 29201
Phone: (803) 779-3080
Email: bknowlton@hsblawfirm.com
Email: sspruill@hsblawfirm.com

*Attorneys for Defendant*
**Abbott Laboratories, Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2012, a true and correct copy of **Abbott Laboratories, Inc.'s Opposition to Plaintiff's Motion for a Suggestion of Remand to the District Court of South Carolina** was filed and served on all counsel of record via the Court's CM/ECF filing system.

/s/ Tara A. Fumerton
Attorney for Abbott Laboratories, Inc.