# EXHIBIT A

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

In re:  South Carolina Pharmaceutical Pricing
Litigation

This Document Relates to:  ALL ACTIONS

Civil Action Number: 06-CP-40-4391
Civil Action Number: 06-CP-40-4394
Civil Action Number: 06-CP-40-4398
Civil Action Number: 06-CP-40-7151
Civil Action Number: 06-CP-40-7152
Civil Action Number: 06-CP-40-7153
Civil Action Number: 06-CP-40-7154
Civil Action Number: 06-CP-40-7155
Civil Action Number: 06-CP-40-7156
Civil Action Number: 06-CP-40-7157
Civil Action Number: 06-CP-40-7158
Civil Action Number: 06-CP-40-0280
Civil Action Number: 06-CP-40-0282
Civil Action Number: 06-CP-40-0283
Civil Action Number: 06-CP-40-0285
Civil Action Number: 06-CP-40-0286
Civil Action Number: 06-CP-40-0287
Civil Action Number: 06-CP-40-0591
Civil Action Number: 06-CP-40-0592

IN THE COURT OF COMMON PLEAS

FOR THE FIFTH JUDICIAL CIRCUIT

Master Caption Number: 2006-CP-40-4394

The Honorable J. Cordell Maddox, Jr.

**ORDER GRANTING, IN PART,
DEFENDANTS' JOINT MOTIONS TO
COMPEL  CERTAIN ENTRIES ON THE
ATTORNEY GENERAL'S ORIGINAL
AND SUPPLEMENTAL PRIVILEGE
LOGS RELEVANT TO THE RUNNING
OF THE STATUTE OF LIMITATIONS**

This matter comes before me on (1) Defendants' Joint Motion to Compel Certain Entries

on the Attorney General's Privilege Log Relevant to the Running of the Statute of Limitations,

filed March 19, 2010; and (2) Defendants' Joint Motion to Compel Certain Entries on the

Attorney General's Supplemental Privilege Log Relevant to the Running of the Statute of

Limitations, filed June 10, 2010.  Hearings were held related, at least in part, to these motions on

the following dates: March 31, 2010; April 14, 2010; June 23, 2010; September 15, 2010;

December 8, 2010; February 23, 2011; April 20, 2011, in Anderson, South Carolina.  Counsel

for the State and for the Defendants were present.  Having considered both motions, the

SCANNED

memoranda filed by all parties, letters submitted to the Court, exhibits and chronologies, the applicable law, and the oral arguments related to the same, I hereby (1) grant, in part, Defendants' Joint Motion to Compel Certain Entries on the Attorney General's Original and Supplemental Privilege Logs Relevant to the Running of the Statute of Limitations with respect to the seventy-seven documents at issue involving communications among senior officials in the South Carolina Attorney General's Office and outside parties who were not agents or employees of South Carolina ("external" documents), as detailed more fully herein; and (2) take under advisement Defendants' Joint Motion to Compel Certain Entries on the Attorney General's Original and Supplemental Privilege Logs Relevant to the Running of the Statute of Limitations with respect to the seventy documents at issue involving communications among employees within the Attorney General's Office ("internal" documents), as detailed more fully herein.

## PERTINENT BACKGROUND

The historical background leading up to the motions currently before the Court is a lengthy one. For the sake of brevity, the Court will provide only a broad overview here.

On **April 17, 2009**, Defendants issued joint requests to produce to the State. The State responded with documents that resulted from searches limited to South Carolina Medicaid ("SC Medicaid") and the State Health Plan ("SHP").

On **September 11, 2009**, Defendants jointly moved to compel the State to expand the scope of its search beyond merely SC Medicaid and the SHP to include, *inter alia*, the South Carolina Attorney General's Office.

On **October 16, 2009**, the Court ordered the State to conduct a search of, *inter alia*, the Attorney General's Office for responsive documents;

On **December 18, 2009**, as a result of the Court's Order expanding the scope of the

State's search, the State served its first iteration of the Attorney General privilege log, dated December 16, 2009 (referred to throughout in all iterations as the "Original Privilege Log"). After meeting and conferring, Defendants moved to compel regarding certain aspects of the Original Privilege Log, including the lack of detail thereon. The motion was heard by this Court on January 19, 2010. By Order dated **January 25, 2010**, this Court ordered the State to provide a more comprehensive Original Privilege Log with additional subject matter detail for documents 1-113 listed thereon.

On **February 3, 2010**, as a result of this Court's Order, the State served another iteration of the Original Privilege Log, which resulted in two meet and confer conferences. During the course of these meetings, Defendants learned for the first time that William Gambrell, former 2001-2002 President of the NAMFCU, current Director of the South Carolina Medicaid Fraud Control Units ("SC MFCU"), and attendee at the 1998 Ven-a-Care of the Florida Keys Presentation, performed the document search of the Attorney General's office.

On **March 19, 2010**, Defendants moved to compel Entries 1 through 90 and 224 through 249 of the Original Privilege Log, all created between January 1, 2002 and 2004, with a few miscellaneous entries that were either undated or vaguely referenced as 2001. Defendants sought to compel production of certain specific documents from the Original Privilege Log for purposes of proving their statute of limitations defense.

On **April 14, 2010**, the Court heard oral argument on the alleged privileges asserted by the State in the Original Privilege Log.

On **April 26, 2010**, the Court issued an Order, *inter alia*,

(1)    taking under advisement Defendants' Joint Motion to Compel Certain Entries on the Original Privilege Log; and

3

(2) ordering the State to produce to it an unredacted set of the documents at issue in the Original Privilege Log and to produce to Defendants a redacted set of documents.

(3) ordering the State to identify all individuals in the Attorney General's office who worked on issues related to AWP and other relevant issues and to search the files of those individuals for responsive documents, to include, without limitation, the files of Henry McMaster, Frances Covar, Garden Frampton, Sonny Jones, John McIntosh, Emory Smith, Jay Smith, and Trey Walker. The search was also to include the files of the following persons, to the extent they still existed or were maintained on a server: Charles Condon, Frances Deberry, and Tom Quin. The Court ordered the State to prepare a supplemental privilege log, as necessary, as a result of this search and to produce the same, along with the associated non-privileged documents, by **May 14, 2010**.

On **May 17, 2010**, the State provided the "Supplemental Privilege Log." The State also produced a set of redacted documents associated there with, as well as a set of unredacted, non-privileged documents from the Office of the Attorney General.

On **June 10, 2010**, Defendants jointly moved for an order compelling production of Entries 259-332 and 372-375 of the Supplemental Privilege Log. All of the documents were created between April 10, 1998 and December 9, 2003.

On **December 8, 2010**, another hearing was held on the privilege log issues.

On **December 15, 2010**, counsel for Defendants submitted a proposal to the Court outlining a procedure whereby the Court could consider certain pending issues related to the

4

"privileged" documents listed on the Attorney General's Original and Supplemental Privilege Logs. (collectively, the "AG Privilege Logs").[1]

At no time did the State object to Defendants' proposal.

On **April 18, 2011**, Defendants filed a Supplemental Joint Brief outlining the position taken by the Attorney General in other litigation, namely that the Attorney General's Office is the entity that must have the requisite actual or constructive knowledge of the alleged wrongful conduct at issue for purposes of triggering the running of the statute of limitations in a penalties action under the South Carolina Unfair Trade Practices Act ("SCUTPA").[2]

A status conference was held on **April 20, 2011**, in which the pending motions were further discussed.

## DISCUSSION

The State began to file these cases in mid-2006.  Applying the three-year statute of limitations, Defendants contend these cases are time-barred, in whole or in part, if the State knew, or should have known, of the conduct underlying these lawsuits prior to mid-2003.[3]

S.C.R. CIV. P. 26(b) provides for a liberal discovery standard, namely that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . It is not ground for objection that the

---

[1] The logs were combined for the Court's ease of reference into one table by category and used by all parties at the December 8, 2010 hearing.  The combined log delineates which of the documents at issue are "external" versus "internal."  A copy of the combined log is attached to this Order as **Exhibit 2**.

[2] At the status conference on April 20, 2011, the State requested additional time to respond in writing to Defendants' supplemental memorandum on this point and this Court granted that request.  On May 9, 2011, the State filed its memorandum in opposition; however, it failed to address this matter in its response.  Thus, it is the undisputed position of the State that the knowledge of the Attorney General's Office is controlling on the statute of limitations where SCUTPA penalties are sought.

[3] S.C. CODE ANN. § 39-5-150 prohibits actions brought under the South Carolina Unfair Trade Practices Act ("SCUTPA") that are commenced "more than three years after discovery of the unlawful conduct which is the subject of the suit."

information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." It is undisputed on the record that all of the documents on the AG Privilege Logs are responsive and relevant.

It is also undisputed that the SHP has never issued any document retention notice or directive to preserve documents potentially relevant to this litigation.

It is also undisputed that, as for SC Medicaid, the only evidence of a document retention notice is a memorandum from the Department of Justice to State MFCU Directors, dated November 3, 2006, that the State contends was forwarded to SC Medicaid at a later date. (*See* Plaintiffs' Responses to Defendants' Third Set of Joint Interrogatories, at No. 2, filed 2/22/10). Despite being under a duty to preserve potentially relevant documents, the State did not do so. As discussed more fully below, the Attorney General has taken the position that the knowledge of its office is dispositive with respect to whether or not the State had the requisite knowledge for the purposes of triggering the running of the statute of limitations in a SCUTPA penalties action. Given the clear import of these documents to Defendants' statute of limitations defense, especially in light of the position taken by the Attorney General and because the earlier documents were not properly preserved, the Attorney General documents may be the only documents in existence evidencing the knowledge of "the State," at least under the Attorney General's theory.

Defendants have brought to this Court's attention that the Attorney General has recently taken the position that it is the Attorney General's Office itself that must have the requisite actual or constructive knowledge of the alleged wrongful conduct at issue for purposes of triggering the running of the statute of limitations against the State in a statutory penalties action under SCUTPA. In these cases, the State seeks, *inter alia*, statutory penalties. (<u>See</u> Exemplar SHP

Complaint against Novartis Pharmaceuticals Corporation, at ¶ 55).

The "external" documents at issue relate to potential knowledge of AWP-related issues by C. William Gambrell, Jr., C. Havird "Sonny" Jones, Senior Deputy Attorney General; John McIntosh, Chief Deputy Attorney General; and the current and former Attorney Generals, Henry McMaster and Charles Condon, among others, more than three years prior to the filing of these suits. The "external" documents generally involve communications among senior officials in the South Carolina Attorney General's Office and outside parties who were not agents or employees of South Carolina including, *inter alia* (a) individuals from attorney general offices in other states; (b) between the South Carolina Attorney General's Office senior staff and NAMFCU personnel and general correspondence from NAMFCU; and (c) correspondence with national association personnel.

The Court hereby adopts the proposal made by Defendants in their December 15, 2010, letter to the Court as a means by which to analyze the AG Privilege Log documents at issue. That proposal is attached hereto as **Exhibit 1**.

The Court assumes, without deciding, that all of the "external" documents on the AG Privilege Logs were originally protected from disclosure by the attorney-client privilege and/or work product doctrine before their "external" disclosure.

At the April 14, 2010 hearing, there was argument related to the decision in *Tobaccoville USA, Inc. v. Henry D. McMaster, in his Official Capacity as Attorney General for the State of South Carolina*, 387 S.C. 287, 692 S.E.2d 526 (2010) ("*Tobaccoville*"), whereby the State contended that the AG Privilege Log Documents were protected by a "common interest" agreement. In *Tobaccoville*, the Supreme Court of South Carolina adopted the common interest doctrine to preserve a privilege where the documents at issue were shared with other state

attorneys general only in the "narrow factual scenario where several states are parties to a settlement agreement, the state laws that regulate and enforce that settlement all have the same provisions, the attorneys general of those settling states are involved in coordinating regulation and enforcement, and the settling states have executed a common interest agreement." *Id.*, at 295, 692 S.E.2d at 531. The Court in *Tobaccoville* recognized the "common interest" doctrine to preserve the privilege in that case's "narrow factual scenario" where the Attorney General provided (1) a written common interest agreement which "memorialized the states' common interest and the intent that any applicable privileges not be waived by the sharing of confidential information;" and (2) an affidavit from the Director and Chief Counsel of the NAAG Tobacco Project, "stating that the common interest stemmed from the Master Settlement Agreement creation of identical rights and obligations for the settling states." *Id.*, at 295-96, 692 S.E.2d at 531.

At the April 2010 hearing in these cases, the Court ordered the State to produce any "executed common interest agreement" because it would be "important to [the Court] on that issue." (Apr. Tr., at p. 82).

In response to that Order, on April 26, 2010, the State sent the Court "a copy of *the* common interest agreement between the State of South Carolina and the National Association of Medicaid Fraud Control Units signed by Charles W. (Bill) Gambrell, Jr. and Barbara Zelner." (the "2007 Agreement") (emphasis added).   A copy of the 2007 Agreement is attached as Exhibit A to **Exhibit 1** of this Order.

The 2007 Agreement, which is actually entitled, "Confidentiality Agreement," is dated April 11, 2007. The 2007 Agreement provides that it "shall be in effect *from the date each party signs it* until revoked by the parties." (Section V) (emphasis added).  As such, by its own terms,

8

the 2007 Agreement is not retroactive.

Since the "external" documents at issue all pre-date 2004, the 2007 Agreement does not apply in any way to these "external" documents.

Even if the 2007 Agreement created some type of protection for pre-2007 documents already in existence as of the date of the 2007 Agreement, which this Court holds it does not, the disclosure of the "external" documents to "counsel retained by contract or on a contingency fee basis," as the State's lawyers in these cases are, destroyed any alleged "confidentiality" protection under the terms of the Agreement itself, of which this Court finds there was none in the first place. (Section III(C)(1)).

Under the dictates of *Tobaccoville*, the State has not established any written common interest agreement that would protect the "external" AG Privilege Log documents from disclosure here.

Assuming, without deciding, that an oral agreement would suffice, the State has not offered any competent proof of such an oral agreement, in the form of affidavit or otherwise, despite numerous opportunities to do so.

In sum, the State has produced no other written agreement, nor has the State offered any sworn testimony, or other competent proof, of any other alleged "common interest" agreement that would otherwise protect these "external" documents from disclosure.

Because the Court concludes that neither the 2007 Agreement, nor any other "common interest" agreement, oral or written, covers the "external" documents at issue, the Court does not need to reach the question of whether the State has placed those external documents "at issue" in this litigation[4] and, therefore, waived any claims of privilege, nor does the Court need to engage

---

[4] The Court observes that the State's filing of these suits, particularly in light of S.C. CODE ANN. § 39-5-150's proscription that no claim may be brought more than three years after discovery of the offending conduct, and the

in a document by document review of each "external" document at issue.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

The Attorney General's Office shall produce to Defendants within fourteen (14) days of the date of this Order, unredacted copies of all "external" documents on the AG Privilege Logs as denoted on the chart attached to this Order as **Exhibit 2.**

IT IS FURTHER ORDERED that for purposes of providing additional protection to the "external" AG Privilege Log documents at issue that are hereby ordered to be produced, such documents shall be maintained as "Confidential" in this litigation, and for "Attorneys Eyes Only" in this litigation.

IT IS FURTHER ORDERED that whenever any such "external" documents are attached to a Court filing in this litigation in the future, that the attached documents themselves be filed under seal.

IT IS FURTHER ORDERED that the Court will hold under advisement its ruling on the "internal" AG Privilege Log documents which remain at issue in this litigation.

IT IS SO ORDERED.

The Honorable J. Cordell Maddox, Jr.

6/23, 2011

State's insistence that the date of its discovery of such conduct should be left to the discovery process, constitute affirmative acts that clearly place "at issue" the date on which the State knew or should have known that it had a cause of action under SCUTPA. (See Plaintiff's Omnibus Response to Motions to Dismiss or in the Alternative for a More Definite Statement, at pp. 36-37 ("The issue of when the State knew or should have known it had a cause of action for violation of the SCUTPA is a question that will be determined during the course of normal discovery.")). Because the State has triggered the necessity for discovery on this issue –from the only sources where it is likely to be found given the lack of document holds in these cases –the State has, by necessary implication, created a waiver of any such privileges.