# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


IN RE:                                )
                                      )  CA No. 01-12257-PBS
PHARMACEUTICAL INDUSTRY AVERAGE       )  CA No. 06-11883-PBS
WHOLESALE PRICE LITIGATION            )  Pages 1 - 27
                                      )




STATUS HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE




United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts  02210
August 1, 2011, 2:20 p.m.




LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
(617)345-6787

1   A P P E A R A N C E S:

2

3        WILLIAM E. HOPKINS, JR., ESQ., Beasley, Allen, Crow,
     Methvin, Portis & Miles, P.C., 272 Commerce Street,
     P.O. Box 4160, Montgomery, Alabama, 36103-4160, for the
4    State of South Carolina.

5        JOHN R. ALPHIN, ESQ., Strom Law Firm, LLC,
     2100 Beltline Boulevard, Suite A, Columbia, South Carolina,
6    29204, for the State of South Carolina.

7        JAMES R. DALY, ESQ., Jones Day,
     77 West Wacker, Chicago, Illinois, 60601-1692,
8    for Abbott Laboratories.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3e9ca358-6e31-4130-a9b6-d89724d17d26

1           P R O C E E D I N G S

2           THE CLERK:  Court calls Civil Action 01-12257 and

3    06-11863, In Re:  Pharmaceutical Industry.  Could counsel

4    please identify themselves for the record.

5           MR. HOPKINS:  Yes.  My name is Bill Hopkins

6    representing the state of South Carolina.

7           MR. ALPHIN:  Good afternoon, your Honor.  My name is

8    John Alphin, state of South Carolina, and my pro hac is

9    pending, your Honor.

10          THE COURT:  Well, what's wrong?  Why haven't we

11   allowed it?  Is there an issue?

12          MR. ALPHIN:  They just said that there was an issue

13   with the signature, which we'll get resolved, your Honor.

14          THE COURT:  You haven't signed it?

15          MR. ALPHIN:  I signed mine.  I think he needed to

16   sign.

17          MR. HOPKINS:  Your Honor, my office filed it, and I

18   was out of town Thursday, and I believe that I was required to

19   have signed it when it was --

20          THE COURT:  Oh, all right.  Well, as soon as it is,

21   that's not a problem.  Is that a problem with you?

22          MR. DALY:  No, your Honor.

23          THE COURT:  All right.  And why don't you introduce

24   yourself.

25          MR. DALY:  Good afternoon, your Honor.  Jim Daly on

1    behalf of Abbott Laboratories.

2         THE COURT:  All right, so Mr. Daly knows this

3    litigation well, but you're new to me here, so why don't you be

4    seated and tell me what first --

5         MR. HOPKINS:  Yes, ma'am, your Honor, I'm happy to --

6         THE COURT:  As you know, or maybe you don't know this,

7    I have been with this case for a decade -- I almost feel like I

8    should throw a ten-year reunion -- and I'm eager to finish.

9    And I found out just not so long ago that you all were very

10   much in the pipeline and nothing much has happened.

11        MR. HOPKINS:  Yes.  Your Honor, again, my name is Bill

12   Hopkins.  I appreciate the opportunity to let you know that

13   actually a lot has happened.  I know it may look initially like

14   not much has happened, but I'll be very brief, your Honor.

15        THE COURT:  Sure.

16        MR. HOPKINS:  The state of South Carolina --

17        THE COURT:  And welcome to Boston.

18        MR. HOPKINS:  Thank you, your Honor.  It's beautiful

19   here, a beautiful courthouse, and I appreciate your

20   hospitality.

21        Your Honor, the state of South Carolina at the end of

22   '05 and early '06 filed twenty-eight lawsuits against fourteen

23   defendants or families of defendants.  There were two lawsuits

24   filed against each defendant group, one on behalf of the South

25   Carolina Medicaid program, one on behalf of the state health

1    plan.  South Carolina has a large state health insurance plan

2    because in South Carolina teachers are included, so it's a

3    large plan.

4          Your Honor, Abbott is in the particular circumstance

5    where it is the only case where one is pending here before your

6    Honor.  The state health plan against Abbott, that case is

7    pending in the state of South Carolina in state court.  The

8    only case that South Carolina has pending before your Honor is

9    the Medicaid case against Abbott, the state Medicaid program

10   case against Abbott, which was removed to the Federal Court in

11   South Carolina and then transferred here, and there was no

12   remand, your Honor, so Abbott is somewhat unusual.  But the

13   other cases, your Honor, have been assigned to one judge in the

14   state of South Carolina, his name is Cordell Maddox, and

15   actually a lot has been done.  I will tell your Honor that

16   now --

17         THE COURT:  So is there a case against Abbott in the

18   state court?

19         MR. HOPKINS:  Yes, ma'am.  The state health plan case

20   against Abbott is pending in the state court.

21         THE COURT:  And why wasn't that removed?  Do you know?

22         MR. DALY:  Your Honor, in the case before your Honor,

23   there was a claim for Medicare co-pay which gave us federal

24   jurisdiction.  There's no such claim in the other case.

25         THE COURT:  I see.

1          MR. HOPKINS:  That's correct, your Honor.  We have

2  now -- the state of South Carolina has settled against eight

3  defendant groups, and there are six remaining, one of which is

4  Abbott, although we are having discussions with Abbott

5  currently.  And I'll tell your Honor briefly how we got to this

6  point --

7          THE COURT:  Discussions with Abbott as part of the

8  state litigation, or does it include the federal?

9          MR. HOPKINS:  Yes, ma'am, it includes both cases.  It

10  would be an overall global --

11          THE COURT:  Is this with Mr. Green, or is it in a

12  different forum?

13          MR. HOPKINS:  Your Honor, at this point in time, we're

14  having these negotiations amongst counsel, which to date is how

15  the state of South Carolina has settled all eight of its cases.

16  We have not used a mediator.  But with Abbott we have reached

17  an agreement that if we're unable to reach a resolution among

18  internal discussions with counsel, we have agreed to use a

19  mediator to mediate the case and try and get it resolved that

20  way, your Honor.

21          Your Honor, initially the defendants filed a motion to

22  dismiss.  That was pending for over a year, and the reason is,

23  Judge Maddox was aware -- we were all aware -- there was a case

24  pending before the South Carolina Supreme Court on the issue of

25  indirect purchaser, liability to an indirect purchaser under

1  the Unfair Trade Practices Act.  That case was called

2  Hoover vs. Colleton Preparatory Academy.  It took over a year

3  before the South Carolina Supreme Court issued its written

4  opinion in that case, which had a direct bearing on the issues

5  raised in the motion to dismiss.  Based upon the Supreme

6  Court's ruling, Judge Maddox issued an order denying the motion

7  to dismiss.  So the case went forward on the written discovery,

8  your Honor.

9          The state of South Carolina -- I'm sure this will not

10 come as any surprise to you -- is not a very advanced

11 technologically or progressive state with their -- the

12 defendants were shocked, your Honor.  Apparently South Carolina

13 is one of the few states where all of the state agencies are

14 not on one common server Internet system, so we were required

15 to actually go to several different agencies to get records and

16 documents and e-mails.

17         THE COURT:  Are they online, or are they paper?

18         MR. HOPKINS:  They're online, your Honor, but several

19 of the documents were paper because they were so old.  So that

20 was the subject of a motion to compel, which state agencies we

21 had to go out to, so that was resolved by the judge.

22         THE COURT:  By the way, is that the same discovery you

23 would have in the federal case?  Is it all overlapping?

24         MR. HOPKINS:  Yes, your Honor, we believe it is.  We

25 believe it is.

1      THE COURT:  So you're basically, I mean, just sort of

2  to cut through this, are you done with discovery?

3      MR. HOPKINS:  No, ma'am.  There's one

4  outstanding issue.  We did all -- the state of South Carolina

5  has produced over two million pages.  The defendants have

6  produced documents.  They filed a second motion to compel.

7  After we compiled the two million pages and gave them a

8  privilege log, the defendants filed another motion to compel

9  with respect to two categories of documents:  One were

10  communications between our Attorney General's office and

11  outside agencies such as NAMFCU.  The other would be internal

12  documents within the Attorney General's office regarding the

13  litigation.

14      Again, our South Carolina Supreme Court had this

15  direct issue pending before it.  We were all aware.  So the

16  state Supreme Court issued a case in a case called Tobaccoville

17  v. Attorney General McMaster where the court ruled that certain

18  documents between the Attorney General and NAMFCU, or the

19  National Attorney General Association, were privileged; but it

20  was a very, very small exception which the defendants contended

21  did not apply in out case.  So two weeks ago, your Honor,

22  Judge Maddox granted defendants' motion to compel all of the

23  Attorney General communications with NAMFCU, and held in

24  abeyance, he did not rule on the internal documents of the

25  Attorney General's office.  We filed a motion to reconsider his

1    order.  That will be heard, your Honor, on August the 24th in

2    South Carolina.  Judge Maddox -- we have a briefing schedule --

3    he's going to hear our motion to reconsider and have a general

4    status conference, but he has not ruled yet on the internal --

5            THE COURT:  Have you done depositions?

6            MR. HOPKINS:  No, ma'am.  The defendants are waiting

7    until they get the documents -- they believe these documents --

8    the key issue, your Honor, in South Carolina the statute of

9    limitations applies to the state.  The defendants, one of their

10   main, if not their main, defense in this case is the statute of

11   limitations.

12           THE COURT:  Didn't we find some state -- were you

13   involved in that -- that actually had no statute of limitations

14   when it came to the state?  There was some state that --

15           MR. HOPKINS:  Several of them don't.

16           MR. DALY:  Several do not, Judge.

17           MR. HOPKINS:  Several of them don't.  I think Kentucky

18   and South Carolina do.

19           MR. DALY:  Something's got to be done about that.

20           (Laughter.)

21           MR. HOPKINS:  So that is the key holdup.  What the

22   judge has done now, your Honor, is set a deadline for the

23   defendants to file a motion for summary judgment as to the

24   statute of limitations defense, and he will rule at that point

25   before we get into expert discovery because he does not want to

1  make the parties waste the time, energy, and money dealing with

2  experts until he deals with the elephant in the room, which is

3  the statute of limitations defense.

4       THE COURT:  Yes, but where does this leave me?  I

5  don't want this hanging out here for another four years.  I

6  just am not willing to do that.  I'm eager and the

7  Multidistrict Litigation Panel is eager to have me close this

8  case out.  So I hate to say it, but I believe you are the last

9  state.  I think you're my last holdout actually.  There's one

10  other state that I think -- which one was it? -- Mississippi

11  where we just set a schedule, and that's what I'm here to do

12  today.  So I am here not necessarily to destroy your summer

13  vacation, but I am here to just at least have some end game in

14  sight.

15       MR. HOPKINS:  And we appreciate that and understand

16  that, your Honor.  We're not here to ask for an open-ended

17  thing at all.  We have discussed with Jim or with Abbott

18  counsel, we've talked to him on a couple of occasions, and I

19  believe -- he can correct me if I'm wrong -- we would

20  respectfully just ask the Court if we could have a status

21  conference at the end of September, by which time we hope one

22  of two things will have happened:  Either we will have been

23  able to resolve the case through our negotiations, or

24  Judge Maddox will have ruled on the documents which they will

25  need to take depositions and file their motion for summary

1    judgment on the statute of limitations, and at that point we

2    believe we would have --

3              THE COURT:  What's the federal cause of action?

4              MR. HOPKINS:  Your Honor, there's no federal cause of

5    action.

6              THE COURT:  So it's all diversity?

7              MR. HOPKINS:  Yes, your Honor.  Well, the defendants

8    alleged federal question jurisdiction because some of the

9    money, as your Honor knows, to the state comes from the federal

10   government; and because we were seeking some of those moneys

11   spent, I believe that the defendants alleged there was federal

12   question jurisdiction.

13             THE COURT:  Is it all under the state law tort claims

14   and statutory claims?

15             MR. DALY:  They are state claims, your Honor.  The

16   federal question is, they're seeking Medicare co-pay moneys as

17   well.  So, in other words, they're suing under -- essentially

18   bringing not only the Medicaid statute but the Medicare statute

19   into play and seeking the co-pays that individuals paid --

20             THE COURT:  I'm not sure they can.

21             MR. DALY:  Well, they're bringing it in as --

22             THE COURT:  Yes, I know, but I'm not sure you can get

23   the -- as parens patriae, is that what you're looking for?

24             MR. HOPKINS:  That's correct, your Honor.

25             THE COURT:  Have you been involved with the Department

3e9ca358-6e31-4130-a9b6-d89724d17d26

Page 12

1  of Justice at all?

2          MR. HOPKINS:  No, ma'am, I have not, your Honor.  I

3  have not.

4          MR. DALY:  I don't think the department goes after the

5  co-pay portion of that, your Honor, so that is --

6          THE COURT:  So this is a parens patriae suit under

7  state law to pick up the co-pays under Medicare?

8          MR. HOPKINS:  Among other things.

9          MR. DALY:  Among other things.  It's mostly a

10  Medicaid --

11          THE COURT:  Well, what's the state cause of action?

12          MR. HOPKINS:  We have an unfair Trade Practices Act

13  statute in South Carolina, your Honor, and I believe we may

14  have pled unjust enrichment as well, but those are the only

15  state causes of action.

16          THE COURT:  Okay, so it sounds as if -- have you filed

17  a motion to dismiss yet or a motion for summary judgment?  No.

18          MR. DALY:  The judge has asked us to wait on the

19  statute of limitations.

20          THE COURT:  No, with me.

21          MR. DALY:  We have not in your case, your Honor, and

22  so in the --

23          THE COURT:  Because let me just say, I think the

24  Medicare issue is a whole lot different than the Medicaid issue

25  necessarily, and Medicare --

Page 13

1          MR. HOPKINS:  Yes, your Honor.  I don't necessarily

2     disagree with you, your Honor.

3          THE COURT:  2001 the whole world knew because my suit

4     was filed and there was coverage, so when did you file your

5     suit?

6          MR. DALY:  '06, your Honor.

7          MR. HOPKINS:  Some '05, some '06, your Honor.  I can't

8     remember.  There were different staggered.

9          THE COURT:  So it may be barred, at least with respect

10    to a huge amount of it, right?

11         MR. HOPKINS:  That's correct, your Honor.  Again, the

12    judge hasn't ruled on this issue, but he's indicated --

13         THE COURT:  What's it, unfair trade is how many years?

14         MR. HOPKINS:  Three years.

15         THE COURT:  So, I mean, at least for Medicare -- I'm

16    not talking Medicaid -- at least for Medicare, I'm likely to

17    say that the notice was at least at the time the major AWP suit

18    was filed, which was sometime in 2001.  So assume for a

19    minute -- anything before then might be time barred, right?

20    Anything before, it's really -- you lose out on quite a bit of

21    damages, don't you?  So arguably, let's say it was 2005, you

22    only get going back to 2002, right?

23         MR. HOPKINS:  That would be correct, your Honor.  And

24    I don't mind sharing with your Honor, the reason we've settled

25    so many suits lately, we have only sought three years in

Page 14

1    damages in the last several cases because the judge has sort of

2    hinted -- he hasn't ruled, but he's hinted that that's probably

3    what he's going to do is only allow three years of damages on

4    the Unfair Trade Practices claims.  So that has reduced our

5    claims and one reason we're able to resolve these things, but

6    there's no ruling to that effect, and I certainly hear what --

7            THE COURT:  And are your folks part of the class

8    action?  Like, in other words, were you carved out?  We

9    found -- I, as you probably know, had a series of class actions

10   in which I certified classes of all the Medicare people who put

11   20 percent, and I believe that Georgia was part of that class,

12   wasn't it?  It was a national class.

13           MR. HOPKINS:  South Carolina, your Honor.

14           THE COURT:  I'm sorry, I'm sorry, South Carolina.

15           MR. HOPKINS:  But they opted out.  I believe our

16   Attorney General made the decision to opt out.

17           THE COURT:  I'm not sure he can on behalf of his

18   citizens.  Do you know if we've been paying people in your

19   state?

20           MR. HOPKINS:  I do not, not to our knowledge.

21           THE COURT:  Do you know?

22           MR. DALY:  Well, in the Track Two, your Honor, we

23   haven't made the payments yet, so we're still fighting through

24   that process.

25           THE COURT:  And, to your knowledge, are they part of

3e9ca358-6e31-4130-a9b6-d89724d17d26

1    that class?

2              MR. DALY:  I would think they are.

3              THE COURT:  That's coming up in the next week or two.

4              MR. DALY:  Yes, because we've litigated this or almost

5    litigated before your Honor as to whether or not the Attorney

6    General has the power --

7              THE COURT:  Monday.

8              MR. DALY:  -- to opt out, and I don't think they do.

9              THE COURT:  Now --

10             MR. HOPKINS:  We did see the settlement approval on

11   line, your Honor, but I do not have any information as to

12   whether --

13             THE COURT:  You should be here if you want -- I mean,

14   I'm just simply saying, if I certify that class, this case is

15   gone, and you may not need to press your federal case because

16   they'll get relief.

17             MR. HOPKINS:  I understand.

18             THE COURT:  So I'm trying to think about this in all

19   its glory, but I think this is what we're going to do:  I'm

20   going to set a schedule here today, and then we'll come back in

21   a few months and figure out what to do.  So assuming for a

22   minute -- I think you've missed the deadlines for filing any

23   objections, let me just say this, to this class settlement, so

24   you'd just better follow and find out what it does.  I think we

25   are going to be -- I'd have to look exactly how we worded it,

1    but I'm virtually sure we haven't -- maybe I'm wrong.  Did

2    we -- I'll have to look at how we've defined the classes, but

3    I'm not sure that -- do you have any cases that say the

4    Attorney General would have the right to opt out a whole -- I

5    don't even think he'd have the right to say that.

6          MR. HOPKINS:  No, ma'am, I have no cases, and, again,

7    if -- for that class, I don't know that they would take that

8    position necessarily.  I know they have received some

9    notices --

10         THE COURT:  Because I think they're going to get money

11   right away if we -- now, if they have a hundred people

12   objecting and it's like a headache, but so I'm not sure exactly

13   what I'm going to do, but I think that that could resolve this

14   suit.

15         MR. HOPKINS:  And I don't want to say what the

16   Attorney General would or wouldn't do.  I don't want to speak

17   for him.

18         THE COURT:  Absolutely.  So let's just figure out,

19   first -- you should follow what happens on Monday.  I'm not

20   asking that you come back, but just you might want to at least

21   follow it, maybe talk to them about it.  Do you happen to

22   remember how the classes are defined?  I think it's --

23         MR. DALY:  It's very broad.  It would certainly

24   encompass for the Track -- we're talking Track Two, right, your

25   Honor?

1    THE COURT:  Right.  I can't remember where Abbott is,

2    but -- I've seen you in so many different suits, so --

3    MR. DALY:  We're in there, your Honor, and we'll have

4    somebody here on Monday as well.  So, yes, I'm sure it's broad

5    enough to capture, you know, all individuals within all the

6    states, and I think we've taken the position that an AG cannot

7    opt out its citizenry because that's a personal decision

8    whether I want to be a part of a class or not.  The AG may have

9    opted out the state health plan -- maybe that's what counsel is

10   referring to -- because I think they would have the authority

11   to do that.

12   THE COURT:  Do you know whether you did that or not?

13   MR. HOPKINS:  I do not, your Honor, and if I could

14   suggest this, your Honor:  It may very well be when we speak to

15   the Attorney General, if those claims go away, at that point

16   maybe he would instruct us to file a motion, maybe a motion to

17   remand at that point because those claims, then that would

18   remove any question of federal jurisdiction.

19   THE COURT:  Well, I think you just dismiss the suit,

20   right, because --

21   MR. HOPKINS:  Well, I think we're seeking other

22   recoveries, your Honor, that --

23   THE COURT:  Oh.

24   MR. HOPKINS:  -- we may want to seek through our state

25   law claims.  That's not the only recovery.  Among other

1    remedies we were seeking was including the parens patriae claim

2    for the co-pay of South Carolina citizens.

3           THE COURT:  And what were the other claims?  I'm

4    sorry, I missed that.

5           MR. HOPKINS:  The Medicaid case, your Honor, we're

6    seeking reimbursement to the Medicaid program for --

7           THE COURT:  I thought that was a state case.

8           MR. HOPKINS:  No.  The Medicaid case is the case

9    before your Honor.

10          THE COURT:  Right, so Medicaid is left no matter what?

11          MR. HOPKINS:  Right.

12          MR. DALY:  That's correct.

13          THE COURT:  All right, so that only will resolve the

14   Medicare case, and the Medicaid case, you still could

15   potentially have diversity jurisdiction even if the federal

16   question Medicare thing drops out.  So, I mean, Medicaid is a

17   purely state cause of action, but I would be likely, I have to

18   be candid, to shift the trial, if it survives that long, back

19   to the Federal District Court in South Carolina because that

20   would --

21          MR. DALY:  Yes, we would expect that, your Honor.

22          THE COURT:  So as the transferrer case, I wouldn't

23   actually try that.  It would be tried in South Carolina, which

24   I think is most appropriate because you're South Carolina, and

25   it makes no sense to try this thing in Massachusetts.  But I

3e9ca358-6e31-4130-a9b6-d89724d17d26

1    would have to handle what I would call any of the core

2    overlapping common --

3              MR. DALY:  Crosscutting.

4              THE COURT:  -- crosscutting issues.  So I'm here to

5    figure out what to do.  So I'm thinking at this point that I

6    should set a scheduling order.  So you don't have to come back.

7    This thing is on track.  I lost it before.  I didn't even know

8    about it.  And so why don't we say that -- it sounds like we

9    could say all fact discovery would be complete, why don't we

10   say by January 1.  That's taking into account the fact that

11   most of the document production has occurred by January 1.  And

12   then expert discovery would look like what, just damages

13   primarily?  Does anyone know?  Is there anything --

14             MR. HOPKINS:  I believe we do have a liability expert

15   that --

16             THE COURT:  Liability too?  All right, so let's just

17   say plaintiffs' liability/and expert by February 1, and then I

18   would have any oppositions by March 1, and I would have any

19   depositions of the like by, why don't we say May 1?  Does that

20   make some sense?  I don't think we need -- I think we'll

21   probably need -- I'm unlikely to stay anything if there's

22   dispositive motions; they take too long to do; but at the very

23   least, I would fully expect motions for summary judgment, at

24   the very least, right?  Because we've been using those a lot,

25   not necessarily -- it doesn't dispose of the whole case, but it

Page 20

1    really narrows it down quite a bit.  And one of the key

2    questions that keeps coming up, not just statute of limitations

3    but also government knowledge.  It sounds like statute of

4    limitations won't be an issue because they're pretty much

5    conceding the three-year thing, so --

6         MR. DALY:  Well, the government knowledge is sort of

7    based on, you know, they overlap a little bit, Judge, and a

8    part of these documents are that the folks that were working in

9    the AG's office were very active in NAMFCU.  So we're expecting

10   that some of these documents, if the Court denies their motion

11   to reconsideration, we get to see them --

12        THE COURT:  Yes, but they're pretty much conceding the

13   three-year mark.  It's not even that big an issue.  So the only

14   issue will be -- it's not the statute of limitations -- is, did

15   the government knowledge get so extensive as to somehow cut off

16   either scienter or causation or materiality?  And I've written

17   extensively on it.  So I would expect that that would not be

18   resolved on a motion to dismiss and it would be resolved more

19   on a motion for summary judgment, if at all; and then if it

20   didn't get resolved, I would ship it back to South Carolina.  I

21   mean, that's realistically what we're talking about here

22   because --

23        MR. DALY:  That's right, Judge.

24        THE COURT:  -- especially if they're conceding the

25   statute of limitations point.

1         MR. DALY:  Judge, may I make one suggestion, and the

2    schedule is certainly workable.  The one thing I'd point out

3    for your Honor is that I think we have a joint motion in front

4    of the state court.  It depends on how coordinated you want to

5    be with what's happening there.  I'm just going to tell you

6    what we expect the schedule to be there, and then you can

7    either track it or get ahead of it.

8         THE COURT:  I am completely happy to call

9    Judge Maddox, have him call me.  Since you're the attorney, let

10   me give you my phone number.  It's 617-748 -- why don't we say

11   to Mary Ellen -- it's 9175.  And then the judge shall ship

12   whoever it is from the judge's office up to me.  I'm happy to

13   coordinate with the state court judge.  I am happy to call the

14   state court judge if you want to send me the judge's number.  I

15   am happy to deem any discovery in the state court admissible in

16   the Federal Court.  I am happy to sit with the state court

17   judge.  I did that in my Neurontin cases.  I sat with

18   Judge Freedman from the New York state case, if there's an

19   overlapping Daubert kind of issue or some major hearing and the

20   like.  It would be fun for me to go -- is it Charleston?

21        MR. HOPKINS:  I doubt you'd get that lucky.

22   Judge Maddox is actually in Anderson, South Carolina.

23        THE COURT:  It would be new for me.  It would be new.

24   I'd be thrilled.  Or he can come up to Boston.  I'm happy to do

25   whatever it takes to be cheap and efficient for the two of you,

Page 22

1   but what I'm not willing to do is just have this continue to

2   languish.

3         MR. DALY:  I understand.  What I was going to say,

4   Judge, there is a joint motion that asks the Court to move

5   discovery to March 16, close of fact discovery.  You suggested

6   January 1.  I was just going to say, if we moved those closer

7   together, we'd have complete overlap, and then moved everything

8   off from that date.

9         THE COURT:  I tell you what, right now I've just

10  issued my scheduling order, and I am happy, if you jointly move

11  for another scheduling order, to overlap with the state courts.

12  Once it's granted, I will do it.

13        MR. DALY:  Thank you, your Honor.

14        THE COURT:  Okay, the key is just to get us on some

15  track to either settlement or resolution.  As I said, I

16  ultimately won't try it, and indeed if you both -- I guess

17  there's no way you could -- if you wanted to even have it --

18  would you want it remanded?

19        MR. DALY:  No, your Honor.

20        THE COURT:  Okay, all right, so I don't know any other

21  way to do it.  I think my obligation as an MDL judge, I don't

22  think I can just send it back unless you both agreed.  I think

23  there's certain overlap things that go with the multidistrict

24  litigation jurisdiction that I sort of probably need to do.

25  But if what's driving this case is the state court case, I

1   don't need to be the driver; I just need a path to resolution.

2        In the meantime, there's a guy named Eric Green who is

3   terrific.  I mean, I don't know, I think he's a miracle-maker.

4   I mean, he's gotten things settled I can't even believe

5   settled, with your case in particular, that I would strongly

6   encourage -- I don't know how much he costs, I actually never

7   get into that end of it, but he's done some amazing things with

8   California, New York, Montana, Nevada.  Actually, the one he

9   wasn't able to settle was Massachusetts, I'm embarrassed to

10  say, but basically with everybody else we've basically hit some

11  sort of a resolution, at least in part.  Actually, Track Two

12  might be another problem.  There is some issues that are

13  outstanding there, but for the most part, he's done a great

14  job.  And I just would encourage you to talk with the Attorney

15  General and decide, A, what he wants to do with parens patriae,

16  and, B, whether he would like to come through this mediation

17  process, which I think Abbott was pretty happy with, right?

18       MR. DALY:  Yes, your Honor.  We enjoyed working with

19  Professor Green.

20       THE COURT:  He somehow has been doing it for a decade

21  and has a good way of valuing these things, so just a thought,

22  for the whole thing, the whole kit and caboodle, state,

23  federal.  And maybe there's someone in Charleston who you've

24  been happy working with?  I don't know.

25       MR. HOPKINS:  I think everybody is happy with

Page 24

1    Professor Green.  I know we're co-counsel with Miner, Barnhill

2    & Galland, and they use Professor Green, and I think we would

3    certainly probably agree to him.  If not, someone in Chicago.

4            THE COURT:  So maybe you could confer and let me know,

5    would it makes sense in two weeks?  When are you going to hear

6    from Judge Maddox on the schedule?  When did you file that?

7            MR. HOPKINS:  August the 24th is our next status

8    conference.

9            THE COURT:  No, but didn't you file a joint motion for

10   a discovery schedule?

11           MR. DALY:  I think it's going to be ruled on at the

12   status conference.

13           THE COURT:  Okay, so let me know -- maybe you'd know

14   the most at that point -- within a week after that status

15   conference if you want to go and maybe talk to him about going

16   to Professor Green.  Maybe you suggest to him that we start

17   talking.  And mostly importantly at this point -- I think I've

18   brought us through the end of expert discovery, is that right,

19   Mary Ellen?

20           THE CLERK:  Yes.  You have depos, the last date was

21   May 1, 2012.  That was depositions.

22           THE COURT:  To finish depositions?  So why don't I

23   say, if I haven't heard from you by June 1, motions for summary

24   judgment, is that right?  May 1 is the end of the depositions,

25   is that right?

3e9ca358-6e31-4130-a9b6-d89724d17d26

Page 25

1        THE CLERK:  Yes, May 1 is the end of depos.

2        THE COURT:  So June 1, any motions for summary

3    judgment, oppositions within 30 days, and then as soon as we

4    get those in, we'll set it up for a hearing.  Now, that's just

5    because I want to get something on the table.  If you have an

6    alternative schedule that you work out with the state court,

7    I'm happy to completely coordinate.  The key is just to finish

8    the preliminaries within the next year or so.

9        MR. HOPKINS:  That sounds good.

10        MR. DALY:  That sounds great, Judge.

11        MR. HOPKINS:  We'll discuss that with Judge Maddox,

12    and if he hasn't had --

13        THE COURT:  Tell him I've never been to Anderson,

14    South Carolina, but he maybe hasn't been to Boston, so --

15        MR. HOPKINS:  He is as equally anxious to get these

16    cases off his desk.  I can assure you he's not -- limited

17    resources, he doesn't even have a law clerk right now, and he's

18    not --

19        THE COURT:  Oh, my God.  Well, you know, it's

20    interesting, this budget crisis is hurting all of us because

21    while I always used to get a third law clerk, my wonderful

22    third law clerk is leaving for the wide world, and they're not

23    giving me another one.  So now I'm just operating off of my --

24    there's no money in the federal government right now, as you

25    may have been hearing about?  As you may have heard in the news

1   lately, there's nothing, and so all of us are hurting.  But I

2   know I can't complain because the state courts are getting

3   creamed a lot more than the Federal Courts are.  So it's been

4   ten years, I think I'm at the end, and I'm eager to finish it,

5   and, as I said Mississippi and South Carolina are my --

6           MR. HOPKINS:  Southern states, I hate to hear that

7   we're at the bottom again, Judge.

8           THE COURT:  No, you're not.  No, you're not.  You're

9   at the top of my priorities now.  So thank you very much for

10  coming up.

11          MR. HOPKINS:  Thank you.  Nice meeting you.

12          THE COURT:  We're just going to leave this on this

13  track, and so we're waiting for you to initiate --

14          MR. DALY:  Well, if we want to propose any kind of

15  variation from that, we'll file a motion with your Honor.

16          THE COURT:  And of course you have these status

17  reports monthly, so that's what the new law clerk will be

18  reviewing to see if there's anything that we should be getting

19  involved with.  And please let us know if you think there's

20  something that we should be acting on that we're not because

21  we're going through this transition, and so it would be nice to

22  make sure we're on top of it again.  Okay?

23          MR. DALY:  Thank you, your Honor.

24          MR. HOPKINS:  Thank you, your Honor.

25          THE COURT:  Thank you very much.  All right, bye-bye.

1          THE CLERK:  All rise.

2          (Adjourned, 2:48 p.m.)

3               C E R T I F I C A T E

4

5

UNITED STATES DISTRICT COURT )
6   DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )
7

8

9          I, Lee A. Marzilli, Official Federal Court Reporter,

10   do hereby certify that the foregoing transcript, Pages 1

11   through 27 inclusive, was recorded by me stenographically at

12   the time and place aforesaid in Civil Action No. 01-12257-PBS

13   and 06-11883, In Re:  Pharmaceutical Industry Average Wholesale

14   Price Litigation, and thereafter by me reduced to typewriting

15   and is a true and accurate record of the proceedings.

16      In witness whereof I have hereunto set my hand this 19th

17   day of September, 2011.

18

19

20

21

22          /s/ Lee A. Marzilli

23          _____
            LEE A. MARZILLI, CRR
24          OFFICIAL FEDERAL COURT REPORTER

25