# Exhibit 3

**Page 70**

1  THE COURT: Thank you very much.
2  THE WITNESS: Thank you. Do I leave these here?
3  THE COURT: Yes.
4  (Witness excused.)
5  THE COURT: You know what would be useful to me,
6  Mr. Berman. It's clear that this case has changed a lot in
7  the last week or two. So when each person gets up, you know,
8  basic things like which class representative, which drugs do
9  they actually purchase that make sense out of this class. I
10 have a list that we put together, but it's now outdated on
11 what's been dropped, what hasn't been dropped, why what they
12 say is significant to what's left, okay?
13                    ANNA CHOICE
14 having been first duly sworn, was examined and testified as
15 follows:
16 THE CLERK: Would you please state your name and
17 spell it for the record.
18 THE WITNESS: I'm sorry?
19 THE CLERK: Would you please state your name and
20 spell it for the record.
21 THE WITNESS: Anna Choice, A-n-n-a C-h-o-i-c-e.
22 MS. CONNOLLY: And, your Honor, I understand you
23 wanted us to identify for you at the outset. She is a
24 proposed class member of Class 3, and drugs she was
25 administered were Rubex, Zofran, and Cytoxan.

**Page 71**

1  THE COURT: Say it again.
2  MS. CONNOLLY: Rubex, Zofran, which actually that's
3  the GSK, so that's not at issue, and Cytoxan.
4  MR. TRETTER: Before you get going, your Honor,
5  Lyndon Tretter. I'm responsible for this witness, but I'm
6  also responsible for Dan Ryan, who was the next person in
7  order that we were going to hear from, according to the
8  disclosures that the plaintiffs have given us, so we're a
9  little bit surprised. I'm happy to see Ms. Choice but a
10 little surprised.
11 MS. CONNOLLY: I believe we're going to just do the
12 consumers first, so --
13 THE COURT: Okay. Are you ready?
14 MS. CONNOLLY: Yes, I am.
15 DIRECT EXAMINATION BY MS. CONNOLLY:
16 Q. Good morning, Ms. Choice.
17 A. Good morning.
18 Q. What do you for a living?
19 THE COURT: Ever been in court before?
20 THE WITNESS: No, ma'am.
21 THE COURT: So you might be a little nervous, but
22 don't worry about it, all right?
23 THE WITNESS: Very.
24 THE COURT: There's some water right there. You're
25 just going to tell us your story, all right?

**Page 72**

1  THE WITNESS: Thank you.
2  THE COURT: And thank you for coming.
3  THE WITNESS: Thank you.
4  A. I work at (Inaudible). I've been in customer service
5  for sixteen years.
6  Q. And are you a member of the UFCW union?
7  A. Yes, I am.
8  Q. Do you receive health care benefits from the union?
9  A. Yes, I do.
10 Q. And were you diagnosed with cancer?
11 A. I was diagnosed in 2000.
12 Q. With breast cancer, correct?
13 A. Yes.
14 Q. And in connection with receiving treatment for your
15 cancer, were you administered some drugs in a doctor's
16 office?
17 A. Yes, I was.
18 Q. Do you know which drugs you were administered?
19 A. Zofran, Rubex, and there was another one, but I don't
20 remember the name.
21 Q. Do you know who manufactured those drugs?
22 A. No, I don't.
23 Q. Prior to becoming involved in this litigation, did you
24 have any idea what AWP --
25 THE COURT: Why don't you refresh her recollection

**Page 73**

1  as to the third drug.
2  MS. CONNOLLY: As to the third drug?
3  Q. Ms. Choice, in connection with becoming involved in this
4  lawsuit, did you authorize your attorneys to obtain some
5  documents that would show the drugs that you were
6  administered?
7  THE COURT: I think we all agree, right? So is it
8  Cytoxan? Is that the other drug?
9  THE WITNESS: I think it was, ma'am, I think it
10 was.
11 THE COURT: Is that the right drug?
12 MS. CONNOLLY: Yes.
13 THE COURT: Is there a dispute over that?
14 MR. TRETTER: Yes, your Honor.
15 THE COURT: All right, there is dispute over that.
16 Do you know that personally?
17 THE WITNESS: Uhm, the lawyers told me it.
18 THE COURT: So you don't know that yourself?
19 THE WITNESS: Oh, no, ma'am. I don't remember. I
20 was sent papers, you know, stating which kind of medication I
21 had, but I wasn't sure. You know, I don't remember the names
22 of them.
23 THE COURT: All right, so you don't remember the
24 names of any of them?
25 THE WITNESS: The Zofran, that one I remembered. I

1  remembered seeing that on my papers. That's the only one
2  that I really remembered offhand.
3       THE COURT: Thank you.
4       THE WITNESS: You're welcome.
5  Q.  And you likewise don't know who manufactured the drugs
6  that you were administered, correct?
7  A.  I'm sorry?
8  Q.  You likewise don't know who manufactured the drugs that
9  you were administered; is that right?
10 A.  No, I don't.
11 Q.  Prior to becoming involved in this litigation, did you
12 have any knowledge regarding what AWP meant?
13 A.  No.
14 Q.  When you got involved in this case, you were provided a
15 copy of plaintiff's complaint; isn't that correct?
16 A.  Yes, ma'am.
17 Q.  And prior to becoming involved in this litigation, were
18 you aware of any of the facts that were alleged in that
19 complaint?
20 A.  No, I wasn't.
21 Q.  In connection with executing your trial affidavit in
22 this case, you were provided with some documents from your
23 lawyers as well, weren't you?
24 A.  Yes, ma'am.
25 Q.  And prior to looking at those documents, were you aware

Page 74

1  of any of the conduct that is described in those documents?
2       MR. TRETTER: Can we get some idea of what
3  documents were shown to the witness.
4       MS. CONNOLLY: They're the ones referenced in her
5  trial affidavit.
6       THE COURT: I didn't hear what you just said.
7       MS. CONNOLLY: I'm sorry. They're the ones
8  referenced in her trial affidavit.
9       THE COURT: All right.
10 A.  And the question?
11      THE COURT: And the question is again for her?
12 Q.  Right, were you aware of any of the facts that were
13 provided to you in connection with looking at your trial
14 affidavit?
15 A.  Was I aware of it?
16 Q.  Right.
17 A.  No,, nothing. No, I wasn't.
18 Q.  Did you ever talk to your doctor about the cost of your
19 drugs?
20 A.  No.
21 Q.  Why not?
22 A.  Well, why would you talk to the doctor about the
23 medicine that's going to cure you and keep you here? I want
24 to be around to see my first great grandchild.
25 Q.  Ms. Choice, have your attorneys agreed to pay some of

Page 75

1  the lost wages that you had by virtue of traveling to Boston
2  to testify today?
3  A.  Yes.
4  Q.  And can you tell me how much that payment is for?
5  A.  I think it's close to $300.
6  Q.  And have your attorneys likewise agreed to reimburse you
7  for any expenses incurred in traveling today?
8  A.  Yes.
9       MS. CONNOLLY: Thank you very much.
10      THE WITNESS: You're welcome.
11 CROSS-EXAMINATION BY MR. TRETTER:
12 Q.  Hi.
13 A.  Hi.
14 Q.  Good morning, Ms. Choice.
15 A.  Good morning.
16 Q.  My name is Lyndon Tretter. I represent a company called
17 Bristol-Myers Squibb, and they're the ones that manufactured
18 these drugs called Rubex and Cytoxan, and I just have a few
19 questions for you, if I may.
20 A.  Sure.
21 Q.  You're not a resident of Massachusetts, are you?
22 A.  No. This was my first time flying. I was --
23 Q.  Well, welcome to Massachusetts.
24 A.  Thank you.
25 Q.  So I take it, therefore, the drugs that you received you

Page 76

1  received at or around your hometown, which is in Chicago; is
2  that correct?
3  A.  Yes, sir.
4  Q.  And you were a union member of something called the
5  UFCW, which is the United Food and Commercial Workers? Is
6  that what it is?
7  A.  Yes.
8  Q.  There's an insurer out there called Blue Cross-Blue
9  Shield of Illinois; is that correct?
10 A.  Uh-huh.
11 Q.  And that was your insurance company through the union?
12 A.  Yes, it is.
13 Q.  And they paid a large portion of the bills for your
14 treatment, correct?
15 A.  Eighty percent.
16 Q.  And you don't know what financial arrangement they had
17 with the doctor, what rate of payment they were paying the
18 doctor, do you?
19 A.  No, I don't.
20 Q.  And you state that you can't recall precisely what
21 medications you were given, but you did receive some sort of
22 billing records, correct?
23 A.  Yes.
24 Q.  Would that help you at all if you saw those billing
25 records?

Page 77

## Page 78

1  A.  Sure.
2  Q.  Okay.
3  THE COURT: Do you have one of those notebooks for
4  me?
5  MR. TRETTER: Yes, your Honor. I'll hand that
6  right up.
7  Q.  Now, Ms. Choice, if you'd just open that binder and go
8  to the second tab, you'll see there's a two-page document
9  that has your name on the bottom and some numbers 4 and 5?
10 A.  Uh-huh.
11 Q.  And it looks like it's a statement of a St. Mary of
12 Nazareth Hospital?
13 A.  Right.
14 Q.  Now, is that where you received your first treatment?
15 Was it at St. Mary's?
16 A.  Yes, it was.
17 Q.  So you were treated first in a hospital?
18 A.  Well, there are doctors' offices right across the
19 street.
20 Q.  Right, but the surgery, there's a reference --
21 A.  Oh, yes, the surgery was in the hospital, yes.
22 Q.  And that first treatment that you received of the
23 Zofran, you'll see when you go down to 1031, there is Zofran
24 and there is adriamycin?
25 A.  Uh-huh.

## Page 79

1  Q.  Did you receive that in the hospital?
2  A.  Yes, I think it was that medicine. I'm not sure, but I
3  think it was.
4  MR. TRETTER: And then what I'd like to do, your
5  Honor, is to offer this two pages as a new exhibit. I think
6  it's going to be Defendant's Exhibit 3003.
7  THE COURT: Well, let me ask you, what are the
8  documents that you're relying on, that the plaintiffs are
9  relying on to say that she took the two drugs that you say
10 she took, Rubex and Cytoxan? Do we have those?
11 MS. CONNOLLY: No, we do not have those. They were
12 records that we obtained from financial providers to show the
13 payments, but they're very voluminous. So there have been
14 some discussions with the Court, I believe, about you're not
15 wanting to receive --
16 THE COURT: You need to stand up when you talk.
17 It's too hard to hear you.
18 MS. CONNOLLY: I believe there were some
19 discussions at some point in connection with providing the
20 trial affidavits that the Court did not want to receive an
21 excessive volume. These documents are very voluminous
22 because we subpoenaed every provider she had.
23 THE COURT: So the short answer is, you're not
24 marking them?
25 MS. CONNOLLY: That's right, your Honor.

## Page 80

1  THE COURT: Okay. So let me ask you this. Did you
2  look at the billing records yourself?
3  THE WITNESS: Well, when they sent me the bills, I
4  really didn't look at them.
5  THE COURT: But did you look at them with the
6  attorney?
7  THE WITNESS: Yes.
8  THE COURT: Okay. Did it refresh your recollection
9  that you took those drugs?
10 THE WITNESS: Well, not really because I didn't
11 remember which one they told me. It was in 2000, and I have
12 forgotten which ones it was.
13 THE COURT: So it didn't ring a bell?
14 THE WITNESS: No, ma'am, not at first.
15 MR. TRETTER: My point in putting this stuff in,
16 your Honor, is that she didn't take the drugs that they say,
17 that the lawyers told her she took, and that's why I think we
18 need to actually have the documents.
19 THE COURT: I don't want to take just two if there
20 are another ten that mention those drugs. I want the whole
21 pile. Are you making the representation that nowhere in the
22 entire group of records, it doesn't ever mention those drugs,
23 Rubex and Cytoxan?
24 MR. TRETTER: No, your Honor. It mentions
25 something called adriamycin here, and it was received in a

## Page 81

1  hospital, not in an outpatient.
2  THE COURT: I don't know these things. So are you
3  saying somewhere in all those records it references Rubex and
4  Cytoxan?
5  MS. CONNOLLY: Yes, and we'd be willing to provide
6  you with --
7  THE COURT: Well, I think we're going to need those
8  because she has no memory, so she can't testify about it, so
9  I don't know how it goes into her affidavit.
10 MS. CONNOLLY: Her affidavit says that she relied
11 on her attorneys.
12 THE COURT: Yes, but that's not good enough. This
13 is a trial.
14 MS. CONNOLLY: Right. Yes, we'd be happy to
15 provide you with the documents.
16 THE COURT: So, now, what did you want to put in?
17 Let me just say this. What are you saying it is, what drug?
18 MR. TRETTER: I think the relevant drugs here, your
19 Honor, are something called Zofran, which is no longer in
20 this case, and adriamycin, which is --
21 THE COURT: Do you know what adriamycin is?
22 THE WITNESS: No, ma'am.
23 MR. TRETTER: It's a --
24 THE COURT: Yes, but that's you testifying. This
25 is a trial. I can't do this, okay? So --

```
 1        MR. TRETTER: I just would like to admit this
 2   exhibit, your Honor. There's no objection.
 3        THE COURT: Why don't we just mark it so somebody
 4   else can then tell me what it is, okay? So we'll mark this
 5   as what?
 6        MR. TRETTER: 3003 for identification, and I'd like
 7   to move it into evidence.
 8        THE COURT: Overruled. I'll let you mark it, and
 9   then somebody else will have to come and tell me what it is
10   and why it's significant here. So I'm assuming someone can
11   do that, right?
12        MR. TRETTER: Well, I don't know anybody other than
13   the patient herself, your Honor, that I can get this document
14   in through.
15        THE COURT: But it has to be relevant somehow. So
16   what's your proffer as to why it's relevant?
17        MR. TRETTER: Well, it's relevant, your Honor,
18   because it's proving the negative. It's proving that her --
19        THE COURT: It's only the negative if I see
20   everything.
21        MR. TRETTER: Okay, then I'm happy to move to
22   strike her testimony about --
23        THE COURT: Well, we might end up there. But let
24   me just ask you this: You say you took Rubex or Cytoxan. Do
25   you know whether you took those? Do you have any memory at
```
Page 82

```
 1   all about whether you took drugs in a place other than
 2   St. Mary of Nazareth Hospital?
 3        THE WITNESS: I also took some drugs in the
 4   doctor's office. That's where he gave me my chemo at.
 5        THE COURT: Right, and what's the name of your
 6   doctor?
 7        THE WITNESS: Dr. Thomas.
 8        THE COURT: Do you recognize this bill as being a
 9   bill that you received from --
10        THE WITNESS: Yes, ma'am.
11        THE COURT: So this is one of your bills?
12        THE WITNESS: Yes, ma'am, it is.
13        THE COURT: Do you have an objection to it going in
14   by itself?
15        MS. CONNOLLY: No, your Honor.
16        THE COURT: As far as I'm concerned, I will admit
17   it in, but it proves nothing to me. I don't know anything
18   about these drugs, so you're going to have to give some
19   significance here to it. I allow this in as 3003.
20        (Exhibit 3003 received in evidence.)
21   Q.   Okay, and then the next document, Ms. Choice, is from
22   Dr. Thomas' office, correct? It's three pages?
23        THE COURT: Do you recognize that?
24        THE WITNESS: This one here? Yes, it is from the
25   doctor's office.
```
Page 83

```
 1   Q.   Okay. And if you look, there's some information about
 2   you at the top, and then there's a line that says, "Charges,
 3   1/1/2000 through 6/30/2002"? Do you see that?
 4        MR. TRETTER: Can I approach the witness, your
 5   Honor?
 6        THE COURT: Yes. Do you recognize this document at
 7   all? Have you ever seen it before?
 8        THE WITNESS: Oh, yeah, I have.
 9        THE COURT: And is there any objection to it going
10   in?
11        THE WITNESS: No.
12        MS. CONNOLLY: No, your Honor.
13        THE COURT: All right.
14        MR. TRETTER: So this is 3004.
15        THE COURT: We're going to impound this, though, in
16   terms of sealing it, Robert, just because it has patient
17   information in it. All right?
18        (Exhibit 3004 received in evidence.)
19        MR. TRETTER: May I just continue, your Honor?
20        THE COURT: So these two are admitted in, but
21   they're sealed. And if I forget to do that, you all have to
22   do that. The other documents have had redacted names,
23   et cetera.
24        MS. CONNOLLY: Yes, your Honor.
25        THE COURT: All right, go ahead.
```
Page 84

```
 1   Q.   You'll see, Ms. Choice, that in this document, when we
 2   get down to Item 10, there's a drug called Taxotere?
 3   A.   Uh-huh.
 4   Q.   Is that a drug that you're familiar with?
 5   A.   It's on my bill, so I assume they gave it to me, yeah.
 6   Q.   I'll represent to you that there's no Rubex or Cytoxan
 7   on this document from Dr. Thomas. Does that refresh your
 8   recollection about what drug you did take?
 9   A.   I know I remember seeing those on one of my bills, but
10   I'm not sure which one it was.
11        MR. TRETTER: I have no further questions.
12        THE COURT: Thank you.
13        MS. CONNOLLY: I have no further questions.
14        THE COURT: Thank you, and I really -- how are you
15   doing?
16        THE WITNESS: I'm okay, thank you.
17        THE COURT: I hope you have a good plane ride back,
18   and thank you very much, and I hope you come back to Boston
19   ten years from now.
20        THE WITNESS: Thank you.
21        THE COURT: Thank you so much for coming.
22        THE WITNESS: Thank you.
23        MR. TRETTER: I'd like to renew my motion to
24   strike.
25        THE COURT: Why don't we wait.
```
Page 85

## Page 86

    (Witness excused.)

    THE COURT: So the question I have is, she has no memory of taking those drugs. I'm assuming that you have a good-faith basis for believing it, but I can't take this affidavit as it is. You're going to have to --

    MR. BERMAN: I understand that. This witness was deposed. All of her records were put before the defendants. They examined her on the Rubex entries, and we'll bring those to court, and we'll offer them up.

    THE COURT: All right, but as of right now, this affidavit is in severe jeopardy.

    MR. BERMAN: I understand that.

    THE COURT: I don't understand why you didn't ask her to refresh her recollection through her deposition.

    MS. CONNOLLY: Your Honor, even during their deposition, they did not testify that they knew what drugs they were administered.

    THE COURT: Well, who's going to put in these records? Did she authenticate these records at the deposition?

    MS. CONNOLLY: She authenticated them as bills that she received. She did not --

    THE COURT: Well, why didn't you just ask her that? Let me just say this: This is now at trial stage, not motions for summary judgment, trial. So how are you going to

## Page 87

do that? She's not on the stand.

    MR. TRETTER: Your Honor, one point of order. She's not from Massachusetts. She's not even a class member. We tried to raise this before.

    THE COURT: That may be, but it may be, in terms of harm, it doesn't matter. The question of whether she's even possibly a class rep is not even clear.

    MR. TRETTER: But what I was trying to do with this is that if she's never stepped foot in Massachusetts before -- I mean, I could go through and all of my colleagues could go through these cross-examinations, but really we don't need to bring these individuals here if their proof is not relevant.

    THE COURT: It's possible that they could -- I'll address it. I think I am not clear whether I'm going to take her direct testimony.

    MS. CONNOLLY: Okay, I understand, your Honor. And the other two consumers that we'll have testify today have the same problem, so I might suggest that we regroup on this subject.

    THE COURT: Yes, it's time for the break. All right, so the problem I have is, A, as he points out, they're not from Massachusetts; but, B, even if you could possibly have somebody who has the same -- do you have anyone from Massachusetts here?

## Page 88

    MS. CONNOLLY: No, we don't, your Honor.

    THE COURT: The bigger issue or as big an issue is, she can't put the drugs at issue in play.

    MR. TRETTER: And I'll tell you another issue --

    THE COURT: And you've had a Court ruling that there's got to be someone for each drug.

    MS. CONNOLLY: That's right. Your Honor, when these women had cancer, they were administered cocktails of combined drugs, so there's no way that they would have known at the time they were administered that they were administered.

    THE COURT: It's possible. It's just I need someone to do it.

    MS. CONNOLLY: Okay.

    THE COURT: I mean, gosh, you know, the poor woman, "Who looks at these? The doctor says take it, you take it." That having been said, I'm now in a court of law, and I need someone to do it for me. Is there anyone you know of who's sitting out there who actually took some of these drugs and lives in Massachusetts?

    MR. BERMAN: None from Massachusetts, your Honor.

    THE COURT: Is there anyone out there who can actually identify any of these drugs?

    MR. BERMAN: Yes, Ms. Hopkins.

    THE COURT: All right, well, we'll hear from her.

## Page 89

The other one can't?

    MR. BERMAN: We're going to check.

    THE COURT: All right, we'll take a break.

    MR. TRETTER: I do want to raise one issue with everybody. Even if they think they can do it, it's all from the J-Code, and there's no way for the individual to know which manufacturer. I mean, you saw this with adriamycin. There is just no way that they're going to be able to show --

    THE COURT: I don't know anything about adriamycin. This is a court of law. You can't testify. They can't testify. I just need to understand it.

So let me just ask you this question: If there's no one from Massachusetts and no one who can identify the drugs -- and this is with respect to the Class 3 consumer class, right?

    MR. BERMAN: That's correct, that's correct.

    THE COURT: So the correct remedy would be to decertify the Class 3 consumer class possibly, unless you think the third-party payors are going to be good enough for class reps.

    MR. BERMAN: You certified them as the class reps.

    THE COURT: Well, as the class reps, and then I'm back with the much harder issue, whether or not a third-party payor can be a class rep. That's the legal question, right?

    MR. BERMAN: Yes.

### Page 90

```
 1        MR. MONTGOMERY:  And at the right time, your Honor,
 2  and you decide when the right time is, I have the same issue
 3  to raise with respect to Ms. Faulkner because she is the
 4  class rep for Class 2 with respect to albuterol, the only
 5  one.  She has no knowledge, and so a motion to strike would
 6  be appropriate, and I just did not wish to interrupt the
 7  proceedings --
 8        THE COURT:  She's the only supplemental payor?
 9        MR. MONTGOMERY:  She's it.
10        MR. BERMAN:  No.  Actually Mr. Randle --
11        THE COURT:  Is the class rep.
12        MR. BERMAN:  Ms. Faulkner is just the third-party
13  administrator.
14        MR. MONTGOMERY:  Well, okay, she is the
15  representative -- okay, I misspoke, but as to Randle and as
16  to Faulkner, there is an issue as to whether there is a
17  viable class with respect to albuterol.
18        THE COURT:  Maybe, so I hadn't focused on that
19  particular one, but I think we need to deal with the consumer
20  class issue.  Okay, thank you.
21        THE CLERK:  All rise.  Court is in recess
22        (A recess was taken, 11:05 a.m.)
```

### Page 91

```
 1        (11:37 a.m.)
 2                      IN OPEN COURT
 3        THE COURT:  Please be seated.
 4        REBECCA HOPKINS, PLAINTIFFS' WITNESS, SWORN
 5        THE CLERK:  Thank you.  You may be seated and
 6  please state your name and spell it for the record.
 7        THE WITNESS:  It's Rebecca Hopkins, R-E-B-E-C-C-A,
 8  H-O-P-K-I-N-S.
 9        MR. HAVILAND:  Good morning, your Honor.  Don
10  Haviland.  The plaintiffs next call Rebecca Hopkins, as she's
11  just said.
12                   DIRECT EXAMINATION
13  BY MR. HAVILAND:
14  Q.   Good morning, Mrs. Hopkins.  How are you?
15  A.   Just fine, thank you.  And yourself?
16  Q.   And if you could keep your voice up.  I know you're very
17  soft-spoken, but lean into the -- pull the mike a little
18  closer.  We have a very large audience today.
19  A.   Okay.
20  Q.   All right.  Could you tell the Court where you live?
21  A.   Northeast Pennsylvania.
22  Q.   And how old are you, ma'am?
23  A.   Fifty years old.
24  Q.   Are you married?
25  A.   Yes.
```

### Page 92

```
 1  Q.   What is the highest level of education that you've
 2  reached?
 3  A.   I have a graduate degree from Syracuse.
 4  Q.   Okay.  Do you work?
 5  A.   Well, we have our own business, Oakland Consulting.
 6  Q.   With your husband.
 7  A.   Yes.
 8  Q.   Okay.  And what sort of business is that?
 9  A.   He's a manufacturing consultant.
10  Q.   Okay.  I'd like to go right to the heart of the matter
11  so that we can try to simplify things for the Court.
12       And I realize that your cancer has been a long
13  time, since 1991, is that correct?
14  A.   Yes.
15  Q.   Okay.  Could you just summarize for the Court generally
16  your course of therapy from 1991 up to the present?
17       THE COURT:  No.  You know, I've seen it in her
18  affidavit.
19       MR. HAVILAND:  Okay.  Fair enough, Judge.
20       THE COURT:  I think, you know, that very difficult
21  period of time is well documented here.
22       MR. HAVILAND:  Thank you, Judge.  I'll go right
23  to --
24  BY MR. HAVILAND:
25  Q.   I'd like to direct your attention to 19 --
```

### Page 93

```
 1        THE COURT:  Just get right to the drugs.
 2        MR. HAVILAND:  Sure thing.
 3        THE COURT:  Okay.
 4  Q.   In 1995, did you have a recurrence, Ms. Hopkins?
 5  A.   Yes.
 6  Q.   Okay.  And do you recall, you treated with some
 7  prescription medications?
 8  A.   I was treated with Bleomycin, Etoposide VP 16, and CIS
 9  Platinum.
10  Q.   Okay.  You said Etoposide and VP 16.  Do you actually
11  remember that the Etoposide that you took was VP 16?
12  A.   Yes.
13  Q.   Are you aware --
14  A.   That's what it's called.
15  Q.   Okay.  Are you aware today that that's a Bristol-Meyers
16  drug?
17  A.   Today I am, yes.
18        MR. SWEENEY:  Objection, your Honor.  Foundation.
19        THE COURT:  How do you know that?
20        THE WITNESS:  My attorney has told me.
21        MR. SWEENEY:  Move to strike, your Honor.
22        THE COURT:  Sustained.
23        MR. HAVILAND:  Fair enough, your Honor.
24        Your Honor, I've handed the Court a set of exhibits
25  that I've placed in front of the witness.  They're all --
```