# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| TRACK TWO SETTLEMENT | Judge Patti B. Saris |

**LEAD CLASS COUNSEL'S SUPPLEMENTAL OPPOSITION TO THE WILLIAMS MOTION TO MODIFY LEAD COUSEL'S ALLOCATION OF FEES TO INCLUDE TIME AND EXPENSE INCURRED IN STATE COURT ACTIONS**

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................................1

II.    ARGUMENT ........................................................................................................................1

    A.    The "Draft" Terms Proffered by K&S Do Not Constitute a Complete
         Agreement..................................................................................................................1

    B.    Even if an Agreement to Pay K&S for Non-MDL Work Existed, It Could Not
         Trump this Court's Decision Not to Compensate for Such Time............................3

    C.    The Work Done in the State Court Actions Did Not Benefit the MDL Class.........6

         2.    The Arizona *Lupron* case did not benefit the MDL....................................8

    D.    Movants Already Received Hefty Payments from the PA AG and Lupron
         Cases ......................................................................................................................11

III.    CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
  2008 U.S. Dist. LEXIS 65079 (D. Minn. Aug. 21, 2008) .......................................................5

*In re Medtronic, Inc.*,
  2008 U.S. Dist. LEXIS 110259 (D. Minn. Oct. 20, 2008) ....................................................5

*Roquist v. Soo L. Railroad*,
  692 F.2d 1107 (7th Cir. 1982) ...........................................................5

### OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2011) ...................................................4

RESTATEMENT (SECOND) OF CONTRACTS § 27.........................................................2, 3

## I.      INTRODUCTION

Per the Court's December 8, 2011 electronic order, the parties were to attempt to resolve their dispute and present any "unresolved issues" to the Court by January 15, 2012.[1]  We have been unable to resolve the pending motion brought by Kline & Specter ("K&S") and its co-counsel, Kent Williams, Jennings Haug and Adam Levy (the "Movants").

Movants are not entitled to the more than $2.5 million that they seek for work purportedly done in non-MDL cases.  The "draft" terms proffered by K&S do not constitute a final agreement on fees, because Lead Counsel put K&S on notice that it regarded the agreement as incomplete until it had been reduced to writing.  Furthermore, even if an agreement was formed, it could never trump the Court's decision not to compensate for non-MDL time that did not benefit the MDL, and there can be no argument that Williams, Jennings Haug and Levy were entitled to any payment under the agreement.  It is clear that the work K&S and others did in the state cases, including the majority of their work in the Arizona *Lupron* case, did not advance this MDL in any way.  Moreover, the Movants have already been handsomely compensated for their time in those cases and are simply trying to double dip.  If additional fees are owed to anyone, it is to Lead Counsel who are owed fees out of the millions that K&S and its co-counsel received in the Pennsylvania AG action through the use of Lead Counsel's work product.[2]

## II.      ARGUMENT

### A.      The "Draft" Terms Proffered by K&S Do Not Constitute a Complete Agreement

K&S continues to insist that the October 2005 e-mail exchange between Mr. Specter and Mr. Berman represents a final, binding agreement because the parties had already agreed on all

---

[1] With January 15 falling on a weekend, followed by a holiday, the due date to report to the Court under the rules is today, January 17.

[2] This supplemental brief adds to, and does not replace, Lead Counsel's Opposition to the Williams Motion to Modify Lead Counsel's Allocation of Fees to Include Time and Expense Incurred in State Court Actions (Dkt. No. 7957), which is attached as Exhibit 1 hereto for the Court's convenience.

essential terms and the act of putting those terms in writing was a mere formality.[3]  K&S mischaracterizes the parties' negotiations, and its position ignores fundamental contract law.

The RESTATEMENT OF CONTRACTS provides:  "if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to ***or until the whole has been reduced to another written form***, the preliminary negotiations and agreements ***do not constitute a contract***."[4]  The circumstances considered in determining whether a contract has been created in situations like this are (i) "the extent to which express agreement has been reached on all the terms to be included", (ii) "whether the contract is of a type usually put in writing", (iii) "whether it needs a formal writing for its full expression", (iv) "whether it has few or many details", (v) "whether the amount involved is large or small," (vi) "whether it is a common or unusual contract", (vii) "whether a standard form of contract is widely used in similar transactions", and (viii) "whether either party takes any action in preparation for performance during the negotiations."[5]  Applying these factors also demonstrates that no definitive agreement was reached.

Mr. Berman's October 17, 2005 e-mail – which stated "we agree to join. the group would prefer to redraft the agreement so that the fee stuff is in one place not several. also they want to clarify that you will pay the current assessment of 150k." – expressly sought a redrafting, so it cannot be said that express agreement had been reached on all of the relevant terms.  His e-mail also clearly highlighted the fact that the agreement was comprised of a complicated set of terms that needed "a formal writing for its full expression."[6]  K&S therefore knew or had reason to

---

[3] K&S Reply at 9.

[4] RESTATEMENT (SECOND) OF CONTRACTS § 27 (Existence of a Contract Where Written Memorial is Contemplated), cmt. b (emphasis added).

[5] *Id.* at cmt. c.

[6] *Id.* at cmt. c.

-2-

know that Lead Counsel regarded the agreement as "incomplete … until the whole had been reduced to another written form."[7]

The lack of agreement on all material terms is further demonstrated by the actions of K&S. The primary purposes of the agreement were to add K&S's plaintiffs, utilize Shanin Specter's trial court experience and have K&S contribute to the case over the long haul in both expense sharing and personnel. However, only nine months after K&S claims the agreement was consummated, K&S pulled out of the AWP MDL litigation and Don Haviland left K&S to start his own firm. The extensive litigation between Mr. Haviland and K&S reveals that K&S was aware of the likelihood of a split at least as early as December 2005.[8] Thus, K&S likely knew that a material condition precedent, and the primary reason MDL Counsel sought to enter into an agreement with K&S, would not exist. Any agreement negotiated based on the assumption that Lead Counsel would have the benefit of K&S's assistance at trial was therefore not negotiated in good faith and is void *ab initio*.

**B.      Even If An Agreement To Pay K&S For Non-MDL Work Existed, It Could Not Trump This Court's Decision Not To Compensate For Such Time And Is Otherwise Modifiable Under Principles Of Equity And Fairness**

**1.      The Court's decision not to compensate for time that did not benefit the MDL was proper.**

It is well established that "[t]he decision of an award of attorney fees in a common fund case is committed to the sound discretion of the trial court, which must consider the unique

---

[7] *Id.* at cmt. b.

[8] Declaration of Steve W. Berman in Support of Lead Class Counsel's Supplemental Opposition to the Williams Motion to Modify Lead Counsel's Allocation of Fees to Include Time and Expense Incurred in State Court Actions (the "Berman Decl."), Ex. K at 244-45. Mr. Haviland testified that, in December of 2005, he and Shanin Specter discussed the possibility of Mr. Haviland's departure and of the entire class action practice going with Mr. Haviland.

contours of the case."[9]   As the MANUAL points out, the factors considered by an MDL court in making such an award will vary, but *may* include one or more of the following:

- any understandings reached with counsel at the time of appointment concerning the amount or rate for calculating fees; any budget set for the litigation; or other terms proposed by counsel or ordered by the court;

- any agreements or understandings, including side agreements, between attorneys and their clients or other counsel involved in the litigation;
      * * *
- the skill and efficiency of the attorneys;

- the complexity and duration of the litigation;

- the risks of nonrecovery and nonpayment;

- the amount of time reasonably devoted to the case by counsel …[10]

Notably, a court is not obligated to consider any one factor over another, or to uphold the terms of a side agreement between counsel if it contradicts the court's own determination as to what is best for the class.

Thus, even if an agreement between Lead Counsel and K&S existed that called for K&S to be paid for non-MDL work, this Court has the authority to reject such a provision in awarding and allocating a fee from the common fund.  Once the Court decided, which it has, that it will not compensate attorneys for non-MDL case time that added no value to the MDL, any side agreement between counsel to the contrary is rendered null and void.

The situation is analogous to courts overriding private contingent fee contracts when deciding to award a lower percentage as a fair and reasonable fee from the common fund that was created for the plaintiffs collectively.  In such instances, courts have exercised their discretion to prevent attorneys from attempting to enforce their agreements with their clients.

---

[9] MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2011) (the "MANUAL").

[10] *Id.*

*See In re Medtronic, Inc.* 2008 U.S. Dist. LEXIS 110259, at *25-28 (D. Minn. Oct. 20, 2008) (noting that attorneys' fees arrangements are inherently subject to *sua sponte* review by the court); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,* 2008 U.S. Dist. LEXIS 65079, at *24-25 (D. Minn. Aug. 21, 2008) (altering agreement and noting that "although the fee arrangements may have been fair when the individual litigations were commenced, the Court concludes that many of the fee arrangements are likely not fair now because of the common benefit work and [other] economies of scale."); *Rosquist v. Soo L. Railroad*, 692 F.2d 1107, 1111 (7th Cir. 1982) ("Even when the validity of the fee contract has not been challenged by the parties, it is within the court's inherent power of supervision over the bar to examine the attorneys' fee for conformance with the reasonable standard of the Code of Ethics.").

In short, the Court has broad discretion, and the Court has spoken on this issue:  time spent on non-MDL drugs and time that added no value to the MDL will not be compensated here.[11]  As set forth in our initial brief,[12] and further elucidated below, most of the time from *other* cases that Movants want to claim here involved drugs not part of this MDL, and none of that time benefitted the MDL.

### 2.   Modification under principles of equity and fairness is also appropriate.

The "DRAFT" stipulated that "[a]ll current co-leads' and Kline & Specter's compensation may be modified from parity to the extent appropriate under principles of equity and fairness." Under principles of equity and fairness, K&S's compensation should be modified because K&S did not perform as promised.  K&S says it upheld its end of the bargain.  It did not – K&S bailed on the eve of trial and only after participating in the case for nine months (compared to the 10 years that

---

[11] Nov. 22, 2011 Hearing Tr. at 28 ("But I wouldn't pay you a penny, let me just say this, out of this class money unless it involves the drugs involved in this case and there was some value added.").

[12] *See* Dkt. No. 7957 at 9-12.

Lead Class Counsel have invested).  And Shanin Specter knew that K&S was going to withdraw long before it did given that his time records reveal little trial preparation even though he was personally assigned a defendant.  Further, it is not otherwise fair and equitable to pay K&S a windfall for work that did not benefit the MDL.[13]

## C.   The Work Done in the State Court Actions Did Not Benefit the MDL Class

Movants have now collectively filed *four* briefs in association with their motion.  *In not one of those briefs do Movants submit any <u>evidence</u> demonstrating that any "work" done in Movants' non-MDL actions was ever used in the MDL or that Lead Class Counsel here actively coordinated any of the efforts in the non-MDL cases.*

### 1.   Movants' work in the State cases merely involved the recycling of MDL work product.

A review of documents in the Pennsylvania Attorney General AWP action (the "Pennsylvania AG case") reveals that Plaintiffs' counsel there, including K&S, Levy and Williams, all benefitted substantially from work performed by Lead Class Counsel in the MDL action.  Indeed, counsel in the Pennsylvania AG case built their case largely on documents found and depositions taken in the MDL by AWP MDL counsel.  Conversely, *no* discovery there was ever used in this MDL.

Several examples from the Pennsylvania AG case against Defendant Johnson & Johnson illustrate the extensive use of discovery from the AWP MDL case.  At least nine J&J witnesses[14] called by Plaintiffs in the Pennsylvania AG case were identified and deposed in the MDL

---

[13] In selectively citing from the DRAFT, K&S ignores the provision it offered that "Kline & Specter's compensation may be modified from parity to the extent appropriate under principles of equity and fairness."  Indeed, to its detriment, K&S fails to even mention this clause in its two briefs.  Furthermore, if Movants wish to enforce the provisions of the "draft" agreement as written, they must admit that Williams, Levy and Jennings Haug & Cunningham, as non-leads, are not entitled to *any* compensation for their work in non-MDL cases.  K&S impliedly admits as much in Footnote F of its Reply.  Of course, this is only consistent with Kent William's belief, before gauchely demanding a windfall now, that he "was unaware that all of this [non-MDL] time could be counted."  *See* Dkt. No. 7957.

[14] These witnesses are identified in paragraph 2 of the Berman Declaration.

litigation.  ***None*** of these witnesses were deposed in the Pennsylvania AG case,[15] and it is therefore clear that counsel found them through the efforts of AWP MDL counsel, and relied on depositions taken by AWP MDL counsel in preparing for testimony.  These witnesses included Centocor's corporate designee, current and past presidents and other senior Ortho and J&J employees.

A review of the Plaintiffs' trial exhibits in the Pennsylvania AG case indicates numerous highly relevant and material documents discovered by MDL counsel were used as exhibits in MDL depositions.  For example, over a dozen of the Pennsylvania AG case trial exhibits against J&J were the exact copies of J&J or Centocor documents identified by MDL counsel and used as exhibits by MDL counsel at J&J depositions, as evidenced by the exhibit stickers placed on them in the MDL depositions.[16]

The reliance of the plaintiffs' counsel on MDL depositions in all of the Pennsylvania AG cases is further confirmed by a ruling of the Commonwealth Court discovery master that the Pennsylvania AG counsel had access to the MDL depositions and could only re-depose defense witnesses for specific good cause shown.[17]  The docket indicates that Pennsylvania AG counsel never offered such good cause; therefore they relied almost exclusively on depositions conducted by MDL counsel, and documents originally identified by MDL counsel, in preparing their cases for trial.[18]

Finally, and in stark contrast to the heavy reliance in the Pennsylvania AG cases by Movants on work product generated by Lead Counsel here, there is ***no*** evidence that any work

---

[15] *Id.*, ¶ 3.

[16] *Id.*, ¶¶ 4-5; *see also id.*, Ex. A (examples of three documents from the AWP MDL used as exhibits in the Pennsylvania AG case).

[17] *Id.*, ¶ 6 & Ex. B.

[18] *Id.*, ¶¶ 2-3.

done in the Pennsylvania AG cases aided the trials or settlement resolutions obtained in the MDL litigation.

### 2.      The Arizona *Lupron* case did not benefit the MDL.

The Arizona court's ruling granting defendants' motion for summary judgment in *Swanston v. Tap Pharmaceutical Products Inc.*, No. 02-cv-004988 (the "Arizona *Lupron* case") demonstrates that case was always primarily about Lupron.  The sole plaintiff in the case, Robert Swanston, was found to lack standing because his **Lupron** purchases were either not based on AWP or had been entirely covered by Medicare and secondary insurance.[19]  As the Arizona court noted, both Swanston's complaint and the statement of facts he submitted in response to the defendants' motion for summary judgment "t[ook] the position that only Lupron was purchased by Swanston during the defined putative class period."  The fact that K&S may have, at some point in time, listed a whole host of other drugs in its complaint, does nothing to change the fact, as the Arizona court itself stated, that the focus of that case was on defendant TAP's actions with respect to Lupron.

Dozens of the drugs listed in the Amended Complaint in the Arizona *Lupron* case are not drugs that were ever at issue in the AWP MDL.  Similarly, nearly one hundred drugs that were at issue in the MDL were never mentioned in the Arizona *Lupron* complaint.  The minimal overlap between the two cases stands in stark contrast to K&S's claim that nearly 80% of its time in the case benefitted the MDL.  In reality, none of the work there benefitted the MDL, and no Movant has submitted one shred of evidence that it did.

---

[19] *Id.*, Ex. D (June 8, 2009 Ruling at 5).

It is K&S's burden to establish that the work it did in the Arizona *Lupron* case benefitted the MDL.  K&S has made no attempt to meet this burden.  There is **no evidence** whatsoever in this record that any time from the Arizona *Lupron* case benefitted the MDL.  **Nothing**.

Further, it is impossible to tell from K&S's time records what work related to Lupron and what work related to other drugs.  First, many of the entries relate to time devoted to filing and serving the complaint, routine issues like extensions of time and the filing of applications for *pro hac vice*, internal status meetings, legal research, internet research and the review of publicly filed documents.[20]  Second, specific drugs are rarely mentioned in the time entries, and because the exact nature of the claims and drugs at issue in the Arizona *Lupron* case was the subject of serious and lengthy dispute, it is nearly impossible to determine, as K&S has purported to do, that time recorded in the Arizona *Lupron* case was related to MDL drugs.  Indeed, in 2007, this Court ordered Mr. Haviland to remove all claims that overlapped with the MDL from his state court cases.  It took over a year-and-a-half of contentious filings before the Arizona court could identify what drugs in the Arizona *Lupron* Case overlapped with the MDL.[21]  If the parties could not identify which drugs were not a part of the MDL, then it is very difficult, if not impossible, for anyone reviewing the Arizona *Lupron* case time records to determine which entries related to drugs in the MDL and which did not.  Yet, without any explanation and without any evidence, K&S claims to have determined that nearly 80% of its time from the Arizona *Lupron* case benefitted the MDL.  Because K&S has failed to explain (and support with evidence) precisely how it reached this conclusion, its assessment of the percentage of work in the Arizona *Lupron* case that did not involve Lupron is entirely speculative.  And, again, there is no evidence that anything adduced in the Arizona *Lupron* case was ever used in the MDL.

---

[20] *Id.*, ¶ 15.

[21] *See* Berman Decl., Ex. D (2009 Ruling at 5-6).

In sum, K&S is unable to support its claims that time in the Arizona *Lupron* case was in any way beneficial to the MDL case.  The plaintiff, however, lacked standing to bring the suit at all, and his only alleged purchases were of Lupron, not any other drug, whether in the MDL or not.

**D.  Lead Counsel Are Not Estopped From Arguing That K&S's Non-MDL Time Did Not Benefit The MDL**

K&S quotes heavily from a brief submitted by Lead Class Counsel in early 2010 in response to Don Haviland's Motion to Stay Distribution of AstraZeneca Fee Award [Dkt. No. 6280], in which Counsel characterized K&S's time as having benefited the certified class in this case.[22]  This argument was made in response to an argument made by Don Haviland, a former K&S associate attorney, that K&S had been inflating it's time to his detriment.  In that prior submission, Lead Class Counsel relied on K&S's characterization of K&S's non-MDL time.  Lead Class Counsel now see that the inclusion of this time was in error because none of the work done in the state court actions was used in this MDL or otherwise benefitted this MDL.  ***In other words, just like we relied on K&S to live up to its promises upon entering the case (which it failed to do), we errantly relied on K&S's explanation that its non-MDL work benefeted the MDL (it did not)***.  This was a mistake.[23]

Notably, Lead Class Counsel cured this error with our lodestar and expense reporting filed on February 14, 2011 (Dkt. No. 7418) by removing K&S's non-MDL time.  And we did not include K&S non-MDL time in any subsequent fee filings.  K&S failed to object.  Thus, if anyone is going to be estopped, it should be K&S.

---

[22] *See* K&S Reply at 6-7.

[23] K&S's strategy is thus exposed.  It has failed to put into the record any evidence that any work in its non-MDL cases was used here in the MDL and instead seeks to rely solely on Lead Counsel's statement to that effect, even though K&S supplied that information to Lead Counsel in the first instance, and that information turned out to be false.

**E.**   **Movants Already Received Hefty Payments From The Lupron And Pennsylvania AG Cases, And If Movants Are To Be Paid For Any Non-MDL Time, Lead Counsel Are Entitled To A Substantial Share Of Movant's Fees From The Pennsylvania Settlements**

K&S, as well as Kent Williams, Adam Levy and the Jennings Haug firm, were all paid *millions of dollars* for their work in the *Lupron* litigation, including work in the Arizona *Lupron* case.[24]  In exchange for these fees, K&S and the other firms agreed to waive any other claims they have for work relating to Lupron, including work in any state court cases.  This agreement was memorialized in the *Lupron* MDL litigation in an Implementation Agreement filed with the court on March 24, 2006.  Robert Swanston, the Plaintiff in the Arizona *Lupron* case, was a party to that agreement.[25]

Indeed, in the *Lupron* MDL litigation, K&S objected to class counsels' fee petition because K&S' time from the state court litigation was not considered when fees were allocated.[26]  The fact that K&S was fully paid for its *Lupron* time years ago is beyond dispute and negates any claims for additional fees in this action.

A review of the Pennsylvania AG litigation file also indicates that K&S, Adam Levy and Kent Williams collectively were paid *millions of dollars* from the Pennsylvania AG cases using Lead Counsel's work product form the MDL.  A July 21, 2011 Order of the Commonwealth court awards fees and expenses of over $14.3 million for Pennsylvania's settlements with Aventis, Bayer, Schering and Pfizer (all defendants in the MDL).[27]  Mr. Haviland was paid over

---

[24] K&S's current claim that its work in *Swanston* benefited the AWP litigation is also contradicted by reference to the *Lupron MDL*.  Even though K&S and its associates, including Williams and Jennings Haug, were paid through the *Lupron* MDL settlement, counsel in the *Lupron* MDL spent much time litigating against K&S, which was using its copycat state court Lupron cases, including *Swanston*, to interfere with the *Lupron* MDL settlement.  Ultimately Judge Stearns ordered K&S to stop making misleading statements and send a corrective notice to class members.  Berman Decl., ¶ 9 & Ex. E.

[25] Berman Decl., Ex. F.

[26] *Id.*, Ex. G.

[27] *Id.*, Ex. H.

-11-

$10.6 million from those settlements, a third of which is due to K&S under the resolution of an arbitration between K&S and Mr. Haviland.[28]  This equates to over $3.5 million in fees to K&S from the settlements with Aventis, Bayer, Schering and Pfizer alone.  The arbitration award also identifies over $1.3 million K&S is entitled to from other settlements in the Pennsylvania AG cases.  Thus, K&S has already received more than $4.8 million from the Pennsylvania AG cases and will be entitled to even more when future fees are distributed.

Adam Levy and Kent Williams were also paid from the Pennsylvania AG case settlements.  Levy received almost $1.3 million from the settlements with Aventis, Bayer, Schering and Pfizer and was undoubtedly paid additional fees from other Pennsylvania AG case settlements.  Kent Williams received an amount far less than what he sought, given resistance from the Pennsylvania AG.  The AG claimed that much of Williams' time was for work that was unnecessary or incomplete, and that his hourly rate was too high for the level and quality of work he performed.  Williams sought $1.6 million in fees, the Pennsylvania AG suggested he deserved only $736,000, and the court ultimately awarded Williams a figure very close to the amount the AG suggested, which represented an over 50% reduction in the amount Williams sought.[29]

As discussed above, the Pennsylvania AG cases were primarily built and litigated using the work product, experts, depositions, and documents compiled by Lead Class Counsel in the MDL.  Far from Lead Class Counsel being unjustly enriched by work Movants never did for the common benefit of the MDL, under the DRAFT agreement K&S seeks to enforce here, Lead Class Counsel are entitled to *their* fair share of the fees earned by K&S in those cases.[30]  K&S

---

[28] *Id.*, Ex. I (Arbitration Decision and Award dated May 18, 2010, p. 3-4).

[29] *Id.*, Ex. J.

[30] If the Court is persuaded that the DRAFT, unexecuted agreement controls this dispute, then that same agreement provides that if K&S was unable to convince the states they represented to formally appoint Lead Class Counsel in those state cases alongside K&S, then at a minimum, K&S would associate, formally or informally, with

calls our argument "fleeting."[31]  It is not:  Lead Counsel are dead serious about pursuing K&S

for this compensation.  What is good for the goose is indeed good for the gander.

### III.    CONCLUSION

Lead Counsel has already credited K&S with its MDL lodestar.  K&S, Williams, Levy

and Jennings have all been more than adequately compensated for their work in their state cases,

which did not in any way benefit the MDL.  The Court should see through Movants unsupported

effort to grab a windfall on the backs of the lawyers who really did the work.


DATED:  January 17, 2012                    By_____/s/ Steve W. Berman_____
                                               Thomas M. Sobol (BBO#471770)
                                               Edward Notargiacomo (BBO#567636)
                                            Hagens Berman Sobol Shapiro LLP
                                            55 Cambridge Parkway, Suite 301
                                            Cambridge, MA  02142
                                            Telephone: (617) 482-3700
                                            Facsimile: (617) 482-3003

                                            **LIAISON COUNSEL**

                                            Steve W. Berman
                                            Sean R. Matt
                                            Hagens Berman Sobol Shapiro LLP
                                            1918 Eighth Avenue, Suite 3300
                                            Seattle, WA  98101
                                            Telephone: (206) 623-7292
                                            Facsimile: (206) 623-0594

---

Lead Class Counsel in each such case.  *See* Draft Agreement ¶ 6, at page 2 of K&S Reply to Lead Counsel's Opposition to the Williams Motion [Dkt. No. 8024].  Moreover, "fees and costs attributed to the state cases will be divided according to principles of equity and fairness." *Id.*  Although K&S claims that it unsuccessfully tried to persuade the Pennsylvania AG to hire Lead Counsel, formal retention was not necessary given that the DRAFT agreement provided that K&S would associate with Lead Class Counsel "informally."  And, given that K&S received millions in Pennsylvania based on Lead Class Counsel's work in the MDL, it is only fair and equitable that Lead Class Counsel share in those fees.

    [31] K&S Br. at 11.

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K St. NW, Suite 300
Washington, DC  20006
Telephone: (202) 355-6435
Facsimile: (202) 355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**LEAD CLASS COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **LEAD CLASS COUNSEL'S SUPPLEMENTAL OPPOSITION TO THE WILLIAMS MOTION TO MODIFY LEAD COUNSEL'S ALLOCATION OF FEES TO INCLUDE TIME AND EXPENSE INCURRED IN STATE COURT ACTIONS**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on January 17, 2012, a copy to LEXISNexis File & Serve for posting and notification to all parties.

                       **/s/ Steve W. Berman**
                       Steve W. Berman

001534-16  497466 V1