# Exhibit B



HOGAN LOVELLS US LLP
1835 Market Street, 29th Floor
Philadelphia, PA 19103
267-675-4600

Attorneys for Defendant
Bristol-Myers Squibb Company

### IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, by Thomas Corbett, in his capacity as Attorney General of the Commonwealth of Pennsylvania,<br><br>Plaintiff,<br><br>v.<br><br>TAP Pharmaceutical Products, Inc. et al.<br><br>Defendants. | No. 212-MD-2004 |

### DEFENDANT BMS'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO BAR LIVE TRIAL TESTIMONY OF WITNESSES NOT PRODUCED DURING DISCOVERY

Defendant Bristol-Myers Squibb Company ("BMS") respectfully submits this memorandum in opposition to Plaintiff's motion in limine to bar the live trial testimony of witnesses not produced during discovery, in particular Denise Kaszuba and Marsha Peterson, two former employees of BMS (hereinafter referred to as the "Motion to Bar Live Testimony").[1]

---

[1] There are other BMS witnesses who were deposed only in prior matters and may be called to testify at trial. The Commonwealth never sought to take their depositions in this matter, and the instant motion in limine therefore presumably does not seek to preclude their testimony. To the extent the Commonwealth is seeking to preclude these witnesses from testifying, the arguments herein are applicable to their testimony, and the Commonwealth's motion should be denied as to them as well.

## Preliminary Statement

In its motion in limine, the Commonwealth is attempting to use its own failure to follow an order issued by the Discovery Master to limit the evidence BMS can offer at trial. After the Commonwealth noticed the depositions of witnesses who had already been deposed extensively, the Discovery Master required its counsel to identify the new matters he hoped to elicit via these additional depositions. The Commonwealth failed to do so, and now seeks to use that failure to prevent BMS from offering the live testimony of these witnesses at trial. The Commonwealth's request is unfair and improper, and should be rejected.

## I.   STATEMENT OF FACTS

### A. The Witnesses at Issue

Denise Kaszuba was a senior pricing analyst at BMS from 1989 until 1995 when she was promoted to associate manager of pricing support. (Kaszuba Trial Affidavit, attached hereto as Exhibit A, at ¶ 3.) She left BMS in January 2007. Ms. Kaszuba's role was primarily a ministerial one. When BMS established or changed a wholesale list price ("WLP") or direct price ("DP") for one of its drugs, Ms. Kaszuba communicated prices to customers and third-party industry publications such as the Redbook, Medispan and First Databank. (Id.) She inputted WLPs and DPs into the internal BMS price master file and notified the BMS internal sales force, customers and the industry publications. (Id. at ¶ 4.)

Marsha Peterson was a former western manager of sales for Oncology Therapeutics Network Corporation ("OTN"), a former subsidiary of BMS.[2] (Peterson Trial Affidavit, attached hereto as Exhibit B, at ¶ 1.) OTN was a specialty distributor of prescription

---

[2] BMS sold OTN to One Equity Partners LLC in May 2005. See PR Newswire, "OTN Becomes Independent as One Equity Partners Completes Purchase from Bristol-Myers Squibb," May 13, 2005, available at http://goliath.ecnext.com/coms2/gi_0199-4222929/OTN-Becomes-Independent-as-One.html (last visited July 29, 2010).


drugs primarily to office-based oncology practices as well as rheumatology and urology practices. (Id. at ¶ 5.) Ms. Peterson was a regional business development manager, *i.e.*, a sales representative, with a territory that comprised 13 states in the Northwest region of the country from 1999 until 2001 when she was promoted to western manager of sales and her territory expanded to two-thirds of the United States. (Id. at ¶¶ 3-4.) She was the western manager of sales until August 2006 when she left OTN. (Id. at ¶ 4.) The sales technique used by OTN sales representatives focused not just on the price of the goods but the value of OTN and its service offerings. (Id. at ¶ 14.)

B. The Prior Discovery Dispute

On November 8, 2007, BMS's counsel sent the Commonwealth's counsel a CD containing the depositions, affidavits, and trial testimony of BMS witnesses in other cases. (See 11/8/07 Letter from J. Zucker to K. Williams, attached hereto as Exhibit C.)[3] BMS produced all of Denise Kaszuba's prior testimony — (1) her August 18, 2005, deposition in a federal case in Boston (the "MDL") (which encompasses 132 pages of testimony); (2) her November 9, 2006, trial affidavit in the MDL; (3) her November 13, 2006, trial testimony in the MDL; (4) her February 18, 2004, affidavit in the MDL; and (5) her May 16, 2007 deposition in the Alabama AWP case (which encompasses 199 pages of testimony). BMS also produced all of Marsha Peterson's prior testimony in the MDL — (1) her April 13, 2005, deposition testimony (which encompasses 235 pages of testimony); (2) her November 15, 2006, trial affidavit; and (3) her December 8, 2006, trial testimony.[4]

---

[3] The Commonwealth's counsel, Donald Haviland, already had access to the depositions and trial testimony in the MDL because he was counsel to the class plaintiffs in the federal multi-district litigation in Boston.

[4] The prior testimony of these witnesses is uncontroversial and the facts they testified to are undisputed. Indeed, Judge Patti Saris incorporated their testimony in her bench trial decision in the MDL. See In re Pharm. Indus. AWP Litig., 491 F. Supp. 2d 20, 59-62 (D. Mass. 2007).

3

The prior depositions of Ms. Kaszuba and Ms. Peterson were broad in scope and covered a wide range of topics. Ms. Kaszuba's depositions in the MDL and the Alabama AWP case covered among other things: her communications of new BMS products and list price changes to wholesalers and industry publications, her understanding of AWP as a reimbursement benchmark used by payors, pricing information that BMS purchased from the industry publications, verification of the product and pricing information provided by the industry publications, and whether BMS communicated to the industry publications that its list price was not the net price paid by wholesalers. Likewise, Ms. Peterson's wide-ranging deposition including the following areas of inquiry: how OTN was organized, OTN's customers and its key accounts, OTN services, and her responsibilities as a sales representative and as a sales manager. BMS did not object to the Commonwealth using any or all of this prior testimony as if it had been taken in the instant case.

Notwithstanding the extensive prior testimony that was provided to the Commonwealth, on March 2, 2010, the Commonwealth noticed the depositions of 15 BMS current and former employees including Ms. Kaszuba and Ms. Peterson. The deposition notice did not list the topics of inquiry for any of the deponents or identify new areas of legitimate inquiry for deponents that had previously testified in the MDL or in the Alabama AWP case. (See 3/2/10 Notice of Deposition, attached hereto as Exhibit D.) In a meet and confer with BMS's counsel, the Commonwealth's counsel – who was also one of plaintiffs' counsel in the MDL – refused to identify new deposition topics not already covered by the prior testimony of Ms. Kaszuba and Ms. Peterson. (See 3/24/10 Letter from L. Tretter to D. Haviland, attached hereto as Exhibit E.) As a result, BMS's counsel informed the Commonwealth's counsel that should he continue to seek the depositions of Ms. Kaszuba and Ms. Peterson despite the extensive prior testimony

given by each, a protective order would be sought. (See 4/15/10 Letter from L. Tretter to D. Haviland, attached hereto as Exhibit F.)

Such a motion was ultimately not necessary because during a conference call with the Discovery Master regarding a number of deposition-related issues, the Discovery Master stated that the Commonwealth should identify new topics if it wanted to depose witnesses who had already been deposed or testified many times. (See 5/13/10 Memorandum of Understanding ["MOU"], attached hereto as Exhibit G.) Counsel for the Commonwealth never identified any new topics which he hoped to gain from additional depositions of Ms. Kaszuba and Ms. Peterson nor did he make a motion to compel their testimony. As a result, no additional depositions of these witnesses took place.

## II. ARGUMENT

### A. Good Cause Existed to Preclude Additional Depositions of Ms. Kaszuba and Ms. Peterson

The Commonwealth argues that BMS has acted in bad faith with respect to the depositions of Ms. Kaszuba and Ms. Peterson. (Motion to Bar Live Testimony at 6-7.) The Commonwealth has already made that argument to the Discovery Master and she rejected it. The Commonwealth's belated effort to revisit that argument with the Court, on the eve of trial, is barred by the law of the case.

Furthermore, the Discovery Master's ruling was clearly correct. Good cause existed to grant relief to protect Ms. Kaszuba and Ms. Peterson from being deposed again. Where good cause is shown, a court may grant a protective order prohibiting or limiting discovery that would cause "unreasonable annoyance, embarrassment, oppression, burden, or expense." Pa. R. Civ. P. 4012. Furthermore, a court will not permit a deposition which is "sough in bad faith" or "would cause unreasonable annoyance, embarrassment, oppression, burden or expense." Pa. R. Civ. P.

5

4011. The protections apply any time "the burdens that discovery places on the witness outweigh the benefits that discovery will provide to the party seeking discovery." Kundus v. Johnson, 39 Pa. D. & C.3d 425, 428 (Pa. C.P. 1985).

Ms. Kaszuba and Ms. Peterson have given extensive testimony at prior depositions and trial about their respective roles and responsibilities at BMS and OTN. It would have caused unreasonable annoyance, oppression, burden, and expense for them to be deposed again when the Commonwealth already has all of their prior testimony and BMS and the non-parties do not object to the Commonwealth using the prior testimony in this case. See Bank of Montreal v. Bronstein, 51 Pa. D. & C.2d 124, 126 (Pa. C.P. 1970) (granting protective order where moving party may be able to supply the desired information without the necessity of a deposition); Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004) (affirming lower court's denial of deposition of corporate representative by defendant where plaintiffs, who own the corporation, were already deposed); Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F.3d 922, 926-27 (8th Cir. 1999) (a second deposition would constitute, among other things, an undue burden on the deponent); Adams v. Sheldon, Civ. Action No. 04-251-JJF, 2008 WL 558615, at *1 (D. Del. Feb. 28, 2008) (second deposition would be duplicative). Furthermore, because the Commonwealth refused to explain why additional depositions of these non-parties were warranted, it may be surmised that their depositions were sought in bad faith to harass BMS and the non-parties. "The Court should not permit [plaintiff's] requests, if they represent a mere 'fishing expedition' or an obvious attempt to force [defendant] into settlement." Berkeyheiser v. A-Plus Investigations, Inc., 936 A.2d 1117, 1127 (Pa. Super. Ct. 2007).

The Discovery Master also indicated a willingness to permit the Commonwealth to take additional depositions of these witnesses if counsel could identify "new material on which under

oath testimony is required." (See Ex. G hereto [5/13/10 MOU].) This requirement was fully in accordance with prior precedent. See, e.g., Davis v. Zazow, 23 Pa. D. & C.2d 143, 145 (Pa. C.P. 1960) (where party seeking deposition already has discovery of certain topics by other means, it must show why additional discovery will substantially aid it); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001) (depositions of three additional witnesses not permitted where there was no evidence that any new, relevant information would be obtained by deposing them); Sun Microsystems Inc. v. Network Appliance, No. C-08-01641 EDL, 2009 WL 5125817, at *5 (N.D. Cal. Dec. 21, 2009) (deposition request denied where prior depositions have indicated no other information to be gained on topic); Acuity v. North Central Video, LLLP, 468 F. Supp. 2d 1071, 1078 (D.N.D. 2006) (a party who is seeking to repeat discovery already undertaken in another action "must indicate with some specificity the issues that are in need of further discovery and why the discovery undertaken to date is not sufficient as to those issues").

However, the Commonwealth's counsel never specified any topics that had not been covered in the prior depositions, nor did he explain why another deposition of these individuals would not be duplicative of their prior testimony. Notably, even in the instant motion, the Commonwealth still has not identified any "new matters" which would have been covered by additional depositions of Ms. Kaszuba and Ms. Peterson. In light of its failure to take the necessary steps to secure their additional depositions, the Commonwealth cannot now use the lack of such additional depositions as the basis for preventing BMS from calling Ms. Kaszuba and Ms. Peterson as live witnesses.

B. The Commonwealth will not be Prejudiced by the Testimony at Issue

7

The Commonwealth repeatedly asserts that it will suffer unfair prejudice if Ms. Kaszuba and Ms. Peterson are permitted to testify live. (Motion to Bar Live Testimony at 3-6.) It bases this assertion on the argument that "Plaintiffs were precluded from inquiring from these witnesses, including Kaszuba and Peterson, about facts that are specific to this case" and therefore "Defendants should not now be given the same opportunity that they argued against in their motion." (Id. at 4.) This argument is flawed on two counts.

First, the Commonwealth was not "precluded from inquiring from these witnesses ... about facts that are specific to this case." To the contrary, as set forth above, the Discovery Master asked the Commonwealth's counsel to identify "new material on which under oath testimony is required" from witnesses who had already been deposed "many times." The Commonwealth's counsel did not do so. In short, the Commonwealth cannot use its own failure to comply with the Discovery Master's directive as evidence of alleged prejudice.

Second, as described above, the prior testimony of Ms. Kaszuba and Ms. Peterson was extensive and wide-ranging, and has been in the Commonwealth's possession since at least November 2007. Thus, the idea that "Plaintiffs do not know the substance or scope of what Defendants' trial questioning will entail" is ludicrous. (Motion to Bar Live Testimony at 5.) It bears repeating that the Commonwealth has never, even in the instant motion, identified any topics beyond those already covered in their prior testimony regarding which Ms. Kaszuba and Ms. Peterson would be competent to testify. In short, the Commonwealth has absolutely no grounds for asserting that BMS plans to elicit testimony from either witness on topics beyond those covered previously, and its speculative assertions to the contrary cannot be evidence of alleged prejudice.[5]

---

[5] The Commonwealth also accuses BMS of "bad faith" in contending in a protective order motion that only its current employees were subject to the party notice procedures under the Pennsylvania rules and that, as a result, the

8

### C. The Commonwealth Does Not Cite Any Authority Which Supports the Relief Sought

Not surprisingly, the Commonwealth does not cite a single case which even suggests, much less supports the proposition, that a witness who gave multiple prior depositions and was therefore not required to give an additional deposition absent a showing of "new material" to be elicited cannot then be called to testify as a live witness. To the contrary, the numerous cases cited above which precluded the taking of additional depositions from witnesses who had already been deposed as "burdensome" and "duplicative" surely did not anticipate such an unfair and improper result.

### III. CONCLUSION

For the reasons set forth above, BMS respectfully requests that the Commonwealth's motion in limine to preclude the live trial testimony of witnesses not produced during discovery, in particular Denise Kaszuba and Marsha Peterson, should be denied.

Respectfully submitted,

By: /s/ Thomas J. Sweeney, III
Steven M. Edwards (*pro hac vice*)
Thomas J. Sweeney, III (*pro hac vice*)
Lyndon M. Tretter (*pro hac vice*)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
Fax: (212) 918-3100

---

Commonwealth's notice was per se invalid as to the ten former employees in the notice (including Ms. Kaszuba and Ms. Peterson). (See Motion for Protective Order, attached hereto as Exhibit H, at ¶ 5.) That was and remains a true and accurate statement of Pennsylvania law. The Commonwealth now claims that BMS's statement of the law was "clearly intended to mislead and confuse the Court and Plaintiffs" on the grounds that BMS has some form of "legal control" over Ms. Kaszuba and Ms. Peterson. (Motion to Bar Live Testimony at 7.) In support of this contention, the Commonwealth cites the following as evidence of BMS's alleged control: (i) BMS's counsel planned to represent Ms. Kaszuba and Ms. Peterson in the event that they were required to sit for additional depositions; and (ii) BMS intends to call Ms. Kaszuba and Ms. Peterson as trial witnesses. (Id.) The Commonwealth's argument is entirely unavailing. First, the fact that BMS's counsel planned to represent Ms. Kaszuba and Ms. Peterson in the event of their depositions does not change the requirement that former employees must be subpoenaed individually. Second, the fact that BMS intends to call Ms. Kaszuba and Ms. Peterson as trial witnesses is not evidence of any "legal control" because they are both appearing voluntarily.

9