# Exhibit I

| | |
|---|---|
| KLINE & SPECTER, P.C., | |
|           Plaintiff | ARBITRATION |
| v. | |
| DONALD E. HAVILAND, Jr., | |
|           Defendant | |

## DECISION AND AWARD OF THE PANEL

AND NOW, this 18th day of May, 2011, we, the undersigned arbitrators, having been appointed by order of the Court of Common Pleas of Philadelphia, having now heard the proofs and allegations of the parties, find as follows:

1. The parties are bound by their valid contract executed on November 9, 2001, wherein they agreed to enforce their agreement pursuant to Pennsylvania's Arbitration Act of 1927. Accordingly, the panel has proceeded pursuant to the provisions of Subchapter A (Statutory Arbitration) of Pennsylvania's Uniform Arbitration Act, 42 Pa.C.S. § 7302 *et seq*.

2. The parties were afforded a full and fair arbitration hearing, which was bifurcated to accommodate the schedules of the parties, their counsel, and the arbitrators.

3. The panel has considered the pleadings submitted and the testimony and evidence admitted in support of each party's positions.

4. The panel determined that the parties contracted to provide Kline & Specter with fees in connection with cases that Mr. Haviland took with him in the event he departed from the law firm of Kline & Specter. Exhibit P-17 (Contract between Kline & Specter and Donald E. Haviland, Jr.). Paragraph 6 of the parties' contract, drafted by Mr. Haviland "to deal with the inherent differences in the class context" (Exhibit D-41), sets forth the fee arrangement in connection with any class action matters in the event Mr. Haviland departed the Kline & Specter law firm. Paragraph 5 sets forth the fee arrangement in connection with any other types of cases in the event of his departure. Paragraph 5 requires Mr. Haviland to recognize Kline & Specter as a referral counsel and pay to Kline & Specter one-third (1/3) of the gross fees that he receives as a result of the representation of clients in non-class action cases that he took with him from the firm. In addition to the clear terms of Paragraph 5, which applies to non-class matters, Paragraph 6 also makes clear that Paragraph 5 does not apply, and was not intended by the parties to apply, to class action matters. Where the words of the parties' contract are clear and unambiguous, the express language governs. Giant Food Stores, LLC v. THF Silver Spring Development, L.P., 959 A.2d 438 (Pa. Super. 2008).

1

While employed at Kline & Specter, Mr. Haviland presided over a department of the firm called the Class Action Department. Because this department handled both class action and non-class action matters (Tr. 1/10/11, pp. 92-94), some documents and e-mails over time used terms such as "class matters" or "paragraph 6 cases" in a general manner. Such usage did not change the nature of specific cases nor alter the clear terms of the parties' contract in the event of Mr. Haviland's departure. In addition, Mr. Haviland's testimony that he was committed to the success of his practice at Kline & Specter was not credible, given his concurrent efforts to set up his separate law practice while still employed at the firm. (Tr. 1/10/11, pp. 266-267, 276-277; Tr. 2/28/11, p. 144; Tr. 3/1/11, p. 121).

In any event, the parties agree that Mr. Haviland departed Kline & Specter with the cases known as Commonwealth v. TAP Pharmaceutical Products, Inc. et al., 312 MD 2004 (Commonwealth Court) (referred to by the parties as the "PA AWP" case), and Bluecross and Blueshield of Alabama and Bluecross and Blueshield of Michigan v. TAP Pharmaceutical Productions, Inc. et al. (referred to by the parties as the "Lupron Blues" case). Exhibits P-31 (PA AWP Case) and P-32 (Lupron Blues Case).

By their very nature, neither the PA AWP nor the Lupron Blues cases are class action matters. A class action matter must conform to specific rules, including those that set forth the prerequisites to determine whether a member of a class may sue as a representative party on behalf of the other members of the class, the timing of the court's certification of the class, and the manner in which the class is notified. F.R.Civ.P. 23; Pa.R.C.P. 1701 et seq.

Defendant acknowledged that the PA AWP case "was not filed under the Pennsylvania class action rule...,"[1] given that the case was brought by the Attorney General of the Commonwealth of Pennsylvania, acting pursuant to the Commonwealth's *parens patriae* authority. In the PA AWP case, the Commonwealth is the only plaintiff suing several defendant pharmaceutical companies, and to proceed with its lawsuit, the Commonwealth did not require a class representative, a court's certification or notification to a class. Rather, the Commonwealth's interests are of a quasi-sovereign nature. See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez, 458 U.S. 592, 607 (1982) (stating that in order to maintain a *parens patriae* action, a state "must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party."). James Donahue, Chief Deputy Attorney General of Pennsylvania, also acknowledged that the PA AWP case was brought by the Commonwealth in its *parens patriae* capacity, not as a class action. (Tr. 9/27/10, pp. 43-44, 109-113).

Shortly after Mr. Haviland's departure, Kline & Specter notified Pennsylvania's Deputy Attorney General of its "fee split" interest with Mr. Haviland in the PA AWP case. Exhibit D-25 (September 20, 2006 Letter). Mr. Haviland, who was copied on the letter, did not counter or object to the interest claimed.

In the Lupron Blues case, two insurance plans, *i.e.* Bluecross Blueshield of Alabama and Bluecross Blueshield of Michigan, were the only plaintiffs against several defendant pharmaceutical companies. Like the Commonwealth, these insurance plans did not require a class representative,

---

[1] Brief for Defendant, p. 38.

2

class certification, or court approval. Further, Defendant properly acknowledged at the hearing that "the Blues case is not a class action matter." (Tr. 10/12/09, p. 90).

The majority panel rejects the suggestion by Mr. Haviland that Kline & Specter should be estopped from asserting that certain cases are in fact non-class cases based on Mr. Haviland's claims of inducement and/or reliance. Although Mr. Haviland may have been guided by his own mistaken judgment, the record reflects that Kline & Specter did not induce Mr. Haviland to act in derogation of the written terms of the parties' contract. "An estoppel requires the presence of two essential elements. The first is an inducement to act. The second is a justifiable reliance upon that inducement. An 'inducement' sufficient to create an estoppel may consist of words or conduct which intentionally or negligently causes another to believe that a promise has been made or that a particular state of facts exists." Havas v. Temple University of Com. System of Higher Educ., 516 A.2d 17, 18-19 (Pa.Super. 1986) (citations omitted); see also Kreutzer v. Monterey County Herald Co., 747 A.2d 358, 362 (Pa. 2000) (noting that when there is no more than a conflict in testimony as to whether an inducement occurred, courts are properly suspicious of a claim for estoppel since persons of ordinary prudence will modify a writing with another writing in any matter of importance, and finding that because there was no inducement, the court need not reach the issue of justifiable reliance.) No credible evidence was presented at the hearing to establish the requirements for a claim of estoppel. In this case, there was neither a representation by Kline & Specter nor a reasonable belief by Mr. Haviland that the non-class cases, namely PA-AWP and Lupron Blues, would escape the contractual requirements of Paragraph 5 of the parties' agreement.

The PA AWP and Lupron Blues cases clearly are not class action matters, and as a result, they are properly subject to Paragraph 5 of the parties' contract. Accordingly, in consideration of the claims submitted by Kline & Specter, the panel finds in favor of Kline & Specter as to Count I of the Second Amended Arbitration Complaint as follows: Donald E. Haviland, Jr. shall pay Kline & Specter the following amounts in the below referenced cases,[2] representing one-third (1/3) of the gross attorneys' fees received by Mr. Haviland, as well as six percent (6%) annual interest from the date indicated until the date of payment by Mr. Haviland:

- Lupron Blues                        $ 258,983.24      May 2, 2007
- PA AWP – Glaxo Smith Kline          $  91,749.07      June 30, 2007
- PA AWP – Abbott                     $ 189,286.72      November 18, 2008
- PA AWP – Baxter                     $ 469,110.16      October 31, 2009
- PA AWP – AstraZeneca                $ 372,500.63      July 22, 2010
- PA AWP – TAP                        $ 307,486.00      December 28, 2010
- PA AWP – Dey                        $ 233,333.00      February 1, 2011

Mr. Haviland shall also provide to Kline & Specter distribution sheets of amounts disbursed, and pay to Kline & Specter one-third (1/3) of the gross attorneys' fees received by him in the following additional matters presently known to the Panel, as well as six percent (6%) annual interest from the date he receives the fees until the date of his payment to Kline & Specter:

---

[2] With the exception of the Lupron Blues case described above, the remaining cases listed are components of Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc. et al., (i.e. the PA AWP case).

3

- PA AWP – Aventis
- PA AWP – Bayer
- PA AWP – Bristol-Myers Squibb
- PA AWP – Johnson & Johnson
- PA AWP – Pharmacia and Pfizer
- PA AWP – Schering Plough

To the extent that the remaining claims submitted by Kline & Specter have not been withdrawn, they are denied.

5. Mr. Haviland may use the sums he deposited in escrow during the pendency of the arbitration hearing to satisfy in part the payments due under Paragraph 4 of this Decision.

6. All claims submitted by Mr. Haviland are denied.

7. Any pending oral or written motions, petitions, or objections are denied.

8. Except as specifically provided in prior orders of the panel, the costs and fees of this arbitration shall be borne equally by the parties.

9. This decision and award is in full and final resolution of all claims submitted to arbitration.

_____
E. Fryman, Chair, Panel of Arbitrators

_____
R. Wellington, Panel of Arbitrators

Joining in the Decision and Award of the Panel except as to paragraph 4, as set forth in the accompanying Dissenting Statement.

_____
J. Del Sole, Panel of Arbitrators

4