# Exhibit J



SCANNED

## THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br>By Thomas W. Corbett, Jr., in his capacity as<br>Attorney General of the Commonwealth of<br>Pennsylvania,<br>         Plaintiff<br><br>         v.<br><br>TAP PHARMACEUTICAL PRODUCTS, INC., et al.,<br>         Defendant | : : : : : : : : : : : : | No. 212 MD 2004 |

### BRIEF OF THE COMMONWEALTH OF PENNSYLVANIA TO PAY KENT M. WILLIAMS $284,419.67 OUT OF SETTLEMENT FUNDS FROM ADVENTIS, PFIZER, BAYER AND SCHERING AS QUANTUM MERUIT FOR WORK DONE BY MR. WILLIAMS

Before this court is the Commonwealth's Motion to pay Kent M. Williams $284,419.67 out of the settlement escrow held by the Haviland Hughes, LLC to compensate him in quantum meruit for work he did in this matter. Mr. Williams, who performed a variety of tasks at the behest of the Commonwealth's outside counsel in this matter, Kline and Specter and the Haviland Hughes, LLC without a contract, seeks compensation for his work. The amount proposed by the Commonwealth is supported by case law and the facts. No other amount has such support.

This brief will explain the basis for the rate proposed by the Commonwealth and why a claim for a larger amount by Mr. Williams must be rejected.

I. **Introduction**

The Commonwealth initiated this litigation by contracting with Kline and Specter in November 2003 to bring and litigate this case. This case originally involved 36 drug company defendants. Several of those defendants were subsidiaries of the same parent so that there were actually 15 drug companies who were defendants in this case. After two rounds of preliminary objections and two attempts at removal under federal law, the case was returned to this court for litigation in September 17, 2007. At that time, outside counsel from the Commonwealth began to seek and ultimately review discovery from the defendants. Like every other aspect of this, discovery was hard fought with Special Master hearings and a variety of motions for protective orders and motions to compel. In the course of this discovery process, Kline and Specter, and later the Haviland Law Firm, enlisted Kent M. Williams, a Minnesota attorney, to help with discovery in this case.

Mr. Williams performed a variety of tasks relating to this matter, including reviewing documents of various defendants, preparing and reviewing privilege logs, drafting correspondence and briefs related to the adequacy of discovery and, on four occasions, appearing before the Discovery Special Master.

Mr. Williams was never admitted *pro haec vice* in this case. He did not take any depositions, he did not participate in trial and he was terminated by Mr. Haviland approximately six months before trial for scheduling a deposition in Philadelphia and not showing up to take the deposition.[1]

In short, Mr. Williams has performed some tasks, like document review, which should be compensated as if a paralegal had performed them. He performed other tasks, like appearing

---

[1] An act which could have led to sanctions for costs of the deponent and his counsel against the Commonwealth. Mr. Haviland took the deposition.

before a Special Master, which should be compensated at an attorney's rate of compensation. He has performed and billed other tasks for which the Commonwealth received no value because Mr. Williams' work product was unneeded, never timely delivered or never delivered at all. The Commonwealth has conducted a review of each time entry presented by Mr. Williams in Exhibit B to his statement of claim. That analysis is reflected in the OAG Williams Reasonable Attorney Fee Worksheet Commonwealth Quantum Meruit Exhibit 42.

On July 12, 2011, Kent Williams filed a Statement of Claim naming the Office of Attorney General as "third-party defendant." That poor choice of a cause of action divests this court of jurisdiction of Mr. Williams' Statement of Claim as noted in Commonwealth's Preliminary Objections to the Williams Statement of Claim filed simultaneously with this Motion. Mr. Williams seeks more than $1.6 million in fees. An award of fees to Williams of that amount is unsupported. In making this motion, the Commonwealth does not waive its rights under its contract for legal services dated November 5, 2003, the subsequent novation to dated September 23, 2006 with Kline and Specter and the Haviland Law Firm.

## II.   The Standard for Quantum Meruit Award of Fees is the Market Value of the Services Provided

Quantum meruit provides a basis for recovery when a person provides a benefit to another outside of the context of a contract and allowing the person receiving that benefit to keep the benefit without compensation would be unjust. While the Commonwealth has a contract with Kline and Specter and Haviland, it has no contract with Mr. Williams. Kline and Specter and Haviland also have no contract with Mr. Williams.

Thus, the key issue in a quantum meruit proceeding involves the methodology to set compensation. That methodology involves determining reasonable economic value for the services provided.

This Court looks at several factors for determining attorney compensation.

> In all cases where the court is authorized under applicable law to fix the amount of counsel fees it shall consider, among other things, the following factors: (1) the time and effort reasonably expended by the attorney in the litigation; (2) the quality of the services rendered; (3) the results achieved and benefits conferred upon the class or upon the public; (4) the magnitude, complexity and uniqueness of the litigation; and (5) whether the receipt of a fee was contingent on success.

PA. R. Civ. Pro., 1716, Roethlein v. Portnoff Law Associates, Ltd., 2011 WL 2732223 (Pa. Cmwlth. 2011).

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably extended on the litigation times a reasonable hourly rate." Blum v. Stenson, 465 U.S. 886, 888 (1984). The calculation results in a number that courts call a "lodestar."

Blum arose in the context of a determination of the fee to be paid to a prevailing party in a federal civil rights action. 42 C.S.A. § 1988. The federal case law on setting fees under various federal fee shifting statutes is instructive because those cases focus on the same issue as is presented in this case; namely, how to value legal services outside of the context of contract. Defendants in federal civil rights, antitrust, fair credit reporting and more than 100 other statutes with fee shifting provisions have no contract with the counsel representing the plaintiffs. Fees are determined through a process analogous to quantum meruit. Under each of those statutes, the common theme is whether an attorney's fee is "reasonable." Pennsylvania v. Delaware Valley Citizens Council, 478 U.S. 546, 561 (1986).

4

The United States Court of Appeals for the Third Circuit has established that, absent extraordinary circumstances, the market rates applicable in the community where the legal services are performed should apply. Interfaith Community Organization v. Honeywell International, 426 F.3d 694, 705 (3d. Cir. 2005).

Several Pennsylvania federal courts considering fee petitions under various fee shifting statutes have applied the fee schedule of Community Legal Services of Philadelphia as the appropriate methodology for setting reasonable fees. See Maladonado v. Houstoun, 256 F.3d 181, 187-88 (3d. Cir. 2001); Alexander v. NCO, 2011 WL 2415156 (E.D. Pa. 2011); Pelzer v. City of Philadelphia, 2011 WL 611817 at *3 (E.D. Pa. 2011). One of those courts limited the attorney fee rate to the CLS Schedule when, as is in this case here, the attorney's involvement was "primarily limited to the discovery process and … [H]e had no involvement in preparing for, or litigating, dispositive motions or trial." Pelzer, 2011 WL 611817 at *3.

When courts have varied from the CLS Fee Schedule, it has been because of some additional factor, such as the court's familiarity with the market for attorney services; affidavits or declarations showing attorneys being paid a higher rate for similar work; the skill, experience or reputation of the attorney or the staleness of the CLS Schedule. Mitchell v. City of Philadelphia, 2011 WL 1370863 (E.D. Pa. 2010); (additional declarations supplied and only CLS Schedule available is dated April 1, 2006); Davis v. Riddle & Associates, 579 F. Supp. 2d 692 (E.D. Pa. 2008) (CLS rates not current, affidavit submitted by another attorney to support proposed rates as market based.); Equal Employment Opportunity Commission v. Federal Express, 537 F. Supp. 2d 700, 722 (court awards slightly more than CLS rates after considering additional affidavits). None of these additional factors are present here. The current CLS Schedule is dated June 23, 2011, just a few weeks ago. No evidence has been presented to show

higher rates are paid in the Philadelphia area for the kind of work Mr. Williams performed in this matter.

Some courts have discussed whether the contingent nature of the case should warrant an enhancement in the hourly rate. In general, compensation for the contingent nature of this kind of litigation is addressed by the rates themselves. For example, in Braun v. Wall Mart Stores, 2011 WL 229522 (Pa. Super 2011), the Superior Court noted that while Pennsylvania Rule of Civil Procedure 1716, calls for the consideration of the contingent nature of the case, the existence of a contingency alone will not always result in an enhancement to reasonable rates in most cases.

> To the extent that the factors creating a contingent risk in a particular case are mitigated or are already taken into account when calculating the lodestar amount, a contingency enhancement is not "reasonable" and should not be applied.

Id. at *92, quoting, Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524 (3d Cir.1997). See also, Delaware Valley Citizens' Council, 478 U.S. 546 at 566 (upward adjustments in the lodestar are permitted only in rare and exceptional circumstances when supported by specific evidence on the record). Moreover, use of today's CLS rates for work done several years ago, when market rates were much lower, is considered adequate compensation.[2] See e.g., Lanni v. New Jersey, 259 F. 3d 146 (3d. Cir. 2001) (use of current rates compensates for delay in payment). Mr. Williams seeks compensation for more than 3,000 hours of time. The Commonwealth disputes some of those hours. Nonetheless, the Commonwealth is endorsing paying Mr. Williams several hundred thousand dollars. He is more than adequately being compensated for the contingent nature of his work on this case.

---

[2] For this reason, prejudgment interest would not be appropriate. Moreover, most other counsel has not been paid until the past week. None of them received interest for the work they did, in some cases, several years ago.

6

Using the CLS Fee Schedule is the appropriate reasonable rate for addressing[3] Mr. Williams' quantum meruit claims.

Mr. Williams seeks much higher compensation for himself than that sought in the Commonwealth's motion. There are four reasons for the difference. First, the Commonwealth does not compensate him for time he did not actually incur for this case. All of the time in 2004 which relates to ERISA (The federal Employee Retirement Income Security Act) and a motion to dismiss are unrelated to this case. ERISA has never been an issue in this case. There has never been a motion to dismiss filed in this case. Preliminary Objections are the means for determining whether an action should be dismissed under the Pennsylvania Rules of Civil Procedure. In addition, Mr. Williams' bills for time in amounts far greater than the other people who were at the same event. See Affidavit of Robert A. Hughes at ¶ 4.

Second, the hourly rates sought by Mr. Williams are far in excess of any rates that have been approved for any court in the Philadelphia, the legal community where much of the litigation in this case took place for the same kind of work. Mr. Williams has presented no evidence that those rates are appropriate for the work done in this case. In fact, one court, Pelzer, found that the exact circumstances present here, where an attorney did work in discovery and was removed from the case before trial, did not warrant any enhancement in rates above the CLS Schedule.

Third, Mr. Williams charges an extraordinary amount for specific task. The Commonwealth has taken the exhibits attached to Mr. Williams' fee petition and put them in

---

[3] Mr. Williams was admitted to the bar in 1991. For the time prior to October 25, 2007, he is given the rate for attorneys with 11- to 15-years' experience on the CLS Schedule. After that date, the rate for attorneys with 16- to 20-years' experience is used.

7

date order.[4] They are attached as Commonwealth Quantum Meruit Exhibits 1 to 40. The Commonwealth then associated Mr. Williams' time with his description of the document. The result is shown on the spreadsheet attached as Commonwealth Quantum Meruit Exhibit 43. This process reveals some stunningly large costs for the individual components of Mr. Williams' work product. For example, for a Memorandum in Support of Commonwealth's Opposition for Defendants Motion to Quash for a Protective Order, Mr. Williams charges $95,060 for that 24-page document. Mr. Williams worked on the Pennsylvania's privilege log. The original document he was provided as a starting point is attached as Commonwealth Quantum Meruit Exhibit 48. The edited privilege log he returned is Exhibit 49. The ? on Exhibit 50. See also, Affidavit of Robert M. Hughes at ¶6. For the handful of changes Mr. Williams made to the document, he charges $26,760. Mr. Williams sent a similar letter regarding discovery to two defendants. He charges $113,742 for the first letter and then $78,317 for subsequent similar letter.[5] See Exhibits 12 and 12A.

Part of the problem here is that Mr. Williams charged full attorneys rates for tasks that really should have been performed by a paralegal. Courts do not permit this inefficient use of attorney's resources. Delaware Valley Citizens' Council, 478 U.S. at 567 (noting that the Court of Appeals allowed rates as low as $25 an hour where work required little legal ability our work could be done by an attorney working at the associate level). In Loughner v. University of Pittsburgh, 260 F. 3d 173, 180 (3d. Cir. 2001), the court noted that awarding an attorney rate for tasks which could be performed paralegal was inappropriate. In that case, like here, the attorney claiming fees had performed nearly all tasks himself. See also, In re: Busy Beaver Building Centers, 19 F.3d 833, 855 (3d Cir. 2001) (Footnote 34 catalogs a list of cases where attorney

---

[4] For situations where there is no date on the document, the Commonwealth used the date last accessed in the properties section of the computer file for the document.

[5] For this reason, the Commonwealth uses the lowest rate in the attorney classifications for Williams.

compensation was reduced to paralegal or associate level when the task was typically performed by same).

Finally, Mr. Williams' bills for work he might have done, but which was never delivered to the Commonwealth or its outside counsel. This category involves most of the time billed in 2010. Mr. Williams had begun his dispute with Mr. Haviland over fees in this matter. As a result, he scheduled a deposition of Beth Trent and failed to show the deposition. He now seeks to bill for the work he did preparing for a deposition he never took. This work and other work, which was either not authorized or delivered, is simply uncompensable. That work is identified by reason code on Quantum Meruit Exhibit 42.

In summary, the Commonwealth asserts that three of the criteria established by Rule 1716 for evaluating counsel fees are contested. For those issues, the Court should conclude:

> a) the adjustments made by the Commonwealth to rates, classification (attorney v. paralegal), and quantity of hours claimed by Mr. Williams result in the proper assessment of the time and effort reasonably expended in the litigation;

> b) that while aspects of the litigation were large and hard fought, the work Mr. Williams did involved discovery disputes common in much litigation; and

> c) while payment to Mr. Williams was contingent on success, multiplying the hours found appropriate times the CLS fee schedule rates adequately compensates Mr. Williams for that contingency.

When the reasonable hours and reasonable rates criteria set forth by the United States Supreme Court for the award of fees generally is applied to this case, the appropriate amount to award Mr. Williams in this case is $726,675.72 less the $150,000 he has been paid since February 15 of this year and less the $292,356.08 Mr. Williams has previously been paid.

WHEREFORE, the Commonwealth requests that this Court award $284,419.67 with a net amount payable to him out of the Adventis, Bayer, Pfizer and Schering Settlement Funds.

Respectfully submitted,

Linda L. Kelly
Attorney General

By: *[signature]*

James A. Donahue, III
Chief Deputy Attorney General

Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 787-4530
(717) 787-1190 (fax)

Donald E. Haviland, Jr., Esquire (66615)
Robert G. Hughes, Esquire (66946)
**HAVILAND HUGHES, LLC**
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

Lead Counsel for Plaintiff, the Commonwealth of Pennsylvania

### IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA by Thomas W. Corbett, Jr., in his capacity as Attorney General of the Commonwealth of Pennsylvania,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>TAP PHARMACEUTICAL PRODUCTS, INC., et al.,<br><br>　　　　　　　　Defendants. | Dkt. No. 212 MD 2004 |

### AFFIDAVIT OF ROBERT G. HUGHES

I, Robert G. Hughes, being duly sworn, depose and say:

1. I am a partner of Haviland Hughes, LLC, Lead Counsel for Plaintiffs in this matter. I am submitting this Affidavit in support of the Brief of the Commonwealth of Pennsylvania.

2. I am an attorney in good standing and duly licensed and admitted to the Bars of Pennsylvania and New Jersey. The testimony set forth in this Affidavit is based on first-hand

1

knowledge, about which I could and would testify competently in open court if called upon to do so.

3. Prior to the completion of this Affidavit, and at the request of the Pennsylvania Office of the Attorney General, my office conducted a review of the various time records provided by Kent Williams. I reviewed these records in the spring of 2011 and again in July of this year.

4. The scope of my review included comparing Mr. Williams' entries to corresponding entries in the time records maintained by Haviland Hughes, L.L.C. for this case. In particular, I reviewed corresponding entries for such events as conference calls, conferences, etc. where Mr. Williams' time entry indicates he would have been participating along with an attorney from Haviland Hughes, L.L.C. There were instances where Mr. Williams' entry was for a time amount greater than the corresponding Haviland Hughes L.L.C. entry – for example, January 23, 2009 he entered 1.5 hours for a case status call, but the corresponding entries for members of my firm are for 1.00 hours. As further examples, in May, June and July of 2008 Mr. Williams has multiple entries described as "discuss with co-counsel" but I found no corresponding entry in Haviland Hughes L.L.C.'s time records for the corresponding date.

5. The review also consisted of identifying tasks done by Mr. Williams that could have been done by someone of far less experience then Mr. Williams and therefore at a lower hourly rate charged to the Plaintiff Agencies. As an example, Mr. Williams spent nearly 1,000 total hours reviewing and authoring letters relating to defendant privilege logs. While the drafting of letters to opposing counsel is a lawyer level task, the review of the logs themselves could have been done at the paralegal level.

2

6.      The Office of the Attorney General also asked my office to review and offer some understanding as to history and context of those documents Mr. Williams has submitted to the OAG as evidence of his work product in this case. I have participated in this review and have also reviewed the documents submitted by Williams while reviewing subsequent versions where such subsequent versions were created. An example of this process is "Plaintiff's Privilege Log, Commonwealth of Pennsylvania", which is Exhibit 15 to Williams' Statement of Claim. As a result of our review, I verified that the original of that document was not created by Mr. Williams, but was emailed to him by Haviland Hughes L.L.C. on June 17, 2009 with the understanding that Mr. Williams would revise the log as needed. Mr. Williams emailed the revised privilege log back to Haviland Hughes L.L.C. by email of June 26, 2009. My office has provided both versions of the privilege log together with several emails relating thereto (and created in the ordinary course of our business) to the OAG.

Further affiant sayeth not. Executed this **27**th day of July, 2011.

By: *(signature)*

Robert G. Hughes, Esq.
HAVILAND HUGHES, LLC
111 S. Independence Mall East
The Bourse, Suite 1000
Philadelphia, PA 19106
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

Sworn to and subscribed
before me this 27 day of
July, 2011.

*(signature)*
NOTARY PUBLIC

NOTARIAL SEAL
Karen L Watters, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires Sept. 27, 2014

3