# EXHIBIT A

## AWP TRACK TWO SETTLEMENT

## REVISED ESCROW AGREEMENT

This Revised Escrow Agreement (this "Agreement") is made and entered into by The Huntington National Bank through its Trust Department (the "Escrow Agent"), Abbott Laboratories, Amgen Inc., Aventis Pharmaceuticals Inc., Hoechst Marion Roussel, Baxter Healthcare Corp., Baxter International Inc., Bayer Corporation, Dey, Inc., Fujisawa Healthcare, Inc., Fujisawa USA, Inc., Immunex Corporation, Pharmacia Corporation, Pharmacia & Upjohn, LLC (f/k/a Pharmacia & Upjohn, Inc.), Sicor, Inc., Gensia, Inc., Gensia Sicor Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and ZLB Behring, L.L.C. (collectively, "Track Two Defendants") and Class Plaintiffs as defined in the Track Two Settlement Agreement and Release dated on or about March 7, 2008 ("Track Two Settlement Agreement"), in consideration of the following promises of each party.  Track Two Defendants and Class Plaintiffs are referred to collectively as the "Settling Parties" in the litigation entitled *In Re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL 1456 (the "MDL Class Action").  Unless otherwise provided herein, the terms defined in the Track Two Settlement Agreement shall have the same meaning in this Agreement.

I.   **Terms and Conditions**

   1.   Track Two Defendants and Lead Class Counsel hereby appoint the Escrow Agent to establish and administer an escrow account on the terms and conditions set forth herein, and the Escrow Agent hereby accepts such appointment on such terms and conditions.

   2.   Track Two Defendants shall deliver to the Escrow Agent a total settlement payment in the amount of $125,000,000.00 as required by Paragraphs III.B.1 and III.C.1 of the Track Two Settlement Agreement in immediately available United States funds (the "Escrow Funds") pursuant to the wire transfer instructions provided in paragraph 1 of Section IV below.  The Escrow Agent shall confirm receipt of such funds, or any portion of such funds, as the case may be, in writing to the Settling Parties.  The total amount of $125,000,000.00 shall be delivered in two or three separate payments as provided for in Paragraph III.C.1 of the Track Two Settlement Agreement.

   3.   The Escrow Agent shall keep the precise amount of each Track Two Defendant's required contribution to the Settlement Amount confidential.  Each Track Two Defendant's required contribution shall be set forth on the confidential Final Track Two Settlement Funding Document held by the MDL Mediator.  These specified amounts are the product of a confidential mediation by the MDL Mediator, with the approval of the MDL Court, between the Track Two Defendants and Class Counsel and among the Track Two Defendants themselves.  The MDL Mediator secured these contribution amounts on the condition of their remaining confidential.  Notwithstanding the above provision regarding

confidentiality, in the event that a Track Two Defendant defaults on its obligations to make monetary payments pursuant to this Agreement, the Parties may make reference to the precise amount of that Track Two Defendant's required contribution in any sealed court filing or other sealed proceedings necessary to enforce the provisions of this Agreement. In addition, nothing herein is intended to prevent any individual Track Two Defendant from disclosing or referring to its individual contribution as it deems necessary.

4. Until the Escrow Agent receives written notification from counsel for Track Two Defendants and Lead Class Counsel that the Track Two Settlement Agreement has become effective, it shall invest and reinvest the Escrow Funds in United States Agency or Treasury Securities (or a mutual fund investing solely in such instruments) or other similar short-term United States government obligations as shall be directed in writing by Lead Class Counsel for the Class Plaintiffs and as shall be acceptable to the Escrow Agent. In the absence of written direction from the Settling Parties regarding the investment of the Class Escrow Funds, the Escrow Agent will invest and reinvest the Class Escrow Funds in the U.S. Treasury Money Market Fund. For the purposes of this Agreement, the date on which the Track Two Settlement Agreement shall become effective is as defined in Paragraph III.K of the Track Two Settlement Agreement.

5. All interest on or other income realized by investment of the Class Escrow Funds or any portion thereof shall be accumulated and added to the Class Escrow Funds. Any investment losses realized by investment of Class Escrow Funds or any portion thereof shall be charged to the Class Escrow Funds.

6. This Escrow Agreement and the Class Escrow Funds are subject to the supervision and control of the United States District Court for the District of Massachusetts (the "MDL Court"). Except as set forth in paragraph 6(a) and 6(b) of this Section I, the Class Escrow Funds shall be withdrawn or otherwise removed from the Escrow Account established pursuant to this Escrow Agreement only in accordance with the terms of an order of the MDL Court delivered to the Escrow Agent by Lead Class Counsel.

7. The Escrow Agent shall deliver the Class Escrow Funds only as set forth below:

    (a) Following receipt of written notice signed by counsel for Track Two Defendants and Lead Class Counsel stating that the Track Two Settlement Agreement has not been approved by the MDL Court or has been cancelled or terminated or has otherwise become null and void for any reason, the Escrow Agent shall disburse any portion of the Class Escrow Funds received into the Escrow Account, including any interest or other income earned thereon, to Track Two Defendants in proportion to each individual Track Two Defendant's contribution to the Class Escrow Funds, net of taxes paid or due with respect thereto, the fees and costs paid or incurred for the settlement notice, any fees or costs paid or incurred for

administration of the Escrow Account and payment of the ISHP Initial Payment;

(b) Regardless of whether the Track Two Settlement Agreement has become effective, the Escrow Agent shall disburse funds as needed for

(i) payment of taxes or estimated taxes that become due on income earned by the Class Escrow Funds, as determined by Rust Consulting Inc., the Class Administrator for the Settlement, with notice of such payments to Lead Class Counsel and Track Two Defendants;

(ii) payment of the costs associated with claims administration including, but not limited to, settlement notice. Such payment shall be made only from the Track Two Defendants' advance payment of $28.5 million, of which $3 million is initially transferred to cover costs of notice and claims administration, which, within ten (10) business days after the later of (a) the Track Two Defendants' receipt and confirmed, written acceptance of completed Exhibit A to the Track Two Settlement Agreement and (b) MDL Court's preliminary approval of the Track Two Settlement Agreement, the Track Two Defendants shall advance to the Escrow Account pursuant to Section III.C.1 of the Track Two Settlement Agreement, plus any additional funds transferred by Track Two Defendants thereafter to cover the costs associated with notice and administration. Payment of the costs associated with claims administration including, but not limited to, settlement notice, will be made at the direction of Lead Class Counsel, with notice of such payments provided to Track Two Defendants;

(iii) payment of the ISHP Initial Payment (unless the Track Two Settlement Agreement is terminated pursuant to Section III.F.2); and

(iv) all other payments contemplated by the Track Two Settlement Agreement and authorized by the MDL Court by court Order delivered to the Escrow Agent by Lead Class Counsel.

(c) After receipt of written notice signed by counsel for Track Two Defendants and Lead Class Counsel stating that the Track Two Settlement Agreement has become effective, the Escrow Agent shall, upon receipt of an order of the Court so directing

(i) disburse any remaining amounts for reimbursement or payment of costs and expenses incurred in the provision of notice to the members of the Class and the administration and distribution of the settlement, in accordance with such order of the Court; and

(ii) distribute the remaining Escrow Funds, as ordered by the Court.

3

provided, however, that the Escrow Agent shall retain amounts in the Escrow Account necessary for the payment of taxes or estimated taxes and fees and expenses of the Escrow Agent, as directed by Lead Class Counsel.

8. The Class Escrow Funds are intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of the Settling Parties, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Class Escrow Funds to be treated as a qualified settlement fund from the earliest date possible, and the parties hereto shall take all actions as may be necessary or appropriate to this end.

9. After the Track Two Settlement Agreement becomes effective, Track Two Defendants shall no longer have any interest in the Class Escrow Funds, and shall no longer have any rights or obligations under this Escrow Agreement.

10. All Counsel for all Settling Parties' each warrant to and agree with the Escrow Agent that, unless otherwise expressly set forth in this Agreement, there is no security interest (as defined in the Uniform Commercial Code) in the Class Escrow Funds or any part of the Class Escrow Funds; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Class Escrow Funds or any part of the Class Escrow Funds; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Class Escrow Funds or any part of the Class Escrow Funds or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Class Escrow Funds or any part thereof.

## II. Provisions as to the Escrow Agent

1. This Escrow Agreement expressly and exclusively sets forth the duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Escrow Agreement against the Escrow Agent.

2. This Escrow Agreement constitutes the entire agreement between the Escrow Agent and the other parties hereto in connection with the subject matter of this escrow. Unless it is signed by the Escrow Agent as a party, no other agreement including the Track Two Settlement Agreement entered into between the parties, or any of them, shall be considered as adopted or binding, in whole or in part,

   upon the Escrow Agent notwithstanding that any such other agreement may be deposited with the Escrow Agent or the Escrow Agent may have knowledge thereof.

3.  The Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

4.  The Escrow Agent shall have the right to liquidate any investment held in order to provide funds necessary to make required payments under this Escrow Agreement.  The Escrow Agent shall have no liability as a result of any liquidation of any investment prior to its maturity when that liquidation is necessary to provide funds to make required payments under this Escrow Agreement.

5.  The Escrow Agent shall be protected in acting upon any document which the Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, Court orders authorizing release, disbursement or retainage of the Class Escrow Funds.

6.  In the event of any disagreement between any of the parties to this Escrow Agreement, or between any of them and any other party, resulting in inconsistent claims or demands being made in connection with the matters covered by this Agreement, or in the event that the Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and the Escrow Agent shall be entitled to continue  to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by the United States District Court for the District of Massachusetts, or (ii) all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and the Escrow Agent shall have been notified thereof in writing signed by all such parties.

7.  The Escrow Agent shall be indemnified and held harmless by the parties hereto from anything which it may do or refrain from doing in connection herewith, or for any claims, demands or losses, or for any damages made or suffered by any party to this Escrow Agreement, excepting such as may arise through or be caused by the Escrow Agent's breach of this Escrow Agreement or any willful misconduct or gross negligence.

8.  The parties hereto irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of

any suit, action or proceeding to enforce any provision of, or based upon any right arising out of this Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in such Court.

9. The Escrow Agent will maintain a daily record of all transactions in the Class Escrow Account and will provide the Settling Parties with a periodic statement (at a frequency to be determined from time to time but no less often than annually) reflecting all such transactions and the property held in the account as of the end of the reporting period.

10. The Escrow Agent shall have the authority to retain a subcustodian for any or all property for as long as it deems necessary. The Escrow Agent shall also have the authority to retain other agents, including attorneys, to assist it in the performance of its duties.

### III. Compensation of the Escrow Agent

1. The Escrow Agent shall be entitled to reasonable compensation as well as reimbursement for its reasonable costs and expenses incurred in connection with the performance by it of services under this Class Escrow Agreement (including reasonable fees and expenses of the Escrow Agent's counsel). Lead Class Counsel is solely responsible for paying the Escrow Agent the amounts to which it is entitled, and such compensation shall be paid from the funds in the Class Escrow Account, after Court approval and subject to other provisions of this paragraph. The Escrow Agent is entitled to reimbursement for reasonable expenses for each year or any part thereof.

2. The Escrow Agent shall not debit the Class Escrow Funds for any charge for its fees or its costs and expenses, until approved by Lead Class Counsel after notice to Track Two Defendants. Fees and expenses of the Escrow Agent charged against the Escrow Funds shall, to the extent possible, be paid out of interest earned by the Escrow Funds.

### IV. Miscellaneous

1. Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing and shall be deemed to have been given when personally delivered to the party specified or when placed in the United States mail, registered or certified, with return receipt requested, postage prepaid and addressed as follows:

    If to the Escrow Agent:

The Huntington National Bank
Attention: Robyn Griffin, Senior Vice President
Rockefeller Center
1230 Ave of the Americas, 7th Floor
New York, NY  10020

Candi Moore, Senior Vice President
The Huntington National Bank
7 Easton Oval – EA4E63
Columbus, OH  43219
Telephone: (614) 331-9556
E-mail: candi.moore@huntington.com

Cash / Wire Instructions:

The Huntington National Bank

[redacted]

If to Lead Class Counsel:

Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eight Ave, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Edward Notargiacomo
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003

If to Track Two Defendants

Steven F. Barley
HOGAN & HARTSON, LLP
111 S. Calvert St., Suite 1600
Baltimore, MD  21202
Telephone: (410) 659-2724
Facsimile: (410) 539-6981

        James P. Muehlberger
        SHOOK, HARDY & BACON, LLP
        2555 Grand Boulevard
        Kansas City, MO  64108
        Telephone: (816) 474-6550
        Facsimile: (816) 421-5547

If to Rust Consulting, Inc.:

        Ken Wood
        Director of Bank of Tax
        625 Marquette Avenue, Suite 880
        Minneapolis, MN  55402
        Telephone: (612) 359-2859
        E-mail: kwood@rustconsulting.com

Any party may unilaterally designate a different address by giving notice of each change in the manner specified above to each other party.

2. Any disputes arising under this agreement will be governed by Massachusetts law.  It shall inure to and be binding upon the parties hereto and their respective successors, heirs, and assigns.  All representations, covenants, and indemnifications contained in this Escrow Agreement shall survive the termination of this Escrow Agreement.

3. The terms of this Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the parties hereto.

4. If any provision of this agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

5. The Escrow Agent may resign at any time from its obligations under this Escrow Agreement by providing written notice to the parties hereto.  Such resignation shall be effective not less than thirty (30) days after such written notice has been given.  In the event no successor escrow agent has been appointed on or prior to the date such resignation becomes effective, the Escrow Agent shall be entitled to tender into the custody of a court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement.  The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent.  Unless otherwise provided in this Agreement, final termination of this Escrow Agreement shall occur when the Escrow Agent shall have released from the Escrow Account all amounts pursuant to Section I, paragraph 6 above.

6. All titles and headings in this Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

7. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

8. This Agreement shall be effective as of the date the last party to this Agreement fully and appropriately executes this document.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the date first above written.


**Dated:**  February ___, 2012


| **Counsel for Defendants** | **Lead Counsel for Plaintiffs** |
|---|---|
| _____ | _____ |
| Counsel for Amgen Inc. | Sean R. Matt |
|    Steven F. Barley | HAGENS BERMAN SOBOL SHAPIRO LLP |
|    HOGAN & HARTSON, LLP | 1918 Eight Ave, Suite 3300 |
|    111 S. Calvert St., Suite 1600 | Seattle, WA  98101 |
|    Baltimore, MD  21202 | Telephone: (206) 623-7292 |
|    Telephone: (410) 659-2724 | Facsimile: (206) 623-0594 |
|    Facsimile: (410) 539-6981 | |

_____
Counsel for Aventis Pharmaceuticals
Inc., Hoechst Marion Roussel Inc.,
Sanofi-Synthelabo Inc., and ZLB
Behring, L.L.C.
    James P. Muehlberger
    SHOOK, HARDY & BACON, LLP
    2555 Grand Boulevard
    Kansas City, MO  64108
    Telephone: (816) 474-6550
    Facsimile: (816) 421-5547

**Dated:** February ___, 2012            _____
                                         Robyn Griffin
                                         Senior Vice President
                                         The Huntington National Bank
                                         Rockefeller Center
                                         1230 Ave of the Americas, 7th Floor
                                         New York, NY  10020
                                         Telephone:  (212) 581-5055

                                         Escrow Agent The Huntington National Bank