**Exhibit A**
**To**
**ORDER OF DISMISSAL WITH PREJUDICE OF REMAINING CLAIMS**
**AGAINST MYLAN**

(Settlement Agreement and Release)

## SETTLEMENT AGREEMENT AND RELEASE

I. PARTIES

This Settlement Agreement and Release (this "Agreement") is entered into as of the Effective Date, as defined in Paragraph III.23 below, by and among: Ven-A-Care of the Florida Keys, Inc., for its own behalf and, with respect to such qui tam claims as the Relator has pled on their behalf, on behalf of the United States of America and the State of California (in any of the foregoing capacities, the "Relator"); Zachary T. Bentley, T. Mark Jones, Luis E. Cobo and John Lockwood, M.D., each of the foregoing individuals, for his own behalf and in all other capacities (the preceding four parties, the "Relator's Current and Former Officers and Directors" or "Individual Plaintiffs"); the State of California ("California") (California, the Relator and the Individual Plaintiffs, are collectively referred to as the "Plaintiffs"); and Mylan Inc. (f/k/a Mylan Laboratories Inc.), Mylan Pharmaceuticals Inc. and Mylan Institutional Inc. (formerly known as UDL Laboratories, Inc.), (the preceding three parties collectively, the "Mylan Parties"). (Collectively all of the above will be referred to as the "Parties.")  The United States is not a party to this Agreement; however, this Agreement is conditioned upon the United States' written consent executed in the form attached as **Exhibit 1**.


II. PREAMBLE

As a preamble to this Agreement, the Parties agree as follows:

A.     On or about April 10, 2000, the Relator and one or more of the Individual Plaintiffs filed a qui tam action in the United States District Court for the District of

1

Massachusetts captioned *United States ex rel. Ven-A-Care of the Florida Keys, Inc. v. Actavis Mid Atlantic LLC, et al.,* Civil Action No. 08-10852 (D. Mass.), which was subsequently amended while under seal on February 15, 2001, February, 1, 2002 and February 15, 2005, eventually asserting claims against one or more of the Mylan Parties as to one or more of the Mylan Parties' products. That complaint was further amended several times while under seal, and was further amended and unsealed on May 21, 2008. These claims and proceedings are referred to collectively as the "Federal Qui Tam Proceedings".

B.      California and the Relator are jointly pursuing relief in an additional action against one or more of the Mylan Parties styled *State of California ex rel. Ven-A-Care of the Florida Keys, Inc. v. Abbott Laboratories, Inc., et al.,* Case No. 722855, Filed In Camera Under Seal, Superior Court of the State of California, removed to the United States District Court for the Central District of California, Case No. 03-CV-2238, and transferred to the United States District Court for the District of Massachusetts, Civil Action No. 03-11226-PBS, MDL 1456, Master File No. 01-12257-PBS (D. Mass.) (the "California Proceedings").   (The Federal Qui Tam Proceedings and the California Proceedings are jointly referred to as the "Civil Actions".)

C.      All claims at issue in the Federal Qui Tam Proceedings have previously been resolved by settlement except for those relating to Medicaid payments by the California Medicaid Program (otherwise known as the California Medical Assistance Program) (hereinafter referred to as the "California Medicaid Program"), which are intended to be resolved by this Agreement. This Agreement is also intended, inter alia, to resolve all claims at issue in the California Proceedings.

D.     In one or more of the Civil Actions, the Plaintiffs contend that between January 1, 1991 and the Effective Date of this Agreement, one or more of the Mylan Parties submitted, or caused to be submitted, false claims to the California Medicaid Program and/or, among other things, (i) one or more Mylan Parties knowingly set, reported and/or maintained, or caused to be set, reported and/or maintained, false, fraudulent and/or inflated prices, including, without limitation, Average of Suggested Wholesale Price to Pharmacy, Average Wholesale Price, AWP, Suggested Wholesale Price, SWP, Price to Wholesaler and/or Distributor, Direct Price to Pharmacy, Central Purchase Price to Chain (Such as Warehouse Price), Institutional or Other Contract Price (Nursing Home, Home Health Care), Other Price, Suggested List Price, Wholesale Acquisition Cost, Wholesale Net Price, Direct Price, Wholesale Direct Price and/or Net Direct Price, and/or other prices reported by one or more of the Mylan Parties or published by compendia (any of the foregoing, collectively "Reported Prices"), for drugs manufactured, marketed and/or sold by or on behalf of one or more Mylan Parties (any and all drugs manufactured, marketed and/or sold by or on behalf of any Mylan Party shall hereinafter be referred to as "Mylan Covered Drugs"), including, without limitation, Mylan Covered Drugs with Labeler Codes 00378, 51079, 62794, 59490, 25074, 55160, 55567, 15330, 57315, 39506 and 65015; (ii) one or more Mylan Parties knowingly set, reported and/or maintained, or caused to be set, reported and/or maintained, false, fraudulent and/or inflated Reported Prices that were higher, and sometimes substantially higher, than the prices paid by purchasers of one or more of the Mylan Covered Drugs; (iii) one or more of the Mylan Parties used an artificially inflated spread between the Reported Prices and the actual selling prices for drugs in marketing, promoting and/or selling Mylan Covered Drugs to

3

existing and potential customers; and (iv) one or more of the Mylan Parties allegedly knew that the reporting of false, fraudulent and/or inflated Reported Prices in connection with certain Mylan Covered Drugs and/or marketing those Mylan Covered Drugs based on the artificially inflated spread between the Reported Prices and the actual selling prices would cause the customers and others to submit false, fraudulent and/or inflated claims for reimbursement to the California Medicaid Program.

E.      For purposes of this Agreement, the conduct described in Paragraph II.D of this Agreement and any action, omission or other conduct, whether actual or alleged, contemplated by any provision of Paragraph II.D or referred to or alleged in any of the Civil Actions, is hereafter referred to as the "Covered Conduct".

F.      The Plaintiffs contend that, as a result of the Covered Conduct, the Medicaid Program, the United States and California were damaged.

G.      Each of the Mylan Parties denies any and all wrongdoing, and each of the Mylan Parties denies that it has any liability.

H.      To avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these disputed claims, and as a result of a mutual desire to settle their disputes, the Parties wish to resolve their differences relating to the Civil Actions and the Covered Conduct and have reached a full, fair, and final settlement as set forth in this Agreement, which settlement the Parties acknowledge and agree is not punitive in purpose or effect.

I.      This Agreement is intended to fully, finally, and forever resolve any and all claims against, and liability of, any of the Mylan Released Parties (as defined below) for or arising from the Covered Conduct, including, without limitation, all of the claims that

4

were brought, could have been brought, or could be brought in the future by or on behalf of any of the Plaintiffs related to the "Federal-Share" of California Medicaid payments, which is defined to mean the United States' portion of any Medicaid reimbursement arising from any of the Covered Conduct for any Mylan Covered Drugs, or the California "State-Share," which is defined to mean California's state portion of any Medicaid reimbursement arising from any of the Covered Conduct for any Mylan Covered Drugs.

J.     This Agreement is the result of a compromise of disputed issues of law and fact, and the execution, terms and delivery of this Agreement shall not constitute or be construed as an admission of fault, liability, or wrongdoing by any of the Parties, nor does it constitute evidence of any liability or unlawful conduct on the part of the Parties, and this Agreement shall not be admissible as evidence of, or otherwise used to allege, any fault or liability of the Parties in any investigation, administrative claim, action, suit, or proceeding, or federal or state court or arbitration proceeding.

K.     At the time of the execution of this Agreement, (i) the Relator represents to the Mylan Parties that it is not aware of any other filed or threatened *qui tam* lawsuit against the Mylan Parties in connection with the Covered Conduct; and (ii) the Relator and California represent that no interest in their claims set forth in the Civil Actions has been assigned by them, in whole or in part, to any third party.

III.    <u>TERMS AND CONDITIONS</u>

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations set forth below in this

Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      The foregoing Preamble is incorporated herein.

2.      In full and final settlement of all of the Released Claims (as defined below), Mylan Inc. (the "Mylan Payor") shall pay, or shall cause to be paid on its behalf, the sum of fifty seven million United States dollars ($57,000,000) (the "Settlement Amount") for the benefit of the Plaintiffs and the United States on the terms and subject to the conditions set forth herein.  The Plaintiffs have agreed among themselves that, from the Settlement Amount, the sum of twenty-two million two hundred thousand dollars ($22,200,000) shall be paid to the United States ("the United States Settlement Portion").  The Parties agree that the payment of the Settlement Amount shall resolve, fully and finally, all of the Released Claims (as defined below).  The Parties further agree that all amounts payable to the Relator or any of its  (or any other Plaintiff's) attorneys or other representatives or advisors shall be paid out of the Settlement Amount without further liability of any of the Mylan Released Parties.  The allocation of the Settlement Amount among the United States, California, the Relator, the Individual Plaintiffs and their respective counsel is a matter that shall be and has been handled separately by and among the Relator, the Individual Plaintiffs, California, the United States, and their advisors, without any involvement by or input from any of the Mylan Parties.  None of the Mylan Parties was consulted about the allocation of the Settlement Amount among the Plaintiffs and the United States, nor have any of the Mylan Parties had any input into the allocation.  For this reason, none of the Mylan Parties is in a position to agree to the allocation and, as a part of the settlement, will not contest such allocation or be deemed to

have endorsed or been responsible for any such allocation.  Also for this reason, the allocation of the Settlement Amount shall not be deemed material to this Settlement Agreement and therefore no dispute among or between California, the Relator, the Individual Plaintiffs (or any Individual Plaintiff), and/or the United States concerning the allocation of the Settlement Amount shall be grounds for termination of this Settlement Agreement, nor shall any such dispute give any Plaintiff who is a party to this Settlement Agreement the right to fail to perform its obligations under this Settlement Agreement.

3.      Within seven (7) business days following the Effective Date of this Agreement, as defined in Paragraph III.23 below, the Mylan Payor shall pay the Settlement Amount by wire transfers to California, the Relator and the United States in the amounts, and pursuant to the instructions, set forth in Paragraph 4 below and in the Settlement Amount Allocation Schedule, attached hereto as **Exhibit 2**.

4.      **THIS PARAGRAPH CONTAINS AN INDEMNITY AND HAS BEEN READ CAREFULLY BY RELATOR.**  California's net State share of the Settlement Amount ("the California Net State Amount") shall be $26,307,000, which amount shall be inclusive of attorneys' fees and costs payable to the State of California and shall not include the California relator share of $6,993,000, and shall not include the federal share ($22,200,000). The California Net State Amount of $26,307,000 shall be delivered to California by the Mylan Payor in accordance with instructions from Supervising Deputy Attorney General Nicholas Paul, at the Office of the Attorney General of California. The full amount of the $22,200,000 United States Settlement Portion shall be delivered to the United States by Mylan in accordance with instructions from United States Department of Justice Senior Trial Attorney Laurie Oberembt and the

federal relator share shall be paid by the United States in such amount as may be agreed to between the United States and the Relator or as ordered by the Court. The payment of the amounts of the California Relator's share and the Relator's attorney fees and costs reimbursement from the Settlement Amount, totaling $8,493,000, shall be delivered in accordance with instructions from Relator's counsel James J. Breen.  The Parties will cooperate to exchange wiring and routing instructions and W-9 forms so that such payments can be promptly made.  **The Relator expressly INDEMNIFIES and holds the Mylan Released Parties (hereinafter defined) harmless from and against any and all claims by persons or entities who have represented (or claim to have represented) the Relator in connection with the claims released herein for:  (1) attorneys' fees, costs, and expenses; or (2) any portion of the Settlement Amount.**

5.      Within three (3) business days following the Mylan Payor's payment of the full Settlement Amount,  the Parties shall file the following in the appropriate court or courts: (1) Joint Stipulations of Dismissal with Prejudice and proposed Orders of Dismissal with Prejudice in the California Proceedings and the Federal Qui Tam Proceedings in the form attached hereto as **Exhibits 3 and 4** respectively; (2) the Consent of the United States in the Federal Qui Tam Proceedings in the form attached hereto as **Exhibit 1;** and (3) motions, if necessary, seeking entry of the proposed Orders of Dismissal with Prejudice in the California Proceedings and the Federal Qui Tam Proceedings.  Each Party shall use its reasonable best efforts to obtain entry of such proposed Orders of Dismissal with Prejudice and to seek to cause each such Order of Dismissal with Prejudice to become a final and non-appealable order without amendment or modification thereto or limitations thereof (a "Final Order") as soon as possible.

8

6.     In consideration of the obligations of the Mylan Parties set forth in this Agreement, conditioned upon the Mylan Payor's payment in full of the Settlement Amount specified herein, California releases and agrees to refrain from instituting, directing or maintaining any action or other proceeding seeking suspension or exclusion from the California Medicaid Program against any of the Mylan Released Parties for the Covered Conduct, or seeking to impose a Corporate Integrity Agreement on any of the Mylan Released Parties based on the Covered Conduct.

7.     In consideration of the obligations of the Mylan Parties in this Agreement, and conditioned on the Mylan Payor's payment in full of the Settlement Amount in accordance with Paragraphs III.2 through III.4 above and receipt of the Orders of Dismissal with Prejudice, each Plaintiff, on behalf of itself (including, with respect to the Relator, to the fullest extent it is permitted under the law, all *qui tam* claims brought on behalf of California and the United States), and each of its and their respective present and former predecessors, successors, heirs, trustees, subsidiaries, parents, assigns, divisions and any current or former shareholders, directors, officers, agents, agencies, departments, political subdivisions, boards, commissions, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing, fully and finally release, acquit, and forever discharge each of the Mylan Parties and each of their respective present and former predecessors, successors, heirs, trustees, subsidiaries, parents, assigns, divisions and each of the current and former shareholders, officers, directors, employees, managers, partners, agents, agencies, departments, servants, attorneys, advisors and other representatives of any of the foregoing (individually, "Mylan Released Party" and collectively, the "Mylan Released Parties") from any and all

9

civil, regulatory and/or administrative claim, action, suit, demand, right, cause of action, liability, judgment, damage or proceeding, whether sealed or unsealed (including attorneys' fees, penalties, punitive damages, costs, and expenses of every kind and however denominated), which has been asserted, could have been asserted or could be asserted in the future under any source of law, contract, in equity or other right, for or arising from any of the Covered Conduct, including but not limited to the California State-Share and the Federal-Share for California (collectively, the "Released Claims"). Without limiting the generality of the foregoing, and to the fullest extent that the Relator and California are capable under applicable law, this release fully discharges and releases each Mylan Released Party from (i) any obligation to pay Medicaid-related damages, restitution, fines and/or penalties arising from the Covered Conduct; (ii) any obligation to the Relator or its attorneys, including any Relator's share, expenses, attorneys' fees, and costs associated with the Civil Actions to which Relator or its attorneys may be entitled; (iii) any obligation to pay the California State-Share of any claim asserted in the Civil Actions or for or arising from any Covered Conduct; and (iv) any obligation to pay the Federal-Share relating to the California Medicaid Program of any claim asserted in the Civil Actions or for or arising from any Covered Conduct.

8.     In consideration of the obligations of the Plaintiffs set forth in this Agreement, each Mylan Party, on behalf of itself and its predecessors, successors, subsidiaries, parents, assigns and divisions and any current or former shareholders, directors, officers, agents, employees, managers, partners, servants, attorneys, advisors and other representatives of any of the foregoing fully and finally release the United States of America, California, any of their agencies, agents, employees, servants, attorneys and

10

departments, the Individual Plaintiffs and the Relator, in its own capacity and in its capacity as qui tam representative of the United States of America and California, and Relator's present and former predecessors, successors, heirs, trustees, parents, subsidiaries, assigns and divisions and each of the current and former officers, directors, employees, managers, partners, agents, servants, attorneys, advisors and other representatives of any of the foregoing from any claims or liabilities arising from the Covered Conduct, or the investigation or litigation of claims arising from the Covered Conduct, which any of the Mylan Parties has or could have asserted.  This paragraph shall not, however, release any accounts receivable due from California or any agency or instrumentality of California.

9.    Nothing in this Agreement shall be construed to create a waiver of the Sovereign Immunity of the United States of America or California.

10.    Notwithstanding any other term of this Agreement, including the release provisions in Paragraphs III.7 and III.8 above, each of the following is specifically reserved and excluded from the scope and terms of the releases, or is beyond the scope of and is not covered by this Agreement, as applicable:

(a)    Any claims based upon such obligations as are created by this Agreement;

(b)    The subrogation rights to claims for personal injury or injury to real or personal property arising from usage by a participant in the Medicaid Program of any of the Mylan Covered Drugs covered thereunder;

(c)    Any claims based on a failure to deliver products or services due;

(d)     Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code) or any state tax or revenue law;

(e)     Any express or implied warranty claims or other claims for defective or deficient products and services provided by any Mylan Party;

(f)     Any liability to the United States or California for any conduct other than the Covered Conduct;

(g) Any civil or administrative liability that the Mylan Parties have or may have under any state statute, regulation, or rule not covered by the release provisions in Paragraphs III. 6 or III. 7 above; and/or

(h) Any claims arising from the Mylan Parties' obligations to report Average Manufacturer Prices ("AMPs") and/or Best Prices to the Centers for Medicare and Medicaid Services, and/or pay rebates under any Rebate Agreement, under the provisions of the Omnibus Budget Reconciliation Act of 1990 and all amendments thereto for any conduct other than the Covered Conduct.

11.     In the event that at any time during the period of five years following the Effective Date of this Agreement ("Five Year Period"), California is unable to obtain, for use in setting reimbursement amounts, the Average Manufacturer Prices ("AMPs") and Average Sales Prices ("ASPs") as reported by Mylan Pharmaceuticals Inc. and Mylan Institutional Inc., formerly known as UDL Laboratories, Inc., to the federal Centers for Medicare and Medicaid Services ("CMS"), Mylan Pharmaceuticals Inc. and Mylan Institutional Inc. will, upon request, provide their AMPs and ASPs to California under the same terms of confidentiality as they were previously provided to CMS. The reporting of AMPs and ASPs consistent with this Paragraph shall satisfy in full during the

Five Year Period any presently existing legal obligation that the Mylan Parties may have to disclose, directly or indirectly, to California, the market pricing for the pharmaceutical products to which that reporting pertains. However, this Paragraph does not relieve the Mylan Parties of any new disclosure obligations that may arise from changes in state or federal law enacted after the Effective Date of this Agreement so long as such changes are generally applicable to the pharmaceutical industry.

12.     The Parties each represent that this Agreement is freely and voluntarily entered into without any degree of duress whatsoever.

13.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14.     This Agreement shall be governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement shall be the United States District Court for the District of Massachusetts and that the United States District Court for the District of Massachusetts shall retain continuing jurisdiction over the enforcement of this Agreement and all releases, including for purposes of issuing an injunction in protection of any court's jurisdiction to enforce the terms, conditions, and releases provided for in this Agreement.

15.     This Agreement, together with all Exhibits and attachments, constitutes the complete agreement between the Parties with regard to the subject matter hereof. This Agreement may not be amended except by written consent of all of the Parties. The failure by any of the Parties to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement, or a course of dealings between the

13

Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

16.    The individuals signing this Agreement on behalf of a Party represent and warrant that they are authorized to execute this Agreement on behalf of such Party.

17.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

18.    This Agreement is binding on each of the Mylan Parties and their respective successors, transferees, and assigns.

19.    This Agreement is binding on each of the Plaintiffs, their attorneys, successors, transferees, heirs, and assigns.

20.    This Agreement has been negotiated at arm's length and between and among persons sophisticated and knowledgeable in the matters dealt with in this Agreement.  In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties.  Accordingly, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.  The provisions of this Agreement shall be interpreted in a reasonable manner to effectuate the purposes of the Parties and this Agreement.

21.    The Relator agrees that the settlement and this Agreement are fair, adequate and reasonable, and that it will not take any action to challenge this Agreement, or any provision hereof, in any court.

22.    If any provision of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or

14

unenforceable, the remainder of this Agreement, and application of such provision to other circumstances, shall remain in effect and be interpreted so as best reasonably to effect the intent of the Parties.  Notwithstanding the foregoing, if either the payment or any of the release provisions hereof are found to be unenforceable or invalid by a court of competent jurisdiction, then such invalidity or unenforceability shall be cause for voiding the entirety of this Agreement at the election of the Party, the interests of which are injured by the finding of invalidity or unenforceability; however, the  Plaintiffs shall be entitled to re-file, reinstate and continue to litigate their claims against the Mylan Parties without regard to any statute of limitations or other time barred defense which may be asserted by the Mylan Parties for the time period commencing upon the Effective Date of this Settlement Agreement and ending 30 days after the date that the Settlement Agreement is voided pursuant to the terms of this Paragraph and any applicable statute of limitations shall be deemed tolled for the time period described herein.

23.     This Agreement is effective (the "Effective Date") on the later of a.) the date of signature of the last signatory to this Agreement and delivery of fully executed copies of the Agreement to all Parties or  b.) the date that Relator's counsel informs counsel for Mylan, in writing or via email, that he has in his possession the signed Consent of the United States, in the form attached hereto as Exhibit 1, and is prepared to file it with the Court upon payment of the Settlement Amount. Facsimiles or PDFs of signatures shall constitute acceptable binding signatures for purposes of this Agreement.

24.     The Parties understand, acknowledge and agree that (i) they have each performed an independent investigation of the allegations of fact and law made in connection with the Civil Actions and the Covered Conduct and (ii) they each may

15

hereafter discover facts in addition to, or different from, those that they now know or

believe to be true with respect to the subject matter of the Civil Actions or the Covered

Conduct.  Nevertheless, it is the Parties' intention to resolve their disputes pursuant to the

terms of this Agreement and, thus, in furtherance of their intentions, the Agreement shall

remain in full force and effect notwithstanding the discovery of any additional facts or

law, or changes in law with respect to the subject matter of the Civil Actions or the

Covered Conduct, and the Agreement shall not be subject to rescission or modification by

reason of any such changes or differences in facts or law.

IN WITNESS WHEREOF, the Parties have executed this Agreement:

**MYLAN PARTIES**

Mylan Inc. (f/k/a Mylan Laboratories Inc.) and Mylan Pharmaceuticals Inc.

BY: _Kristin Kolesar_____ Date: _2/16/12_

Kristin Kolesar, Esq.

Title:   Secretary, MPI & SVP & Global G.C. Operations, Mylan

Mylan Institutional Inc. (f/k/a UDL Laboratories, Inc.)

BY: _____ Date: _2/16/2_

David Kennedy

Title:  Vice President -- Tax

16

**RELATOR AND ITS ATTORNEY,**
**THE BREEN LAW FIRM, P.A.**

BY: _____   Date: 2/17/2012

James J. Breen
The Breen Law Firm, P.A.
Suite 260
5755 North Point Parkway
Alpharetta, Georgia 30022
Counsel to Ven-A-Care of the Florida Keys, Inc.

VEN-A-CARE OF THE FLORIDA KEYS, INC.

BY: _____   Date: 8/17/2012

T. Mark Jones, President

**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

ZACHARY T. BENTLEY

_____   Date: 2/17/12

Zachary T. Bentley

T. MARK JONES

_____   Date: 2/17/2012

T. Mark Jones

JOHN M. LOCKWOOD

_____   Date: _____

John M. Lockwood

LUIS E. COBO

_____   Date: 2/17/12

Luis E. Cobo

17

**RELATOR AND ITS ATTORNEY,**
**THE BREEN LAW FIRM, P.A.**

BY: _____    Date: _____
James J. Breen
The Breen Law Firm, P.A.
Suite 260
5755 North Point Parkway
Alpharetta, Georgia 30022
Counsel to Ven-A-Care of the Florida Keys, Inc.

VEN-A-CARE OF THE FLORIDA KEYS, INC.

BY: _____    Date: _____
T. Mark Jones, President

**RELATOR'S CURRENT AND FORMER OFFICERS AND DIRECTORS**

ZACHARY T. BENTLEY

_____    Date: _____
Zachary T. Bentley


T. MARK JONES

_____    Date: _____
T. Mark Jones


JOHN M. LOCKWOOD

_____    Date: 2/17/12
John M. Lockwood


LUIS E. COBO

_____    Date: _____
Luis E. Cobo

17

**CALIFORNIA**

State of California
Office of the Attorney General

BY: _____   Date: _2/16/12_
Nicholas N. Paul
Supervising Deputy Attorney General
Bureau of Medi-Cal Fraud and Elder Abuse California Department of Justice
1455 Frazee Rd, Ste 315
San Diego, CA 92108

By:_____   Date: _____
Toby Douglas
Director
CA Department of Health Care Services
1501 Capitol Avenue, Suite 71.6001
MS 0003
Sacramento, CA 95814

**CALIFORNIA**

State of California
Office of the Attorney General

BY: _____  Date: _____
Nicholas N. Paul
Supervising Deputy Attorney General
Bureau of Medi-Cal Fraud and Elder Abuse California Department of Justice
1455 Frazee Rd, Ste 315
San Diego, CA 92108

By: _____  Date: 2/16/12
Toby Douglas
Director
CA Department of Health Care Services
1501 Capitol Avenue, Suite 71.6001
MS 0003
Sacramento, CA 95814

18

**Exhibit 1**
**to**
**Settlement Agreement and Release**
**Consent of the United States**

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Master File No. 01-12257-PBS<br><br>Subcategory No. 06-11337-PBS<br>Civil Action No. 08-cv-10852 |
| THIS DOCUMENT RELATES TO:<br><br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., by and through its principal officers and directors, Zachary T. Bentley and T. Mark Jones  v. Actavis Mid Atlantic LLC, et al.* | Judge Patti B. Saris<br><br>Magistrate Judge Marianne B. Bowler |

## CONSENT OF THE UNITED STATES OF AMERICA TO THE RELATOR'S DISMISSAL WITH PREJUDICE OF CLAIMS PURSUANT TO 31 U.S.C. § 3730 (b) (1)

Pursuant to 31 U.S.C. § 3730(b) (1), the United States hereby consents to:

(1)     The dismissal with prejudice of the remaining claims in the above captioned action with respect to Mylan Inc. (f/k/a Mylan Laboratories Inc.), Mylan Pharmaceuticals Inc. and Mylan Institutional Inc. (f/k/a UDL Laboratories, Inc.) (collectively, "Mylan") pursuant to the Settlement Agreement and Release between Relator, Ven-A-Care of the Florida Keys, Inc., ("the Relator"), the State of California and Mylan (attached hereto as Exhibit A); and

(2)     The entry of the proposed Order of Dismissal with Prejudice in the form attached to the Settlement Agreement and Release as Exhibit 4 and attached hereto as Exhibit B.

The United States has concluded that the amount of $22,200,000 that it will receive in connection with the settlement is fair, adequate, and reasonable as to the United States under all the circumstances.

                                        Respectfully submitted,


                                        TONY WEST
                                        Assistant Attorney General

                                        CARMEN M. ORTIZ
                                        United States Attorney

                                        By:_____
                                        George B. Henderson, II
                                        Assistant U.S. Attorney
                                        United States Courthouse
                                        1 Courthouse Way, Suite 9200
                                        Boston, MA 02210
                                        (617) 748-3272

                                        Joyce R. Branda
                                        Daniel R. Anderson
                                        Laurie A. Oberembt
                                        U.S. Department of Justice, Civil
                                        Division
                                        P.O. Box 261, Ben Franklin Station
                                        Washington, D.C. 20044
                                        (202) 514-3345

Dated: _____ ___, 2012

**Exhibit A**
**To**
**CONSENT OF THE UNITED STATES OF AMERICA TO THE RELATOR'S**
**DISMISSAL WITH PREJUDICE OF CLAIMS PURSUANT TO**
**31 U.S.C § 3730 (b) (1)**

(Settlement Agreement and Release)

**Exhibit B**
**To**
**CONSENT OF THE UNITED STATES OF AMERICA TO THE RELATOR'S**
**DISMISSAL WITH PREJUDICE OF CLAIMS PURSUANT TO**
**31 U.S.C § 3730 (b) (1)**

(Order of Dismissal With Prejudice)

**Exhibit 2**
**to**
**Settlement Agreement and Release**
**Allocation Schedule**

**Settlement Amount Allocation Schedule**

| Total  Settlement Amount | $57,000,000 |
|---|---|
| Allocations from Total Settlement Amount | |
| U.S. Share of Settlement Amount | $22,200,000 |
| Ven-A-Care U.S. Relator Share | Amount to be determined by agreement of the United States or as ordered by the United States District Court.  This amount shall be distributed to the Relator by the United States |
| Portion of Settlement Relating to the State of California | $57,000,000 |
| United States Share for California | $22,200,000 |
| Ven-A-Care California Relator Share | $6,993,000 |
| California Net | $26,307,000 |
| Ven-A-Care Fees and Costs | $1,500,000 |
| | |
| Amounts to be Distributed by Mylan | |
| To the United States | $22,200,000 |
| To the State of California | $26,307,000 |
| To Ven-A-Care | $8,493,000 |

**Exhibit 3a**
**to**
**Settlement Agreement and Release**
**California Case Stipulation of Dismissal**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 <br><br> Master File No. 01-12257-PBS <br><br> Subcategory No. 06-11337-PBS |
| THIS DOCUMENT RELATES TO: <br> *State of California, ex rel. Ven-A-Care v. Abbott Laboratories, et al.* <br> *Civil Action No. 03-cv-11226-PBS* | Judge Patti B. Saris <br><br> Magistrate Judge Marianne B. Bowler |

## STIPULATION OF DISMISSAL WITH PREJUDICE OF CLAIMS AGAINST MYLAN AND MOTION FOR ORDER OF DISMISSAL WITH PREJUDICE

The above-captioned matter is an action brought under the *qui tam* provisions of the California False Claims Act, Cal. Gov't. Code §§ 12650-12656, by the State of California ("California") and Relator Ven-A-Care of the Florida Keys, Inc. (the "Relator") against Mylan Inc. (f/k/a Mylan Laboratories Inc.) and Mylan Pharmaceuticals Inc.  (foregoing two collectively, "Mylan"), originally filed in the Superior Court of the State of California, removed to the United States District Court for the Central District of California (Case No. 03-CV-2238) and transferred to the United States District Court for the District of Massachusetts, Civil Action No. 03-11226-PBS, MDL 1456, Master File No. 01-12257-PBS, Subcategory Case No. 06-11337 (D. Mass.) (the "California Proceedings").  Mylan together with the State of California and Relator shall be collectively referred to as the "Parties".

27

Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam* provisions of the California False Claims Act, Cal. Gov't. Code §§ 12650-12656, and in accordance with and as limited by the terms of the Settlement Agreement and Release, the Parties hereby stipulate to the entry of an order dismissing with prejudice all "Released Claims" for or arising from the "Covered Conduct" against the "Mylan Parties" (as the terms in quotations are defined in the Settlement Agreement and Release) (attached hereto as Exhibit A).

The Parties further stipulate that any claim the Relator or its counsel has to a Relator's share or for expenses, attorneys' fees, and costs shall not be the responsibility of Mylan.

WHEREFORE, to permit them to effectuate the terms of their settlement, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam* provisions of the California False Claims Act, Cal. Gov't. Code §§ 12650-12656, the Parties respectfully request that the Court enter an order in the form attached hereto as Exhibit B.

Respectfully submitted,

KAMALA D. HARRIS
Attorney General for the State of California

Dated: _____     By: _____
NICHOLAS N. PAUL
Supervising Deputy Attorney General
Bureau of Medi-Cal Fraud and Elder Abuse
California Department of Justice
1455 Frazee Road, Suite 315
San Diego, California 92108
Tel: (619) 688-6099

**Attorneys for the State of California**

28

The Breen Law Firm, P.A.

Dated: _____        By: _____
                                   JAMES J. BREEN
                                   The Breen Law Firm, P.A.
                                   5755 North Point Parkway, Suite 260
                                   Alpharetta, GA 30022
                                   (770) 740-0008

                                   **Attorneys for Relator**


                              Kelley Drye & Warren LLP

Dated: _____        By: _____
                                   WILLIAM A. ESCOBAR
                                   Kelley Drye & Warren LLP
                                   101 Park Avenue
                                   New York, NY 10178
                                   (212) 808-7771

                                   **Attorneys for Mylan**

29

**Exhibit 3b**
**to**
**Settlement Agreement and Release**
**California Case Order of Dismissal**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE: PHARMACEUTICAL INDUSTRY
AVERAGE WHOLESALE PRICE LITIGATION

THIS DOCUMENT RELATES TO:
*State of California, ex rel. Ven-A-Care v.*
*Abbott Laboratories, et al.*
*Civil Action No. 03-cv-11226-PBS*

MDL No. 1456

Master File No. 01-12257-PBS

Subcategory No. 06-11337-PBS

Judge Patti B. Saris

Magistrate Judge Marianne B. Bowler

### ORDER OF DISMISSAL WITH PREJUDICE OF CLAIMS
### AGAINST MYLAN

Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam*

provisions of the California False Claims Act, the State of California ("California"),

Relator Ven-A-Care of the Florida Keys, Inc. (the "Relator") and Mylan Inc. (f/k/a Mylan

Laboratories Inc.) and Mylan Pharmaceuticals Inc.) (collectively, "Mylan") (Mylan

together with the State of California and Relator collectively the "Parties") filed with this

Court, a Stipulation of Dismissal with Prejudice of Claims Against Mylan and Motion for

Order of Dismissal with Prejudice (the "Stipulation"). Upon due consideration of the

Stipulation and the Parties' Settlement Agreement and Release, the lack of objection to

the proposed Settlement, and the Court's determination that the Settlement Amount

appears to the Court to be fair, adequate, and reasonable under all the circumstances, the

Court hereby approves the Settlement.

WHEREFORE, IT IS ORDERED, that

31

1.      Consistent with the terms of the Settlement Agreement and Release attached hereto as Exhibit A, the above captioned Civil Action is dismissed with prejudice as to Mylan.

2.      Each party shall be responsible for its own expenses, attorneys' fees, and costs.

3.      The Court shall retain jurisdiction to enforce the terms, conditions, and releases of the Parties' Settlement Agreement and Release to the extent reasonably necessary and appropriate.

IT IS SO ORDERED this ___ day of _____, 2012.


THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT COURT JUDGE

**Exhibit 4a**
**to**
**Settlement Agreement and Release**
**U.S. Case Stipulation of Dismissal**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: | ) MDL No. 1456 |
| | ) Civil Action No. 01-12257-PBS |
| | ) |
| PHARMACEUTICAL INDUSTRY | ) Subcategory No. 06-11337 |
| AVERAGE WHOLESALE PRICE | ) |
| LITIGATION | ) |
| _____ | ) |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| *United States of America ex rel. Ven-A-Care of* | )            Judge Patti B. Saris |
| *the Florida Keys, Inc., by and through its principal* | ) |
| *officers and directors, Zachary T. Bentley and* | ) |
| *T. Mark Jones v. Actavis Mid Atlantic LLC, et al.* | ) |
| Civil Action No. 08-cv-10852 | |

### STIPULATION OF DISMISSAL WITH PREJUDICE OF ALL CLAIMS AGAINST MYLAN AND MOTION FOR ORDER OF DISMISSAL WITH PREJUDICE

The above-captioned matter is an action brought under the *qui tam* provisions of

the federal False Claims Act, 31 U.S.C. §§ 3729-3733, by Relator Ven-A-Care of the

Florida Keys, Inc. (the "Relator") against Mylan Inc. (f/k/a Mylan Laboratories Inc.),

Mylan Pharmaceuticals Inc. and Mylan Institutional Inc. (f/k/a UDL Laboratories, Inc.)

(foregoing three collectively, "Mylan") (Mylan together with Relator collectively the

"Parties").

Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam*

provisions of the federal False Claims Act, 31 U.S.C. § 3730(b) (1), and in accordance

with the terms of the Settlement Agreement and Release, the Parties hereby stipulate to

the entry of an order dismissing with prejudice all remaining claims alleged against

Mylan in the above-captioned action pursuant to, and as limited by, the Settlement

Agreement and Release attached hereto as Exhibit A.

34

The Parties further stipulate that any claim the Relator or its counsel has to a Relator's share or for expenses, attorneys' fees, and costs shall not be the responsibility of Mylan.

WHEREFORE, to permit them to effectuate the terms of their settlement, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. § 3730(b)(1), the Parties respectfully request that the Court enter an order in the form attached hereto as Exhibit B.

Respectfully submitted,


 /s/ James J. Breen
JAMES J. BREEN
The Breen Law Firm, P.A.
5755 North Point Parkway, Suite 260
Alpharetta, GA 30022
(770) 740-0008

Counsel for Relator


 /s/ William A. Escobar
WILLIAM A. ESCOBAR
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
(212) 808-7771

Counsel for Mylan

Dated: _____ ___, 2012

**Exhibit 4b to**
**U.S. Case Settlement Agreement and Release**
**Order of Dismissal**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>Master File No. 01-12257-PBS<br><br>Subcategory No. 06-11337-PBS<br>Civil Action No. 08-cv-10852 |
| THIS DOCUMENT RELATES TO:<br>*United States of America ex rel. Ven-A-Care of the Florida Keys, Inc., by and through its principal officers and directors, Zachary T. Bentley and T. Mark Jones v. Actavis Mid Atlantic LLC, et al.* | Judge Patti B. Saris<br><br>Magistrate Judge Marianne B. Bowler |

## ORDER OF DISMISSAL WITH PREJUDICE OF REMAINING CLAIMS AGAINST MYLAN

Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam* provisions of the federal False Claims Act, Relator Ven-A-Care of the Florida Keys, Inc. (the "Relator") and Mylan Inc. (f/k/a Mylan Laboratories Inc.), Mylan Pharmaceuticals Inc. and Mylan Institutional Inc. (f/k/a UDL Laboratories Inc.) (collectively, "Mylan") (Mylan together with Relator collectively the "Parties") filed with this Court, a Stipulation of Dismissal with Prejudice of Remaining Claims Against Mylan and Motion for Order of Dismissal with Prejudice. Upon due consideration of the Stipulation and the Parties' Settlement Agreement and Release, the United States' Consent, the lack of objection to the proposed Settlement, and the Court's determination that the Settlement Amount appears to the Court to be fair, adequate, and reasonable under all the circumstances, the Court hereby approves the Settlement.

WHEREFORE, IT IS ORDERED, that

37

1.      Consistent with the terms of the Settlement Agreement and Release attached hereto as Exhibit A, the above-captioned Civil Action is dismissed with prejudice as to Mylan.

2.      Each party shall be responsible for its own expenses, attorneys' fees, and costs.

3.      The Court shall retain jurisdiction to enforce the terms, conditions, and releases of the Parties' Settlement Agreement and Release to the extent reasonably necessary and appropriate.

IT IS SO ORDERED this ___ day of _____, 2012.


_____
THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT COURT JUDGE