# EXHIBIT A

**ORAL ARGUMENT SCHEDULED FOR JANUARY 13, 2012**

## No. 11-7030

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**STEPHANIE SCHWEIZER, ex rel. UNITED STATES,**
**Plaintiff/Appellant,**

**NANCY VEE,**
**Plaintiff,**

**v.**

**OCÉ N.V.; OCÉ NORTH AMERICA, INC.;**
**OCÉ IMAGISTICS, INC.; OCÉ-USA HOLDING, INC.,**
**Defendants/Appellees,**

**UNITED STATES OF AMERICA,**
**Movant/Appellee.**

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

### BRIEF OF THE APPELLEE UNITED STATES

TONY WEST
  *Assistant Attorney General*

RONALD C. MACHEN
  *United States Attorney*

DOUGLAS LETTER
  (202) 514-3602
  *Appellate Litigation Counsel*
  *Civil Division, Room 7513*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, D.C. 20530-0001*

## CERTIFICATE OF COUNSEL

**(A) Parties and Amici.** The plaintiff/appellant here is Stephanie Schweizer, who filed this action as a *qui tam* relator for herself and for the United States under the False Claims Act (31 U.S.C. § 3730(b)). In the district court, plaintiff named as defendants Océ N.V.; Océ North America, Inc.; Océ Imagistics, Inc.; and Océ-USA Holding, Inc. The United States, as represented by the Department of Justice, intervened and moved to dismiss Counts I and II of the complaint in the case in district court, and the court granted that motion. Thus, the United States is an appellee in this matter.

**(B) Ruling Under Review.** The ruling under review was entered by Chief District Judge Royce C. Lamberth on February 2, 2010; final judgment in the case was entered on March 25, 2011 (JA 88). The district court's ruling of February 2, 2010 is published at 681 F. Supp.2d 64, and is reprinted in the Joint Appendix at 49-59. A timely notice of appeal was filed on April 11, 2001. JA 89.

**(C) Related Cases.** This case has not previously been before this Court. We are not aware of any related cases.

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF COUNSEL

GLOSSARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . .   3

STATEMENT OF THE ISSUE PRESENTED. . . . . . . . . . . . . . . .   3

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . .   4

    I.    Nature Of The Case. . . . . . . . . . . . . . . . . . . . . . .   4

    II.    Statement Of The Facts. . . . . . . . . . . . . . . . . . . .   7

    A.    The Relevant Aspects of the *Qui Tam* Provisions of the
        False Claims Act. . . . . . . . . . . . . . . . . . . . . . . .   7

    B.    The District Court's Grant of the Government's Motion
        to Dismiss the False Claims Act Counts.. . . . . . . . . . .  11

RELEVANT STATUTORY PROVISIONS. . . . . . . . . . . . . . . . .  17

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . .  17

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

    I.    Standard Of Review. . . . . . . . . . . . . . . . . . . . . .  19

    II.    The District Court Correctly Granted The
        Government's Motion To Dismiss The *Qui Tam* False
        Claims Act Counts.. . . . . . . . . . . . . . . . . . . . . . .  20

A.   The Operative Statutory Language and This Court's
     Precedents Compel Affirmance. . . . . . . . . . . . . . . .   20

B.   The Motion to Dismiss Filed by the United States Was
     Procedurally Proper. . . . . . . . . . . . . . . . . . . . . .   31

III.   If Necessary, This Court Can Affirm The Dismissal Of
       Counts I And II On The Alternative Ground That The
       Record Here Demonstrates That The Settlement Was
       Fair, Adequate, And Reasonable Under All
       The Circumstances. . . . . . . . . . . . . . . . . . . . . . .   34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . .   38

CERTIFICATE OF SERVICE

-ii-

## TABLE OF AUTHORITIES

### *Cases (those principally relied on are marked with asterisks):*

*Granfinanciera S.A. v. Nordberg*, 492 U.S. 33 (1989). . . . . . . . . .  35

*\*Hoyte v. American National Red Cross*, 518 F.3d 61
     (D.C. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . .  14, 22, 24, 34

*Juliano v. Federal Asset Disposition Ass'n*,
     736 F. Supp. 348 (D.D.C. 1990), *aff'd*,
     959 F.2d 1101 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . .  10

*Kokkonen v. Guardian Life Insurance Co.*
     *of America*, 511 U.S. 375 (1994). . . . . . . . . . . . . . . . .  30

*\*Swift v. United States*, 318 F.3d 250
     (D.C. Cir. 2003). . . . . . . . . . . . . . .  10, 14, 22, 32, 33, 34

*United States ex rel. Ayers v. Bondcote Corp.*,
     No. CV403-011 (S.D. Ga. Aug. 20, 2004). . . . . . . . . . . . .  27

*United States ex rel. Eisenstein v. City of New York*,
     129 S. Ct. 2230 (2009). . . . . . . . . . . . . . .  7, 30, 31, 33, 34

*United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743
     (9th Cir. 1993), *cert. denied*, 510 U.S. 1140 (1994). . . . . . . .  10

*United States ex rel. Resnick v. Weill Medical College of Cornell*
     *University*, 2009 WL 637137 (S.D.N.Y. March 5, 2009). . . 26-27

*Vermont Agency of Natural Resources v. United States*
     *ex rel. Stevens*, 529 U.S. 765 (2000). . . . . . . . . . . . . . . . .  7

**Constitution:**

Article II (Take Care Clause).. . . . . . . . . . . . . . . . . . . . . . . . .  15

**Statutes:**

28 U.S.C. § 2107(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

**False Claims Act:**

31 U.S.C. § 3730(b). . . . . . . . . . . . . . . . . . . . . . . . .  4, 7, 8
31 U.S.C. § 3730(b)(1). . . . . . . . . . . . . . . . . . . . . . . .  9, 20
31 U.S.C. § 3730(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . .  8
31 U.S.C. § 3730(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . .  8
31 U.S.C. § 3730(b)(4). . . . . . . . . . . . . . . . . . . . .  23, 33
31 U.S.C. § 3730(b)(4)(A). . . . . . . . . . . . . . . . . . . . . . . . .  8
31 U.S.C. § 3730(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . .  8
31 U.S.C. § 3730(c)(2)(A) . . .  10, 13, 15, 16, 17, 19, 20, 22, 24,
                              25, 26, 27, 28, 29, 30, 31
31 U.S.C. § 3730(c)(2)(B). . . . . . .  9, 10, 15, 16, 18, 22, 24, 25,
                              27, 28, 29, 30, 33
31 U.S.C. § 3730(c)(3). . . . . . . . . . . . . . . . . . . .  9, 32, 33
31 U.S.C. § 3730(c)(4). . . . . . . . . . . . . . . . . . . . . . . . .  9

31 U.S.C. § 3730(d). . . . . . . . . . . . . . . . . . . . . . . . . . .  8

**Rules:**

Federal Rule of Appellate Procedure 4(a)(1)(B). . . . . . . . . . . . .  33

Federal Rule of Civil Procedure:

Rule 41(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

### No. 11-7030

---

**STEPHANIE SCHWEIZER, ex rel. UNITED STATES,**
**Plaintiff/Appellant,**

**NANCY VEE,**
**Plaintiff,**

**v.**

**OCÉ N.V.; OCÉ NORTH AMERICA, INC.;**
**OCÉ IMAGISTICS, INC.; OCÉ-USA HOLDING, INC.,**
**Defendants/Appellees,**

**UNITED STATES OF AMERICA,**
**Movant/Appellee.**

---

### BRIEF OF THE APPELLEE UNITED STATES

---

### GLOSSARY

"The Act" or "the FCA"  means the False Claims Act.

### INTRODUCTION

From its various decisions involving the False Claims Act over the years, this Court is familiar with the *qui tam* mechanism in that unusual statute.  Through the partial assignment of a chose in action,

Congress has authorized a private person (known as a "relator") to bring an action for herself and for the United States for false claims filed against United States.

In this case, a *qui tam* relator – Stephanie Schweizer – has appealed because she is dissatisfied with a settlement of a False Claims Act action reached by the United States, the defendants, and another relator in the same case.   Under that settlement, the defendants must pay the United States $1.2 million plus interest, and the two relators share 19% of that amount.

Schweizer believes this settlement is inadequate and wants to press on with this litigation for the United States; she contends that the district court erred in granting the Government's motion to dismiss the first two counts in her complaint, even though the False Claims Act expressly provides the Government with the power to dismiss a *qui tam* case over a relator's objection.

We demonstrate in this brief that the district court acted correctly in light of this statutory provision, to which this Court has on two occasions in recent years given full effect, finding that it reserves substantial power to the Government to end, over the

opposition of relators, *qui tam* cases brought on behalf of the United States.[1]

## STATEMENT OF JURISDICTION

The United States agrees with the jurisdictional statement made in appellant Schweizer's opening brief.

## STATEMENT OF THE ISSUE PRESENTED

Schweizer's appeal with regard to the United States presents the issue of whether the district court correctly granted the Government's motion to dismiss two False Claims Act counts in a *qui tam* suit brought on behalf of the United States by Schweizer as a relator. The Attorney General had exercised his express right under the False Claims Act to dismiss these counts, in light of the highly unusual and complicated situation in this case after a settlement had been reached with the defendants and the other relator in the case.

---

[1] The Government takes no position here with regard to Schweizer's appeal concerning the third count of her amended complaint, which deals exclusively with her claim of wrongful discharge by the defendants.

-3-

# STATEMENT OF THE CASE

## I. Nature Of The Case

This case was filed originally by Schweizer in April 2006, under the *qui tam* provisions of the False Claims Act (31 U.S.C. § 3730(b)). Schweizer sued her employer, defendants Océ N.V., *et al.*, alleging that they had violated the Act by knowingly selling non-compliant products to the Government in violation of the Trade Agreements Act and by breaching contracts with the Government guaranteeing governmental purchasers a price equal to or less than the price paid for the same products by non-governmental purchasers. Schweizer was an Océ employee. See JA 13-35.

Later in 2006, Schweizer and Nancy Vee, another Océ employee, filed an amended complaint, adding Vee as a second relator. The first two counts of their complaint alleged violations of the False Claims Act; the third count covered Schweizer's wrongful discharge claim against the defendants. JA 14-34.

The United States declined to intervene in the case, and, as they are permitted by the False Claims Act, Schweizer and Vee opted to

continue prosecuting the case for themselves and for the United States.

The Government, the relators, and the defendants engaged in settlement negotiations, and both the Government and Vee reached an agreement with the defendants; Schweizer disagreed with the settlement terms.

As noted above, the defendants agreed to pay $1.2 million with interest to the United States, with the relators dividing a 19% share of that recovery.  In exchange, the Government agreed to release Océ and various affiliated entities and persons from any civil or administrative monetary claims for the conduct at issue arising out of the False Claims Act, the Truth in Negotiations Act, the Program Fraud Civil Remedies Act, the Contract Disputes Act, or any common law theory of breach of contract, payment by mistake, unjust enrichment, or fraud.  Vee agreed to dismiss her *qui tam* claims in Counts I and II of the complaint.  The settlement did not affect Schweizer's retaliatory discharge claim against the defendants in Count III of the amended complaint.  JA 50.

Under the settlement, the Government agreed to intervene as to Counts I and II of the *qui tam* case, and to move to dismiss those counts. See Settlement Agreement, at ¶15 (attached as Exhibit 1 to United States' Motion to Dismiss, Dist. Ct. Docket No. 63 (filed Sept. 8, 2009)).[2]

The Government filed a notice of intervention in the case, and moved to dismiss Counts I and II. Schweizer objected to the settlement and the dismissal. The district court ruled in February 2010, that under the relevant provisions of the False Claims Act, which have in past cases been broadly applied by this Court, the Government was entitled to dismiss these counts, despite Schweizer's opposition. The court denied Schweizer's reconsideration motion from the February 2010 order, and subsequently dismissed the final count of the complaint, and the whole action in March 2011. See JA 72-76, 77-88. Schweizer has appealed.

---

[2] Both Schweizer and Vee have now already received their relator's shares of the settlement payment by the defendants.

## II. Statement Of The Facts

### A.   The Relevant Aspects of the *Qui Tam* Provisions of the False Claims Act

The False Claims Act establishes a unique form of litigation through the *qui tam* mechanism.   See *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000). Because this type of litigation is not like other cases, an understanding of its form is critical to this appeal.

As noted earlier, the *qui tam* provisions of the Act provide a special means for the United States to recover damages suffered as a result of fraud or false claims, through the assistance of private parties, known as relators, who file suit "for the person and for the United States." 31 U.S.C. § 3730(b).   A *qui tam* suit is brought in the name of the United States, and the United States is always a real party in interest in such a case.   See *United States ex rel. Eisenstein v. City of New York*, 129 S. Ct. 2230, 2235 (2009).

The United States receives all or a majority of any recovery achieved as a result of the litigation, and a relator in a successful *qui*

*tam* case can receive up to 30% of the recovery, plus attorneys' fees and costs. 31 U.S.C. §§ 3730(b) and (d).

In the *qui tam* provisions of the False Claims Act, Congress included several unusual protections, ensuring that the United States retains substantial control over lawsuits brought on its behalf. These include the power to dismiss a *qui tam* action over the objection of a relator.

Under the statute, the relator initially files her complaint under seal and serves it and a statement of evidence on the United States. 31 U.S.C. §§ 3730(b)(1) and (2). The United States has 60 days (plus any extensions granted by the district court) to investigate the allegations and elect whether or not to intervene in the litigation. 31 U.S.C. §§ 3730(b)(2) and (3).

If the United States intervenes in the initial phase of a case, "the action shall be conducted by the Government." 31 U.S.C. § 3730(b)(4)(A). The Government assumes "the primary responsibility for prosecuting the action," and is not bound by an act of the relator. 31 U.S.C. § 3730(c)(1). The relator remains a party to the suit, but the Government may settle the case over her objection (31 U.S.C. §

-8-

3730(c)(2)(B)), or may seek to limit her participation in the litigation. 31 U.S.C. § 3730(c)(2)(C).

Even if the United States declines to intervene in the action, the relator cannot dismiss the action without the written consent of the Attorney General. 31 U.S.C. § 3730(b)(1).  The court may stay discovery in the *qui tam* action if it would interfere with the Government's investigation or prosecution of another matter.  31 U.S.C. § 3730(c)(4).  And, even when the Attorney General initially declines to intervene in the suit, the district court "may nevertheless permit the Government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3).

Most important for purposes of this appeal, the False Claims Act authorizes the Attorney General to dismiss a *qui tam* action over a relator's objection:

> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

31 U.S.C. § 3730(c)(2)(A).   The United States holds this power to dismiss regardless of whether it has intervened in the case.  See *Swift v. United* States, 318 F.3d 250, 251-52 (D.C. Cir. 2003); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 n.10 (9th Cir. 1993), *cert. denied*, 510 U.S. 1140 (1994), *citing Juliano v. Federal Asset Disposition Ass'n*, 736 F. Supp. 348 (D.D.C. 1990), *aff'd*, 959 F.2d 1101 (D.C. Cir. 1992) (table).

In this appeal, Schweizer seeks to restrict the Attorney General's power to dismiss a *qui tam* suit, arguing that another subsection in the statute governs here.   Section 3730(c)(2)(B) provides:

> The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances.   Upon a showing of good cause, such a hearing may be held in camera.

31 U.S.C. § 3730(c)(2)(B).

-10-

### B.   The District Court's Grant of the Government's Motion to Dismiss the False Claims Act Counts

**1.**   As already described, after reaching a settlement with the defendants and relator Vee, the Government intervened in this case and moved to dismiss Counts I and II of the amended complaint. The Government alternatively moved for the district court to approve the settlement as fair, adequate, and reasonable under all of the circumstances. The attorneys for the Government made clear that the district court should simply grant the motion by the United States to dismiss; the court did not have to rule on the appropriateness of the settlement. JA 103, 109.

In its motion to dismiss Counts I and II, the Government reported to the district court that Schweizer had not agreed to the terms of the settlement, but that the defendants and relator Vee had done so. JA 36. So that the district court could evaluate the validity of the settlement if it wished to do so, the Government subsequently provided the court under seal with a detailed analysis of relators' False Claims Act causes of action. JA 92-100.

-11-

In that filing, the Government described in some detail its extensive investigation into the relators' allegations, and the relative value of the evidence that had been uncovered.  See JA 92-94. The Government followed with a thorough analysis of the evidence (both positive and negative), the applicable law, and the amount of damages that could likely be obtained, as well as a discussion of what would be needed for an effective presentation of a convincing case to a jury and the likely litigation costs to the Government.  See JA 94-100.[3]

The district court next held a hearing, which was attended only by the relator and the Government (so that the strengths and weaknesses of the case could be discussed frankly with the court, the defendants were not represented at the hearing).  At the hearing, Government counsel explained that, under the case law of this Circuit

---

[3] This sealed document was provided to Schweizer, but not to the defendants in the district court; if the district court did not dismiss Counts I and II, the relators and the Government did not want the defendants to see their description of the Government's investigation and its analysis of the strengths and weaknesses of the relators' causes of action.  In this Court, this document as well as a transcript of the district court's January 20, 2010 hearing about the settlement, and the Government's opposition to Schweizer's motion for reconsideration have all been filed under seal.  They are reprinted in Volume II of the Joint Appendix, which is available to the Court, Schweizer, and the Government, but not the defendants.

applying Section 3730(c)(2)(A), "the [G]overnment has virtually unfettered ability to dismiss claims in a *qui tam* that relate to the government's counts." JA 102.

The Government also pointed out that under a different subsection of the False Claims Act, the Government can settle a *qui tam* action over the opposition of a relator, upon a determination by the court that the settlement is fair and reasonable. JA 102-03. The Government thus made clear that the district court had two alternatives for dismissal of Counts I and II: the court could simply honor the entitlement of the Government's desire to dismiss the *qui tam* claims, or, if that rationale was not sufficiently convincing, the court could dismiss the case because the settlement was fair, adequate, and reasonable, and the settling of the dispute would lead to dismissal. JA 103, 109.

Government counsel then further explained in some depth their analysis of the likelihood of success on the False Claims Act counts taking into account the potential litigation problems, as well as how the Government arrived at an appropriate measure of damages for settlement discussions. JA 103-09, 112-13.

Counsel for Schweizer responded by describing his view of how the False Claims Act cases could best be tried in light of the evidentiary problems and the potential witnesses. JA 113-18. And Schweizer herself addressed the district court, explaining her thoughts on what she had uncovered in the way of misconduct by the defendants. JA 116-17.[4]

**2.** The district court issued an opinion and order in February 2010, granting the Government's motion to dismiss Counts I and II. JA 49-59.

The district court first discussed this Circuit's precedents applying Section 3730(c)(2)(A), under which the Government has an unfettered right to dismiss a *qui tam* suit. JA 51-52 (quoting *Hoyte v. American National Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008) (quoting *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003))). That right applies "because the statute itself refers to the [G]overnment's ability to dismiss the action (without mention of requiring leave of court) * * *, as well as the [G]overnment's nearly

---

[4] At the hearing, the Government reiterated that it took no position on Schweizer's third count against the defendants for wrongful discharge. JA 118-19.

-14-

absolute discretion under the Take Care Clause [of Article II of the Constitution] to bring suit in its name * * *." JA 52.

The district court noted some tension between this Circuit's "interpretation of the government's ability to dismiss a *qui tam* suit – and it is undoubtedly the correct one," and Section 3730(c)(2)(B), which provides for court approval of a settlement over the relator's objection. JA 52. The court asked: "If the Government has what amounts to an unfettered right to dismiss a case based on the Take Care Clause, is it not implicit that they also have an unfettered right to settle a case?" JA 53.

The district court posed whether Section 3730(c)(2)(B) no longer serves a separate purpose in light of this Circuit's application of Section 3730(c)(2)(A). JA 53-54. The district court did not actually resolve that question, given that it held that because the requirements of that latter section "have been met, and Ms. Schweizer has been unable to convince the United States to withdraw its motion to dismiss, the Court will grant the United States' motion to dismiss Counts I and II of the complaint with prejudice as to both the United

States and the relators without passing on the fairness of the proposed settlement." JA 54.

At the end of its opinion, the district court discussed whether Section 3730(c)(2)(B) can properly be viewed as invalidly infringing on the Executive's power to control litigation on behalf of the United States. The court explained that this section's constitutionality is "doubtful," but in any event the section would be severable from the remainder of the False Claims Act, thereby leaving in place the Government's unfettered ability to dismiss *qui tam* actions. JA 56.

Without actually ruling on the validity of Section 3730(c)(2)(B), the district court granted the Government's motion to dismiss Count I and II, leaving Count III to be further litigated. (As noted above, that count was later dismissed in a final order resolving the whole case. JA 88.)

## RELEVANT STATUTORY PROVISIONS

The pertinent parts of the False Claims Act are reprinted in an Addendum to appellant Schweizer's opening brief.

## SUMMARY OF ARGUMENT

The plain language of the False Claims Act itself and this Circuit's precedents provide the answer to this appeal, and require affirmance of the dismissal of Counts I and II. Section 3730(c)(2)(A) clearly states that the Attorney General has the authority to dismiss a *qui tam* case, as long as the relator is given an opportunity for a hearing, if she objects.

Moreover, it is not surprising that Congress expressly granted dismissal authority to the Attorney General in the Act. A *qui tam* relator has standing under the statute only because she has been partially assigned a chose in action to recover for injury to the United States from fraud or false claims. Thus, Schweizer sued on Counts I and II in that special status only, and not because of any injury to herself. Moreover, this Court has made clear that the statutory scheme here should be viewed against the backdrop of a

-17-

constitutionally-based power residing in the Executive to pursue litigation for the United States, and to determine when not to litigate.

Schweizer counters by arguing that Section 3730(c)(2)(B) overrides the Attorney General's unfettered right to dismiss a *qui tam* action under Section 3730(c)(2)(A) because in this case the Government reached a settlement with the defendants and relator Vee. Schweizer asserts that a settlement can be accepted by the district court over her objection only if the court finds it to be fair, adequate, and reasonable under all the circumstances, and the court did not make any such finding here.

The district court correctly rejected this argument because these two subsections provide alternative means for a *qui tam* case to be ended. Nothing in the relevant statutory text indicates that Congress meant to restrict the Attorney General's unfettered right to end through a motion to dismiss litigation brought solely because of injury to the United States.

Schweizer also argues that the district court erred in granting the Government's motion to dismiss because the Government had not properly intervened in this case. This argument founders on the fact

that this Court has already ruled that intervention is not necessary for the Government to dismiss a *qui tam* case.  In any event, the district court believed that intervention here had properly been accomplished by the United States.

Finally, if the Court believes that the district court wrongly granted the Government's motion to dismiss Counts I and II, it should nevertheless affirm that order on the alternative ground that the record manifestly demonstrates that the settlement here was fair, just, and reasonable.  No remand is necessary; this point is thoroughly demonstrated by the material already in the record, carefully explained by the Government attorneys in the district court.

## ARGUMENT

### I. Standard Of Review

We agree with Schweizer's brief (at 14) that review here is *de novo* because the parts of the appeal dealing with the Government involve solely issues of law.

## II. The District Court Correctly Granted The Government's Motion To Dismiss The *Qui Tam* False Claims Act Counts.

### A. The Operative Statutory Language and This Court's Precedents Compel Affirmance.

**1.** In 1986, Congress made several significant changes to the False Claims Act, and importantly for our purposes today altered the role of a *qui tam* relator, providing that "[t]he Government may dismiss [a *qui tam*] action notwithstanding the objections of [a relator] if [that] person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A).

This statutory text describing the Attorney General's broad dismissal authority sharply contrasts with the ability of a relator to dismiss a *qui tam* case. The False Claims Act specifically states that the relator has no such power unless "the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1).

-20-

Thus, the terms of the False Claims Act reveal no limitation on the Attorney General's power to dismiss a *qui tam* case that he believes should be dismissed in the interests of the United States.

In two cases, this Court has given full application to the text of Section 3730(c)(2)(A), and this precedent disposes of Schweizer's arguments here.

First, in *Swift v. United States*, 318 F.3d at 251-52, this Court held at the outset that the United States does not need to intervene in a *qui tam* case in order to move for dismissal. Further, this Court explained that this issue is "largely academic" in any event because, if there were a requirement of a motion to intervene, "we could construe the government's motion to dismiss as including a motion to intervene, a motion the district court granted by ordering dismissal." *Id.* at 252.

In *Swift*, this Court likened allowing a *qui tam* case to go forward to a decision by the Government to prosecute a criminal case, which is within the Executive's discretion; the Court noted that nothing in Section 3730(c)(2)(A) "gives the judiciary general oversight of the Executive's judgment in this regard. * * * To this must be added the

-21-

presumption that decisions not to prosecute, which is what the government's judgment in this case amounts to, are unreviewable." 318 F.3d at 252.

This Court recognized that Section 3730(c)(2)(A) does provide the relator with "an opportunity for a hearing on the [Government's] motion [to dismiss]." 318 F.3d at 253. But the Court concluded that "[n]othing in [that section] purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States." *Ibid.* Accordingly, the Court concluded that "the function of a hearing when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case." *Ibid.*[5]

Second, several years later, this Court reaffirmed the *Swift* ruling in *Hoyte v. American National Red Cross*, 518 F.3d at 65, describing the holding in *Swift* in the following way: "the Government has what

_____

[5] The *Swift* Court left open the possibility that there might be an exception to the Government's unfettered power for instances involving "fraud on the court." 318 F.3d at 253. There is no evidence of any such situation here.

amounts to 'an unfettered right to dismiss' a *qui tam* action * * *"
(quoting *Swift*, 318 F.3d at 252).

This Court therefore upheld a dismissal over Hoyte's opposition,
and rejected her contention that a court could deny a motion to
dismiss that was "clearly contrary to manifest public interest."  518
F.3d at 65.  The *Hoyte* Court concluded that, after the relator was
afforded a hearing (thereby giving her a formal opportunity to convince
the Government not to end the case), "[t]he Government was not
persuaded to proceed, however, and its decision to dismiss the case
based on its own assessment, is not reviewable in the district court or
this court."  *Ibid.*[6]

Schweizer nevertheless argues (Br. 21-22) that *Swift* does not
govern this case because in that instance, the Government moved to
dismiss the action during its initial period of deciding whether or not
to intervene.  See 31 U.S.C. § 3730(b)(4).  Schweizer contends that the
unfettered right of the Government to dismiss a *qui tam* action is thus

_____

[6]  Judge Tatel concurred and dissented in *Hoyte*, but did not
disagree with the panel majority as to this point.  518 F.3d at 70-74.

-23-

limited to the situation in which the Department of Justice exercises its right to intervene at the outset of the case.

This argument has no force because in *Hoyte*, the Government had declined to intervene at the outset of the *qui tam* case there; after the defendant American Red Cross had moved to dismiss on the basis of various legal arguments, the United States exercised its unfettered right and moved to dismiss the first count of the complaint. The district court granted the Government's motion and this Court affirmed because of the Government's right to decline to allow a *qui tam* case to proceed.  518 F.3d at 645-65.

Under the wording of Section 3730(c)(2)(A) and the precedents of *Swift* and *Hoyte,* the district court here thus correctly dismissed Counts I and II in Schweizer's complaint.

**2.**  Schweizer nonetheless contends (Br. 19-26) that the district court erred because Section 3730(c)(2)(B) provides that, when a relator opposes a settlement of a *qui tam* case, a court can approve the settlement only if it determines that the settlement is fair, adequate, and reasonable under all the circumstances. Thus, she argues that, when the Government seeks to dismiss a *qui tam* case because of a

settlement, Congress has taken away the Attorney General's unfettered right to dismiss a case brought solely for injury by the United States. Schweizer asserts that such a rule is necessary in order to avoid depriving Section 3730(c)(2)(B) of meaning.

Schweizer's argument is mistaken because this subsection retains meaning even when a district court, as here, recognizes the Government's unfettered right to dismiss a *qui tam* case brought for the United States.

Hundreds of *qui tam* cases are filed each year, and the Government has since Section 3730(c)(2)(A) was created in 1986 moved to dismiss only a small handful under this authority. The Government's overwhelming practice is to let relators proceed with *qui tam* cases even though the Attorney General has not intervened to take them over.

In short, the Government has an unfettered right to dismiss *qui tam* cases, but the Attorney General carries out his supervision of litigation brought for the United States by very rarely exercising that option, and instead choosing to let other parts of the False Claims Act *qui tam* scheme operate. The fact that the Attorney General could

-25-

hypothetically under the False Claims Act's express provisions move to dismiss all *qui tam* actions in which the Government does not intervene in no way renders meaningless the various parts of the statute that operate fully when the Attorney General does not exercise that option.

In many instances, the Government finds that False Claims Act cases can be settled, normally with the participation and agreement of the relator. When the relator does not agree to a particular settlement, the Government will either continue negotiating with the defendant and the relator, or will ask the district court to approve a settlement over the relator's opposition, demonstrating to the court that the settlement is fair, adequate, and reasonable under all the circumstances. See, *e.g., United States ex rel. Resnick v. Weill Medical College of Cornell University*, 2009 WL 637137 (S.D.N.Y. March 5, 2009); *United States ex rel. Ayers v. Bondcote Corp.*, No. CV403-011 (S.D. Ga. Aug. 20, 2004).

In other words, in the overwhelming number of cases, Section 3730(c)(2)(B) not only has meaning, but it governs; the Government either negotiates a settlement that is agreed to by the defendant and

the relator, or it moves to have the settlement approved by the district court after meeting the statutory standard.

On quite rare occasions, however, involving unusual circumstances, the Government moves to dismiss a *qui tam* case, based on an internal decision that it is not in the interests of the United States to have the case proceed. This case is one of those rare instances. It is extremely unusual because there were two relators, and one of them agreed to the settlement negotiated with the United States and the defendants. Thus, this was not simply a situation in which the Government had reached an agreement with a defendant and wanted to have a settlement approved over the relator's opposition; instead, here, the defendants and one of the relators agreed to the proposed settlement.

It is obviously awkward for the Government to contend in litigation against a relator over the merits of a particular case brought for the United States; it is even more troubling to do so when the Government and one relator on one side must battle against a second relator on the other. Rather than go through such difficult litigation

-27-

involving an internecine disagreement, the Government sought to end this case in the simplest way possible by moving to dismiss it.

In these odd circumstances, the Government chose to move alternatively in the district court. On the one hand, the Government decided to exercise its unfettered right to dismiss the case because of its unique situation; alternatively, the Government moved to have the court approve the settlement, if necessary, because it was fair, adequate, and reasonable, which the Government could demonstrate to the court. The court correctly decided that it did not need to resort to the alternative ground for ending the litigation, given that the Government had indeed exercised its unfettered right to dismiss.

Nothing about the Government's motion to dismiss or the district court's decision to grant that motion deprives Section 3730(c)(2)(B) of meaning. Just as the other parts of the False Claims Act *qui tam* mechanism retain their purpose when the Attorney General chooses not to exercise his option to dismiss a *qui tam* case under Section 3730(c)(2)(A), Section 3730(c)(2)(B) retains its purpose when the Attorney General does not move to dismiss.

There is therefore a fatal flaw at the outset of Schweizer's argument, and there is thus no reason for this Court to contemplate refusing to apply Section 3730(c)(2)(A) as written simply because in this one unusual case, the Government chose to move to dismiss. The fact that Schweizer posits a hypothetical situation in which some future Attorney General stunningly decides to change the Government practice in effect since 1986, and begin making wholesale use of his power under Section 3730(c)(2)(A) to dismiss *qui tam* cases is not a reason to conclude that Section 3730(c)(2)(B) has no meaning; in actual practice, this section manifestly does have a purpose and meaning.

In addition, Section 3730(c)(2)(B) can have independent meaning when the Government decides to ask a court for its approval of a settlement by making the settlement part of the judgment in the case. In that situation, the settlement would not simply be an agreement enforceable through contract law remedies. Rather, the settlement could also be enforceable, when necessary, through the means for enforcing judgments. See *Kokkonen v. Guardian Life Insurance Co. Of America*, 511 U.S. 375, 380-81 (1994).

Schweizer's attempt to create an imaginary conflict between Sections 3730(c)(2)(A) and (c)(2)(B) thus fails because in reality there is no such conflict. There is accordingly no reason in this case for the Court to override the Attorney General's rarely used, clear statutory authority to dismiss *qui tam* cases for the United States that he does not believe should be further pursued.[7]

For this reason, Schweizer's argument (Br. 23) that the Attorney General's unfettered right to dismiss a *qui tam* action has been limited by Federal Rule of Civil Procedure 41(a)(1)(A) is also wrong. Schweizer points out that this rule states that a plaintiff may dismiss an action voluntarily without a court order as long as doing so is consistent with "any applicable statute." *Ibid.*

---

[7] Although Schweizer challenges the Government's right to dismiss her pricing and Trade Agreements Act claims after the settlement with Océ, the Government actually settled only the pricing claims with the defendants, and did not settle or release any of its own claims under that statute. See Settlement Agreement, at ¶3 (attached as Exhibit 1 to United States' Motion to Dismiss, Dist. Ct. Docket No. 63 (filed Sept. 8, 2009)) (not listing any possible Government claims under the Trade Agreements Act). Those claims were therefore unquestionably subject to dismissal under *Swift* and *Hoyte* because there was no settlement of the Government's possible claims as to them. Even if Schweizer's arguments about the relationship between Sections 3730(c)(2)(A) and 3730(c)(2)(B) were correct, they would not be relevant to any claims regarding the Trade Agreements Act.

In this instance, the applicable statute is the False Claims Act, and unless Section 3730(c)(2)(A) has in some way been overridden, the dismissal here was fully in accord with that statute.  Schweizer's Rule 41 argument thus adds nothing here beyond her argument that Section 3730(c)(2)(B) has restricted Section 3730(c)(2)(A) – which it has not.

## B.    The Motion to Dismiss Filed by the United States Was Procedurally Proper.

Schweizer contends (Br. 17-19) that the district court erred in granting the Government's motion to dismiss because the United States did not properly intervene in this case in order to make that motion.  This argument is wrong because this Court unequivocally ruled in *Swift*, 318 F.3d at 251-52, that the United States does not have to be a party in a *qui tam* case for the Government to move to exercise its right to dismiss under Section 3730(c)(2)(A).

Moreover, the False Claims Act provides that, after the Government has exercised its option to decline to intervene at the outset of a *qui tam* case, a court "may nevertheless permit the Government to intervene at a later date upon a showing of good

-31-

cause." 31 U.S.C. § 3730(c)(3). In *Swift*, this Court noted (318 F.3d at 252) that it could construe the government's motion to dismiss there as including a motion to intervene.

In this case, the Government filed a notice of intervention. See Notice of Intervention (September 8, 2009) (Dist. Ct. Docket Entry 64) The district court certainly did not err by treating the Government's actions as sufficient for intervention. See JA 51 ("After the settlement negotiations the United States formally intervened and moved to dismiss the case" (citing District Court docket entries 63 and 64).

Even if the Government had not filed an intervention notice, the *Swift* Court pointed out (318 F.3d at 252) that the district court there could be construed as having granted intervention by granting the Government's motion to dismiss. The same is true here – the district court plainly believed that the Government had whatever status was necessary to exercise its unfettered right to dismiss Counts I and II of the amended complaint. See JA 51.[8]

---

[8] Schweizer points out (Br. 18) that the Government's notice of intervention cited 31 U.S.C. § 3730(b)(4) instead of the "good cause" exception provision in Section 3730(c)(3). This error is immaterial since it is obviously good cause for intervention when the Attorney General wishes to exercise his right to dismiss the case.

Schweizer asserts (Br. 18 n.11) that the holding in *Swift* that the United States does not have to be a party in order to move to dismiss a *qui tam* case has been overruled by the Supreme Court's decision in *United States ex rel. Eisenstein v. City of New York*, 129 S. Ct. 2230 (2009). There, that Court ruled that, because the Government is not a "party" to a *qui tam* case under the False Claims Act for purposes of the notice of appeal deadlines in 28 U.S.C. § 2107(b) and Federal Rule of Appellate Procedure 4(a)(1)(B), the additional appeal time when the United States is a party to a case does not apply. Schweizer's argument that this holding affects this case is mistaken.

The *Eisenstein* Court made clear throughout its opinion the limited nature of its ruling, which is confined to the meaning of "party" for purposes of appeal times. The Court moreover stated that its ruling that the United States was not a party in that *qui tam* case for purposes of the notice of appeal deadlines did "not mean that the United States must intervene before it can appeal any order of the court in an FCA action." 129 S. Ct. at 2233 n.2. And, the Court in *Eisenstein* noted that an individual can become a party to a case by intervening in the action. *Id.* at 2234.

-33-

Thus, nothing in *Eisenstein* overrides this Court's holding in *Swift* that the Government need not intervene in order to exercise its unfettered right to dismiss a *qui tam* suit, and that the courts may in any event treat the Government's motion to dismiss as a motion to intervene. Indeed, as already discussed above, this Court fully applied the rule of *Swift* in *Hoyte*, where the Government successfully moved to dismiss a count of the complaint even though it had not intervened.

### III. If Necessary, This Court Can Affirm The Dismissal Of Counts I And II On The Alternative Ground That The Record Here Demonstrates That The Settlement Was Fair, Adequate, And Reasonable Under All The Circumstances.

This Court may affirm a district court order based on any alternative ground with support in the record, as long as the appellate court is not changing the nature of the order. And the Court may do so even when the district court has not addressed the issue. *See Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 38 (1989).

As described above, the Government moved in the district court to dismiss Counts I and II on the alternative ground that the settlement here met the standards in the False Claims Act for approval over the opposition of a relator. The Government provided

-34-

considerable support for the fairness and adequacy of the settlement agreed to by defendants and relator Vee.

The district court held a hearing on this point, at which counsel for the Government and Schweizer (as well as Schweizer herself) discussed the evidence that had been turned up in the investigations by the relators and the Department of Justice, the likely testimony of various witnesses who would be deposed and available to testify at trial, the legal theories for liability, and the proper calculation of damages. So that this appellate brief need not be filed under seal, we are not including this confidential discussion here. However, it is plainly and fully set out in the Government's response in the district court to Schweizer's objection to the settlement, and in the transcript of the hearing before the district court (both of which are reprinted in the sealed Volume II of the Joint Appendix before this Court). See JA 92-100, 103-09, 112.

The Government's presentation to the district court on this point is straightforward. And, it was supported by the district court's own observations about possible problems with certain of the government officials involved in the relevant actions involving the defendants. See

JA 112-13, 115-16.   Schweizer offered little rebuttal to the Government's explanation of how it arrived at its conclusions that the settlement with the defendants and Vee was a good one.   See JA 113-18.

Under these circumstances, if this Court does not agree with the district court's ruling that the Government here properly invoked its unfettered right to dismiss this case, it should not take up further judicial resources with a remand.   Rather, the Court should examine the clear record here – which is short, but fully adequate – and conclude that the settlement reached with the defendants and relator Vee is fair, adequate, and reasonable under all the circumstances, and thus should be accepted.

## CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing Counts I and II of the complaint should be affirmed.

Respectfully submitted,

TONY West
  *Assistant Attorney General*

RONALD C. MACHEN
  *United States Attorney*

DOUGLAS LETTER
  (202) 514-3602
  *Appellate Litigation Counsel*
  *Civil Division, Room 7513*
  *950 Pennsylvania Ave., NW*
  *Department of Justice*
  *Washington, D.C.  20530-0001*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(c), I certify that this brief was prepared using WordPerfect X4, Bookman Old Style font, 14-point type, and contains 6,770 words.


/s/Douglas Letter
Douglas Letter

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November 2011, I filed and served the foregoing "Brief of the Appellee United States" through the Court's CM/ECF system.


/s/Douglas Letter
Douglas Letter