Westlaw.

Page 1

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
District of Columbia Circuit.
UNITED STATES ex rel. Stephanie SCHWEIZER,
Appellant
Nancy Vee, Appellee
v.
OCÉ N.V., et al., Appellees.

No. 11–7030.
Argued Jan. 13, 2012.
Decided April 10, 2012.
Reissued April 20, 2012.

**Background:** Relator sued her former employer under the False Claims Act's qui tam and retaliation provisions. The government moved to dismiss the qui tam claims after reaching a settlement agreement with employer. The United States District Court for the District of Columbia, 681 F.Supp.2d 64, granted the motion, and then granted employer summary judgment on the remaining retaliation claim, 772 F.Supp.2d 174, and relator appealed.

**Holdings:** The Court of Appeals, Randolph, Senior Circuit Judge, held that:
(1) district court erred in dismissing qui tam claims without finding the settlement agreement fair, adequate, and reasonable, and
(2) genuine issues of material fact existed as to whether contractor's employee gathered evidence that contractor defrauded federal agencies, shared that evidence with her superiors, and warned them of potential False Claims Act liability, and thus engaged in protected conduct, and whether retaliation was the real motive underlying her dismissal.

Reversed and remanded.

West Headnotes

**[1] United States 393 ⛌122**

393 United States
　393VIII Claims Against United States
　　393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
　　　393k122 k. Penalties and Actions Therefor.
Most Cited Cases

Government did not have to intervene with the qui tam portion of case against contractor before moving to dismiss qui tam claims under False Claims Act (FCA) outside the initial sixty-day intervention period. 31 U.S.C.A. § 3730(b)(2), (b)(4)(A).

**[2] United States 393 ⛌122**

393 United States
　393VIII Claims Against United States
　　393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
　　　393k122 k. Penalties and Actions Therefor.
Most Cited Cases

Government may not settle qui tam case when the relator objects unless the court approves the settlement agreement between the government and the qui tam defendant; settlement needs judicial approval to become effective. 31 U.S.C.A. § 3730(c)(2)(B).

**[3] United States 393 ⛌122**

393 United States
　393VIII Claims Against United States
　　393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
　　　393k122 k. Penalties and Actions Therefor.
Most Cited Cases

False claim Act provision requiring judicial approval of settlement of qui tam action did not unconstitutionally deprive the government of sufficient control over cases brought in its name in violation of separation of powers as applied to settlement of qui tam action in which relator objected to settlement and government consented to judicial involvement in the settlement process. U.S.C.A. Const. Art. 3, § 1 et seq.; 31 U.S.C.A. § 3730(c)(2)(B).

**[4] United States 393 ⛌122**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

393 United States
    393VIII Claims Against United States
        393k120 Making or Presentation of False Claims and Other Offenses Relating to Claims
            393k122 k. Penalties and Actions Therefor. Most Cited Cases

    By urging the district court to retain jurisdiction to enforce the terms of the settlement agreement in qui tam action by and between the parties, government consented to judicial involvement in the settlement process. 31 U.S.C.A. § 3730(c)(2)(B).

**[5] Labor and Employment 231H ⛘783**

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(A) In General
            231Hk781 Refusal to Engage in Wrongdoing
                231Hk783 k. Particular Cases in General. Most Cited Cases

    To come within anti-retaliation provision of False Claims Act (FCA), an employee does not have to alert his employer to the prospect of a False Claims Act suit; an employee can be acting "in furtherance of" a [False Claims Act], and can be engaging in protected activity, although the employee is not contemplating bringing a qui tam suit, is not even aware that there is such a thing as a qui tam action, and has no idea whether his investigation or other acts, if made known to the government, might cause the Attorney General to sue his employer under the False Claims Act. 31 U.S.C.A. § 3730(h).

**[6] Federal Civil Procedure 170A ⛘2498.4**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2498.4 k. False Claims and Qui Tam Actions. Most Cited Cases

    Genuine issues of material fact existed as to whether contractor's employee gathered evidence that contractor defrauded federal agencies, shared that evidence with her superiors, and warned them of potential False Claims Act liability, and thus engaged in protected conduct, and whether retaliation was the real motive underlying her dismissal, precluding summary judgment in favor of contractor on employee's FCA retaliation claim. 31 U.S.C.A. § 3730(h).

**[7] Labor and Employment 231H ⛘861**

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(B) Actions
            231Hk859 Evidence
                231Hk861 k. Presumptions and Burden of Proof. Most Cited Cases

    *McDonnell Douglas* framework applies to False Claims Act (FCA) retaliation claims. 31 U.S.C.A. § 3730(h).

Appeal from the United States District Court for the District of Columbia (No. 1:06–cv–00648).Jason H. Ehrenberg argued the cause and filed the briefs for appellant.

Douglas Letter, Attorney, U.S. Department of Justice, argued the cause for appellee United States. With him on the brief were Tony West, Assistant Attorney General, and Ronald C. Machen Jr., U.S. Attorney. R. Craig Lawrence, Assistant U.S. Attorney, entered an appearance.

Tillman J. Breckenridge argued the cause for appellees **Océ** N. V., et al. With him on the brief were Tyree P. Jones Jr., and Michael B. Roberts. Altomease R. Kennedy, Herbert V. McKnight Jr., and David W. Sanford entered appearances.

Before SENTELLE, Chief Judge, GRIFFITH, Circuit Judge, and RANDOLPH, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge RANDOLPH.

RANDOLPH, Senior Circuit Judge:
    *1 Stephanie Schweizer sued **Océ** North America, Inc., her former employer, under the False Claims Act's *qui tam* and retaliation provisions, 31 U.S.C. § 3730(b) & (h). The government moved to dismiss the *qui tam* claims after reaching a settlement agreement with **Océ**.[FN1] The district court granted the motion

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

over Schweizer's objection. It then granted **Océ** summary judgment on the remaining retaliation claim. We reverse and remand on all counts.

**Océ** sells copying and printing products. It had two supply contracts with the General Services Administration: one for copiers, printers, and document management software; the other for larger digital printing systems. The contracts required **Océ** to provide government customers with the same discount offered to certain private sector purchasers. *See* 48 C.F.R. § 552.238–75. The contracts also required **Océ** to sell to the government only goods made in the United States or other countries designated under the Trade Agreements Act, 19 U.S.C. § 2501 *et seq.* We refer to these provisions as the price reduction and country-of-origin clauses, respectively.

**Océ** hired Schweizer in December 2004 to serve as a "GSA contracts manager" in Arlington, Virginia. The position required Schweizer to monitor **Océ's** compliance with the contracts described above. Other day-to-day responsibilities included updating product listings, negotiating modifications with the General Services Administration's contracting officer, and answering questions from **Océ** sales personnel. Ronald Frost, **Océ's** director of government contracting, oversaw Schweizer's work and served as her immediate supervisor.

In early 2005 Schweizer began to suspect that **Océ** was violating the price reduction clauses.[FN2] Through discussions with several co-workers, she learned that **Océ** representatives had been offering private sector customers significant ad hoc discounts. Her further investigation revealed that **Océ** was not passing these discounts on to the government, as the price reduction clauses required. If accurate, these findings meant that **Océ** regularly overcharged government agencies.

Schweizer sought to correct the violations, consistent with her duties as GSA contracts manager. She provided Frost with records documenting the private sector discounts, which she said were causing **Océ** "not to be in compliance with the [contracts]." Frost allegedly responded by forbidding Schweizer from investigating the matter and stating that management would "destroy" her if she disobeyed.

A second set of concerns arose in November 2005 as **Océ** was planning to merge with Imagistics, a rival print and document management company. In preparation for the merger, **Océ** officials asked Schweizer to determine whether Imagistics' products complied with the contracts' country-of-origin clauses. Schweizer replied that they did not. She explained in an e-mail to Bryan Beauchamp, **Océ's** vice president of business development, that most Imagistics products were manufactured in China, a country not certified under the Trade Agreements Act. Beauchamp agreed with Schweizer's assessment. Despite this understanding, Frost directed Schweizer to add Imagistics' products to **Océ's** government contract listings just a few days later. When Schweizer refused, Frost allegedly told her not to pursue the issue any further and again threatened to "destroy" her if she did not comply.

**\*2** Schweizer did not heed Frost's warning. Instead, she contacted Beauchamp, Frost's superior, in early December 2005. Schweizer informed Beauchamp of Frost's actions, her pricing investigation, and her belief that **Océ** was violating the False Claims Act. She also alleged that many of **Océ's** own products were made in China, rather than in the Netherlands as stated in the contracts. Beauchamp referred Schweizer to **Océ's** human resources director, Gerald Whelan, who then directed her to meet with in-house counsel, Dan Harper. That meeting resulted in a further referral to Kenneth Weckstein, **Océ's** outside counsel for government contracting issues. In each of these conversations Schweizer reiterated her claim that **Océ** was violating the False Claims Act.

On December 6, 2005, Schweizer made a final, emotional plea to Beauchamp. She complained that the meetings with Whelan, Harper, and Weckstein were not productive, and that Beauchamp was "her last hope in terms of ... saving the company" from "legal trouble." Beauchamp suspended Schweizer two days later, and terminated her employment on December 15. In a letter memorializing these actions, Beauchamp wrote that Schweizer had engaged in "inappropriate communications with [her] colleagues and supervisors"; "refused to follow orders"; ignored "the chain of command"; and "failed to maintain necessary standards of workmanship and productivity." The letter added that **Océ** would "continue to investigate" Schweizer's "numerous complaints ... about illegal conduct," including "fraud and crimes" committed in conjunction with the company's "Federal Supply Schedule contract." It closed by stating

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

While **Océ's** initial response to your allegations is that they are without basis, you may want to bring your concerns to the attention of the Inspector General at the U.S. General Services Administration ("GSA"). Separately, **Océ** intends to report your allegations to the GSA Inspector General.

Schweizer filed a three-count complaint against **Océ** in April 2006. The first two counts rely on the False Claims Act's *qui tam* provisions, which permit private citizen "relators" to sue on behalf of the United States. *See* 31 U.S.C. §§ 3729(a), 3730(b) (2006).[FN3] Count I alleges that **Océ** knowingly defrauded federal agencies by misrepresenting the origin of its products and by breaching its promise to provide the same discount offered to private sector customers. *See id. § 3729(a)(1)*-(2). Count II charges **Océ** with conspiring to do the same. *See id. § 3729(a)(3)*.[FN4] The third count states a claim for retaliation under 31 U.S.C. § 3730(h), which prohibits employers from discriminating against an employee "because of lawful acts done by the employee ... in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under [§ 3730]." Specifically, Count III asserts that **Océ** fired Schweizer as a result of her pricing and product sourcing investigations. Schweizer filed an amended complaint in December 2006, which added **Océ** employee Nancy Vee as a co-plaintiff on Counts I and II.

**\*3** The government declined to intervene in the case after conducting an extensive investigation of Schweizer's *qui tam* claims. *See* 31 U.S.C. § 3730(a) & (b)(2). Nonetheless, it remained an active participant in settlement discussions. These talks came to fruition in September 2009, when **Océ**, Vee, and the government—but not Schweizer—reached an agreement to dispose of Counts I and II. The agreement required **Océ** to pay $1.2 million, plus interest, to the government, with nineteen percent of that total set aside for Schweizer and Vee. In return, **Océ** received a partial release from liability and a promise that the government would move to dismiss Counts I and II of the amended complaint. The government filed its notice of intervention and corresponding motion to dismiss on September 8, 2009. **Océ** filed an answer later that day.

Schweizer opposed the settlement and the motion to dismiss. She argued that the settlement understated the extent of **Océ's** violations, and thus could not satisfy the criteria set forth in 31 U.S.C. § 3730(c)(2)(B). That provision allows the government to "settle [a *qui tam*] action ... notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." *Id.* § 3730(c)(2)(B). The government offered two responses. First, it asserted that the district court could dismiss Counts I and II over Schweizer's objection pursuant to § 3730(c)(2)(A) *without* reviewing the settlement.[FN5] Section 3730(c)(2)(A) states that "[t]he Government may dismiss [a *qui tam*] action notwithstanding the objections of the person initiating the action if the person has been notified ... of the filing of the motion [to dismiss] and the court has provided the person with an opportunity for a hearing on the motion." In the alternative, the government urged the district court to deem the settlement "fair, adequate, and reasonable" under § 3730(c)(2)(B).

The district court dismissed Counts I and II after holding a hearing. *United States ex rel. Schweizer v. Océ N.V.,* 681 F.Supp.2d 64 (D.D.C.2010). It declined to review the settlement, concluding that § 3730(c)(2)(A) gave the government "an unfettered right to dismiss" *qui tam* claims. 681 F.Supp.2d at 65–66 (quoting *United States ex rel. Hoyte v. Am. Nat'l Red Cross,* 518 F.3d 61, 65 (D.C.Cir.2008) (quoting *Swift v. United States,* 318 F.3d 250, 252 (D.C.Cir.2003))). Although this approach bypassed § 3730(c)(2)(B), the district court read *Hoyte* and *Swift* as requiring that result. 681 F.Supp.2d at 66. The expansive reading of § 3730(c)(2)(A) in those decisions, the court explained, had "already effectively rendered ... § 3730(c)(2)(B) a dead letter." *Id.* To this the district court added a second justification for ignoring § 3730(c)(2)(B): its probable unconstitutionality. In the court's view, § 3730(c)(2)(B) impermissibly undermined the Executive's power "to conduct litigation on behalf of the United States" by giving courts the last word on settlement. *Id.* at 67–68 (citing U.S. CONST. art. II, § 3 (The President "shall take Care that the Laws be faithfully executed.")).

**\*4** As to Count III, Schweizer's retaliation claim, **Océ** moved for summary judgment and the district court granted the motion. *United States ex rel. Schweizer v. Océ N. Am., Inc.,* 772 F.Supp.2d 174

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

(D.D.C.2011). It held that Schweizer had not put **Océ** on notice that she was acting in furtherance of a False Claims Act suit. *Id.* at 178–81. The court based this conclusion on precedent indicating that employees whose job responsibilities include fraud prevention "must 'overcome the presumption that they are merely acting in accordance with their employment obligations' to put their employers on notice." *United States ex rel. Williams v. Martin–Baker Aircraft Co.,* 389 F.3d 1251, 1261 (D.C.Cir.2004) (quoting *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 568 (6th Cir.2003)). According to the district court, Schweizer did not rebut this presumption—and thus did not put **Océ** on notice—because "every step she took in furtherance of her 'fraud investigation' was an act that fell within her job description or was undertaken at senior management's express instruction." 772 F.Supp.2d at 179.

I

Schweizer argues that the district court erred in dismissing her *qui tam* claims without determining whether the settlement was "fair, adequate, and reasonable." The quotation comes from 31 U.S.C. § 3730(c)(2)(B): the "Government may settle [a *qui tam*] action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." The government's reply, and **Océ's**, is that judicial approval of the settlement is not required in light of 31 U.S.C. § 3730(c)(2)(A), which states that the "Government may dismiss [a *qui tam*] action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." We have held that § 3730(c)(2)(A) provides the government with "an unfettered right to dismiss" *qui tam* claims, *Swift,* 318 F.3d at 252; *see also Hoyte,* 518 F.3d at 65, and that the only function of a hearing under § 3730(c)(2)(A) "is simply to give the relator a formal opportunity to convince the government not to end the case," *Swift,* 318 F.3d at 253.

As a preliminary matter, Schweizer claims the government may not invoke § 3730(c)(2)(A) because it never properly intervened in the case. She points out that the Act prescribes only two ways for the government to intervene: during an initial sixty-day window (subject to extension by the district court), § 3730(b)(4); or "at a later date upon a showing of good cause," § 3730(c)(3). Because the government declined to intervene during the initial sixty-day period, and did not invoke subsection (c)(3) or show good cause in its later filing, it never became a party to the suit. Thus, Schweizer concludes, the government could not properly move for dismissal.

**\*5** [1] Schweizer's view of the Act's intervention provisions is not accurate. Intervention is necessary "only if the government wishes to 'proceed with the action.' " *Swift,* 318 F.3d at 251 (quoting 31 U.S.C. § 3730(b)(2) & (b)(4)(A)). Here, the government did not seek to proceed with the *qui tam* portion of the case; it sought to end it. It follows that the government did not have to intervene before filing its motion. *Swift,* 318 F.3d at 251–52. Nothing in *United States ex rel. Eisenstein v. City of New York,* 556 U.S. 928, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009), which addressed the government's party status for purposes of the Federal Rules of Appellate Procedure, is to the contrary. Nor does it matter that the government moved to dismiss outside the initial sixty-day intervention period. *See Hoyte,* 518 F.3d at 63–65.

[2] The settlement agreement here falls squarely within § 3730(c)(2)(B): the government reached an agreement with the defendant to "settle the action ... notwithstanding the objections of the person initiating the action." In that circumstance, the statute required the district court to "determine, after a hearing, [whether] the proposed settlement [was] fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). **Océ** and the government maintain that this conclusion is at odds with the government's "unfettered" dismissal power recognized in *Swift* and *Hoyte.* If the decision to dismiss is free from judicial review, they reason, the decision to dismiss because of a settlement must be as well. The argument has merit. Why should it be that before the government may end a case by settling it with the defendant, the court must approve the settlement if the relator objects, yet when the government simply dismisses the action over the relator's objection, the court has no say in the matter? At least in a settlement the relator's efforts have some protection: he will receive no less than fifteen percent of whatever monetary recovery the government negotiates. *See* 31 U.S.C. § 3730(d). But in a pure dismissal as in *Swift* the relator has no protection: he is not entitled to compensation *or* judicial review of the government's decision.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

The full answer to the government's and **Océ's** point is simply that the language of § 3730(c)(2)(B) leaves no space for their interpretation. Neither the government nor **Océ** attempts to parse the statutory text. That § 3730(c)(2)(B) speaks in terms, not of a settlement, but of a "proposed settlement," signifies that an agreement between the government and the *qui tam* defendant needs judicial approval to become effective. Otherwise it remains just a proposal. Also significant is the absence of any language in § 3730(c)(2)(B) indicating that judicial approval is necessary only in some special category of cases. There are but two conditions to trigger the section's operation: (1) the government and the defendant agree to settle the case and (2) the relator objects. Both conditions existed in this case.

**\*6** In addition, allowing dismissal without judicial review of the settlement would render § 3730(c)(2)(B) a nullity and thus contravene "the longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous." *Beck v. Prupis,* 529 U.S. 494, 506, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000); *see also Abourezk v. Reagan,* 785 F.2d 1043, 1054 (D.C.Cir.1986). The government insists this is not so because, in most cases, the Attorney General voluntarily "choos[es]" to follow § 3730(c)(2)(B). Only in "unusual circumstances" does the Attorney General override it by invoking § 3730(c)(2)(A).

We reject the government's argument. Section 3730(c)(2)(B) contains no opt-out clause for rare cases or unusual circumstances. It does not permit the Attorney General to decide when there shall be a hearing on the settlement: the statute says that the government "may" settle a matter over a relator's objection "if the court" holds a hearing and finds the "proposed settlement" reasonable. The meaning is clear. The government may not settle a case when the relator objects unless the court approves the settlement. This is the way the Supreme Court read the statute in *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). The Court stated that § 3730(c)(2)(B) "prohibits the Government from settling [a] suit over [a] relator's objection without a judicial determination of 'fair[ness], adequa[cy] and reasonable[ness].' " *Id.* at 772 (quoting 31 U.S.C. § 3730(c)(2)(B)).

**Océ** and the government claim that § 3730(c)(2)(B) should apply only when the government asks to "mak[e] the settlement part of the judgment in the case." If the government does not do so, they say, then § 3730(c)(2)(A) gives it an unfettered right to dismiss the case. The argument draws upon *Kokkonen v. Guardian Life Insurance Co.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). There the Court explained that when parties settle a suit filed in federal court, they typically must resort to contract law remedies, rather than court supervision, for enforcement of the agreement. *Id.* at 380–81. The situation is "quite different," however, when "the parties' obligation to comply with the terms of [a] settlement agreement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381. In those instances, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id* . Limiting § 3730(c)(2)(B) to these circumstances, the argument goes, would "protect[ ] the government's right to ... dismiss an action when it chooses," while also ensuring that § 3730(c)(2)(B) retains meaning when the government asks the court to play a role in the settlement process. **Océ** Br. 36.

**\*7** Even if we credited the argument, it would not help the government or **Océ**. The government's motion to dismiss "request[ed] that the Court retain jurisdiction to ... enforce the terms of the settlement agreement by and between the parties." The district court granted the motion and its order expressly "retain[ed] jurisdiction to determine the award to relator Schweizer, if any, from the proceeds of the settlement." These developments put the district court's power and prestige behind the settlement agreement, thereby triggering § 3730(c)(2)(B) even under the government's and **Océ's** interpretation of the statute.

**Océ** offers another argument against applying § 3730(c)(2)(B): it says the provision violates the separation of powers and is therefore unconstitutional. (The government does not join in the argument.[FN6]) Although **Océ** seems to phrase its constitutional claim as a facial challenge to § 3730(c)(2)(B), we will treat it as if it were an as-applied challenge. *See Texas v. Johnson,* 491 U.S. 397, 403 n. 3, 109 S.Ct. 2533, 105

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

L.Ed.2d 342 (1989).[FN7]

[3] According to **Océ**, "[t]he decision of when, and under what circumstances, a False Claims Act action should be settled falls within the core and exclusive powers of the Executive Branch." For support, **Océ** points to Article II, § 3, of the Constitution, which states that the President "shall take Care that the Laws be faithfully executed." We mentioned the Take Care Clause in *Swift* when we interpreted § 3730(c)(2)(A). Decisions to dismiss under § 3730(c)(2)(A), we said, were analogous to decisions not to prosecute, which are committed to the Executive Branch's absolute discretion. *Swift,* 318 F.3d at 252 (citing *Heckler v. Chaney,* 470 U.S. 821, 831–33, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)). **Océ** asserts that settlement decisions should be treated no differently, since they involve policy judgments ill-suited to judicial resolution. And because § 3730(c)(2)(B) gives the judiciary "the final word on settlement decisions," **Océ** concludes that it unconstitutionally deprives the government of sufficient control over cases brought in its name. **Océ** Br. 42; *see Morrison v. Olson,* 487 U.S. 654, 696, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988).

Although decisions not to prosecute may be immune from review, the same cannot be said of decisions to dispose of a pending case. *Compare Heckler,* 470 U.S. at 833, *with Rinaldi v. United States,* 434 U.S. 22, 29–30 & n. 15, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). We recognized this distinction in *Swift,* stating that some limitations on the Executive Branch's dismissal authority may be valid "despite the separation of powers." 318 F.3d at 252 (citing *United States v. Cowan,* 524 F.2d 504, 513 (5th Cir.1975)). For instance, the government "might be subject to Rule 41(a)(2)," which conditions dismissal "upon such terms and conditions as the court deems proper," if it filed a § 3730(c)(2)(A) motion "after the complaint had been served and the defendant answered." *Id.* at 252–53. Two factors make the case for judicial review even stronger here.

**\*8** First, judicial scrutiny of settlement agreements and similar devices is fairly common. Federal Rule of Criminal Procedure 48(a) permits the government to "dismiss an indictment, information, or complaint" only "with leave of court." Courts have upheld this provision even though it restricts executive authority and "vest[s] some discretion in the court." *Rinaldi,* 434 U.S. at 29 n. 15; *see also Cowan,* 524 F.2d at 513. Other examples include judicial oversight of plea agreements, *see* FED.R.CRIM.P. 11(c)(3)(A) ("[T]he court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report ."); antitrust consent decrees, *see* 15 U.S.C. § 16(e)(1) ("Before entering any consent judgment proposed by the United States under this section, the court shall determine that the entry of such judgment is in the public interest."); class action settlements, *see* FED.R.CIV.P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."); and settlements in shareholder derivative suits, *see* FED.R.CIV.P. 23.1(c) ("A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval."). **Océ** claims these provisions are irrelevant because they "protect *other* parties who are absent or potentially lack the savvy or representation to protect themselves." But § 3730(c)(2)(B) does similar work—it protects the relator.[FN8]

[4] In any event, here the government invoked the court's supervisory powers. By urging the district court to "retain jurisdiction to ... enforce the terms of the settlement agreement by and between the parties," the government consented to judicial involvement in the settlement process. *Cf. Kokkonen,* 511 U.S. at 380–81. The same general principle—that a court cannot become a partner in enforcement without first examining the reasonableness of the request—applies when parties call on courts to issue preliminary injunctions, *see Mills v. District of Columbia,* 571 F.3d 1304, 1308 (D.C.Cir.2009), and consent decrees, *United States v. Trucking Emp'rs, Inc.,* 561 F.2d 313, 317 (D.C.Cir.1977).

We therefore hold that § 3730(c)(2)(B) is constitutional as applied to this case. Since the district court dismissed Counts I and II without finding the settlement agreement fair, adequate, and reasonable, we reverse and remand the case for a § 3730(c)(2)(B) hearing.[FN9]

II

Schweizer also argues that the district court erred in granting **Océ** summary judgment on her retaliation claim. Our review is *de novo. Bush v. District of Columbia,* 595 F.3d 384, 387 (D.C.Cir.2010).

Section 3730(h), added in 1986, was "designed to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime." Neal v. Honeywell Inc., 33 F.3d 860, 861 (7th Cir.1994), *abrogated on other grounds by* Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 416–17, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005). At the time Schweizer's claim accrued, the provision read:

> **\*9** Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h) (2006).

This language states two basic elements: (1) acts by the employee "in furtherance of" a suit under § 3730—acts also known as "protected activity"; and (2) retaliation by the employer against the employee "because of" those acts. United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 736 (D.C.Cir.1998). For reasons we will explain in a moment, it is important to recognize that when § 3730(h) speaks of acts "in furtherance of an action under this section" it is not referring only to *qui tam* actions. Section 3730 authorizes *qui tam* actions, *see* 31 U.S.C. § 3730(b), but it also provides that "the Attorney General may bring a civil action under this section," *id.* § 3730(a). In other words, an employee's actions may further a *qui tam* suit or a suit by the United States under the False Claims Act.

Decisions of this court and others have expounded on the elements of a False Claims Act retaliation claim. We have, for instance, divided the causation question into two parts: (1) did "the employer ha[ve] knowledge the employee was engaged in protected activity"; and (2) was the employer's adverse action against the employee "motivated, at least in part, by the employee's engaging in [that] protected activity." Yesudian, 153 F.3d at 736 (quoting S.REP. NO. 99–345, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5300) (alteration in original). The former, often referred to as a "notice" requirement, recognizes that an employer cannot "possess the retaliatory intent necessary to establish a violation of § 3730(h)" unless it is "aware that the employee is investigating fraud." Martin–Baker, 389 F.3d at 1260–61 (quoting Yesudian, 153 F.3d at 744); *see also* Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 952 (5th Cir.1994).

[5] To come within § 3730(h), an employee does not have to alert his employer to the prospect of a False Claims Act suit. Yesudian, 153 F.3d at 742. The employee has no obligation to give such a warning because § 3730(h) does not require the employee to " 'know' that the investigation he was pursuing could lead to a False Claims Act suit." Id. at 741; *see also* Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1145–46 (11th Cir.1996); United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir.1996); Neal, 33 F.3d at 864. In terms of § 3730(h), an employee can be acting "in furtherance of an action under this section"—can be engaging in protected activity—although the employee is not contemplating bringing a *qui tam* suit, is not even aware that there is such a thing as a *qui tam* action, and has no idea whether his—the employee's—investigation or other acts, if made known to the government, might cause the Attorney General to sue his employer under the False Claims Act. From this, it follows that the employer may incur liability under § 3730(h) even if the employer has no inkling that a False Claims Act suit may be in the offing. As our court stated in *Yesudian,* "the kind of knowledge the defendant must have mirrors the kind of activity in which the plaintiff must be engaged." 153 F.3d at 742.

**\*10** Some decisions have applied a different concept of notice when employees claim that "performance of their normal job responsibilities constitutes protected activity." Martin–Baker, 389 F.3d at 1261. In that situation, decisions such as *Mar-*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

tin–Baker [FN10] hold that employees have not put their employer on notice unless they "overcome the presumption that they are merely acting in accordance with their employment obligations." *Id.* (quoting *Yuhasz,* 341 F.3d at 568). Although the reasoning behind these rulings is not always fully spelled out, it appears to proceed in three steps. One: only if the employer is aware that its employee is engaging in, say, the protected conduct of an investigation "in furtherance of" a False Claims Act suit can the employer fire the employee "because of" the employee's protected conduct. *See, e.g., Martin–Baker,* 389 F.3d at 1261. Two: an employer cannot be so aware if the employee is just performing his job. *See, e.g., Ramseyer,* 90 F.3d at 1522–23.[FN11] Three: therefore the employee must put his employer on notice that he "was pursuing an FCA case" before the employer "discharge[s]" him. *Yuhasz,* 341 F.3d at 567. Step three presents some analytical difficulty in light of our holding that an employee engages in protected conduct even if the employee himself does not " 'know' that the investigation he was pursuing could lead to a False Claims Act suit." *Yesudian,* 153 F.3d at 741.[FN12]

[6] Nevertheless we must apply *Martin–Baker* to this case. *See LaShawn A. v. Barry,* 87 F.3d 1389, 1395 (D.C.Cir.1996) (en banc). Like the employee in *Martin–Baker* and the other employees in this line of cases from other circuits, Schweizer's job was to ensure compliance with government contracts. Her retaliation claim therefore cannot succeed unless she alerted **Océ** of her protected conduct by acting outside her normal job responsibilities, notifying a party outside the usual chain of command, advising **Océ** to hire counsel, or taking "any [other] action which a factfinder reasonably could conclude would put [ **Océ**] on notice that litigation [was] a reasonable possibility." *Martin–Baker,* 389 F.3d at 1261–62 (quoting *Eberhardt,* 167 F.3d at 868).[FN13] Since Schweizer's case is here on appeal from a grant of summary judgment, the question is whether there are genuine issues of material fact with respect to notice (and thus causation). Could a jury reasonably find that **Océ** discharged Schweizer "because of lawful acts" she took "in furtherance of" a False Claims Act suit? We believe the answer is yes when we view the record in the light most favorable to Schweizer.

Schweizer repeatedly disobeyed the orders of Frost, her supervisor, to stop investigating **Océ's** pricing and product sourcing practices. She did so despite Frost's warnings that the company would "destroy" her if she did not comply. Specifically, Schweizer contacted Beauchamp, Frost's supervisor, on two separate occasions in early December 2005. The first time, she alleged a variety of specific False Claims Act violations; the second time, she made an emotional plea to "sav[e] the company" from "legal trouble"—a statement Beauchamp knew involved "the contract[s]" and the company's "pricing policies." The company fired Schweizer less than two weeks later. In a letter explaining the decision, Beauchamp stated that Schweizer was fired for several reasons, including "refusing to follow orders" and ignoring "the chain of command." The letter also indicated that **Océ** would refer Schweizer's allegations to the General Services Administration Inspector General for further review.

*11 These facts, if proven, would be sufficient to support a finding that **Océ** knew about Schweizer's protected conduct and fired her, at least in part, "because of" that conduct. *See Yesudian,* 153 F.3d at 736. Schweizer's actions were not of the sort "typically [performed] as part of a contract administrator's job." *Martin–Baker,* 389 F.3d at 1261 (quoting *Robertson,* 32 F.3d at 952). The company's termination letter indicating that Schweizer was fired for failing to follow orders and the chain of command made precisely this point. As a result, Schweizer's factual allegations are sufficient to overcome "the presumption that [she was] merely acting in accordance with [her] employment obligations." *Id.* (quoting *Yuhasz,* 341 F.3d at 568).

**Océ** argues that we should affirm on two other grounds. First, it claims that Schweizer did not engage in protected activity. The parties briefed this question in their summary judgment filings. Although the district court did not reach the issue, *see* 772 F.Supp.2d at 180, the parties have again raised it on appeal. We therefore may decide the issue. *See Flynn v. Dick Corp.,* 481 F.3d 824, 833 n. 9 (D.C.Cir.2007); *Davis v. U.S. Dep't of Justice,* 968 F.2d 1276, 1280 (D.C.Cir.1992); *see also Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

According to **Océ**, Schweizer did not conduct her own "meaningful investigation." Instead, she merely "jumped to conclusions and berated her superiors based on unfounded assumptions ." From this **Océ**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

concludes that Schweizer did not undertake actions "in furtherance of" a False Claims Act suit. But on her version of the facts, Schweizer gathered evidence that **Océ** defrauded federal agencies, shared that evidence with her superiors, and warned them of potential False Claims Act liability. Internal reporting of this kind is a classic example of protected activity. *See Yesudian, 153 F.3d at 741 n. 9*. Accordingly, **Océ** is not entitled to summary judgment on protected activity grounds.

Second, **Océ** asserts that Schweizer was fired for legitimate, non-discriminatory reasons. Again, the district court did not reach this question. 772 F.Supp.2d at 180–81. Although the parties have briefed the issue on appeal, their arguments fail to address a basic question regarding the appropriate legal standard: what are courts to do when an employee has made out a prima facie case of retaliation, the employer has offered a non-retaliatory motive for its actions, and the employee has alleged that the employer's proffered motive is pretextual?

The familiar *McDonnell Douglas* burden-shifting framework, *see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)*, offers a possible solution. Under *McDonnell Douglas,* an employee first must make out a prima facie case of retaliation by showing "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke, 557 F.3d 670, 677 (D.C.Cir.2009)*. If the employee does so, then the burden shifts to the employer to "produce admissible evidence that, if believed, would establish that [its] action was motivated by a legitimate, non-discriminatory reason." *Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C.Cir.2004)* (quoting *Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C.Cir.2004)*) (alteration in original). Once that occurs, "the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer ... retaliation from all the evidence." *Id.*

**\*12** [7] The First Circuit recently held that the *McDonnell Douglas* framework applies to § 3730(h) retaliation claims. *See Harrington v. Aggregate Indus.-Ne. Region, Inc., 668 F.3d 25, 30–31 (1st Cir.2012)*.[FN14] We agree with the First Circuit's well-reasoned opinion and adopt its approach here. Applying *McDonnell Douglas* to Schweizer's case, we

believe that all of the preliminary steps have been satisfied—Schweizer has set forth a prima facie case of retaliation, and **Océ** has presented an alternative, non-discriminatory basis for terminating her employment. Thus, all that remains is the ultimate question "whether a reasonable jury could infer ... retaliation from all the evidence." *Jones, 557 F.3d at 677* (quoting *Carter, 387 F.3d at 878*) (alteration in original); *see also Harrington, 668 F.3d at 31* ("[T]o succeed ... the [employee] must have adduced sufficient evidence to create a genuine issue as to whether retaliation was the real motive underlying his dismissal."). The parties have not briefed this question directly, so we remand it to the district court for further consideration.

### III

For the reasons given above, we reverse the district court's dismissal of Counts I and II and its grant of summary judgment on Count III. The case is remanded for review of the settlement agreement pursuant to 31 U.S.C. § 3730(c)(2)(B) and consideration of the parties' remaining summary judgment arguments on Count III.

*So ordered.*

FN1. Schweizer's complaint names as defendants **Océ** North America, Inc. and three related companies, **Océ**–USA Holding, Inc., **Océ** N .V., and **Océ** Imagistics Inc. We refer to these entities collectively as **Océ**.

FN2. The parties disagree about many of the facts that follow. We review the record in the light most favorable to Schweizer, the non-moving party. *See Shaw v. Marriott Int'l, Inc., 605 F.3d 1039, 1044 (D.C.Cir.2010)*.

FN3. Congress has amended sections 3729 and 3730 several times since Schweizer filed suit in 2006. *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111–203, § 1079A(c)(1) & (2), 124 Stat. 1376, 2079 (2010); Patient Protection and Affordable Care Act, Pub.L. No. 111–148, § 10104(j)(2), 124 Stat. 119, 901 (2010); Fraud Enforcement and Recovery Act of 2009, Pub.L. No. 111–21, § 4(a) & (d), 123 Stat. 1617, 1621–25. With one exception not relevant here, none of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

changes apply retroactively. *See* Pub.L. No. 111–203, § 4; Pub.L. No. 111–21, § 4(f); *see also* Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, ––– U.S. ––––, –––– n. 1, 130 S.Ct. 1396, 1400 n. 1, 176 L.Ed.2d 225 (2010). We therefore apply the 2006 version of the Act.

FN4. Schweizer's opening brief characterizes Count I as a Trade Agreements Act claim and Count II as a pricing claim. Her reply brief reverses course and associates Count II with the Trade Agreements Act. Neither characterization is correct. Counts I and II both contain pricing *and* Trade Agreements Act claims; the only difference between them is the cause of action. Count I asserts violations of § 3729(a)(1) and (2), while Count II asserts violations of § 3729(a)(3).

FN5. The motion also invoked Federal Rule of Civil Procedure 41(a), which permits plaintiffs to "dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves ... an answer." FED.R.CIV.P. 41(a)(1)(A)(i).

FN6. **Océ** has standing to make the argument. Judicial review of the settlement agreement exposes **Océ** to a risk that the agreement will be rejected and a larger sum required to dispose of the relators' claims. This qualifies as an injury in fact. Section 3730(c)(2)(B) causes the injury because § 3730(c)(2)(A) would otherwise permit dismissal without judicial scrutiny. And the injury is redressable by a ruling that § 3730(c)(2)(B) is unconstitutional. *See* Bond v. United States, ––– U.S. ––––, ––––, 131 S.Ct. 2355, 2365, 180 L.Ed.2d 269 (2011); FEC v. NRA Political Victory Fund, 6 F.3d 821, 823–24 (D.C.Cir.1993).

FN7. Section 3730(c)(2)(B) is valid when the government affirmatively seeks judicial involvement in the settlement process, as described in greater detail below. Indeed, **Océ's** brief concedes as much. Thus, regardless whether one applies the "no set of circumstances" test or the "plainly legitimate sweep" test for facial invalidity, § 3730(c)(2)(B) survives. *See* Gen. Electric Co. v. Jackson, 610 F.3d 110, 117 (D.C.Cir.2010) (quoting United States v. Stevens, –––U.S. ––––, ––––, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010)).

FN8. Section 3730(c)(2)(B) may also serve a more diffuse set of public interests. *Cf.* Rinaldi, 434 U.S. at 29 n. 15 (indicating that Federal Rule of Criminal Procedure 48 might prohibit dismissals "prompted by considerations clearly contrary to the public interest").

FN9. The government contends that dismissal of Schweizer's Trade Agreements Act claims was proper because the settlement agreement did not "release any of [the government's] own claims under that statute." The parties have not fully developed this point in their briefs, or explained why the government's "own claims"—as opposed to those of the relators—are relevant to the § 3730(c)(2)(B) analysis. Accordingly, we leave this question open for the parties to address on remand.

FN10. *See, e.g.,* Maturi v. McLaughlin Research Corp., 413 F.3d 166, 172–73 (1st Cir.2005); Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861, 868 (4th Cir.1999); United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1522–23 (10th Cir.1996); Robertson, 32 F.3d at 951–52.

FN11. The notice requirement is derived from a Senate Judiciary Committee Report. *See, e.g.,* Yesudian, 153 F.3d at 736; Robertson, 32 F.3d at 951. The report cites cases involving other whistleblower protection statutes as examples of the way in which § 3730(h) was meant to operate. *See* S.REP. NO. 99–345, at 35, *reprinted in* 1986 U.S.C.C.A.N. at 5300. None of these cases impose a presumption like the one described in *Martin–Baker.* For instance, in Mackowiak v. University Nuclear Systems, Inc., 735 F.2d 1159, 1162–64 (9th Cir.1984), the court held that 48 U.S.C. § 5851—a whistleblower protection provision in the Energy Reorganization Act—protects compliance workers

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)
**(Cite as: 2012 WL 1372219 (C.A.D.C.))**

from retaliation regardless of whether they contacted government regulators or departed from their usual job duties. "[C]ontractors," the court explained, "may not discharge quality control inspectors because they do their jobs too well." Id. at 1163; *see also id.* (noting that the plaintiff was "terminated, in part" because of he was "very persistent" in performing job-related safety functions).

FN12. The Fourth Circuit recognized the problem and sought to solve it by holding that an employee "tasked with the internal investigation of fraud" puts his employer on notice if he tells the employer that its conduct is "illegal or fraudulent or recommend[s] that legal counsel become involved." Eberhardt, 167 F.3d at 868.

FN13. *Eberhardt* states that "an employee tasked with the internal investigation of fraud against the government cannot bring a section 3730(h) action for retaliation unless the employee puts the employer on notice that a *qui tam* suit under section 3730 is a reasonable possibility." 167 F.3d at 868. Other cases similarly have held that employees must put their employer on notice of a potential *qui tam* suit. *See, e.g.,* Fanslow v. Chicago Mfg. Ctr., Inc., 384 F.3d 469, 483 (7th Cir.2004); Brandon v. Anesthesia & Pain Mgmt. Assocs., 277 F.3d 936, 945 (7th Cir.2002); Robertson, 32 F.3d at 951–52. As noted above, these cases read § 3730(h) too narrowly. An employee acts "in furtherance of an action under this section" if he advances a suit by the Attorney General pursuant to § 3730(a) or a *qui tam* suit filed under § 3730(b). Thus, the employer need only have knowledge of actions that would make *either type of suit* a "reasonable possibility." *See* Yesudian, 153 F.3d at 742.

FN14. Other circuits, while not always invoking *McDonnell Douglas* by name, have adopted or alluded to a similar rule. *See* Scott v. Metro. Health Corp., 234 F. App'x 341, 346 (6th Cir.2007); Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 186 (3d Cir.2001); Norbeck v. Basin Electric Power Coop., 215 F.3d 848, 850–51 (8th Cir.2000).

C.A.D.C.,2012.
U.S. ex rel. Schweizer v. Oce N.V.
--- F.3d ----, 2012 WL 1372219 (C.A.D.C.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.