UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br>Master File No. 1:01-CV-12257-PBS<br>Sub-Category Case No. 1:08-CV-11200 |
| THIS DOCUMENT RELATES TO:<br>*United States ex rel. Linnette Sun and Greg Hamilton, Relators*<br> *v.*<br>*Baxter Healthcare Corporation* | Judge Patti B. Saris |

**BAXTER'S RESPONSE TO THE COURT'S
APRIL 25, 2012 ORDER REGARDING NOTICE**

We now know that prior representations by relators' counsel regarding actual notice of the Baxter/Ven-A-Care settlement – made in both pleadings and in open court in response to direct questions – were false. Until now, relators' counsel have repeatedly argued that Baxter acted improperly regarding notice, even intimating that ethical obligations were not observed. But counsels' recent declarations concede that they received actual, contemporaneous notice of Baxter's settlement agreement with Ven-A-Care when it was filed with the Court on October 7, 2011. They did not object to the settlement within 10 days of that actual notice. They did not object after the Court dismissed the Ven-A-Care case. They did not object to the settlement when responding to Baxter's Motion for Partial Summary Judgment. Relators made no objection until filing their February 16, 2012 Motion for Reconsideration. That pleading was first littered with untrue statements regarding notice. Those untruths alone should cause the Court to deny reconsideration.[1]

---

[1] Baxter believes the prior misrepresentations and deceptive motions implicate sanctions under Rule 11, and that Baxter should not bear the burden of attorneys' fees or costs associated with responding to relators' motion for reconsideration.

In any event, it is now abundantly clear that the now-tainted reconsideration motion is unfounded as a matter of law.  We asserted in our Opposition that there were no new facts that would support reconsideration.  Nor have relators shown – as is their burden to do so – that there were any errors of law.  Ven-A-Care and Baxter settled the Ven-A-Care case, the Department of Justice consented to the settlement, notice of the settlement was in fact given to the Sun/Hamilton relators and – as we now know – notice was received.  Even more critically, counsel for relators read the settlement agreement and immediately contacted Ven-A-Care's lawyer about specific language in that agreement.  This communication demonstrates vividly counsel's knowledge of and concern about the significance and effect of that settlement on the Sun/Hamilton case.  The Court previously ruled that the settlement agreement is clear and unambiguous.  The Court confirmed during the April 25 hearing that its prior decision regarding the settlement agreement would not be revisited.

Baxter hereby responds to the Court's April 25, 2012 Order regarding Notice.  In conjunction with this pleading, Baxter has filed under seal the Declaration of Merle M. DeLancey Jr.[2]  The DeLancey Declaration contains information regarding the Baxter/Ven-A-Care Settlement Agreement, including information regarding notice.  In addition, we demonstrate below that the Sun/Hamilton relators received adequate notice and sat on their rights by not objecting after receipt of notice.  For the reasons specified below, and in Baxter's prior pleadings, Relators' Motion for Reconsideration should be denied.

## I.     Baxter's Actions Regarding Notice

Baxter refers the Court to the DeLancey Declaration for information regarding notice.  Patel Decl., Exhibit 1.

---

[2] *See* Declaration of Shamir Patel in Support of Baxter's Response to the Court's April 25, 2012 Order Regarding Notice ("Patel Decl."), Exhibit 1.

2

## II. Counsel For Relators Have Changed Their Story, Now Conceding That They Received Actual Notice Of The Baxter/Ven-A-Care Settlement Agreement.

Relators' counsel previously represented to the Court that they did not have actual notice of the settlement agreement between Baxter and Ven-A-Care until Baxter filed its Motion for Partial Summary Judgment on October 19, 2011. Counsel now admit that they monitored the MDL docket and saw the agreement there. Multiple counsel admit that they saw and read the settlement agreement well before October 19, 2011. One of relators' lawyers even sent an email to Ven-A-Care's lawyer, congratulating him on the settlement and asking a pointed question regarding a term defined within the body of the settlement agreement. The following chart exposes their false representations:

| **PRIOR STATEMENTS THAT RELATORS HAD NO NOTICE UNTIL BAXTER FILED ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON OCTOBER 19, 2011, AFTER THE COURT APPROVED THE SETTLEMENT** | **RECENT STATEMENTS THAT SHOW RELATORS HAD ACTUAL NOTICE ON OCTOBER 7, 2011, TEN DAYS BEFORE THE COURT APPROVED THE SETTLEMENT** |
|---|---|
| **Prior statements by Mr. Kleiman at April 25, 2012 oral argument:**<br><br>MR. KLEIMAN: Thank you, your Honor. We receive on average between twenty-five and forty Lexis notifications on this case a week. We look to see whether any of them are immediately involved in the Sun case. The rest get filed and periodically reviewed. **We did not review this one and had no notice of the pending settlement before** –<br><br>THE COURT: So I understand there's an argument that you got legal notice, but let me just ask you this: Regardless of whether you get constructive notice or notice, **did you in fact know? Did anyone call you? Did anyone tell you? Did anyone on your staff actually read it?**<br><br>MR. KLEIMAN: **No.**<br><br>THE COURT: **You had no idea?**<br><br>MR. KLEIMAN: **No. The first I knew of this was when the motion for summary judgment sailed in.**<br><br>Patel Decl. Exhibit 2 (April 25, 2012 Hearing Transcript) at 5 (emphasis added).<br><br>**Prior statements by Mr. Kleiman at November 8, 2011 oral argument:**<br><br>THE COURT: . . . It was the settlement that took me by surprise.<br><br>MR. KLEIMAN: **It took us by surprise as well, your Honor. You know, my colleague points out that there is a process by which relators can object to a settlement. That provision of the law assumes that the relators are notified of the settlement**. The fact that we never heard a word about it until it was finalized I think is at least –<br><br>Patel Decl. Exhibit 3 (November 8, 2011 Hearing Transcript) at 32 (emphasis added). | **Recent declarations submitted by relators' counsel:**<br><br>**I learned of the settlement only via an email from my colleague, Lauren Udden. Who had caught the notice on PACER on October 7, and who informed me that day.** Declaration of Mark Kleiman [MDL Dkt. No. 8132] at ¶ 4 (emphasis added).<br><br>At the April 25 hearing, I also advised the Court that I did not have knowledge of the Ven-A-Care settlement documents themselves. Upon reviewing the file, I must respectfully withdraw and correct this statement. **I did know that the settlement was submitted to the Court**. *Id.* at ¶ 6 (emphasis added).<br><br>After reviewing the April 24 transcript, James Breen, counsel for Ven-A-Care, forwarded me an electronic mail message which I sent to him on October 7, 2011, the date that the Ven-A-Care settlement documents and motion were filed with this Court. **In that e-mail, I congratulated Mr. Breen on his settlement success and asked him to provide the list of drugs covered by the Ven-A-Care settlement.** *Id.* (emphasis added).<br><br>**On October 7, 2011 I saw notice of the proposed Ven-A-Care settlement via the Lexis-Nexis filing service and notified Mr. Kleiman**. Declaration of Lauren Udden [MDL Dkt. No. 8133] at ¶ 4 (emphasis added).<br><br>**That same day—October 7, 2011—Mr. Kleiman posted the motion for dismissal in Ven-A-Care and the settlement documents onto a protected shared internet site** to which I and my partner, Mr. Moritz, had access. **That posting was 11 days prior to when Baxter filed its summary judgment in this case based on the Ven-A-Care settlement**. Declaration of David J. Chizewer [MDL Dkt. No. 8131-1] at ¶ 3 (emphasis added).<br><br>**Relators did have actual notice of the settlement agreement 11 days before Baxter filed its summary judgment motion,** though that notice did not come from Baxter or Ven-A-Care. |

| | |
|---|---|
| **Prior statements by relators' submitted in briefs:**<br><br>"The parties did not consult or even notify Relators Sun and Hamilton of their plans" to settle Advate.  Relators' Combined Motion to Reconsider and Memorandum in Support [Sun Dkt. No. 159] at 2.<br><br>"Despite the fact that the Relators had pending *qui tam* claims, **Relators Sun and Hamilton had no notice of the settlement agreement,** were not given the opportunity to participate in any meaningful hearing, and therefore had no opportunity to address the adequacy of the settlement or claim a share of the settlement proceeds." *Id.* at 3 (emphasis added).<br><br>"Here, **the Relators were given no notice prior to finalization of Baxter's settlement agreement.  Indeed the only opportunity the Relators have had to challenge the validity of the settlement agreement came as the result of Baxter's filing of its motion for partial summary judgment** to apply the terms of the settlement agreement against the Relators." *Id.* at 4 (emphasis added).<br><br>"Under this Court's holding, Baxter paid money to the Government and, in exchange, negotiated a release of claims which were *already the subject of litigation*.  That is a 'settlement,' by any other name, and it triggered the Relators' right to notice and to be heard . . . .  **No notice was provided to the Relators,** and in fact, no such hearing was held." *Id.* at 5 (emphasis added). | *Id.* at ¶ 6 (emphasis added).<br><br>**Nice to see your settlement finalized.**  I'm trying to do some calculations of my own and have looked in vain for the list of **'Baxter Covered Drugs'** referred to in the settlement documents.  *Id.*, Exhibit A (October 7, 2011 email from Mark Kleiman to James Breen with cc to relators' counsel Rick Morgan, David Chizewer, Jennifer Verkamp, Pam Savoie, Terry Moritz, and Lauren Udden) (emphasis added).<br><br>**I reviewed the settlement agreement in the Ven-A-Care case against Baxter at or about the time it was filed.**  I saw nothing in that contract to suggest that it had any impact upon the claims of the relators in this case.  Declaration of Frederick M. Morgan, Jr. [MDL Dkt. No.8131-2] at ¶ 4 (emphasis added).<br><br>I was copied on Mr. Kleiman's e-mail message to Mr. Breen. . . .  **Also on October 7, 2011, Mr. Kleiman posted the motion for dismissal in Ven-A-Care and the settlement documents on a protected shared internet site to which I had access.**  That posting was 11 days prior to the date Baxter filed its summary judgment motion in this case based on the Ven-A-Care settlement.  Declaration of Terry Moritz [MDL Dkt.. No. 8131-3] at ¶ 3; Exhibit A (emphasis added). |
| **Prior statements by Mr. Chizewer at oral argument:**<br><br>Mr. CHIZEWER:  **I didn't step into this case . . . until after the settlement was finalized with Ven-A-Care**, so certainly I as an officer of the Court did not know that.<br><br>Patel Decl. Exhibit 2 at 4-5 (emphasis added). | **Recent declaration submitted by Mr. Chizewer:**<br><br>On December 2, 2011, I, along with my partner, Terry F. Moritz, were admitted to practice before this Court *pro hac vice* in order to serve as additional counsel to Relators, Linnette Sun and Greg Hamilton.  **We had been following this case since August 2011** . . . ."  Declaration of David J. Chizewer [MDL Dkt. No. 8131-1] at ¶ 1 (emphasis added). |

### III. Relators Were Obligated To Review the MDL Docket, Did So, Saw Notice of The Settlement, and Read It.

At the April 25 hearing, counsel for relators stated that he:

> Receive[s] on average between twenty-five and forty Lexis notifications on this case each week. [Counsel] look to see whether any of them are immediately involved in the Sun case. The rest get filed and periodically reviewed. [They] did not review this one and had no notice of the pending settlement . . . The first I knew of this was when the motion for summary judgment sailed in.

Patel Decl., Exhibit 2 at 5. Relators argued that because of the large number of filings in the AWP MDL they should be absolved of responsibility to monitor the docket. Respectfully – and disregarding counsels' new about-face –"[t]his suggestion ignores an abecedarian rule of civil practice: parties to an ongoing case have an independent obligation to monitor all developments in the case and cannot rely on the clerk's office [or opposing counsel] to do their homework for them." *Witty v. Dukakis*, 3 F.3d 517, 520-21 (1st Cir. 1993) (citing *Vargas v. Gonzalez*, 975 F.2d 916, 917 (1st Cir.1992); *Spiller v. U.S.V. Labs., Inc.*, 842 F.2d 535, 537 (1st Cir.1988)).

Local Rule 5.4(c) states as follows:

> **Service of Pleadings**. Unless exempt or otherwise ordered by the court, all pleadings and other papers must be served on other parties by electronic means. Transmission of the Notice of Electronic Filing (NEF) through the court's transmission facilities will constitute service of the filed document upon a registered ECF user. Any pleading or other paper served by electronic means must bear a certificate of service in accordance with Local Rule 5.2(b).

Thus, the only official means of filing in this case is through use of the District of Massachusetts ECF system. *See also* Feb. 11, 2004 Order on electronic filing [MDL Dkt. No. 712]. All filings in the MDL are filed on the master MDL docket. It is true that this Court's Case Management Order No. 35 established subdockets to the MDL docket. In doing so, however, the Court specifically warned litigants that they should follow filings in the master docket:

6

> It is important to remember that the subcategory case dockets are for case management purposes only, and the master docket (01-cv-12257) is the official docket for MDL 1456.

MDL Dkt. No. 5664 at ¶ 2.  The fact that the Baxter-Ven-A-Care settlement was filed only on the master MDL docket and the Ven-A-Care subdocket is therefore of no consequence, since "the master docket . . . is the official docket for MDL 1456."

The only other effective means of service in this MDL is via Lexis Nexis File and Serve. *See* MDL Case Management Order No. 2 [MDL Dkt. No. 135].  Counsel for relator stated at the April 25 hearing that he receives, on average 25-40 filings on the Lexis File and Serve for AWP MDL No. 1456 per day.  While that might be true for some other time period, it is not true for the relevant time period here.

Between October 7, 2011 and October 17, 2011 – the ten-day window between when the Baxter/Ven-A-Care settlement was served via Lexis and when the Court approved the settlement – there were only twelve documents served via Lexis.  Patel Decl., Exhibit 4 (Report from Lexis File and Serve).  Of these twelve documents, six related directly to the Sun/Hamilton case.  *See id.*  **Two of the twelve documents were filed by counsel for Sun/Hamilton (Mr. Kleiman).**  This proves that relators' counsel was on the Lexis File and Serve site during the relevant time period and their recent "corrections" even confirm that they downloaded the settlement agreement.

Not only were these documents served via Lexis File and Serve, they were also posted on the MDL ECF docket.  During the ten-day period between the filing of the settlement agreement and the court's dismissal of the Ven-A-Care case, there were only sixteen filings on the MDL docket, two of which were Court orders without any attachments.  *See* Patel Decl., Exhibit 5 (Report from CM/ECF Master Docket 01-12257).  Stated differently, in a *ten-day period*, counsel was called upon to review *sixteen filings* in the AWP MDL.

We now know that at least five of relators' counsel knew that the Baxter/Ven-A-Care settlement agreement had been filed with the Court.  *See* Declaration of Mark Kleiman [MDL Dkt. No. 8132] at ¶¶ 4, 6; Declaration of David J. Chizewer [MDL Dkt. No. 8131-1] at ¶ 3 & Exhibit A; Declaration of Frederick M. Morgan, Jr. [MDL Dkt. No. 8131-2] at ¶ 4; Declaration of Terry Moritz [MDL Dkt. No. 8131-3] at ¶ 3 & Exhibit A; Declaration of Lauren Udden [MDL Dkt. No. 8133] at ¶ 4.  As outlined in section IV below, not only did counsel monitor the docket, they read the Baxter/Ven-A-Care Settlement Agreement.  They even attempted to engage Ven-A-Care's lawyer about it.

We have not found a single case where notice, given as legally required, was deemed insufficient, or where some other, additional form of notice, such as a telephone call, was required.  Numerous courts have rejected that argument.  For example, in *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004), the court stated:

> In defending their failure to comply with Local Rule 7(b), the appellants offer nothing but an updated version of the classic "my dog ate my homework" line. They claim that, as the result of a malfunction in the district court's CM/ECF electronic case filing system, their counsel never received an e-mail notifying him of American's motion to dismiss their amended complaint. Imperfect technology may make a better scapegoat than the family dog in today's world, but not so here. Their counsel's effort at explanation, even taken at face value, is plainly unacceptable. **Regardless whether he received the e-mail notice, he remained obligated to monitor the court's docket.**

*Id.* at 1294 (emphasis added) (citing *United States ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir.2001) ("[P]arties have an obligation to monitor the docket sheet to inform themselves of the entry of orders . . . ."), *cert. denied*, 535 U.S. 929, 122 S.Ct. 1301, 152 L.Ed.2d 212 (2002); *cf. Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1075 (7th Cir.1997) (ignorance of other court's docket "is nothing but negligence, which does not justify untimely action").

*McAllan* involved a qui tam case where the relator failed to file a timely notice of appeal due to an error by the court clerk.  Although acknowledging that the clerk had made an administrative error on which relator had relied, the Court rejected this argument as the basis for a timely appeal:  "appellant's failure to file a timely notice of appeal is not excused by what he characterizes as the 'serious administrative errors' and docketing irregularities of the Southern District's clerk's office, because parties have an obligation to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal."  *McAllan*, 248 F.3d at 53 (citing *In re OPM Leasing Serv.,* 769 F.2d 911, 916 (2d Cir.1985) (district court's denial of motion for extension of time to appeal not an abuse of discretion, where parties did not receive copies of ruling and did not anticipate that district judge would rule as quickly as he did, because "[c]ounsel should not be encouraged to neglect their duty to monitor the docket on the basis of speculation as to the probable date of decision"); *Bortugno v. Metro-North Commuter RR,* 905 F.2d 674, 676 (2d Cir.1990) (failure of court clerk to send notice of entry of judgment does not render counsel's failure to learn of entry 'excusable neglect' such that extension of time in which to file notice of appeal is justified)).  In *Norgaard v. DePuy Orthopaedics*, the Seventh Circuit rejected counsel's claim that he had been ignorant of a Supreme Court ruling, which would have materially altered his client's appeal.  It stated:  "Ignorance of the Supreme Court's docket, although 'neglect,' is not 'excusable'—it is nothing but negligence, which does not justify untimely action." 121 F.3d at 1075.

These cases establish that counsel is obligated to monitor the docket in his or her cases (as well as other dockets that might include relevant decisions).  *See also Gibson-Michaels v. Bair*, 255 F.R.D. 306, 307 (D.D.C. 2009) ("'counsel is under an obligation to check with reasonable frequency on the status of a pending case, a duty . . . which may be discharged over

the [i]nternet.' . . . Accordingly, even crediting the unexplained assertion that he did not receive just one of several ECF notices e-mail to him over the past eight months, counsel has offered insufficient grounds to overlook his failure to monitor the docket." (citations omitted)).

In short, there is simply no precedent for the suggestion that relators' counsel can somehow be excused from monitoring the MDL Docket for documents relevant to the Sun/Hamilton case. There is also no legal basis for the contention that Baxter was required to give telephonic or some other type of notice of the settlement directly to relators. ECF is the official mode of filing in this case, and Lexis-Nexis the official mode of service. No other method of notification in this case is legally valid.

**IV.     Relators Sat On Any Rights They Might Have Had.**

Relators' counsel monitored the docket and saw the settlement agreement between Baxter and Ven-A-Care, an agreement that this Court has ruled clearly on its face covers "all drugs." *See* Court's January 26, 2012 ruling on Partial Summary Judgment [MDL Dkt. No. 8063] at 9. Upon reading the settlement agreement, counsel immediately understood that it might have bearing on the Sun/Hamilton case. Kleiman immediately emailed Ven-A-Care's counsel (Breen), copying relators' co-counsel Morgan, Chizewer, Moritz, Udden and Verkamp. Declaration of David J. Chizewer [MDL Dkt. No. 8131-1], Exhibit A. In this email, Kleiman wrote (and all other relators' lawyers read):

> Jim,
>
> Nice to see your settlement finalized. I'm trying to do some calculations of my own and have looked in vain for the list of "Baxter Covered Drugs" referred to in the settlement documents.
>
> Any hints?
>
> Thanks,
>
> Mark

This email proves that Kleiman read the settlement agreement thoroughly; he quoted from the agreement.  He raised a question regarding which "Baxter Covered Drugs" were covered by the agreement, using the defined settlement term "Baxter Covered Drugs."  Having read that precise settlement provision, Kleiman should have understood that "Baxter Covered Drugs" included "any and all drugs manufactured, marketed, and/or sold by or on behalf of any Baxter Party."  Counsel raised questions and believed that the agreement had implications for the Sun/Hamilton case.  Again, counsel clearly understood the significance and effect of the settlement agreement on his case.  It was incumbent upon counsel to raise any objections at that time.[3]

The Court has ruled that the language of the settlement agreement is unambiguous. January 26, 2012 Decision of Partial Summary Judgment [MDL Dkt. No. 8063] at 9.  And the Court made clear that it will not revisit the decision.  Patel Decl., Exhibit 2 at 3, 32.

Not only did relators not object prior to this Court's approval of the Baxter/Ven-A-Care settlement, they did not object in their Opposition to Baxter's Motion for Partial Summary Judgment.  *See* MDL Dkt No. 7899.  An objection to the settlement agreement cannot properly be raised on reconsideration.  *See Villanueva v. United States*, 662 F.3d 124, 128 (1st Cir. 2011) (citing *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)) ("Motions for reconsideration are not to be used as a vehicle for a party to advance arguments that could and should have been presented to the district court prior to its original ruling."); *Cochran v. Quest Software, Inc.*, 328

---

[3] No longer able to argue lack of notice, relators pirouette and try to reformulate that they did not understand that Baxter interpreted the settlement agreement to cover Advate.  We previously demonstrated that the "all drugs" language and specific reference to labeler code 00944 made the settlement agreement unambiguous and the Court agreed.  Counsel might have tried to research labeler code 00944; apparently, they did not.  Counsel might also have asked their client, Mr. Hamilton, for help.  Hamilton is alleged to be an expert in drug pricing matters, including Baxter's biologics.  *See* Second Amended Complaint, ¶ 8.  Hamilton admitted in his deposition that he has acted as an expert in several "pharmaceutical marketing and pricing" cases.  Patel Dec., Exhibit 6 (Deposition of Greg Hamilton) at 9, 10, and has been retained as a consulting or testifying expert in "10 to 25" pharmaceutical cases.  *Id.* at 12*.*

F.3d 1, 11 (1st Cir. 2003) ("[A] party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling."); *see also Dillon v. Select Portfolio Servicing,* 630 F.3d 75, 80 (1st Cir. 2011) ("When a party makes an argument for the first time in a motion for reconsideration, the argument is not preserved for appeal."); *cf. Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006), quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995) ("The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'").

## CONCLUSION

Relators have not met their burden to show that reconsideration is appropriate. Relators had actual notice of Baxter's Settlement with Ven-A-Care. That notice was filed in accordance with the appropriate Case Management Order and this Court's Rules. Counsel for relators read the settlement agreement but did not timely object – even if they had had the right to do so, which they did not. Two entities now claim that this Court should excuse their mistakes: the government, after receiving nearly $25 million in a settlement that it claims it did not mean to approve; and the relators' counsel, after taking back statements that they now admit are false. This court should provide relief to neither of them. Neither "mistake" warrants depriving Baxter of the closure and finality for which it negotiated and paid.

Relators' Motion for Reconsideration should be denied.

DATED this 2nd day of MAY 2012.

Respectfully submitted,

/s/ Shamir Patel
Shamir Patel
Merle DeLancey
J. Andrew Jackson
Shamir Patel
**DICKSTEIN SHAPIRO LLP**
1825 Eye Street, NW
Washington, DC  20006
Telephone:  (202) 420-2200
Facsimile:   (202) 420-2201

Counsel for Defendant Baxter Healthcare Corporation

## CERTIFICATE OF SERVICE

        I hereby certify that I, Shamir Patel, an attorney, caused a true and correct copy of the foregoing, Baxter's Response to the Court's April 25, 2012 Order Regarding Notice, to be delivered to all counsel of record by electronic service via ECF and LexisNexis File & Serve, on May 2, 2012 for posting and notification to all parties.

        **/s/ Shamir Patel**
Shamir Patel
**DICKSTEIN SHAPIRO LLP**
1825 Eye Street NW
Washington, DC  20006
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201