**Exhibit 2**

```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS


LINNETTE SUN, et al,                )
                                    )
            Relators                )
                                    )
        -VS-                         )  CA No. 08-11200-PBS
                                    )  Pages 1 - 47
BAXTER HEMOGLOBIN THERAPEUTICS,     )
et al,                              )
                                    )
            Defendants
```

HEARING

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
April 25, 2012, 2:28 p.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
(617)345-6787

Page 2

1    A P P E A R A N C E S:

2         DAVID J. CHIZEWER, ESQ., Goldberg Kohn LTD,
     55 East Monroe, Suite 3300, Chicago, Illinois, 60603,
3    for the Relators.

4         MARK ALLEN KLEIMAN, ESQ., Law offices of Mark Allen
     Kleiman, 2907 Stanford Avenue, Venice, California, 90292,
5    for the Relators.

6         FREDERICK M. MORGAN, JR., ESQ., Morgan Verkamp, LLC,
     700 Walnut Street, Suite 400, Cincinnati, Ohio, 20044,
7    for the Relators.

8         ANDREW J. JACKSON, ESQ., Dickstein Shapiro LLP,
     1825 Eye Street, NW, Washington, DC, 20006, for Baxter
9    Healthcare Corporation.

10        PETER E. GELHAAR, ESQ., Donnelly, Conroy & Gelhaar, LLP,
     One Beacon Street, 33rd Floor, Boston, Massachusetts, 02108,
11   for Baxter Healthcare Corporation.

12        JUSTIN DRAYCOTT, ESQ., United States Department of
     Justice, Civil Division, P.O. Box 261, Washington, DC, 20044,
13   for the United States of America.

14        JAMES J. FAUCI, ESQ., Assistant United States Attorney,
     Office of the United States Attorney, 1 Courthouse Way, Boston,
15   Massachusetts, 02210, for the United States of America.

16

17

18

19

20

21

22

23

24

25

1            P R O C E E D I N G S

2            THE CLERK:  The Court calls Civil Action 08-11200,

3    Sun v. Baxter.  Could counsel please identify themselves for

4    the record.

5            MR. JACKSON:  Good afternoon, your Honor.  Andy

6    Jackson for Baxter.

7            MR. GELHAAR:  Peter Gelhaar, also for Baxter.

8            MR. CHIZEWER:  Good afternoon, your Honor.  David

9    Chizewer with Mark Kleiman and Frederick Morgan for the

10   relators.

11           MR. DRAYCOTT:  Justin Draycott, Civil Division,

12   Department of Justice, for the United States.

13           MR. FAUCI:  James Fauci, United States Attorney's

14   Office.

15           THE COURT:  Is anyone here from Ven-A-Care?

16           MR. DRAYCOTT:  No, I don't believe so, your Honor.

17           THE COURT:  I don't know that we noticed Ven-A-Care,

18   but what we do here may have an impact on them.

19           So let me start off by saying that I think the motion

20   for reconsideration actually keyed up an important issue here

21   that was not addressed in the initial round of briefing.  In my

22   view, what I'm not changing my mind on is that the release does

23   cover Advate as well as Recombinate, but I was totally taken

24   with this issue of whether or not there was fair notice and an

25   opportunity to object.  So I don't believe, am I correct, that

c9e40984-a860-4867-a25e-c46c848a1b1a

1    that was briefed the first time around?

2         MR. CHIZEWER:  Your Honor, I think we certainly

3    intended to brief it the first time around, but certainly we

4    may have taken some issues for granted that we shouldn't have.

5         THE COURT:  And so, first of all, I think that's a

6    very, very important issue; and, second of all, the first

7    government statement was terse, to say the least, but the

8    second one was fully clear -- in fact, they did a statement and

9    a supplemental statement -- which makes it clear that they

10   didn't understand what they were releasing, and certainly they

11   don't now support it, and this puts the whole case into a

12   brand-new light.  I don't think anyone is asking me to revisit

13   what the release does in fact cover.  The question is, A, what

14   do I do now that the government says that they didn't

15   understand it to cover that; and, two, what do I do with the

16   fact that at least Sun is now saying that they didn't get fair

17   notice?  I think those are very serious questions for me.

18        So let me start here.  Let me just ask you as an

19   officer of the Court:  Did you not in fact know that it was

20   releasing Advate?  I've read all the briefs, so I know I'm

21   jumping into the middle of this.

22        MR. CHIZEWER:  Your Honor, I guess I want to be fair.

23   Me personally as an officer of the court, I didn't step into

24   this case --

25             THE COURT:  I see.

1          MR. CHIZEWER:  -- until after the settlement was

2   finalized with Ven-A-Care, so certainly I as an officer of the

3   Court did not know that.  Our clients did not know that.  And I

4   think, in fairness, to get where you're trying to get at maybe,

5   you want to hear also from Mr. Kleiman, who is still counsel to

6   the case in Wisconsin, beforehand.

7          THE COURT:  All right.

8          MR. KLEIMAN:  Thank you, your Honor.  We receive on

9   average between twenty-five and forty Lexis notifications on

10  this case a week.  We look to see whether any of them are

11  immediately involved in the Sun case.  The rest get filed and

12  periodically reviewed.  We did not review this one and had no

13  notice of the pending settlement before --

14         THE COURT:  So I understand there's an argument that

15  you got legal notice, but let me just ask you this:  Regardless

16  of whether you get constructive notice or notice, did you in

17  fact know?  Did anyone call you?  Did anyone tell you?  Did

18  anyone on your staff actually read it?

19         MR. KLEIMAN:  No.

20         THE COURT:  You had no idea?

21         MR. KLEIMAN:  No.  The first I knew of this was when

22  the motion for summary judgment sailed in.

23         THE COURT:  Okay, all right, I just wanted to -- now,

24  as the AWP MDL judge, we docket things.  I don't know how many

25  docket entries we're up to.  Was it last time I looked 7,000?

c9e40984-a860-4867-a25e-c46c848a1b1a

1   That's huge, it's huge, so -- what?

2          MR. CHIZEWER:  I'm sorry.  I was going to say almost

3   8,000.

4          THE COURT:  We're almost at 8,000?  I don't know what

5   we were back then, but the way we subdivide it is into

6   categories of cases.  So there were the class actions, and

7   there's the Department of Justice action.  I mean, as you know,

8   we had an umbrella action and then subcategories because it was

9   too difficult for people to follow the docket, or at least we

10  got that complaint.  So as I understand it, this notice was

11  filed in the Ven-A-Care sub-docket and in the MDL umbrella

12  docket, is that right?

13         MR. CHIZEWER:  That is correct, your Honor.  In fact,

14  the stipulation of dismissal in the Ven-A-Care case, in the

15  motion for dismissal has on the caption a statement that says

16  "This document relates to," which it's required to have; and

17  then following that it lists only the Ven-A-Care/Baxter matter.

18  It certainly does not list this case at all.  So there's no

19  notion that that settlement or that asking for the dismissal of

20  the Ven-A-Care case in any way related to this case.

21         THE COURT:  All right, so in fact you didn't know, and

22  so there's just a legal argument as to whether or not that

23  notice was sufficient.

24         MR. CHIZEWER:  That is correct, your Honor,

25  although --

1        THE COURT:  I understand you have broader claims than

2   that, but what I --

3        MR. CHIZEWER:  On the notice issue, yes.

4        THE COURT:  Now, suppose I were to agree with you that

5   there wasn't enough notice, what remedy does that give you?

6        MR. CHIZEWER:  Well, if your Honor's only conclusion

7   was that we didn't have adequate notice but that otherwise

8   Baxter and the government were permitted to get together and

9   settle our case without any consultation --

10        THE COURT:  Well, but that goes back to the

11   notice issue.

12        MR. CHIZEWER:  -- without any further discussion or

13   agreement from us and only with the notice, then I suppose

14   you'd have to re-notice a hearing on the settlement.

15        THE COURT:  On the fairness of the settlement.

16        MR. CHIZEWER:  On the fairness of the settlement,

17   and we would have --

18        THE COURT:  So that's the remedy?  I'm just trying to

19   understand.  Let's assume that I think often that given the

20   context of this massive AWP MDL, that notice in the Ven-A-Care

21   case and in the umbrella case without more is not going to be

22   reasonable notice to you, if I do that, why isn't the remedy

23   simply:  Okay, I'm going to go back and re-notice this and have

24   a fairness hearing, subject to your objection, and then

25   consultation, and then I make a decision as to whether, A, the

c9e40984-a860-4867-a25e-c46c848a1b1a

1    settlement is fair, and, B, whether you get a piece of it?

2              MR. CHIZEWER:  Well, the only reason that wouldn't be

3    the remedy is if you --

4              THE COURT:  I mean, you know, the statutory remedy.

5              MR. CHIZEWER:  -- is only because we have other

6    arguments which would state that the government doesn't have

7    the right to settle our case when it hasn't intervened in our

8    case.  It can veto a settlement that we propose, but it doesn't

9    have the right to settle our case at all, and that Baxter --

10             THE COURT:  Now, you're saying the government can't

11   settle because it didn't intervene?

12             MR. CHIZEWER:  Correct.

13             THE COURT:  And is there a case that says that, or are

14   you just relying on the statutory structure?

15             MR. CHIZEWER:  I'm relying on the statute, your Honor.

16             THE COURT:  So you're just relying on the statutory

17   scheme, because let me just say this:  In other contexts, as I

18   said, in the case law, et cetera, the government can settle a

19   case and agree to release broader claims than the literal

20   claims in the complaint.  That's established law.  For example,

21   if you didn't exist --

22             MR. CHIZEWER:  Right, if there was no --

23             THE COURT:  -- they could have settled the Advate

24   claims even though they're not listed in the complaint.  Do you

25   agree with that?

Page 9

1      MR. CHIZEWER:  Yes.  Well, if there was no pending

2   litigation over it at the time, correct.

3      THE COURT:  Right, of course.  They're not bound by

4   the claims because why else would Baxter settle?  That's what I

5   was saying, why would they settle if they couldn't sort of

6   clean it all up with Uncle Sam, right?

7      MR. CHIZEWER:  Well, there are plenty of reasons why

8   they might want to settle, but I don't think we need to --

9      THE COURT:  No, we don't need to get there.  So what

10  you're saying, it's the unique, as I understand it, posture of

11  this case, that there was a pending qui tam, that the

12  government couldn't settle your claims because it was pending

13  and they hadn't yet intervened.  So you're saying that even if

14  I were to give notice, they can't settle it?

15     MR. CHIZEWER:  Correct.

16     THE COURT:  So as a matter of law, I should at this

17  point, your claim the remedy would be, just sort of basically

18  sua sponte knock out Advate as part of the settlement?

19     MR. CHIZEWER:  Well, to be honest, your Honor, there's

20  no ruling on Recombinate yet either, so --

21     THE COURT:  Well, Recombinate --

22     MR. CHIZEWER:  Your Honor, you can make whatever -- I

23  mean, there is a motion pending with respect to Recombinate,

24  but right now the only reason Recombinate isn't in the case is

25  because of the conclusion that that was settled, and so that

c9e40984-a860-4867-a25e-c46c848a1b1a

1   your Honor hasn't reached any other issues with respect to

2   Recombinate.

3            THE COURT:  No, I understand that there might be an

4   issue with respect to fairness.  It's just you have a lot --

5            MR. CHIZEWER:  I understand that.  You made that clear

6   at the last hearing.

7            THE COURT:  But, all right, so let me just understand.

8   So you're saying, though -- I just want to understand it --

9   you're not just looking for a hearing in which you can raise

10  your objections or get some compensation.  That's not what you

11  want.

12           MR. CHIZEWER:  That would be our alternative position.

13           THE COURT:  What you really want here is for me to say

14  that the government can't settle Advate.

15           MR. CHIZEWER:  Right, and that --

16           THE COURT:  Or Recombinate.

17           MR. CHIZEWER:  Right, and that that --

18           THE COURT:  Would you say Recombinate too?

19           MR. CHIZEWER:  Exactly.

20           THE COURT:  So this is where I got stuck on your

21  papers.  I'm playing law school exam.  They actually did

22  intervene with a case involving -- or, excuse me -- Ven-A-Care

23  did bring a case with respect to Recombinate, and they did

24  agree with respect to Recombinate.  So they're saying, just

25  because you are second to file on Recombinate, you get to veto

Page 11

1    a government settlement?

2            MR. CHIZEWER:  Well, if in fact we are second to file

3    on Recombinate, then I would -- I don't think there's a ruling

4    on that.  I would agree with your Honor:  If we are truly

5    second to file on Recombinate, then the government would have

6    the right to settle the Recombinate claim with the first to

7    file, but that issue has not yet been determined.  I understand

8    your Honor has indicated how you would rule on that.  I think

9    there is an argument that we would have to make, but --

10           THE COURT:  But, in any event, you feel that even if I

11   ruled against you on that, you at the very least had a right to

12   have a notice of it to object to the fairness of the

13   settlement, to make these type of arguments.

14           MR. CHIZEWER:  Certainly at the very least, yes.

15           THE COURT:  To make these kinds of arguments.

16           MR. CHIZEWER:  Yes.

17           THE COURT:  All right, now, let me just have you sit

18   down for one second.  Oh, I do have one last question.  So if I

19   just knock out Advate and allow a hearing with respect to both

20   the drugs, or allow a hearing with respect to both drugs,

21   wouldn't Ven-A-Care have to be noticed?  In other words, have

22   they already paid the money?

23           MR. CHIZEWER:  That I can't answer.

24           MR. JACKSON:  Months ago, your Honor.

25           THE COURT:  All right, so I've got a problem here, how

1    to unring this bell.

2          MR. CHIZEWER:  Well, I don't believe so, your Honor,

3    because, I mean, the government -- it's not just a matter of

4    the government not having the right to settle our case for

5    either Recombinate or Advate.  It's also the matter that Baxter

6    is on full notice of the law and what the government can do and

7    cannot do.  Their release itself from the government says that

8    the relators in Ven-A-Care can only release claims that they

9    have the ability to release.  So Baxter had no right to expect

10   that they were actually getting a release on this case, and so

11   therefore the settlement that Baxter entered into --

12          THE COURT:  Well, they certainly had the right to

13   believe it on Recombinate.

14          MR. CHIZEWER:  Not -- they only had the right to

15   believe it on Recombinate if there had been a prior ruling that

16   Ven-A-Care was first to file on Recombinate.  Put it this way:

17   They settled their case with Ven-A-Care before they filed a

18   motion in this case suggesting that Ven-A-Care was first to

19   file on Recombinate, so they are obviously taking the risk of

20   knowing that they may get a release for Recombinate, or they

21   may not, depending on how that subsequent motion played out.  I

22   mean, they --

23          THE COURT:  I couldn't force them.  I don't know what

24   I would do, how to unring this bell.  But let me ask you this

25   because I'm deeply concerned about this, as you can tell, the

Page 13

1    notice issue.

2         MR. JACKSON:  All right, your Honor, let me back way

3    up, if I may.  First, I'd like you to when you're thinking

4    about this notice revisit what the statute says.  What the

5    statute says is that the person who "initiated the action" --

6    that's a quote -- is entitled to notice and to object to the

7    settlement.  The person that initiated the action that was

8    settled was Ven-A-Care.  Ven-A-Care was given notice.

9    Ven-A-Care was actively involved in the litigation, and the

10   settlement, and the discussions with Professor Green, and the

11   settlement agreement together with the Justice Department's

12   consent, and you've seen that.

13        THE COURT:  Well, can I ask you this.  I just want to

14   make sure factually.  Were you the lawyer involved all the way

15   through?

16        MR. JACKSON:  I've been involved in this lawsuit

17   forever, Judge, for Baxter, both in the qui tam and the AWP.

18        THE COURT:  Did you tell anyone in the Sun Linnette

19   cases that this settlement would affect their claims?

20        MR. JACKSON:  I did not, your Honor, because the way

21   we divide our team, I'm a litigator.  We have other people --

22        THE COURT:  Did you have anyone on your team, to your

23   knowledge?

24        MR. JACKSON:  I don't know, your Honor.  I don't know

25   the answer to that question.  What I do know --

1          THE COURT:  I just want to understand.  So as far as

2    for this record, I am going to assume, unless you let me know

3    something within a week, that factually they didn't have actual

4    notice.  Now, whether they had constructive notice because of

5    the AWP thing we can get to in a minute, but I just want to

6    make sure that no one from your team called anyone from their

7    team and they sat on their rights; and, to my knowledge,

8    there's nothing in the record which would say that, right?

9          MR. JACKSON:  I think that's wrong, your Honor,

10   because there were status reports in both cases, both in the

11   Ven-A-Care case and in the Sun case, that disclosed the

12   existence of settlement discussions in both.  So I disagree --

13          THE COURT:  Excuse me.  That affect Advate?

14          MR. JACKSON:  I will give --

15          THE COURT:  You have not done that in your briefing.

16   You've not shown me one of those.

17          MR. JACKSON:  And I'm not sure it called out specific

18   drugs.

19          THE COURT:  Well, that's critical because Recombinate,

20   as you know, I've been sort of dismissive of, and maybe I have

21   to go back and cross a T and dot the I's on who was first to

22   file.  I thought I had, actually, on Recombinate, but I'll have

23   to go back and look at that.  But on Advate, was there any

24   filing anywhere that would have put Sun and Linnette on notice

25   that the Advate claims were about to be dismissed?

c9e40984-a860-4867-a25e-c46c848a1b1a

Page 15

1        MR. JACKSON:  I believe they were put on notice when

2   the settlement agreement was filed in accordance with the

3   settlement in Ven-A-Care, and we briefed you --

4        THE COURT:  I don't buy it.  I know this case too

5   well.  I know this case more than anyone does, and we couldn't

6   understand the docket, and that's why we subdivided it.  I

7   mean, we had a whole team downstairs trying to put it in a way

8   that people could follow it.  And so that if in fact -- well,

9   let me ask you this:  Did you know that the effect of the

10  settlement would be a motion for dismissal of the Linnette and

11  Sun cases?

12       MR. JACKSON:  I knew, based upon the language of the

13  settlement agreement, that there would be collateral effect of

14  that agreement to other cases.

15       THE COURT:  Well, did you or anyone on your team tell

16  anyone there that "You should watch out for the settlement"?

17  You're saying "no."

18       MR. JACKSON:  I did not, your Honor, and --

19       THE COURT:  But didn't you think that was, like, a

20  problem?

21       MR. JACKSON:  I did not, your Honor.

22       THE COURT:  I sure didn't know -- let me put it this

23  way:  I didn't know when I signed this that I was dismissing

24  another case.

25       MR. JACKSON:  Well, your Honor, I think that's where

Page 16

1   we've got a disagreement because you weren't dismissing another

2   case.  You were dismissing a case regarding Baxter drugs based

3   upon the settlement of all the parties in that case.

4          THE COURT:  Can I say, I have hundreds of these cases

5   and thousands of drugs.  I didn't go back into the labeler code

6   and know that there was another drug called Advate that was the

7   subject of a pending qui tam.  I didn't know.

8          Now, let me ask you this:  Did you tell the government

9   that there was another drug in there that was going to

10  essentially get dismissed out?

11         MR. JACKSON:  Your Honor, the agreement is super

12  clear.  I did not have a conversation with Justin Draycott or

13  anyone at the Justice Department that said, "Okay, let's look

14  at the language that you all are signing up to," as clear as I

15  believe it is, or go through what all drugs are in that labeler

16  code because, as you recognized in your decision, it said

17  "all drugs."

18         THE COURT:  Right, but did you tell the government

19  that that would mean that they were essentially consenting to

20  the dismissal of another qui tam?

21         MR. JACKSON:  Again, your Honor, I did not.

22         THE COURT:  And no one on your team did.

23         MR. JACKSON:  I don't -- I can't speak for them

24  because I wasn't involved, but I will get back to you within a

25  week to answer your very direct question in that regard.

1          THE COURT:  Because these are massive cases, beyond

2    massive, and I think it would be fair to say, based on the

3    record I have right now, that Baxter well knew that this would

4    be the demise of another qui tam, and none of the other players

5    knew it, me, Sun Linnette, or the Department of Justice

6    understood at that moment in time when we signed it, because

7    I'm thinking Recombinate, that this was going to be a death

8    penalty for the Linnette and Sun.

9          MR. JACKSON:  Well, your Honor, it's a settlement

10   agreement, and it's as broad as it is broad, and you've already

11   interpreted that to cover all drugs.

12          THE COURT:  Yes, it's very broad.

13          MR. JACKSON:  Okay.  Now, my problem is --

14          THE COURT:  But I don't think in terms of, what other

15   qui tam is there?

16          MR. JACKSON:  Agreed completely because the statute

17   says it's the parties to that matter.  And there are settlement

18   agreements in this country every day that have collateral

19   effect on third parties.  I mean, what in the world are we

20   supposed to do before we settle a qui tam?

21          THE COURT:  Well, did you know about this other case?

22   You must have, right?

23          MR. JACKSON:  Well, of course, I knew about Sun.

24          THE COURT:  I mean, even though it was sealed, you

25   knew.

1        MR. JACKSON:  It may have been unsealed by the time of

2   the settlement.  In fact, I think it was.

3        THE COURT:  Was it?  So you knew.  You were the focal

4   hero.  You were the only one who truly understood the impact.

5   Well, not just you but Baxter.

6        MR. JACKSON:  But, your Honor, what happens if there

7   were fifty other cases under seal?

8        THE COURT:  If you didn't know, I wouldn't be so

9   squeamish about it, I'd have to worry about another remedy, but

10  you knew.  I wish they had, instead of pressing the broadness

11  of the release, which was pretty darn broad, I wish they had

12  told me that they didn't know.  I'm pretty sure that that

13  wasn't at least the thrust of what they did before.

14       MR. JACKSON:  It was never the thrust of any pleading

15  until the reconsideration.

16       THE COURT:  But now I've got it, and now I'm

17  rethinking whether it's fair and whether it's just, and what do

18  I do to unring the bell?  I've never had a situation, like, how

19  to unravel this in a fair way.

20       MR. JACKSON:  Your Honor, I believe and everyone at

21  Baxter believes that a $30 million settlement is very fair, and

22  I believe the Justice Department and Ven-A-Care thought that to

23  be true.  The fact that --

24       THE COURT:  I'm sure Ven-A-Care did.

25       MR. JACKSON:  But the fact that that has collateral

Page 19

1  effect on another case, under the statute, I believe that we

2  did precisely what the statute requires.

3      THE COURT:  Let me just say this, let me say this:  I

4  think there wasn't reasonable notice, all right?  So now I

5  don't know what to do.  I don't know what the remedy is.  I'm

6  not sure I'm going to go as far as they say, which is that the

7  government can't settle.  I don't know if I'm going to go that

8  far.

9      MR. JACKSON:  And I disagree with that as a matter of

10  law, your Honor.  I believe the Department can.

11      THE COURT:  But now the government has basically

12  said -- you know, they are very busy Assistant U.S. Attorneys,

13  very busy people at the Department of Justice.  I'm going to

14  get to them in one minute.  I don't know whether they just

15  didn't understand or they read it too quickly or were negligent

16  in how they read it, or whatever it is, but at least right now

17  they are telling me they don't agree, that they didn't

18  understand it beforehand and didn't agree.  So what do I do

19  with that?

20      MR. JACKSON:  Well, that is nothing more than any

21  other person getting buyer's remorse two days, twenty-two days,

22  or twenty years after a settlement agreement.  I believe they

23  knew, I believe it was very clear, and I believe they did what

24  they were required to do under the statute for the Ven-A-Care

25  action.  The fact that --

1      THE COURT:  I'm going to ask them all these questions

2  because I feel like they're obviously the king here; they're

3  the one in whose name the parties have sued.

4      MR. JACKSON:  And I think that's an important part

5  too, your Honor, because they're the real party-in-interest in

6  both matters.

7      THE COURT:  So if they say they don't want it, it has

8  a huge ring for me.

9      MR. JACKSON:  But I don't think they've said that.

10     THE COURT:  I'll get to them in one minute, but let's

11 say I don't think it's a reasonable notice, given the unique

12 structure of the docket in the AWP case and the fact that I

13 don't believe anyone gave them, either in mail or in person,

14 notice.  So let's say I were to hold a fairness hearing.  I

15 give them notice.  They've got it now, that's for sure.  They

16 object.  I bring Ven-A-Care in, right, because I'm undoing

17 this?  This has all sorts of -- I've got to bring -- I don't

18 know what -- I'm pretty sure I'll know what Ven-A-Care's

19 position is.  I'm a little surprised they're not here.  They

20 probably didn't get notice, the way it works, right?  And then

21 I have a hearing.  At the very least, I need to have a fairness

22 hearing.  And so they object.  And so where do you think that

23 remedy goes?  In other words, let's say I think Recombinate was

24 first to file.  I don't remember the issue well enough to

25 discuss it right now.  I give you Recombinate, but I say -- and

Page 21

1   assume for a minute the government doesn't support giving up

2   Advate -- I'm going to ask them about that in a second -- what

3   happens if I think that I can't say it's fair and just?  Where

4   did the check go?  Did the check go to the Treasury?

5           MR. JACKSON:  Yes, ma'am.

6           THE COURT:  Have you paid Ven-A-Care?

7           MR. JACKSON:  Yes.

8           THE COURT:  So what do I do?  What happens?  I got

9   stuck thinking about it in the shower kind of thing, like, then

10  what do I do, you know?

11          MR. JACKSON:  There are several things, and first is,

12  our argument is that you should enforce it as is, that we did

13  everything that was required.  I understand your position

14  regarding notice.  I would just ask the Court to go back and

15  look at the actual language of the statute.  That said, we have

16  a settlement agreement that I believe is enforceable and has

17  been paid and is final.

18          THE COURT:  That's what's worrying me.

19          MR. JACKSON:  And I don't read the Department's papers

20  the way the Court has.  I don't see them objecting --

21          THE COURT:  I'm going to ask.

22          MR. JACKSON:  And I understand, your Honor -- to

23  Advate, and I don't know why that's any different than any

24  other settlement and buyer's remorse afterwards.  These are

25  very sophisticated litigators who have been doing this case for

c9e40984-a860-4867-a25e-c46c848a1b1a

Page 22

1    a very long time in the face of a very clear agreement.

2          THE COURT:  Well, I was thinking, could I just -- I'm

3    just saying this:  So you've paid the government, you've paid

4    everyone.  I just let the payment go for Recombinate and for

5    any drugs that weren't currently subject to litigation, and I

6    resurrect the Advate claim.  Do I just go to the second and

7    third parts of the motions for summary judgment?  I forget,

8    there were other claims that I never reached, whether there was

9    a disputed issue of fact and the like.

10         MR. JACKSON:  There are those, but we paid for all

11   drugs.  The agreement says "all drugs."

12         THE COURT:  No, I understand.  That's why I can't

13   figure out what to do.

14         MR. JACKSON:  Well, again, your Honor, I think you

15   enforce it as is, and they can try to raise this reconsideration

16   motion on appeal.  The Justice Department had the right, title,

17   and authority to do what they did, we did, and Ven-A-Care did.

18   There is a case, the Bledsoe case that you might want to look

19   at, where --

20         THE COURT:  Do you have that cite?

21         MR. JACKSON:  I do, your Honor.  I just don't --

22         THE COURT:  Is it in the brief?

23         MR. JACKSON:  Yes, your Honor.

24         THE COURT:  Then I'll find it.

25         MR. JACKSON:  Where a court --

Page 23

1        THE COURT:  Well, actually, I could find it anyway.

2   Just key in that little Bledsoe, and it comes right up.

3        MR. JACKSON:  And there was a court in that case,

4   different facts, where second relator's fee was taken out of

5   the government's payment.  So don't upset the applecart for the

6   defendant, who fully and finally settled and has a full release

7   as drafted and agreed upon under contract terms, and then --

8   I'm spending the government's money now, your Honor -- the

9   Sun/Hamilton piece would come out of the $25 million that the

10  Justice Department collected from us back in September.  And

11  the cite, your Honor, is 342 Fed 3rd, 634.  It's a Sixth

12  Circuit case.

13       THE COURT:  All right, thank you.  I know your

14  position.  I'll let you all come back too.  Let me talk to the

15  government here.  No, no --

16       MR. CHIZEWER:  Can I just interject one thing from the

17  Bledsoe case because I think there's an important quote I'd

18  like to read to you from the very case that you just cited.

19       THE COURT:  Yes.

20       MR. CHIZEWER:  That case says, "There is no language

21  in the FCA suggesting that a relator's statutory right to a

22  share of the proceeds from the settlement of claims he or she

23  had asserted may properly be abrogated by an agreement to which

24  the relator was not a party."

25       Now, that statement from Bledsoe, everyone's on notice

1    that that's the law.  Baxter was on notice that that is the law

2    when they decided to settle a case and allocate and agree to an

3    allocation of no proceeds to Sun or Hamilton in this case.  So

4    Baxter had no right to think that when it paid the $30 million

5    and allocated it only to Ven-A-Care, it had no right to think,

6    given this holding in Bledsoe and given the statute, that they

7    were settling this case.

8            THE COURT:  All right, thank you.  Let me hear from --

9            MR. CHIZEWER:  Your Honor, may I --

10            THE COURT:  No, no, no.  I want to hear from the

11    government.  And then I'm not stopping you.  We have the

12    afternoon here.

13            What do I do here?

14            MR. DRAYCOTT:  Well, your Honor, I don't want to have

15    an argument about statements that you already made about how

16    you're going to construe this, but our position is, since you

17    asked for it, is that Advate was not part of the settlement

18    agreement because the settlement agreement by its own terms is

19    limited to that which was pled by Ven-A-Care, that --

20            THE COURT:  Well, can I back up.  I'm not going back

21    on -- the release is extraordinarily broad, "all drugs," and

22    lest you be at all surprised, it lists codes.  So someone

23    viewing this settlement, which included the release, missed it.

24            MR. DRAYCOTT:  Yes, I understand, but you're asking

25    for the --

1        THE COURT:  No, but I want to understand.  Is that

2   accurate you didn't know?  It was there, but you didn't know?

3        MR. DRAYCOTT:  Your Honor, what we read, the way that

4   my -- not my settlement but the way my colleague read it, and

5   I'm certain about this, is that there was no intent or we

6   didn't read this as an intent to settle a claim that was

7   outside of the Ven-A-Care complaint.  And we understand, your

8   Honor, that your Honor doesn't agree with that point, but

9   that's our position.

10       THE COURT:  No, but give me some argument that shows

11  that the release -- let me put it this way:  I used to be head

12  of the Civil Division, and I understand that papers flow

13  across -- I mean, it was many, many, many years ago, so we

14  didn't have -- flow across your desk, and people don't notice

15  it, but it seems like the person from the Justice Department

16  missed it.

17       MR. DRAYCOTT:  Your Honor, I think we would take this

18  experience as a drafting lesson, and I think we would phrase

19  our consent to the dismissal differently in the future, so your

20  point is well-taken there.  But I would suggest you go with the

21  option that you suggested, which is Advate gets removed.  That

22  is something that could not be settled in the context of the

23  agreement between Ven-A-Care and Baxter because it was the

24  subject of a separate qui tam.

25       THE COURT:  But help me on this.  All right, so I'm

1    not saying -- look, I understand people are busy, they miss it.

2    It was there.  All right, they missed it.  So you agreed to the

3    settlement, and when you say "the settlement," that includes

4    the release language.  Now, I don't know if you can estop the

5    federal government.  Is it your current position that you

6    didn't know and that you would not have agreed?

7            MR. DRAYCOTT:  I think what we would say is that if we

8    didn't -- that we wouldn't have agreed because we wouldn't have

9    viewed ourselves as having the authority in the context of the

10   Ven-A-Care/Baxter settlement for there to be a release of a

11   drug that was not pled and within the context of the Ven-A-Care

12   settlement for the reasons that we put in our papers.

13           THE COURT:  All right, can I ask you this.  That's

14   contrary -- let me just say this -- to current class action

15   law, which I've dealt with extensively in the AWP context and

16   which the DOJ has dealt with extensively, whereby people have

17   released claims that are broader than what was in the

18   complaint, either because of the statute of limitations, or

19   because of a subsequent act of Congress, or because the country

20   just wanted a global resolution, put it to bed.  So in the

21   class action context, as well as I think other contexts, you

22   can waive claims in the context of a settlement beyond what's

23   in the four corners of the complaint.  Do you disagree with

24   that?

25           MR. DRAYCOTT:  I'm not going to challenge your Honor's

1   understanding of what can happen in the context of a class

2   action, and I'm sure your Honor has one or two legs up on me on

3   that, but what I do, the touchstone and what we try to comply

4   with is the FCA.  And there, as indicated, where we declined

5   both of these cases, had virtually no involvement in the

6   negotiation between Ven-A-Care and Baxter, my colleague

7   consented to what she thought was a more limited release

8   because of language that I can point to.  Again, we accept your

9   Honor's ruling on that, but we had no authority to, and we

10  didn't have a statutory authority under the False Claims Act to

11  consent to the release of Advate if it's not pled by Ven-A-Care

12  and it is pled by another relator.

13          THE COURT:  But is that the limiting principle?

14  Suppose -- just because when I write an opinion, I don't want

15  this to go too broadly.  Do you as the Department of Justice --

16  you may want to think about this -- want to be in a position

17  that you cannot settle a claim beyond the four corners of the

18  complaint if it's -- well, that you can't settle a claim within

19  the four corners?  You want to take that position?

20          MR. DRAYCOTT:  The only position we're going to

21  take -- and I'm glad your Honor gave me the opportunity for

22  this clarification -- is that in the particular context here

23  where you had two qui tams, and both of which are -- well, were

24  at that time out from under seal, and there is an issue between

25  the overlap, that we can't be consenting to a settlement

c9e40984-a860-4867-a25e-c46c848a1b1a

1   agreement by Ven-A-Care and Baxter, we can't consent or --

2         THE COURT:  You don't have the --

3         MR. DRAYCOTT:  -- it's not operative with respect to a

4   second qui tam which has claims that aren't pled in the first.

5         THE COURT:  That you do not have the statutory

6   authority to do so?

7         MR. DRAYCOTT:  For the reasons I pled in the

8   submission to the Court.

9         THE COURT:  Okay, so I just want to make sure the

10  limiting principle is when there is another pending qui tam

11  that includes that drug.  So if we were to redo this, unring

12  the bell -- let me just understand it -- and let's say I was to

13  agree with you that you wouldn't have had the statutory

14  authority to settle Advate, at least -- would you say at all or

15  at least without giving notice to them?

16        MR. DRAYCOTT:  Well, I think we would --

17        THE COURT:  Because they're saying at all, you can't

18  settle it at all because you didn't intervene.

19        MR. DRAYCOTT:  Typically -- this is a very unusual

20  situation because of the lack of involvement by the Department

21  of Justice in the settlement negotiations.

22        THE COURT:  In either of them, really.

23        MR. DRAYCOTT:  Right, right, and typically that's

24  somewhat unusual.  But if you were to unring the bell and we

25  were to be brought into it, there would be a number of

1    potential ways the settlement could be structured, and

2    including potentially the United States intervening to

3    accomplish it.

4         THE COURT:  But the position that Sun is taking, as I

5    understand it, is that even if you had been fully cognizant of

6    what was going on, and even if you had given them notice, you

7    would not have had the authority to settle the Advate claim

8    because you hadn't intervened in the Sun case.

9         That's the position, right?  That was the second part

10   of your position?

11        MR. CHIZEWER:  That's correct, your Honor.

12        THE COURT:  So do you agree with that?

13        MR. DRAYCOTT:  Certainly, your Honor, if we wanted to

14   settle this case, and we then wanted to settle Advate and

15   essentially take control of the litigation, we would have had

16   to do that via intervention if we weren't making progress in

17   reaching a negotiated resolution.

18        THE COURT:  All right, so you do agree with them

19   actually.  You'd have to intervene to settle it without them?

20        MR. DRAYCOTT:  And that is the process under the

21   statute by which we take control and direct the litigation.

22        THE COURT:  Okay, all right, so this is useful.  So,

23   A, you don't have authority to settle a claim when another one

24   is pending, and the only way you could have settled that was to

25   intervene and just sort of bounce them off the saddle.

c9e40984-a860-4867-a25e-c46c848a1b1a

Page 30

1        MR. DRAYCOTT:  And I think that's what I said in my

2   papers to the Court.

3        THE COURT:  All right, so now what do I do?  Let's

4   assume I think there wasn't reasonable notice.  Now I ask you

5   this:  Let's assume that I hold another fairness hearing

6   because you've got to let Ven-A-Care in this.  I mean, this

7   directly affects Ven-A-Care.  Do you think the settlement is

8   fair?

9        MR. DRAYCOTT:  That issue, because my colleague was

10  looking, again, and --

11       THE COURT:  Who's your colleague now?

12       MR. DRAYCOTT:  Lori Oberembt.  But to the extent --

13       THE COURT:  She's been here, right?

14       MR. DRAYCOTT:  Yes.

15       THE COURT:  Yes, I know --

16       MR. DRAYCOTT:  Well, again, and not to keep -- I don't

17  want to be back in your Honor's face about this, but because

18  she was looking at the limitation as being what Ven-A-Care had

19  pled, I think she was evaluating it under that light.  Granted,

20  we at this point accept that your Honor finds that that was not

21  the correct perspective to have on it, but that was the

22  perspective that was taken.  So she didn't consider this, I'm

23  certain, in the context which it's now before the Court.

24       THE COURT:  So you think it was fair only with respect

25  to the Recombinate, but you didn't evaluate whether it was --

c9e40984-a860-4867-a25e-c46c848a1b1a

1    the heft of the Advate claim, is that right?

2         MR. DRAYCOTT:  What I can tell your Honor is,

3    typically what we do is, we do look actually more at the

4    recovery, trying to ascertain whether or not there is a

5    recovery based on the elements and that there's a recovery that

6    is coextensive with the damages that are being recovered.  I

7    don't know to what extent that Ms. Oberembt understood the

8    amount that was being allocated to different drugs, and there

9    was a lot of drugs being released, and I don't know that she

10   ever broke out and was looking at the different drugs within

11   the Ven-A-Care settlement.

12        THE COURT:  Well, do you know whether she understood

13   that there was another case pending with Advate in it?

14        MR. DRAYCOTT:  She did, and she didn't think it was

15   being settled.

16        THE COURT:  She did know about the Advate, but she --

17        MR. DRAYCOTT:  Well, your Honor, I think she knew the

18   existence of the Sun and Hamilton case.  Whether or not she

19   knew about the details of that case, I suspect that she had a

20   superficial understanding at best.  I think her understanding,

21   albeit, you know, in your Honor's view incorrect, was that it

22   was not being settled.

23        THE COURT:  Not being affected, so she --

24        MR. DRAYCOTT:  Not being affected because of the

25   language in the release, specifically, that Ven-A-Care was only

c9e40984-a860-4867-a25e-c46c848a1b1a

Page 32

1   purporting to settle --

2       THE COURT:  Well, suppose I had a fairness hearing, do

3   you know now what the government's position would be as to

4   whether or not -- assume that Advate is part of it, and

5   obviously Recombinate -- whether or not the settlement was

6   fair?

7       MR. DRAYCOTT:  I don't, your Honor.

8       THE COURT:  Do you know whether you would intervene in

9   the Sun case and take it over and settle it for the same amount

10  of money?

11      MR. DRAYCOTT:  Well, again, I don't know that the --

12  I'm certain that there would be an objection to our

13  intervention because it affects the relator's share.  So I

14  think that resolution, you know, doesn't necessarily depend on

15  the United States intervening.  We can be a party to those

16  negotiations, we're willing to try to support that, and there

17  may be just -- we'd be called upon to consent to a differently

18  structured settlement agreement potentially.  But this is,

19  again, an unusual situation where we certainly had very little,

20  virtually no input in terms of the negotiation or the structure

21  of the settlement.

22      THE COURT:  Would it be correct to say at this point,

23  now that I've ruled that Advate is part of the release, which

24  it clearly was, in my view, it was so broad, so you're now

25  saying that the settlement is not fair and reasonable, and

1    you're seeking to withdraw that?

2         MR. DRAYCOTT:  I'm not willing to go that far before

3    your Honor.  We would have to look at that.  I think we'd try

4    to understand why and we'd hear from the parties to the

5    settlement as to why it was fair and reasonable, given that it

6    is a broader release than what was contemplated --

7         THE COURT:  So you haven't hit that point yet, you

8    haven't decided yet, because it's certainly undermining my

9    confidence in the ruling.  I'm not sure where I'd come down.

10   It would somewhat depend on where you came down.  I have no

11   idea how much Advate is worth.  I have not even gotten to the

12   merits, although I know it was part of a summary judgment.  I

13   mean, there are contested -- I don't remember the issues

14   even on Advate.  I don't know what the value of it is.  So the

15   question is, I would have to hold a fairness hearing.

16        Now, suppose you withdraw your consent, and you say

17   it's not fair because we don't think that the value is worth it

18   with the Advate, what do I do?

19        MR. DRAYCOTT:  Well, I think, your Honor, my

20   expectation is that your Honor is going to rule.  That will

21   have the effect it's going to have on the current settlement,

22   and the parties I would think would either go back to

23   litigating open issues or trying to resolve it, and the

24   government stands ready to be as involved as --

25        THE COURT:  Are you ready to pay back the money?

1          MR. DRAYCOTT:  Well, if your Honor issues a ruling

2    that devoids the settlement, it undoes a number of things, and

3    including the relator's share that was paid to Ven-A-Care.

4          THE COURT:  You've already paid Ven-A-Care?

5          MR. DRAYCOTT:  Yes.

6          THE COURT:  Well, let me put it this way:  This will

7    be a case for the textbooks, this will be a case for the

8    textbooks because I think --

9          MR. DRAYCOTT:  That's the most distressing thing your

10   Honor said today.

11         (Laughter.)

12         MR. JACKSON:  Not to me, your Honor.

13         Briefly, Judge, we've briefed the notion, we believe

14   the Justice Department has the power to settle.  When you look

15   at the amended Ven-A-Care complaint, it had very broad language

16   about all drugs.  Then it named some specifics.  So it's not

17   outrageous for us to have included a broad release, and I take

18   issue with the Justice Department's position in that regard.

19   And I do almost one hundred percent of these cases probably for

20   the last fifteen years, False Claims Act cases, and it will be

21   a horrible thing that if the Justice Department declines to

22   intervene in a case, a case is resolved with a relator, the

23   Justice Department consents to a settlement, and then sometime

24   later gets to come back and attack the settlement because

25   somebody may or may not have paid attention.  That is a

1  terrible thing.

2         THE COURT:  But isn't it terrible precedent -- I mean,

3  just to turn it back on you, devil's advocate here a little --

4  to have a company that knows, that knows that essentially by

5  out-lawyering, having an exceptionally broad release, and it

6  knows that you're basically giving the death penalty to another

7  pending suit, and no one else in the room has focused on it,

8  doesn't it lead to sharp practices if I permit it?

9         MR. JACKSON:  No, your Honor.  There were no sharp

10  practices here.  If the release was somehow, to use your

11  language from your opinion, you know, "couched" in some

12  incredibly complicated language, okay, you can say that it was

13  sharp elbows, but this couldn't have been clearer and

14  straightforward.  It was all drugs.

15         THE COURT:  I didn't know.

16         MR. JACKSON:  It was all drugs.

17         THE COURT:  You didn't give me the labeler code.  I

18  had no idea it was in the labeler code.  I just saw -- the

19  government --

20         MR. JACKSON:  It was all drugs, your Honor, all drugs,

21  all Baxter drugs.

22         THE COURT:  I didn't know -- I have 250 cases.

23         MR. JACKSON:  Yes, your Honor.

24         THE COURT:  I didn't know that their case was focused

25  on Advate.  How long is your complaint?  It like goes on for --

1   like, they're all ridiculous.  They're all like 250 pages.  You

2   know, you're assuming a different level of granular knowledge

3   on behalf of the other players in this massive case, often

4   which have appendices with hundreds of drugs in them, than even

5   this attorney whom I know who comes in front of me for other

6   cases.  She read it, quickly, I'm assuming.  She didn't sit and

7   go to the labeler code and then cross-index to another case.

8   They get forty e-mails a week on this massive mess that I'm

9   almost done with -- you're one of the last -- and sort of key

10  into the fact that Ven-A-Care was settling anything other than

11  the Ven-A-Care claim.  Maybe in an ideal perfect world, if they

12  were the best lawyers that ever existed in the face of the

13  universe, and if the Justice Department had infinite amounts of

14  time, they would have figured it out, but you knew.

15          MR. JACKSON:  But, your Honor, again, it said

16  "all drugs."  That's not a complex statement, you know, and I

17  read all of these things and have since 2004 or 2005 --

18          THE COURT:  I'm sorry.

19          MR. JACKSON:  -- as has everyone else in this room.

20          THE COURT:  I'm told it put a lot of kids through

21  college, right?

22          MR. JACKSON:  And I'm still working on it, Judge.  But

23  all drugs is nothing -- that's all drugs.

24          THE COURT:  Yes, I think someone might not have

25  realized that it was all drugs apart from that case.  But let's

c9e40984-a860-4867-a25e-c46c848a1b1a

1    assume for a minute they were negligent.  I'm worried about

2    this whole -- it feels wrong -- you know, I sometimes go with

3    my instinct -- not to allow them to object -- that's my gut

4    here -- if they didn't act -- that's why I kept going,

5    "Factually did you know?"  If this was sharp practices on their

6    part, which is simply they knew, but they didn't, you know,

7    didn't technically get it filed in their subcategory or

8    something, you know, I might go a different way.

9            But what I want everybody to do, so this is clear, is

10   to put in an affidavit about whether they in fact knew it was

11   settling in particular the Advate, but I suppose to be careful

12   it should be the Recombinate, and whether or not -- you'll

13   check with your team -- whether anyone actually factually told

14   either the government or the relators in the Sun Linnette case,

15   whether or not anyone factually told the government or had

16   discussions --

17           MR. JACKSON:  Judge, I guess we're all going to have

18   to be careful about that.  That both implicates 408 and then

19   also the separate confidentiality agreement that we've all had

20   with Professor Green on these mediations.

21           THE COURT:  Oh, you think it might have come up there?

22           MR. JACKSON:  I don't know.  I want to make sure that

23   I raise the issue with you.  I don't know.

24           THE COURT:  Well, that's a fair point.  If one needs

25   to, one could file it under seal.

Page 38

1          MR. DRAYCOTT:  Well, I would just inquire who was

2     before Professor Green.

3          THE COURT:  Were any of you before Professor Green in

4     this case?

5          MR. DRAYCOTT:  I think it was just Baxter and

6     Ven-A-Care is my understanding.  If I'm wrong about that --

7          MR. JACKSON:  Well, your Honor, of course it was

8     Baxter and Ven-A-Care because the Justice Department had the

9     opportunity.  They didn't intervene.  They never showed up.  We

10    were the only parties to the case.  Of course that's who's

11    settling the case.

12         THE COURT:  Well, let me put it this way:  At this

13    point, Professor Green has been the most terrific mediator in

14    this whole thing, but what's relevant here right now, it may be

15    that he knew because it was all confidential.  He had no

16    obligation to say anything.  The obligation is when you come

17    into court.  If in fact you know that Professor Green informed

18    Baxter or the government, it would be one thing; but otherwise,

19    if it just came up between you and Ven-A-Care, I'm not sure

20    that's material.

21         MR. JACKSON:  Well, except, your Honor, keep in mind

22    how these cases work.  When the Justice Department doesn't

23    intervene, they don't play --

24         THE COURT:  Sure.

25         MR. JACKSON:  -- until they get a consent.  So, again,

Page 39

1    from a policy standpoint, it's very troubling that the

2    Department would complain about negotiations that they made a

3    specific decision not to get into.  And this leads back to my

4    initial very serious concern about buyer's remorse.

5            THE COURT:  Well, but what if it's not buyer's

6    remorse?  What if it's more likely she didn't catch it?

7            MR. JACKSON:  Well, that's not a reason to break a

8    settlement.  The case law is pretty clear on that.

9            THE COURT:  Let me just say this:  What if she didn't

10   understand that it was essentially dismissing another case?

11   And the government has to do more than just sort of be

12   negligent to be estopped from taking a position on another

13   case.

14           MR. JACKSON:  Your Honor, I think, frankly, most of us

15   in here, including yourself, were Justice Department lawyers.

16   We all had heavy case loads.  You took the time to read.

17           THE COURT:  But I'm just saying, it was beyond her

18   statutory authority --

19           MR. JACKSON:  I disagree with that as a matter of law,

20   your Honor.  We've briefed that.

21           THE COURT:  -- to unknowingly --

22           MR. JACKSON:  Well, no.  The Justice Department may

23   settle cases that they haven't intervened in.  We believe that

24   that's the law.  We've briefed that.  And I know that my

25   colleague here takes the opposite position.  I understand that.

Page 40

1          THE COURT:  And the Justice Department does.

2          MR. JACKSON:  And I believe both of them are wrong,

3   with all due respect.

4          THE COURT:  Okay, well, that's a question I'm going to

5   have to go into because that goes into -- but at the very

6   least, let me tell you where I'm coming out of it.  I'm going

7   to have to write it up, and, again, it's just going to take

8   forever, but I don't think there was reasonable notice.  So at

9   the very least, what I'm doing here is, I've got to at least

10  have a hearing.  But what I'm not sure about is then what to

11  do.  That's where I'm confused.

12         MR. JACKSON:  You've got one other option.

13         THE COURT:  What?

14         MR. JACKSON:  You can moot this out.  You can grant

15  our summary judgment on the Recombinate first to file, and you

16  can grant our summary judgment on the Advate and the massive

17  record that I believe is largely unrebutted, maybe completely

18  unrebutted, about the knowledge of the government regarding

19  hemophilia products and its relationship to the MMA and the

20  timing.

21         THE COURT:  Well, I actually may get there.  I mean,

22  you may win on another prong.  I never even walked down that

23  path, I didn't have to, but now -- and I wish, candidly, in the

24  beginning I had had this notice because I could have ruled on

25  the notice thing months ago, and to boot, I wish the government

1    had given me a little more fulsome of an explanation of its

2    position.  But I now have it all, and in the interest of

3    justice, I've got to deal with this, I think as step one,

4    whether I reconsider my summary judgment ruling on the part

5    that I did do, and then I may well get to the other parts, if I

6    do that.  What you're urging me is to perhaps say there was

7    unreasonable notice, bypass that, and just get to the second

8    parts of the summary judgment.

9          MR. JACKSON:  Well, that is an option you have, but,

10   again, in the first instance, Judge -- and I understand, you

11   made it very clear you're concerned about the notice -- I think

12   if you parse the statutory language, I think we did it right.

13         THE COURT:  I understand it's a new situation, one for

14   the textbooks, as they say, but I'm actually going to go off

15   the record in two seconds and see if we can obviate the

16   textbooks, but --

17         MR. CHIZEWER:  Can I just make one quick point because

18   I think everybody is overlooking something that's important.

19   We're all talking about how broad the language of the release

20   is, and I agree that it's very broad.  The question is not how

21   broad the language of the release is.  It's who are the

22   releases from?  There are two paragraphs that give releases to

23   Baxter.  Paragraph 6 gives a release to Baxter directly from

24   the State of Florida.  The government of the state of Florida

25   gave Baxter a release directly.  In Paragraph 7, there is not a

1    parallel release from the United States government.  There's

2    only a release from the plaintiffs, and to the extent --

3              THE COURT:  Who are the plaintiffs?  You mean

4    Ven-A-Care?

5              MR. CHIZEWER:  Ven-A-Care.  And to the extent they can

6    bind the government, it's from the government; but it's

7    limited, it's limited, the release they got is limited from

8    anything the plaintiffs can give them.  So if a government

9    lawyer is looking at that release and they say, well, we know

10   that of course the Ven-A-Care plaintiffs don't have the power

11   to release the Sun case, then we can consent to this settlement

12   because it's not releasing the Sun case because Ven-A-Care

13   doesn't have the right to do that, and the only release they're

14   getting is from Ven-A-Care.  It's not from the United States.

15             THE COURT:  Well, now, that's a new wrinkle.

16             MR. CHIZEWER:  It doesn't matter how broad the release

17   is.

18             THE COURT:  That's new.

19             MR. CHIZEWER:  It's only as good as the person who's

20   giving it.  The United States never gave a release.  They

21   didn't sign the settlement agreement.  They consented to a

22   dismissal of the case.  Actually, the dismissal order says

23   specifically just the dismissal of this civil action, meaning

24   the Ven-A-Care civil action.  And if you want to say that by

25   consenting to the dismissal they agreed to the settlement

c9e40984-a860-4867-a25e-c46c848a1b1a

Page 43

1    agreement, even if you go that far, the settlement agreement

2    doesn't say that the government is giving a release.  It only

3    says that the plaintiff, Ven-A-Care, is giving a release, and

4    it binds the government only to the extent it has the ability

5    to do that, and, of course, Ven-A-Care does not have the

6    ability to settle our case.

7              THE COURT:  Now, that's interesting.

8              MR. JACKSON:  Well, your Honor, Ven-A-Care absolutely

9    has the authority in a non-intervened case to resolve this

10   matter.  That's how it's done.  That's why the Justice

11   Department consents.

12             THE COURT:  What do you think?  Let me just ask you

13   this.  That was a pretty clever argument at the last one here.

14             MR. DRAYCOTT:  Well, your Honor, I think my brother is

15   just doing a much better job than I am at explaining why we

16   thought that the language in Paragraph 7, which is what he is

17   referring to, which is, you know, "In consideration of the

18   obligation of Baxter in this agreement, plaintiff --" in that

19   case, and plaintiff is in this case Ven-A-Care because we did

20   not intervene -- "on behalf of itself, and to the extent it is

21   capable under the law, all qui tam claims brought on behalf of

22   the United States in the federal qui tam proceedings," which

23   are the qui tam proceedings by Ven-A-Care.  So both the covered

24   conduct references the complaint of Ven-A-Care --

25             THE COURT:  Could you read that one more time.  It

Page 44

1    says what?

2              MR. DRAYCOTT:  Well, it's the first --

3              THE COURT:  I just don't have it right here.

4              MR. DRAYCOTT:  It's Paragraph 7:  "Plaintiff on behalf

5    of itself (including with respect to the Relator) to the extent

6    it is capable under the law, all qui tam claims brought on

7    behalf of the United States in the federal qui tam

8    proceedings," which in the context of this does not include,

9    obviously, the Sun and Hamilton case.  So the way this was

10   structured by, well, the drafters of this -- and I don't know

11   to what extent this language was selected by Baxter or

12   Ven-A-Care, which is back to my point why my colleague

13   understood that what she was consenting to would be effective

14   only with respect to claims that were in the Ven-A-Care action

15   because that's the only authority that they had, given that

16   there are any claims that fall without -- well, certainly at

17   least Advate, are the subject of --

18             THE COURT:  But that's still the statutory argument.

19             MR. CHIZEWER:  Your Honor, contrast it with the

20   release that they got from the State of Florida.  Baxter knew

21   exactly what it was doing here.  It knew exactly what it got

22   and what it wasn't getting.  It got in Paragraph 6 a release

23   directly from the government, from the State of Florida.  They

24   got that release directly.  They did not get the same release

25   from the United States.  They knew the release that they were

c9e40984-a860-4867-a25e-c46c848a1b1a

Page 45

1   getting in Paragraph 7 was very different from a release that

2   you get directly from the State of Florida, from a government

3   entity.  And putting aside whether the government had the

4   authority to settle this case, which we say it didn't,

5   certainly Ven-A-Care did not have the authority.

6           THE COURT:  No, but certainly the government had the

7   authority to settle a case with respect to Recombinate.

8           MR. CHIZEWER:  Well, we've already talked about that.

9           THE COURT:  So let me just understand it.  It

10  certainly had the authority to settle the case with respect to

11  Recombinate.  So at the very least, if you didn't get fair

12  notice, at that point with Recombinate, the issue -- I mean,

13  you did settle Recombinate, right?  The government doesn't

14  contest that.

15          MR. DRAYCOTT:  Because it was pled --

16          THE COURT:  Pled as part of the complaint.  So the

17  best that you get under that is a hearing and a right to demand

18  compensation, right, for Recombinate?

19          MR. CHIZEWER:  For Recombinate, yes.

20          THE COURT:  For Recombinate, yes.  Now, your clever

21  thing at the end here is, so you'd get the hearing on this, on

22  the Recombinate possibly to claim some compensation, but with

23  respect to the Advate, you'd say it wasn't released at all, and

24  there's no need for a hearing because as a matter of law it

25  wasn't released.  But under any theory, you need a hearing,

1   right?

2          MR. CHIZEWER:  And I guess "clever," while I

3   understand it may be a compliment, your Honor, I don't think

4   there's anything clever about the argument at all.  I think

5   it's plain as day.

6          THE COURT:  Well, maybe, but to be honest, no one

7   raised these things first time around.  I did a lot of spinning

8   of wheels on something completely different.

9          MR. CHIZEWER:  And for that we apologize, Judge.  I

10  honestly sincerely apologize for that.

11         THE COURT:  So but let me just say that under any

12  theory, even if I said the Advate was beyond the scope of the

13  power of the U.S. government to consent to, with respect to

14  Recombinate, they certainly could consent to it.  And would you

15  still be looking for a hearing on the Recombinate?

16         MR. CHIZEWER:  Yes, your Honor, because we believe

17  that we were first to file on Recombinate.  We understand that

18  there is a slight, very vague reference in Ven-A-Care's

19  complaint --

20         THE COURT:  Yes, but it's got to be the government can

21  settle existing claims.  All you get is notice if it ends up --

22  right, they've got to be able to settle Ven-A-Care.

23         MR. CHIZEWER:  Of course they can settle Ven-A-Care.

24         THE COURT:  And then you can come in and say that "I'm

25  entitled to just compensation."

Page 47

1          MR. CHIZEWER:  Correct.

2          THE COURT:  Right?  That's what you would do at a

3     hearing, right?

4          MR. CHIZEWER:  Correct, your Honor.

5          THE COURT:  Of course they've got to be able to settle

6     that, and then you just come in, "Well, what about me?"

7          MR. CHIZEWER:  Yes, your Honor.

8          THE COURT:  You know?  But Advate you think I don't

9     even need the hearing on because you think that as a matter of

10    law they couldn't have released it.

11         MR. CHIZEWER:  Certainly.  A, they didn't release it

12    because the release doesn't say the government released it,

13    and, B, even if they thought they did, they didn't have the

14    authority to.

15         THE COURT:  All right.  All right, now let's go off

16    the record for one minute.

17              (Discussion off the record.)

18              (Adjourned, 3:32 p.m.)

19

20

21

22

23

24

25

Page 48

1                    C E R T I F I C A T E

2

3

   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
5

6

7          I, Lee A. Marzilli, Official Federal Court Reporter,

8  do hereby certify that the foregoing transcript, Pages 1

9  through 47 inclusive, was recorded by me stenographically at

10 the time and place aforesaid in Civil Action No. 08-11200-PBS,

11 Linnette Sun, et al v. Baxter Hemoglobin Therapeutics, et al,

12 and thereafter by me reduced to typewriting and is a true and

13 accurate record of the proceedings.

14      In witness whereof I have hereunto set my hand this 26th

15 day of April, 2012.

16

17

18

19

20          /s/ Lee A. Marzilli

21          _____
            LEE A. MARZILLI, CRR
            OFFICIAL COURT REPORTER
22

23

24

25