## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 Master File No. 1:01-CV-12257-PBS Sub-Category Case No. 1:08-CV-11200 |

_____

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | Judge Patti B. Saris |
| *United States ex rel. Linnette Sun and Greg Hamilton, Relators* | Leave to File Granted May 11, 2012 |
| *v.* | |
| *Baxter Healthcare Corporation* | |

## STATEMENT OF INTEREST BY NON-PARTY, VEN-A-CARE OF THE FLORIDA KEYS, INC.

Non-party, Ven-A-Care of the Florida Keys, Inc. ("Ven-A-Care"), through its undersigned counsel and in response to the inquiry of the Court made during the hearing in the above cause on April 25, 2012, provides this Statement of Interest to the Court and the Parties in the above *qui tam* action and to the United States Department of Justice ("DoJ"):

## I.
## ISSUE PRESENTED

Ven-A-Care believes that the issue before this Court has been inappropriately framed by the parties as a question of whether Counsel for Sun and Hamilton had notice of what Baxter intended to accomplish in negotiating its settlement with Ven-A-Care ("the 2011 Ven-A-Care Baxter Settlement" or "Settlement"). The record has now been clarified as to the parties' actual notice of the specific terms of the 2011 Ven-A-Care Baxter Settlement at least 10 days before the Court entered the Order of Dismissal With Prejudice contemplated by the Settlement.  The only

remaining issue is simply whether Ven-A-Care's Settlement of FCA *qui tam* claims pled in its earlier-in-time action, has legal *effect* in this later-filed FCA *qui tam* action; *i.e.,* whether that Settlement provides Baxter with the defenses of release, settlement and/or res judicata as to the Advate and Recombinate *qui tam* claims.[1]

The *qui tam* claims at issue here belong to the United States and Congress has specified important limitations on a relator's standing to pursue them and on the Court's authority to adjudicate them. Accordingly, Ven-A-Care respectfully suggests that the Court should first determine whether it possesses subject matter jurisdiction over any of the remaining *qui tam* claims. To the limited extent the Court has jurisdiction in this case, the question then becomes whether the 2011 Ven-A-Care Baxter Settlement encompassed *qui tam* claims that could otherwise be pursued by Sun or Hamilton. Finally, if and to the extent that the answers to these first two questions are yes, the question then becomes whether the 2011 Ven-A-Care Baxter Settlement provides Baxter with a defense to any remaining *qui tam* claims brought by Sun or Hamilton.

Ven-A-Care suggests that it is particularly important that these questions be addressed in the order presented above when, as here, the Court must consider the effect of a separate, earlier-filed, FCA *qui tam* action that was previously settled and dismissed with prejudice after successful, court-ordered, confidential mediation.

---

[1] The present case and the earlier-filed Ven-A-Care case (U.S. ex rel Ven-A-Care v. Baxter, S.D. Fla. 1353 Civ.-Gold) were both brought under the *qui tam* provisions of the federal False Claims Act ("FCA") (31 U.S.C. §3730) whereby relators seek to pursue claims on behalf of the United States for a defendant's FCA violations (31 U.S.C. §3729).

## II.

## SUBJECT MATTER JURISDICTION IN THE PRESENT *QUI TAM* ACTION: WERE SUN AND HAMILTON FIRST TO FILE THE RECOMBINATE AND ADVATE CLAIMS?

The  Court's subject matter jurisdiction over FCA *qui tam* claims is expressly limited by 31 U.S.C. § 3730 (b) (5), commonly referred to as the False Claims Act's "First-To-File Bar". *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 16 (1st Cir. Mass. 2009).  Counsel for all concerned were all aware, long before and irrespective of the 2011 Ven-A-Care Baxter Settlement, that First-To-File subject matter jurisdiction issues could affect the viability of the Sun/Hamilton *qui tam* claims and that any such jurisdictional issues could not and would not be affected by the settlement documents executed by the earlier-in-time *qui tam* relator.  Counsel were likewise aware that the First-To-File Bar could limit Ven-A-Care's capability, as a *qui tam* relator in a case in which DoJ declined to intervene, to pursue or resolve any pending *qui tam* claims first filed by another relator.

31 U.S.C. § 3730 (b) (5) provides as follows:

"When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."

As the First Circuit Court in *Duxbury* made clear, the First-To-File Bar necessitates a comparison of the pleadings in the present action with those in the earlier action. 579 F. 3d 13, 32-34.  While counsel for all concerned understood that Ven-A-Care had no authority to resolve First-To-File subject matter jurisdiction issues, they each had access to the pertinent pleadings from the two *qui tam* cases that a court would later examine if the issue had to be adjudicated.

3

It was against this backdrop that Ven-A-Care and Baxter entered the confidential mediation process and successfully reached a settlement in principle, that was itself confidential until reduced to signed documents after the requisite official approvals and consents were secured.[2] Accordingly, the answer to the subject matter jurisdiction question in the present case, which Ven-A-Care urges the Court to address first, is one that counsel for all concerned knew might one day preclude or limit the Sun/Hamilton Advate and Recombinate *qui tam* claims and that it was an open question that could not be resolved, one way or the other, by the Baxter Ven-A-Care mediation.  Importantly, the successful culmination of the Ven-A-Care Baxter mediation would necessarily mean that any First-To-File issues presented by the multiple *qui tam* cases would not be adjudicated in or before the conclusion of the Ven-A-Care *qui tam* case and, if deemed important, would have to be resolved by the Court in this later-filed case.

As the Court is aware, Baxter was one of the first defendants that Ven-A-Care joined as part of its long line of pharmaceutical pricing FCA *qui tam* cases brought pursuant to the federal False Claims Act (31 U.S.C.§§ 3728 – 3732)  and first filed in 1995 in the United States District Court for the Southern District of Florida ("the Ven-A-Care Baxter Qui Tam Action"). Ven-A-Care amended its pleadings on four occasions while the case remained under seal and as the Government investigated its allegations against Baxter and many other drug manufacturers.  The last such amendment under seal was in December 2002 and Ven-A-Care again amended when the seal was lifted in 2010.  An examination of the pleadings reveals that Ven-A-Care alleged that Baxter made misrepresentations about the prices of its drug and biological products in order

---

[2] Obviously, DoJ, as counsel for the real party in interest, was provided with the settlement information and proposed documents and made a consent determination before the documents were filed with the Court and served on the other parties in this MDL.  Also, counsel for Sun and Hamilton were aware that Ven-A-Care and Baxter were engaged in mediation of Ven-A-Care's earlier in time *qui tam* case and were making substantial progress. (See eg., July 2011 Status Report filed in the Sun/Hamilton case, Case 1:01-cv-12257-PBS Document 7636 Filed 07/01/11)

to cause the Medicare and Medicaid Programs to pay inflated reimbursement for them and to thus create an unlawful inducement for health care providers to purchase them. While Ven-A-Care identified many specific drug and biological products by way of example, it also alleged that its complaints covered all of the products for which Baxter was making false price representations in order to cause inflated reimbursements. For instance, Ven-A-Care's Fourth Amended Complaint alleges: "This Fourth Amended Complaint encompasses all those prescription drugs and biologicals with respect to which Defendants violated the False Claims Act during the relevant time period by any of the means described herein, including, but not limited to, the prescription drugs and biologicals identified herein, unless otherwise included by the Relator in a separate action under the False Claims Act."  Fourth Amended Complaint for Money Damages and Civil Penalties Under the False Claims Act 31 U.S.C. § § 3729-3732, *United States ex rel. Ven-A-Care v. Abbott Labs.* (originally filed S.D. Fla. Dec. 11, 2002), No. 1:10-cv-11186-PBS, p. 9, ¶ 1 (D. Mass. June 4, 2010) (Subcategory Doc. Nos. 7-1, 7-2).

By the time the Relator filed its Fourth Amended Complaint, its case against Baxter had been pending under seal for seven years while the Government investigated the facts and circumstances surrounding the conduct of Baxter and other defendants.   As is clear from its pleadings, Ven-A-Care considered itself to be the first-in-time relator as to *qui tam* claims for damage to Medicare and Medicaid resulting from inflated reimbursement for drugs and biologicals caused by Baxter's false price reporting conduct.  Importantly, Ven-A-Care's pleadings made clear that Baxter's conduct encompassed a huge range, if not all of its drug and biological products. While examples of specific products were given, "the facts underlying" the

action were Baxter's reporting of false prices to cause inflated Medicare and Medicaid reimbursement and thus create improper inducements.[3]

Sun and Hamilton filed their qui *tam* actions in 2005, while the Ven-A-Care Baxter Qui Tam Action was pending and the Government was continuing its investigation and evaluation of the matter. Like Ven-A-Care, Sun and Hamilton alleged that Baxter made misrepresentations about prices to cause Medicare and Medicaid to pay inflated reimbursement and thereby create an improper inducement for health care providers to purchase Baxter products; however, unlike Ven-A-Care's pleadings, Sun and Hamilton's allegations are limited to two biological products, Recombinate and Advate.

It is undisputed that the Ven-A-Care Baxter Qui Tam Action encompassed a universe of drug and biological products that was far greater than the Recombinate and Advate *qui tam* claims subsequently filed by Sun and Hamilton. The question is whether the Recombinate and Advate claims fall within, or are outside of, that universe from a First-To-File perspective. In this regard, it is important to note that Recombinate and Advate are both anti-hemophilia blood factor VIII biological products known as recombinants. Ven-A-Care first identified Baxter recombinant products as an example in its pleadings in 1997,[4] when it identified Recombinate by name and provided specific price information about it. Recombinate is also specifically identified in Ven-A-Care's Fourth Amended Complaint. Advate, the other recombinant, blood factor VIII product in question, was never specifically identified by name in a Ven-A-Care complaint and was not

---

[3] Ven-A-Care's allegations also show that it was a specialty infusion pharmacy with knowledge of the broad range of Baxter's true prices for its drug and biological products and which it continuously shared with the Government during its investigation. Accordingly, the fraudulent scheme alleged by Ven-A-Care was never limited to one or two biological products, but encompassed the full range of Baxter's products.

[4] *See* Second Amended Complaint for Money Damages and Civil Penalties Under the False Claims Act 31 U.S.C. § § 3729-3732, *United States ex rel. Ven-A-Care v. Abbott Labs.* (Originally filed S.D. Fla. Aug. 13, 1997), No. 1:10-cv-11186-PBS (D. Mass. June 4, 2010) (Subcategory Doc. No. 5-1).

approved by the FDA for marketing until July 25, 2003, a point in time before Sun or Hamilton

filed their cases, but while the Ven-A-Care Baxter Qui Tam Action remained pending under seal

so that the Government could investigate Ven-A-Care's allegations about Baxter's conduct,

including as it related to recombinant products.

For purposes of the 31 U.S.C § 3730 (b) (5) First-To-File Bar, the Ven-A-Care Baxter

Qui Tam Action was clearly "pending" at the time Sun and Hamilton brought their *qui tam*

action.  Moreover, Sun and Hamilton's action was "related" to Ven-A-Care's pending action in

that the essential facts pled in both cases included allegations that Baxter misrepresented prices

for its products,  including blood factor VIII recombinant products,  in order to cause Medicare

and Medicaid to pay inflated reimbursement and thus to create an improper financial

inducement.  Accordingly, the issue for the parties in this case to litigate, and the first question

for the Court to decide, is whether all or part of the later-filed Sun/Hamilton *qui tam* claims were

"based on the same facts underlying the pending [Ven-A-Care] action." This is the precise open

question that could not be resolved by the 2011 Ven-A-Care Baxter Settlement; and since it is

determinative of subject matter jurisdiction in the present case, it is the question that should be

answered now.

The *Duxbury* decision, at  579 F. 3d 13, 32 , provided important guidance about the

application of the First-To-File Bar in 2009, prior to the 2011 Ven-A-Care Baxter Settlement.

The Court expressly adopted the "essential facts standard" (rejecting one based on "identical

facts") in agreeing with "[a]ll courts that have addressed the issue" that § 3730(b) (5) is

interpreted "to bar 'a later allegation [if it] states all the essential facts of a previously-filed

claim' or 'the same elements of a fraud described in an earlier suit'.  [Citations Omitted] The

First Circuit Court further agreed that " 'a goal behind the first-to-file rule' is to provide

incentives to relators to 'promptly alert the government to the essential facts of a fraudulent scheme.' Lujan, 243 F.3d at 1188" and that "§ 3730(b)(5) can still bar a later claim 'even if that claim incorporates somewhat different details.' LaCorte, 149 F.3d at 232-33".

In light of *Duxbury*, Ven-A-Care respectfully suggests that the Court lacks subject matter jurisdiction over the Recombinate and Advate claims to the extent that the Ven-A-Care Baxter Qui Tam Action first alleged, and thereby alerted the Government to, the "essential facts" of the fraudulent scheme at issue, "even if [the Sun/Hamilton] claim incorporates somewhat different details."  Clearly, Ven-A-Care was the first *qui tam* relator to bring a false drug pricing case against Baxter alleging the "essential facts" of a fraudulent scheme encompassing Baxter's recombinant blood factor VIII products. The question is whether Sun and Hamilton alleged an entirely different fraudulent scheme or merely "somewhat different details" that continued to evolve with respect to the scheme the Ven-A-Care *qui tam* action had already alerted the Government to.   Because Ven-A-Care's pleadings specifically identified Recombinate as an example in and before 2002, it is especially difficult to understand how the Recombinate claims can be outside of the "essential facts" of the fraudulent scheme Ven-A-Care earlier alleged. Advate may present a closer question since it was never identified by name in Ven-A-Care's pleadings and was not marketed until 2003; the year after Ven-A-Care filed its Fourth Amended Complaint. Ultimately, whether the Recombinate or Advate claims are precluded by the First-To-File Bar is an issue for the parties in this case to litigate, and for the Court to decide.

## III.

### SCOPE OF THE 2011 VEN-A-CARE BAXTER SETTLEMENT: DID IT RELEASE CLAIMS OF THE UNITED STATES RELATING TO RECOMBINATE AND ADVATE OVER WHICH THIS COURT HAS SUBJECT MATTER JURISDICTION IN THE SUN AND HAMILTON QUI TAM ACTION?

Since the United States was not a party to the 2011 Ven-A-Care Baxter Settlement, this issue necessarily turns on the question of whether Ven-A-Care was capable, as an FCA *qui tam* relator, of releasing the claims of the United States for Recombinate and Advate. As noted above, this Court's exercise of subject matter jurisdiction over the claims in the present case must be based on the determination that Sun/Hamilton, and not Ven-A-Care, were first to file them pursuant to 31 U.S.C. § 3730 (b) (5). The 2011 Ven-A-Care Baxter Settlement specifically provides that Ven-A-Care acted as a *qui tam* relator on behalf of the United States "with respect to such *qui tam* claims as the Relator has pled" and released "to the extent [the Relator] is capable under the law all *qui tam* claims brought on behalf of the United States in the Federal Qui Tam proceedings."

The key words are "to the extent [the Relator] is capable under the law," as these reflect and incorporate the law at the time of the settlement. In the context of an FCA *qui tam* action, the United States Supreme Court has held that relators may affect the interests of the United States to the extent the relator is "invested by law with the authority" to represent those interests. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928,936 (U.S. 2009). Ven-A-Care does not believe that it would have been "invested by law with the authority" to settle the Recombinate and/or Advate *qui tam* claims in 2011 if it had become barred by 31 U.S.C. § 3730 (b) (5) from pursuing them on behalf of the United States due to the filing of a *qui tam* action by another relator in 2005 that remained pending at the time of the 2011 Ven-A-Care Baxter Settlement. If the Court first became vested with subject matter jurisdiction over the

9

Recombinate and/or Advate *qui tam* claims in the Sun/Hamilton case, there could be no contemporaneous jurisdiction over those same *qui tam* claims in Ven-A-Care's action while the Sun/Hamilton case remained pending and Ven-A-Care would not be "capable under the law" of settling them.  This circumstance would occur only if, and to the extent, Sun or Hamilton filed a pleading alleging the "essential facts" of the fraudulent scheme pursuant to 31 U.S.C. § 3730 (b) (5) before Ven-A-Care alleged those "essential facts" in its case.[5]  In other words, when two "related" FCA *qui tam* actions are brought by different relators, both *qui tam* cases remain pending, and the United States declines to intervene and proceed with either, the First-To-File Bar becomes a door that swings both ways as the court can possess subject matter jurisdiction over *qui tam* claims subject to the First-To-File Bar in only one of the two pending cases. This is so because the First-To-File Bar provides that only the first relator to bring the action has authority to proceed on behalf of the United States while the first relator's case remains "pending."[6]

---

[5] Ven-A-Care again amended its complaint in 2010 when the seal on its case was lifted and later included a description of "Covered Conduct" in the 2011 Ven-A-Care Baxter Settlement that was filed with the Court. In the specific circumstances here (ie. the claim of a *qui tam* relator filing a case before, and still pending at the time of, an earlier relator's settlement and where the Government does not join in the settlement or intervene in either case), Ven-A-Care agrees that its complaint and amended complaints, filed before the filing of the operative Sun/Hamilton complaints, are relevant to a First-To-File determination in the later Sun/Hamilton *qui tam* action.  Ven-A-Care believes that it's 2002 and prior complaints clearly informed the Government of the essential facts of the fraudulent scheme as to Baxter's drug and biological products.

[6] It is important to remember that the 31 U.S.C. § 3730 (b) (5) First-To-File Bar only applies to the pending *qui tam* claims of relators.  If, and only if, the Government intervenes in either case, does it choose which FCA claims to litigate and the court has subject matter jurisdiction over any such claim the Government pursues directly. 31 U.S.C. §3730 (c) (1).  If the Government resolves by litigation, or opts to settle, claims that may have been first brought by a *qui tam* relator that is not a party to the Government's case or settlement, then that relator has a right to notice and a fairness hearing pursuant to 31 U.S.C. § 3730  (c) (2) (B) or (5). However, when, as here, the Government declines to intervene in a case brought by either *qui tam* relator, or become a party to a settlement procured by one *qui tam* relator, the FCA provides no hearing rights to another relator with a pending *qui tam* case and, instead, 31 U.S.C. § 3730 (b) (5) protects both the relator who is settling a *qui tam* case and the other relator who is not a party to the settlement.  The non-settling relator is precluded from intervening with respect to the *qui tam* claims first filed by the settling relator and the settling relator is barred from pursuing *qui tam* claims on behalf of the United States that were first filed by the non-settling relator.

Accordingly, if the Court concludes that it possesses subject matter jurisdiction over the Recombinate or Advate claims because Sun or Hamilton was first to file them, then those claims could not have been encompassed by the 2011 Ven-A-Care Baxter Settlement and the Settlement could not have the legal effect of providing Baxter with a defense in the present case.[7]

While the interested parties may assert different legal positions as to the scope of the Ven-A-Care action from a First-To-File Bar perspective, and otherwise as to the 2011 Ven-A-Care Baxter Settlement, there can be no reasonable dispute that counsel for all concerned were aware that Ven-A-Care was incapable of resolving, by settlement, the unique First-To-File Bar issue presented by the Sun/Hamilton action. In order to answer the scope question before the settlement of the earlier Ven-A-Care *qui tam* case, Baxter would have been required to litigate the issue to a final judicial determination.  By opting to settle the far greater liability risks posed by the Ven-A-Care action, Baxter knowingly left open the smaller question of whether the scope of Ven-A-Care's *qui tam* case and settlement encompassed the Advate and/or Recombinate *qui tam* claims that all concerned knew had been pled in the pending Sun/Hamilton action.

---

[7] To be clear, Ven-A-Care is not saying that the Court may have lacked subject matter jurisdiction over any part of the Ven-A-Care Baxter Qui Tam Action or the substantive scope of the 2011 Ven-A-Care Baxter Settlement. Indeed, FCA subject matter jurisdiction has been repeatedly established in the Ven-A-Care cases in this MDL after being hotly contested and adjudicated through Rule 12(b) (1) motions filed by all defendants in the Actavis case and by Baxter's co-defendants, Abbott and Dey, in the case originally brought in the Southern District of Florida. While it is "[g]raven in stone" that Ven-A-Care and Baxter could not have conferred subject matter jurisdiction over specific claims by agreement (See eg  Reale Int'l v. Fed. Republic of Nig., 647 F.2d 330, 331-332 (2d Cir. N.Y. 1981) and cases cited therein), there can be no doubt that a sufficient basis existed for this Court to have finally adjudicated the matter through its approval of the 2011 Ven-A-Care Baxter Settlement and entry of the dismissal with prejudice. Baella-Silva v. Hulsey, 454 F.3d 5, 9-10 (1st Cir. P.R. 2006) (the record need show only "an arguable basis" for subject matter  jurisdiction in order for the court's settlement judgment to be enforceable) ; Quincy V, LLC v. Herman, 652 F.3d 116, 121 (1st Cir. Mass. 2011) (Citing Baella-Silva as to the court's ancillary jurisdiction to enforce a settlement.)  The question here is a very narrow one:  If  Sun and Hamilton were first to file as to the Recombinate and Advate *qui tam* claims at some point before the 2011 Ven-A-Care Baxter Settlement, were those  specific claims outside of the Settlement because 31 U.S.C § 3730 (b) (5) provides that a relator could not bring an action on those claims if they are already part of another FCA *qui tam* action and Ven-A-Care only settled claims of the U.S. to extent it was capable under the law as a FCA *qui tam* relator?

Ven-A-Care believes it is important for the Court to know that the pertinent provisions of the 2011 Ven-A-Care Baxter Settlement were identical or substantially similar to the language of numerous other Ven-A-Care *qui tam* settlements in this MDL of cases where the Government declined to intervene, both before and since the Settlement in question. Each of those settlements was conditioned on the written Consent of the United States to the dismissal of the action (which attached the settlement agreement as an exhibit) and an order of dismissal with prejudice (which approved and also attached the settlement agreement). Also, each and every one of the settlement documents was filed with the Court and served on all parties in this MDL pursuant to Case Management Order 2.   Each settlement contains language encompassing the broad range of drugs that were, or could have been, specifically identified in the pricing fraud cases brought by Ven-A-Care or the settling states that, unlike the United States, were parties to the settlement. This resulted in the "all drugs" language and, as in the 2011 Ven-A-Care Baxter Settlement, usually included a list of the defendants' FDA labeler codes. Most importantly, as with the 2011 Ven-A-Care Baxter Settlement, each of the other settlements expressly provided that the United States was not a party to the Settlement and that Ven-A-Care acted in its capacity of *qui tam* relator releasing *qui tam* claims on behalf of the United States only to the extent it was "capable under the law".

As the settlement documents show, Ven-A-Care, as the first-in-time *qui tam* relator, consistently gave as much of a release as it was capable of giving, but no more than it was authorized by law to give.

**IV.**

<u>**LEGAL EFFECT  OF THE 2011 VEN-A-CARE BAXTER SETTLEMENT:**
**DOES IT PROVIDE BAXTER WITH THE DEFENSE OF SETTLEMENT,**
**RELEASE OR RES JUDICATA IN THE PRESENT *QUI TAM* ACTION?**</u>

At no time did Ven-A-Care agree or imply that the 2011 Ven-A-Care Baxter Settlement
included the dismissal of the Sun/Hamilton FCA *qui tam* action.  Indeed, the FCA expressly
provides at 31 U.S.C. § 3730 (b) (1) that the Sun/Hamilton *qui tam* action could be dismissed
only if the United States provided its written consent, which it did not. Accordingly, it is Ven-A-
Care's position that the defenses of settlement, release or res judicata would only be available to
Baxter against the relators in the present *qui tam* case (as they would also be available against the
United States in a direct action) if the Court concludes that Ven-A-Care was first-to-file the
Recombinate and Advate claims and thus had the authority to settle them on behalf of the United
States.  If the claims were not so encompassed by the earlier Ven-A-Care action then they were
not resolved by the Settlement, and the defenses of settlement, release and res judicata would not
be available in this case.   However, if the claims were part of the earlier Ven-A-Care action and
2011 Ven-A-Care Baxter Settlement, then neither Sun nor Hamilton was first-to-file them and
the resultant lack of subject matter jurisdiction otherwise moots the question of the defenses
under the Settlement.

Ven-A-Care respectfully submits that, regardless of the Court's final decision as to the
viability of the Recombinate and Advate *qui tam* claims following the 2011 Ven-A-Care Baxter
Settlement, the circumstances presented here did not evolve because counsel for any interested
party was uninformed or misled. All concerned were on notice that First-To-File issues relating
to the Sun/Hamilton Recombinate and Advate action existed before the 2011 Ven-A-Care Baxter
Settlement. All concerned were also aware that the 2011 Ven-A-Care Baxter Settlement

specified that Ven-A-Care only released claims of the United States to the extent it was capable as a *qui tam* relator under the law, that the Settlement did not mention the Sun/Hamilton action or refer to Advate or Recombinate by name, and that the Settlement was not conditioned on any party securing the dismissal of any part of the Sun/Hamilton action.

It was with knowledge of these circumstances that Baxter entered the Settlement, the United States consented to the dismissal of the Ven-A-Care action in accordance with the Settlement, and Sun/Hamilton framed their responses to Baxter's Motion for Summary Judgment setting forth its position that the 2011 Ven-A-Care Baxter Settlement encompassed the Recombinate and Advate claims.  In each of these instances, the interested parties were aware of the risks and uncertainties surrounding the Recombinate and Advate claims created by the earlier Ven-A-Care action and that the uncertainty remained unresolved.  Sun and Hamilton accepted this uncertainty when they opted to proceed as second in time relators after being informed of Ven-A-Care's earlier action. Also, Baxter accepted this uncertainty when it opted to settle the Ven-A-Care action under terms that did not include a dismissal of the later filed Sun/Hamilton case.  Obviously, such a condition would have required an entirely different settlement and one can only speculate as to its feasibility, but it would have removed the risk and uncertainty that Baxter knowingly retained when it agreed to the Settlement.[8]

Again, one can only speculate about whether such terms reducing the uncertainty about Recombinate and/or Advate, in another relator's case, could or should have been successfully negotiated as part of the 2011 Ven-A-Care Baxter Settlement.  No party or counsel should be

---

[8] A condition requiring the dismissal of the Sun/Hamilton case could only have been achieved in one of three ways: 1. A term keeping the Settlement on hold while Baxter sought a final adjudication of the First-To-File Bar issues in the Sun/Hamilton case. 2. A term conditioning the settlement on DoJ's moving to dismiss the Sun/Hamilton case, at which point (and only at which point under the FCA) Sun/Hamilton would have been entitled to a fairness hearing. See eg, *U.S. ex rel. Schweizer v. Oce, N.V.*, No. 11-7030 (D.C. Cir. April 20, 2012).  3. A term conditioning the settlement on the agreement of Sun and Hamilton.

criticized for participating in good faith in court ordered mediation and making the compromises necessary to successfully reach a reasonable settlement of an FCA *qui tam* case.  In the case of the 2011 Ven-A-Care Baxter Settlement, Baxter's risk of liability for the Recombinate and Advate claims in the Sun/Hamilton case was a question knowingly left open for the Court to decide, in the Sun/Hamilton case, if and when such a decision became necessary.

Ven-A-Care respectfully suggests that the time has come for Sun and Hamilton to demonstrate, if they can, that this Court in this *qui tam* action was invested with subject matter jurisdiction over their remaining Recombinate and Advate claims at a point in time before the 2011 Ven-A-Care Baxter Settlement.  If they fail, their case must be dismissed. If they succeed, their case should proceed.

Wherefore, Ven-A-Care respectfully requests that the Court, the Parties and the United States Department of Justice consider the foregoing with respect to the important issues presented in this action.

15

Respectfully Submitted,
Attorneys for Non-Party,
Ven-A-Care of the Florida Keys, Inc.


// James J. Breen
James J. Breen
Florida Bar No. 297178
The Breen Law Firm P.A.
5755 North Point Parkway, Suite 260
Alpharetta, GA  30022
Direct Phone: 678-735-5052
Office Phone:  770-740-0008
Primary Fax: 678-252-5545
Secondary Fax: 770-740-9109

16

## CERTIFICATE OF SERVICE

I hereby certify that true and accurate copies of the foregoing document, submitted for filing this 11th day of May, 2012 via the Court's ECF system, will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and to be served on all counsel of record via electronic service by sending a copy of LexisNexis File & serve for posting and notification to all parties.

// James J. Breen

James J. Breen
