UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456<br><br>CIVIL ACTION: 01-CV-12257-PBS |
| THIS DOCUMENT RELATES TO:<br><br>TRACK 2 SETTLEMENT | Judge Patti B. Saris |

**CLASS PLAINTIFFS' STATUS REPORT AND MOTION FOR DISTRIBUTION OF THE NET SETTLEMENT FUND TO CONSUMER CLAIMANTS AND THIRD-PARTY PAYORS IN THE TRACK TWO SETTLEMENT**

Class Plaintiffs seek to update the Court on the status of the administration of claims filed in the Track Two Settlement by consumer and Third Party Payor ("TPP") claimants. Claims administration is complete. Accordingly, Class Plaintiffs also hereby move for entry of an Order to disburse funds to all eligible consumer and TPP class members. Class Counsel has conferred with counsel for Track Two Defendants who do not oppose this motion.

**A.      Update on Processing of Claims**

1.      On December 8, 2011, the Court granted final approval to the class action settlement embodied in the parties' Settlement Agreement and Release of the Track Two Defendants. (Dkt. No. 7979). The Settlement Agreement became effective when the last potential appeal was dismissed on January 30, 2012 (Dkt. No. 8052).

2.      The Court appointed Rust Consulting, Inc. ("Rust") as the Claims Administrator with responsibilities for implementing the distribution of the settlement proceeds. Rust has been processing all claims of would-be Class members.

3.      The administration of the consumer claims in the Track Two Settlement took longer than the administration of consumer claims in the other AWP settlements approved by the

- 2 -

Court by approximately two months.  The changes to the Track Two Settlement approved by the Court resulted in a very high volume of inquiries from class members - both by phone and by letter – which required responses.  Rust attempted, along with Class Counsel's help, to assist consumers trying to cure deficiencies or otherwise provide additional documentation for their claims.  This added to the time it took to finalize the claims process.  In addition, Rust screens for potentially fraudulent claims and investigates those that look suspicious.  The Track Two settlement saw a number of high-dollar claims that looked suspicious, and it took longer than with other consumer AWP settlements to validate or reject these claims, as the case may be.

4. Rust has now completed its review, auditing and processing of all class claims and stands ready to distribute the net settlement proceeds to all consumer and Third Party Payor Class members.  The results of Rust's efforts are summarized below.  The details of Rust's administration activities and the results are also set forth in the Declaration of Daniel Coggeshall Regarding Allocation and Distribution of the Net Settlement Fund to Class 1 and Class 3 Consumers and Class 2 and Class 3 Third Party Payors in the Track Two Settlement, attached hereto as Exhibit A (the "Coggeshall Decl.").  Rust estimates that it will take approximately two weeks from the receipt of an order on distribution from the Court to mail checks to all class members.  Class Counsel have included a proposed Order for the Court's consideration, attached as Exhibit B.

5. Before the distribution can occur, the Court must approve certain claims processing decisions concerning the payment of late-filed claims and the non-payment of claims in *de minimus* amounts, as detailed below.  In essence, Class Counsel seek permission to pay 1,532  Class 1 consumers,  549 Class 3 consumers and  106 TPPs who filed claims after the applicable filing deadline but whose claim is otherwise valid.  In previous AWP settlements, the

Court approved paying late filed claims that were otherwise valid. In addition, in each Class there are a number of claimants whose award amount would fall below $1.50. The cost to print and mail a check is $1.50. Class Counsel seek permission to establish $1.50 as the minimum check amount — below which Rust would not print and mail a check. The pertinent information concerning, among other items, the number of eligible, late and ineligible claims, average award amounts and number of exclusions in each Class is set forth in the following table:

|  | **CLASS 1 CONSUMERS** | **CLASS 3 CONSUMERS** | **THIRD PARTY PAYORS** |
|---|---|---|---|
| **Claims Received** | 91,491 | 21,100 | 1,099 |
| **Deficiency Letters Sent** | 35,217 | 16,183 | 477 |
| **Late Claims** | 1,532 | 549 | 106 |
| **Valid Claims (including late claims)** | 66,120 | 17,639 | 943 |
| **Claims with Award Amount Below $1.50** | 8,793 | 61 | 2 |
| **Total Number of Valid Claimants (excluding *de minimus* awards)** | 57,327 | 17,578 | 941 |
| **Ineligible Claims** | 25,371 | 3,461 | 156 |
| **Total Recognized Claim Amount** | $66,240,490 | $5,589,087 | $656,867,049 |
| **Total Estimated Distributable Amt.** | $14,459,133.07 | $1,233,759.19 | $19,692,568.92 |
| **Average Award Amount** | $252.22 | 14,136 checks for $35.00, 3,442 checks with avrg of $214.70 | $20,927.28 |
| **Requests for Exclusion** | 416 | 245 | 18 |

**A.      Class 1 Consumer Claims Processing**

6.      Consumers in Class 1 consist of eligible Medicare Beneficiaries. The Claims Administrator has calculated the total Recognized Claim Amount for eligible consumer Class 1 claimants as follows:

a.      ***Eligible Consumer Claims***.  Rust received a total of 91,491 Class 1 claims in the Settlement, of which 66,120 were deemed eligible. Coggeshall Decl, ¶¶ 9, 18. These eligible claims have a total Recognized Claim Amount of $66,240,490. *Id.* This figure includes 1,532 claims that were received after the claim deadline but are otherwise eligible. *Id*. Class Counsel recommends that the Court approve each of the eligible consumer claims, including those that were late. A list of each eligible claimant and their claim amount has been provided to Class counsel and is available for filing (under seal) if the Court so desires.

b.      ***Ineligible or Deficient Consumer Claims.***  Rust sent more than 35,217 letters to Class 1 consumer claimants in an attempt to clarify information provided by the consumer or to request that they take action to resolve a deficient or ineligible condition in their claim. Coggeshall Decl, ¶¶ 14-17. Despite these efforts, 25,371 consumer claimants remain deficient in some way. *Id*. ¶21.

c.      ***Recognized Claim Amounts***.  Rust estimates the Net Class 1 Consumer Settlement Fund for distribution to be $14,459,133. Coggeshall Decl., ¶ 22. All eligible consumer claims have a Total Recognized Claim amount of $66,240,490. *Id.*, ¶ 18. As required by the Settlement Agreement, all eligible Class A drug purchases will be paid at 100% of the recognized claim amount. Eligible Class B drug purchases will be paid at approximately 12.3% of their recognized claim amount. Assuming Rust does not mail awards that fall below $1.50, a total of 57,327 Class 1 consumer claimants will receive payments from the Settlement. The

average award to these consumers equals $252.22 ($14,459,133.07 / 57,327 claims).  Coggeshall Decl., ¶ 24.

  d. *Class 1 Consumer Opt-Outs*.  As of June 29, 2012, Rust has received valid Requests for Exclusion from 416 Class 1 Consumers.  Coggeshall Decl., ¶ 26.  A list of each Class 1 Consumer who submitted a valid Request for Exclusion has been provided to Class counsel and is available for filing (under seal) if the Court so desires.

**B.** **Consumer Class 3 Claims Processing**

  7. The Claims Administrator has calculated the total Recognized Claim Amount for eligible consumer Class 3 claimants as follows:

  a. *Eligible Consumer Claims*.  Rust received a total of 21,100 Class 3 consumer claims in the Settlement, of which 17,639 were deemed eligible.  Coggeshall Decl, ¶¶ 30, 37.  These eligible claims have a total Recognized Claim Amount of $5,589,087.  *Id.* ¶ 37. This figure includes 549 claims that were received after the claim deadline but are otherwise eligible.  *Id.*  Class Counsel recommends that the Court approve each of the eligible consumer claims, including those that were late.  A list of each eligible claimant and their claim amount has been provided to Class counsel and is available for filing (under seal) if the Court so desires.

  b. *Ineligible or Deficient Consumer Claims.*  Rust sent more than 16,183 letters to Class 3 consumer claimants in an attempt to clarify information provided by the consumer or to request that they take action to resolve a deficient or ineligible condition in their claim.  Coggeshall Decl, ¶¶ 33-36.  Despite these efforts, 3,461 consumer claimants remain deficient in some way.  *Id.*, ¶ 39.

  c. *Recognized Claim Amounts*.  Rust estimates the Net Class 3 Consumer Settlement Fund for distribution to be $1,233,759.  Coggeshall Decl., ¶ 40.  14,136 Class 3

consumers opted for the "Easy Refund" Option and will receive a payment of $35.00 as a result. *Id.* The total payment to these Class 3 consumers is $494,760. The remaining $738,999.19 will be distributed to the 3,503 Class 3 claimants who chose the "Full Refund" and provided documentation with their claim. These eligible consumer claims have a Total Recognized Claim amount of $5,589,087. *Id.*, ¶ 37. Consequently, all eligible Class 3 consumer claimants who chose the Full Refund option will receive 100% of their recognized claim amount for purchases of Class A drugs and approximately 12.3% of their recognized claim amount for Class B drug purchases. Assuming Rust does not mail awards that fall below $1.50, a total of 3,442 Class 3 consumer claimants who chose a full refund will receive a payment from the Settlement. The average award to these consumers equals $214.70 ($738,999.19 / 3,442 claims). Coggeshall Decl., ¶ 42.

        d.      *Class 3 Consumer Opt-Outs*. As of June 29, 2012, Rust has received valid Requests for Exclusion from 245 Class 3 Consumers. A list of each Class 3 Consumer who submitted a valid Request for Exclusion has been provided to Class counsel and is available for filing (under seal) if the Court so desires. Coggeshall Decl., ¶ 44.

**C.**    **TPP Claims Processing**

       8.      The Claims Administrator has calculated the total Recognized Claim Amount for eligible TPP claimants as follows:

        a.      *Eligible TPP Claims*. The Claims Administrator received 943 eligible TPP claims with a total Recognized Claim Amount of $656,867,049. Coggeshall Decl., ¶ 58. This figure includes 106 claims that were received after the filing deadline but are otherwise eligible. *Id.*, ¶ 59. A list of each eligible TPP claimant and their claim amount is attached as Exhibit M to the Coggeshall Declaration. Class Counsel recommend that the Court approve each of the eligible TPP claims, including the late TPP claims.

b.  ***Ineligible or Deficient TPP Claims.***  Rust sent letters to TPP claimants and made phone calls in an attempt to clarify information provided by TPP claimants or to request that they take action to resolve a deficient or ineligible condition in their claim.  Coggeshall Decl., ¶¶ 50-56.  Despite these efforts, 156 TPP claims remain deficient in some way.  *Id.*, ¶ 60.

c.  ***TPP Opt-Outs***.  As of June 29, 2012, Rust has received valid Requests for Exclusion from 18 TPP Class Members.  Coggeshall Decl., ¶ 67.  A list of each TPP who submitted a valid Request for Exclusion is attached as Exhibit O to the Coggeshall Declaration.

d.  ***Allocation of the TPP Net Settlement Fund***

Rust also processed the claims of each of the Independent Settling Health Plans (ISHPs) in the same manner as those of TPPs filing a class claim and made adjustments to amounts claimed by some ISHPs as a result of receipt of the required data from ISHPs.  Coggeshall Decl., ¶ 61.  The total claimed amount for all ISHPs is $1,368,881,500.32 or approximately 67.57% of all TPP/ISHP claims.  The total claimed amount for all TPPs is $645,867,049.04, or approximately 32.43% of all TPP/ISHP claims.  *Id*. ¶ 62.

The Court will recall that ISHPs received an initial payment of $25,500,000 under the terms of the Settlement.  They were required to submit documentation of their purchases identical to that of TPPs submitting claims in the class and were subject to the same administrative process and standards as TPP class claimants.  The settlement agreement calls for a "true-up" of claims as between ISHPs and TPP class members so that each is provided the same payment per dollar of expenditure.

In addition, under the terms of the Settlement Defendants are entitled to receive a TPP Opt-Out refund  — essentially a refund due Track Two Defendants based on an estimate of an amount the 18 valid TPP Opt-Outs would have received if they filed a claim in the settlement.

Rust calculated the value of this refund to be $40,568.79.  Coggeshall Decl., ¶ 63.  Track Two Defendants have reviewed and do not oppose this calculation.

As of July 2, 2012, after netting out the TPP Opt Out Refund of $40,568, Rust estimates the Net TPP Settlement Fund to be $19,692,568.92. Coggeshall Decl., ¶ 64.  Total payments to ISHPs is calculated to be $41,038,431.34.  Netting out the $25,500,000 already received by the ISHPs, ISHPs are entitled to an additional payment of $15,538,431.34.  *Id*. These figures demonstrate that Class TPPs and ISHPs are each receiving the same pro-rata percentage from the Settlement for every dollar of expenditure on Track Two drugs. *Id.*

**D.     De Minimus Claims**

9.     A number of claims result in awards of a very small sum.  This is primarily due to the fact that Class 1 claims are based almost entirely on data received from CMS — without regard to the amount of the obligation of the Class 1 member – and that data results in many small Total Recognized Claims.  Rust estimates the cost of sending each claim check to be approximately $1.50 per check.  *See* Coggeshall Decl. ¶¶ 23, 41.  Class Counsel propose that the Court designate all claims in which a class member will receive less than $1.50 as "*de minimus*" and allow Rust not to pay those claimants.  Such a designation would mean that 8,793 consumer claimants in Classes 1 and 61 consumers in Class 3 will not receive an award check.  Using this same threshold, 2 TPP claimants would also not receive a check because their total award falls below $1.50.

10.     Class Counsel believe that the administrative cost of paying these claimants, coupled with the fact that a substantial percentage of these class members will not cash a check for such a small amount, justifies not sending checks to these claimants.

WHEREFORE, Plaintiffs respectfully request that this Court grant their Motion and order the distribution of funds to eligible consumer and TPP claimants as determined by the Claims Administrator.

DATED:  July 3, 2012						By     /s/ Steve W. Berman
                     Thomas M. Sobol (BBO#471770)
                     Edward Notargiacomo (BBO#567636)
                     Hagens Berman Sobol Shapiro LLP
                     55 Cambridge Parkway, Suite 301
                     Cambridge, MA  02142
                     Telephone: (617) 482-3700
                     Facsimile: (617) 482-3003

**LIAISON COUNSEL**

Steve W. Berman
Sean R. Matt
Hagens Berman Sobol Shapiro LLP
1918 8th Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jennifer Fountain Connolly
Hagens Berman Sobol Shapiro LLP
1629 K Street, NW
Suite 300
Washington, D.C. 20006
Telephone:  (202) 355-6435
Facsimile:  (202) 355-6455

Jeffrey Kodroff
John Macoretta
Spector, Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Kenneth A. Wexler
Wexler Wallace LLP
55 W. Monroe, Suite 3300
Chicago, IL  60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Marc H. Edelson
Hoffman & Edelson LLC
45 West Court Street
Doylestown, PA  18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

**CLASS COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing **PLAINTIFFS' STATUS REPORT AND MOTION FOR DISTRIBUTION OF THE NET SETTLEMENT FUND TO CONSUMER CLAIMANTS AND THIRD-PARTY PAYORS IN THE T2 DEFS. SETTLEMENT** be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on July 3, 2012, a copy to LexisNexis File and Serve for Posting and notification to all parties

By  /**s**/ **Steve W. Berman**
Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 8th Avenue, Suite 3300
Seattle, WA  98101
(206) 623-7292