# Exhibit A

HIGHLY CONFIDENTIAL DEPOSITION OF LINNETTE SUN
CONDUCTED ON TUESDAY, JANUARY 19, 2010

1 (Pages 1 to 4)

**1**

1   HIGHLY CONFIDENTIAL
2   UNITED STATES DISTRICT COURT
3   DISTRICT OF MASSACHUSETTS
4   In Re: Pharmaceutical Industry ) MDL No. 1456
5   Average Wholesale Price : Master File No.
6   Litigation          ) 1:01-CV-12257-PBS
7                       ) Job Category Case
8                       ) No. 1:08-CV-11200
9   * * * * * * * * * * * :
10  UNITED STATES ex rel. LINNETTE :
11  SUN and GREG HAMILTON         :
12       Relators          :
13  v.                     :
14  BAXTER HEMOGLOBIN THERAPEUTICS :
15  and BAXTER INTERNATIONAL, INC. :
16       Respondents       :
17       -----------
18       Deposition of LINNETTE SUN
19       Philadelphia, Pennsylvania
20       Tuesday, January 19, 2010
21            9:24 a.m.
22

**3**

1          APPEARANCES
2   ON BEHALF OF THE RELATORS:
3      LAUREN JOHN UDDEN, ESQUIRE
4      LAW OFFICE OF LAUREN J. UDDEN
5      15 West Carrillo Street
6      Suite 101 B
7      Santa Barbara, California 93101
8      (805) 879-7544
9
10  ON BEHALF OF THE RESPONDENTS BAXTER:
11     J. ANDREW JACKSON, ESQUIRE
12     RUCHI JAIN, ESQUIRE
13     DICKSTEIN SHAPIRO LLP
14     1825 Eye Street, Northwest
15     Washington, D.C. 20006-5403
16     (202) 420-2200
17
18  ALSO PRESENT: Michael J. Bolton, Esquire, Baxter
19
20
21
22

**2**

1   Job No.: 54-171709
2   Pages: 1 - 163
3
4      Deposition of Linnette Sun, held at the law
5   offices of:
6
7      MORGAN LEWIS & BOCKIUS LLP
8      1701 Market Street
9      Philadelphia, Pennsylvania 19103
10     (215) 963-5000
11
12
13     Pursuant to Notice, before Dawn M. Hart,
14  RPR/RMR and Notary Public in and for the State of
15  Maryland.
16
17
18
19
20
21
22

**4**

1          CONTENTS
2   EXAMINATION OF LINNETTE SUN          PAGE
3      By Mr. Jackson              6
4          EXHIBITS
5      (Exhibits were attached.)
6   SUN DEPOSITION EXHIBITS          PAGE
7   Exhibit 1  Deposition Notice          11
8   Exhibit 2  Objections/Responses to Baxter's
9      First Set of Document Requests   26
10  Exhibit 3  Relators' Memorandum in Opposition
11     to Baxter Motion to Dismiss   28
12  Exhibit 4  Sun Declaration          33
13  Exhibit 5  Baxter Products W/AWP History
14     4/11/05              34
15  Exhibit 6  Plasma Fractions Market US 2001   38
16  Exhibit 7  Sun Performance Review          44
17  Exhibit 8  Sun Termination Letter 7/22/03   50
18  Exhibit 9  Sun Offer Letter 5/17/02   51
19  Exhibit 10  Complaint filed 7/2005          99
20  Exhibit 11  Hamilton Declaration          128
21
22

HIGHLY CONFIDENTIAL DEPOSITION OF LINNETTE SUN
CONDUCTED ON TUESDAY, JANUARY 19, 2010

2 (Pages 5 to 8)

---

**5**

1    EXHIBITS CONTINUED
2    SUN DEPOSITION EXHIBITS                    PAGE
3    Exhibit 12   Letter 4/22/05          142
4    Exhibit 13   AWP Summary            143
5    Exhibit 14   Draft Complaint        146
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

---

**6**

1              PROCEEDINGS
2              LINNETTE SUN
3    having been duly sworn by agreement of counsel,
4    testified as follows:
5    EXAMINATION BY COUNSEL FOR THE RESPONDENTS BAXTER
6    BY MR. JACKSON:
7        Q   Please state your name for the record.
8        A   Linnette Sun.
9        Q   Ms. Sun, my name is Andy Jackson. To my
10   right is Ruchi Jain. To Ruchi's right is Michael
11   Bolton. We represent Baxter in the matter of In Re
12   Pharmaceutical Industry Average Wholesale Price, the
13   matter that you filed that was then transferred to the
14   MDL in Boston. Do you understand that?
15       A   Uh-huh.
16       Q   Have you ever been deposed before?
17       A   No.
18       Q   During the course of this deposition I'll be
19   asking you a series of questions. Your counsel to
20   your left might object. Unless he instructs you not
21   to answer a question, you go ahead and answer my
22   question. Do you understand that?

---

**7**

1        A   Yes.
2        Q   And if you ever have a situation where you
3    don't understand a question that I ask, please let me
4    know that because I will presume you've understood it
5    and we'll take your answer accordingly. Do you
6    understand that?
7        A   Yes.
8        Q   Are you on any medication or other drugs
9    that might impair your ability to understand what I'm
10   saying and give an accurate, complete, and honest
11   answer?
12       A   No, I don't have -- I'm not on any
13   medications.
14       Q   Okay.
15       A   I should be able to understand.
16       Q   And I do require verbal responses, so
17   shaking your head up or down or to the side won't help
18   me, so I might ask you to either speak up or answer
19   more directly. Do you understand that?
20       A   Yes.
21           MR. UDDEN:  And that's because the Reporter
22   can only take down basically verbal responses, so it's

---

**8**

1    important that we get a good record.
2        Q   The purpose of this deposition is limited to
3    jurisdictional issues in conjunction with the Motion
4    to Dismiss filed by Baxter. Did you know that?
5        A   Yes.
6        Q   So we are limiting our questions today to
7    those jurisdictional issues, but we reserve the right
8    should the Complaint not be dismissed to take the
9    deposition on substantive issues.
10           MR. UDDEN:  (Nods head.)
11       Q   Also we'd like to designate this deposition
12   as highly confidential under the Protective Order
13   issued in the MDL 1456 that is subject to all matters
14   being litigated before Judge Saris. Do you understand
15   that?
16           MR. UDDEN:  She's probably not familiar with
17   the Protective Order. I can talk to her about it on a
18   break or something.
19           MR. JACKSON:  That's fine. I just want to
20   make sure for the record, it's important that we
21   designate this early.
22

HIGHLY CONFIDENTIAL DEPOSITION OF LINNETTE SUN
CONDUCTED ON TUESDAY, JANUARY 19, 2010

3 (Pages 9 to 12)

9

1    BY MR. JACKSON:
2        Q   Do you have any questions of me?
3        A   I don't think so.
4        Q   Did you review any documents in preparation
5    for your deposition today?
6        A   Yes.
7        Q   What did you review?
8        A   What's filed with the Court, I think.  I
9    brought them with me.
10       Q   What document are you referring to?
11       A   (Handing.)
12           MR. UDDEN:  Yeah, you can just give him --
13           THE WITNESS:  The whole thing?
14           MR. UDDEN:  Part --
15       A   Yes, part of the deposition and this one.
16           (Handing.)
17       Q   So you're referring to the Memorandum in
18   Opposition to Baxter International, Inc.'s Motion to
19   Dismiss Relators' Complaint?
20       A   Uh-huh.
21       Q   Together with the Declaration that you
22   signed; is that correct?

10

1        A   Uh-huh.
2            MR. UDDEN:  And you have to say yes.
3        A   Okay.  Yes.
4        Q   Did you also review the Declaration of
5    Mr. Hamilton that was attached to this same document?
6        A   Today you mean?
7        Q   Yes.
8        A   Not today.
9        Q   In preparation for this deposition, did you
10   review Mr. Hamilton's Declaration?
11       A   I read that before, but not for -- to
12   prepare for this, no.
13       Q   But you have read it before?
14       A   Yeah.
15       Q   Did you review any other documents other
16   than that pleading with its Exhibits in preparation
17   for this deposition?
18       A   You have the documents.
19           MR. UDDEN:  He's asking you if there are any
20   other papers or documents of any kind that you
21   reviewed in preparation for the deposition.
22           THE WITNESS:  I don't think so, except, you

11

1    know, a few additional documents I sent to you.
2        Q   Let me show you what's been marked as
3    Deposition Exhibit 1.
4            (Exhibit 1 was marked for identification and
5    was attached to the transcript.)
6    BY MR. JACKSON:
7        Q   Deposition Exhibit 1 is the Deposition
8    Notice served on you for today's deposition.  Have you
9    seen this document before?
10       A   Yes.
11       Q   Did you review it in advance of this
12   deposition?
13           MR. UDDEN:  In advance I guess means any
14   time before today?
15           MR. JACKSON:  Correct.
16       A   Review what kinds of things?
17       Q   This document.  Have you seen this before?
18           MR. UDDEN:  Review sometimes is a term
19   lawyers use.  Basically did you read --
20       A   What documents did I read?
21       Q   The document in front of you that is
22   Deposition Exhibit 1.

12

1        A   This one, (indicating).  Yes.
2        Q   You're appearing today in response to that
3    Deposition Exhibit 1, the Deposition Notice, correct?
4        A   Yes.
5        Q   Ms. Sun, did you talk with Mr. Hamilton in
6    advance, in preparation for today's deposition?
7        A   Yes, we had a conference call.
8            MR. UDDEN:  Yeah --
9        A   Not directly.
10           MR. UDDEN:  Yeah, I would object to any --
11   it -- the communication Ms. Sun is referring to is a
12   communication that included her lawyers, so --
13           MR. JACKSON:  Okay.
14           MR. UDDEN:  I think you're asking about any
15   separate conversation that you may have had with Mr.
16   Hamilton.
17       A   No, never.
18           MR. JACKSON:  Correct.
19       Q   So the only conversation you had with Mr.
20   Hamilton in preparation for this deposition included
21   your lawyer?
22       A   Yeah.

121

1    Q   So it's just First Data Bank's actions that
2  are part of your -- that's what you're complaining --
3    A   Not just.  You know, to provide spreads,
4  kind of economic incentives to home care providers to
5  increase market share is wrong to begin with.
6    Q   So that's one argument, right?
7    A   Yes.
8    Q   You've said that creating spreads is wrong;
9  that's your position?
10   A   Right.
11   Q   But you knew about those lawsuits when you
12  were at Bayer, when you were at --
13   A   They are different.  They're very different.
14   Q   Why?
15   A   I was talking to very different market
16  situations.
17       THE WITNESS:  I don't know whether I should
18  elaborate on that, but --
19   Q   Yes, I'm asking you why.
20   A   Okay.  For example, J&J, they have retail
21  markets so there's no middleman.  Home care is really
22  a middleman.  You know, usually if you have

122

1  cholesterol, doctor give you a script, you go to
2  retail pharmacy, you get your script, and retail
3  pharmacy get reimbursed from the insurance company,
4  okay?  They do have a little margin that is service
5  administration fee.
6       But it's not, not the same thing for
7  hemophilia patients.  They go to doctor, doctor give
8  them a script, but home care go and buy that script,
9  okay, and they get reimbursed.  So they buy at lower
10  price and get reimbursed at higher price.  So they get
11  much, much bigger kind of margin than the retail
12  pharmacists, okay, because they also relate to those
13  doctors they can, you know, make profits on those
14  patients and the reimbursement, but not the retail
15  market.  You go there, you know, the doctors -- the
16  providers actually don't get involved in reimbursement
17  so there's no incentive for doctor to write you a
18  script.
19   Q   Were there any AWP cases that you're aware
20  of while at J&J or at Amgen where doctors actually
21  were paid a reimbursement for a particular drug?
22   A   No.  It's a very unique situation for

123

1  Baxter.
2    Q   How about, you mentioned -- in your
3  Complaint you referenced in fact the litigation
4  against TAP.  Do you remember that?
5    A   Yes.
6    Q   Okay.  And you said in your Complaint that
7  your understanding of the AWP was informed by what
8  happened in the TAP case.
9    A   The TAP case has some kind of similarity but
10  not to that extent.
11   Q   Why?  Why does it have a similarity?
12   A   Because some doctors' office, very few of
13  them probably do, you know, buy the drug and get
14  reimbursement like Baxter situation.  But Baxter
15  almost hundred percent market is like that.  You know,
16  TAP, I think for some drugs, it may be administered in
17  the hospital and doctors can get the drug and give to
18  the patient and get reimbursed for.
19   Q   Wasn't TAP a chemotherapy that was
20  reimbursed in the doctor's office?
21   A   Not all the products.  If it's oral it's
22  not, and if it's retail drug it's not.

124

1    Q   How about if it's an injection?
2    A   Probably if it's an injection, but --
3    Q   So that would be the same model, right?
4    A   No.
5    Q   Why?
6    A   It's hospital.  It's home care.  It's
7  different.  Home care is almost served as a pharmacy,
8  not a hospital.
9    Q   But again, the doctor's office, again, you
10  referenced the Lupon (phonetic) litigation in your
11  Complaint, right?
12   A   I don't know.  I don't remember the
13  Complaint.  I don't really know.  I can't remember
14  now.  But when you talk about it may have some
15  similarity but I don't think it's exact.  Home care
16  situation is very unique to this market.  Hemophilia
17  patients.
18   Q   Let's take a look at Deposition Exhibit 10.
19       In Paragraph 2 --
20   A   Paragraph 2.
21   Q   -- it says, Baxter controlled and published
22  AWP by misreporting the WAC.  Can you explain to me

HIGHLY CONFIDENTIAL DEPOSITION OF LINNETTE SUN
CONDUCTED ON TUESDAY, JANUARY 19, 2010

40 (Pages 157 to 160)

157

1  possession, but Simon-Kucher price information should
2  be helpful to you if you can get a copy from Baxter.
3      Q   Okay.
4          MR. JACKSON:  Let's go off the record for a
5  second.
6          (Discussion off the record.)
7          MR. JACKSON:  Ms. Sun, you've indicated that
8  there may have been documents that are in your
9  possession or your counsel's possession that we've not
10 yet received.  If in fact we need to get additional
11 documents, we might have to ask additional questions
12 that relate to jurisdiction.  So we are leaving this
13 deposition open on that basis, reserving our right, to
14 the extent you have not produced jurisdictional
15 documents, that we can ask you questions about those
16 documents.
17         Subject to that reservation of rights, I
18 have no further questions at this time.
19         MR. UDDEN:  I have no questions.
20         Go off the record for a moment.
21         (Discussion off the record.)
22         MR. JACKSON:  We should go on the record if

158

1  you want to correct something.
2          THE WITNESS:  I just want to give you
3  information.  This probably is not mine, it's Greg
4  (indicating).
5          MR. JACKSON:  Let's go ahead get back on the
6  record.
7          Ms. Sun, at the end of our discussion you
8  indicated, or you thought you might indicate you had
9  some more -- additional information and you're
10 pointing to Exhibit 6.  What is it you wanted to tell
11 me?
12         THE WITNESS:  What I want to tell you, after
13 I kind of review briefly on this, this probably is a
14 copy Greg Hamilton can purchase from like a more
15 pharmacy program.  But it was specific to Baxter, the
16 one specific to Baxter, the one I have I think have
17 more Baxter-related, more Baxter-needed information.
18         MR. JACKSON:  And again, you're going to get
19 that information, and we'll make a formal request.
20 Send the letter to you, or Mr. Kleiman?
21         MR. UDDEN:  Could you send it to both of us?
22         MR. JACKSON:  Sure, of course.

159

1          MR. UDDEN:  Great.
2          MR. JACKSON:  Anything else you need to
3  clear up or clarify about any of these Exhibits
4  besides Exhibit 6?
5          THE WITNESS:  That's the only thing I want
6  to clarify right now.
7          MR. JACKSON:  Okay.  Subject to the same
8  reservation, we can suspend this deposition.
9          (Signature having not been waived, the
10 examination of Linnett Sun was concluded at
11 1:31 p.m.)
12
13
14
15
16
17
18
19
20
21
22

160

1          ACKNOWLEDGMENT OF DEPONENT
2      I, Linnette Sun, do hereby acknowledge that I
3  have read and examined the foregoing testimony, and
4  the same is a true, correct and complete transcription
5  of the testimony given by me, and any corrections
6  appear on the attached Errata sheet signed by me.
7
8
9
10  _____        _____
    (DATE)                   (SIGNATURE)
11
12
13
14
15
16
17
18
19
20
21
22

HIGHLY CONFIDENTIAL DEPOSITION OF LINNETTE SUN
CONDUCTED ON TUESDAY, JANUARY 19, 2010

41 (Pages 161 to 163)

161

1  CERTIFICATE OF SHORTHAND REPORTER/NOTARY PUBLIC
2    I, Dawn M. Hart, Registered Professional
3  Reporter, the officer before whom the foregoing
4  proceedings were taken, do hereby certify that the
5  foregoing transcript is a true and correct record of
6  the proceedings; that said proceedings were taken by
7  me stenographically and thereafter reduced to
8  typewriting under my supervision; and that I am
9  neither counsel for, related to, nor employed by any
10 of the parties to this case and have no interest,
11 financial or otherwise, in its outcome.
12   IN WITNESS WHEREOF, I have hereunto set my hand
13 and affixed my notarial seal this 19th day of January
14 2010.
15 My Commission Expires:
16 January 1, 2013
17
18
19 _____
20 NOTARY PUBLIC IN AND FOR THE
21 STATE OF MARYLAND
22

163

1        E R R A T A   S H E E T
2   IN RE:  Pharmaceutical Industry AWP Litigation
3  PAGE   LINE   CORRECTION AND REASON
4-22 (blank errata lines)
22  (Date)       (Signature)

162

1        E R R A T A   S H E E T
2   IN RE:  Pharmaceutical Industry AWP Litigation
3  PAGE   LINE   CORRECTION AND REASON
4-22 (blank errata lines)
22  (Date)       (Signature)

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY - 800-292-4789
HIGHLY CONFIDENTIAL