# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL NO. 1456 |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION: 01-CV-12257-PBS |
| ALL ACTIONS | Judge Patti B. Saris |

**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF LEAD CLASS COUNSEL'S OPPOSITION TO THE WILLIAMS MOTION TO COMPEL DISCLOSURE OF FEE SETTLEMENT AGREEMENT WITH KLINE & SPECTER**

-1-

I, Steve W. Berman, duly declare as follows:

1.  I am a partner of Hagens Berman Sobol Shapiro LLP, resident in its Seattle, Washington, office, and I am co-lead counsel for the Plaintiffs in the above-captioned matter. I submit this declaration in support of Lead Class Counsel's Opposition to the Williams Motion to Compel Fee Settlement Agreement With Kline & Specter.

2.  Attached as Exhibit A is a true and correct copy of excerpted pages from the November 11, 2011 Hearing Transcript.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of February, 2013.

                                         /s/ Steve W. Berman
                                         STEVE W. BERMAN

## CERTIFICATE OF SERVICE

      I hereby certify that I, Steve W. Berman, an attorney, caused a true and correct copy of the foregoing, **LEAD CLASS COUNSEL'S OPPOSITION TO THE WILLIAMS MOTION TO COMPEL FEE SETTLEMENT AGREEMENT WITH KLINE & SPECTER**, to be delivered to all counsel of record by electronic service pursuant to Paragraph 11 of the Case Management Order No. 2, by sending on February 1, 2013, a copy to LEXISNexis File & Serve for posting and notification to all parties.

                                       **/s/ Steve W. Berman**
                                       Steve W. Berman

# Exhibit A

```
                                                              Page 1
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
 2
 3    IN RE:                              )
                                          )  CA No. 01-12257-PBS
 4    PHARMACEUTICAL INDUSTRY AVERAGE     )
      WHOLESALE PRICE LITIGATION          )  Pages 1 - 35
 5                                        )
 6
 7
 8
                      TRACK TWO FAIRNESS HEARING
 9
                BEFORE THE HONORABLE PATTI B. SARIS
10                 UNITED STATES DISTRICT JUDGE
11
12
13
14
                                  United States District Court
15                                1 Courthouse Way, Courtroom 19
                                  Boston, Massachusetts  02210
16                                November 22, 2011, 2:57 p.m.
17
18
19
20
21
22                         LEE A. MARZILLI
                        OFFICIAL COURT REPORTER
23                    United States District Court
                      1 Courthouse Way, Room 3205
24                         Boston, MA  02210
                             (617)345-6787
25
```

Page 26

1   MS. BALDWIN: The majority of the claims have been
2   dismissed.
3       THE COURT: In light of this case?
4       MS. BALDWIN: In light of this case. Your Honor
5   entered orders -- I believe I can give you approximate dates.
6   Well, around November of 2007 and March of 2009, the majority
7   of the claims in those cases were dismissed because of orders
8   entered here.
9       MR. MATT: Those may have been as part of settlements.
10  I'm just not familiar with it, your Honor.
11      MS. BALDWIN: And, your Honor, as part of the
12  settle- --
13      THE COURT: Did you get money from those?
14      MS. BALDWIN: No, your Honor. We didn't seek any fees
15  in any of those cases, with the understanding that we had with
16  lead counsel that we would be compensated here.
17      THE COURT: Who's lead counsel?
18      MS. BALDWIN: I believe the majority of our dealings
19  were with Mr. Edelson, but it was members of the Fee Committee.
20      THE COURT: Well, this may turn seemingly unfortunate
21  if in fact it turns into depositions and fact disputes over
22  whether or not there was a binding oral agreement.
23      MS. BALDWIN: There was an e-mail exchange between
24  Shanin Specter of my office and Steve Berman and Tom Sobol
25  dated October 15 of 2005. That's attached as Exhibit A to

Page 27

1   Mr. Williams' memorandum and --
2       THE COURT: What did Mr. Berman say or Mr. Sobol?
3       MR. MATT: Those e-mails, your Honor -- I've reviewed
4   them briefly -- they are negotiations.
5       THE COURT: Well, I don't know.
6       MR. MATT: And there is no agreement.
7       THE COURT: I say, at the end of this day, won't we be
8   sorry campers if it takes me another two years to figure out
9   the attorneys' fees issue by sitting here and either doing a
10  master's hearing or a magistrate judge's hearing or me myself
11  holding a little trial? I think it's worth trying to figure
12  out. Why do you think you get lodestar? I don't even give
13  them lodestar.
14      MS. BALDWIN: Well, your Honor, the point is, we want
15  some allocation for the state time, and I'm just giving you
16  what our total lodestars are; but right now it appears as
17  though lead counsel wants to subtract out all of our work for
18  the state time, so I'm telling you what our lodestar and
19  expenses were in those cases.
20      THE COURT: And just on these drugs, or is it on the
21  whole litigation?
22      MS. BALDWIN: It would be in each of those state court
23  actions.
24      THE COURT: I wouldn't do that either because it's
25  only the drugs that we're talking about here.

Page 28

1   MS. BALDWIN: Well, the drugs that we were -- we
2   adopted a strategy with the lead counsel to conduct discovery
3   in those cases for the benefit of the class here, and lead
4   counsel has put in pleadings with this court --
5       THE COURT: But I wouldn't pay you a penny, let me
6   just say this, out of this class money unless it involves the
7   drugs involved in this case and there was some value added.
8       MS. BALDWIN: I understand, your Honor, and --
9       THE COURT: So it can't be some drug that's not part
10  of my class approval.
11      MS. BALDWIN: I understand, your Honor, and lead
12  counsel has submitted in filings with this Court that our state
13  court work was of value to members of the class, it was
14  authorized by them, and that it actually did benefit the
15  members of the class.
16      THE COURT: Did it benefit the members of the other
17  classes you're pursuing as well?
18      MS. BALDWIN: No, your Honor. Those claims have
19  virtually all been dismissed for the sake of the class members
20  here.
21      THE COURT: Well, this is a mess, as you can imagine,
22  and it will end up holding up these attorneys' fees; but I am
23  not holding up this class settlement, and I will be imposing an
24  appeal bond. This case has taken way too long, way too long,
25  and these people need this money. As you pointed out, some

Page 29

1   class reps have died already; and some people are not very
2   sick, but there are a lot of people who are very sick, and I
3   want the money out. And I'm trying to figure out what to do in
4   terms of alerting the -- have you had success, any of the
5   parties here, in alerting the First Circuit to how important it
6   is not to take a year? Is there a way of expediting the
7   appellate process through a motion?
8       MR. MATT: My recollection is, we did try that in GSK,
9   and it was denied.
10      THE COURT: A motion to expedite?
11      MR. MATT: Yes.
12      THE COURT: I think you have a lot of judges on the
13  First Circuit who, unfortunately for them, are now very
14  familiar with this litigation.
15      MR. MATT: We can try again.
16      THE COURT: It may be worth the effort if everybody
17  here signed onto it. That's not the attorneys' fees piece. So
18  let me just ask you this. I've got these motions. I've heard
19  enough to know that it's going to take a while. Does it make
20  some sense to do depositions? Do you want me to refer it to a
21  magistrate judge for fact finding?
22      MR. MATT: Let's keep it here for now, your Honor. We
23  haven't started writing our opposition brief yet.
24      THE COURT: It's in everyone's interest to move this
25  along quickly. And I don't know if you know, but, as you know,

Page 30
1   I now have a job in Washington as well.  I'm now carrying two
2   jobs, and it's just not going to be quick.  I don't have time
3   to even slot you in.
4        MR. MATT:  Understood, your Honor.  Another thing we
5   can do is, we can set aside the amount that's in dispute and
6   perhaps do another attorneys' fee distribution.  So there's
7   ways to --
8        THE COURT:  If you do my percentages and this number,
9   how much money are you entitled to?
10       MR. MATT:  For Track Two settlement?
11       THE COURT:  Yes.
12       MR. MATT:  I can tell you exactly actually.  If you
13  sign onto the order, there will be $37 million for Track Two.
14       THE COURT:  Well, so why don't we just, you get paid,
15  I don't know, assuming -- we still have the appeal issue.  Once
16  the appeal is finalized, you'd get all but whatever they're
17  asking for in attorneys' fees and expenses, and I hold that in
18  escrow in the court, because you're getting a lot of money.
19       MR. EDELSON:  Your Honor, as Mr. Matt pointed out, the
20  majority of money they're seeking is for an Arizona state
21  Lupron case, which has nothing to do with this at all.
22       MR. MATT:  Lupron was never at issue in this case.
23       THE COURT:  Right, so that would go away.
24       So are you pressing Lupron money?
25       MR. EDELSON:  Yes.

Page 31
1        MS. BALDWIN:  Well, your Honor, if you're going to say
2   that's going away, that's fine, but what's really important to
3   us would be the coordinated AWP actions, which would be the
4   ones filed -- in Arizona there was an AWP action, and in New
5   Jersey there was an AWP action, and we have a plethora of
6   e-mails between the signatories and lead counsel on the
7   strategy.
8        THE COURT:  That may be, but on this class that I
9   fought so hard to get just right, I am not going to be
10  providing attorneys' fees for drugs that were not involved in
11  this litigation.
12       MS. BALDWIN:  Understood, your Honor.
13       THE COURT:  If there's a way of allocating drugs
14  involved in this litigation, and if there was some sort of oral
15  understanding, or misunderstanding, whichever way it goes, and
16  you dismiss, which is they're relying to their detriment -- I
17  know these firms.  I know your firms.  You don't just dismiss
18  without some quid pro quo.  You just don't.  They must have
19  understood something was about to happen.  And so if you carve
20  off Lupron, if you carve off other drugs that aren't involved
21  with this, and any money, you know, for drugs that are still
22  poking along in New Jersey, there may be a basis for a
23  settlement.  Otherwise, I'll take your -- why don't you -- it's
24  3:30.  Do you want this courtroom?  Sit and schmooz and try and
25  figure it out.

Page 32
1        MS. BALDWIN:  Your Honor, I think that they should be
2   entitled to the right to respond, and I think that perhaps the
3   attorneys talking might be the first step.
4        THE COURT:  Well, both, but I'm simply saying, you are
5   both going to spend a long time waiting for this.  But I am
6   telling you, at least unless I see it differently -- I haven't
7   read your motion yet -- it's only going to be for drugs
8   involved in this litigation.
9        MS. BALDWIN:  I understand, your Honor, and many of
10  these drugs were in this litigation, and lead counsel
11  understood that our work was to benefit the class members of
12  this litigation.
13       MR. MATT:  We dispute that, your Honor, but we'll
14  brief it.
15       THE COURT:  Yes, you will, and then it's going to take
16  a lifetime.  But, then again, you may be waiting for the appeal
17  anyway, so, so be it.
18       MR. MATT:  We've heard you loud and clear.  Thank you.
19       THE COURT:  Okay.  Did you want to say something?
20  You're sitting there poking up every once in a while.
21       MS. BALDWIN:  Your Honor, there was a joinder to our
22  motion filed by Mr. Levy.
23       MR. LEVY:  I just wanted to get that on the record,
24  your Honor, because my name wasn't mentioned.  My name is Adam
25  Levy.  I had filed a --

Page 33
1        THE COURT:  Where are you from?
2        MR. LEVY:  Where am I from?  I'm from outside of
3   Philadelphia, your Honor.
4        THE COURT:  I recognize that accent.  Okay.
5        MR. LEVY:  I've actually been here, and one of the
6   witnesses that I helped prepare testified here in the BMS
7   trial.  But that was a long time ago, and yet I'm back, Adam
8   Levy, and I joined in the motion for the fees and expenses from
9   the state court cases.  So I just wanted you --
10       THE COURT:  Was that in addition to the $2 million she
11  mentioned, or the $2 million is an aggregate --
12       MR. LEVY:  I don't know if that was --
13       MS. BALDWIN:  His numbers were not included because he
14  wasn't a signatory to our motion, so his would be in addition
15  to our numbers.
16       THE COURT:  And how much are you talking about?
17       MR. LEVY:  About $400,000 of time.  That's lodestar,
18  your Honor.
19       THE COURT:  And did you rely on any promises?
20       MR. LEVY:  I was actually named in the agreement
21  that -- between the e-mails that went back and forth between
22  Mr. Specter and Mr. Berman, my name is actually in the
23  agreement along with the other gentlemen whose firms are --
24       THE COURT:  So answer is "yes," you believe that you
25  were an intended beneficiary?