1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS
2

3        IN RE:                           )
                                          )  CA No. 01-12257-PBS
4        PHARMACEUTICAL INDUSTRY AVERAGE  )  CA No. 08-11200-PBS
         WHOLESALE PRICE LITIGATION       )  CA No. 10-11186-PBS
5                                         )  Pages 1 - 20

6

7

8                          **EVIDENTIARY HEARING**

9
                    BEFORE THE HONORABLE PATTI B. SARIS
10        CHIEF JUDGE OF THE UNITED STATES DISTRICT JUDGE

11

12

13

14
                                       United States District Court
15                                     1 Courthouse Way, Courtroom 19
                                       Boston, Massachusetts  02210
16                                     March 18, 2013, 10:10 a.m.

17

18

19

20

21

22                         LEE A. MARZILLI
                        OFFICIAL COURT REPORTER
23                    United States District Court
                     1 Courthouse Way, Room 7200
24                        Boston, MA  02210
                          (617)345-6787
25

```
 1   A P P E A R A N C E S (In Court):

 2       PETER E. GELHAAR, ESQ., Donnelly, Conroy & Gelhaar, LLP,
     One Beacon Street, 33rd Floor, Boston, Massachusetts, 02108,
 3   for Baxter International, Inc.

 4
     A P P E A R A N C E S (By Telephone):
 5
         DAVID J. CHIZEWER, ESQ., Goldberg Kohn, Ltd.,
 6   55 East Monroe Street, Suite 3300, Chicago, Illinois, 60603,
     for Sun and Hamilton.
 7
         FREDERICK M. MORGAN, JR., ESQ., Morgan Verkamp, LLC,
 8   700 Walnut Street, Suite 400, Cincinnati, Ohio, 45202, for
     Sun and Hamilton.
 9
         JAMES J. BREEN, ESQ., The Breen Law Firm,
10   3562 Old Milton Parkway, Alpharetta, Georgia, 30005,
     for Ven-A-Care of the Florida Keys.
11
         C. JARRETT ANDERSON, ESQ., Anderson, LLC,
12   1409 Wathen Avenue, Austin, Texas, 78703, for Ven-A-Care
     of the Florida Keys.
13
         J. ANDREW JACKSON, ESQ. and MERLE M. DeLANCY, JR., ESQ.,
14   Dickstein Shapiro, LLP, 1825 Eye Street, N.W., Washington,
     D.C., 20006-5403, for Baxter International, Inc.
15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2          THE CLERK:  Could counsel please identify themselves.

3  The Court calls Civil Action 01-12257, Citizens v. Abbott.

4          MR. GELHAAR:  Pete Gelhaar for Baxter.

5          THE COURT:  All right, who else is on the phone,

6  please?

7          MR. BREEN:  This is Jim Breen for Ven-A-Care of the

8  Florida Keys, and on a separate line is my co-counsel, Jarrett

9  Anderson.

10          MR. CHIZEWER:  Your Honor, this is David Chizewer on

11  behalf of the Sun/Hamilton relators, and also on the line for

12  the Sun/Hamilton relators is Rick Morgan.

13          THE COURT:  All right, thank you.

14          MR. JACKSON:  Good morning, your Honor.  It's Andy

15  Jackson and Merle DeLancey on behalf of Baxter.

16          THE COURT:  Anyone else?  We have a pretty empty

17  courtroom here other than Mr. Gelhaar sitting front and center.

18  So I'm used to seeing the phalanxes come to me with these drug

19  cases.

20          I think you are either the last or the second-to-last

21  of my AWP cases, and I am quite eager to finish it after more

22  than a decade.  We are up at, I think, twelve years.  So I was

23  disappointed when I saw the motion to continue and was inclined

24  to deny it, but then there was a second motion that had to do

25  with the medical situation of Mr. Hamilton, and, of course, I

1   don't want someone to have to come here if he's medically

2   unable.

3           So let me understand what was going to be at this

4   hearing.  I'm willing to do a paper record if there are no

5   credibility disputes or if there are no fact disputes, but I

6   don't want to go through reams and reams of papers only to then

7   decide I need an evidentiary hearing.  So can I start with the

8   relators.  Would it be correct to say -- this is the

9   first-to-file issue -- that you bear the burden of proof on it?

10          MR. BREEN:  Your Honor, this is Breen.  I'm having a

11  difficult time hearing you at the end there.

12          THE COURT:  I'm sorry.  Let me speak -- I don't want

13  to blast people's ears out is part of my problem.  Let me keep

14  speaking until it's uncomfortable for.

15          You.  Would it be fair to say that the relator, here

16  Sun/Hamilton, bears the burden of proving the first-to-file

17  issue, which is a matter of subject matter jurisdiction?

18          MR. BREEN:  This is Breen.  Absolutely, your Honor,

19  from Ven-A-Care's perspective.

20          THE COURT:  Sun/Hamilton agrees, right?

21          MR. CHIZEWER:  Your Honor, certainly the general rule

22  is that in a first-to-file issue, the party asserting that

23  they're first to file has the burden of proof.

24          THE COURT:  Okay.  Now, what do I do if there's a

25  disputed issue of fact on a paper record?  Do I have to hold

1   the evidentiary hearing after this all --

2          MR. CHIZEWER:  I think what the parties, your Honor,

3   did by submitting the joint motion was waive the opportunity to

4   present an evidentiary hearing and have you decide that the

5   issues on the first-to-file issue could be decided on the

6   papers.

7          THE COURT:  Well, are there --

8          MR. CHIZEWER:  If after reviewing the papers that, you

9   know, a decision couldn't be reached, certainly we would be

10  amenable to doing an evidentiary hearing; and if your Honor

11  prefers an evidentiary hearing instead of having the papers,

12  the Sun/Hamilton relators are happy to proceed that way.

13         THE COURT:  But help me on it because let me just say,

14  it's easy for you all to say, but then I lose yet another law

15  clerk who knows anything about it, and we're on year 14 of law

16  clerks.  At some point, that's why we set it for now, so it

17  would be finished within the clerkship year.  That sounds

18  probably trite to all of you, but it's a big deal.  This is a

19  complicated, complicated issue.  So I was inclined -- let me

20  start off with Sun/Hamilton.  What do you think the evidence is

21  going to show by a preponderance of the evidence?

22         MR. CHIZEWER:  I'm sorry, Judge, this is David

23  Chizewer, and I was having a little bit trouble hearing.  Did

24  you say, what do we think the evidence is going to show?

25         THE COURT:  What are you going to prove by a

1    preponderance of the evidence?  What are you going to show?

2    And then I'm going to ask the other side what is disputed,

3    because if it's just a question of credibility, I need to see

4    live bodies.

5         MR. CHIZEWER:  I think we're going to show a few

6    things, your Honor.  We're going to show that there was, as

7    between Advate and Recombinate, there was a difference in the

8    way that Advate was priced and marketed as compared to

9    Recombinate.  And then we are also going to show that by the

10   time Advate hit the market, the particular fraudulent reporting

11   scheme that was in place by Baxter was a very different scheme

12   than the scheme that had been alleged, you know, approximately

13   five to six years earlier by Ven-A-Care.  And as those two

14   factual matters combine with what we believe the first-to-file

15   law is announced by the First Circuit in *Duxbury*, we believe

16   we'll be able to show that the Sun/Hamilton relators were first

17   to file.

18        THE COURT:  So the argument is that it was a different

19   fraudulent scheme as opposed to a different drug?

20        MR. CHIZEWER:  Correct.

21        THE COURT:  All right, so essentially scientifically,

22   if you will, Advate and Recombinate are substantially the same

23   drug, but they were marketed -- the fraudulent scheme was

24   substantially different.  That's your position?

25        MR. CHIZEWER:  I think I heard your Honor say they

1   were substantially the same drug.  I mean, certainly we agree

2   that the drug was marketed to the same patients for the same

3   purpose by the same Baxter division.  We agree to that, but we

4   do believe that because of the nature of Advate as compared to

5   Recombinate, that it was thought of to be a new sort of

6   blockbuster, you know, once-in-a-lifetime kind of drug; and

7   because of that, we think we'll be able to show that it was

8   marketed differently and priced differently.  That's one thing.

9   But then perhaps even more importantly, that by the time Baxter

10  hit the market, the false price reporting was of a different

11  nature than alleged by Ven-A-Care.  Obviously that's all

12  disputed.

13          THE COURT:  Well, so how am I -- so tell me -- so I'm

14  just trying to get this in.  So that as I understand it,

15  they're waiving or at least conceding the Recombinate point

16  from Sun/Hamilton.  Is that right?

17          MR. CHIZEWER:  Judge, this is Mr. Chizewer again.  I'm

18  sorry, I had trouble understanding that.

19          THE COURT:  I'm sorry.  As I understand it, there was

20  a little bit of a fuzziness about Recombinate as to whether or

21  not you were waiving it or whether I was simply going to rule

22  against you because it was in the Ven-A-Care complaint.  Are

23  you at this point conceding the Recombinate point?

24          MR. CHIZEWER:  Your Honor, we were not conceding that,

25  although we did hear you loud and clear at our last hearing

1    that you had issued a ruling sort of, I guess, from the bench

2    on the Recombinate issue; and it was our understanding that

3    your Honor's ruling was that the Sun/Hamilton relators were not

4    first to file on Recombinate.  And while we respectfully

5    disagree, we certainly heard the ruling loud and clear on that

6    issue.  So I don't think it would be fair to say we conceded

7    it, but it would be fair to say that we understood we had been

8    overruled on it.

9         THE COURT:  Okay, so the hearing was just going to be

10   on Advate, just to refresh my recollection?

11        MR. CHIZEWER:  Yes, your Honor.

12        THE COURT:  Okay.  Now, from the defense point of view

13   or from Ven-A-Care's point, what would be the disputed facts

14   based on what was just said for the Sun/Hamilton side?

15        MR. JACKSON:  Judge, this is Andy Jackson for Baxter.

16   The Baxter representative was deposed in and around the factors

17   described in *Duxbury*, in your prior decision in the *Abbott*

18   case, and in the probably five first-to-file decisions out of

19   your court filed in the last two years, and I think those facts

20   will be undisputed.  The drug is nearly identical to

21   Recombinate, sold to the same patients for the same purposes,

22   for the same disease state, by the same Baxter entity, by the

23   same Baxter sales force.  We think on all of those factors that

24   we should win on first to file.  The only thing I heard from

25   Mr. Chizewer just now is, they are going to argue that this is

1    a different theory, but they've been asked since day one.

2    Applying the *Duxbury* factors and then all of the other cases

3    out of your courtroom, we don't think that there are any facts

4    in dispute that would be relevant to the first-to-file rule.

5         THE COURT:  Well, are you willing to concede the

6    plaintiffs' point factually -- not legally, factually -- that

7    there was a different, if you will, fraudulent pricing scheme?

8         MR. JACKSON:  Judge, the pricing scheme hasn't

9    changed, the alleged pricing scheme.  It was one where the

10   plaintiffs allege that Baxter gave inaccurate information to

11   the pricing compendia.  It was not AWP; it was a list price.

12   But it's the same theory, you know, and we believe that the

13   case law is very clear:  The question is whether the

14   disclosures made in the Ven-A-Care case were adequate to put

15   the government on notice so they could investigate.

16        THE COURT:  But are you willing to concede -- just I

17   want to get to the historic facts, not necessarily the legal

18   gloss that goes on them.  Will you be willing to concede that

19   factually there was a somewhat different pricing system; for

20   example, list price versus AWP or some such differences that I

21   think Sun/Hamilton is saying it was different?  Are you willing

22   to at least agree with there's a difference in the pricing, and

23   you'll just say legally it doesn't make a difference?

24        MR. JACKSON:  The information that was provided by

25   Baxter to the pricing compendium was different than was done in

1  the past; the same process, same people, et cetera, et cetera.

2  And, your Honor, it may be that we're able to enter into a

3  stipulation.  We actually proposed a stipulation to the

4  relators regarding some facts that we think are not in dispute,

5  and then we kind of got off track a little bit on the

6  stipulation process.  But the parties may be able to stipulate

7  to the vast majority of the facts that you need to consider

8  when addressing this first-to-file motion.

9        THE COURT:  Okay.

10       MR. BREEN:  Your Honor, may I speak to this?  This is

11  Breen for Ven-A-Care.

12       THE COURT:  Sure.

13       MR. BREEN:  Number one, I don't think there's going to

14  be a big difference of information to your Honor based upon the

15  evidence and the gut facts of this thing.  I think the

16  difference is going to be in what those facts mean or what the

17  information means.  And let me just be real specific.  When

18  Sun/Hamilton talks about this being two different drugs, Advate

19  and Recombinate were the same drug.  It's just that in the

20  manufacturing process, they didn't use human or animal proteins

21  when they manufactured Advate.  So it was arguably, and from a

22  marketing perspective, a safer drug that Baxter hoped to make

23  more money on.

24       THE COURT:  Wait a minute, sir.  I didn't understand

25  what you -- I didn't hear you.  It used a different kind of

1    protein?

2         MR. BREEN:  They didn't use the protein.  They grew it

3    using the same cell line, the same genetic makeup of these

4    Chinese hamsters -- this is a biological product -- but they

5    grew it in an environment that was void of human or animal

6    protein, so it didn't inject the human or animal protein into

7    the manufacturing process.  So it's the same thing as

8    Recombinate minus the human and animal protein.

9         THE COURT:  Well, that might be a big thing or not.  I

10   mean, so is everyone agreeing that that's not a big material

11   difference?

12        MR. BREEN:  It's not a distinction with a difference

13   for a first-to-file purposes because it was manufactured -- it

14   was marketed by the same people, administered the same way to

15   the same physicians, the same providers.  All the factors that

16   were discussed in the *Abbott* case were identical between

17   Recombinate and Advate, except that Baxter marketed Advate for

18   more money.  They were trying to make more money on it.  It

19   came online literally -- I think the undisputed evidence shows

20   that Baxter began the marketing process within about four days

21   internally pricing this thing, within about four days of

22   Ven-A-Care's last amended complaint.  So I don't think we're

23   going to have a difference of what the information is.  It's

24   just that I think that Sun/Hamilton may argue that the

25   difference between Advate and Recombinate is material from a

1    first-to-file perspective, or as Ven-A-Care and Baxter does not

2    believe it is.  And I think you'll find the same thing with

3    respect to the other part of this, which is the pricing, which

4    I can also speak to when you're ready.

5         THE COURT:  Well, let me just say this:  From

6    Ven-A-Care's point of view, are there any factual disputes in

7    terms of credibility of Mr. Hamilton or any historic fact

8    disputes that I would have to resolve?

9         MR. BREEN:  I don't believe there is so long as the

10   information they try to put forth for Mr. Hamilton is otherwise

11   admissible and would not be inadmissible hearsay, and the

12   devil's in the details there.  Based upon what we heard at

13   Mr. Hamilton's deposition which was taken, and from what

14   Mr. Chizewer said now and during our preparation periods, I

15   think that what they're saying is that at some point around

16   2001 or 2002, Baxter began to give First DataBank a list price,

17   which First DataBank used as a WAC and marked up to get to AWP.

18   When you look at the Ven-A-Care complaint, we explain, and we

19   had explained since 1995, the drug companies give a variety of

20   prices to First DataBank, WAC being one of them -- we also

21   mention list -- gets marked up to get to AWP.  And the false

22   pricing scheme is reporting inflated prices to First DataBank

23   that the drug company knows will be used to report an inflated

24   AWP.  And that's exactly what they're saying occurred.  That's

25   exactly what Ven-A-Care pled.  Their argument is that since

1    Baxter internally may have in its discussions with First

2    DataBank emphasized a list price to call it a WAC, that that

3    somehow is a distinction with a difference from a first-to-file

4    perspective.  We don't believe that it is.

5          THE COURT:  All right, so let me just ask everybody,

6    is the U.S. government going to be filing a brief, since the

7    schedule doesn't seem to anticipate that?

8          MR. BREEN:  They've indicated to me, your Honor, that

9    I don't believe they are, from what I've heard from them.

10         THE COURT:  Okay.  So right now I don't remember,

11   thinking about subject matter jurisdiction cases, whether I

12   just simply rely on the evidence that Sun/Hamilton puts forth,

13   to find that there's enough that they put forth to support

14   jurisdiction, or whether I need to find each fact by a

15   preponderance of the evidence.  I think it's the latter.  In

16   other words, I think they've got to prove it with admissible

17   evidence; but if they put forward enough, it doesn't matter

18   that it's disputed.

19         MR. BREEN:  Well, your Honor, that may be the case in

20   terms of a typical 12(b)(1) subject matter jurisdiction, but

21   remember the *Duxbury* case, the First Circuit looked only at the

22   pleadings, and said that while the court can review evidence

23   outside the pleadings in a subject matter jurisdiction case, it

24   opted not to in that particular instance.  It didn't say you

25   can't, but it opted not to in that particular instance.  And

1    this first-to-file argument is being made as a precursor to a

2    Rule 60 motion.  I mean, we're not trying the case here.

3    They're trying to show standing to set aside the

4    Ven-A-Care/Baxter settlement.  So, I mean, there's a little bit

5    more going on here than your typical first-to-file/subject

6    matter jurisdiction scenario.

7            THE COURT:  Will the credibility of Mr. Hamilton be

8    attacked at all by the defendants?

9            MR. BREEN:  Your Honor, I couldn't hear that.  This is

10   Breen.

11           THE COURT:  Would the credibility of Mr. Hamilton be

12   attacked at all by the defendants; in other words, whether he's

13   telling the truth?

14           MR. JACKSON:  Your Honor, this is Andy Jackson for

15   Baxter.  I guess the answer to that is "yes."

16           THE COURT:  Well, then how do I not see him?

17           MR. JACKSON:  Well, I think the question is, what

18   evidence is relevant to your decision on first to file?

19           THE COURT:  I know, but you're asking me -- this is

20   what we were supposed to do today.  I have two full days

21   blocked off.  That's a big deal in my schedule, two full days,

22   and I get a motion two days ago to cancel.  That's huge for me.

23   And what I'm not going to do is do that again.  So at this

24   point I'm trying to figure out whether or not I need -- is

25   Mr. Hamilton the only witness?

1          MR. BREEN:  Your Honor, Ven-A-Care will present at

2     least one witness, probably Dr. Lockwood.

3          THE COURT:  So just understand, I'm not going to take

4     a gazillion pages of briefing and then hold an evidentiary

5     hearing.  So at the end of the day, I think that if you're

6     planning on challenging the credibility of Mr. Hamilton, I need

7     to see him.  If you're saying, even taking everything that he

8     says, it's not enough to support subject matter jurisdiction,

9     I'm happy to do it on the papers.

10          MR. JACKSON:  Your Honor, I guess that depends on what

11     he's trying to testify to.

12          THE COURT:  Well, you know that because you've got a

13     deposition.  So, I mean, basically I'm putting this in

14     defendants' court.  If you want to challenge his credibility, I

15     can't do it on a paper record.

16          MR. JACKSON:  Well, then, your Honor, if that's the

17     case, then I guess he's going to have to go on the stand and at

18     least be subject to cross.

19          THE COURT:  Okay, that resolves that issue.  So is he

20     available tomorrow, since I have the entire day blocked off?

21          MR. CHIZEWER:  Unfortunately, your Honor, he's not.

22          THE COURT:  Well, you know, I don't even care if I do

23     him on video conferencing.  Where does he live?

24          MR. CHIZEWER:  He lives in Chicago, in the Chicago

25     area, and he has -- I did receive an e-mail from him this

1   morning saying that he's barely been walking since he had his

2   procedure at the end of last week.

3           THE COURT:  There was no reason -- why did you wait so

4   long to tell me?

5           MR. CHIZEWER:  Your Honor, I apologize for that, and I

6   hated to file that motion.  I actually -- the parties engaged

7   in a lot of discovery.  We thought that there was a way to do

8   this without the evidentiary hearing.  My understanding was

9   that Baxter was not even planning to present any live witness

10   at all, and also, since we last saw you, your Honor,

11   unfortunately his son passed away quite suddenly.

12          THE COURT:  No, I'm sorry about that, but how about --

13          MR. CHIZEWER:  But to the extent your Honor was going

14   to deny that motion, we were absolutely ready and had even

15   exchanged, you know, disclosures of witnesses and documents to

16   prepare for that evidentiary hearing.  And I did know that

17   Mr. Hamilton had some back issues, but I didn't realize it had

18   gotten so bad that he had to go in for this procedure at the

19   end of last week.

20          THE COURT:  Well, how about the 26th?

21          MR. CHIZEWER:  Your Honor, this is Richard Chizewer.

22   I think I mentioned in open court in November, I've had a

23   long-scheduled family vacation, plus it's the Jewish holiday of

24   Passover this coming week, so we would be --

25          THE COURT:  How about Wednesday?

1           THE CLERK:  The 20th, this Wednesday.

2           THE COURT:  Will he be better?

3           MR. CHIZEWER:  Unfortunately, my vacation is from

4    Wednesday through the following week, so if there's any way to

5    push it into April, your Honor.

6           THE COURT:  All right, well, let's look at the first

7    week in April.

8           THE CLERK:  We can do it Monday, April 1 at 9:00

9    o'clock.

10          THE COURT:  How about April 1?

11          THE CLERK:  Monday, April 1, at 9:00 o'clock.

12          MR. BREEN:  Your Honor, this is Breen.  I'll have to

13   reschedule my time that I planned away that same week, but I'll

14   do it to get this thing done.

15          THE COURT:  I didn't hear you.  Are you on trial, or

16   are you on vacation?

17          MR. BREEN:  I said I will have to reschedule and

18   cancel a family vacation that I have scheduled for the first

19   week of April, but I'll do that to get this done.  I think we

20   need to get it done, and --

21          THE COURT:  What about April 16?

22          MR. BREEN:  -- I would like the Court to know the

23   reason why we thought --

24          THE COURT:  Excuse me.  Hold on.  What about April 16?

25          MR. BREEN:  -- is because after talking to everybody,

1    it didn't sound to me like we were going to spend two days --

2            THE CLERK:  Hold on one second.  Hold on one second.

3            THE COURT:  Mr. Breen, this is why I hate

4    teleconferences.  I was trying another date so I wouldn't have

5    you lose your vacation.  What about the week of April 15, 16?

6            THE CLERK:  Not the 15th.  That's Patriots Day.

7            THE COURT:  Oh, the 15th is Patriots Day.  What about

8    the 16th, 17th, 18th?

9            MR. BREEN:  That would be better, your Honor.

10            THE COURT:  Does anybody have a problem?

11            MR. CHIZEWER:  16, 17, 18 is fine with us, I think,

12    Judge.  I'd like to check with our client, but I think that

13    will be fine.

14            THE COURT:  You know, at some --

15            MR. CHIZEWER:  I don't believe, your Honor, we're

16    going to need -- I can't imagine we're going to need more than

17    a day.

18            THE COURT:  Well, I'm going to try and do you the full

19    day on the 16th, I think.  Hello, did I lose someone?  And I

20    have to go to another hearing now.  Right now it's scheduled

21    for the 16th, 17th, 18th.  And right now I don't know because

22    I've got stuff scheduled in the afternoon, I can't figure

23    out -- so at least the first day I think we're going to be able

24    to do a full day and then otherwise not.  And then you should

25    continue with your briefing schedule that you've got plotted

1    out there because I'm not going to allow a major briefing

2    afterwards because I need to finish this case.  So why don't

3    you -- when can you both give me your prehearing memos?

4           MR. CHIZEWER:  Your Honor, a week before the hearing,

5    your Honor?

6           THE COURT:  Fine, April 9 both of you will give memos

7    and findings of fact, limited to 20 pages a person.  And that

8    doesn't include motions to strike.  And so what we should do

9    is, each side will produce the affidavits of the witnesses that

10   they're planning on introducing, and we'll only permit

11   cross-examination.  By the 9th I want the affidavits, or

12   possibly the depositions, I suppose, of the person, and then

13   we'll only allow cross-examination, and that way I'll be able

14   to make credibility findings.  Okay?

15          MR. BREEN:  Your Honor, that sounds good.  This is

16   Breen again.  I mean, I'm just going to throw this out there:

17   One thing we can do, since we're going to be doing this

18   declaration process anyway before the evidentiary hearing,

19   which was not the case before, is, we could confer, and perhaps

20   we can come up with a set of stipulated facts for your Honor.

21   And if so, I would assume we should let your Honor know that as

22   soon as possible.

23          THE COURT:  Yes, because basically I have scarce time.

24   So I've basically given you two days which are now completely

25   wasted.  So at this point it's going forward short of -- you

1    know, if you let me know in a week or so you can agree, that's

2    one thing, but otherwise you're here.  I need to finish this.

3           MR. BREEN:  I understand, your Honor.

4           THE COURT:  Okay?  So we'll get affidavits from your

5    witnesses and briefs on the 9th.  Likely we'll go forward the

6    16th, 17th, and 18th.  Right now, count on a full day on the

7    16th, but I think you're half days after that.

8           MR. CHIZEWER:  Your Honor, this is Mr. Chizewer.  I

9    agree with Mr. Breen that I can't -- and I think Mr. Jackson

10   said this too -- I can't imagine this going more than a half

11   day or one full day at the most.

12          THE COURT:  Fine, but just realize, if you want me to

13   make credibility findings, I have to see the witnesses who you

14   want me to find credible or not.  So here we go for April.  And

15   no more last-minute motions or I'll impose sanctions because

16   it's too expensive for the Court.  All right?  So I hope

17   Mr. Hamilton is feeling better, and you'd better get to me soon

18   if you want to cancel that time.  All right?

19          MR. CHIZEWER:  Thank you, Judge.

20          THE COURT:  All right, thank you.  All right, thank

21   you.  We'll move on to our criminal case which is waiting.

22   Thank you.

23          (Adjourned, 10:38 a.m.)

24

25

1                    C E R T I F I C A T E

2

3
     UNITED STATES DISTRICT COURT )
4    DISTRICT OF MASSACHUSETTS    ) ss.
     CITY OF BOSTON               )
5

6

7           I, Lee A. Marzilli, Official Federal Court Reporter,

8    do hereby certify that the foregoing transcript, Pages 1

9    through 20 inclusive, was recorded by me stenographically at

10   the time and place aforesaid in Civil Action Nos. 01-12257-PBS,

11   08-11200-PBS, and 10-11186-PBS, In Re:  Pharmaceutical Industry

12   Average Wholesale Price Litigation, and thereafter by me

13   reduced to typewriting and is a true and accurate record of the

14   proceedings.

15          Dated this 25th day of March, 2013.

16

17

18

19

20          /s/ Lee A. Marzilli
            _____
21          LEE A. MARZILLI, CRR
            OFFICIAL FEDERAL COURT REPORTER
22

23

24

25