# EXHIBIT A

# THE NATIONAL LAW JOURNAL & Legal Times

An ALM publication

FEBRUARY 7, 2011

**THIS WEEK @ NLJ.COM**
Check out exclusive daily news coverage, blogs, videos and more at our Web site.



ELIZABETH WARREN

## Agenda Unknown

As financial protection bureau staffs up, mission details are murky.

**BY JENNA GREENE**

Ask lawyers to describe the new Consumer Financial Protection Bureau, and they respond with three adjectives: enormous, powerful—and unknown.

Slated to open on July 21, the regulatory entity created by the Dodd-Frank Act seems sure to generate enough rulemakings and enforcement actions to sustain entire practice groups.

If only lawyers knew quite what it was going to do. "Clients have questions and

SEE **CFPB**, PAGE 11

THE DODD-FRANK ACT
A SPECIAL REPORT

DIEGO M. RADZINSCHI



MIKE LEE

### The Son Also Rises
Child of a solicitor general, clerk for Justice Samuel Alito, Utah's new senator, Republican Mike Lee, has a sterling D.C. legal pedigree—and a devoted Tea Party following. **PAGE 15**

## A whistleblower and its 'pit bull'

Ven-A-Care and lawyer James Breen are scoring major wins in False Claims Act cases.

**BY DAVID BARIO**

Most law firms would rush to trumpet the kind of victories that Georgia attorney James Breen and his whistleblower client, Ven-A-Care of the Florida Keys Inc., have scored in recent weeks.

In December, Texas and the federal government announced $766 million in Medicare and Medicaid fraud settlements in cases brought by Ven-A-Care. Ven-A-Care's share of those settlements? $155 million. On Feb. 1, a Texas jury awarded the state $170 million in the first Ven-A-Care case ever to reach trial.



JAMES BREEN

Breen never even issued a press release. His one-lawyer firm, The Breen Law Firm, based in the Atlanta suburb of Alpharetta, doesn't even have a working Web site.

SEE **VEN-A-CARE**, PAGE 4

## NTP faces crucial patent challenge

Big winner in BlackBerry case is contesting adverse findings by patent appeals board.

**BY SHERI QUALTERS**

NTP Inc. followed the massive $612.5 million settlement of its patent infringement case against BlackBerry maker Research in Motion Ltd. in 2006 with 13 new infringement lawsuits against technology giants. In each of these cases, the company claims infringement of its patents related to delivering electronic mail over wireless communications systems.

But a sticky patent law question is holding them up. At issue is a collision between federal court rulings on patentability and the patent re-examination process that takes place in the

SEE **NTP**, PAGE 6



**"IT CUTS COSTS FOR US AND OUR CLIENTS LIKE NEVER BEFORE."**

KATHRYN CONDE, PARTNER, NUTTER McCLENNEN & FISH LLP, BOSTON

Corporate clients now expect their law firms to run as efficiently as *they* do. That's why Kathryn says WestlawNext™ is a "no-brainer." It makes legal research much more efficient, which not only saves the firm money, but also saves their clients money.

Hear more at **WestlawNext.com**. Learn more about Nutter at **Nutter.com**.

© 2010 Thomson Reuters  L-364259/11-10  Thomson Reuters and the Kinesis logo are trademarks of Thomson Reuters.

**WestlawNext**™

25438 4/18/2011
M Y079    620       1
GETNICK & GETNICK
620 5TH AVE FL 4
NEW YORK NY 10020-2402

Case 1:01-cv-12257-PBS   Document 8281-2   Filed 04/09/13   Page 3 of 4

# Flurry of wins for whistleblower

VEN-A-CARE, FROM PAGE 1

Yet Breen represents the most successful whistleblower ever to file suit under the False Claims Act (FCA). Ven-A-Care is Breen's only client, and litigating FCA cases is Ven-A-Care's business. The FCA allows private plaintiffs to sue on behalf of the government; thanks to amendments to the federal law in 1986 and the adoption of similar laws by states, whistleblowers can receive 15% to 30% of government settlements or judgments in FCA cases.

Since 2000, Ven-A-Care's cases have recovered close to $2.5 billion for state and federal governments—far more than any other whistleblower. The settlements represent nearly 10% of federal recoveries in FCA cases since 1987, according to Department of Justice statistics.

Ven-A-Care's total spoils as a "qui tam relator" under the FCA are more than $340 million. According to qui tam lawyers, whistleblower firms typically take home a 40% contingent fee when their clients are successful. (Ven-A-Care didn't respond to interview requests and Breen wouldn't discuss fees.)

Among the whistleblower plaintiffs' bar, Breen has achieved cult status. His aggressive approach to False Claims Act litigation has inspired other lawyers and helped drive the trend toward ever more complex suits—and bigger recoveries. "Jim Breen is an American pit bull," said Patrick Burns, who advises whistleblowers and handles communications for Taxpayers Against Fraud, a False Claims Act advocacy group. "He is smart and loving and clear-eyed and you hope to God he's not against you."

## FIGHTING IN FLORIDA

Technically, Ven-A-Care is a pharmacy. It has a license to dispense drugs and an office on touristy Duval Street in Key West, Fla. Before the early 1990s, Ven-A-Care's four partners, Zachary Bentley, T. Mark Jones, Luis Cobo and John Lockwood, made a good living providing blood-infusion therapy to cancer patients and the elderly.

The transformation of Ven-A-Care's business to full-time litigation began in 1990, when Bentley received a Medicare reimbursement check for $56 for a chemotherapy drug that cost the pharmacy $10. As Bentley later testified before a congressional subcommittee, he attempted to return the check, only to learn the amount was based on the price the drug's manufacturer reported to the state.

The following year, the kidney dialysis giant National Medical Care opened an infusion clinic in Key West, nearly driving Ven-A-Care out of business. Breen, along with his then-partner, Atlee Wampler III, sued NMC under the False Claims Act in 1994, accusing it of bilking Medicare out of millions of dollars for unnecessary treatments.

It was around 2 a.m. during a marathon meeting on the NMC litigation that Ven-A-Care's assault on the drug industry was born, Wampler said. "Mark Jones said, 'if you think this [NMC fraud] is bad, let me tell you about this false price reporting scheme,'" Wampler recalled. "I don't think anybody slept until we were able to get all that down on paper and begin to develop a case."

A few months later, in June 1995, Ven-A-Care filed suit against 20 companies in Miami federal district court for allegedly defrauding Medicare and Medicaid by inflating "average wholesale prices" for drugs. Over the next decade, Breen followed up with a steady stream of suits—the true number is unknown since many are sealed—repeating nearly identical allegations against more defendants.

Average wholesale price is a benchmark that drug companies report to insurers, including Medicare and Medicaid. Ven-A-Care claimed that generic drug companies were inflating average wholesale prices in order to market the "spread" between reported prices and the amount their wholesale customers actually paid. The pharmacies allegedly paid one price, received outsized reimbursements from the government and pocketed the difference.

Ven-A-Care's efforts began to bear fruit in 2000, when National Medical Care (now Fresenius Medical Care) settled its case for $486 million. The following year, Bayer A.G. became the first to settle average-wholesale-price claims; since then, at least 11 companies, including Abbott Laboratories, Aventis (now Sanofi-Aventis), Bristol-Myers Squibb Co. and Teva Pharmaceutical Industries Ltd., have reached $100 million-plus settlements in Ven-A-Care FCA cases. According to health care fraud experts, the cases helped convince legislators to reform price-reporting standards and prevented massive losses to Medicare and Medicaid.

## DETAILED KNOWLEDGE

What's the secret to Ven-A-Care's success? To start, it had detailed knowledge of the industry, access to drug-pricing data and, by all accounts, plenty of outrage. (The Ven-A-Care partners pestered officials from the Department of Health and Human Services and the Federal Bureau of Investigation, among others, before turning to the courts over drug pricing.) Ven-A-Care also had timing on its side: By targeting so much of the industry early on, it earned "first-to-file" status in much of the drug-pricing whistleblower litigation.

But according to whistleblower lawyers, Breen also helped pioneer a new approach to the False Claims Act. He brought highly developed cases, backed by enough legal muscle to present Ven-A-Care as a viable partner to prosecutors. And early on, Breen pressed his cases with state attorneys general, with results that have reached beyond the drug-pricing litigation.



**PATRICK O'CONNELL:** The Texas lawyer said Ven-A-Care's and Breen's "genius was realizing they need to help the government."

Only a handful of states had false claims statutes when Breen began working with the Texas attorney general's office in 1999. But by the time Texas intervened in Ven-A-Care cases and began reaching settlements in 2003, other states had taken notice. Qui tam lawyer Daniel Miller of Berger & Montague, a former Delaware deputy attorney general and past president of the National Association of Medicaid Fraud Control Units, said those early Ven-A-Care successes in Texas helped inspire other states to adopt false claims statutes, bringing the number of states with similar laws to 28 today. (Miller's partners currently represent Ven-A-Care.)

Patrick O'Connell, who litigated Ven-A-Care cases in Texas as former chief of the state AG's Medicaid fraud section, said Breen understood he had to do more than just file suit and hope for state and federal prosecutors to take action.

"Their genius was realizing they need to help the government, not just rush in and say, 'take this case.'" said O'Connell, now a private whistleblower lawyer at Austin, Texas-based O'Connell & Soifer. And, O'Connell said, "they were willing to commit resources."

One former state prosecutor, who requested anonymity because his firm is involved in drug-pricing cases, said few whistleblowers remain active litigants in FCA cases once prosecutors intervene. The Ven-A-Care whistleblowers are an exception, he said, partly because they've proven they can pull their own weight.

SEE VEN-A-CARE, PAGE 5



THE NATIONAL LAW JOURNAL/WWW.

THE NATIONAL LAW JOU

Having recently expanded into
is seeking to further expand ou
Minneapolis, Ohio and New Yo
level lateral attorneys with port
areas: Labor & Employment, C
Estate, Banking, Bankruptcy, Pr
Compliance, and Corporate Tra
business need apply.

Headquartered in Chicago, S
attorneys based in six offices in
attorneys regularly practice in
Wisconsin and Missouri in bot
our attorneys are retained on a
to handle both coordinating co
representation of clients in oth

Please submit your resumé in
or by mail to:

Michael L. DeLargy
SmithAmundsen LLC
150 N. Michigan Avenue,
Suite 3300
Chicago, IL 60601

**MERRILL LAD**
Clients worldwide rely on Merrill LAD
manage the complex litigation lifecycle
to trial. Our deposition services inclu
realtime deposition reporters, realtim
Lextranet® Transcript Repository, tra
Certified Legal Video Specialists, vide
free deposition suites, and online sche

## Ven-A-Care's $100 million-plus False Claims Act settlements

**JANUARY 2000**
Fresenius Medical Care of North America
Settlement
$486 million
**Ven-A-Care award**
$44.8 million

**SEPTEMBER 2005**
GlaxoSmithKline
Settlement
$150 million
**Ven-A-Care award**
$26 million

**SEPTEMBER 2007**
Aventis Pharmaceuticals Inc.
Settlement
$190 million
**Ven-A-Care award**
$32 million

Bristol-Myers Squibb
Settlement
$515 million
**Ven-A-Care award**
$25 million

**OCTOBER 2009**
Mylan Pharmaceuticals, UDL Laboratories, AstraZeneca Pharmaceuticals and Ortho-McNeil Pharmaceutical
Settlement
$124 million
**Ven-A-Care award**
$10.8 million

**JULY 2010**
Teva Pharmaceuticals Inc.
Settlement
$169 million
**Ven-A-Care award**
$25 million

**DECEMBER 2010**
Abbott Laboratories Inc., B. Braun Medical Inc. and Roxane Laboratories Inc. (Boehringer Ingelheim Roxane Inc.)
Settlement
$421.2 million
**Ven-A-Care award**
$88.4 million

Dey Inc./Dey Pharma
Settlement
$280 million
**Ven-A-Care award**
$67.2 million

**FEBRUARY 2011**
Actavis Mid-Atlantic and Actavis Elizabeth
Settlement
$170.3 million
**Ven-A-Care award**
Not yet determined

**VEN-A-CARE,** FROM PAGE 4

"From the very beginning, we've seen it as our job to augment the litigation resources that the U.S. attorneys or the state AGs have," Breen said. "That means assembling teams of private lawyers, training the AGs, assisting them in the nuts and bolts of how to develop strategy for complex national litigation."

It's also meant investing huge sums in litigation that, at least for a few years, appeared uncertain. Breen said Ven-A-Care's successes so far have required more than 100,000 hours of lawyer time, with a value of well more than $60 million at market rates. To keep up with cases in Florida, California and Texas and in ongoing multidistrict litigation in federal court in Boston, Breen has had to counter an army of defense lawyers with an army of his own.

All those lawyers get a cut of Ven-A-Care's whistleblower awards, of course. But, Breen said, his aggressive approach helps the government recover more money. And it means a bigger cut for Ven-A-Care. "The assistance provided by the relator and their counsel team is always a key factor in the relator share, and it certainly has been in our cases," he said.

Ven-A-Care's approach was on display in the drug-pricing trial against the generic drug maker Actavis that wrapped up early this month in Austin. Along with Breen, Ven-A-Care had a half-dozen lawyers at the trial. And Breen said they tried the case with the state's lawyers as a single team. "If you saw us in the courtroom, unless we made an appearance on the record you would not be able to determine who worked for whom," he said.

A judge must still enter a final judgment on the jury's $170 million verdict, and Ven-A-Care's share of the verdict hasn't been determined. Breen said he typically doesn't bother fighting for maximum relator shares in Ven-A-Care's cases: There are so many, and Ven-A-Care tends to get close to the maximum anyway. For Breen and his only client, the Ven-A-Care litigation just marches on.

*David Bario can be contacted at dbario@alm.com.*



# VIRTUAL LEGALTECH®
## The Most Important Legal Technology Event Online!

**New Seminars – Online March 17, 2011**

Register at www.virtuallegaltechshow.com or phone 212-457-7905

### Registration is complimentary – sign up today!

- Earn Free CLE Credits*
- Attend seminars and panel discussions in real time in the "virtual" auditorium
- Visit booths and download brochures
- Interact with colleagues through chat
- Win prizes!

**The Exhibit Halls are open 24/7 365!**

For sponsorship opportunities contact Henry Dicker at 212-457-7902 or email hdicker@alm.com

*Terms and conditions apply. See website for details.

Sponsors:
       

An **ALM** Event