# EXHIBIT B



State of New York
OFFICE OF THE ATTORNEY GENERAL
MEDICAID FRAUD CONTROL UNIT
Special Projects Division, One Blue Hill Plaza PO Box 1747, Suite 1037
Pearl River, NY 10965-8747
(914) 732-7550   Fax: (914) 732-7557

ELIOT SPITZER
Attorney General

JOSÉ MALDONADO                                              PATRICK E. LUPINETTI
Deputy Attorney General                                    Director, Special Projects Division

February 16, 2000

Pharmacy Director
Bureau for Medical Services
DOH & HR
State Capitol Complex, Bldg. 6
Charleston, WV 25305



PLAINTIFF'S EXHIBIT 154

Dear Medicaid Pharmacy Director:

    As you may be aware, a current national investigation by State and federal agencies has revealed a pattern of misrepresentations by some drug manufacturers of the average wholesale prices and wholesale acquisition costs of certain of their products. As a result of these misrepresentations, Medicaid and Medicare have substantially overpaid for these drugs and will continue to do so until corrective measures are implemented. To that end, First DataBank, Inc. ("FDB") has been cooperating with representatives of the State Medicaid Fraud Control Units in the development of procedures that will improve the accuracy and validity of the information provided to the States.

    We believe we have reached an agreement that will effect immediate and significant reform of the process, as the initial phase of an overall effort to ensure that Medicaid drug prices are based on true information. Indeed, the substance of this proposal has already been outlined to State Pharmacy Directors, particularly at your July 1999 national conference, in a presentation in which Assistant United States Attorney Reed Stephens, HHS-OIG Associate Counsel Mary Riordan, Maryland MFCU Director Carolyn McElroy and most State Pharmacy Directors participated. We consequently write to inform you of the substance of the procedures FDB will adopt and the effect you may anticipate from it, as well as to solicit your comments or suggestions, which should be submitted to the us at the above address by March 6, 2000.

    Stated briefly, under the impending change to current procedures, FDB will base the average wholesale prices it reports on market prices, rather than the prices identified by

manufacturers. Additionally, FDB will no longer report a price for a product unless its manufacturer has certified the completeness and accuracy of the pricing information submitted. We are enclosing for your review a copy of the market price survey that will be used initially and a draft letter from FDB enunciating the specific terms of the revised pricing procedure. This revised procedure does not change the existing terms of the company's contract with your state, but merely provides an improved means for FDB to provide more accurate information to the States. More importantly, in view of the Medicaid program's legal obligation to reimburse true provider acquisition costs, such an effort by the States to ensure that payment is based on actual prices is mandatory. Consequently, no current legal commitment or program regulations are being altered. On the contrary, it is the goal of the revised reporting process to ensure compliance with *existing* laws and contracts. FDB is implementing these changes on a voluntary basis and without any additional charges to the States or their agents during the existing terms of the applicable contracts.

It is also important to note that the drug price misrepresentations that have occurred, and that will be corrected through FDB, relate to only a limited number of medications, generally infusion, inhalation and injectable products. Thus, while total Medicaid expenditures for the drugs in question are quite substantial, the price of most drugs will be unaffected by the revised procedure.

Nonetheless, we anticipate that the more accurate price information will result in a significant reduction in reimbursement for the affected drugs, and you will in all likelihood receive initial complaints or objections about lowered Medicaid payments. Accordingly, we wish to emphasize the following facts:

1) The revised First Data reporting process does not involve any changes in statutes, regulations, program rules or contractual terms. Any resulting reduction in prices will be the result of First Data more effectively performing the task it is already required to perform.

2) As a result, there is no basis for a contention that any individual state is answerable for diminished Medicaid payments -- no provider can rationally criticize a single state agency for a change in pricing when the SSA has taken no action to cause it.

3) Since no reduction in payment will occur unless real world pricing justifies it, the revised procedure is not only fair to providers, but an altogether appropriate shift from reliance on false to true information.

4) If providers concede that reimbursements exceed acquisition costs but maintain that the surplus is necessary to cover ancillary costs of the drug's administration, *e.g.*, nursing or incidental supply expenses, their argument runs expressly counter to law. Under Medicaid Program requirements, reimbursement is dependent on the acquisition cost of the *drugs*, not the overhead costs involved in dispensing them.

5) Finally, it cannot be overemphasized that in view of the clear evidence we possess that certain current AWP and WAC data is grossly inaccurate for certain drugs, a

modification of existing practices is mandatory. No entity charged with implementation or enforcement of Medicaid program rules can responsibly countenance a reimbursement system that violates the statutory obligation to reimburse provider acquisition costs.

We encourage you to communicate this information to your fiscal intermediaries, so that they will also be prepared for the anticipated changes. Ultimately, it is our intention that continuation of our inquiry will result in fundamental changes regarding the reporting of pharmaceutical prices and a consequent reduction in the cost of drugs to government health care programs. One such change we envision as a necessary component to any negotiated resolution with a manufacturer is the obligation to certify that the prices it reports to First Data reflect true wholesale prices.

Thank you for your attention to this matter, and we look forward to your response. The State Medicaid Fraud Control Units have already made numerous contacts with their corresponding State Pharmacy Directors, and we will undoubtedly continue to solicit information and input from you as our investigation develops.

Very truly yours,

Patrick E. Lupinetti
For the NAMFCU Drug Pricing Team:

L. Timothy Terry, Director Nevada MFCU,
   President NAMFCU
Kerry O'Brien, Director Maine MFCU
David Waterbury, Director Washington MFCU
Thomas F. Staffa, Assistant Deputy
   Attorney General, New York MFCU

cc: State MFCU Directors

WVDHHR 0003005