# EXHIBIT D

                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS


    IN RE:                          )
                                    )  CA No. 01-12257-PBS
    PHARMACEUTICAL INDUSTRY AVERAGE  )  CA No. 08-11200-PBS
    WHOLESALE PRICE LITIGATION      )  CA No. 10-11186-PBS
                                    )  Pages 1 - 51




                          MOTION HEARING

              BEFORE THE HONORABLE PATTI B. SARIS
                   UNITED STATES DISTRICT JUDGE






                      United States District Court
                      1 Courthouse Way, Courtroom 19
                      Boston, Massachusetts  02210
                      November 28, 2012, 2:50 p.m.






                        LEE A. MARZILLI
                     OFFICIAL COURT REPORTER
                   United States District Court
                   1 Courthouse Way, Room 7200
                       Boston, MA  02210
                        (617)345-6787

1    A P P E A R A N C E S:

2        MARK ALLEN KLEIMAN, ESQ., Law Office of Mark Allan Kleiman,
     2907 Stanford Avenue, Venice, California, 90292, for
3    Sun and Hamilton.

4        DAVID J. CHIZEWER, ESQ., Goldberg Kohn, Ltd.,
     55 East Monroe Street, Suite 3300, Chicago, Illinois, 60603,
5    for Sun and Hamilton.

6        GEORGE B. HENDERSON, III, ESQ., Assistant United States
     Attorney, Office of the United States Attorney, 1 Courthouse
7    Way, Boston, Massachusetts, 02210, for all plaintiffs.

8        JAMES J. BREEN, ESQ., The Breen Law Firm,
     3562 Old Milton Parkway, Alpharetta, Georgia, 30005,
9    for Ven-A-Care of the Florida Keys.

10        ANDREW H. McELROY, III, ESQ., Assistant Attorney General,
     Complex Civil Litigation Bureau, Office of the Attorney
11   General, Medicaid Fraud Control Unit, PL-01, The Capitol,
     Tallahassee, Florida, 32399-1050, for the State of Florida.
12
         C. JARRETT ANDERSON, ESQ., Anderson, LLC,
13   1409 Wathen Avenue, Austin, Texas, 78703, for Ven-A-Care
     of the Florida Keys.
14
         J. ANDREW JACKSON, ESQ. and MICHAEL W. TURETZKY, ESQ.,
15   Dickstein Shapiro, LLP, 1825 Eye Street, N.W., Washington,
     D.C., 20006-5403, for Baxter International, Inc.
16
         PETER E. GELHAAR, ESQ., Donnelly, Conroy & Gelhaar, LLP,
17   One Beacon Street, 33rd Floor, Boston, Massachusetts, 02108,
     for Baxter International, Inc.
18

19

20

21

22

23

24

25

cf121f66-4ec7-437b-858f-b1847c19e49b

1                     P R O C E E D I N G S

2            THE CLERK:  Court calls Civil Action 01-12257, Sun v.

3   Baxter.  Could counsel please identify themselves.

4            MR. CHIZEWER:  Good afternoon, your Honor.  David

5   Chizewer and Mark Kleiman for the relators and movants.  With

6   me today we have --

7            THE COURT:  Wait.  Which ones, Sun?

8            MR. CHIZEWER:  Sun and Hamilton.  I have several

9   co-counsel with me in the audience today as well as well as one

10  of the relators.  Mr. Greg Hamilton is here as well.

11           THE COURT:  All right.

12           MR. JACKSON:  Good morning, your Honor.  Andy Jackson

13  for Baxter.

14           MR. GELHAAR:  Peter Gelhaar for Baxter.

15           MR. TURETZKY:  Matthew Turetzy for Baxter.

16           MR. McELROY:  Andrew McElroy for the State of Florida,

17  your Honor.

18           MR. ANDERSON:  Jarrett Anderson for Ven-A-Care of the

19  Florida Keys, the relator.

20           MR. BREEN:  Jim Breen for Ven-A-Care of the Florida

21  Keys, the relator, your Honor, and with us is Dr. Lockwood, one

22  of Ven-A-Care's officers and directors.

23           MR. HENDERSON:  George Henderson for the United

24  States.

25           THE COURT:  All right, thank you.  It's very

1   unfortunate that we have to be here today.  I feel as if I've

2   spent a lot of time on this case, and it keeps getting more

3   complicated, not less complicated.  So let me start off, I

4   guess I should talk to Mr. Breen.  Well, maybe all of you.  You

5   all seem to agree that, at the very least, I need to decide the

6   first-to-file issue.  Whether I do it before or after I grant a

7   motion to reopen, that seems to be the determinative issue.  Is

8   that right?

9        MR. JACKSON:  If I may, your Honor?

10       THE COURT:  Yes.

11       MR. JACKSON:  I believe that there are a couple

12  procedural hurdles even before that.  Procedural hurdle one is,

13  neither Sun nor Hamilton are parties to the Ven-A-Care case,

14  and that's where they filed this motion.

15       THE COURT:  You know what, can I say something?  I get

16  that.  It's a procedural pretzel, it's a novel issue, it's a

17  mess, but I've ruled on that.  I've said that that is the only

18  procedural mechanism that I can think of.

19       What happened here was wrong, in my view.  I -- let me

20  just talk about me -- I had no idea when I approved that

21  settlement agreement that I was quashing or closing off another

22  case.  I had no idea.  No one told me.  Apparently Mr. Breen

23  had been thinking about it.  He told me that was part of their

24  thought process.  Apparently Baxter had been thinking about it.

25       Apparently the government had no idea, is that right,

1  Mr. Henderson, because they took a completely different

2  position on what the settlement meant?

3          MR. HENDERSON:  That's correct, your Honor.

4          THE COURT:  Did you have any idea?

5          MR. HENDERSON:  I certainly did not.

6          THE COURT:  Did anyone at the Department of Justice

7  have any idea that you know of?

8          MR. HENDERSON:  Not to my knowledge.

9          THE COURT:  So I don't know whether the whistleblower

10  statute contemplated this kind of a situation, but that

11  alternate remedy provision was the closest I could find, and

12  I'm not going to relitigate that.  I've already spent so many

13  court resources in trying to figure out what to do.  But I do

14  agree that what is an issue is whether or not in fact

15  Ven-A-Care was the first to file or whether or not Sun/Hamilton

16  was on only one claim, which is the Advate claim.

17          I'm a little annoyed, I have to say, if I can spread

18  my annoyance around a little, is, you keep resurrecting

19  Recombinant.  I've ruled on it orally.  You keep sort of

20  putting them in parentheses.  I don't know what that's all

21  about.  It was expressly mentioned in the original Ven-A-Care

22  complaint.  Ven-A-Care was the first to file on Recombinant,

23  and you keep conceding it, and then you don't, and then it

24  sneaks back into a parenthetical.  So if it's at all unclear, I

25  find that Ven-A-Care was first to file on Recombinant.  Now

1    I've got Advate.

2          Now, I don't know what to do because my general rule

3    of thumb was, every drug is treated separately.  That was just

4    a general rule of thumb based on all my expertise in the

5    multidistrict litigation.  That's my general rule of thumb.

6    However, the way it's at least described in the briefs -- and I

7    have an incomprehensible pile of appendices -- is that it's the

8    follow-on drug to Recombinant, it was marketed by the same

9    division, is basically the same thing under a different title;

10   and that it's the same fraud, and that I should treat this

11   differently because unlike some of the other cases I've had,

12   this really is like essentially relabeling the same drug.  I

13   don't have enough of a record, or at least I don't understand

14   it well enough, to decide that.  So, I mean, having come

15   through all that, maybe what I can do is start off with

16   Mr. Breen, who seems to have been in the driver's seat for a

17   lot of this litigation, and you can help me out here because I

18   think I need an evidentiary hearing.

19          MR. BREEN:  Your Honor, yes, this is the first

20   opportunity I've had to address you directly, your Honor, about

21   this issue; and the first thing I'd like to point out is that

22   the DOJ lawyers, myself, Baxter counsel, and my fellow relator

23   counsel for Sun and Hamilton, everybody understood from long

24   before this settlement agreement that there was a first-to-file

25   issue regarding Advate.

1        THE COURT:  No one told me.

2        MR. BREEN:  Well, I understand that, your Honor, but I

3   just want the Court to understand that everybody understood

4   that.

5        THE COURT:  Excuse me.  When you say DOJ lawyer, since

6   apparently Mr. Henderson isn't aware of it, who at DOJ

7   understood this?

8        MR. BREEN:  Well, the lead lawyer, your Honor, that

9   was responsible and in detail reviewed this settlement and all

10  of them was Lori Oberembt.

11       THE COURT:  I think she's appeared in front of me

12  before.

13       MR. BREEN:  Of course she has.

14       THE COURT:  Yes.

15       MR. BREEN:  Now, at the same time, your Honor, there

16  was also the understanding that we were not dismissing,

17  procuring the dismissal, doing anything directly to the

18  Sun/Hamilton case.  It was my understanding, not only in

19  Sun/Hamilton, but there could be innumerable other drugs and

20  relators out there that I'm not even aware of, that when this

21  scenario arises, the question is, which relator had the drug

22  properly within their action?  We are declined case relators.

23  The Justice Department is not in the case, they're not a party,

24  and that's the way it's supposed to be.

25       THE COURT:  Excuse me.  So why was Advate's code in

1    the release?  All drugs, all drugs manufactured by Baxter, it

2    was pretty sweeping.

3          MR. BREEN:  That's right, and here's why:  Ven-A-Care,

4    as you're well aware, your Honor, was the first AWP relator and

5    has brought AWP claims on a wide variety of drugs against

6    specific defendants and what have you.  At the same time, in

7    this particular case, the State of Florida was one of the

8    settling parties directly.  They intervened.  Mr. McElroy is

9    here for the State of Florida today.  In some of our settlements,

10   as your Honor is aware, there were other Ven-A-Care state cases

11   that settled, and there were non-Ven-A-Care state cases that

12   settled.  Some we had New York in, some we had different

13   states.  We've done the best we can, your Honor, to effectively

14   and properly get all this AWP litigation settled appropriately

15   with the assistance of Professor Green, just like this

16   settlement.  So we always had these scenarios where you've got

17   multiple parties.

18         Baxter is not going to settle this case if they ever

19   think they're going to see Ven-A-Care on the other side of an

20   AWP case again.  They're not going to settle the State of

21   Florida's case if --

22         THE COURT:  I understand that.

23         MR. BREEN:  But, your Honor, that's why the language

24   is in there about "all drugs."  That's why.

25         THE COURT:  Yes, and that's why you settled Advate.

1        MR. BREEN:  Your Honor, what's in there in this

2   agreement is the labeler codes.  Advate is one of those.

3   Ven-A-Care could never bring an Advate case because we're

4   agreeing with Baxter that we are done with AWP.  But let me

5   just go to the next point because I think this is critical.

6   The settlement agreement also specifically says -- and I just

7   want you to know what our intent was because you asked me --

8   the settlement agreement specifically says that the United

9   States is not a party, that Ven-A-Care as the relator acts for

10  the United States only to the extent that it pled an action, a

11  false claims qui tam action, and it released the claims of the

12  United States to the extent it brought the action and to the

13  extent it was capable as a qui tam relator.  That's what it

14  says.  That's what we intended to do.

15       THE COURT:  Is there any paperwork detailing the fact

16  you told the government essentially that this would mean the

17  dismissal of the Sun/Hamilton claims?

18       MR. BREEN:  Your Honor, the discussions with the

19  government --

20       THE COURT:  Federal government I'm talking about.

21       MR. BREEN:  Yes, and I'm a little reticent to go into

22  them because they're privileged.  It was a settlement

23  discussion.  But in effect, I'll tell you what I said.  My

24  words were the following.

25       THE COURT:  To Lori whatever her name is.

1          MR. BREEN:  Yes, ma'am, in writing and verbally, and

2    they're the same words I gave Sun/Hamilton's counsel, the same

3    words Baxter's counsel has heard, and now you're going to hear

4    them.  There is a first-to-file issue as to Advate.  It is

5    legally uncertain who the proper relator is.  No matter how

6    this comes down, I think Sun and Hamilton have a better shot at

7    winning it if Ven-A-Care is not the adverse party to them.

8          THE COURT:  But let me ask --

9          MR. BREEN:  No, but, your Honor, that's what I said.

10         THE COURT:  You told these lawyers for Sun/Hamilton?

11         MR. BREEN:  And the Department of Justice.

12         THE COURT:  Why wasn't I told?

13         MR. BREEN:  Because, your Honor, number one, those are

14   privileged discussions.

15         THE COURT:  No.

16         MR. BREEN:  Your Honor, let me finish.  It's how we

17   got the settlement.  A lot of discussions go on in a

18   settlement, and this is a separate relator's case that stands

19   or falls on its own merits.  If we could have got them into the

20   settlement, that would have occurred, and you know that we get

21   as many of these parties into these settlements as we possibly

22   can.

23         THE COURT:  Okay, Mr. Breen, you and I are just not

24   going to agree on this.  We interpreted that release as broad.

25   It was broadly written.  It dismissed these claims.  As far as

cf121f66-4ec7-437b-858f-b1847c19e49b

1    I'm concerned -- maybe an appellate court is going to read it

2    differently -- I think the government can settle more broadly

3    than the claims in the complaint.  There's established case law

4    that goes to that.  I construed that as to what was happening

5    after very long hearings, very little help, I would say, from

6    other people in this room, and I finally did it, and it was a

7    broad release.  And then I get them coming in, first, with a

8    not very strong set of claims and then with this other claim,

9    which is, "You didn't have the authority to extinguish our

10   claim because we had the right to be heard."  And I found that

11   that was correct under the case law, and I'm not reviewing

12   that.

13        Now, I've got to figure out what to do.  I'm at the

14   "now," and I think, since I'm not reconsidering my earlier

15   decisions, which I spent huge amounts of time on -- if I'm

16   wrong, all power to the First Circuit, they can unravel it --

17   but at least for right now I'm not going to redo it.

18        MR. BREEN:  Your Honor, and I'm not suggesting that

19   you should.

20        THE COURT:  So now I've got to get to first to file.

21        MR. BREEN:  All I'm trying to do is report to your

22   Honor.  It's the first time I've had a chance to talk about

23   this with you.  Twenty/twenty hindsight, I did not think it was

24   Ven-A-Care's responsibility to litigate this issue.  I mean,

25   this is the other thing, Judge:  Sun and Hamilton were out from

Page 12

1    under seal two years before Ven-A-Care was.  They were

2    litigating with Baxter out from under seal two years before I

3    had an opportunity to take my case.  My case was under seal for

4    15 years.  They had every opportunity to tee this issue up and

5    litigate it before your Honor, but for their own purposes,

6    Baxter and Sun/Hamilton, they decided not to.  They knew we

7    were involved in negotiations, and they knew there was a

8    first-to-file issue involving Advate.  I'm not suggesting any

9    more than that.  And if I was lacking in not bringing to your

10   Honor's attention that there was another relator's case with

11   Advate here or someplace else, then I apologize for that.

12   Twenty/twenty hindsight, I wish I had, okay, but now we are

13   where we are.

14        THE COURT:  Thank you for that because I've had

15   other -- I've been around a while now -- I've had other

16   whistleblower suits where I actually have two sets of relators

17   in here duking it out as to who gets credit; and I know about

18   it, and we have the fight out, and sometimes there's a

19   settlement, and sometimes I have to rule.  It's not that

20   infrequent, actually.

21        MR. BREEN:  Right.

22        THE COURT:  But that's what usually happens, not sort

23   of I feel blindsided that I've somehow extinguished someone

24   else's case without meaning to.

25        MR. BREEN:  But, your Honor, we never intended nor

Page 13

1   wanted to be the ones that are duking it out with these

2   relators.  We are now.

3          THE COURT:  You are now.

4          MR. BREEN:  We have to be, okay?  And, by the way, I

5   have all respect for the relators.  The counsel are all friends

6   of mine; they're colleagues.  This is not a position that

7   Ven-A-Care wants to find itself in, but we are in this

8   position.  So we need to get to, I think, where we go from here

9   in this procedural pretzel, as your Honor correctly described

10  it, I think, in one of your orders.  Wherever we go and

11  wherever first to file is -- and I would like to speak to that

12  very briefly in a moment -- the other thing we did in this

13  settlement agreement, your Honor, is, we put a severability

14  clause in it.  And this is critical, Judge, it is absolutely

15  critical:  If for some reason we somehow unintentionally

16  infringed upon the rights of another relator -- and that can

17  happen only in one scenario -- that's if your Honor determines

18  that they were in fact first to file and Ven-A-Care wasn't --

19  if we caused them to be deprived of a fairness hearing such

20  that your Honor would then question the validity of our

21  settlement, those are the precise reasons why one has a

22  severability clause in the document.

23          THE COURT:  Did you discuss that with Baxter, that if

24  I found that you were not first to file with respect to Advate,

25  that that would be a basis for triggering the severability

Page 14

1    clause?

2            MR. BREEN:  Not before the settlement, your Honor,

3    because I fully thought -- what I thought was going to happen

4    is, we'd settle, Baxter would start litigating first to file

5    with Sun/Hamilton; and if Sun/Hamilton won on first to file,

6    they'd proceed with their case; if they lost, they wouldn't.

7            THE COURT:  They didn't tell you they were going to

8    raise this release issue?

9            MR. BREEN:  Your Honor, I don't recall all the

10   conversations we had.  I fully knew that Baxter was going to

11   make whatever arguments they could.  I did not recall -- I

12   don't recall standing here, them saying "We're going to raise

13   the release issue" per se, but it's always out there, Judge.

14   These defendants, that's why they want the releases.  And it

15   sort of gets to the following, as I see it, like this:  Your

16   Honor correctly said in the summary judgment order that

17   releases are typically broader than the exact words in a

18   pleading.  That's the world we all live in; res judicata is

19   broader than the exact words in a pleading.  If I'd have

20   litigated the Baxter case and all the other ones to the mat,

21   would have had an issue of, what is the scope of the

22   res judicata effect of the final judgment?

23           THE COURT:  Right.

24           MR. BREEN:  It's the same issue now.  The question is,

25   was the scope of the covered conduct the same circle -- we'll

1   call it a circle -- the scope, was it the same circle as the

2   scope of our action from a first-to-file perspective?  Was

3   there anything more in that settlement that went beyond what

4   the scope of first to file would be?  And, your Honor, it's

5   Ven-A-Care's position it wasn't, that they are concurrent

6   circles.  They're the same scope.

7               THE COURT:  I know.  I've ruled.  I'm not relitigating

8   it.

9               MR. BREEN:  But I don't think you'd ruled against us

10  on that.  What I said is -- Judge, I'm not asking you to change

11  what your ruling is.  I'm telling you that your ruling said

12  that there was a specific scope of the release based upon the

13  case that was settled, and that the first-to-file scope of our

14  case is the same scope.  In other words, we didn't settle any

15  more than we're entitled to from a first-to-file perspective.

16              THE COURT:  I said it released Advate.

17              MR. BREEN:  And I believe we're first to file on

18  Advate for the same reasons, because --

19              THE COURT:  I think I -- doesn't it specifically have

20  the specific labeler clause Advate in there?

21              MR. BREEN:  Your Honor, no.  Advate is not a labeler

22  code.  Labeler Code 0944 is a labeler code that's consistent

23  with a division of Baxter that puts that labeler code on every

24  one of the drugs they manufacture under that label code.

25              THE COURT:  Sure, and I said the scope of the release

1    was so broad that it released anything with that labeler code.

2            MR. BREEN:  And I agree with you, and what

3    Ven-A-Care's position is, the scope of Ven-A-Care's case from a

4    first-to-file perspective was so broad it encompassed it also

5    for the following reasons, and I'd like to address that.

6            THE COURT:  No, no, because now we're getting into

7    first to file.

8            MR. BREEN:  We are.

9            THE COURT:  I think I need to decide first to file.  I

10   think I cannot escape that, and before I get you to argue about

11   that, that now I need to just see if anyone disagrees with that

12   basic premise.

13           MR. BREEN:  And I do, and I'd like to state why.

14           THE COURT:  I thought you just said -- you started to

15   argue first to file.

16           MR. BREEN:  Well, I was because you wanted to hear

17   about it, Judge, but let me explain why.  Right now we're about

18   to tee up a subject matter jurisdiction evidentiary hearing in

19   the wrong case.  The Ven-A-Care case is settled.  It's closed.

20   We settled rather than litigate these issues.  We settled

21   rather than have to appeal these issues or defend an appeal of

22   these issues.  That's why we settled.  But now we're being

23   required to litigate first to file in our closed case.

24           THE COURT:  Which I'm about to reopen.

25           MR. BREEN:  But, your Honor, but think about this.

cf121f66-4ec7-437b-858f-b1847c19e49b

1    Once you do that and make us litigate an issue from another

2    case in this case, which I think that's going to make it more

3    complicated, if you find that they're first to file, the

4    severability clause is going to send it right back to be tried

5    anyway.  There's no need to litigate it in this case.  The

6    severability clause, if you open it up and litigate it in this

7    case and determine they're first to file, therefore, there may

8    be a reason to invalidate our agreement, the severability

9    clause is going to say, no, carve out that subject matter, and

10   there's no invalidation in the agreement.

11          THE COURT:  Well, that was a brand-new argument that

12   was raised, and so I need to hear other counsel --

13          MR. BREEN:  I raised it in my response to --

14          THE COURT:  I know, and it was a brand-new argument

15   that wasn't raised in the, that I remember anyway, in the

16   original set of arguments, so --

17          MR. BREEN:  But that sends it back anyway, so the

18   first to file should be litigated on an evidentiary basis in

19   where it belongs, in the Sun/Hamilton case where it should have

20   been litigated in the first place, and that's my point.

21          THE COURT:  All right, so Baxter, what's your

22   position?

23          MR. JACKSON:  Your Honor, may I back up a little bit.

24   And I'm not going to reargue things you've made decisions on.

25   In fact, I'm going to remind you of them, I hope, but this is

Page 18

1  how you unwind or untwist the pretzel.  And I'm relying on the

2  very case that you cited, the LaCorte case in the Fourth

3  Circuit.  LaCorte had a scenario where there was qui tam one;

4  qui tam one is settled; qui tam two.  Qui tam relators in one

5  tried to intervene in the second qui tam.

6           THE COURT:  But for a very different reason.  I read

7  that case.  It's very different substantively.

8           MR. JACKSON:  But, your Honor, what the Fourth Circuit

9  said is, 3730(b)(5) absolutely prohibits the relator from one

10  trying to intervene in another.  That is precisely what Sun and

11  Hamilton are doing here.  I don't think anyone in this

12  courtroom would disagree that neither Sun nor Hamilton are

13  parties to the Ven-A-Care case, and in an ordinary scenario

14  they would have to --

15           THE COURT:  Well, how do they get their fairness

16  hearing?

17           MR. JACKSON:  Well, let me --

18           THE COURT:  All right, so get me -- they have a right

19  to a fairness hearing.

20           MR. JACKSON:  Well, I disagree, Judge, and here's why,

21  and I'll tell you why.  They have to try to intervene in

22  Ven-A-Care.  Rule 24, permissive or mandatory, they have to

23  try, though they can't because 3730(b)(5) says only the

24  government may intervene in the other lawsuit, period.  They've

25  got to stay in their lane.  So I think you should deny their

cf121f66-4ec7-437b-858f-b1847c19e49b

Page 19

1    motion.

2            It is possible, if you follow LaCorte where the Fourth

3    Circuit said, "Hey, you first qui tam relator, maybe you could

4    file a 60(b)(6) motion in your case," not in Ven-A-Care.  So

5    it's possible that you --

6            THE COURT:  So are you agreeing that that's the

7    solution?

8            MR. JACKSON:  I'm not, your Honor, and --

9            THE COURT:  What you want then is out, and can I just

10   say something?

11           MR. JACKSON:  Yes, ma'am.

12           THE COURT:  You're relitigating.  Let me just say it's

13   possible that the 60, whatever, the Rule 60 motion is in the

14   second case, not the first case.  I disagree with your reading

15   of the case, as you know, because I've done it.  I think

16   they're not entitled to go relitigate it or intervene the way

17   another party would.  It's simply a question of whether they

18   get some portion of the proceeds.

19           MR. JACKSON:  Okay, and that's where I'm going to

20   agree with you, that it seems to me they have three

21   alternatives, or let me rephrase that.  It seems to me you have

22   three alternatives:  A, like we believe LaCorte says, they have

23   no remedy; B, they can appeal the summary judgment decision.

24           THE COURT:  When you say no remedy, don't you think

25   there's a due process violation?

Page 20

1          MR. JACKSON:  I do not, your Honor.  And then the

2     third remedy that you could I guess choose is, their 60(b)(6)

3     motion is not filed in Ven-A-Care.  They could file a 60(b)(6)

4     motion in their case.  Then --

5          THE COURT:  Do you oppose it?

6          MR. JACKSON:  I probably will, your Honor, but --

7     well, I just want you to know that I believe the remedy is

8     zero.  But if you say that that's how you're going to go, the

9     way they should do it is file it in their case.  And there is

10    not a fairness hearing in their case.  It is a hearing as to

11    whether they're entitled to any portion of the settlement that

12    Baxter has already reached.

13         THE COURT:  Right.

14         MR. JACKSON:  Nothing about fairness.  We have a deal.

15    We have a deal with Ven-A-Care, acting as the agent of the

16    government, to which the government consented.

17         THE COURT:  Maybe you don't like the word "fairness,"

18    but they get a right to be heard as to whether or not they get

19    a piece of the pie.  Now, whether it's in your case or in their

20    case, whatever I do, I have to decide first to file.  Why

21    doesn't it make sense to cut the Gordian knot here and at least

22    find out whether they have a claim on first to file?

23         MR. JACKSON:  I'm ready to argue that whenever you

24    want to hear it, Judge.

25         THE COURT:  I'm not going to have an argument because

cf121f66-4ec7-437b-858f-b1847c19e49b

1    I don't understand it.  Someone shoveled this pile onto the

2    thing.  I don't understand it.  And so I'm thinking I'll have

3    an evidentiary hearing.  I'm not prepared based on this record

4    to even begin to understand it.

5              MR. JACKSON:  Well, your Honor, I can argue first to

6    file.

7              THE COURT:  All right, maybe, we will, but we will in

8    a second.

9              MR. JACKSON:  Okay.

10             THE COURT:  But here's the issue:  I am not redoing,

11   whether it's my basic -- which took me months to get through

12   this, as I'm sure it did all of you.  It's a brand-new.  It's a

13   novel situation.  There's nothing in the treatises as to how to

14   deal with it, but it is quite clear that if a relator thinks

15   that his claim has been extinguished than some other means by

16   the government, the government is supposed to let them know --

17   and, of course, the government didn't hear because they didn't

18   realize it -- that they may have a chance to seek a portion of

19   the pie; and the government failed to do that because the

20   government didn't understand the release to be as broad as you

21   have been arguing.  Why didn't you let the government know that

22   or me know that?

23             MR. JACKSON:  Your Honor, just so you know, that

24   release came to us from the other side.

25             THE COURT:  Ven-A-Care.

cf121f66-4ec7-437b-858f-b1847c19e49b

Page 22

1          MR. JACKSON:  Yes, your Honor.  It happens to be the

2    same release that we have in every of our other state cases.

3    It's not five like the relator said.  We've settled more than

4    twenty cases, and they're all all-drug settlements.

5          THE COURT:  Well, did you let the other people know in

6    the other cases?

7          MR. JACKSON:  Your Honor, we settled those cases,

8    their individual cases, and on a state-by-state basis.

9          THE COURT:  Why didn't you let me know?  We could have

10   dealt with it.

11         MR. JACKSON:  Your Honor, we thought we had a

12   settlement that was consistent with everything we'd been doing.

13         THE COURT:  Did you know you were extinguishing, you

14   would be moving into court the next day to move for summary

15   judgment to kick out their claim, Sun/Hamilton?

16         MR. JACKSON:  Well, do I believe it extinguished it?

17   Yes.  Do I believe that I was entitled to a release that we

18   negotiated?  Yes.

19         THE COURT:  Well, anyway, I've dealt with it.  I want

20   to hear from the government for a minute.  Mr. Henderson.

21         MR. HENDERSON:  Thank you, your Honor.

22         THE COURT:  You didn't file anything.

23         MR. HENDERSON:  I don't envy your position.  The

24   government does recommend that you address the first-to-file

25   issue.

Page 23

1        THE COURT:  You said it does or does not?

2        MR. HENDERSON:  Does.  We recommend that you address

3   and decide the first-to-file issue first.  If Ven-A-Care is the

4   first to file, that ends the Sun/Hamilton claims.  If you

5   decide that Sun/Hamilton was the first to file, it follows

6   that -- and I'm just talking about the Advate claims -- it

7   follows that the Advate claims were not part of the Ven-A-Care

8   case.  It's the government's view that Ven-A-Care had no legal

9   ability to release on behalf of the government claims outside

10  of the scope of its case, and the United States never intended

11  to go that far.  If you look at the consent that the United

12  States filed -- I'm sorry, Mr. Breen filed it in his motion

13  papers -- "The United States hereby consents to the dismissal

14  with prejudice of claims in the above-captioned action --"

15  this was the Ven-A-Care case -- "with respect to Baxter

16  Healthcare, Baxter International, pursuant to and as limited by

17  the settlement agreement and release."  The government also

18  consented to the entry of the proposed order of dismissal in

19  the form attached.

20        THE COURT:  So you're saying it was a limited consent?

21        MR. HENDERSON:  It was a consent to the dismissal of

22  the claims encompassed by the Ven-A-Care case.

23        THE COURT:  But let me ask you, now we have a

24  representation that -- what's Lori's last name?

25        MR. HENDERSON:  Oberembt.

cf121f66-4ec7-437b-858f-b1847c19e49b

Page 24

1          THE COURT:  Oberembt, that she knew.

2          MR. HENDERSON:  She knew what?

3          THE COURT:  She knew that Advate was at least a

4     question mark.

5          MR. HENDERSON:  I don't know, but I wouldn't have any

6     reason to disagree that she knew it was an issue.  What I do

7     agree with Mr. Breen is, I think at best the government knew it

8     was an issue and that it was an unresolved issue.

9          THE COURT:  I think you told me at some point, either

10    in writing or orally, you did not intend to release Advate.

11         MR. HENDERSON:  Well, we did not intend to release any

12    claims not encompassed by the Ven-A-Care complaint.

13         THE COURT:  Well, why wasn't -- did you understand

14    that this could be extinguishing another relator's suit?

15         MR. HENDERSON:  Personally, your Honor --

16         THE COURT:  Not you personally but DOJ, DOJ.

17         MR. HENDERSON:  That it could be extinguishing the

18    relator's case?  It's hard for me to speak to the DOJ lawyers

19    on a personal level, but my belief is, the United States knew

20    it was -- it was consenting to the dismissal of the Ven-A-Care

21    complaint, and to the extent, if Advate was encompassed within

22    that, yes, it was dismissed; but if Advate wasn't encompassed

23    within it, then, no, it wasn't dismissed.

24         THE COURT:  But can I just say, under your procedures,

25    what you've done in front -- I don't remember if it's you

Page 25

1   personally but certainly other members of your office have done

2   in front of me, I've often had battles with relators in front

3   of me, who gets what for the attorneys' fees, who gets what?  I

4   mean, if you had thought that it was dismissing the Advate

5   cases, wouldn't DOJ have notified the other relators so that

6   they could get a piece of the pie?

7          MR. HENDERSON:  Yes.  Yes, your Honor, we would

8   have --

9          THE COURT:  So that didn't happen here.

10          MR. HENDERSON:  If we thought we were releasing or

11   dismissing claims that were the subject of another

12   first-to-file case, we would have been clear about it, and

13   that's why I encourage you to decide the first-to-file issue

14   first.  And if you were to decide that the Sun/Hamilton was the

15   first to file, then you should construe the settlement and the

16   government's consent and your own order of dismissal as

17   applying only to the Ven-A-Care case and not to the

18   Sun/Hamilton case because Ven-A-Care had no legal authority to

19   give that release, and I doubt very much that the United States

20   could properly give -- we didn't sign the settlement agreement,

21   but even if we had, I don't think it would be proper for the

22   United States to settle in the Ven-A-Care case claims in

23   another case.

24          THE COURT:  Well, I don't think you can without giving

25   them notice and seeing if they get a piece of the puzzle.

1        MR. HENDERSON:  Yes, I don't think we can.  So if you

2   were to find that Sun/Hamilton was the first to file, then I

3   think you've got to give them a remedy or you've got to give

4   them a hearing, and I don't think it's appropriate to conclude

5   that we settled their claims in the Ven-A-Care case.

6        THE COURT:  If I find that they're the first to file,

7   your position may be that it was beyond the scope of the

8   authority of Ven-A-Care to settle it, even though the

9   settlement release was broad.

10       MR. HENDERSON:  Yes.

11       THE COURT:  And then you just let them back into the

12  Baxter case?

13       MR. HENDERSON:  Yes, or --

14       THE COURT:  So you would sort of agree with Baxter

15  that I have to reopen the Baxter case if I find they're first

16  to file?

17       MR. HENDERSON:  I think that if you find Sun/Hamilton

18  is first to file, you probably have to reopen the Baxter case,

19  the Sun/Hamilton motion for summary judgment.

20       THE COURT:  I mean, you may be agreeing with Baxter.

21  It's clear I have to reopen one of the two actions because at

22  this point they're both closed if they're first to file.

23       MR. HENDERSON:  Yes, and I don't think it would be the

24  Ven-A-Care case.

25       THE COURT:  I don't know because the settlement

1    release was so broad and you consented to it.  If you look at

2    the plain language, it's a very complicated case.  I --

3              MR. HENDERSON:  If I can just say one more thing.  If

4    you were to find that Sun/Hamilton were the first to file, then

5    there would be an internal inconsistency in the settlement

6    agreement; one, the broad language of covered conduct, but also

7    the language that limits the release to the extent that

8    Ven-A-Care has a legal ability.  There's inconsistency in those

9    two phrases, and I suggest that given the language of the False

10   Claims Act and the limited authorities of the False Claims Act,

11   both as to Ven-A-Care and as to the government, in that

12   situation of internal inconsistencies, you really should

13   interpret it as consistent with the False Claims Act in

14   carrying out the intent of the False Claims Act.

15             THE COURT:  So at some point you're going to have to

16   put pen to paper on this, but I think the appropriate thing to

17   do is, whether it's opening up the first case, is what I'll

18   call it, to make them part of the fairness hearing, or whether

19   it's opening the second case because I will say it was beyond

20   the scope of what Ven-A-Care could have done if they were first

21   to file, I have to decide the first to file.  If I find they're

22   not first to file, then this whole thing is over.

23             And now the question is, how do I resolve first to

24   file?  I can't do it simply -- I know you're going to press

25   Duxbury changed the law.  It didn't really change the law.  I

1    know Duxbury pretty well.  It's got to be based on the facts,

2    whether or not this -- and it can't just be based on my prior

3    rulings with respect to Ven-A-Care in the Abbott case because

4    those were very different drugs sold by different divisions.  I

5    need to look at the facts of these two drugs, whether they were

6    different enough or similar enough to put the government on

7    notice, and you both say opposite things in your briefs in ways

8    that I just don't know what the answer is.  And there was a

9    tiny little footnote in Sun/Hamilton's brief saying, "And, by

10   the way, you may need an evidentiary hearing."  And I'm sort of

11   right there.  I may need an evidentiary hearing.

12          Yes?

13          MR. BREEN:  Your Honor, just briefly to make sure I

14   know where the issues are, and it might help refine them a

15   little bit.  I want to make sure we're all on the same sheet of

16   music as to what we're fighting about, I mean, what the fight

17   is about.  At this point I think that we need to know -- you

18   indicated that you thought this was all about Sun/Hamilton's

19   claim for a piece of the relator's share.  If that's what this

20   fight is about, that's not my understanding.  My understanding

21   is, this fight is about Sun/Hamilton setting aside my

22   settlement and requiring me to go try my case against Baxter.

23          THE COURT:  No, I understand that they're not, that

24   they --

25          MR. BREEN:  Well, that's absolutely --

1           THE COURT:  Well, why don't you talk for yourself.

2           MR. BREEN:  Yes, but that's one.  Two more questions.

3    Two, they seem to have said in their reply to our response that

4    they're no longer seeking Medicare damages for Advate because

5    when I argued the Medicare facts in support of first to file,

6    they said, "Oh, no, we're not seeking damages as to Advate."

7           Third, they seem to indicate they're not seeking

8    damages for the period of time covered by any state settlement,

9    and there's lots of them, and they all include Advate.  So I

10   think we need to know what we're fighting about.  Are we just

11   fighting about a relator's share and whether those three

12   limitations also apply to their claims?  Because if it is, it's

13   going to get a lot easier to get this thing resolved if that's

14   all we're talking about.

15          THE COURT:  All right, so?

16          MR. CHIZEWER:  Your Honor, let me say a few things.

17   First of all, our motion that we filed that we're here on, our

18   60(b)(6) motion was asking your Honor to review the Ven-A-Care

19   settlement and evaluate it with respect to its fairness in

20   light of Sun and Hamilton's Advate claims.  We limited it to

21   the Advate claims because we did hear your Honor at least be

22   skeptical as to whether we were first to file on Recombinant.

23   We may have disagreed with your Honor's skepticism there, but

24   we did hear that message, and that's why the motion that we

25   filed was only with respect to review of the settlement in

1    light of the Advate claims.  We actually did that because,

2    perhaps naively, we thought there might be some consensus that

3    just Advate should be removed from that settlement and that all

4    the parties would agree on that based on prior positions taken

5    by the parties.  Particularly, Baxter had already filed a

6    first-to-file motion in the Sun/Hamilton case, and they never

7    claimed that Ven-A-Care was first to file on Advate, only --

8            THE COURT:  They sure claimed it was barred under the

9    release.

10           MR. CHIZEWER:  Only -- but prior to them ever even

11   entering into that release, they made a first-to-file motion

12   specifically on the first-to-file issue, and their motion was

13   only on the Recombinant claims.  They didn't claim that

14   Ven-A-Care was first to file on Advate.  And in fact, I mean, I

15   don't understand how Ven-A-Care could be first to file on

16   claims, the Advate claims, when I think Mr. Breen is now

17   telling you that they didn't even know whether they were

18   bringing the Advate claims or not; they just were hoping to get

19   as big a bang for their buck as they could based on the

20   complaint that they filed.  I mean, there's no disagreement

21   that the complaint that they filed back in 1997, eight years

22   before our Sun/Hamilton claim was filed, never mentioned

23   Advate; and it was amended several times, and Ven-A-Care never

24   sought to include Advate in that complaint.

25           THE COURT:  Well, Advate didn't come on the scene till

cf121f66-4ec7-437b-858f-b1847c19e49b

1   2003, right?

2           MR. CHIZEWER:  Right, but they could have --

3           THE COURT:  I forget, much later.

4           MR. CHIZEWER:  Right, but they were making amendments

5   all the time, and they could have made amendments to add

6   Advate.  In fact, instead in some of the amendments, they

7   actually dropped out some of the allegations even with respect

8   to Recombinant.

9           Anyhow, what happened, your Honor, is, after we filed

10  our motion, we have the late-breaking claim now that, by Baxter

11  and by Ven-A-Care, that Ven-A-Care was first to file, not only

12  with respect to Recombinant.  They also claim they were first

13  to file with respect to Advate.  So their argument --

14          THE COURT:  What they're saying is a little vaguer

15  than that, is that maybe they are, maybe they're not; it was a

16  question on the table; but if you are first to file, just carve

17  it out, sever it, and let Baxter worry about it in the other

18  actions.  That's their basic position.

19          MR. CHIZEWER:  I guess I don't understand how you can

20  be first to file a claim if you don't even know whether you are

21  or not.  That doesn't make any sense to me.  But their argument

22  was -- the only argument they have on first to file with

23  respect to Advate is that they were first to file with respect

24  to Recombinant, and therefore somehow automatically they are

25  then first to file with respect to Advate as well.  And so we

1    were forced to make the argument, which we've always believed

2    and which I think I addressed, admittedly unconvincingly to

3    your Honor but nevertheless addressed the last time we were

4    before you, that we thought we were first to file with respect

5    to Recombinant only on the specific AWP claims that

6    Sun/Hamilton were bringing, which they brought for the first

7    time in 2005.  We were not claiming to be first to file on the

8    traditional AWP claims that Ven-A-Care brought to light for

9    everybody back in 1995.

10         THE COURT:  I'm not arguing Recombinant.  It was

11   listed in the complaint.  It was expressly dismissed.  It was

12   AWP-related.  I'm not going back on Recombinant.  Now we've got

13   Advate.  Could you answer Mr. Breen's question:  Are you

14   looking for a piece of his pie, or are you looking to litigate

15   separately with respect to Baxter, or both?

16         MR. CHIZEWER:  Well, I would say three things.  We're

17   looking to litigate the claims separately.  And we thought,

18   actually, that that had been ruled on by your Honor and that we

19   don't have the opportunity to do that.  If we don't have the

20   opportunity to do that, instead we filed this 60(b)(6) motion

21   to reevaluate, to ask the Court to reevaluate the settlement

22   agreement between Ven-A-Care and Baxter, not only to decide

23   whether Sun/Hamilton were entitled to a piece of that pie but

24   as to whether the settlement amount was fair in light of the

25   value of the Advate and Recombinant claims, or just the Advate

Page 33

1    claims, you know, based on what your Honor is saying today.

2            But I will say, your Honor, I think what we need to

3    know is -- we may not want to go through all the fighting just

4    to get to a fairness hearing just so we can get a piece of the

5    pie out of the settlement that's already done.  If your Honor

6    is saying that we don't have the opportunity to actually

7    address the fairness of the amount of that settlement agreement

8    in light of the Advate claims, because we don't understand how

9    they could have gotten full value for the Advate claims if

10   Baxter didn't even know whether it was getting a release or not

11   for those claims, nobody would pay the fair value of those

12   claims --

13           THE COURT:  Well, at least they say they think they

14   were getting a release.  Let me ask the government that

15   question actually.  Do you think, if we end up in a fairness

16   hearing, was there any intent, do you know, to capture the

17   value of the Advate claim?  Do you know?

18           MR. HENDERSON:  I don't know.  I'm not aware of any

19   evaluation of the Advate claims, but I wasn't --

20           THE COURT:  Was it before Eric Green?  Is that it?

21   Was that value discussed of the claims?

22           MR. HENDERSON:  I can't --

23           THE COURT:  Mr. Breen?

24           MR. BREEN:  Your Honor, I want to be real careful

25   here, Judge, because you're asking me to discuss what was

Page 34

1    discussed in the mediation, and there's lots of communications

2    between myself and the Justice Department and in mediation and

3    everything, and I'm very uncomfortable --

4         THE COURT:  Well, at some point you're going to have

5    to because I'm going to have to decide -- if I think that they

6    were first to file, I'm going to have a problem.  I'm either

7    going to say that Advate was settled, and I then will have to

8    go into, was it a fair settlement?  Was the value of Advate --

9    that's not a confidential communication -- was the value of

10   Advate -- I'm not telling you to put the number on it -- part

11   of the consideration?  Because if you're going to tell me "no"

12   or you won't tell me, I'm going to say, "No, and it wasn't

13   fair, and it didn't take into account Advate."

14         Another possibility is, if they're first to file, then

15   what I do is, I take your and the government's position and

16   say, "Therefore you lacked authority to enter into the release

17   that you did."  And then I'm going to have Baxter scream --

18   he's already out of the chair -- saying, you know, "Yes,

19   government did consent," or alternatively, "Yes, you did have

20   the authority."

21         MR. JACKSON:  I was just going to give you one piece

22   of data, your Honor.  You'll remember Baxter was part of the

23   Track Two settlement.  Under the settlement agreement, in the

24   settlement that you determined to be fair, claimants who bought

25   only Advate get zero dollars.  The drug was after the perfect

1   storm.  They're all the things that are identified, the Advate

2   story --

3           THE COURT:  And it may end up there.  I mean, I'm just

4   saying, I'm just not there yet.

5           MR. JACKSON:  Well, your Honor, and I just want to be

6   clear, I don't believe Sun/Hamilton have -- they've got to stay

7   in their lane, and they can't take shots at the settlement.  It

8   may be that they could ask for a piece of that settlement, of

9   that $25 million that the government got, but I believe it's

10  reversible error for them to be able to take a shot at a

11  settlement agreement in a case where they're not a party.

12          THE COURT:  All right, so you've all taken your stake.

13  Now, when am you going to have this hearing on first to file?

14  Because I completely agree with Mr. Henderson:  Regardless of

15  which case it's in, that will be determinative.

16          By the way, you're here from Florida.  I'm sorry.

17  It's probably a lot nicer down there, but did you want to be

18  heard on something?

19          MR. McELROY:  No, your Honor.

20          THE COURT:  Okay.  Well, welcome.

21          MR. McELROY:  Just here making sure our interests are

22  protected.

23          THE COURT:  Okay, thank you for coming.

24          All right, we could do -- just having read it, I'm not

25  sure I can rule on the papers.  Has there been any discovery

1    about Advate?

2         MR. BREEN:  Your Honor, there's been a lot of

3    investigation.  We've got investigative documents during the

4    course of the government's investigation and the states'

5    combined investigations that we got from Baxter, before the

6    government made their declination decision and the states

7    intervened and settled, where the discovery shows that Baxter

8    was attempting to convert all their customers from Recombinant

9    to Advate as part of a combined marketing program.  We've got

10   lots of information from the government's investigation showing

11   that of the Ven-A-Care case.  So to the extent that there's

12   discovery, yes, there's discovery out there, and we're going to

13   need some discovery if we're going to have an evidentiary

14   hearing.

15         THE COURT:  On first to file.

16         MR. BREEN:  Absolutely.

17         MR. CHIZEWER:  Your Honor, just to be clear, when

18   Mr. Breen says "we" have discovery, I'm sure he does, but Sun

19   and Hamilton don't have that discovery.

20         MR. JACKSON:  Your Honor, discovery is long over.  One

21   case is done.  The discovery period in the Sun/Hamilton case is

22   over.

23         THE COURT:  Well, was there a period for discovery in

24   Sun/Hamilton?

25         MR. JACKSON:  Sure there was.

Page 37

1          THE COURT:  I just don't remember.

2          MR. JACKSON:  Yes, ma'am.

3          THE COURT:  I've had hundreds of these AWP cases,

4     hundreds, and I was hoping this is my last one.

5          MR. JACKSON:  I've been here since 2003, Judge.

6          THE COURT:  My last one, so --

7          MR. CHIZEWER:  There was a period, but your Honor

8     dismissed the qui tam Sun/Hamilton claims before the close of

9     discovery.

10         THE COURT:  You didn't do any --

11         MR. CHIZEWER:  Oh, there was discovery, yes.  There is

12    outstanding discovery that had not been responded to.

13         THE COURT:  There was a long period of time of

14    discovery, wasn't there?

15         MR. JACKSON:  It was a long period of discovery.

16         MR. CHIZEWER:  The point, your Honor, was, there is

17    outstanding discovery --

18         THE COURT:  Well, do you have an expert that says

19    they're different drugs?

20         MR. CHIZEWER:  Do we have an expert?  We have an

21    insider from -- one of our relators worked at Baxter and

22    understood the different nature of the drugs; and our other

23    relator, who was in charge of purchasing those drugs and

24    interacted directly with the people from Baxter, also has

25    knowledge about the differences between the drugs and the

1    different --

2            THE COURT:  So you need to put them on the stand,

3    explain why they're -- are they scientists, or are they

4    salespeople?

5            MR. CHIZEWER:  They're not -- I'm not sure about

6    Sun/Hamilton.  They're not scientists.

7            THE COURT:  I haven't looked at this schedule for a

8    while, but I seem to remember there was a long period of time

9    there which was open for discovery.  You must have received

10   documents.  I know you're new to the case but --

11           MR. CHIZEWER:  No, I am new to the case, your Honor,

12   certainly newer than Mr. Kleiman, but I can say for certain

13   that there was discovery served upon Baxter timely that was

14   never responded to because your Honor -- I think there may have

15   been even a -- I can't remember if there was a stay or not,

16   but, in any event, your Honor ruled on their motion for summary

17   judgment before the close of discovery.

18           THE COURT:  On the release.

19           MR. CHIZEWER:  Right, and so my point is, there was

20   outstanding discovery that we --

21           THE COURT:  But we're not going to have a full-blown

22   discovery period.  I'm ready to end this case.  Let me just put

23   it one way or another.  One way or another, I want this case to

24   be over, and it's been languishing because of all these

25   complications.  Just as I keep reiterating, and I think

1    everyone at this point would agree, we could have vetted this

2    all in the beginning.  But at this point you have the burden of

3    demonstrating subject matter jurisdiction.  I am curious about

4    what you want.  I'm not doing another six months of discovery.

5    How many months discovery?  Does anyone remember?

6            MR. JACKSON:  I can get that back to you, your Honor,

7    but I can't tell you now what was served and when.

8            THE COURT:  We're not going to do damage discovery,

9    we're not going to do anything.  It's only the relationship

10   between Advate and Recombinant, whether they're the same drug

11   and how they were marketed.

12           MR. JACKSON:  But, your Honor, I don't believe there

13   should be discovery.  Discovery is closed.  If they want to

14   bring in evidence and talk about that, that's fine, and I'll

15   have to bring in evidence to talk about the issue as well, but

16   I don't see why we should take the time, money, and effort to

17   do -- even what we're talking about is a whole lot of

18   discovery.  That rarely happens.  I'm not sure I've ever done

19   that in a single first-to-file case or around a first-to-file

20   argument.

21           THE COURT:  Well, with subject matter jurisdiction,

22   you frequently have discovery over subject matter jurisdiction.

23   You do.  I mean, right?  You do over personal.  You do over

24   subject matter.  You have discovery.  Now, the question is,

25   this is an old case, it's a really old case, and there was an

Page 40

1   opportunity for discovery.  It may not have completed, and

2   maybe this wasn't the focus.  I don't remember.

3          MR. CHIZEWER:  Well, certainly not, your Honor,

4   because the only --

5          THE COURT:  How many months of discovery did you have?

6          MR. CHIZEWER:  I'm sorry, what was the question?

7          THE COURT:  I'm just going to have to go in.  I don't

8   remember.  Does anyone have how long --

9          MR. JACKSON:  I've got all kind of timelines, Judge,

10  but I don't have one of discovery, so I'm going to have to get

11  back to you with a letter, a brief to outline what occurred.

12         MR. BREEN:  Your Honor, Ven-A-Care --

13         THE COURT:  Well, you've got to prove subject matter

14  jurisdiction is what you've got to do.

15         MR. BREEN:  Your Honor, Ven-A-Care has had zero

16  discovery in their subject matter jurisdiction issue.  I mean,

17  we efficiently and quickly got this case resolved after it was

18  sealed for 15 years along with all the other Ven-A-Care cases.

19  We thought we were doing the right thing.  Now, if we're going

20  to litigate this thing, we respectfully request the opportunity

21  to have discovery vis-a-vis Sun and Hamilton and get to the

22  bottom of this issue.

23         THE COURT:  All right, but we're not doing a

24  full-blown -- how many depositions do you need?

25         MR. BREEN:  I need maybe two depositions and a couple

1    of requests for production and an interrogatory or two, but I'm

2    going to need some discovery, your Honor, if we're going to be

3    adversaries to them on that issue.

4            THE COURT:  Does the government want any discovery?

5            MR. HENDERSON:  No, your Honor.  The United States

6    takes no position on the first-to-file issue.

7            MR. CHIZEWER:  Your Honor, we can certainly make due

8    with the same level of discovery that's granted to Ven-A-Care.

9            THE COURT:  How many depositions would you need,

10   anything in addition?  Let's assume you have one 30(b)(6) of

11   Baxter limited to subject matter jurisdiction, one 30(b)(6)

12   on -- one for each of the relators?  Anything else that we

13   need?

14           MR. JACKSON:  Again, your Honor, we think there should

15   be no discovery.

16           THE COURT:  Okay, all right, I understand that, but

17   assuming that there is --

18           MR. JACKSON:  But then as narrow as possible.

19           THE COURT:  Okay, so I'm permitting one 30(b)(6) of

20   Baxter, one deposition each of the relators.  Because this is

21   subject matter jurisdiction, I'm not going to have full-blown

22   expert discovery, but if there's an expert report, you should

23   produce it.  And then I'm going to -- there should be a

24   document production that does not go to damages.  It just goes

25   to the pricing, labeling of the Advate drug and its

cf121f66-4ec7-437b-858f-b1847c19e49b

1    relationship to Recombinant, because the key here is going to

2    be, if it's the same AWP fraud with a follow-on drug -- you

3    know, like sometimes if a drug company does it generic, that's

4    just to keep the market after the brand, or if it's the exact

5    same patients, the exact same salespeople, you know, all the

6    things -- it may have been enough to alert the government.  If

7    it's a completely different drug and different salespeople and

8    different pricing and different spreads, then maybe not.  I

9    mean, it's completely fact-specific.  It's been true throughout

10   this MDL litigation, been completely fact-specific.

11            So you can do a set of document requests.  That should

12   probably go out next week.  And then in February we'll do

13   either an evidentiary hearing -- what do you think, do we need

14   live people or just do it based on the depositions?  I don't

15   know that I need -- I think at that point I can make

16   determinations on subject matter, right?

17            MR. JACKSON:  Your Honor, that seems right to me, but

18   I'd like maybe 20 minutes to think about it.

19            THE COURT:  So why don't we not decide it.

20            MR. JACKSON:  And maybe it makes sense, if we're going

21   down this path, that we get together and talk about a schedule

22   that makes some sense but is narrow as you have just defined

23   it.

24            THE COURT:  So all that discovery should happen by

25   January 31?  It's people's holidays.  I don't want to just

Page 43

1    really -- so then we'll have a hearing -- query, evidentiary or

2    non-evidentiary -- in March, say, on first to file.  And in the

3    meantime, what I'm really -- do you have a date?  I think it

4    will be a full day anyway, maybe two days?  What do you think?

5              MR. BREEN:  I would say two days, at least, Judge.

6              THE COURT:  I would say two days, if it's evidentiary,

7    and then we'll just truncate it if I can do it on the record.

8              MR. BREEN:  Can I make a recommendation, Judge?

9              THE COURT:  Yes.

10             MR. BREEN:  I may get -- somebody's going to shoot me

11   for this, but let's just do it in both cases.  Let's just put

12   both cases numbers up and let's just do it.

13             MR. JACKSON:  I will shoot him for that, your Honor,

14   because we think there's an appellate issue here and coming out

15   of -- but just I'd like to preserve the record.

16             THE COURT:  I'll put both numbers on it, and then you

17   can -- because I -- there is no case like this one.  That's the

18   good news.  None of these cases are like this that we found.

19   And you probably didn't find them either, right, or you would

20   have told me about them?

21             MR. JACKSON:  Well, it's LaCorte, Judge.  LaCorte's

22   the one.

23             THE COURT:  LaCorte is not going to win it for you.

24             MR. BREEN:  You Honor, can I give Mr. Chisewer an

25   equal opportunity to shoot me because I've got another

Page 44

1    suggestion, Judge, a request?

2              THE COURT:  Yes.

3              MR. BREEN:  I still don't know if they're seeking

4    Medicare damages, and I think we need to know that.

5              THE COURT:  Are you?

6              MR. BREEN:  If that's out of the case, we need to hear

7    that.

8              THE COURT:  Yes, I thought it was just Medicaid.

9              MR. CHIZEWER:  Yes.  Well, it's the federal share of

10   the Medicaid dollars, yes.

11             THE COURT:  Right, not Medicare.

12             MR. CHIZEWER:  Correct.

13             MR. BREEN:  But that's new, brand-new.

14             THE COURT:  I think that was in the --

15             MR. BREEN:  In the last papers.

16             THE COURT:  In his last papers.

17             MR. McELROY:  And just to be clear, relator Sun and

18   Hamilton is not seeking any share of Florida's settlement, nor

19   any other state's Medicaid share.

20             MR. CHIZEWER:  Well, we originally made claims for the

21   states' share, and I believe those claims were dismissed.  We

22   have an appeal issue on that.

23             MR. JACKSON:  Those were dismissed under 12(b), Judge.

24   They didn't comply with the state requirements of those states

25   that they included in the complaint.

Page 45

1          THE COURT:  I don't know.

2          MR. JACKSON:  Those are done.

3          THE COURT:  Does he have to come back from Florida?  I

4    mean, that's cruel and unusual punishment this time of year.

5    Does he have to come back here?

6          MR. BREEN:  Your Honor, if this agreement is going to

7    get killed, Florida has got a big part of this agreement.

8          THE COURT:  You're welcome, you're always welcome from

9    the sunshine state.

10         MR. McELROY:  We have many Ven-A-Care settlements as

11   well, your Honor.

12         THE COURT:  What?

13         MR. McELROY:  We have many Ven-A-Care settlements, not

14   just this one.

15         THE COURT:  Well, maybe, but this is all I'm dealing

16   with.

17         MR. BREEN:  Your Honor, that's the point I've been

18   trying to make.  This is the same release.  I just want your

19   Honor to know that.  When we say that severability clause

20   doesn't just push this thing back to their case, it's the

21   same -- okay, let me, can I just make one more point?

22         THE COURT:  I can't deal with that, okay?  I don't

23   know about the other cases.  I only have me.

24         MR. BREEN:  One more, Judge, one more suggestion.

25         THE COURT:  Yes.

1          MR. BREEN:  Now that we know what we're fighting

2     about, I think it makes sense to have everybody sit down and

3     get one shot to sit down and try to work through this.

4          THE COURT:  Do you think Mr. Green would be willing to

5     do it?

6          MR. BREEN:  I don't know if Mr. Green -- maybe that

7     would -- I'm more than willing to do that, but I've never had a

8     shot, a fair shot to sit down, now that I know what everybody

9     is really fighting about, and try to get this thing resolved.

10         THE COURT:  It's fine with me.  I think he's done

11    miracles for me before, and maybe he can pull one out here.

12         MR. BREEN:  Well, I've got some penance to pay

13    apparently, Judge, so --

14         THE COURT:  So a hearing sometime --

15         THE CLERK:  Do you want some dates right now?

16         THE COURT:  In March, like --

17         THE CLERK:  The end of March?  Monday and Tuesday,

18    March 25 and March 26?

19         MR. CHIZEWER:  Your Honor, I have a conflict that

20    week.  That's my children's spring break.  We already have

21    travel plans.

22         THE COURT:  Take them here.  It's beautiful.

23         (Laughter.)

24         MR. CHIZEWER:  I have taken them here, but we have a

25    planned --

cf121f66-4ec7-437b-858f-b1847c19e49b

Page 47

1        THE COURT:  Do you want to do the week before?

2        THE CLERK:  The week before, the 18th and 19th.

3        THE COURT:  I'm not a hundred percent sure of my

4   schedule yet then.

5        (Discussion between the Court and Clerk.)

6        THE COURT:  Yes, the 18th and 19th is fine.  So all

7   discovery will end January 31.  Unless if you all agree, we're

8   talking about three depositions, a 30(b)(6), the two relators.

9   Any expert reports should be filed by then.  At this point

10  we're not doing expert discovery.  And then if we need to have

11  a hearing, an evidentiary hearing.  Otherwise I'll do it based

12  on the reports.  And the only reason I talk about an expert is

13  if there's a debate about how similar the two drugs are.  I

14  mean, are they the same drugs?  They're described the same, as

15  very similar, right?

16       MR. CHIZEWER:  Scientifically they're radically

17  different.

18       MR. JACKSON:  They're used for the exact same thing,

19  your Honor, the Factor VIII for hemophilias.  Recombinant is

20  Recombinant.  Advate is a spin on the Recombinant.

21       THE COURT:  And that means?

22       MR. JACKSON:  It has no -- there's no presence of

23  human protein plasma.  Therefore it's pure.

24       THE COURT:  Are you marketing to the same people?

25       MR. JACKSON:  Oh, yes, your Honor.

1           THE COURT:  And is it the same sales team?

2           MR. JACKSON:  I believe so, your Honor.

3           THE COURT:  The same AWP list price?

4           MR. JACKSON:  That I don't know.

5           THE COURT:  Okay, so you're just going to have to --

6      we're just going to have to figure that out.

7           MR. CHIZEWER:  Yes.  I mean, I will tell you, your

8      Honor, I don't want to speak out of turn, but we'd probably

9      stipulate that the drug is marketed to the exact same or

10     similar populations and --

11          THE COURT:  By the same division?

12          MR. CHIZEWER:  Probably.  I don't know that, your

13     Honor, but if they tell me it is, that can be resolved in five

14     minutes.  But I think that the pricing strategy was completely

15     different.  And I guess before we go through all of the, you

16     know, expense of discovery and an evidentiary hearing, if it's

17     only going to come down to whether it was marketed to the same

18     people by the same sales reps, we're probably better off with

19     an appeal than going through an evidentiary hearing.

20          THE COURT:  I don't know.  I'm not prepared to figure

21     that out right now.

22          MR. CHIZEWER:  Okay, fair enough, fair enough.

23          THE COURT:  I'm not prepared to deal with that.

24          MR. BREEN:  Just so I'm clear, Judge, when you say the

25     two relators, do you mean the Sun/Hamilton relators, or do you

1    mean Ven-A-Care?

2          THE COURT:  These two relators.

3          MR. BREEN:  Those two relators.  Okay, I just wanted

4    to make sure.

5          THE COURT:  Now, you're just sort of sitting back

6    there like the Cheshire Cat, Mr. Henderson.  What role do you

7    want to play in this?

8          MR. HENDERSON:  I think mostly as an observer.  Of

9    course, down the road, if your Honor were to or there were

10   arguments about reopening the settlement and asking the

11   government to cough up some more money, we would become more

12   active, I think.

13         THE COURT:  But for me, if you were on reasonable

14   notice that Advate -- I mean, in other words, if you actually

15   knew that Advate was alive and out there and this put you on

16   notice of it, that actually has some weight, right?

17         MR. HENDERSON:  The devil's in the details, your

18   Honor.  If we knew that it was an issue that wasn't clearly

19   resolved, that's one thing and perhaps something different than

20   what you're inferring.  So I can't give you all answers.

21         THE COURT:  Well, that's one issue, but what if

22   you were you on -- were you on notice from -- you know, had you

23   done an investigation into Advate's pricing?  In fact, the

24   purpose of the False Claims Act is to give you enough notice to

25   know to investigate.

Page 50

1          MR. HENDERSON:  I don't think the first-to-file

2    inquiry, your Honor, should depend on or really should factor

3    in what the government investigated or what it did not

4    investigate.  I think the first-to-file should be more of an

5    objective inquiry looking at the papers and what can be known

6    about the two different products at issue.

7          THE COURT:  Well, it would be very useful to have the

8    government take a position on first to file.

9          MR. HENDERSON:  Well, I'm not -- I don't think we're

10   going to want to get into that hornet's nest, your Honor.

11         THE COURT:  I'm in it.

12         (Laughter.)

13         MR. HENDERSON:  And I don't envy you, your position

14   one bit.  I do agree with Mr. Breen that the inquiry should not

15   encompass discussions that were made in settlement.  I wasn't a

16   party to the settlement discussions, so I don't know what

17   happened, but I just think, as a matter of principle, the

18   inquiries should not get into matters that were the subject of

19   settlement discussions with Mr. Green or otherwise.

20         THE COURT:  All right, so let's go off the record for

21   one minute.

22         (Discussion off the record.)

23         THE COURT:  See you in March if you haven't settled it

24   by then.

25         MR. BREEN:  Thank you, your Honor.

1          MR. CHIZEWER:  Thank you, your Honor.

2          MR. JACKSON:  Thank you, your Honor.

3          THE CLERK:  All rise.

4          (Adjourned, 3:53 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

cf121f66-4ec7-437b-858f-b1847c19e49b

1                    C E R T I F I C A T E

2


3

     UNITED STATES DISTRICT COURT )
4    DISTRICT OF MASSACHUSETTS    ) ss.
     CITY OF BOSTON               )
5


6


7          I, Lee A. Marzilli, Official Federal Court Reporter,

8    do hereby certify that the foregoing transcript, Pages 1

9    through 51 inclusive, was recorded by me stenographically at

10   the time and place aforesaid in Civil Action Nos. 01-12257-PBS,

11   08-11200-PBS, and 10-11186-PBS, In Re:  Pharmaceutical Industry

12   Average Wholesale Price Litigation, and thereafter by me

13   reduced to typewriting and is a true and accurate record of the

14   proceedings.

15        Dated this 2nd day of December, 2012.

16

17

18

19

20        /s/ Lee A. Marzilli
          _____
21        LEE A. MARZILLI, CRR
          OFFICIAL FEDERAL COURT REPORTER
22

23

24

25

cf121f66-4ec7-437b-858f-b1847c19e49b