# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PHARMACEUTICAL INDUSTRY AVERAGE WHOLESALE PRICE LITIGATION | MDL No. 1456 |
| THIS DOCUMENT RELATES TO:<br>TRACK 2 SETTLEMENT | Civil Action: 01-CV-12257-PBS<br>Judge Patti B. Saris |

**DECLARATION OF REBECCA A. BLAKE
IN SUPPORT OF A SECOND DISTRIBUTION OF THE NET CASH SETTLEMENT
AMOUNT TO CLASS 1 AND CLASS 3 CONSUMER SETTLEMENT CLASS
MEMBERS**

I, Rebecca A. Blake, declare as follows:

1. I am a Program Manager for Rust Consulting, Inc. ("Rust"). I am over 21 years of age and am not a party to the above-captioned action (the "Action"). I have personal knowledge of the facts set forth below, and if called as a witness, could and would testify competently and to those facts.

2. I respectfully submit this Declaration in order to provide the Court and the parties with information regarding the distribution of the Net Cash Settlement Amount to date and in support of Class Counsel's Motion for a Second Distribution to the Consumers (the "Motion").

3. Complete Claim Solutions, LLC ("CCS") was appointed Administrator by Settlement Agreement, dated March 7, 2008. In February 2009, CCS began doing business as Rust.

4.  Rust was retained to process, evaluate, and audit completed and submitted Claim Forms; calculate the *pro rata* share of the Net Settlement Fund Amount for each Settlement Class Member, and distribute the Net Settlement Fund to Settlement Class Members. (*See* Declaration of Daniel Coggeshall Regarding Allocation and Distribution of the Net Settlement Fund to Class 1 and Class 3 Consumers and Class 2 and Class 3 Third-Party Payors in the Track Two Settlement, dated July 3, 2012, previously filed with the Court.)

## DESCRIPTION OF INITIAL DISTRIBUTION ACTIVITY CLASS 1 AND CLASS 3 CONSUMERS

5.  As of December 15, 2016, Class 1 and Class 3 Consumer Settlement Class Members have continued to cash settlement checks. The counts and amounts in this Declaration reflect activity through December 15, 2016. The remaining Class 1 and Class 3 Consumer Net Settlement Fund Amounts available for another *pro rata* distribution will be finalized prior to the second distribution.

6.  Pursuant to this Court's Order Granting Class Counsel's Motion for Distribution of Net Cash Settlement Amount, Rust caused US Bank to issue 57,334 checks to Class 1 Consumer Settlement Class Members and 17,578 checks to Class 3 Consumer Settlement Class Members, totaling 74,912 checks.

7.  Subsequently and as of December 15, 2016, Rust has re-issued checks to Class Members who contacted Rust or Class Counsel requesting that their checks be re-issued due to updated addresses, account name changes and other operation of law issues, such as changes in a beneficiary due to death.

8.  Since the initial distribution, Rust has received and responded to numerous inquiries from Class 1 and Class 3 Consumer Settlement Class Members concerning the Settlement, calculation of the Net Settlement Fund Amount, distributions from the Net Settlement Fund Amount and status of reissues.

9.  As of December 15, 2016, approximately 92.82% of the Class 1 Consumer Net Settlement Fund has been successfully distributed on a *pro rata* basis to Class 1 Consumer Settlement Class Members. This percentage calculation is based off of the original funding for Class 1 ($14,452,533.59) and the total amount of checks cashed for Class 1 ($13,416,297.06), dividing cashed by funded. The balance remaining in the Class 1 Consumer Net Settlement Fund distribution checking account, as of December 15, 2016, is $960,558.69 (the "Class 1 Consumer Net Settlement Fund Balance").

10. As of December 15, 2016, approximately 96.49% of the Class 3 Consumer Net Settlement Fund has been successfully distributed on a *pro rata* basis to Class 3 Consumer Settlement Class Members. This percentage calculation is based off of the original funding for Class 3 ($1,233,015.34) and the total amount of checks cashed for Class 3 ($1,189,509.17), dividing cashed by funded. The balance remaining in the Class 3 Consumer Net Settlement Fund distribution checking account, as of December 15, 2016, is $44,622.44 (the "Class 3 Consumer Net Settlement Fund Balance").

## RECOMMENDATIONS FOR A SECOND DISTRIBUTION

11. Approximately 6,900 Class 1 Consumer checks remain uncashed and are now stale, were returned undeliverable with no further addresses found, or were returned as refused by

the Claimant. Class Counsel is requesting that the total value of these checks become available for a second distribution, and that the recipients of these checks be determined ineligible to receive any further proceeds from the Class 1 Consumer Net Settlement Fund.

12. Approximately 1,250 Class 3 Consumer checks remain uncashed and are now stale, were returned as undeliverable with no further addresses found, or were returned as refused by the Claimant. Class Counsel is requesting that the total value of these checks become available for a second distribution, and that the recipients of these checks be determined ineligible to receive any further proceeds from the Class 3 Consumer Net Settlement Fund.

13. Class Counsel has also recommended that the remaining amount in the escrow account established for the Settlement be rolled over into the Class 1 and Class 3 Net Settlement Fund Balances so that Class 1 and Class 3 Consumer Claimants receive a larger award amount. The amount that has been rolled over into the Class 1 Consumer Net Settlement Fund Balance is $71,766.53. The amount that has been rolled over into the Class 3 Consumer Net Settlement Fund Balance is $6,457.55.

14. Class Counsel and Rust recommend a second distribution in which Rust would issue from the Class 1 and Class 3 Consumer Net Settlement Fund Balances, a second distribution check on a *pro rata* basis to Class 1 and Class 3 Consumer Claimants who cashed their checks from the initial distribution.

15. Pursuant to the Plan of Allocation, Settlement Agreement and Approval Order, Rust would modify the allocation of the Class 1 and Class 3 Consumer Net Settlement Fund Balances to pay a *de minimis* payment of $20.00 to each Class 1 and Class 3 Consumer Claimants who cashed their check from the initial distribution. If a second distribution would occur, the

average payment to be made would be $70.34 and the highest payment to be made is approximately $5,155.00.

16.   Rust recommends a 90 day void period for all checks issued in the second distribution, in order to keep costs at a minimum. If any checks are returned to Rust as undeliverable during the 90 day void period, a batch trace will be performed on a bi-weekly basis. Batch traces are typical for a second distribution when there has been a long duration between distributions. If a new address for the undeliverable check is found using this process, the check will be sent to the new address and the void date will remain the same. If Rust receives correspondence during the 90 day void period, either through the Call Center or to the Post Office Box from a class member requesting reissue of a check, Rust will reissue the check and the void date will remain the same. After the 90 day void period has expired, Rust will allow a 10 day grace period and will then submit a payment void file to the bank, thereby eliminating the ability for any additional checks to be cashed.

## ADMINISTRATION FEES AND EXPENSES

17.   Rust has provided invoices for professional fees and expenses through December 2016 to, among other things, implement and administer the Settlement in the amount of $502,654.48, of which $394,537.72 has been paid from the Settlement and $108,116.76 has been applied as a credit for data storage fees. Current monthly expenses include the electronic storage of data across four separate databases at a cost of approximately $12,400.00 per month, which will increase as additional information is added and stored within each database; storage of 139 boxes of documentation received from class members at an off-site storage facility at a cost of approximately $350.00 per month; telecommunications charges for live call center support, line

maintenance, long distance, and IVR charges of approximately $775.00 per month, a cost that will increase if there is a second distribution; banking charges associated with three separate distribution accounts including bank fees and FDIC charges of approximately $600.00 per month.

18.  Rust and Class Counsel have agreed that Rust will waive the fees and expenses associated with the second distribution; however, in consultation with Class Counsel, Rust respectfully requests to recoup any fees and expenses from the uncashed funds, if any, up to $200,000.00. It is estimated that Rust's fees and expenses to complete the second distribution will be approximately $200,000.00, assuming a second distribution is made to no more than 14,300 Claimants.

19.  Rust will continue to maintain a call center and separate telephone line for Settlement Class Member issues and inquiries and a Post Office Box to receive mailings and updates from Settlement Class Members, as well as continue to incur postage and express mail charges and tax-related filing expenses.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 20th day of December, 2016 in Minneapolis, Minnesota.

_____
Rebecca A. Blake